**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed November 18, 2005 |
| v. | ) | Nos. 00-169 L & 99-550 Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF OSAGE NATION'S BRIEF CLARIFYING LEGAL BASES FOR ITS INVESTMENT CLAIMS**

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ………………………………………………………….. ii

I. INTRODUCTION ……………………………………………………………...... 1

II. DISCUSSION ……………………………………………………………..………. 1

A. Statutory Framework …………………………………………………..….. 2

1. The 1906 Act …………………………………………………….….. 2

2. Generally Applicable Laws Relating to the Investment and Management of Indian Trust Funds ……………………….……... 3

B. Common Law Duties of The United States As Trustee ..……………………... 5

1. Duty of Loyalty ………………………………………………………….. 6

2. Duty of Care ………………………………………………………….... 6

3. Duty to Make Trust Property Productive ……………………………… 8

C. Legal Bases For Osage Nation's Deposit Lag Time Claim ………………..… 10

D. Legal Bases For Osage Nation's Investment Yield Claim …………………… 12

E. Legal Bases For Osage Nation's Disbursement Lag Time Claim ……………. 12

F. Legal Bases For Osage Nation's Lost Investment Income Claim ……………. 13

III. CONCLUSION ………………………………………………………………… 14

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Cheyenne-Arapaho Tribes of Indians v. United States*, 512 F.2d 1390 (Ct. Cl. 1975)................*passim*

*Coast Indian Cmty. v. United States*, 550 F.2d 639 (Ct. Cl. 1977)........................................................7

*Cobell v. Norton*, 283 F. Supp. 2d 66 (D.D.C. 2003)..................................................................5

*In re Consupak*, 87 B.R. 529 (N.D. Ill. 1988)..........................................................................10

*Manchester Band of Pomo Indians, Inc. v. United States*, 363 F. Supp. 1238 (N.D. Cal. 1973) 4, 5, 10

*Minnesota Chippewa Tribe v. United States*, 14 Cl. Ct. 116 (1987)..........................................6, 8

*Pyramid Lake Paiute Tribe of Indians v. Morton*, 354 F. Supp. 252 (D.D.C. 1972)............................7

*Seminole Nation v. United States*, 316 U.S. 286 (1942)..............................................................6, 7

*Seneca Nation of Indians v. United States*, 173 Ct. Cl. 917 (1965)...................................................7

*Shoshone Indian Tribe v. United States*, 364 F.3d 1339 (Fed. Cir. 2004)......................................13

*United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003)................................................5

*United States ex rel. Willoughby v. Howard*, 302 U.S. 445 (1938)......................................................5

*Yankton Sioux Tribe v. United States*, 623 F.2d 159 (Ct. Cl. 1980)......................................8, 11, 13

### DOCKETED CASES

*Osage Tribe of Indians v. United States*, No. 99-550L (Fed. Cl. Oct. 27, 2005).........................1, 2, 7

### STATUTES AND REGULATIONS

Act of June 28, 1906, 34 Stat. 539..........................................................................................2, 10, 14

25 U.S.C. §§ 161a (2000)...........................................................................................................3

25 U.S.C. §§ 161b (2000)...........................................................................................................4

25 U.S.C. § 162a (2000).............................................................................................................4

31 U.S.C. § 1321(a)(2000)..........................................................................................................3

12 C.F.R. § 9.10 (2005)...............................................................................................................10

### OTHER AUTHORITIES

Austin Wakeman Scott & William Franklin Fratcher, *The Law of Trusts* (4th Ed. 1987)............*passim*

Department of Treasury, Financial Management Service *Manual of Procedures and Instructions for Cashiers* § 3.9(A) (July 1985)..........................................................10,11

F. Cohen, *Handbook of Federal Indian Law* 226 (2d ed. 1982) .......................................................... 7
Restatement (Second) of Trusts, (1959)............................................................................. 5, 13
Restatement (Third) of Trusts, (1992)............................................................................ *passim*

