**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed: December 2, 2005 |
| v. | ) | Nos. 99-550L & 00-169L<br>Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF OSAGE NATION'S BRIEF CLARIFYING LEGAL BASES FOR ITS INVESTMENT CLAIMS AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . 2

A. STANDARDS OF REVIEW . . . . . . . . . . 2

1. Standards for Granting Dismissal of Complaint under Rule 12(b)(1) and 12(b)(6) . . . . . . . . . . 2

2. Standards for Determining Whether the Court of Federal Claims Possesses Jurisdiction over Plaintiff's Investment Claims . . . . . . . . . . 3

B. THE COURT SHOULD DISMISS PLAINTIFF'S INVESTMENT YIELD CLAIM . . . . . . . . . . 7

C. THE COURT SHOULD DISMISS PLAINTIFF'S DISBURSEMENT LAG TIME CLAIM . . . . . . . . . . 13

D. THE COURT SHOULD DISMISS PLAINTIFF'S LOST INVESTMENT INCOME CLAIM . . . . . . . . . . 18

E. THE COURT SHOULD REJECT PLAINTIFF'S PROPOSED STANDARD FOR CONSIDERING ITS DEPOSIT LAG TIME CLAIM . . . . . . . . . . 21

III. CONCLUSION . . . . . . . . . . 22

# TABLE OF AUTHORITIES

FEDERAL CASES

*Albrecht v. United States*, 329 U.S. 599, 605 (1947) . . . . . . . . . . 14

*Armstrong v. United States*, 171 F. Supp. 835 (E.D. Pa. 1959),
*remanded on other grounds*, 283 F.2d 122 (3d Cir. 1960) . . . . . . . . . . 15

*Brown v. United States*, 86 F.3d 1554 (Fed. Cir. 1996) . . . . . . . . . . 10

*Cavanagh v. United States*, 12 Cl. Ct. 715 (1987) . . . . . . . . . . 19

*Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) . . . . . . . . . . 4

*Cheyenne-Arapaho Tribes of Indians of Oklahoma v. United States*,
512 F.2d 1390 (Ct. Cl. 1975) . . . . . . . . . . 8, 9, 17

*Cobell v. Norton*, ___ F.3d ___, 2005 WL 3041512 (D.C. Cir. Nov. 15, 2005) . . . . . . . . . . 6, 10

*Cobell v. Norton*, 392 F.3d 461 (D.C. Cir. 2004) . . . . . . . . . . 5, 6

*Commodity Futures Trading Comm'n v. Nahas*,
738 F.2d 487 (D.C. Cir. 1984) . . . . . . . . . . 2

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) . . . . . . . . . . 3

*Osage Tribe of Indians of Oklahoma v. United States*,
68 Fed. Cl. 322 (Fed. Cl. 2005) . . . . . . . . . . 1, 4

*Estate of Berg v. United States*, 687 F.2d 377, 231 Ct. Cl. 466 (1982) . . . . . . . . . . 19

*Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005) . . . . . . . . . . 3, 13, 18

*In re Consupak*, 87 B.R. 529 (N.D. Ill. 1988) . . . . . . . . . . 17

*Kleppe v. Sierra Club*, 427 U.S. 390 (1976) . . . . . . . . . . 10, 11

*Library of Congress v. Shaw*, 478 U.S. 310 (1986) . . . . . . . . . . 20

*Manchester Band of Pomo Indians, Inc. v. United States*,
363 F.Supp. 1238 (N.D. Cal. 1973) . . . . . . . . . . 17

*Menominee Tribe of Indians v. United States*, 97 Ct. Cl. 158 (1942) . . . . . . . . . . 7

*Mitchell v. United States*, 664 F.2d 265, 229 Ct.Cl. 1 (1981),
*aff'd*, 463 U.S. 206 (1983) . . . . . . . . . . 10

*Neitzke v. Williams*, 490 U.S. 319 (1989) . . . . . . . . . . 2, 3

*Northern Paiute Nation v. United States*, 9 Cl. Ct. 639 (1986) . . . . . . . . . . 19

*Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004) . . . . . . . . . . 6

*Pawnee v. United States*, 830 F.2d 187 (Fed. Cir. 1987) . . . . . . . . . . 10

*Reeves v. Reno*, 61 F. Supp. 2d 661 (E.D. Mich. 1999) . . . . . . . . . . 16

*Renne v. Geary*, 501 U.S. 312 (1991) . . . . . . . . . . 2

*Seaboard Air Line Railway Co. v. United States*, 261 U.S. 299 (1923) . . . . . . . . . . 14

*Short v. United States*, 25 Cl. Ct. 722 (1992) . . . . . . . . . . 7

*Shoshone Indian Tribe v. United States*, 364 F.3d 1339 (Fed. Cir. 2004) . . . . . . . . . . 18, 20

*Smyth v. United States*, 302 U.S. 329 (1937) . . . . . . . . . . 14

*United States Department of Energy v. Ohio*, 503 U.S. 607 (1992) . . . . . . . . . . 2

*United States ex rel. Angarica DeLaRua v. Bayard*, 127 U.S. 251 (1888) . . . . . . . . . . 14

*United States v. Alcea Band of Tllamooks*, 341 U.S. 48 (1951) . . . . . . . . . . 14

*United States v. King*, 395 U.S. 1 (1969) . . . . . . . . . . 2

*United States v. Mead Corp.* 533 U.S. 218 (2001) . . . . . . . . . . 4

*United States v. Mitchell*, 463 U.S. 206 (1983) . . . . . . . . . . 4

*United States v. Navajo Nation*, 537 U.S. 488 (2003) . . . . . . . . . . 3, 5, 14, 17, 18

*United States v. New York Rayon Importing Company, Inc.*,
329 U.S. 654 (1947) . . . . . . . . . . 14

*United States v. North American Transportation & Trading Co.*,
253 U.S. 330 (1920) . . . . . . . . . . 14

*United States v. North Carolina*, 136 U.S. 211 (1890) . . . . . . . . . . 14

*United States v. Sherwood*, 312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Thayer-West Point Hotel Co.*, 329 U.S. 585 (1947) . . . . . . . . . . . . . . . . . . 14, 20

*Wally Packaging, Inc. v. United States*, 578 F. Supp. 1408 (Ct. Int'l Trade 1984) . . . . . . . . . . . 2

*Yankton Sioux Tribe v. United States*, 623 F.2d 159 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

STATE CASES

*Kamp v. Bank of America*, 204 Cal. App. 3d 819 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

FEDERAL STATUTES

101 Stat. 552 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

107 Stat 1379 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

108 Stat. 2499 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

25 U.S.C. § 162a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

25 U.S.C. § 161a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 14, 20

28 U.S.C. § 2516 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 1505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

31 U.S.C. § 3334 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

34 Stat. 539 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

41 Stat. 1250 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

43 Stat. 1008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

98 Stat. 1729 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pub. L. No. 101-644 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pub. L. No. 98-146 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pub. L. No. 98-451 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pub.L. No. 103-138 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Pub.L. No. 103-332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Pub.L. No.100-86 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## I. INTRODUCTION

Pursuant to the Court's October 27, 2005, Opinion and Order, *Osage Tribe of Indians of Oklahoma v. United States*, 68 Fed. Cl. 322 (Fed. Cl. 2005), Defendant herein replies to Plaintiff's purported clarification of its investment claims set forth in its brief filed on November 18, 2005. In addition, Defendant herein files this brief as a memorandum in support of its renewed motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), and its motion to dismiss pursuant to RCFC 12(b)(6).

Despite having had four opportunities to do so in its Complaint, Statement of Claims, Opposition to Defendant's Motion to Dismiss, in Part, Plaintiff's Tranche One Claims, and its Brief Clarifying Legal Bases for its Investment Claims, Plaintiff has failed to show a sufficient statutory or regulatory basis to support the Court's jurisdiction over certain of Plaintiff's claims. Instead, in addition to once again promising future briefing on this issue, Plaintiff conjures bases for its claims from inapplicable principles of common law, which do not provide grounds for jurisdiction under the Tucker or Indian Tucker Acts. Accordingly, for the reasons fully explained below, the Court should dismiss for lack of jurisdiction Plaintiff's claims that the Government has (1) a duty to maximize investment yields, (2) a duty to earn for the Osage trust investment returns equal to the average yields the Government obtained for other Indian trust funds, and (3) a duty to earn interest for the trust fund between the time a check is issued from the Treasury and the time when the check is paid or cancelled ("disbursement lag time" claim). In addition, the Court should dismiss for lack of jurisdiction Plaintiff's claim, as currently constituted, to lost investment income.

In the alternative, the Court should dismiss these claims pursuant to RCFC 12(b)(6). To the extent the Court finds a sufficient jurisdictional basis for Plaintiff's clarified investment claims, the

Court should conclude that these more specific claims do not fit within the scope of the source of the jurisdictional basis and should dismiss them for failure to state a claim on which relief can be granted.

In addition, Defendant below addresses certain aspects of Plaintiff's deposit lag time claim, although Defendant does not seek dismissal of this claim at this juncture.

## II. ARGUMENT

### A. STANDARDS OF REVIEW

#### 1. Standards for Granting Dismissal of Complaint under Rule 12(b)(1) and 12(b)(6)

RCFC 12(b)(1) provides for dismissal of a claim if the court lacks jurisdiction over the subject matter of a claim. A party seeking federal court jurisdiction bears the burden of demonstrating that it is so entitled. *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 492 n.9 (D.C. Cir. 1984). The Supreme Court presumes that federal courts lack jurisdiction unless the contrary appears affirmatively from the record. *E.g., Renne v. Geary*, 501 U.S. 312, 316 (1991). A plaintiff must also provide and support a jurisdictional basis for judicial review. *Wally Packaging, Inc. v. United States*, 578 F. Supp. 1408, 1410 (Ct. Int'l Trade 1984). Moreover, it is a basic tenet that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued, . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4 (1969).

RCFC 12(b)(6) also forms a basis for dismissal of Plaintiff's claims. Dismissal of a claim is authorized on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326

(1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41 (1957)). "[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' . . . a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Id.* (quoting *Hishon*, 467 U.S. at 73). Thus, a claim should be dismissed under RCFC 12(b)(6) where, as here, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his legal claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Thus, even if the Plaintiff is able to demonstrate jurisdiction over a certain type of claim, the Plaintiff's specific claim may still be dismissed if it can prove no set of facts to support its legal claim. As the Federal Circuit has recently opined in an opinion addressing a Tucker Act claim:

> Assuming that the Court of Federal Claims has taken jurisdiction over the cause as a result of the initial determination that plaintiff's cause rests on a money-mandating source, the consequence of a ruling by the court on the merits, that plaintiff's case does not fit within the scope of the source, is simply this: plaintiff loses on the merits for failing to state a claim on which relief can be granted.

*Fisher v. United States*, 402 F.3d 1167, 1175-76 (Fed. Cir. 2005). As demonstrated below, even if the Court finds that plaintiff's cause rests on money-mandating sources, Plaintiff's claims articulated in its November 18, 2005 Brief are not within the scope of those sources.

**2. Standards for Determining Whether the Court of Federal Claims Possesses Jurisdiction over Plaintiff's Investment Claims**

To demonstrate a money-mandating duty for purposes of establishing jurisdiction, Plaintiff must first "identify a substantive source of law that establishes specific fiduciary or other duties, and allege that the Government has failed faithfully to perform those duties." *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003) (citing *United States v. Mitchell ("Mitchell*

*II")*, 463 U.S. 206, 216-17, 219 (1983)). "[T]he analysis must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions." *Id.* Neither the Plaintiff nor the Court may infer the existence of a duty, nor should they merely determine whether the law can fairly be interpreted as imposing a duty. The duty must be explicit. It is only after a threshold showing of an explicit duty is made that "the court must then determine whether the relevant source of substantive law 'can fairly be interpreted as mandating compensation for damages sustained as a result of a breach of duties [the governing law] impose[s]." *Id.* (citing *Mitchell II*, 463 U.S. at 219). "[T]he availability of such damages may be inferred," *id.* (citing *Mitchell II*, 463 U.S. at 217 n.16), although not the existence of the duty.

As this Court noted in its October 27, 2005, Opinion and Order on Defendant's Motion to Dismiss, in Part, Plaintiff's Tranche One Claims, "the question of jurisdiction in this case 'turns on a statute and the intention of Congress . . . .'" *Osage Tribe of Indians of Oklahoma*, 68 Fed. Cl. at 326. It turns, as noted above, on whether a statute establishes a specific fiduciary duty. To determine whether Plaintiff has met this threshold for establishing the Court's jurisdiction, the Court should look first to the statutory language. *Id.* If appropriate, it may then look to the legislative history or to other canons of statutory interpretation to glean the intention of Congress. *Id.* If the statutory language and legislative history are ambiguous, the Court may also look to the interpretation of the law by the agency charged with the legislation's implementation. *See, e.g., United States v. Mead Corp.* 533 U.S. 218, 226-27, 234-35 (2001); *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984).

Instead of grounding its investment claims in statutory language, as elucidated by legislative history or agency interpretations of that language, Plaintiff improperly relies on the

common law, stating that "it is necessary to identify the applicable common law duties of a trustee." Plf.'s Brief at 5. Alleged common law duties are not sufficient to establish the Court's jurisdiction. The Tucker Act does not grant the Court of Federal Claims jurisdiction over duties found in the common law; rather, it grants jurisdiction with respect to any claim against the United States founded either upon the Constitution, any Act of Congress, any regulation of an executive department, upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. 28 U.S.C. § 1491(a)(1); *see also* the Indian Tucker Act, 28 U.S.C. § 1505 (granting jurisdiction to the same court with respect to claims by an Indian Tribe against the United States, "whenever such [a] claim is one arising under the Constitution, laws or treaties of the United States, or Executive orders of the President, or is one which otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe, band or group.").

The Court should reject Plaintiff's unfounded assertion that, once it has established an amorphous duty related to investments by virtue of the mere invocation of 25 U.S.C. §§ 161a and 162a, it is free to import selectively what it terms the United States' "extensive duties under the common law." Plf.s' Brief at 5. In a recent opinion, the United States Court of Appeals for the District of Columbia considered, and rejected, the Plaintiffs' position in that case that "once a trust relationship was established they could automatically 'invoke all the rights that a common law trust entails.'" *Cobell v. Norton*, 392 F.3d 461, 472 (D.C. Cir. 2004) ("*Cobell XIII*") (citation omitted). The Court reiterated that "the government's duties must be 'rooted in and outlined by the relevant statutes and treaties. . ." *Id.* (citation omitted); *see also Navajo Nation v. United States*, 537 U.S. 488, 511 (2003) (rejecting Federal Circuit's use of common law to divine a

fiduciary duty and stating that "there is no textual basis for concluding that the Secretary's approval function includes a duty, enforceable in an action for money damages, to ensure a higher rate of return for the Tribe."). The Court in *Cobell XIII* did note that "once a statutory obligation is identified, the court may look to common law trust principles to particularize that obligation." 392 F.3d at 472. Here, however, the Osage Nation is seeking to use broad common law precepts to create and impose trust fund duties on the United States, rather than using the common law to particularize an existing specific statutory duty. *See id.* at 471.

More recently, the same Court further addressed the limited role of common law in defining the Government's trust duties. *Cobell v. Norton*, ___ F.3d ___, 2005 WL 3041512 (D.C. Cir. Nov. 15, 2005). The Court opined that common law trust precepts may be used to assist in resolving statutory ambiguities. *Id.* at *4. But the Court cautioned against giving too much weight to common law, stating that "the common law of trusts doesn't offer a clear path for resolving statutory ambiguities," because the Individual Indian Money trust (which in pertinent respects is administered by the Government much the same as is the tribal trust) "differs from ordinary private trusts along a number of dimensions." *Id.* Indeed, instead of using the common law to particularize the Government's statutory trust duties, the Court concluded that *Chevron* deference to the Department of the Interior was appropriate in the context of determining the character of the accounting owed to individual Indians: the district court "erroneously displaced Interior as the actor with primary responsibility for 'work[ing] out compliance with the broad statutory mandate.'" *Id.* at *5 (citing *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004)).

Taking into consideration the foregoing standards for evaluating whether a money-

mandating duty exists, the following examines each of Plaintiff's articulated investment claims.

## B. THE COURT SHOULD DISMISS PLAINTIFF'S INVESTMENT YIELD CLAIM

The statutes that Plaintiff has cited that articulate the Government's obligations to invest Plaintiff's funds are 25 U.S.C. §§ 161a and 162a. Since 1984, section 161a(a) has authorized Interior to invest tribal trust funds in public debt securities taking into consideration the maturity needs of the fund. The statute provides that:

> . . . [A]ll funds held in trust by the United States and carried in principal accounts on the books of the United States Treasury to the credit of Indian tribes shall be invested by the Secretary of the Treasury, *at the request of the Secretary of the Interior*, in public debt securities with maturities suitable to the needs of the fund involved, *as determined by the Secretary of the Interior*, and bearing interest at rates determined by the Secretary of the Treasury, taking into consideration current market yields on outstanding marketable obligations of the United States of comparable maturities.

Pub. L. No. 98-451, 98 Stat. 1729, codified at 25 U.S.C. § 161a (1990) (emphasis added). Prior to 1984, Section 161a guaranteed at least a four percent simple interest rate of return on tribal trust funds. *See Short v. United States*, 25 Cl. Ct. 722, 726-77 (1992); *Menominee Tribe of Indians v. United States*, 97 Ct. Cl. 158, 163-65 (1942). That changed with the 1984 amendment quoted above, which expressly gives Interior the discretion to seek payment of varying interest rates on tribal trust funds.[1/]

Section 162a authorizes Interior to withdraw tribal trust funds from Treasury and deposit the funds in banks; it provides that:

---

[1/] During the Tranche One time period, there were no implementing regulations for either statute. This brief analyzes the statutes in effect from 1976 through 1990, the period covered by the Tranche One leases. Aside from editing changes and other modifications not relevant to the issues addressed here, there were no other material changes to Sections 161a and 162a in the Tranche One period. *See* Pub. L. No. 101-644; Pub. L. No. 98-146; Pub. L. No. 98-146.

> The Secretary of the Interior is hereby authorized *in his discretion*, and under such rules and regulations as he may prescribe, to withdraw from the United States Treasury and to deposit in banks *to be selected by him* the common or community funds of any Indian tribe which are, or may hereafter be, held in trust by the United States and on which the United States is not obligated by law to pay interest at higher rates than can be procured from the banks . . .[T]he Secretary of the Interior, if he deems it advisable and for the best interest of the Indians, may invest the trust funds of any tribe or individual Indian in any public-debt obligations of the United States and in any bonds, notes, or other obligations which are unconditionally guaranteed as to both interest and principal by the United States . . . .

25 U.S.C. § 162a(a) (1990) (emphasis added). Language at the end of this provision modifies the scope of allowable investments under this provision for Osage tribal funds: "the foregoing shall apply to the funds of the Osage Tribe of Indians, and the individual members thereof, only with respect to the deposit of such funds in banks."[2/] *Id.*

Plaintiff asserts that the United States must "'maximize the trust income by prudent investment. . .'" and that "'the trustee has the burden of proof to justify less than a maximum return.'" Plf.'s Brief at 12 (citing *Cheyenne-Arapaho Tribes of Indians of Oklahoma v. United States*, 512 F.2d 1390, 1394 (Ct. Cl. 1975)). Plaintiff also asserts that the United States breached a duty to earn investment returns for the Osage funds equal to the average it earned for other Indian trust funds. *Id.* As fully explained in the Government's earlier memorandum in support of its motion to dismiss in part, the Court should reject Plaintiff's investment maximization claim in light of more recent precedent supplanting *Cheyenne-Arapaho*. Mem. in Support of Def.'s Mot. to Dismiss, in Part, at 46-48 (June 14, 2005). There is simply no basis in the language or

---

[2/] Interior has determined that it is authorized to invest Osage funds in the same range of securities authorized in section 162a(a), by virtue of other Osage-specific legislation – the Act of March 3, 1921 (41 Stat. 1250) and the Act of February 27, 1925 (43 Stat. 1008-1009). 42 Bureau of Indian Affairs Manual Supplement No. 3, 3.11 (attached as Exhibit 1).

legislative history of any statute plaintiff identifies to impose any investment maximization duty on the Government. Nor, with the exception of the required four percent simple interest under the pre-1984 language of section 161a, is there a basis for a claim that the United States had a duty to earn a specific rate of return. Thus, there also is no basis for plaintiff's claim that the United States breached some purported duty to earn investment returns for the Osage funds equal to the average it earned for other Indian trust funds.

Moreover, no such duty to maximize or to earn specified returns can be found in the very common law that Plaintiff asserts is a source of the duties it asks the Court to impose on the Government. The general common law rule related to the investment of trust funds "is that the trustee is under a duty to make such investments as a prudent person would make of his own property having primarily in view the preservation of the estate and the amount and regularity of the income to be derived." William F. Fratcher, Scott on Trusts, vol. III, p. 431 (4th ed. 1988); *see also* Restatement (Third) of Trusts § 227 ("The trustee is under a duty to the beneficiaries to invest and manage the funds of the trust as a prudent investor would, in light of the purposes, terms, distribution requirements, and other circumstances of the trust." ); Restatement (Second) of Trusts § 227. The common law of trusts does not impose a duty to maximize investment returns nor, in fact, to guarantee any specific return: "The trustee is not a guarantor of the trust's investment performance." *Id.* at cmt. b. Rather, under the common law, the trustee is to exercise reasonable care, skill, and caution in making investments and "should incorporate risk and return objectives reasonably suitable to the trust." Restatement (Third) of Trusts § 227(a).

In any event, the Court need not and should not rely on the common law of trusts to define the duties of the Government related to investments. As counseled by the Supreme Court in

*Navajo* and the Federal Circuit in, for example, *Pawnee v. United States*, 830 F.2d 187, 191-92 (Fed. Cir. 1987) and *Brown v. United States*, 86 F.3d 1554, 1563 (Fed. Cir. 1996), the Court instead must examine the language of the investment statutes to identify the duties.[3] In enacting sections 161a and 162a, Congress expressly vested in Interior the discretion to select among the investment options and vehicles authorized. Congress provided certain parameters to guide the exercise of this discretion, including the appropriateness of investment maturities and the need to ensure the security of certain investments. Thus, the Government's duty related to investments is to appropriately exercise its discretion in a manner consistent with these stated parameters. In evaluating whether the United States exercised appropriately its discretionary authority under sections 161a and 162a, the Court should determine whether the Government considered the relevant factors, whether it had a rational basis for its actions, and whether it acted within the scope of its statutory authority. Further, the Government's decision is entitled to a presumption of validity and the Court should not substitute its own findings for that of the Government. *See, e.g.*, *Cobell*, ___ F.3d ___, 2005 WL 3041512 at*4–5; *Mitchell v. United States*, 664 F.2d 265, 274, 229 Ct.Cl. 1, 14 (1981), *aff'd*, 463 U.S. 206 (1983); *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976).

Although the Court should not turn to the common law on this issue, the Government notes that its application of this abuse of discretion standard is consistent with the standards at common law. Under the common law of trusts, "[w]here discretion is conferred upon the trustee

---

[3] Even if the Court were to examine the common law, however, it would end up at the same place. "Trustees have a general fiduciary duty to comply with the terms of their trusts. . . . The nature and extent of a trustee's duties and powers are primarily determined by the terms of the trust." Restatement (Third) of Trusts § 227, cmt. b (citing §§ 228, 164).

with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse of discretion." Restatement (Second) of Trusts § 187. In evaluating whether the trustee has abused its discretion, the Court may consider, *inter alia*, "the extent of discretion conferred upon the trustee, . . ." and "the existence or nonexistence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged." *Id.* at cmt. d. Further,

> the court will not interfere unless the trustee is exercising or failing to exercise the power acts dishonestly, or with an improper even though not a dishonest motive, or fails to use his judgment, or acts beyond the bounds of a reasonable judgment. The mere fact that if the discretion had been conferred upon the court, the court would have exercised the power differently, is not a sufficient reason for interfering with the exercise of the power of the trustee.

*Id.* at cmt. e. And "[i]f there is a standard by which the reasonableness of the trustee's judgment can be tested, the court will control the trustee in the exercise of a power[, by, for instance, 'holding [the trustee] liable for the results of his action or inaction,' *id.* at cmt. b,] where he acts beyond the bounds of a reasonable judgment." *Id.* at cmt. i.

As one example of how the Court should apply the abuse of discretion standard, the following addresses Plaintiff's claim that the Government breached its investment duty by failing to earn investment returns equal to the average yields obtained for other Indian trust funds.[4/] Plf.'s Brief at 12. Even assuming such a duty exists (and it does not), section 161a expressly provides that Interior, when it exercises its discretion to request that the Secretary of Treasury invest trust funds, is to determine the "maturities suitable to the needs of the fund involved." 25

[4/] As noted above, there is no statutory basis for Plaintiff's asserted claim that the United States must earn for the Osage funds the equivalent of the average return it earns on all tribal funds.

U.S.C. § 161a(a). Section 162a thus comes into play if, in the exercise of Interior's discretion, Osage funds are withdrawn from Treasury and deposited in banks under section 162a(a). In exercising its discretion under section 162a, a key relevant factor for the Government to consider, as in exercising its discretion under section 161a, is the suitability of the maturities of investments given the needs of the Tribe's specific fund. The Government properly exercised its discretion by investing in instruments with maturities appropriate to the specific Osage Trust fund at issue in this case.

Tranche One involves one account of the Osage Tribe, account 7386, to which royalty receipts are deposited. The Government disburses the royalties, net of taxes and Tribal Council expenses, on a quarterly basis to the Tribal members. Act of June 28, 1906, 34 Stat. 539, § 4 ("1906 Act"). Accordingly, the maturities suitable to the fund necessarily are limited by the required quarterly payment to Tribal members. To the extent that the Government invested in instruments permitted under the statutes with maturities appropriate to meet the quarterly payments (and Plaintiff nowhere claims that it did not so invest), it did not abuse its discretion. Thus, given the need to make the quarterly annuity payments, Plaintiff has no basis to compare the Osage Trust investment returns to the average yields obtained for other Indian trust funds, because other Indian trust funds do not involve the same quarterly disbursement requirements. Plaintiff cannot show that the Government breached any duty purportedly owed to the Osage Nation or abused its discretion in connection with its Osage investments by failing to earn for the Osage the average return on all tribal investments.[5]

---

[5] Indeed, the evidence will show that the investment return for the Tranche One royalties generally exceeded average yields for investments with maturities suitable for Osage investments, which is compelling evidence that the Government did not breach the duty that

In summary, the Court should dismiss for lack of jurisdiction plaintiff's claim that the United States had a duty to maximize the trust income of the Osage Tribe and that the United States had a duty to earn investment returns equal to the average yields it obtained for other Indian trust funds. Plaintiff has failed to show any statutory or regulatory substantive source of law establishing those alleged duties. To the extent that the Court deems that the investment statutes are a sufficient source for the money-mandating duties that Plaintiff claims, the Court should conclude that plaintiff's claims do not "fit within the scope of the source" and should dismiss them for failure to state a claim for which relief can be granted. *Fisher*, 402 F.3d at 1175-76.

**C. THE COURT SHOULD DISMISS PLAINTIFF'S DISBURSEMENT LAG TIME CLAIM**

The Tribe also alleges that the United States breached its duty to make trust assets productive when it failed to earn interest on funds between the time they were disbursed and the time that checks for those disbursements were either cashed or canceled. See Plf.'s Brief at 12-13. The Tribe provides no substantive source of law to support its imposition of this asserted duty on the United States. Instead, it relies solely on broad common law concepts to infer a specific duty referenced neither by any statute nor the common law.

The Tribe's wholesale reliance on the common law to impose money mandating duties on the United States in the absence of any substantive source of law establishing those duties is clearly misplaced. As noted earlier in this brief, to establish subject matter jurisdiction, the "tribe must identify a substantive source of law that establishes specific fiduciary or other duties" on

---

Plaintiff claims and that it in fact properly exercised its investment discretion.

the United States. *Navajo Nation*, 537 U.S. at 490. Relying on broad common law concepts falls far short of the requirements of *Navajo Nation* and therefore cannot insulate the Tribe's disbursement interest claims from dismissal.

It is well-established that, absent specific statutory language, claims for interest against the government will not stand. *See, e.g., United States v. Alcea Band of Tllamooks*, 341 U.S. 48, 49 (1951) ("It is the 'traditional rule' that interest on claims against the United States cannot be recovered in the absence of an express provision to the contrary in the relevant statute or contract.") (citing 28 U.S.C. (Supp. III) §2516(a)); *United States v. Thayer-West Point Hotel Co.*, 329 U.S. 585, 588 (1947)). *See also Seaboard Air Line Railway Co. v. United States*, 261 U.S. 299, 304 (1923) (interest not allowed against the United States except where agreed upon under contract or where authorized by an Act of Congress); *United States v. North American Transportation & Trading Co.*, 253 U.S. 330, 336 (1920) (same); *United States v. North Carolina*, 136 U.S. 211 (1890) (same); *United States ex rel. Angarica DeLaRua v. Bayard*, 127 U.S. 251, 260 (1888) (same). Absent such authority, interest will not accrue notwithstanding the government's delay or default in payment. *United States v. New York Rayon Importing Company, Inc.*, 329 U.S. 654, 660 (1947); *Albrecht v. United States*, 329 U.S. 599, 605 (1947); *Smyth v. United States*, 302 U.S. 329, 353 (1937).

As discussed above, the United States' generalized duty to invest tribal trust funds arises from 25 U.S.C. §161a and 162a. On their faces, these statutes do not establish any duty on the United States to earn interest on funds between the time checks are drawn on the trust and when those checks are either cashed or canceled. And, likewise, the legislative history behind the

statutes is equally unavailing for the Tribe as it makes no mention of a duty to be productive or a duty to earn interest on disbursed funds.[6]

Nor does the statute under which Treasury checks are cancelled provide for the payment of interest. The Competitive Equality Banking Act of 1987, Pub.L. No.100-86, 101 Stat. 552 ("CEBA") provided for the cancellation of checks then outstanding for more than one year, and provides for the future cancellation, on a rolling basis, of checks outstanding for more than one year. The proceeds of the existing checks cancelled under CEBA were to be used to offset certain government costs, while the proceeds of future checks cancelled under CEBA "shall be returned to the agency concerned and credited to the appropriation or fund account initially charged for the payment." 31 U.S.C. 3334(a), (b). Neither provision contains the necessary specific language required to mandate that the government pay interest on those cancelled disbursements.

Indeed, even when Congress provided appropriated funds to reimburse tribal trust funds for the proceeds of existing cancelled checks that had been issued from trust funds, it did not include any provision for the payment of interest. *Compare*, Department of the Interior & Related Agencies Appropriations Act, 1994, Pub.L. No. 103-138, 107 Stat 1379, 1393 (1993), clause (1) ("$3,000,000 shall be available to (1) liquidate obligations owed tribal and individual Indian payees of any checks canceled pursuant to section 1003 of the Competitive Equality

---

[6] From a practical perspective, deducting disbursements from accounts and ceasing accrual of interest upon issuance of a Treasury check makes sense when one considers that Treasury checks – which are payable on demand because they are issued and backed by the federal government – are considered cash equivalents and the payee is entitled to obtain the funds from the check without waiting for it to clear the banking system. See *Armstrong v. United States*, 171 F. Supp. 835, 838 (E.D. Pa. 1959) (Treasury check has same effect as bank's check and is the equivalent of the receipt of cash), *remanded on other grounds*, 283 F.2d 122 (3d Cir. 1960).

Banking Act of 1987 (Public Law 10086 (101 Stat. 659)), 31 U.S.C. 3334(b)" *with id.* at clause 2 ("and (2) to restore to Individual Indian Monies trust funds amounts invested in credit unions or defaulted savings and loan associations and which were not Federally insured, ***including any interest on these amounts that may have been earned but was not because of the default.***") (emphasis added).

In that and later appropriations acts (*see* Department of the Interior & Related Agencies Appropriations Act, 1995, Pub.L. No. 103-332, 108 Stat. 2499, 2509 (1994)), Congress plainly granted interest to Individual Indian Monies trust funds to account for lost interest on investments made by defaulting lending institutions. Likewise, Congress plainly excluded any mention of interest on disbursed funds associated with tribal trust fund checks that had been cancelled under CEBA. When Congress expressly provides for an entitlement or right (here, interest) in one provision, and is silent in another provision in the same Act, the implication is that Congress did not intend the entitlement or right in the second provision. *See, e.g., Reeves v. Reno*, 61 F. Supp. 2d 661, 666 (E.D. Mich. 1999). In other words, the inclusion of interest in one statutory provision shows that Congress knew what language was sufficient to provide for interest; the failure to authorize interest in the provision related to cancelled checks shows that Congress did not intend interest to be provided as part of the reimbursement for the cancelled checks. Accordingly, Congress' intent was clear: there was no duty on the United States – and, without an appropriation, no ability – to pay interest on funds restored to the trust funds due to check cancellation under CEBA.[7/]

[7/] That Congress in the CEBA did not intend to pay interest between the time a disbursement check was issued and the time the check was cancelled supports the conclusion that interest is not owed on disbursed funds between the time a disbursement check was issued and the time the check was paid.

Finding no substantive source of law to support its claim, the Tribe turns to a vague common law duty, "to make trust assets productive," as the sole rationale for imposing on the United States a duty to invest disbursed funds. As discussed previously in this brief, the Tribe's reliance on common law concepts to impose a duty on the United States is misguided.[8] Their claims are not grounded in substantive statutory or regulatory sources of law and therefore, should be dismissed under the standards set forth in *Navajo Nation*. 537 U.S. at 506.

In any event, even under the common law, trustees have no duty to pay interest on disbursed funds. Trust law permits a trustee to deposit with itself trust funds that are being held pending distribution/disbursement. For example, in a situation where a trustee holds funds pending distribution to an investment, it need not earn interest for the beneficiary while the funds are so held. "Where a trust company is permitted to deposit trust funds awaiting investment in its own commercial department, the funds so deposited cease to be trust funds and become the individual property of the trust company, and it is not accountable for any profit it makes in its commercial department through the use of the funds." Scott on Trusts, § 203. Further, the Restatement (Second) Trusts provides that "A trustee may deposit trust funds in a bank for the

---

[8] The Tribe's reliance on caselaw to support its claim that the "duty to be productive" includes the duty to earn interest on disbursed funds is unpersuasive as the cases cited address factual and legal situations greatly disparate from the claim Plaintiff advances here. For instance, the Tribe cites *In re Consupak*, 87 B.R. 529, 540, 543 (N.D. Ill. 1988) for the proposition that disbursed funds should be invested. See Pl. Brief at 10. *In re Consupak* is a bankruptcy case decided under Illinois law focusing on claims that a bankruptcy trustee should have invested money that was held in cash during the tenure of the bankruptcy. It addresses duties related to the investment of idle funds pending distribution and as such, bears no relationship to the duty to earn interest on disbursed funds. The Tribe's reliance on *Manchester Band of Pomo Indians, Inc. v. United States*, 363 F.Supp. 1238 (N.D. Cal. 1973), and *Cheyenne-Arapaho Tribes of Indians v. United States*, 512 F.2d 1390 (Ct. Cl. 1975) is also misplaced as those cases focus on the duties of the United States in making proper investments of the trust funds prior to disbursement. They do not address whether the government has any duty to earn interest on disbursed funds.

purpose of making the funds available from time to time for the payment of expenses or pending investment or distribution." *Id.* at §180, cmt. a (discussing duty with respect to bank deposits). The bank account in which the funds are deposited does not have to be interest-bearing. *Id.* at cmt. a and b. *See also id.* at §181, cmt. d (discussing duty to make trust property productive – "The trustee may also hold reasonable amounts in a checking account, even if the only 'return' is to compensate for banking services on a suitable basis."); *Van de Kamp v. Bank of America*, 204 Cal. App. 3d 819, 852-53 (1988) (finding no obligation to provide to beneficiary "disbursing float"). Thus, the common law does not require that a trustee earn interest on the beneficiaries' funds at all times that the trustee holds those funds.

In summary, the Plaintiff has failed to show the Government has a duty to earn interest on the money disbursed from the Tribe's trust account during so-called disbursement lag times. For this reason, the Court should dismiss this claim for lack of jurisdiction. Further, to the extent that the Court deems that the investment statutes are a sufficient source of a money-mandating duty for the Tribe's investment claims, the Court should conclude that Plaintiff's disbursement lag time claim does not "fit within the scope of the source" and should dismiss it for failure to state a claim for which relief can be granted. *Fisher*, 402 F.3d at 1175-76.

## D. THE COURT SHOULD DISMISS PLAINTIFF'S LOST INVESTMENT INCOME CLAIM

Plaintiff also maintains that a component of damages for any breach of trust by the United States is interest income that the trust would have earned had the United States not breached its trust duties. The Government does not dispute this basic premise, which is enunciated in *Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1351-55 (Fed. Cir. 2004). The Government, however, disputes the Plaintiff's conception of the timeframe for which interest is

owed. Any interest should be limited to that which would have accrued by the Government between the dates, for example, of the underpayment of royalties, failure to collect royalties, or failure to timely deposit receipts, and the date of the annuity disbursement that would have included that income had it been timely collected or deposited. Since the Government, by law, would have disbursed those receipts or earnings as part of its quarterly annuity payment to the tribal members, 1906 Act § 6, the Tribe is not entitled to interest beyond the period that the Government would have held those receipts or earnings.[9/]

This construction is supported by the presumption that prejudgment interest is unavailable as an element of relief against the United States. That presumption rests both on general principles of sovereign immunity and, in part, on 28 U.S.C. 2516(a), which states that "[i]nterest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof." The Supreme Court has made clear that Section 2516(a) imposes a substantial burden on a party seeking an award of interest against the United States:

> [T]here can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed.

*Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986) (citations and internal quotation marks omitted). Similarly, in *United States v. Thayer-West Point Hotel Co.*, the Court stated that

[9/] Damages must be measured as of the time of breach. *See, e.g.*, *Estate of Berg v. United States*, 687 F.2d 377, 380, 231 Ct. Cl. 466, 469 (1982); *Northern Paiute Nation v. United States*, 9 Cl. Ct. 639, 643 (1986); *Cavanagh v. United States*, 12 Cl. Ct. 715, 717 (1987). Any breach would have ended by the time the lost income would have been disbursed as part of a quarterly annuity payment.

> [i]t is not enough that the term [in a contract] might be construed to include the payment of interest. * * * That provision must be affirmative, clear-cut, unambiguous * * *. Likewise, where a statute is relied upon to overcome the force of [the predecessor of 28 U.S.C. 2516], the intention of Congress to permit the recovery of interest must be expressly set forth in the statute.

329 U.S. 585, 588-589 (1947).

In addition, finding that Plaintiff is entitled only to the interest between the date that the damages were incurred and the date of the next annuity payment is consistent with *Shoshone*. In *Shoshone*, the Court concluded that 25 U.S.C. §§ 161a, 161b, and 162a, in conjunction with a fiduciary duty of the Government to collect revenue, create an obligation for the Government to pay interest on amounts that the Government failed to collect. 364 F.3d at 1353. The interest payment would not be considered an award on damages, but '"as part of the damages award itself.'" *Id.* (citation omitted). The damages that the Osage Tribe would have incurred due to, for example, a royalty underpayment, would have included the amount of the underpayment and the lost investment returns or interest that would have been earned on that royalty revenue. In turn, the investment returns or interest that would have been earned on that royalty revenue would have accrued only up until the point of the next quarterly annuity payment. Plaintiff has not demonstrated that it is entitled to interest up to today's date. Indeed, Plaintiff itself seeks only the "interest and investment earnings the Osage Trust would have received. . . ." Plf.'s Brief at 14. Paying interest to present would provide the Tribe with more earnings than it would have received and would amount to an award of interest on damages, for which there is no authorization in the relevant statutes.

For these reasons, the Court should dismiss for lack of jurisdiction Plaintiff's claim to interest beyond the period between the date that the income should have been collected or earned

and the date of the next annuity payment that would have included that income. In the alternative, the Court should conclude that Plaintiff's claim to lost investment income does not fit within the scope of any source of a money-mandating duty and should dismiss it for failure to state a claim for which relief can be granted.

### E. THE COURT SHOULD REJECT PLAINTIFF'S PROPOSED STANDARD FOR CONSIDERING ITS DEPOSIT LAG TIME CLAIM

The United States does not dispute that it has a duty to deposit funds that it receives for the Osage Tribe into Treasury: "the royalty received from oil, gas, coal, and other mineral leases . . . shall be placed in the Treasury of the United States to the credit of the members of the Osage tribe of Indians as other moneys of said tribe are to be deposited under the provisions of this Act, . . ." 1906 Act § 4. In its clarification brief, the Tribe asserts that the United States has a duty to promptly deposit Osage funds and to make them productive. Plf.'s Brief at 10. Plaintiff suggests that the Government has breached its duty if more than 24 hours elapses between the receipt of funds and their deposit into an interest-bearing account.

Various sources provide guidance on an appropriate minimal acceptable period between the receipt of trust funds and their deposit, each of which refutes Plaintiff's claim. During the early Tranche One periods, for example, the Treasury Fiscal Requirements Manual provided that "[t]he deposit of all funds received for credit to the Treasurer of the United States should be made without delay." Treasury Fiscal Requirements Manual, Part V - Deposit Regulations (1969) (Attached as Exhibit 2). Starting with the 1979 Tranche One period, Treasury guidelines related to deposits provided that receipts that are mailed for deposit should be "dispatched no later than the morning of the business day following receipt or accumulation of $1,000 or more." Treasury Fiscal Requirements Manual, Section 8030.40 (1979) (Attached as Exhibit 3); *see also* Treasury

Financial Requirements Manual, Section 8030.30 (1985) (Attached as Exhibit 4). Accordingly, at a minimum, the Osage Agency was acting within reason in mailing within one business day receipts for deposit in a situation, such as that facing the Osage Agency, where no local federal depository was established. This is not to say, however, that a longer period would not be reasonable depending on circumstances related to a particular receipt.[10]

## III. CONCLUSION

For the foregoing reasons, the Court should grant Defendant's Motion to Dismiss Plaintiff's claims that the Government has a duty to maximize investment yields, a duty to earn for the Osage Trust investment returns equal to the average yields the Government obtained for other Indian Trust funds, and a duty to earn interest for the trust fund between the time a check is issued from the Treasury Department and the time when the check clears or is cancelled (disbursement lag time claim). In addition, the Court should dismiss Plaintiff's claim, as currently constituted, to lost investment income.

Respectfully submitted, on December 2, 2005,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

---

[10] As for Plaintiff's assertion that the Government should have made arrangements to deposit checks locally in a bank in Pawhuska, Bartlesville, or Tulsa, Oklahoma instead of mailing them to the Bureau of Indian Affairs Area Office in Muskogee, Oklahoma for deposit there, and that the Government improperly structured its administration of deposits for ease of administration, the Government will rebut Plaintiff's unsupported contentions at trial. Defendant notes here, however, that *Yankton Sioux Tribe v. United States*, 623 F.2d 159, 179 (1980), on which Plaintiff relies, is inapposite. *Yankton* involved a situation where the Government actually used monies from the Tribe's trust fund to pay for administrative expenses. Neither *Yankton* nor any other case requires the Government to take all administrative steps, regardless of whether they are reasonable, to maximize the earnings of the trust fund.

*s/ Brett D. Burton*
BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Counsel of Record for Defendant

*s/ Martin J. LaLonde*
MARTIN J. LALONDE
KEVIN WEBB
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0247/0479
Fax: (202) 353-2021

Attorneys for Defendant

OF COUNSEL:
Elisabeth Brandon
Brenda Riel
Attorneys
Office of the Solicitor
Division of Indian Affairs
U.S. Department of the Interior
MS 6456
Washington, D. C. 20240
Telephone: (202) 208-7403
Fax: (202) 219-0559

Teresa E. Dawson
Senior Counsel
Office of Chief Counsel
Financial Management Services
U.S. Department of the Treasury
401 14th Street, S.W.
Room 552A

Washington, D.C. 20227
Telephone: (202) 874-2567
Fax: (202) 874-6627