**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Electronically Filed<br>January 12, 2006<br><br>Nos. 00-169 L & 99-550<br>Judge Emily C. Hewitt |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE DOCUMENTS AND TESTIMONY FOR VIOLATIONS OF THE COURT'S SCHEDULING AND DISCOVERY ORDERS**

Plaintiff Osage Nation hereby submits this Memorandum of Points and Authorities in support of its Motion to Exclude Documents and Testimony for Violations of the Court's Scheduling and Discovery Orders. The Government apparently intends to introduce at trial documents and expert testimony that were produced to the Osage Nation long after applicable deadlines. The delay in providing this proposed evidence violates specific and direct orders of the Court, and prejudices the Osage Nation's ability to prepare for trial. These untimely materials include:

1) a "Supplemental Report" of expert Ronnie A. Martin, served on January 10, 2006, long after not only this Court's deadline for the government's expert reports, but also the deadline for the reply report of Osage Nation's expert, and the deadline for conducting expert discovery;

2) a "Supplement" to the report of expert Gregory J. Chavarria, served on December 9, 2005, after the same deadlines for expert reports had passed;

3) 429 documents from Interior Board of Indian Appeals files relating to the *Okie Crude* case, constituting over 6,000 pages, that were produced to the Osage Nation for the first time on January 11, 2006; and

4) over 100 other documents produced after the Court-imposed discovery deadline, many of which were produced months after fact discovery had closed.

These untimely disclosures constitute an attempt at "trial by ambush," which, if successful, would severely prejudice the Osage Nation. The Osage Nation is filing its pre-trial brief concurrently with this motion on January 12, 2006, and is necessarily preparing for trial on the basis of the record as it was developed according to the Court's orders. The Court should enter an order striking these untimely expert reports and barring all other untimely evidence from trial to protect the integrity of the Court's orders and prevent manifest prejudice to the Osage Nation.

## I. Background

### A. The Court's Orders Establishing Deadlines for Fact Discovery and Expert Reports

On March 25 and April 15, 2005, the Court issued scheduling orders, the primary purpose of which was to insure that a trial on the issues in "tranche one" of this case could be held in the winter of 2005-06. Accordingly, those orders set a number of interim deadlines for fact and expert discovery consistent with a plan to hold a two-week trial during that period. Under those orders, fact discovery on all "tranche one" issues had to be completed by July 1, 2005. The Osage Nation's and the Government's expert reports had to be submitted, respectively, in July and August 2005, while all depositions of experts had to be completed by September 22, 2005.

On June 16, 2005, the parties filed a joint motion requesting that the interim deadlines for fact discovery on "tranche one" issues be extended for 60 days so that the parties could jointly search for missing documents at the American Indian Records Repository ("AIRR") that were relevant to "tranche one" issues. In that joint motion, the parties also requested similar

extensions of the deadlines for filing expert reports and conducting expert discovery. However, the parties did *not* request that the trial be delayed past the winter of 2005-2006.

In an order dated June 20, 2005, the Court granted the parties' joint motion for revision of the interim discovery deadlines. Under that order, all fact discovery concerning "tranche one" issues had to be completed by September 1, 2005. In addition, the Osage Nation had to serve its expert reports on September 15, 2005; the Government had to serve its response reports by October 20, 2005; and the Osage Nation had to serve its reply reports by November 10, 2005. The June 20 order also required all expert depositions to be completed by December 1, 2005. Trial was set for the two-week period beginning February 27, 2006.

During the months of July and August 2005, the parties worked cooperatively to plan and execute the joint discovery. Both parties committed substantial resources to that effort. That joint discovery project was successful to some extent in that the parties were able to locate some – but not all – of the missing "tranche one" documents.

By order issued September 1, 2005, the Court slightly modified the deadlines for the expert reports and for depositions of experts. As modified, the Osage Nation's expert reports were due on September 30, 2005; the Government's expert reports were due on November 3, 2005; the Osage Nation's reply expert reports were due on November 23, 2005; and all depositions of experts had to be completed by December 12, 2005.

As required by the Court's September 1, 2005 order, the Osage Nation served the Government with the expert reports of Mr. Dan Reineke and Mr. Steve Jay on September 30, 2005. Those reports were prepared on the basis of the record as it existed on September 1, 2005, and as developed in accordance with the Court's orders.

On November 3, 2005, the government served on the Osage Nation the expert reports of Mr. Greg Chavarria, Mr. Charles Lundelius, and Mr. Ronnie Martin. Attached to Mr. Chavarria's report as an unmarked exhibit were 18 pages of documents that had not previously been produced to the Osage Nation.

On November 8, the Osage Nation took the deposition of Mr. Martin. On November 9, the Osage Nation took the deposition of Mr. Chavarria. On November 10, the Osage Nation took the deposition of Mr. Lundelius.

As required by the Court's September 1, 2005 order, the Osage Nation served the rebuttal expert reports of Mr. Reineke and Mr. Jay on or before November 23, 2005. The Government subsequently took the deposition of both of the Osage Nation's experts.

On December 9, 2005, the Government served the "Expert Report – Supplement" of Mr. Greg Chavarria, and on January 10, 2006, the Government served the "Supplemental Expert Report" of Mr. Ronnie Martin.

On or about December 20, 2005, the Government provided the Osage Nation with lists of trial exhibits. Those lists include numerous documents that the government did not provide to the Osage Nation until after September 1, 2005. In addition, among the listed materials were thousands of documents from the administrative record of *Okie Crude Co. v. Muskogee Area Director*, 23 IBIA 174 (1993). According to a recent communication, the Government intends to use 492 of the documents from the *Okie Crude* record, constituting over 6,000 pages, at trial. Those 492 documents were produced to the Osage Nation for the first time on January 11, 2006.

## II. The Court's Authority to Exclude from Evidence the Untimely Information

This Court has ample authority from multiple sources to exclude from evidence the documents and testimony that the Government failed to produce to the Osage Nation in accordance with the Court's orders.

### A. Authority Under Rule 16

Rule 16 of the Rules of the Court of Federal Claims (RCFC) permits the Court to convene pretrial conferences and to issue scheduling orders, including orders scheduling fact and expert discovery. RCFC 16(b) (2005). The Rule further empowers the Court to impose sanctions against parties or attorneys that violate a scheduling order. RCFC 16(f) (2005). These sanctions include entry of an order forbidding introduction of certain evidence. *Id.* (incorporating by reference the exclusion provision in RCFC 37(b)(2)).

Rule 16 has been used regularly by courts to protect the integrity of scheduling orders and to prevent parties from being surprised with previously undisclosed evidence on the eve of trial. *See, e.g.*, *Exxon Corp. v. Halcon Shipping Co., Ltd.*, 156 F.R.D. 589 (D.N.J. 1994) (expert precluded from testifying in portion of trial due to violation of scheduling order).

### B. Authority Under Rule 37

In addition to RCFC 16, the Rules provide for exclusion where a party has failed to follow a scheduling order. Pursuant to RCFC 37(b):

> **(2) Sanctions Concerning Parties.** If a party … fails to obey an order to provide or permit discovery, … or if a party fails to obey an order entered under RCFC 16(b), the court may make such orders in regard to the failure as are just, and among others the following:
>
> > (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

RCFC 37(b) (2005).

Further, where a party has failed to comply with rules governing disclosures under RCFC 26(a), including disclosures regarding expert witnesses, Rule 37(c) calls for mandatory exclusion.

> (1) A party that without substantial justification fails to disclose information required by RCFC 26(a) … is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

RCFC 37(c)(1) (2005). The Advisory Committee notes to Rule 37(c)(1) of the Federal Rules of Civil Procedure (the District Court counterpart to RCFC 37(c)(1)) explain that the exclusion provision of FRCP Rule 37(c)(1) is an "automatic sanction" that is "self-executing" to prevent use of information or witnesses not properly disclosed. FED. R. CIV. P. 37 (advisory committee's note) (2005). The Rule provides an exception where the failure to disclose is "harmless" or substantially justified. RCFC 37(c)(1) (2005). Exclusion of improperly disclosed evidence is "automatic and mandatory" unless the party to be sanctioned can show that the violation was justified or was harmless. *See Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996) (applying federal rule).

**C. Inherent Authority**

In addition to the foregoing, a court has inherent authority to control its own docket, which necessarily includes the power to sanction parties for violation of orders of the court such as scheduling orders. This includes the power to exclude evidence. *See Admiral Theatre Corp. v. Douglas Theatre Co.*, 585 F.2d 877, 897-98 (8th Cir. 1978) ("[t]he power of the trial court to exclude exhibits and witnesses not disclosed in compliance with its discovery and pretrial orders is essential to the judicial management of a complex case"). The inherent authority of courts exists separate and apart from authority provided by statutes or rules. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 48 (1991).

## III. Argument

### A. The Untimely Expert Testimony Is Subject to Automatic Exclusion.

#### 1. The "Supplemental Reports" of Chavarria and Martin Violate the Court's Scheduling Orders.

In submitting the "supplement" to Mr. Chavarria's report and the "Supplemental Report" of Mr. Martin, the Government has violated the Court's September 1, 2005 scheduling order, exceeding the deadlines imposed in that order. If the government were permitted to rely upon this untimely information at trial, the Osage Nation would suffer prejudice. In particular, the Osage Nation's ability to challenge the "supplement" from Mr. Chavarria is very limited. By the time the Osage Nation received this new report, it already had deposed Mr. Chavarria four times, and was preparing to conduct a final deposition only days later. Moreover, the deadline for the Osage Nation to file rebuttal reports from its own experts had passed.

The Supplemental Report for Mr. Martin presents even greater difficulties. The Osage Nation received Mr. Martin's Supplemental Report by email on the evening of January 10, less than two days before the deadline for filing its pre-trial brief. The Osage Nation now has virtually no opportunity to challenge the novel theories contained therein prior to trial. The Osage Nation cannot file another rebuttal report from its own expert, and the Osage Nation cannot depose Mr. Martin on his new conclusions. At this late date, it will be very difficult for the Osage Nation even to investigate Mr. Martin's new conclusions sufficiently to allow the Osage Nation to adequately cross-examine him on these conclusions at trial.

The untimely submissions violate the Government's obligations under RCFC 26(a)(2). As many courts have found, where the designation of experts or submission of expert reports are untimely, the reports are to be struck, and such testimony is to be excluded from trial under RCFC 37(c). *See, e.g., Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380-381 (5th Cir. 1996)

(district court struck testimony of experts that had not formed final opinions by scheduling order deadline).

**2. The Exceptions to 37(c) Do Not Apply.**

As noted above, Rule 37(c) provides exceptions where failure to comply with the rules is substantially justified or harmless. RCFC 37(c)(1) (2005). These exceptions are included to avoid "unduly harsh penalties" in various situations, such as where a key witness known to both parties was inadvertently omitted from a witness list. *See* FED. R. CIV. P. 37 (2005) (advisory committee notes). There is no binding precedent for the Court of Federal Claims to follow in determining whether a violation subject to Rule 37(c) falls into this exception. *See Tritek Technologies v. United States*, 63 Fed. Cl. 740, 750 (Ct. Fed. Cl. 2005) (Federal Circuit cases applying Rule 37 have applied law of other circuits). It is established, however, that the burden lies with the Government to show that its violation of the rules fits within the exception. *Id.*

**a. The Government's Delay Is Unjustified.**

The Government can offer no justification for its violation of the Court's order. None of the documents on which the supplemental reports rely came from the Osage Nation, and the Osage Nation did not obstruct these experts in any way. The Osage Nation has met the discovery and expert discovery deadlines as set forth in the scheduling order.

In light of the swiftly approaching trial, the Osage Nation does not seek the delay of trial that would be necessary to adequately defend against the new theories in these supplemental reports, and instead believes that automatic exclusion under RCFC 37(c) is proper.

**b. The Osage Nation Is Prejudiced by the Government's Delay.**

In the supplemental reports, the Government offers new conclusions and opinions some months after the close of expert discovery, after the Osage Nation no longer has an adequate opportunity to challenge the new findings.

As one court described a similar gambit, admission of a supplemental report would constitute "trial by ambush," a tactic that the court considered "unacceptable." *Transclean Corp. v. Bridgewood Serv., Inc.*, 101 F. Supp. 2d 788, 796 (D. Minn. 2000). This Court should similarly protect the Osage Nation from being caught in a trap of the Government's making. The supplemental reports of Mr. Chavarria and Mr. Martin should be struck and the new opinions contained therein should be excluded from trial.

**B. The Government Should Be Precluded from Introducing Documents that Were Not Disclosed in Accordance with the Court's Orders.**

The Court should exercise its discretion to preclude the Government from presenting documentary evidence at trial that was not produced according to the Court's March 26, 2004 discovery order and subsequent scheduling orders. Any delay in locating, collecting, or producing these documents rests with the Government, and the Osage Nation should not be punished by the Government's inability to comply with the Court's deadlines.

As described above, the Osage Nation received over 6,000 pages of new documents designated as trial exhibits on the day before its pre-trial brief was to be filed, mere weeks before the start of trial. While the Government apparently is sufficiently familiar with these new documents to include them on its trial exhibit list, the Osage Nation will be challenged even to review the documents before trial. There is no meaningful opportunity for the Osage Nation to evaluate and prepare a response to the *Okie Crude* documents. Nor should the Government be permitted to introduce into evidence any other documents produced after the close of discovery,

including documents produced along with Mr. Chavarria's November 3, 2005 report and Mr. Martin's January 2006 Supplemental Report.

An order precluding the Government from introducing any of these untimely documents into evidence is necessary to ensure that the Government does not gain a benefit from violating the rules. As the D.C. Circuit wrote in justifying exclusion of evidence, "a party that does not provide discovery cannot profit from its own failure." *Dellums v. Powell*, 566 F.2d 231, 235 (1977).

**IV. Conclusion**

There is no justification for the Government's violation of the Court's discovery schedule in this case, and admission this new evidence and expert testimony would unduly prejudice the Osage Nation. Moreover, as the Federal Circuit has opined, "adherence to reasonable court deadlines is critical to restoring integrity in court proceedings." *Trilogy Communications, Inc., v. Times Fiber Communications, Inc.*, 109 F.3d 739, 745 (Fed. Cir. 1997) (quoting from *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990)) (upholding exclusion of supplemental expert report under 5th Circuit law). Excluding the materials produced after the applicable deadlines as a sanction for the Government's unexplained failure to adhere to the Court's orders is necessary to preserve the integrity of those orders and assure basic fairness.

Dated this January 12, 2006

Respectfully submitted,

*s/Wilson K. Pipestem*
WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for The Osage Nation