**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE TRIBE OF INDIANS OF OKLAHOMA, Plaintiff, | ) | Electronically Filed: January 13, 2006 |
| v. | ) | |
| THE UNITED STATES OF AMERICA, Defendant. | ) | Nos. 99-550L & 00-169L Judge Emily C. Hewitt |

**DEFENDANT'S BRIEF IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, IN PART, PLAINTIFF'S INVESTMENT CLAIMS AS SET FORTH IN PLAINTIFF'S BRIEF CLARIFYING LEGAL BASES FOR ITS INVESTMENT CLAIMS**

# TABLE OF CONTENTS


I. INTRODUCTION . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . 1

A. THE UNITED STATES' MOTION TO DISMISS, IN PART, IS TIMELY AND PROCEDURALLY APPROPRIATE . . . . . . . . . . 1

B. FISHER STANDS FOR THE PROPOSITION THAT CLAIMS WHICH FALL OUTSIDE THE SCOPE OF THE COURT'S SUBJECT MATTER JURISDICTION SHOULD BE DISMISSED PURSUANT TO RCFC 12(b)(6) . . . . . . . 2

1. Fisher Supports Dismissal of Claims under RCFC 12(b)(6) . . . . . . . . . . 2
2. Plaintiff's Specific Investment Claims Should be Dismissed Pursuant to Fisher . . . . . . . . . . 4

C. DEFENDANT IS NOT SEEKING TO BAR JUDICIAL REVIEW BASED ON THE ABUSE OF DISCRETION STANDARD . . . . . . . . . . 6

D. CHEYENNE-ARAPAHO DOES NOT PROVIDE A BASIS FOR PLAINTIFF'S PROPOSED DUTY TO MAXIMIZE . . . . . . . . . . 8

E. THE COURT SHOULD REJECT PLAINTIFF'S EFFORTS TO USE THE COMMON LAW TO BROADEN THE DUTIES OWED BY THE UNITED STATES . . . . . . . . . . 9

F. THE COURT SHOULD DISMISS PLAINTIFF'S DISBURSEMENT LAG TIME CLAIM . . . . . . . . . . 12

III. CONCLUSION . . . . . . . . . . 13

# TABLE OF AUTHORITIES

FEDERAL CASES

*Cheyenne-Arapaho Tribe of Indians v. United States*, 512 F.2d 1390 (Ct. Cl. 1975) . . . . . . . . . . 7

*Cobell v. Norton*, 392 F.3d 461 (D.C.Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cobell v. Norton*, 428 F.3d 1070 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4

*Minnesota Chippewa Tribe v. United States*, 14 Cl. Ct. 116 (1987) . . . . . . . . . . . . . . . . . . . . . . . 8

*Navajo Tribe of Indians v. United States*, 9 Cl. Ct. 336 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Mitchell v. United States*, 664 F.2d 265 (Ct. Cl. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Osage Tribe of Indians of Oklahoma v. United States*, 68 Fed. Cl. 322 (2005) . . . . . . . . . . . . 2, 4

*Russello v. United States*, 464 U.S. 16 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Shoshone Indian Tribe of the Wind River Reservation v. United States*,
364 F.3d 1339 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Mitchell*, 463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*United States v. Navajo Nation*, 537 U.S. 488 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

FEDERAL STATUTES

25 U.S.C. § 161a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 13, 5

25 U.S.C. § 162a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

31 U.S.C. § 3334 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

34 Stat. 539 ("1906 Act") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## I. INTRODUCTION

Defendant herein replies to Plaintiff's Opposition to Defendant's Motion to Dismiss, in Part, Plaintiff's Investment Claims.

Although, in its Opposition, Plaintiff further clarifies and, to some extent, modifies its investment claims, certain of its claims continue to possess the same deficiencies. Plaintiff still has failed to show cognizable grounds for this Court's jurisdiction over its claims that the Government has a duty to maximize investment yields and a duty to earn interest for the trust fund between the time a check is issued from the Treasury and the time when the check is paid or cancelled ("disbursement lag time" claim).[1] Plaintiff continues to rely on overly-broad principles of common law, which fail to particularize its claims and do not provide grounds for jurisdiction under the Tucker or Indian Tucker Acts. Accordingly, for the reasons fully explained below, the Court should grant Defendant's timely motion and should dismiss these claims for lack of jurisdiction or for failure to state a claim for which relief can be granted.

## II. ARGUMENT

### A. THE UNITED STATES' MOTION TO DISMISS, IN PART, IS TIMELY AND PROCEDURALLY APPROPRIATE

Because Defendant's Motion to Dismiss is filed pursuant to the Court's request for additional briefing and in response to Plaintiff's attempt to articulate its investment claims, it should be considered both timely and appropriate.

Through the course of this litigation, Plaintiff has failed to clearly articulate its investment claims. As the Court noted in its October 27, 2005 Opinion and Order, Plaintiff "has

---

[1] Plaintiff no longer appears to be asserting a duty to earn for the Osage trust investment returns equal to the average yields the Government obtained for other Indian trust funds.

not adequately articulated the contours of its investment claim. . . ." *Osage Tribe of Indians of Oklahoma v. United States*, 68 Fed. Cl. 322, 335-36 (2005). Although the Court ultimately concluded that dismissal of Plaintiff's claim was "unwarranted at this juncture," the Court requested additional briefing on the matter. *Id.* at 336. Accordingly, Plaintiff filed its Brief Clarifying Legal Bases for Its Investment Claims. In response, the United States filed its reply to Plaintiff's Brief. Further, because Plaintiff finally had provided additional clarity to its investment claims, it was appropriate for the United States to also seek dismissal of those claims at this juncture.

If Plaintiff had provided sufficient information supporting its investment claims in its Complaint, Statement of Claims, or Opposition to Defendant's Motion to Dismiss, in Part, Plaintiff's Tranche One Claims, the United States could have maintained its dismissal motion on these issues at an earlier time. The United States should not be prejudiced for delays brought about by Plaintiff. Accordingly, the Court should consider the Government's motion as timely and procedurally appropriate.

## B. *FISHER* STANDS FOR THE PROPOSITION THAT CLAIMS WHICH FALL OUTSIDE THE SCOPE OF THE COURT'S SUBJECT MATTER JURISDICTION SHOULD BE DISMISSED PURSUANT TO RCFC 12(b)(6)

### 1. *Fisher* Supports Dismissal of Claims under RCFC 12(b)(6)

Plaintiff's arguments regarding the application of *Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005), to this case are based upon an apparent misreading of *Fisher* and, therefore, are unfounded.

In its Opposition Brief, Plaintiff claims that the United States inappropriately relies on *Fisher* to support a dismissal of its claims under RCFC 12(b)(6). Plf.'s Opp. at 6-7.

Specifically, Plaintiff asserts that *Fisher* does not support the United States' argument that, if the Court finds subject matter jurisdiction, it may still dismiss Plaintiff's claims under RCFC 12(b)(6) if they fall outside the money mandating source that serves as the basis for the subject matter jurisdiction. *Id.* In support of this argument, Plaintiff asserts that dismissals rendered pursuant to *Fisher* constitute judgments on the merits rather than a determination that the plaintiff has failed to state a claim upon which relief may be granted (*i.e.*, a finding based on RCFC 12(b)(6)). *Id.* Indeed, Plaintiff contends that *Fisher* does not discuss or address RCFC 12(b)(6). Plf.'s Opp. at 7.

In a sense, *Fisher* does call for a ruling on the merits, but that ruling is in the context of RCFC 12(b)(6), and does not require a trial. As *Fisher* held,

> [a]ssuming that the Court of Federal Claims has taken jurisdiction over the cause as a result of the initial determination that plaintiff's cause rests on a money-mandating source, the consequence of a ruling by the court on the merits, that plaintiff's case does not fit within the scope of the source, is simply this: plaintiff loses on the merits *for failing to state a claim on which relief can be granted.*

402 F.3d at 1175-76 (emphasis added). Further, the Court noted, "when the issue is raised by motion, the proper motion is under Federal Rule of Civil Procedure 12(b)(6), a dismissal for failure to state a claim upon which relief can be granted . . . ." *Id.* at 1176. The language in *Fisher* supports the United States' argument that, even though this Court has determined it has subject matter jurisdiction generally over Plaintiff's broadly-stated investment claims, it should still dismiss Plaintiff's recently articulated specific claims because the claims fall outside the scope of the money mandating source which serves as the basis for such jurisdiction.[2]

---

[2] The Government's primary argument, as fully set forth in its December 2, 2005 brief supporting its Motion to Dismiss, in Part, Plaintiff's Investment Claims, is that the Court should dismiss Plaintiff's recently-specified claims that the Government has a duty to maximize

### 2. Plaintiff's Specific Investment Claims Should be Dismissed Pursuant to *Fisher*

In its October 27, 2005 Opinion and Order, this Court explained that Plaintiff identified its claims, by way of example, as including "failure 'to invest the funds as required by law' and . . . failure 'to credit the Osage Nation with the full amount of investment income that the funds earned prior to the time the funds were disbursed to the beneficiaries of the trust.'" *Osage*, 68 Fed. Cl. at 335. The Court held that the combination of the Act of June 28, 1906, 34 Stat. 539 ("1906 Act") with 25 U.S.C. §§ 161a, 161b, and 162a is sufficient to grant jurisdiction over these generalized claims. *Id.* at 336. Once Plaintiff further articulated the specific legal grounds and also the facts that it avers will support these claims, it became clear that, for certain of its claims, Plaintiff still has failed to state a claim on which relief can be granted: the money-mandating duty, as applied to the facts that Plaintiff asserts will be proven, does not afford a remedy. *See Fisher*, 402 F.3d at 1176.

For example, Plaintiff asserts that it will show that the Government failed to maximize returns or earn for the Osage Trust fund investment returns equal to the average yields earned for other Indian trust funds and that this showing will demonstrate a breach of duty. Plf.'s Brf. Clarifying Legal Bases for its Investment Claims, at 12; Plf.'s Opp. at 10. Assuming, for purposes of considering Defendant's 12(b)(6) motion, that Plaintiff makes this showing, the investment statutes cited by Plaintiff afford no remedy because Plaintiff's case does not fit

---

investment yields, a duty to earn for the Osage Trust investment returns equal to the average yields the Government obtained for other Indian Trust funds, and a duty to earn for the trust fund interest between the time a check is issued from the Treasury Department and the time when the check clears or is cancelled ("disbursement lag time" claim) under RCFC 12(b)(1) for lack of jurisdiction.

within the scope of the investment statutes.

The version of section 161a applicable to the last three Tranche One months (February 1986, July 1989, and October 1990) nowhere provides explicitly or implicitly that the Government must maximize returns, earn average returns, or, for that matter, earn any particular return. Rather, it merely provides that the public debt securities in which Interior requests Treasury to invest funds will "bear[] interest at rates determined by the Secretary of the Treasury, taking into consideration current market yields on outstanding marketable obligations of the United States of comparable maturities." 25 U.S.C. § 161a(a).[3]

Section 162a also is silent as to the rate of return that the Government should earn for tribal investments. In contrast, it is not silent as to the rate to be earned for individual Indian funds that are deposited in banks: "no individual Indian money shall be deposited in any bank until the bank shall have agreed to pay interest thereon at a reasonable rate. . . ." 25 U.S.C. § 162a(a). When Congress meant to require a particular return for Indian funds, it articulated the rate. Accordingly, in the absence of that articulation for tribal funds deposited in banks, there is no basis to presume that Congress meant to ensure that returns were maximized or that a particular Tribe was to receive the average return earned by other Tribes. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (citation omitted).

In short, to the extent that Plaintiff claims that it has shown a breach of Defendant's

---

[3] The version of this law in existence prior to 1985 did specify a rate of return of four percent simple interest.

investment duties under 25 U.S.C. §§ 161a and 162a because the Government did not maximize yields or earn at least an average return, the Court should rule that Plaintiff has failed to state a claim for which relief can be granted under RCFC 12(b)(6).[4]

Similarly, Plaintiff has failed to show that the investment statutes require the Government to earn interest for the Osage trust fund between the time a check is issued from Treasury and the time when the check is paid or cancelled. Accordingly, a showing that the Government does not earn interest during this period does not, in itself, as Plaintiff suggests, entitle it to relief. The claim, as Plaintiff has articulated it, falls outside the scope of the investment statutes and should be dismissed under RCFC 12(b)(6).

## C. DEFENDANT IS NOT SEEKING TO BAR JUDICIAL REVIEW BASED ON THE ABUSE OF DISCRETION STANDARD

In its Opposition Brief, Plaintiff repeatedly asserts that the United States seeks to bar judicial review through the imposition of an abuse of discretion standard. This misstates the arguments set forth by the United States and misinterprets the abuse of discretion standard of review. In its December 2, 2005 brief, Defendant did not claim that the abuse of discretion standard bars judicial review. Rather, it offered an explanation of that standard – which provides the prism through which the Court may scrutinize the United States' actions under sections 161a and 162a – in opposition to Plaintiff's arguments related to maximization of returns on

---

4 Plaintiff also appears to try to salvage its investment claims by noting that it should proceed to trial to deem whether the Government properly exercised its discretion. Plf.'s Opp. at 13; *see also id.* at 14 (suggesting abuse of discretion standard for evaluating its "disbursement lag time" claim).

investment.[5] It was unclear in Plaintiff's brief clarifying its legal bases for its investment claims whether it was arguing that maximization was the applicable standard of review or whether maximization was a duty unto itself. That confusion persists, as Plaintiff's Opposition variably suggests that maximization of returns is the appropriate standard of care and is a duty unto itself.

The Government will address further Plaintiff's assertions related to the use of maximization of returns in the Government's pretrial briefs due on January 26, 2006.[6] To the extent that Plaintiff is claiming a duty to maximize investment returns, Defendant now turns to that claim.[7]

## D. *CHEYENNE-ARAPAHO* DOES NOT PROVIDE A BASIS FOR PLAINTIFF'S PROPOSED DUTY TO MAXIMIZE

In its Opposition, Plaintiff asserts that *Minnesota Chippewa Tribe v. United States*, 14 Cl.

---

5 In its pretrial briefs due on January 26, 2006, Defendant will further explain why the abuse of discretion standard is appropriate and how it should be applied in this case.

6 The Government now offers one clarification related to the standard of care. In its Opposition, Plaintiff states that the Government proffered as the appropriate standard a requirement to "exercise reasonable management zeal," as stated in *Mitchell v. United States*, 664 F.2d 265, 274 (Ct. Cl. 1981). Defendant did not cite to this case for this proposition in its December 2, 2005 brief. It did cite to this case in its brief in support of its Motion to Dismiss, in Part, Plaintiff's Tranche One Claims, but not as the appropriate standard of review. The United States cited the *Mitchell* Court of Claims case's "reasonable management zeal" language for the proposition that the Court of Claims sitting *en banc* recognized the holding in *Cheyenne-Arapaho Tribe of Indians v. United States*, 512 F.2d 1390 (Ct. Cl. 1975), to be far narrower than mandating maximum returns. In its decision in *Mitchell*, the Court of Claims, sitting en banc, stressed that the "holding of *Cheyenne-Arapaho* is that defendant must as trustee exercise reasonable management zeal to get for the Indians the best rate," a different proposition than holding it to a duty to guarantee maximum returns. 664 F.2d at 274.

7 Plaintiff also suggests a duty (or standard) requiring the United States to act as a prudent trustee. Plf.'s Opp. at 10. Although the appropriate standard to apply is abuse of discretion, Defendant will also address the prudent trustee or investor standard in its pretrial briefs due on January 26, 2006.

Ct. 116 (1987), distinguishes *Cheyenne-Arapaho* from the cases that Plaintiff states the United States relied on (*United States v. Mitchell*, 463 U.S. 206 (1983) (*Mitchell II*) and *Navajo Tribe of Indians v. United States*, 9 Cl. Ct. 336 (1986)), and thereby preserves its holding regarding a duty to maximize trust income. The Court should reject this argument.

Contrary to Plaintiff's assertion (Plf.'s Opp. At 8), the United States does not rely on the Court of Claims *Navajo* case for its arguments against the imposition of a duty to maximize trust income. Rather, as the United States explicitly cited in its earlier memorandum in support of its motion to dismiss in part, the United States relies on the Supreme Court's 2003 decision in *United States v. Navajo Nation*, 537 U.S. 488 (2003) (*Navajo*), to support its arguments against imposition of a duty to maximize trust income. *See* Mem. In Support of Def.'s Mot. To Dismiss, in Part, at 46-48 (June 14, 2005).

The Supreme Court's reasoning in *Navajo* undermines the dicta regarding maximization in *Cheyenne-Arapaho*. In *Navajo*, the Supreme Court held that money mandating duties may only be imposed on the United States if they are explicitly set forth in substantive law. 537 U.S. at 506 (citing *Mitchell II*, 463 U.S. at 216-17, 219); *see also Shoshone Indian Tribe of the Wind River Reservation v. United States*, 364 F.3d 1339, 1349 (Fed. Cir. 2004) (based on *Navajo*, 537 U.S. 488, rejecting contention that the Government had a duty to maximize lease revenues under the Indian Mineral Leasing Act ("IMLA"), because the statutory language of IMLA contained no such duty).

Also contrary to Plaintiff's position (Plf.'s Opp. at 10), *Cheyenne-Arapaho*'s purported duty to maximize trust income does not flow from the statutory framework. *Cheyenne-Arapaho*'s observations regarding a duty to maximize are based on that Court's observations of

the common law and are not grounded in any statutory language. 512 F.2d at 1394 (citing *Blankenship v. Boyle*, 329 F.Supp. 1089, 1096 (D.D.C. 1971) and RESTATEMENT OF TRUSTS 2d § 181 (1959)). At no point does the *Cheyenne-Arapaho* decision indicate that a duty to maximize arises from the relevant statutes. In light of the requirement in the subsequent Supreme Court cases *Mitchell II* and *Navajo*, and in light of precedent that has subsequently limited the use of common law to particularize the explicit duties found in statutes or regulations, *see, e.g., Cobell v. Norton*, 392 F.3d 461, 472 (D.C.Cir. 2004) and *Cobell v. Norton*, 428 F.3d 1070, 1074 (D.C. Cir. 2005), the *Cheyenne-Arapaho* Court's reliance on common law duties is no longer appropriate. Plaintiff's reliance on *Cheyenne-Arapaho* is accordingly misplaced.

**E. THE COURT SHOULD REJECT PLAINTIFF'S EFFORTS TO USE THE COMMON LAW TO BROADEN THE DUTIES OWED BY THE UNITED STATES**

The Court should disregard the common law principles relied upon by Plaintiff in an effort to impose duties that are unrelated to sections 161a and 162a. Plaintiff's reliance on such principles contravenes the standards for imposing duties on the United States established by *Mitchell II* and *Navajo* and explained in the recent *Cobell* appellate cases.

In its Opposition, Plaintiff asserts that it is not seeking to impose extraneous common law duties, separate and apart from the duties imposed by sections 161a and 162a on the United States. Plf.'s Opp. at 3. According to Plaintiff, it is simply using the common law to "particularize" the United States' general statutory duties to Plaintiff. *Id.* Despite its assertions to the contrary, Plaintiff has failed to "particularize" any duties established by statute. Instead, it has used common law tenets in an effort to enlarge upon the duties that in fact are imposed by sections 161a and 162a. To the extent Plaintiff has asserted claims based upon any alleged duty

that exceeds the scope of sections 161a and 162a, such claims should be dismissed.

It is well-established under *Mitchell II* and *Navajo* that, in order to assert a claim against the United States, a tribe must identify a statute that explicitly imposes a specific duty on the Government. *Navajo*, 537 U.S. at 506 (citing *Mitchell II*, 463 U.S. at 216-17, 219). If a tribe is able to identify such a duty, the Court must then determine whether a statute mandates compensation for breach of that duty. *Id.* (citing *Mitchell II*, 463 U.S. at 219). Whereas exactitude is required to find the existence of a specific duty, the determination that damages may be asserted for a breach of that duty may be inferred from a statute. *Id.* (citing *Mitchell II*, 463 U.S. at 217 n.16). Here, Plaintiff is attempting, and should be deemed to have failed, to use common law to find the existence of a specific duty.

Instead of particularizing the duty imposed on the United States by sections 161a and 162a, Plaintiff imports a broad common law concept and then attempts to particularize it with concepts unsupported by the common law. The statutorily driven analysis mandated by *Mitchell II* and *Navajo* does not permit the imposition of duties so derived.

As discussed *supra*, sections 161a and 162a simply impose a duty to invest on the United States. Plaintiff attempts to particularize that duty by reading into it a broad common law duty to “make trust funds productive.” Pl. Brief at 3-4. Although the broad common law duty to “make trust funds productive” is similar to the duty under sections 161a and 162a, it does not serve to particularize the duties referenced in those statutes.

Plaintiff does attempt to particularize its broad common law duty to make trust funds productive with self-fashioned particularlized duties, but these attempts are unavailing because the duties find no support in the common law. For example, although under the common law

there is a duty to make funds productive, Plaintiff embellishes that duty, without support, to also include a duty to "leav[e] funds in an interest bearing account for as long as possible." Plf.'s Opp. at 4; *see also id.* at 14 (suggesting, again without support, a "duty to earn interest on funds as long as practicable"). In short, Plaintiff's proposed common law duties for which Plaintiff actually has common law support provide no greater specificity to the duties imposed on the United States than already provided by sections 161a and 162a, while Plaintiff's more particularized duties lack any support in the common law.

Plaintiff's excessive reliance on the common law to impose duties without foundation in sections 161a and 162a contravenes the statutorily driven analysis mandated by *Mitchell II* and *Navajo* and creates the situation that gave rise to the *Cobell* Court's recent admonition against over-reliance on the common law in resolving statutory ambiguities. *Cobell*, 428 F.3d at 1074 (stating that "the common law of trusts doesn't offer a clear path for resolving statutory ambiguities," because the Individual Indian Money trust (which in pertinent respects is administered by the Government much the same as is the tribal trust) "differs from ordinary private trusts along a number of dimensions."). The Court should reject Plaintiff's approach and should dismiss those claims that rely on Plaintiff's unsupported duties, including the purported duty to maximize returns and the purported duty to earn interest after monies are disbursed from the Osage's tribal trust fund.

## F. THE COURT SHOULD DISMISS PLAINTIFF'S DISBURSEMENT LAG TIME CLAIM

Neither section 161a, whether pre- or post-1984-amendment, nor section 162a, is explicit as to the point at which any duty the Government has to earn interest on, or invest, trust funds

ends. Accordingly, as Defendant explained in its December 2, 2005 brief, these statutes establish no duty on the United States to earn interest on funds between the time checks are drawn on the trust and the date when those checks are either cashed or canceled.

Not only are sections 161a and 162a silent on this matter, but Plaintiff has identified no source of law to particularize a duty in the face of this silence. Merely assuming, as Plaintiff does, that the statutes' silence reflects a Congressional intent that interest should be paid until a check clears or is cancelled does not create a sufficiently explicit duty on which to base jurisdiction. Moreover, the Competitive Equality Banking Act ("CEBA"), 31 U.S.C. § 3334, provides insight into how Congress perceived the point at which interest would cease to be earned on checks drawn from a Government account. As explained in Defendant's December 2, 2005 brief at 15-16, in enacting CEBA, Congress intended that the proceeds of cancelled checks (that is, checks outstanding for more than one year) include only the principal amount of the checks, not any interest on the principal. *A fortiori*, it may be presumed that Congress understood the existing Government practice to be that, when funds were drawn from a Treasury account for a disbursement by check, the funds did not continue to earn interest up until the time the checks were cashed or cancelled.

Contrary to Plaintiff's claim, the CEBA and subsequent appropriations acts reimbursing the agency for some of the proceeds related to cancelled checks did not act to repeal the provisions of the 1906 Act and 25 U.S.C. §§ 161a and 162a. Rather, they serve as recognition of the long-standing disbursement practice of the United States whereby money drawn from an agency's account, including trust accounts (to which CEBA also applied), no longer earn interest or are available for investment.

Because Plaintiff has failed to demonstrate an explicit duty to earn interest between the time a check is drawn and the time it is cashed or cancelled, the Court should dismiss this claim.

## III. CONCLUSION

For the foregoing reasons and those explained in Defendant's December 2, 2005 brief, the Court should dismiss Plaintiff's claim that the Government had a duty to maximize investment returns; a duty to earn for the Osage Trust investment returns equal to the average yields the Government obtained for other Indian Trust funds; and a duty to earn interest for the trust fund between the time a check is issued from the Treasury Department and the time when the check clears or is cancelled ("disbursement lag time" claim). In addition, for the reasons explained in Defendant's December 2, 2005, brief, the Court should dismiss Plaintiff's claim, as currently constituted, to lost investment income.

Respectfully submitted, on January 13, 2006,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

*s/ Brett D. Burton*
BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Counsel of Record for Defendant

*s/ Martin J. LaLonde*
MARTIN J. LALONDE
KEVIN WEBB

United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0247/0479
Fax: (202) 353-2021

Attorneys for Defendant

OF COUNSEL:
Elisabeth Brandon
Brenda Riel
Attorneys
Office of the Solicitor
Division of Indian Affairs
U.S. Department of the Interior
MS 6456
Washington, D. C. 20240
Telephone: (202) 208-7403
Fax: (202) 219-0559

Teresa E. Dawson
Senior Counsel
Office of Chief Counsel
Financial Management Services
U.S. Department of the Treasury
401 14th Street, S.W.
Room 552A
Washington, D.C. 20227
Telephone: (202) 874-2567
Fax: (202) 874-6627