**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed: January 26, 2006 |
| v. | ) | Nos. 99-550L (into which has been consolidated No. 00-169 L) |
| THE UNITED STATES OF AMERICA, | ) | Judge Emily C. Hewitt |
| Defendant. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DOCUMENTS AND TESTIMONY FOR VIOLATIONS OF THE COURT'S SCHEDULING AND DISCOVERY ORDERS**

TABLE OF CONTENTS

I. FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. Production of Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B. Defendant's Supplemental Expert Reports and Documents Relied Upon by Defendant's Experts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

C. The Tribe Engaged in Post-September 1, 2005 Discovery of its own . . . . . . . . . . 6

II. LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A. Documents Identified, but not Physically Produced Prior to Defendant's December 20, 2005 Trial Exhibit List Do Not Run Afoul of the Scheduling and Discovery Orders of this Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

B. Nothing About the Defendant's Supplemental Expert Reports Violate the Scheduling and Discovery Orders of this Court. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Apotex Corp. v. Merck & Co.*, 229 F.R.D. 142 (D. Ill. June 29, 2005) . . . . . . . . . . . . . . . . . . . 7, 8

*Barrett v. Atlantic Richfield Co.*, 95 F3d 375 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Crouse Cartage Co. v. National Warehouse Inv. Co.*, No. IPX02-C-T/K, 2003 WL 21254617 (S.D. Ind. April 10, 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*Exxon Corp. v. Halcon Shipping Co., Ltd.*, 156 F.R.D. 589 (D. N.J. 1994) . . . . . . . . . . . . . . . . 11

*Finley v. Marathon Oil Co.*, 75 F.3d 1225 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sithon Maritime Co. v. Holiday Mansion*, No. Civ.A.96-2262-EEO,1998 WL 638372 (D. Kan. Sept. 14, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## FEDERAL RULES

RCFC 26(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

RCFC 26(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

RCFC 26(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

RCFC 26(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

RCFC 26(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

RCFC 26(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

RCFC 37(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

RCFC app. A ¶ 13. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## FEDERAL REGULATIONS

25 C.F.R. § 226.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| THE OSAGE TRIBE OF INDIANS OF OKLAHOMA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Electronically Filed: January 26, 2006<br><br>Nos. 99-550L (into which has been consolidated No. 00-169 L)<br>Judge Emily C. Hewitt |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DOCUMENTS AND TESTIMONY FOR VIOLATIONS OF THE COURT'S SCHEDULING AND DISCOVERY ORDERS**

Defendant United States of America hereby submits this Memorandum of Points and Authorities in opposition to Plaintiff's Motion to Exclude Documents and Testimony for Violations of the Court's Scheduling and Discovery Orders ("Plaintiff's Motion"). Plaintiff seeks to exclude two supplemental expert reports authored by Defendant's designated experts Greg Chavarria and Ronnie Martin. Plaintiff also seeks to preclude use by the United States of certain documents which it claims were produced late (after the Court's September 1, 2005 close of discovery date). Plaintiff's meritless Motion should be denied because it is nothing more than a litigation tactic and because the Defendant has fully complied with this Court's Scheduling and Discovery Orders.

Plaintiff operates under the mistaken assumption that the burden lies with the United States to identify, locate, and provide copies to Plaintiff of all relevant evidence necessary to support the prosecution of its claims at trial. This assumption has no support in either the discovery rules of the United States Court of Federal Claims or the Federal Rules of Civil Procedure. From the inception of this litigation, all documents and other evidence potentially relevant to Plaintiff's claims in the possession, custody and control of the United States as required by Court order have been readily available for Plaintiff's inspection and possession.

Moreover, the United States has assisted Plaintiff in its discovery efforts. The United States has faithfully adhered to its discovery obligations by supplementing its discovery when necessary. This Court should deny the Motion in its entirety.

## I. FACTUAL BACKGROUND

### A. Production of Documents

For purposes of this Motion, Defendant does not dispute that this Court issued certain discovery orders and set forth certain Scheduling and Discovery deadlines, or that the Court has the inherent authority to do so. Defendant maintains however, that the United States is in compliance with these orders. During the course of this litigation, and well in advance of this Court's September 1, 2005 discovery cut-off date, the United States worked with Plaintiff to make all documents relevant to claims and defenses in this case as ordered by the Court available for its inspection.

On March 24, 2004, prior to the Court's defining the contours of Tranche One, the Court issued an Order setting a schedule for document production.[1/] Pursuant to that Order, Defendant identified the universe of boxes that might contain documents relevant to Plaintiff's broad and ill-defined claims. *See* Parties' Joint Status Report, dated August 23, 2004. When Defendant identified additional boxes that could be relevant, it notified Plaintiff. Defendant also provided Plaintiff with indices to the identified boxes generated from Interior's Box Information Search System ("BISS") (*see* Parties' Joint Status Reports, dated April 9, 2004 and December 22, 2004); provided Plaintiff with direct access and searching capabilities on the BISS; and undertook privilege reviews and made available several thousand boxes to Plaintiff for its

---

[1/] The Order of March 24, 2004 provided that, as to documents in the custody of the Department of the Treasury, plaintiff was to "contact the court to schedule a status conference if plaintiff believes [Treasury] possesses non-duplicative relevant documents" after Plaintiff had completed its review of "documents in the possession of the Department of the Interior, ITAD and NARA." *See* Order of March 24, 2004 at 3. The representations in this motion pertaining to Defendant's document production, therefore, are not intended to encompass materials from the Department of the Treasury unless explicitly stated.

inspection. *See* e.g., Parties' Joint Status Report, dated December 22, 2004, *see also* Correspondence dated April 13, 2005, from Brett D. Burton, Esq. to Wilson K. Pipestem, Esq. Plaintiff jointly reviewed a significant number of these boxes with other Tribes at the Office of Trust Records ("OTR") in Albuquerque. In addition, Plaintiff conducted Osage-specific reviews both at the OTR and at the American Indian Records Repository in Lee's Summit and then Lenexa, Kansas.

Moreover, Defendant also made available for inspection, the documents held at the BIA Osage Agency in Pawhuska, Oklahoma. Defendant arranged a visit to the Agency where Agency staff answered Plaintiff's questions related to, among other issues, the Agency's documents. Agency staff also gave Plaintiff a tour of the Agency during which it showed Plaintiff the document collections in which it was interested. During this trip and a second visit to the Agency, Plaintiff was permitted to inspect and copy any of the document collections of the Agency it wished to review. In its April 15, 2005 Order, the Court required Plaintiff to designate priority boxes that it understood related to Tranche One. Defendant provided the images of the documents Plaintiff identified in these boxes. Defendant also provided Plaintiff with full access to the BISS so that it could conduct its own further document searches. Plaintiff identified additional specific boxes related to Tranche One, which Defendant provided to it for its inspection. Defendant provided images from these boxes to Plaintiff.

The Department of the Treasury responded to Plaintiff's First Request for Production of Documents, dated May 10, 2005, by objecting to the requests on several grounds, and further stating that it had no documents specific to the leases identified in Plaintiff's RFPs. Notwithstanding its objections, Treasury indicated that it would produce, to the extent it was able to locate, any (1) "*records identifying rates of return on investments made at the direction of Interior during the six relevant time periods*" (Defendant's Response to RFP No. 6a); and (2) "*manuals, guidelines, and instructions in its possession explaining the general procedures or processes during the time periods in question for depositing, investing, and/or accounting for*

*payments collected by federal program agencies, including Interior*." (Defendant's Response to RFP 6c.) On July 14, 2005 and August 5, 2005, Plaintiff reviewed the material that had been collected and produced for inspection by Treasury. Defendant has since produced to Plaintiff images of the material selected from this collection. At the time, and since that time, Plaintiff lodged no complaint nor gave any indication that this production was unsatisfactory, or, that it failed in any way to respond to Plaintiff's discovery requests. Moreover, Plaintiff made no further attempt to obtain any additional material from Treasury.

Finally, on June 16, 2005, the parties filed a joint motion requesting that interim deadlines for fact discovery on "tranche one" issues be extended by 60 days, to allow the parties to engage in a joint discovery project to locate certain missing documents at the American Indian Records Repository ("AIRR"). In connection with the joint discovery, and pursuant to an agreement between the parties, Plaintiff was to have provided the United States with a list of its requested documents on or before July 1, 2005. Plaintiff did not provide this information to the Government until July 20, 2005. It was not until this late date that Plaintiff finally provided to Defendant a more precise list of the documents that it sought for Tranche One.[2/] Notwithstanding Plaintiff's delay, this joint discovery project resulted in the commitment by the United States of substantial technical and human resources aimed at assisting Plaintiff in identifying and obtaining the specific documents requested. After conclusion of the joint discovery project, the United States unilaterally continued its search of documents located at the AIRR in an effort to locate other potentially relevant documents requested by Plaintiff. In the weeks following September 1, 2005, several additional documents were located and promptly produced to the Plaintiff.

---

[2/] Notably, the list that Plaintiff provided did not include all documents that Plaintiff claims in its pre-trial brief are missing. For example, Plaintiff did not seek documents related to Defendant's determination of who the major purchasers were pursuant to the Osage regulations. 25 C.F.R. § 226.11. Defendant has, however, located these documents and has provided them to Plaintiff.

**B. Defendant's Supplemental Expert Reports and Documents Relied Upon by Defendant's Experts**

On September 30, 2005, the Plaintiff served the United States with the expert reports of Messrs. Reineke and Jay. Mr. Jay's report asserted novel theories of liability pertaining to issues regarding cancelled checks that the Tribe had not previously raised in its identification of Tranche One claims, **(***See* Expert Report of Stephen Jay, dated September 30, 2005 at pp. 9-11) or in its briefing in opposition to Defendant's Motion to Dismiss, in Part, Plaintiff's Tranche One claims. Given that these novel claims by Mr. Jay came well after the September 1, 2005 close of discovery date, this Court should not be surprised by the fact that Plaintiff had failed to request any documents related to cancelled checks in its July 20, 2005 document request.

The United States served Mr. Chavarria's expert report on November 3, 2005. Footnote 2 on page 6 of Mr. Chavarria's report stated "I am continuing my research into whether or not additional Tranche One checks were cancelled and will supplement my report if any additional conclusions are reached." *See* Expert Report, Gregory J. Chavarria, dated November 3, 2005 at p. 6. Attached to Mr. Chavarria's report were 19 pages of documents pertaining to Plaintiff's as of September 30th cancelled check theory. The documents attached to Mr. Chavarria's expert report have always been available for the Plaintiff's inspection and possession.

Plaintiff also takes exception to the supplemental reports it received from Messrs. Chavarria and Martin on December 9, 2005, and January 10, 2006, respectively, apparently on the basis that these supplemental reports raise "novel" theories that operate to its prejudice. *See* Plaintiff's Memorandum of Points of Authorities at p. 7. However, Mr. Chavarria's supplemental report states in pertinent part:

> "[I]n my expert report filed November 3, 2005, I indicated as a footnote to paragraph 16 that I was continuing my research regarding whether or not additional Tranche One checks were cancelled and would supplement my report if any additional conclusions are reached." I have since been able to complete my research which further support my previous conclusions and I am supplementing my report to include the results of that research." *See* Expert Report-Supplement of Gregory J. Chavarria, dated December 8, 2005, at p. 1.

Mr. Martin's supplemental report similarly incorporated additional data that had been identified since the submission of his initial report. Mr. Martin stated: "[T]his report incorporates additional data and addresses the opinions and results provided in my November 3, 2005 report but **does not modify or expand the methodology in that report.**" *See* Supplemental Expert Report of Ronnie A. Martin, dated January 10, 2006, at p. 2. (emphasis added). The report primarily addressed Mr. Martin's determination of major purchasers and relied on documents that the Tribe had not previously specifically requested.

**C. The Tribe Engaged in Post-September 1, 2005 Discovery of its own.**

Of notable importance, Plaintiff fails to disclose to the Court that *it* requested, and is in the possession of, documents obtained from the United States on dates well beyond September 1, 2005. On December 6, 2005, Plaintiff served Notices of Deposition on the United States for Department of Interior lawyers Peter Schaumberg and Geoffry Heath. Accompanying these Notices were subpoenas duces tecum demanding specific documents pertaining to opinions and memoranda evidencing the Department of Interior's position with regard to the applicability of federal price control statutes to Osage royalty valuation determinations. The Plaintiff agreed not to pursue depositions of Schaumberg and Heath in exchange for the United States' agreement to conduct a good faith search for the requested documents. The Plaintiff agreed to wait until at least December 16, 2005 for the production of this information. *See* e-mail correspondence between Brett D. Burton, Esq. and Jerry Rothrock, Esq, dated December 9 and 10, 2005. Among other documents produced by the United States on December 20 and 29, 2005, was a one referred to among the parties as the "Kruliz Memo," which was an opinion drafted by the Solicitor's Office pertaining to applicability of the Emergency Petroleum Allocation Act ("EPAA") to determinations regarding royalty value.

Plaintiff also requested and received documents on January 24, 2006 in connection with depositions of Bob Fox (January 10, 2006), and Milt Dial (January 19, 2006). In the coming weeks, Plaintiff seeks to take additional depositions of Defendant's fact witnesses, and has, or

will certainly be seeking, additional documents in connection with these depositions. It is astounding that Plaintiff has the fortitude to bring its Motion notwithstanding that *it* has yet to produce documents specifically requested by the United States well before September 1, 2005. Should this Court elect to adopt a strict interpretation of its Order terminating all fact discovery on September 1, 2005, equity would naturally require that both parties be precluded from utilizing **all** discovery obtained beyond the discovery cut-off date, not just the Defendant's evidence which Plaintiff deems troublesome to its claims.

## II. LEGAL ARGUMENT

### A. Documents Identified, but not Physically Produced Prior to Defendant's December 20, 2005 Trial Exhibit List Do Not Run Afoul of the Scheduling and Discovery Orders of this Court.

Despite Plaintiff's arguments to the contrary, the discovery rules applicable to this litigation do not require that the United States telegraph its litigation strategy to the Plaintiff by providing it with copies of all documents relating it its defense, prior to the pre-trial exhibit exchange. In connection with establishing its defenses, the United States is free to pursue all evidence (documentary or otherwise), from any source, including those publicly available. Defendant's duty to timely produce information attaches when it is either (1) specifically requested to do so by a party to the litigation; or (2) required by rule or statute. *See Apotex Corp. v. Merck & Co.*, 229 F.R.D. 142, 148 (D. Ill. 2005) (recognizing that in adversarial justice system, civil litigants are under no duty to volunteer information not specifically requested by an opponent). RCFC 26(a)(1)(B) requires disclosure of:

> "a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment." *See* RCFC 26(a)(1)(B) (2005).

This rule does not require production of documents, but allows for production in lieu of a description. *See Crouse Cartage Co. v. National Warehouse Inv. Co.*, No. IPX02-0071-C-T/K

2003 WL 21254617 at *3 (S.D. Ind. April 10, 2003). In circumstances where only a description is provided, then the opposing party is expected to obtain the documents under Rule 34 or through informal requests. *See id.* Rule 26(a)(1)(B) does not require the production of documents. Rather, the rule permits the disclosing party to choose either form of disclosure. *See id.; see also Sithon Maritime Co. v. Holiday Mansion*, No. Civ.A.96-2262-EEO, 1998 WL 638372, at *2 (D. Kan. Sept. 14, 1998).

The United States informed Plaintiff on numerous occasions as to the whereabouts of documents potentially relevant to its claims. For example in the parties' Joint Status Report dated August 23, 2004, Defendant explained that documents in the Government's possession or control had been located by the Department of the Interior ("DOI"), the Department of the Treasury, the Indian Trust Accounting Division ("ITAD") of the General Services Administration ("GSA"), and the National Archives and Records Administration ("NARA").[3/] *See* Parties' Joint Status Report, dated August 23, 2004. The bulk of the documents about which the Plaintiff's Motion presently complains have been available for Plaintiff's inspection and copying throughout the course of this litigation, and the rest were never requested by Plaintiff in discovery.

The fact that the Plaintiff deems a particular "issue" relevant to the litigation does not automatically trigger a duty by the United States to physically produce any document potentially relevant to the issue. Absent a specific discovery request by Plaintiff, the United States was under no obligation to produce documents upon which it intends to support its defenses at any time prior to the disclosures made on December 20, 2005 in its list of trial exhibits. *See Apotex*, 229 F.R.D. at 148 ("Our system of justice largely leaves it to the adversarial process to ferret out

---

[3/] The Plaintiff was informed that potentially relevant documents were located at the Office of Trust Records, Albuquerque, New Mexico; the American Indian Records Repository (Federal Records Center), Lenexa, Kansas; the Eastern Oklahoma Regional Office and Osage Agency Current Records, Pawhuska, Oklahoma; the NARA in College Park, Maryland; and the Department of the Treasury.

truth"). The Rules of this Court pertaining to trial exhibits clearly support this assertion. *See* RCFC app. A ¶ 13 (Rule requires parties to exchange copies of all exhibits to be used at trial for case-in-chief or rebuttal purposes which have ***not been previously exchanged***). Moreover, this Court has expressly cautioned Plaintiff that it bears the burden of locating documents and sufficiently defining its own claims in this case.[4/] The United States remains cognizant, however, of its duty to seasonably supplement discovery where appropriate. *See* RCFC 26(e). Thus, where Defendant has learned of the existence of further material responsive to any discovery request, especially when the material comes from a source previously not disclosed under RCFC 26(a)(1)(A) or (B), the duty to supplement attaches.

Although Defendant maintains that all documents have been properly produced pursuant to RCFC 26(a)(1)(B) or were never requested, Plaintiff's arguments regarding preclusion of those found and produced subsequent to September 1, 2005, deserve particular scrutiny. Plaintiff's Memorandum of Contentions of Facts and Law, filed January 12, 2006 (Plf.'s Mem.), argues that certain legal presumptions pertaining to spoliation of evidence ought to be resolved against the United States. *See* Plf.'s Mem. 50. At the same time, Plaintiff's Motion in Limine, attempts to prevent the United States from rebutting Plaintiff's claims of document unavailability. The Court should reject Plaintiff's attempt to impose this "Catch-22" type situation upon the United States.

Further, Plaintiff seeks to prejudice Defendant by limiting its ability to mount a robust defense against Plaintiff's claims through unilaterally defining the documents that Defendant may use at trial. Plaintiff essentially is insisting that the United States should be barred from using documents that it has independently located from the sources that were equally available to Plaintiff. It is incorrect that the only documents that should be considered at trial are those that

---

[4/] *See* Transcript of Status Conference, dated December 28, 2004 at pp. 43-47 (Court implicitly rejected the notion that it is up to the United States to build the Plaintiff's case, and instructed the Plaintiff to understand for itself which types of discovery it needed in order to construct its case).

Plaintiff itself deemed relevant during its inspections or relevant enough to ask for.[5] One party may not unilaterally define in this fashion, the universe of the documents on which a case should be tried.[6]

**B. Nothing About the Defendant's Supplemental Expert Reports Violate the Scheduling and Discovery Orders of this Court.**

Rule 26(e) RCFC **requires** that parties making disclosure pursuant to RCFC 26(a) supplement or correct incomplete or incorrect information. *See* RCFC 26(e)(1); *see also Crouse*, 2003 WL 21254617 at *2. Allowing Defendant to provide supplemental expert reports to permit its experts to complete their already-disclosed analyses complies with this requirement and does not act to prejudice Plaintiff.

The issue contained in Mr. Chavarria's supplemental report pertaining to cancelled Tranche One checks was raised for the first time in the September 30, 2005 Stephen Jay expert report. To respond to this new claim, Defendant expeditiously conducted a search for pertinent records and made them available to Mr. Chavarria. Certain data required for Mr. Chavarria's analysis was not immediately available. As mentioned above, Mr. Chavarria's supplemental report does not shift the position of his previous opinions. The supplemental report merely applies certain factual data that was unavailable at the time of Mr. Chavarria's original report to his existing assumptions as expressly dictated in that original report at footnote 2. Defendant cannot be faulted for requesting that its expert consider theories raised for the very first time by one of the Plaintiff's experts' reports, and for allowing sufficient time to research and address these new claims. Further, Plaintiff may not plead prejudice when it chose to forego opportunities during the follow-up deposition held on December 19, 2005, to conduct follow-up

---

[5] By seeking to exclude documents relied on by in the Chavarria expert report, Plaintiff is also insisting that Defendant's experts should not be permitted to consider any documents other than those that Plaintiff obtained through its inspections. But, in forming his opinions, Mr. Chavarria considered these documents, and they must be duly disclosed pursuant to RCFC 26(a)(2)(B).

[6] Because the United States complied with RCFC 26(a), sanctions sought by the Plaintiff pursuant to RCFC 37(b) are inapplicable.

discovery as to the supplemental report.[7]

As discussed above, Mr. Martin's supplemental report explicitly states that it was made as the result of information acquired since the submission of his initial report. However, that supplemental report "does not modify or expand upon the methodology" upon which Martin originally relied, or his opinions. *See* Supplemental Expert Report of Ronnie A. Martin 2 (January 10, 2006). Significantly, Plaintiff's Motion fails to specify (and Defendant is unable to comprehend) what "novel theories" and "conclusions" purportedly are contained in Martin's supplemental report.

The legal authorities cited by Plaintiff in support of its Motion, make evident that the Motion is baseless. Plaintiff offers *Exxon Corp. v. Halcon Shipping Co., Ltd.,* 156 F.R.D. 589 (D.N.J. 1994), for the proposition that an "expert was precluded from testifying in portion of trial due to violation of scheduling order." *See* Plf.'s Mem. 5. In *Exxon,* however, the Court precluded the use of an expert witness newly designated by plaintiff **on the eve of trial**. We have no such situation in the case at hand. Plaintiff similarly relies on *Finley v. Marathon Oil Co.,* 75 F.3d 1225 (7th Cir. 1996). In *Finley,* the Court excluded the use of expert rebuttal evidence because it was produced on the eve of trial, months after the deadline for its production had passed. 75 F.3d at 1230-1231. The facts of this case are equally inapposite. In perhaps Plaintiff's most egregious misapplication of case law, it cites *Barrett v. Atlantic Richfield Co.,* 95 F3d 375 (5th Cir. 1996) for the proposition that "where the designation of experts or submission of expert reports are untimely, the reports are to be struck, and such testimony is to be excluded from trial under RCFC 37©." *See* Plf.'s Mem. 7. In *Barrett*, the Fifth Circuit upheld the District Court's sanction of the plaintiff for repeated disobedience after plaintiff's experts failed and refused to submit to depositions. *See Barrett,* 95 F.3d at 379-380.

---

[7] The Defendant made Mr. Chavarria available for questioning as to matters concerning his supplemental expert report at his deposition on December 19, 2005. Moreover, Defendant communicated to Plaintiff a standing invitation to bring Mr. Chavarria back to Washington for any follow-up questioning relevant to his supplemental report at a time convenient to the Plaintiff.

The Defendant properly supplemented its experts' initial reports pursuant to RCFC 26(e). As none of the other grounds offered for exclusion of evidence are well-founded, the Plaintiff's Motion should be denied.

## III. CONCLUSION

Because the United States has been and remains in compliance with discovery and scheduling orders of this Court and has worked cooperatively with Plaintiff to resolve even the post-September 1, 2005 discovery issues, Plaintiff's calls for punitive measures should fall on deaf ears. Defendant respectfully requests that this Court deny Plaintiff's Motion in its entirety.

Respectfully submitted this 26th day of January, 2006,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

s/ Brett D. Burton
BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Counsel of Record for Defendant

s/ Martin J. LaLonde
MARTIN J. LALONDE
KEVIN WEBB
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0247/0479
Fax: (202) 353-2021

Attorneys for Defendant

OF COUNSEL:
Elisabeth Brandon

Brenda Riel
Attorneys
Office of the Solicitor
Division of Indian Affairs
U.S. Department of the Interior
MS 6456
Washington, D. C. 20240
Telephone: (202) 208-7403
Fax: (202) 219-0559

Teresa E. Dawson
Senior Counsel
Office of Chief Counsel
Financial Management Services
U.S. Department of the Treasury
401 14th Street, S.W.
Room 552A
Washington, D.C. 20227
Telephone: (202) 874-2567
Fax: (202) 874-6627