**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed: January 26, 2006 |
| v. | ) | No. 99-550 L (into which has been consolidated No. 00-169L) |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | Judge Emily C. Hewiit |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM CHALLENGING INTERIOR'S INTERPRETATION OF OSAGE REGULATIONS IN OKIE CRUDE CO. v. MUSKOGEE AREA DIRECTOR**

TABLE OF CONTENTS

I. Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

i. Board's Discussion and Conclusions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

II. Motions *In Limine* Promote Judicial Economy and Streamline the Issues for Trial. . . . . .4

III. This Court Lacks Subject Matter Jurisdiction Over the Tribes "Highest Offered Price" Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV. Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

TABLE OF AUTHORTIES

FEDERAL CASES

*Appolo Fuels, Inc. v. United States*, 54 Fed. Cl. 717 (2002) *order aff'd*, 381 F.3d 1338, *reh'g & reh'g en banc denied*, (Fed. Cir. 2004), *cert. denied*, 125 S. Ct. 1406 (2005) . . . . . . . . . . . 6, 8, 9

*Aulston v United States*, 11 Cl. Ct. 58 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Baskett v. United States*, 2 Cl. Ct. 356 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358 (Fed. Cir. 1998) . . . . . . . . . . . 8

*Freese v. United States*, 221 Ct. Cl. 963 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*INSLAW, Inc. v. United States*, 35 Fed. Cl. 295 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*M & J Coal v. United States*, 47 F.3d 1148 (Fed. Cir. 1995), *cert. denied*, 516 U.S. 808, 16 S. Ct. 53 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Rith Energy, Inc. v. United States*, 247 F.3d 1355, *reh'g & reh'g en banc denied*, (Fed. Cir 2001), *cert. denied*, 536 U.S. 958, 122 S. Ct. 2660 (2002) . . . . . . . . . . . . . . . . . 6, 7, 8, 9, 10, 11

*Ware v. United States*, 57 Fed. Cl. 782 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*White Mountain Apache Tribe v. United States*, 10 Cl. Ct. 115 (1986) . . . . . . . . . . . . . . . . . . . 4

FEDERAL STATUTES

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

FEDERAL RULES

Rules Ct. Fed. Cl. 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed.R.Civ.P. 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. E. 402. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4



FEDERAL REGULATIONS

25 C.F.R. § 2.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

25 C.F.R. § 226.11 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

25 C.F.R. § 226.11 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 3

25 C.F.R. § 226.11(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

43 C.F.R. § 4.330 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

MISCELLANEOUS

*Okie Crude Co. v. Muskogee Area Director*, 23 IBIA 173 (1993). . . . . . . . . . . . . . . . . . . . . . 1, 2, 3

6 C. Wright and A. Miller, Federal Practice and Procedure § 1525 (1971). . . . . . . . . . . . . . . . . . . 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THE OSAGE TRIBE OF INDIANS OF OKLAHOMA, Plaintiff, | Electronically Filed: January 26, 2006 |
| v. | No. 99-550 L (into which has been consolidated No. 00-169L) |
| THE UNITED STATES OF AMERICA, Defendant. | Judge Emily C. Hewitt |

DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE TO PRECLUDE
PLAINTIFF FROM CHALLENGING INTERIOR'S
INTERPRETATION OF OSAGE REGULATIONS
IN OKIE CRUDE CO. v. MUSKOGEE AREA DIRECTOR

## I. BACKGROUND

In 1990, one of the major purchasers of oil in Osage County, Farmland Industries, Inc. ("Farmland") initiated a program to offer certain lessees a guaranteed price for oil in specified months, known as a "forward purchase floor price" in exchange for receiving a known monthly quantity of oil from wells conveniently located to Farmland's truck and pipeline gathering system. 23 IBIA at 176-77, 179. Given Farmland's requirements for its contracts that the wells be conveniently located and produce a minimum volume, Farmland did not offer this arrangement to all lessees in Osage County. *See id.* at 176-77. In certain months, Farmland's minimum price exceeded the highest posted prices in Osage County. The lessees paid royalty based on the actual selling price they received from Farmland because it was higher than the highest posted price.

In early 1991, the Osage Agency became aware of the Farmland contracts and decided to

collect from lessees additional royalties. The royalties were recalculated based on the actual selling prices of the program (those offered by and paid to Farmland) to the extent such prices were higher than the actual sales price or highest posted prices on which lessees had based their royalty payment. 23 IBIA at 178. On October 21, 1991, the Muskogee Area Director sent its decision with attached billing information to each lessee. The decision provided, in part:

> The additional royalty is due because certain "major purchasers" made agreements with some of their sellers over a three year period (1988 through 1991) whereby the purchaser offered and paid more for certain oil than the price commonly called the "highest posted price." Each time such a transaction occurred, it had the effect of establishing that price as the royalty price for all oil in the Osage Mineral Estate. Therefore, each day one of these purchases took place, the royalty price was increased to the higher amount per barrel. If two such transactions occurred, the royalty price is considered to be the higher of the two.

23 IBIA at 178. Thereafter, most of the lessees duly filed appeals to the IBIA, which subsequently established a joint briefing schedule and consolidated the cases for purposes of its decision. 23 IBIA at 179. Three individual or groups of lessees submitted briefs and the IBIA issued its decision reversing the Area Director on February 5, 1993. *Okie Crude Co. v. Muskogee Area Director*, 23 IBIA 174 (1993).

i. Board's Discussion and Conclusions

The IBIA defined the issue on appeal as whether, under 25 C.F.R. § 226.11 (both the 1974 and 1990 versions), "Farmland's forward purchase floor price could be used as the basis for royalty determinations for any person other than a person participating in Farmland's program." 23 IBIA at 179. To resolve this issue, the Board construed, according to their ordinary meaning, the key regulatory terms in section 226.11, namely "bona fide selling price" in the 1990 regulations or "actual selling price" in the 1974 regulations, "posted price," and "offered price." The Board concluded that the purchase floor price was not a posted price

because it was not a publicly circulated written offer to all producers in the area or field. *Id.* at 182. Next, the Board determined that the floor price was a "bona fide selling price" for those purchasers that participated in Farmland's program. But, the Board concluded, that selling price could be used for determining the royalty owed from the lessee who actually received the selling price, but not for a lessee that did not receive that price. *Id.* at 182-83.

Finally, the Board held, as to "offered price," that the regulations do not alter the general rules of contract law, which "provides that an offer is controlled by the offerer, is personal to the offeree, and can be accepted only by the person to whom it is made." *Id.* at 183. The Board concluded that "a price that is not offered to a producer is not an 'offered price' as to that producer within the meaning and intent of 25 C.F.R. § 226.11(a)(2)." *Id.* This construction distinguished between "posted" and "offered" price to prevent the language of the regulation from being superfluous.[1/]

Although the Osage Nation was not a named party in that proceeding, it was included on the certificates of service from the outset, so was fully informed of the proceedings. Pursuant to the governing regulations of the Department of the Interior, the Osage Nation was an "interested party" with respect to the *Okie Crude* proceeding. (*See* 43 C.F.R. § 4.330 and 25 C.F.R. § 2.2). If the Osage Nation had wished to challenge the decision in *Okie Crude*, it could have filed an action in a District Court pursuant to the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.*, as a "person ... aggrieved by agency action within the meaning of a relevant statute."

II. MOTIONS *IN LIMINE* PROMOTE JUDICIAL ECONOMY AND STREAMLINE THE

---

[1/] In addition, the Board concluded that the Farmland offers were not made on the date of sale or removal of the oil because they were futures prices that had been offered and accepted in advance of the actual day of sale or removal. 23 IBIA 183-84.

ISSUES FOR TRIAL

"A motion *in limine* is a recognized method under RUSCC 16 and Fed.R.Civ.P. 16[2] for obtaining a pretrial order simplifying issues for trial ...." *White Mountain Apache Tribe v. United States*, 10 Cl. Ct. 115, 116 (1986). Likewise, as this Court noted in *Baskett v. United States*, 2 Cl. Ct. 356, 359 (1983):

> There is no question under [Rule] 16, that this court, as a trial court, has the power to issue pretrial orders simplifying issues for trial. Not only does this court have such power, it has a duty to exercise it in appropriate cases. This power allows the court, *inter alia*, to define the issues, facts, and theories actually in contention and to weed out extraneous issues. Too, this court also has the authority to issue pretrial rulings concerning the admissibility at trial of proposed testimony and documentary evidence.

2 Cl. Ct. at 359 (citing 6 C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1525, at 586-89 (1971)); *see also INSLAW, Inc. v. United States*, 35 Fed. Cl. 295, 302-03 (1996) ("The basic purpose of a motion *in limine* is to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters.").

This Court should grant the present motion, to prevent the introduction of evidence or other material that has no relevance within the meaning of Fed. R. E. 402 (prohibiting the admission of irrelevant evidence), because such material pertains to matters over which this Court has no jurisdiction.

## III. THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE TRIBE'S "HIGHEST OFFERED PRICE" CLAIM

Plaintiff makes clear, in its pre-trial memorandum of contentions of facts and law (Osage

---

[2] Because RCFC 16, which was revised on May 1, 2002, is analogous to its predecessor, as well as Fed.R.Civ.P. 16, it is appropriate to consider precedent interpreting those rules when applying revised RCFC 16.

Pre-Trial Memorandum, at 59-62), that it is challenging the decision of the IBIA in *Okie Crude, supra*; and that, to entertain the Tribe's claims that the United States failed to include in its royalty calculations the highest prices offered by major purchasers, this Court would have to ignore, or rule contrary to, the IBIA's determinations in *Okie Crude, supra.* Such a collateral attack on the IBIA's determination finds no support in the governing law. Instead, this Court and the Court of Appeals for the Federal Circuit consistently have held that the Court of Federal Claims does not have jurisdiction to review the merits of an agency decision such as the one that forms the heart of the Osage's claim. For example, in *Freese v. United States*, 221 Ct. Cl. 963 (1979), the Court of Claims noted that it had general jurisdiction over all elements of plaintiff's claim that the United States had taken plaintiff's property in certain mining lode claims and millsite claims without paying just compensation. *Freese*, 221 Ct. Cl. at 964. The Court recognized, however, that, in deciding the merits of those elements of plaintiff's takings claim, it did not have any power to reverse the underlying agency determination that the mining and millsite claims were null and void, nor could it "ignore such an administrative conclusion." *Freese,* 221 Ct. Cl. at 964. In short, this Court held, "We do not have the jurisdiction to review these administrative determinations." *Freese*, 221 Ct. Cl. at 964. The Court also noted:

> Congress has chosen to place authority to review these decisions of the Secretary of the Interior in the United States District Courts. See Administrative Procedure Act, 5 U.S.C. § 701-06 (1976).

*Freese*, 221 Ct. Cl. at 964. Accordingly, it concluded: "For this court to undertake a review of [the Interior Department's determination] would be to assume a function lodged elsewhere by Congress and never contemplated for this court." *Freese*, 221 Cl. Ct at 964.

The Court of Appeals for the Federal Circuit endorsed the reasoning of the *Freese* court

in *Aulston v. United States*, 11 Cl. Ct. 58 (1986), *affirmed on the merits*, 823 F.2d 510 (Fed. Cir. 1987). *Aulston* concerned a takings claim over rights to carbon dioxide gas. The plaintiffs in *Aulston* initially challenged through the administrative process the Interior Department's ruling regarding title to the gas. In that administrative process, the Secretary of the Interior, through the Interior Board of Land Appeals (IBLA), made a final administrative decision that the title to the gas had vested in the United States. The plaintiffs then filed suit in the Claims Court, seeking compensation for the allegedly wrongful taking of the gas. The Court noted that, after the IBLA made its decision, adverse to plaintiff, "[t]he stage was then set for plaintiffs to return to the district court to seek review of the decision under the APA." *Aulston, supra*, 11 Cl. Ct. at 60. Instead, plaintiffs chose to bring suit in the Claims Court. This Court held that it was without power to review, much less disturb, the agency's determination, because such a determination:

> entails an exercise of quasi-judicial authority within an area of special expertise. Such an adjudication is determinative of the rights in issue and is binding upon the parties unless reviewed and reversed by a court of competent jurisdiction. Therefore, without a previous test of validity under the Administrative Procedure Act, the correctness of the administrative action must be taken as a 'given' in this Tucker Act suit.

*Aulston, supra*, 11 Cl. Ct. at 62 (citations omitted).

*Rith Energy, Inc. v. United States*, 247 F.3d 1355, *rehearing and rehearing en banc denied*, (Fed. Cir. 2001), *cert. denied,* 536 U.S. 958, 122 S.Ct. 2660 (2002), is "the Federal Circuit's most recent pronouncement on the appropriate deference to be accorded the underlying agency determination." *Appolo Fuels, Inc. v. United States*, 54 Fed. Cl. 717, 740 (2002), *order affirmed,* 381 F.3d 1338, *rehearing and rehearing en banc denied* (Fed. Cir. 2004), *cert. denied*, 125 S. Ct. 1406 (2005). As it did in *Aulston, supra*, the Federal Circuit in *Rith* held that "'[n]either the Court of Federal Claims nor this court may entertain a collateral challenge to the

validity of the [agency's] actions.'" *Rith, supra*, 247 F.3d at 1365, *quoting M & J Coal v. United States*, 47 F.3d 1148, 1154 (Fed. Cir. 1995), *cert. denied*, 516 U.S. 808, 116 S.Ct. 53 (1995).

*Rith* concerned the denial by the Office of Surface Mining (OSM) of a permit application for surface mining. *Rith, supra*, 247 F.3d at 1358. The plaintiff filed an administrative appeal of the agency's decision, which the IBLA ultimately upheld. *Rith*, 247 F.3d at 1360. Plaintiff then filed suit in the district court for review of the IBLA decision (and for a takings claim), but later dismissed the district court action and pursued its takings claim in this Court. *Rith*, 247 F.3d at 1365. In its takings suit in this Court, the plaintiff challenged the IBLA's denial of the permit application and the lawfulness of OSM's rejection of its toxic materials handling plan. *Rith*, 247 F.3d at 1364. This Court held that it did not have jurisdiction to review such a claim, and plaintiff appealed. *Rith*, 247 F.3d at 1364. On appeal, the Court of Appeals for the Federal Circuit affirmed this Court's ruling that it lacked jurisdiction to entertain such a claim:

> Although Rith attacks the lawfulness of OSM's [the Office of Surface Mining's] rejection of its toxic materials handling plan, that challenge is not properly before us. ... Rith had the opportunity to challenge the lawfulness of OSM's actions, including the suspension of its permit, the rejection of its toxic materials handling plan, and the ultimate denial of its permit application in administrative proceedings and through judicial review in a United States district court. In fact, Rith challenged the rejection of its toxic materials handling plan administratively, and lost. Like the coal mine operator in *M & J Coal* [*v. United States*, 47 F.3d 1148 (Fed. Cir. 1995)], Rith appealed that decision to the IBLA. After losing before the IBLA, Rith sought judicial review in a federal district court, but dismissed that action. In a similar setting, we held in *M & J Coal* that '[n]either the Court of Federal Claims nor this court may entertain a collateral challenge to the validity of OSM's actions,' *id.* at 1154, and we see no reason to depart from that holding here.

*Rith*, 247 F.3d at 1365.

In so holding, the Court of Appeals rejected plaintiff's claim that the Court's decision in *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358 (Fed. Cir. 1998), permitted the

Court of Federal Claims to entertain plaintiff's challenge to the OSM's suspension of its mining permit, rejection of its toxic materials handling plan, and permit denial. *Rith, supra,* 247 F.3d at 1365. In rejecting the plaintiff's claim in *Rith*, the Court of Appeals noted that plaintiff "rea[d] too much into *Del-Rio*." *Rith, supra*, 247 F.3d at 1365. The Court of Appeals made clear that its decision in *Del-Rio* did not "entitl[e the *Rith* plaintiff] to argue in the Court of Federal Claims that OSM's permit denial was unlawful under SMCRA [the Surface Mining Control and Reclamation Act], or to relitigate in the takings action its unsuccessful statutory challenge to the permit denial." *Rith, supra*, 247 F.3d at 1365.

The Court of Appeals explained that *Del-Rio*, in contrast to Rith's case, concerned a takings claim that by its nature allowed the plaintiff to sue in this Court "without first challenging the lawfulness of the government's action, or establishing the scope of its property interest, in an administrative proceeding." *Rith, supra*, 247 F.3d at 1365. The Court noted,"That is so because a takings claim lies, as long as the government's action was authorized, even if the government's action was subject to legal challenge on some other ground." *Rith, supra*, 247 F.3d at 1365. In other words, there was no dispute that the government action underlying the *Del-Rio* plaintiff's takings claim was "authorized" within the meaning of takings law, and to adjudicate that takings claim in the Court of Federal Claims would not entail a challenge in that Court to the correctness of any agency determinations.

In contrast to *Del-Rio*, in *Rith* the plaintiff sought to challenge the lawfulness of the underlying agency actions, including the rejection of plaintiff's toxic materials handling plan, the suspension of its mining permit, and the ultimate denial of that permit, "under the cover of a takings claim in the Court of Federal Claims." *Rith, supra*, 247 F.3d at 1366. The Court of

Appeals unequivocally rejected that ploy, holding that its decision in *Del-Rio* could not be stretched so far:

> The question whether OSM violated SMCRA by its ruling on a permit application in a particular case was assigned by Congress to the administrative process within the Department of the Interior, subject to judicial review in a district court. *Del-Rio* does not give the Court of Federal Claims authority to adjudicate that issue *de novo*.

*Rith, supra*, 247 F.3d at 1365.

"Rith is thus required to litigate its takings claim on the assumption that the administrative action was both authorized and lawful. On the facts of this case, the consequence of assuming the lawfulness of OSM's actions, i.e., that OSM was correct in concluding that Rith's mining activities constituted an unacceptable threat of acid mine drainage and the consequent pollution of groundwater in the area surrounding the mine operations, is to limit the issue before us to whether prohibiting Rith from mining under those circumstances constitutes a taking." *Rith, supra*, 247 F.3d at 1366. In other words, the Court of Appeals made clear that the Court of Claims had to accept the underlying agency's determinations "as a given" in the plaintiff's suit for money damages in that Court.

As this Court recently recognized, "[t]he import of ... *Rith* ... is unavoidable. Plaintiff is precluded from attacking [the underlying agency determination] in the Court of Federal Claims." *Appolo Fuels, supra*, 54 Fed. Cl. at 740. Likewise, the Osage may not, under cover of their claims of a breach of a duty to collect moneys due, challenge Interior's determination of the meaning of particular terms in the Bureau of Indian Affair's ("BIA") regulations. Yet that is exactly what the Tribe seeks to do in this Court — the Osage cannot prevail on their claim that the United States breached a duty to them by failing to collect the highest "offered price" unless

the IBIA's adjudicatory determination as to the proper interpretation of "offered price" is found to be incorrect.

To express it differently, the Osage claim about "highest offered price" is not a matter, like *Del-Rio*, in which plaintiff's claim for money damages may be litigated, and the United States may be found liable for such damages, "*regardless ... whether* the agency acted consistently with its statutory and regulatory mandate." *Rith, supra*, 247 F.3d at 1366. Instead, it is like *Rith* in that "plaintiff claims it is entitled to prevail *because* the agency acted in violation of statute or regulation"; and, as the Court of Appeals held in that case, "*Del-Rio* does not give the plaintiff the right to litigate that issue in a [Court of Claims] action rather than in the congressionally mandated administrative review proceeding." *Rith, supra,* 247 F.3d at 1366.

Here, as in *Rith*, plaintiff attempts to challenge an agency adjudication of an issue essential to its claim "under cover of" an action for money damages in this Court. *Rith, supra*, 247 F.3d at 1366. That collateral attack on the agency's determination must fail. *Freese, Aulston*, and *Rith, supra,* all teach that this Court does not have jurisdiction to entertain any claim based on such a premise, but instead must take the IBIA's interpretation of the pertinent regulations "as a given" (*Aulston, supra,* 11 Cl. Ct. at 62) in this Tucker Act suit. The more so where, as in this case, the agency action at issue constituted an "explicit adjudication" of the interpretation of the disputed term. *See Ware v. United States,* 57 Fed. Cl. 782, 785, n 2. (2003)(noting that the *Del-Rio* court had distinguished the *Aulston* line of cases on the ground that, unlike *Del-Rio* itself, those cases arose from "explicit [agency] adjudications" of the property rights at issue; and holding that, contrary to the *Ware* plaintiff's claims, *Del-Rio* did not provide a basis for it to challenge an IBLA decision in the Court of Federal Claims).

Of course, the same principles apply, and the same result is required, regardless of how the Tribe attempts to characterize its collateral attack in this Court. Plaintiff cannot avoid the jurisdictional bar on its "offered price" claim by casting that claim as one for enforcement of contract terms. The leases at issue explicitly incorporate the Osage Regulations, including those involving "offered price." Accordingly, the Department of the Interior's interpretation of those regulations is still controlling and plaintiff cannot, by characterizing its claim as a contract claim, get around the consequences of the jurisdictional bar imposed by the Tucker Act, read in conjunction with *Rith, supra,* and the *Aulston* line of cases. The "grant of jurisdiction [under the Tucker Act to entertain a suit for damages] is not a license to review the determination by the [Department of the Interior]. Rather, in this Court, as a general proposition, [plaintiff] must accept the result of the adjudicative process provided by the Department of the Interior." *Ware, supra,* at 785.[3/]

IV. CONCLUSION

For these reasons, the Court should take the correctness of Interior's interpretation of the term "offered price," as well as the other regulatory terms defined in *Okie Crude,* as a given. It should exclude any evidence or testimony challenging the interpretation. Instead, the Court should determine whether the BIA properly applied the regulations as construed by the IBIA.

Respectfully submitted this 26th day of January, 2006.

SUE ELLEN WOOLDRIDGE

---

[3/] In *Ware, supra,* this Court held that plaintiff could not challenge in his takings case in this Court the underlying IBLA decision that plaintiff's mining claims were invalid. The Court also held that because the mining claims had been adjudicated invalid by the IBLA, the Court had no subject matter jurisdiction over the alleged takings claim. *Ware,* 57 Fed. Cl. 782, 785-86.

Assistant Attorney General

*s/ Brett D. Burton*
BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Counsel of Record for Defendant

MARTIN J. LALONDE
KEVIN WEBB
LAURA MAROLDY
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0247
Fax: (202) 353-2021

Attorney for Defendant

OF COUNSEL:

Brenda Riel
Elisabeth Brandon
Attorneys
Office of the Solicitor
Division of Indian Affairs
U.S. Department of the Interior
MS 6456
Washington, D. C. 20240
Telephone: (202) 208-4218/3714
Fax: (202) 208-3490

Teresa E. Dawson
Senior Counsel
Office of Chief Counsel
Financial Management Services

U.S. Department of the Treasury
401 14th Street, S.W.
Room 552A
Washington, D.C. 20227
Telephone: (202) 874-2567
Fax: (202) 874-6627