**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed February 2, 2006 |
| v. | ) | No. 99-550 L (into which has been consolidated No. 00-169 L) Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S NEWLY ASSERTED AFFIRMATIVE DEFENSES OF ESTOPPEL AND LACHES AND TO EXCLUDE EVIDENCE SUPPORTING SUCH DEFENSES**

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation

# TABLE OF CONTENTS


TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

PROCEDURAL BACKGROUND .......... 2

ARGUMENT .......... 4

I. THE UNITED STATES WAIVED ANY DEFENSE OF ESTOPPEL OR LACHES BY FAILING TO PLEAD EITHER DEFENSE IN A RESPONSIVE PLEADING AS REQUIRED BY RCFC RULE 8(C) .......... 4

A. The United States Failed to Plead the Defenses of Estoppel and Laches .......... 4

B. The United States Has No Valid Basis for Injecting Its Unpled Defenses into this Case on the Eve of Trial .......... 5

1. The United States Should Not Be Permitted to Amend Its Pleadings to Assert Laches or Estoppel .......... 5

2. The United States' Laches and Estoppel Defenses Implicate New Issues Not Previously Raised in this Case .......... 7

3. The United States' Assertion of a Laches Defense in the 550 Case Cannot Import Laches into this Case .......... 8

II. THE UNITED STATES' UNCLEAN HANDS PREVENT IT FROM TAKING ADVANTAGE OF THE EQUITABLE DEFENSES OF LACHES AND ESTOPPEL .......... 10

III. CONGRESS'S DETERMINATION IN THE APPROPRIATIONS ACTS THAT CLAIMS DO NOT ACCRUE UNTIL AN ACCOUNTING IS RENDERED BARS APPLICATION OF LACHES AND ESTOPPEL TO THIS CASE .......... 12

CONCLUSION .......... 17

## TABLE OF AUTHORITIES

### FEDERAL CASES

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992).........8, 10

*Alfa Laval Separation, Inc. v. United States*, 47 Fed. Cl. 305 (2000).................................6

*Bell v. Allstate Life Ins. Co.*, 160 F.3d 452 (8th Cir. 1998).................................................7

*Cornetta v. United States*, 851 F.2d 1372 (Fed. Cir. 1982)...................................... passim

*Cornwall v. U.S. Construction Mfg, Inc.*, 800 F.2d 250 (Fed. Cir. 1986)....................5, 6, 8

*County of Oneida v. Oneida Indian Nation*, 470 U.S. 226 (1985)....................................13

*Deering v. United States*, 620 F.2d 242 (Ct. Cl. 1980)......................................................15

*Foman v. Davis*, 371 U.S. 178 (1962)..............................................................................6

*In Re Beaty*, 306 F.3d 914 (9th Cir. 2002)........................................................................15

*John R. Sand & Gravel Co. v. United States*, 62 Fed. Cl. 556 (2004).............................5, 7

*Menominee Indian Tribe v. Thompson*, 943 F. Supp. 999 (W.D. Wi. 1996)......................14

*Osage Nation v. United States*, 57 Fed. Cl. 392 (2003).......................................................3

*Osage Nation v. United States*, 68 Fed. Cl. 322 (2005)...........................................4, 8, 11

*Poggas v. United States*, 93 F. Supp. 1009 (Ct. Cl. 1950)................................................15

*Red Lake and Pembina Bands v. Turtle Mountain Band of Chippewa Indians*, 173 Ct. Cl. 928 (Ct. Cl. 1965)..............................................................................9

*Schlacter-Jones v. General Tel. of California*, 936 F.2d 435 (9th Cir. 1991)......................7

*Shockley v. Arcan, Inc.*, 248 F.3d 1349 (Fed. Cir. 2001)...................................................10

*Shoshone Indian Tribe of the Wind River Reservation v. United States*, 364 F.3d 1339 (Fed. Cir. 2004)..........................................................................12, 14, 15

*Sprynczynatyk v. General Motors Corp.*, 771 F.2d 1112 (8th Cir. 1985)...........................6

*Te-Moak Bands of Western Shoshone Indians v. United States*, 948 F.2d 1258 (Fed. Cir. 1991)..........................................................................................5, 7

*Tenneco Resins, Inc. v. Reeves Bros.*, 752 F.2d 630 (Fed. Cir. 1985)................................6

*Thompson-El v. Jones*, 876 F.2d 66 (8th Cir. 1989).......................................................6, 7

*Tsosie v. United States*, 11 Cl.Ct. 62, 71 (1986)...............................................................13

### RULES OF THE COURT OF FEDERAL CLAIMS

Rule 8(c) ........................................................................................... passim

Rule 15(a) .........................................................................................5, 6

## LEGISLATIVE MATERIALS

H.R. Rep. No. 103-158, at 41 (1993).....................................................................................14

## MISCELLANEOUS AUTHORITIES

C. Wright & A. Miller *Federal Practice and Procedure* § 1278 (3d Ed. 2004)..................5

## INTRODUCTION

On October 27, 2005, this Court held that the statute of limitations did not bar the Osage Nation's claims. The Court's statute of limitations ruling turned on specific appropriations acts that extended indefinitely the running of any statutory period for trust claims, such as those at issue in this case, until the United States provides an accounting of the trust. Because the United States has never provided any accounting to the Osage Nation, the Court held that the Osage Nation's claims were not time-barred.

In an attempt to circumvent that ruling, and to re-inject into this case the notion that the Osage Nation's claims are somehow time-barred, the United States has for the first time asserted the affirmative defenses of estoppel and laches. In essence, it argues that the Osage Nation's alleged past acquiescence in the United States' management of the Osage Mineral Estate and Trust bars the Osage Nation's claims of breach of trust. Although without merit as a matter of fact, these defenses are also impermissible as a matter of law.

During five years of litigation, the United States never advanced these defenses in any responsive pleading in this case. Instead, the United States focused its affirmative defenses solely on jurisdictional issues, including statute of limitations. To assert these new defenses in a brief just one month before trial is patently prejudicial to the Osage Nation. The defenses raise entirely new legal and factual issues and puts the Osage Nation in the impossible position of having to identify responsive evidence at the same time that it is trying to complete preparations for an already complex trial. Moreover, the Osage Nation would have to address these new issues without the benefit of discovery into the bases for the United States' laches and estoppel defenses.

This tactic of trial by ambush is strictly prohibited by the Rules of this Court. RCFC Rule 8(c) expressly requires that a defendant plead in its Answer or other responsive pleading

affirmative defenses such as estoppel and laches. The United States did not assert estoppel or laches in any responsive pleading filed in this case, and has therefore waived those defenses. Moreover, because the United States has admittedly failed to provide any accounting of the Osage Trust, it comes to this case with unclean hands, and may not invoke the protection of the equitable defenses of laches and estoppel. Finally, Congress's manifest goal in the appropriations acts was to allow Indians to pursue breach of trust claims regardless of the passage of time, precisely because the United States had failed to provide accountings to Indians. In extending the time for filing such suits and implicitly accepting liability for long-dormant claims, Congress clearly intended to deprive the government of laches and estoppel defenses where no accounting has occurred. To apply those defenses in this case would have the perverse effect of barring claims as untimely even though they were filed *earlier* than when Congress expected them to be brought. Accordingly, the Court should strike the United States' newly asserted defenses of laches and estoppel and exclude all evidence proffered in support of them.

**PROCEDURAL BACKGROUND**

In 1999 the Osage Nation filed the action styled *Osage Nation v. United States*, Case No. 99-550 L (Fed. Cl. filed Aug. 2, 1999) ("the 550 Case"). Subsequently, the Osage Nation filed the current action, styled *Osage Nation v. United States*, Case No. 00-169 L (Fed. Cl. filed March 31, 2000) ("the 169 Case"). To put the United States' new defenses in this case in context, we briefly review the procedural histories of the 550 and 169 Cases.

<u>Pleadings and Motions in the 550 Case</u>. On November 1, 1999, the United States filed its Answer to the 550 Case asserting a number of affirmative defenses as required by RCFC Rule 8(c). A copy of the United States' Answer in the 550 Case is attached as Exhibit 1. The United States did not assert the defenses of estoppel or laches. Over the next several years, the United States objected to the sufficiency of the Osage Nation's Complaint in the 550 Case, and to the

Osage Nation's First Amended Complaint and Second Amended Complaint, requesting in each case a more definite statement of facts. The United States did not file an Answer or other pleading in response to the First Amended Complaint or the Second Amended Complaint. The United States did file an Answer to the Third Amended Complaint on November 8, 2004, a copy of which is attached as Exhibit 2. In its Answer to the Third Amended Complaint, the United States again asserted a number of affirmative defenses, including for the first time the defense of laches. Estoppel, however, was not asserted.

On April 11, 2005, the United States moved to dismiss the 550 Case based on lack of jurisdiction and statute of limitations. On July 13, 2005, the Osage Nation filed a motion to dismiss the 550 Case voluntarily and without prejudice. After briefing and argument, Judge Coster Williams denied the Motion for Voluntary Dismissal primarily on the ground that too much effort had gone into the case to permit dismissal without prejudice and transferred the 550 Case to this Court. Memorandum Opinion and Transfer Order (September 2, 2005).

Pleadings and Motions in the 169 Case. On July 7, 2000, the United States filed its Answer in the 169 Case asserting a number of affirmative defenses as RCFC Rule 8(c) requires. (A copy of that rule is attached as Exhibit 3.) The affirmative defenses of laches and estoppel were not among the defenses pled.

On July 25, 2001, the United States moved to dismiss the 169 Case based on several of its affirmative defenses, principally statute of limitations and standing. Again, neither laches nor estoppel were mentioned. On July 28, 2003, this Court denied the Motion to dismiss. *Osage Nation v. United States*, 57 Fed. Cl. 392 (2003). Subsequently, the Court defined Tranche One and established a discovery and trial schedule for the resolution of the Tranche One Claims. *See* Scheduling Order (April 15, 2005). On June 14, 2005, the United States filed a Motion to

Dismiss the Tranche One claims for lack of jurisdiction, including violation of the statute of limitations. At no time, however, did the United States assert the defenses of estoppel or laches to the Tranche One claims. On October 27, 2005, the Court denied the United States' Motion to Dismiss in the 169 Case, finding that it did have jurisdiction over the Osage Nation's claims, and specifically denying the United States' statute of limitations defenses. *Osage Nation v. United States*, 68 Fed. Cl. 322 (2005).

The Two Consolidations of the 550 Case and the 169 Case. On May 5, 2000, Judge Wiese entered an Order consolidating the 550 Case and the 169 Case. Order (May 5, 2000). On September 14, 2000, at the request of the United States, Judge Wiese vacated his May 5, 2000 Order consolidating the two cases and reassigned the 169 Case to Judge Turner. The 169 Case was subsequently reassigned to this Court, and the 550 Case was subsequently reassigned to Judge Coster Williams.

On September 14, 2005, after Judge Coster Williams transferred the 550 Case to this Court. Two weeks after discovery ended on the Tranche One claims, this Court issued an order consolidating the two cases. Order (Sept. 14, 2005).

## ARGUMENT

### I. THE UNITED STATES WAIVED ANY DEFENSE OF ESTOPPEL OR LACHES BY FAILING TO PLEAD EITHER DEFENSE IN A RESPONSIVE PLEADING AS REQUIRED BY RCFC RULE 8(C)

#### A. The United States Failed to Plead the Defenses of Estoppel and Laches

By its express terms, RCFC Rule 8(c) requires a defendant to plead the defenses of estoppel and laches affirmatively. In relevant part, RCFC Rule 8(c) provides:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, ***estoppel***, failure of consideration, fraud, illegality, ***laches***, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other

> matter constituting an avoidance or affirmative defense. (emphasis added).

It is well established that the failure of a defendant to plead those defenses properly constitutes a waiver of them. 5 C. Wright & A. Miller *Federal Practice and Procedure* § 1278 (3d Ed. 2004). *See Cornwall v. U.S. Construction Mfg, Inc.*, 800 F.2d 250, 252-53 (Fed. Cir. 1986) (failure to plead an affirmative defense pursuant to RCFC Rule 8(c) may only be cured by amending the pleadings pursuant to Rule 15(a)).

Because it failed to plead the affirmative defenses of estoppel and laches, the United States has waived those defenses and cannot now assert them.

### B. The United States Has No Valid Basis for Injecting Its Unpled Defenses into this Case on the Eve of Trial

#### 1. The United States Should Not Be Permitted to Amend Its Pleadings to Assert Laches or Estoppel

The United States may argue that it should be permitted to amend its pleadings to assert its laches and estoppel defenses. *E.g., Cornwall*, 800 F.2d at 252-53 (vacating denial of leave to amend because trial court did not explain reasons for denial); *John R. Sand & Gravel Co. v. United States*, 62 Fed. Cl. 556, 568 (2004) (allowing amendment to the pleadings when unpled defense was tried with the implied consent of the parties). But the Federal Circuit has ruled that amendments should not be permitted if prejudice to the non-moving party would result. *Te-Moak Bands of Western Shoshone Indians v. United States*, 948 F.2d 1258, 1261-62 (Fed. Cir. 1991) (noting that "undue prejudice to the non-amending party by allowance of the amendment" can justify denying leave to amend). Moreover, the Court of Federal Claims has recognized that seeking to amend pleadings late in a case, or long after the time for pleading has passed, without adequate explanation is *alone* a sufficient reason to deny leave to amend. *Alfa Laval Separation, Inc. v. United States*, 47 Fed. Cl. 305, 313-14 (2000) (citing *Foman v. Davis*, 371 U.S. 178, 182

(1962)). For both of these reasons, the United States should not be permitted to amend its pleadings at this late date to assert the defenses of estoppel and laches.

First, allowing the United States to inject these claims into this case at this time would be unduly prejudicial to the Osage Nation. All discovery in this case was conducted on the basis of the claims asserted in the Osage Nation's Complaint and the United States' Answer. That Answer pled neither estoppel nor laches. Discovery has now been completed, the Osage Nation has filed its witness and exhibit lists, and the parties are entering the final phases of trial preparation. It is too late for the Osage Nation to conduct any discovery on the multiple factual issues raised by those defenses. Moreover, the Osage Nation cannot adequately conduct an investigation into these issues because of the need to finalize trial preparation and meet other Court-imposed deadlines.

Under these circumstances, the United States should not be permitted to amend its pleadings to assert the new defenses of laches and estoppel. *Tenneco Resins, Inc. v. Reeves Bros*., 752 F.2d 630, 632-34 (Fed. Cir. 1985) (affirming decision to deny amendment adding a defense based, in part, on fact that discovery had been conducted without that defense being at issue); *Thompson-El v. Jones*, 876 F.2d 66, 68 (8th Cir. 1989) (refusing to allow leave to amend because of prejudice of allowing an amendment after close of discovery and just two weeks before trial)[1]; *Sprynczynatyk v. General Motors Corp*., 771 F.2d 1112, 1125 (8th Cir. 1985) (denying leave to amend when it would have prejudiced the opposing party by being "disruptive to the trial schedule"); *Schlacter-Jones v. General Tel. of California*, 936 F.2d 435, 443 (9th Cir. 1991) (the prejudice that would be caused by granting leave after the parties had conducted

---

[1] The Federal Circuit follows the Eighth Circuit on issues relating to Rule 15(a). *Cornwall*, 800 F.2d at 252-53.

discovery and a pending summary judgment motion had been fully briefed "weighs heavily against allowing leave").

Second, the United States has offered no explanation for waiting over five years before raising these defenses. Nor could such an explanation be justified. *Te-Moak*, 948 F.2d at 1262 ("Delay alone, even without a demonstration of prejudice, has thus been sufficient grounds to deny amendment of pleadings."); *Thompson-El*, 876 F.2d at 68 (refusing to allow leave to amend when the case had been pending for approximately eighteen months and the motion was made just two weeks before the trial was to start); *Bell v. Allstate Life Ins. Co*., 160 F.3d 452, 454 (8th Cir. 1998) (refusing to grant leave to amend when there was a lack of due diligence in not filing it earlier). For this separate reason, the United States should not be permitted to assert its late-raised defenses.[2]

**2. The United States' Laches and Estoppel Defenses Implicate New Issues Not Previously Raised in this Case**

The United States may argue that the Osage Nation was on notice of these defenses because an element of the United States' statute of limitation defense was that the Osage Nation had knowledge of its claims. That argument is unavailing for two reasons.

First, Rule 8(c) requires a party to set forth "affirmatively" each affirmative defense it asserts. Thus, affirmative defenses must be expressly plead, and the plaintiff should not have to read tea leaves to divine any implied defenses. *See Cornwall*, 800 F.2d at 252 (a simple denial of a specific allegation does not encompass an affirmative defense to that allegation). Accordingly,

---

[2] This is not a case where the parties have proceeded with the implicit understanding that unpled defenses were part of the case. *See John R. Sand & Gravel Co.*, 62 Fed. Cl. at 568 (allowing amendment to the pleadings when unpled defense was tried with the implied consent of the parties). Here, the Osage Nation does not consent to the trial of these defenses precisely because those issues have never been raised in this case and were not the subjects of discovery.

the United States cannot claim that these affirmative defenses were somehow implicit in one of the defenses it did plead.

Second, the United States' statute-of-limitations defense cannot be construed to have placed the Osage Nation on notice of a laches or estoppel defense. As the Court found, application of the statute of limitations turned solely on whether the United States had provided an accounting as the appropriations acts require; whether the Osage Nation had prior notice of those claims was not "pertinent." *Osage Nation*, 68 Fed. Cl. at 334. Moreover, the defenses of laches and estoppel raise numerous factual issues that extend far beyond the issue of whether an accounting had been given, or indeed whether a plaintiff had notice of a claim by a certain point in time. *Cornetta v. United State*s, 851 F.2d 1372, 1377-78 (Fed. Cir. 1982) (laches requires proof of unreasonable delay and prejudice); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992) (equitable estoppel requires proof of a misleading communication, reliance, and harm from conduct inconsistent with prior representation). Plainly, nothing in a statute-of-limitations defense would necessarily raise such factual issues, or implicate possible counter-defenses such as the defendant's unclean hands. As discussed above, it would be highly prejudicial to force the Osage Nation to attempt to address these multiple new factual and legal issues one month before trial, without the benefit of discovery, and with only limited time for investigation.

### 3. The United States' Assertion of a Laches Defense in the 550 Case Cannot Import Laches into this Case

The United States may argue that, because it pled laches in its Answer to the Third Amended Complaint in the 550 Case and that case was later consolidated with the 169 Case, the laches defense in the 550 Case has been transferred into the 169 Case. Such notions of importation through consolidation are without merit.

First, the 550 Case and the 169 Case were not consolidated until September 14, 2005, two weeks *after* discovery ended on the Tranche One claims. When the United States asserted its laches defense in the 550 Case, that case had not yet been consolidated with the 169 Case, and both cases were proceeding independently. Indeed, the United States vigorously sought to keep the two cases separate and even succeeded in getting Judge Wiese to reverse his earlier order consolidating the two cases. The United States cannot now pull a bait and switch and claim that its 550 Case defenses somehow apply retroactively to the separate claims in the 169 Case.

Second, as a matter of law, consolidation does not effect a complete merger of all claims and issues in the two cases. *Red Lake and Pembina Bands v. Turtle Mountain Band of Chippewa Indians*, 173 Ct. Cl. 928, 938 n.8 (Ct. Cl. 1965) ("The consolidation of the three dockets was 'for trial' and did not merge the separate claims into a new and enlarged cause of action. The three claims continued to retain their separate character.") (citing *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933). *See* also 9 C. Wright & A. Miller *Federal Practice and Procedure* § 2382 at 431 (2d Ed. 1995). Applying that same rule, and also citing *Johnson*, the Western District of Virginia recently refused to permit an affirmative defense pled in one case to be raised in another case, even though the two cases were consolidated, in the absence of amendment of the pleadings. *Stowe Woodward, L.L.C. v. Sensor Prods., Inc.*, 230 F.R.D. 463, 470 (W.D. Va. 2005).

The United States cannot claim any prejudice by this result. Before the Court's September 14, 2005 Order consolidating the two cases, the United States had no basis for believing that laches were part of the 169 Case because that defense had never been asserted in that case. Having worked hard to keep the two cases separate until after the close of discovery,

the United States cannot claim prejudice because it chose not to assert a laches defense in the 169 Case.

## II. THE UNITED STATES' UNCLEAN HANDS PREVENT IT FROM TAKING ADVANTAGE OF THE EQUITABLE DEFENSES OF LACHES AND ESTOPPEL

"Equity's 'unclean hands' doctrine demands that '[one] who seeks equity must do equity.'" *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1361 (Fed. Cir. 2001). When a party is guilty of unclean hands, a court will "not abuse its discretion in declining to exercise its equitable powers" on that party's behalf. *Id. See also A.C. Aukerman*, 960 F.2d at 1038 (the court may refuse to allow a party the benefit of an equitable defense if that party is "guilty of misdeeds"). A party has "unclean hands" where it engages in "egregious conduct." *Bott v. Four Star Corp.*, 807 F.2d 1567, 1576 (Fed. Cir. 1986). For example, a defendant may be guilty of egregious conduct where it seeks to enforce an agreement that it has breached. *Tuftco Corp. v. United States*, 614 F.2d 740, 746 (Ct. Cl. 1980) ("Given . . . defendant's recognition of the assignments [that plaintiff was seeking to enforce], yet its failure to act consistent with their terms, we conclude defendant's invocation of the laches doctrine is not supportable. He who seeks equity must do equity.").

Here, the United States has unclean hands and therefore should be barred from asserting the equitable defenses of estoppel and laches. There is no dispute in this case that the United States has never provided the Osage Nation with an accounting of the Osage Mineral Estate or the funds the United States holds in trust for the Osage Nation. Counsel for the United States has acknowledged that fact in open court, and this Court has expressly determined that no such accounting has been provided. *Osage Nation*, 68 Fed. Cl. at 334. Having admittedly breached the trust that the Osage Nation is seeking to enforce, the United States has unclean hands and cannot invoke equity to evade liability for its breaches.

Moreover, the failure to provide an accounting is particularly egregious in the context of this lawsuit. As the Court has held, the Osage Nation's claims are not barred by the statute of limitations because Congress, in the appropriations acts, expressly provided that the limitations period would not begin to run until the government had provided an accounting. In so doing, Congress understood the difficulty of bringing suits such as this without a complete accounting. Now that the Osage Nation has assumed the burden of prosecuting this lawsuit without the benefit of that accounting, the United States seeks to prevent it from proceeding on the ground that it should have sued even earlier. It would be a perversion of the laches doctrine to apply it to bar a case filed even before the statute of limitations had begun to run.

Similarly, the application of estoppel would result in a manifest injustice, thwarting equity's fundamental purpose. As this Court has already held, the United States exercised *sole* authority over the administration of the Osage Mineral Estate, including the calculation and collection of royalties. *Osage Nation*, 68 Fed. Cl. at 332-33. Under the United States' theory, it could escape liability for any and all breaches of those duties by somehow informing the beneficiary of what it was doing or by obtaining evidence of acquiescence in some way. Once again, the United States is attempting to shift blame for its failure to perform its duties as trustee onto its beneficiary.

The language used by the United States reveals that it is seeking to eviscerate the fundamental notion of a trusteeship. The United States repeatedly attempts to recharacterize the nature of the relationship as a "partnership," arguing that the Osage Nation's interest as a beneficiary amounted to "full-blown participation" in the United States' management of the Trust. Defendant's Pretrial Memorandum at 75. But the United States cannot by fiat *reduce* its duty from that of a trustee to that of a partner or co-participant.

Moreover, such a role reversal cannot by sustained as the basis of a defense to a breach of trust action. As the Federal Circuit recognized in *Shoshone Indian Tribe of the Wind River Reservation v. United States*, 364 F.3d 1339, 1347-48 (Fed. Cir. 2004), "[b]eneficiaries of a trust are permitted to rely on the good faith and expertise of their trustees; because of this reliance, beneficiaries are under a lesser duty to discover malfeasance relating to their trust assets." To hold otherwise, as the Federal Circuit and the Supreme Court have both recognized, would eviscerate the meaning of a trusteeship by effectively requiring beneficiaries "'to supervise the day-to-day management of their estate by their trustee or else be precluded from recovery for mismanagement.'" *Id.* at 1348 (quoting *United States v. Mitchell*, 463 U.S. 206, 227 (1982)).

Put differently, if the position of the United States were countenanced, tribes would be faced with a Hobson's choice. They would have to become completely passive and remain wholly ignorant of trust matters, or, alternatively, they would have to create a shadow trusteeship, hiring lawyers, accountants, petroleum engineers, and other staff to ensure that no potential claim goes undiscovered and unenforced. Neither approach is consistent with the basic purpose of a trust in general or with the unique trust relationship between the United States and sovereign Indian nations in particular. Accordingly, the United States should be barred from invoking the equitable defenses of laches and estoppel.

## III. CONGRESS'S DETERMINATION IN THE APPROPRIATIONS ACTs THAT CLAIMS DO NOT ACCRUE UNTIL AN ACCOUNTING IS RENDERED BARS APPLICATION OF LACHES AND ESTOPPEL TO THIS CASE

Even apart from Rule 8(c) and the doctrine of unclean hands, the doctrine of laches should not be applied in this case because of Congress's determination that, "notwithstanding any other provision of law," claims such as those asserted here do not accrue for statute-of-limitations purposes until an accounting is rendered. At the outset, it is important to bear in mind that laches is rarely, and only in specific types of cases, applied to bar a claim brought within the

applicable statute of limitations. *Cornetta*, 851 F.2d at 1376 ("Because laches is an equitable defense, it has traditionally been unavailable in actions at law brought within the applicable statute of limitations."). Indeed, with the exception of one contract case, all of the cases cited by the United States in support of its laches argument are patent-infringement and military-back-pay cases. None of those cases involves a trust beneficiary's claim for damages brought within the statute of limitations.

There is also a long-standing presumption that laches should not be applied against Indians. As the Claims Court explained, "laches is a doctrine that this Court has commonly applied in civilian and military pay cases. . . . It has rarely, if ever, been used in Indian claim cases." *Tsosie v. United States*, 11 Cl.Ct. 62, 71 (1986) (citations omitted; citing *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226 (1985) (declining to apply laches to breach of treaty claim by Indians), *aff'd and remanded*, 825 F.2d 393 (Fed. Cir. 1987). *See also Menominee Indian Tribe v. Thompson*, 943 F. Supp. 999, 1021 (W.D. Wi. 1996) ("defenses of inaction [such as laches, adverse possession and the statute of limitations] are not properly raised against Indian tribes, which have the status of wards in a position of trust with the United States."). The United States has cited no case applying laches to bar a breach-of-trust claim by an individual Indian or an Indian tribe.

This is not the appropriate case in which to break new legal ground. First, equity would not be served by applying laches here in light of the prejudice that would result from requiring the Osage Nation to litigate defenses not raised until the eve of trial.

Second, applying laches to this case would eviscerate Congress's determination in the appropriations acts that tribal claims for mismanagement of trust funds do not even begin to accrue until an accounting is rendered. In determining the applicability of the doctrine of laches

to a given case, "a court may consider the legislative judgment about when claims are too stale to pursue inherent in an untolled statute of limitations." *Cornetta,*851 F.2d at 1380 n.2.

Congress enacted the appropriations acts to "protect the rights of tribes and individuals until the reconciliation and audit of their accounts has been completed." H.R. Rep. No. 103-158, at 41 (1993). Congress's decision to suspend the statute of limitations for Indian trust fund mismanagement and collection claims until the United States renders an accounting reflects a legislative judgment that is incompatible with the application of laches and estoppel where such an accounting has not yet occurred. As the Federal Circuit noted in *Shoshone*, the appropriations acts waive the United States' sovereign immunity by allowing, and accepting potential liability for, Indian trust cases. *Shoshone,* 364 F.3d at 1346. It hardly makes sense to believe that Congress accepted potential liability for claims that would be barred but for the application of the appropriations acts while also allowing those claims to be extinguished before an accounting had been provided. *See Poggas v. United States,* 93 F. Supp 1009, 1014 (Ct. Cl. 1950) (Congressional waiver of a defense of statute of limitations necessarily meant a waiver of "the analogous defense of laches.").[3]

More specifically, consideration of each element of the United States' laches argument demonstrates that application of that defense to this case would conflict with Congress's purpose

---

[3] The United States is likely to argue that *Deering v. United States*, 620 F.2d 242, 245 (Ct. Cl. 1980), which held that a statute tolling the statute of limitations for military back pay claims while servicemen are on active duty does not similarly toll the time in which laches may apply, limits or overrules *Poggas* and requires this Court to hold that the Appropriations Acts are irrelevant to the application of laches in this case. As the Federal Court made explicit in *Cornetta*, decided after *Deering*, consideration of Congressional limits on the running of the statute of limitations *is* relevant to the applicability of laches. Moreover, the operative statutory language in *Poggas* is distinguishable from the statutory language in *Deering*. More fundamental, however, the statutory language of the appropriations acts, and the necessary consequences of those enactments, necessarily preclude application of laches to bar claims expressly authorized by Congress.

in adopting the appropriations acts. First, although the United States complains about the Osage Nation's delay in filing suit, Congress obviously expected that such delays would occur pending completion of the promised (and required) accountings. *Cf. In Re Beaty*, 306 F.3d 914, 927 (9th Cir. 2002) (waiting for a favorable change in the law justified a delay in filing suit). Indeed, given the United States' continuing duty to provide an accounting, it was reasonable, as a matter of law, for the Osage Nation to wait to see if the United States would fulfill that duty. Moreover, far from sitting on its rights, the Osage Nation has not only filed this suit without waiting for the long-promised accounting, but also has sued the United States in District Court to compel such an accounting. The Osage Nation has pursued its rights diligently.

Second, the prejudice of which the United States complains is the necessary consequence of the appropriations acts. By extending the statute of limitations indefinitely, Congress accepted potential liability for claims that may be many decades old. That would necessarily include accepting the risk that legal rights of contribution may have been extinguished, that damages and interest may have increased, and that evidence may have been lost or destroyed. These are not examples of prejudice, but necessary consequences of Congress's legislative judgment that the United States' failure to provide a timely accounting could only be remedied if the accounting was provided and claims based on it were not time-barred.

Third, and at the heart of the equities of this case, the United States could have avoided any purported prejudice had it fulfilled its trustee responsibilities of providing timely accounting. Such accountings would have accelerated the filing of any claims, enabled the United States to pursue timely contribution suits, and avoided the problems of lost records and unavailable witnesses. Thus, any prejudice to which the United States is now exposed is entirely of its own

making. It would be the opposite of equity to make the Osage Nation suffer for the harms that the United States has visited on itself by its own breach of trust.

For similar reasons, the appropriations acts foreclose the United States' estoppel defense. The United States' theory is that the Osage Nation made statements and took actions evidencing its acquiescence in the United States' royalty-calculation methodology. That acquiescence, the United States argues, caused it to believe that it was not violating its trust duties. But the Osage Nation's alleged acquiescence occurred when it lacked the accounting information necessary to evaluate the propriety of the government's royalty-valuation and collection processes. The appropriations acts implicitly acknowledge the manifest injustice of forcing Indians to sue without the benefit of an accounting. The opposite side of that coin is that Indians should not have to suffer because of statements they made or actions they took without the benefit of an accounting. The United States wrongfully deprived the trust's beneficiaries of vital information. It now seeks to deprive those beneficiaries of a remedy for the trustee's breaches based on statements they made and actions they took without the accounting information that Congress believed they needed to make informed judgments. Plainly, equity cannot tolerate that result.

## CONCLUSION

For the foregoing reasons, the United States defenses of laches and estoppel should be stricken and all evidence proffered in support those defenses should be excluded.

Dated this February 2, 2006

Respectfully submitted,

*s/Wilson K. Pipestem*
WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for The Osage Nation

**EXHIBIT 1**

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
NOV 1 1999
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **The Osage Nation and/or Tribe of Indians of Oklahoma,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 99-550L** |
| | ) | |
| **v.** | ) | **Judge John P. Wiese** |
| | ) | |
| **The United States,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**ANSWER**

Defendant United States, by undersigned counsel answers the complaint of the Osage Nation And/or Tribe of Indians of Oklahoma, as follows:

**FIRST DEFENSE**

Plaintiff has failed to state a claim upon which relief can be granted.

**SECOND DEFENSE**

This court has no subject matter jurisdiction over claims asserted by Plaintiff.

**THIRD DEFENSE**

Plaintiff's claim is barred by the statute of limitations.

**FOURTH DEFENSE**

Plaintiff lacks standing to assert claims it has made in the complaint.

**FIFTH DEFENSE**

Defendant responds to the corresponding numbered paragraphs of the Complaint as follows. Except as specifically admitted, modified or alleged the factual allegations are denied. Defendant hereby submits its Answer to the Complaint filed by Plaintiff. Defendant

answers by using the same paragraph and numbering system as in the Complaint.

1. The allegations are conclusions of law and jurisdictional allegations, and as such require no response. To the extent an answer is deemed required, Defendant denies that, under applicable law, this court has jurisdiction of this action under 28 U.S.C. §§ 1491 or 1505 or under the Due Process clause of the Fifth Amendment or the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

2. Defendant admits this paragraph.

3. Defendant admits this paragraph.

4. This paragraph characterizes the Complaint to which no response is required.

5. This paragraph states a conclusion of law to which no response is required, and, furthermore, the treaties speak for themselves and are the best evidence of their own contents.

6. This paragraph states a conclusion of law to which no response is required, and, furthermore, the statutes speak for themselves and are the best evidence of their own contents.

7. This paragraph states a conclusion of law to which no response is required, and, furthermore, the statutes speak for themselves and are the best evidence of their own contents.

8. This paragraph states a conclusion of law to which no response is required, and, furthermore, the regulations speak for themselves and are the best evidence of their own contents.

9. This paragraph states a conclusion of law to which no response is required, and, furthermore, the regulations speak for themselves and are the best evidence of their own contents.

10. This paragraph states a conclusion of law to which no response is required, and,

furthermore, the regulations speak for themselves and are the best evidence of their own contents.

11. This paragraph states a conclusion of law to which no response is required.

12. Defendant denies this paragraph.

13. This paragraph states a conclusion of law to which no response is required, and, furthermore, the regulations speak for themselves and are the best evidence of their own contents. Defendant affirmatively states, however, that, under applicable law, the United States does not, and is not required to, sell oil produced from Osage land.

14. Defendant lacks sufficient information on which to form a belief as to the truth or falsity of this paragraph.

15. Defendant admits the first sentence of this paragraph and states that the statute speaks for itself and is the best evidence of its own contents. Defendant denies the second sentence of this paragraph.

16. With respect to the allegations in the first sentence of this paragraph, Defendant admits that at an interagency task force, composed of representatives of the U.S. Department of Energy, the U.S. Department of Commerce, and the Department of the Interior's Minerals Management Service ("MMS") and Office of the Solicitor, was formed in 1994 for the purpose of investigating longstanding allegations of underpricing based on artificially reduced posted prices on Federal mineral leases within the closed California market. Defendant affirmatively states that the interagency task force looked only at issues peculiar to California, and did not address any issues involving crude oil or gas production outside of California on either Federal or Indian leases. Further, Defendant admits that the investigation resulted in the issuance orders

to pay to several companies in both 1996 and 1997, which covered periods between January 1, 1980, and, for some companies, until early 1998, which sought a combined total of approximately $277 million in allegedly underpaid royalties on the California production in question. With regard to the allegations contained in the second sentence of this paragraph, Defendant affirmatively states that the 1994 interagency study looked only at issues peculiar to the closed California market and was not intended to address mineral leases belonging to the Osage Nation, or any other Indian leases or any other Federal leases outside of California and the offshore California Outer Continental Shelf. Defendant further affirmatively states that, under applicable law, it was not required "to do the same for the Osage."

17. Defendant denies this paragraph and states that the regulations speak for themselves and are the best evidence of their own contents. Defendant affirmatively states that the 1996 changes to the cited regulations were simply a recodification that removed the prerequisite, on Federal leases only, for filing forms with MMS before lessees could take a transportation allowance and, for this reason, separated the Indian oil valuation rules from the Federal oil valuation rules. Defendant affirmatively states that the Indian oil valuation rules did not change in this recodification in 1996. 61 Fed. Reg. 5455 (Feb. 12, 1996).

18. This paragraph states a conclusion of law to which no response is required.

19. Defendant denies this paragraph.

20. Defendant denies this paragraph.

21. Defendant denies this paragraph.

22. This paragraph states a conclusion of law to which no response is required.

23. This paragraph states a conclusion of law to which no response is required.

24. The allegations of this paragraph are too vague and ambiguous to allow a response. Defendant affirmatively states that it does not sell oil produced from Federal leases, and that parties do not purchase such oil from Defendant, except for certain oil taken as royalty in kind and sold under 30 U.S.C. 192. To the extent that Defendant may have disagreements with purchasers of royalty-in-kind oil regarding the price paid for that oil, amounts that may be due from purchasers are not royalty underpayments. To the extent that Plaintiff refers to royalty paid in value, the scope of the allegations of this paragraph is so ambiguous as to not allow a response.

25. Defendant denies this paragraph.

26. This paragraph states a conclusion of law to which no response is required.

27. Defendant lacks sufficient information on which to form a belief as to the truth or falsity of this paragraph, but affirmatively states that, under applicable law, the United States does not, and is not required to, "market and/or caused the oil produced from Osage lands to be marketed.".

28. Defendant denies this paragraph.

29. Defendant denies this paragraph.

30. This paragraph states a conclusion of law to which no response is required.

31. Defendant admits that it enacted the statutes and promulgated the regulations, but states that they speak for themselves and are the best evidence of their contents. The intent of the statutes and regulations is a conclusion of law to which no response is required.

32. This paragraph states a conclusion of law to which no response is required.

33. Defendant admits this paragraph.

34. This paragraph states a conclusion of law to which no response is required.

35. This paragraph states a conclusion of law to which no response is required.

36. This paragraph states a conclusion of law to which no response is required.

37. This paragraph states a conclusion of law to which no response is required.

38. The first sentence of this paragraph states a conclusion of law to which no response is required. Defendant denies the second sentence of this paragraph.

39. Defendant denies this paragraph.

40. Defendant denies this paragraph.

41. Defendant admits that it enacted the statutes and promulgated the regulations, but states that they speak for themselves and are the best evidence of their contents.

42. This paragraph states a conclusion of law to which no response is required.

43. This paragraph states a conclusion of law to which no response is required. Defendant affirmatively states, however, that, under applicable law, the United States is not required to take the alleged actions.

44. This paragraph states a conclusion of law to which no response is required.

45. Defendant lacks sufficient information on which to form a belief as to the truth or falsity of this paragraph.

46. Defendant denies this paragraph.

47. Defendant admits this paragraph, but affirmatively states that any release of such documents would be subject to the Freedom of Information Act, 5 U.S.C. § 552.

48. The first sentence of this paragraph states a conclusion of law to which no response is required. Defendant denies the second sentence of this paragraph.

49. Defendant denies this paragraph.

50. This paragraph states conclusions of law to which no response is required, but Defendant lacks sufficient information to form a belief as to the truth or falsity of the harm that might result from the hypothetical events set forth herein.

51. This paragraph states a conclusion of law to which no response is required.

52. Defendant denies this paragraph and lacks sufficient information to form a belief as to the truth or falsity of the harm that might result from the hypothetical events set forth herein.

53. This paragraph states a conclusion of law to which no response is required.

54. This paragraph states a conclusion of law to which no response is required.

55. This paragraph states a conclusion of law to which no response is required.

56. This paragraph states a conclusion of law to which no response is required, but Defendant affirmatively states that the Complaint fails to state a claim for which relief can be granted by this court.

**PRAYER FOR RELIEF**

Defendant denies that Plaintiff is entitled to the relief requested against it or to any relief against it. Defendant further prays that the Complaint be dismissed with prejudice.

WHEREFORE, having fully answered Plaintiff's Complaint, Defendant respectfully prays that the Complaint be dismissed and that the court enter a judgment in favor of the Defendant, together with costs.

Dated this 1st day of November, 1999.

Respectfully submitted,

Edward J. Passarelli
Senior Counsel
Department of Justice
Environment and Natural Resources
Division
General Litigation Section
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0467
(202) 305-0506 (Fax)

Of Counsel:

Alan Woodcock, Attorney
Office of the Field Solicitor
United States Department of the Interior
7906 East 33rd Street, Suite 100
Tulsa, OK 74145
918-669-7730, Ext. 225

Stephen L. Simpson, Attorney
Office of the Solicitor
United States Department of the Interior
1849 C Street, NW, MS 6456-MIB
Washington, DC 20240
202-219-1659

## CERTIFICATE OF SERVICE

I certify that a copy of the **Answer** was served upon counsel by regular mail, postage pre-paid on this 1st day of November, 1999, addressed to:

Bradley D. Brickell
Richard J. Gore
R. Bruce Kerr
Two Leadership Square, Suite 1100
211 North Robinson
Oklahoma City, Oklahoma 73102

Nicole Christina Rossi

**EXHIBIT 2**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **The Osage Nation and/or Tribe of Indians of Oklahoma,** | ) | |
| **Plaintiff,** | ) | **No. 99-550L** |
| **v.** | ) | **Judge Mary Ellen Coster Williams** |
| **The United States,** | ) | |
| **Defendant.** | ) | |

**ANSWER TO THIRD AMENDED COMPLAINT**

Defendant United States, by undersigned counsel answers the Third Amended Complaint of the Osage Nation And/or Tribe of Indians of Oklahoma, as follows:

**FIRST DEFENSE**

Plaintiff has failed to state a claim upon which relief can be granted.

**SECOND DEFENSE**

This court has no subject matter jurisdiction over claims asserted by Plaintiff that do not arise from statutes or regulations that fairly interpreted do not mandate compensation to the Tribe, even if such statutes or regulations could fairly be interpreted to mandate compensation to third parties.

**THIRD DEFENSE**

Plaintiff's claims are barred by the statute of limitations and laches.

**FOURTH DEFENSE**

`laintiff lacks standing to assert all of the claims it has made in the complaint.

**FIFTH DEFENSE**

Plaintiff has not exhausted its available administrative remedies.

**SIXTH DEFENSE**

Certain claims of Plaintiff may be barred by principles of res judicata.

**SEVENTH DEFENSE**

Although the United States denies that it has any trust responsibility for tax revenues and gaming revenues generated from trust assets, to the extent that Plaintiff argues that the United States does have such a trust obligation, the United States alleges that the Plaintiff has prevented the United States from exercising any such supposed trust obligation.

**EIGHTH DEFENSE**

Defendant responds to the corresponding numbered paragraphs of the Third Amended Complaint as follows. Except as specifically admitted, modified or alleged the factual allegations are denied. Defendant hereby submits its Answer to the Third Amended Complaint filed by Plaintiff. Defendant answers by using the same paragraph and numbering system as in the Complaint.

**Nature of Action**

1. The United States avers that this paragraph contains plaintiffs' summary characterization of the case, to which no response is necessary.

**Parties**

2. The United States admits the allegations of this paragraph.

3. The United States admits the allegations of this paragraph.

**Jurisdiction and Venue**

4. The allegations are conclusions of law and jurisdictional allegations, and as such require no response. To the extent an answer is deemed required ,The United States admits that this court has jurisdiction of this action only to the extent that specific claims fit under the specific terms of the jurisdictional provisions.

**The United States is Trustee of Certain Property Belonging to the Osage Tribe**

5. The United States avers that this paragraph consists of a recitation of various treaties, which speak for themselves and are the best evidence of their content. To the extent that the United States is required to answer this paragraph, the United States admits that the cited treaties were executed.

6. The United States avers that this paragraph consists of a recitation of a treaty, which speaks for itself and is the best evidence of its content. To the extent that the United States is required to answer this paragraph, the United States admits that the cited treaty was executed.

7. The United States avers that this paragraph consists of a recitation of various acts, which speak for themselves and are the best evidence of their contents. To the extent that the United States is required to answer this paragraph, the United States admits that a tract of land was purchased for the Osage tribe.

8. The United States avers that this paragraph consists of a recitation of the 1906 Act, which speaks for itself and is the best evidence of its content. To the extent that the United States is required to answer this paragraph, the United States admits that certain other tracts of land have been acquired by the United States in trust for the Osage tribe.

9. The United States avers that this paragraph consists of a recitation of various acts,

which speak for themselves and are the best evidence of their contents. To the extent that the United States is required to answer this paragraph, the United States denies that the 1906 Act explicitly reserved sand and gravel to the Osage tribe.

10. The United States avers that this paragraph consists of a recitation of various acts, which speak for themselves and are the best evidence of their contents.

11. The United States avers that this paragraph consists of a recitation of various acts, which speak for themselves and are the best evidence of their contents. The United States admits that the acts required the promulgation of regulations and alleges that the United States has properly promulgated regulations in accordance with the acts.

12. The United States avers that this paragraph consists of a recitation of various acts, which speak for themselves and are the best evidence of their contents.

13. The United States avers that this paragraph consists of a recitation of various regulations, which speak for themselves and are the best evidence of their contents.

14. The United States avers that this paragraph consists of a recitation of various regulations, which speak for themselves and are the best evidence of their contents.

15. The United States avers that this paragraph consists of legal conclusions and a summary of Plaintiff's view of the language of various oil and gas leases, and as such require no response. To the extent a response is deemed required, the United States avers that the each of the leases speak for themselves and are the best evidence of their contents.

16. The United States specifically denies that it issues leases of any sort. The leases are executed by the Plaintiff and the United States' role is limited to approval of the leases executed by the Plaintiff. The United States specifically denies that it has ever approved a grazing lease

covering property owned by the Plaintiff and there are not, to the knowledge of the United States, any agricultural lands owned by the United States in trust for the Plaintiff. The United States specifically denies that a right of way is a lease, as alleged by the Plaintiff. The United States admits that certain rights of way have been issued covering lands located within the Indian Villages in Osage County. The United States denies that rights of way have been granted across other lands owned by the United States in trust for the Osage Tribe. The United States alleges that these rights of way have been granted for the provision of utilities to the Osage tribal lands and therefore benefit the Plaintiff. As a consequence, the rights of way do not provide for the payment of monthly or annual payments. The United States specifically denies that rights of way generally provide for monthly or annual payments. The United States admits that there are certain building leases, and admits that certain of those leases provide for the payment of rentals. The United States alleges that the building payments generally relate to buildings on what is commonly referred to as the Osage campus in Pawhuska, Oklahoma. On information and belief, the United States alleges that the Osage Tribe has executed certain leases which have not been presented by the United States for approval and further alleges that the rental income from such properties are kept by the Osage Tribe. The United States has no specific information about such payments.

17. The United States avers that this paragraph consists of a recitation of the 1906 Act and that Act speaks for itself and is the best evidence of its contents. The Unites States specifically denies that it holds in trust for the Osage Tribe all funds that may belong to or become owed to the Osage Tribe. The United States specifically denies that the Osage Tribe has furnished to the United States funds generated by certain leases executed by it but never

presented for approval to the Unite States. In addition, the United States alleges that the Osage Tribe has kept certain tax revenues and the income generated by gaming operations on trust land without forwarding said funds to the United States as Plaintiff argues is required by the 1906 Act.

18. The United States avers that this paragraph consists of a summary of certain acts of Congress, which Acts speak for themselves and are best evidence of their contents. The United States denies that it is required to collect all income derived from trust assets. The United States denies that it is obligated to pay interest all funds derived from all trust assets and denies that it is obligated to properly invest all funds derived from trust assets. Specifically, the Osage Tribe has not paid all income related to its gaming operations to the United States so that those funds can be deposited in the United States Treasury as the Osage Tribe alleges is required. The Osage Tribe has not paid all tax revenues generated by it to the United States so that those funds can be deposited in the United States Treasury as the Osage Tribe alleges is required by federal law. As a consequence, the United States denies that it has a statutory or regulatory obligation to invest said income or to pay interest on those funds.

19. The United States admits that certain oil and gas income is paid to Osage headright holders on a quarterly basis. The United States avers that the reference cited by Plaintiff speaks for itself and is the best evidence of its content. The United States admits the remainder of the paragraph.

**As Trustee, the United States Owes the Osage Tribe the Highest Fiduciary Responsibilities Concerning the Management of Tribal Assets Held in Trust for the Benefit of the Osage Tribe**

20. This paragraph states a conclusion of law to which no response is required; to the extent a response is deemed required, denied. The United States avers that the contours of the

United states fiduciary responsibility are defined by the applicable statutes and regulations.

21. This paragraph states a conclusion of law to which no response is required; to the extent a response is deemed required, denied. The United States avers that this paragraph contains a recitation of the holdings of various cases, which speak for themselves and are the best evidence of their contents. The United States denies the allegations of this paragraph.

22. This paragraph states a conclusion of law to which no response is required; to the extent a response is deemed required, denied. The United States denies that it has any trust responsibilities which are not contained in applicable statutes and regulations. The United States avers that the Acts cited speak for themselves and are the best evidence of their contents. The United States further alleges that the Osage Tribe itself has a significant role in the issuance of leases and the United States denies that that role should be diminished or eliminated as requested by Plaintiff.

**Count One**

**Damages Resulting from the Defendant United States' Breach of Its Trust Duties to the Osage Tribe with Respect to Oil and Gas Mining Leases Covering Portions of the Osage Mineral Estate**

23. Paragraphs 1 through 21 have been answered herein and that answer in incorporated by reference in this paragraph.

24. The United States denies that it has issued oil and gas leases covering portions of the Osage mineral estate. The United States avers that it has approved oil and gas leases executed and issued by the Osage Tribe. The United States admits that, historically, it has approved oil and gas leases on certain forms prepared by the United States. The United States avers that the specific leases in question speak for themselves and are the best evidence of their contents. The

United States admits that leases generally provide for the payment of royalties based upon the selling price of the oil or gas for which royalties are paid. The United States admits that the leases also provide for the payment of royalties based upon the highest posted price within a certain area, but avers that the area is defined by the applicable regulations, which are incorporated into said leases. The United States admits that royalties are ultimately paid to headright holders.

25. The United States admits that it made oil and gas records available to the Osage Tribe. The United States denies that those records were made available solely as a result of directions from this court. The United States avers that all such records were made available to the Osage Tribe before the commencement of this litigation, but the Osage Tribe declined to review those records at that time. The United States denies the remainder of the allegations of this paragraph.

26. No response is required to the allegations of this paragraph.

27. The United States admits the allegation to the extent that it is required to maintain records regarding trust assets. The United States denies that it has never provided an accounting of the revenue produced by Osage Mineral estate. The United States further denies that it is obligated by law to provide an accounting of tax revenues generated by the Osage Tribe or the gaming revenues generated by the Osage Tribe. The United States alleges that the Plaintiff has never furnished any information regarding the collection or expenditure of tax revenues and gaming revenues and that, as a result, the United States cannot advise the Plaintiff of the collection or expenditures of such revenues. The United States specifically denies the allegation that it has not furnished access to documents maintained with regard to Osage trust assets. The

United States specifically avers that the Osage Tribe can identify every lease in which it believes that the United States has not transmitted the appropriate royalty, particularly as to the years for which the Osage Tribe has reviewed the records made available. The United States denies that it is obligated to pay royalty on any oil and gas lease; rather it is obligated to transmit the royalty paid by the lessees of the oil and gas. The United States avers that the lessees are the parties who are obligated to make payment of the royalties. The United States avers that no statute or regulation makes the United States liable for the underpayment of any royalty by the lessees. The United States avers that the Plaintiff has undertaken no efforts to collect any alleged underpayments from the lessees and has objected in this case to suggestions by the United States that collection of any alleged underpayments should be made from the lessees. The United States denies the remainder of the paragraph.

28. The United States denies the allegations of this paragraph. The United States specifically denies the allegations that the United States is obligated to make crude oil royalty payments. The United States avers that it is obligated only to transmit the royalty paid by the lessees of the oil and gas. The United States avers that the lessees are the parties who are obligated to make payment of the royalties. The United States avers that no statute or regulation makes the United States liable for the underpayment of any royalty by the lessees. The United States avers that the Plaintiff has undertaken no efforts to collect any alleged underpayments from the lessees and has objected in this case to suggestions by the United States that collection of any alleged underpayments should be made from the lessees. The United States denies the remainder of the paragraph.

29. The United States denies the allegations of this paragraph.

30. The United States denies the allegations of this paragraph.

**Count Two**

**Damages Resulting from the Defendant United States' Breach of its Trust Duties to the Osage Tribe With Respect to Leases Covering the Osage Surface and/or Mineral Estates, Other Than Oil and Gas Leases**

31. Paragraphs 1 through 28 have been answered herein and that answer in incorporated by reference in this paragraph.

32. The United States specifically denies that it issues leases of any sort. The leases are executed by the Plaintiff and the United States' role is limited to approval of the leases executed by the Plaintiff. The United States specifically denies that it has ever approved a grazing lease covering property owned by the Plaintiff. The United States avers that there are no agricultural lands owned by the United States in trust for the Plaintiff. The United States specifically denies that a right of way is a lease, as alleged by the Plaintiff. The United States admits that certain rights of way have been issued covering lands located within the Indian Villages in Osage County. The United States denies that rights of way have been granted across other lands owned by the United States in trust for the Osage Tribe. The United States alleges that these rights of way have been granted for the provision of utilities to the Osage tribal lands and therefore benefit the Plaintiff. As a consequence, the rights of way do not provide for the payment of monthly or annual payments. The United States specifically denies that rights of way generally provide for monthly or annual payments. The United States admits that there are certain building leases, and admits that certain of those leases provide for the payment of rentals. The United States alleges that the building payments generally relate to buildings on what is commonly referred to as the Osage campus in Pawhuska, Oklahoma. On information and belief, the United States avers that

the Osage Tribe has executed certain leases which have not been presented by the United States for approval and further alleges that the rental income from such properties are kept by the Osage Tribe. The United States has no specific information about such payments and denies that it has a trust responsibility with regard to such payments. To the extent not otherwise answered here, the allegations of this paragraph are denied.

33. The United States denies that it has never provided an accounting of the revenue produced by Osage Mineral estate. The United States further denies that it is obligated by law to provide an accounting of tax revenues generated by the Osage Tribe or the gaming revenues generated by the Osage Tribe. The United States alleges that the Plaintiff has never furnished any information regarding the collection or expenditure of tax revenues and gaming revenues and that, as a result, the United States cannot advise the Plaintiff of the collection or expenditures of such revenues. The United States specifically denies the allegation that it has not furnished access to documents maintained with regard to Osage trust assets. The United States avers that the Osage Tribe can identify every lease in which it believes that the United States has not transmitted the appropriate royalty, at least with respect to the documents the Osage Tribe has examined. The United States alleges that each and every lease approved by the United States was originally executed and issued by the Plaintiff and that, therefore, the Plaintiff is aware of each lease executed by it. The United States denies that it is obligated to pay royalty on any oil and gas lease; rather it is obligated to transmit the royalty paid by the lessees of the oil and gas. The United States denies the remainder of the paragraph.

34. The United States denies the allegations of this paragraph.

35. The United States denies the allegations of this paragraph.

The remainder of the Amended Complaint amounts to Plaintiff's prayer for relief, and as such requires no response. To the extent a response is deemed required, Defendant denies that Plaintiff is entitled to the relief requested against it or to any relief against it. Defendant further prays that the Complaint be dismissed with prejudice.

WHEREFORE, having fully answered Plaintiff's Third Amended Complaint, Defendant respectfully prays that the Complaint be dismissed and that the court enter a judgment in favor of the Defendant, together with costs.

Dated this 8th day of November, 2004.

Respectfully submitted,

THOMAS L. SANSONETTI
Assistant Attorney General

EDWARD J. PASSARELLI
Senior Counsel
Department of Justice
Environment and Natural Resources Division
General Litigation Section
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0468
(202) 305-0506 (Fax)

Of Counsel:

ALAN WOODCOCK
Field Solicitor
Office of the Field Solicitor
United States Department of the Interior
7906 East 33rd Street, Suite 100
Tulsa, OK 74145
918-669-7730, Ext. 225

STEPHEN L. SIMPSON, Attorney
Office of the Solicitor
United States Department of the Interior
1849 C Street, NW, MS 6456-MIB
Washington, DC 20240
202-219-1659

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2004, I caused the foregoing **Answer to Third Amended Complaint** to be served upon the attorney of record for the Plaintiff by placing a copy in the United States Mail, first-class postage prepaid, addressed to:

Wilson K. Pipestem, Esquire
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931

Edward J. Passarelli

**EXHIBIT 3**

ORIGINAL

A

UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JUL 7 2000
U.S COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 99-550 L<br>No. 00-169 L<br>Judge John P. Wiese |
| UNITED STATES OF AMERICA, by and through THE DEPARTMENT AND SECRETARY OF THE INTERIOR and BUREAU OF INDIAN AFFAIRS, | ) | |
| Defendants. | ) | |

## ANSWER TO COMPLAINT IN NO. 00-169 L

Defendant, the United States of America, the only named defendant over which the Court has jurisdiction, on behalf of the United States and, to the extent any other named defendant may for whatever reasons not be dismissed from this case, on such other defendant's behalf, hereby submits this Answer to the Complaint first filed on March 31, 2000. By Order dated May 12, 2000, the Court extended the time for Defendant to answer until July 7, 2000.

### FIRST DEFENSE

The Complaint alleges claims that are barred by the statute of limitations, 25 U.S.C. § 2501.

### SECOND DEFENSE

All of Plaintiff's claims accruing prior to August 13, 1946, are barred by the Indian Claims Commission Act of August 13, 1946, 60 Stat. 1049, as amended (formerly at 25 U.S.C. §§ 70 *et seq*).

**THIRD DEFENSE**

Plaintiff fails to state claims upon which relief can be granted.

**FOURTH DEFENSE**

The Complaint states claims that are barred by the principle of *res judicata*.

**FIFTH DEFENSE**

The Court lacks subject matter jurisdiction over claims to provide an accounting of Plaintiff's tribal trust funds.

**SIXTH DEFENSE**

Plaintiff lacks standing to assert claims relating to the 99.95% of headrights which are not owned by the Osage Nation.

**SEVENTH DEFENSE**

The Court lacks jurisdiction over any named Defendant other than the United States of America, and, therefore, all other defendants should be dismissed forthwith.

**EIGHTH DEFENSE**

The United States answers each numbered paragraph of the Complaint herein under the section headings there denominated by Plaintiff as follows:

JURISDICTION

1. The allegations in Paragraph 1 state conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 1.

PARTIES

2. Defendant admits the allegations in Paragraph 2.

3. Defendant admits the allegations in Paragraph 3.

NATURE OF THE ACTION

4. The allegations in Paragraph 4 characterize Plaintiff's Complaint and state conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 4.

CONTRACTUAL BASIS FOR DAMAGES

5. The allegations in Paragraph 5 characterize the United States Treaty with the Osage, dated November 10, 1808, which is the best evidence of its own contents, and, therefore, no response is required.

6. The allegations in Paragraph 6 characterize the various statutes cited therein, which are the best evidence of their own contents, and, therefore, no response is required.

7. The allegations contained in Paragraph 7 characterize the various statutes cited therein, which are the best evidence of their own contents, and, therefore, no response is required.

8. The allegations contained in Paragraph 8 characterize the various statutes cited therein, which are the best evidence of their own contents, and, therefore, no response is required.

9. The allegations contained in Paragraph 9 characterize the regulations found at 25 C.F.R. Part 226, which are the best evidence of their own contents, and, therefore, no response is required.

10. The allegations contained in Paragraph 10 characterize the regulations found at 25 C.F.R. Part 226, which are the best evidence of their own contents, and, therefore, no response is

required.

11. The allegations contained in Paragraph 11 characterize the regulations found at 25 C.F.R. § 1.2 and 25 C.F.R. Part 226, which are the best evidence of their own contents, and, therefore, no response is required.

STATEMENT OF FACTS

12. The allegations contained in the first sentence of Paragraph 12 state conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations contained in the first sentence of Paragraph 12. Defendant denies the remaining allegations in Paragraph 12.

13. The allegations contained in Paragraph 13 state conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 13.

14. The allegation referring to the United States as trustee of all Osage assets states a conclusion of law to which no response is required. To the extent an answer is required, Defendant denies this allegation. Defendant denies the remaining allegations in Paragraph 14.

15. The allegations contained in Paragraph 15 state conclusions of law to which no response is required. Furthermore, the findings of the United States District Court for the District of Columbia speak for themselves and are the best evidence of their own contents. To the extent a response is required, Defendant denies the allegations in Paragraph 15. Defendant affirmatively states that the *Cobell v. Babbitt* litigation concerning Individual Indian Money Accounts is distinguishable on its facts from this case concerning Tribal Trust Fund Accounts.

16. Defendant admits that it provided Plaintiff a report from the Tribal Trust Funds

Reconciliation Project for the time period from July 1, 1972, through September 30, 1992, but denies the remaining allegations in Paragraph 16. Furthermore, Defendant states that the report speaks for itself and is the best evidence of its own contents.

17. Defendant admits the allegations contained in the first sentence of Paragraph 17 to the extent that in 1996 the United States provided the Osage with a report of the Tribal Trust Funds Reconciliation Project, commonly known as the Arthur Anderson Report, dated December 31, 1995. Defendant denies the remaining allegations in Paragraph 17 and states that the report speaks for itself and is the best evidence of its own contents.

18. Defendant admits the allegations contained in the first sentence of Paragraph 18 but states that the entire report is the best evidence of its own contents. Otherwise, Defendant denies the remaining allegations in Paragraph 18.

19. The allegations contained in the first, second, and third sentences of Paragraph 19 characterize Plaintiff's Complaint and state conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations contained in the first, second, and third sentences of Paragraph 19. Defendant denies the remaining allegations in Paragraph 19.

20. The allegations in Paragraph 20 state conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 20.

21. The allegations in Paragraph 21 state conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 21.

22. To the extent that Plaintiff is referring to Federal law, the allegations in paragraph 22 state conclusions of law to which no response is required; however, to the extent that any

factual allegations are interwoven with those conclusions of law, Defendant denies such allegations. If Plaintiff is referring to Oklahoma law, Defendant affirmatively states that it has no trust obligation arising from state law.

23. The allegations contained in the first sentence of Paragraph 23 characterize Plaintiff's Complaint and state conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations contained in the first sentence of Paragraph 23. Defendant denies the remaining allegations in Paragraph 23.

FIRST CAUSE OF ACTION

24. Defendant admits that it caused the referenced report to be prepared and delivered, but states that the report speaks for itself and is the best evidence of its own contents.

25. The allegations contained in the first and second sentences of Paragraph 25 state conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations contained in the first and second sentences of Paragraph 25. Defendant denies the allegations in the third sentence of Paragraph 25. The allegations contained in the fourth and fifth sentences of Paragraph 25 characterize Plaintiff's Complaint to which no response is required. To the extent a response is required, Defendant denies the allegations in the fourth and fifth sentences of Paragraph 25. The allegations in the sixth sentence of Paragraph 25 state conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations in the sixth sentence of Paragraph 25. Defendant denies the remaining allegations in Paragraph 25.

## SECOND CAUSE OF ACTION

26. To the extent that Plaintiff is referring to Federal law, the allegations in paragraph 26 state conclusions of law to which no response is required. To the extent an answer is required, Defendant denies the allegations in Paragraph 26. If Plaintiff is referring to Oklahoma law, Defendant affirmatively states that it has no trust obligation arising from state law.

## PRAYER FOR RELIEF

The remaining allegations in Plaintiff's Complaint, dated March 31, 2000, constitute prayers for relief, to which no response is required. To the extent a response is required, Defendant denies that Plaintiff is entitled to the relief it has requested or to any relief whatsoever.

Defendant further denies any and all allegations in Plaintiff's Complaint, whether express or implied, that are not specifically admitted, denied or qualified herein.

WHEREFORE, Defendant requests that this action be dismissed with prejudice, that judgment be entered for Defendant, and that Defendant's costs be allowed, in addition to any further relief this Court may allow.

Dated this 7th day of July, 2000.

Respectfully submitted,

EDWARD J. PASSARELLI
Attorney of Record for Defendant in Docket No. 99-550 L
Telephone: (202) 305-0468

R. ANTHONY ROGERS
Attorney of Record for Defendant in Docket No. 00-169 L
RENITA Y. FORD

General Litigation Section
Environment and Natural Resources Division
United States Department of Justice
P. O. Box 663
Washington, D. C. 20044-0663
Telephone: (202) 305-0483
Fax: (202) 305-8273/0506

Of Counsel:

Stephen Simpson
Attorney
Office of the Solicitor
Division of Indian Affairs
U.S. Department of the Interior
Washington, D. C. 20240
Telephone: (202) 219-1659
Fax: (202) 208-3490

Alan Woodcock
Attorney
Office of the Field Solicitor
U.S. Department of the Interior
Tulsa, Oklahoma
Telephone: (918) 669-7730
Fax: (918) 669-7736

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2000, I caused the foregoing **Answer to Complaint in No. 00-169 L** to be served upon the attorney of record for the plaintiff by facsimile transmission and by placing a copy in the United States Mail, first-class postage prepaid, addressed to:

Bradley D. Brickell, Esquire
Richard J. Gore, Esquire
Mahaffey & Gore
Two Leadership Square, Suite 1100
211 North Robinson
Oklahoma City, Oklahoma 73102
Telephone: (405) 236-0478
Fax: (405) 236-1520

R. ANTHONY ROGERS