**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Electronically Filed<br>February 2, 2006<br><br>No. 99-550 L (into which has been consolidated No. 00-169 L)<br>Judge Emily C. Hewitt |

**THE OSAGE NATION'S OPPOSITION TO THE UNITED STATES' MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM CHALLENGING INTERIOR'S INTERPRETATION OF OSAGE REGULATIONS IN *OKIE CRUDE V. MUSKOGEE AREA DIRECTOR***

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation

TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

BACKGROUND ........ 1

ARGUMENT ........ 2

I. THIS COURT HAS JURISDICTION OVER BREACH-OF-TRUST CLAIMS SEEKING MONEY DAMAGES FOR THE UNITED STATES' VIOLATION OF MONEY-MANDATING STATUTES AND REGULATIONS. ........ 2

II. THE GOVERNMENT'S MOTION IS BASED ENTIRELY ON AN INAPPLICABLE LINE OF TAKINGS CASES ........ 4

CONCLUSION ........ 9

The Government's theory in its motion in limine regarding *Okie Crude Co. v. Muskogee Area Director*, 23 IBIA 174 (1993), is that the Court of Federal Claims is incompetent to interpret the Department of the Interior's regulations, and that such interpretation can be done only by a U.S. district court under the Administrative Procedure Act. This theory contradicts the Indian Tucker Act, the governing precedents of the U.S. Supreme Court and the Federal Circuit, and the Government's previous litigating positions. The Government's theory is a contorted misapplication of a single line of cases involving takings law.

As discussed below, the Indian Tucker Act and the related precedents that govern this Court's jurisdiction require that the Court deny the United States' motion in limine.

**BACKGROUND**

In its pretrial brief, the Osage Nation described why the Secretary of the Interior's adoption of the IBIA decision in *Okie Crude* constitutes a breach of trust. In *Okie Crude*, the IBIA misinterpreted the term "offered price by a major purchaser" in the Osage regulations incorporated in Tranche One leases. As discussed at greater length in the Osage Nation's pretrial brief, the Government, rather than follow the plain requirement in its own regulation to consider all prices "offered . . . by a major purchaser," instead added the non-textual limitation that only offers made *to* the specific lessee paying royalty would be considered in setting Royalty Value. Among the breaches of trust discussed in the Osage Nation's pretrial brief is the Government's failure, both before and after the *Okie Crude* decision, to consider all prices "offered . . . by a major purchaser," as required by regulation. This breach has deprived the Osage Nation of moneys due under the Tranche One leases.

In addition to discussing the incorrectness of *Okie Crude*, the Osage Nation's pretrial brief provided authority showing that the Secretary of the Interior's incorrect interpretation of the regulations is a breach of trust that is owed no deference by this Court. The Secretary of the

Interior "'cannot escape his role as trustee by donning the mantle of administrator' to claim that courts must defer to his expertise and delegated authority." *Cobell v. Norton*, 240 F.3d 1081, 1099 (D.C. Cir. 2001) (quoting *Jicarilla Apache Tribe v. Supron Energy Corp*., 728 F.2d 1555, 1567 (10th Cir. 1984) (Seymour, J., concurring in part and dissenting in part), *adopted as majority opinion as modified en banc*, 782 F.2d 855 (10th Cir. 1986)). Although the Government in its pretrial brief attempts to defend the *Okie Crude* decision on a number of grounds, and also contends that the Court must defer to Interior decisions alleged to be in breach of trust duties, it goes even further in its motion in limine, seeking to exclude all evidence regarding this breach of trust. This opposition brief responds only to the motion in limine, and leaves other matters for trial and post-trial briefing.

In denying the Government's motions to dismiss this breach-of-trust suit, the Court has already held that it has jurisdiction to award damages for any "moneys due" under the Tranche One leases that the Government failed to collect. This necessarily entails determining what moneys were due under the terms of the leases. The Government's motion in limine now seeks to prevent the Court from holding the Government responsible for failing to enforce those leases according to their terms. The Government's motion would carve out a chunk of the "moneys due" under the leases as outside this Court's jurisdiction, irrespective of whether the Government as trustee misinterpreted the leases in favor of oil producers and to the detriment of the Osage Nation. For the reasons below, the Government's motion must be denied.

## ARGUMENT

### I. THIS COURT HAS JURISDICTION OVER BREACH-OF-TRUST CLAIMS SEEKING MONEY DAMAGES FOR THE UNITED STATES' VIOLATION OF MONEY-MANDATING STATUTES AND REGULATIONS.

The Indian Tucker Act, 28 U.S.C. § 1505, provides in pertinent part that this Court "shall have jurisdiction of any claim against the United States . . . in favor of any tribe . . . of American

Indians . . . whenever such claim is one arising under the . . . laws or treaties of the United States, . . . or is one which otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe, band or group." Inasmuch as this last clause refers in part to the regular Tucker Act, it compels this Court to exercise jurisdiction over tribal claims "founded . . . upon . . . any Act of Congress or any regulation of an executive department." 28 U.S.C. § 1491(a)(1). In general, this Court has jurisdiction only over claims for money damages (with exceptions not relevant here). *See, e.g.*, *Massie v. United States*, 226 F.3d 1318, 1321 (Fed. Cir. 2000).

The Indian Tucker Act does not contain an exception to jurisdiction for suits seeking damages caused by incorrect statutory or regulatory interpretations. This is plain from authority that the Government cited in its motion but that it apparently failed to read carefully. In *Del-Rio Drilling Programs Inc. v. United States*, 146 F.3d 1358, 1366 (Fed. Cir. 1998), the Federal Circuit rejected the Government's argument "that the Court of Federal Claims lacks jurisdiction to review challenges to agency action in a Tucker Act suit."

This Court has applied the Indian Tucker Act and the Tucker Act in this case and has held that it has jurisdiction. *Osage Tribe v. United States*, 68 Fed. Cl. 322, 324-25, 327-28 (2005). Specifically, the Court has held that under the 1906 Act, the United States has a duty, enforceable in this Court in damages, to collect "all moneys due" under the Tranche One leases and the regulations incorporated therein. *Id.* at 327-28. The Court has also held that "the statutes and regulations at issue here clearly establish" fiduciary duties that "'can fairly be interpreted as mandating compensation' for damages." *Id.* at 333 (quoting *United States v. Mitchell* (*Mitchell II*), 463 U.S. 206, 228 (1983)). In so holding, the Court noted the United States' "extensive citations to specific provisions in . . . the federal regulations . . . [that] point to a complex and

comprehensive regulatory system for managing the operations and finances of the Osage mineral estate." 68 Fed. Cl. at 331.

The Government's motion in limine asks the Court to revisit these prior holdings, and to hold that the Court lacks jurisdiction to decide whether the Government as trustee misconstrued the regulations incorporated in the Tranche One leases. The Government makes no attempt to reconcile its argument with the Court's prior holdings or with the plain terms of the Tucker Acts. For these reasons alone, the Government's motion should be denied.

## II. THE GOVERNMENT'S MOTION IS BASED ENTIRELY ON AN INAPPLICABLE LINE OF TAKINGS CASES.

Like many of the Government's previous filings in this case, the Government's motion fails to recognize that this is a breach-of-trust case and that the United States is a trustee.[1] Instead, the Government's motion relies entirely on language lifted from takings cases that the Government has taken out of context and grossly misinterpreted.

Except for the two-paragraph discussion of motions in limine on page 4 of the Government's brief, every case that the Government cites in support of its motion involved a takings claim. The Government relies entirely on *Freese v. United States*, 221 Ct. Cl. 963 (1979), *Aulston v. United States*, 823 F.2d 510 (Fed. Cir. 1987), and related cases, without any explanation of why takings law should apply here.

The Federal Circuit has described the *Freese-Aulston* line of cases as

> a line of cases holding that when an agency determines that a private party is not the owner of property that is claimed to have been taken, the private party must challenge that determination in district court under the APA and may not do so through a Tucker Act takings action in the Court of Federal Claims.

[1] The Government's motion and memorandum nowhere contain the words "trust," "trustee," "beneficiary," or "fiduciary." The Government's motion and memorandum do not acknowledge that Plaintiff's attack on *Okie Crude* is a breach of trust claim.

*Del-Rio Drilling Programs Inc. v. United States*, 146 F.3d 1358, 1365 (Fed. Cir. 1998). In other words, the Federal Circuit has noted a distinction between a takings claim seeking just compensation and a suit to void the underlying determination by an administrative agency. The latter kind of challenge (such as a claim that the action accomplishing the taking is unauthorized or illegal) is not a claim for damages. Thus, while a claim for just compensation can be brought in this Court, a claim to void the agency action that accomplished the taking can be brought only in an APA suit. "[A]n uncompensated taking and an unlawful government action constitute 'two separate wrongs [that] give rise to two separate causes of action,'" and therefore "a property owner is free either to sue in district court for asserted improprieties committed in the course of the challenged action or to sue for an uncompensated taking in the Court of Federal Claims." *Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1365 (Fed. Cir. 2001) (quoting *Del-Rio*, 146 F.3d at 1364).

The principle applied in these takings cases is compelled by this Court's general lack of jurisdiction (with exceptions not relevant here) over claims not seeking money damages. A court decision entirely voiding, as either unauthorized or incorrect, the agency action that accomplished the alleged taking would result in no award of damages. A challenge to agency *authority* can never be adjudicated in a takings case because "conduct by a government official who is acting *ultra vires* cannot effect a governmental taking for public purposes within the meaning of the Fifth Amendment." *Del-Rio*, 146 F.3d at 1365. Similarly, if an argument challenging the *correctness* of agency action would (if successful) void the alleged taking, then the argument is not a claim for money damages and is outside this Court's consideration. This latter situation arose in *Rith*, where the Court held that the plaintiff was "required to litigate its

takings claim on the assumption that the administrative action was both authorized and lawful." 247 F.3d at 1366; *accord Appolo v. United States*, 54 Fed. Cl. 717, 740 (2002) (citing *Rith*).

Even in the takings context, *Del-Rio* and *Rith* allow challenges to agency adjudications in this Court so long as the plaintiff does not seek to void the particular agency action alleged to have accomplished the taking. In *Del-Rio*, 146 F.3d at 1366, the court distinguished *Aulston* and allowed a challenge to a property-rights adjudication by Interior, on the ground that "[t]he Interior Department did not base its decision [accomplishing the alleged taking] on an adjudication of the extent of Del-Rio's property rights." Accordingly, the court in *Rith* explained, "if the plaintiff claims that its property was taken *regardless of* whether the agency acted consistently with its statutory and regulatory mandate, . . . the takings claim can be litigated in the Court of Federal Claims without the need first to litigate the issue of lawfulness in administrative proceedings before the agency." 247 F.3d at 1365-66. The plaintiff can challenge the agency's decision about the scope of the property right—and this Court can disagree with the agency's decision—if a taking is alleged irrespective of the scope of the property right.

The issue in these takings cases does not arise outside the takings context, and that is why the Government was unable to cite a single case that did not involve a takings claim. In any case not involving a takings claim, when a party seeks money damages caused by an agency's incorrect interpretation of a regulation, a court decision voiding the agency's action would not provide complete relief or take away a right to damages. For example, here, a district court decision reversing the IBIA decision in *Okie Crude* would not afford the Osage Nation the breach-of-trust damages that flow from the agency's decades-long failure to enforce regulations according to a correct interpretation. A declaratory judgment reversing the agency's decision would afford only prospective relief. If the Osage Nation had been permitted to challenge *Okie*

*Crude* in district court and had prevailed, no damages (over $10,000) could have been awarded outside this Court. In fact, the jurisdictional division between district courts and this Court is often mistaken by litigants seeking damages over $10,000, and their cases have to be transferred from the district courts to this Court. The Government in such cases routinely and correctly argues in the district court for dismissal or transfer because, in general, when a party seeks damages (over $10,000) arising from agency action, suit can be brought only in the Court of Federal Claims. Here, the Government argues a curious reversal of its usual (and correct) position, advocating a rule that either would *require* parties to make the mistake of filing a damages claim in district court or, depending on how one understands the Government's motion, would read a damages remedy entirely out of the relevant jurisdictional statutes.

The error underlying the Government's motion is exposed at great length in *Del-Rio*, where the Federal Circuit refuted the same argument with such articulate precision that the Government's decision to make the argument again here—and to cite *Del-Rio* in the process—is little short of astounding. In *Del-Rio*, the plaintiff brought not only a takings claim but also a breach of contract claim against the Department of the Interior. Discussing the contract claim (in a section of the opinion not cited by the Government here), the Federal Circuit held that "the Court of Federal Claims erred in dismissing [the contract] claim for lack of jurisdiction on the ground that the claim was really a challenge to the BLM's interpretation of the Tribal Consent Act." 146 F.3d at 1367. The court reasoned:

> [T]he proper interpretation of the Tribal Consent Act [25 U.S.C. §§ 323-324] may be important in determining whether the leases [at issue] afford rights-of-way to Del-Rio. But the fact that the court may have to interpret the Tribal Consent Act or make other determinations regarding principles of state and federal law in order to resolve the contract claim does not deprive the court of jurisdiction to decide that claim. . . .
>
> The Tucker Act gives the Court of Federal Claims "jurisdiction to render judgment upon any claim against the United States founded ... upon any express

> or implied contract with the United States." 28 U.S.C. § 1491(a)(1). That broad jurisdictional grant does not exempt contract claims that turn on the construction of statutes.
>
> . . . .
>
> The trial court dismissed the contract claim on the ground that the leases on which the contract claim is based are "really part of a much broader statutory scheme that is *implemented and enforced by the BLM acting in its regulatory authority.*" *It is true, of course, that the respective rights of the parties conferred by the leases must be analyzed in light of the statutes and regulations governing the subject matter of mining on trust lands. Nonetheless, the leases are contractual undertakings by the government upon which citizens are entitled to sue in the Court of Federal Claims*.

*Del-Rio*, 146 F.3d at 1367 (emphasis added).

If the Government's argument were correct, innumerable damages claims that are routinely decided in this Court on statutory or regulatory grounds—many of which are or have been appealed to the Federal Circuit and/or the Supreme Court—would be void for lack of jurisdiction, because the underlying interpretation of regulation or statute should have been done either by an agency or a district court in the first instance and accepted as conclusive in this Court. For example, in *San Carlos Irrigation & Drainage Dist. v. United States*, 111 F.3d 1557, 1564-65 (Fed. Cir. 1997), the Federal Circuit affirmed this Court's decision that the Interior Department's ratemaking proceeding effected a breach of contract. The court rejected the Government's argument that the plaintiff was required to challenge the ratemaking under the APA. *Id*. Likewise, in *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1578 (Fed. Cir. 1996), the court held that "the Tucker Act provides jurisdiction to recover . . sums exacted illegally by the [Immigration and Naturalization] Service due to its misinterpretation or misapplication of statutes, regulations, or forms." And in *Brighton Village Assocs. v. United States*, 52 F.3d 1056, 1061 (Fed. Cir. 1995), the Federal Circuit held that the Department of Housing and Urban Development's misinterpretation of its own regulation constituted a breach

of contract. Even enactment of a federal statute can give rise to a damages claim in this Court, *see generally United States v. Winstar Corp.*, 518 U.S. 839 (1996), so there is nothing sacred about an IBIA decision.

**CONCLUSION**

The United States' motion in limine should be denied.

February 2, 2006

Respectfully submitted,

*/s/ Wilson K. Pipestem*
WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for the Osage Nation