**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed February 2, 2006 |
| v. | ) | Nos. 00-169 L & 99-550 Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE DOCUMENTS AND TESTIMONY FOR VIOLATIONS OF THE COURT'S SCHEDULING AND DISCOVERY ORDERS**

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for The Osage Nation

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. CONTRARY TO ITS CLAIM, DEFENDANT HAS VIOLATED THE SCHEDULING AND DISCOVERY ORDERS OF THIS COURT BY FILING SUPPLEMENTAL EXPERT REPORTS FOR ITS EXPERTS GREG CHAVARRIA AND RONNIE MARTIN ........ 2

II. DEFENDANT HAS VIOLATED THE COURT'S SCHEDULING AND DISCOVERY ORDERS BY DESIGNATING AS EXHIBITS NUMEROUS DOCUMENTS THAT DEFENDANT FAILED TO PRODUCE BEFORE THIS COURT'S CUT-OFF OF FACT DISCOVERY ........ 10

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Barrett v. Atlantic Richfield Co.*, 95 F.3d 375 (5th Cir. 1996) ..........13

*Cane Tennessee, Inc. v. United States*, 57 Fed. Cl. 115 (2003) ..........9

*Crouse Cartage Co. v. National Warehouse Inv. Co.*, 2003 WL 21254617 (S.D. Ind. April 10, 2003) ..........9

*Fusco v. General Motors Corp.*, 11 F.3d 259, 265-66 (1st Cir. 1993) ..........9

## FEDERAL RULES

RCFC 16 ..........2, 5

RCFC 26(a) ..........2

RCFC 26(a)(1)(B) ..........11

RCFC 26(e)(1) ..........2, 3, 9, 10

RCFC 26(e)(2) ..........2

RCFC 37 ..........2, 5, 9

## FEDERAL REGULATIONS

25 C.F.R. § 226.11(a)(2) ..........3

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed February 2, 2006 |
| v. | ) | Nos. 00-169 L & 99-550 Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE DOCUMENTS AND TESTIMONY FOR VIOLATIONS OF THE COURT'S SCHEDULING AND DISCOVERY ORDERS**

On January 12, 2006, Plaintiff Osage Nation filed its Motion to Exclude Documents and Testimony for Violations of the Court's Scheduling and Discovery Orders and a Memorandum of Points and Authorities in Support of its Motion to Exclude. On January 26, Defendant United States filed a Memorandum in Opposition to Plaintiff's Motion to Exclude, along with a Motion Opposing Plaintiff's Motion to Exclude documents and testimony. Taking the Defendant's Motion to be a response in opposition to the Osage Nation's Motion to Exclude, Plaintiff hereby submits this Reply in support of its Motion to Exclude.[1]

[1] Plaintiff notes that Defendant did not file a memorandum in support of any motion of its own. To the extent Defendant is deemed to have filed its own motion, Plaintiff respectfully requests the Court to treat this reply memorandum as Plaintiff's opposition to Defendant's motion.

## ARGUMENT

### I. CONTRARY TO ITS CLAIM, DEFENDANT HAS VIOLATED THE SCHEDULING AND DISCOVERY ORDERS OF THIS COURT BY FILING SUPPLEMENTAL EXPERT REPORTS FOR ITS EXPERTS GREG CHAVARRIA AND RONNIE MARTIN

In its Motion to Exclude, Plaintiff showed that Defendant's "supplemental" expert reports for its expert witnesses Greg Chavarria and Ronnie Martin violated this Court's scheduling and discovery orders. As detailed in that motion, Defendant served those "supplemental" expert reports on December 9, 2005 and January 10, 2006, respectively, long after this Court's November 3, 2005 deadline for those reports and even after this Court's November 23, 2005 deadline for Plaintiff's reply expert reports.[2] Plaintiff's Memorandum at 1-2. In its motion, Plaintiff also established that it has been severely prejudiced by these "supplemental" expert reports because it had prepared its own expert reports and was necessarily preparing for trial on the basis of the record as it existed on September 1, 2005 when this Court cut-off all fact discovery for tranche one of this case.[3] *Id.* at 7-9. Plaintiff's motion further established that this Court has ample authority under Rules 16 and 37, as well as the Court's inherent powers, to prevent a "trial by ambush" by prohibiting Defendant from introducing the evidence contained in its "supplemental" expert reports at trial. *Id*. at 5-6. Plaintiff's motion also showed that where a party has failed to disclose information required under Rules 26(a) or 26(e)(1) or to seasonably amend or supplement discovery responses under Rule 26(e)(2), exclusion of that information is an "automatic sanction." *Id.* at 6.

---

[2] Order of June 20, 2005; Order of Sept. 1, 2005. Indeed, Defendant's supplemental report for Ronnie Martin was filed long after this Court's December 12, 2005 cut-off for expert discovery and only two days before this Court's January 12, 2006 deadline for Plaintiff's pretrial brief.

[3] Order of June 20, 2005.

In its opposition, Defendant asserts that "nothing" about its supplemental expert reports violates the scheduling and discovery orders of this Court. Defendant's Memorandum at 10-11. Defendant claims that it has done nothing more than "supplement or correct incomplete or incorrect information" as permitted by RCFC 26(e)(1). *Id.* at 10. Defendant also contends that this kind of supplementation "does not act to prejudice Plaintiff." *Id.*

There is no merit in Defendant's attempts to justify its violations of this Court's scheduling and discovery orders. Defendant's only excuse for Martin's untimely supplemental report is its conclusory claim that the report is based on "information [concerning "major purchasers" and the Stanley Stringer Lease] acquired since the submission of his initial report."[4] Defendant's Memorandum at 10. Defendant's only excuse for Chavarria's untimely supplemental report is its assertion that Plaintiff raised a "new issue" concerning "cancelled checks" in the expert report of Mr. Steve Jay that Plaintiff served on September 30, 2005.[5] *Id.* at 11. Although it admits that Chavarria addressed that supposed "new issue" in his response expert report served on November 3, 2005, Defendant nonetheless claims in conclusory fashion that "[c]ertain data required for Chavarria's analysis was not immediately available" when he filed his November 3 report. *Id.* at 10.

Defendant's claimed excuses for its untimely expert reports do not provide any justification for the Government's failure to comply with this Court's deadlines or to seek an appropriate extension of those deadlines from the Court. Both supplemental reports are based on

[4] As the Court is aware, under the Defendant's Osage regulations, royalty values for crude oil for the first five Tranche One Months are based in part on the posted prices and offered prices of "major purchasers" of crude oil in the Kansas Oklahoma area. 25 C.F.R. § 226.11(a)(2).

[5] In his expert report, Jay opined that Defendant had improperly deprived the Osage Nation of interest income by failing to credit the tribal trust account with interest on checks that were written on that trust account but ultimately cancelled, sometimes years after they were written.

documents that at all relevant times were in the possession, custody, and control of Defendant. For example, 88 of the 100 pages attached to Mr. Martin's supplement either came from the Osage Agency itself or were published in the Federal Register in 1979.[6] Similarly, the revised calculations of disbursement lag time set forth in Mr. Chavarria's supplement are based on his analysis of a "ten million record file" that the U.S. Treasury provided to DOJ, who provided a copy to Mr. Chavarria on November 11, 2005.[7] In short, there is no sense in which the Defendant can credibly claim either that the Martin Supplement was based on information "acquired" after November 3, 2005 or that the Chavarria Supplement was based on information that was not "available" to Defendant on November 3, 2005. This material was always available to the Defendant because it is the Defendant's own material. Further, as it frankly admits, Defendant knew of the claimed "new issue" involving cancelled checks at least as early as September 30, 2005 when Plaintiff served Defendant with the expert report of Steve Jay.[8] Defendant's opposition does not reveal when it first became aware of the "major purchaser" documents attached to the Martin Supplement but the "major purchaser" issue has long been a part of Plaintiff's Tranche One claims. As a result, Defendant could and should have included these documents in the expert reports that this Court required Defendant to serve on Plaintiff on November 3, 2005.

---

[6] Supplemental Expert Report of Ronnie Martin ("Martin Supplement") at 1. The remaining 12 pages consist of Martin's revised opinions concerning the "correct" royalty payments for Tranche One transactions based on his analysis of the other 88 pages attached to his supplement.

[7] Supplemental Expert Report of Greg Chavarria ("Chavarria Supplement") at 2. Defendant has not provided Plaintiff with a copy of that file. Nor is it attached to the Chavarria Supplement.

[8] In fact, Defendant knew of the "cancelled check" issue several months prior to September 30, 2005. For example, during the July and August 2005 joint discovery project, Plaintiff identified various boxes that, based on Defendant's BISS index, might contain documents concerning that issue.

If Defendant believed it had grounds justifying a need to file supplemental expert reports after the Court's previously established deadline, the appropriate course would have been to move the Court for a modification to the schedule. Defendant's failure to seek such an extension of this Court's November 3, 2005 deadline for its expert reports strongly suggests that it did not believe it could justify such a motion.

Defendant also seeks to avoid exclusion under Rules 16 and 37 simply by claiming that it put Plaintiff (but not the Court) on notice that it might supplement its expert reports at some undefined time in the future after the Court's deadline for expert discovery had passed and that it offered to permit Plaintiff to depose Chavarria (but not Martin) concerning his supplemental report at the eleventh hour of this case and after this Court's deadline for expert discovery has passed. This position ignores one of the chief functions served by scheduling orders – to provide a logical sequencing of preparation of a case and to assure that the parties have adequate time to consider the evidence before trial. It also ignores the Defendant's failure to provide Plaintiff with the "ten million record file" that Chavarria used to prepare his supplement, not to mention the obvious difficulties Plaintiff and its experts would face if they were forced to analyze such voluminous data in the short time remaining before trial.

In addition, Defendant is simply wrong in claiming that the supplemental reports do not prejudice Plaintiff, thereby implying (without actually claiming) that these late filings are "harmless." First, each supplemental report is based on factual and legal theories that were not contained in the original expert reports for Martin and Chavarria. The Martin Supplement, for example, is based on Osage Agency documents concerning the determination of "major purchasers" for Kansas and Oklahoma for the Tranche One Months that are not discussed in or attached to his original expert report. Indeed, in his original expert report, Martin took the

position that the available trust records for the Osage Nation did *not* contain any information revealing how the Osage Agency made "major purchaser" determinations for any of the Tranche One Months.[9] In direct contradiction of his original opinion, Martin's supplemental report claims that he has now located Osage Agency records that are relevant to the "major purchaser" issue and has revised his opinion on the basis of that material.[10]

Martin's supplemental report is also based on Osage Agency documents concerning the Stanley Stringer Lease that are not attached to or discussed in his original report.[11] Here again, in his original report, Martin opined that, based on the then available records, there was no way he could determine if that lease qualified as a "stripper" property under the DOE price controls.[12] In direct contradiction of that opinion, Martin's supplement opines that the Stanley Stringer Lease was not a "stripper" property under DOE's rules and adds his new opinion that the lease qualified as a "marginal" property under those rules.[13]

Similarly, Chavarria's supplemental expert report is based on U.S. Treasury documents concerning "cancelled checks" that are not discussed in or attached to his original expert report.[14] In his original report, Chavarria stated that he did not have actual cancelled check data for the first four Tranche One Months, *i.e.*, January 1976, May 1979, November 1980, and February 1986. As a result, Chavarria's analysis in his original report for those four months is based on cancelled check data for a portion of the subsequent period 1987 through 1989, which data, in

---

[9] Expert Report of Ronnie A. Martin ("Martin Expert Report") at 9.

[10] Martin Supplement at 1, Exhibit C.

[11] Martin Supplement at 6, Exhibit D.

[12] Martin Expert Report at 18-19.

[13] Martin Supplement at 6.

[14] Chavarria Supplement.

Chavarria's view, was a good "proxy" for the then missing data.[15] In his supplemental report, Chavarria's opinion on cancelled checks is now based on the newly "available" data that was always in Defendant's own files.[16]

Second, prior to September 1, 2005, Plaintiff requested all the documents and data on which the Martin Supplement and the Chavarria Supplement are based. For example, in a 30(b)(6) subpoena that it served on DOI on May 4, 2005, Plaintiff requested DOI to produce all documents concerning the calculation and computation of crude oil royalties due under the Tranche One Leases for the Tranche One Months, a comprehensive request that certainly includes any documents discussing how the Osage Agency determined "major purchasers" or DOE price tiers for the Tranche One Leases.[17] In response, at her deposition on August 24, 2005, Defendant's designated witness, Ms. Carol Revard, produced one folder of documents for each of the six Tranche One Months.[18] These six folders do *not* contain any of the documents that are attached to Martin's supplemental report with the exception of the two page posted price bulletin that the Osage Agency issued on August 4, 1989, and a one page Oil Lessee's Report.[19] When asked whether her six folders contained any documents at all that explained how the Osage Agency made "major purchaser" determinations for any of the Tranche One Months, Revard stated that she had looked for such documents but could not find them.[20]

---

[15] Expert Report of Greg Chavarria ("Chavarria Expert Report") at 7.

[16] Chavarria Supplement at 1-2.

[17] May 4, 2005 Subpoena to DOI, Exhibit B, Topic 1(b).

[18] Deposition of Carol Revard (8/24/05) at 12:19-13:14.

[19] Revard Deposition, Exhibit 3; Martin Supplement.

[20] Revard Deposition at 43:23-44:5.

Similarly, in its May 4, 2005 30(b)(6) subpoena, Plaintiff requested DOI to produce all documents concerning the disbursements from the Osage tribal trust funds for the Tranche One period, a comprehensive request that certainly includes any documents concerning cancelled checks that were written on that trust account.[21] In response, at her deposition on August 25, 2005, Defendant's designated witness, Ms. Judi Hill, produced the exact same six folders that Revard produced, plus 162 pages of additional documents.[22] Ms. Hill did not produce any of the documents attached to Chavarria's supplemental expert report. Nor did she produce the "ten million record file" on which Chavarria's supplement is based. Here again, however, the Defendant's designated 30(b)(6) witness testified that she had produced all relevant documents.[23]

Third, Defendant's untimely "supplements" have deprived Plaintiff of a fair opportunity to prepare its own expert reports or challenge Defendant's supplemental expert reports at trial. As noted in its Motion to Exclude, Plaintiff's expert reports were necessarily prepared on the basis of the factual record as it existed on September 1, 2005. As detailed above, as of that date, Defendant's designated 30(b)(6) witnesses not only failed to produce the documents attached to the supplemental expert reports for Martin and Chavarria (with the exception of the three pages noted above) but also, by indicating the subpoena production was complete, in effect, represented that the documents either did not exist or were not relevant.

Finally, Defendant served both supplemental reports after November 23, 2005 – this Court's deadline for Plaintiff's reply expert reports – and one of the supplemental reports after December 12, 2005 – this Court's cut-off date for expert discovery. The prejudice and unfairness

---

[21] As noted above, Plaintiff had also requested this type of material as part of the joint discovery project that took place in July and August 2005.

[22] Deposition of Judi Hill (8/25/05) at 13:9-14:5; 144:15-23.

[23] *Id.* at 149:1-17.

of forcing Plaintiff to address these new matters at trial under these circumstances is manifest and more than sufficient to invoke the automatic exclusion required by Rule 37.

In a final attempt to persuade this Court to ignore the prejudice to Plaintiff caused by its untimely supplemental reports, Defendant claims that it is merely supplementing its expert reports as permitted by Rule 26(e)(1). As detailed above, however, Defendant is making wholesale changes in the factual and legal theories of its experts long after this Court's deadlines for expert reports and long after Plaintiff requested this material and Defendant's designated witnesses did not produce. Whatever it may permit or require, Rule 26(e)(1) cannot justify Defendant's failure to inform this Court before November 3, 2005, of whatever problems it might be having in obtaining documents and data from its own files that might prevent it from complying with this Court's November 3, 2005 deadline and to instead use self-help to file untimely supplements to those reports.[24] *Cane Tennessee, Inc. v. United States*, 57 Fed. Cl. 115 (2003) (untimely supplemental expert report excluded due to prejudice). In light of the fast-approaching trial, which begins in less than four weeks, the only way to prevent the prejudice to Plaintiff from these untimely reports is to prohibit Defendant from using at trial the supplemental reports and the evidence on which they are based.

With respect to Chavarria, Defendant's Rule 26(e)(1) argument fails for the additional reason that the "cancelled check" data and documents attached to his original expert report were themselves produced in violation of this Court's discovery and scheduling orders. Defendant did

[24] Not surprisingly, Defendant's opposition does not cite any authority for this novel interpretation of Rule 26(e), citing instead an unpublished, nonprecedential opinion from the Southern District of Indiana as proof that there is a duty to supplement Rule 26 disclosures. Defendant's Memorandum at 10, citing *Crouse Cartage Co. v. National Warehouse Inv. Co.*, 2003 WL 21254617 (S.D. Ind. April 10, 2003). In fact, the courts confronted with such a facile argument have rejected it. *See Fusco v. General Motors Corp.*, 11 F.3d 259, 265-66 (1st Cir. 1993) (untimely supplementary production of video to be used by expert excluded).

not produce that material, consisting of 19 pages wedged between Exhibits B.1 and C of the report and otherwise unidentified, until November 3, 2005, when it served Plaintiff with a copy of Chavarria's original report. Under Rule 26(e)(1), defendant clearly has no right to "supplement" material that itself was served in violation of this Court's discovery and scheduling orders.

## II. DEFENDANT HAS VIOLATED THE COURT'S SCHEDULING AND DISCOVERY ORDERS BY DESIGNATING AS EXHIBITS NUMEROUS DOCUMENTS THAT DEFENDANT FAILED TO PRODUCE BEFORE THIS COURT'S CUT-OFF OF FACT DISCOVERY

Defendant's violations of this Court's scheduling and discovery orders are not confined to the "supplemental" expert reports for Chavarria and Martin. In addition, on or about December 20, 2005, the Government provided the Osage Nation with lists of trial exhibits that include numerous documents that the government did not produce to the Osage Nation until after September 1, 2005. Among the listed materials were thousands of documents from the administrative record of *Okie Crude Co. v. Muskogee Area Director*, 23 IBIA 174 (1993). According to a recent communication, the Defendant intends to use at trial 429 of the documents from the *Okie Crude* record, which consists of over 6,000 pages. Those 429 documents were produced to the Osage Nation for the first time on January 11, 2006. In its Motion to Exclude, Plaintiff requested an Order prohibiting Defendant from using these documents at trial for essentially the same reasons on which Plaintiff objected to Defendant's untimely supplemental reports for Chavarria and Martin.

In its opposition, Defendant claims that none of the documents on its exhibit list "run afoul" of the scheduling and discovery orders of this Court. Defendant's Memorandum at 7. After discussing at some length its views of its obligations under RCFC 26(a)(1)(B), Defendant claims it has no duty actually to produce documents until either:

(1) specifically requested to do by a party to the litigation; or

(2) required by rule or statute.

*Id*. Defendant further asserts that, with respect to the documents that are the subject of Plaintiff's motion to exclude, either Defendant made them available for inspection or they were never requested by Plaintiff in the first place. *Id.* at 8. This contention is simply not correct.[25]

On May 4, 2005, Plaintiff served 30(b)(6) notices and subpoenas requesting Defendant to designate witnesses knowledgeable concerning Defendant's royalty collection, disbursement from Osage tribal trust funds, and investment of such funds *and* to produce all documents relevant to those subjects. In response, the Defendant designated witnesses, who produced documents and who affirmatively represented at their deposition that they had produced all relevant documents. The Defendant did not supplement those document productions on or before this Court's September 1, 2005 cut-off for fact discovery for Tranche One claims.

On several occasions, Plaintiff made additional requests for these documents. For example, in an April 20, 2005 30(b)(6) deposition notice and subpoena to the BIA, Plaintiff requested, among other things, all records "relating to the production of crude oil" during the relevant period, all records "relating to payments owed to the Osage Nation and/or made or received by the United States for royalties," and "all other records relating to the calculation of royalties," during the relevant time period. Similarly, in its May 10, 2005 First Request for Production of Documents, Plaintiff requested, among other things, "any and all documents used by BIA to determine the royalty due on crude oil" for the relevant leases and the relevant months.

[25] Defendant's opposition seriously mischaracterizes Plaintiff's Motion to Exclude. Plaintiff's motion is not in any way based on the disclosure requirements of Rule 26(a)(1)(B) but on Defendant's violation of this Court's scheduling and discovery orders.

Thus, there can be no doubt that Plaintiff requested the documents that are the subject of its Motion to Exclude.

As it concedes, Defendant simply did not produce the requested documents on or before the Court's September 1, 2005 cut-off for fact discovery.[26] Further, the limited objections Defendant posed to Plaintiff's discovery requests do not absolve it of its production responsibilities. The Government did not make any objections to the April 20, 2005 30(b)(6) subpoena to BIA. In addition, Defendant's objections to the May 4 and May 10 requests are inapplicable, as Defendant objected largely on the grounds that the requests were duplicative and burdensome. Obviously, Defendant has not been too burdened to obtain these documents for its own use. It therefore cannot rely on its objections to excuse its failure to produce these documents to Plaintiff.

Nor can Defendant justify its "trial by ambush" by claiming that it need only to identify documents. Defendant's Memorandum at 8. As Defendant frankly admits, production, not merely identification, is required once Plaintiff requests records. *Id.* As detailed above, Plaintiff did in fact request the records that are the subject of this motion, and Defendant's designated 30(b)(6) witnesses testified that they had produced all relevant records. Moreover, in July and August 2005, Plaintiff and Defendant took the extraordinary step of conducting a joint discovery project that expressly targeted the missing tranche one records. While that extraordinary effort

[26] There can be little question that the documents were covered by these requests. Indeed, if these documents are not covered by the requests described above, they are almost certainly irrelevant to the issue in the tranche one trial.

did produce a few additional relevant records, it did not locate the documents that are the subject of this motion – all of which have been produced after September 1, 2005, if at all.[27]

Contrary to the allegations in the Defendant's Motion in Opposition, the Osage Nation does not seek to "unilaterally defin[e] the documents that Defendant may use at trial," nor does it seek to put Defendant in a "Catch-22" situation by alleging the absence of documents that are known to exist. Defendant's Memorandum at 9. Unless the integrity of the Court's scheduling and discovery orders is maintained, the Osage Nation will be forced to prepare for trial against a record that is materially different from the record listed on September 1, 2005. It is undisputed that the Government dropped over 6,000 pages of new material on the Osage Nation, as well as supplemental expert reports based on previously unproduced documents, including a "ten million record file," months after the applicable deadline and mere days before Plaintiff's pre-trial brief was due. This is the very sort of "trial by ambush" that the Court's scheduling orders are designed to prevent, and as described in the Osage Nation's motion, the law has consistently forbidden. *See, e.g.*, *Barrett v. Atlantic Richfield Co*., 95 F.3d 375, 380-81 (5th Cir. 1996) (district court stuck testimony of experts that had not formed final opinions by scheduling order deadline; failure of expert to complete work due to delay of party's own counsel in providing information was no justification for delay).

---

[27] It appears that Defendant found some but not all of the documents that are the subject of Plaintiff's motion by unilaterally continuing to search for documents after this Court's September 1, 2005 cut-off for fact discovery and after the joint discovery project ended. Defendant's Memorandum at 4. But Defendant simply has no right to grant itself an extension of that deadline, particularly since Plaintiff's expert reports were due on September 30, 2005.

## CONCLUSION

For the foregoing reasons, admission of the untimely supplemental expert reports and the untimely documents would unduly prejudice the Osage Nation and would violate the Court's scheduling and discovery orders. Plaintiff's Motion to Exclude should be GRANTED.

Dated this February 2, 2006

Respectfully submitted,

*s/Wilson K. Pipestem*
WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for The Osage Nation