**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed: February 9, 2006 |
| v. | ) | Nos. 99-550L (into which has been consolidated No. 00-169 L) |
| THE UNITED STATES OF AMERICA, | ) | Judge Emily C. Hewitt |
| Defendant. | ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM CHALLENGING INTERIOR'S INTERPRETATION OF OSAGE REGULATIONS IN OKIE CRUDE CO. v. MUSKOGEE AREA DIRECTOR**

Defendant, the United States, files this reply to The Osage Nation's Opposition To The United States' Motion In Limine To Preclude Plaintiff From Challenging Interior's Interpretation Of Osage Regulations In Okie Crude v. Muskogee Area Director ("the Opposition Memorandum").

The Tribe appears to misunderstand, or wish to avoid, defendant's argument. The Tribe's claim relating to "highest offered price" is that the United States breached its fiduciary duty to the Tribe by failing to collect "moneys due" to the Tribe; and that this failure to collect arose, in part, from the alleged failure of the Interior Board of Indian Appeals ("IBIA") correctly to interpret the term "offered price" in Interior's own regulations. Although this Court has jurisdiction to entertain claims for money damages where plaintiff establishes that a money-mandating duty[1] arises from a breach of the statutes and regulations at issue, even if plaintiff

[1] The United States does not, of course, concede that a breach of the statutes or regulations at issue in this case gives rise to a money-mandating duty.

establishes that such jurisdiction exists over the damages claim, that jurisdiction alone does not give plaintiff carte blanche to relitigate, or this Court the power to review or overturn, the formally-adjudicated interpretation of the Osage Regulations. Instead, plaintiff should have pursued, under the Administrative Procedure Act ("APA") in district court, any claim it had that the adjudicated interpretation of "offered price" or any other regulatory terms was incorrect. Only if and after the Tribe prevailed under such an APA claim could it sue here to recover damages for the alleged wrongs that flowed from the agency's purported misinterpretation of its regulations.

In its Opposition Memorandum, the Tribe fails to come to grips with the fact that there was a formal adjudication by the IBIA of the issue of the proper interpretation of "offered price" (as well as "posted price" and "bona fide selling price") as used in the very regulations at issue here. The APA provides the exclusive method for obtaining review of such an agency interpretation. Accordingly, as *Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1366 (Fed. Cir. 2001), teaches, the Tribe cannot, "under the cover of" a damages claim in this Court, seek to review or disturb the agency's determination of what an "offered price" means.

Plaintiff's claim that this principle is limited to takings cases has no merit. Neither this Court nor the Court of Appeals for the Federal Circuit has so held. On the contrary, as the Federal Circuit explained in *Rith, supra*, it was because of the particular nature of a takings claim and the facts of that case, that it allowed the plaintiff in *Del Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358 (Fed. Cir. 1998), to go forward on its claim in this Court "without first challenging the lawfulness of the government's action, or establishing the scope of its property interest, in an administrative proceeding." *Rith, supra*, 247 F.3d at 1365. In other

words, the principle that a challenge to an agency adjudication must take place in district court under the APA, and not under cover of a damages claim in this Court, does not arise from any feature exclusive to a takings action; instead, it was the fact that it is essential in a takings claim that the government action at issue be deemed to be "authorized" that allowed the *Del Rio* plaintiff to go forward in this Court without having to bring in district court its claims about alleged government improprieties, which, the Federal Circuit noted, constituted a separate cause of action. *Rith, supra*, 247 F.3d at 1365.

The United States quoted the most pertinent language from *Rith* in its motion *in limine* on this issue, but the point bears repeating here: as the Federal Circuit explained in *Rith,* the *Del Rio* claim could proceed in this Court without plaintiff's first challenging the correctness of the agency's action in the district court, "because a takings claim lies, as long as the government's action was authorized, even if the government's action was subject to legal challenge on some other ground." *Rith, supra*, 247 F.3d at 1365.

Here, plaintiff's claim for money damages for alleged breach of fiduciary duty may lie in this Court[2], but that does not entitle the Tribe to litigate, as part of that claim, whether the definitive and final interpretation by the IBIA of "offered price" was lawful or correct. In *Rith,* the Federal Circuit made clear that its holding that the takings claim in *Del Rio* could proceed in this Court did not mean that a plaintiff could, as part of such an action, challenge the agency's denial of a permit, *or claim that denial was unlawful* under the pertinent statute. *Rith, supra,* 247 F.3d at 1365. So to argue, the Federal Circuit held, is to "rea[d] too much into *Del Rio*." *Rith,*

---

[2] Again, out of an abundance of caution, defendant notes that it does not concede that there exists a money-mandating duty or other basis for jurisdiction in this Court over the Tribe's claims.

*supra*, 247 F.3d at 1365. The *Rith* plaintiff was bound, instead, "to litigate its takings claim on the assumption that the administrative action was both authorized and lawful." 247 F.3d at 1366.

This principle has even greater force where, as in this case, there was a formal adjudication of the very agency determination that the Tribe seeks to have this Court review. *See, e.g.*, *Mannatt v. United States*, 48 Fed. Cl. 148, 155 (2000). The *Mannatt* court held, pre-*Rith, supra*, that certain agency action may be challenged in this Court "when it is pertinent to a determination of that claimant's property interest in a takings claim" (48 Fed. Cl. at 152), but noted that it could not undertake such a review had there been a formal adjudicatory decision on the question. *Id.* at 155. ("Once BLM [the Bureau of Land Management] made a formal adjudicatory decision, the rulings of the *Aulston* cases[3] would apply, requiring any review of the decision to be undertaken by the district court").

Contrary to the Tribe's assertions, the fact that *Del Rio* also involved a claim upon "contractual undertakings by the government upon which citizens are entitled to sue in the Court of Federal Claims" (*Del Rio, supra*, 146 F.3d at 1367), does not alter the analysis of the question at issue here: whether this Court may entertain a challenge to the definitive and final interpretation of a regulatory term, as formally adjudicated by the IBIA, in a suit for damages which claims that the United States breached its fiduciary duty to the Tribe in its application of that regulation. Neither the contract portion nor the takings portion of the *Del Rio* plaintiff's suit involved such a situation. Instead, in *Del Rio*, the Court noted that simply because the interpretation of the contract at issue "must be analyzed in light of the statutes and regulations

[3] *Aulston v United States*, 11 Cl. Ct. 58 (1986), *affirmed on the merits*, 823 F.2d 510 (Fed. Cir. 1987), and the other cases cited in defendant's motion.

governing the subject matter," that circumstance alone did not deprive the Court of jurisdiction to decide plaintiff's suit on its contract with the government. *Del Rio, supra,* 146 F.3d at 1367.

Similarly, the United States does not assert here that plaintiffs may not pursue in this Court a claim for breach of a fiduciary duty to collect "moneys due" (assuming, *arguendo* only, that there exists such a duty and that it is "money-mandating"), but that, in considering the breach of fiduciary duty claim this Court must accept "as a given" (*Aulston, supra*, 11 Cl. Ct. at 62) the IBIA's interpretation of "offered price," because that interpretation was the result of a formal adjudication; and, further, if the Tribe wished to challenge the IBIA's definitive interpretation, as adjudicated, it was bound to do so in district court in an APA suit and may not litigate the issue in a damages action in this Court. For those reasons, the Tribe should not be allowed to introduce evidence or expert testimony or other materials that go to the question of how "offered price" should be interpreted.

The cases on which the Tribe relies in its Opposition Memorandum do not hold to the contrary and provide no support for the Tribe's assertions. Indeed, those cases do not even address the question whether a definitive, adjudicated interpretation of a term in an agency regulation may be collaterally attacked in a damages suit in the Court of Claims.

*San Carlos Irrigation & Drainage Dist. v. United States,* 111 F.3d 1557 (Fed. Cir. 1997), which the Tribe cites, involved the interpretation of a contract, and the meaning of the term "cost" as used in that contract. *San Carlos, supra*, 111 F.3d at 1564. Under that contract, the government was obliged to provide pumping power at cost, and contended that the operation and maintenance ("O & M") rate set by the government determined the "cost" within the meaning of its contract with the plaintiff. *Id.* at 1564. Further, the government argued "that the Contract

requires [plaintiff] to follow administrative procedures to challenge the O & M rates." *Id.* The Federal Circuit correctly noted that "[i]nterpretation of terms *in a contract* is an issue of law which we review de novo." *Id.* (emphasis added). It also noted that other terms of the contract limited the O & M charges. *Id.* The Federal Circuit found that the APA did not bar it from reviewing the issue of what cost meant under the contract, because "[n]othing in the Contract implies or states that the APA applies to the determination of the 'cost' of replacement power." *Id.*

Again and again in its explication of its holding on these issues, the Court reiterated that what was before it was a contract action, presenting questions of the interpretation of the terms of that contract. The Court therefore rejected the argument that the plaintiff had to exhaust its remedies by challenging the O & M rates under the APA to determine "cost," because there was "no compelling evidence *in the Contract* ... which incorporates the regulatory appeals process into [plaintiff's] rights *under the Contract*. The *Contract* does not speak to the determination of 'cost,' and there is no suggestion, and certainly no clear statement [in the Contract], that [plaintiff] must protest that determination through the regulatory ratemaking process before asserting a breach *of the Contract*." *San Carlos, supra,* 111 F.3d at 1564 (emphasis added).

In short, *San Carlos* has no bearing on the Tribe's claim about the correct interpretation of the term "offered price" in the Osage Regulations. *San Carlos* does not involve, much less control, the question whether this Court may, in adjudicating a damages claim for breach of fiduciary duty, disturb a definitive, adjudicated interpretation of a term in an agency regulation.

Nor did *Aerolineas Argentinas v. United States*, 77 F.3d 1564 (Fed. Cir. 1996), involve such a question. *Aerolineas* involved a challenge to the validity of a regulation on the ground

that the regulation directly contravened the governing statute. 77 F. 3d at 1573-74. As the Federal Circuit noted, "[a]lthough a court gives appropriate deference to an agency's interpretation, by regulation, of an ambiguous statute that the agency is charged with administering, that deference does not permit abdication of the judicial responsibility to determine whether the challenged regulation is contrary to statute or devoid of administrative authority. *In this case the* [Immigration and Naturalization] *Service is not simply interpreting a regulation as it applies to specific facts, but has construed a regulation as replacing and continuing a repealed statute*." *Id.* at 1574 (internal citation omitted; emphasis added). Accordingly, the Court had jurisdiction over whether the regulation was valid. Likewise, the "forms" at issue were contracts, which the Court had the authority to review to determine whether the government had extracted from the plaintiff airlines monies to which it was not entitled by statute. *Id.* at 1576.

*Brighton Village Associates v. United States,* 52 F.3d 1056 (Fed. Cir. 1995), likewise provides no support for the Tribe's claim that this Court may review the IBIA's determination of the meaning of "offered price." Indeed, *Brighton Village, supra*, does not even speak to that issue. *Brighton Village*, like *San Carlos, supra*, was a contract case, involving the adjustment of rents. *Brighton Village, supra*, 52 F.3d at 1061. The contract, like the governing statute with which it complied, unambiguously stated that those rents "must" be adjusted annually. *Id*. The regulation at issue in the case stated that the contract rents "may" be adjusted annually, by either of two methods set forth in the regulation. *Id.* "[T]o give the [unambiguous] statute its intended effect," the Court "interpret[ed] the regulation to indicate that the contract rents must be adjusted annually but that HUD may choose the method of adjustment." *Id.*

In short, there is no suggestion in any of the cases cited by the Tribe that this Court may review or disturb a definitive interpretation of a term in a regulation, whose meaning was formally adjudicated through the agency administrative process. The proper route to obtain such review was an action in district court under the APA, an avenue the Tribe did not pursue; and the Tribe may not obtain review of such an agency action "under cover of" a damages action in this Court.

Respectfully submitted this 9th day of February, 2006.

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

*s/ Brett D. Burton*
BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Counsel of Record for Defendant

MARTIN J. LALONDE
KEVIN WEBB
LAURA MAROLDY
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0247
Fax: (202) 353-2021
Attorney for Defendant

OF COUNSEL:

Brenda Riel

Elisabeth Brandon
Attorneys
Office of the Solicitor
Division of Indian Affairs
U.S. Department of the Interior
MS 6456
Washington, D. C. 20240
Telephone: (202) 208-4218/3714
Fax: (202) 208-3490

Teresa E. Dawson
Senior Counsel
Office of Chief Counsel
Financial Management Services
U.S. Department of the Treasury
401 14th Street, S.W.
Room 552A
Washington, D.C. 20227
Telephone: (202) 874-2567
Fax: (202) 874-6627