**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed: February 9, 2006 |
| v. | ) | Nos. 99-550L (into which has been consolidated No. 00-169 L) |
| THE UNITED STATES OF AMERICA, | ) | Judge Emily C. Hewitt |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF OSAGE NATION'S MOTION TO STRIKE DEFENDANT'S NEWLY ASSERTED AFFIRMATIVE DEFENSES OF ESTOPPEL AND LACHES AND TO EXCLUDE EVIDENCE SUPPORTING SUCH DEFENSES**

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. CONTRARY TO PLAINTIFF'S ASSERTION THE UNITED STATES IS ENTITLED TO ASSERT THE DEFENSES OF ESTOPPEL AND LACHES . . . . . . . . 2

1. Defendant Properly Pled the Defense of Laches in Answering Plaintiff's Claims Related to Royalty Pricing . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

2. Even if the Court deems that Defendant should have pled the defenses of laches and estoppel in Case No. 00-169 and estoppel in Case No. 99-550, Defendant's failure to do so does not preclude the assertion of such defenses now . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

a. Plaintiff had sufficient Notice of Defendant's equitable claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

b. Given the manner in which Plaintiff's claims have evolved, Defendant did not have sufficient information upon which to base its equitable defenses until long after it had filed its Answer to Plaintiff's Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

c. Plaintiff is not prejudiced by Defendant's assertion of the equitable claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3. In the Alternative, the United States Should be Permitted to Amend its Pleadings to Assert the Affirmative Defenses of Estoppel and Laches because it has a Valid Basis for Asserting Such Defenses At This Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

B. THE UNITED STATES SHOULD NOT BE PRECLUDED FROM ASSERTNG THE EQUITABLE DEFENSES OF LACHES AND ESTOPPEL PURSUANT TO THE DOCTRINE OF UNCLEAN HANDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

C. CONGRESSIONAL DETERMINATION OF THE STATUTE OF LIMITATIONS OUGHT NOT TO AFFECT OR, IN ANY WAY MINIMIZE THE DEFENSES ASSERTED BY THE DEFENDANT . . . . . . . . . . . . . . . . . . . . . . . . 13

D. THE EVIDENCE RELATED TO DEFENDANT'S LACHES AND ESTOPPEL DEFENSES SHOULD NOT BE EXCLUDED BECAUSE IT ALSO RELATES

TO DEFENDANT'S DEFENSE THAT THE GOVERNMENT ACTED REASONABLY IN DISCHARGING ITS TRUST DUTIES . . . . . . . . . . . . . . . . . . . . . . 15

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Blackfeet & Gros Ventre Tribes of Indians v. United States, 127 Ct. Cl. 807, 817-18 (1954)* . . . . . . . . -14-

*Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 612 (4th Cir. 1999) . . . . . . . . -5-

*City of Gettysburg, South Dakota v. United States*, 64 Fed.Cl. 429, 444 (2005) . . . . . . . . -6-

*Osage Nation v. United States*, 68 Fed.Cl. 322, 324 n.3 (2005) . . . . . . . . -5-

*Capoeman v. United States*, 194 Ct. Cl. 664 (1971) . . . . . . . . -14-, -15-

*Creek Nation v. United States*, 168 Ct. Cl. 483, 494 (1964) . . . . . . . . -14-

*Fayyad Al-Kurdi v. United States*, 25 Cl. Ct. 599, 604 (1992) . . . . . . . . -6-, -11-, -12-

*First Nationwide Bank v. United States*, 48 Fed. Cl. 248, 254 (2000) . . . . . . . . -11-

*Foman v. Davis,* 371 U.S. 178, 181-82 (1962) . . . . . . . . -10-, -11-

*Hauschild v. United States*, 53 Fed. Cl. 134, 139 (2002) . . . . . . . . -5-, -6-

*Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1578 (Fed. Cir. 1988) . . . -13-

*Melrose Assocs., L.P. v. United States*, 43 Fed. Cl. 124, 149-50 (1999) . . . . . . . . -12-

*Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814-15 (1945) . . . . . . . . -12-, -13-

*Resqnet.com, Inc. v. Lansa, Inc.*, 382 F. Supp. 2d 424, 451 (S.D.N.Y. 2005) . . . . . . . . -9-

**FEDERAL STATUTES**

28 U.S.C. § 2501 . . . . . . . . -14-

28 U.S.C. §§ 70 . . . . . . . . -14-

118 Stat. 2809 . . . . . . . . -15-

60 Stat. 1049 . . . . . . . . -14-

Pub. L. No. 108-447 . . . . . . . . . . -15-

**FEDERAL RULES**

RCFC 8 . . . . . . . . . . -5-, -6-, -11-

RCFC 15 . . . . . . . . . . -11-, -12-

**APPENDIX TO DEFENDANT'S EXHIBITS IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF OSAGE NATION'S MOTION TO STRIKE DEFENDANT'S NEWLY ASSERTED AFFIRMATIVE DEFENSES OF ESTOPPEL AND LACHES AND TO EXCLUDE EVIDENCE SUPPORTING SUCH DEFENSES**

| Exhibit No. | Description | Beginning Page Number in Appendix |
|---|---|---|
| 1 | Transcript from Status Conference - March 15, 2005 | 1 |
| 2 | Notice of Taking of Deposition Upon Oral Examination and Request for Production of Documents - August 8, 2005 | 3 |
| 3 | Notice of Taking Deposition upon Oral Examination and Request for Production of documents - May 31, 2005 | 11 |

## I. INTRODUCTION

Plaintiff seeks to strike Defendant's assertion of the equitable defenses of laches and estoppel and to exclude the evidence supporting these defenses. The Court should deny this motion.

Defendant has properly asserted the laches defense in the appropriate pleading. It asserted laches in its Answer to Plaintiff's third amended complaint in the Case No. 99-550, wherein Plaintiff initially was prosecuting its royalty calculation and collection claims. Plaintiff sought to bring those claims into the Case No. 00-169 before this Court in the Spring of 2005, long after Defendant filed its answer in Case No. 00-169. Defendant opposed Plaintiff's attempts at bringing claims into Case No. 00-169 that were properly in Case No. 99-550. Once these two cases were consolidated, however, it was then clear that Defendant would need to address Plaintiff's royalty calculation claims before this Court and that it should pursue its laches and other equitable defenses that it had openly sought to maintain against these claims. The Court should not deny Defendant's opportunity to do so.

Nor should the Court grant Plaintiff's motion based on its other arguments. Defendant's equitable defenses are not undermined by the Appropriations Act provisions related to statutes of limitations; they are not inapplicable in the context of breach of trust claims brought by Indians; and they are not barred by purported "unclean hands" of the Defendant.

Further, even if the Court is inclined to grant Plaintiff's Motion to Strike, it should not grant its motion to exclude evidence supporting these defenses. That same evidence will be relevant for other matters before the Court, including whether Defendant breached any duty owed to the Osage Tribe.

## II. ARGUMENT

### A. CONTRARY TO PLAINTIFF'S ASSERTION THE UNITED STATES IS ENTITLED TO ASSERT THE DEFENSES OF ESTOPPEL AND LACHES

#### 1. Defendant Properly Pled the Defense of Laches in Answering Plaintiff's Claims Related to Royalty Pricing

Defendant properly pled its laches defense in answering Plaintiff's averments related to royalty pricing in the case captioned *Osage Nation and/or Tribe of Indians of Oklahoma v. United States*, No. 99-550L (Fed. Cl. filed Aug. 2, 1999) ("Case No. 99-550"). When Case No. 99-550 was consolidated with *Osage Nation and/or Tribe of Indians of Oklahoma v. United States*, Case No. 00-169L (Fed. Cl. filed March 31, 2000) ("Case No. 00-169"), that defense followed. Moreover, because Defendant consistently asserted that Plaintiff's royalty claims were part of Case No. 99-550, not part of Case No. 00-169, Plaintiff should have been well aware that Defendant's laches defense, pled in Case No. 99-550, attached to its royalty claims. Plaintiff cannot now claim surprise that Defendant is pressing this defense.

Plaintiff's claims related to royalty calculation and collection were squarely before the Court of Federal Claims in Case No. 99-550L. In the original Complaint in Case No. 99-550L, Plaintiff described the nature of that action as one for money damages for underpayment of royalties and failure to collect, Compl., No. 99-550L ¶ 4 (Dkt. No. 1), and claimed that the United States failed to collect royalty income based on the highest posted price. *Id.* ¶¶ 12-14, 18, and 21-23. Plaintiff described the nature of Case No. 00-169 as "an action for money damages for breach of fiduciary duty in the mismanagement of tribal trust funds and for failure to account." Compl., No. 00-169L ¶ 4 (Dkt. No. 1).

Shortly after the filing of Case No. 00-169, Plaintiff filed a motion to amend and

consolidate this case with Case No. 99-550L. In briefing that motion, Plaintiff plainly distinguished between the issues and claims in Case No. 99-550L (*i.e.*, the "pricing" case) from those in this one. In Plaintiff's words, Case No. 99-550 involved

> Plaintiff's claim that the Defendant breached its fiduciary duty to Plaintiff and mismanagement of Plaintiff's trust by not collecting the proper royalty amount on oil produced and sold from lands held in trust by the Defendant for the benefit of Plaintiff. This issue includes both the amount of production and price obtained.

Plaintiff's Motion to Amend and Consolidate and Brief in Support, No. 99-550L, May 1, 2000, at 2 (Dkt. No. 11). As to Case No. 00-169L, Plaintiff stated that

> the Defendant has, to the detriment of Plaintiff, further mismanaged Plaintiff's trust money assets, composed primarily of oil royalties, by not prudently and properly accounting for the money paid into the U.S. Treasury and investing the same (as required by federal law) for the benefit of Plaintiff.

*Id.* Further, Plaintiff explained that Case No. 99-550 "directly relates to Defendant's failure to properly collect royalty for oil[,] and Case No. 00-169L relates to Defendant's mismanagement of the oil royalty money that was collected, as well as other assets of the Osage." *Id.* The Court initially issued an Order consolidating the cases, but, upon Defendant's motion for reconsideration, it vacated its consolidation order, recognizing the separate nature of the cases. *See* Order, No. 99-550L (September 14, 2000).

In October 2004, Plaintiff filed a third amended complaint in Case No. 99-550L, in which Plaintiff made clear, once again, that it was bringing its claims for undervaluation of royalties in that case, not in Case No. 00-169. *See* 3rd Amended Compl., No. 99-550L (Oct. 24, 2005) (Dkt. No. 69). In the third amended complaint, Plaintiff characterized Defendant's role in issuing and collecting on oil and gas mining leases for portions of the Osage mineral estate. *Id.* ¶¶ 11-15. Also, Plaintiff averred that Defendant had failed to collect the appropriate royalties for crude oil

produced during calendar year 1995, and that Defendant "as trustee, has made crude oil royalty underpayments with respect to other oil and gas leases and other periods." *Id.* ¶¶ 25, 28. Additionally, Plaintiff claimed that it "has been damaged by not receiving payments under the oil and gas mining leases that the United States, as trustee, issued for the benefit of the Osage Tribe and should have collected but did not collect." *Id.* ¶ 30. As Plaintiff recognizes, in Defendant's answer to the Third Amended Complaint, it asserted the defense of laches. Case No. 99-550, Dkt. No. 70.

In a status report filed as recently as February 11, 2005, Plaintiff defined the relevant issues in Case No. 99-550L as including the extent to which the "United States, as trustee, damaged the Osage Nation by failing to collect payments under oil and gas mining leases that the United States issued for the benefit of the Osage Nation." *See* Amended Joint Preliminary Status Report, No. 99-550L (Feb. 11, 2005) at 4 (Dkt. No. 77). Later in this same report, Plaintiff described this case (No. 00-169L) as "involving Osage claims for federal mismanagement of tribal trust funds." *Id.* at 1.

On multiple occasions, Defendant explained its objections to Plaintiff's attempt to assert its royalty calculation claims in Case No. 00-169 rather than in Case No. 99-550. For example, Defendant argued in its Motion to Dismiss, in Part, Plaintiff's Tranche One Claims, that the Court should dismiss Plaintiff's claims related to royalty calculation and collection because they are squarely before the Court of Federal Claims in a separate case filed earlier than the instant case. The same point was raised during conversations between the parties and in status conferences before the Court. *See, e.g.,* Transcript of Status Conference, March 15, 2005 at 30-31 (Attached as Exhibit 1).

On September 14, 2005, Case No. 99-550 was transferred to this Court and consolidated with Case No. 00-169. This action mooted Defendant's assertions that Plaintiff's royalty calculation claims were not before this Court. *Osage Nation v. United States*, 68 Fed.Cl. 322, 324 n.3 (2005). The consolidation should also be understood to have properly brought before this Court Defendant's laches defense against Plaintiff's royalty claims. In short, Defendant asserted its laches defense in the case in which it understood – and Plaintiff repeatedly represented – contained the royalty calculation claims, against which the laches defense should apply. Defendant did not assert this defense against Plaintiff's funds mismanagement, or investment claims, raised in Case No. 00-169, and Defendant has not raised the laches or estoppel defenses against those claims in its pre-trial brief.

**2. Even if the Court deems that Defendant should have pled the defenses of laches and estoppel in Case No. 00-169 and estoppel in Case No. 99-550, Defendant's failure to do so does not preclude the assertion of such defenses now**

As with any "general rule," there are exceptions to Rule 8 of the Rules of Court of Federal Claims ("RCFC"), which provides that a party must raise affirmative defenses in the appropriate pleading. *See, e.g., Hauschild v. United States*, 53 Fed. Cl. 134, 139 (2002) (citing *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612 (4th Cir. 1999) (absent unfair surprise or prejudice to the plaintiff, a defendant's affirmative defense is not waived when it is first raised in a pre-trial dispositive motion)). In fact, liberal pleading rules do not require waiver of an affirmative defense under RCFC 8(c) if the party's failure to raise the defense did not cause unfair surprise or prejudice to the plaintiff. *See Hauschild,* 53 Fed. Cl. at 139 (rule that liberal pleading does not require waiver of an affirmative defense under Rule 8(c) if the party's failure to raise the defense did not cause unfair surprise or prejudice to the plaintiff apply in the Court of

Federal Claims); *see also City of Gettysburg, South Dakota v. United States*, 64 Fed.Cl. 429, 444 (2005).

In light of the foregoing, the assertion in Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion to Strike Defendant's Newly Asserted Affirmative Defenses of Estoppel and Laches and to Exclude Evidence Supporting Such Defenses ("Plaintiff's Memorandum") that Defendant has waived its affirmative defenses is inherently flawed.

In fact, the Court of Federal Claims has certainly permitted parties to assert affirmative defenses that were not contained in the Answer. *See Hauschild*, 53 Fed. Cl. at 139; *Fayyad Al-Kurdi v. United States*; 25 Cl. Ct. 599, 604 (1992). In such instances, the Court has considered the purpose of RCFC 8(c) - to put the opposing party on notice of a possible defense – in order to determine whether a waiver is required. *See Hauschild*, 53 Fed. Cl. at 139; *Fayyad*; 25 Cl. Ct. at 604; *City of Gettysburg*, 64 Fed.Cl. At 449. Among the considerations of the Court in determining whether the Defendant may assert an affirmative defense not pled in the Answer are (a) whether the opposing party had notice that such defenses would be raised, *Hauschild*, 53 Fed. Cl. at 139; (b) the way in which a case has evolved, *City of Gettysburg*, 64 Fed. Cl. At 449 n.11 (noting that the manner in which the case evolved did not lend itself to the assertion of the affirmative defense of laches or estoppel in the government's answer); (c) whether plaintiffs are able to respond to the defense, *Fayyad*; 25 Cl. Ct. at 604.

As explained below, the Defendant's assertion of the affirmative defense of laches in the pre-trial brief causes neither unfair surprise, nor prejudice to the Plaintiff.[1]

**a. Plaintiff had sufficient Notice of Defendant's equitable claims**

The Plaintiff had adequate notice of these defenses. As explained above, by virtue of its Answer to Plaintiff's Third Amended Complaint in Case No. 99-550, Plaintiff should have been well aware that Defendant claimed that Plaintiff's royalty pricing (or calculation) claims were barred by laches. Further, Defendant has sought in discovery in Case No. 00-169 information regarding the Tribe's involvement in and knowledge of the Osage Agency's management of the Osage mineral resources. Defendant, for instance, deposed Chief Gray of the Osage Tribal Council as a 30(b)(6) witness. The topics that Defendant sought to cover with the Tribe's 30(b)(6) witness plainly addressed the Tribe's involvement in and knowledge of the management of its oil resources, including the implementation of the Osage royalty regulations. *See* Exhibit 2. Similarly, Defendant deposed a former tribal auditor, Jim Parris, and questioned him about the Tribe's involvement with royalty management and its access to records of the Bureau of Indian Affairs. *See* Exhibit 3. Because such information forms the predicate for Defendant's estoppel and laches claims, Plaintiff was on notice that such claims could be pursued.

---

[1] In addition, the Court should permit Defendant to pursue its estoppel claim. This claim is based on the same factual predicate as the laches claim and is, essentially, a variant of the laches defense. Since Plaintiff had notice of Defendant's laches claim, it should also be deemed to have had notice of the estoppel defense.

**b. Given the manner in which Plaintiff's claims have evolved, Defendant did not have sufficient information upon which to base its equitable defenses until long after it had filed its Answer to Plaintiff's Complaint**

The manner in which this case has evolved did not lend itself to the assertion of the affirmative defenses in the Defendant's Answer. As explained above, for most of the history of Case No. 00-169, Plaintiff represented that the case related to funds mismanagement, not royalty pricing. It was not until the Court recently required Plaintiff to specify its claims that it started to articulate a view that its royalty calculation claims were, in fact, part of Case No. 00-169. In Plaintiff's Proposed Amended Scheduling Order, filed on March 14, 2005, Plaintiff for the first time indicated that it was pursuing its royalty claims in this case rather than in Case No. 99-550.

Even though it started to press its royalty claims in the Spring of 2005, it was not until long after that Plaintiff provided further specifications as to those claims sufficient to give Defendant notice of the allegations that gave rise to its laches claims. Plaintiff did not raise its claim related to the "price control" era – *e.g.*, that the Osage royalty payment should not have been based on regulated prices – until it filed its expert report at the end of September 2005. Similarly, it did not raise its objections to the use of gravity adjustments until it filed the same expert report. It also had not raised its challenge to the *Okie Crude* IBIA decision until quite recently. Plaintiff did not discuss these claims in its Complaint; in the May 2005 statement of claims; during the May 23, 2005 conference call during which Plaintiff provided further explanation of its claims; in its opposition to Defendant's Motion to Dismiss, in Part, Plaintiff's Tranche One Claims; or during the September 13, 2005 hearing on Defendant's Motion to Dismiss. It is primarily Plaintiff's specific claims related to price controls, the use of gravity adjustments, and the objections to the *Okie Crude* construction of the term offered price that

Defendant asserts are barred by laches or estoppel. The reason that Defendant has not previously asserted these defenses is obvious, the Plaintiff did not assert these specific claims until recently. In direct response to these new allegations, the Defendant asserts the defense of laches and estoppel.

**c. Plaintiff is not prejudiced by Defendant's assertion of the equitable claims**

Plaintiff is not prejudiced by the assertion of Defendant's equitable claims because Plaintiff should be able to respond adequately to the defenses. Certainly, Plaintiff has had ample opportunity to depose Federal Government witnesses, and has done so. Plaintiff has deposed sixteen former and current employees of the Bureau of Indian Affairs and an additional seven former or current employees of the Minerals Management Service, Office of Special Trustee, and the Department of the Treasury. In light of the discovery requests that Defendant propounded, Plaintiff should have known of Defendant's interest in the facts underlying its laches claim. Further, in light of the fact that Defendant asserts the laches defense in response to Plaintiff's oil pricing claims in Case No. 550, Plaintiff should have anticipated this defense. In short, Plaintiff had sufficient opportunity and notice to seek any discovery it may have required.

In any event, additional discovery is unnecessary.[2] The defenses of laches and estoppel do not raise new issues, requiring additional factual discovery. The factual predicate to these defenses are also relevant to other claims involved in this matter. They relate to the management

[2] Although Plaintiff implies that it must conduct additional discovery with respect to these defenses, notably absent from Plaintiff's argument is an identification of any specific issue for which discovery is necessary. *See Resqnet.com, Inc. v. Lansa, Inc.*, 382 F. Supp. 2d 424, 451 (S.D.N.Y. 2005) ("dire predictions of cost and effort, without more, are insufficient to establish undue prejudice. . . .").

of the Osage mineral estate. Indeed, it is due to this similarity that Defendant is able to support its estoppel and laches defenses despite the fact that, prior to late September 2005, Plaintiff failed to raise its specific claims that Defendant seeks to bar, namely those related to the price control era, the use of gravity adjustments, and the objection to *Okie Crude's* interpretation of certain terms in the Osage regulations.[3]

Because the purpose of Rule 8(c) has been satisfied in that Defendant put Plaintiff on notice of these defenses, Plaintiff's Motion should be rejected.

**3. In the Alternative, the United States Should be Permitted to Amend its Pleadings to Assert the Affirmative Defenses of Estoppel and Laches because it has a Valid Basis for Asserting Such Defenses At This Time**

Should the Court determine that Defendant must amend its pleading in order to assert the affirmative defenses of laches and estoppel, Defendant should be permitted to do so, and thus, Plaintiff's Motion to Strike should be denied.

Rule 15 allows for liberal amendment of pleadings. Moore's § 15.02[1]; *see also* *Fayyad*, 25 Cl. Ct. At 612. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive of the outcome." *Foman v. Davis*, 371 U.S. 178, 181-82 (1962)(quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)); *see also* Moore's § 15.02[1] (pleadings are not intended to be an end themselves, but only a means to dispose of the controversy). Accordingly, RCFC 8 must not be applied without giving appropriate consideration to RCFC 15. *Id.* ("Rule 8 requires all pleadings be construed in a manner to do

[3] Defendant has obtained the documents relevant to these defenses primarily from those documents that Plaintiff received through its inspections and through the Government's inspection of tribal records. Also, the potentially relevant witnesses have been questioned extensively by Defendant or Plaintiff.

'substantial justice' [and]. . . Rule 15 provides that amendments should be freely given when justice so requires"); *see also First Nationwide Bank v. United States*, 48 Fed. Cl. 248, 254 (2000).

Necessarily, leave to amend a pleading pursuant to RCFC 15(a) "shall be freely given when justice so requires." RCFC 15(a); *see First Nationwide Bank*, 48 Fed. Cl. at 254; *Fayyad*, 25 Cl. Ct. at 612. As such, leave to amend may only be denied if there is (a) undue delay, bad faith or dilatory motive on the part of the movant; (b) repeated failure to cure deficiencies by amendments previously allowed; (c) undue prejudice to the opposing party by virtue of allowance of the amendment; or (d) futility of amendment. *Foman*, 371 U.S. at 182. Each of these factors is addressed in turn.

First, for the same reasons fully explained above, any delay in seeking an amendment to Defendant's answer is due to Plaintiff's having not brought its royalty calculation claims into this case until recently. Second, Defendants have not repeatedly failed to cure deficiencies in amendments previously allowed. Defendant has not sought amendments as it did not deem them necessary in Case No. 00-169, which was not perceived as containing Plaintiff's royalty calculation claims. Third, as fully explained above, to the extent that Plaintiff is prejudiced – and it is not – such prejudice is due to Plaintiff's delay in defining its claims. Finally, amendment would not be futile, as Defendant's equitable defenses are meritorius.

In short, to the extent this case has evolved over the course of discovery, an amendment to the Answer at this time is appropriate and, indeed, serves the interest of resolving this case on its merits. Necessarily, RCFC 15 allows for liberal amendment in the interests of resolving cases on their merits. *See, e.g., id.* at 182; *Fayyad*, 25 Cl. Ct. at 612.

**B. THE UNITED STATES SHOULD NOT BE PRECLUDED FROM ASSERTNG THE EQUITABLE DEFENSES OF LACHES AND ESTOPPEL PURSUANT TO THE DOCTRINE OF UNCLEAN HANDS**

Plaintiff claims that the Defendant has unclean hands and, therefore, ought to be barred from asserting the equitable defenses of laches and estoppel. Plaintiff bases its argument on its assertion that the United States has admitted that it has never provided the Osage Nation with an accounting. Plaintiff misconstrues any admission that Defendant may have made on this issue. To date, Defendant has not argued that the Government has produced an accounting to the Osage as envisioned by the Appropriations Acts, but this hardly amounts to an admission as Plaintiff claims. Moreover, as will be demonstrated at trial, the Government has, over the years, provided to the Tribe significant information related to its assets and funds held in trust through various financial statements and through open access to records. The Government's actions in this respect does not amount to "egregious conduct" upon which to base a claim of "unclean hands."[4]

The doctrine of clean hands does not require that a party asserting an equitable defense must have led a blameless life, but only that the party must have acted "fairly and without fraud or deceit as to the controversy in issue." *Melrose Assocs., L.P. v. United States*, 43 Fed. Cl. 124, 149-50 (1999) (quoting *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814-15 (1945). Where the evidence indicates, as it will here, that Defendant has acted without fraud or deceit, Plaintiff's assertion of the affirmative defense of "unclean hands" is not suitable. Id.

[4] As to Plaintiff's claims that royalties should not have been based on regulated prices in the price control era, an accounting would in no way inform the claim. Thus, any lack of an accounting should not be deemed as a reason to exclude Defendant's equitable claims as to this claim.

Furthermore, Defendant, through these equitable defenses, is not asserting that a beneficiary Tribe must supervise the day-to-day management of the BIA or be precluded from recovery for mismanagement. Rather, when the Tribe is, in fact, fully informed of its potential claims and is closely involved in and accepts certain management decisions of the trustee, it should be held accountable for failing to act on that knowledge in a timely manner or for taking a position many years later that is contrary to its initial support of the Agency's management decisions.[5]

## C. CONGRESSIONAL DETERMINATION OF THE STATUTE OF LIMITATIONS OUGHT NOT TO AFFECT OR, IN ANY WAY MINIMIZE THE DEFENSES ASSERTED BY THE DEFENDANT

Plaintiff broadly asserts that the application of the doctrines of laches and estoppel should be precluded because its claims do not accrue under the Appropriation Acts until an accounting has been rendered. This argument is without merit because it hinges upon Plaintiff's attempt to equate the defense of a statute of limitations to the defense of laches. The two are, necessarily, separate and distinct forms of relief. Furthermore, if Congress meant to bar the Government's use of laches or estoppel, it could and would have done so in the Appropriations Acts.

The defense of a statute of limitations and the defense of laches or estoppel are inherently distinct. The most notable distinction between these is the function of each remedy. A statute of limitations is a jurisdictional constraint established by Congress. *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1578 (Fed. Cir. 1988) (statute of limitations "is a jurisdictional requirement attached by Congress as a condition of the government's waiver of

---

[5] Plaintiff's assertions related to "unclean hands" would eviscerate the doctrine of laches, which is a well-established defense in trust law.

sovereign immunity"). In this instance, the statute of limitations at 28 U.S.C. § 2501 expressly limits the Government's waiver of sovereign immunity. 28 U.S.C. § 2501. Comparatively, the doctrines of laches and estoppel are equitable remedies concerned with the prejudice to a defendant that results from plaintiff's delayed assertion of claim.

Additionally, if Congress meant to bar the Government's use of laches or estoppel by virtue of the Appropriations Act, it could and would have done so. Indeed, Congress in the Indian Claims Commission Act ("ICCA") authorized the Commission to hear and determine all claims accruing before August 13, 1946, "on behalf of any Indian tribe, band or other identifiable group of American Indians**,** notwithstanding any statute of *limitations or laches*. . . ." ICCA, 60 Stat. 1049, 28 U.S.C. §§ 70, 70a (1946) (emphasis added). This shows that Congress distinguishes between statute of limitations and laches and that, where Congress wants to make exceptions from defenses for Indians, it will so provide. *See Capoeman*, 194 Ct. Cl. at 676; *see also Creek Nation v. United States*, 168 Ct. Cl. 483, 494 (1964) (it is true that Congress fully intended to reserve to the United States all defenses to a claim by the Indians except laches and statute of limitations); *Blackfeet & Gros Ventre Tribes of Indians v. United States*, 127 Ct. Cl. 807, 817-18 (1954) (the intent of § 70a of the ICCA was to reserve to the United States all defenses except the statute of limitations or laches).

A similar exception is noticeably absent from the Appropriations Acts. Instead, the plain language of the Appropriations Acts only provides that "the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss." *See* 2004 Interior and

Related Agencies Appropriations Act, Pub. L. No. 108-447, 118 Stat. 2809.

Plaintiff also attempts to assert that there exists a presumption against the application of laches against Indians. Plf.'s Mem. at 13. However, in one instance, this Court conducted a careful meticulous analysis of law on this issue and determined that "[i]n the absence of statute, Indian litigants are subject to the same defenses as other people, . . . they may lose their rights because of laches, and the running of the statute of limitations." *Capoeman v. United States*, 194 Ct. Cl. at 676. Moreover, in refusing to preclude a statute of limitations defense, in part, because the Tucker Act did not provide an exception similar to that found in the section 70a of the Indian Claims Commission Act, the Court must not interpret the statute of limitation to expand the Court's jurisdiction. *Id.*

As a result, the law does not support Plaintiff's assertion that an accrual of the statute of limitations precludes application of the defense of laches or estoppel. Accordingly, Plaintiff's Motion should be rejected.

**D. THE EVIDENCE RELATED TO DEFENDANT'S LACHES AND ESTOPPEL DEFENSES SHOULD NOT BE EXCLUDED BECAUSE IT ALSO RELATES TO DEFENDANT'S DEFENSE THAT THE GOVERNMENT ACTED REASONABLY IN DISCHARGING ITS TRUST DUTIES**

Should the Court determine that Defendant is excluded from pursuing its laches and estoppel claims, Defendant should still be allowed to rely on evidence related to the Tribe's involvement in the management of the Osage mineral estate. This evidence is relevant to whether the Bureau of Indian Affairs acted reasonably in the discharge of its trust duties. For example, during the price control era, evidence related to the Tribe's acceptance or acknowledgment that the Tribe's royalties were based on regulated prices is pertinent to whether Defendant understood that it was correctly construing the Osage regulations in light of the

statutory mandates related to price controls. Similarly, the Tribe's communications related to the fact that royalty prices took into account gravity adjustments is pertinent to whether the Osage Agency properly construed the regulations as allowing such adjustments. Further, the Tribe's communications related to the fact that royalties should be based on prices that lessees could receive is relevant to whether the Agency's interpretations and implementation of the Osage regulations was in the interest of the Tribe and therefore did not constitute breaches of its duties.

## III. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion to Strike Defendant's Affirmative Defenses of Estoppel and Laches. If the Court grants this portion of Plaintiff's motion, it should nevertheless deny the motion to exclude evidence supporting such defenses.

Respectfully Submitted, this Ninth day of January, 2006.

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

*s/ Brett D. Burton*
BRETT D. BURTON
United Sates Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212

Counsel of Record for Defendant

*s/ Martin J. LaLonde*
MARTIN J. LALONDE
KEVIN WEBB
United States Department of Justice

Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0247
Fax: (202) 353-2021

Attorneys for Defendant

OF COUNSEL:

Elisabeth Brandon
Brenda Riel
Attorneys
Office of the Solicitor
Division of Indian Affairs
U.S. Department of the Interior
MS 6456
Washington, D. C. 20240

Telephone: (202) 208-4218
Fax: (202) 208-3490

Teresa E. Dawson
Senior Counsel
Office of Chief Counsel
Financial Management Services
U.S. Department of the Treasury
401 14th Street, S.W.
Room 552A
Washington, D.C. 20227
Telephone: (202) 874-6877
Fax: (202) 874-6627