# EXHIBIT 2

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | No. 00-169L<br>Jude Emily C. Hewitt |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**NOTICE OF TAKING OF DEPOSITION UPON ORAL EXAMINATION AND REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to RCFC 26(b), 28, and 30, Defendant will depose the Osage Nation and/or Tribe of Indians of Oklahoma ("Tribe") at the Osage Agency in Pawhuska, Oklahoma, on **Monday, August 29, 2005, commencing at 9:00 am**, unless another time and place is agreed upon by counsel for the parties, and will continue day to day until completed.

Said deposition will be taken before a notary public or some other officer authorized to administer oaths. Unless otherwise agreed, testimony shall be recorded by stenographic and sound-and-visual means.

Pursuant to RCFC 30(b)(5) and 34, the deponent is requested to produce those documents referenced below to Defendant's counsel **no later than August 24, 2005**.

Pursuant to RCFC 30(b)(6), the Tribe is required to designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and to set

forth for each person designated the matter or matters on which the person will testify. The matters on which examination is requested are as follows:

**DEFINITIONS**

As used herein, the following terms shall have the following meanings:

1. "Document" is used in the broadest sense of that term, and includes, but is not limited to, any printed, typewritten, or handwritten matter, including the original and all drafts prepared in connection with such document. "Document" includes without limitation, letters, memoranda, telegrams, cables, facsimiles, electronic mail, reports, charts, business records, personal records, maps, pamphlets, handwritten notes, minutes of meetings, notes of meetings or conversations, catalogues, written agreements, and any carbon or photostatic copies of such material if Plaintiff does not have control or possession of the original. "Document" also includes any "writing" as that term is defined in Rule 1001(1) of the Federal Rules of Evidence. "Document" also includes information stored by a computer or on a computer disk, or other form of computer memory storage, as well as any electronic recording, tape recording, photograph, video, film, microfilm, microfiche, or similar recording of words, images, sounds, pictures, or information of any kind. "Document" also includes any and all amendments or supplements to any of the foregoing, whether prepared by Plaintiff or any other person.

2. "Communication" shall mean or refer to every manner or means of disclosure, transfer or exchange of information, whether oral, electronic, by document or otherwise, and whether face-to-face, in a meeting, by telephone, mail, electronic mail, personal delivery or otherwise, whether or not transmitted. "Oral communication" means and includes any face-to-face conversation, meeting, conference, telephone conversation, telephone conference, and

communication by the use of any medium other than writing.

3. A request for the identification and description of a document shall be deemed to include a request for the following information with respect to that document:

(a) The title of the document with sufficient particularity to enable the same to be identified;

(b) The nature of the document (*i.e.*, contract, letter, etc.);

(c) The date of the document;

(d) The date the document was executed, if different from the date it bears;

(e) The identification, in the manner described in paragraph 8 below, of each person or entity to whom the document is addressed or to whom copies were sent;

(f) The identification, in the manner described in paragraph 8 below, of each person who signed the document or over whose name it was issued;

(g) Any file number or other identifying information used in connection with the document;

(h) The physical description of the document, including the number of pages;

(i) The present location of the original of the document;

(j) The identification, in the manner set forth in paragraph 8 below, of all persons having possession, custody, or control of the original of the document;

(k) The location of copies of the document; and

(l) The identification, in the manner set forth in paragraph 8 below, of any and all person(s) who have possession or control of copies of the document.

4. All of the above subparts except i, j, k, and l may be satisfied by attaching a legible copy of the document to your answers hereto, and labeling each such copy with the number of each interrogatory to which it is responsive.

5. A request for the identification and description of an oral communication shall be deemed to include a request for the following information with respect to that oral communication:

(a) The identification, in the manner described in paragraph 8 below, of each person who participated in or heard any part of said communication;

(b) The date of the communication;

(c) The medium used for such communication (*i.e.*, in person, by telephone, etc.);

(d) The substance of what was said by each person participating in the communication; and

(e) The identification, in the manner described in paragraph 6 above, of each document that records, summarizes, confirms or in any manner refers to the communication.

6. A request for the identification of a person or entity shall be deemed to include a request for the following information with respect to that person or entity:

(a) The person or entity's full name;

(b) The person or entity's address (business or residence);

(c) The person or entity's telephone number (business or residence);

(d) The person's present employer and occupation or business; and

(e) The person's employer and occupation or business on the date on which the facts or transactions referred to occurred and the capacity in which he or she was then serving.

7. As used herein, "communication" means an oral, graphic, demonstrative, telephonic, electronic, written or like conveyance of information, including documents.

8. "Relating to" or "relates to" means concerning, constituting, describing, containing, recording, referring to, dealing with, consisting of, or in any way pertaining to, in whole or in part, information about the subject matter addressed by the document request.

9. "Plaintiff" means the Osage Nation and/or Tribe of Indians of Oklahoma, and unless otherwise stated, also includes the Osage Tribal Council, the Osage National Council, and all other officials, employees, agents or representatives, who could reasonably be expected to have personal knowledge that would affect the completeness and accuracy of responses made to these document requests.

10. "Defendant" means the United States Government.

11. The words "United States" and "Government" include all agencies, subdivisions, present and former officers, employees, agents, and/or anyone acting for or upon its behalf, who could reasonably be expected to have personal knowledge that would affect the completeness and accuracy of responses made to these requests.

12. "Agent." Whenever reference is made or information is sought with respect to any entity such as a Tribe or organization, that can only act through individual agents, reference

to the acts of such entity is intended to include all acts taken by its agents, directors, officers, employees, members who have or claim to have authority to act on behalf of such entity.

13. "Representative" refers to any person (as defined herein) who acts, has at any time acted, has at any time by and person been requested or solicited to act, or has purported to act at the request of, or for the benefit of, or on behalf of any person, including without limitation all agents acting on behalf of their principals.

14. "Person" means and refers to any natural person, Tribe, firm, association, partnership, company, joint venture, corporation, tribal agency, governmental agency (whether federal, state, or local), or organization, estate, trust, receiver, syndicate, or any other group or combination acting as a unit or affiliated entity. Whenever reference is made herein to any act by a person, such reference is intended to, and does, include reference to any act or conduct performed by such person's agents, employees, and/or representatives unless a contrary intention is expressed.

15. "Osage" means the Osage Nation and/or Tribe of Indians of Oklahoma and any other derivation, entity, and each merged, consolidated, and acquired predecessor or successor, parent, subsidiary, division, and affiliate, each past and present officer, elected or appointed official, employee, agent, servant, attorney, and representative of each such entity or individual, and any other person in active concert or participation with each such entity or individual. This term includes any and all spelling derivations of the term

16. "Osage Tribal Council" means all governing bodies elected to act on behalf of the Osage Tribe and or Osage Nation, including but not limited to, any and all committees thereof and other bodies elected or appointed under the same name or a different name to serve the same

or a similar purpose. This term includes each and every elected official which constitutes the governing body and all administrative personnel whether or not elected. This term also includes the former Osage National Council.

17. "The Leases," "Five Leases," or "Tranche One Leases" refers to those leases identified at Page 1 of the Tribe's Statement of Claims, specifically those leases commonly known as the North Burbank Unit, North Avant Unit, Stanley Stringer Unit, Osage Hominy Unit, and the East Hardy Unit.

18. "The time periods" or "Tranche One time periods" refers to January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990.

19. "Tranche One" refers to the first phase of this litigation set for Trial in February 2006, as defined in the Court's April 15, 2005, and June 20, 2005, Orders and the Tribe's Statement of Claims.

20. "Tribe" or "Tribal" refers to the Osage Nation and/or Tribe of Indians of Oklahoma, the Osage Tribal Council, and all officials, officers, employees, agents, or representatives of the Tribe.

21. "The Tribe's Statement of Claims" refers to the Osage Nation's Statement of Trust Fund Mismanagement Claims for Tranche One filed on May 13, 2005.

22. "Tribal trust funds" means funds held in trust by the United States for the benefit of the Osage Nation and/or Tribe of Indians of Oklahoma or which are the subject of Plaintiff's claims in this suit.

23. References to the singular shall include the plural and references to the plural shall include the singular. "And," as well as "or," shall be construed as either disjunctive or

conjunctive, as necessary to bring within the scope of a request all responses which might otherwise be construed as possibly outside its scope. "Each" shall be construed to include the word "every," and "every" shall be construed to include the word "each." "Any" shall be construed to include the word "all," and "all" shall be construed to include the word "any."

24. As used herein, the singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun shall be considered to include also within its meaning the feminine form of the pronoun so used, and vice versa; and the use of any tense of any verb shall be considered to include also within its meaning all other tenses of the verb so used.

## TOPICS TO BE COVERED

The following topics are to be covered by deponent(s) designated by the Tribe pursuant to RCFC 30(b)(6). Unless specified otherwise below, these topics are limited to Tranche One time periods and Tranche One leases.

1. Any and all Tribal communications with Defendant, oil and/or gas producers, or oil and/or gas companies, relating to the computation, calculation, and valuation of any and all royalties on crude oil produced during the Tranche One time periods. These communications include any exchange of information between the Tribe and Defendant, oil and/or gas producers, or oil and/or gas companies regarding these topics, including, but not limited to, the following Tribal communications: instructions, directions, limitations, authorizations, requests for information, or subsequent Tribal affirmation, acquiescence, or approval of prior decisions or actions of Defendant regarding these topics.

2. Any and all Tribal communications with Defendant, oil and/or gas producers, or

oil and/or gas companies relating to the calculation of the highest posted price, the highest posted market price, the highest offered price, or the highest bona fide selling price, with respect to crude oil produced during the Tranche One time periods. These communications include any exchange of information between the Tribe and Defendant, oil and/or gas producers, or oil and/or gas companies regarding these topics, including, but not limited to, the following Tribal communications: instructions, directions, limitations, authorizations, requests for information, or subsequent Tribal affirmation, acquiescence, or approval of prior decisions or actions of Defendant regarding these topics.

3. Any and all Tribal communications with Defendant, oil and/or gas producers, or oil and/or gas companies relating to the computation, calculation, and valuation of any and all royalties on natural gas produced during the Tranche One time periods. These communications include any exchange of information between the Tribe, Defendant, oil and/or gas producers, or oil and/or gas companies regarding these topics, including, but not limited to, the following Tribal communications: instructions, directions, limitations, authorizations, requests for information, or subsequent Tribal affirmation, acquiescence, or approval of prior decisions or actions of Defendant regarding these topics.

4. Any and all Tribal communications with Defendant relating to the receipt, collection, handling, deposit, investment[1], distribution (including the quarterly distribution to headright owners and the Gross Production Tax), and accounting of all payments owed to the

[1] The time periods for investments and distributions shall encompass the month of production (Tranche One months) through the month of the next headright distribution following the month of payment for production. These time periods shall include: January through March (1976); May through September (1979); November through March (1980); February through June (1986); July through September (1989); October through December (1990).

Tribe and made and/or received by the Unites States for royalties on crude oil and natural gas produced during the Tranche One time periods. These communications include any exchange of information between the Tribe and Defendant regarding these topics, including, but not limited to, the following Tribal communications to Defendant: instructions, directions, limitations, authorizations, requests for information, or subsequent Tribal affirmation, acquiescence, or approval of prior decisions or actions of Defendant regarding these topics.

5. Any and all Tribal communications with Defendant, oil and/or gas producers, or oil and/or gas companies relating to the volume of crude oil and natural gas produced under the Tranche One leases during the Tranche One time periods. These communications include any exchange of information between the Tribe, Defendant, oil and/or gas producers, or oil and/or gas companies regarding these topics, including, but not limited to, the following Tribal communications: instructions, directions, limitations, authorizations, requests for information, or subsequent Tribal affirmation, acquiescence, or approval of prior decisions or actions of Defendant regarding these topics.

6. Any and all audits, studies, reviews, analysis, or accounting, including, but not limited to, annual or monthly audits or recommendations by accountants, conducted by, for, or on behalf of the Tribe, relating to, discussing, or addressing in any way the computation, calculation, valuation, collection, and/or payment of royalties on cruce oil and natural gas produced under the Tranche One leases during the Tranche One months.

7. Any and all audits, studies, reviews, analysis, or accounting, including, but not limited to, annual or monthly audits or recommendations by accountants, conducted by, for, or on behalf of the Tribe, relating to, discussing, or addressing in any way the receipt, collection,

handling, deposit, investment[2], distribution (including the quarterly distribution to headright owners and the Gross Production Tax), and accounting of all payments owed to the Tribe and made and/or received by the Unites States for royalties on crude oil and natural gas produced during the Tranche One time periods.

8. Any and all audits, studies, reviews, or analysis conducted by, for, or on behalf of the Tribe, including, but not limited to, audits or recommendations by engineers, relating to, discussing, or addressing in any way the volume of crude oil and natural gas, including, but not limited to, volume verification, produced under the Trance One leases during the Tranche One months.

9. The names and positions of all Tribal persons involved in[3] calculating, valuing, collecting, handing, depositing, investing, and distributing payments owed to the Tribe and made or received by the United States for royalties on crude oil and natural gas produced under the Tranche One leases during the Tranche One months.

10. The names and positions of all Tribal persons involved in measuring, auditing, or reviewing the volume of crude oil and natural gas, including, but not limited to, volume verification, produced under Tranche One leases during the Tranche One months.

11. The location and identification of the documents requested below, including the

---

[2] The time periods for investments and distributions shall encompass the month of production (Tranche One months) through the month of the next headright distribution following the month of payment for production. These time periods shall include: January through March (1976); May through September (1979); November through March (1980); February through June (1986); July through September (1989); October through December (1990).

[3] "Involved in" includes, but is not limited to, Tribal persons who communicated with Defendant regarding the designated topics; who audited, studied, or reviewed the designated topics; or who carried out some type of oversight over the designated topics.

Tribe's policies and procedures related to the receipt, storage, duplication, and disposition of, the requested documents.

**DOCUMENTS TO BE PRODUCED**

To the extent not previously produced or made available for Defendant's inspection, Defendant requests that the Tribe produce and permit Defendant to inspect and copy each of the following documents that may be in the Tribe's possession, custody or control, or those which are in the possession, custody or control of the Tribe's attorneys, agents or representatives.

1. Any and all documents relating to the designated topics (1 through 11) above, including, but not limited to, Tribal Council minutes and resolutions, account statements, transaction records, guidelines, manuals, regulations, publications, instructions, internal memoranda, preliminary and initial reports, workpapers, and any documents describing or containing discussions, analysis, considerations, comments, deliberations, alternatives, or conclusions relating to topics 1 through 11 above.

2. Any and all documents reviewed in preparation for the above-noticed deposition not previously produced to Defendant

3. Any other personal notes relating to the subject matter of the deponent's testimony, including notes of telephone calls or meetings concerning the potential subject matter of the deponent's testimony not previously produced to Defendant;

4. Any and all documents/records relating to the deponent's employment with the Tribe, including, but not limited to, any audits that the deponent prepared, assisted in preparing, or reviewed during his employment with the Tribe.

Dated: August 8, 2005.

Respectfully submitted,

KELLY A. JOHNSON
Acting Assistant Attorney General

By - MJL

Brett Burton

BRETT D. BURTON
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212
Fax: (202) 353-2021

Counsel of Record for Defendant

OF COUNSEL:
Kevin Webb
Martin J. LaLonde
John H. Martin
U.S. Department of Justice
Environment and Natural Resources Divisions
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663

Stephen Simpson
Attorney
Office of the Solicitor
Division of Indian Affairs
U.S. Department of the Interior
MS 6456
Washington, D. C. 20240
Telephone: (202) 219-1659
Fax: (202) 208-3490

Teresa E. Dawson
Senior Counsel
Office of Chief Counsel
Financial Management Services
U.S. Department of the Treasury
401 14th Street, S.W.
Room 552A
Washington, D.C. 2022714
Telephone: (202) 874-2567
Fax: (202) 874-6627

**CERTIFICATE OF SERVICE**

I hereby certify that on August 8, 2005, a true and correct copy of the foregoing *Notice of Taking of Deposition Upon Oral Examination and Request for Production of Documents,* dated August 8, 2005, was served via e-mail and regular mail to the following:

Wilson Pipestem
Pipestem Law Firm, PC
1333 New Hampshire Avenue, NW
Washington, DC 20036
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Martin J. LaLonde