**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 99-550 L (into which has been consolidated No. 00-169 L) Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | Electronically Filed February 14, 2004 |
| Defendant. | ) | |

**PLAINTIFF OSAGE NATION'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE DEFENDANT'S NEWLY ASSERTED DEFENSES OF ESTOPPEL AND LACHES AND TO EXCLUDE EVIDENCE SUPPORTING SUCH DEFENSES**

## INTRODUCTION

The United States tacitly admits that it failed to plead the defenses of laches or estoppel in this case. The United States offers no equitable reason why a trustee who has never provided an adequate accounting should be allowed, *belatedly*, to estop or raise laches against its beneficiary. For these reasons, the United States' resort to equity should be denied, and the Court should grant the Osage Nation's motion.

## ARGUMENT

### I. BECAUSE THE UNITED STATES HAS NOT PLEADED LACHES OR ESTOPPEL IN THE 169 CASE, IT CANNOT ASSERT SUCH DEFENSES AT TRIAL.

The United States makes no effort to attack the established rule that consolidation does not make defenses pleaded in one case applicable in the other case. *See* Osage Nation's Memorandum of Points and Authorities at 8-9 (citing cases). Pleading laches as a defense to the 550 Case does not make that defense applicable in the 169 Case. The United States' failure to plead laches and estoppel in this case should end the matter.

There are three further reasons why the United States should not be heard to complain that it would be unfair to exclude its belated defenses. First, the Court put to rest any questions about the scope of this case when it defined Tranche One. Second, the United States' claimed inability to plead in a timely manner is contradicted by the United States' own argument that it pursued laches and estoppel in discovery. Third, granting the United States an exception from the rules of pleading would grossly and unfairly prejudice the Osage Nation.

**A. The United States Did Not Raise These Defenses When the Court Defined Tranche One.**

The United States' excuse that it was unaware until very recently that the 169 Case included collection claims is not credible. At the very latest, this Court's definition of Tranche One, and the Osage Nation's subsequent Statement of Claims, should have disabused the United States of any notion that royalty collection claims were in the 550 Case but not the 169 Case. At that point, the United States should have sought to amend its Answer to the 169 Case if it wished to pursue any previously unpleaded defenses. It did not do so and has offered no reason why it was unable to do so.

In fact, as the Court is aware, the United States spent great effort arguing that the collections claims were not in the 169 Case, and it pleaded different defenses in the 169 Case and the 550 Case. After the Court ruled that the collection claims were in the 169 Case, however, the United States did not amend its Answer in the 169 Case to add its laches defense, or any other affirmative defense. Under the rules of notice pleading, this sent the unmistakable signal that the United States would not pursue any defenses not previously pleaded in the 169 Case. It is therefore highly ironic, and not a little unfair, that the United States now argues that defenses it scrupulously kept in separate cases transcend those case boundaries contrary to the rules of pleading.

**B. The United States Had Sufficient Notice of the Collection Claims to Plead Its Defenses in Compliance with the Court's Rules of Procedure.**

The United States seeks to excuse its pleading failure on the ground that it could not have asserted its estoppel and laches defenses until it learned the details of the collection claims in the Osage Nation's expert reports. This argument is unbelievable in light of the United States' arguments that (1) it had pleaded laches in the 550 Case and (2) it was pursuing those defenses through discovery in the 169 Case. The United States cannot have it both ways. The United States cannot have suddenly realized in October 2005 that it needed to assert defenses it had long been pursuing.

Moreover, contrary to the United States' selective citations to the history of the two cases, the royalty collection claims were always part of the 169 Case. The Complaint in the 169 Case alleges:

> The United States has further damaged the Osage and violated its duty under the above laws, more specifically as follows:
>
> . . .
>
> b. Failure to independently reconcile volumes of oil and gas produced with the amount of royalty paid by producers of said oils and gas under Osage oils and gas leases;
>
> c. Failure to obtain the price required to be paid to the Osage for royalty under the terms of said oil and gas leases;
>
> d. Failure to collect the lawful rate of interest on late payments on the royalty proceeds on the sale of oil and/or gas from producers within Osage County.

Complaint, *Osage Nation v. United States*, Case No. 00-169 L at ¶ 21, p. 16-17 (Fed. Cl. filed March 31, 2000). In its First Cause of Action seeking money damages, the Osage Nation further alleged:

> [T]he United States has failed in its duty to properly manage the trust assets of the Osage, including the management of mineral deposits, protection of mineral and royalty attributable to those minerals, including, but not limited to the collection or marshaling of assets . . . .

*Id.* at ¶ 25 at p. 19. The United States could and should have pleaded any defenses it had to those claims when it filed its answer on July 7, 2000, as Rule 8(c) requires. The United States had ample time to do so, given the length of time that this case has been pending.

Even more to the point, the United States did not need to know the precise details of the collection claims in order to assert its defenses. The United States' laches and estoppel defenses rest on an alleged pattern of general knowledge about and consent to Osage Agency royalty collection practices. The argument is generic and is not tied to any specific aspect of the royalty process. That argument would apply (although it would be meritless) to *any* claim that the United States failed to collect the full amount of royalty due.

In any event, even after receiving the Osage Nation's expert reports, the United States still failed to amend its pleadings to assert those defenses. The United States did not indicate that it would assert these defenses when counsel met on December 20, 2005, even though it was obligated to disclose "all contentions as to applicable facts and law, unless previously disclosed." RCFC Appendix A, ¶ 13(c)(3). Instead the United States waited until it filed its Memorandum of Contentions of Fact and Law on January 26, 2006 to reveal its new affirmative defenses.

**C. The Osage Nation Would Be Materially Prejudiced if the United States Were Allowed to Pursue at Trial Its Unpleaded Defenses.**

The United States' assertion of new defenses one month before trial prejudices the Osage Nation. The Osage Nation was entitled to conduct its discovery and investigation in this case on the premise that the United States would abide by the rules of pleading. Had the Osage Nation known that the United States was pursuing estoppel and laches defenses in this case, the Osage Nation would have used depositions of Osage Agency personnel to discover all alleged communications between the Osage Agency and the Osage Nation as well as any reliance thereon by the Osage Agency. The Osage Nation would also have interviewed former Osage

Tribal Council members, staff, and consultants regarding any such communications and reliance. Because the United States did not plead laches or estoppel, the Osage Nation justifiably did not pursue such discovery or investigation.

The United States has not identified any authority allowing defendants to amend pleadings to assert defenses in the circumstances present here, where there has been lengthy delay and new defenses are raised just prior to trial. *See* Osage Nation's Memorandum of Points and Authorities at 6-7 (citing cases prohibiting such amendments). Rather, the United States argues that the Osage Nation had prior notice that the United States would seek to have this case decided on the defenses of laches and estoppel. According to the United States, it provided such notice in its discovery requests. This argument must be rejected.

By definition, nothing in the discovery process could have put the Osage Nation on notice that it would be required to counter defenses of laches or estoppel. That is what pleadings are for. Pursuing discovery on a potential defense is not equal to pleading that defense. Further, to the extent that the United States' discovery efforts revealed its pursuit of any specific defense, they pointed to a statute-of-limitations defense. The United States' inquiries regarding the Osage Nation's supposed affirmation of or acquiescence in the United States' conduct related to the state of Plaintiff's knowledge of its claims, an issue that was the crux of the United States' statute-of-limitations defense. And because the Appropriations Act made the issue of knowledge irrelevant, the Osage Nation reasonably afforded that issue minimal attention in discovery.

The United States should not be allowed to use its properly pleaded statute-of-limitations defense as a Trojan horse for unpleaded defenses of laches and estoppel. If the Court is inclined to allow such defenses to be presented at trial, it would be unfair to proceed to trial without first affording the Osage Nation an opportunity for discovery related to those defenses.

## II. FAILURE TO PROVIDE AN ACCOUNTING IS SUFFICIENT TO BAR ANY RESORT TO EQUITABLE DEFENSES BY A TRUSTEE.

The doctrine of unclean hands states that "he who seeks equity must do equity." *E.g.*, *Tuftco Corp. v. United States*, 614 F.2d 740, 746 (Ct. Cl. 1980). The United States has acted inequitably toward its beneficiary, the Osage Nation. It has not "done equity" to its beneficiary because, as the Court has already found, the United States has failed in its legal duty to provide an accounting.

Contrary to the United States' assertions, the doctrine of unclean hands is not restricted to cases of fraud and deceit. The case cited by the United States, *Melrose Assoc., L.P. v. United States*, 43 Fed. Cl. 124 (1999), does not limit the application of unclean hands to cases involving only fraud or deceit. And the cases cited in the Osage Nation's Memorandum of Points and Authorities demonstrate that the doctrine of unclean hands can encompass a broader variety of egregious conduct than fraud or deceit. "Given . . . defendant's recognition of the assignments [that plaintiff was seeking to enforce], yet its failure to act consistent with their terms, we conclude defendant's invocation of the laches doctrine is not supportable. He who seeks equity must do equity." *Tuftco Corp.*, 614 F.2d at 746.

In the context of a trust relationship, failing to provide an accounting is inherently an inequitable act of concealment because it deprives the beneficiary of information necessary to understand how the trust is being managed and whether the trustee is performing its duty. Particularly in light of the Appropriations Act, breaching a trust by failing to provide an accounting bars the trustee from seeking refuge in equitable defenses.

## III. THE APPROPRIATIONS ACT IMPLIEDLY BARS LACHES AND ESTOPPEL IN THIS CASE.

The United States argues that, because the Appropriations Act mentions only the statute of limitations, and not laches or estoppel, the Act cannot be understood to preclude those

defenses. But a necessary premise of the Appropriations Act is that a beneficiary is entitled to wait until after the trustee has provided an accounting before bringing suit against the trustee for mismanagement. In explicitly precluding assertion of the *legal* defense of limitations because of government misconduct as trustee, Congress most certainly did not mean to leave open equitable defenses such as laches or estoppel.

Arguing to the contrary, the United States cites to the Indian Claims Commission Act and cases construing that Act. But the language in that Act was materially different from the Appropriations Act because it left nothing to implication:

> All claims hereunder may be heard and determined by the Commission notwithstanding any statute of limitations or laches, but *all other defenses shall be available to the United States.*

60 Stat. 1049 (1946) (emphasis added). The United States omitted the italicized language. This language makes it clear that Congress in the Indian Claims Commission Act intended to address explicitly *all* defenses and to bar *only* the defenses of statute of limitation and laches. *See Blackfeet & Gros Ventre Tribes*, 127 Ct. Cl. 807, 814-818 (1954) (emphasizing the italicized clause and reading the Indian Claims Commission Act as allowing a res judicata defense).

By contrast, neither the Appropriations Act nor its legislative history reflects an explicit Congressional determination with respect to defenses other than statute of limitations. Thus, the Appropriations Act may and should be construed to bar defenses that would eviscerate the purpose of the Appropriations Act. The United States has offered no rationale for construing the statute as permitting an equitable bar to tribal trust claims before the required accounting has been provided. Rather, the legislative history of the Appropriations Act reveals a broad Congressional intent to *allow* tribal trust claims to proceed precisely because the United States had failed to provide mandatory accountings, thereby depriving tribes of critical information

about their trusts. H.R. Rep. No. 103-158, at 41 (1993); *Shoshone Indian Tribe of the Wind River Reservation v. United States*, 364 F.3d 1339, 1346 (Fed. Cir. 2004).

**CONCLUSION**

The United States' defenses of laches and estoppel should be stricken and all evidence proffered in support those defenses should be excluded.

Dated this February 14, 2006

Respectfully submitted,

*s/Wilson K. Pipestem*
WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for The Osage Nation