# In the United States Court of Federal Claims

No. 99-550 L
(into which has been consolidated No. 00-169 L)

(E-Filed February 15, 2006)

| | |
|---|---|
| THE OSAGE TRIBE OF INDIANS OF OKLAHOMA, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

ORDER

Defendant is directed to provide to the court two courtesy copies of its Motion for Leave to File Supplement, etc. at or before 1:30 p.m. EST today, Wednesday, Feb. 15, 2006. The courtesy copies shall be annotated to make clear exactly which pages are proposed to be admitted as the additional exhibits and what the proposed exhibit number is for each document. A simultaneous delivery of an additional courtesy copy shall be made to plaintiff.

The parties are urged to contact the court at any time when they believe the involvement of the court will help to secure the just, speedy and inexpensive determination of this action. See RCFC 1.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge

Attachment:

Osage Tribe of Indians v. United States, 99-550 L
(into which has been consolidated 00-169 L)

PRETRIAL AGENDA
February 16, 2006

1. Progress Toward Fact Stipulations
   a. Report from Parties

2. Witnesses/Witness Lists
   a. Witness Lists
   b. Pl.'s Motion to Present Substantive Evidence by Deposition
   c. Def.'s Motion for Leave to Present Substantive Evidence by Deposition
   d. Def.'s 2d Motion for Leave to Present Substantive Evidence by Deposition
   e. Fed. R. Evid. 615 (Exclusion of Witnesses)

3. Exhibits/Exhibit Lists
   a. Exhibit Lists, Joint Exhibits (DX, PX JX)
   b. Use of Exhibits at Trial
   c. Four Copies of Exhibits at Trial (Pl., Def., Ct., Witness/Reporter)
   d. Technology Requirements

4. Motions in Limine and Motions to Exclude
   a. Pl.'s Motion to Exclude Documents and Testimony for Violations of the Court's Scheduling and Discovery Orders
      i. If defendant's expert witnesses were timely identified and their expert reports were timely filed, why isn't supplementation of their reports acceptable under RCFC 26(e)?
      ii. Was plaintiff unaware of the IBIA case and did defendant's initial and/or supplementary disclosures fail to identify this category of documents and its location as required under RCFC 26(a)(1)(B) and

RCFC 26 (e)(1)? Did defendant refuse plaintiff's request for production for documents that would have led to plaintiff's timely discovery of the possible relevance of the challenged documents?

b. Def.'s Motion in Limine to Preclude Plaintiff from Challenging Interior's Interpretation of Osage Regs in Okie Crude Co. v. Muscogee Area Director

i. Deference to agency interpretation of its own regulations may be due where the interpretation is consistent with the plain meaning of the statute or regulation.

ii. Was the IBIA decision restricted to the specific facts of the forward contracting scheme introduced by Farmland Industries in 1990?

iii. Whether the IBIA decision had retroactive application and, if so, was the decision applicable to the 1974 regulations?

iv. In explanation of the proposed revision in 1994, the Department of Interior stated in the Federal Register that "[t]he Bureau of Indian Affairs has interpreted that language to mean that when a higher price is offered and paid for crude oil in Osage County, that price shall be used for royalty computation for all oil of the same quality sold in the County. However, there is reason to believe that this interpretation has discouraged purchasers from offering bonus prices." 58 FR 59142 (Nov. 3, 1993). The Department of the Interior acknowledged that, by eliminating consideration of the offered price in setting royalty value, "[the] rule change removes the existing disincentive to purchasers to remain in Osage County resulting from bonus payments paid to some producers but not all." 59 FR 22104, April 28, 1994. The IBIA decision in Okie Crude may have prompted the Department to make the rule change but, prior to the publication of the final rule in the Federal Register, the agency interpretation remained that of the BIA.

c. Pl.'s Mot. to Strike Def.'s Newly Asserted Defenses of Estoppel & Laches and to Exclude Evidence Supporting Such Defenses.

5. Trial Schedule

a. Review/Reconciliation of Parties' Proposed Schedule of Witnesses

b. Opening and closing arguments

c. Post Trial Briefing

i. Opening Briefs: April 20, 2006. 50 pages max. Simultaneous filing.

ii. Response Briefs: May 4, 2006. 20 pages max. Simultaneous filing.

6. Identification/Discussion of Issues of Fact and/or Law Identified in Pretrial Memoranda

a. Determination of Lease Payments

i. Legal interpretation of the terms "actual selling price," "highest posted price," and "offered price" in 25 C.F.R. §§ 183.11 and 226.11.

(1) Discretion is accorded an agency's interpretation of its own regulations. Was the government's interpretation of these terms reasonable or arbitrary and capricious?

(2) What constitutes "agency interpretation?"

ii. Whether price caps established under the Emergency Petroleum Allocation Act (EPAA) were applicable to royalty values established for royalty payments on Osage leases.

(1) Did the EPAA expressly repeal or defer application of statutes and regulations related to other oil and gas pricing practices?

(2) Were actual selling, posted or offered prices higher than EPAA capped prices?

iii. Whether the term "highest posted price" was properly construed to permit gravity reductions in the price or other forms of price differential calculations.

(1) In a self-reporting system, could lessees be reasonably relied on to introduce hard-to-verify differentials in pricing, e.g., gravity reductions? What verification measures were implemented to insure accurate reporting?

iv. Whether the U.S. had discretion in imposing late fees when lessees were not in compliance with Osage regulations.

b. Standard of Care Applied to Government Actions in Collecting Moneys Due the Osage Tribe as Royalty Payments

i. Whether the agency standard of reasonable or arbitrary and capricious action applies to collection duties or, alternatively, whether the function is that of a trustee and therefore the standard is that of a reasonably prudent person with the duties of a trustee in the circumstances.

(1) In tort law, the standard of care will reflect the special knowledge and experience of the holder of the duty, e.g., that of a certified oncological surgeon rather than of a G.P. Here, the expertise of government in oil and gas administration may

come into play in setting the standard of care. Would it be useful to compare collection procedures under FOGRMA with those adopted under the Osage regulations?

ii. Whether verification measures were adequate under either standard of care?

c. Standard of Care Applied to Government in Investing Osage Trust Funds

i. Whether government management of trust funds is an agency or trustee duty.

(1) With respect to the flow of money from the point of collection to the actual disbursement of funds (i.e., when recipients cash the checks), some actions may be more of an agency character, e.g., depositing and disbursing funds, while others are clearly of a trust character, e.g., investment choices. This distinction is reflected as well in the statutory scheme. The court is unaware of any Indian or trust fund-specific statutes that address the timing of fund deposits or the handling of funds at the point of disbursement and after, with the exception of provisions relating to the deposit of funds in IIM accounts. Provisions regarding the timing of fund deposits and the handling of funds at the point of disbursement and after seem to be captured under other statutes general to the operations of the Treasury, such as CEBA. Indian and trust fund-specific statutes do exist, however, to govern the investment of Indian funds.

ii. Whether government-wide standards for receipt and deposit of funds apply to Osage royalty payments.

(1) This may depend on whether receipt and deposit of funds are viewed as more of an agency activity or a trust activity.

iii. Whether the government's investment practices complied fully with the Indian investment statutes, 25 U.S.C. §§ 161a and 162a.

iv. Whether the government's investment practices were consistent with the actions of a reasonably prudent investor with the duties of a trustee in the circumstances.

v. Whether government's disbursement practices were an agency or trustee activity.

(1) If an agency action, were government-wide formal procedures followed? For example, how did disbursement practices compare to disbursement practices for social security payments?

(2) Did Treasury benefit from the availability of trust funds during the period from withdrawal for disbursement to the time when checks cashed or cancelled?

(3) If disbursement practices involve trust responsibilities, were the practices used reasonably prudent given the quarterly disbursement system and check return rates?