# EXHIBIT 1
# Part 2

EXAMPLES FOR THE DISCUSSION OF
THE CLAUSE
"LIKELY TO HAVE A DIRECT AND PREDICTABLE EFFECT"

I. A Department of the Interior employee owns undeveloped private land. This employee's duties require her to write regulations about royalty fees owed to the Government by oil, gas and coal companies that lease Federal land to extract minerals.

Situations:

a. During the time the regulations are being written and published, the employee's private land remains undeveloped and there is no existing agreement with anyone to lease the land.

b. During the time the regulations are being written and published, the employee has leased her private land to Mobil Oil Company. The company has not begun to drill on the land. However, the employee does receive quarterly rental payments.

c. During the time the regulations are being written and published, the employee receives royalty payments from the Mobil Oil Company for oil that is extracted from her private land.

d. During the time the regulations are being written and published, the employee is elected to be a Director of the National Petroleum Institute. This non-profit, tax exempt Institute has a membership that consists of individuals and company representatives who work together to enhance the energy industry in the United States. The employee has been a member of the Institute for several years.

e. Assume the same facts as in item (d) except, the employee is elected to be a Director of the Institute after the regulations have been fully implemented. The employee does not work on programs that involve the implementation of the regulations. She is however, required to consider any problems created by the regulations and make recommendations about any revisions that may be needed.

f. During the time the regulations are being written and published, the employee sells her private land and invests the proceeds in stock. The stock purchased is Mobil Oil, Exxon, Phillips Petroleum, Bethlehem Steel and Occidental Petroleum.

Would your answer for item (f) be different if the employee sold her land and purchased the stock interests after the regulations were issued and in effect?

"EXAMPLES - CONTINUED"

II. A Department of the Interior Communications Specialist, is partners with a neighbor of his in a florist shop business. The employee's partner is also a member of another partnership called Consul Services. The employee has no interest in Consul Services but he does have knowledge of his partner's interest. Consul Services provides consultant services to private and Federal agencies on the integration of computer and telecommunications systems. The employee is not a procurement officer. His responsibilities do require him to give his advice frequently on telecommunications and computer purchases within his bureau.

Situations:

a. The employee is asked to provide advice on how to write a solicitation for bids for a private firm to study the Bureau's telecommunications and computer systems for better and more efficient integration. Consul Services is likely to make a bid, they have bid on such offerings in the past. Can the employee be involved?

b. The contract referred to in item (a) is awarded to Consul Services without the employee's involvement. The employee is asked to act as the bureau's contract representative to Consul Services. As contract representative the employee will be expected to advise management about the progress made by Consul Services and about the findings and recommendations Consul Services makes. Can the employee act in this capacity?

III. A Bureau of Indian Affairs employee is a member of the XYZ Tribe of Indians. As a tribal member the employee shares in per capita distributions that might be made by the tribe as a result of tribal business operations.

Situations:

a. The employee is Area Director of the Area that has responsibility for the XYZ tribe. A policy question concerning the delivery of water to the XYZ tribe over Federal lands that are adjacent to tribal lands needs to be decided by the Assistant Secretary - Indian Affairs. While the tribe does not need this water for its survival, the supply of this extra water will benefit all tribal members and tribal businesses. The Area Director is expected to provide the Assistant Secretary with a recommendation. However, significant environmental and archaeological damage will occur if water is diverted over the proposed course. Can the Area Director be involved?

b. The employee works at an Area Office that does not have responsibility for the XYZ tribe. His job involves leasing Indian lands administered by the Department to private timber companies. One of the timber companies is owned by a member of the XYZ tribe who now lives and works in the area. Can the employee be involved?

"EXAMPLES - CONTINUED"

c. The employee involved works in the Bureau's Washington Office. He is given the responsibility to revise regulations that will govern the activities of companies that lease Indian lands administered by the Department of the Interior. The regulations will affect all Indian tribes that share in royalties from such operations including the XYZ tribe. Can the employee be involved?

IV. A Department employee's job is to monitor the compliance of industry with the laws and regulations administered by her agency. One of the firms she is scheduled to monitor has just employed her husband in their marketing division. Although he will not participate in the firm's operations that are monitored by his wife, he may be required to consider these matters in the development of market strategies. Her husband receives a set annual salary and does not participate in any stock option plans. Neither the employee or her husband own any stocks.

Situations:

a. As a result of a recent inspection, the employee cited her husband's company for several violations of Federal regulations. The cost to correct the violations is significant. Can the employee continue to do these investigations?

b. As an inspector, the employee is continually asked to render advice on how the regulations and monitoring policies can be improved. Her advice can, if adopted, have a direct effect on all companies that are members of the industry. Can she continue to render such advice?

c. On one recent visit, officials at her husband's firm offered the employee a job. She would be the company's liaison to Federal agencies on program operations that are regulated by the Federal Government. She expressed a sincere interest in the job and told them so. She was invited for an interview the next week. Can the employee continue to do the monitoring of this firm for the Federal Government?

d. Recently, the employee's parents gave her minor child ten shares of stock in the firm where her husband works. The stock is worth $500. Does this make a difference in whether she can continue to do investigations of her husband's firm?

If it was 1000 shares of stock worth $25,000 would your answer be different?

similarly situated parties.[2]

According to your letter, your present inquiry is occasioned by advice received from the Office of Government Ethics (OGE) to the effect that section 208(a) bars an employee's participation in any sort of governmental activity, including rulemaking and general policy deliberations, that would have a "direct and predictable effect" on the employee's financial interest. You referred to a published opinion of this Office, 2 Op. O.L.C. 151 (1978)("1978 OLC opinion") as a possible source of OGE's interpretation. This opinion concluded that section 208(a) "applies to any discrete or identifiable decision, recommendation, or other matter even though its outcome may have a rather broad impact," including "rule-making proceedings or advisory committee deliberations of general applicability." 2 Op. O.L.C. at 155.[3] Your letter asked that we "review and clarify" the conclusion of the 1978 opinion on the applicability of section 208 to "general rulemakings, legislation, and general policy."

We have carefully reviewed the text and legislative history of section 208 in light of the concerns expressed in your letter. For reasons set forth more fully below, we endorse the general legal conclusion of the 1978 OLC opinion respecting the potential applicability of section 208 to rulemaking and other governmental actions of general applicability. We note, however, that the effects of this interpretation are tempered by the "direct and predictable effect" requirement that has been read into section 208(a) from the time of its enactment. The availability of an exemption from the disqualification requirement under section 208(b) further mitigates the statute's potentially far-reaching impact.

---

[2] It is not entirely clear from your letter whether your agency's position is that section 208 is never applicable in the context of rulemaking and other such "general" governmental activities, or that its applicability is determined on a case-by-case basis. The hypothetical examples cited on page 2 of your letter suggest that you believe that section 208 may be applicable where a rulemaking will "immediately" and "uniquely" affect only a few private parties.

[3] This opinion, dated June 29, 1978, was prepared in response to an inquiry from the Chief Counsel of the Food and Drug Administration regarding the scope of the term "particular matter" in connection with the activities of persons from the private sector on advisory committees of the FDA. Some members of the advisory committees were employed by pharmaceutical companies, or by universities engaged in research for such companies. The committees were employed by the FDA to advise in matters that involved segments of the regulated industry as a whole rather than particular products or companies.

I. Scope of the Term "Particular Matter"

A. Section 208 and its Legislative History

Under section 208(a), a government official must disqualify himself from acting in any "judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest or other particular matter" that might affect his private financial interest. Focusing on the words of the statutory text alone, it is not clear exactly how far Congress meant the term "particular matter" to extend. While the plain meaning of the phrase "particular matter" may easily embrace rulemaking and general policy making, it is true that the specific proceedings enumerated in section 208(a) all suggest the likely involvement of a numerically limited class of affected interests. This does not, however, necessarily decide the scope of the catch-all final category of "other particular matter[s]."

Turning to the legislative history, it becomes apparent that the adjective "particular" was not intended to limit the statute's reach in terms of the number of parties or entities that might be affected by a matter, or the peculiarity of the matter's effect on particular parties. Nor was this term otherwise intended to preclude or limit application of the statute to certain kinds of governmental proceedings. On the contrary, the legislative history indicates that Congress intended the disqualification requirement in section 208 to apply to all governmental proceedings and actions.

The prohibition on government officials' acting in matters affecting a personal financial interest was enacted in its present form as part of the general restructuring of the conflict of interest laws that took effect in January 1963. See Pub. L. No. 87-849, 76 Stat. 1119 (1962). Prior to that time, the prohibition was limited to "the transaction of business with" a nongovernmental business entity in which the official had a pecuniary interest. See 18 U.S.C. 434 (1958 ed.).[4] This prohibition was originally enacted in 1863 in an environment of

---

[4] Section 434 provided:

> Whoever, being an officer, agent or member of, or directly or indirectly interested in the pecuniary profits or contracts of any corporation, joint-stock company, or association, or of any firm or partnership, or other business entity, is employed or acts as an officer or agent of the United States for the transaction of business with such business entity, shall be fined not more than $2,000 or imprisoned not more than two years, or both.

wartime procurement frauds, and was intended to curb government officials' transacting business on behalf of the United States with any business entity in which they had a financial interest. See Manning, Federal Conflict of Interest Law 110 (1964).

The prohibition enacted in section 208 was much broader than that contained in section 434. The legislative history indicates that Congress intended to "abandon[] the limiting concept of the 'transaction of business'" and to expand the statute to "embrace[] any participation on behalf of the Government in a matter in which the employee has an outside financial interest . . . ." S. Rep. No. 2213, 87th Cong., 2d Sess. 13 (1962). See also H.R. Rep. No. 748, 87th Cong., 1st Sess. 13 (1961).

In the conflict of interest legislation originally introduced in April 1961 by the Kennedy administration, the requirement of disqualification in the event of a financial interest was to apply in connection with "a transaction involving the Government." See 107 Cong. Rec. 6835, 6839 (1961). This phrase was defined elsewhere in the administration's bill to include "any proceeding, application, request for a ruling or other determination, contract, claim, case or other particular matter." Id.

The phrase "transaction involving the government" and its definition were borrowed from model legislation prepared by the Association of the Bar of the City of New York, whose 1960 Report, "Conflict of Interest and Federal Service," was acknowledged as one of the most important influences in the recodification of the federal conflict of interest laws. This Report made clear that the phrase "transaction involving the government" was intended to comprehend "all federal executive action."[5]

In the bill reported out of the House Judiciary Committee, the phrase "transaction involving the government" was replaced by the enumeration of proceedings originally contained in the definition section of the administration's bill. According to the administration's analysis of the House bill, this enumeration was intended to be "comprehensive of all matters that come before

---

5 See Report of the Association of the Bar of the City of New York at 198-99 (1960)(hereinafter, New York City Bar Report):

> An effective conflict of interest rule on disqualification must reach out to compel disqualification of the interested official not only in respect of business transactions with business entities, but in respect of all federal executive action that substantially affects his personal economic interests . . . .

a Federal department or agency." Hearings on Federal Conflict of Interest Legislation before the Antitrust Subcommittee of the House Judiciary Committee, 87th Cong., 1st Sess. 38 (1961) (analysis submitted by Assistant Attorney General Katzenbach, Office of Legal Counsel). The administration's analysis noted that the word "particular" was included as a modifier of "matter" to "emphasize that the restriction applies to a specific case or matter and not to a general area of activity." Id. Section 208(a) was described as barring "almost any type of significant participation in Government action in the consequences of which [an official] has a substantial economic interest." Id. at 41.

B. The Term "Particular Matter" in the Statutory Scheme

When the term "particular matter" in section 208 is examined in the context of the statutory scheme of the conflict of interest laws as a whole, it becomes even clearer that Congress did not intend to confine its scope to matters affecting only a few parties, or to somehow exclude from section 208's disqualification requirement government actions that have a similar impact on similarly situated parties.

The term "particular matter" is used in five other provisions of the conflicts laws. In two of these, 18 U.S.C. 203(a) and the first paragraph of 18 U.S.C. 205, it appears at the end of a long list of governmental proceedings in which government officials are barred in representing private parties. This list is identical in all relevant respects[6] to that in section 208(a). To our knowledge, no question has ever been raised as to the comprehensive scope of the proceedings named in those statutes. Indeed, we think it would be very difficult to argue that a government employee could be paid to represent a private party before an executive agency in any connection, without raising a question under both of these sections.

The term "particular matter" also appears in 18 U.S.C. 203(c), the second paragraph of 18 U.S.C. 205, and 18 U.S.C. 207. But in these three provisions the term is modified by the phrase "involving a specific party or parties." In contrast to section 203(a) and the first paragraph of section 205, the term thus modified has generally been understood not to include "general rule-making, formulation of general policy or standards, other similar administrative matters, and legislative activities -- none of which typically involve specific parties . . . ." S. Rep. No. 170, 95th Cong., 1st Sess. 48 (1977). See also Memorandum of the Attorney General Regarding

---

6 The list of proceedings in sections 203(a) and 205 does not include the introductory words "judicial or other" that appear in section 208.

Conflict of Interest Provisions of Public Law 87-849, 18 U.S.C. 201, Note.[7]

We think that the presence or absence of the qualifying phrase "involving a specific party or parties" in the conflicts laws is an important indicator of the intended scope of any of these provisions, and are inclined to agree with the statement in the 1978 OLC opinion that "[t]he clear implication is that general rulemaking and the formulation of general policy would be covered in the absence of the reference to specific parties." 1978 OLC opinion at 154.[8] We note that this conclusion appears to be consistent with the longstanding administrative

---

[7] The cited Attorney General's interpretive memorandum, prepared contemporaneously with the passage of the conflicts laws in 1963, stated with respect to the postemployment prohibitions of section 207 that "past participation in or official responsibility for a matter of this kind on behalf of the government does not disqualify a former employee from [subsequently] representing another person in a proceeding which is governed by the rule or other result of the matter." See also Letter from Assistant Attorney General Rehnquist to the Secretary of the Interior, July 14, 1969 (former Interior Department official may represent the Alaskan Federation of Natives before Congress on the general subject of Alaskan native land claims, even though he participated in specific land claim matters while in government service); letter from Deputy Assistant Attorney General Lawton to the Chairman of the Judiciary Committee, Council of the District of Columbia, May 18, 1979 (legislative activities generally will not involve "a specific party or parties" so as to prohibit postemployment representation in connection with the same subject matter).

[8] One of the most authoritative commentators on the 1963 conflicts laws has stated:

> The significance of the phrase 'involving a specific party or parties' must not be dismissed lightly or underestimated. Law 87-849 discriminates with great care in its use of this phrase. Wherever the phrase does appear in the new statute it will be found to reflect a deliberate effort to impose a more limited ban and to narrow the circumstances in which the ban is to operate.

Manning, supra, at 204.

interpretation of the term "particular matter" in section 208.[10]

This is not to say that the word "particular" does not introduce some limiting principle into the statute's coverage. As Assistant Attorney General Katzenbach suggested in his comments on the provisions in the House bill that were eventually enacted, the term was intended to signify that an official need not be disqualified from participating in a "general area of activity" just because he has a financial interest that would be affected by a "specific" matter. See House Hearings at 38, supra.[11] This suggests that section 208's disqualification requirement should be limited, in the phraseology of the 1978 OLC opinion, to the "discrete and indentifiable" matter that affects an official's financial interest, and not extended to related matters that do not have this effect. But this does not mean that the word "particular" categorically excludes certain types of governmental actions from the reach of the statute's disqualification requirement.

## II. Scope of the Term "Financial Interest"

Support for the conclusion that Congress did not intend to exclude whole categories of governmental activities from the prohibition in section 208(a) is found in the legislative history in connection with the definition of a disqualifying "financial interest."

The draft legislation of the Association of the Bar of the city of New York, which as previously noted served in many

---

[10] A Presidential Memorandum dated May 2, 1963, entitled "Preventing Conflicts of Interest on the Part of Special Government Employees" explained the scope of section 208(a) as "not limited to those involving a specific party or parties," but extending to "a matter of any type the outcome of which will have a direct and predictable effect upon the financial interests covered by the section," (emphasis supplied). This memorandum was drafted in this Office, and its substance has now been incorporated at p. 4 of Appendix C, Chapter 735 of the Federal Personnel Manual.

[11] This Office has never had the occasion to consider whether a matter related to one in which the official concededly has a financial interest constitutes the same "particular matter" for purposes of section 208(a). The question of what constitutes the same "particular matter" has, however, been addressed on numerous occasions over the years in the context of the postemployment restrictions of 18 U.S.C. 207(a). See, e.g., Memorandum from Deputy Assistant Attorney General Ulman, to Assistant Attorney General Kauper, April 6, 1976. See also ABA Formal Opinion No. 342 (1975). The resolution of the question in this context depends in large part upon the facts in a given situation.

respects as a model for the bill introduced in the spring 1961, provided that disqualification should be mandatory in the event that a government official had a "direct and substantial economic interest" in a matter. New York City Bar Report at 279. The term "substantial economic interest" was defined to incorporate two specific exceptions: first, an exception for any financial interest of a government employee derived exclusively from his or her government employment; and, second, an exception for the interest of a government employee "solely as a member of the general public, or of any significant economic or other segment of the general public." See New York City Bar Report at 281-82. In any case in which these exceptions did not apply, the only avenue for exemption from the disqualification requirement was a presidential order suspending operation of the statute based on a presidential determination that the national interest in the individual's service outweighed the public interest in disqualification. Id. at 282.

The analogous provisions of the bill introduced by the administration and ultimately enacted into law contained a stricter disqualification requirement, but a more flexible waiver provision. Section 208(a) required disqualification in the event of a "financial interest," a term qualified neither by the word "substantial" nor by any exceptions. Some relief was introduced through the waiver provisions of section 208(b). Under this section, an appointing official could exempt an individual if he determined that the financial interest involved was "not so substantial as to affect the integrity of the services which the Government may expect" from the employee; alternatively, a general exemption might be promulgated by an agency rule in cases where the particular financial interest involved was considered "too remote or too inconsequential to affect the integrity" of

officials' services.[12] These provisions were described in the legislative history as allowing exemption on a case-by-case or class-wide basis in the event that a financial interest was "*de minimis*." See S. Rep. No. 2213, 87th Cong., 2d Sess. 14 (1962).

It would appear from this legislative history that Congress did not intend the term "financial interest" to be qualified by a substantiality test. It also seems fair to infer that Congress did not intend to exclude financial interests arising from federal service and financial interests shared with many others, as had been proposed in the New York City Bar's draft legislation.[13] Instead, the rigor of section 208(a)'s disqualification requirement was to be tempered primarily

---

[12] Section 208(b) provides in pertinent part as follows:

> Subsection (a) hereof shall not apply (1) if the officer or employee first advises the Government official responsible for appointment to his position of the nature and circumstances of the judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter and makes full disclosure of the financial interest and receives in advance a written determination made by such official that the interest is not so substantial as to be deemed likely to affect the integrity of the services which the Government may expect from such officer or employee, or (2) if, by general rule or regulation published in the Federal Register, the financial interest has been exempted from the requirements of clause (1) hereof as being too remote or too inconsequential to affect the integrity of Government officers' or employees' services. . . .

[13] This Office has had occasion in the recent past to consider whether interests arising from federal employment constitute financial interests under section 208. See memorandum from Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, to Richard Willard, Assistant Attorney General, Civil Division, "18 U.S.C. 208 and Participation of Departmental Attorneys in Debt Ceiling Litigation," December 6, 1985. While the situation at issue there did not in the end require resolution of this question, we expressed "doubt" as to the correctness of the conclusion in a prior opinion of this Office that section 208 did not extend to financial interests derived from federal employment, in light of the "plain language" of the statute.

through operation of section 208(b)'s discretionary waiver provision.

Of course, even though Congress did not intend any categorical exceptions to section 208's disqualification requirement, it is still necessary to determine the existence of a disqualifying "financial interest" on a case-by-case basis in light of the all the circumstances. In most situations, this will depend upon the test of proximity reflected in the concept of "direct and predictable effect" that has been read into the statute from the time of its enactment.[14] But this determination does not depend upon the size of the financial interest at stake or the fact that a particular financial interest is one shared generally with many others. While such considerations may be grounds for granting a waiver, under either section 208(b)(1) or section 208(b)(2), they do not determine the statute's applicability in the first instance.

---

14 The "direct and predictable effect" test for determining when a financial interest should give rise to disqualification was announced contemporaneously with the enactment of section 208 in 1963, see Presidential Memorandum "Preventing Conflicts of Interest on the Part of Special Government Employees," May 2, 1963, and has been followed consistently over the ensuing 20 years of administrative interpretation. See, e.g., Memorandum from Assistant Attorney General Rehnquist, Office of Legal Counsel, to the Counsel to the President, December 10, 1970 ("Continued Service as Commissioner of the Federal Power Commission until February 1, 1971"). During this period it has only once been suggested that the term "particular matter" might be similarly limited in scope. In a Memorandum to the Files dated July 28, 1969, then-Assistant Attorney General Rehnquist stated that while there are "obvious limits" to the term "particular matter," the "line marking those limits ought not to be drawn between a matter for adjudication, on the one hand, and a matter relating to rule-making, on the other." The memorandum went on to suggest that

> [i]f a sufficiently small and discreet enough group of persons or entities would be affected by the proposed rule-making, such a proceeding could very well be encompassed within the provisions of section 208. Were the affected groups sufficiently large, the limits of the requirement that the entity have a "financial interest" in the proceeding as well as the limits of the term "particular matter," would doubtless somewhere be reached.

We believe this passage can best be understood as a helpful gloss on the scope of the statutory term "financial interest," rather than as an invitation to introduce flexibility into the definition of a "particular matter."