**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 99-550 L (into which has been consolidated No. 00-169 L) Judge Emily C. Hewitt |
| | ) | Electronically Filed February 22, 2006 |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF OSAGE NATION'S BRIEF ON HEARSAY AND FOUNDATION ISSUES FOR PLAINTIFF'S EXHIBITS 515 AND 86**

Pursuant to the Court's Order dated February 17, 2006 and as directed in the Pretrial Conference on February 16, 2006, Plaintiff Osage Nation respectfully submits this brief on hearsay and foundation issues for Plaintiff's Exhibit 515 and the hearsay issues for Plaintiff's Exhibit 86.

## I. PLAINTIFF'S EXHIBIT 515

Plaintiff's Exhibit 515 is a letter dated October 18, 1996 from Gordon Jackson, Superintendent of the Osage Agency, to the Osage Tribal Council, denying the Osage Nation's request for a division order on an oil lease. Exhibit 515 is filed herewith as Exhibit 1.

### A. Authentication

Pursuant to Federal Rule of Evidence 901(b)(1), a document may be authenticated by the testimony of a witness with knowledge "that a matter is what it is claimed to be." The deposition testimony of Mr. Charles Hurlburt, an employee of the Osage Agency, will be introduced to show that Plaintiff's Exhibit 515 is a letter written by then Superintendent of the Osage Agency Gordon Jackson, and that the signature on the letter is that of Mr. Jackson. Pursuant to FRE

901(b)(1), Mr. Hurlburt's personal identification of the document and Mr. Jackson's signature are sufficient to authenticate the document.

Additionally, FRE 901(b)(7) provides that a document can be authenticated by providing evidence that the document was filed in a public office as authorized by law and that it was produced from the office where items of that nature are filed. This letter was written pursuant to the United States' duty to approve division orders under 25 C.F.R. § 226.14, and was produced by the United States from the files of the Osage Agency. This authenticates the document pursuant to FRE 901(b)(7). *See also* Adv. Comm. Note (b), example 7 (public records are authenticated "by proof of custody, without more.")

**B. Hearsay**

1. The Document Constitutes an Admission by the United States

Pursuant to Federal Rule of Evidence 801(d)(2)(A), an admission by a party-opponent is not hearsay if it is the party's own statement in either an individual or a representative capacity and it is offered against that party.

The document clearly qualifies as a statement of the United States. The letter is written on United States Department of the Interior letterhead and is signed by Mr. Jackson in his capacity as the Superintendent of Osage Agency. Accordingly, the letter constitutes a statement of the United States in Mr. Jackson's representative capacity. Further, it is the duty of the Superintendent of the Osage Agency to approve or deny division orders. *See* 25 C.F.R. § 226.14 ("No production shall be removed from the leased premises until a division order and/or contract and its terms are approved by the Superintendent").

The document will be offered against the United States. The Osage Nation intends to use this document to show that the United States acknowledged its high fiduciary responsibility to the Osage Nation. Because the statement is being offered against the United States and is the

United States' own statement, the letter constitutes an admission and is not hearsay pursuant to FRE 801(d)(2)(A).

**2. The Document Constitutes a Public Record and a Business Record**

Even if the Court considers the document hearsay, it would still be admissible. FRE 803 provides a number of exceptions to the general rule excluding hearsay. FRE 803(8) provides that public records and reports are not excluded by the hearsay rule. Under FRE 803(8), "records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . matters observed pursuant to duty imposed by law as to which matters there was a duty to report," are not excluded by the hearsay rule.

As shown above by the testimony of Mr. Hurlburt, this document is a statement of the Osage Agency. Because it was the duty of the Osage Agency to approve or deny requests for division orders, the document sets forth a matter observed pursuant to a duty imposed by law. 25 C.F.R. § 226.14. Additionally, the letter constitutes Mr. Jackson's official report of his decision on the request for a division order, meeting the "duty to report" requirement of FRE 803(8). *See Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 600-01 (8th Cir. 2005) (holding surgeon general's report admissible under FRE 803(8) because it reported findings made pursuant to authority granted by law). Therefore, Plaintiff's Exhibit 515 is admissible pursuant to FRE 803(8).

Alternatively, the document constitutes a business record under FRE 803(6), which provides a hearsay exception for records of regularly conducted business activities. The letter was written by a person with a duty to review division order requests, the Superintendent of the Osage Agency. 25 C.F.R. § 226.14. The document was kept in the files of the Osage Agency as part of it records. It is therefore admissible pursuant to FRE 803(6).

## II. PLAINTIFF'S EXHIBIT 86

Although not referenced in the Court's Orders dated February 17, 2006 and February 22, 2006, the Transcript of the Pretrial Conference (2/16/06 at 33) reflects that the Court requested briefing on the United States' hearsay objection to Plaintiff's Exhibit 86, which is a letter dated August 16, 1982 from the Comptroller General of the United States to the Secretary of the Interior withdrawing approval of the Bureau of Indian Affairs' accounting system. A copy of Exhibit 86 is attached hereto as Exhibit 2. For the same reasons discussed above with respect to Exhibit 515, Exhibit 86 is admissible.

First, the letter is clearly an admission of a party opponent that does not constitute hearsay pursuant to FRE 801(d)(2)(A). The letter is a statement of a United States official acting in his official capacity regarding a matter within his legal authority, in this case withdrawing a previously approved accounting system. The United States intends to demonstrate that the Bureau of Indian Affairs' accounting systems were reliable and adequate to account for Osage trust funds. This letter would be offered against the United States to rebut that assertion. Accordingly, it is admissible as an admission of a party opponent.

Second, even if the document is not considered an admission, it falls within the exceptions to the rule excluding hearsay set forth in FRE 803(6) & (8). As with Exhibit 515, Exhibit 86 reports the decision of a United States official regarding a matter within his authority and as to which he had a duty to act. The letter was kept in the ordinary course of business by the United States and was produced from the United States' files in the course of this litigation. Accordingly, it is admissible pursuant to FRE 803(6) or (8).

Dated this February 22, 2006

Respectfully submitted,
*/s/Wilson K. Pipestem*

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for The Osage Nation

# EXHIBIT 1

United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Osage Agency
P.O. Box 1539
Pawhuska, Oklahoma 74056-1539

PLAINTIFF'S EXHIBIT 19

October 18, 1996

Osage Tribal Council
Principal Chief Charles O. Tillman, Jr.
Box 779
Pawhuska, Oklahoma 74056

Dear Chief Tillman:

I appreciate the opportunity to sign your "temporary division order" presented to BIA staff on October 17, 1996. However, we must decline to sign the division order for the following reasons.

The record will indicate that we share and support the vision of the Osage Tribe operating its own wells, particularly on an experimental basis using the oil and gas property located in the S1/2, SE1/4, Section 11, T24N, R8E also known as the Meyers lease. My written dialogue with the Osage Tribal Council (OTC) began with my discussion paper dated August 14, 1996 where I attempted to outline concerns my office had about the OTC becoming a producer. We have had verbal discussion on this topic for probably the last three years.

In that August 14 paper I suggested a 30-day comment period for various stakeholders to voice their concerns. Some did express concerns and you were provided copies of some of the responses I received. Probably the most notable comments came from the Osage Shareholders Association (which did not support the OTC as producer), and also a copy of a 1990 policy memorandum issued by the Deputy to the Assistant Secretary - Indian Affairs about tribes operating marginal oil and gas properties (which required some sort of lease or agreement).

My office put together a draft Osage Minerals Agreement dated September 19, 1996 which extracted what I saw as minimal regulation language to be used in a mineral agreement that would establish guidelines for production of the trust oil and gas resource by the OTC. The Tulsa solicitor's office used that draft and further refined the agreement calling the later versions a memorandum of understanding (MOU) for the development of oil and gas by the OTC. You were provided copies of this document dated September 30, 1996.

In my October 2, 1996-letter to you I urged further development of the MOU and also called to your attention 25 U.S.C. section 81, Contracts with Indian Tribes, and the 1990 policy memorandum from the Deputy to the Assistant Secretary - Indian Affairs. We discussed these items and the MOU in the October 2, 1996 OTC meeting outlining the importance we were placing on some sort of written



Received
OCT 18 1996
Osage Tribal Council

agreement that would govern development of the trust asset by the OTC.

After our October 2, 1996 meeting I drafted another letter to you asking for 30 days to develop the MOU and that to proceed further may be premature and if the oil were removed without secretarial approval could be construed as unlawful. The OTC has obviously proceeded without agency approval, the lease has been placed on production, and now the oil produced needs to be sold soon.

Representatives of the OTC have met with BIA staff during my recent absence and another version of the MOU was discussed. Solicitor Rice has drafted another version but I have not reviewed the draft in detail.

The bottom line is this. We believe BIA lacks statutory authority to approve a division order (which offers instructions on royalty payments and gives authority for the producer to sell oil or gas) absent an approved lease or contract (agreement). During our October 17, 1996 meeting in my office I restated this fact once again and offered to sign the division order if you would sign the MOU. You declined to sign the MOU.

In your appeal of the superintendent's decision to approve assignments of leases on the North Burbank Unit to Calumet Oil Company you waved the fiduciary banner in our face citing United States v. Helen Mitchell, ectal (Mitchell). Mitchell basically held that the U.S. Government was accountable for money damages for alleged mismanagement of forest resources on the allotted Quinault Indian Reservation. We agreed with your line of thinking that a high fiduciary responsibility does exist as defined by the 1906 Osage Allotment Act which offers specific guidance in the management of oil and gas trust resources. We place considerable weight in protecting the interests of the Osage mineral owners or annuitants as provided in the 1906 Act as amended.

It is this office's belief that we owe a fiduciary responsibility to all the Osage mineral owners not just the Osage Indians who have a headright interest. As you are well aware about one third of the headright shares are owned by non-Indians or Indians not Osage who cannot vote or hold office in the OTC elections held every four years. Accountability to the annuitants has to be the key word in directing our collective actions as we launch tribal mineral production efforts.

Those "burdensome" regulations that the OTC wants to shuck aside have served to protect the trust asset from waste for many years. The Federal government by promulgating those regulations, which are based on the statutes unique to Osage, have also placed on the Federal government a heavy responsibility to ensure that the trust asset is developed for the benefit of the Indians or resource owners. And that the management of the trust resources is now governed by a set of written rules that allow Federal officials to control producer operations by forcing them to meet acceptable standards of resource disposition and management.

We must advise caution and restraint in removing the regulatory structure that is important in managing the trust asset. It is our opinion that once the written regulatory structure is removed,

considerable weight is lifted from the Federal government's fiduciary responsibility because there will be little to measure producer performance. If the OTC wants to embark on that journey then it is to their peril. The Federal government cannot be expected to pay monetary damages should breach of trust charges occur later.

A written document is essential in defining what each of our respective responsibilities will be in tribal mineral production actions. The document will be key in developing written performance standards of accountability that we can defend in appeal or court actions should they arise. A written agreement protects all interests.

It is this office's opinion that should we proceed without doing rigorous legal research and developing technical agreement language that allows sound resource management from a trust asset perspective, would open doors of opportunity for breach of trust actions.

We also are aware that the Muskogee Area Director and his staff are reviewing your request for BIA approval of a "temporary division order" and we respectfully submit to his lead in this matter. Therefore, no appeal rights are given here because a decision for the BIA has not been made on this issue.

Questions regarding this correspondence can be directed to the Office of the Superintendent, telephone (918) 287-1032.

Sincerely,

Gordon Jackson
Superintendent

cc: Muskogee Area Director
Tulsa Field Solicitor
Office of Special Trustee

C:\OFFICE\WPWIN\WPTRIB\MINERL3C.OTC

# EXHIBIT 2

119207

COMPTROLLER GENERAL OF THE UNITED STATES
WASHINGTON D.C. 20548

B-48120

AUG 16 1982

The Honorable James G. Watt
The Secretary of the Interior

Dear Mr. Secretary:

Subject: Withdrawal of Approval of the Bureau of Indian Affairs Accounting System (GAO/AFMD-82-109)

As a result of our recent review, we are withdrawing our approval of the Bureau of Indian Affairs accounting system. The reason for this withdrawal is that the system in operation today is not the system the Comptroller General approved in 1953. Extensive design changes were made in the 1960's and the system was not submitted for reapproval as required by Section 31 of Title 2 of the General Accounting Office "Policy and Procedures Manual for Guidance of Federal Agencies." Our recent review disclosed this fact as well as serious design and operating problems.

Recently we met with the Deputy Assistant Secretary for Indian Affairs (Operations) and other officials of the Bureau and the Department and explained this action to them. We offered to work with them to correct the problems in the current system and to assist in preparing the redesigned system for submission to the Comptroller General for approval. From their excellent response, we are confident that Interior and Bureau personnel will cooperate to develop and implement a good accounting system.

Sincerely yours,

Signed Charles A. Bowsher

Comptroller General
of the United States

cc: Mr. Richard Mulberry
Inspector General

119207

931105

023102