**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | |
| Plaintiff, | Electronically Filed February 24, 2006 |
| v. | No. 99-550 L (into which has been consolidated No. 00-169 L) Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | |
| Defendant. | |

**PLAINTIFF OSAGE NATION'S RESPONSE TO DEFENDANT'S BRIEF PURSUANT TO FEBRUARY 17, 2006 ORDER**

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation

The United States repackages under the rubric "standard of care" its previously rejected arguments on *Okie Crude*, laches, and estoppel and offers post-hoc rationalizations for its failings as trustee.

1. The United States claims that BIA's failure to enforce its own regulations was really in service of the Osage Nation's "sovereignty and self-determination interests." This backdoor re-argument of laches and estoppel, couched falsely as attention to Osage interests, is deceptive. The United States cites statutes that either do not apply to the Osage Nation or foreclose reliance on tribal involvement as a "reasonableness" defense to trust liability.[1] In fact, the 1906 Act and its amendments subject the Osage Nation to more severe federal encroachments than other existing Indian tribes.[2]

2. The United States seeks to shield itself from liability by finding ambiguity everywhere, and then characterizing every aspect of trust management as "filling in the gaps" or "interpreting" its regulations via a "long-standing and consistent practice." The royalty regulations here are hardly ambiguous, and even if they were, they must be construed in favor of the Indians where such a construction is reasonable.[3] Further, an agency's unexamined routine, in disregard of the terms of a trust, provides no safe harbor from trust liability but instead triggers

[1] The Indian Reorganization Act expressly excludes the Osage Nation. *See* 25 U.S.C. § 473. The Osage Nation is expressly exempted from the Indian Minerals Leasing Act (IMLA). 25 U.S.C. § 396f; *see Osage Tribe v. United States*, 68 Fed.Cl. 322 (2005) (contrasting IMLA with the 1906 Act). And the Indian Self-Determination and Education Assistance Act "shall [not] be construed as . . . authorizing or requiring the termination of any existing trust responsibility of the United States with respect to the Indian people." 25 U.S.C. § 450n.

[2] For example, Section 9 of the 1906 Act imposes a form of government on the Osage Nation, and the Act of March 2, 1929 (45 Stat. 1478) directs that at least 25,000 acres of the Osage Reservation must be offered for minerals leasing.

[3] *See, e.g., Jicarilla Apache Tribe v. Supron Energy Corp.*, 728 F.2d 1555, 1567 (10th Cir. 1984) (Seymour, J., concurring in part and dissenting in part), *adopted as majority opinion as modified en banc*, 782 F.2d 855 (10th Cir. 1986).

liability (whether or not it is papered over after the fact by an *Okie Crude*).[4] In any event, for the Tranche One period there is *no* evidence the Agency adopted any interpretation that was the product of reasoned decisionmaking. For example, there are no agency rulings or legal opinions regarding the meaning of "offered price," nor any analyses of whether price controls should be allowed to cap Osage royalties. A "consistent practice" of deferring to lessees is no shield here.

3. In arguing for a low standard of care, the United States misconceives the hierarchy of the governing law. The trust statutes are foremost. The 1906 Act creates a trust and requires the collection of "all moneys due"; 25 U.S.C. § 161a and § 162a require proper investment. The United States' statutory trust duties, and this Court's power under the Indian Tucker Act to enforce such duties, predate the Administrative Procedure Act and the modern administrative state. When the United States took Osage minerals in "trust," that word had a particular meaning, given content exclusively by the common law of trusts, including a fiduciary standard of care. The trust duties assumed in the 1906 Act have never been narrowed nor the standard of care lowered. Although the United States has chosen to use administrative agencies and regulations to carry out its duties, the APA does not supersede the Osage-specific 1906 Act. Nor has any generally applicable procedure, regulation, or statute done so.

4. The United States falsely blames Congress for Interior's failings. The 1906 Act has not been partially repealed by appropriations to Interior, so such acts cannot have lowered the United States' standard of care. Moreover, the post-hoc nature of this argument is glaring. The

---

[4]The United States' claim that a "long-standing and consistent practice" is per se an "interpretation" to which a reviewing court must defer is false, even outside the trust context. The case it cites, *Torch Operating Co. v. Babbitt*, 172 F. Supp. 2d 113, 125 (D.D.C. 2001), did not analyze whether to grant Interior deference. Rather, it held that Interior violated the APA by failing to hold a notice-and-comment rulemaking before changing the agency's previous consistent practice.

United States has produced no proof that cost constraints prevented the Osage Agency from performing trust duties properly. Trial will show that the Agency used its time and resources on inefficacious bureaucratic tasks while lessees self-reported, free of any auditing.[5]

5. Again ignoring the unique impositions on the Osage and the unique character of Osage leases and regulations, the United States argues that the *omission* of any "like kind or quality" provision in the royalty regulations *means that such language must be read in*. This turns contract interpretation on its head. The United States seeks to have the Court retroactively rewrite the regulations and leases so that the Osage Nation is no longer treated as unique. The United States' extra-contractual accession to lessees' "industry practices" should not be excused.

6. The United States speculates post hoc that lessees would have curbed production had they been required to pay proper royalties due under a straightforward application of the regulations. The United States has produced no evidence that it ever engaged in any reasoned economic or legal analysis to show that departure from the regulations was needed (or lawful).

February 24, 2006

Respectfully submitted,

*s/Wilson K. Pipestem*

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for The Osage Nation

[5]The United States nevertheless historically used large amounts of Osage tribal trust funds to pay certain trust expenses.