# Legal Restrictions and Internal Control Weaknesses Impact Fund Earnings

In addition to the losses that occurred because of Treasury's actions during the 1984 and 1985 debt ceiling crises, at least $400,000 in other losses have occurred because of internal control weaknesses in the fund's operation. As agreed with the Chairman's office, we did not conduct a comprehensive review of the fund's investment practices. However, in the course of our work, we reviewed certain investment practices and found that internal control improvements were needed to ensure that

- securities are properly redeemed and
- error corrections and adjustments are accurate and properly documented.

Also, an important system that Treasury's Financial Management Service (FMS) uses to account for the investments of the various trust funds has not been evaluated for conformance with the Comptroller General's accounting principles, standards, and related requirements as stipulated by Treasury's procedures to implement the Federal Managers' Financial Integrity Act.[7] Treasury's Inspector General (IG) also reported this problem in a 1986 audit report.

The fund also incurred losses as a result of OPM errors and Treasury's interest computation procedures. However, Treasury does not have the legislative authority to make full restitution for all the losses as well as the interest thereon.

## Redemption Policies and Procedures

The fund has lost interest because Treasury did not always follow its normal redemption policy. When redemptions are necessary in order to pay for fund expenses, Treasury's stated policy is to redeem the securities with the shortest maturity first. Should a group of securities have the same maturity but have differing interest rates, then the securities with the lowest interest rate would be redeemed first.[8] In addition, Treasury officials have stated that the policies followed should be equitable to the trust funds and the general fund.

[7] The Federal Managers' Financial Integrity Act requires federal agency heads to annually report on the status of their internal controls and the conformance of their accounting systems with the Comptroller General's accounting principles, standards, and related requirements. The act is viewed as an integral part of strengthening the government's financial management.

[8] In this report we refer to this policy as "redeeming the lowest interest rate securities first."

On November 6, 1985, Treasury redeemed $105 million worth of Treasury securities with an interest rate of 10.75 percent when the fund's portfolio contained FFB securities with the same maturity date but bearing a lower interest rate of 10.125 percent. Similar transactions occurred on November 8 and December 2, 1985. Treasury officials stated that these redemptions were an apparent oversight and that procedures would be implemented to ensure that FFB securities, as well as the regular Treasury securities, are examined when determining which securities should be redeemed first. Treasury officials have restored that part of the loss allowed by Public Laws 99-155 and 99-177. (This loss is part of the $160 million loss discussed in chapter 2.)

## Improved Controls Needed Over Error Corrections

Treasury makes many adjustments to the accounting records in order to properly reflect accounting events. Reasons for adjustments include (1) information received late from OPM and (2) errors made by either Treasury or OPM. We found that Treasury does not have adequate procedures to ensure that its adjustments to the accounting records are properly documented and that the results of its adjustments are equitable. Therefore, Treasury cannot be reasonably sure that it has met its fund management responsibilities or its stated objective of ensuring equity between the trust funds and the general fund.

### Error Corrections May Not Be Equitable

As a result of the procedure Treasury uses for correcting errors in fund transactions, the fund's earnings may be overstated or understated. This is contrary to Treasury's policy of maintaining an equitable relationship between the trust fund and the general fund, and it can distort the fund's earnings. Treasury officials stated that limitations in the investment accounting system precluded more accurate procedures.

#### Procedures for Making Adjustments—Current Month

Adjustments to current-month transactions are frequently made. In making these adjustments, an investment technician enters the current date and the date the transaction actually occurred and should have been entered. This practice is commonly referred to as an "as of" adjustment. This procedure allows interest to be computed as if the transaction had been recorded on the proper date. Although this procedure may appear to allow for an equitable adjustment, it may not because of the way Treasury decides which security will be adjusted.

The basic principle in selecting securities for adjustment is the same one that applies to making normal redemptions and investments (that is,

redeeming the lowest interest rate securities or investing in securities bearing the current month's rate). For example, assume that on July 1, 1985, Treasury redeemed $10 million worth of 7-percent securities but on July 9, 1985, discovered that it should have redeemed only $9 million worth of securities. To compensate for this difference, Treasury would have to invest $1 million in securities. But by law, Treasury would have to invest in securities bearing the current month's rate, which may be more or less than 7 percent "as of" July 1, 1985. Conversely, if Treasury should have redeemed $11 million in securities, then its procedures would require it to select the lowest rate security available for redemption on the adjustment date. In this example, the security may be one bearing a rate of 8 percent. It would then be considered redeemed "as of" July 1. (See example below.) In either case, the fund could gain, lose, or break even depending on interest-rate fluctuations.

## Adjustments That Overlap Months

Some adjustments overlap months and pose similar problems in ensuring the fund's earnings are equitable. If an investment should have been made during the preceding month and was not recorded because of an error by the investing agency, then Treasury records the investment "as of" the first of the current month. This investment is made in a security bearing the current month's interest rate, which may be higher or lower than the rate in effect when the investment should have been made. Because the adjustment was caused by the agency, no attempt is made to compensate the fund for the previous month's interest that would have been earned.

More complex adjustments can occur. For example, if Treasury made the error, then an attempt is made to compensate the fund for the interest loss. This is done in a three-step process. First, the investment is shown "as of" the first of the current month. Next, Treasury computes the lost interest from the date the investment should have been made through the end of the previous month. Finally, Treasury accelerates the recording of investment of current month receipts until this interest is recovered. To illustrate how this works, if Treasury failed to invest $1 million on March 21, but did not detect the error until April 15, then it would take the following actions:

(1) Adjust the ledgers to show an investment of $1 million on April 15, "as of" April 1.

(2) Compute the interest that was lost from March 21 through March 31.

(3) Assuming the fund's receipts on April 2 totaled $10 million and the interest rates for the March and April investments were the same, Treasury would adjust the ledger to show that the $10 million was received on April 2, "as of" April 1. This would compensate the fund for the interest lost in March because investing the $10 million 1 day earlier provides the fund the same amount of interest that it lost by not having the $1 million invested for 10 days (March 21 through March 31), as shown below:

$10 million x 12 percent x (1 day/365 days) = $3,288

$1 million x 12 percent x (10 days/365 days) = $3,288.

As with current-month adjustments, although this method compensates the fund for the interest lost prior to the actual investment, it may result in excess interest being paid or an interest shortage if the interest rates between the months are not the same. This is because Treasury is required by law to invest in securities bearing the current month's rate, which may be higher or lower than the prior month's rate.

## Fund Has Sustained Losses Because of Adjustment Practices

One error that Treasury made and corrected using the above procedures has cost the fund almost $400,000. Specifically, according to Treasury records, OPM instructed Treasury to redeem about $400 million of securities on July 5, 1984. However, Treasury did not and OPM notified Treasury of the error in August. Treasury then redeemed the lowest interest-bearing securities available at that time which had rates of 8.75 and 9.75 percent. The interest on these was computed through July 5 (the original requested redemption date). Lower-rate securities, which had been held by the fund on July 5, were no longer available since they had been used to pay fund expenses in July and early August, causing the trust fund to lose about $400,000. Had the redemption taken place on July 5, the securities bearing interest rates of 7.5 and 7.625 percent would have been used. Therefore, the higher rate securities would have remained outstanding longer and more interest would have been earned. Treasury agreed with our methodology for computing the effects of this error and with the amount of the loss.

## Accounting System Makes Corrections Difficult

To ensure that errors and other adjustments are completely and accurately corrected, it would be necessary to make retroactive adjustments in the records back to the time the errors occurred. In this manner, the fund's earnings would be the same as if no adjustment or error had been

made. Although Treasury officials agreed, they stated that this was impractical because of the large volume of transactions that must be processed daily through the system, which is manually operated, and because of the complexity of recomputing the fund's interest earnings.

After observing Treasury's operations, we agree that making all retroactive adjustments could cause a work load problem unless the system is properly automated. However, although Treasury officials said that plans had been made to automate the system, its implementation is not expected until 1988 or 1989. Furthermore, the system, as proposed, does not include a capability to make retroactive adjustments. As an alternative, Treasury could make retroactive adjustments on a selected basis. For example, errors involving small amounts could be corrected using the current procedures as discussed earlier in this chapter. Errors involving large amounts which could have a significant impact on the fund's earnings could be handled through retroactive adjustments.

## Reasons for Adjustments Not Documented

Because different situations call for different adjustment procedures, all adjustments must be completely documented, including a brief explanation of why they are made. Complete documentation is essential for establishing an audit trail to verify that the adjustments are proper. Such information is also needed to assure that adjustments are equitable and correct.

We found that during the 2 years ending June 30, 1986, Treasury's accounting records generally did not contain explanations for the adjustments that were made. As a result, we could not (1) verify that adjustments were in accordance with Treasury's policy and (2) determine their effect on the fund's earnings. Treasury officials stated that steps would be taken to ensure their personnel properly document the adjustments.

## Accounting System's Conformance Has Not Been Assessed

An important system that Treasury's Financial Management Service (FMS) uses to account for the investments of the Civil Service fund and the other trust funds has not been evaluated for conformance with the Comptroller General's accounting principles, standards, and related requirements as required by Treasury's procedures implementing the Federal Managers' Financial Integrity Act. Treasury's IG also reported this problem in a 1986 audit report.

Treasury officials stated that this system should not be considered an accounting system since it is only a "mirror image" of the Bureau of Public Debt's general ledger. However, we do not agree that the Bureau of Public Debt system is an exact duplicate of the FMS system because, as the IG report pointed out, the FMS system

- records individual transactions based on legal authorizations and source documentation;
- classifies transactions according to entity, fund, ledger, as well as account structure; and
- reports detail and summary transactions which are used as the basis for reports prepared by the Bureau of Public Debt and submitted to the Congress, Treasury, and the public.

In addition, FMS's system is the basis for the trust fund entries made in the Bureau of Public Debt's system. However, the Bureau's system must rely on FMS's information since it does not have a means to ensure that the daily data it receives from FMS are accurate and reliable. Therefore, Treasury needs to perform the work necessary to assure itself that this operation conforms with the Comptroller General's principles, standards, and related requirements and that any material weaknesses are reported and corrected. Performing an evaluation for that purpose would include determining whether controls are adequate to ensure complete and accurate processing of all transactions. Had Treasury conducted such an evaluation, we believe the problems we found relating to the daily operations could have been detected and corrective actions initiated.

According to Treasury officials, this operation will be incorporated in the new Public Debt accounting system. This system is scheduled to be implemented in 1989.

## Treasury's Interest Computation Method Was Changed to Ensure Accurate Earnings

We found that the interest computation method used by Treasury distorted the fund's semiannual interest earnings. We brought this matter to Treasury's attention, and the method was revised. Treasury's method for computing interest payments on most fund investments is based on a long-standing policy. This policy was developed in the early 1920's and is designed to ensure that equal semiannual interest payments will be made for securities held exactly 1 year. This method is comparable to the normal procedure for computing interest, which is to multiply the principal, interest rate, and amount of calendar time the funds are invested. Because annual interest rates are used, the calendar time is

typically expressed as some fractional amount of a year. Although the total annual interest is the same under both Treasury's method and the normal method, the semiannual amounts differ, as shown in table 3.1.

**Table 3.1: Comparison of Interest Computation Methods**

| | Principal | | Percentage rate | | Time | | Interest |
|---|---|---|---|---|---|---|---|
| **Treasury method** | | | | | | | |
| First semiannual period, July 1 - December 31 | $1 million | x | 12 | x | 1/2 year | = | $ 60,000 |
| Second semiannual period, January 1 - June 30 | $1 million | x | 12 | x | 1/2 year | = | 60,000 |
| **Total** | | | | | | | **$120,000** |
| **Normal method** | | | | | | | |
| First semiannual period, July 1 - December 31 | $1 million | x | 12 | x | (184/365) | = | $ 60,493 |
| Second semiannual period, January 1 - June 30 | $1 million | x | 12 | x | (181/365) | = | 59,507 |
| **Total** | | | | | | | **$120,000** |

Because the Civil Service fund's current investments are held less than 1 year, Treasury's method does not ensure that the fund is neither overcompensated nor undercompensated for its investments. However, we did not attempt to assess the amount the fund may have gained or lost because of Treasury's interest computation method because we would have had to completely reconstruct Treasury's records for an entire investment year.

In June 1986, we requested Treasury's views on this matter. The Department responded that effective with the investment year beginning July 1, 1986, the interest computations for the Civil Service fund would be made based on a 365-day year. Treasury also stated that it would consider whether this change should also apply to other trust funds investing in par value specials and would defer any change for other trust funds until July 1, 1987, which is the beginning of the next investment year.

## Authority for Restoring Losses Is Limited

As discussed above, not all losses are caused by Treasury actions, and Treasury does not have the authority to fully restore the losses that the fund has incurred. In our management letter to OPM, dated April 23, 1986, regarding the fiscal year 1984 financial audit, we outlined several areas that needed correction. One area was that OPM had not correctly calculated the year-end payments discussed in chapter 2 and thereby

underreported the amount to be invested. Specifically, OPM's errors caused the fund to be undercompensated by $145 million, excluding interest, for fiscal years 1981, 1982, 1984, and 1985. We also pointed out that, although records were not readily available to determine additional amounts that may have been lost, the losses may go back as far as 1972. In our letter, we pointed out that OPM should determine the amount of these losses and seek restitution of these funds from Treasury. OPM stated that the principal has been restored as of September 30, 1986.

Although the fund can sustain losses in its routine operations, Treasury's ability to fully compensate the fund is limited. For example, although it can restore the principal amount that resulted from OPM's error, it cannot restore the lost interest earnings thereon. To do so would be contrary to the legal requirements that the United States not make interest payments unless specifically authorized by statute or contract.

Another legal requirement that restricts Treasury's ability to restore fund losses is that Treasury may only issue securities in a given month bearing that month's interest rate. Therefore, when Treasury fails to invest the proper amount in a given month, or prematurely redeems securities, it can only reinvest in securities bearing the current month's rate. We believe that Treasury should seek additional broad authority to allow it to correct previous mistakes so that the fund receives proper interest earnings.

Treasury officials stated that they do not favor such unlimited and unconditional authority for three reasons. First, it would give the impression that Treasury does not have the legal basis to make the type of adjustments it currently makes. Second, the authority could be viewed as a requirement to make numerous adjustments that are caused by minor agency errors. Treasury stated the correction of such errors is not only administratively difficult but also leaves a substantial risk of creating further errors. Third, this type of authority could be viewed as a means to circumvent the debt ceiling. However, the legality of Treasury's current adjustment practices has not been questioned, and we believe the procedures used are within Treasury's current authority. We also believe that legislation properly worded to indicate that its purpose is to treat the fund in an equitable manner could help overcome perceptions that Treasury must compensate funds for all minor errors caused by the agencies.

During September and October 1986, Treasury also did not invest trust fund receipts because of debt ceiling constraints. In October 1986, a law[9] was passed which authorized Treasury to take the necessary steps to restore Civil Service fund losses arising from both current and future debt ceiling problems without further congressional approval. The law addresses our concerns relating to losses incurred during future debt ceiling crises and should eliminate the perception that the authority we believe Treasury should seek could be viewed as a means of circumventing the debt ceiling. However, the October 1986 law does not provide Treasury with the authority to restore the types of losses discussed in this chapter which are caused by its routine operations nor the losses discussed in chapter 2.

## Conclusions

Treasury's system for accounting for fund investments needs to be improved to better control securities transactions. The system should also be evaluated as part of the Department's ongoing Federal Managers' Financial Integrity Act program to ensure that additional weaknesses do not develop and that existing weaknesses are corrected. The fund has sustained losses because of system weaknesses, and it is essential that procedures be improved to minimize any future losses. Although correcting all errors through retroactive adjustments may be beyond Treasury's current system capabilities, at least the major adjustments should be handled in that manner to better ensure the accuracy of the fund's earnings. This is particularly important since the planned system also does not have the capability to adequately account for such adjustments.

During the periods covered by our review, Treasury generally appeared to follow its policy of ensuring equity between the trust fund and the general fund—a policy we support. Treasury's prompt revision of its interest computation method and its efforts to determine whether the change should be instituted for other trust funds is an illustration of Treasury's good faith in attempting to treat all funds equitably. However, legal restrictions have limited Treasury's ability to fully reimburse the fund for losses resulting from errors and other problems that occur in its routine operation. Because of its role as fund manager, we believe it is Treasury's responsibility to seek whatever legislation is necessary to allow it to fully reimburse the fund.

[9] Public Law 99-509, Omnibus Budget Reconciliation Act of 1986.

## Recommendations

We recommend that the Secretary of the Treasury direct the Financial Management Service to

- document properly all adjustments to the accounting records,
- establish controls to ensure that the lowest interest rate securities are redeemed first, and
- evaluate the fund's accounting operations for conformance with applicable accounting principles and standards.

We further recommend that the Secretary seek legislative authority to fully reimburse the fund for losses resulting from future Treasury or OPM management of fund transactions. Since developing legislation for each individual loss that may occur is difficult and may not result in full compensation, this legislation should not be designed to cover a specific case(s) but instead should establish criteria which would (1) allow Treasury to pay interest when securities have not been issued and (2) generally define when this authority could not be used. This legislation should also modify the current restriction of only issuing par value securities at the current month's rate. For example, when an adjustment becomes necessary, the Secretary should be allowed to issue securities at the same rate that was in effect when the transaction should have been recorded. The guiding principle in this legislation should be that the trust funds and the general fund are treated in an equitable manner. After such authority is received, FMS should be directed to treat major error corrections as retroactive adjustments and thereby fully eliminate the effect of the error.

## Agency Comments and Our Evaluation

Treasury agreed with our recommendations that it seek broad legislative authority over investment accounting and that it properly document adjustments. It stated that action has already been taken to accomplish proper documentation.

The Department did not agree that improved controls were needed and provided examples of procedures used which it considers adequate. Treasury also stated that the controls of this system had recently been reviewed as part of the latest agency Federal Managers' Financial Integrity Act section 2 review.

We do not agree with the Department's position that it has adequate internal controls for the following reasons:

- The 1984 Financial Integrity Act review cited by Treasury does not appear to accurately reflect current operations because (1) the Treasury Inspector General reviewed the assessment and found that the working papers documenting the review did not adequately support the report and (2) our review of the report disclosed inconsistencies with the current operations. For example, the report stated that standard operating procedures were comprehensive and clearly written but in need of some updating. Our review disclosed that they are no longer current and the procedures being followed are not completely documented. Also, a 1986 Inspector General audit report noted the need for improvements in internal controls and adherence to generally accepted government accounting principles.
- If adequate controls had been in place to ensure that the lowest interest rate securities are redeemed first, then the situation discussed on page 21 would not have occurred. Treasury would have redeemed the about $400 million as requested in July, and the fund would not have lost about $400,000.

In responding to this report, Treasury officials stated that they still do not consider this operation an accounting system. However, in subsequent discussions, Treasury stated that when the new Public Debt accounting system is evaluated for conformance with the Comptroller General's principles and standards, any needed evaluation of the Financial Management Service's operations would be included. We believe our concerns will be adequately addressed if the Financial Management Service's operations are reviewed as part of the Public Debt accounting system evaluation.

Treasury's specific comments are provided in appendix I.

# Comments From the Department of the Treasury

Note: GAO comments supplementing those in the report text appear at the end of this appendix.

DEPARTMENT OF THE TREASURY
WASHINGTON

ASSISTANT SECRETARY

February 20, 1987

Dear Mr. Wolf:

This letter responds to your request of December 22, 1986, for our review and comments on the General Accounting Office's (GAO) Draft Report, "Civil Service Fund: Improved Controls Needed Over Investments." We welcome the opportunity to comment on your report. The recommendations contained therein have been carefully studied by the Department's Financial Management Service (FMS). Where appropriate, measures will be taken to comply with those recommendations.

A detailed analysis of each of the recommendations is presented below. In addition, there are several technical corrections that we suggest be made to the report. These corrections will follow the above analysis.

RECOMMENDATIONS

Proper Documentation of Adjustments

See comment 1.

We agree with GAO's recommendation to properly document adjustments to the accounting records, and FMS has already taken steps to accomplish it.

Change the Accounting Review Mechanism

See comment 2.

We do not agree with the GAO's contention that FMS's Finance and Funding Branch's investment operation is an accounting system subject to section 4 of the Financial Managers' Financial Integrity Act (FMFIA).

The question of the Finance and Funding Branch's investment operation being classified as an accounting system subject to section 4 has been addressed by FMS several times in the past. FMS believes that section 2 FMFIA reviews provide for a more comprehensive review of the system of internal controls relating to the investment operation. In support of their position, FMS has conducted a test of the investment operations' suitability as an accounting system utilizing the Departmental questionnaire for conducting section 4 reviews. It was determined that 99 percent of the responses to the questions in the survey were not applicable. Treating the investment operations as an assessable unit under section 2 enables FMS to better comply with the intent of FMFIA.

The accounting system for each of the accounts in the Government Accounts Series (GAS) investments, which includes the Civil Service Retirement and Disability Fund, is maintained by the

individual program agencies and the Bureau of the Public Debt (BPD). Both of these organizations conduct section 4 FMFIA reviews. FMS's investment operation simply reports the results of transactions to the program agencies and BPD so that they may update their systems and the governmentwide Central Accounting and Reporting System.

Finally, the GAO draft report focused only on Treasury's management of the Civil Service Retirement and Disability Fund. In light of the fact that GAO is currently conducting a comprehensive review of all trust fund investment procedures, we believe that this recommendation is premature and should be deferred until the review is completed.

<u>Improved Internal Controls</u>

See comment 3.

We also disagree with GAO's third major recommendation, that improved internal controls are needed over FMS's investment operations.

Procedures are currently in place that are designed to identify any irregularities or discrepancies between Treasury, OPM, and BPD. All investment and redemption requests from OPM are confirmed in writing by OPM in the same month the transaction takes place. All interest calculations are verified by BPD. All transactions are double-checked by the Finance and Funding Branch. Finally, all investment ledgers are independently verified on a weekly basis to insure accuracy, and all investment fund balances are verified on a monthly basis to the Monthly Statement of the Public Debt. These procedures provide comprehensive control mechanisms over all transactions processed. Any discrepancies that are identified are normally adjusted so that there is no negative impact on fund earnings.

Our position is supported by the findings of the independent firm, McManus & Associates, which conducted the latest section 2 FMFIA review at FMS. In their report they identified no material weaknesses in the Finance and Funding Branch's system of internal controls. On the contrary, they asserted that the investment operation was operating with a high degree of accuracy in a generally effective manner with appropriate attention to internal control principles.

<u>Technical Corrections</u>

There were five places in the draft report where we felt clarifying or explanatory language was needed. They are indicated below, with any deleted language in brackets and any added language underlined:

Now on p. 13.
See comment 4.

o Page 23 (First Full Sentence)

"This allowed Treasury to borrow from the public and obtain the operating cash Treasury officials [maintain was] <u>determined to be</u> needed to pay fund benefits."

Now on p. 14.
See comment 5.

o Page 24 (First Paragraph, Third Sentence)

Insert a new sentence after the third sentence: "The additional $100 million was needed to ensure that Treasury had enough cash to cover checks actually presented on November 1, as well as electronic funds transfers."

Now on p. 25.
See comment 6.

o Page 45 (Last Paragraph, First Sentence)

"Treasury officials stated that they do not favor [such] unlimited and unconditional authority for three reasons."

Now on p. 25.
See comment 7.

o Page 46 (First Full Sentence)

After "agency errors" the following should be added: "The correction of which is not only administratively difficult but also leaves a substantial risk of creating further errors."

o Page 46 (Last Paragraph, Third Sentence)

See comment 8.

"It appears that the law addresses our concerns . . . ."

CONCLUSION

See comment 9.

In sum, the Department agrees with the GAO recommendation regarding proper documentation of accounting adjustments, but does not agree with the characterization of the Finance and Funding Branch's investment operation as an accounting system subject to section 4 FMFIA review or with the need to strengthen the Branch's system of internal controls.

Finally, the Department will support the introduction of legislation to fully reimburse the Civil Service Retirement and Disability Fund and provide unlimited and unconditional restoration authority, if it is deemed necessary by GAO.

Sincerely yours,

Gerald Murphy

Gerald Murphy
Fiscal Assistant Secretary

Mr. Frederick D. Wolf
Director, Accounting and
Financial Management Division
U.S. General Accounting Office
Washington, D.C. 20548

The following are GAO's comments on the Department of the Treasury's letter dated February 20, 1987.

## GAO Comments

1. No change to report needed.

2. This operation is to be replaced in 1989 by a new Public Debt accounting system. We believe our concerns over determining conformance with applicable accounting principles and standards will be satisfied if the overall evaluation of the new Public Debt accounting system includes the FMS operations. The report has been changed to reflect this.

3. We do not agree with Treasury's position that improved internal controls are not needed. Although an independent review of the investment operations was performed in 1984, a Treasury IG review of the report found that the working papers documenting the work did not adequately support the report. Our review of this same report disclosed inconsistencies with current operations. Also, a 1986 Treasury IG audit report noted the need for improvements in internal controls. See agency comments section of chapter 3.

4. Report changed.

5. Report changed.

6. Report changed.

7. Report changed.

8. No change to report needed.

9. See agency comments section in chapters 2 and 3.

# Comments From the Office of Personnel Management

Note: GAO comments supplementing those in the report text appear at the end of this appendix.

United States
**Office of Personnel Management**
Washington, D.C. 20415

In Reply Refer To
Your Reference

12

Rosslyn S. Kleeman
Senior Associate Director
General Government Division
U.S. General Accounting Office
Washington, D.C. 20548

Dear Ms. Kleeman:

We have reviewed your draft report entitled Civil Service Fund: Improved Controls Needed Over Investments (AFMD-87-17) and have the following comments.

The Office of Personnel Management (OPM) has been charged under law with administering the Civil Service Retirement System (CSRS). Thus, OPM is responsible for calculating obligations to the CSRS, for ensuring the prompt and accurate collection of monies due the CSRS, and for authorizing accurate and timely payments from the CSRS fund. However, by law, the Secretary of the Treasury has been charged with the responsibility for investing CSRS funds and for managing the portfolio of securities which comprise the CSRS fund. The report properly recognizes this alignment of responsibilities by directing recommendations resulting from your review to the Department of the Treasury for action. Even though the report does not contain any specific recommendations for OPM action, there are two areas we would like to address.

See comment 1.

First, we agree, in principle, with your recommendation that the CSRS fund should be "made whole" when available funds are not properly invested. We feel this is especially important for situations like the two periods of time when the CSRS fund lost interest as a result of debt ceiling limitations. However, we recognize that there may be some practical limitations to restoring interest in every situation where interest is lost (e.g., through administrative error and the amounts are not significant). Since OPM does not manage the investment process or make day-to-day investment decisions, we are deferring to the Department of the Treasury for the development of the proper framework to implement the principle we have set forth above.

See comment 2.

Second, the report mentions that, through an administrative error, OPM understated the amount of interest on the unfunded liability that should have been credited to the CSRS fund. We are pleased to report that OPM recalculated the amount due the CSRS fund and the principal was deposited on September 30, 1986.

CON 114-24-3
January 1980

2.

I thank you for the opportunity to comment on your draft report. If you have any questions, please give me a call or your staff may contact Mr. John D. Webster at 632-6077.

Sincerely,

James W. Morrison, Jr.
Associate Director
for Retirement and Insurance

The following are GAO's comments on the Office of Personnel Management's letter dated January 12, 1987.

## GAO Comments

1. No change to report needed.

2. Report changed to reflect this. See p. 25.

Requests for copies of GAO reports should be sent to:

U.S. General Accounting Office
Post Office Box 6015
Gaithersburg, Maryland 20877

Telephone 202-275-6241

The first five copies of each report are free. Additional copies are $2.00 each.

There is a 25% discount on orders for 100 or more copies mailed to a single address.

Orders must be prepaid by cash or by check or money order made out to the Superintendent of Documents.

United States
General Accounting Office
Washington, D.C. 20548

First-Class Mail
Postage & Fees Paid
GAO
Permit No. G100

Official Business
Penalty for Private Use $300

Address Correction Requested