**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed: March 20, 2006 |
| v. | ) | Nos. 99-550L (into which has been consolidated No. 00-169 L) Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT ITS REVISED EXHIBIT LIST WITH, AND FOR JUDICIAL NOTICE OF, THREE DOCUMENTS AND, IN THE ALTERNATIVE, REQUEST TO SEVER DISBURSEMENT ISSUES FROM TRANCHE ONE TRIAL**

Plaintiff's March 13, 2006 Motion For Leave to Supplement its Revised Exhibit List With, and For Judicial Notice of, Three Documents should be denied as untimely, prejudicial and improper. The documents with which Plaintiff seeks to supplement its Exhibit list relate to three "federal trust funds," the Social Security Trust Funds, Railroad Retirement Account and Civil Service Retirement Fund. Presumably, Plaintiff seeks to introduce these documents because some form of disbursement "float" is recognized for those federal trust funds, which, Plaintiff may maintain, are analogous to tribal trust funds. Yet these federal trust funds are <u>not</u> analogous to tribal trust funds such as the Osage trust fund. To fully set forth that fact, however, Defendant would have to identify additional witnesses and documents, which would be extremely difficult to do in the ten days remaining before the commencement of trial. Moreover, the additional witnesses would extend the trial beyond the currently allotted time. Accordingly, the Court should deny Plaintiff's Motion for Leave as untimely and improper.

Should the Court decide to grant Plaintiff's motion for Leave, it should sever the

disbursement issues from the Tranche One trial and reschedule those issues, together with the currently severed mass cancellation issue, to a later time.

**I. Plaintiff's Motion Should be Denied as Untimely**

In its motion, plaintiff raises for the first time the proposition that the United States' management of the Social Security Trust Funds, Railroad Retirement Account and Civil Service Retirement Fund have some relevance to its claims. Despite ample opportunity to do so, Plaintiff failed to include any such allegation in its Complaint, Restatement of Claims, Memorandum of Fact and Law, expert witness reports, or any of its pleadings – including several briefs that have been exchanged specifically on disbursement and investment issues. In fact, Plaintiff acknowledges the Court was the first to raise this issue - five months after the close of fact discovery. *See* P's Brief at 1 (quoting Pretrial Conference Transcript 29:21-281:11 (Feb. 16, 2006)).

Plaintiff's failure to raise this allegation should not be excused by the Court, given that Plaintiff was provided material concerning treatment of these federal trust funds in discovery. On August 2, 2005, Plaintiff's counsel inspected Treasury Department documents and designated for production at least one document that discussed these facts – a document entitled "Treasury's Investment Policy for Government Accounts." *See* Bates Number G06HYA0410474 - 546 (Attached as Exhibit A). The Table of Contents of that document even includes a section explicitly entitled "Allowance of Float." *See* G06HYA0410475. Yet, despite Plaintiff's having selected at least one document directly addressing the issue in which Plaintiff now expresses a keen interest, Plaintiff never attempted to obtain additional discovery on this subject matter, never asked any Treasury witness about this subject, and did not include this

document in its Exhibit List for trial.

Were it not for the Court's reference to this issue, Plaintiff likely would have never raised this issue. Indeed, even as recently as the pre-trial conference on February 16, 2006, Plaintiff's counsel specifically stated that it was not interested in Treasury's offer to the Court to try to find a witness to testify at trial on this matter. Transcript at 282-83. Plaintiff should not be rewarded, and the Government disadvantaged, because Plaintiff – up until its filing the Motion for Leave on March 13, 2006 – had decided not to identify or explore this issue with any of its witnesses (expert or fact), any of the government's witnesses (expert or fact), in its Complaint, Restatement of Claims, Memorandum of Fact and Law or any of its pleadings prior to the motion at issue. Fact discovery in this case closed on September 1, 2005 and expert discovery closed on December 12, 2005. At no time did Plaintiff ever raise this issue. It should be precluded from doing so now.

## II. Plaintiff's Motion Seeking Judicial Notice Should be Denied as Improper

In an attempt to gain judicial notice of these three documents, presumably because it has no witness to authenticate them, Plaintiff has mischaracterized the requirements of Federal Rule of Evidence 201 and how they apply to the contents of documents.

Plaintiff seeks judicial notice of the <u>contents</u> of three documents. *See* Pl. Brief at 2. Plaintiff argues that a court can take judicial notice of <u>any fact</u> capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned. *Id.* (citation omitted) And it claims that, because these documents are publicly available government documents discussing governmental procedures and, on one occasion, a court has taken judicial notice of another publicly available government document, this Court should find that these documents

meet the requirements of F.R.E. 201 and take judicial notice of their contents. *Id.*

Plaintiff's assertion that a court can take judicial notice of any fact is simply wrong and its attempt to gain judicial notice of the contents of documents merely because the documents are authored by a government official or entity misstates the law. These documents address issues that are central and disputed in this case and therefore, the Court should not take judicial notice of their contents.

These documents contain references to elements of the government's management of the Social Security Trust Funds, Railroad Retirement Account and Civil Service Fund. Plaintiff is presumably interested in the language in these documents pertaining to interest earnings on disbursed funds. *See* Stephen A. Jay Revised Expert Report ¶ 50. In its Memorandum of Fact and Law, Plaintiff clearly identified "disbursement lag time" as one of its primary allegations. Further, Plaintiff's expert, Stephen A. Jay, noted in his Expert Report, Rebuttal Expert Report, Revised Expert Report, and deposition testimony that "disbursement lag time" was one of the primary issues in this case. Plaintiff's "disbursement lag time" claim alleges that the government should earn interest for the Tribe on funds between the time checks are drawn on those funds and the time those checks are cashed. Plaintiff now requests that the Court take judicial notice of documents addressing how the government manages the disbursement of funds for other accounts that it manages - trying to draw analogies between the government's management of these various funds. *See* Stephen A. Jay Revised Expert Report ¶ 50.

The Court should reject Plaintiff's request. The Court should not take judicial notice of matters that involve a central disputed issue in the case. *Cactus Corner, LLC v. Department of Agriculture*, 346 F. Supp. 2d 1075, 1098 (E.D. Cal. 2004). The Court may take judicial notice

only of the existence of the documents, not the content of the documents. *Id.* at 1099. For these reasons, the Court should deny Plaintiff's motion to take judicial notice of the content of the three documents.

### III. Evidence of the disbursement practices related to the Social Security Trust Funds, Railroad Retirement Account, and Civil Service Retirement Fund should be excluded as irrelevant because these funds are not analogous to the Indian trust funds

The Social Security Trust Funds, Railroad Retirement Account, and Civil Service Fund are significantly different than the Tribal trust funds in several relevant manners. They are distinguishable both legally and factually.

The statutes related to investments of the three funds are similar to each other but different than the statute related to Tribal trust funds, 25 U.S.C. § 161a. The legislation governing the Social Security trust funds provides that "[i]t shall be the duty of the Managing Trustee to invest such portion of the Trust Funds as is not, in his judgment, *required to meet current withdrawals*." 42 U.S.C. § 401(d) (emphasis added). The legislation governing the Civil Service Retirement and Disability Fund provides that "[t]he Secretary shall immediately invest in interest-bearing securities of the United States such currently available portions of the Fund as *are not immediately required for payments* from the Fund." 5 U.S.C. § 8348(c) (emphasis added). The legislation governing the Railroad Retirement Account provides that "[a]t the request and direction of the [Railroad Retirement] Board, it shall be the duty of the Secretary of the Treasury . . . to invest such portion of the amounts credited to the Railroad Retirement Account, the Dual Benefits Account and the Railroad Retirement Supplemental Account as, in the judgment of the Board, *is not immediately required for payment* of annuities, supplemental annuities, and death benefits." 45 U.S.C. § 231n(e).

In contrast, the legislation governing the Tribal trust funds provides that "[a]ll funds held in trust by the United States and carried in principal accounts on the books of the United States Treasury to the credit of Indian tribes shall be invested by the Secretary of the Treasury, at the request of the Secretary of the Interior, in public debt securities with maturities suitable to the needs of the funds involved . . ." 25 U.S.C. § 161a(a).[1] Prior to 1985, Section 161a provided that "[a]ll funds with account balances exceeding $500 held in trust by the United States and carried in principal accounts on the books of the Treasury Department to the credit of Indian tribes, upon which interest is not otherwise authorized by law, shall bear simple interest at the rate of 4 per centum per annum." 25 U.S.C. § 161a. Whereas the legislation governing the three funds above provide explicit congressional authority to invest the funds up until the time of payment or withdrawal, section 161a does not explicitly provide such authority. Congress has demonstrated that, when it intends to provide the authority to extend the period when funds may be invested beyond the time that checks are issued to the time that payment is actually effectuated at the time checks are cashed, it has used particular language to do so.

Moreover, although the Social Security trust funds, Railroad Retirement Account, and Civil Service Retirement Fund are called "federal trust funds" or "Government trust funds," nomenclature that might lead one to conclude they are the same type of fund as Tribal trust funds, they are not the same. There are many factors in addition to the legal bases discussed

---

[1] Moreover, section 161a limits the investment of tribal trust funds "carried in principal accounts" of Treasury, whereas the legislation governing the three federal trust funds have no such provision. On the date that a disbursement is made from a tribal trust fund, the funds are no longer considered to be carried in a principal account of Treasury. Disbursements are charged to the principal account once they are made, and are carried in a liability account for outstanding checks until the checks are paid. This process provides one element of control necessary for providing the proper audit trail for funds.

above that distinguish federal trust funds from tribal trust funds. These additional factors demonstrate that it is inappropriate to view these funds as analogous for the purposes of determining whether the recognition of "float" for these funds is pertinent to whether the government breached a duty by not recognizing the benefit of "float" for the Osage fund. The following are some examples of the distinguishing characteristics of the federal trust funds: sources of income of the federal trust funds (from earmarked tax payments); the manner in which the funds are invested (solely in special Government Securities not available, by law, to the Tribal trust funds); Treasury's designation as Managing Trustee of certain federal trust funds; the manner in which the fund balances affect the federal budget; the manner in which the funds may be used by the Federal Government for purposes other than the payment to beneficiaries of the funds; the fact that Congress can change the obligations associated with the funds because they involve federal funds rather than third-party funds (such as with tribal trust funds); and the fact that the funds involve defined benefit payments as opposed to payments that depend on the amount in the fund. *See generally* General Accounting Office, "Federal Trust and Other Earmarked Funds, Answers to Frequently Asked Questions," January 2001 (Attached as Exhibit B).

## IV. Should the Court grant Plaintiff's motion, it should sever the disbursement issues from the Tranche One trial

To explain the myriad factors that distinguish the federal trust funds from the Tribal trust funds and why those factors render these particular funds dissimilar would require potentially extensive testimony and evidence presented at trial. In the time allotted for the current Tranche One trial, the Government will be unable to explain fully the ramifications of these distinguishing characteristics, which explanation is necessary to understand that the funds are not

analogous to the Osage tribal trust fund. Given the late date at which the issue of analogous funds has been pressed by Plaintiff, the Government will be severely prejudiced if it must proceed with this issue during the Tranche One trial. The Government will have insufficient time to locate the necessary materials and schedule additional witnesses who can testify to the workings of the federal trust funds and to the investment redemption process of those funds that presumably receive the benefit of "float."[2]

The Government will be particularly prejudiced if the Court proceeds to trial at this time and makes a decision on what is an incomplete record regarding this issue. Unlike many other issues involved in the case that solely affect the Osage trust fund, the Court's decision regarding the float issue could have far-reaching implications for other Indian trust funds.

Accordingly, should the Court decline to exclude consideration of the allegedly analogous federal trust funds from this case, it should sever the float, or so-called disbursement lag-time, issue from the Tranche One trial and reschedule it to proceed, at the earliest, with the contemplated mini-trial of the check cancellation issue.

Respectfully Submitted, this 20th day of March, 2006.

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

---

[2] Further, when the Government decided in the late 1970s to provide the benefit of a float first to the Social Security Fund and then to the Railroad Retirement Account and Civil Service Retirement Fund, it evaluated two main criteria: (1) the amount of money disbursed on a definite date each month and/or (2) whether the Secretary of the Treasury had management responsibilities for the fund. The Government determined that only these three funds met the appropriate criteria to allow an investment redemption procedure that would provide "float." The Government has searched since the pre-trial conference in February to locate additional documents and witnesses related to this decision, but requires additional time to complete this search.

Environment and Natural Resources Division

*s/ Brett D. Burton*
BRETT D. BURTON
United Sates Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0212

Counsel of Record for Defendant

*s/ Martin J. LaLonde*
MARTIN J. LALONDE
KEVIN WEBB
KEVIN LARSEN
United States Department of Justice
Environment and Natural Resources Division
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0247
Fax: (202) 353-2021

Attorneys for Defendant

OF COUNSEL:

Elisabeth Brandon
Brenda Riel
Attorneys
Office of the Solicitor
Division of Indian Affairs
U.S. Department of the Interior
MS 6456
Washington, D. C. 20240
Telephone: (202) 208-4218
Fax: (202) 208-3490

Teresa E. Dawson
Senior Counsel

Office of Chief Counsel
Financial Management Service
U.S. Department of the Treasury
401 14th Street, S.W.
Room 552A
Washington, D.C. 20227
Telephone: (202) 874-6877
Fax: (202) 874-6627