IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Docket No.: 99-550L |
| v. | ) | |
| UNITED STATES, | ) | |
| Defendant. | ) | |

Room 617
National Courts Building
717 Madison Place N.W.
Washington, D.C.

Thursday,
February 16, 2006

The parties met, pursuant to notice of the Court, at 9:13 a.m.

BEFORE: HONORABLE EMILY C. HEWITT
Judge

APPEARANCES:

For the Plaintiff:

WILSON K. PIPESTEM, Esquire
Pipestem Law Firm
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 419-3526

that, I think, in a way that is for the Plaintiff's usefulness. The rhetoric of Cheyenne Arapaho is way in front of the current rhetoric of Mitchell White Mounting Navaho and most important for me is my immediate supervisor's Shoshone. The maximization issue came up in the sand and gravel phase of Shoshone, which is the -- it's kind of a mini-case that ended up with some very important decisions being issued. But the framework was -- the Plaintiffs, in that case, had also reached back pre-Mitchell for some standards on maximization and the Circuit found -- you have to look at the briefing to see how that got away, but it's actually not so unlike the situation here. The Circuit came down pretty hard on this isn't -- our standard isn't maximization. It's whatever standard can be drawn out of the sand and gravel -- the mineral regulations. And I think that's -- and I think the Circuit would see this case the same way.

MR. LALONDE: Right.

THE COURT: I don't think they would look -- and I think I may have signaled that in an earlier opinion, but it's my view that the bare standard of maximization on any of these obligations is just very unlikely to be viewed in the current environment as a read out, a direct read out of any of the obligations

that are here. Having said that, that doesn't leave us with much more, does it? I mean, there's not a lot of law, frankly, on 161(a) and 162(a). And I'm going to be looking very hard to see, to the extent that there is comparative information on how other kinds of documents -- other similar types of investments are handled. I am not persuaded, for example, from the pretrial briefing, that using an average of what all the other Indians received is particularly probative on an investment regime, which required quarterly payments. If I'm stuck, I will end up having to take judicial notice, and I will do this if I have to. If I don't get evidence on periodic interest rates, I will just look at T-Bills. You'll just notice that I will just be looking at -- you know, I'll just be looking at publicly -- at documents, which are -- that would fit within the types of documents. I won't go very far to do that, but I will look at the documents that are publicly available about rates, interest rates, that would fit into whichever investment regime we're under. But looking at an annualized or multi-year return, it strikes me, is not something that I would do, knowing that there's publicly available data that I could, by judicial notice, employ, if I were in a situation of trying to find a test or benchmark for

an investment period of three months.

I think we're trying to find language that kind of -- that takes -- that doesn't have your agency language in it. But on page four, those are the government's investment practices in little iv are consistent with the actions of a reasonably prudent investor with a trustee in the circumstances. What are the circumstances?

MR. LALONDE: In fact, that's a government trustee. One of the circumstances are --

THE COURT: A government trustee with a ward. That's a -- I mean, the government could be a trustee in different circumstances; but, here, they're the trustee with the money of a ward, which probably put some additional pressure on the government as the trustee. A government trustee, depending on what year you're in, was following investment practices that the Congress has been describing to the Department of the Interior with different degrees of urgency about attempting to make money. The word "maximize" doesn't come into it. I think it does come in. You'll find it in legislative history. But, I don't think cases currently say that's our standard. It doesn't appear to be.

Now, what's left of 5-1 after -- on page