# In the United States Court of Federal Claims

No. 99-550 L
(into which has been consolidated No. 00-169 L)
(E-Filed May 1, 2006)

THE OSAGE TRIBE OF INDIANS OF OKLAHOMA,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

ORDER

Before the court is Defendant's Motion for Leave to Exceed 50-Page Limit for Post-Trial Briefs (Motion), filed electronically April 28, 2006. Defendant requests that the page limit for post-trial opening briefs established by the court's Order of February 28, 2006, be extended from 50 pages to 70 pages. Motion at 1. Defendant acknowledges that plaintiff opposes the extension to 70 pages but would not be opposed to a new limit of 60 pages. Id. Defendant supports its Motion by stating that it "must address the interpretation of the Osage regulations applicable to Plaintiff's royalty calculation and collection claims." Id. at 1-2. Defendant acknowledges that its request to exceed the page limit established for post-trial briefs was taken "[i]n light of the Court's rulings and views expressed during the pre-trial conferences and trial rejecting Defendant's argument that the Court should defer to the Interior Board of Indian Appeals' interpretation of the Osage regulations." Id. at 2. Defendant further supports its Motion by noting that its post-trial brief will also "fully address" the issue of the applicability of price controls to the calculation of royalties and "the manner in which the Osage Agency fulfilled its duties to collect and verify royalty payments." Id.

In an informal, unrecorded telephonic status conference held shortly after the filing of this Motion on April 28, 2006, the court heard the parties' positions on the justification for an extension of the page limit from 50 to 70 pages. The court, after hearing arguments, DENIED defendant's Motion.

The court memorializes its oral Order of April 28, 2006 and identifies for the record the following bases of its decision. First, none of the legal issues cited by defendant is of recent vintage. The action brought by the Osage Tribe has always contained at its core the alleged breach by the government of its fiduciary duties in regard to the collection and management of Osage trust funds derived from the Osage mineral estate. In the initial Complaint filed in docket no. 99-550 on August 2, 1999 (99-550 Complaint or 99-550 Compl.), the nature of the action is described in the following terms:

> This is an action for money damages for underpayment of oil royalties, an accounting, and for declaratory and/or injunctive relief, related to the loss of trust funds and property rights owned by the Plaintiff that were and are being lost by the United States by failing to collect and account for revenues from the production of oil on Osage land, including failing to obtain or assist the Plaintiff in obtaining the highest price that could have been and could be obtained from the sale of oil produced from the Osage mineral estate located in Osage County, Oklahoma, which minerals are held in trust by the United States for the benefit of the Osage.

99-550 Complaint ¶ 4. Defendant was clearly placed on notice that plaintiff's action would implicate the government's management of its trust responsibilities as defined under the Osage regulations and other pertinent statutes and treaties. In a separate Complaint filed by the Osage on March 31, 2000 in docket no. 00-169 (00-169 Complaint or 00-169 Compl.), plaintiff describes the nature of the suit as "an action for money damages for breach of fiduciary duty in the mismanagement of tribal trust funds and for failure to account."[1] 00-169 Compl. ¶ 4. The 00-169 Complaint details seven specific categories of damages including "[f]ailure to independently reconcile volumes of oil and gas produced with the amount of royalty paid by producers of sail oil and gas under Osage oil and gas leases; [f]ailure to obtain the price required to be paid to the Osage for royalty under the terms of said oil and gas leases; [f]ailure to collect the lawful rate of interest on late payments on the royalty proceeds on the sale of oil an/or gas from producers within Osage County; [and] [f]ailure to timely deposit oil and gas royalty revenue to the Osage tribal account upon receipt from producers/purchasers of minerals."

---

[1]Docket no. 00-169 was subsequently consolidated into docket no. 99-550 by the court's Order of September 14, 2005,

00-169 Compl. ¶ 21. Again, defendant was placed on notice that the damages alleged by plaintiff implicated the government's application of its fiduciary responsibilities relative to the revenues generated from the Osage mineral estate. The court does not agree that, after five years of discovery, hundreds of pages of briefing by each party, three days of pre-trial conferences, and a two week trial on these clearly identified matters, "extensive discussion and analysis . . . [of] the interpretation of the Osage regulations applicable to Plaintiff's royalty calculation and collection claims," Motion at 1-2, is still needed or appropriate.

Second, defendant's perceived need to provide a "necessarily extensive and thorough" discussion of the regulations in light of the court's position on the weight to be accorded to a decision delivered by the Interior Board of Indian Appeals (IBIA), a Department of the Interior adjudicatory body, is untimely and does not justify extended argumentation in a post-trial brief. Defendant chose a litigation strategy that centered in part on the adoption of an interpretation of specific terms in a regulation by a dependent body of the Department of the Interior in the context of a specific body of facts. Both the date of the decision and the time period during which most of the activities at issue in that hearing occurred are outside of, and subsequent to, the time periods covered by the Tranche One leases and months that constitute the prescribed scope of the litigation before the court at this time. The parties were informed by the court that the IBIA ruling constituted "persuasive authority only and, while entitled to appropriate consideration, [is] not binding on the court." Order of February 22, 2006 (quoting the Transcript of the Pre-trial Conference at 197:11-215:7. Defendant's request for additional space in which to argue a different interpretation of the regulations suggests a change in litigation strategy that is not appropriate for the more circumscribed function of post-trial briefs.

Third, the applicability of price controls to royalty valuation, while it is a more recently introduced issue and perhaps deserving of some attention in the post-trial briefs, does not alone or in conjunction with defendant's presentation at trial of the manner in which government performed its fiduciary duties in the areas of royalty calculation, collection and the investment of royalty payments, see Motion at 2, require defendant to exceed the set limit of 50 pages for its opening post-trial brief.

Finally, the page limit for the opening and closing post-trial briefs was first announced to the parties by the court in early January 2006. See Order of January 5, 2006 at 2. The parties have had adequate opportunity to request an extension of the page limit prior to this time. An increase in the page limit by 20 pages (or even 10 pages as was found acceptable by plaintiff) a mere four business days before the opening briefs are due for the purposes of expanded legal argument misses the point of the trial. As defendant acknowledged in its Motion, "the evidence in this case is voluminous and

consists of testimony from 17 witnesses, including five expert witnesses [and] 15 deposition designations . . . ." Motion at 2. The record is indeed extensive. The court does not believe that additional coherency would likely result from exceeding the allotted page limit to focus on legal argument. The court expects the parties to address the evidence and trusts that the parties will do so. Defendant's Motion is DENIED.

The parties are urged to contact the court at any time when they believe the involvement of the court will help to secure the just, speedy and inexpensive determination of this action. See RCFC 1.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge