**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 99-550 L (into which has been consolidated No. 00-169 L) Judge Emily C. Hewitt |
| | ) | Filed Electronically November 21, 2006 |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF OSAGE NATION'S**
**MOTION TO STRIKE NEWLY FILED EVIDENCE**

Plaintiff Osage Nation respectfully moves the Court to strike the new evidence unilaterally filed by the defendant United States on November 17, 2006, as exhibits to "Defendant's Calculation and Supporting Brief About Damages Owed to Plaintiff Pursuant to Court's September 21, 2006 Opinion and Order" ("U.S. Br."). The new evidence is comprised of (1) a sworn "Ronnie Martin Declaration of November 17, 2006, with attachments," and (2) a signed, unsworn "Gregory Chavarria Declaration of November 17, 2006, with attachments." U.S. Br. at vi.

The closing of the record should mean something; it serves the truth-seeking process and protects the investment of time, expense, and effort the parties and the Court put into the trial for Tranche One in this matter. It would be unfair and would undermine justice to give the United States a second chance to make its evidentiary presentation (with the added benefit of hindsight), and to trigger yet another cycle of expert reports, depositions, and testimony.

## I. THE UNITED STATES' FILING OF NEW EVIDENCE IS UNTIMELY AND DISREGARDS THE COURT'S ORDERS

On April 12, 2006, the Court closed the record for Tranche One: "The testimony and evidence on behalf of both parties is hereby ordered closed, subject only to the filing by the reporter of the transcript with the exhibits with the Office of the Clerk of the Court." Tr. 2442:17-20 (Hewitt, J.). Subsequently, upon issuing a decision finding liability on September 21, 2006, the Court ordered the parties to file "statements" calculating damages pursuant to the Court's opinion on the trial record:

> The parties shall . . . jointly calculate and present to the court the amount of damages to which plaintiff is entitled in accordance with the foregoing Opinion. . . . If for any reason the parties do not agree on any part of the damages calculations, the parties shall . . . also present to the court such calculations on damages as to which they do not agree accompanied by specific and complete statements explaining their respective positions and the bases therefor.

*Osage Tribe of Indians v. United States*, 72 Fed. Cl. 629, 671 (2006). This order does not reopen the evidentiary record. Rather, the Court ordered only the filing of an agreed-upon joint submission and separate "statements" explaining any disagreements. In context, the term "statement" plainly denotes legal argument based on record evidence. The United States has improperly gone beyond making a "statement"; it now proffers new testimony and evidence in the hope of receiving a second, unchallenged "bite at the apple" on various issues.

This new evidence would revise the United States' trial presentation and trial positions, including but not limited to:

- Reversing the United States' expert witness's position with respect to the royalty rate on the East Hardy lease[1];

[1] The Tribal Resolution that Mr. Martin offers in support of his new position, which is not in the record, is taken out of context, and says nothing about which of the two royalty rates in the Layton formation applied to the particular oil at issue in Tranche One.

- Providing additional expert testimony on whether the East Hardy price was for a sale made on a "Date of Delivery" (DOD) or "Equal Daily Quantities" (EDQ) basis, wherein Mr. Martin characterizes his "discussions" with "Agency personnel" in a manner inconsistent with his testimony at trial, *compare* Martin Decl. at ¶ 7 *with* Tr. 1613:2-20 (Martin);

- Launching a new post-trial attack on the 1989 Total Petroleum Price, with new expert testimony that this price is a DOD price, *see* Martin Decl. at ¶¶ 9-13[2];

- Advocating the use of a new set of "discount" interest rates, derived by Mr. Chavarria, that are lower than the investment-basis rates used at trial by the United States' expert on this issue, Mr. Lundelius, to calculate the 80/20 "expected" rate[3];

- Contradicting the Court's order that all amounts above $25,000 are counted as being available for investment; Mr. Chavarria admits that his manipulation of interest rates has the same effect as "reduc[ing] the average balance of the account [available for investment]," Chavarria Decl. at ¶ 12; and

- Offering new opinion testimony from Mr. Chavarria, based on his "extensive work with the historical account transactions contained in the data used by Andersen," Chavarria Decl. at ¶ 8, that advocates the reallocation of overnighter interest to years other than those in which it was actually paid to the trust according to the Statements of Account for 7386 in the record.

Every bit of this new testimony lacks merit. If this testimony, offered here in the safe confines of paper declarations, had been presented in expert reports, explored in depositions, and subjected to cross-examination at trial, the testimony and its corresponding lack of merit would be in the record. But the time for offering and evaluating the merits of such testimony has passed. The reason for holding a trial is to allow the orderly presentation of—and challenges to—testimony

---

[2] The United States and its expert, Mr. Martin, never discussed this position with plaintiff or plaintiff's expert, Mr. Reineke, during discussions leading up to the Joint Submission, and therefore plaintiff was unaware of the position and did not address it when it filed its damages brief on November 16, 2006.

[3] For reasons unexplained, the United States is now having Mr. Chavarria, not Mr. Lundelius, offer expert testimony on the expected rate; even if reopening the trial record were proper, Mr. Chavarria has not been qualified as an expert on calculating rates of return. *Compare* Tr. at 1828:24-1829:5 (Hewitt, J.) (qualifying Mr. Chavarria as an expert in accounting) *with* Tr. 2083:5-15 (Hewitt, J.) (qualifying Mr. Lundelius as an expert in calculation of rates of return as well as accounting).

and evidence, subject to cross-examination, impeachment, and adverse testimony and evidence. The United States cannot be allowed to defy the rules and waste plaintiff's resources and the Court's time by presenting new evidence at every juncture. The trial on Tranche One is over.

## II. THE UNITED STATES' NEW EVIDENCE IMPROPERLY SUPPLEMENTS THE JOINT SUBMISSION ON DAMAGES

Some portions of the United States' Declarations with attachments are offered as improper evidentiary supplementation of materials agreed to in the parties' Joint Submission on Calculation of Tranche One Damages ("Joint Submission"). The Osage Nation does not, of course, object to *arguments* based on jointly agreed-to materials, but it strongly objects to the United States' unilateral submission of expert witness testimony to supplement those materials.

The Osage Nation understood the Court's order to allow the joint filing, by agreement, of anything as to which "the parties do . . . agree on" as "part of the damages calculations." Consistent with this understanding, and in the interest of reaching agreement on as many issues as possible with the United States, the Osage Nation agreed (among other things) to the inclusion in the Joint Submission of Appendices A-C, to the average daily balances for accounts 7386 and 7886 (as provided in the parties' separate statements), to the use of Mineral Management Service (MMS) data for calculating royalty value, and to the use of the Federal Reserve Statistical Release as the basis for calculating the 80/20 "expected" rate of return.

Rather than simply cite to, and argue from, the face of those agreed-to materials, the United States offers new expert testimony that, in effect, contradicts the plain meaning of the materials by, among other things:

- Effectively revising the 1976 Statement of Account for 7886 (Appendix A to the Joint Submission), based on Mr. Chavarria's "[f]urther examination of the data," and evidence of a so-called "element component" of "9701" in unspecified "Andersen data," Chavarria Decl. at ¶ 7—none of which is in the trial record or in Appendix A; and

- Presenting unsupported expert opinion testimony—without any reference to the record or to any basis in MMS records—that, despite the parties' agreement as to which MMS prices were paid by "major purchasers" within the meaning of the Osage Regulations, *see* Joint Submission at ¶ 7, such prices should not be used as royalty prices for purposes of damages.

This new evidence must be excluded. The Osage Nation agreed only to the relevance of the materials referenced in the Joint Submission, not to a process in which the Court would hear additional evidence not agreed to by the parties.[4]

The materials referenced in the Joint Submission are plain on their face. The United States consented to their use in the Joint Submission, and is not at liberty to rely on new evidence to undermine their plain meaning. If for any reason the Court believes that the relevance and import of these materials depend upon further testimony or evidence—*i.e.*, that the Joint Submission is insufficient to allow the Court's use of such materials—the Court should simply disregard them at this stage of the case.

**CONCLUSION**

The Osage Nation respectfully requests that the Court strike the "Ronnie Martin Declaration of November 17, 2006, with attachments," and the "Gregory Chavarria Declaration of November 17, 2006, with attachments."

[4] The United States never sought the Osage Nation's assent to this new evidence; in fact, the Osage Nation had no notice of the United States' intent to file such declarations until the filing of the United States' Motion for One-Day Enlargement of Time dated November 16, 2006.

November 21, 2006

Respectfully submitted,

*s/Wilson K. Pipestem*

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation