**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed: December 8, 2006 |
| v. | ) | No. 99-550L (into which has been consolidated No. 00-169L) |
| THE UNITED STATES OF AMERICA, | ) | Judge Emily C. Hewitt |
| Defendant. | ) | |

**DEFENDANT'S BRIEF IN RESPONSE TO PLAINTIFF'S MOTION TO STRIKE NEWLY FILED EVIDENCE**


SUE ELLEN WOOLDRIDGE
Assistant Attorney General

BRETT D. BURTON
Counsel of Record for Defendant
United States Department of Justice- ENRD

KEVIN S. WEBB
MARTIN J. LALONDE
United States Department of Justice - ENRD
P.O. Box 663
Washington, D.C. 20044-663
Telephone: (202) 305-0212
Fax: (202) 353-2021
Attorneys for Defendant

OF COUNSEL:
Elisabeth C. Brandon
Brenda E. Riel
Candace N. Beck
Teresa E. Dawson

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. The Court's Opinion Contemplates Additional Factual Development . . . . . . . . . . . . . . . 4

II. To Calculate Damages in Accordance with the Court's Opinion, Defendant Appropriately Addressed New Factual Issues and Further Developed Facts Presented at Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

A. Defendant's Calculation of Damages Related to the Breach of Fiduciary Duties Related to the Collection of Royalties . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1. Use of the MMS Data as a Source for Offered Prices . . . . . . . . . . . . . . . 6

2. Use of East Hardy Lease Data . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3. Use of Total Statement Data . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

B. Defendant's Calculation of Damages as to the Breach of Fiduciary Duties Related to the Investment of Trust Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

1. Use of Discount Rates for Determining Expected Rate of Return . . . . . 11

2. Determination of Interest Earnings in Account 7886 in 1976 . . . . . . . . 13

III. Given the Existence of Factual Issues, It Would Be Appropriate for the Court to Reopen the Record to Allow the Parties to Present Evidence Related to the Factual Disagreements Over the Damages Calculations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**PAGE**

**FEDERAL CASES**

*Kona Tech. Corp. v. Southern Pacific Transp. Co.*, 225 F.3d 595 (5th Cir. 2000) . . . . . . . . . . . 14

*Matthew Bender & Co. v. West Pub. Co.*, 158 F.3d 674 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . 14

*Osage Tribe of Indians v. United States*, 72 Fed. Cl. 629 (2006) . . . . . . . . . . . . . 1, 2, 3, 4, 5, 6, 7

*Rivera-Flores v. Puerto Rico Tel. Co.*, 64 F.3d 742 (1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 14

*Sequa Corp. v. GBJ Corp.*, 156 F.3d 136 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15

*Smith v. Rogers Galvanizing Co.*, 148 F.3d 1196 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . 14

## INTRODUCTION

On September 21, 2006, the Court issued its Opinion and Order addressing the Tranche One trial. *Osage Tribe of Indians of Oklahoma v. United States*, 72 Fed. Cl. 629 (2006) ("Court's Opinion"). Among other things, the Court instructed the parties to calculate jointly and present to the Court the amount of damages that would be owed to Plaintiff under the Court's ruling and, to the extent that the parties were unable to agree on any part of the damages calculations, to present the areas of disagreement along with "specific and complete" explanations and bases for the parties' respective positions. *Id.* at 671.

Pursuant to the Court's Opinion, on November 16, 2006, the parties jointly submitted to the Court their agreement on certain issues regarding the damages calculation ("Joint Submission")[1/], and, on November 17, 2006, the parties filed separate briefs setting forth their respective calculations for Tranche One, with supporting rationales, regarding damages to which Plaintiff should be entitled under the Court's Opinion.

On November 21, 2006, Plaintiff filed a Motion to Strike Newly Filed Evidence ("Mot. to Strike"), regarding the exhibits attached to Defendant's Calculation and Supporting Brief About Damages Owed to Plaintiff Pursuant to Court's September 21, 2006 Opinion and Order ("Def.'s Br."), specifically, the declarations of Ronnie Martin and Greg Chavarria, along with corresponding attachments. This motion is unwarranted and should be denied.

Plaintiff correctly notes that the Court closed the record for Tranche One at the conclusion of trial on April 12, 2006, and that the Court's Opinion does not reopen the

---

[1/] Plaintiff filed an erratum on November 17, 2006, to the parties' joint submission filed on November 16, 2006, in order to delete three erroneously-filed pages. All page references in this response brief are to the joint submission re-filed on November 17, 2006.

evidentiary record to allow the parties to submit new evidence. Mot. to Strike at 2.[2] Nevertheless, the language of the Court's Opinion plainly contemplates additional factual development by the parties.[3] The Court ordered the parties to work together to derive a joint calculation of damages "in accordance with [its] Opinion[,]" *Osage Tribe*, 72 Fed. Cl. at 671, and, additionally, it raised new factual issues pertinent to the calculation of damages.

For example, for purposes of determining the damages related to uncollected oil royalties, the Court found that the use of government data, including that of the Minerals Management Service ("MMS"), would be appropriate as proxies for determining offered prices under the Osage regulations. *Id.* at 654. Neither party utilized MMS data at trial for offered prices, but, based on the Court's finding, they have done so now (even if the parties disagree over the proper use of the data). Further, for determining the damages as a result of Plaintiff's investment losses, the Court instructed the parties to calculate average daily balances, which also involved additional work, particularly related to the proper rate of return to use in calculating the expected returns on the daily balances. To calculate damages in accordance with the Court's findings and instructions, the parties had to address these new factual matters.

Also, the Court recognized that the parties might not agree to the damages calculation methodology. The Court did not limit, however, the bases for any such disagreement to the parties' respective view of the law or the facts as developed at trial, as Plaintiff suggests, Mot. to

---

[2] Cites to the parties' joint submission, Plaintiff's motion to strike, and the parties' respective briefs about damages, are to the page numbering generated by the Court's ECF system (*e.g.*, p. 2 of 6).

[3] As Defendant suggests, *infra* at 13-15, due to the introduction of new factual issues, it would be appropriate for the Court to reopen the record in this matter and take additional evidence from the parties. *See Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

Strike at 2. Rather, the Court invited the parties to explain disagreements that arose "for any reason." *Osage Tribe*, 72 Fed. Cl. at 671.

In short, because the Court recognized new and additional factual issues relevant to the damages calculation and allowed the parties to disagree as to the calculation "for any reason," Defendant reasonably concluded that the Court was not barring Defendant from basing its disagreements on facts that were not established in the record. Further, Defendant appropriately saw the need to present the factual bases for its positions through the declarations of Ronnie Martin and Greg Chavarria – a more competent source for explaining those positions than that chosen by Plaintiff, i.e., unsupported factual assertions from Plaintiff's counsel in its brief.

In any event, Plaintiff has introduced additional facts, primarily its listing of relevant MMS price data, which is different than the list proffered by Defendant. Further, Plaintiff advances certain factual arguments that do not have a basis in the trial record, including its rationale for converting T-bill rates to an investment basis, [Corrected] Plaintiff Osage Nation's Brief in Support of Proposed Calculation of Tranche One Damages, Appropriate Rate of Interest to Apply in Determining the Current Value of Those Damages, and Entitlement to Late Fees ("Plf.'s Br.") at 21, and its estimated lag days between receipt of royalties and their deposit, *id.* at 29. Unlike Defendant, however, Plaintiff based its positions on these factual matters on statements in its brief, not explanatory declarations or statements from its experts.

Defendant was justified in providing its bases for its positions through the use of statements from its experts. Accordingly, the Court should deny Plaintiff's Motion to Strike. Further, if the Court deems it appropriate or necessary to resolve the factual issues that the parties have raised, the Court should reopen the record, allow the parties to file cross-motions for

summary judgment on the narrow remaining disputes related to the damages calculation, and, if necessary, conduct a limited evidentiary hearing to resolve any material facts that remain in dispute after ruling on the motions for summary judgment.

**I. The Court's Opinion Contemplates Additional Factual Development**

Defendant's calculation filing was proper pursuant to the plain language of the Court's Opinion. The Court directed the parties to seek jointly to calculate Plaintiff's damages "in accordance with [its] Opinion." *Osage Tribe*, 72 Fed. Cl. at 671. To the extent the parties were unable to agree to the calculations, the Court instructed them to present the calculations on damages on which they do not agree. Naturally, such individual calculations are also required to be "in accordance with [the Court's] Opinion." *Id.*

In its Opinion, the Court raised certain factual issues that the parties had not addressed at trial. For example, the Court stated that the parties could use government data of the Oklahoma Tax Commission or the MMS as a "satisfactory proxy" for determining the highest offered price. *Id.* at 654. At trial, Plaintiff's expert opined that MMS data could be used as a proxy for offered prices, but did not explain how that data could be used. Trial Transcript ("Tr.") at 107:19-109:4. In addition, no MMS data was introduced at trial. Further, the Court instructed the parties to use a new methodology for calculating damages related to Defendant's breaches of investment duties. *See Osage Tribe*, 72 Fed. Cl. at 671. The implementation of this methodology would necessarily require the parties to address additional factual issues, including the appropriate manner to determine the average daily balance and the appropriate rates of return to use to calculate expected returns. Thus, for a party to present its calculations in accordance with the Court's Opinion, the party would have to address these new factual issues, through appropriate

means, such as declarations.

In addition, the Court stated that '[i]f *for any reason* the parties do not agree on any part of the damages calculations, the parties shall . . . also present to the court such calculation on damages as to which they do not agree accompanied by *specific and complete* statements explaining their respective positions and *the bases* therefor." *Id.* at 671 (emphasis added). Contrary to Plaintiff's assertion, Mot. to Strike at 2, the Court, by this language, did not restrict the parties to submitting "statements" setting out only their legal disagreements or contending positions related to the trial record. The Court used expansive language – "*if for any reason* the parties do not agree" (emphasis added) – to describe the permissible scope of the parties' respective grounds for disagreements. The phrase "if for any reason" does not limit the type of disagreements to legal issues or the source of disagreements to the existing factual record. The language encompasses factual, as well as legal, disagreements, whether preexisting or engendered by the Court's Opinion.

Moreover, the Court directed the parties to present "specific and complete statements" including the "bases" for their positions. To the extent the parties have factual disagreements, the Court's Order required the parties to submit complete explanations of and the bases for their factual positions. The Court did not limit the bases for such disagreements to evidence contained in the trial record. It also did not prohibit Defendant from relying on declarations as the bases for the disagreements or in support of the bases for its positions.

The language of the Order contemplates that the parties would address factual issues. To the extent that these issues would best be illuminated by competent explanations from the parties' experts, the Order does not bar the use of such explanations.

## II. To Calculate Damages in Accordance with the Court's Opinion, Defendant Appropriately Addressed New Factual Issues and Further Developed Facts Presented at Trial

As explained above, the Court instructed that the parties jointly, or to the extent they could not agree, separately, calculate damages "in accordance with the [Court's] Opinion." *Osage Tribe*, 72 Fed. Cl. at 671. In accordance with the instructions in the Court's Opinion, the parties addressed new and previously existing factual issues. Defendant presented its positions on these issues in its damages brief, based on the declarations of two experts from the Tranche One trial, Ronnie Martin and Greg Chavarria.

### A. Defendant's Calculation of Damages Related to the Breach of Fiduciary Duties Related to the Collection of Royalties

In its Opinion, the Court held, in part, that Defendant breached its fiduciary duties by failing to collect royalties based on the highest offered price. *Osage Tribe*, 72 Fed. Cl. at 671. In order to comply with the Court's directive to calculate damages "in accordance with [its] Opinion[,]" *id*., Defendant had its oil and gas expert, Mr. Martin, revise the calculation and methodology that Defendant used at trial to consider offered prices of major purchasers in the Kansas-Oklahoma area, regardless of whether these prices were available to the Osage lessees.[4/] Def.'s Br. at 10-11. As set out below, these revised calculations raised new factual issues and required additional development of factual issues addressed at trial.

#### 1. Use of the MMS Data as a Source for Offered Prices

Plaintiff argues that Defendant agreed to the use of MMS data for calculating royalty value and "is not at liberty to rely on new evidence to undermine" the "plain meaning" of the

[4/] To accord with the Court's Opinion, Mr. Martin also revised his trial calculation and methodology by applying unregulated prices as the basis for royalty payments on regulated oil during the Price control era. Def.'s Br., Ex. 1 ("Martin Decl.") ¶ 4.

MMS data by presenting "unsupported expert testimony" that certain prices of major purchasers should not be utilized for calculating damages. Mot. to Strike at 4-5. Plaintiff's argument is without merit.

In its Opinion, the Court stated that the parties could use government data of the Oklahoma Tax Commission or the MMS as a "satisfactory proxy" for determining the highest offered price. *See Osage Tribe*, 72 Fed. Cl. at 654. As neither party utilized the MMS data in calculating oil royalty underpayments during the Tranche One trial, the use of this data by both parties necessarily required additional factual development, *see* Joint Submission at 2. As explained in Defendant's Brief and Exhibit 1, Ronnie Martin's Declaration ("Martin Decl."), the use of the raw MMS data is not a straightforward process and requires certain adjustments to address the fundamental limitations of the data. Def.'s Br. at 15-16; Martin Decl. ¶¶ 17, 19. Also, these necessary adjustments raise additional factual issues, some of which Defendant addressed through Mr. Martin's explanatory declaration.

Plaintiff claims that Defendant agreed to the use of MMS data (prices paid by major purchasers) for calculating royalty value and is now offering unsupported expert testimony as additional evidence.[5/] Mot. to Strike at 4-5. This claim is erroneous. Rather, in the Joint Submission, Defendant merely agreed on which prices in the MMS data were offered by major purchasers. At the same time, in the Joint Submission, the parties also indicated that "disagreements remain over whether particular prices by major purchasers in the MMS dataset

---

[5/] Plaintiff indicates that Defendant never sought Plaintiff's assent to this new evidence (declarations). Mot. to Strike at 5 n.4. Defendant did not conceal its intention to attach declarations to its brief. Rather, Defendant did not approach Plaintiff regarding the use of declarations because Defendant did not foresee this as a potential issue. It was, and is, Defendant's position that declarations are an appropriate way to provide a factual foundation for assertions in the parties' briefs.

may be used to set royalty value for the Tranche One leases in the Tranche One months." Joint Submission at 4. In its damages brief, Defendant explained its disagreements related to several fundamental limitations of the MMS data as a source for offered prices, and appropriately provided the declaration of Defendant's expert as the basis for these disagreements. Def.'s Br. at 15-16; Martin Decl. ¶¶ 17, 19.

Plaintiff contends that Defendant presents "unsupported expert testimony" that particular prices of major purchasers should not be used as a source of offered prices. Mot. to Strike at 5. In contrast to Plaintiff, which relied solely on its attorneys' explanations in its brief and attached exhibits for its damages calculations,[6] Defendant explained its disagreements and supported its positions and calculations associated with the MMS data with a declaration from Mr. Martin. Based on his expertise and experience in the oil industry, Mr. Martin pointed out the fundamental limitations of the MMS data, such as its failure to indicate the day of the month on which a sales transaction occurred and certain errors in calculated values. Martin Decl. ¶ 17. Additionally, based on his oil industry expertise, Mr. Martin excluded certain transactions that, for example, contained data anomalies and Date of Delivery ("DOD")[7] sales, along with explanations for the exclusions. Martin Decl. ¶¶ 19, 21, 23-24.

---

[6] For example, for July 1989, Plaintiff utilized the MMS data and determined that Mobil paid $21.00 outside Osage County, Plf.'s Br. at 10-11, based on a transaction associated with 0.72 barrels for the month (Plf.'s Br., Ex. 3 at 1), without any supporting declaration. This is just the type of determination that should have been supported with an explanatory declaration, due to factual disagreements between the parties. As noted in Mr. Martin's declaration, small volumes (less than a barrel) should not be considered as they are likely adjustment payments and can distort the sales price. Martin Decl. ¶ 19.

[7] Mr. Martin did not consider DOD sales because DOD sales are only applicable to particular days of the month. The use of DOD prices for all days of the month leads to inaccurate royalty calculations because DOD prices can vary over the course of a month. Martin Decl. ¶ 23.

It seems strange that Plaintiff should complain about Defendant's calculation filing, especially given Plaintiff's own filing. Notwithstanding its objections to Defendant's calculation filing, Plaintiff presented additional facts and analysis regarding the Court's adoption of a new methodology, unsupported by any expert and presented only by Plaintiff's counsel. In contrast, pursuant to the Court's request for a detailed explanation of the disagreements, Defendant presented the additional facts and analysis required by the Court's adoption of a new methodology, supported by explanatory declarations of experts.

**2. Use of East Hardy Lease Data**

Plaintiff argues that Defendant is providing, through the Martin declaration, new evidence related to the price received for oil from the East Hardy lease that revises the United States' trial presentation and trial positions. Mot. to Strike at 2. The alleged new evidence relates to whether the East Hardy sales prices were DOD or Equal Daily Quantities ("EDQ"). Plaintiff is mistaken. Defendant is not offering new evidence to supplement the trial record. Rather, Defendant is providing additional factual development so that its damages calculations comport with the Court's Opinion related to offered prices. In any event, Defendant's consideration of this issue is consistent with its trial position and provides additional details to provide a "complete statement" of the bases for its position, as required by the Court's order.

At trial, Mr. Martin assumed that oil sales for the East Hardy lease were DOD sales, as opposed to EDQ sales. Tr. at 1612:10-20. Mr. Martin testified that he thought his assumption was based on discussions with agency staff and he indicated that he did not find any "*documentary evidence* indicating definitively that East Hardy was a date of delivery sales method . . . ." Tr. at 1613:6-20 (emphasis added). Similarly, in his declaration, Mr. Martin also assumed that oil sales for the East Hardy lease were DOD sales and based his assumption on

discussions with BIA Osage Agency personnel. Martin Decl. ¶ 7. During these discussions, Osage Agency personnel informed Mr. Martin that during the Tranche One period, crude oil for the East Hardy was picked up at the lease by tanker trucks. *Id.*

Mr. Martin's declaration is consistent with his testimony at trial. At most, Mr. Martin, in his declaration, added additional details regarding the content of his discussion with Osage Agency personnel.[8/] The explanations in his declaration provide appropriate support for Defendant's position on the use of the East Hardy price data as a proxy for offered prices.

**3. Use of Total Statement Data**

Plaintiff claims that Defendant has improperly launched "a new post-trial attack on the 1989 Total Petroleum Price, with new expert testimony." Mot. to Strike at 3.[9/] Plaintiff's claim is without merit. Although Defendant has introduced additional facts regarding the Total

---

[8/] Plaintiff also argues that Defendant proffers new evidence, a Tribal Resolution, which reverses Defendant's previous position with respect to the royalty rate for the East Hardy lease. Mot. to Strike at 2. At trial, because Defendant did not consider the price paid on the East Hardy lease as a valid offered price for determining royalties on other leases, the issue of which royalty rate applied to the lease was not critical to Defendant's determination of whether the correct royalties were collected. Now that the Court has instructed the parties to calculate damages in accordance with its Opinion, which would recognize the East Hardy price as a proxy for offers to other lessees, the royalty rate on the East Hardy unit is of greater prominence and has led to a disagreement over the damages calculations presented by the parties. Defendant presented the Tribal Resolution as further support for its basis for its position regarding the royalty rate. Nevertheless, to narrow the disputed issues, Defendant presented the Tribal Resolution in support of an alternative damages calculation. In any event, Defendant's primary damages calculation continues to assume, despite the new facts to the contrary, a 1/8 royalty rate on the East Hardy lease.

[9/] Plaintiff incorrectly states that Defendant and its expert, Mr Martin, never discussed its position regarding the Total Petroleum price with Plaintiff or its expert, Mr. Reineke, prior to the filing of the Joint Submission on November 16, 2006. Mot. to Strike at 3 n. 2. Defendant and Mr. Martin explained their position regarding the Total Petroleum price to Plaintiff and Mr. Reineke on October 27, 2006. In addition, Mr. Martin discussed this position on several occasions with Mr. Reneike during the first two weeks of November and Defendant's counsel discussed this position again with Plaintiff's counsel on November 15, 2006.

Petroleum price, such additional factual development is both contemplated and required by the Court's Opinion.

In order to calculate damages "in accordance with the [Court's] Opinion" related to offered prices, Mr. Martin revised the calculations that he provided at trial in order to take into account additional offered prices, including those related to the Total Petroleum statement that Plaintiff's expert used at trial. At trial, Mr. Martin did not consider this offered price based on his understanding that an offered price only applied to the person to whom it was offered. *See* Tr. at 1403:12-19. In light of the Court's Opinion, however, Mr. Martin has now considered how the Total Petroleum price should be utilized as an offered price. As part of this analysis, Mr. Martin had to determine, in the first instance, whether the transaction price from the Total Petroleum statement, $20.25, should be treated as a DOD price or an EDQ price. For all the reasons previously set out in Defendant's brief on damages, Mr. Martin determined that the price of $20.25, which Plaintiff's expert introduced as a price paid by Total Petroleum, should be treated as a DOD price and only utilized $20.25 as an offered price for particular days of the month, as opposed to an average monthly price. Def.'s Br. at 14; Martin Decl. ¶¶ 9-13. This analysis was simply not necessary until Mr. Martin had to revise his methodology offered at trial in order to accord with the Court's Opinion.

Mr. Martin's elucidation of Plaintiff's proposed use of the Total Petroleum price is properly part of Defendant's complete statement of the bases for its disagreement over this aspect of Plaintiff's proposed damages calculation.

### B. Defendant's Calculation of Damages as to the Breach of Fiduciary Duties Related to the Investment of Trust Funds

#### 1. Use of Discount Rates for Determining Expected Rate of Return

Plaintiff asserts that Defendant is using new "discount" interest rates derived by Defendant's expert, Greg Chavarria, that are lower than the investment-based rates used at trial and that Defendant's use of such rates revises the United State's position taken at trial. Mot. to Strike at 2-3. Plaintiff is wrong. The rates of return used by Defendant at trial served a separate and distinct purpose than the rates of return that Defendant proposes should be used for calculating damages.

At trial, and in his expert report, Defendant's trial expert Charles Lundelius sought to compare actual rates of return on specific royalty collections with an expected rate of return. DX2695-0014 ¶ 32. As Plaintiff correctly noted in its damages brief, Mr. Lundelius's report used investment-basis numbers to calculate his expected rates. Plf.'s Br. at 26. Plaintiff's statement is not dispositive of the issue, however. The actual returns that Mr. Lundelius calculated also resulted in the equivalent of investment-basis rates. Mr. Lundelius first summed up the total earnings, including interest as well as interest on interest, and then divided the total earnings by the principal amount to arrive at the investment-basis actual rates. *See, e.g.,* DX2695-0014 ¶ 32; DX2695-0054-0056. Thus, when comparing the expected rate with the actual rate, Mr. Lundelius properly compared equivalent investment-basis rates.

As explained in Defendant's damages brief, calculation of damages based on an average daily balance of funds that should have been invested – a new matter introduced by the Court's Opinion – required a different approach. Def.'s Br. at 23-24. It was appropriate for Defendant either to adjust the average daily balances to reflect principal, only, and use an investment rate for calculating expected returns, or to use an average daily balance that included both principal and interest and use a discount rate for calculating expected returns. Either approach would serve to prevent Plaintiff from receiving damages to which it is not entitled resulting from

double-compounding. Therefore, it was appropriate for Defendant to base its position on this disagreement on an expert's explanatory declaration.[10]

### 2. Determination of Interest Earnings in Account 7886 in 1976

Plaintiff asserts that Defendant "effectively revis[ed] the 1976 Statement of Account for 7886" based on Mr. Chavarria's examination of the data. Mot. to Strike at 4. The parties agreed to provide the statements for Account 7886, which was the account in which statutory interest was posted for the cash in Account 7386. Defendant should not be precluded, as Plaintiff urges, from providing its understanding of the meaning of those statements, especially when it is not plain on the face of the statements. Based on his extensive experience with Department of the Interior trust accounts and his knowledge of reconciliation project data related to the codes used in postings to the accounts, Mr. Chavarria was able to interpret the statement's codes to determine the interest that was posted to those accounts. Mr. Chavarria's declaration was a proper basis for Defendant's complete statement explaining its position on the use of the 1976 Statement for Account 7886 and the bases for its position.

## III. Given the Existence of Factual Issues, It Would Be Appropriate for the Court to Reopen the Record to Allow the Parties to Present Evidence Related to the Factual Disagreements Over the Damages Calculations

For the reasons stated above, the proper course for the Court is to reject Plaintiff's attempt to strike Defendant's declarations and the attachments thereto, which were provided to

---

[10] Plaintiff also addressed the factual issue of the appropriate basis for the rate of return. Plaintiff's rationale for the appropriate return is based, in part, on an article from the Federal Reserve Bank of New York. Plf.'s Br. at 21. The article, Plaintiff presumably maintains, supports its use of investment-basis rates for T-Bills to calculate expected returns. This constitutes new factual information. Thus, when weighing the parties' arguments on Plaintiff's motion to strike, the Court should note that Plaintiff has also engaged in the same conduct as which Plaintiff accused Defendant.

the Court pursuant to its order to provide a complete explanation of the parties' respective positions and the bases therefore. Rather, an appropriate course is for the Court to reopen the record.

In determining whether to reopen the record, the Court should consider three factors: whether (1) the additional evidence is probative and important; (2) the moving party had a *bona fide* reason for not introducing the evidence earlier; and (3) reopening the record will not unduly prejudice the nonmoving party. *Rivera-Flores v. Puerto Rico Tel. Co.*, 64 F.3d 742, 746 (1st Cir. 1995); *Kona Tech. Corp. v. Southern Pac. Transp. Co.*, 225 F.3d 595, 609 (5th Cir. 2000); *Matthew Bender & Co. v. West Pub. Co.*, 158 F.3d 674, 679 (2d Cir. 1998) .[11/] These factors are discussed *seriatim*.

First, as developed in Defendant's statement of its position on the damages calculation and in this response to Plaintiff's Motion to Strike, additional evidence is important and probative. Among other things, it would explain the proper use of the MMS data as a proxy for offered prices, why sales transactions associated with the East Hardy lease and the Total Petroleum statement should be treated as DOD sales, and the proper manner in which to calculate the expected return.

Second, Defendant had no reason or occasion to introduce certain evidence at trial. For example, Plaintiff raised the use of MMS data at trial in only a cursory way, *see* Tr. at 107:19-109:4, with no MMS data actually introduced as evidence. Therefore, Defendant had no reason to introduce evidence of the appropriate manner in which to use MMS data. The Court,

---

[11/] The Tenth Circuit has similar factors: (1) the character of the additional evidence; (2) the time when the motion is made; and (3) the potential prejudicial effect of granting or denying the motion. *Smith v. Rogers Galvanizing Co.*, 148 F.3d 1196, 1198 (1998).

however, has instructed the parties to calculate damages "in accordance with [its] Opinion," and expressly stated that MMS data could be used as a proxy for offered prices. Further, the appropriate manner to calculate expected returns based on average daily balances was not at issue at trial. The Court's methodology for calculating damages set forth in its Opinion and Order raises this issue for the first time.

When a Court has introduced additional factual issues related to damages that were not addressed at trial, it is appropriate to reopen the record to allow additional factual development. *See Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (finding that the district court erred in denying the *Sequa* parties' motion to reopen the record; a limited reopening of the record was appropriate, in part, because the district court had directed the calculation of damages based on evidence that was not presented at trial). As the Court's Opinion requires the parties to revise the calculations presented at trial and present additional facts, it would be appropriate for the Court to provide a limited reopening of the record.

Third, reopening the record narrowly will not unduly prejudice the non-moving party. Plaintiff, just like Defendant, has already prepared revised damages calculations in accordance with the Court's Opinion and developed its position on certain factual issues, albeit without any expert support for its positions.

In reopening the record, the Court could initially consider the issues related to the damages calculations through motions for summary judgment. To the extent that material issues of fact remain in dispute, a limited evidentiary hearing could be scheduled.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's Motion to Strike.

Respectfully submitted this 8th day of December, 2006,

*s/ Brett D. Burton*
BRETT D. BURTON
Counsel of Record for Defendant

*s/ Martin J. LaLonde*
MARTIN J. LALONDE
KEVIN S. WEBB
United States Department of Justice - ENRD
Washington, D.C. 20044-663
Telephone: (202) 305-0212
Fax: (202) 353-2021
Attorneys for Defendant

OF COUNSEL:
Elisabeth C. Brandon
Brenda E. Riel
Candace N. Beck
Teresa E. Dawson