**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 99-550 L (into which has been consolidated No. 00-169 L)<br>Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | Filed Electronically<br>December 18, 2006 |
| Defendant. | ) | |

**PLAINTIFF OSAGE NATION'S REPLY TO UNITED STATES' RESPONSE TO MOTION TO STRIKE NEWLY FILED EVIDENCE**

The unstated premise of the United States' Response to the Motion to Strike ("Resp.") is that the Court's Opinion is internally inconsistent—on the one hand, the Court closed the record on Tranche One issues, but, on the other hand, its rulings require the type of evidentiary submission made by the United States. Indeed, the United States criticizes the Osage Nation for not submitting new expert testimony of its own. In response to this purported inconsistency, the United States does not itself move to re-open the record but instead explains why the Court should re-open to fix the purported problem.

The United States' premise is unsound. The suggested inconsistency does not exist, and compliance with the Court's instructions does not require re-opening the trial record.

## I. THE COURT'S ORDER REQUIRES ONLY ARITHMETICAL CALCULATIONS BASED ON SPECIFIED DATA SETS ADVOCATED AT TRIAL, NOT NEW EXPERT TESTIMONY

The United States argues that, despite the Court's closing of the record at the end of trial, "[i]n its Opinion, the Court raised certain factual issues that the parties had not addressed at trial." Resp. at 4; *accord* Resp. at 2 ("[T]he Court . . . raised new factual issues."); Resp. at 3

("[T]he Court recognized new and additional factual issues relevant to the damages calculation . . . ."). This is incorrect. The Court ordered only that the parties "calculate" damages using methodologies and data sets specified in the Opinion:

> The parties shall . . . jointly *calculate* and present to the court the amount of damages to which plaintiff is entitled in accordance with the foregoing Opinion. . . . If for any reason the parties do not agree on any part of the damages *calculations*, the parties shall . . . also present to the court *such calculations on damages as to which they do not agree* accompanied by specific and complete statements explaining their respective positions and the bases therefor.

*Osage Tribe of Indians v. United States*, 72 Fed. Cl. 629, 671 (2006) (emphasis added). The Court's Opinion identifies which of the various data sets and methodologies advocated by the parties at trial are to be used in the calculations. Therefore, the "calculations" ordered by the Court are essentially arithmetical exercises on which the parties should have been able to agree—not forays into unbounded, inherently controversial post-trial factual development. The Court's instruction that the parties "jointly calculate and present" damages precludes any suggestion that the parties were supposed to be offering new evidence to challenge or limit the methodologies and data specified by the Court.

In its damages brief, the Osage Nation presented what it understood to be the type of calculations ordered by the Court. That is, using only arithmetic, the Osage Nation applied the methodologies specified in the Court's Opinion to the data sets that were advocated at trial and accepted by the Court in its Opinion. Although not every data point required to calculate damages was entered into the record at trial, the parties stipulated to such data points in their Joint Submission on Calculation of Tranche One Damages ("Joint Submission"). The way in which the Osage Nation calculated damages refutes the United States' argument that the Court's Opinion raises new factual issues and requires a re-opening of the record.

On the amount of oil royalty undercollections, the Osage Nation did only two kinds of calculations. One, in accordance with the Court's ruling, the Osage Nation recalculated the oil price figures presented at trial so that they reflect differences in gravity. Two, also in accordance with the Court's ruling, it recalculated the highest offered price for each Tranche One month, by eliminating the Cushing price and including stipulated MMS data on offered prices as a proxy drawn from government records. (Although the United States does not agree on how MMS data should be *used*, it has stipulated to a set of data that represents the highest price paid by a major purchaser and reported by MMS. *See* Joint Submission ¶ 5 ("The parties have agreed on which [MMS] prices were offered by 'major purchasers' within the meaning of the Osage Regulations.").)

On underinvestment and underperformance of investments, the Osage Nation followed what it understood to be the methodology specified in the Court's Opinion. *See Osage Tribe*, 72 Fed. Cl. at 670-71. The Osage Nation's calculations relied on average daily balances and amounts of interest credited to the main trust account (7386) to which the parties had agreed, and which were based entirely on the Statements of Account in the record for account 7386. The Osage Nation made a minor adjustment to this data, which reduced its damages, based on materials added by stipulation.[1] Except for the stipulated materials (which are from the same source and in the same format as the 7386 statements presented at trial), the data used to perform these calculations is in evidence.

[1] In a good-faith attempt to correct an oversight that the Osage Nation itself identified, the Osage Nation both proposed and agreed to include as part of the Joint Submission three statements for account 7886 that were not presented at trial. Parties are free to make stipulations without opening the door to other materials not covered by stipulation, such as Mr. Chavarria's untimely, self-serving, and non-expert opinions that would substitute his own private data for the data in the stipulated materials.

For the expected rate, both parties at trial relied on the numbers presented by Mr. Lundelius, which, as discussed at trial, were calculated using the Federal Reserve website, Tr. 2136:13-24 (Lundelius), and which, as the United States has admitted, were calculated on an investment basis, Resp. at 12. The Osage Nation's damages brief relied on this same website and used investment-basis rates. Where investment-basis rates were not available, it derived such rates from discount rates on the website, using an algebraic formula to which the parties stipulated in the Joint Submission. *See* Joint Submission ¶ 4 & n.3. Thus, the Osage Nation used the same data that the parties had presented at trial in calculating the expected rate, but applied the Court's specified methodology in redoing the calculations.[2]

On the issue of deposit lag, the Court held that the United States is liable for any failure to deposit a check within 24 hours, but did not expressly specify a methodology for calculating the time it actually took for the United States to deposit checks. On this issue, the Osage Nation used the same data set it used at trial, namely, the Arthur Andersen report, as well as record facts (that are also judicially noticeable) of the number of business days and calendar days between Friday and Monday, *see* Tr. 1728:11-18 (Hill) ("best-case scenario" for checks submitted to Osage Agency in Pawhuska on a Friday was receipt in Muskogee on a Monday); Tr. 1753:4-5 (Hewitt, J.) ("The Court has judicial notice of the days of the week."). The Osage Nation applied a methodology similar to that specified by the Court for other investment claims, calculating damages on an average annual basis and dividing by 12 to get an average amount for each Tranche One month. Annual data for the amounts of EFT payments is not in the record, so the

[2] Exhibit 6 to the Osage Nation's damages brief was included to explain the distinction between investment-basis rates and discount-basis rates. It was intended to be informational and explanatory rather than evidentiary. If the information is of no non-evidentiary use to the Court, it should be disregarded.

Osage Nation has offered to stipulate to such amounts if the United States comes forward with adequate supporting information. *See* Osage Damages Br. at 24.

In sum, with the exception of annual data on EFT payment amounts, all of the data sets needed for the calculation of damages were discussed at trial, and, under the Joint Submission, there is no disagreement over what the specific data points are. Which data points are relevant, and how such data should be used, were litigated at trial and discussed in the Court's Opinion. Thus, the Court's Opinion does not "raise new factual issues." Rather, the *United States* seeks to raise new factual issues and relitigate factual issues it addressed at trial. This is improper because the United States' new evidence could and should have been presented at trial, not in post-trial briefing.

## II. THE TOPICS ON WHICH THE UNITED STATES OFFERS NEW EVIDENCE WERE ALL AT ISSUE DURING THE TRIAL

The United States has responded to the Court's request for calculations with a bootstrap to get a chance to fix its mistakes and omissions at trial. Its declarations purport to create and then resolve any number of matters that could have been—but were not—presented at trial as alternative defenses or arguments. "Courts have repeatedly been forced to warn counsel that they are not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then . . . advance new theories or adduce new evidence in response to the court's rulings." *Transport Workers Union of Am., Local 100, AFL-CIO v. New York City Trans. Auth.*, 2004 WL 2480452, *1 (S.D.N.Y. 2004) (citation omitted).

The United States acknowledges that it is offering new defenses to the claims presented at trial. For example, the Osage Nation presented evidence at trial regarding an offered price by Total Petroleum for July 1989 that the United States did not rebut or address at trial. In its Response, the United States excuses itself for previously relying exclusively on the rationale of

*Okie Crude*: "At trial, Mr. Martin did not consider this offered price [the Total Petroleum price] based on his understanding that an offered price only applied to the person to whom it was offered." Resp. at 11. The United States asserts that "introduc[ing] additional facts" for a new post-trial defense to the Total Petroleum price is "required" and "necessary" *only* because the United States expected to prevail on its *Okie Crude* view of offered prices. Resp. at 10-11.

But trial, and not post-trial briefing, is the proper time to present alternative defenses. "[B]y failing to raise an issue when it is first available to be litigated, a party waives consideration by the court of the issue . . . ." *Corrigan v. United States*, 70 Fed. Cl. 665, 668 (2006) (Hewitt, J.). Moreover, the Court told the United States at the pretrial conference that the Court had doubts about the rationale of *Okie Crude*. *See* Pretrial Conf. Tr. at 216:21-24 (Feb. 16, 2006) (*Okie Crude* is "not authoritative" in the Court of Federal Claims, "but could be persuasive if it's right. *My view, it's not*, but that's—you know, you have the post-trial briefing and all this other kind of stuff.") (emphasis added). Thus, not only did precedent and common sense dictate the presentation of alternative defenses at trial, but the United States had actual notice of this point with respect to the offered-price issue.

Similarly, the United States admits that at trial it "did not consider the price paid on the East Hardy lease as a valid offered price for determining royalties on other leases." Resp. at 10 n.8. But, now that it has lost on its argument that *Okie Crude* disqualified this price, the United States says that the East Hardy royalty rate issue has assumed "greater prominence." Resp. at 10 n.8. The United States is not entitled to rely on its own lack of foresight or its own unrealistic expectations to justify the introduction of new evidence. And this is indeed new evidence: despite the United States' claim that it "is not offering new evidence" (Resp. at 9) on the East Hardy royalty rate, the United States admits it is offering "additional factual development"

(Resp. at 9), "additional details" (Resp. at 9), "appropriate support" (Resp. at 10), "further support," (Resp. at 10 n.8), and "new facts" (Resp. at 10 n.8) for its position.

The United States' attacks on the "fundamental limitations of the [MMS] data" (Resp. at 7) are not only untimely but ill-conceived. The Court's Opinion holds that government records such as MMS and Tax Commission records are "satisfactory prox[ies] at this juncture" for the missing data. *See Osage Tribe*, 72 Fed. Cl. at 654. That should be the end of the matter. The United States re-attacks the MMS data post-trial with new testimony that challenges the Court's holding regarding satisfactory proxies, and that demands a level of precision to which it as a trustee in breach is not entitled. A proxy is not meant to be precise and the United States is not entitled at this stage to raise new challenges to proxies that it contested on other grounds at trial. If anything, the MMS data likely understates the damages due the Osage Nation, but in any event, the United States cannot in fairness be allowed at this stage to re-open the issue of whether its own MMS records on their face are an adequate proxy for the records that it as trustee failed to gather and preserve.[3]

"The time for testing of proof is the time of trial. Our judicial system does not contemplate that the rights of litigants shall be held in abeyance for months or years in order that hindsight may provide a more accurate appraisal of evidence." *Locklin v. Switzer Bros., Inc.*, 299 F.2d 160, 169 (9th Cir. 1961).

[3] As previously noted, the parties referred in the Joint Submission to only MMS data because other government records could not be obtained within the time available. Osage Damages Br. at 4 n.1.

**CONCLUSION**

The Osage Nation respectfully requests that the Court strike the "Ronnie Martin Declaration of November 17, 2006, with attachments," and the "Gregory Chavarria Declaration of November 17, 2006, with attachments."

December 18, 2006

Respectfully submitted,

*s/Wilson K. Pipestem*

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation