**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | Electronically Filed: January 22, 2007 |
| v. | ) | No. 99-550L (into which has been consolidated No. 00-169L) |
| THE UNITED STATES OF AMERICA, | ) | Judge Emily C. Hewitt |
| Defendant. | ) | |

**DEFENDANT'S BRIEF ABOUT APPROPRIATE HIGHEST OFFERED PRICE FOR JULY 1989 PURSUANT TO COURT'S JANUARY 16, 2007 ORDER**

## INTRODUCTION

On January 16, 2007, the Court issued an Order requesting that the parties provide further explanations regarding the "appropriate price" to use for damage calculations for the Tranche One month July 1989. The Court noted that although Plaintiff claims that Mobil Oil Corporation ("Mobil") paid $21.00 in July 1989 (the "$21.00 price"), Exxon Mobil Corporation ("Exxon"), not Mobil, is listed as the purchaser in the Minerals Management Service ("MMS") data. The Court specifically requested that the parties submit explanations as to whether the $21.00 price paid by Exxon "should or should not be utilized as the highest offered price for July 1989."

In accordance with the Court's Order, Defendant files its brief explanation regarding the appropriate highest offered price for July 1989. As set out below, although the parties agree that the $21.00 price in the MMS data represents royalty activity for Mobil and not for Exxon, the correct unit price paid by Mobil is actually $20.58 per barrel for July 1989, and, in any event, the appropriate highest offered price for July 1989 is $20.12 paid by Conoco-Phillips Company.

## I. THE $21.00 PRICE PERTAINS TO A MOBIL ROYALTY TRANSACTION

As noted by the Court, the MMS data referenced by Plaintiff lists Exxon, rather than Mobil, as the purchaser associated with the $21.00 price. Plaintiff Osage Nation's Brief in Support of Proposed Calculation of Tranche One Damages, Appropriate Rate of Interest to Apply in Determining the Current Value of Those Damages, and Entitlement to Late Fees, Exhibit 3 ("Pl.'s Br. Ex. 3"). Despite this listing, the $21.00 price pertains to a royalty transaction associated with Mobil.

Although the MMS data actually lists Exxon as the purchasing company, MMS records indicate that Payor Identification 38553 is a Mobil Exploration and Production U.S. Inc. ("Mobil") payor code. Declaration of Ronnie A. Martin, dated January 22, 2007 ("Martin Decl.") ¶ 3, Exhibit 1 (Attached as Def.'s Ex. 1).[1/] Based on the payor code, Mr. Martin, Defendant's oil and gas expert, concluded that the MMS data referenced by Plaintiff, in Pl.'s Br. Ex. 3, pertains to a royalty transaction for Mobil and not for Exxon. Martin Decl. ¶¶ 3,14.[2/] Nevertheless, as explained below, the $21.00 price should not be utilized as the highest offered price for July 1989.

## II. PLAINTIFF FAILED TO PROPERLY UTILIZE THE MMS DATA

Defendant is unaware of any support for Plaintiff's claim that the $21.00 price should be used as the highest offered price for July 1989. The $21.00 price is associated with one of three small-volume data lines for a particular lease on which Mobil paid royalties for the month of

---

[1/] Mr. Martin redacted information in his Exhibit 1that is protected by the Privacy Act, 5 U.S.C. § 552a, or is otherwise irrelevant.

[2/] Mr. Martin noted that Exxon and Mobil merged in 1999 into Exxon Mobil Corporation. Martin Decl. ¶ 3.

July 1989. The $21.00 data line may have been an adjustment to correct errors in previous data entries,[3] as opposed to a sales transaction from July 1989. *Id.* ¶ 7. Mr. Martin based this conclusion on the fact that the MMS data provides no explanation as to why Mobil would make an additional royalty payment of $1.89[4] five months past the due date or why the unit price would be $21.00, when Mobil's posted prices were in the $17.75 to $19.75 range in July 1989. *Id.* According to Mr. Martin, "it is not logical" that Mobil would have had separate contracts for separate sales of such minimal volumes of oil (.12 barrels, .12 barrels, and .72 barrels) with two sales at $19.33 and a subsequent sale at $21.00. *Id.* ¶ 8, n.3.

Under such circumstances, selectively using only certain entries of a particular purchaser, such as the $21.00 price of Mobil, as the unit price, can lead to an incorrect analysis. *Id.* ¶ 8. It is more appropriate, particularly with small-volume transactions, and in accord with Mr. Martin's industry experience, to consolidate payor entries for particular leases for a month when seeking to derive pricing information from MMS data. *Id.* The consolidation of the three lines of Mobil data related to the same lease into a single monthly lease average transaction, results in a calculated unit price of $20.58. *Id.* But even the correct unit price of $20.58 paid by Mobil, for the reasons set out below, should not be utilized as the highest offered price for July 1989.

## III. THE APPROPRIATE HIGHEST OFFERED PRICE FOR JULY 1989 IS $20.12

In order to comply with the Osage Regulations, one cannot utilize Date of Delivery

---

[3] For July 1989 and lease number 6010447630, Mobil reported three royalty payments to MMS. Martin Decl. ¶ 5, Ex. 2. Two of the payments were made in August with calculated unit prices of $19.33 per barrel, and the last payment was made in January 1990, with a calculated unit price of $21.00 per barrel. *Id.* ¶¶ 6-7, Ex. 2.

[4] Mobil made two previous royalty payments in August for July sales: $.87 and $.29. Martin Decl. ¶ 5.

(DOD) transactions (associated with volumes and prices for only particular days in the month) from the MMS data. The Osage Regulations regarding the calculation of royalty due to the Tribe provide that "settlement shall be based on the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher *on the day of sale or removal*." 25 C.F.R. § 226.11(a)(2) (emphasis added). The MMS data does not indicate the day of the month on which a sales transaction occurred. Martin Decl. ¶ 10. Due to this limitation of the MMS data, in order to ensure that a price was offered on a particular "day of sale or removal[,]" Mr. Martin excluded transactions he considered to be DOD transactions and included only transactions he considered to be Equal Daily Quantity ("EDQ") transactions (associated with equal volumes and an average price for the month). Martin Decl. ¶¶ 9-10.

The data lines associated with Plaintiff's $21.00 price and Defendant's $20.58 price should be excluded as offered prices because they appear to be DOD transactions. *Id.* ¶¶ 11. Mr. Martin considered these data lines collectively to be a DOD transaction based on the low volume (.96 barrels ) and multiple data lines. *Id.* ¶¶ 11, 12.

The appropriate highest offered price for July 1989 from the MMS data is $20.12. *Id.* ¶¶ 13,14, Ex. 3. Prior to utilizing the MMS data, Mr. Martin ranked the transactions from the highest calculated unit value (price) to the lowest calculated unit value (price), and then he excluded transactions, included those associated with Mobil, that contained (a) DOD sales; (b) incorrect royalty rates; (c) incorrect adjustments; (d) small volumes; and (e) other data anomalies. *Id.* ¶ 13, Ex. 3. The first acceptable transaction under this methodology was the $20.12 price from Conoco-Phillips. *Id.* ¶¶ 13, 14, Ex. 3 at line (ID No.) 74.

## CONCLUSION

For the foregoing reasons, the price of $20.12, not $21.00, is the appropriate highest offered price for July 1989.

Respectfully submitted this 22nd day of January, 2007,

*s/ Brett D. Burton*
BRETT D. BURTON
Counsel of Record for Defendant

*s/ Martin J. LaLonde*
MARTIN J. LALONDE
KEVIN S. WEBB
United States Department of Justice - ENRD
Washington, D.C. 20044-663
Telephone: (202) 305-0212
Fax: (202) 353-2021
Attorneys for Defendant

OF COUNSEL:
Elisabeth C. Brandon
Candace N. Beck
Teresa E. Dawson