**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 99-550 L (into which has been consolidated No. 00-169 L)<br>Judge Emily C. Hewitt<br><br>Filed Electronically<br>January 31, 2007 |

**PLAINTIFF OSAGE NATION'S**
**SECOND MOTION TO STRIKE NEWLY FILED EVIDENCE**

Plaintiff Osage Nation respectfully moves the Court to strike paragraphs 4-13 and 14(c)-(e) of the "Declaration of Ronnie A. Martin" dated January 22, 2007, as well as Exhibits 2 and 3 to the Declaration. This testimony is outside the scope of the Court's order of January 16, 2007, and contravenes the Court's decision dated September 21, 2006.

The Court's January 16, 2007 order asks the parties to address a discrepancy between Plaintiff's damages calculation and the MMS data. The order notes that although "Plaintiff contends that $21.00 paid by 'Mobil Oil Corporation' is the highest offered price of a major purchaser for July 1989," "'Exxon Mobil Corporation' is listed as the purchaser in the MMS data." In light of this discrepancy, the Court's order requests that the parties "submit to the court brief explanations of why the price of $21.00 by purchaser 'Exxon Mobil Corporation' should or should not be utilized as the highest offered price for July 1989." Plaintiff read the Court's request to be limited to information relating to the payor name for a single entry in MMS data relied upon by the plaintiff. If this reading is correct, then much of Mr. Martin's declaration is outside the scope of the Court's request and should be stricken.

Even if the United States' arguments about small-volume sales and EDQ/DOD sales are within the scope of the Court's January 16 order, Mr. Martin's opinions relating to these arguments are an apparent attempt to expand on points Mr. Martin made in his "Declaration of November 17, 2006, with attachments." Accordingly, they should be stricken for substantially the same reasons as those noted in the Osage Nation's briefing on its first motion to strike, relating to Mr. Martin's previous declaration. In particular, the Osage Nation notes the following passage from its reply brief on the first motion to strike:

> The Court's Opinion holds that government records such as MMS and Tax Commission records are "satisfactory prox[ies] at this juncture" for the missing data. *See Osage Tribe*, 72 Fed. Cl. at 654. That should be the end of the matter. The United States re-attacks the MMS data post-trial with new testimony that challenges the Court's holding regarding satisfactory proxies, and that demands a level of precision to which it as a trustee in breach is not entitled. A proxy is not meant to be precise and the United States is not entitled at this stage to raise new challenges to proxies that it contested on other grounds at trial. If anything, the MMS data likely understates the damages due the Osage Nation, but in any event, the United States cannot in fairness be allowed at this stage to re-open the issue of whether its own MMS records on their face are an adequate proxy for the records that it as trustee failed to gather and preserve.

Reply Br. at 7 (footnote omitted).

"The Osage Tribe is entitled to damages *reasonably estimated based on existing information*. Especially where, as here, proper trust records are missing, doubts about calculations should be 'resolved against [the trustee].'" *Osage Tribe of Indians v. United States*, 72 Fed. Cl. 629, 671 (2006) (quoting *Confederated Tribes of the Warm Springs Reservation v. United States*, 248 F.3d 1365, 1373 (Fed. Cir. 2001)) (emphasis added). The United States seeks to set an unworkable precedent of haggling over the unknown details underlying each data point used to estimate damages, even though the United States' own faulty recordkeeping has rendered impossible any precise calculation of damages. The United States' tactic contravenes the Court's orders and, if allowed over the course of this litigation, would waste the Court's time, waste

litigation resources paid for by taxpayers, and allow a trustee in breach to impose unjustifiable expense on a wronged beneficiary.

Furthermore, Mr. Martin's opinion testimony blessing the United States' arguments about small-volume sales and EDQ/DOD sales is speculative on its face. He attempts to persuade the Court to adopt his opinion as to what is "appropriate[]" (¶ 12), "proper[]" (¶ 11), "most reasonable" (¶ 8), "logical" (n.3), and "possible" (¶ 7), and as to what "appears" to have happened (¶ 8, ¶ 11, ¶ 14(d)), or "may have" happened (n.3). Like Mr. Lundelius, his consulting-firm colleague, Mr. Martin offers impermissible "inferences that [are] entirely favorable to the government and not supported by the evidence." *Osage Tribe*, 72 Fed. Cl. at 670.

Finally, the submission of opinion testimony when the record is closed is unfair and potentially misleading, because such testimony has not been subjected to cross-examination.

Accordingly, the Court should strike paragraphs 4-13 and 14(c)-(e) of the "Declaration of Ronnie A. Martin" dated January 22, 2007, as well as Exhibits 2 and 3 to the Declaration.

January 31, 2007

Respectfully submitted,

*s/Wilson K. Pipestem*

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation