**No. 99-cv-00550 ECH**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**THE OSAGE NATION OF INDIANS OF OKLAHOMA,**

**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA,**

**Defendant.**

---

**MOTION TO INTERVENE AND AMEND COMPLAINT
AND BRIEF IN SUPPORT**

---

**Dated October 15, 2007**

## MOTION TO INTERVENE AND AMEND COMPLAINT

COME NOW the undersigned parties, personal owners of allotted shares or "headrights" of the Osage Tribe of Indians of Oklahoma and request this Court grant leave to intervene in the captioned case made under RCFC 24 as follows:

## MOTION TO INTERVENE

1. The current complaint(s) in the captioned, consolidated case concern issues based on the duty of the Defendant to collect and pay royalty on oil and gas production, to pay over trust funds and interest to the Osage, including proper payment of monies due from land sales subject to treaties and statutes, for interest due on other sums and for damages from the loss of Osage trust account monies. Plaintiff's complaints allege the Defendant has breached its fiduciary duty in the mismanagement, investment and payment of Osage trust funds.

2. The Defendant, United States of America, has argued, both in pleadings and in oral arguments before the Court, that the named Plaintiff is the owner of less than 2 allotted shares or headrights and that the individual and/or corporate owners of headrights are additional "real parties in interest", mandatory parties to the instant proceeding; and further, that the interest of all owners of headrights (originally 2,229 headrights or allotted shares issued in 1906) can not be represented by the Plaintiff, a governmental entity. Through devise, descent and assignment the original headright shares have been further fractionated and shares or fractions of shares are now owned by more than 4,000 different individuals and/or entities.

3. In a prior, lengthy scheduling conference with the former Judge herein, the Honorable John P. Wiese, the Court initially found the Defendant's premise was correct and that matter would be properly prosecuted by the actual owners of the allotted shares/headright owners. Judge Weiss

indicated agreement with the Defendant's contention that the Tribe could not represent the interest of all owners of allotted shares or headrights, other than its own (approximately (2) allotted shares). Judge Weise later reconsidered his own ruling, *sua sponte*, upon further review of the form of Osage government under the 1906 Act, *infra*.

4. The undersigned movants have been verified by the Defendant as owners of allotted shares and/or headright interest. The undersigned parties further represent that they are ready, willing and able to prosecute this matter to its conclusion, not only on their behalf, but on behalf of all other similarly situated parties, that being all other owners of full or fractional allotted shares or headrights.

5. The Court is well aware that the Defendant's answers to the complaints filed in this consolidated case (Nos. 00-169 L and 99-cv-550 into the lower case no. 99-cv-550-ECH) contain the above referenced defense, i.e. that the Osage Nation does not have standing to represent the interests of the headright owners in the instant litigation. Defendant's 2002 Motion to Dismiss Case No. 00-169 argued that the Osage tribe, acting by and through its elected council and chief, pursuant to the act of June 28, 1906, PL No. 59-318, 34 Stat. 539, ("the 1906 Act"), could not act on behalf of the headright owners for purposes of this matter. In response, acting through the undersigned counsel, the Plaintiff argued that Federal Regulations provide that only persons with headright interests vote for all elected officials, including Principal Chief, Assistant Chief and tribal council members, and therefore, the Plaintiff could adequately represent all headright owners.

6. By opinion issued July 28, 2003, at 57 Fed. Cl. 392, p. 394-395 (Docket #111, No. 00-169), this Court recognized that "section 4 of the 1906 Act creates a trust fund for the tribe and

obliges the United States to hold mineral royalties in trust for 'members of the Osage Tribe, 34 Stat. 539, 544 § 4(1) and 4(2)'". The Court further noted therein that the Defendant conceded that the,

> mineral royalties at issue go first into a tribal trust fund account where they stay for at least one quarter of a calendar year before being distributed to the headright owners. *See* Defendant's Motion at 28: TR. at 40... Defendant acknowledges that additional step of determining what amount is owed to each headright holder also takes place while the funds are in the tribal trust fund, *See* TR. at 40.

This Court found that the above "admitted" facts and the terms of the 1906 Act were sufficient to establish standing in the Plaintiff. The Court noted that the ultimate distribution of the tribal funds are to the individual headright owners, i.e.,

> All of the tribe may have no further interest or claim to the funds once they are distributed to the headright owners, the Court finds the tribe does have both an interest in and a claim to the funds when those funds are within the tribal trust fund account that was established by the 1906 Act.

7. **However, since the date of the Court's earlier rulings, <u>significant events have taken place within the Plaintiff's elected government</u>**. In 2006, a new "Osage Nation Constitution" was enacted. Neither a Principal Chief nor an Assistant Chief were elected by the headright owners as required by the 1906 Act. Instead, the new Osage Nation was formed and a Chief, Assistant Chief and a Tribal Congress were elected by all persons of Osage descent, not "the headright owners" as required by the 1906 Act.

8. The "tribal trust fund"above referenced by the Defendant to the Court is neither in the possession nor control of the new Osage Nation or any elected Osage official. It is merely the name of a particular account maintained by the Department of Interior/the United States in which revenues generated from the minerals underlying Osage County are consolidated. The term "tribe"

as used in the account's name refers to the "closed roll" Osage Indian Tribe, i.e. those persons who receive the quarterly annuitant payments.

9. The new Osage Constitution, signed by the new Osage Nation Principal Chief, claims and avers that all minerals underlying Osage County, Oklahoma are not owned by the United States in trust for the headright owners, members of the "closed Osage roll" of 2,229 persons in 1906, but by all persons of Osage descent, set forth as the new "Osage Nation". *See* New Osage Constitution, Article XV, section 4; as well as Article I & II, section 2, which defines Osage Nation, attached as **Exhibit "1".**

10. Also in 2006, an eight person "Minerals Council" was elected by the headright owners. However, the new constitution grants the Principal Chief "veto power" over oil and gas leasing decisions and makes any minerals council "rules and regulations" subject to the laws of the new "Osage nation". *See* Article XV, section 4, **Exhibit "1"**.

Based on knowledge and belief, the undersigned headright owners allege that the Plaintiff's decisions, actions and strategies in the instant litigation have been controlled and directed by the new Principal Chief and/or the New Osage Congress, not the headright owners or even persons who were elected by the headright owners.

11. In sum, the current Osage Nation is not "the tribe" described in the 1906 Act (and subsequent congressional ratifications) which refers to the "tribe" as the "closed roll" Osage Tribe of Indians, i.e. the headright owners. *See* 25 CFR § 5.1(c), *infra*. In fact, the new Constitution of the Osage Nation which states that the subject minerals are owned by the "Osage Nation", i.e. all persons of Osage descent, and places the officials elected under said constitution (current Principal

Chief, Assistant Chief and Osage Congress) directly at odds with the headright owners, who claim the subject minerals, are owned by the United States, in trust for them.

**THEREFORE**, for these reasons and the authorities cited herein, the undersigned headright owners request that this Court adopt that the original findings of Judge John P. Weise, formerly presiding herein, who had originally directed that this case should proceed as a class action, with individual named headright owners to represent the balance of all headright owners.

## AUTHORITIES

### INTRODUCTION

25 CFR § 5.1(c) provides that the rolls of the Osage Tribe were closed by an act of Congress. Article III, section 4 of the new Osage Constitution provides the "rolls" may be redetermined. *See* **Exhibit "1"**. 25 CFR § 90.21 provides only members of the Osage Tribe whose names appear on the quarterly annuity roll may be entitled to hold office or vote for tribal officers:

> Each such voter shall be entitled to cast one ballot and each ballot shall have exactly the same value as the voters' headright interest shown on the last quarterly annuity roll.

However, the new Osage Constitution provides all persons of Osage descent may vote. *See* **Exhibit "1"**, Article XIII, section 1.

25 CFR § 214.2 provides that oil and gas leases shall be signed by the principal chief of the Osage Tribe. However, pursuant to the new Osage Constitution, currently there is no principal chief elected by the headright owners. As shown above, even the "Minerals Council", elected by the headright owners, is not allowed to direct the litigation herein.

The headright owners are an identifiable group of Indians, members of the closed roll tribe

of Osage Indians, pursuant to the 1906 Act. This action may be brought against the United States, pursuant to 28 U.S.C. § 1505.

**ELEMENTS OF INTERVENTION**

U.S. Ct. Fed. Cl. R. 24 governs this request for intervention in the instant proceeding. (RCFC 24). The undersigned headright owners request this Court consider and grant this Petition for Intervention under RCFC 24(a). In ruling on this Motion to Intervene as a matter of right under RCFC 24(a), the Court must consider (1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the subject property or transaction; (3) whether the applicant is so situated that the action as a practical matter may be impair or impede the applicant's ability to protect the interest; and (4) whether the applicant's interest is adequately represented by existing parties. *Wolfchild v. US*, 77 Fed. Cl. 22 at 35 (2007).

As recently noted by this Court in *Emerald Coast Finest Produce Co., Inc. v. US*, 74 Fed, Cl. 679, at 680, "[t]he Court must construe *RCFC 24(a)* requirements <u>in favor of intervention</u>". (emphasis added). Further, all well pled allegations must be accepted as valid. *Id* at 680 (interior citations omitted). *See also Cherokee Nation of Oklahoma v. US*, 69 Fed. Cl. 148 at 152-153 (2005). In *Klamath Irrigation District v. US*, 64 Fed. Cl. 328 (2005), at 330, the Court found that any doubts must be resolved in favor of a proposed intervention.

As propounded by the United States herein, in its brief filed 4/15/2005 (Docket # 79, pp. 22-25), (a) the headright owners hold the principal, if not the sole monetary interest in this litigation and (b) the outcome hereof will have a material affect upon their claim(s).

The separate issues of (a) timeliness, (b) impairment of interest, and (c) adequate representation are analyzed hereinafter. Further, in the alternative to intervention as a matter of right,

under RCFC 24(b) this Court may allow intervention as permissive, since the claims and defenses in this action have total commonality of the claims and defenses of the proposed intervenors.

**TIMELINESS**

The original action(s) herein were filed in 1999 and 2000, over seven (7) years ago, by the Osage Tribe of Indians (the former government), with the Plaintiff represented by the undersigned attorney. Although this application is filed some seven (7) years "down the road", the undersigned counsel for the proposed intervenors was the counsel of record for the Plaintiff during the first four years of litigation (1999-2003).

The issue of timeliness in both mandatory and permissive intervention considers whether the intervention would unduly delay or prejudice the adjudication of the rights of the "original parties". *See United Keetoowah Band of Cherokee Indians of Oklahoma v. US*, 78 Fed. Cl. 303 (2007). The evaluation of prejudice includes balancing the "prejudice" to existing parties due to intervention versus "prejudice" resulting to the would-be intervenor if intervention is denied. *Wolfchild, supra*, at 37. Potential prejudice to these intervenors clearly outweighs any prejudice to the existing parties.

The proposed intervenors will be severely prejudiced should the Defendant eventually prevail on its "standing" defense which it has continued to press in trial court and will undoubtedly raise on appeal. That jurisdictional issue can be "mooted" by the granting of this petition in intervention. In fact, the Fifth Circuit Court of Appeals, interpreting the same "timeliness" language governing intervention under FRCP 24, upheld an intervention order filed 6 years after the action was instituted, finding that the Defendant did not demonstrate the intervention would cause any undue delay or prejudice. *See Reeves v. International Telephone and Telegraph*, 616 F.2d 1342 at 1349 (5th Cir. 1980).

Herein, discovery is ongoing, and only the *Traunch One* claim(s) have been tried, with the Court's Order therein on appeal. Additional damages that occurred in failing to collect the royalty price dictated by the oil and gas leases, which leases and time periods were not part of the *Traunch One* trial, are being compiled. None of the original claims in case No. 00-169 have been tried.

**IMPAIRMENT OF ABILITY TO PROTECT INTEREST**

In the arguments and the statements previously propounded to this Court, the Defendants, by their brief filed on April 22, 2003 (Docket # 97, No. 00-169), as well as April 15, 2005 (Docket # 79, No. 99-550 and the Plaintiff, in briefs filed October 30, 2002 (Docket # 62, No. 00-169) and June 2, 2003 (Docket #102, No. 00-169) admit that the undersigned intervenors and the class they propose to represent are parties who have been monetarily injured as a result of the Defendant's failure to collect and manage the trust assets which are the subject of this case, inclusive of all claims originally in Case No. 00-169. No discussion is necessary on the point of whether the Defendant would claim that a resolution of this case by final judgment or settlement would be *res judicata* against the claims of the individual headright owners, if they attempt a separate, later action.

**ADEQUATE REPRESENTATION**

This requirement of RCFC 24(a) is satisfied "if the applicant shows that representation of his interest 'may be' inadequate; the burden of making that showing should be treated as minimal". *Trbovich v. United Mine Workers of America*, 404 US 528 at 538 (1972). In fact, *Northrup Grumman Information Technology v. US*, 74 Fed. Cl. 407 at 417 (2006) cites to Professors, Wright and Miller in *Federal Practice and Procedure* regarding the conditional wording of Rule 24, who suggest that **the burden is on those opposing intervention to show adequacy of existing representation**. This same rationale was adopted in *Armour of America v. US*, 70 Fed. Cl. 240 at

245 (2006). The current Plaintiff's representation will hardly be adequate, if the Defendant ultimately prevails on its "lack of standing" defense.

As noted above, the Plaintiff's new current government of the Plaintiff, directing this litigation, operates under a new 2006 constitution claiming that all persons of Osage blood own the minerals underlying Osage County, i.e. known as the new "Osage Nation". This is a direct attack upon the undersigned owners of Osage headrights (whose claims of headright ownership date back to 1906). This clearly creates an adversarial conflict which cannot coincide with adequate representation under RCFC 24. *American Renovation and Construction v. US*, 65 Fed. Cl. 254 at 264 (2005). The burden of showing inadequate representation is not heavy and is satisfied if the Court concludes that such representation "may be" inadequate. *Klamath Irrigation District v. US*, 64 Fed. Cl. 328 at 336 (2005).

Further, if the intervenors own an interest which is "distinct" from the interest of the current Plaintiff, such interest is not adequately represented. *Wolfchild v. US*, 72 Fed. Cl. 511 at 532 (2006). The interest of each headright owner is a separate and "distinct" property right from all other hearight owners, including any claim of headright ownership by the new "Osage Nation". Since the current Plaintiff (the new Osage Nation) represents a larger constituency than just the headright owners, its representation cannot be adequate. *Northrup Grumman Information Technology, supra* at 420.

**A CLASS ACTION**

In addition to allowing intervention, the undersigned headright owners, in the attached amended complaint, propose that this Court certify this matter as a class action on behalf of all Osage headright owners, owners of Osage headrights, under RCFC 23 as set forth in the proposed amended complaint attached hereto.

A case with similar characteristics, which was previously referenced herein by Judge Weiss (when he initially ruled that the instant matter should be a class action) was the *Quinault Allottee Assoc., et al v. US*, 2002 Ct. Cl. 625 (1973). The Court therein found all elements necessary to prosecute the Federal Class Action under FRCP 23, including individual members who owned interests in allotments on the Quinault Reservation in the State of Washington. Since that ruling, RCFC 23 was adopted and the procedure for class actions simplified in this Court.

Clearly the facts of this case will likely support a request for certification under RCFC 23, as the actions (or inactions) of the United States alleged in the instant proceeding similarly affected all Osage headright owners. *See Land Grantors in Henderson County, et al v. US*, 71 Fed. Cl. 614 at 621 (2006). It is currently premature to file a motion for class certification, but the standards that will be applicable are discussed in *Fisher v. US*, 69 Fed. Cl. 193 at 198-205 (2006). However, the Court in *Fisher* opined that a class action in that instance was not a superior method of adjudication. (issues of tax refund and conversion of Mutual Insurance Company stock).

The undersigned attorney hereby represents to the Court that he has considerable experience in class certification and adjudication of class actions involving underpayment of oil and gas royalties.

**WHEREFORE** in consideration of the above premises, the undersigned Plaintiffs pray that this petition for intervention be granted under RCFC 24(a) or (b) and that the filing of the proposed amended complaint be allowed and for such other and further relief as the Court may deem just and equitable.

/s/ Bradley D. Brickell
Bradley D. Brickell, OBA #1117
**BRICKELL & ASSOCIATES, P.C.**
400 Hightower Building
105 North Hudson
Oklahoma City, OK 73102
Telephone 405-236-0008
Facsimile 405-236-0013

**ATTORNEYS FOR PROPOSED PLAINTIFFS CHRIS HADLOCK, JODELL HEATH, LINDA HESKETT, CORA JEAN JECK, ANNA KAY PRICE, DIANE SIMPKINS, GEORGE TALLCHIEF, AND JULIE WILSON**