Combining oil lease and gas lease pursuant to Resolution No. 25-173
...by the Secretary of the ... ' Lease Contract No. 14-20-G06-... 10
... November 7, 1975 ...s Lease Contract No. 14-20-G06-...16

OIL & GAS MINING LEASE
OSAGE RESERVATION, OKLAHOMA

CONTRACT NUMBER
14-20-G06- 7319

This lease made and entered into in duplicate, on this 18th day of April, 1980 by and between the Osage Tribe of Indians in Oklahoma, Sylvester J. Tinker, Principal Chief, under authority of the Resolution of the Osage Tribal Council dated June 1, 1975 party of the first part, designated as Lessor, and Gussman Oil Company of Tulsa, Oklahoma party of the second part, designated as Lessee, under and pursuant to section 3 of the Act of June 28, 1906 (34 Stat. 539), the Act of March 3, 1921 (41 Stat. 1249), section 1 of the Act of March 2, 1929 (45 Stat. 1478), the Act of June 24, 1938 (52 Stat. 1034), and the Act of October 6, 1964 (78 Stat. 1008), witnesseth:

1. The Lessor, in consideration of a bonus of $ None, paid to the Superintendent, receipt of which is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby grant and lease to the lessee ~~xxxxxxxxxx~~ from the date of approval hereof and as long thereafter as oil and -or natural gas is produced in paying quantities all the oil and natural gas deposits except as hereinafter provided, in or under land described as follows:

Tr. SE/4 Sec. 24 Twp. 23 N. Rge. 7 E. containing 160 acres, more or less.

Lessee or his authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines, pull rods, and other appliances necessary for operations and marketing; the right-of-way for ingress and egress to any point of operation; and the right to use water for lease operations as set out in 25 CFR 183. Lessee shall conduct his operations in a workmanlike manner, commit no waste and allow none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control. The Act of June 28, 1906 (34 Stat. 539-543) as amended reserves to the Osage Tribe the oil, gas, coal or other minerals covered by said land until the 8th day of April 1983, and thereafter until otherwise provided by Act of Congress.

2. Definitions. - When used herein the following terms shall be defined as:

(A) "Secretary" refers to the Secretary of the Interior or his authorized representative.

(B) "Osage Tribal Council" means the duly elected governing body of the Osage Nation or Tribe of Indians of Oklahoma vested with the authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(C) "Superintendent" refers to the Superintendent of the Osage Indian Agency or his authorized representative.

(D) "Regulations" refers to the regulations in 25 CFR Part 183, promulgated by the Secretary of the Interior and applicable to this lease.

(E) "Natural gas" means any fluid, either combustible or noncombustible, recovered at the surface in the gaseous phase and -or hydrocarbons recovered at the surface as liquids which are the result of condensation caused by reduction of pressure and temperature of hydrocarbons originally existing in a reservoir in the gaseous phase.

3. In consideration of the foregoing, the Lessee hereby agrees:

A. Bond. - To furnish such bond as may be required by the Superintendent, with acceptable surety, or United States bonds as surety therefor, conditioned upon compliance with the terms of this lease and the regulations.

~~B. ... Unless lessee shall complete and place in production a well producing and selling oil and or natural gas in paying quantities~~ ~~on the land ...~~ within the lease within 12 months from the date of approval of the lease, or as otherwise provided in the lease terms, or 12 months from the date the Superintendent consents to drilling on any restricted homestead selection, this lease shall terminate unless rental at the rate of Two Dollars ($2) per acre shall be paid before the end of the first year of the lease. The lease may also be held without drilling for the remainder of its primary term upon payment of the specified rental annually in advance, commencing with the second lease year, unless otherwise provided. The completion of a well producing in paying quantities shall, so long as such production continues, relieve lessee from any further payment of rental, except that should such production cease during the primary term the lease may be ~~... during the remaining primary term of the lease by payment ...~~ ~~... thereof.~~

C. Royalty -Lessee shall pay or cause to be paid to the Superintendent, as royalty on oil, the sum of 16-2-3 percent of the gross proceeds from sales after deducting the oil used by lessee for development and operation purposes on the lease: Provided, that when the quantity of oil taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calendar month is sufficient to average one hundred or more barrels per active producing well per day the royalty on such oil shall be 20 percent; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on the day of sale or removal, and Lessee shall pay a royalty of 16-2-3 percent of the value of all natural gas and products extracted, produced, and sold from this lease. Natural gas used in the reasonable and prudent operation and development of said lease shall be exempted from royalty payment. In no event shall the royalty paid from this lease during any year be less than an amount equal to the annual rental specified above.

D. Development - Lessee shall drill and produce all wells necessary to offset or protect the leased land from drainage by wells on adjoining lands on which Lessor is not the owner of the minerals, or in lieu thereof, to compensate the Lessor in full each month for the estimated loss of royalty through drainage; Provided, That during the period of supervision by the Secretary, the necessity for offset wells shall be determined by the Superintendent and payment in lieu of drilling and production shall be with the consent of, and in amount determined by the Superintendent. The Superintendent in his discretion may order further development of any leased acreage or separate ... if in his opinion, a prudent operator would conduct further development.

E. Regulations - It is specifically understood this lease is subject to the current regulations of the Secretary contained in 25 CFR 183 "LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING," and any amendments to the regulations hereinafter promulgated are made a part of this lease and lessee hereby agrees to abide and conform thereto.

4. Operations

A. Restrictions - The Superintendent may impose restrictions as to time of drilling and rate of production from any well or wells when, in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the

Combining oil lease and gas lease pursuant to Resolution No. 25-173

...ed by ... Secretary of the ... Lease Contract No. 14-20-G06-... 5
... November 7, 1975 ... Lease Contract No. 14-20-G06-... 6

CONTRACT NUMBER
14-20-G06-...

OIL & GAS MINING LEASE
OSAGE RESERVATION, OKLAHOMA

This lease made and entered into in duplicate, on this 15th day of April, 1980, by and between the Osage Tribe of Indians in Oklahoma by Sylvester J. Tinker, Principal Chief, under authority of the Resolution of the Osage Tribal Council dated June 1, 1978, party of the first part, designated as Lessor, and Gussman Oil Company of Tulsa, Oklahoma party of the second part, designated as Lessee, under and pursuant to section 3 of the Act of June 28, 1906 (34 Stat. 539), the Act of March 3, 1921 (41 Stat. 1249), section 1 of the Act of March 2, 1929 (45 Stat. 1478), the Act of June 24, 1938 (52 Stat. 1034), and the Act of October 6, 1964 (78 Stat. 1008), witnesseth:

1. The Lessor, in consideration of a bonus of $ None, paid to the Superintendent, receipt of which is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby grant and lease to the lessee ~~xxxxxxxxxx~~ from the date of approval hereof and as long thereafter as oil and-or natural gas is produced in paying quantities all the oil and natural gas deposits except as hereinafter provided, in or under land described as follows:

Tr. SW/4 Sec. 19 Twp. 23 N. Rge. 8 E. containing 160 acres, more or less.

Lessee or his authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines, pull rods, and other appliances necessary for operations and marketing; the right-of-way for ingress and egress to any point of operation; and the right to use water for lease operations as set out in 25 CFR 183. Lessee shall conduct his operations in a workmanlike manner, commit no waste and allow none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control. The Act of June 28, 1906 (34 Stat. 539-543) as amended reserves to the Osage Tribe the oil, gas, coal or other minerals covered by said land until the 8th day of April 1983, and thereafter until otherwise provided by Act of Congress.

2. Definitions. - When used herein the following terms shall be defined as:

(A) "Secretary" refers to the Secretary of the Interior or his authorized representative.

(B) "Osage Tribal Council" means the duly elected governing body of the Osage Nation or Tribe of Indians of Oklahoma vested with the authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(C) "Superintendent" refers to the Superintendent of the Osage Indian Agency or his authorized representative.

(D) "Regulations" refers to the regulations in 25 CFR Part 183, promulgated by the Secretary of the Interior and applicable to this lease.

(E) "Natural gas" means any fluid, either combustible or noncombustible, recovered at the surface in the gaseous phase and-or hydrocarbons recovered at the surface as liquids which are the result of condensation caused by reduction of pressure and temperature of hydrocarbons originally existing in a reservoir in the gaseous phase.

3. In consideration of the foregoing, the Lessee hereby agrees:

A. Bond. - To furnish such bond as may be required by the Superintendent, with acceptable surety, or United States bonds as surety therefor, conditioned upon compliance with the terms of this lease and the regulations.

~~B. ... Lessee shall complete and place on production a well producing and selling oil and-or natural gas in paying quantities ... the land ... within the lease within 12 months from the date of approval of the lease, or as otherwise provided in the lease terms, ... 12 months from the date the Superintendent consents to drilling on any restricted homestead selection, this lease shall terminate unless rental at the rate of Two Dollars ($2) per acre shall be paid before the end of the first year of the lease. The lease may also be held without drilling for the remainder of its primary term upon payment of the specified rental annually in advance, commencing with the second lease year, unless otherwise provided. The completion of a well producing in paying quantities shall, for as long as such production continues, relieve lessee from any further payment of rental, except that should such production cease during the primary term, the lease may be ... the remaining primary term of the lease by payment of ... rental ... of the lease.~~

C. Royalty -Lessee shall pay or cause to be paid to the Superintendent, as royalty on oil, the sum of 16-2-3 percent of the gross proceeds from sales after deducting the oil used by lessee for development and operation purposes on the lease: Provided, that when the quantity of oil taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calendar month is sufficient to average one hundred or more barrels per active producing well per day the royalty on such oil shall be 20 percent; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on the day of sale or removal, and Lessee shall pay a royalty of 16-2-3 percent of the value of all natural gas and products extracted, produced, and sold from the lease. Natural gas used in the reasonable and prudent operation and development of said lease shall be exempted from royalty payment. In no event shall the royalty paid from this lease during any year be less than an amount equal to the annual rental specified above.

D. Development - Lessee shall drill and produce all wells necessary to offset or protect the leased land from drainage by wells on adjoining lands on which Lessor is not the owner of the minerals, or in lieu thereof, to compensate the Lessor in full each month for the estimated loss of royalty through drainage; Provided, That during the period of supervision by the Secretary, the necessity for offset wells shall be determined by the Superintendent and payment in lieu of drilling and production shall be with the consent of, and in amount determined by the Superintendent. The Superintendent in his discretion may order further development of any leased acreage or separate horizon if, in his opinion, a prudent operator would conduct further development.

E. Regulations - It is specifically understood this lease is subject to the current regulations of the Secretary contained in 25 CFR 183 "LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING," and any amendments to the regulations hereinafter promulgated are made a part of this lease and lessee hereby agrees to abide and conform thereto.

4. Operations

A. Restrictions - The Superintendent may impose restrictions as to time of drilling and rate of production from any well or wells when, in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of

...ed by the Secretary of the ... November 7, 1975

Combining oil lease and gas lease pursuant to Resolution No. 25-173
' Lease Contract No. 14-20-G06-...3
Gas Lease Contract No. 14-20-G06-...9

OIL & GAS MINING LEASE
OSAGE RESERVATION, OKLAHOMA

CONTRACT NUMBER
14-20-G06-...

...is lease made and entered into in duplicate, on this 11th day of April, 1980 by and between the Osage Tribe of Indians in Oklahoma Sylvester J. Tinker, Principal Chief, under authority of the Resolution of the Osage Tribal Council dated June 1, 1978 ... of the first part, designated as Lessor, and Cussman Oil Company of Tulsa, Oklahoma party of the second part, designated as Lessee, under and pursuant to section 3 of the Act of June 28, 1906 (34 Stat. 539), the Act of March 3, ...1 (41 Stat. 1249), section 1 of the Act of March 2, 1929 (45 Stat. 1478), the Act of June 24, 1938 (52 Stat. 1034), and the Act of October 6, 1964 ... Stat. 1008), witnesseth:

1. The Lessor, in considerationof a bonus of $ None, paid to the Superintendent, receipt of which is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by ...lessee, does hereby grant and lease to the lessee ~~xxxxxxxxxx~~ from the date of approval hereof and as long thereafter as oil and -or ...tural gas is produced in paying quantities all the oil and natural gas deposits except as hereinafter provided, in or under land described as follows:

Tr. NW/4 Sec. 30 Twp. 23 N. Rge. 8 E. containing 160 acres, more or less.

...essee or his authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as ...y be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines, pull rods, and other appliances necessary for operations and marketing; the right-of-way for ingress and egress to any point of operation; and the right to use water for lease operations as set out in 25 CFR 183. Lessee shall conduct his operations in a workmanlike manner, ...mmit no waste and allow none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control. The Act of June 28, 1906 (34 Stat. 539-543) as amended reserves to the Osage Tribe the oil, gas, coal or other minerals covered by said land until the 8th day of April 1983, and thereafter until otherwise provided by Act of Congress.

2. Definitions. - When used herein the following terms shall be defined as:

(A) "Secretary" refers to the Secretary of the Interior or his authorized representative.

(B) "Osage Tribal Council" means the duly elected governing body of the Osage Nation or Tribe of Indians of Oklahoma vested with the authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(C) "Superintendent" refers to the Superintendent of the Osage Indian Agency or his authorized representative.

(D) "Regulations" refers to the regulations in 25 CFR Part 183, promulgated by the Secretary of the Interior and applicable to this lease.

(E) "Natural gas" means any fluid, either combustible or noncombustible, recovered at the surface in the gaseous phase and -or hydrocarbons recovered at the surface as liquids which are the result of condensation caused by reduction of pressure and temperature of ...drocarbons originally existing in a reservoir in the gaseous phase.

In consideration of the foregoing, the Lessee hereby agrees:

A. Bond. - To furnish such bond as may be required by the Superintendent, with acceptable surety, or United States bonds as surety therefor, conditioned upon compliance with the terms of this lease and the regulations.

~~B. ... shall complete and place in production a well producing and selling oil and-or natural gas in paying quantities ...~~ within the lease within 12 months from the date of approval of the lease, or as otherwise provided in the lease terms, the land ... or 12 months from the date the Superintendent consents to drilling on any restricted homestead selection, this lease shall terminate unless rental at the rate of Two Dollars ($2) per acre shall be paid before the end of the first year of the lease. The lease may also be held without drilling for the remainder of its primary term upon payment of the specified rental annually in advance, commencing with the second lease ..., unless otherwise provided. The completion of a well producing in paying quantities shall, ... as such production continues, relieve lessee from any further payment of rental, except that should such production cease during the primary ... the lease may be ~~... remaining primary term of the lease by payment of ... rental ...~~ ~~... lease.~~

C. Royalty -Lessee shall pay or cause to be paid to the Superintendent, as royalty on oil, the sum of 16-2-3 percent of the gross proceeds from sales after deducting the oil used by lessee for development and operation purposes on the lease: Provided, that when the quantity of oil taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calendar month sufficient to average one hundred or more barrels per active producing well per day the royalty on such oil shall be 20 percent; payment ...all be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on [ the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on the day of sale or removal, and Lessee shall pay a royalty of 16-2-3 percent of the value of all natural gas and products extracted, produced, ...d sold from this lease. Natural gas used in the reasonable and prudent operation and development of said lease shall be exempted from ...yalty payment. In no event shall the royalty paid from this lease during any year be less than an amount equal to the annual rental specified above. ]

D. Development - Lessee shall drill and produce all wells necessary to offset or protect the leased land from drainage by wells on adjoining lands on which Lessor is not the owner of the minerals, or in lieu thereof, to compensate the Lessor in full each month for the estimated loss of royalty through drainage; Provided, That during the period of supervision by the Secretary, the necessity for offset wells shall be determined by the Superintendent and payment in lieu of drilling and production shall be with the consent of, and in amount ...termined by the Superintendent. The Superintendent in his discretion may order further development of any leased acreage or separate ...itten if, in his opinion, a prudent operator would conduct further development.

E. Regulations - It is specifically understood this lease is subject to the current regulations of the Secretary contained in 25 CFR 183 "LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING," and any amendments to the regulations hereinafter ...mulgated are made a part of this lease and lessee hereby agrees to abide and conform thereto.

4. Operations

A. Restrictions - The Superintendent may impose restrictions as to time of drilling and rate of production from any well or wells when, in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the

Combining oil lease and gas lease pursuant to Resolution No. 25-173

...oved by the Secretary of the Interior November 7, 1975

... Lease Contract No. 14-20-G06- 109
...as Lease Contract No. 14-20-G06- ...289

CONTRACT NUMBER 14-20-G06- ...

OIL & GAS MINING LEASE
OSAGE RESERVATION, OKLAHOMA

This lease made and entered into in duplicate, on this 11th day of April, 1980 by and between the Osage Tribe of Indians in Oklahoma, Sylvester J. Tinker, Principal Chief, under authority of the Resolution of the Osage Tribal Council dated June 1, 1976 party of the first part, designated as Lessor, and Gussman Oil Company of Tulsa, Oklahoma party of the second part, designated as Lessee, under and pursuant to section 3 of the Act of June 28, 1906 (34 Stat. 539), the Act of March 3, 21 (41 Stat. 1249), section 1 of the Act of March 2, 1929 (45 Stat. 1478), the Act of June 24, 1938 (52 Stat. 1034), and the Act of October 6, 1964 (78 Stat. 1008), witnesseth:

1. The Lessor, in consideration of a bonus of $ None, paid to the Superintendent, receipt of which is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby grant and lease to the lessee xxxxxxxxxx from the date of approval hereof and as long thereafter as oil and or natural gas is produced in paying quantities all the oil and natural gas deposits except as hereinafter provided, in or under land described as follows:

Tr. SW/4 Sec. 30 Twp. 23 N. Rge. 8 E. containing 160 acres, more or less.

Lessee or his authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines, pull rods, and other appliances necessary for operations and marketing; the right-of-way for ingress and egress to any point of operation; and the right to use water for lease operations as set out in 25 CFR 183. Lessee shall conduct his operations in a workmanlike manner, commit no waste and allow none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control. The Act of June 28, 1906 (34 Stat. 539-543) as amended reserves to the Osage Tribe the oil, gas, coal or other minerals covered by said land until the 8th day of April 1983, and thereafter until otherwise provided by Act of Congress.

2. Definitions. - When used herein the following terms shall be defined as:

(A) "Secretary" refers to the Secretary of the Interior or his authorized representative.

(B) "Osage Tribal Council" means the duly elected governing body of the Osage Nation or Tribe of Indians of Oklahoma vested with the authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(C) "Superintendent" refers to the Superintendent of the Osage Indian Agency or his authorized representative.

(D) "Regulations" refers to the regulations in 25 CFR Part 183, promulgated by the Secretary of the Interior and applicable to this lease.

(E) "Natural gas" means any fluid, either combustible or noncombustible, recovered at the surface in the gaseous phase and -or hydrocarbons recovered at the surface as liquids which are the result of condensation caused by reduction of pressure and temperature of hydrocarbons originally existing in a reservoir in the gaseous phase.

3. In consideration of the foregoing, the Lessee hereby agrees:

A. Bond. - To furnish such bond as may be required by the Superintendent, with acceptable surety, or United States bonds as surety therefor, conditioned upon compliance with the terms of this lease and the regulations.

~~B. ... Unless Lessee shall complete and place in production a well producing and selling oil and or natural gas in paying quantities on the land embraced within the lease within 12 months from the date of approval of the lease, or as otherwise provided in the lease terms, or 12 months from the date the Superintendent consents to drilling on any restricted homestead selection, this lease shall terminate unless rental at the rate of Two Dollars ($2) per acre shall be paid before the end of the first year of the lease. The lease may also be held without drilling for the remainder of its primary term upon payment of the specified rental annually in advance, commencing with the second lease year, unless otherwise provided. The completion of a well producing in paying quantities shall, for so long as such production continues, relieve lessee from any further payment of rental, except that should such production cease during the primary term the lease may be ... the remaining primary term of the lease by payment ... rental ... lease.~~

C. Royalty -Lessee shall pay or cause to be paid to the Superintendent, as royalty on oil, the sum of 16-2-3 percent of the gross proceeds from sales after deducting the oil used by lessee for development and operation purposes on the lease: Provided, that when the quantity of oil taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calendar month is sufficient to average one hundred or more barrels per active producing well per day the royalty on such oil shall be 20 percent; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on the day of sale or removal, and Lessee shall pay a royalty of 16-2-3 percent of the value of all natural gas and products extracted, produced, and sold from this lease. Natural gas used in the reasonable and prudent operation and development of said lease shall be exempted from royalty payment. In no event shall the royalty paid from this lease during any year be less than an amount equal to the annual rental specified above.

D. Development - Lessee shall drill and produce all wells necessary to offset or protect the leased land from drainage by wells on adjoining lands on which Lessor is not the owner of the minerals, or in lieu thereof, to compensate the Lessor in full each month for the estimated loss of royalty through drainage; Provided, That during the period of supervision by the Secretary, the necessity for offset wells shall be determined by the Superintendent and payment in lieu of drilling and production shall be with the consent of, and in amount determined by the Superintendent. The Superintendent in his discretion may order further development of any leased acreage or separate ... if in his opinion a prudent operator would conduct further development.

E. Regulations - It is specifically understood this lease is subject to the current regulations of the Secretary contained in 25 CFR 183 "LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING," and any amendments to the regulations hereinafter promulgated are made a part of this lease and lessee hereby agrees to abide and conform thereto.

4. Operations

A. Restrictions - The Superintendent may impose restrictions as to time of drilling and rate of production from any well or wells when, in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the

Combining oil lease and gas lease pursuant to Resolution No. 25-173

...proved by the Secretary of the Interior November 7, 1975

Lease Contract No. 14-20-G06-[illegible]5

Gas Lease Contract No. 14-20-G06-[illegible]30

CONTRACT NUMBER 7832-1

# OIL & GAS MINING LEASE
## OSAGE RESERVATION, OKLAHOMA

This lease made and entered into in duplicate, on this 1st day of April, 1980 by and between the Osage Tribe of Indians in Oklahoma by Sylvester J. Tinker, Principal Chief, under authority of the Resolution of the Osage Tribal Council dated June 1, 1976 party of the first part, designated as Lessor, and Gussman Oil Company of Tulsa, Oklahoma party of the second part, designated as Lessee, under and pursuant to section 3 of the Act of June 28, 1906 (34 Stat. 539), the Act of March 3, 1921 (41 Stat. 1249), section 1 of the Act of March 2, 1929 (45 Stat. 1478), the Act of June 24, 1938 (52 Stat. 1034), and the Act of October 6, 1964 (78 Stat. 1008), witnesseth:

1. The Lessor, in consideration of a bonus of $ None, paid to the Superintendent, receipt of which is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby grant and lease to the lessee ~~xxxxxxxxxx~~ from the date of approval hereof and as long thereafter as oil and -or natural gas is produced in paying quantities all the oil and natural gas deposits except as hereinafter provided, in or under land described as follows:

Tr. NW/4 Sec. 20 Twp. 23 N. Rge. 8 E. containing 160 acres, more or less.

Lessee or his authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines, pull rods, and other appliances necessary for operations and marketing; the right-of-way for ingress and egress to any point of operation; and the right to use water for lease operations as set out in 25 CFR 183. Lessee shall conduct his operations in a workmanlike manner, commit no waste and allow none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control.

The Act of June 28, 1906 (34 Stat. 539-543) as amended reserves to the Osage Tribe the oil, gas, coal or other minerals covered by said land until the 8th day of April 1983, and thereafter until otherwise provided by Act of Congress.

2. Definitions. - When used herein the following terms shall be defined as:

(A) "Secretary" refers to the Secretary of the Interior or his authorized representative.

(B) "Osage Tribal Council" means the duly elected governing body of the Osage Nation or Tribe of Indians of Oklahoma vested with the authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(C) "Superintendent" refers to the Superintendent of the Osage Indian Agency or his authorized representative.

(D) "Regulations" refers to the regulations in 25 CFR Part 183, promulgated by the Secretary of the Interior and applicable to this lease.

(E) "Natural gas" means any fluid, either combustible or noncombustible, recovered at the surface in the gaseous phase and -or hydrocarbons recovered at the surface as liquids which are the result of condensation caused by reduction of pressure and temperature of hydrocarbons originally existing in a reservoir in the gaseous phase.

3. In consideration of the foregoing, the Lessee hereby agrees:

A. Bond. - To furnish such bond as may be required by the Superintendent, with acceptable surety, or United States bonds as surety therefor, conditioned upon compliance with the terms of this lease and the regulations.

~~B. [illegible] shall complete and place on production a well producing and selling oil and or natural gas in paying quantities on the land embraced within the lease within 12 months from the date of approval of the lease, or as otherwise provided in the lease terms. If 12 months from the date the Superintendent consents to drilling on any restricted homestead selection, this lease shall terminate unless rental at the rate of Two Dollars ($2) per acre shall be paid before the end of the first year of the lease. The lease may also be held without drilling for the remainder of its primary term upon payment of the specified rental annually in advance, commencing with the second lease year, unless otherwise provided. The completion of a well producing in paying quantities shall, for so long as such production continues, relieve lessee from any further payment of rental, except that should such production cease during the primary term the lease may be [illegible] remaining primary term of the lease by payment of advance rental [illegible] provided.~~

C. Royalty -Lessee shall pay or cause to be paid to the Superintendent, as royalty on oil, the sum of 16-2-3 percent of the gross proceeds from sales after deducting the oil used by lessee for development and operation purposes on the lease: Provided, that when the quantity of oil taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calendar month is sufficient to average one hundred or more barrels per active producing well per day the royalty on such oil shall be 20 percent; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on the day of sale or removal, and Lessee shall pay a royalty of 16-2-3 percent of the value of all natural gas and products extracted, produced, and sold from this lease. Natural gas used in the reasonable and prudent operation and development of said lease shall be exempted from royalty payment. In no event shall the royalty paid from this lease during any year be less than an amount equal to the annual rental specified above.

D. Development - Lessee shall drill and produce all wells necessary to offset or protect the leased land from drainage by wells on adjoining lands on which Lessor is not the owner of the minerals, or in lieu thereof, to compensate the Lessor in full each month for the estimated loss of royalty through drainage; Provided, That during the period of supervision by the Secretary, the necessity for offset wells shall be determined by the Superintendent and payment in lieu of drilling and production shall be with the consent of, and in amount determined by the Superintendent. The Superintendent in his discretion may order further development of any leased acreage or separate horizon if, in his opinion, a prudent operator would conduct further development.

E. Regulations - It is specifically understood this lease is subject to the current regulations of the Secretary contained in 25 CFR 183 "LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING," and any amendments to the regulations hereinafter promulgated are made a part of this lease and lessee hereby agrees to abide and conform thereto.

4. Operations

A. Restrictions. - The Superintendent may impose restrictions as to time of drilling and rate of production from any well or wells when, in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the

Combining oil lease and gas ... Lease Contract No. 14-20-G06 ... 2
...ed by the Secretary of the ... Gas Lease Contract No. 14-20-G06-...09
... November 7, 1975

CONTRACT NUMBER
14-20-G06- ...

OIL & GAS MINING LEASE
OSAGE RESERVATION, OKLAHOMA

This lease made and entered into in duplicate, on this 11th day of April, 1980 by and between the Osage Tribe of Indians in Oklahoma ... Sylvester J. Tinker, Principal Chief, under authority of the Resolution of the Osage Tribal Council dated June 1, 1978 ... party of the first part, designated as Lessor, and Gussman Oil Company of Tulsa, Oklahoma.

party of the second part, designated as Lessee, under and pursuant to section 3 of the Act of June 28, 1906 (34 Stat. 539), the Act of March 3, 1921 (41 Stat. 1249), section 1 of the Act of March 2, 1929 (45 Stat. 1478), the Act of June 24, 1938 (52 Stat. 1034), and the Act of October 6, 1964 (78 Stat. 1008), witnesseth:

1. The Lessor, in consideration of a bonus of $ None, paid to the Superintendent, receipt of which is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby grant and lease to the lessee ~~xxxxxxxxxx~~ from the date of approval hereof and as long thereafter as oil and -or natural gas is produced in paying quantities all the oil and natural gas deposits except as hereinafter provided, in or under land described as follows:

Tr. SE/4 Sec. 25 Twp. 23 N. Rge. 7 E. containing 160 acres, more or less.

Lessee or his authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines, pull rods, and other appliances necessary for operations and marketing; the right-of-way for ingress and egress to any point of operation; and the right to use water for lease operations as set out in 25 CFR 183. Lessee shall conduct his operations in a workmanlike manner, commit no waste and allow none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control.

The Act of June 28, 1906 (34 Stat. 539-543) as amended reserves to the Osage Tribe the oil, gas, coal or other minerals covered by said land until the 8th day of April 1983, and thereafter until otherwise provided by Act of Congress.

2. Definitions. - When used herein the following terms shall be defined as:

(A) "Secretary" refers to the Secretary of the Interior or his authorized representative.

(B) "Osage Tribal Council" means the duly elected governing body of the Osage Nation or Tribe of Indians of Oklahoma vested with the authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(C) "Superintendent" refers to the Superintendent of the Osage Indian Agency or his authorized representative.

(D) "Regulations" refers to the regulations in 25 CFR Part 183, promulgated by the Secretary of the Interior and applicable to this lease.

(E) "Natural gas" means any fluid, either combustible or noncombustible, recovered at the surface in the gaseous phase and -or hydrocarbons recovered at the surface as liquids which are the result of condensation caused by reduction of pressure and temperature of hydrocarbons originally existing in a reservoir in the gaseous phase.

... In consideration of the foregoing, the Lessee hereby agrees:

A. Bond. - To furnish such bond as may be required by the Superintendent, with acceptable surety, or United States bonds as surety therefor, conditioned upon compliance with the terms of this lease and the regulations.

~~B. ... Unless Lessee shall complete and place on production a well producing and selling oil and or natural gas in paying quantities~~ on the land ... within the lease within 12 months from the date of approval of the lease, or as otherwise provided in the lease terms, or 12 months from the date the Superintendent consents to drilling on any restricted homestead selection, this lease shall terminate unless rental at the rate of Two Dollars ($2) per acre shall be paid before the end of the first year of the lease. The lease may also be held without drilling for the remainder of its primary term upon payment of the specified rental annually in advance, commencing with the second lease year, unless otherwise provided. The completion of a well producing in paying quantities shall, for so long as such production continues, relieve lessee from any further payment of rental, except that should such production cease during the primary term the lease may be ~~... the remaining primary term of the lease by payment of advance rental ...~~ ~~... of the lease.~~

C. Royalty -Lessee shall pay or cause to be paid to the Superintendent, as royalty on oil, the sum of 16-2-3 percent of the gross proceeds from sales after deducting the oil used by lessee for development and operation purposes on the lease: Provided, that when the quantity of oil taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calendar month is sufficient to average one hundred or more barrels per active producing well per day the royalty on such oil shall be 20 percent; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on the day of sale or removal, and Lessee shall pay a royalty of 16-2-3 percent of the value of all natural gas and products extracted, produced, and sold from this lease. Natural gas used in the reasonable and prudent operation and development of said lease shall be exempted from royalty payment. In no event shall the royalty paid from this lease during any year be less than an amount equal to the annual rental specified above.

D. Development - Lessee shall drill and produce all wells necessary to offset or protect the leased land from drainage by wells on adjacent lands on which Lessor is not the owner of the minerals, or in lieu thereof, to compensate the Lessor in full each month for the estimated loss of royalty through drainage; Provided, That during the period of supervision by the Secretary, the necessity for offset wells shall be determined by the Superintendent and payment in lieu of drilling and production shall be with the consent of, and in amount determined by the Superintendent. The Superintendent in his discretion may order further development of any leased acreage or separate tract if, in his opinion, a prudent operator would conduct further development.

E. Regulations - It is specifically understood this lease is subject to the current regulations of the Secretary contained in 25 CFR 183 "LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING," and any amendments to the regulations hereinafter promulgated ... are made a part of this lease and lessee hereby agrees to abide and conform thereto.

F. Operations

1. Restrictions. - The Superintendent may impose restrictions as to time of drilling and rate of production from any well or wells when, in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the

Approved by the Secretary of the Interior September 16, 1958

14-20-0406-3532

# OIL MINING LEASE

## OSAGE RESERVATION, OKLAHOMA

This lease, made and entered into in duplicate, on this Fifth day of May A. D. 19 01 by and between the Osage Tribe of Indians in Oklahoma by PAUL PITTS Principal Chief, under authority of the Resolution of the Osage Tribal Council dated APR 19 1961 party of the first part, designated as lessor, and Oras A. Shaw of 1408 Philtower Building, Tulsa, Oklahoma party of the second part, designated as lessee, under and in pursuant of section 3, of the Act approved June 28, 1906, (34 Stat. L. 539-543), the Act approved March 3, 1921 (41 Stat. 1249) The Act of March 2, 1929 (45 Stat. L. 1478) And the Act approved June 24, 1938 (52 Stat. L. 1034), Witnesseth:

1. The lessor, in consideration of one dollar, the receipt whereof is acknowledged, and of the royalities, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby demise, grant, lease and let unto the lessee, for five years from the date of approval hereof, and as long thereafter as oil is produced in paying quanities all the oil deposits in or under land described as follows, to-wit:

Tr. 49 NE/4 (Quarter) Sec. 29 Twp. 26 N. Rge. 11 E.

of the Indian Meridian, and containing 160 acres, more or less, with the exclusive right to extract, pipe, store, and remove oil.

The act of June 24, 1938 (52 Stat. L. 1034) amended section one of the act of March 2, 1929 (45 Stat. L. 1478) so as provided in part as follows:

That all that part of the Act of June 28, 1906 (34 Stat. L. 539-543), entitled 'An Act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes,' which reserves to the Osage Tribe the oil, gas, coal, or other minerals covered by the lands for the selection and division of which provision is made in that Act is hereby amended so that the oil, gas, coal, or other minerals, covered by said lands are reserved to the Osage Tribe, until the 8th day of April, 1983, unless otherwise provided by Act of Congress.

2. The lessee agrees to pay or cause to be paid to the Superintendent of the Osage Indian Agency, at Pawhuska, Oklahoma, for the lessor as royalty, the sum of 16 2-3 per cent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs shall elect to take the royalty in oil; payment to be made at the time of sale or removal of oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of the sale or removal: Provided, That when the quantity of oil taken from all producing wells, on any quarter-section according to the public survey, or fractional part of a quarter-section if the land covered by this lease does not include the full quarter-section, during any calendar month, is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 per cent. Should the lessor, with the approval of the Commissioner of Indian Affairs elect to take the royalty in oil, the lessee shall furnish free storage for the royalty oil for not exceeding 30 days.

Any of the Executive Departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under this lease. The Commissioner of Indian Affairs may impose restrictions as to time or times for the drilling of wells as to the production from any well or wells drilled when in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in the exercise of his judgment the Commissioner of Indian Affairs may take into consideration, among other things, Federal laws, State laws, or regulations by competent Federal or State authorities or lawful agreements among operators regulating either drilling or production, or both.

3. Lessee shall drill at least one well to the Mississippi Lime, unless oil or gas is found in paying quantities at a lesser depth, on the land covered by his lease, within 12 months from the date of approval of the lease, or the lease may be held for the full five-year primary term without drilling, upon payment to the Superintendent for the lessor of rental at the rate of one dollar per acre per annum, payable annually in advance beginning one year after the date of approval of the lease. This lease shall terminate as to both parties unless such advance rental shall be received at the Osage Agency or shall have been mailed as indicated by postmark, on or before the due date: PROVIDED, That the time within which a well shall be drilled shall not begin to run on any restricted homestead selection until the consent of the Superintendent to drilling on such homestead shall have been given, nor shall advance rental become due until the next anniversary date of the lease following the date of such consent: Provided further, That the Superintendent in his discretion may direct the drilling of any undrilled lease, if in his opinion the interests of the Osage Tribe warrant: Provided further, That whenever the Commissioner of Indian Affairs shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on this lease.

The completion of a well to the Mississippi Lime, or production of oil or gas in paying quantities from a lesser depth than the Mississippi Lime, for such time as such production shall continue, after the lease has entered a rental status, shall relieve the lessee from any further payment of rentals for the balance of the primary term of the lease for which rental has not been paid. Should such production cease, rental shall commence on the next anniversary date of the lease.

Rental shall be paid on the basis of a full year, and no refund will be made of advance rental paid in compliance with the regulations in this part.

4. Lessee shall have the right to use so much of the surface of the land as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods and other appliances necessary for the operation of the wells; also the right of ingress and egress and the right of way to any point of operations under condition of least injury and inconvenience to the owner and occupant of the surface. Before commencing operations for the drilling of any well the lessee shall pay to the surface owner the sum of $200 for each well located on cultivated land (tilled or cultivated within the immediately preceding three years, and including hay meadow land), $150 for open pasture land, and $100 for each location on brush or wooded lands, and other lands not suitable for cultivation. Upon payment of such location site money, lessee shall be entitled to possession. Location site shall be held to the minimum area essential for operations, and in no event shall exceed one and one-half acres in area. Lessee shall also pay tank site fees at the rate of $20 per tank of not exceeding 1,000 barrels capacity: *Provided, however*, That no tank site fee shall be paid for a tank temporarily set on a well location site for testing purposes during the completion of the well. Tank sites shall be held to the minimum area essential to efficient operations, and in no event shall exceed an area of 60 feet square per tank. The sum to be paid for a tank site of larger capacity and occupying a greater area, shall be as agreed upon between the surface owner and the lessee, and on failure to agree, the same shall be fixed by arbitration.

Lessee may use water from streams and natural water courses to the extent that same does not diminish the supply below the requirements of the surface owner from whose land the water is taken. When such water supply is located off the lease upon which the water is to be used, the lessee may, with the approval of the Superintendent, lay necessary lines across intervening lands to obtain such water. Any damage resulting from laying such water lines and the setting of pumps and other equipment, that cannot be amicably settled shall be settled by arbitration, as provided in the regulations.

If the surface owner of the land covered by this lease obtains a farm loan from any lending agency under the supervision of the Farm Credit Administration, secured by a mortgage on the surface of said land, and shall have agreed in writing that damages accruing to him from mineral operations on such land shall be paid to the mortgagee, the lessee shall pay all fees and damages required to be paid to the surface owner, to the mortgagee, through the Superintendent of the Osage Indian Agency, to be credited on the loan.

FORM B (Revised)
Approved by the Secretary of the Interior September 16, 1955

(Must be executed in duplicate)

CONTRACT NUMBER
14-20-0106

# OIL MINING LEASE

## OSAGE RESERVATION, OKLAHOMA

This lease, made and entered into in duplicate, on this Fifth day of May A. D., 19 61 by and between the Osage Tribe of Indians in Oklahoma by PAUL PITTS Principal Chief, under authority of the Resolution of the Osage Tribal Council dated APR 19 1961 party of the first part, designated as lessor, and Oras A. Shaw of 1408 Philtower Building, Tulsa, Oklahoma party of the second part, designated as lessee, under and in pursuant of section 3, of the Act approved June 28, 1906, (34 Stat. L. 539-543), the Act approved March 3, 1921 (41 Stat. 1249) The Act of March 2, 1929 (45 Stat. L. 1478) And the Act approved June 24, 1938 (52 Stat. L. 1034), Witnesseth:

1. The lessor, in consideration of one dollar, the receipt whereof is acknowledged, and of the royalities, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby demise, grant, lease and let unto the lessee, for five years from the date of approval hereof, and as long thereafter as oil is produced in paying quantities all the oil deposits in or under land described as follows, to-wit:

Tr. 50 NW/4 (Quarter) Sec. 29 Twp. 26 N. Rge. 11 E.

of the Indian Meridian, and containing 160 acres, more or less, with the exclusive right to extract, pipe, store, and remove oil.

The act of June 24, 1938 (52 Stat. L. 1034) amended section one of the act of March 2, 1929 (45 Stat. L. 1478) so as provided in part as follows:

That all that part of the Act of June 28, 1906 (34 Stat. L. 539-543), entitled 'An Act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes,' which reserves to the Osage Tribe the oil, gas, coal, or other minerals covered by the lands for the selection and division of which provision is made in that Act is hereby amended so that the oil, gas, coal, or other minerals, covered by said lands are reserved to the Osage Tribe, until the 8th day of April, 1983, unless otherwise provided by Act of Congress.

2. The lessee agrees to pay or cause to be paid to the Superintendent of the Osage Indian Agency, at Pawhuska, Oklahoma, for the lessor as royalty, the sum of 16 2-3 per cent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs shall elect to take the royalty in oil; payment to be made at the time of sale or removal of oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of the sale or removal: Provided, That when the quantity of oil taken from all producing wells, on any quarter-section according to the public survey, or fractional part of a quarter-section if the land covered by this lease does not include the full quarter-section, during any calendar month, is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 per cent. Should the lessor, with the approval of the Commissioner of Indian Affairs elect to take the royalty in oil, the lessee shall furnish free storage for the royalty oil for not exceeding 30 days.

Any of the Executive Departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under this lease. The Commissioner of Indian Affairs may impose restrictions as to time or times for the drilling of wells as to the production from any well or wells drilled when in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in the exercise of his judgment the Commissioner of Indian Affairs may take into consideration, among other things, Federal laws, State laws, or regulations by competent Federal or State authorities or lawful agreements among operators regulating either drilling or production, or both.

3. Lessee shall drill at least one well to the Mississippi Lime, unless oil or gas is found in paying quantities at a lesser depth, on the land covered by his lease, within 12 months from the date of approval of the lease, or the lease may be held for the full five-year primary term without drilling, upon payment to the Superintendent for the lessor of rental at the rate of one dollar per acre per annum, payable annually in advance beginning one year after the date of approval of the lease. This lease shall terminate as to both parties unless such advance rental shall be received at the Osage Agency or shall have been mailed as indicated by postmark, on or before the due date: PROVIDED, That the time within which a well shall be drilled shall not begin to run on any restricted homestead selection until the consent of the Superintendent to drilling on such homestead shall have been given, nor shall advance rental become due until the next anniversary date of the lease following the date of such consent: Provided further, That the Superintendent in his discretion may direct the drilling of any undrilled lease, if in his opinion the interests of the Osage Tribe warrant: Provided further, That whenever the Commissioner of Indian Affairs shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on this lease.

The completion of a well to the Mississippi Lime, or production of oil or gas in paying quantities from a lesser depth than the Mississippi Lime, for such time as such production shall continue, after the lease has entered a rental status, shall relieve the lessee from any further payment of rentals for the balance of the primary term of the lease for which rental has not been paid. Should such production cease, rental shall commence on the next anniversary date of the lease.

Rental shall be paid on the basis of a full year, and no refund will be made of advance rental paid in compliance with the regulations in this part.

4. Lessee shall have the right to use so much of the surface of the land as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods and other appliances necessary for the operation of the wells; also the right of ingress and egress and the right of way to any point of operations under condition of least injury and inconvenience to the owner and occupant of the surface. Before commencing operations for the drilling of any well the lessee shall pay to the surface owner the sum of $200 for each well located on cultivated land (tilled or cultivated within the immediately preceding three years, and including hay meadow land), $150 for open pasture land, and $100 for each location on brush or wooded lands, and other lands not suitable for cultivation. Upon payment of such location site money, lessee shall be entitled to possession. Location site shall be held to the minimum area essential for operations, and in no event shall exceed one and one-half acres in area. Lessee shall also pay tank site fees at the rate of $20 per tank of not exceeding 1,000 barrels capacity: *Provided, however*, That no tank site fee shall be paid for a tank temporarily set on a well location site for testing purposes during the completion of the well. Tank sites shall be held to the minimum area essential to efficient operations, and in no event shall exceed an area of 50 feet square per tank. The sum to be paid for a tank site of larger capacity and occupying a greater area, shall be as agreed upon between the surface owner and the lessee, and on failure to agree, the same shall be fixed by arbitration.

Lessee may use water from streams and natural water courses to the extent that same does not diminish the supply below the requirements of the surface owner from whose land the water is taken. When such water supply is located off the lease upon which the water is to be used, the lessee may, with the approval of the Superintendent, lay necessary lines across intervening lands to obtain such water. Any damage resulting from laying such water lines and the setting of pumps and other equipment, that cannot be amicably settled shall be settled by arbitration, as provided in the regulations.

If the surface owner of the land covered by this lease obtains a farm loan from any lending agency under the supervision of the Farm Credit Administration, secured by a mortage on the surface of said land, and shall have agreed in writing that damages accruing to him from mineral operations on such land shall be paid to the mortagee, the lessee shall pay all fees and damages required to be paid to the surface owner, to the mortagee, through the Superintendent of the Osage Indian Agency, to be credited on the loan.

PROGRAM EGM30170
0001475

FARMLAND INDUSTRIES, INC.
DEPARTMENT # 4
P. O. BOX 7305
KANSAS CITY, MO 64116

CURRENT DATE 12/14/89

STATEMENT OF CRUDE OIL PURCHASES FOR THE MONTH OF 11/89

OPERATOR NUMBER 02177
J M GRAVES

2455 E 51ST STREET
TULSA OK 74105

138

LEASE NUMBER 35-1002008
LEASE NAME DUFFY
OIL TIER STRIPPER
STATE OKLAHOMA
COUNTY OSAGE
SEC-TWNSHP-RANGE 22 -27 -10

| PROD MONTH | LEASE GROSS BBLS | LEASE GROSS VALUE | TRANSPORT CHARGE | LEASE STATE TAX | LEASE WINDFALL TAX | LEASE NET VALUE |
|---|---|---|---|---|---|---|
| 11/89 | 159.13 | 3,063.25 | 0.00 | 180.86 | 0.00 | 2,882.39 |
| LEASE TOTALS | 159.13 | 3,063.25 | 0.00 | 180.86 | 0.00 | 2,882.39 |

LEASE ACTIVITY DETAIL

| RUNTICKET NUMBER | BATCH NUMBER | REMOVAL DATE | TANK NUMBER | GRAVITY | TYPE OF RUN | TRANS. RATE | NET BARRELS | PRICE PER BARREL | GROSS VALUE |
|---|---|---|---|---|---|---|---|---|---|
| 000014 | 00003 | 11/04/89 | 00016312 | 33.2 | REGULAR RUN | | 159.13 | 19.25000 | 3,063.25 |
| LEASE TOTALS | | | | | | | 159.13 | | 3,063.25 |

1/6 $10.54 81-2
$10.62 81-1
$521.16
T

OSAGE AGENCY FILE OIL

Form B.

# OIL MINING LEASE.

## OSAGE RESERVATION, OKLAHOMA.

188 and 3279

This lease, made and entered into in quadruplicate, on this 10 day of January, A. D., 1916, by and between the Osage Tribe of Indians in Oklahoma by A-she-gah-hre, Principal Chief, under authority of the Resolution of the Osage Tribal Council dated June 17, 1915, party of the first part, designated as lessor, and Almeda Oil Company, of Bartlesville, Oklahoma, party of the second part, designated as lessee, under and in pursuance of section 3 of the Act approved June 28, 1906 (34 Stat. L., 539-543), witnesseth:

1. The lessor, in consideration of one dollar, the receipt whereof is acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby demise, grant, lease, and let unto the lessee, for five years from the date of approval hereof, and as long thereafter as oil is found in paying quantities, provided that the term of this lease shall not extend beyond the date the title to the minerals remains in the Osage Tribe, all the oil deposits in or under lands described as follows, to wit:

South West Quarter of Sec. 21, T. 26, N., R. 12, E.,
Sec. ........ T. ........ N., R. ........ E.,
Sec. ........ T. ........ N., R. ........ E.,
Sec. ........ T. ........ N., R. ........ E.,
Sec. ........ T. ........ N., R. ........ E.,

OFFICE OF INDIAN AFFAIRS RECEIVED MAY 23 1916

of the Indian Meridian, and containing 160 acres, more or less, with the exclusive right to extract, pipe, store, and remove oil.

2. The lessee agrees to pay or cause to be paid to the Superintendent of the Osage Indian Agency, at Pawhuska, Oklahoma, for the lessor, as royalty, the sum of 16⅔ per cent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Secretary of the Interior, shall elect to take the royalty in oil; payment to be made at time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal: *Provided*, That when the quantity of oil taken from all the producing wells on any quarter-section according to the public survey, or fractional part of a quarter-section if the land covered by this lease does not include the full quarter-section, during any calendar month, is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 per cent.

Should the lessor, with the approval of the Secretary of the Interior, elect to take the royalty in oil, the lessee shall furnish free storage for the royalty oil for not exceeding 30 days.

Any of the Executive Departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under this lease.

3. Lessees shall drill at least one well to the Mississippi lime, unless oil or gas is found in commercial quantities at a lesser depth, on each and every quarter-section or fractional quarter-section of land covered by this lease which is not producing oil on March 16, 1916, within one year from the date of approval hereof, or shall pay to the Superintendent, for the lessor, a rental of one dollar per acre, payable annually, for each year or fractional part of a year the land is held by the lessee and a well is not drilled: *Provided*, That the time within which a well shall be drilled or rental paid in lieu of drilling shall not begin to run on any homestead selection until the consent of the Secretary of the Interior to drilling on such homestead shall have been given. Should the lessee elect to surrender any such quarter-section or fractional quarter-section before the end of any such yearly period without drilling a well thereon, he shall pay the rental of one dollar per acre for the fractional part of a year the land is held and a well is not drilled, and failure of the lessee to pay such rental within twenty-five days from the expiration of any yearly period during which such well is not drilled shall be cause for cancellation of this lease by the Secretary of the Interior, but such cancellation shall not release the lessee and his sureties from the obligation to pay such rental: *Provided*, That the lessee may surrender this lease and have the same canceled at any time as to any homestead selection should the Secretary of the Interior refuse to give his consent to drilling thereon: *Provided further*, That whenever the Secretary of the Interior shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on all producing lands.

4. Lessee shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under condition of least injury and inconvenience to the owner and occupant of the surface. Before commencing operations the lessee shall pay to the surface owner the sum of one hundred dollars for each well located on cultivated land or land suitable for cultivation and thirty-five dollars for each location on land not susceptible to cultivation. Location sites shall not exceed one and one-half acres in area. Lessee shall also pay ten dollars for each site outside of the well location used for oil tank of not exceeding 1,600 barrels capacity, allowing 50 feet square for each tanksite. The sum to be paid for an oil tanksite of larger capacity and occupying a greater area shall be as agreed upon between the surface owner and the lessee, and on failure to agree the same shall be fixed by arbitration.

During operations the lessee shall pay all damages for the use of the surface other than that included in the location and tanksites, all damages to any growing crops or to any improvements on the lands and all other damages as may be occasioned by reason of operations. Such damages shall be apportioned among the parties interested in the surface, whether as owner, lessee, or otherwise, as the parties may mutually agree or as their interests may appear. If the parties are unable to agree concerning damages, the same shall be determined by arbitration.

RECEIVED
JUL 17 1963
OSAGE AGENCY

CONTRACT NUMBER
14-20-0406 1361

BLANKET OIL MINING LEASE
OSAGE RESERVATION, OKLAHOMA

THIS LEASE, made and entered into in quadruplicate as of August 1 A.D., 1963, by and between OSAGE TRIBE OF INDIANS in Oklahoma, by Paul Pitts, Principal Chief, under authority of a Resolution of the Osage Tribal Council dated July 17 1963 and numbered 21-75, party of the first part, designated as LESSOR, and THE PURE OIL COMPANY, a corporation, party of the second part, designated as LESSEE under and in pursuance of Section 3 of the Act approved June 28, 1906 (34 Stat. L., 539-543), the Act approved March 3, 1921 (41 Stat.L., 1249), the Act of March 2, 1929 (45 Stat. L., 1478), the Act of June 24, 1938 (52 Stat. L., 1034), and the Act of June 15, 1950 (64 Stat. L., 215).

WITNESSETH:

The Lessee, in full interest, is the owner of oil leases duly executed by the Principal Chief of the Osage Tribe of Indians under authority of resolutions of the Osage Tribal Council, and thereafter approved by the Secretary of the Interior, or his duly authorized representative, as now shown by the records of the Osage Indian Agency at Pawhuska, Oklahoma, and Exhibit "A" attached hereto and made a part hereof, covering lands in Osage County, Oklahoma, and more particularly described as follows:

In Township 27 North, Range 10 East, Osage County, Oklahoma:

| | |
|---|---|
| S½ of Sec. 2 | (Contract No. 14-20-0406-1271) |
| All of Sec. 11 | (Contract No. 14-20-0406-1271) |
| All of Sec. 14 | (Contract No. 14-20-0406-1271) |
| ~~SE¼ of Sec. 3~~ | ~~(Contract No. 14-20-0406-1271)~~ out |
| NE¼ of Sec. 15 | (Contract No. 14-20-0406-1271) |
| SE¼ of Sec. 15 | (Contract No. 14-20-0406-1271) |
| SW¼ of Sec. 12 | (Contract No. 14-20-0406-1271) |
| SW¼ of Sec. 13 | (Contract No. 14-20-0406-1271) |
| NW¼ of Sec. 13 | (Contract No. I-68-Ind.-3499) |

WHEREAS, Lessee, the present owner and holder of said oil mining leases as hereinabove described and set forth, is desirous of developing and operating

the lands described in said oil mining leases for oil mining purposes as a unit for the common benefit of Lessor and the present owner and holder of said leases.

Section 1. The Lessor, in consideration of One Dollar ($1.00), the receipt whereof is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained and hereby agreed to be paid, observed and performed by the Lessee, does hereby demise, grant, lease and let unto the Lessee for five (5) years from the date of approval hereof, and as long thereafter as oil is produced in paying quantities, all of the oil deposits in or under all of the lands above described, containing two thousand five hundred and sixty (2,560) acres, more or less, with the exclusive right to extract, pipe, store and remove oil.

The Act of June 24, 1938 (52 Stat. L., 1034) amended Section One of the Act of March 2, 1929 (45 Stat. L., 1478) so as provided in part as follows:

"That all that part of the Act of June 28, 1906 (34 Stat. L., 539-543) entitled 'An Act for the division of lands and funds of the Osage Indians in Oklahoma' and for other purposes; which reserves to the Osage Tribe the oil, gas, coal or other minerals, covered by the lands for the selection and division of which provision is made in that Act, is hereby amended so that the oil, gas, coal or other minerals, covered by said lands, are reserved to the Osage Tribe until the 8th. day of April, 1983, unless otherwise provided by Act of Congress."

Section 2. The Lessee agrees to pay, or cause to be paid, to the Superintendent of the Osage Indian Agency, at Pawhuska, Oklahoma, for the Lessor, as Royalty on oil produced and saved from the lease premises, after deducting the oil used in operating the lease:

(a) The sum of twelve and one-half ($12\frac{1}{2}$) per cent of the gross proceeds from the sales of crude oil produced and saved from the Wayside Sand on the one thousand eight hundred and ninety five (1,895) acres described in Exhibit "B" attached hereto and made a part hereof after the effective date of this blanket oil mining lease.

(b) The sum of twelve and one-half ($12\frac{1}{2}$) per cent of the gross proceeds from the sales of crude oil produced and saved from the Mississippi Chat on the

six hundred eighty (680) acres described in Exhibit "C" attached hereto and made a part hereof after the effective date of this blanket oil mining lease.

(c) The sum of sixteen and two-thirds (16-2/3) per cent of the gross proceeds from sale of all crude oil produced and saved from all formations, other than from the Wayside Sand on the one thousand eight hundred and ninety five (1,895) acres described in (a) above and the Mississippi Chat on the six hundred and eighty (680) acres described in (b) above; Provided, That when the quantity of oil produced from formations other than the Wayside Sand on such 1,895 acres and Mississippi Chat on such 680 acres during any calendar month is sufficient to average one hundred (100) or more barrels per well per day, the royalty on such oil from formations other than the Wayside Sand and the Mississippi Chat shall be twenty (20) per cent.

Payment for the royalty hereunder shall be made at the time of sale or removal of the oil from the leased premises, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent Oil Field on the day of sale or removal.

Should the Lessor, with the approval of the Commissioner of Indian Affairs, elect to take the royalty in oil, Lessee shall furnish free storage for the royalty oil for not exceeding thirty (30) days.

Any of the Executive Departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any of the oil produced under this lease. The Commissioner may impose restrictions as to time or times for the drilling of wells and as to the production from any well or wells drilled when in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in the exercise of his judgment the Commissioner may take into consideration, among other things, Federal laws, State laws, or regulations by competent Federal or State authorities

CONTRACT NUMBER
756

BLANKET OIL MINING LEASE
OSAGE RESERVATION, OKLAHOMA
NORTH DRUMCREEK UNIT

This lease, made and entered into in triplicate, on this 26th day of May, A.D., 1966, by and between the Osage Tribe of Indians in Oklahoma by Paul Pitts under authority of Resolution No. 21-219 of the Osage Tribal Countil dated May 26 1966, party of the first part, designated as lessor, and Charles W. Oliphant, an undivided 28.9038% interest, ~~A. G. Oliphant, an undivided 30.0156% interest~~, Allene O. Mayo, an undivided 5.0400% interest, Lowell Wadmond, an undivided 12.5000% interest, Faye Rasmussen, an undivided 9.7081% interest, Katherine O. Detrick, an undivided .020% of 13.8325% interest, Gayle G. Frazier, an undivided .018 of 13.8325% interest, Daniel D. Gridley, an undivided .022 of 13.8325% interest, ~~Josie Hair, an undivided .006 of 13.8325%~~ interest, Mary E. Hitzman, an undivided .005 of 13.8325% interest, Faith N. Jansen, an undivided .005 of 13.8325% interest, Carl R. Kauffman, an undivided .016 of 13.8325% interest, Allene O. Mayo, an undivided .100 of 13.8325% interest, The First National Bank & Trust Company of Tulsa, Guardian of the Estate of John D. Mayo, II, a Minor, an undivided .020 of 13.8325% interest, A. G. Oliphant, an undivided .168 of 13.8325% interest, A. G. Oliphant, Guardian of the Estate of A. G. Oliphant, Jr., a Minor, an undivided .200 of 13.8325% interest, The First National Bank & Trust Company of Tulsa, Executor of the Estate of Carol E. Oliphant, Deceased, an undivided .150 of 13.8325% interest, Charles W. Oliphant, an undivided .100 of 13.8325% interest, Charles W. Oliphant, Guardian of the Estate of Eric B. Oliphant, a Minor, an undivided .020 of 13.8325% interest, Gertrude O. Oliphant, an undivided .008 of 13.8325% interest, Mary E. Oliphant, an undivided .002 of 13.8325% interest, Charles W. Oliphant, Guardian of the Estate of Nancy B. Oliphant, a Minor, an undivided .010 of 13.8325% interest, Faye Rasmussen, an undivided .020 of 13.8325% interest, Claire E. Stevens, an undivided .010 of 13.8325% interest, Nancy O. Thompson, an undivided .004 of 13.8325% interest, Cecil Ezelle Whitwell, an undivided .030 of 13.8325% interest, Thomas A. Harrell, administrator with will annexed, of the Estate of Earl V. Whitwell, deceased, an undivided .060 of 13.8325% interest, ~~and~~ Lewis L. Young, an undivided .006 of 13.8325% interest, parties of the second part designated as lessees, under and in pursuance of Section 3, of the Act approved June 28, 1906 (34 Stat. L 539-543), the Act approved March 3, 1921 (41 Stat. L. 1249), the Act of March 2, 1929 (45 Stat. L. 1478) and the Act approved June 24, 1938 (52 Stat. L. 1034), the Act of June 15, 1950 (64 Stat. L. 215), and the Act of October 6, 1964 (78 Stat. 1008); witnesseth:

| | |
|---|---|
| Clara Hair Clement | .0166 % |
| Glen F. Hair | .0166 % |
| Melton D. Hair | .0166 % |
| Charles A. Hair | .0166 % |
| Lawrence Hair | .0166 % |

| | |
|---|---|
| Charles W. Oliphant | 6.6702 |
| Allene O. Mayo | 6.6702 |
| Nat'l Bk [illegible] 3/16 A. G. Oliphant [illegible] | 6.6702 |
| Gertrude O. Oliphant | 10.0058 |

1. The lessor, in consideration of one dollar, the receipt whereof is acknowledged, and of the royalties, covenants, stipulations and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessees, does hereby demise, grant, lease and let unto the lessees, for five years from the effective date hereof, and as long thereafter as oil is produced in paying quantities, all the oil deposits in or under land described as follows, to-wit:

| | | | |
|---|---|---|---|
| NE/4 | 3-25N-4E | Contract No. 14-20-0406-1245 | |
| ~~SE/4~~ | ~~3-25N-4E~~ | ~~Contract No. 14-20-0406-1247~~ | Terminated 3-1-68 |
| NW/4 | 3-25N-4E | Contract No. 14-20-0406-1246 | |
| SW/4 | 3-25N-4E | Contract No. I-68-Ind-27504 | |
| NE/4 | 4-25N-4E | Contract No. 14-20-0406-419 | |
| SE/4 | 4-25N-4E | Contract No. I-68-Ind-26538 | |
| NW/4 | 4-25N-4E | Contract No. 14-20-0406-420 | |
| SW/4 | 4-25N-4E | Contract No. I-68-Ind-26539 | |
| ~~NE/4~~ | ~~5-25N-4E~~ | ~~Contract No. 14-20-0406-1248~~ | Terminated 3-1-68 |
| SE/4 | 5-25N-4E | Contract No. I-68-Ind-26542 | |
| ~~NW/4~~ | ~~5-25N-4E~~ | ~~Contract No. 14-20-0406-1353~~ | Terminated 6-1-68 |
| SW/4 | 5-25N-4E | Contract No. I-68-Ind-26543 | |
| NW/4 | 9-25N-4E | Contract No. I-68-Ind-26548 | |
| NE/4 | 10-25N-4E | Contract No. 14-20-0406-1143 | |
| NW/4 | 10-25N-4E | Contract No. I-68-Ind-27506 | |

of the Indian Meridian, and containing ~~2400~~ 1,920 6/2/68 acres, more or less, with the exclusive right to extract, pipe, store, and remove oil.

Section Three of the Act of June 24, 1938 (52 Stat. L 1034) as amended by the Act of October 6, 1964 (78 Stat. 1008) provides in part as follows:

That all that part of the Act of June 28, 1906 (34 Stat. L. 539-543) entitled 'An Act for the division of lands and funds of the Osage Indians in Oklahoma, and for other purposes,' which reserves to the Osage Tribe the oil, gas, coal or other minerals covered by the lands for the selection and division of which provision is made in that Act is hereby amended so that the oil, gas, coal or other minerals, covered by said lands are reserved to the Osage Tribe, until the 8th day of April, 1983, and thereafter until otherwise provided by Act of Congress.

2. The lessees agree to pay, or cause to be paid to the Superintendent of the Osage Agency, Pawhuska, Oklahoma, for the lessor, as royalty on oil, or other hydrocarbon substances, produced and saved from the leased premises after deducting the oil used in operating tne lease:

(a) The sum of sixteen and two-thirds percent (16-2/3%) of the gross proceeds from sales of oil produced and saved from the leased premises: Provided, If when the quantity of oil produced during any calendar month is sufficient to average one hundred (100) or more barrels per well per day, the royalty on such oil shall be 20%.

Payment of the royalty payable hereunder shall be made at the time of sale or removal of the oil from the leased premises, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent Field on the day of sale or removal.

Should the lessor, with the approval of the Commissioner of Indian Affairs, elect to take the royalty in oil, the lessees shall furnish free storage for the royalty oil for not exceeding thirty (30) days.

Any of the Executive Departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under this lease. The Commissioner may impose restrictions as to time or times for the drilling of wells and as to the production from any well or wells drilled when in his judgement such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in the exercise of his judgment the Commissioner may take into consideration, among other things, federal laws, state laws, or regulations by competent federal or state authorities or lawful agreements among operators regulating either drilling or production, or both.

(FORM B.)

# OIL MINING LEASE.

## Osage Reservation, Oklahoma

This lease, made and entered into in quadruplicate, on this .................... day of .................... A. D., 19...... by and between the Osage Tribe of Indians in Oklahoma by .......... A-she-gah-hre .......... Principal Chief, under authority of the Resolution of the Osage Tribal Council dated June 17, 1915, party of the first part, designated as lessor, and The Skelton-Moore Oil Company ... of Bartlesville, Okla. .......... party of the second part, designated as lessee, under and in pursuance of section 3 of the Act approved June 28, 1906, (34 Stat. L., 539-543), witnesseth:

1. The lessor, in consideration of one dollar, the receipt whereof is acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby demise, grant, lease, and let unto the lessee, for five years from the date of approval hereof, and as long thereafter as oil is found in paying quantities, provided that the term of this lease shall not extend beyond the date the title to the minerals remains in the Osage Tribe, all the oil deposits in or under lands described as follows, to-wit:

Southwest Quarter of .................. Sec. 32 T. 26 N., R. 12 E. RECEIVED
.................. Sec. .......... T. .......... N., R. .......... E. MAY 20 1916
.................. Sec. .......... T. .......... N., R. .......... E. 55044
.................. Sec. .......... T. .......... N., R. .......... E.
.................. Sec. .......... T. .......... N., R. .......... E.

of the Indian Meridian, and containing 160 acres, more or less, with the exclusive right to extract, pipe, store, and remove oil.

2. The lessee agrees to pay or cause to be paid to the Superintendent of the Osage Indian Agency, at Pawhuska, Oklahoma, for the lessor, as royalty, the sum of 16 2-3 per cent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Secretary of the Interior, shall elect to take the royalty in oil; payment to be made at time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal: PROVIDED, That when the quantity of oil taken from all the producing wells on any quarter-section according to the public survey, or fractional part of a quarter-section if the land covered by this lease does not include the full quarter-section, during any calendar month, is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 per cent.

Should the lessor, with the approval of the Secretary of the Interior, elect to take the royalty in oil, the lessee shall furnish free storage for the royalty oil for not exceeding 30 days.

Any of the Executive Departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under this lease.

3. Lessees shall drill at least one well to the Mississippi lime, unless oil or gas is found in commercial quantities at a lesser depth, on each and every quarter-section or fractional quarter-section of land covered by this lease which is not producing oil on March 16, 1916, within one year from the date of approval hereof, or shall pay to the Superintendent, for the lessor, a rental of one dollar per acre, payable annually, for each year or fractional part of a year the land is held by the lessee and a well is not drilled: PROVIDED, That the time within which a well shall be drilled or rental paid in lieu of drilling shall not begin to run on any homestead selection until the consent of the Secretary of the Interior to drilling on such homestead shall have been given. Should the lessee elect to surrender any such quarter-section or fractional quarter-section before the end of any such yearly period without drilling a well thereon, he shall pay the rental of one dollar per acre for the fractional part of a year the land is held and a well is not drilled, and failure of the lessee to pay such rental within twenty-five days from the expiration of any yearly period during which such well is not drilled shall be cause for cancellation of this lease by the Secretary of the Interior, but such cancellation shall not release the lessee and his sureties from the obligation to pay such rental: PROVIDED, That the lessee may surrender this lease and have the same canceled at any time as to any homestead selection should the Secretary of the Interior refuse to give his consent to drilling thereon: PROVIDED FURTHER, That whenever the Secretary of the Interior shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on all producing lands.

4. Lessee shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under condition of least injury and inconvenience to the owner and occupant of the surface. Before commencing operations the lessee shall pay to the surface owner the sum of one hundred dollars for each well located on cultivated land or land suitable for cultivation and thirty-five dollars for each location on land not susceptible to cultivation. Location sites shall not exceed one and one-half acres in area. Lessee shall also pay ten dollars for each site outside of the well location area for oil tank of not exceeding 1,600 barrels capacity, allowing 50 feet square for each tanksite. The sum to be paid for an oil tanksite of larger capacity and occupying a greater area shall be as agreed upon between the surface owner and the lessee, and on failure to agree the same shall be fixed by arbitration.

During operations the lessee shall pay all damages for the use of the surface other than that included in the location and tanksites, all damages to any growing crops or to any improvements on the lands and all other damages as may be occasioned by reason of operations. Such damages shall be apportioned among the parties interested in the surface, whether as owner, lessee, or otherwise, as the parties may mutually agree or as their interests may appear. If the parties are unable to agree concerning damages, the same shall be determined by arbitration.

pproved by the ... terior. (Revised June 1, 1983) Ga. Lease Contract No. ...

Larry Chinn
Fall #

# OIL & GAS MINING LEASE
## OSAGE RESERVATION, OKLAHOMA

This lease made and entered into in duplicate, on this 31st. day of January, 19 85, by and between the Osage Tribe Indians of Oklahoma by George E. Tallchief, Principal Chief, under authority of the Resolution of the Osage ribal Council dated June 1, 1979 party of the first part, designated as Lessor, and Larry Chinn party of the second part, Box 717 of Bowring, Oklahoma 74009 signated as Lessee, under and pursuant to Section 3 of the Act of June 28, 1906 (34 Stat. 539), the Act of March 3, 1921 (41 Stat. 1249), ection 1 of the Act of March 2, 1929 (45 Stat. 1478), the Act of June 24, 1938 (52 Stat. 1034), the Act of October 6, 1964 (78 Stat. 1008), and the Act of October 21, 1978 (92 Stat. 1660), witnesseth:

1. The Lessor, in consideration of a bonus of $ None, paid to the Superintendent, receipt of which is hereby acknowledged, id of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by e lessee, does hereby grant and lease to the lessee for xxxxxxxxxxxxx from the date of approval hereof and as long thereafter as oil and-or natural gas is produced in paying quantities all the oil and natural gas deposits except as hereinafter provided, in or under land described as follows:

Tr. SW/4 Sec. 36 Twp. 27 N. Rge. 11 E. containing 160 acres, more or less.

Lessee or his authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines, pull rods, and other appliances necessary for operations and marketing; the right-of-way for ingress and egress to any point of operation; id the right to use water for lease operations as set out in 25 CFR 226. Lessee shall conduct his operations in a workmanlike manner, mmit no waste and allow none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control.

The Act of June 28, 1906 (34 Stat. 539-543) as amended reserves to the Osage Tribe the oil, gas, coal or other minerals covered by said land in perpetuity.

2. Definitions - When used herein the following terms shall be defined as:

(A) "Secretary" refers to the Secretary of the Interior or his authorized representative.

(B) "Osage Tribal Council" means the duly elected governing body of the Osage Nation or Tribe of Indians of Oklahoma vested with the authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(C) "Superintendent" refers to the Superintendent of the Osage Indian Agency or his authorized representative.

(D) "Regulations" refers to the regulations in 25 CFR Part 226, promulgated by the Secretary of the Interior and applicable to this lease.

(E) "Natural gas" means any fluid, either combustible or noncombustible, recovered at the surface in the gaseous phase and-or drocarbons recovered at the surface as liquids which are the result of condensation caused by reduction of pressure and temperature of drocarbons originally existing in a reservoir in the gaseous phase.

3. In consideration of the foregoing, the Lessee hereby agrees:

A. Bond - To furnish such bond as may be required by the Superintendent, with acceptable surety, or United States bonds as surety erefor, conditioned upon compliance with the terms of this lease and the regulations.

~~B. Rental - Unless Lessee shall complete and place on production a well producing and selling oil and-or natural gas in paying quantities~~ on the land embraced ~~within the~~ lease within 12 months from the date of approval of the lease, or as otherwise provided in the lease terms, or 12 months from the date the ~~Superintendent~~ consents to drilling on any restricted homestead selection, this lease shall terminate unless ntal at the rate of Two Dollars ($2) per acre shall be ~~paid before the~~ end of the first year of the lease. The lease may also be held without rilling for the remainder of its primary term upon payment of the specified ~~rental annually~~ in advance, commencing with the second lease year, unless otherwise provided. The completion of a well producing in paying quantities shall, ~~for so long~~ as such production continues, relieve lessee from any further payment of rental, except that should such production cease during the primary ~~term the lease~~ may be ~~ontinued only during the remaining primary term of the lease by payment of advance rental which shall commence on the next nniversary date of the lease.~~

C. Royalty - Lessee shall pay or cause to be paid to the Superintendent, as royalty on oil, the sum of 1/6 of the gross proceeds from sales after deducting the oil used by lessee for development and operation purposes on the lease: Provided, that when the quantity of il taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calendar month ; sufficient to average one hundred or more barrels per active producing well per day the royalty on such oil shall be 20 percent; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on e day of sale or removal, and Lessee shall pay a royalty of 3-16 of the value of all natural gas and products extracted, produced and sold om this lease. Natural gas used in the reasonable and prudent operation and development of said lease shall be exempted from royalty payment. In no event shall the royalty paid from this lease during any year be less than an amount equal to the annual rental specified above.

D. Development - Lessee shall drill and produce all wells necessary to offset or protect the leased land from drainage by wells on djoining lands on which Lessor is not the owner of the minerals, or in lieu, thereof, to compensate the Lessor in full each month for the stimated loss of royalty through drainage; Provided, that during the period of supervision by the Secretary, the necessity for offset wells shall be determined by the Superintendent and payment in lieu of drilling and production shall be with the consent of, and in amount determined by the Superintendent. The Superintendent in his discretion may order further development of any leased acreage or separate orizon if, in his opinion, a prudent operator would conduct further development.

E. Regulations - It is specifically understood this lease is subject to the current regulations of the Secretary contained in 25 CFR 226, LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING," and any amendments to the regulations hereinafter romulgated are made a part of this lease and lessee hereby agrees to abide and conform thereto.

4. Operations.

A. Restrictions - The Superintendent may impose restrictions as to time of drilling and rate of production from any well or wells when in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the

RECEIVED
3 - 1976
OSAGE AGENCY

Helmer, Sell & Company
3204

CONTRACT NUMBER
14-20-G06-

FORM C
Approved by the Secretary of the
Interior November 7, 1975

# OIL & GAS MINING LEASE
## OSAGE RESERVATION, OKLAHOMA

This lease made and entered into in duplicate, on this 1st day of November 1976 by and between the Osage Tribe of Indians in Oklahoma by Sylvester J. Tinker, Principal Chief, under authority of the Resolution of the Osage Tribal Council dated OCT 20 1976 party of the first part, designated as Lessor, and Ben Helmer and Eugene Sell, d/b/a Helmer & Sell Well Servicing Company and J.C. Carman of P.O. Box 1139, Pawhuska, Oklahoma 74056

party of the second part, designated as Lessee, under and pursuant to section 3 of the Act of June 28, 1906 (34 Stat. 539), the Act of March 3, 1921 (41 Stat. 1249), section 1 of the Act of March 2, 1929 (45 Stat. 1478), the Act of June 24, 1938 (52 Stat. 1034), and the Act of October 6, 1964 (78 Stat. 1008), witnesseth:

1. The Lessor, in considerationof a bonus of $ 3,100.00, paid to the Superintendent, receipt of which is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby grant and lease to the lessee for 3 years from the date of approval hereof and as long thereafter as oil and -or natural gas is produced in paying quantities all the oil and natural gas deposits except as hereinafter provided, in or under land described as follows: NE/4 Sec. 15 Twp. 26 N. Rge. 3 E. containing 160 acres, more or less.

Tr. 19 NE/4

Lessee or his authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines, pull rods, and other appliances necessary for operations and marketing; the right -of-way for ingress and egress to any point of operation; and the right to use water for lease operations as set out in 25 CFR 183. Lessee shall conduct his operations in a workmanlike manner, commit no waste and allow none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control.

The Act of June 28, 1906 (34 Stat. 539-543) as amended reserves to the Osage Tribe the oil, gas, coal or other minerals covered by said land until the 8th day of April 1983, and thereafter until otherwise provided by Act of Congress.

2. Definitions. - When used herein the following terms shall be defined as:

(A) "Secretary" refers to the Secretary of the Interior or his authorized representative.

(B) "Osage Tribal Council" means the duly elected governing body of the Osage Nation or Tribe of Indians of Oklahoma vested with the authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(C) "Superintendent" refers to the Superintendent of the Osage Indian Agency or his authorized representative.

(D) "Regulations" refers to the regulations in 25 CFR Part 183, promulgated by the Secretary of the Interior and applicable to this lease.

(E) "Natural gas" means any fluid, either combustible or noncombustible, recovered at the surface in the gaseous phase and -or hydrocarbons recovered at the surface as liquids which are the result of condensation caused by reduction of pressure and temperature of hydrocarbons originally existing in a reservoir in the gaseous phase.

3. In consideration of the foregoing, the Lessee hereby agrees:

A. Bond. - To furnish such bond as may be required by the Superintendent, with acceptable surety, or United States bonds as surety therefor, conditioned upon compliance with the terms of this lease and the regulations.

B. Rental - Unless Lessee shall complete and place on production a well producing and selling oil and-or natural gas in paying quantities on the land embraced within the lease within 12 months from the date of approval of the lease, or as otherwise provided in the lease terms, or 12 months from the date the Superintendent consents to drilling on any restricted homestead selection, this lease shall terminate unless rental at the rate of Two Dollars ($2) per acre shall be paid before the end of the first year of the lease. The lease may also be held without drilling for the remainder of its primary term upon payment of the specified rental annually in advance, commencing with the second lease year, unless otherwise provided. The completion of a well producing in paying quantities shall, for so long as such production continues, relieve lessee from any further payment of rental, except that should such production cease during the primary term the lease may be continued only during the remaining primary term of the lease by payment of advance rental which shall commence on the next anniversary date of the lease.

C. Royalty - Lessee shall pay or cause to be paid to the Superintendent, as royalty on oil, the sum of 16-2-3 percent of the gross proceeds from sales after deducting the oil used by lessee for development and operation purposes on the lease: Provided, that when the quantity of oil taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calendar month is sufficient to average one hundred or more barrels per active producing well per day the royalty on such oil shall be 20 percent; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on the day of sale or removal, and Lessee shall pay a royalty of 16-2-3 percent of the value of all natural gas and products extracted, produced, and sold from this lease. Natural gas used in the reasonable and prudent operation and development of said lease shall be exempted from royalty payment. In no event shall the royalty paid from this lease during any year be less than an amount equal to the annual rental specified above.

D. Development - Lessee shall drill and produce all wells necessary to offset or protect the leased land from drainage by wells on adjoining lands on which Lessor is not the owner of the minerals, or in lieu thereof, to compensate the Lessor in full each month for the estimated loss of royalty through drainage; Provided, That during the period of supervision by the Secretary, the necessity for offset wells shall be determined by the Superintendent and payment in lieu of drilling and production shall be with the consent of, and in amount determined by the Superintendent. The Superintendent in his discretion may order further development of any leased acreage or separate horizon if, in his opinion, a prudent operator would conduct further development.

E. Regulations - It is specifically understood this lease is subject to the current regulations of the Secretary contained in 25 CFR 183 "LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING," and any amendments to the regulations hereinafter promulgated are made a part of this lease and lessee hereby agrees to abide and conform thereto.

4. Operations.

A. Restrictions - The Superintendent may impose restrictions as to time of drilling and rate of production from any well or wells when, in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the

RECEIVED Combini' oil lease and gas lease pursuant to Resolution No. 25-173

Approved by the Secretary of the Interior November 7, 1975

...il Lease Contract No. 14-20-G06-( 1

Gas Lease Contract No. 14-20-G06-3883

CONTRACT NUMBER 14-20-G06- 1 2 4

OSAGE AGENCY

OIL & GAS MINING LEASE
OSAGE RESERVATION, OKLAHOMA

This lease made and entered into in duplicate, on this 19th day of Oct., 1979, by and between the Osage Tribe of Indians in Oklahoma by Sylvester J. Tinker, Principal Chief, under authority of the Resolution of the Osage Tribal Council dated June 1, 197_ party of the first part, designated as Lessor, and W. C. Carman, 1/2 and Helmer & Sell Well Servicing Company of Pawhuska, Oklahoma

party of the second part, designated as Lessee, under and pursuant to section 3 of the Act of June 28, 1906 (34 Stat. 539), the Act of March 3 1921 (41 Stat. 1249), section 1 of the Act of March 2, 1929 (45 Stat. 1478), the Act of June 24, 1938 (52 Stat. 1034), and the Act of October 6, 196_ (78 Stat. 1008), witnesseth:

1. The Lessor, in considerationof a bonus of $ None, paid to the Superintendent, receipt of which is hereby acknowledged and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby grant and lease to the lessee xxxxxxxxxxxx from the date of approval hereof and as long thereafter as oil and -or natural gas is produced in paying quantities all the oil and natural gas deposits except as hereinafter provided, in or under land described as follows:

Tr. SW/4 Sec. 11 Twp. 26 N. Rge. 8 E. containing 160 acres, more or less.

Lessee or his authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines pull rods, and other appliances necessary for operations and marketing; the right -of-way for ingress and egress to any point of operation and the right to use water for lease operations as set out in 25 CFR 183. Lessee shall conduct his operations in a workmanlike manner commit no waste and allow none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control

The Act of June 28, 1906 (34 Stat. 539-543) as amended reserves to the Osage Tribe the oil, gas, coal or other minerals covered by said land until the 8th day of April 1983, and thereafter until otherwise provided by Act of Congress.

2. Definitions. - When used herein the following terms shall be defined as:

(A) "Secretary" refers to the Secretary of the Interior or his authorized representative.

(B) "Osage Tribal Council" means the duly elected governing body of the Osage Nation or Tribe of Indians of Oklahoma vested with the authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(C) "Superintendent" refers to the Superintendent of the Osage Indian Agency or his authorized representative.

(D) "Regulations" refers to the regulations in 25 CFR Part 183, promulgated by the Secretary of the Interior and applicable to this lease

(E) "Natural gas" means any fluid, either combustible or noncombustible, recovered at the surface in the gaseous phase and—or hydrocarbons recovered at the surface as liquids which are the result of condensation caused by reduction of pressure and temperature of hydrocarbons originally existing in a reservoir in the gaseous phase.

3. In consideration of the foregoing, the Lessee hereby agrees:

A. Bond. - To furnish such bond as may be required by the Superintendent, with acceptable surety, or United States bonds as surety therefor, conditioned upon compliance with the terms of this lease and the regulations.

~~... on the lease within 12 months from the date of approval of the lease, or as otherwise provided in the lease terms, or 12 months from the date the Superintendent consents to drilling on any restricted homestead selection, this lease shall terminate unless rental at the rate of Two Dollars ($2) per acre shall be paid before the end of the first year of the lease. The lease may also be held without drilling for the remainder of its primary term upon payment of the specified rental annually in advance, commencing with the second lease year, unless otherwise provided. The completion of a well producing in paying quantities shall, for so long as such production continues relieve lessee from any further payment of rental, except that should such production cease during the primary ... the lease may be ...~~

C. Royalty -Lessee shall pay or cause to be paid to the Superintendent, as royalty on oil, the sum of 16-2-3 percent of the gross proceeds from sales after deducting the oil used by lessee for development and operation purposes on the lease: Provided, that when the quantity of oil taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calendar month is sufficient to average one hundred or more barrels per active producing well per day the royalty on such oil shall be 20 percent; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on the day of sale or removal, and Lessee shall pay a royalty of 16-2-3 percent of the value of all natural gas and products extracted, produced, and saved from this lease. Natural gas used in the reasonable and prudent operation and development of said lease shall be exempted from royalty payment. In no event shall the royalty paid from this lease during any year be less than an amount equal to the annual rental specified above.

D. Development. - Lessee shall drill and produce all wells necessary to offset or protect the leased land from drainage by wells on adjoining lands of which Lessor is not the owner of the minerals, or in lieu thereof, to compensate the Lessor in full each month for the estimated loss of royalty through drainage; Provided, That during the period of supervision by the Secretary, the necessity for offset wells shall be determined by the Superintendent and payment in lieu of drilling and production shall be with the consent of, and in amount determined by the Superintendent. The Superintendent in his discretion may order further development of any leased acreage or separate ... a prudent operator would conduct further development.

E. Regulations. - It is specifically understood this lease is subject to the current regulations of the Secretary contained in 25 CFR 183 "LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING," and any amendments to the regulations hereinafter ... made a part of this lease and lessee hereby agrees to abide and conform thereto.

4. ...

... Superintendent may impose restrictions as to time of drilling and rate of production from any well or wells when, in ... such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the

Combining oil lease and gas lease pursuant to Resolution No. 23-173
Oil Lease Contract No. 14-20-G06-399
Gas Lease Contract No. 14-20-G06-388

RECEIVED

CONTRACT NUMBER

AGE AGENCY

OIL & GAS MINING LEASE
OSAGE RESERVATION, OKLAHOMA

This lease made and entered into in duplicate, on the 30th day of Dec., 1979, by and between the Osage Tribe of Indians of Oklahoma, by Sylvester J. Tinker, Principal Chief, under authority of the Resolution of the Osage Tribal Council dated June 1, 1974, party of the first part, designated as Lessor, and Helmer and Sell Well Servicing Company, 1/2; W. C. Carman, 1/2 of Pawhuska, Oklahoma party of the second part, designated as Lessee, under and pursuant to section 3 of the Act of June 28, 1906 (34 Stat. 539), the Act of March 3, 1921 (41 Stat. 1249), section 1 of the Act of March 2, 1929 (45 Stat. 1478), the Act of June 24, 1938 (52 Stat. 1034), and the Act of October 6, 1964 (78 Stat. 1008), witnesseth:

1. The Lessor, in consideration of a bonus of $ None, paid to the Superintendent, receipt of which is hereby acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby grant and lease to the lessee ~~xxxxxxxxxxxxx~~ from the date of approval hereof and as long thereafter as oil and -or natural gas is produced in paying quantities all the oil and natural gas deposits except as hereinafter provided, in or under land described as follows:

Tr. NW/4 Sec. 14 Twp. 26 N. Rge. 8 E. containing 160 acres, more or less.

Lessee or his authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines, pull rods, and other appliances necessary for operations and marketing; the right-of-way for ingress and egress to any point of operation: and the right to use water for lease operations as set out in 25 CFR 183. Lessee shall conduct his operations in a workmanlike manner, commit no waste and allow none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control.

The Act of June 28, 1906 (34 Stat. 539-543), as amended reserves to the Osage Tribe the oil, gas, coal or other minerals covered by said land until the 8th day of April 1983, and thereafter until otherwise provided by Act of Congress.

2. Definitions. When used herein the following terms shall be defined as:

(A) "Secretary" refers to the Secretary of the Interior or his authorized representative.

(B) "Osage Tribal Council" means the duly elected governing body of the Osage Nation or Tribe of Indians of Oklahoma vested with the authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(C) "Superintendent" refers to the Superintendent of the Osage Indian Agency or his authorized representative.

(D) "Regulations" refers to the regulations in 25 CFR Part 183, promulgated by the Secretary of the Interior and applicable to this lease.

(E) "Natural gas" means any fluid, either combustible or noncombustible, recovered at the surface in the gaseous phase and -or hydrocarbons recovered at the surface as liquids which are the result of condensation caused by reduction of pressure and temperature of hydrocarbons originally existing in a reservoir in the gaseous phase.

3. In consideration of the foregoing, the Lessee hereby agrees:

A. Bond - To furnish such bond as may be required by the Superintendent, with acceptable surety, or United States bonds as surety therefor, conditioned upon compliance with the terms of this lease and the regulations.

~~[illegible] the lease within 12 months from the date of approval of the lease, or as otherwise provided in the lease terms, unless [illegible] consents to drilling on any restricted homestead selection, this lease shall terminate unless [illegible] months from the date [illegible] the end of the first year of the lease. The lease may also be held without rental at the rate of Two Dollars ($2) per acre shall be paid before the end of the first year of the lease [illegible] drilling for the remainder of its primary term upon payment of the specified rental annually in advance, commencing with the second lease [illegible] unless otherwise provided. The completion of a well producing in paying quantities shall [illegible] as such production continues, [illegible] the lease may be [illegible] lease from any further payment of rental, except that should such production cease during the primary [illegible]~~

C. Royalty - Lessee shall pay or cause to be paid to the Superintendent, as royalty on oil, the sum of 16-2-3 percent of the gross proceeds from sale after deducting the oil used by lessee for development and operation purposes on the lease: Provided, that when the quantity of oil taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calender month [illegible] to average one hundred or more barrels per active producing well per day the royalty on such oil shall be 20 percent; payment [illegible] except where payments are made on division orders, and settlement shall be based on [illegible] at the time of sale or removal of the oil, [illegible] the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on [illegible] Lessee shall pay a royalty of 16-2-3 percent of the value of all natural gas and products extracted, produced, [illegible] sale or [illegible] and Lessee shall pay [illegible] Natural gas used in the reasonable and prudent operation and development of said lease shall be exempted from [illegible] from this lease. In no event shall the royalty paid from this lease during any year be less than an amount equal to the annual rental [illegible] above.

D. Development - Lessee shall drill and produce all wells necessary to offset or protect the leased land from drainage by wells on adjoining [illegible] not the owner of the minerals, or in lieu thereof, to compensate the Lessor in full each month for the [illegible] through drainage; Provided, That during the period of supervision by the Secretary, the necessity for offset wells [illegible] determined by the Superintendent and payment in lieu of drilling and production shall be with the consent of, and in amount [illegible] by the Superintendent. The Superintendent in his discretion may order further development of any leased acreage or separate [illegible] his opinion [illegible] prudent operator would conduct for their development.

[illegible] - It is expressly understood this lease is subject to the current regulations of the Secretary contained in 25 CFR 183 [illegible] "OSAGE RESERVATION LANDS FOR OIL AND GAS MINING," and any amendments to the regulations hereinafter [illegible] part of this lease and lessee hereby agrees to abide and conform thereto.

[illegible] Superintendent may impose restrictions as to time of drilling and rate of production from any well or wells when, in [illegible] it may be necessary or proper for the protection of the natural resources of the leased land and the interests of the

Osage (Revised)
[illegible]ed by the Secretary of the
[illegible]ember [illegible], 1958

(Must be executed in duplicate)

| CONTRACT NUMBER |
|---|
| 14-20-G06 [illegible] |

# OIL MINING LEASE

## OSAGE RESERVATION, OKLAHOMA.

This lease, made and entered into in duplicate, on this 17th day of January A. D., 19 73 by and between the Osage Tribe of Indians in Oklahoma by Sylvester J. Tinker Principal Chief, under authority of the Resolution of the Osage Tribal Council dated JAN 17 1973 party of the first part, designated as lessor, and Ceja Corporation of Tulsa, Oklahoma party of the second part, designated as lessee, under and in pursuant of section 3, of the Act approved June 28, 1906, (34 Stat. L. 539-543), the Act approved March 3, 1921 (41 Stat. 1249) The Act of March 2, 1929 (45 Stat. L. 1478) the Act approved June 24, 1938 (52 Stat. L. 1034), and the Act of October 6, 1964, Witnesseth:

1. The lessor, in consideration of one dollar, the receipt whereof is acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby demise, grant, lease and let unto the lessee, for five years from the date of approval hereof, and as long thereafter as oil is produced in paying quantities all the oil deposits in or under land described as follows, to-wit:

Tr. 59 SE¼ (Quarter) Sec. 3 Twp. 25 N. Rge. 4 E.

of the Indian Meridian, and containing 160 acres, more or less, with the exclusive right to extract, pipe, store, and remove oil.

Section three of the Act of June 24, 1938 (52 Stat. 1034) as amended by the Act of October 6, 1964 (78 Stat. 1008) provides in part as follows:

That all that part of the Act of June 28, 1906 (34 Stat. L. 539-543), entitled 'An Act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes,' which reserves to the Osage Tribe the oil, gas, coal, or other minerals covered by the lands for the selection and division of which provision is made in that Act is hereby amended so that the oil, gas, coal or other minerals, covered by said lands are reserved to the Osage Tribe, until the 8th day of April, 1983, and thereafter until otherwise provided by Act of Congress.

2. The lessee agrees to pay or cause to be paid to the Superintendent of the Osage Indian Agency, at Pawhuska, Oklahoma, for the lessor as royalty, the sum of 16 2-3 per cent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs shall elect to take the royalty in oil; payment to be made at the time of sale or removal of oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of the sale or removal: Provided, That when the quantity of oil taken from all producing wells, on any quarter-section according to the public survey, or fractional part of a quarter-section if the land covered by this lease does not include the full quarter-section, during any calendar month, is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 per cent. Should the lessor, with the approval of the Commissioner of Indian Affairs elect to take the royalty in oil, the lessee shall furnish free storage for the royalty oil for not exceeding 30 days.

Any of the Executive Departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under this lease. The Commissioner of Indian Affairs may impose restrictions as to time or times for the drilling of wells as to the production from any well or wells drilled when in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in the exercise of his judgment the Commissioner of Indian Affairs may take into consideration, among other things, Federal laws, State laws, or regulations by competent Federal or State authorities or lawful agreements among operators regulating either drilling or production, or both.

3. Lessee shall drill at least one well to the Mississippi Lime, unless oil or gas is found in paying quantities at a lesser depth, on the land covered by this lease, within 12 months from the date of approval of the lease, or the lease may be held for the full five-year primary term without drilling, upon payment to the Superintendent for the lessor of rental at the rate of one dollar per acre per annum, payable annually in advance beginning one year after the date of approval of the lease. This lease shall terminate as to both parties unless such advance rental shall be received at the Osage Agency or shall have been mailed as indicated by postmark, on or before the due date: PROVIDED, That the time within which a well shall be drilled shall not begin to run on any restricted homestead selection until the consent of the Superintendent to drilling on such homestead shall have been given, nor shall advance rental become due until the next anniversary date of the lease following the date of such consent: Provided further, That the Superintendent in his discretion may direct the drilling of any undrilled lease, if in his opinion the interests of the Osage Tribe warrant: Provided further, That whenever the Commissioner of Indian Affairs shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on this lease.

The completion of a well to the Mississippi Lime, or production of oil or gas in paying quantities from a lesser depth than the Mississippi Lime, for such time as such production shall continue; after the lease has entered a rental status, shall relieve the lessee from any further payment of rentals for the balance of the primary term of the lease for which rental has not been paid. Should such production cease, rental shall commence on the next anniversary date of the lease.

Rental shall be paid on the basis of a full year, and no refund will be made of advance rental paid in compliance with the regulations in this part.

4. Lessee shall have the right to use so much of the surface of the land within the Osage Reservation as may be reasonable for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods and other appliances necessary for the operation of the wells; also the right of ingress and egress and the right of way to any point of operations. Before commencing operations for the drilling of any well the lessee shall pay to the surface owner the sum of $200 for each well located on cultivated land (tilled or cultivated within the immediately preceding three years, and including hay meadow land), $150 for open pasture land, and $100 for each location on brush or wooded lands, and other lands not suitable for cultivation. Upon payment of such location site money, lessee shall be entitled to possession. Location site shall be held to the minimum area essential for operations, and in no event shall exceed one and one-half acres in area. Lessee shall also pay tank site fees at the rate of $20 per tank of not exceeding 1,000 barrels capacity: *Provided, however*, That no tank site fee shall be paid for a tank temporarily set on a well location site for testing purposes during the completion of the well. Tank sites shall be held to the minimum area essential to efficient operations, and in no event shall exceed an area of 60 feet square per tank. The sum to be paid for a tank site of larger capacity and occupying a greater area, shall be as agreed upon between the surface owner and the lessee, and on failure to agree, the same shall be fixed by arbitration.

Lessee may with the approval of the Superintendent use water from streams and natural water courses to the extent that same does [illegible] diminish the supply below the requirements of the surface owner from whose land the water is taken. When such water supply is located [illegible] lease upon which the water is to be used, the lessee may, lay necessary lines across intervening lands to obtain such water. Any damage[illegible] from laying such water lines and the setting of pumps and other equipment, that cannot be amicably settled shall be settled by [illegible] provided in regulations.

If the surface owner of the land covered by this lease obtains a farm loan from any lending agency under the supervi[illegible] Administration, secured by a mortage on the surface of said land, and shall have agreed in writing that damages accruing to [illegible]tions on such land shall be paid to the mortagee, the lessee shall pay all fees and damages required to be paid to the surfac[illegible] gagee, through the Superintendent of the Osage Indian Agency, to be credited on the loan.

**1995 PRICES**

**JAN - MAR**




JAN - MAR 1995
OSAGE vs CUSHING
$1.42
AVERAGE
$0.00
-$1.00
-$2.00
-$3.00
-$4.00
-$5.00
1/1/1995
1/13/1995
1/25/1995
2/6/1995
2/18/1995
3/2/1995
3/14/1995
3/26/1995