**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 99-550 L (into which has been consolidated No. 00-169 L) Judge Emily C. Hewitt |
| | ) | Electronically Filed November 16, 2007 |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF OSAGE NATION'S MOTION TO DISQUALIFY BRADLEY D. BRICKELL AS COUNSEL FOR THE PROPOSED INTERVENORS**

## TABLE OF CONTENTS

**Page**

BACKGROUND ..... 1

ARGUMENT ..... 6

I. BY REPRESENTING THE PROPOSED INTERVENORS, MR. BRICKELL IS VIOLATING ABA MODEL RULE 1.9(a), WHICH GOVERNS THE CONDUCT OF LAWYERS APPEARING IN THIS COURT. ..... 6

A. Mr. Brickell Previously Represented the Osage Nation in These Consolidated Matters and Has Not Obtained Written Consent from the Osage Nation for His Current Representation. ..... 7

B. Mr. Brickell's Current Representation Is Materially Adverse to the Osage Nation. ..... 8

1. The Motion to Intervene Disputes the Osage Nation's Ownership of the Osage Mineral Estate and Contradicts Mr. Brickell's Previous Advocacy on that Point. ..... 8

2. The Motion to Intervene Attacks the Court's Rulings in Favor of the Osage Nation's Standing and Contradicts Mr. Brickell's Previous Advocacy on that Point. ..... 9

3. Intervention by Headright Owners Is Materially Adverse to the Osage Nation. ..... 11

II. DISQUALIFICATION OF MR. BRICKELL IS MANDATORY. ..... 11

CONCLUSION ..... 12

**INDEX TO EXHIBITS**

**A** Defendant's Motion to Dismiss

**B** Plaintiff's Corrected Response to Motion to Dismiss

**C** January 23, 2003 Transcript

**D** Motions to Intervene and Amend Complaint

**E** March 13, 2003 Transcript

**F** Withdrawal of Motion to Intervene and Amend Complaint

**G** Order dated March 21, 2003

**H** Response to [Motion to] Substitute Counsel Under RCFC 83.1

**I** Motion of the Undersigned Members of the Osage Tribe to File Memorandum Brief Amicus Curiae Re: Defendant's Motion to Dismiss

**J** Plaintiff Osage Tribe's Opposition to Motion of Individual Osage to File Memorandum Brief Amicus Curiae

**K** Motion to Place Exhibit Under Seal

**L** Plaintiff Osage Tribe's Response to Former Counsel's Motion to Place Exhibit Under Seal

**M** Reply to Plaintiff's Response to Motion to Place Exhibit Under Seal

**N** Order dated Aug. 27, 2003

**O** Feb. 20, 2004 Transcript

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Brennan's, Inc. v. Brennan's Rests., Inc.*, 590 F.2d 168 (5th Cir. 1979) .......... 9

*Callas v. Pappas*, 907 F. Supp. 1257 (E.D. Wis. 1995) .......... 12

*Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973) .......... 12

*Koch v. Koch Indus.*, 798 F. Supp. 1525 (D. Kan. 1992) .......... 6

*Osage Nation v. United States*, 57 Fed. Cl. 392 (2003) .......... 5

*Prisco v. Westgate Entertainment, Inc.*, 799 F. Supp. 266 (D. Conn. 1992) .......... 7

*Tannahill v. United States*, 25 Cl. Ct 149, 163-164 (1992) .......... 12

*United States v. Culp*, 934 F. Supp. 394 (M.D. Fla. 1996) .......... 6

## STATE CASES

*Casco N. Bank v. JBI Assocs.*, 667 A.2d 856 (Me. 1995) .......... 9

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2001 WL 243494 (D. Me. 2001) .......... 12

*Doe ex rel. Doe v. Perry Comm. Sch. Dist.*, 650 N.W.2d 594 (Iowa 2002) .......... 12

*G.F. Indus. v. Am. Brands*, 583 A.2d 765 (N.J. App. 1990) .......... 9

*Straub Clinic & Hosp. v. Kochi*, 917 P.2d 1284 (Hawaii 1996) .......... 6, 7, 11

*Sullivan County Reg'l Refuse Disposal Dist. v. Town of Acworth*, 686 A.2d 755 (N.H. 1996) .......... 7, 9, 11

## OTHER

ABA Model Rule 1.9(a) .......... *passim*

The Constitution of the Osage Nation, Art. XV, Sec. 4 .......... 9, 10

Pub. Law 108-431, 118 Stat. 2609 (Dec. 3, 2004) .......... 10

Restatement (Third) of Law Governing Lawyers § 132 (2000) .......... 6

Plaintiff Osage Nation moves the Court for an order disqualifying the Osage Nation's former counsel in this matter, Bradley D. Brickell, from representing the proposed intervenors in their Motion to Intervene and Amend Complaint (filed Oct. 15, 2007). It is plain from the face of that motion that Mr. Brickell is representing interests adverse to the Osage Nation. The Osage Nation has not consented to having its former counsel in this matter represent the proposed intervenors, and therefore the representation is prohibited by the former-client conflict-of-interest rule, ABA Model Rule 1.9(a), applicable here pursuant to RCFC 83.2. As shown below, in these circumstances, the Court must disqualify Mr. Brickell.

## BACKGROUND

This motion challenges Mr. Brickell's current representation of the proposed intervenors in light of his previous representation of the Osage Nation in this same matter. Accordingly, a brief review of that previous representation is relevant here. Of particular significance are Mr. Brickell's statements in that previous representation with respect to the Osage Nation's standing to recover damages relating to the Osage mineral estate as a whole.

As counsel for the Osage Nation, Mr. Brickell filed the original complaints in these consolidated matters in 1999 (No. 99-550) and 2000 (No. 00-169). On July 25, 2001, in No. 00-169, the United States filed a motion to dismiss challenging, among other things, the Osage Nation's standing to recover the proceeds of the Osage mineral estate. *See* Defendant's Motion to Dismiss (excerpts attached hereto as Exh. A) at 27-30. The United States argued that "any claims for royalties . . . must be brought by the true owners of such claims, the headright owners themselves." *Id.* at 30.

The Osage Nation opposed the motion to dismiss. Plaintiff's Corrected Response to Motion to Dismiss (filed October 24, 2002) (excerpts attached hereto as Exh. B). In that opposition, Mr. Brickell argued (correctly) on behalf of the Osage Nation that "the Tribe initially

receives all royalty income (as the Tribe itself in fact owns the mineral interests) and for a time holds the funds until they are distributed as required by law." *Id.* at 12 n.7 (emphases omitted). Mr. Brickell (correctly) disparaged the United States' "sophistic argument . . . that the headright owners own all Osage minerals," *id.* at 12 (emphasis omitted), and argued that "it is the Osage Nation *itself* which owns the beneficial interest in the minerals . . . ." *Id.* at 13 (emphasis in original); *accord id.* at 14 (noting "[t]he Tribe's ownership of the entire mineral estate of the Osage Nation"); *id.* at 15 ("Clearly it is the Osage Tribe which in 1883, received title to the Osage mineral estate.").

While the motion to dismiss in No. 00-169 was still pending, the United States in No. 99-550 raised its standing argument at a status conference with Judge Wiese on January 23, 2003. Judge Wiese responded to the United States' argument by asking Mr. Brickell, "what is the underlying legal relationship between the individual [headright owner] and The Tribe that permits The Tribe to be a representative?" January 23, 2003 Tr. (excerpts attached as Exh. C) at 63:20-22. Mr. Brickell answered, "Your Honor, I believe it's through the various acts of Congress and the tribal government itself, and the way it was set up pursuant to those Acts." *Id.* at 63:23-25. Mr. Brickell argued that "with regard to The Osage . . . , the tribal body itself is the elected government, just like the United States can prosecute claims on behalf of its citizens. . . . because of the way the procedure was set up in 1906 . . . ." *Id.* at 64:14-18. Judge Wiese then expressed preliminary views in favor of the United States' position, but decided to wait for this Court's decision before ruling on the issue. "If we can make a non[-]problem out of this, why not do that? Why don't we wait to see what Judge Hewitt does with this. Let me read the decision when it comes down." *Id.* at 67:11-13.

About two weeks later, Mr. Brickell submitted a motion to intervene and amend the complaint in each of the two actions, apparently on the belief that this would serve as a precaution against dismissal. The first such motion was filed in No. 00-169 on February 10, 2003. It sought leave to intervene and amend the complaint to add eight individual headright owners. Motion to Intervene and Amend Complaint (filed Feb. 10, 2003) (excerpts attached hereto as Exh. D). The motion cited what Mr. Brickell apparently understood to be Judge Wiese's "agreement with the Defendant's contention that the Tribe did not have the ability to represent the interest of all owners of allotted shares or headrights." *Id.* at 2. Likewise, in No. 99-550 Brickell lodged a similarly styled motion. *See* Order dated March 21, 2003 (attached hereto as Exh. G).

The issue of standing was revisited on March 13, 2003, in a status conference before Judge Wiese in No. 99-550. There, Mr. Brickell argued that throughout the history of the Osages in Oklahoma, "the minerals always remained as an undivided whole owned by the tribe." *See* Mar. 13, 2003 Tr. (attached hereto as Exh. E) at 15:15-16; *accord id.* at 15:12-14 ("[T]he minerals . . . are and always have been since 1906 owned undivided by the tribe."); *id.* at 15: 5-7 ("[T]he actual valuable mineral[s], the legislative intent, obviously, was that those were to be owned by the tribe."); *id.* 14:11-15 ("[T]he intent of Congress was . . . that the oil, gas, coal or other minerals are to be owned by the tribe."). Judge Wiese agreed with Mr. Brickell's argument. *Id.* at 16:14-18. Judge Wiese asked Mr. Brickell to withdraw the motion to intervene and amend and to file a revised motion and draft complaint with the Osage Nation and the Osage Tribal Council as co-plaintiffs. *Id.* at 17:16-20; 22:10-13, 16:14-17:20.

The next day, the parallel motion in No. 00-169 was withdrawn, and on March 21, 2003, Judge Wiese returned the undocketed motion in No. 99-550 as unfiled. *See* Withdrawal of

Motion to Intervene and Amend Complaint (attached hereto as Exh. F); Exh. G. When Mr. Pipestem later became counsel for the Osage Nation, and Judge Wiese had been replaced by Judge Coster Williams, the Osage Nation successfully moved the Court to overrule Judge Wiese's previous direction that the Osage Tribal Council be added as an additional plaintiff.[1]

Mr. Brickell was terminated as counsel of record in No. 00-169 on April 23, 2003, when this Court granted a motion to substitute Mr. Pipestem for Mr. Brickell. A similar motion was filed in No. 99-550 on May 14, 2003 and granted on May 16, 2003. During the brief interval in which that motion was pending, Mr. Brickell filed a "Response to [Motion to] Substitute Counsel Under RCFC 83.1" purportedly as "Attorney for Plaintiffs," noting that "the undersigned counsel does not object to the entry of appearance by Wilson Pipestem" but "notifies the Defendant of his claim for fees and litigation expenses." Response to [Motion to] Substitute Counsel Under RCFC 83.1 (attached hereto as Exh. H) at 3.

After Mr. Brickell was terminated as counsel for the Osage Nation in both cases, he lost little time in attempting to re-insert himself into the litigation. On July 1, 2003, Mr. Brickell filed a motion in No. 00-169 on behalf of six individual headright owners seeking leave to appear as amicus curiae and file a brief on the pending motion to dismiss. Motion of the Undersigned Members of the Osage Tribe to File Memorandum Brief Amicus Curiae Re: Defendant's Motion to Dismiss (attached hereto as Exh. I). The Osage Nation, represented by Mr. Pipestem, opposed this motion in a brief filed July 21, 2003. Plaintiff Osage Tribe's

---

[1] At a status conference held on February 20, 2004, Mr. Pipestem informed the Court in No. 99-550 (Judge Coster Williams) that the Court in No. 00-169 (Judge Hewitt) had ruled that the tribe had standing and that "it would be a serious mistake to treat this case as something like a class action." Feb. 20, 2004 Tr. (attached hereto as Exh. O) at 10:16-18. "In fact, in the case in Judge Hewitt's Court, in our discussions since her decision government attorneys at least in that case have basically conceded that that was the right decision and so our concern is that would be a big mistake in this case." *Id*. at 11:2-7. The Court allowed amendment of the complaint without changing it to a class action. *Id*. at 29:7-9.

Opposition to Motion of Individual Osage to File Memorandum Brief Amicus Curiae (attached hereto as Exh. J). The Osage Nation noted there that Mr. Brickell's actions were "a serious matter" and raised "grave conflict of interest and other ethical concerns" because he did not have the consent of the Osage Nation. *Id*. at 4-5. The Osage Nation attached as Exhibit A to the opposition a June 3, 2003 letter sent by Principal Chief Jim Gray on behalf of the Osage Nation demanding that Mr. Brickell, as its former counsel, "immediately cease any communications regarding Osage Tribe matters with anyone outside of the current elected Osage leadership" without written authorization from the Tribe.

On July 28, 2003, this Court denied the amicus motion as moot, in light of its decision to deny the motion to dismiss. In that decision, the Court accepted the Osage Nation's argument on standing, holding that "the Tribe, not the headright holders, is the direct trust beneficiary." *Osage Nation v. United States*, 57 Fed. Cl. 392, 395 (2003) (quoting Plaintiff's Post-Hearing Brief at 1) (footnote omitted).

The next day, Mr. Brickell submitted a motion to seal the letter of Chief Gray. Motion to Place Exhibit Under Seal (attached hereto as Exh. K). Mr. Brickell signed the motion as "Attorney for Proposed Amicus Curiae." *Id.* at 2. The Osage Nation opposed the motion. Plaintiff Osage Tribe's Response to Former Counsel's Motion to Place Exhibit Under Seal (attached hereto as Exh. L). Mr. Brickell submitted a reply to the motion to seal, which he signed as "Former Counsel for Plaintiff." Reply to Plaintiff's Response to Motion to Place Exhibit Under Seal (attached hereto as Exh. M) at 3. In the reply, he argued that the Osage Tribe owed him "tens of thousands of dollars" and complained that "Plaintiff's new counsel . . . publicly claims credit for *all* progress made by the Plaintiff herein, to date." *Id.* at 1 n.2, 2. This Court, noting that "former counsel is not an attorney of record in the case," denied the motion to

seal and admonished Mr. Brickell: "Former counsel shall not file additional briefing in this case unless first granted amicus curiae status in this case or unless requested by the court." Order dated Aug. 27, 2003 (attached hereto as Exh. N) at 1.

## ARGUMENT

Mr. Brickell is violating the rules of this Court as well as his duty of loyalty to the Osage Nation by his representation of the proposed intervenors. Accordingly, Mr. Brickell must be disqualified from that representation.

### I. BY REPRESENTING THE PROPOSED INTERVENORS, MR. BRICKELL IS VIOLATING ABA MODEL RULE 1.9(a), WHICH GOVERNS THE CONDUCT OF LAWYERS APPEARING IN THIS COURT.

The Code of Responsibility governing the conduct of attorneys practicing before this Court is the American Bar Association Model Rules of Professional Conduct. *See* RCFC 83.2. Under ABA Model Rule 1.9(a), "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." *Accord* Restatement (Third) of Law Governing Lawyers § 132 (2000) (absent consent, "a lawyer who has represented a client in a matter may not thereafter represent another client in the same or a substantially related matter in which the interests of the former client are materially adverse").

"Model Rule 1.9(a) . . . imposes a blanket prohibition on the representation of clients with interests adverse to those of a former client without the former client's consent." *United States v. Culp*, 934 F. Supp. 394, 398 (M.D. Fla. 1996). The rule, "by its terms, is not limited to situations where the former client would be harmed by the possible divulgence of confidential information. It imposes an ethical obligation irrespective of harm . . . ." *Straub Clinic & Hosp. v. Kochi*, 917 P.2d 1284, 1291 (Hawaii 1996) (quoting *Koch v. Koch Indus.*, 798 F. Supp. 1525,

1535 (D. Kan. 1992) (citations omitted)); *accord Prisco v. Westgate Entertainment, Inc.*, 799 F. Supp. 266, 272 (D. Conn. 1992). "Model Rule 1.9 is designed to address not only the narrow need to protect a client's confidences, but also to establish broader standards of attorney loyalty and to maintain public confidence in the legal system." *Prisco*, 799 F. Supp. at 271; *accord Straub*, 917 P.2d at 1291.

The text of Model Rule 1.9(a) can be broken into four elements for purposes of analysis. "First, there must have been a valid attorney-client relationship between the attorney and the former client. Second, the interests of the present and former clients must be materially adverse. Third, the former client must not have consented, in an informed manner, to the new representation. Finally, the current matter and the former matter must be the same or substantially related." *Sullivan County Reg'l Refuse Disposal Dist. v. Town of Acworth*, 686 A.2d 755, 757 (N.H. 1996) (citations omitted); *accord, e.g., Prisco*, 799 F. Supp. at 269 (three elements required, plus absence of consent).

As shown below, each of these four elements is present here on the face of the record. Contrary to Mr. Brickell's prediction that this motion would be "fact intensive" (*see* Proposed Intervenors Response to Osage Nation's November 7, 2007 Scheduling Submission at 1), no evidentiary hearing is required to decide this motion, because each of the four elements is evident from the docketed filings in these consolidated cases.

**A. Mr. Brickell Previously Represented the Osage Nation in These Consolidated Matters and Has Not Obtained Written Consent from the Osage Nation for His Current Representation.**

The dockets here show that elements one and four of a Model Rule 1.9(a) violation are obviously present. There is no question that this is the "same . . . matter" in which Mr. Brickell had an attorney-client relationship with the Osage Nation. Mr. Brickell was counsel of record for the Osage Nation in both No. 99-550 and No. 00-169 from inception through the spring of 2003.

Moreover, element three is satisfied, because the Osage Nation has given no consent, written or otherwise, to Mr. Brickell's representation of the proposed intervenors. He has suggested nothing to the contrary. In fact, the record shows that the Osage Nation has consistently objected to Mr. Brickell's attempts to re-insert himself in this matter after he ceased to represent the Osage Nation. *See* Exh. J (opposition to amicus motion); Exh. L (opposition to motion to seal).

### B. Mr. Brickell's Current Representation Is Materially Adverse to the Osage Nation.

It is also beyond question that Mr. Brickell is representing a client whose positions *on the face* of the Motion to Intervene and Amend Complaint are materially adverse to the Osage Nation. Whether or not the positions taken in the Motion are correct, those positions are adverse to the Osage Nation, in at least three ways: (1) the proposed intervenors claim to own the Osage mineral estate, contrary to the Osage Nation's position (as previously articulated by Mr. Brickell himself); (2) the proposed intervenors attack the Court's ruling on standing (for which Mr. Brickell himself advocated); and (3) the Osage Nation opposes the Motion.

#### 1. The Motion to Intervene Disputes the Osage Nation's Ownership of the Osage Mineral Estate and Contradicts Mr. Brickell's Previous Advocacy on that Point.

Mr. Brickell himself argues that there is "an adversarial conflict" between the position of the proposed intervenors and that of the Osage Nation with respect to ownership of the Osage mineral estate. Motion to Intervene and Amend Complaint at 9. He notes that his former client, the Osage Nation, claims ownership of the Osage mineral estate, and that his current clients view this as "a direct attack" on their own claims to that same property interest. *Id.* at 4-5, 9. Not only does the proposed intervenors' position conflict with that of the Osage Nation, but Mr. Brickell is contradicting his own prior statements on behalf of the Osage Nation. *See, e.g., supra*

*at* 2-3 and citations therein to Exhs. B, C, & E. "[A]n attorney owes a duty of loyalty to a former client that prevents that attorney from attacking, or interpreting, work she performed, or supervised, for the former client." *Sullivan County Reg'l Refuse*, 686 A.2d at 758 (citing *Brennan's, Inc. v. Brennan's Rests., Inc.*, 590 F.2d 168, 172 (5th Cir. 1979); *Casco N. Bank v. JBI Assocs.*, 667 A.2d 856, 860 (Me. 1995); *G.F. Indus. v. Am. Brands,* 583 A.2d 765, 768-69 (N.J. App. 1990)).

**2. The Motion to Intervene Attacks the Court's Rulings in Favor of the Osage Nation's Standing and Contradicts Mr. Brickell's Previous Advocacy on that Point.**

Mr. Brickell's current clients recognize that they cannot claim a right to intervene without first attacking this Court's ruling that the Osage Nation has standing in this case to recover all proceeds of the mineral estate. Thus, on behalf of his current client, Mr. Brickell argues that the 2006 Osage Constitution somehow undermined that ruling, for which he previously advocated. He argues that the 2006 Constitution purports to abridge the headright owners' rights under the 1906 Act, endangering their rights to distributions from the tribal trust fund into which the mineral proceeds are deposited. This position is adverse to the Osage Nation's view that nothing in the 2006 Osage Constitution did or purported to (1) change the rights of headright owners under the 1906 Act, as amended, or (2) reduce the obligation of the Osage Nation and its elected officials to protect the interests of headright owners to income derived from the Osage mineral estate.[2] It is not relevant for purposes of this motion whose reading of the 2006 Osage

---

[2] For example, the Osage Constitution provides:

> The Mineral Estate of the Osage Reservation is reserved to the Osage Nation. The government of the Osage Nation shall have the perpetual obligation to ensure the preservation of the Osage Mineral Estate. The government shall further ensure that the rights of members of the Osage Nation to income derived from that Mineral Estate are protected.

Constitution is correct; it is enough that Mr. Brickell's current and former clients are adverse to each other on this point.

In a further conflict with his former client and his own prior advocacy on the standing issue, Mr. Brickell on behalf of his current clients "request[s] that this Court adopt that [sic] the original findings of Judge John P. Weise [sic]" that the case must be litigated as a class action. Motion at 5; *compare supra* at 1-3 and citations therein to Exhs. C and E. Mr. Brickell summarizes his current position as being in harmony with that of the United States (the Osage Nation's opponent in this litigation): Judge Wiese "initially found the Defendant's premise was correct and that matter [sic] would be properly prosecuted by the actual owners of the allotted share/headright owners." Motion at 1 ¶ 3. Mr. Brickell also argues, again directly contrary to his previous advocacy for the Osage Nation, that "the current Osage Nation is not 'the tribe' described in the 1906 Act," *id.* at 4 ¶ 11, and that "[t]he term 'tribe' as used in the [Osage trust fund] account's name refers to the [headright owners]." *Id.* at 3 ¶ 8; *compare supra* at 1-3 (citing Exhs. B, C, & E). Moreover, contrary to his previous arguments in favor of the Osage Nation's standing to recover all mineral proceeds, he now argues on behalf of the proposed intervenors that "[s]ince the current Plaintiff (the new Osage Nation) represents a larger constituency than just the headright owners, its representation cannot be adequate." Motion at 9; *see also* "Proposed Intervenors Response to Osage Nation's November 7, 2007 Scheduling Submission"(filed November 9, 2007) at 1 ¶ 2 ("[T]he real parties in interest are those owners of Osage Headrights, i.e. the Proposed Intervenors.").

---

The Constitution of the Osage Nation, Art. XV, Sec. 4; *see also* An Act to Reaffirm the Inherent Sovereign Rights of the Osage Tribe to Determine Its Membership and Form of Government, § (b)(1), Pub. Law 108-431, 118 Stat. 2609 (Dec. 3, 2004) ("Congress hereby reaffirms the inherent sovereign right of the Osage Tribe to determine its own membership, *provided that the rights of any person to Osage mineral estate shares are not diminished thereby*.") (emphasis added)).

The Osage Nation has not varied from the position on standing that Mr. Brickell previously articulated on its behalf. Thus, by contradicting his own previous advocacy on the standing issue, Mr. Brickell is taking positions adverse to the Osage Nation's interests. These direct conflicts belie his attempts to phrase the motion to intervene and amend complaint as a friendly, precautionary measure. *See* Motion at 7 (standing issue "can be 'mooted' by" intervention); *id.* at 9 ("The current Plaintiff's representation will hardly be adequate, if the Defendant ultimately prevails on its 'lack of standing' defense.") (emphasis omitted). Mr. Brickell's adversity to his former client on these points is inescapable.

### 3. Intervention by Headright Owners Is Materially Adverse to the Osage Nation.

Because the Osage Nation opposes the proposed intervention, Mr. Brickell by definition is representing parties whose position is adverse to his former client. Adversity exists where positions "are mutually exclusive." *Straub Clinic & Hosp. v. Kochi*, 917 P.2d 1284, 1291 (Hawaii 1996) (applying Hawaii Rule of Professional Conduct 1.9(a), which is "fashioned after the model rule"). The Osage Nation will argue that intervention by Mr. Brickell's current clients is not proper under this Court's rules and would be unduly prejudicial to the Osage Nation's investment of time and resources in this litigation. Under Model Rule 1.9(a), Mr. Brickell is not at liberty to serve as the advocate for opponents to the Osage Nation on these points.

## II. DISQUALIFICATION OF MR. BRICKELL IS MANDATORY.

Model Rule 1.9(a) is as unequivocal as the Decalogue: "[a] lawyer who has formerly represented a client in a matter *shall not* thereafter represent another person in the same . . . matter" without the former client's written consent to any adverse representation. (Emphasis added.) Thus, when "all of the elements of Rule 1.9 have been satisfied," "[d]isqualification then becomes mandatory." *Sullivan County Reg'l Refuse*, 686 A.2d at 758 (citing *Flatt v. Superior*

*Court (Daniel),* 885 P.2d 950, 954 (Cal. 1994)); *accord, e.g., Doe ex rel. Doe v. Perry Comm. Sch. Dist.*, 650 N.W.2d 594, 599 (Iowa 2002) (when Model Rule 1.9(a) is violated, “disqualification cannot be avoided”); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2001 WL 243494 (D. Me. 2001) (when elements of Model Rule 1.9(a) are met, counsel “must be disqualified”).

“Courts clearly have the authority and the duty to prohibit or remedy litigation practices which raise ethical concerns.” *Tannahill v. United States*, 25 Cl. Ct 149, 163-164 (1992) (citations omitted). Here, pursuant to the authorities cited above, the Court has a duty to disqualify Mr. Brickell. “The dynamics of litigation are far too subtle, the attorney’s role in that process is far too critical, and the public’s interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer’s representation in a given case.” *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973); *accord Callas v. Pappas*, 907 F. Supp. 1257, 1263 (E.D. Wis. 1995).

## CONCLUSION

The Court should enter an order disqualifying Mr. Brickell as counsel for the proposed intervenors.[3]

[3] Counsel for the United States has advised that the government takes no position on this motion.

November 16, 2007

Respectfully submitted,

*s/Wilson K. Pipestem*

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation

# INDEX TO EXHIBITS

| | DESCRIPTION | CASE NO. | DOCKET NO. |
|---|---|---|---|
| **A** | Defendant's Motion to Dismiss | 00-169 | 28 |
| **B** | Plaintiff's Corrected Response to Motion to Dismiss | 00-169 | 62 |
| **C** | January 23, 2003 Transcript | 99-550 | 40 |
| **D** | Motions to Intervene and Amend Complaint | 00-169 | 81 |
| **E** | March 13, 2003 Transcript | 99-550 | 43 |
| **F** | Withdrawal of Motion to Intervene and Amend Complaint | 00-169 | 88 |
| **G** | Order dated March 21, 2003 | 99-550 | 42 |
| **H** | Response to [Motion to] Substitute Counsel Under RCFC 83.1 | 99-550 | 44 |
| **I** | Motion of the Undersigned Members of the Osage Tribe to File Memorandum Brief Amicus Curiae Re: Defendant's Motion to Dismiss | 00-169 | 109 |
| **J** | Plaintiff Osage Tribe's Opposition to Motion of Individual Osage to File Memorandum Brief Amicus Curiae | 00-169 | 110 |
| **K** | Motion to Place Exhibit Under Seal | 00-169 | 113 |
| **L** | Plaintiff Osage Tribe's Response to Former Counsel's Motion to Place Exhibit Under Seal | 00-169 | 115 |
| **M** | Reply to Plaintiff's Response to Motion to Place Exhibit Under Seal | 00-169 | NA |
| **N** | Order dated Aug. 27, 2003 | 00-169 | 116 |
| **O** | Feb. 20, 2004 Transcript | 99-550 | 51 |