# Exhibit E

# UNITED STATES
# COURT OF FEDERAL CLAIMS

FILED
APR 16 2003
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE OSAGE NATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No.: 99-550L |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Pages: 1 through 27

Place: Washington, D.C.

Date: March 13, 2003

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C. 20005-4018
(202) 628-4888
hrc@concentric.net

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THE OSAGE NATION | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No.: 99-550L |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

Courtroom 8
National Courts Building
717 Madison Place, N.W.
Washington, D.C.

Thursday,
March 13, 2003

The parties met, pursuant to notice of the Court, at 2:30 p.m.

BEFORE: HONORABLE JOHN P. WIESE
Judge

APPEARANCES:

<u>For the Plaintiff</u>: (Via Telephone)

BRADLEY D. BRICKELL, Esquire
Brickell & Associates, P.C.
950 Hightower Building
105 N. Hudson
Oklahoma City, Oklahoma 73102
(405) 236-0008

APPEARANCES: (Cont'd)

For the Defendant:

EDWARD PASSARELLI, Esquire
U.S. Department of Justice
601 D Street, NW
Washington, D.C. 20044
(202) 305-0468

ALAN R. WOODCOCK, Esquire (Via Telephone)
Office of the Solicitor
7906 East 33rd Street
Tulsa, Oklahoma 74145
(918) 669-7730

STEPHEN L. SIMPSON, Esquire
Department of Interior
1849 C Street N.W.
MS 6956-MIB
Washington, D.C. 20240
(202) 219-1659

P R O C E E D I N G S

(2:30 p.m.)

THE CLERK: The United States Court of Federal Claims is now in session, the Honorable John P. Wiese presiding.

THE COURT: Madam Reporter, let us open our record this afternoon and indicate that we are convening for a status conference in The Osage Nation v. The United States. That case is docketed here as number 99-550L.

Mr. Brickell, I'll begin with you. As you know by now, the reporter needs an introduction that includes your full name, your business address, and your business telephone number.

After Mr. Brickell, I'll go to Mr. Woodcock, and then to Mr. Passarelli and Mr. Simpson.

MR. BRICKELL: Thank you, Your Honor. Brad Brickell, that's spelled like brick and then E-L-L. My law firm is called Brickell & Associates. We're at 105 North Hudson, Suite 950, Hightower Building, Oklahoma City, Oklahoma 73102, and I represent the plaintiff The Osage Nation.

THE COURT: Thank you, Mr. Brickell, and good afternoon to you.

MR. BRICKELL: Thank you.

THE COURT: I need a telephone number.

MR. BRICKELL: (405) 236-0008.

THE COURT: Thank you, sir. Mr. Woodcock, how about introducing yourself?

MR. WOODCOCK: Yes, Your Honor. I'm Alan Woodcock. I'm with the Office of the Field Solicitor. My address is 7906 East 33rd in Tulsa, Oklahoma 74145. My phone number is (918) 669-7730.

THE COURT: Thank you, Mr. Woodcock, and good afternoon to you, sir.

Mr. Passarelli.

MR. PASSARELLI: Your Honor, my name is Edward J. Passarelli, and I'm with the Department of Justice and defending the interest of the United States. My address is 601 D Street, NW, Washington, D.C.

THE COURT: Thank you, Mr. Passarelli.

Mr. Simpson.

MR. SIMPSON: Thank you, Your Honor. My name is Stephen L. Simpson. I am with the Solicitor's Office, I am with the Division of Indian Affairs at the Department of the Interior at 1849 C Street, NW, in Washington.

THE COURT: Thank you, sir, and to Mr. Passarelli and Mr. Simpson, good afternoon.

MR. SIMPSON: Thank you, Your Honor.

THE COURT: We spoke last, I believe, on the 25th or the 26th of February. I'm not sure which date it was,

but at that time we had an extensive discussion about the necessity of reconstituting the suit as a class action, and the Court at that time had pointed out that based upon language and quotations in Plaintiff's proposed amended complaint that it seemed to be the case that the Osage tribal counsel had representative authority and could therefore stand in lieu of individual claimants in this litigation.

And I asked Mr. Passarelli, and Mr. Simpson, and Mr. Woodcock to examine whether this would not be workable approach to the case, that is to say, to keep the case captioned as it now is and avoid the necessity of constituting this as a class suit.

With that brief introduction, Mr. Passarelli, I await your comments and thoughts about my suggestion.

MR. PASSARELLI: Well, we thought long and hard about it, Your Honor, and I did look at case law and statutes cited by the plaintiff and the language cited by the plaintiff involving management, and we maintained the position and talked about it with our other folks in the department.

We have continued the position taken in the litigation before Judge Hewitt that the tribe does not have standing to maintain and represent the claims that would be owned by the individual claimants who are head-right owners.

And the tribe has standing for its own injury, but it does not have standing to secure a remedy on behalf of the other entities.

We looked at the language related to the tribe, that the tribe is a party to the lease and that the tribe has to approve the lease, and --

THE COURT: The tribe or the tribal counsel?

MR. PASSARELLI: The tribal counsel has to approve the lease, operating with the authority given to them from the tribe. They are the leadership of the tribe.

That would suggest to us that in an action against a lessee, if they are the lessor and a party, it's very arguable that they can go after the contractor, and they could sue the contractor directly in an action, you know, in a Federal District Court, in a court that would have jurisdiction.

But this action is an action based upon statutes and regulations that the tribe claims fairly construed mandates a remedy to them for the money due. And that is correct to the extent that they own -- at least the claim is correct that they have the right to pursue a claim for head-right money that is owing directly to them from head rights.

That is not to say that the statutes and regulations, especially given their management authority, necessarily means that they have a meritorious claim that

the statutes will indeed mandate compensation.

But they would have standing to pursue that kind of claim. They would not have standing to pursue, in our view, a claim that is owned by separate individual head-right owners who are the owners of it, and the Court sought -- say, well, we probably need some constitutional authority for that -- or Supreme Court case, I believe you said.

We think that such case law exists from a standing manner in Warth v. Seldon, although it's not directly on point.

THE COURT: I'm sorry, that name is again?

MR. PASSARELLI: Warth v. Seldon.

THE COURT: W-O-R-T-H?

MR. PASSARELLI: W-A-R-T-H v. Seldon, 422 U.S. 490, and Your Honor, it's a 1975 case, and I'm going to give you a slip cite, but I haven't look at that, at the 500 slip cite directly. I just can't recall what it is, but at 500 it was being cited by the Court of Federal Claims in Ontario Power Generation v. United States, 54 Federal Claims 630 at page --

THE COURT: Being cited for what, Mr. Passarelli?

MR. PASSARELLI: For the proposition that -- in that case, it was being cited for the proposition that, indeed, not only do you have constitutional standing, which

is what we're really talking about, but it's citing it for the side in what -- the settlement of Prudential standing.

That suggests that in a case in Ontario Power Generation as well as Emerald International Corporation v. The United States, 54 Fed. Claims 674. That case involved certainly an Emerald International Corporation in, I believe, Ontario, statutes or regulations that had to mandate compensation; not our kind of compensation.

But in Ontario Power, they said that Prudential standing is a question of whether the constitutional or statutory provision on which the claim rests properly can be understood as granting a person in a plaintiff's position the right to judicial relief.

And we think that the only way, if you can construe the statutory and regulatory framework, to construe money damage remedies, that money damage remedies is owed to the head-right owners who have the right to judicial relief, not to the tribe.

THE COURT: Okay. I don't have any problem with what you're saying, but my inquiry of you when we last spoke was whether we could not substitute or add to the complaint the tribal counsel, the tribal counsel being the party that executed these contracts on behalf of the individuals.

MR. PASSARELLI: Again, from that standpoint, the tribal counsel doesn't have a right to the judicial remedy,

the money, of the other head-right owners. The tribal counsel may theoretically have the ability to sue the lessor, but that remedy is not the remedy that the tribe has.

And I'm not certain on the standing ground, but certainly the best that they could do is they could sue the lessor in a Federal District Court. They couldn't sue -- the remedies that we have here is statutes and regulations mandating compensation, some action that we have done that has somehow been less than --

THE COURT: But if the compensation that is being sought here flows ultimately to the individuals through a contract executed on behalf of the individuals by the tribal counsel, why wouldn't the tribal counsel be the proper representative to collect that money on behalf of the individuals in the same manner in which it is collecting the royalties or authorized the payment of royalties on behalf of the individuals.

MR. PASSARELLI: It would seem to me that in that context what the Court of Federal Claims -- what the Tucker Act does is give them a damage remedy, any of the individuals who are wronged by the injury, and that damage remedy must issue in the name of the head-right owner.

But secondly, real party in interest even, under Rule 17, may allow someone who signs a contract to represent

someone in the contract action. If this was a contract action against the United States, that arguably, again, might resolve part of the issue on real party in interest.

But it does not appear that -- they aren't the contractor. We are not a party to the contract, and --

THE COURT: The contract was entered into with the approval of the United States.

MR. PASSARELLI: That's correct, but even in the most --

THE COURT: And doesn't the contract incorporate the regulations that stipulate the amount of royalty that is to be paid by the lessees?

MR. PASSARELLI: It references the lease and says that --

THE COURT: Okay, and doesn't the United States have a trustee obligation, obligations as a trustee, with respect to the monitoring of these contracts?

MR. PASSARELLI: We have certainly regulatory -- certain regulatory responsibilities that exist. In light of the more recent Navajo case, there's some question as to whether or not that would result in full control given that in that particular case, in the Navajo case, they also actually approved, the tribe approved, the leases. I'm sorry. The tribe negotiated and approved the leases. The Federal government as the secretary also approved the lease

as we do here.

THE COURT: Okay.

MR. PASSARELLI: But the question then becomes -- where the breach comes from in our view, and if there is a breach, it is a breach of statutes and the regulations.

THE COURT: But -- that's true, and I have no problem with that. My only question is why wouldn't the tribal counsel be the proper party to prevent arguments with respect to the violation of these statutes and regulations? After all, Mr. Passarelli, it's the tribal counsel that executed these contracts on behalf of the individuals.

You're not reaching me, Mr. Passarelli.

MR. PASSARELLI: I have found no authority --

THE COURT: I know, but I'm asking you to examine this in terms of basic principles of law --

MR. PASSARELLI: And --

THE COURT: A contract is executed on behalf of head-right owners by a duly constituted body called the tribal counsel. The tribal counsel executes contracts as authorized by regulations issued by the Secretary of the Interior, contracts that are, I presume, checked for compliance with rules and regulations by the Secretary of the Interior and entered into between the tribal counsel and the individual companies that are leasing the oil rights on these lands.

I can't see under those circumstances why the tribal counsel isn't the most logical party to come in and say, Mr. Secretary, you haven't been paying us for what our contract, the one that we executed on behalf of these individuals, calls for.

I really -- there's no recovery here that's going to flow to the tribal counsel, it's going to flow to the individuals through their stated representative, the tribal counsel.

It seems to me not a difficult proposition to endorse.

MR. PASSARELLI: But just as in Helen Mitchell --

THE COURT: Yes.

MR. PASSARELLI: You know, the judgment for the individuals had to be made for those individuals.

THE COURT: Well, we could bring the tribal counsel in as a proper party plaintiff. We would deal with the tribal counsel as a representative, and at such time as a judgment were to be paid, we would require the tribal counsel to identify all individuals who are entitled to collect; that being all individuals who hold interest in contracts executed by the tribal counsel. Then we would supervise the distribution of those proceeds in quite the same fashion as was done in Grenault.

I really see no need to bring in all of these

individuals and the thousands of pieces of paper we're going to be generating when we have somebody here now who entered into these contracts.

MR. PASSARELLI: I understand your desire for expediency. Your --

THE COURT: No, it's not efficiency.

MR. PASSARELLI: -- desire for efficiency.

THE COURT: But it's more than that. I think we have a legally sufficient entity in the form of the tribal counsel. After all, if they were not legally competent to execute these contracts, then these contracts are void from the start.

MR. BRICKELL: Your Honor, Brad Brickell on behalf of the Osage.

THE COURT: Yes, sir.

MR. BRICKELL: If I could interject just a brief bit of language that's contained in each of the leases that have been signed by the various chief representatives of the tribal counsel over -- for a period of 100 years.

THE COURT: Please.

MR. BRICKELL: Each of these leases -- and so far as I know, up to the current day, although I don't have any that have been signed here in front of me in the last five years, but they state the following:

"The act of June 28th, 1906, 34 statutes at large,

539 to 543, as amended, reserves to the Osage Tribe the oil, gas, coal or other minerals covered by said land until the 8th day of April, 1933, and thereafter until otherwise provided by Congress."

When you go into the more recent leases, then they will come in and indicate that it's reserved until the 8th day of April, 1983, and so on. There were various amendments that continue this.

So the statutes, I believe -- and to which we discussed some of them at our last hearing -- clearly show that the intent of Congress was, back when the Osage county was actually purchased by the tribe through monies that came to the tribe from the cessation of their lands in Kansas, that the oil, gas, coal or other minerals are to be owned by the tribe.

Then, of course, we get into who the tribe is and that sort of thing, but in addition, the leases set forth the language that states that "the Osage tribal counsel is the duly elected governing body of the Osage Nation or Tribe of Indians vested" -- and it says vested, and that's in all of these leases as well -- "vested with the authority to lease or take other actions on oil and gas mining pertaining to the Osage mineral estate."

Each of these leases with that language have all been approved and signed off by the representative of the

Secretary of the Interior and, in fact, they're the ones that came up with the form.

So I just thought I would add that to what I feel like was the authority showing that the real estate in question here, the actual valuable mineral, the legislative intent, obviously, was that those were to be owned by the tribe.

The legislature -- or Congress, excuse me, had the foresight or the thought that the surface, however, could be divided at that time, in 1906, among various individual members, and in fact, they did so and various surface interests were allotted and parceled out or partitioned out by various sized tracts of land to the various 2,000 members at the time.

However, the minerals always remained as an undivided whole owned by the tribe. Now, it's obviously true that the benefit of revenues received through the operation of the government in its actions as trustee over these lands goes to the various head-right owners or their successors by well succession, you know, several thousands of them, three or four times a year.

But the minerals, the thing that we're really talking about here that was leased by these leases are and always have been since 1906 owned undivided by the tribe.

And I don't know if anyone had really focused in

on that, and I just wanted to mention that is contained in each of these leases.

THE COURT: Okay. Well, that certainly goes along with my thinking, Mr. Brickell, that we don't need to have this suit go forward as a class action when we have before us the tribe and you could join in the tribal counsel who as a matter of law would be those entities that have the legal interests that are necessary to pursue this litigation.

MR. BRICKELL: And I would agree with that, Your Honor. My only proviso would be because the ownership of the minerals themselves as so ingrained in the statutes in the tribe itself, my request would be to leave the tribe as one of the party plaintiffs.

THE COURT: Yes, I would too. I would too. I agree. In fact, that's what I meant to say if I didn't say it, that I would simply bring the tribal counsel in as legal representatives, contracting authority and legal representatives, of the individual head-right owners.

And if we were to do that, I think we would have collected all of the interests that arise under the contracts that were issued and that are, in fact, the bases for this lawsuit.

Mr. Passarelli, I really -- I don't want to go a long Dennis road of the class action given what I've learned about these contracts. I would hope that I could convince

you not to insist upon it, but if you do insist upon it, then I think we're going to have to get it resolved formally through a motion.

But we know from our experience in Grenault, you and I, Mr. Passarelli, nobody else, you and I, know that the opt-in class, perhaps, maybe necessary there, I don't know, but certainly it was a burden. And I'm not about to open up that type of administrative chore here particularly where I feel it to be totally unnecessary.

So once again, I think I'm going to ask you, and Mr. Simpson, and Mr. Woodcock to reconsider this. If you won't, if you don't want to back away from your position, then you're going to have to file a motion challenging the status of -- well, what I think I would have Mr. Brickell do is move to amend his complaint.

Mr. Brickell, I haven't acted, as you know, on the presently pending motion to intervene and amend. I'd ask that you simply withdraw that and refile it so that the intervention would be limited to the joinder of the tribal counsel.

MR. BRICKELL: Your Honor, I would have no problem with that. May I inquire, and I have this other companion case going and I cannot recall off the top of my head -- did the government ever file a response to the motion to intervene here?

THE COURT: In our case, the one we're talking about now?

MR. BRICKELL: Yes, Your Honor.

THE COURT: You know, I don't know. I've been holding it for some time. I don't know. I don't think so, Mr. Brickell, but Mr. Passarelli is here to --

MR. PASSARELLI: Your Honor, when it came up, you called to find out what our position would be.

THE COURT: Oh, okay.

MR. PASSARELLI: We have taken that position to be one that you wanted orally, and we requested it orally.

THE COURT: Okay.

MR. BRICKELL: Your Honor, if that is the case, and I believe under Rule 15 I could amend it without leave of Court to go ahead and drop the intervention and request the motion to amend to add the counsel along with the original plaintiff to the case and attach a copy of the streamlined complaint that I would propose the parties go forward on.

THE COURT: I think that's excellent. That would be --

MR. BRICKELL: I've already spoken to Mr. Passarelli about being a little more specific --

THE COURT: Yes.

MR. BRICKELL: -- in the complaint insofar as the

actual wrongs regarding royalty --

THE COURT: Yes.

MR. BRICKELL: -- payments that we're alleging, and I have been working on a draft of that already.

THE COURT: Okay. Let's do that, Mr. Brickell, and then if Mr. Passarelli, and Mr. Woodcock, and Mr. Simpson still feel that they're right, then they can file a motion to challenge the standing of the tribal counsel and insist upon the joinder of the individual head-right owners, and the Court will rule on that.

But Mr. Passarelli, on the basis of what -- the little I know so far, you're not going to prevail on that motion.

MR. PASSARELLI: I'll try my best, Your Honor.

THE COURT: All right.

MR. PASSARELLI: You only heard a little bit of what I had to say.

THE COURT: All right. Okay. Now, I perfectly understand that the tribe itself has a distinct interest in this oil and gas and that, in your view, the monetary benefits of these contracts flow to individuals. I'm not saying anything otherwise.

I'm only saying who is best positioned to advocate those individual beneficial interests, and I'm saying that it is the party that signed the contracts whom the Secretary

of the Interior has recognized as a legal representative of the individuals ~~and whom the tribe itself has designated as~~ the legal representative of these individuals.

And if that isn't enough to let the tribal counsel be the party here, then I don't know what would be enough.

So Mr. Woodcock and Mr. Simpson to have not shared your experience with the Grenault case and the seemingly endless motions we're getting for joinder, some of them years down the road, as you recall -- we have a file drawer full of hundreds of Grenault's and -- well, they weren't all Grenault Indians. Some of them were Chahaylas and Talmuts and other tribes.

But nonetheless, it may well have been the case that it would not have been possible to proceed in Grenault in other than the fashion that we did there because there was nothing bringing all of those individual interests together under the frame work of a single contract whose violation was the substance of a complaint.

There we all know, we had individual timbered interests, we had fishing interests, but they had all been allotted. That is not our case here. We have -- everything focuses on this contract, and what we say about the contract, what we say about any one contract, we are saying also of all of the contracts because if they incorporated rules set out by regulation, it has to be the case that the

regulation, however interpreted, governs the contract wherever the language of the regulation occurs.

We really only need one contract. That's all we need. But I'm assuming that there's a factual difference among -- in the situation, so we probably have to have a representative set of contracts, but --

MR. BRICKELL: That's true in this case, Your Honor.

THE COURT: Yes.

MR. BRICKELL: Brad Brickell here.

THE COURT: But I'm thinking only, Mr. Brickell, in terms if the Court were called upon to declare the meaning of a given regulation.

MR. BRICKELL: I see.

THE COURT: Then we only need one contract because whatever meaning we say it is this contract, it has the same meaning in all the contracts. But I appreciate we go on from there in terms of measuring the amount due, and so there we will have to become more discrete.

But that is not a reason for saying we need to have the beneficiaries here. We'll be perfectly able to measure out the damages without their being in court.

We're not going to give away the government's money, Mr. Passarelli, if that's your grave concern. You will be given every protection as you were in Grenault. I

simply want to avoid bottle necks that all hundreds of individuals coming into the law suit is going to cause us for no purpose whatsoever, none.

Okay. That was the main thing I wanted to cover, and it may be, Mr. Brickell, that that's all I wanted to cover given how we have proposed to resolve this. I had other questions that really only arose if we were to proceed with the class action, but for the moment we're not going to.

You are going to amend, simplify, the complaint and then join -- well, you're going to give us a new complaint into which you also add the tribal counsel as the authorized representative of the individual alotees.

MR. BRICKELL: Yes, Your Honor, what my plan would be, unless the Court orders otherwise --

THE COURT: I won't.

MR. BRICKELL: -- would be to file a motion with the attached proposed complaint appended to the motion, and then if the motion is then granted, then the attached complaint would then be signed and filed upon the granting of the motion.

THE COURT: Yes. You know, I'm thinking now, even though I didn't act on the previously filed motion to intervene, I'm going to have to have from you, Mr. Brickell, a document formerly withdrawing that.

MR. BRICKELL: That would be fine, Your Honor.

THE COURT: Yes, and then in lieu thereof substituting the newly proposed amended complaint.

MR. BRICKELL: I can probably get that up there to you -- in Judge Hewitt's case, we have on occasion used email to transmit some of these documents.

THE COURT: Mr. Brickell, we don't need that kind of speed. If I didn't get it for a couple of weeks, you know what, I wouldn't run out of work.

MR. BRICKELL: Well, Your Honor, that wasn't my initial concern.

THE COURT: Oh, okay. But Mr. Passarelli, once more -- Mr. Simpson, Mr. Woodcock, and Mr. Passarelli, please get back together again on this thing and think about what interest is it that you believe that the class-action treatment would secure for the government that is not now fully protected were we to bring the tribal counsel in as the legal representatives of the head-right owners, and not the -- it represents only the legal interests, not the beneficial interests.

Okay. That's all I have.

MR. WOODCOCK: Your Honor, this is Alan Woodcock. May I ask a question?

THE COURT: Yes, sure.

MR. WOODCOCK: We had at some time ago discussed

notice to the oil companies --

THE COURT: Yes.

MR. WOODCOCK: -- because of this, and I assume that we will discuss or arrange for notice to the oil companies after receipt of the amended complaint?

THE COURT: Yes, I don't want to get that -- I don't want that out there until we have fixed boundaries of the complaint that we're talking about. Yes, so I do want Mr. Brickell's amended complaint to be on file.

Then I want Mr. Passarelli, and Mr. Brickell, and Mr. Woodcock, and Mr. Simpson to call up the Court and say, Judge, we need a conference or, no, Judge, we've seen the light. We're not going to press this class-action treatment. But I need to get some signal back to you, Mr. Passarelli.

Obviously if you decide that you want to challenge the standing of the tribal counsel, then we'll have to have a formal motion for that, and we'll have to have a schedule for the proposed submission of a motion.

I'd like to get all of those standing/jurisdictional issues resolved before I cause the issuance of the notice to the oil companies. I don't want them to step into a pot that's boiling.

MR. BRICKELL: Your Honor, Brad Brickell on behalf of the plaintiff.

THE COURT: Yes.

MR. BRICKELL: Just to apprise you of one other fact, the case that we've made reference to once or twice in our hearing today that's pending before Judge Hewitt --

THE COURT: Yes.

MR. BRICKELL: The government's arguments there on jurisdictional standing are fully briefed, currently set for oral argument on the third day of April, next month.

THE COURT: Oh, okay. I'm glad you told me that. She may resolve it for us, or we may find ourselves with a disagreement between judges.

MR. BRICKELL: I know that the reply brief of the government, we've had it for a couple of days now, and she'll be addressing all those issues in that case on the third of April. I don't know when a decision might be rendered by Judge Hewitt, but I just wanted to let you know that was out there.

THE COURT: I appreciate that very much.

Anything else that we need to take care of, Mr. Passarelli?

MR. PASSARELLI: Nothing, Your Honor.

THE COURT: Mr. Woodcock?

MR. WOODCOCK: No, I don't have anything else, Your Honor.

THE COURT: Mr. Brickell?

MR. BRICKELL: No, Your Honor. I would mention that we really appreciate, on behalf of the plaintiff, your time and efforts in this case, and I note the government's reference to the recent higher court decision in the Navajo matter, and it will be our contention further in this litigation that, in fact, the Navajo decision does favor the plaintiffs and this case, and we'll be, obviously, further addressing that later.

THE COURT: Okay. Mr. Simpson, you have the last word, sir.

MR. SIMPSON: I have no further issues, Your Honor. The government also appreciates your time in this, and I have to admit as agency counsel for the Navajo case, I eagerly await what Mr. Brickell is going to say about it.

THE COURT: Okay. All right. Madam Reporter, we can go off the record now.

(Whereupon, at 3:07 p.m. the hearing was concluded.)

//

//

//

//

//

//

//

REPORTER'S CERTIFICATE

DOCKET NO.: 99-550L

CASE TITLE: The Osage Nation v. United States

HEARING DATE: March 13, 2003

LOCATION: Washington, D.C.

I hereby certify that the proceedings and evidence are contained fully and accurately on the tapes and notes reported by me at the hearing in the above case before the United States Court of Federal Claims.

Date: March 13, 2003

Charity Davis

Official Reporter

Heritage Reporting Corporation

Suite 600

1220 L Street, N.W.

Washington, D.C. 20005-4018

# In the United States Court of Federal Claims

## NOTICE

THE OSAGE NATION

No. 99-550L

v.

THE UNITED STATES

CLERK'S OFFICE
Washington, D.C., April 16, 2003

To Attorney of Record, Assistant Attorney General and Judge John P. Wiese:

Please take notice that in the above cause there has been filed this day, on behalf of the parties,

Transcript of proceedings (1 volume) taken at Washington, D.C., on March 13, 2003.

Margaret M. Earnest (signature)
Margaret M. Earnest, Clerk

# Exhibit F

ORIGINAL

FILED
MAR 14 2003
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00-169 |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA | ) | |
| Defendant. | ) | |

**WITHDRAWAL OF MOTION TO INTERVENE AND AMEND COMPLAINT**

COME NOW the undersigned movant parties and pursuant R.C.F.C. 15, amend their original Motion to Intervene and Amend Complaint previously transmitted to the Court for filing about February 10, 2003, by withdrawing it as follows:

1. The basis for the above referenced Motion to Intervene was a finding entered by Honorable John T. Weise in Case No. 99-550-L, the companion to the instant proceeding;

2. During a more recent hearing in Case No. 00-550L, the Court announced a renewed review of the authorities cited in Plaintiff's pleadings, and based upon arguments of counsel for the Plaintiff[1] reversed the previous finding and found the Osage Tribe, as an entity, could prosecute the case on behalf of, and as "representative" of the beneficial interest of all headright owners or "members" of the Osage.

3. Inasmuch as the original basis for the Movant's Motion herein(Judge Weise's original ruling) has now been reversed, the Motion to Intervene and Amend Complaint filed by the undersigned Movants, is hereby amended by withdrawing it in toto under R.C.F.C. 15, as no response has been filed.

---

[1] The statues at large and laws of the United States specific to the Osage and undisputed facts concerning the administration of mineral assets of the Osage Tribe.

OW

WHEREFORE, if an order recognizing this withdrawal of the February 10, 2003 Motion to Intervene and Amend and/or striking the Motion is deemed necessary by the Court to conform with the procedural rules of the Claims Court, the undersigned Movants request that such order be entered.

Respectfully submitted,

BRADLEY D. BRICKELL OBA No. 1117
Brickell & Associates, P.L.C
950 Hightower Building
105 North Hudson
Oklahoma City, OK 73102
Telephone 405-236-0008
Facsimile 405-236-0013

Attorney For Plaintiff,
THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA

And

Attorney for Movants
JOSEPH ANDREW TRUMBLY, ELIZABETH BARTNEK, CHARLES O. TILLMAN, JR., JULIA L. MUSHRUSH, MARLENE WARE, PATRICIA L. BEASLEY, RUSSELL WARRIOR, JR. And JOHN P. ESSLEY

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of March, 2003, a true and correct copy of the above and foregoing was e-mailed to Judge Emily C. Hewitt c/o Shannon Hall@ao.uscourts.gov and Tony.Rogers2@usdoj.gov, faxed (202) 514-8865 and mailed, by U.S. Mail, to the following:

R. Anthony Rogers
General Litigation Section
Environment and Natural Resources Division
United States Department of Justice
3rd Floor
601 D Street, N.W.
Washington, D.C. 20004

Bradley D. Brickell

# Exhibit G

ORIGINAL

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
MAR 21 2003
U.S. COURT OF FEDERAL CLAIMS

## ORDER

THE OSAGE NATION AND/OR TRIBE
OF INDIANS OF OKLAHOMA

No. 99-550L

v.

THE UNITED STATES

Washington, D.C., March 21, 2003

Please take notice that in the above case, plaintiff's motions, received February 13, 2003, to intervene and amend complaint, shall be **RETURNED UNFILED**.

John P. Wiese
Issue Judge

# Exhibit H

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
MAY 1 5 2003
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, Plaintiff, | ) | |
| v. | ) | No. 99-550 L<br>Judge John P. Wiese |
| THE UNITED STATES OF AMERICA, Defendants. | ) | |

**RESPONSE TO SUBSTITUTE COUNSEL UNDER RCFC 83.1**

COMES NOW the undersigned attorney and for response to the Motion to Substitute Counsel filed by Wilson Pipestem hereby states as follows:

1. The instant litigation was filed by the undersigned counsel on the Plaintiff's behalf several years ago pursuant to a resolution duly approved by the governing council for The Osage Tribe of Indians and pursuant to an attorney fee agreement approved by the Secretary of the Interior;

2. In 2002, a new principal chief and almost all new council members were elected for the Plaintiff. The sole remaining member from the previous council, Ms. Camille Pangburn, has now passed away;

3. According to the filing of Wilson Pipestem, Mr. Pipestem is designated by the new chief and new council to "take over" the instant pending proceeding on behalf of Plaintiffs;

4. The undersigned counsel has conducted extensive discovery as well as extensive settlement negotiations with the Defendant in this case based upon unique lease language and factual circumstances concerning the Defendant's duties to collect

oil and gas royalty for production of the minerals owned by the United States, in trust for the Osage "head right" owners;

5. The undersigned counsel has expended many hours and paid out of pocket expenses in pursuit of this case, some of which remain outstanding. The Department of Interior has approved a fee agreement which provides that the undersigned is to receive a certain percentage of the Plaintiffs' recovery in the instant proceeding as attorney fees and is to be reimbursed for all out of pocket costs.

The United States Court of Appeals for the District of Columbia in *Heller, Ehrman, White & MacAuliffe, et al v. Bruce Babbit, Secretary of the Interior, et al, 992 F. 2d 360 at 364 (1993)* stated that the Claims Court is the appropriate body to determine a distribution/award of appropriate attorney fees for litigation which occurred in the Claims Court. The authority of this Court to deal with the issue of recovery, apportionment and disbursement of attorney fees for judgement awards or settlements was further discussed and decided in *Godfroy, et al v. The United States, 199 Ct. Cl. 487, 467 F.2d 909 (1972).*

As the Court was previously advised (by Defendant), the benefit of a judgement or settlement obtained herein, on the basis of underpayment of oil & gas royalty monies, is to be distributed to the holders/owners of "head rights" within the Osage Tribe of Indians. When an attorney recovers a fund for the benefit of persons, other than himself or his client, he may recover fees from the fund as a whole ("common fund doctrine"). *Boeing Co. v. Van Gemert, 444 U.S. 472 at 478 (1980).*

The jurisdiction of this Court to award an attorney fees for the establishment of a "common fund" was recently further confirmed in *Applegate, et al v. The United States, 52 Fed. Cl. 751 (2002).* In Applegate, (at page 761) the Court, Francis M. Allegra, Judge, stated:

> "...common fund claims, like suits for contribution, effectuate a simple, equitable notion - that those who benefitted from the litigation should share in it's cost." (interior citations omitted)

The Code of Federal Regulation, 25 CFR § 87.1(a), defines "attorney fees and litigation expenses" as all fees and expenses incurred in litigating and processing tribal claims before the Indian Claims Commission or the United States Court of Claims. And, 25 USCS § 1401(a), sets forth:

> ...not withstanding any other law, all use or distribution of funds appropriated in satisfaction of a judgement of the Indian Claims Commission or the United States Claims Court in favor of any Indian Tribe ... together with any investment income earned thereon, after payment of attorney fees and litigation expenses, should be made pursuant to the provisions of the Act" (emphasis added)

Currently, the undersigned counsel is entitled to be compensated for all out of pocket expenses and his efforts expended under the attorney fee agreement approved by the Secretary of Interior, subject to this Court's review for reasonableness and apportionment, if necessary.

WHEREFORE, in consideration of the above premises, the undersigned counsel does not object to the entry of appearance by Wilson Pipestem as designated by the newly elected council for the Plaintiff and by this pleading notifies the Defendant of his claim for fees and litigation expenses under (a) the above cited authorities and (b) his attorney fee agreement approved by the

Secretary of the Interior attributable to any monies recovered/appropriated for payment of claims adjudicated in the Plaintiff's favor to be distributed to the Osage owners of "head rights" through the Tribe or by Defendant by judgment or settlement.

Respectfully submitted,

BRADLEY D. BRICKELL OBA 1117
Brickell & Associates, P.L.C
950 Hightower Building
105 North Hudson
Oklahoma City, OK 73102
Telephone 405-236-0008
Facsimile 405-236-0013
**ATTORNEY FOR PLAINTIFFS**

**CERTIFICATE OF MAILING**

I hereby certify that on the 7th day of May, 2003, I faxed and mailed, by U.S. Mail, a true and correct copy of the above and foregoing, postage pre-paid to the following:

Edward Passarelli
Environment & Natural Resources Division
United States Department of Justice
601 Pennsylvania Ave., N.W., Ste. 843
Washington, D.C. 20004
***Via Facsimile: 202-305-0506***

Wilson Pipestem
Pipestem Law Firm, P.C.
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036
***Via Facsimile (202) 659-4931***

Alan Woodcock
Office of the Field Solicitor
U.S. Department of the Interior
7906 E. 33rd Street
Tulsa, OK 74145
***Via Facsimile: 918-669-7736***

BRADLEY D. BRICKELL