# Exhibit I

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JUL 1 2003
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00-169 |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**MOTION OF THE UNDERSIGNED MEMBERS OF THE OSAGE TRIBE TO FILE MEMORANDUM BRIEF AMICUS CURIAE**
**<u>RE: DEFENDANT'S MOTION TO DISMISS</u>**

The undersigned parties are owners of allotted shares or "head rights" of the Osage Tribe of Indians and respectfully move for leave to file the attached memorandum brief amicus curiae regarding the statute of limitations issues currently pending before this Court pursuant to Defendant's Motion to Dismiss. In support of the Motion, the undersigned parties state:

1. The undersigned persons are owners of allotted shares or "head rights" of the Osage Tribe of Indians and are vitally interested in the issues before this Court regarding application of the statute of limitations to claims made by the Osage herein, as well as other tribes' potential claims. Charles O. Tillman, Jr., one of the amicus parties is the former chairman of the national Intertribal Monitoring Association (ITMA) and has testified before Congress in furtherance of issues affecting Indian tribes on numerous occasions.

2. Although submissions by amicus curiae are more frequently found in an appellate setting, this Court has allowed amicus briefing in prior cases. See *General Electric Co. v. U.S.*, Case No. 99-401T, U.S.F.C. (Published Decision dated May 28, 2003).



JAP
103

WHEREFORE, in consideration of the premises, the undersigned amicus parties request this Court grant leave to file the attached memorandum brief in support of Plaintiff's response to the Defendant's Motion to Dismiss in order to advise the Court of a decision rendered since the date of oral argument on Defendant's Motion to Dismiss in *Corbell v. Norton*, 2003 U.S. Dist. LEXIS 6985 (D.D.C., Apr. 28, 2003).

Respectfully submitted,

BRADLEY D. BRICKELL OBA 1117
Brickell & Associates, P.L.C
9[illegible] Hightower Building
105 North Hudson
Oklahoma City, OK 73102
Telephone 405-236-0008
Facsimile 405-236-0013

**ATTORNEY FOR AMICUS CURIAE, CHARLES O. TILLMAN, JR., JOSEPH ANDREW TRUMBLY, ELIZABETH BARTNEK, PATRICIA L. BEASLEY, RUSSELL WARRIOR, JR. and JOHN P. ESSLEY**

**CERTIFICATE OF MAILING**

I hereby certify that on the 30th day of June, 2003, I mailed, by U.S. Mail, a true and correct copy of the above and foregoing, postage pre-paid to the following:

R. Anthony Rogers, Esquire
General Litigation Section
Environmental and Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663

Wilson Pipestem, Esq.
Pipestem Law Firm
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036

BRADLEY D. BRICKELL

F:\Clients\Osage\Trust\Pleadings\Motion to File Amicus Curiae.wpd

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00-169 Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**MEMORANDUM BRIEF**
**AMICUS CURIAE**
**RE: DEFENDANT'S MOTION TO DISMISS**

COME NOW the undersigned amicus parties and advise the Court as follows:

Currently pending before this Court is the Defendant's Motion to Dismiss which argues, in part, that various statutes of limitation should be imposed upon the Plaintiff's claims in this matter. Oral arguments in this matter were concluded in early April, 2003. Thereafter, the parties were allowed to supplement their arguments by additional briefing, which briefs have been recently filed. A central issue before this Court regarding application of statutes of limitation to the Plaintiff's case is the following, to wit:

> At what point in time the cause(s) of action "accrued" for purposes of imposing the time restrictions set forth in 28 U.S.C. §2401(a).

In a recent order [April 28, 2003], the United States District Court for the District of Columbia in *Cobell v. Norton*, 2003 U.S. Dist. LEXIS 6984, Case No. 96-1285[1], addressed this same question, as applied to the facts and circumstances of that case (Department of Interior IIM

---

[1]See attached.



PLAINTIFF'S EXHIBIT 1

accounts). The District Court therein held, pursuant to 25 U.S.C. §4011(a)[2] and binding United States Supreme Court precedent, that a pre-existing fiduciary duty was imposed upon the Defendant to deliver a complete (historical) accounting of trust fund assets for individual Indian (IIM) trust beneficiaries in order for a cause of action for losses to accrue to the Plaintiff(s).

The District Court further found that an application of the doctrines of equitable tolling and fraudulent concealment would prevent imposition of the statute of limitations, if it were demonstrated that a party (the Defendant) had engaged in a course of conduct designed to conceal evidence of alleged wrongdoing along with other factual elements. The District Court stated:

> "Because of this repeated pattern of deception, even if the plaintiffs' claims for an accounting for transactions prior to October 1, 1984 had accrued before that date, plaintiffs would probably be able to invoke either the equitable tolling doctrine or fraudulent concealment doctrine to avoid the running of the statute of limitations contained in 28 U.S.C. § 2401(a)."

Evidence clearly showing that Department of Interior accounting errors were found by Arthur Andersen accountants, but intentionally deleted by the Defendant from the Osages' published report has been submitted to this Court in the Plaintiff's original response to the Defendant's motion. This evidence has not been refuted by the Defendant herein.

WHEREFORE, the undersigned amicus curiae pray this Court consider the above April 28, 2003 order entered in *Cobell*, *supra* in conjunction with the Defendant's Motion to Dismiss pending herein, and for such other relief as the Court may deem just and equitable.

---

[2]Herein, the Plaintiff claims money damages, in part, for the Defendant's failure to comply with 25 U.S.C. §4011(a).

Respectfully submitted,

BRADLEY D. BRICKELL OBA 1117
Brickell & Associates, P.L.C
950 Hightower Building
105 North Hudson
Oklahoma City, OK 73102
Telephone 405-236-0008
Facsimile 405-236-0013

**ATTORNEY FOR AMICUS CURIAE, CHARLES O. TILLMAN, JR., JOSEPH ANDREW TRUMBLY, ELIZABETH BARTNEK, PATRICIA L. BEASLEY, RUSSELL WARRIOR, JR. and JOHN P. ESSLEY**

**CERTIFICATE OF MAILING**

I hereby certify that on the ___ day of June, 2003, I mailed, by U.S. Mail, a true and correct copy of the above and foregoing, postage pre-paid to the following:

R. Anthony Rogers, Esquire
General Litigation Section
Environmental and Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0483 (Telephone)

Wilson Pipestem, Esq.
Pipestem Law Firm
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036

BRADLEY D. BRICKELL

F:\Clients\Osage\Trust\Pleadings\Brief for Amicus Curiae.wpd

LEXSEE 2003 u.s. dist. lexis 6985

**ELOUISE PEPION COBELL, et al., Plaintiffs, v. GALE A. NORTON, Secretary of the Interior, et al., Defendants.**

**Civil Action Number 96-1285 (RCL)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

***2003 U.S. Dist. LEXIS 6985***

**April 28, 2003, Filed**

**SUBSEQUENT HISTORY:**
Partial summary judgment denied by *Cobell v. Norton, 2003 U.S. Dist. LEXIS 6986 (D.D.C., Apr. 28, 2003)*

**PRIOR HISTORY:**
*Cobell v. Norton, 2003 U.S. Dist. LEXIS 6984 (D.D.C., Apr. 28, 2003)*

**DISPOSITION:**
Defendants' motion for partial summary judgment denied.

**COUNSEL:**
For Elouise Pepion Cobell, Earl Old Person, Mildred Cleghorn, Thomas Maulson, James Louis Larose, PLAINTIFFS: Keith M Harper, Native American Rights Fund, Washington DC USA, Dennis Marc Gingold, Washington DC USA, Elliott H Levitas, Kilpatrick Stockton, LLP, Washington DC USA

For Bruce Babbitt, Secretary of the Interior, FEDERAL DEFENDANT: Robert D Luskin, Patton Boggs LLP, Washington DC USA, Tom C Clark, US Department of Justice Land & Natural Resources Division Ben Franklin Station, Washington DC USA, Brian L. Ferrell, Andrew M Eschen, Charles Walter Findlay, III, Ben Franklin Station, Sarah D Himmelhoch, US Department of Justice Enrd, Ben Franklin Station, Washington DC USA, Sandra Marguerite Schraibman, US Department of Justice Federal Programs Branch, Washington DC USA, Edith R Blackwell, Washington DC USA, John Charles Cruden, US Department of Justice Environment & Natural Resources Division, Annadale VA USA.

For Ada E Deer, Assistant Secretary of the Interior, Indian Affairs, FEDERAL DEFENDANT: Lewis Steven Wiener, Sutherland, Asbill & Brennan, LLP, Washington DC USA, Tom C Clark, US Department of Justice Land & Natural Resources Division Ben Franklin Station, Washington DC USA, Brian L Ferrell, Andrew M Eschen, US Department of Justice Enrd, Ben Franklin Station, Washington DC USA, Charles Walter Findlay, III, Sarah D. Himmelhoch, United States Department of Justice Environment and Natural Resources, Washington DC USA, Sandra Marguerite Schraibman, US Department of Justice Federal Programs Branch, Washington DC USA, Edith R Blackwell, Washington DC USA, John Charles Cruden, US Department of Justice Environment & Natural Resources Division, Annandale VA USA.

For Robert E Rubin, Secretary of the Treasury, FEDERAL DEFENDANT: Lewis Steven Wiener, Sutherland, Asbill & Brennan, LLP, Washington DC USA, Tom C Clark, US Department of Justice Land & Natural Resources Division Ben Franklin Station, Washington DC USA, Brian L Ferrell, Andrew M Eschen, US Department of Justice Enrd, Ben Franklin Station, Washington DC USA, Charles Walter Findlay, III, Sarah D. Himmelhoch, United States Department of Justice Environment and Natural Resources, Washington DC USA, Sandra Marguerite Schraibman, US Department of Justice Federal Programs Branch, Washington DC USA, John Charles Cruden, US Department of Justice Environment & Natural Resources Division, Annandale VA USA.

For Lawrence Summers, Secratary of Treasury, FEDERAL DEFENDANT: Charles Walter Findlay, III, United States Department of Justice Environment and Natural Resources, Washington DC USA, John Charles Cruden, US Department of Justice Environment & Natural Resources

Division, Annandale VA USA.

For Kevin Gover, Assistant Secretary of the Interior, FEDERAL DEFENDANT: J Christopher Kohn, US Department of Justice Commercial Litigation Branch Ben Franklin Station, Washington DC USA, Brian L Ferrell, US Department of Justice Enrd, Ben Franklin Station, Washington DC USA, Mark E Nagle, Robert Craig Lawrence, US Attorney's Office, Washington DC USA, Charles Walter Findlay, III, United States Department of Justice Environment and Natural Resources, Washington DC USA, Henry A Azar, Jr, US Department of Justice Federal Programs Branch, Washington DC USA, Seth Brandon Shapiro, US Department of Justice Civil Division/Ben Franklin Station, Washington DC USA, Jonathan Brian New, US Department of Justice Civil Division, Federal Programs Branch, Washington DC USA, Jennifer R Rivera, US Department of Justice Civil Division, Washington DC USA, Sandra Peavler Spooner, David J Gottesman, Peter Blaze Miller, Cynthia L Alexander, US Department of Justice Commercial Litigation Branch, Washington DC USA, John Charles Cruden, US Department of Justice Environment & Natural Resources Division, Annandale VA USA, John Stemplewicz, US Department of Justice Ben Franklin Station, Civil Division, Washington DC USA, Amalia D Kessler, US Department of Justice Commercial Litigation Branch, Washington DC USA

For Department of Interior, FEDERAL DEFENDANT: J Christopher Kohn, US Department of Justice Commercial Litigation Branch Ben Franklin Station, Washington DC USA, Brian L Ferrell, US Department of Justice Enrd, Ben Franklin Station, Washington DC USA, Philip Martin Seligman, US Department of Justice Civil Division-Ben Franklin Station, Washington DC USA, Mark E Nagle, Robert Craig Lawrence, US Attorney's Office, Washington DC USA, Henry A Azar, Jr, US Department of Justice Federal Programs Branch, Washington DC USA,Terry M Petrie, US Department of Justice Enrd, General Litigation Section, Denver, CO USA, Michael John Quinn, US Department of Justice Civil Division/Ben Franklin Station, Washington DC USA, Seth Brandon Shapiro, US Department of Justice Civil Division/Ben Franklin Station, Washington DC USA, Jonathan Brian New, US Department of Justice Civil Division, Federal Programs Branch, Washington DC USA, Gino D Vissicchio, US Department of Justice Civil Division, Washington DC USA, Jennifer R Rivera, US Department of Justice Civil Division, Washington DC USA, Sandra Peavler Spooner, John Warshawsky, David J Gottesman, Peter Blaze Miller, John J Siemietkowski, US Department of Justice Commercial Litigation Branch, Washington DC USA, John R Kresse, Timothy E Curley, US Department of Justice Civil Division - Commercial Litigation Branch, Washington DC USA, Tracy Lyle Hilmer, US Department of Justice Civil Division, Washingon DC USA, Dodge Wells, US Department of Justice, Washington DC USA, John Stemplewicz, US Department of Justice Ben Franklin Station, Civil Division, Washington DC USA.

For Gale Norton, Secretary of the Interior, FEDERAL DEFENDANT: J Christopher Kohn, US Department of Justice Commercial Litigation Branch Ben Franklin Station, Washington DC USA, Mark E Nagle, Robert Craig Lawrence, US Attorney's Office, Washington DC USA, Henry A Azar, Jr, US Department of Justice Federal Programs Branch, Washington DC USA, Seth Brandon Shapiro, US Department of Justice Civil Division/Ben Franklin Station, Washington DC USA, Jonathan Brian New, US Department of Justice Civil Division, Federal Programs Branch, Washington DC USA, Jennifer R Rivera, US Department of Justice Civil Division, Washington DC USA, Herbert Lawrence Fenster, McKenna Long & Aldridge, LLP, Washington DC USA, Sandra Peavler Spooner, David J Gottesman, Peter Blaze Miller, US Department of Justice Commercial Litigation Branch, Washington DC USA, Cynthia L Alexander, US Department of Justice Commercial Litigation Branch, Washington DC USA, Tracy Lyle Hilmer, US Department of Justice Civil Division, Washingon DC USA, Dodge Wells, US Department of Justice, Washington DC USA, John Stemplewicz, US Department of Justice Ben Franklin Station, Civil Division, Washington DC USA, Amalia D Kessler, US Department of Justice Commercial Litigation Branch, Washington DC USA.

For John D Leshy, FEDERAL DEFENDANT: Robert D Luskin, Patton Boggs LLP, Washington DC USA, Henry A Azar, Jr, US Department of Justice Federal Programs Branch, Washington DC USA, Seth Brandon Shapiro, US Department of Justice Civil Division/Ben Franklin Station, Washington DC USA, Jonathan Brian New, US Department of Justice Civil Division, Federal Programs Branch, Washington DC USA, Jennifer R Rivera, US Department of Justice Civil Division, Washington DC USA, David J Gottesman, Peter Blaze Miller, US Department of Justice Commercial Litigation Branch, Washington DC USA, Cynthia L Alexander, US Department of Justice Commercial Litigation Branch, Washington DC USA, Amalia D Kessler, US Department of Justice Commercial Litigation Branch, Washington DC USA.

For Edward B Cohen, FEDERAL DEFENDANT: Robert D Luskin, Patton Boggs LLP, Washington DC USA, Seth

Brandon Shapiro, US Department of Justice Civil Division/Ben Franklin Station, Washington DC USA, Jonathan Brian New, US Department of Justice Civil Division, Federal Programs Branch, Washington DC USA, Jennifer R Rivera, US Department of Justice Civil Division, Washington DC USA, David J Gottesman, Peter Blaze Miller, US Department of Justice Commercial Litigation Branch, Washington DC USA, Cynthia L Alexander, US Department of Justice Commercial Litigation Branch, Washington DC USA, Amalia D Kessler, US Department of Justice Commercial Litigation Branch, Washington DC USA.

For Michael G. Rossetti, Counselor to the Secretary, Department of Interior, FEDERAL DEFENDANT: Henry A Azar, Jr, US Department of Justice Federal Programs Branch, Washington DC USA, Seth Brandon Shapiro, US Department of Justice Civil Division/Ben Franklin Station, Washington DC USA, Jonathan Brian New, US Department of Justice Civil Division, Federal Programs Branch, Washington DC USA, Elizabeth Wallace Fleming, Trout & Richards, PLLC, Washington DC USA, Jennifer R Rivera, US Department of Justice Civil Division, Washington DC USA, David J Gottesman, Peter Blaze Miller, US Department of Justice Commercial Litigation Branch, Washington DC USA, Cynthia L Alexander, US Department of Justice Commercial Litigation Branch, Washington DC USA, Amalia D Kessler, US Department of Justice Commercial Litigation Branch, Washington DC USA.

For Neal McCaleb, Assistant Secretary of the Interior for Indian Affairs, FEDERAL DEFENDANT: B Michael Rauh, Manatt, Phelps & Phillips, LLP, Washington, DC USA, Henry A Azar, Jr, US Department of Justice Federal Programs Branch, Washington DC USA, Seth Brandon Shapiro, US Department of Justice Civil Division/Ben Franklin Station, Washington DC USA, Jonathan Brian New, US Department of Justice Civil Division, Federal Programs Branch, Washington DC USA, Jennifer R Rivera, US Department of Justice Civil Division, Washington DC USA, David J Gottesman, US Department of Justice Commercial Litigation Branch, Washington DC USA, Tracy Lyle Hilmer, US Department of Justice Civil Division, Washingon DC USA, Dodge Wells, US Department of Justice, Washington DC USA.

For Eleni M Constantine, NON PARTY: Lawrence H Wechsler, Janis, Schuelke & Wechsler, Washington DC USA

For Roberta McInerney, NON PARTY: Donald Michael Barnes, Porter, Wright, Morris & Arthur, Washington DC USA.

For James Regan, NON PARTY: David Booth Beers, Shea & Gardner, Washington DC USA.

For Daniel Mazella, NON PARTY: William Aaron Dobrovir, Sperryville VA USA.

For Randall Lewis, NON PARTY: Pamela J Marple, Manatt, Phelps & Phillips, LLP, Washington DC USA.

For United States of America, NON PARTY: Timothy Patrick Garren, US Department of Justice Civil Rights Division, Washington DC USA.

For Department of the Treasury, NON PARTY: Brian L Ferrell, US Department of Justice Enrd, Ben Franklin Station, Washington DC USA, Terry M Petrie, US Department of Justice Enrd, General Litigation Section, Denver CO USA, Gino D Vissicchio, US Department of Justice Civil Division, Washington DC USA, John Warshawsky, John J Siemietkowski, US Department of Justice Commercial Litigation Branch, Washington DC USA.

For Ingrid D Falanga, NON PARTY: Erik Lloyd Kitchen, Steptoe & Johnson, LLP, Washington DC USA.

For Timothy S. Elliott, Deputy Assistant Solicitor, Department of the Interior, NON PARTY: Martha Purcell Rogers, Ober, Kaler, Grimes & Shriver, Washington DC USA.

For Edith R Blackwell, Deputy Associate Solicitor, Department of Interior, NON PARTY: Michael R Bromwich, Fried, Frank, Harris, Shriver & Jacobson, Washington DC USA, Amy Berman Jackson, Trout & Richards, PLLC, Washington DC USA.

For Robert Lamb, NON PARTY: Roger Eric Zuckerman, Zuckerman Spaeder, LLP, Washington DC USA.

For James Douglas, Chief of Staff, Office of the Special Trustee for American Indians, United States Department of the Interior, NON PARTY: Kathleen Elizabeth Voelker, Washington DC USA.

For Dominic Nessi, NON PARTY: Stephen M Byers, Crowell & Moring, LLP, Washington DC USA.

For M Sharon Blackwell, NON PARTY: Michael R Bromwich, Fried, Frank, Harris Shriver & Jacobson, Washington DC USA.

For Hilda Manuel, NON PARTY: Leslie B Kiernan, Zuckerman Spaeder, LLP, Washington DC USA.

For Steven Swanson, NON PARTY: L Barrett Boss, Asbill, Moffitt & Boss, Chartered, Washington DC USA.

For John Berry, NON PARTY: Plato Cacheris, John Francis Hundley, Baker & McKenzie, Washington DC USA, Sydney Jean Hoffmann, The Law Offices of Plato Cacheris, Washington DC USA.

For James A Eichner, NON PARTY: Barbara Ann Van Gelder, Wiley Rein & Fielding, LLP, Washington DC USA.

For Phillip A Brooks, NON PARTY: William Holt Briggs, Jr, Laura C Zimmitti, Ross, Dixon & Bell, LLP, Washington DC USA.

For John S Most, NON PARTY: Thomas Edward Wilson, Berliner, Corcoran & Rowe, LLP, Washington DC USA.

For Glenn Schumaker, NON PARTY: Plato Cacheris, John Francis Hundley, Baker & McKenzie, Washington DC USA. Sydney Jean Hoffman, The Law Offices of Plato Cacheris, Washington DC USA.

For Chester Mills, NON PARTY: Mary Lou Soller, Miller & Chevalier, Chartered, Washington DC USA.

For Lois J Schiffer, NON PARTY: Jeffrey David Robinson, Melissa Heitmann McNiven, Baach, Robinson & Lewis, Washington DC USA.

For Anne Shields, NON PARTY: Dwight Phillip Bostwick, Melissa Heitmann McNiven, Baach, Robinson & Lewis, Washington DC USA.

For David Shuey, NON PARTY: Larry Allen Nathans, Robert W Biddle, Bennett & Nathans, LLP, Baltimore MD USA.

For Terry Steele, NON PARTY: John Kenneth Zwerling, Zwerling & Kemler, PC, Alexandria VA USA.

For Terrance Virden, NON PARTY: Mary Lou Soller, Miller & Chavalier, Chartered, Washington DC USA.

For Deborah Maddox, NON PARTY: Lisa Bondareff Kemler, Zwerling & Kemler, PC, Alexandria VA USA.

For John A Bryson, NON PARTY: Russell David Duncan, Lisa Ann Freiman Fishberg, Coburn & Schertler, Washington DC USA.

For William G Myers, III, NON PARTY: E Lawrence Barcella, Jr, Paul, Hastings, Janofsky & Walker, LLP, Washington DC USA.

For David Shilton, NON PARTY: Russell David Duncan, Lisa Ann Freiman Fishberg, Coburn & Schertler, Washington DC USA.

For Daryl W White, NON PARTY: David Sidney Krakoff, Alessio D Evangelista, Beveridge & Diamond, PC, Washington DC USA.

For Tom C Clark, II, NON PARTY: Michael D Goodstein, Resolution Law Group, PC, Washington DC USA.

For Sabrina McCarthy, NON PARTY: Bradley Stuart Lui, Morrison & Foerster, LLP, McLean VA USA.

For Peter D Coppelman, NON PARTY: Stanley M Brand, Andrew Dewald Herman, Brand & Frulla PC, Washington DC USA.

For Michael B Jandreau, NON PARTY: Marshall L Matz, Olsson, Frank & Weeda, PC, Washington DC USA.

For Kenneth Paquin, Kenneth Russell, NON PARTIES: D Jacques Smith, Arent, Fox, Kintner, Plotkin & Kahn, Washington DC USA.

For Accenture LLP, NON PARTY: Emily M Yinger, Hogan & Hartson Commercial Practice, McLean VA USA.

For Willa B Perlmutter, NON PARTY: William Leonard Gardner, Brian Michael Privor, Morgan, Lewis & Bockius, LLP, Washington DC USA.

For Charles W Findlay, NON PARTY: Hamilton Phillips Fox, III, Sutherland, Asbill & Brennan, LLP, Washington DC USA.

For Michael Carr, NON PARTY: Christopher J Lovrien, Robert Christopher Cook, Jones Day, Washington DC USA.

For James Simon, NON PARTY: Dennis Marc Gingold, Washington DC USA.

For Sarah Himmelhoch, NON PARTY: Robert A Salerno, Piper Rudnick, LLP, Washington DC USA.

For Quapaw Tribe of Oklahoma, MOVANT: Amy S Koch,

Cameron McKenan, Washington DC USA.

For National Congress of American Indians, MOVANT: Charles Allen Hobbs, Hobbs, Straus, Dean & Walker, Washington DC USA.

For Alan Lee Balaran, SPECIAL MASTER: Alan Lee Balaran, Washington DC USA.

For Dow Jones & Company, Inc, MOVANT: Richard Lee CYS, Davis Wright Tremaine, Washington DC USA, Jonathan K Tycko, Tycko Zavareei, LLP, Washington DC USA.

For Kenneth F Rossman, MOVANT: Christopher B Mead, London & Mead, Washington DC USA.

For Albert Lee Bynum, MOVANT: Albert Lee Bynum, Pro se, Gadsden AL USA, Nathaniel Davis Owens, Sr, Anniston, AL USA.

For Intertribal Monitoring Association for Indian Trust Funds, MOVANT: Jill Elise Grant, Washington DC USA.

For Native American Industrial Distributors, Inc, MOVANT: Neil James Ruther, Towson MD USA.

**JUDGES:**
**[*1]** Royce C. Lamberth, United States District Judge.

**OPINIONBY:**
Royce C. Lamberth

**OPINION:**

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendants' motion for partial summary judgment regarding the statute of limitations and laches [1781-1], which was filed on January 31, 2003. Upon consideration of defendants' motion, plaintiffs' opposition thereto, defendants' reply brief, and the applicable law in this case, the Court finds that defendants' motion should be denied.

**I. LEGAL ANALYSIS**

A. Legal Standard For Summary Judgment

*Rule 56(c) of the Federal Rules of Civil Procedure* provides, in relevant part, that summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In a separate memorandum and order issued this date, the Court has explained at length the legal standards that govern motions for summary judgment. Accordingly, it will only be necessary to provide a brief explanation of the relevant burdens of proof governing this **[*2]** motion.

Defendants have moved for partial summary judgment that the statute of limitations or the doctrine of laches bars any claims by plaintiffs for an accounting of individual Indian money (IIM) trust balances or transactions prior to October 1, 1984. Because defendants will bear the burden of persuasion on this issue at trial, defendants presently possess the burden of presenting credible evidence that would entitle them to a directed verdict at trial on this issue, if the evidence were not controverted. If defendants fail to provide such evidence, they will not have satisfied their burden of production, and the Court will deny partial summary judgment. However, if defendants do provide such evidence, they will have met their burden of production (although the burden of persuading the finder of fact on a preponderance of the evidence standard remains with defendants). The burden of production would then shift to plaintiffs, who would be required to provide credible evidence demonstrating the existence of a genuine issue for trial. If plaintiffs failed to provide such evidence, they would not have met their burden of production, and the Court could conclude that defendants have **[*3]** prevailed on their burden of persuasion, and enter partial summary judgment on the issues presented in their motion.

B. The Court's November 5, 1998

Memorandum Opinion

The Court has previously addressed defendants' contention that the statute of limitations or, alternatively, the laches doctrine, bars plaintiffs' claims for an accounting of any IIM trust balances prior to October 1, 1984. The Court agreed with the parties that the statute of limitations found in *28 U.S.C. § 2401* governed this case. Subsection (a) of that statute provides, in relevant part, that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." The Court then rejected plaintiffs' assertion that the tolling language contained in the Department of the Interior and Related Agencies Appropriations Act for fiscal year 1990-91, Pub. L. No. 101-512, n1 completely eliminated defendants' right to assert the statute of limitations as a defense, explaining:

Although the Court agrees that the plaintiffs fall under the protections of the tolling statute because their claim is one for **[*4]** "trust mismanagement," these protections do not

include the revival of potentially long stale claims. The tolling language clearly stops the clock from commencing to run on the plaintiffs' viable claims as of October 1, 1990. But nothing in this legislative history shows that the "tolling provision" was ever intended to do more than its name suggests. In other words, the provision only tolls a clock that has not commenced running. It cannot revive claims for which the clock stopped running long ago.

*Cobell v. Babbitt, 30 F. Supp. 2d 24, 43-44 (D.D.C. 1998)* (footnotes omitted). After examining both the statutory language and the relevant legislative history, the Court concluded that

if the plaintiffs can be allowed to bring their cause of action for an accounting based on the transactions that occurred before October 1, 1984, they must show that these claims did not accrue prior to this date. Any claims that accrued before October 1, 1984, would have been time barred before the enactment of the tolling provision in the 1990 appropriations act.
*45 Id. at 44.*

n1 That statute provides, in relevant part, that "notwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe or individual Indian has been furnished with an accounting of such funds."

[*5]

Although the Court did observe that, at that time, "the parties agreed that the plaintiffs' claims accrued when the plaintiffs knew or should have known that they had a valid right of action for trust mismanagement against the government," the Court made no ruling as to that point of law. *Id.*

Instead, the Court declined to make any ruling on the statute of limitations issue because the issue had not been fully briefed and discovery had not yet been completed. The Court explained that defendants were "free to raise their statute of limitations defense at the summary judgment stage, once the parties have completed their discovery of facts that go to the plaintiffs' knowledge and have had the opportunity to adequately brief the issues presented." *Id. at 45.* In a footnote, the Court mentioned the relevant issues that it planned to address at that time:

Presumably the Court will address issues such as when the plaintiffs' claims accrued, the effect of the statute of limitations on an action for an accounting, the undisputed facts on which the defendants base their argument that the plaintiffs' cause of action for an accounting has accrued, and equitable tolling. [*6] Specifically, the Court expects to address the issue of the effect of the trust relationship on the accrual of the plaintiffs' claims under *28 U.S.C. § 2401(a)*. See *Loudner v. United States, 108 F.3d 896, 901 (8th Cir.1997)* (holding that the Indian plaintiffs, as beneficiaries of the trust, were under a lessened duty to discover their claims against the United States as trustee for statute of limitations purposes under *28 U.S.C. § 2401(a)* because of the fiduciary relationship (citing *Manchester Band of Pomo Indians, Inc. v. United States, 363 F. Supp. 1238 (N.D. Cal.1973))).*

*Id. at 45 n.26.* The Court will now address these issues.

C. Statute of Limitations

Because plaintiffs have alleged claims for relief against the United States, their claims are barred by the statute of limitations if they were not brought within six years after their right of action accrued. The key issue thus becomes whether plaintiffs' claims have "accrued" for purposes of *28 U.S.C. § 2401(a)*. In *Loudner v. United States, 108 F.3d 896 (8th Cir. 1997)*, the plaintiffs, who claimed [*7] to be descendants of the Sisseton-Wahpeton Sioux Tribe, learned in 1994 of the existence of a judgment fund established in 1973 to settle a class action suit brought by the successor tribes of the Sisseton-Wahpetons. When the plaintiffs brought suit under the "*Little Tucker Act*," the district court dismissed the action as barred by *28 U.S.C. § 2401(a)*. n2 The Eighth Circuit reversed, explaining that "because plaintiffs had no reason to know of the existence of the judgment fund and, consequently, of their possible claim to it, they have a strong argument that the statute of limitations did not begin to run on their claim until they received actual notice of the fund's existence in 1994." *Id. at 901*. Because Loudner involved a claim for damages under the *Little Tucker Act*, not an equitable claim for an accounting as in the instant case, its precedential value for the instant case is somewhat limited. However, the Eighth Circuit did call attention to a case involving a claim for an accounting, *Manchester Band of Pomo Indians v. United States, 363 F. Supp. 1238 (N.D. Cal. 1973)*, in support of its assertion that "because the [*8] beneficiary is entitled to rely upon the good faith and expertise of the trustee, the beneficiary's duty to discover claims against the trustee is somewhat lessened." *Id.*

n2 The "Little Tucker Act," *28 U.S.C. §*

*1346(a)(2)*, bestows jurisdiction on federal district courts for damages claims of $ 10,000 or less against the United States. Any appeals are taken to the Federal Circuit.

In Manchester Band, the plaintiffs filed suit against the Departments of the Interior and Treasury, asserting that the defendants had mismanaged funds held in trust for them. The plaintiffs sought a declaratory judgment that the defendants were liable to them for their failure to manage the funds consistently with their fiduciary duties as trustees, as well as a judgment setting out the statutory obligations of the defendants with respect to the management of the trust funds. Having concluded that "defendants here have breached their solemn fiduciary duty owed to the Band to manage properly their trust [*9] funds, and are therefore liable," the court turned to the plaintiffs' claim for an accounting for the years 1938-46 and for a declaratory judgment as to the defendants' future obligations to provide regular accountings. *Manchester Band, 363 F. Supp. at 1247*. The court found that "defendants' duty to render satisfactory accountings to the Band is a continuing duty." *Id. at 1248* (citing RESTATEMENT (SECOND) OF TRUSTS § 172). Additionally, the court rejected the defendants' contention that *28 U.S.C. § 2401(a)* barred any plaintiffs' claims that had accrued six years or more prior to filing suit, explaining that "where, as here, there is a fiduciary relationship between the parties, the universal rule is that 'a statute of limitation does not begin to run where there is a fiduciary relationship between the parties until the relationship is repudiated.' Thus, the statute does not run against a beneficiary in favor of a trustee until the trust is repudiated and the fiduciary relationship terminated." *Id. at 1249* (internal citations omitted). n3

n3 The court also found that the statute of limitations did not run because "the facts giving rise to defendants' breach of their duty were only revealed through the very incomplete discovery obtained." *Id.*

[*10]

The parallels between the factual situation in *Manchester Band* and the instant case need hardly be stated. However, defendants have urged the Court not to follow Manchester Band's treatment of *28 U.S.C. § 2401(a)*, claiming that it "states a little-held viewpoint." Defs.' Mot. at 11. To the contrary, the principle that the statute of limitations does not begin to run for a beneficiary's claim in equity to enforce the obligations of the trustee until the trustee has repudiated the beneficiary's right to the benefits of the trust is well-established in recognized treatises on trust law. The leading treatise on the law of trusts states that "the beneficiaries of an express trust are not barred by laches or by the statute of limitations from enforcing the trust merely because of lapse of time; and it is only where the trustee has repudiated the trust to the knowledge of the beneficiaries that they may become barred from enforcing the trust." AUSTIN W. SCOTT & WILLIAM F. FRATCHER, THE LAW OF TRUSTS § 481.1 (4th ed. 1987). Another well-recognized treatise makes clear that

to cause the Statute [of limitations] to begin running during the life of [*11] the trust there must be some unequivocal act in violation of the duties of the trustee or in repudiation of the trust, as where he declines to account to the beneficiary, or takes trust income for his own purposes, or sets himself up as the owner of the trust principal. Whether a given act is consistent with the continuance of the trust, or indicates an intent to repudiate the trust and claim adversely, is a question of fact for the determination of the court in an individual case.

BOGERT & BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 951, at 638-39 (rev. 2d ed. 1995).

Not only is this legal principle endorsed by the major treatises on trust law, it is also the controlling law of this Circuit. In *Kosty v. Lewis, 115 U.S. App. D.C. 343, 319 F.2d 744 (D.C. Cir. 1963)*, a retired mine worker filed suit to compel the payment of pension benefits from the United Mine Workers of America Welfare and Retirement Fund of 1950. The fund was an irrevocable trust fund created pursuant to the *Taft-Hartley Act of 1947*. *After* this Court dismissed the action, the plaintiff appealed. The D.C. Circuit reversed, finding that the trustees had acted in an arbitrary and capricious manner [*12] in denying payment of the plaintiff's retirement benefits. The Court also rejected the trustees' claim that the suit was barred by the statute of limitations, explaining that the trustees had failed to repudiate the plaintiff's right to receive the benefits of the trust:

Turning to the defense that the statute of limitations barred the present action, this Court has previously held that equity does not necessarily follow the statutory period of limitations. We will assume, however, that defendants were correct in their assertion that the applicable limit would be three years from the date a cause of action 'accrued.' The

Trustees urged that appellant's cause of action accrued in September of 1953, when his application was first turned down. This argument we cannot accept. Appellant was a beneficiary of an express trust.

Numerous courts have held that in order to start the statute of limitations running against an express trust, there must be a clear and continuing repudiation of the right to trust benefits. The administrative file, which was introduced into evidence by the Trustees themselves, is replete with documentary evidence showing that the case was still not closed [*13] in 1960, when this action was commenced. At least three different investigations were made by the Trustees into the merits of appellant's claim for a pension. One was conducted in 1957, and a final one when this action was begun. Until a defense was interposed in this case, we cannot say that appellant's claim was completely repudiated. Until that time, the Trustees were giving continuing consideration to appellant's eligibility. On these undisputed facts, this action is not barred by the statute of limitations.

*Id. at 750* (footnotes omitted). Thus, the D.C. Circuit held that the statute of limitations did not bar an equitable claim by a beneficiary against a trustee unless the trustee made a clear and continuing repudiation of the right of the beneficiary to enjoy the benefits of the trust.

The D.C. Circuit's holding in Kosty is consistent with the findings of other circuits that have construed the relevant statute of limitations in cases filed under ERISA, which federal courts have been directed to construe in light of the common law principles governing trusts. n4 For example, the Second Circuit has "consistently held that an ERISA cause of action accrues and the [*14] limitations period begins to run when a claim for benefits is clearly and unequivocally denied." *Miele v. Pension Plan of New York State Teamsters Conference Pension & Ret. Fund, 72 F. Supp. 2d 88, 98 (E.D.N.Y. 1999)*; see also *Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir. 1983)* ("A plaintiff's ERISA cause of action accrues, and the six-year limitations period begins to run, when there has been a repudiation by the beneficiary which is clear and made known to the beneficiaries") (emphasis in original) (citation and internal quotation marks omitted); *Tinley v. Gannett Co., Inc., 55 Fed. Appx. 74, 78 (3d Cir. 2003)* (same). Similarly, in *Daill v. Sheet Metal Workers' Local 73 Pension Fund, 100 F.3d 62 (7th Cir. 1996)*, a laid-off sheet metal worker filed suit under ERISA seeking the payment of pension funds that he claimed had been unlawfully denied. The Seventh Circuit stated that "the principal issue before us is when Daill's cause of action accrued, i.e., when the 10-year statute of limitations clock started ticking. Even when relying [*15] on an analogous state statute of limitations, as in this case, we look to federal common law for purposes of determining the accrual date of a cause of action under a federal statute such as ERISA." *Daill, 100 F.3d at 65.* n5 The court reversed the district court's award of summary judgment for the plaintiff, explaining that "the interests of pension funds and plan participants are better served by the consistent treatment of any claim or application for pension benefits so that a cause of action accrues upon a clear and unequivocal repudiation of rights under the pension plan which has been made known to the beneficiary." *Id. at 66.*

n4 ERISA is the Employee Retirement Income Security Act of 1974, *29 U.S.C. § § 1101, et seq.* For the Supreme Court's mandate to construe ERISA based on common law principles governing trusts, see *Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989).*

n5 The court looked to the analogous state statute of limitations because the plaintiff had sought relief under *29 U.S.C. § 1132(a)(1)(B)*, authorizing civil actions to be brought by ERISA participants to recover benefits due to the participant under the plan. In such cases, courts are directed to apply the most analogous state limitations statute. By contrast, actions commenced under § 1132(a)(3) "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or to obtain other equitable relief to redress such violations or to enforce any provisions of this subchapter or the terms of the plan" are governed by the six-year statute of limitations found in § 1113.

[*16]

None of the case law cited by defendants mandates a contrary conclusion by this Court. First, the cases cited from state courts are wholly concerned with the construction of state trust law, and therefore are not binding on this Court. Second, the cases that defendants cite that were brought under the *Tucker Act* or the *Little Tucker Act* are not on point because they involve claims for damages, not equitable claims for an accounting. n6 As this Court has previously indicated, the rules governing these two types of cases are not interchangeable. See *Cobell, 30 F. Supp. 2d at 40* ("Case law has long recognized the distinction between an action at law for damages-which are

intended to provide a victim with monetary compensation for an injury to his person, property, or reputation-and an equitable action for specific relief-which may include an order providing for the recovery of specific monies.") (quoting *Bowen v. Massachusetts, 487 U.S. 879, 893, 101 L. Ed. 2d 749, 108 S. Ct. 2722 (1988))* (internal punctuation omitted). None of these cases undermine the principle that the statute of limitations does not commence running for a beneficiary's equitable [*17] claim to enforce the obligations of the trustee until the trustee has repudiated the beneficiary's right to the benefits of the trust. It is true that the Federal Circuit appears to have adopted an exception to the rule that the statute of limitations does not run unless the trustee has repudiated the trust's existence in cases involving claims for damages that allege nonfeasance or misfeasance on the part of the trustee. See, e.g., *Cherokee Nation of Oklahoma v. United States, 21 Cl. Ct. 565, 571 (1990)*. Because this unwarranted "exception" runs against the grain of fundamental trust law principles, however, it has apparently not been adopted in any other Circuit, and this Court will not do so now.

n6 The *Tucker Act, 28 U.S.C. § 1491*, bestows exclusive jurisdiction upon the Court of Federal Claims over non-tort claims for damages against the United States for $ 10,000 or more. Appeals from the Court of Federal Claims proceed to the Federal Circuit.

Third, and finally, [*18] none of the federal cases cited by defendants involving claims based in equity mandate a contrary conclusion by this Court. In *Gruby v. Brady, 838 F. Supp. 820, 830-32 (S.D.N.Y. 1993)*, the trustees of a pension fund proposed increases in monthly pension benefits in 1973, 1980, 1983, and 1986, without informing the plaintiffs that the fund was experiencing financial difficulties. In response to plaintiffs' ERISA claims for breach of fiduciary duty, the trustees moved to dismiss, asserting that the statute of limitations barred any such claims to the extent that they were based on payment increases that were made before 1986. The court first explained that "whether any of plaintiffs' claims are time-barred depends on whether the Trustee-Defendants engaged in one 'continuous' violation or separate, 'repeated' breaches of duty." *Id. at 830-31*. Because the court concluded that each of the payment increases gave rise to separate causes of action for breach of fiduciary duty, it barred those causes of action that occurred prior to May 27, 1986. By contrast, in the present action, plaintiffs are not alleging that they have made a series of individual requests [*19] for accountings or transaction reports, and that such requests have been denied. Rather, when plaintiffs commenced the present suit, they sought a declaratory judgment of defendants' fiduciary obligations, including a finding that defendants were required to provide a complete historical accounting of the IIM accounts, because defendants have never conducted such an accounting during the life of the IIM trust. The situation in *Gruby* is therefore inapposite to the present situation. If the Court were to adopt the dichotomy used by the Gruby court, it would conclude that defendants have engaged in a single continuous violation of their fiduciary duties rather than separate, repeated breaches of duty, and therefore are not entitled to summary judgment on statute of limitations grounds.

Nor does *Littlewolf v. Hodel, 681 F. Supp. 929 (D.D.C. 1988)*, undermine the Court's conclusion. The issue presented in that case was whether the statute of limitations in the *White Earth Reservation Land Settlement Act of 1985* was "unreasonable" for purposes of the *Due Process Clause of the Fifth Amendment*, not whether the United States, as trustee, was required to repudiate the [*20] existence of the trust before the applicable statute of limitations would run. And *Adams v. Hinchman, 332 U.S. App. D.C. 98, 154 F.3d 420 (D.C. Cir. 1998)*, involved neither trust principles nor claims for breach of fiduciary duty, but rather claims for back pay and overtime by federal employees. Nothing in the dicta cited by defendants from that case suggests that the D.C. Circuit was addressing anything but claims for back pay and overtime.

Based on the evidence presented in defendants' motion, including the statements of material fact alleged by defendants to be undisputed, the Court finds that defendants have neither repudiated the existence of the IIM trust nor repudiated plaintiffs' right to enjoy the benefits of the trust. Instead, defendants have consistently chosen the coward's route by failing to provide the IIM beneficiaries with the information that the beneficiaries were entitled to by law, while simultaneously insisting that they were fully complying with their fiduciary obligations to the beneficiaries. Having failed to persuade Congress to pass legislation that would cut off plaintiffs' claims with respect to all transactions that occurred prior to [*21] October 1, 1984, defendants presently invite the Court to make a ruling to the same effect. The Court declines defendants' invitation. Such a construction of the statute of limitations would not only proceed down a path that Congress expressly rejected, it would also undermine the mandate of the D.C. Circuit's February 23, 2001 opinion in this case. Responding to the assertion that plaintiffs did not have a judicially-enforceable right to a complete historical

accounting, the D.C. Circuit stated:

Contrary to appellants' claims, *Section 102 of the 1994 Act* makes clear that the Interior Secretary owes IIM trust beneficiaries an accounting for "all funds held in trust by the United States for the benefit of an Indian tribe or an individual Indian which are deposited or invested pursuant to the Act of June 24, 1938." *25 U.S.C. § 4011(a)* (emphasis added). "All funds" means all funds, irrespective of when they were deposited (or at least so long as they were deposited after the *Act of June 24, 1938*). Therefore, the 1994 Act reaffirms the government's preexisting fiduciary duty to perform a complete historical accounting of trust fund assets. ... **[*22]**

Appellants never explain how one can give a fair and accurate accounting of all accounts without first reconciling the accounts, taking into account past deposits, withdrawals, and accruals. Indeed, the government's own expert acknowledged that one could not determine an accurate account balance without confirming historical account balances.

*Cobell v. Norton, 345 U.S. App. D.C. 141, 240 F.3d 1081, 1102 (D.C. Cir. 2001)* (emphasis in original). "All funds" still means all funds, regardless of when they were deposited. Defendants' arguments to the contrary simply provide further evidence of their craven hypocrisy: while insisting to the public that they are committed to reforming the Indian trust system, they are simultaneously doing everything in their power to dodge the trust responsibilities that have been bestowed upon them, and that both Congress and the courts have spelled out for them.

In sum, defendants have failed to provide credible evidence that, if uncontroverted, would entitle them to a directed verdict at trial that the relevant statute of limitations, *28 U.S.C. § 2401(a)*, bars any claims by plaintiffs [*23] for an accounting of IIM balances or transactions prior to October 1, 1984. Defendants have therefore failed to satisfy their burden of production on this issue, and the

Court will deny their motion for partial summary judgment. n7

n7 Because the Court finds that plaintiffs' claims for an accounting for transactions before October 1, 1984 have not accrued, for purposes of *28 U.S.C. § 2401(a)*, it will be unnecessary to make any determination on the issues of equitable tolling and fraudulent concealment. The Court does note, however, that even if defendants had demonstrated that the claims in question had accrued prior to that date, plaintiffs have nevertheless presented solid arguments that the doctrines of equitable tolling and fraudulent concealment would prevent the application of the statute of limitations to bar claims that accrued before October 1, 1984.

Because these two doctrines are sometimes confused, it may be useful to provide a brief explanation of each doctrine. The doctrine of equitable tolling permits a plaintiff to avoid the bar of the limitations period if, despite all due diligence, he is unable to obtain vital information bearing on the existence of his claim. *Currier v. Radio Free Europe / Radio Liberty, Inc., 333 U.S. App. D.C. 50, 159 F.3d 1363, 1367 (D.C. Cir. 1998)*. By contrast, to invoke the fraudulent concealment doctrine, a moving party must demonstrate (1) that the opposing party engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing and (2) that the moving party was not placed on actual or constructive notice of that evidence, despite (3) its exercise of diligence. *Foltz v. U.S. News & World Report, Inc., 663 F. Supp. 1494, 1537 (D.D.C. 1987)*, aff'd, *275 U.S. App. D.C. 145, 865 F.2d 364 (D.C. Cir. 1987)*. The factual record in this case - including the facts alleged in defendants' summary judgment motion - demonstrates that defendants have engaged in a continuing effort to conceal relevant evidence of their mismanagement of the IIM trust, despite plaintiffs' numerous discovery requests for such information. Because of this repeated pattern of deception, even if plaintiffs' claims for an accounting for transactions prior to October 1, 1984 had accrued before that date, plaintiffs would probably be able to invoke either the equitable tolling doctrine or fraudulent concealment doctrine to avoid the running of the statute of limitations contained in *28 U.S.C. § 2401(a)*.

**[*24]**

D. Laches

Defendants also seek partial summary judgment that the laches doctrine bars plaintiffs' claims for an accounting of transactions that occurred before October 1, 1984. The equitable doctrine of laches applies in situations in which a plaintiff has unfairly delayed in bringing an action, resulting in prejudice to the defendant. *CarrAmerica Realty Corp. v. Kaidanow, 321 F.3d 165, 171 (D.C. Cir.*

*2003)*. The rationale for this doctrine is that "as claims become increasingly stale, pertinent evidence becomes lost; equitable boundaries blur as defendants invest capital and labor into their claimed property; and plaintiffs gain the unfair advantage of hindsight, while defendants suffer the disadvantage of an uncertain future outcome." *Id.* (citation omitted).

In its November 5, 1999 memorandum opinion, this Court denied defendants' motion to dismiss based on the laches doctrine, explaining that "in general, the time period for a laches analysis cannot begin to run until a repudiation of the trust has occurred and the plaintiffs have actual notice of it." *Cobell, 30 F. Supp. 2d at 45* (citing BOGERT & BOGERT, THE LAW OF TRUSTS AND TRUSTEES § **[*25]** 964, at 73 (rev. 2d ed.1985)). The Court explained, however, that defendants were free to reintroduce the laches argument at the summary judgment stage. As noted above, defendants have failed to demonstrate that a repudiation of the trust has occurred. Therefore, the Court will deny defendants' motion for partial summary judgment that the doctrine of laches bars plaintiffs' claims for an accounting with respect to transactions that occurred before October 1, 1984.

## III. CONCLUSION

Having examined the evidence presented by defendants in their motion for partial summary judgment, the Court concludes that defendants have failed to present evidence that, if uncontroverted, would entitle defendants to a directed verdict that the statute of limitations or the laches doctrine bars plaintiffs' claims for an accounting of balances or transactions before October 1, 1984. Therefore, defendants have failed to satisfy their burden of production, and the Court will deny their motion for partial summary judgment. It is therefore

ORDERED that defendants' motion for partial summary judgment regarding the statute of limitations and laches [1781-1] be, and hereby is, DENIED.

SO ORDERED. **[*26]**

Royce C. Lamberth

United States District Judge

# Exhibit J

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JUL 21 2003
U.S. COURT OF FEDERAL CLAIMS

THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, Plaintiff,

v.

THE UNITED STATES OF AMERICA, Defendant.

No. 00-169L

Judge Emily C. Hewitt

by leave of the Judge

**PLAINTIFF OSAGE TRIBE'S OPPOSITION TO MOTION OF INDIVIDUAL OSAGES TO FILE MEMORANDUM BRIEF *AMICUS CURIAE***

Plaintiff Osage Tribe opposes the Motion of the Undersigned Members of the Osage Tribe to File Memorandum Brief *Amicus Curiae* Regarding Defendant's Motion to Dismiss (hereinafter "Brickell Motion") filed by Mr. Bradley Brickell, former counsel in this case for the Osage Tribe, on June 30, 2003. To the extent that the six individuals seek to establish that they can participate in future proceedings in this case as *amicus curiae*, the Osage Tribe also opposes such effort. For the reasons set forth below, the Osage Tribe respectfully requests that the Court deny the individuals' motion.

As the individuals note, "submissions by amicus curiae are more frequently found in an appellate setting . . . ."[1] Also, when a case is at the trial level, "where issues of fact as well as law predominate, the aid of *amicus curiae* may be less appropriate than at the appellate level where such participation has become standard procedure."[2]

---

[1] Brickell Motion, p.1.

[2] *Yip v. Pagano,* 606 F. Supp. 1566, 1568 (D. N.J. 1985), *aff'd*, 782 F.2d 1033 (3rd Cir. 1985).



JdS 110

Further, there "is no right to file an *amicus* brief in this court," and "the decision whether to allow participation by *amici curiae* is left entirely to the discretion of the court."[3]

Although the Court's rules of procedure do not address the participation of *amicus curiae*, this Court has stated that perhaps the most important consideration in determining whether to allow participation by *amicus* is whether that participation will be useful to the Court and not simply repeat the assertions already made by the parties.[4] Additionally, the Court has considered five factors in deciding whether to allow participation by *amicus curiae*: (1) opposition of the parties, (2) interest of the movants, (3) partisanship, (4) adequacy of representation, and (5) timeliness.[5] These factors require the Court to deny the six individuals' motion for leave to participate as *amicus curiae.*

Participation of the six individuals is not useful to the Court. To allow *amicus curiae*, the Court must be "persuaded that participation by the amicus will be useful to it, as contrasted with simply strengthening the assertions of one party."[6] The movants are six individual Osages who do not claim to represent interests of any persons except themselves and are not uniquely situated in any way. Nor do they even offer a minority view that differs from the positions of the Tribe. The individuals simply seek to participate as *amicus curiae* in order to advise the Court of a recent federal district court decision rendered in *Cobell v. Norton*, No. 96-CV-1285 (D.D.C. filed June 10, 1996), a

---

[3] *Fluor Corp. & Affiliates v. United States*, 35 Fed. Cl. 284, 285 (1996) (*citing American Satellite Co. v. United States*, 22 Cl. Ct. 547, 549 (1991)).

[4] *American Satellite Co. v. United States*, 22 Cl. Ct. 547, 549 (1991).

[5] *Fluor Corp. & Affil.*, 35 Fed. Cl. at 285.

[6] *American Satellite*, 22 Cl. Ct. at 549.

proceeding this Court is well aware of. Furthermore, the individuals seek to support assertions the Tribe has already made.

**Opposition of the Parties.** As stated above, the Osage Tribe opposes the participation of the individuals in this case as *amicus curiae*. The Court should accord the Osage Tribe's opposition particular weight because it is the entity that the Brickell Motion purports to support.[7]

**Interests of the Individuals.** The six individuals state that they "are vitally interested in the issues before this Court . . . ."[8] The Tribe and its other members share the six individuals' "interest" in this case. Yet high curiosity in the issues before this Court does not create an avenue for participation as *amicus*. The individuals do not allege rights specific to them have been impacted. The Osage Tribe represents its members in this case.

**Partisanship.** Trial courts have frowned on participation of *amicus* that " 'simply allows the amicus to litigate its own views' or present 'its version of the facts.'"[9] As in *Fluor*, the six individuals make no pretense at impartiality and state that they want to file an *amicus curiae* brief "in support of Plaintiff's response to the Defendant's Motion to Dismiss." The Osage Tribe has not sought such support and is concerned that Mr. Brickell's motion is a pretense for remaining actively involved in this matter for the sole purpose of litigating his own views or version of the facts.

---

[7] *Cf. Fluor*, 35 Fed. Cl. at 285 (holding that opposition of parties against the filing of an *amicus* brief "should be given great weight by a court").

[8] Brickell Motion, p.1.

[9] *Fluor*, 35 Fed. Cl. at 286.

Further, although the individuals express their intent to support the Osage Tribe's response to the Federal Government's Motion to Dismiss, their request that the Court allow individual members of the Osage Tribe to speak directly to the Court undermines the Tribe's position that it represents all headright owners as *parens patriae* insofar as the interest of those individuals are involved in this proceeding. Consequently, the individuals and the Tribe's former counsel are seeking to litigate their own views of this case instead of providing the Court with useful information to illuminate legal concepts involved in the proceeding.

**Adequacy of Representation.** This Court has allowed *amicus* filings when the Court is "concerned that one of the parties is not interested in or capable of fully presenting one side of the argument."[10] The six individuals do not assert that the Osage Tribe is inadequately represented in this case. Further, a substantial portion of the briefings and oral arguments conducted regarding the Federal Government's Motion to Dismiss were spent on the statute of limitations issue, which is the subject of the Brickell Motion.[11]

In conclusion, Mr. Brickell's filing of this motion on behalf of six individual Osages is a serious matter. Mr. Brickell did not gain or even seek the consent of the Osage Tribe, his former client, to file on behalf of any group of Osages.[12] In fact, Mr. Brickell filed his motion after Principal Chief Jim Gray on behalf of the Osage Tribe sent a June 3, 2003 letter to Mr. Brickell demanding that he "immediately cease any

---

[10] *Fluor*, 35 Fed. Cl. at 286.

[11] *See id.* (noting that "the exact issue which movants want to see addressed" was presently before the court).

[12] See ABA Model Rules of Professional Conduct 1.9(a) and (c).

communications regarding Osage Tribe matters with anyone outside of the current elected Osage leadership and those to whom we provide written authorization for you communicate with . . . ."[13] Instead of complying with the Osage Tribe's demand, Mr. Brickell contacted individual Osages and filed the instant motion on their behalf.[14] Even more inappropriately, Mr. Brickell's attempt to represent Osage individuals and facilitate their participation in this case raises grave conflict of interest and other ethical concerns. The Court should not condone such conduct by allowing the individuals' or Mr. Brickell's participation as *amicus curiae*.

For all the reasons stated above, Plaintiff Osage Tribe requests that the Court deny the Brickell Motion.

Dated: July 17, 2003

Respectfully submitted,

Wilson K. Pipestem
Attorney-of-Record
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone (202) 419-3526
Facsimile (202) 659-4931

---

13 Exh. A, p. 2.

14 This communication raises serious questions as to whether privileged communications about this case between the Osage Tribe and Mr. Brickell as the Tribe's former counsel have been compromised. See ABA Model Rules of Professional Conduct 1.9 (c) and 1.6 (a).

# EXHIBIT A

**JIM GRAY**
Principal Chief

**KENNETH H. BIGHORSE**
Assistant Principal Chief

**MEMBERS OF COUNCIL**
MARK FREEMAN, Jr.
HARRY ROY RED EAGLE
CAMILLE W. PANGBURN
JODIE SATEPAUHOODLE
JERRY SHAW
PAUL R. STABLER
DUDLEY WHITEHORN
JOHN W. WILLIAMS

**OSAGE TRIBAL COUNCIL**

June 3, 2003

**VIA FACSIMILE AND OVERNIGHT MAIL**

Bradley Brickell, Esq.
Brickell & Associates, P.L.C.
950 Hightower Building
105 North Hudson
Oklahoma City, OK 73102

**RE: Osage Tribe Matters**

Dear Mr. Brickell:

On behalf of the Osage Tribe, I write to express our concerns about your professional conduct while representing the Osage Tribe, your failure to release the Osage Tribe's documents, and your repeated demands for more money.

With regard to your former representation of the Osage Tribe, we have serious concerns about your professional judgment and conduct. As you know, the Osage leadership was dismayed when you chose to insert yourself into the political affairs of the Osage Tribe during the last election. We made it clear to you, in a face-to-face meeting with the Chiefs and Council, that it was highly inappropriate for you to do so as a non-Osage attorney representing the Tribe, not just one person or a group of Osage who happened to have been in the leadership at one time. From our recollection, you agreed that this was inappropriate.

Because of this discussion, we were particularly surprised to learn that you had filed a motion to intervene in the Osage Tribe's trust funds case on behalf of Charles Tillman, Joe Trumbly, John Essley, and others in February of this year. You did this without first obtaining the consent of or even consulting with the elected leadership of the Osage Tribe. Your action not only raises serious concerns about your judgment but also your ethical conduct. While we understand that this motion was withdrawn, your conduct raises serious questions about conflicts of interest, your professional loyalty to

the Osage Tribe, your compromise of the attorney-client privilege, and your misunderstanding of the obligations of an attorney representing a tribal organization.

More importantly, your attempt to have a group intervene as a class action in the Osage Tribe's case may have undermined the Osage Tribe's position as to its standing to sue before the court. As you know, the United States has sought to dismiss the Osage Tribe's claims, alleging that the Tribe cannot represent the interests of the Osage shareholders. To alleviate further harm, I insist that you immediately cease any communications regarding Osage Tribe matters with anyone outside of the current elected Osage leadership and those to whom we provide written authorization for you communicate with, which includes only Geoffrey Standing Bear, Wilson Pipestem, and Don Pongrace.

In addition, please provide the following information immediately:

1. Your motion to withdraw the motion to intervene filed on March 14, 2003, by fax to Wilson Pipestem;
2. Any written, electronic, or other form of recorded communication regarding Osage Tribe matters to or from you or anyone from your current or former law firm to or from any person or entity, including former Osage Tribal Council members, shareholders of the Osage Tribe, or others, by fax to me, Geoffrey Standing Bear, and Wilson Pipestem;
3. A listing of the former Osage elected officials, Osage headright holders, and others related to the filing of your motion to intervene with whom you or anyone from your current for former firm has orally communicated regarding Osage matters, when you communicated with them, and the content of the communication, with detail and specificity, by fax to Geoffrey Standing Bear and Wilson Pipestem.

With regard to the Tribe's documents, I once again demand that you provide all of the Osage Tribe's documents related to your former representation of the Tribe to Wilson Pipestem, our counsel on matters currently before the U.S. Court of Federal Claims. Mr. Pipestem and Don Pongrace of Akin, Gump, Strauss, Hauer & Feld visited your office in person and requested the Osage Tribe's records on our behalf, which you have refused to provide. Holding hostage the Osage Tribe's records for payment is not only an unseemly practice but also one that is harming the Osage Tribe's ability to properly prosecute its claims in both the trust funds and highest posted price cases.

And, finally, with regard to your continuing demands for more money, we have determined that the Osage Tribe owes no more money to you or your firm and has no intent to provide such payment. On November 6, 2002, the Osage Tribal Council voted unanimously to discharge you and firm from representing the Osage Tribe by Resolution

June 3, 2003
Page 3

31-34. In that resolution, we agreed to pay a final invoice that you were to submit, which you did, and the Tribe paid it. Yet after we passed that resolution and I communicated by the attached letter our decision to discharge you, you continued to hold yourself out as representing the Osage Tribe and failed to take appropriate steps to end your representation. And you continued to bill the Tribe for your time and other unauthorized activity.

Based on the concerns outlined above and a review of your submitted invoices, the Osage Tribe will not be providing any additional payments to your firm.

Sincerely,

Jim Gray
Principal Chief

CC: Assistant Chief Bighorse
Osage Tribal Council members
Geoffrey Standing Bear, Esq.
Wilson K. Pipestem, Esq.
Don Pongrace, Esq.

## CERTIFICATE OF SERVICE

I, Wilson K. Pipestem, certify that on July 17, 2003, I mailed by first class mail a copy of Plaintiff Osage Tribe's Opposition to Motion to File Memorandum Brief *Amicus Curiae* Regarding Defendant's Motion to Dismiss to the following Counsel of Record for Defendant:

Rollin Anthony Rogers
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Ben Franklin Station
Washington, DC 20044-0663

I have also mailed by first class mail a copy of the afore-mentioned document to:

Bradley Brickell
Brickell & Associates
950 Hightower Building
105 North Hudson
Oklahoma City, OK 73102

Wilson K. Pipestem

Docket No. 00-169L

**UNITED STATES COURT OF FEDERAL CLAIMS**

**MEMORANDUM**

TO: JUDGE Hewitt
FROM: CLERK'S OFFICE

The attached was received on 7-17-03
and the following defect(s) is/are noted:

1. ____ Untimely, due to be filed by ______________ [Rule 7.1]

2. ____ Proof of service: [Rule 5.1]
   ____ is missing; ____ is not signed and/or dated;
   ____ shows service on wrong attorney or of wrong item;
   ____ is not attached to each document or copy

3. ____ Not signed by the attorney of record [Rules 11 and 83.1(c)(2)]

4. ____ Does not comply with the provisions of Rule:

| | | |
|---|---|---|
| ____ | 5.2(a)(1)(A) | Re: table of contents or index to appendix is missing (or in wrong location) |
| ____ | 5.2(a)(1)(G) | Re: index to appendix is to be located in both the front of the brief and in front of the appendix |
| ____ | 5.2(b) | Re: length of briefs or memorandum |
| ____ | 5.3(c) | Re: binding |
| ____ | 5.3(d) | Re: original/copies missing |
| ____ | 5.3(g) | Re: Judge's name on all filings |
| ____ | 24(c) | Re: motion to be accompanied by a pleading |
| ____ | 7(b) | Re: brief, supporting memorandum, affidavits shall be attached to motion |
| ____ | 56(h) | Re: proposed findings and/or response to proposed findings is missing or not a separate document |
| ____ | 56.1(b) | Re: statement of facts and/or counter-statement of facts is missing or not a separate document |
| ____ | 77.1(a) | Re: improper use of the night box |
| ____ | 83.1(c)(1) | Re: one attorney for a party; attorney to be an individual not a firm |
| ____ | ______ | Re: ______________________________ |

5. ____ Original affidavit(s)/declaration(s) is/are missing
6. ✓ No provision in the Rules for the filing of this item
7. ____ Moot.

Debbie
Deputy Clerk

To: **CLERK'S OFFICE**

**THE ATTACHED ITEM IS TO BE:**

_____ Filed by my leave, **OR**,

**PURSUANT TO THE ACCOMPANYING ORDER:**

✓ Filed by leave of the judge and party ~~is being notified for correction of defect(s) as to future filings.~~ because prior motion granted in error

_____ Returned to party for correction of defects, with the document to be filed by leave of the judge, if it is out of time, with opposing counsel's time to respond to run from the date of re-service.

_____ Returned to party for correction of defect(s).

[signature]
Signature

7/21/03
Date

# Exhibit K

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JUL 29 2003
U.S. COURT OF FEDERAL CLAIMS

THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA )

Plaintiff, )

v. ) No. 00-169
) Judge Emily C. Hewitt

THE UNITED STATES OF AMERICA )

Defendant. )

## MOTION TO PLACE EXHIBIT UNDER SEAL

COME NOW the undersigned counsel for the proposed amicus parties and request that the following described document (Exhibit) be placed under seal and marked confidential and ordered not to be revealed to other non-parties without obtaining leave of the court, to-wit:

*Exhibit A letter attached to Plaintiff's July 17, 2003 Response and Objection.*

In support of this request, the undersigned parties show the Court as follows:

1. On or about July 17, the Plaintiff filed a Response in Opposition to proposed Amicus briefing. The Plaintiff attached to their filing as Exhibit "A" a letter which has no relevance to the issues pending before this Court.

2. This exhibit further contains numerous statements which are not supported factually and, at a minimum, are in dispute. The dispute illustrated by the Exhibit "A" letter is (a) not currently an issue before this Court, (b) not a matter properly raised at the present time, and (c) not one for the public record.



JW
113

3. A "point counterpoint" response would not be productive to the resolution of the matters currently pending before this Court.

WHEREFORE, in consideration of the premises, the undersigned parties request that the Court place the Exhibit "A" letter attached to the July 17, 2003 Response of the Plaintiff under seal and marked confidential, not to be opened, viewed or copied without further order of the Court.

The undersigned is authorized to state that the Defendant has no objection to this request, subject to such other procedure/provision that the Court deems necessary to impose.

Respectfully submitted,

BRADLEY D. BRICKELL OBA 1117
CHRISTINE R. FRITZE OBA 13942
Brickell & Associates, P.L.C
950 Hightower Building
105 North Hudson
Oklahoma City, OK 73102
Telephone 405-236-0008
Facsimile 405-236-0013

**ATTORNEY FOR PROPOSED AMICUS CURIAE, CHARLES O. TILLMAN, JR., JOSEPH ANDREW TRUMBLY, ELIZABETH BARTNEK, PATRICIA L. BEASLEY, RUSSELL WARRIOR, JR. and JOHN P. ESSLEY**

**CERTIFICATE OF MAILING**

I hereby certify that on the 24th day of July, 2003, I mailed, by U.S. Mail, a true and correct copy of the above and foregoing, postage pre-paid to the following:

R. Anthony Rogers, Esquire
General Litigation Section
Environmental and Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663

Wilson Pipestem, Esq.
Pipestem Law Firm
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036

BRADLEY D. BRICKELL

F:\Clients\Osage\Trust\Pleadings\Motion to Place Ex under Seal.wpd

# Exhibit L

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RECEIVED
OVER THE COUNTER
AUG 1 1 2003
THE OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

No. 00-169L

Judge Emily C. Hewitt

**PLAINTIFF OSAGE TRIBE'S RESPONSE TO FORMER COUNSEL'S MOTION TO PLACE EXHIBIT UNDER SEAL**

Bradley D. Brickell and Christine R. Fritze (hereinafter "Former Counsel"), whose previous representation of Plaintiff Osage Tribe was terminated by the Tribe and who later sought participation in this case as *amicus curiae* on behalf of individual Osages[1], ask the Court in their undated motion filed on July 29, 2003, to place under seal the June 3, 2003 letter from Principal Chief Jim Gray to Mr. Brickell (hereinafter "Chief Gray's letter").[2] Without citing any law or a single fact in support of their motion, Former Counsel ask that the Court provide the extraordinary relief of sealing a document outside of discovery that is already a part of the Court's public record.

For the reasons set forth below, the Osage Tribe opposes the motion of Former Counsel.

---

[1] The Court in an Order dated July 28, 2003 denied Former Counsel's Motion of the Undersigned Members of the Osage Tribe to File Memorandum Brief *Amicus Curiae* Regarding Defendant's Motion to Dismiss (hereinafter "Motion for Amicus") filed on June 30, 2003.

[2] The letter is Exhibit A to Plaintiff Osage Tribe's July 17, 2003 Opposition to Former Counsel's Motion for Amicus (hereinafter "Opposition").

## I. Former Counsel have not shown good cause for sealing this document

The Rules of the Court do not provide for general motions to place documents under seal. In this absence, the Osage Tribe looks for guidance from Rule 26(c) of the Rules for the U.S. Court of Federal Claims ("RCFC"), which provides for the entry of protective orders in discovery when "good cause" is shown to protect "a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[3] Former Counsel bear the burden of establishing good cause in support of their motion to place Chief Gray's letter under seal,[4] and good cause must be premised on "factual data, not the unsupported contentions and conclusions of counsel."[5] None of the reasons proffered by Former Counsel – (1) irrelevance, (2) disputed factual statements, and (3) "unproductivity" of a "point counterpoint" response to Chief Gray's letter[6] – evidence good cause for placing Chief Gray's letter under seal. Former Counsel fail to provide any facts that would meet this or any other reasonable standard, only offering bare conclusory statements as support.

Rule 26 also requires the person seeking to have a document protected to provide "a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action . . . ." Former counsel has not done so.

---

3 RCFC 26(c).

4 *See Standard Space Platforms Corp. v. United States*, 35 Fed. Cl. 505, 507 (1996) (stating that a party moving for a protective order bears the burden of establishing "good cause.")

5 *Wall Industries, Inc. v. United States*, 5 Cl. Ct. 485, 487 (1984).

6 Former Counsel's Motion to Place Exhibit Under Seal, p. 2.

## II. Contrary to Former Counsel's assertions, Chief Gray's letter is relevant to the Osage Tribe's opposition to Former Counsel's Motion for Amicus

Former Counsel's Motion for Amicus placed squarely before this Court the issue of whether individual Osages should be allowed to participate in this action as *amicus curiae* with Former Counsel facilitating their participation in this case. In arguing that the Motion for Amicus should be denied, the Osage Tribe expressed serious concern about the propriety of Former Counsel representing Osage individuals and facilitating their participation in this case after the Tribe had expressly directed Former Counsel not to communicate with others regarding Osage Tribe matters.[7] Chief Gray's letter provides relevant evidence of the Tribe's direction to Former Counsel to "immediately cease any communications regarding Osage Tribe matters with anyone outside of the current elected Osage leadership and those to whom we provide written authorization for you communicate with . . . ."[8] Former Counsel have specific knowledge as to the Tribe's legal strategy that is protected by the attorney-client privilege.

Whether Former Counsel dispute statements in Chief Gray's letter is irrelevant. The letter was attached to make clear that Former Counsel were aware of the Tribe's views and concerns when they filed the Motion for Amicus.

Additionally, opposition of the parties and the interests of the movants are two factors this Court considers in determining whether to allow participation as *amicus curiae*.[9] Chief Gray's letter supports the Tribe's opposition to any effort by Former

---

7 Opposition, p. 4-5.

8 *Id.* at Exh. A, p. 2.

9 *Id.* at Exh. A, p. 3.

Counsel to participate in this case and informs Former Counsel of the Tribe's concerns that his actions may undermine the Tribe's argument before the Court that the Tribe represents the interests of the headright holders.[10]

**III. Placing Chief Gray's letter under seal would burden the Osage Tribe's efforts in other forums**

Placing Chief Gray's letter under seal would unduly burden the efforts the Tribe may pursue before other tribunals to seek redress against Former Counsel for failure to turn over the Tribe's documents and to seek disciplinary action against Former Counsel for ethical breaches.[11]

For the above stated reasons, Plaintiff Osage Tribe requests that the Court deny the Former Counsel's Motion.

Date: August 11, 2003

Respectfully submitted,

Wilson K. Pipestem
Attorney-of-Record
Pipestem Law Firm, P.C.
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036
Telephone (202) 419-3526
Facsimile (202) 659-4931

10 *Id.*

11 *See id.* at p. 5, n. 14.

## CERTIFICATE OF SERVICE

I, Wilson K. Pipestem, certify that on August 11, 2003, I mailed by first class mail a copy of Plaintiff Osage Tribe's Response to Former Counsel's Motion to File Under Seal to the following Attorney of Record for Defendant:

Rollin Anthony Rogers, Esq.
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Ben Franklin Station
Washington, DC 20044-0663

And to the movants:

Bradley D. Brickell, Esq.
Christine R. Fritze, Esq.
Brickell & Associates, P.L.C.
950 Hightower Building
105 North Hudson
Oklahoma City, OK 73102.

Wilson K. Pipestem

# Exhibit M

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00-169 |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA | ) | |
| Defendant. | ) | |

**REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO PLACE EXHIBIT UNDER SEAL**

This Court has previously indicated[1] that it is, at least, premature for this Court to become involved in any issue concerning whether fees and/or costs may be awardable to the Plaintiff's former counsel, Bradley D. Brickell ("Brickell"). However, Plaintiff's August 11, 2003 response to Brickell's subject Motion seems intent on involving this Court in that very circumstance.

Plaintiff's response is misplaced as it regards RCFC 26, which concerns discovery issues. The subject matter is not a discovery issue. Although not directly applicable, RCFC Appendix C, § VI (16) provides insight to the Court's ability to issue protective orders.

Plaintiff's current response imprudently[2] refers to "ethical breaches" without any foundation. To clarify the record, the undersigned counsel has already tendered an agreement for signature to the

[1]Telephonic hearing also attended by the current attorney for the Plaintiff.

[2]Plaintiff's new counsel also publicly claims credit for all progress made by the Plaintiff herein, to date.

new Osage Tribal council which would effectively provide a method to resolve all matters dealing with documents/files and the fees and expenses owing to Brickell, without the condition of payment of a single dime of the tens of thousands of dollars owed and long overdue.[3] Unfortunately, the agreement has yet to be executed by the council.

Again, it is not the desire or the intent of the undersigned to detract this Court from resolution of the merits of this case in the Plaintiff's favor. This was clearly demonstrated by the undersigned former counsel's zealous and untiring efforts in pursuing Plaintiff's case, until the Plaintiff's newly elected Chief and council hired their present attorney.

RELEVANCE

The correspondence at issue herein has absolutely no relevance to the merits of the pending case. The August 11, 2003 response of the Plaintiff states that the subject letter's "relevance" is to an amicus motion which this Court ruled to be moot on July 28, 2003, some 14 days before said response. The Plaintiff's stated purpose of inclusion of the subject letter in the record is to use their filings in this Court as a platform for the new council's *position* concerning Brickell's proper attorney's lien and related fees and unpaid expenses, matters not presently before this Court.

[3]Brickell's tendered proposal to resolve such issues, yet to be executed by the newly elected council, merely asks that the new council make a binding agreement to submit the issue to mediation, then, if not resolved, then to any Court of competent jurisdiction, whether this Court or another.

WHEREFORE, in consideration of the premises, the undersigned former counsel for the Osage Tribe requests that the original Motion to seal the subject June 3, 2003 correspondence be granted and for such other and further relief as the Court may deem just.

Respectfully submitted,

BRADLEY D. BRICKELL OBA 1117
Brickell & Associates, P.L.C
950 Hightower Building
105 North Hudson
Oklahoma City, OK 73102
Telephone 405-236-0008
Facsimile 405-236-0013

FORMER COUNSEL FOR PLAINTIFF

## CERTIFICATE OF MAILING

I hereby certify that on the 22nd day of August, 2003, I mailed, by U.S. Mail, a true and correct copy of the above and foregoing, postage pre-paid to the following:

R. Anthony Rogers, Esquire
General Litigation Section
Environmental and Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663

Wilson Pipestem, Esq.
Pipestem Law Firm
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036

BRADLEY D. BRICKELL