# Exhibit N

# In the United States Court of Federal Claims

No. 00-169

(Filed: August 27, 2003)

THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

ORDER

The Court has before it Motion to Place Exhibit Under Seal (pending motion) and Plaintiff Osage Tribe's Response to Former Counsel's Motion to Place Exhibit Under Seal (plaintiff's response). Based on the representations contained therein the pending motion is DENIED.

The pending motion was filed by counsel who previously represented plaintiffs in this case. See Order dated April 23, 2003 (granting substitution of counsel). The court notes that former counsel is not an attorney of record in the case as required by Rules 11 and 83.1(c)(2) of the United States Court of Federal Claims (RCFC). Neither has the court permitted former counsel to file briefing as an amicus curiae. See Order dated July 28, 2003.

Based on the representations contained in the pending motion, the court does not find good cause to place the exhibit under seal and therefore the pending motion is DENIED. Former counsel shall not file additional briefing in this case unless first granted amicus curiae status in this case or unless requested by the court.

IT IS SO ORDERED.

EMILY C. HEWITT
Judge

# Exhibit O

# In the United States Court of Federal Claims

## NOTICE

**THE OSAGE NATION**

**No. 99-550L**

**V.**

**THE UNITED STATES**

**CLERK'S OFFICE**
**Washington, D.C., March 9, 2004**

To Attorney of Record, Assistant Attorney General and Judge Mary Ellen Coster Williams:

Please take notice that in the above cause there has been filed this day, on behalf of the parties,

Transcript of proceedings (one volume) taken at Washington, D.C., on February 20, 2004.

Brian Bishop
Brian Bishop, Clerk

# UNITED STATES
# COURT OF FEDERAL CLAIMS

FILED
MAR 9 2004
U.S. COURT OF
FEDERAL CLAIMS

| | | |
|---|---|---|
| THE OSAGE NATION, Plaintiff, | ) | |
| v. | ) | Docket No.: 99-550L |
| UNITED STATES, Defendant. | ) | |

Pages: 1 through 38

Place: Washington, D.C.

Date: February 20, 2004

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C. 20005-4018
(202) 628-4888
hrc@concentric.net

ORIGINAL

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THE OSAGE NATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No.: 99-550L |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

Room No. 612
National Courts Building
717 Madison Place, N.W.
Washington, D.C.

Friday,
February 20, 2004

The parties met, pursuant to notice of the Court, at 1:09 p.m.

BEFORE: HONORABLE MARY ELLEN COSTER WILLIAMS
Judge

APPEARANCES: (Via Telephone)

For the Plaintiff:

WILSON KIRK PIPESTEM, Esquire
Pipestem Law Firm
1333 New Hampshire Avenue, N.W.
Washington, D.C.
(202) 419-3526

For the Defendant:

EDWARD J. PASSARELLI, Esquire
U.S. Department of Justice
Environmental & Natural Resources Division
P.O. Box 663
Ben Franklin Station
Washington, D.C. 20044
(202) 272-8135

APPEARANCES: (cont'd.)

For the Agency:

ALAN WOODCOCK, Esquire
U.S. Department of the Interior
Tulsa, Oklahoma

Also Present:

JERRY E. ROTHROCK, Esquire
Akin, Gump, Strauss, Hauer & Feld
Washington, D.C.

(1:09 p.m.)

THE COURT: We are on the record. This is a status call in the case of The Osage Nation v. United States, No. 99-550L. I am Judge Williams.

Let me please ask counsel to introduce themselves for the record. For the Plaintiff?

MR. PIPESTEM: Your Honor, this is Wilson Pipestem on behalf of the Osage Tribe.

THE COURT: And for the Defendant?

MR. PASSARELLI: Yes, Your Honor. This is Edward Passarelli on behalf of the United States.

Along with me is Mr. Woodcock from the Department of Interior, Field Solicitor's Office. He is the field solicitor.

THE COURT: When you say that, what do you mean by field solicitor? Is he out in the region in Oklahoma?

MR. WOODCOCK: Yes, Your Honor. I'm in Tulsa, Oklahoma. I'm the assigned agency counsel.

THE COURT: All right. Thank you for participating, Mr. Woodcock.

MR. PIPESTEM: Your Honor, this is Wilson Pipestem again. I have with me Jerry Rothrock as well.

THE COURT: And who is he with?

MR. PIPESTEM: He's here on behalf of the Osage Nation of the firm Akin, Gump, Strauss, Hauer & Feld.

THE COURT: Mr. Rothrock, you have not entered an appearance in this matter, have you?

MR. ROTHROCK: That's correct.

THE COURT: Are you going to be counsel of record for Plaintiff?

MR. PIPESTEM: No, Your Honor. This is Wilson Pipestem. I'll be counsel of record.

THE COURT: What is Mr. Rothrock's role?

MR. PIPESTEM: Akin Gump is settlement counsel to the Osage Nation.

THE COURT: What does that mean?

MR. PIPESTEM: That means that they are assisting the Nation and me with the handling of this and other cases.

THE COURT: Mr. Rothrock, would you please clarify your role? What does settlement counsel mean in terms of this litigation?

MR. ROTHROCK: I believe there are settlement negotiations going on between the parties, and I've been participating in those.

THE COURT: Do the settlement negotiations

involve this case?

MR. PIPESTEM: No, Your Honor. This is Wilson Pipestem. No, Your Honor, but there are some issues that have commonalities to them and so Mr. Rothrock has been a part of those discussions.

THE COURT: Mr. Rothrock, would you please spell your full name for the record?

MR. ROTHROCK: I'd be glad to, Your Honor. First name Jerry, J-E-R-R-Y, middle name is Eugene, E-U-G-E-N-E, and last name is Rothrock, R-O-T-H-R-O-C-K. I am a member of the bar of the Federal Claims Court.

THE COURT: Very well, Mr. Rothrock. Thank you.

Mr. Passarelli and Mr. Woodcock, do you have any objection to Mr. Rothrock participating in this conference call?

MR. PASSARELLI: Ed Passarelli, Your Honor. We have no objection.

THE COURT: Thank you very much.

All right. You're welcome then, Mr. Rothrock. Thank you for being here.

MR. ROTHROCK: Thank you very much, Your Honor.

THE COURT: Mr. Pipestem?

MR. PIPESTEM: Yes, Your Honor?

THE COURT: I have very rarely in my career as a Judge for the last 15 years seen a Plaintiff be so dilatory in a case. What is going on here?

MR. PIPESTEM: Your Honor, the Osage Nation filed this case in 1999. There was a period of time where there was a change of counsel, and I believe there was some confusion on the part of the Court through the Clerk's Office about providing notice as to actions of the Court, so I think those notices have not been provided me until just recently. In fact, the notice of a status conference went to former counsel.

THE COURT: I apologize for that. I was unaware of that. Thank you for letting us know. I'm terribly sorry.

MR. PIPESTEM: Thank you, Your Honor. I spoke to the Clerk's and your office about that, and they realized that there was a problem when I was called about the status conference scheduled for a couple of weeks ago where I was called and was completely unaware of it.

Your clerk sent me other motions, including the motion to substitute counsel, and so here we are today.

THE COURT: Now, I thought you had been counsel. You were counsel of record since May 15, 2003?

MR. PIPESTEM: I believe that's correct. Yes, Your Honor.

THE COURT: Okay. But you didn't receive anything from us until after I got the case, which was in the fall of 2003?

MR. PIPESTEM: No, Your Honor. There was a status conference at one point. I believe it was in July of last year. I have been counsel since then, but then there was a switch, and since that time I have not received notices or any other filings.

THE COURT: Okay.

MR. PIPESTEM: Now, the other thing is I sought to get a transcript of that status conference, which one is not available. We checked again this morning, which is the third time, and one is not available.

THE COURT: With whom did you check?

MR. PIPESTEM: The Clerk of the Court.

THE COURT: All right. Did you try the court reporting company?

MR. PIPESTEM: No, Your Honor, and we don't know who that is.

THE COURT: All right. I'll have the law clerk call you with the identification. We have it here obviously, and he'll call you with that.

Now let me go back to something though. It's my understanding that during the July status conference with Judge Wiese you were urged to file as expeditiously as possible an amended complaint.

MR. PIPESTEM: Yes, Your Honor. I understand. I wasn't sure about, in all candor, that that was something that we had agreed upon, and that's one reason we were seeking the transcript from the Court.

It is our view, just backing up a little bit, that there was an earlier agreement on the part of former counsel of the Osage Nation to file an amended complaint that would add the Osage Tribal Council as a party or Osage Tribal Council members as parties, under the concern expressed by the United States and the Court that this case may be one in which the Osage Tribe does not have standing to represent the interests of Osage head right holders, the head right holders being persons who have rights to receive distributions of income from the Osage mineral estate and other trust assets.

It is our serious concern that doing so

would undermine this case in a significant way.

THE COURT: Doing what, adding the tribal council members as parties?

MR. PIPESTEM: Yes, Your Honor.

THE COURT: And why is that?

MR. PIPESTEM: Because we believe and Judge Hewitt in the Osage Tribe's trust funds claim in the Court of Federal Claims has ruled on this issue that the tribe does have standing, and it would be difficult if we add any other parties besides the tribe as Plaintiffs in this case because it would presume that there is some need to add other parties, which the Osage Tribal Council may or may not be enough, but at that point we're down a road of adding all head right holders possibly as interested parties in this case.

THE COURT: How many members of the tribal council are there?

MR. PIPESTEM: There are nine members of the council I believe, as I recall.

THE COURT: All right. So as I understand your initial intention back in July of 2003 was to simply add those nine?

MR. PIPESTEM: Well, that was the Court's agreement. I think that it was an agreement between

the Court and the parties that that was a compromise or the best way to deal with the question of whether or not the tribe is a sufficient party to bring this action and has standing to bring this action.

THE COURT: Was that before or after Judge Hewitt issued her decision?

MR. PIPESTEM: I believe that was before.

THE COURT: I see.

MR. PIPESTEM: In the other case, the tribe brought its claim for trust funds, and that claim was at one time consolidated into this one. It was since broken back up, but the Court did rule that the tribe had standing to sue on its own behalf because the funds at issue, as the assets in issue in this case, are tribal in nature.

Our thought is that it would be a serious mistake to treat this case as something like a class action, even by adding the Osage Tribal Council who in fact are elected by persons of Osage blood who also have head rights, but among that group who do receive head right payments are Indians of other tribes and non-Indians, including some corporate entities. The notion that the Osage Tribal Council would be the appropriate entities to add to address the concern that the government had raised we think is absolutely

the wrong way to go.

In fact, in the case in Judge Hewitt's Court, in our discussions since her decision government attorneys at least in that case have basically conceded that that was the right decision and so our concern is that would be a big mistake in this case.

But also that while certainly it is our intent to file an amended complaint in the near future, we do not think that the existing complaint which addresses primarily the tribe's claim that the United States has failed to fulfill its duties with regard to the value of some of these leases and the price it's paid and the difference between the prices paid in the Osage Reservation contained to Cushing, Oklahoma, to west Texas intermediate and so we think that the appropriate claims are more broad than that.

Our recommendation to the Court, what we'd like to do is to file an amended complaint that broadens the claims, deal with mismanagement in a more broad way of the Osage Nation's trust assets, not including trust funds, but would allow the tribe to move forward with these claims in a more broad way that encompasses the mismanagement we think has occurred with regard to our trust assets.

THE COURT: Very well. Let me hear from the government. First of all, Mr. Passarelli, in the event that the Plaintiff's counsel doesn't go forward with the agreement that you all apparently had about joining the tribal council members, are you going to persist in moving to dismiss for lack of standing?

MR. PASSARELLI: We have seen Judge Hewitt's decision and also are aware that it's not necessarily binding on you, Your Honor. We have not made a final decision on standing. Standing is still a concern of ours and whether or not the judgment can inure to the benefit of the tribe or must inure to the benefit of individuals.

We haven't made a final decision on that, but my understanding on the agreement, however, is a little different than the perception Mr. Pipestem had. My understanding was that Plaintiff had filed a complaint originally, and the Judge had allowed a great deal of informal discovery and asked the United States to withhold any dispositive motions until there was some informal discovery such that there could be a narrowing of the case.

The Plaintiff had then filed some time ago a statement narrowing the case, and at that point in time we had indicated that that statement narrowing

the case really needed to be in the form of an amended complaint that we could then deal with either from a dispositive motion standpoint or then we would be in a position to know exactly what the claim is that we need to defend by hiring experts and other things.

Plaintiff filed a complaint. That complaint also I believe attempted to broaden it into adding individuals in almost a class action format. Plaintiff, however, chose, and this was prior counsel, after discussion to withdraw that complaint and file an amended complaint, and they had made the decision they did not need to have anyone added to that other than the tribe.

We would be making a decision after it was filed as to whether or not we needed to move to dismiss on grounds of standing or any other dispositive issues along that line, as well as other dispositive issues that we might have.

The agreement was that we were waiting for a narrowed complaint on what the focus of these claims would be, and it was stemming from the statement that narrowed the nature of the case that was filed about two years ago.

THE COURT: Now what are you going to do since he wants to broaden it?

MR. PASSARELLI: It's perplexing, Your Honor. I guess it's always perplexing when we have changes of counsel, but we thought that after an extended period of time we had narrowed the case.

If this broadens it back again, it seems to me that we've got to move dispositively to cut back the case if appropriate. At this point in time, I don't know how Mr. Pipestem intends to broaden the nature of the action, especially since it appeared that much of the prior claims that were filed in the initial complaint were being abandoned by that statement of case, the narrowed case that was being filed.

Judge Wiese had indicated that Plaintiff would be given an opportunity to file a new, amended complaint to do the narrowing that he thought was a very positive thing that occurred during that lengthy time of informal discovery that the Plaintiffs had, which we provided a great deal of documentary discovery for them and gave them access to many, many boxes.

MR. PIPESTEM: Your Honor, this is Wilson Pipestem again. What we have in mind is to expand our claims beyond oil and gas and to other trust assets that do not include funds.

I don't think that's a hugely significant broadening of this case, but I do agree that the sooner we can get to that filing, an answer from the United States to that filing and then a dispositive motion from the United States, the better off we all are.

With regard to the case in Judge Hewitt's Court, that has been the pattern we have followed, which we are now moving towards formal discovery, but one where the complaint was filed, there's an answer. We have sought over the last couple of months avenues for settling that case and creating a process to do so, which included, by the way, discussions about an accounting of non-funds claims by the United States.

While those discussions were not fruitful and ultimately we were not able to reach a settlement process agreement, the parties have filed discovery plans and there's a draft Order from the Court that will be finalized here in the next several weeks, and we will enter into full discovery on that case.

Now, our thought is the issues in that case were narrowed by the government's motion to dismiss, and we think that's the right thing to do in this one as well, but to the extent we're dealing with a situation where we know that there is a trust

relationship between the United States and the Osage Tribe and we know there is a trust because there is a trust corpus and we think that there may be some disagreement, we think it would be difficult to disagree that the United States exercises pervasive control over Osage tribal trust assets and, therefore, the tribe has legal avenues for claims that because we have not received an accounting of our trust assets, money, lands, minerals or otherwise, that we don't know exactly where those claims lie.

Our thought is we broaden the complaint to deal with other trust assets. We get some direction from the Court on the law as to what's allowable through a dispositive motion and a decision from the Court and then move into formal discovery and on to trial.

THE COURT: Very well. Mr. Passarelli?

MR. PASSARELLI: Well, two things. Number one, I guess, of course, broadening it into things that were never part of this case does present potentially some statute of limitations problems that would have to be dealt with either with a dispositive motion. Those in some ways may be more appropriate for a second filed complaint.

With respect to the oil and gas, I'm also

unclear, and it may be hopeful on my part, that the broadening that Mr. Pipestem had mentioned with respect to the other assets does not exclude what really I think all the parties anticipated at first, that being a narrowing of the oil and gas case.

Once that is narrowed, then we're in a position once we know the true nature of what the claims are to find out in addition whether or not we need other parties, as well as the dispositive motions that we need to file.

We had mentioned this as well to Judge Wiese that potentially there are third parties who might have to be noticed into the case who are the oil and gas companies which would collect the oil under these lease agreements, but I guess what I'm hopeful about is that we have not abandoned the narrowing that we achieved over the last few years on the oil and gas part of the case.

THE COURT: A couple of questions for you on that. What would the role of these third parties be?

MR. PASSARELLI: If I could ask Mr. Woodcock to address that, who is most familiar with --

THE COURT: Certainly. Certainly.

MR. WOODCOCK: Yes, Your Honor. We, and I mean we the Bureau of Indian Affairs, collect oil and

gas royalties from operators and purchasers of oil. If I have understood it heretofore, the tribe is arguing that we should be collecting royalty based on a higher price of oil than that which is contained in the regulations.

If there is a legal obligation to pay a royalty based on a higher price then as far as past production then we believe that the oil companies, the operators and the purchasers, would be primarily obligated to pay that.

To the extent that the tribe is attacking the regulations, the method of calculating the royalties, which would have a future impact, it modifies the arrangement that the oil companies and the purchasers have been engaged in for a number of years. Therefore, it may be detrimental to them.

In other words, the oil companies have an obligation to pay the proper royalty. If the Court determines the proper royalty is an additional amount than what's heretofore been collected, they will have to be paying that in the future. They have a stake in the case.

MR. PIPESTEM: Your Honor, this is Wilson Pipestem. We do not believe that there will be a need for third parties to participate in this case, and the

reason is that to the extent the tribe has brought claims and will continue to bring claims that deal with the regulations even where the United States has complied with those regulations, the tribe believes that there is a trust relationship with a trust corpus, and the statutory direction from Congress is that the Secretary maximize and work in the best interest of the tribe.

We don't think it's appropriate for the Secretary to be able to hide behind regulations. We understand there's a case out there that addresses this.

THE COURT: What case is that?

MR. PIPESTEM: I believe it's Freeman Brown I believe is the name of the case. That was raised by Mr. Passarelli in an earlier proceeding.

We still do not believe that the Secretary's duties to the Osage Tribe can be limited by regulations. Now, this is one of those issues that we believe with regard to whether it's statute of limitations or standing or in this case failure to state a claim that the sooner we get to a dispositive motion and get some ruling from the Court on that the more efficiently we can move forward with discovery.

We do not believe that the actions of the

United States with regard to the tribe as trustee would require the joinder or inclusion of third parties. That is because our view is that a lease is the governing law with regard to that trust relationship, and to the extent that we have to look to other law they are secondary and tertiary and otherwise to that lease.

I want to look further at that issue, but that's our view now. We certainly would prefer not to have third parties involved, and we don't think there will be any need to.

MR. WOODCOCK: Your Honor, if I may? This is Alan Woodcock.

THE COURT: You may.

MR. WOODCOCK: I would bring up the issue of the leases that are with third parties. Apparently they are requesting, the tribe, a different interpretation than that which has been placed on the leases in the context of the Bureau's activities and in the context of other administrative litigation.

I think clearly the third parties are going to need to be involved somewhat because the tribe is seeking a modification of the method of payment from the royalties that the oil companies and the purchasers have heretofore engaged in.

THE COURT: Yes. Very well.

A question for Mr. Passarelli. Pursuant to what Court rule would you seek to join these third parties?

MR. PASSARELLI: I can't think if it's Rule 14 or not. It is where we would notice them into the litigation and give them an opportunity to participate if they so chose.

THE COURT: So that would be 14(b), notice to interested parties.

MR. PASSARELLI: I think that may be 14(b). I don't have a copy of the rules in front of me. I apologize.

THE COURT: That would then give them the opportunity to either opt in or not.

MR. PASSARELLI: That's right. Of course, they need to be able to know what the nature of the claim is, just as the United States does, to be in a position to know whether or not it is appropriate for them to participate or not, which is the reason we had been awaiting the refined complaint.

THE COURT: Very well. That's your right to request that notice when you receive the refined or the amended complaint.

Let me go back a minute to the rule on

amended pleadings. As you both are well aware, under Rule 15(a) once a responsive pleading is filed it's not automatic that you are granted leave to file an amended complaint. Leave must be granted by Court Order or by written consent of the adverse party.

Now, Mr. Passarelli, I take it from what you're saying you'd be willing to go ahead and give that consent just in the interest of moving this along.

MR. PASSARELLI: I certainly would be interested and can say that we had given consent before where it related to narrowing the complaint on the present oil and gas.

I don't have the authority at this time to say that we would consent to an amended complaint which would expand it beyond things that were not addressed at all in any way in the first complaint that was filed some years ago.

THE COURT: I understand. Let's go back for a minute to Mr. Pipestem.

A few minutes ago Mr. Passarelli mentioned that in addition to broadening your complaint to include the other assets he was also hoping that you were going to narrow the oil and gas claim. Is that true? Are you going to narrow it?

MR. PIPESTEM: Your Honor, the problem we have with narrowing at this juncture is that normally where there's a trust and there are claims brought by the trust beneficiary, those claims are brought pursuant to some accounting or some other knowledge that the trustee has that there may be claims.

The problem we face now is we don't know what claims we may have, and until we get some accounting or some information that is helpful to us that helps expose what claims we may have, to narrow it without that information would be to limit ourselves in a way that could be harmful to the tribe.

Our thought is we encompass those issues and include those in a complaint, an amended complaint. Then discovery may show that we have other claims that we would like to add, but we just don't know.

As I mentioned before, the United States exercises an enormous amount of control over this process, and we have not received sufficient information to know exactly what our claims are. In some respects we're just guessing by narrowing. While that is certainly our intent to get to what the claims we have are, without information it's almost impossible to do that.

As I mentioned before, our thought is an

amended complaint that is somewhat more broad. We don't think this is going to be something that would cause either the Court or the United States an enormous amount of heartburn, but it would broaden it enough to where the tribe could go look for the information it needs to try to prove claims.

Until we have that discovery or we have an accounting from the United States, which we believe the United States owes the Osage Tribe and has not provided, then we really don't know what our claims are. That is the difficulty we have.

THE COURT: Now, is the accounting to which you are referring the accounting you request in this action?

MR. PIPESTEM: No. The accounting we request here we understand would be one after liability is found by the Court --

THE COURT: Okay.

MR. PIPESTEM: -- if it's to be found. I should inform the Court, as I have the United States counsel in the case before Judge Hewitt, that the tribe intends to file an accounting claim in Federal District Court that would require the United States to provide an accounting or accountings of the Osage Tribe's trust assets.

We think that's a different case. It's one in equity, not in law, that can go on and should go on at the same time as this one. The United States is aware of that through counsel on the phone today -- maybe not Mr. Passarelli -- that it has been our intention to do so. That complaint may be filed as early as today.

That's the problem we face. As a trust beneficiary, we don't know what claims are there until we have some formal discovery and find out what's there, if anything. Now, we certainly believe that we already have some good information that we have claims based upon those that have been discussed in this case before related to pricing.

We also have good indication from this case, the Osage Tribe's case before Judge Hewitt and in the Cabelle litigation, Federal District Court, that the United States has had, and also reports before the United States Congress, that there are significant problems in the United States' management of tribal trust assets.

It's difficult to say that it makes sense to limit those at this point, but we get to the limiting through Orders of the Court in some reasonable period of time.

THE COURT: All right. Thank you very much, Mr. Pipestem. I understand your position.

Mr. Passarelli, do you want to say anything else about the proprietary of the Court granting leave to amend this complaint?

MR. PASSARELLI: Your Honor, I think that the leave to amend the complaint should be granted only in connection with matters that are presently within the scope of the present complaint and also that the leave should be granted only consistent with the statement of narrowed claim that was filed about two years ago in connection with this case that Judge Wiese and the government had relied upon in anticipation of an amended complaint that would be narrowed in a way that would be relatively consistent with that statement of narrowed claim.

That was the purpose of the informal discovery was to allow the tribe to see if it had any other documents that could narrow the claim, but the tribe, as in Menominee Tribe v. United States, has a duty to discover its claims on its own. It must establish liability before there's any accounting for mismanagement claims in this Court.

I am deeply concerned that we have spent a great deal of time and a great deal of discovery time

that would be wasted if we go down a path that does not narrow that claim, so I guess my bottom line position is that any amendment allowed should be one that narrows and defines and states exactly what it is that the Plaintiff is seeking to claim that we've done in the way of mismanagement.

MR. PIPESTEM: Your Honor, if I could? This is Wilson Pipestem.

THE COURT: Yes, Mr. Pipestem?

MR. PIPESTEM: My concern about that is the efficiency of if the Court were to go that direction and the tribe were to file another complaint that we now have complaints that deal with non-funds trust assets going on at the same time in the same Court possibly before a different Judge where it seems that the most efficient way to do this, and the Court has already vacated the Order to consolidate the two cases that are already now before the Court where they're both cases for mismanagement of Osage tribal trust assets.

To separate that out again would appear to be inefficient. Our hope is that we can get there in a quick way, a reasonable way, in an amended complaint with some specificity to the extent we can now.

Your Honor, in fact the difficulty we have

in an amendment to a complaint that would be as limiting as Mr. Passarelli seeks is that in the process of discovery we may find additional claims in that process, in which case then we're amending once again to add those or we're filing another complaint in the same Court.

It seems that the most efficient way again is to allow us to file an amended complaint and get to a dispositive motion on all the issues, whether the statute of limitations standing, failure to state a claim, and deal with that at the same time.

THE COURT: All right. Anything further from the government on that point? I understand you think it should be narrowed.

MR. PASSARELLI: Absolutely, Your Honor.

THE COURT: All right.

MR. PASSARELLI: That's been the commitment for over four years. Plaintiff bought into that commitment. Plaintiff's new counsel bought into that commitment at the last status conference.

THE COURT: Even despite counsel's representation that he is just going to file another lawsuit on the other assets in this Court?

MR. PASSARELLI: Without knowing the nature of that case, I'm not in a position to agree to the

amendment, Your Honor.

THE COURT: I understand, Mr. Passarelli.

MR. PASSARELLI: I'm just not in that position.

THE COURT: I understand. I understand. Very well.

Having heard argument, the Court rules that leave to amend the complaint is hereby granted. The amended complaint shall be filed promptly.

Mr. Pipestem, when can you file it? We're going to establish a date right here and now.

MR. PIPESTEM: Your Honor, is three weeks a reasonable period of time? I say that only because I have a draft complaint, but I am out of town all of next week. It needs some refining.

THE COURT: Well, Mr. Passarelli wants you to refine it a lot.

MR. PIPESTEM: I'm talking about just the draft itself.

THE COURT: I hear you. Where does that put us? This is your case.

MR. PIPESTEM: Yes, Your Honor, and we believe the sooner we can get to a dispositive motion the better. As you know, as I stated earlier, we have had discussions with the United States, significant

discussions, in the other Osage Tribe asset case.

We did discuss the possibility of doing an accounting, the United States doing an accounting of non-funds assets. As I said, that very recently broke down, and now we're moving into formal discovery very quickly.

I think that a short, but reasonable, period of time would be --

THE COURT: Well, three weeks puts you at March 12. Do you want to take until the 15th, which is a Monday?

MR. PIPESTEM: That would be fine. That would work.

THE COURT: Very well. The government will have the usual time within which to file a responsive pleading.

MR. PASSARELLI: Your Honor, that may be a much shorter period than we would normally anticipate for having items that are dramatically new. We would request that we have the normal time which we would have to respond to a new complaint, which would be 60 days.

THE COURT: Granted. Let's just pin down that date for the record. If they're filing on the 15th of March, I guess that would give you until the

17th of May.

MR. PASSARELLI: From my calendar, that's what it looks like, Your Honor.

THE COURT: We'll just set that as the date, give or take, if that's all right. That's a Monday as well.

MR. PASSARELLI: That's right. I'm looking at the wrong month. Okay.

THE COURT: I think that's right.

MR. PASSARELLI: That's correct.

THE COURT: Okay. All right. At least we've got that on track.

Is there anything further at this point that we ought to discuss today?

MR. PASSARELLI: Your Honor, this is Ed Passarelli. I don't think there is.

THE COURT: Let me just make sure. I know it's difficult for either of you to respond without seeing the amended complaint, but the question is really for the government.

Do you anticipate filing a motion to dismiss on either standing or statute of limitations grounds?

MR. PASSARELLI: A good possibility, Your Honor.

THE COURT: Very well. All right. Anything

further from either party?

Not hearing anything, thank you all for being part of this conference call, and we will await your papers. As soon as we get the government's responsive pleading we will schedule another telephonic conference to see where we go from here.

MR. PIPESTEM: Your Honor, this is Wilson Pipestem. One last question. If I file the complaint before the Court's deadline, does the government have 60 days from that date, or will it be the same date that we have discussed?

THE COURT: That's a good question. I don't know Mr. Passarelli's schedule.

Say they filed it a week early. Would that be possible for --

MR. PASSARELLI: It would be easier for me to deal with on the date certain basis that we have now.

THE COURT: All right. Fair enough. I think we're going to have to wait until May 17.

Actually, why don't we set a conference call right now when we get the response just because the Court may want to, depending on what issues come up, set a schedule for itself really to have an oral argument.

If you file it on the 17th of May, I want to keep this on a fast track now that we're getting back on track. We will have a telephonic conference say on the 26th at 2:00 p.m. Eastern time. Would that work? That's a Wednesday. Then we can tell you at least whether we intend to have oral argument or any further scheduling that you all may desire.

MR. PASSARELLI: Your Honor, just a question maybe or a thought. Do you want to await that conference until you've seen the pleadings on both sides to give you an idea of whether or not --

THE COURT: That would be fine.

MR. PASSARELLI: Again, it's possible that we could end up filing an answer at that time, but hopefully when we get the complaint we'll be in a position to file some dispositive motions on significant issues. If there is, it would seem to me that the 26th won't give you enough time.

THE COURT: Right. We'll get the government's dispositive motion in by the 17th. Then when will the Plaintiff respond to that?

MR. PIPESTEM: Your Honor, this is Wilson Pipestem. I'm sorry. I thought the answer would be filed on May 17.

THE COURT: They're not going to file an

answer. They're going to file a motion to dismiss half of this. They've already told you that, right? Then you're going to get to respond.

MR. PIPESTEM: Right. Right.

THE COURT: His point is or somebody's point is that it doesn't make sense for the Court to intervene until you see the Plaintiff's response to the government's motion.

MR. PIPESTEM: Okay.

THE COURT: It's probably going to be a dispositive motion. What do you have, 28 days for that? That puts us in June.

MR. PIPESTEM: I'm sorry. Twenty-eight days from the 26th? The 17th.

THE COURT: The 17th.

MR. PIPESTEM: Okay. That works for us.

THE COURT: Good. Yes, roughly the 17th of June, so why don't we try to chat a little bit that final week of June? Are you available the week of June 28?

MR. PIPESTEM: This is Wilson Pipestem. Earlier in the week in June is better for me because I'm an Osage, and our ceremonial dances are four days during the week.

THE COURT: Do you want to put it on the

Friday before that, the 25th?

MR. PIPESTEM: Well, the thing is we don't set dates until the seasons change, so I don't know what the dates will be, but they will be three weekends and four days, Thursday through Sunday, in June.

THE COURT: Okay.

MR. PIPESTEM: I don't know what those are yet.

THE COURT: So you want us to set this on a Monday or a Tuesday?

MR. PIPESTEM: Yes. Tuesday would be better because Sunday is a very taxing day.

THE COURT: Okay. That's fine. How about the 29th at 2:00 p.m. Eastern time?

MR. PASSARELLI: Your Honor I don't know if I could ask this, but --

THE COURT: Sure you can.

MR. PASSARELLI: -- I typically head with the Boy Scouts down to their Boy Scout camp with the troop that my sons are members of. I am not certain they have set the date, but it's usually within that last two weeks of June. It depends upon when school gets out.

Would it be possible for us to convey

whether or not that's a free day by Monday or Tuesday of next week?

THE COURT: That's fine. Basically I'm free, at least as far as I know, those two weeks so you can just let me know when you're available, and we'll set it for that day.

MR. PASSARELLI: Okay. Thank you, Your Honor.

MR. PIPESTEM: Your Honor, this is Wilson Pipestem. We've got Indians and Boy Scouts here --

THE COURT: Yes, I noticed that.

MR. PIPESTEM: -- with special needs when it comes to dates. I'm glad to make the 29th, if it works for Mr. Passarelli, at least a tentative date.

THE COURT: Okay. We'll do that.

MR. PASSARELLI: It may need some adjustment forward or backward as we approach it.

THE COURT: Why don't we just pencil it in? We'll put it in the Order, and then you can always request a change. I'm usually very lenient about those scheduling conflicts. I understand. I have children too.

MR. PASSARELLI: Thank you, Your Honor.

THE COURT: All right. Anything further?

MR. PIPESTEM: This is Wilson Pipestem. No,

Your Honor.

MR. PASSARELLI: Edward Passarelli. Nothing, Your Honor.

THE COURT: Okay. Thank you all very much. We'll be issuing a brief Order and awaiting your papers.

ALL: Thank you.

THE COURT: You're welcome.

(Whereupon, at 2:00 p.m. the hearing in the above-entitled matter was concluded.)

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

# REPORTER'S CERTIFICATE

DOCKET NO.: 99-550L

CASE TITLE: The Osage Nation v. U.S.

HEARING DATE: February 20, 2004

LOCATION: Washington, D.C.

I hereby certify that the proceedings and evidence are contained fully and accurately on the tapes and notes reported by me at the hearing in the above case before the United States Court of Federal Claims.

Date: February 20, 2004

Charity Davis
Official Reporter
Heritage Reporting Corporation
Suite 600
1220 L Street, N.W.
Washington, D.C. 20005-4018