**No. 99-cv-00550 ECH**
**EMILY C. HEWITT**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**THE OSAGE NATION OF INDIANS OF OKLAHOMA,**

**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA,**

**Defendant.**

---

**RESPONSE OF PROPOSED INTERVENORS TO THE OSAGE NATION'S MOTION TO DISQUALIFY**

---

**Dated December 14, 2007**

# TABLE OF CONTENTS

## RESPONSE OF PROPOSED INTERVENORS TO THE OSAGE NATION'S MOTION TO DISQUALIFY

INTRODUCTION ..... 1

ARGUMENT ..... 3

I. APPLICABLE LAW - OKLAHOMA ..... 3

II. THE BURDEN IS ON THE PARTY SEEKING DISQUALIFICATION ..... 6

III. THE OSAGE NATION HAS NO STANDING TO REQUEST DISQUALIFICATION ..... 7

IV. DISQUALIFICATION UNDER RULE 1.9 REQUIRES EVIDENCE OF MISUSE OF CONFIDENTIAL INFORMATION AND PREJUDICE TO THE FORMER CLIENT ..... 9

V. THE UNSUPPORTED ALLEGATIONS OF THE OSAGE NATION DO NOT MEET THE STRINGENT REQUIREMENTS FOR DISQUALIFICATION ..... 12

CONCLUSION ..... 14

**INDEX TO EXHIBITS**

1 Federal Circuit Motion of the Appellant United States To Dismiss the Appeal for Lack of Appellate Jurisdiction ..... 8

2 Affidavit of John Essley ..... 2, 3, 9, 10

3 Affidavit of Joseph A Trumbly ..... 2, 3, 9, 10

# TABLE OF AUTHORITIES

**Federal Cases**

Bayside Federal Savings & Loan Association, et al. v. U.S.,
57 Fed. Cl. 18 (2003)....................4, 13
Cole v. Ruidoso Mun. Schools, 43 F.3d 1373 (10th Cir. 1994)....................7, 8
Freeman v. Chicago Musical Instrument CO., 689 F.2d 715 (7th Cir. 1982)....................13
In Re Corn Derivatives Antitrust Litigation, 748 F.2d 157 (3rd Cir. 1984)....................15
In re Dayco Corporation Derivative Securities Litigation,
102 F.R.D. 624 (SD OHIO 1984)....................14
Lazy Oil Co. v. Witco Corp., 166 F.3d 581(3rd Cir. 1999)....................15
Panduit Corporation v. All States Plastic Manufacturing Company, Inc.,
744 F.2d 1564 (Fed. Cir. 1984)....................15
Tannahill v. U.S., 25 Cl. Ct. 149 (1992)....................4
U.S. v. Cuauhtemoc Gonzalez-Lopez, 126 S. Ct. 2557 (2006)....................14
U.S. v. Stiger, 413 F.3d 1185 (10th Cir. 2205)....................7

**State Cases**

Piette v. Bradley and Leseberg, 1996 OK 124, 930 P.2d 183....................6
Prospective Investment and Trading Company, LTD v. GBK Corporation, et al.,
2002 OK CIV APP 113; 60 P.3d 520.................... 5, 9

**Federal Statutes**

34 Stat. 539....................1
PL 59-321, 34 Stat. 539....................1

**State Statutes**

5, Ch. 1, App. 3-A, Oklahoma Rule 1.9....................7

**Federal Regulations**

25 CFR § 226.1(b)....................9, 10, 11
25 CFR § 5.1....................9
25 CFR § 5.1(e)....................2
42 CFR § 136.4.1(e)....................2

**RESPONSE OF PROPOSED INTERVENORS TO THE OSAGE NATION'S MOTION TO DISQUALIFY**

The undersigned proposed intervenors are Osage Shareholders or "headright" owners as designated by Congress in 1906, PL 59-321, 34 Stat. 539 at 544,

> "...and the same shall be distributed to the individual members of said Osage Tribe according to the roll provided for therein."

The proposed intervenors or "Osage shareholders" file this response to show this Court that their present counsel, Bradley D. Brickell, should not be disqualified and that no violation of ABA Model Rule 1.9 exists.

**INTRODUCTION**

The "basis" for the Motion to Disqualify filed by the "Osage Nation" is the claim that counsel Bradley D. Brickell is the former attorney for the Osage Nation and that the Osage Nation is adversarial to the Osage shareholders on the issue of the mineral ownership and, thus, a violation of Model Rule 1.9 has occurred. The current Plaintiff, the Osage Nation, is the reorganized form of government pursuant to the new "constitution" of the Osage which became operative in 2006. Under this new constitution, the current principal chief, assistant chief and Osage "Congress" were elected, govern and currently prosecute the instant proceeding. This new form of government is not the representative body of the ultimate beneficiaries of this case, the "closed roll" tribe of Osage pursuant to the Act of 1906. Numerous congressional acts affirm the 1906 Act which created a closed roll tribe by said act congress. *See* 25 CFR § 5.1(e) and 42 CFR § 136.4.1(e).

The instant matter was filed by the undersigned counsel on behalf of the Osage Tribe as it was defined in the 1906 Act, a "closed roll" tribe with elected representatives including a Chief and Assistant Chief to act on behalf of their constituent voters, the Osage Shareholders. See affidavits of former members of the Osage Council attached as **Exhibits 2 & 3**. The Osage Shareholders are the proposed intervenors and the class of Plaintiffs described in the Motion to Intervene. These are the same persons who were represented by the undersigned counsel in this matter in 1999 to 2003. The conflict is between newly constituted Osage Nation, acting by and under its 2006 Constitution, and the Osage shareholders. See affidavits attached as **Exhibit 2 & 3**.

The subject Motion to Disqualify makes reference to statements and written arguments made by the undersigned counsel prior to his withdrawal as Plaintiff's counsel from the instant proceeding in 2003. The underlined "theme" of these references are to "the Osage Tribe" and its relationship to the Osage shareholders. The Osage Nation, the current Plaintiff, fails to point out that the Osage Tribe, as it existed until 2006, was, by definition, a closed roll tribe consisting of only those persons owing a share or headright interest, as defined in the 1906 Act.

The Osage Nation's references ABA Model Rule 1.9(a) and various cases interpreting this rule which prohibits representation of a client in a matter adverse to a former client's interest, i.e, "changing sides". The Osage Nation proceeds to emphatically state that the Plaintiff has not given its consent to the representation by the undersigned counsel of the proposed intervenors. The Osage Nation fails to inform the Court that the Osage Nation, formed in 2006 pursuant to its 2006 Constitution is not the former client of the undersigned counsel.

The undersigned counsel's former client(s) are the exact same persons who are the proposed intervenors, as well as all other Osage Shareholders/headright owners, which were represented by

their own elected chief and council and represented by same up to 2006. See affidavits attached as **Exhibit 2 & 3**. The "new" Osage Nation, whose Chief and Assistant Chief and congress were elected by all persons of Osage blood, and who have no standing to pursue a motion to disqualify counsel of choice of the Osage Shareholders, those 2,229 members of the tribe in 1906, their descendants, heirs and assigns. The Osage Nation posits that since it opposes the motion of the proposed intervenors, that is has created a conflict as described in Rule 1.9 which should result in disqualification.

This response shows the following:

1. The Osage Nation is not the former client of attorney Bradley D. Brickell and lacks standing to move for disqualification.

2. There is no violation of ABA Model Rule 1.9 and the proposed intervenors are the exact same client(s) as the undersigned counsel previously represented;

3. The Osage Nation has not even alleged that confidential, privileged material may be used to its detriment by its "former counsel" <u>in this matter against the United States and that it will be prejudiced thereby</u>.

4. An evidentiary hearing is mandatory.

## <u>ARGUMENT</u>

### I. <u>APPLICABLE LAW - OKLAHOMA</u>

> "In evaluating a disqualification motion, the Court of Federal Claims is guided by the Model rules of Professional Conduct of the American Bar Association, <u>the Rules of Professional Conduct of the Bar to which the attorney at issue is admitted to practice</u>, and relevant case law." (emphasis added). *Bayside Federal Savings & Loan Association, et al. v. U.S.*, 57 Fed. Cl. 18 (2003), citing to *Tannahill v. U.S.*, 25 Cl. Ct. 149 at 160-161 (1992).

The Oklahoma Rule, codified as 5 O.S. Ch.1, Appx. 3-A, Rule 1.9 (2007), which rule is effective until January 1, 2008, states as follows:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.
>
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:
>
> (1) whose interest are materially adverse to that person; and
>
> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to that matter; unless the former client consents after consultation.
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has been generally known; or
>
> (2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

The obvious inapplicability of Rule 1.9 to the instant facts are twofold: (1) the undersigned counsel has never represented the New Osage Nation government, formed only in 2006 as noted above, and (2) there has been no showing that the positions taken by the Proposed Intervenors

against the United States herein is "materially adverse" to that of the Osage Nation (even if it was a former client).

In other words, the claims by the Osage Nation that it owns the minerals is not being litigated in the instant proceeding, nor was any confidential or privileged information revealed or discussed with the undersigned counsel by the new Osage Nation at any time that will prejudice its case herein against the United States in the manner anticipated by Rule 1.9.

The procedure for disqualification under Rule 1.9 must follow the requirements of *Piette v. Bradley and Leseberg,* 1996 OK 124, 930 P.2d 183, which requires the district court to hold a evidentiary hearing and further if it is determined that a parties' attorney should be disqualified, this disqualification order must include specific factual finding that the attorney had knowledge of material and confidential information. See *The Prospective Investment and Trading Company, LTD v. GBK Corporation, et al.*, 2002 OK CIV APP 113; 60 P.3d 520 at 524.

Two important considerations in order to apply Rule 1.9, towit:

> (1) Whether there was an attorney-client relationship between the party seeking the disqualification and the attorney that it seeks to disqualify.
>
> (2) Whether the lawyer sought to be disqualified was provided with confidential information concerning the former client to the extent that he/it (law firm) has actual knowledge of such confidential information that would be used to the disadvantage of the former client. Prospective Investment and Trading Company at 524.

The comment to Rule 1.9 is a follows:

> Information acquired by the lawyer in the course of representing a client may not subsequently be used or revealed by the lawyer to the disadvantage of the client. However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally

known information about that client when later representing another client. *Prospective Investment and Trading Company* at 526.

The instant Motion to Disqualify by the Osage Nation fails on both of the above considerations:

(1) The Osage Nation is not the former client of the undersigned counsel, as can easily be seen from the aforementioned facts herein and the affidavits of former Osage Councilmen attached hereto;

(2) There has not even been an allegation of any confidential information much less an evidentiary showing that such exists and could be used against the Osage Nation (even if was a former client) against it by the opposing party (the United States).

## II. THE BURDEN IS ON THE PARTY SEEKING DISQUALIFICATION

In *U.S. v. Stiger*, 413 F.3d 1185 at 1195 (10th Cir. 2205) the Court reviewed the Oklahoma District Court proceedings concerning a Motion to Disqualify counsel based upon representation a former client. The Court held that the Oklahoma Rule of Professional Conduct Rule 1.9 provides the relevant rule and that **"Oklahoma Rule 1.9 tracks exactly the text of Rule 1.9 of the ABA Model Rules of Professional Conduct"**.

The 10th Circuit indicated that the burden is upon the party seeking to disqualify "opposing counsel" and it must establish three elements:

(1) An actual attorney-client relationship existed between the moving party and the opposing counsel;

(2) That the present dispute involves a matter that is substantially related to the subject of the movants prior representation; and

(3) The interest of opposing counsel's present client is materially adverse to the movant's (interior citation to *Cole v. Ruidoso Mun. Schools, 43 F.3d 1373* at 1383 (10th Cir. 1994)).

Further, the court held the comment under Model Rules of Conduct 1.9 was appropriate,

> the underlying questions where the lawyer was so involved in the matter that the subsequent representation can be justly regarded as "changing sides in the matter in question". *Stiger* at 1196.

The *Stigler* court remanded the case to the District Court with instructions to hold an evidentiary hearing to determine whether an attorney/client relationship existed and whether the representation affected his right to a fair impartial trial, i.e. did prejudice exist. *Id.*

Herein, the Osage Nation as explained above, is not the former client. Counsel is not counsel for the opposing party in the case, i.e. the United States and has not "changed sides". There is no allegation that confidential material and information has been gained by Mr. Brickell which can be used to the prejudice of the Osage Nation in the case. As shown herein, the Proposed Intervenors constitute the exact same parties that he previously represented in this matter.

## III. <u>THE OSAGE NATION HAS NO STANDING TO REQUEST DISQUALIFICATION</u>

As noted in *U.S. v. Walker River Irrigation District*, 2006 U.S. Dist. Lexis 95342 (DC NV), the Court aptly stated:

> Thus, the threshold issue presented in the Motion to Disqualify is whether the Landolts have standing to seek the disqualification of Mr. DePaoli under federal law...and the burden rests upon the Landolts to prove standing exists (at para. 20)

The Osage Nation cites various portions of prior argument and filed briefs with the apparent goal of educating the Court of the facts that (1) attorney Brickell previously represented the Osage tribe in this matter and (2) argued strenuously against the Defendant's persistent and continued

efforts to challenge and attack the standing of the Plaintiff, now the "new" Osage Nation, to prosecute this case. This Court needs no such illumination.

The first, i.e. prior representation of the Plaintiff is pertinent to the Osage Nation's Motion to Disqualify, while the second is not of particular significance until the Court hears the Motion to Intervene. It is critically relevant that the Petition to Intervene seeks to resolve a defense that, although the Plaintiff prevailed in round one, the Defendant continues to persist in presenting this defense. *See* p. 9 of 10/9/07 brief filed by the Defendant in the Federal Circuit, attached as **Exhibit 1** hereto.

There is a clear distinction between the term "Osage Tribe" being used interchangeably with the term "Osage Nation" prior to 2006, when the "Osage Nation" government was formed by the adoption of a new "Constitution". Counsel's prior references to the "Osage Tribe" were as defined in the Code of Federal Regulations (*See* Exhibit B to the Motion to Disqualify, pp. 13-14 and the other references to "admissions" made by the Defendant in its own briefing, p. 12 fn 7 in the same exhibit).

The references to 25 CFR therein tell the story, i.e. that the Osage Tribe and the Osage Tribal Council, those bodies which are described in the Code of Federal Regulations and defined in 25 CFR § 5.1 as the "closed roll" tribe, are <u>the headright owners</u>. The Act of 1906 created the Osage Tribal Council which was the duly elected governing body of the Osage Nation ("Osage Nation or Tribe of Indians") vested with authority to lease and take other actions concerning oil and gas mining on the Osage Minerals Estate. *See* 25 CFR § 226.1(b), § 226.2 and § 226.1.

An Osage Tribal Council, together with a Chief and Assistant Chief, elected by the shareholders, i.e. headright owners, <u>does not presently exist</u> under the new 2006 Osage Constitution.

The Chief and the Osage Congress currently representing the Osage Nation were not elected by the shareholders who are referred to the Code of Federal Regulations as the "Osage Tribe". These Osage Shareholders, acting through their elected chief and council were the clients of the undersigned counsel in 1999 thru 2002. Those same persons are represented by the undersigned counsel in the 2007 Petition to Intervene. These facts are herein supported by the affidavits of former Osage council members under the earlier form of government under the 1906 Act and are attached hereto as **Exhibits 2 & 3**.

The Osage Nation is not the same "Osage Nation or Tribe of Indians" referenced in 25 CFR § 226.1(b). The Osage Nation now consists of all persons of Osage descent, not just the Osage Shareholders/headright owners as mandated under the 1906 Act, and who are defined as the Osage Tribe by federal regulations.

The application of Rule 1.9 anticipates that it would be enforced by a former client. In the instant proceeding the new Osage Nation, only formed in 2006, is not the former client of the undersigned counsel for the Proposed Intervenors. As explained in detail above, the undersigned counsel's "former client" is the "Osage Tribe", the Osage shareholders under the 1906 Act.

## IV. DISQUALIFICATION UNDER RULE 1.9 REQUIRES EVIDENCE OF MISUSE OF CONFIDENTIAL INFORMATION AND PREJUDICE TO THE FORMER CLIENT.

A motion to disqualify under Rule 1.9 imposes a burden upon the movant to bring forward evidence that the undersigned counsel's representation of the Proposed Intervenors would be materially adverse to Plaintiff's cause in this case against the United States and would prejudice its claims in this case. *The Prospective Investment and Trading Co.,LTD, supra,* at 524 and 526 The Plaintiff herein has not even alleged prejudice, nor could it be specifically prejudiced, as required

by Rule 1,9. Its only attempted to show "adversity" is merely to recite to the Proposed Intervenors' Motion, affirming that the new Osage Nation claims the mineral estate, owned of record by the United States in trust for the Osage shareholders/headright owners. This is a disputed claim, but not one being litigated here.

No showing or evidence of "material adversity" (Rule 1.9(a)) or prejudice caused by the use of confidential information, or even that the undersigned counsel "changed sides" has been brought forward by the Osage Nation. In fact, since the Proposed Intervenors are exactly the same persons, Osage Shareholders, who were previously represented by attorney Brickell herein (*See* Affidavits attached as **Exhibits 2 & 3**), one would be hard pressed to imagine that any conflict exists, especially that envisioned under Model Rule 1.9 of "changing sides".

In the Motion to Disqualify, on page 11, the Osage Nation states, "because the Osage Nation opposes the Proposed Intervention, Mr. Brickell by definition is representing parties whose position is adverse to his former client". This statement relies upon the factually incorrect premise, that the new Osage Nation is the former client of the undersigned counsel. Further statements on page 11 by the Osage Nation, in fact, reveal its true motivation behind the opposition to intervention and this attempt to disqualify the Proposed Intervenors choice of counsel, to wit:

> The Osage Nation will argue that intervention by Mr. Brickell's current clients is not proper under this Courts rules, and would be unduly prejudicial to the Osage Nation's investment of time and resources in this litigation. (emphasis added)

The present Plaintiff, the new Osage Nation, formed in 2006 is not the owner of any headrights. A small amount of headright interest (approximately 1 3/4) was previously devised by will to the (closed roll) Osage Tribe and its council, elected by the shareholders. There is no

showing that the newly formed Osage Nation automatically "owns" the assets left by will and devise to the "closed roll" Tribe. The expressed concern of the "New Osage Nation" to recover their time and resources invested in the litigation is real, since they have no real beneficial interest in the outcome. The beneficial interest is possessed solely by the present (and former clients) represented by the undersigned counsel and the proposed class members, the Osage shareholders as defined in the 1906 Act.

The authorities cited by the new Osage Nation referring to ABA Model Rule 1.9 refer to attorneys who have "changed sides" in a case, or a closely related case. In the instant proceeding that would be similar to representing the United States for several years and then proposing to represent the Plaintiff. The new Osage Nation did not cite any authority showing that a breach of Model Rule 1.9 exists when a former counsel proposes to represent additional parties against a common defendant, herein the United States. In other words, although the its 2006 constitution puts the Osage Nation at odds with the 1906 Osage shareholders, this Court does not have jurisdiction to preside over that disputed issue.

Simply put, Rule 1.9 has never been applied to exclude an attorney from representation of an additional or new client against a common Defendant on the same issues that he formerly prosecuted against the same Defendant.

The foundational basis for Model Rule 1.9 (see official comment no. 3) is the prevention of a former counsel's use of confidential and privileged information previously gained against that same client in the same or other proceedings. In the instant proceeding, the Proposed Intervenors are not (nor could they) pursue a claim against the Osage Nation. This jurisdiction solely adjudicates monetary claims against the United States. Further, the new Osage Nation has not even

alleged the misuse of confidential information against it and has failed to show or even allege that it would be thereby prejudiced in this matter.

## V. THE UNSUPPORTED ALLEGATIONS OF THE OSAGE NATION DO NOT MEET THE STRINGENT REQUIREMENTS FOR DISQUALIFICATION

*Bayside, supra,* holds that a request to disqualify should be viewed with great caution and should not be used as a strategic litigation device or a technique of harassment. *Bayside* at 20. Further, the Court must balance the rights of the client, of the Court, of the accused counsel and the public's right to fair administration of justice, inclusive of a client's right to be represented by counsel of its choice and the opposing party's right to prepare and try its case without prejudice. *Bayside* at 20.

A disqualification is a drastic measure and not to be taken lightly. A disqualification of counsel, while protecting the attorney-client relationship, also serves to destroy a relationship by depriving a party of representation of their own choosing. *Freeman v. Chicago Musical Instrument CO.*, 689 F.2d 715 at 721 (7th Cir. 1982).

In fact, as stated above, the new Osage Nation has no stake in the instant proceeding other than recovery its investment of time and resources. By its formation in 2006, the New Osage Nation did not acquire the approximately 1.75 headrights previously vested in the closed roll Osage Tribe of Indians through devise, nor, did it acquire the vested mineral property rights owned by the United States in trust for Osage shareholders for a century.

In its Motion to Disqualify, the Osage Nation posits that the Proposed Intervenors are "attacking" this Courts ruling regarding the standing of the Plaintiff to represent the interest of the Proposed Intervenors and other Osage headright owners. However, the Osage Nation misses the

mark, i.e. that is to recognize and propose a method of overcoming an ardent and potentially material defense is not an "attack" on the Judge's former ruling in favor of the Plaintiff. For the Proposed Intervenors and all other headright owners to believe that this oft raised defense will just "go away" or that the Defendant will forget to raise it on appeal is less than prudent. This is especially true when the new "Osage Nation" owns no headright itself, as noted above.

"The severe remedy of disqualification should be predicated upon factually based, probable or real conflicts of interest, rather than mere apparent or theoretical conflicts." *In re Dayco Corporation Derivative Securities Litigation*, 102 F.R.D. 624 at 632 (SD OHIO 1984). The seriousness of depriving party of his right to counsel of choice is thoroughly discussed in *U.S. v. Cuauhtemoc Gonzalez-Lopez,* 126 S. Ct. 2557 at 2565 (2006),

> [it] is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings... A choice of counsel violation occurs whenever the Defendants choice is wrongfully denied.. To determine the effect of wrongful denial on choice of counsel, however, we would not be looking for mistakes committed by the actual counsel, but for differences in the defense that would have been made by the rejected counsel... The difficulties of conducting the two assessments of prejudice are not remotely comparable.

In *Panduit Corporation v. All States Plastic Manufacturing Company, Inc.*, 744 F.2d 1564 at 1577 (Fed. Cir. 1984), the Court recognized that procedural matters are reviewed under the law of the particular regional circuit, noting that the 7th Circuit held that disqualification is a drastic measure, which courts should hesitate to impose except when *absolutely necessary*. (emphasis original)

In a class action context (as proposed by the intervenors) disqualification/removal of counsel becomes even a more involved "balancing" test. "The traditional rules that have been developed in the course of attorneys' representation of interests outside of the class action context should not be mechanically applied to problems that arise in the settlement of class action litigation." See *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581at 589 (3rd Cir. 1999). Any approach resembling a "per se" disqualification of an attorney who represents multiple parties in a class, or the entire class, when any member disagrees, might well undermine the attractiveness and utility of the class action device ... The same class members are granted considerable leverage by being able to force the majority to seek new counsel. *In Re Corn Derivatives Antitrust Litigation*, 748 F.2d 157 at 164 (3rd Cir. 1984).

## CONCLUSION

**WHEREFORE**, in consideration of the above premises, the undersigned Osage Shareholders request that this Court find that the Osage Nation does not have standing to request disqualification of their counsel of choice; or in the alternative, that an evidentiary hearing be set as required under applicable Oklahoma law and that the Court determine at said hearing whether the movant, Osage Nation has met its burden, showing that the undersigned counsel of the Osage Shareholders should be disqualified pursuant to Model Rule 1.9.

/s/ Bradley D. Brickell
Bradley D. Brickell, OBA #1117
**BRICKELL & ASSOCIATES, P.C.**
400 Hightower Building, 105 N Hudson
Oklahoma City, OK 73102
Telephone 405-236-0008
Facsimile 405-236-0013
**Attorneys for Proposed Plaintiffs Chris Hadlock, Jodell Heath, Linda Heskett, Cora Jean Jeck, Anna Kay Price, Diane Simpkins, George Tallchief, and Julie Wilson**