# EXHIBIT 1

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT
OCT 9 - 2007
JAN HORBALY
CLERK

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

ORIGINAL

OSAGE TRIBE v. US

RECEIVED
2007 OCT -9 PM 3:49
US COURT OF APPEALS
FEDERAL CIRCUIT

2007-5120

ON APPEAL FROM THE UNITED STATES
COURT OF FEDERAL CLAIMS

MOTION OF THE APPELLANT UNITED STATES TO DISMISS THE APPEAL FOR LACK OF APPELLATE JURISDICTION

Pursuant to Fed. R. App. P. 27, Fed. Cir. R. 27(f), and Fed. Cir. R. 31(c), the appellant United States respectfully moves this Court to dismiss this appeal for lack of appellate jurisdiction because the Court of Federal Claims' ("CFC") certification under Rule 54(b), Rules of the Court of Federal Claims, does not meet the requirements of that rule. The CFC's order does not finally adjudicate any separate claims for relief, and the CFC abused its discretion in determining that there is no just reason for delay.[1]

[1] Counsel has discussed this motion with counsel for the appellee, who stated that appellee will oppose this motion and will file a response.



EXHIBIT
1

In this action, the plaintiff Osage Tribe of Indians of Oklahoma (the Tribe) seeks damages from the United States for alleged breaches of a trust responsibility to manage tribal assets and funds. The Tribe's complaints alleged breaches of trust responsibility relating principally to the collection and investment of royalties on oil production on Osage lands under thousands of leases, some of which date back to the early 1900's. At the request of the Tribe, the CFC decided to adjudicate the case in phases. After a trial on the first phase, the CFC awarded $1.8 million in damages on a small set of transactions relating to collection of royalties under just four of thousands of oil leases at issue, and then only for five scattered months between 1976 and 1989: January 1976, May 1979, November 1980, February 1986, and July 1989. The CFC directed entry of judgment under Rule 54(b), which permits the entry of "a final judgment as to one or more but fewer than all of the claims" where the CFC makes "an express determination that there is no just reason for delay." The CFC, however, provided no statement of its reasons why it thought the judgment met the requirement of Rule 54(b) that the judgment finally disposes of one or more separate claims and why there is no just reason for delay. (Ex. 1, Order, March 16, 2007, p. 2; Ex. 2, Judgment March 16, 2007).[2]

---

[2] "Ex." refers to the separately bound exhibits filed in support of this motion.

The United States filed a timely notice of appeal from the adverse judgment on May 17, 2007. Because of the extraordinary number and complexity of the potential issues and the large size of the record, and the need to complete the review and evaluation process prescribed by 28 C.F.R. 0.20 by which the Solicitor General determines whether, and to what extent, an appeal will be taken, the United States obtained two extensions, totaling 90 days, of the date for filing its opening brief, to and including October 12, 2007. As a result of that review and evaluation process, the United States has concluded, for the reasons set out below, that the judgment was not properly certified by the CFC under Rule 54(b), and on October 5, 2007, the Solicitor General authorized the filing of this motion to dismiss on these grounds. See Houston Industries, Inc. v. United States, 78 F.3d 564, 566-567 (Fed. Cir. 1996) (United States' motion to dismiss its own appeal granted for lack of valid Rule 54(b) certification).

In our view, a Rule 54(b) "claim," at a minimum, must encompass all relief predicated on the same legal theory for all periods for which relief is sought, and consequently, adjudication of just five months' worth of liability and damages for leases that typically run for decades does not qualify as a final disposition of separate claims for relief. Moreover, given the high level of overlap in the legal and factual issues between the adjudicated and unadjudicated months on such

long-term leases, there is a substantial risk of inefficient piecemeal appeals and therefore no proper basis for a determination that there is no just reason for delay for entry of a final judgment.

Consistent with Fed. Cir. Rule 31(c), it is appropriate to address the lack of appellate jurisdiction by motion without further briefing of the merits given the complicated nature of the merits issues. Accordingly, the United States seeks an order from this Court dismissing the appeal for lack of appellate jurisdiction. The Office of the Solicitor General currently has under consideration whether the United States should seek certification of some of the CFC's orders for an interlocutory appeal pursuant to 28 U.S.C. 1292(d)(2), which would require both certification from the CFC and acceptance of the appeal by this Court, as an alternative means of obtaining appellate review of rulings of the CFC that could be applied to the remainder of the case. If the Court denies this motion to dismiss, the United States will file its opening brief within the time allowed by Fed. Cir. Rule 31(c).

## BACKGROUND

The Tribe is a federally recognized Indian Tribe located in Osage County, Oklahoma that, at the turn of the last century, occupied a reservation of 1.47 million acres. Since 1897, oil and gas from the Tribe's mineral estate has been

extracted pursuant to leases issued by the Tribe with the approval of the Department of the Interior ("DOI"). The CFC noted that Osage County is one of the two top oil-producing counties in the United States, with production exceeding 1.26 billion barrels through January 1977 and about 10,000 wells still producing under roughly 2,000 leases. Osage Nation v. United States, 72 Fed. Cl. 629, 633, 656-657 (Ex. 11). Lessees are required to pay royalties based on the gross proceeds of sales of the production. DOI has issued and administered regulations, specific to the Osage leases, governing the calculation and payment of these royalties. See e.g., 25 C.F.R. Part 183 (1976); 25 C.F.R. Part 226 (2006).

In 1906, Congress allotted the surface interests in the reservation to individual tribal members, while reserving "the oil, gas, coal, and other minerals * * * to the Osage Tribe * * * *." Act of June 28, 1906, Chapter 3572, 34 Stat. 539 ("the 1906 Act").[3]

Section 4 (Second) of the 1906 Act further provides that (34 Stat. 544):

> "the royalty received from oil, gas, coal, and other mineral leases * * * shall be placed in the Treasury of the United States to the credit of the members of the Osage tribe of Indians as other moneys of said tribe are to be deposited under the provisions of this Act, and the same shall be distributed to the individual members of said Osage

[3] Originally, the minerals were reserved for a 25-year period, but the reservation was extended several times and was made permanent in 1978. Pub. L. No. 95-496, 92 Stat. 1660.

> tribe according to the roll provided for herein, in the manner and at the same time that payments are made of interest on other moneys held in trust for the Osages by the United States, * * *."

The referenced interest was required to "be paid quarterly to the members entitled thereto * * *," and so royalty payments are to be made on this schedule as well. See Section 4 (First), 34 Stat. 544.

Section 4 (First) of the 1906 Act also provides that "all funds belonging to the Osage tribe, and all moneys due, and all moneys that may become due, or may hereafter be found to be due the said Osage tribe of Indians, shall be held in trust by the United States * * *." 34 Stat. 544. Such funds are placed on deposit with the Treasury in the Osage Tribe account and invested in public debt securities or other approved commercial instruments. See 25 U.S.C. 161a(a), (b) & (c), 162a(a).

Thus, after deduction of certain state taxes on production and payments to the Tribe to fund administrative functions, the balance in the account is distributed quarterly to eligible individuals and entities. The rights to these payments are called Osage "headrights." Logan v. Andrus, 457 F. Supp. 1318, 1321 n. 2 (N.D. Okla. 1978). There are a fixed number of headrights, 2,229, based on the original membership roll established in 1907. The Osage Tribal Council, the governing body of the plaintiff Osage Indian Tribe, is one of the headright owners, but, as of

2001, the Tribe had acquired only 1.25 headrights representing less than 1% of the total number (Ex. 3, pp. 53-55).

This litigation began as two separate cases in the CFC that were eventually consolidated. The first concerned claims about the calculation of the royalties on oil production and other revenues, and the other case involved claims about the management of funds, including those derived from royalty payments, in the Tribe's trust account. The Tribe filed its first complaint in case No. 99-550 on August 2, 1999, alleging that the United States had breached trust responsibilities associated with leasing the Tribe's oil deposits. The Tribe eventually filed the Third Amended Complaint on October 20, 2004, which stated two broad and indefinite claims associated with leasing of both the mineral interests and the surface interests in the reservation: (1) a damages claim for failure to collect the proper royalty on oil and gas leases, including interest or other investment income on amounts allegedly owed by lessees but were not collected, and (2) a damages claim for failure to collect the proper royalty and rental on leases for other minerals and for surface interests, including interest or other investment income on amounts allegedly due that were not collected (Ex. 4, Third Amended Complaint, filed Oct. 20, 2004). The Third Amended Complaint identified no specific time limit for its claims.

The Tribe filed the second case, No. 00-169, on March 31, 2000, eight months after the first case, and the complaint focused principally on alleged mismanagement of moneys that had been received into the trust account. The complaint pled two broad counts: (1) a claim for damages for failure to manage tribal assets properly, to manage the funds properly, and to provide an adequate reconciliation and accounting, and (2) a claim for an accounting (Ex. 5, Complaint in No. 00-169). The complaint alleged that its claims, including the failure to reconcile and account, dated back more than a century (id. at pp. 20, 21).

Following United States' answer and a period of discovery, the court supervised implementation of a succession of scheduling orders that addressed discovery and claim management. The court sought to achieve a refinement and/or division of the claims so that the Tribe could focus its discovery and be able to state its claims with more particularity and thus create a smaller litigation unit. Rather than requiring amendment of the broad complaint, however, the court suggested dividing the claims into "tranches," a term borrowed from the world of financial transactions where it is used to refer to the units of a bond issue.[4] The court suggested that Tranche One, the initial litigation unit, should be composed of

---

[4] See Black's Law Dictionary, 8th Ed. at 1535. "Tranche" is a French word meaning "slice."

a group of leases governed by a single set of statutes and regulations and should resolve claims concerning all relevant transactions from the generation of royalty payments to the quarterly disbursements to headright owners, possibly leading to a Rule 54(b) final judgment that could be appealed (Ex. 7, Transcript of Proceedings of March 15, 2005, pp. 7-23). Over the objection of the United States, the CFC adopted the Tribe's proposal to limit Tranche One to transactions for six particular months under five selected oil and gas leases, including claims of both failure to collect the proper royalty and failure to manage the proceeds properly (Ex. 8, Order, April 15, 2005, p.1). All remaining issues for all other time periods were consigned to the second tranche, to be addressed later. Because the claims of failure to collect the proper royalty were also presented in the first case, No. 99-550, the two cases were consolidated (Ex. 9, Order, September 14, 2005).

The court disposed of several issues on pre-trial motions. The court first ruled that the Tribe had standing to pursue damage claims for mismanagement of the funds in the trust account even though it had less than a 1% interest in the account balance as a headright owner. Osage Nation v. United States, 57 Fed. Cl. 392, 395 (2003) (Ex. 6). Second, the court held that the claims were not time-barred by either the general statute of limitations in 28 U.S.C. 2501 or by the limit

in the Indian Tucker Act, 28 U.S.C. 1505, on the subject matter jurisdiction of the CFC to claims of Indian tribes accruing after August 13, 1946. 57 Fed. Cl. at 398. The court also denied a motion to dismiss the royalty collection claims for lack of jurisdiction, holding the 1906 Act established a trust duty to calculate and collect the proper royalty on leased oil. Osage Nation v. United States, 68 Fed. Cl. 322 (Ex. 10).

Further pre-trial proceedings narrowed the issues to be tried, limiting Tranche One to only four oil and gas leases and then to only five selected months of production for those leases: January 1976, May 1979, November 1980, February 1986, and July 1989. See Osage Nation v. United States, 72 Fed. Cl. 629, 630 n. 1 (Ex. 11). After a 9-day trial, the court issued a ruling on liability on September 21, 2006. 72 Fed. Cl. 629 (Ex. 11). The court rejected several of the Tribe's arguments but sustained others. Among the determinations adverse to the government are rulings that the government had failed to collect the correct royalty in two circumstances: (1) certain royalties were not based on the correct determination of the "highest offered price," as required by DOI's regulations, and (2) certain royalties collected during the petroleum price control era of the 1970s were incorrectly based on the controlled price for oil rather than the uncontrolled price, for which price the oil in question could not be sold. 72 Fed. Cl. at 643-649,

658-661. The court also held that the government had not obtained appropriate investment yields for moneys received into the Tribe's trust account and held for the brief period of time prior to the quarterly distributions to the headright owners. 72 Fed. Cl. at 667-671. These rulings created issues on how to calculate the damages for these breaches, and following further briefing, the CFC issued a ruling on the disputed issues on February 15, 2007. Osage Nation v. United States, 75 Fed. Cl. 462 (Ex. 12). On March 16, 2007, the court entered an order awarding damages in favor of the Tribe in the amount of $1,876,878.30 for the five scattered months on the particular leases (Ex. 1). The court also, without further briefing from the parties, directed entry of final judgment pursuant to Rule 54(b) of the CFC rules, reciting "there is no just reason for delay" without further explanation of its determination (ibid.).

## ARGUMENT

Under Rule 54(b), the CFC was required to make two determinations: (1) that its order finally adjudicated one or more separate claims, and (2) that there is no just reason for delay. This Court reviews the former determination de novo, since it goes to the appeals court's jurisdiction, and reviews the latter issue under an abuse of discretion standard. See Intergraph Corp. v. Intel Corp., 253 F.3d 695, 699 (Fed. Cir. 2001); Houston Industries, Inc. v. United States, 78 F.3d 564, 566-

567 (Fed. Cir. 1996); W.L. Gore & Associates, Inc. v. International Medical Prosthetics Research Associates, Inc., 975 F.2d 858, 862 (Fed. Cir. 1992). If a Rule 54(b) judgment was properly certified, the judgment is treated as a final judgment for all purposes and a timely notice of appeal invokes the mandatory jurisdiction of the court of appeals. See Moore's Federal Practice §§ 54.26, 54.28[3][a] & [c] (3d ed. 2007). If, however, the court of appeals concludes the order does not finally adjudicate one or more separate claims, or the CFC abused its discretion in determining there is no just reason for delay, the appeal must be dismissed. Houston Industries, 78 F.3d at 567; Moore's Federal Practice, §§ 54.28[1].

A. The CFC's judgment does not completely dispose of separate, individual claims. – In Curtis-Wright Corp. v. General Elec. Corp., 446 U.S. 1 (1980), the Supreme Court explained that to be certified under Rule 54(b), an order "must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" 446 U.S. at 7, quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436 (1956). Accord: Houston Industries, Inc., 78 F.3d at 567; W.L. Gore & Associates, Inc., 975 F.2d at 862. Accordingly, orders that resolve parts of a claim or individual issues within or

pertaining to a claim do not meet the requirement for complete disposition of a separate claim. See Houston Industries, Inc., 78 F.3d at 567, citing Liberty Mutual Insurance Co. v. Wetzel, 424 U.S. 737, 742-743 (1976) (grant of summary judgment on liability while reserving remedy issues not final for purposes of Rule 54(b)). This requirement vindicates the historic policy against piecemeal appeals. See Sears, Roebuck & Co., 351 U.S. at 435-436.

The "courts have encountered great difficulty in [developing] any reliable litmus test" for the term "claim" as used in Rule 54(b), and "appear to apply a practical rather than a formal analysis" to determine whether a "claim" has been fully resolved. Moore's Fed. Practice § 54.22[2][b][I] & nn.36, 50. While distinct "claims" may exist that "arise[] out of the same transaction and occurrence," Cold Metal Process Co. v. United Eng'g & Foundry Co., 351 U.S. 445, 452 (1956); Intergraph Corp. v. Intel Corp., 253 F.3d 695, 699 (Fed. Cir. 2001) (antitrust, contract, and tort claims "'aris[ing] out of the same core facts'"); W.L. Gore & Assocs., 975 F.2d at 862, it is clear that a claim must be a "cognizable claim for relief," Curtis-Wright Corp. v. General Elec. Corp., 446 U.S. 1, 7 (1980). Accord: Oklahoma Turnpike Authority v. Bruner, 259 F.3d 1236, 1242-1243 (10th Cir. 2001).

Here, the relevant complaints included only two or three counts that were broadly worded to capture all losses from all transactions associated with thousands of leases over many decades. While there may well be separate stand-alone "claims" imbedded in the complaints that can be adjudicated separately and lead to a valid Rule 54(b) judgment, the court here sliced off a handful of perhaps the smallest possible units, analyzing damages claims associated with royalties for just five scattered months under just four leases. The CFC's judgment adjudicated breach-of-trust claims based on alleged failures (1) to collect the proper amount of royalties from the four specific oil and gas leases in those months, and (2) to manage properly funds that were actually collected. While the Tribe's requests for relief were not limited to any particular time period, the CFC adjudicated the claims only for five discrete, non-consecutive months between 1976 and 1989 that the Tribe itself selected. The CFC gave no explanation of why it believed such a judgment satisfies Rule 54(b), and it does not.

In the context of a case such as this, a Rule 54(b) "claim" is best understood to encompass a single, independent legal theory supporting a request for judicial relief that extends to all periods for which such relief is sought. For example, where the Tribe seeks damages for a failure to collect the proper amount of royalties on a particular lease on the ground that the government erred in its

interpretation of a regulation specifying the "royalty value" under that lease, that claim would encompass all relevant periods in which the government allegedly misapplied the regulation to that lease. Focusing on one particular month or several months would only partially ascertain the damages flowing from that claim. Indeed, if it were otherwise, either party could seek to partition a claim and adjudicate it only for a particular day, week, or month; obtain a partial judgment for that subset of the total period to which the claim would apply; and trigger successive, piecemeal appeals that would force the court of appeals to focus on a day, week, or month at a time. See Oklahoma Turnpike Authority, 259 F.3d at 1243 (claims disputing ownership of four separate tracts of land so intertwined by common legal theories, requested relief and defenses that entire class of claims must be adjudicated before Rule 54(b) certification can be made).

Moreover, this is not a case where discrete, independent actions give rise to distinct, but similar, temporally-separated claims. The Tribe's theories of recovery are the same throughout, and do not focus on any peculiarities within a particular month. Accordingly, the CFC's order, which adjudicated damages for only five scattered months for each of four leases, resolved only "individual issues within a claim," and therefore "does not satisfy the requirements of Rule 54(b)." Houston Industries, Inc., 78 F.3d at 567.

B. The CFC abused its discretion in determining there was no just reason for delay. – Even assuming arguendo that the Tribe's "claims" might properly be partitioned into monthly blocks under Rule 54(b), the CFC abused its discretion in certifying – without any explanation – that there is no just reason for delay given the substantial risk of inefficient piecemeal appeals. Because "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims," courts must evaluate the "equities involved," and "must take into account judicial administrative interests * * * to assure that application of the Rule effectively 'preserves the historic policy against piecemeal appeals.'" Curtis-Wright, 446 U.S. at 8. Among other things, this requires an evaluation of whether "the claims under review [are] separable from the others" and "whether the nature of the claims already determined [are] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals" regarding yet unresolved matters. Ibid.; see W.L. Gore, 975 F.2d at 864. The court of appeals also must "scrutinize the district court's evaluation of such factors * * * to prevent piecemeal appeals in cases which should be reviewed only as single units." Curtis-Wright, 446 U.S. at 10.

There is a substantial risk of duplicative appellate review where there is a significant overlap in the legal and factual issues in both the adjudicated and unadjudicated claims. See Oklahoma Turnpike Authority, 259 F.3d at 1242-1243; Ebrahimi v. City of Huntsville Board of Education, 14 F.3d 162, 167 (11th Cir. 1997); Moore's Federal Practice, §§ 54.23[1][a] & n. 12. Here, the court adjudicated liability for transactions for only five scattered months for leases that continued in effect for many years under the same set of statutory and regulatory requirements. The unadjudicated months plainly present a high level of overlap in the factual and legal issues, and permitting a partial final judgment to be entered for the damages attributable to each separate month improperly permits successive appeals about the same lease on nearly identical questions. While the CFC's desire to have this Court review certain legal rulings before undertaking a massive trial on the Tribe's wide-ranging claims is understandable, such review is properly sought with leave of the court of appeals under 28 U.S.C. 1292(d)(2), not by forcing this Court to take a stream of successive piecemeal appeals on nearly identical matters under Rule 54(b) and 28 U.S.C. 1295(a)(3).

Furthermore, the CFC supplied no statement of reasons for its determination that this order was appropriate for Rule 54(b) certification that there is no just reason of delay, and any deference otherwise owed to the CFC's determination is

therefore "nullified." Ebrahimi, 114 F.3d at 166; Moore's Federal Practice, §§ 54.23[2] & n. 31. Although in certain cases, the failure of the trial court to articulate its reasoning may be excused where "the posture of the case and the factors justifying entry of judgment are apparent," W.L. Gore, 975 F.2d at 865, this clearly is not such a case. Given the high level of overlap in the legal and factual issues between the adjudicated and unadjudicated claims that necessarily inheres in a decision to adjudicate just five months' worth of transactions on such long-term leases, there is no proper basis for concluding there was no just reason for delay.

WHEREFORE, the United States requests that its motion be granted and that the Court dismiss the appeal for lack of appellate jurisdiction.[5]

Respectfully submitted,

JOHN A. BRYSON
Attorney
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 23795 (L'Enfant Plaza Station)
Washington, D.C. 20026
(202) 514-2740

OF COUNSEL:

CANDACE N. BECK
HOLLY H. CLEMENT
ELISABETH C. BRANDON
Office of the Solicitor
Indian Trust Litigation Office
U.S. Department of the Interior
Washington, D.C. 20240

October 9, 2007
90-2-20-09922

[5] As noted, the Office of the Solicitor General currently has under consideration whether the United States should seek certification of some of the CFC's orders for an interlocutory appeal pursuant to 28 U.S.C. 1292(d)(2), if this motion is granted, as an alternative means of obtaining appellate review of rulings of the CFC that could be applied to the remainder of the case.

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing MOTION OF THE APPELLANT UNITED STATES TO DISMISS THE APPEAL FOR LACK OF APPELLATE JURISDICTION has been served upon counsel this 9th day of October, 2007, by First Class United States Mail addressed to:

Wilson K. Pipestem
Pipestem Law Firm, P.C.
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036

Merrill C. Godfrey
James P. Tuite
W. Eric Pilsk
Akin, Gump, Strauss, Hauer & Feld
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036

John A. Bryson
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 23795 (L'Enfant Plaza Station)
Washington, D.C. 20026
(202) 514-2740