# PLAINTIFF OSAGE NATION'S BRIEF CLARIFYING LEGAL BASES FOR ITS INVESTMENT CLAIMS

## I. INTRODUCTION

In its Opinion and Order filed on October 27, 2005, the Court denied Defendant's Motion to Dismiss, in Part, Plaintiff's Tranche One Claims, stating that prior holdings "of the Federal Circuit and the Supreme Court . . . have spoken sufficiently directly to the government's obligation to pay interest in similar statutory and factual circumstances to make dismissal of this claim unwarranted at this juncture." *Osage Tribe of Indians v. United States*, No. 99-550L at 20 (Fed. Cl. filed Oct. 27, 2005). The Court observed, however, that "plaintiff has not adequately articulated the contours of its investment claim," and ordered the Osage Nation to "file a brief clarifying the specific legal grounds for its investment claim . . . ." *Id.* at 20 - 21. Pursuant to that Order, therefore, Plaintiff the Osage Nation files this brief clarifying the specific legal grounds for its investment claim.[1] The Osage Nation will provide more detailed briefing of both the legal and factual bases of its investment claims in the Pre-Trial Brief due on January 12, 2006.

## II. DISCUSSION

The Osage Nation's investment claims are based on the fundamental duties of the United States, as Trustee for the Osage Trust, to manage trust assets for the benefit of the Osage Nation by making those trust assets productive. Specifically, the Osage Nation alleges that the United States breached its trust obligations in the following ways:

---

[1] In filing this brief, the Osage Nation notes that the United States' Motion to Dismiss, in Part, Plaintiff's Tranche One Claims was denied and that no dispositive motion relating to the Osage Nation's investment claim (or any other claim) is pending. Accordingly, the Osage Nation understands that the purpose of this brief to provide further clarification to the Court regarding the legal bases for the Osage Nation's investment claim in advance of trial or further motions regarding those claims. To the extent the Court deems this briefing to relate to a dispositive motion, or in the event that such a dispositive motion is filed, the Osage Nation reserves the right to supplement this brief with additional argument appropriate to a dispositive motion.

- By failing to deposit royalty and other payments into interest-bearing accounts promptly ("Deposit Lag Time Claim").
- By failing to invest Osage Trust funds in a manner that produced reasonable rates of return ("Investment Yield Claim").
- By failing to keep Osage Trust funds that were designated for disbursal in interest-bearing accounts until those funds were actually withdrawn from the Treasury ("Disbursement Lag Time Claim").
- By not obtaining interest or investment income on funds the United States failed to collect by its other breaches ("Lost Investment Income Claim").

The legal bases for these claims are found in the treaties and statutes creating the Osage Trust and directing the United States to make the Osage Trust assets productive, and in the United States' obligations as Trustee under the common law.

**A. Statutory Framework**

**1. The 1906 Act**

In the Act of June 28, 1906, Chapter 3572, 34 Stat. 539 (the "1906 Act"), Congress, *inter alia*, provided that "all funds belonging to the Osage tribe, and all moneys due, and all moneys that may become due, or may hereafter be found to be due the said Osage tribe of Indians, shall be held in trust by the United States . . . ." *Id.* at § 4. Congress further specified that "the royalty received from oil, gas, coal, and other mineral leases . . . shall be placed in the Treasury of the United States to the credit of the members of the Osage tribe" and such money "shall be distributed to the individual members of said Osage tribe according to the roll provided for herein, in the manner and at the same time that payments are made of interest on other moneys held in trust for the Osages by the United States, except as herein provided." *Id.* at § 4(2). As the Court has already determined, Congress created the Osage Trust and specified that oil and gas royalties, both those paid and those to become due, were included in the Osage Trust. *Osage Tribe of Indians*, Slip Op. at 8-9. The 1906 Act also provides expressly that funds placed in the Osage Trust shall "draw interest as now authorized by law." *Id.* at § 4(1).

Thus, there can be no dispute that the United States placed Osage oil and gas royalties into the Osage Trust, made itself the Trustee of that Trust and directed itself to earn interest on those funds.

**2. Generally Applicable Laws Relating to the Investment and Management of Indian Trust Funds**

In addition to the 1906 Act, which is applicable only to the Osage Nation, other statutes apply generally to the United States' conduct as Trustee for Indian assets. As a general matter, Congress has determined that "Indian moneys, proceeds of labor, agencies, schools, and so forth" are "classified as trust funds." 31 U.S.C. § 1321(a). More specifically, Congress requires that the United States invest funds held in trust for Indians and Indian tribes:

> All funds held in trust by the United States and carried in principal accounts on the books of the United States Treasury to the credit of Indian tribes shall be invested by the Secretary of the Treasury, at the request of the Secretary of the Interior, in public debt securities with maturities suitable to the needs of the fund involved, as determined by the Secretary of the Interior, and bearing interest at rates determined by the Secretary of the Treasury, taking into consideration current market yields on outstanding marketable obligations of the United States of comparable maturities.

25 U.S.C. § 161a(a).

In carrying out its duties as trustee, Congress has stated that:

> The Secretary [of the Interior's] proper discharge of the trust responsibilities of the United States shall include (but are not limited to) the following:
>
> (1) Providing adequate systems for accounting for and reporting trust fund balances.
>
> (2) Providing adequate controls over receipts and disbursements.
>
> (3) Providing periodic, timely reconciliations to assure the accuracy of accounts.
>
> (4) Determining accurate cash balances.
>
> (5) Preparing and supplying account holders with periodic statements of their account performance and with balances of their account which shall be available on a daily basis.

(6) Establishing consistent, written policies and procedures for trust fund management and accounting.

(7) Providing adequate staffing, supervision, and training for trust fund management and accounting.

(8) Appropriately managing the natural resources located within the boundaries of Indian reservations and trust lands.

25 U.S.C. § 162a(d) (2000).

Other statutes provide further guidance to the United States regarding in investment duties as a trustee. 25 U.S.C. § 161(b) provides that all funds held in trust must "bear simple interest at the rate of 4 per centum per annum from July 1, 1930." Subsequently, Congress modified that rule to authorize the United States to (1) deposit trust funds in certain private banks, 25 U.S.C. § 162a(a), and/or (2) invest trust funds in certain public debt obligations, *id.* at § 162a(c).

The manifest purpose of these provisions is to permit the United States to take advantage of market conditions to obtain a higher rate of return for trust funds than the 4% rate guaranteed by Section 161(b). *See Manchester Band of Pomo Indians, Inc. v. United States*, 363 F. Supp. 1238, 1245 (N.D. Cal. 1973) ("the present statutory scheme entitles the Band to a minimum return of 4 per cent on its trust moneys and authorizes investment in the range of investment alternatives outlined above"); *Cheyenne-Arapaho Tribes of Indians v. United States*, 512 F.2d 1390, 1394 (Ct. Cl. 1975) ("The fiduciary duty which the United States undertook with respect to these funds includes the 'obligation to maximize the trust income by prudent investment,' and the trustee has the burden of proof to justify less than a maximum return"). Accordingly, the United States is liable for a breach of fiduciary duty when it fails to withdraw Indian tribal trust funds from the Treasury and invest them in higher-yielding investments pursuant to Section 162a. *Manchester Band*, 363 F. Supp. at 1247-48; *Cheyenne-Arapaho*, 512 F.2d at 1396.

**B. Common Law Duties Of The United States As Trustee**

The terms of the trust determine the general extent of a trustee's duties and powers. II A. Scott, *The Law of Trusts*, § 164 at 250 (4th Ed. 1987). The treaties, statutes and regulations summarized above provide a general framework for the United States' trust responsibilities, but those treaties, statutes and regulations do not constitute the sole source of law to define the United States' trust duties. The Supreme Court has recognized that the United States' execution of statutorily authorized trust duties is governed by common law principles of trust law. *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 475 (2003) (using common law trust duties to define specific obligations under statutory trust). Similarly, "the mere imposition of statutory duties does not remove liability for breach of existing common law duties." *United States ex rel. Willoughby v. Howard*, 302 U.S. 445, 452 (1938). To the contrary, "[i]t is not plaintiffs' burden to demonstrate that the traditional common-law duties apply to Interior; rather … it is Interior's burden to show that Congress has unequivocally expressed an intent to the contrary." *Cobell v. Norton*, 283 F. Supp. 2d 66, 146 (D.D.C. 2003). Specifically, the non-exclusive summary of trust duties in 25 U.S.C § 161b does not preempt or limit the United States' obligation to fulfill its trust duties as defined by the common law. *Manchester Band*, 363 F. Supp. at 1245. Accordingly, in order to explain the legal bases of the Osage Nation's investment claim, it is necessary to identify the applicable common law duties of a trustee.

The United States, as trustee, has extensive duties under the common law. *See generally* Restatement (2d) of Trusts, §§ 169-182 (1959); Scott, §§ 169-185 (1987). Among the trust duties particularly relevant to the Osage Nation's investment claims are the duty of loyalty, the duty to exercise reasonable care and skill in managing the trust, and the duty to make the trust property productive.

**1. Duty of Loyalty**

The central duty of any trustee is that of loyalty to the beneficiaries:

> The most fundamental duty owed by a trustee to the beneficiaries of the trust is the duty of loyalty. . . . It is the duty of the trustee to administer the trust solely in the interest of the beneficiaries. He is not permitted to place himself in a position where it would be for his own benefit to violate his duty to the beneficiaries.

Scott, § 170 at 311. *See also* Restatement (3d) of Trusts, § 170(1) at 193 (1992) ("The trustee is under a duty to administer the trust solely in the interest of the beneficiaries."). In the situation where the trustee makes decisions regarding the trust based on his own interests, "the standard of behavior becomes more rigorous [than a reasonable degree of care, skill and caution]. *In such a case his interest must yield to that of the beneficiaries."* Scott, § 170.25 at 436 (emphasis added). "In administering the trust the trustee is under a duty to the beneficiaries not to be influenced by the interest of any third person or by motives other than the accomplishment of the purposes of the trust." Restatement (3d) of Trusts, § 170, cmt. q at 201. The duty of loyalty requires a trustee to put the interests of the beneficiaries above his own interests. When faced with a choice as to how to administer the trust, therefore, the trustee's must choose the course that will most advance the goal of the trust, rather than the course that would be easiest to administer.

**2. Duty of Care**

In executing trust duties, a trustee must use "such care and skill as a man of ordinary prudence would exercise in dealing with his own property." Scott, § 174 at 466. In the special context of the United States acting as Trustee for Indians "[i]t is well settled that the standard of duty . . . is not mere 'reasonableness,' but the highest fiduciary standards." *Minnesota Chippewa Tribe v. United States*, 14 Cl. Ct. 116, 130 (1987). Because the United States "has charged itself with moral obligations of the highest responsibility and trust" the United States "should therefore be judged by the most exacting fiduciary standards." *Seminole Nation v. United States*, 316 U.S.

286, 297 (1942). *See also Seneca Nation of Indians v. United States*, 173 Ct. Cl. 917, 925 (1965) ("when the Federal Government undertakes an 'obligation of trust' toward an Indian tribe or group … the obligation is 'of the highest responsibility and trust'"); *Cheyenne-Arapaho*, 512 F.2d at 1392 ("We have ruled that the United States as trustee has undertaken an obligation of the highest responsibility and trust"); *Coast Indian Cmty. v. United States*, 550 F.2d 639, 652 (Ct. Cl. 1977) ("The United States, when acting as trustee for the property of its Indian wards, is held to the most exacting fiduciary standards"). This high standard of care is "doubly strict when the defendant, by retaining Indian moneys in the Treasury, in effect borrows those funds." *Cheyenne-Arapaho*, 512 F.2d at 1392.

An important corollary of this principle is that the United States' actions as Trustee are not accorded the kind of deference that courts ordinarily accord actions of the United States when it acts in its executive or legislative capacities. To the contrary, "undertakings with the Indians are to be liberally construed to the benefit of the Indians." *Pyramid Lake Paiute Tribe of Indians v. Morton*, 354 F. Supp. 252, 256 (D.D.C. 1972). *See also* F. Cohen, *Handbook of Federal Indian Law* 226 (2d ed. 1982) ("The general rule is that [the United States] is held to the standards of a private fiduciary in administering Indian property.").

In its briefing in support of its Motion to Dismiss, the United States argued that its investment and money management decisions must be reviewed under the "arbitrary and capricious" standard employed when reviewing the propriety of the day-to-day actions of the United States not involving trust duties. Defendant's Motion to Dismiss, in Part, Plaintiff's Tranche One Claims, No. 00-169L, at 48 (June 14, 2005). As support for this, the United States argues that the investment statutes essentially reduce the United States' trust duties to ordinary statutory duties. *Id.* Not only does it defy logic to argue that statutes expressly addressing trust

duties could be understood to reduce trust obligations, but that argument has been soundly rejected by this Court.

"[T]he Court of Claims has at least twice stated that the 'arbitrary and capricious' standard is not the highest measure of fiduciary accountability." *Minnesota Chippewa*, 14 Cl. Ct. at 130 (*citing Sac and Fox Tribe of Indians v. United States*, 340 F.2d 368, 375 (Ct. Cl. 1964); *Yankton Sioux Tribe v. United States,* 623 F.2d 159, 163 (Ct. Cl. 1980)). Instead, the "standard of duty for the United States is not mere 'reasonableness' but is the highest fiduciary standards." *Yankton Sioux*, 623 F.2d at 163. This Court further rejected use of the arbitrary and capricious standard because the cases cited by the United States involved the management of trust assets in which *trustees* generally enjoy greater discretion than they do in the management of trust funds:

> [T]he tests referred to in [Mitchell and Navajo] were not expressed in the context of a disbursement accounting. They are easily distinguishable from the present issues to be tried because they all involve Government actions in areas in which fiduciaries are generally seen as having much greater discretion. For example, *Mitchell*, *Navajo*, and *Coast Indians* all involved claims of mismanagement of lands. They did not involve accountings of monies disbursed out of a trust fund.

*Minnesota Chippewa*, 14 Cl. Ct. at 129. Critically, the Court recognized that the appropriate duty of care is determined by *trust law*, not the governmental nature of the trustee. Thus, even assuming that a trustee would enjoy discretion akin to the arbitrary and capricious standard in certain situations, it is not the case that all actions by the United States as trustee are evaluated under that standard.

**3. Duty to Make Trust Property Productive**

In addition to the general duties of loyalty and care, the United States has specific duties to make trust assets productive by, among other things, investing them promptly and in a manner that maximizes their earning power. "It is normally the duty of the trustee promptly to invest cash belonging to the trust so that it will produce an appropriate rate of return for the trust estate and its

beneficiaries." Restatement (3d) of Trusts, § 181 cmt. c at 148. *See also* Scott, § 181 at 542 ("Ordinarily it is the duty of the trustee to invest trust funds so that they will be productive of income."). Although it is understood that a trustee may not be able to invest assets immediately, it is understood that funds may not be left in a non interest-bearing account. Scott, § 180.3 at 534. Trustees breach their fiduciary duties if funds are left unproductive for an unreasonably long time. Restatement (3d) of Trusts, § 181 cmt. c at 148. This, in turn, imposes a duty to obtain interest on funds awaiting investment:

> It is normally the duty of the trustee promptly to invest cash belonging to the trust so the it will produce an appropriate rate of return for the trust estate and its beneficiaries. The trustee is normally liable for failure to do so for a time that is, under all circumstances, unreasonably long. The trustee is not liable, however, if a delay is reasonable *and, when applicable, the trustee has taken reasonable advantage of opportunities to earn interest on the funds while seeking to make what may be more suitable, longer term investments.*

Restatement (3d) of Trusts, § 181, cmt. d at 148 (emphasis added).

Once funds have been secured, the United States' "'obligation [is] to maximize the trust income by prudent investment' and the trustee has the burden of proof to justify less than a maximum return." *Cheyenne-Arapaho*, 512 F.2d at 1394 (quoting *Blankenship v. Boyle*, 329 F. Supp. 1089, 1096 (D.D.C. 1971)).

Finally, the duty to make trust assets productive extends to very end of the time in which assets are in the trust. Because today's sophisticated financial system offers many short-term, highly liquid, interest-bearing investment options

> interest may run from the time of deposit to the time of withdrawal without preliminary notice of withdrawal. Hence it would seem not unreasonable to require the trustee to make the income productive of income …there do not seem to be any practical impediments today to the making of trust funds temporarily productive of income, and retaining their liquidity, whether by deposits in savings accounts or by creating some form of short-term security funds."

Scott, § 181 at 549. "Simple business prudence dictates that funds be invested pending distribution." *In re Consupak*, 87 B.R. 529, 543 (N.D. Ill. 1988) (discussing duties of any fiduciary).

It is no excuse if the trustee happens to deposit trust funds awaiting distribution in an account that does not pay interest on such funds if some other account or bank would pay interest on such funds. *Manchester Band*, 363 F. Supp. at 1245-46 (quoting *Estate of Whitney*, 248 P. 754, 757 (Cal. App. 1926)). Moreover, "where a delay in [distribution] occurs, a trustee who allows those funds to accumulate without investment breaches his fiduciary duty … such idle funds should instead be placed at interest." *In re Consupak,* 87 B.R. at 540 (citing *Manchester Band*, 363 F. Supp. at 1245). Consistent with this principle, the United States itself directs trust departments of banks to deposit funds awaiting distribution in interest bearing accounts: "With respect to a fiduciary account for which a national bank has investment discretion, the bank shall obtain for funds awaiting investment or distribution a rate of return that is consistent with applicable law." 12 C.F.R. § 9.10 (2005).

**C. Legal Bases For Osage Nation's Deposit Lag Time Claim**

These general principles demonstrate that the United States' failure to promptly deposit royalty checks constitutes a breach of its trust duties. The checks are clearly trust assets, as they are the payment of royalties for oil and gas from the Osage mineral estate. 1906 Act at §§ 3, 4. The United States has a duty to deposit trust assets into interest-bearing accounts promptly and to make trust assets productive. *Supra*, pp. 8-10. Indeed, the Department of Treasury, Financial Management Service *Manual of Procedures and Instructions for Cashiers*, which Osage Agency personnel attempted to follow, provides that "[d]eposits shall to the extent possible, be made within 24 hours or the next workday with an authorized depositary." Department of Treasury,

Financial Management Service *Manual of Procedures and Instructions for Cashiers* § 3.9(A) at 2 (July 1985).

The evidence will show that in many cases the United States failed to deposit checks for various periods of time, ranging from a few days to several months, without any apparent justification or explanation. This failure to take control of trust assets and make those trust assets productive in a prompt manner is plainly a breach of the United States' obligations as a trustee.

The evidence will also show that for most of the Tranche One Months, the United States structured its check intake procedure in a way that effectively guaranteed that checks would not be deposited in an interest bearing account for at least 24 hours longer than necessary only because the United States did not take simple steps that would have allowed the more rapid deposit of checks into an interest bearing account. Specifically, the evidence will show that the Osage Agency mailed all checks to the district office in Muskogee to be deposited in a bank in Muskogee instead of making arrangement to deposit checks in a bank in Pawhuska, Bartlesville or Tulsa, all of which could be reached within an hour. By handling Osage Trust funds in a manner that served its own convenience rather than in a manner that benefited the Osage Nation, the United States breached its trust duties.

Moreover, it is well established that "administrative expenses of a United States Indian agency are not proper objects for the expenditure of tribal trust funds." *Yankton Sioux*, 623 F.2d at 179. By structuring the administration of the Osage Trust in a way that necessarily deprived the Trust of interest income solely for the ease of administration, the United States effectively used Osage Trust funds to defray administrative expenses. This is an independent breach of the Untied States' duties as Trustee.

**D. Legal Bases For Osage Nation's Investment Yield Claim**

As explained above, trustees have a general common law duty to invest trust funds, whether in securities or in an interest-bearing account. *See* Scott, § 181 at 542 ("Ordinarily it is the duty of the trustee to invest trust funds so that they will be productive of income."); Restatement (3d) of Trusts, § 181 cmt. d at 148 ("It is normally the duty of the trustee promptly to invest cash belonging to the trust so that it will produce an appropriate rate of return for the trust estate and its beneficiaries.").

In making such investments, the United States must "'maximize the trust income by prudent investment. . . .'" *Cheyenne-Arapaho*, 512 F.2d at 1394 (quoting *Blankenship v. Boyle*, 329 F. Supp. 1089, 1096 (D.D.C. 1971)). "[T]he trustee has the burden of proof to justify less than a maximum return." *Id.* In assessing the investment return options available outside of the Treasury, courts must look at the availability of eligible investments and the length of time needed to make the funds available, to invest them, and to reinvest the interest earned. *Id.* at 1395.

The evidence will show that the United States breached this duty by failing to earn for the Osage Trust investment returns equal even to the *average* yields it obtained for other Indian trust funds. Moreover, the evidence will illustrate the absence of a record that explains the United States' investment decisions, or even allows one to determine what investments were made. Because the United States failed to obtain investment earnings for the Osage Trust that it was able to obtain for other tribes, the United States breached its duty to the Osage Nation to properly invest the Osage Trust.

**E. Legal Bases For Osage Nation's Disbursement Lag Time Claim**

As discussed above, a trustee has a duty to invest trust funds and make them productive, whether by investing funds in securities or long-term interest or by depositing funds in interest bearing accounts for shorter terms. *Supra*, pp. 8-10. The evidence will show that the United

States placed funds awaiting disbursal in non-interest bearing accounts. Because many disbursal checks were not negotiated for many days, months and even many years, the United States failed to earn ***any*** interest on a substantial balance of Osage Trust funds. This course of conduct breached the United States' trust duty to make trust assets productive, as outlined above. The Court in *Cheyenne-Arapaho* held that the United States was liable for income not earned because funds were not deposited in interest-bearing accounts. 512 F.2d at 1396. Indeed, it appears that while unclaimed funds were awaiting distribution, the United States exercised no control whatsoever over those funds, in violation of the United States' separate duty to keep control of trust property. Restatement (2d) of Trusts, § 175 at 380.

By allowing funds awaiting disbursal to sit idle in non-interest bearing accounts, the United States breached its duty of loyalty to the Osage Nation by placing its own administrative convenience before its obligation to earn interest on Osage Trust funds. Moreover, by structuring the distribution process in a way that deprived the Osage Trust of interest, simply for the administrative convenience of the United States, the United States further violated its trust duties by effectively charging the Osage Trust an administrative fee. *See Yankton Sioux*, 623 F.2d at 179 ("administrative expenses of a United States Indian agency are not proper objects for the expenditure of tribal trust funds.").

**F. Legal Bases For The Osage Nation's Lost Investment Income Claim**

It is well settled that a component of the damages for the United States' breach of trust duties is interest on the income that that the trust would have earned had the United States not breached its trust duties. *Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1351-55 (Fed. Cir. 2004) ("the Government here has a separate and distinct statutory fiduciary obligation to pay the interest on the funds it failed to collect or otherwise mismanaged."). III. Scott, *The Law of Trusts* § 207.1 at 256 (4th Ed. 1987); Restatement (3d) of Trusts, § 211(2) at 160-61. As in

*Shoshone*, such interest is particularly appropriate in this case because the 1906 Act expressly requires that the Osage Trust "draw interest." 1906 Act at § 4(1). Accordingly, as part of the Osage Nation's damages, it is entitled to recover interest that would have been earned on (1) oil royalties and late fees the United States failed to collect, and (2) interest and investment earnings the Osage Trust would have received had the United States properly managed the Osage Trust.

## III. CONCLUSION

As the foregoing discussion confirms, the Osage Nation's investment claim is well grounded in long-recognized principles of trust law. The Osage Nation will provide more detailed briefing, evidence and argument in support of its investment claim in its pre-trial brief and at trial.

Dated this November 18, 2005

Respectfully submitted

*s/Wilson K. Pipestem*
WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation