**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 99-550 L (into which has been consolidated No. 00-169 L)<br>Judge Emily C. Hewitt |
| THE UNITED STATES OF AMERICA, | ) | Electronically Filed<br>December 21, 2007 |
| Defendant. | ) | |

**PLAINTIFF OSAGE NATION'S REPLY BRIEF**
**IN SUPPORT OF ITS MOTION TO DISQUALIFY BRADLEY D. BRICKELL**
**AS COUNSEL FOR THE PROPOSED INTERVENORS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

ARGUMENT ........................................................................................................2

I. AS A MATTER OF LAW, THE OSAGE NATION WHOM MR. BRICKELL REPRESENTED IN THESE ACTIONS IS THE SAME OSAGE NATION THAT HAS MOVED TO DISQUALIFY HIM. ........................2

II. MODEL RULE 1.9(a) PROHIBITS ANY REPRESENTATION THAT IS "MATERIALLY ADVERSE" TO A FORMER CLIENT, IRRESPECTIVE OF WHETHER IT IS IN A PLAINTIFF-DEFENDANT POSTURE. ....................7

III. AN EVIDENTIARY HEARING REGARDING CONFIDENCES SHARED WITH MR. BRICKELL WOULD BE IMPROPER AND UNNECESSARY. ....................................................................................9

IV. DISQUALIFICATION HERE IS MANDATORY IRRESPECTIVE OF ANY INTEREST OF THE PROPOSED INTERVENORS OR THEIR PUTATIVE CLASS. ....................................................................................11

CONCLUSION ....................................................................................................13

## INDEX TO EXHIBITS

A An Act to Reaffirm the Inherent Sovereign Rights of the Osage Tribe to Determine Its Membership and Form of Government P.L. 108-431, 118 Stat. 2609 (Dec. 3, 2004)

B The Constitution of the Osage Nation (March 11, 2006)

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bayside Federal Savings & Loan Ass'n v. United States*, 57 Fed. Cl. 18 (2003) .............11

*Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373 (10th Cir. 1994) ........................................8, 10

*In Re Corn Derivatives Antitrust Litigation*, 748 F.2d 157 (3d Cir. 1984)....................7, 12

*In re Dayco Corp. Derivative Securities Litigation*, 102 F.R.D. 624 (S.D. Ohio 1984) ..........12

*Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999)..............................................12

*Logan v. Andrus*, 640 F.2d 269 (10th Cir. 1981)...........................................................3

*In re Meridian Automotive Systems-Composite Operations, Inc.*, 340 B.R. 740 (Bankr. D. Del. 2006) ..........10

*Osage Nation v. United States*, 57 Fed. Cl. 392 (2003)...................................................6

*Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564 (Fed. Cir. 1984) ................12

*Tannahill v. United States*, 25 Cl. Ct. 149 (1992)...........................................................11

*United States v. 43.47 Acres of Land*, 855 F. Supp. 549 (D. Conn. 1994) .........................3

*United States v. Cuauhtemoc Gonzalez-Lopez*, 126 S. Ct. 2557 (2006)...........................13

*United States v. Culp*, 934 F. Supp. 394 (M.D. Fla. 1996)................................................9

*United States v. Lara*, 541 U.S. 193 (2004)...............................................................2, 4

*United States v. Stiger*, 413 F.3d 1185 (10th Cir. 2005)...............................................8, 11

## STATE CASES

*Piette v. Bradley & Leesberg*, 930 P.2d 183 (Okla. 1996) ........................................10, 11

*Prospective Investment & Trading Co. v. GBK Corp.*, 60 P.3d 520 (Okla. Ct. App. 2002) ..........10, 11

## CONSTITUTIONS AND STATUTES

United States Constitution Art. I, § 8 cl. 3.............................................................2

The Constitution of the Osage Nation (March 11, 2006) Art. I.........................................2

The Constitution of the Osage Nation (March 11, 2006) Art. XV, Sec. 4 ..........................4

Act of June 28, 1906, Chapter 3572, 34 Stat. 539 .................................................. *passim*

An Act to Reaffirm the Inherent Sovereign Rights of the Osage Tribe to Determine Its Membership and Form of Government P.L. 108-431, 118 Stat. 2609 (Dec. 3, 2004) .......... *passim*

## OTHER AUTHORITY

*Cohen's Handbook of Federal Indian Law* § 4.01[1][a] (2005) ........................................2

ABA Model Rule 1.9 ........................................................................................ *passim*
ABA Model Rule 1.10 ........................................................................................10
ABA Model Rule 1.13(a)........................................................................................3
Treaty of Fort Clark (signed Nov. 10, 1808, ratified Apr. 28, 1810) ..................................3

## INTRODUCTION

In his Response to the Motion to Disqualify ("Response" or "Resp."), Mr. Brickell attempts to explain away his conflict of interest as former counsel to the Osage Nation by claiming that the "Osage Nation" that he previously represented is not the same "Osage Nation" that is plaintiff and movant here. Rather than admit his own ethics violation and withdraw, he attacks his former client's sovereign authority to determine its own membership and its identity as the Osage mineral trust beneficiary. He claims that when the Osage Nation adopted a new constitution in 2006 expanding membership to include all descendants of the 1906 Osage roll, it ceased to be the "Osage Tribe" named in the 1906 Act as mineral trust beneficiary—that it ceded that identity by operation of law to the individual headright owners, eight of whom he represents. He seeks an evidentiary hearing with the Court to prove this point. As discussed below in Part I, his contrived argument is incorrect as a matter of federal statutory law, so no evidentiary hearing on this point is required or appropriate.

Mr. Brickell also attempts to evade the plain prohibition of ABA Model Rule 1.9(a) by arguing that it applies only when former and current clients are adverse as plaintiff and defendant, and then only after an evidentiary hearing establishes that the lawyer possesses confidential information. Rule 1.9(a) by its terms includes neither of these requirements, as discussed below in Parts II and III. Finally, Part IV refutes Mr. Brickell's reliance on the proposed intervenors' interest in counsel of their choice. Prejudice to the proposed intervenors is irrelevant in the context of an actual, current conflict of interest. The undisputed facts and the governing law here require that Mr. Brickell be disqualified.

## ARGUMENT

### I. AS A MATTER OF LAW, THE OSAGE NATION WHOM MR. BRICKELL REPRESENTED IN THESE ACTIONS IS THE SAME OSAGE NATION THAT HAS MOVED TO DISQUALIFY HIM.

Mr. Brickell does not dispute that he served as counsel for the "Osage Nation and/or Tribe of Indians of Oklahoma"[1] from the time he filed the complaints here on its behalf until 2003. *See* Resp. at 2. And he does not claim that there has been a substitution of plaintiff on the dockets in these cases. Instead, Mr. Brickell argues that the Osage Nation that is plaintiff and movant here is "*not* the same 'Osage Nation or Tribe of Indians'" he formerly represented. Resp. at 9; *accord id.* at 3.[2] According to Mr. Brickell, the 1906 Act forever casts in stone the identity of the "Osage Tribe" it names as trust beneficiary. He then argues that the 2006 Osage Constitution is inconsistent with the 1906 Act because it expanded tribal membership to include descendants of the 1906 Act roll irrespective of headright ownership. The implication of this argument is that the Osage Nation lacks the sovereignty to determine its own membership. Mr. Brickell fundamentally misunderstands federal law applying to tribes generally and the law specific to the Osage Nation.

Indian tribes are governments recognized as sovereigns in the U.S. Constitution. *See* U.S. Const. Art. I, § 8, cl. 3 (giving Congress power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes"); *see also United States v. Lara*, 541 U.S. 193, 200 (2004); *Cohen's Handbook of Federal Indian Law* § 4.01[1][a] (2005)

---

[1] As reflected in the captions of these matters, there is no legally significant difference here between the terms "Osage Tribe" and "Osage Nation," and Mr. Brickell does not contend otherwise. *See* Resp. at 8; *cf.* The Constitution of the Osage Nation (March 11, 2006) ("2006 Const.") (attached hereto as Exh. B) Art. I ("This tribe shall hereafter be referred to as The Osage Nation, formerly known as the Osage Tribe of Indians of Oklahoma.").

[2] Mr. Brickell also couches this argument in terms of whether the Osage Nation has "standing" to seek his disqualification, *see* Resp. at 3, 7, but he does not dispute that a former client always has such standing.

(discussing "the independent origin of tribal sovereignty"). This is true of the Osage Nation, which first established treaty relations with the United States in 1808, well before the passage of the 1906 Act. *See* Treaty of Fort Clark (signed Nov. 10, 1808, ratified Apr. 28, 1810). Even the form of Osage government established by the Congress in 1906 had general authority over all tribal matters, including those involving non-shareholder Osages. *See, e.g., Logan v. Andrus*, 640 F.2d 269 (10th Cir. 1981) (holding that the Osage Nation's sovereign power extends beyond its authority under the 1906 Act to manage the proceeds of the mineral estate). Mr. Brickell repeatedly refers to the proposed intervenors, eight individual Osages, as "the exact same parties" he formerly represented, Resp. at 7; *see id.* at 2-3, 9, 10, incorrectly defining the Osage Nation as a group of individuals rather than a government. *See, e.g., United States v. 43.47 Acres of Land*, 855 F. Supp. 549, 551 (D. Conn. 1994) ("[A] tribe is not a static group. Its existence is preserved by new generations succeeding to membership. Though the membership changes, the tribe is potentially forever."). Mr. Brickell's former client is the Osage Nation, not individual headright owners. *See* ABA Model Rule 1.13(a) ("A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.").[3]

Further, Mr. Brickell ignores the controlling 2004 statute that directly refutes his characterization of the Osage Nation. The 1906 Act was clarified in 2004 by "An Act to Reaffirm the Inherent Sovereign Rights of the Osage Tribe to Determine Its Membership and Form of Government," P.L. 108-431, 118 Stat. 2609 (Dec. 3, 2004) (the "2004 Sovereignty Act" or "2004 Act") (attached as Exhibit A). The 2004 Act reaffirmed that the Osage Nation existed as a sovereign nation long before the 1906 Act, so its identity did not and does not depend on that Act or on the statutory concept of headrights. As the 2004 Sovereignty Act's full title suggests, it

[3] Thus, the affidavits he has submitted from two of his current clients who were members of the former Osage Tribal Council are irrelevant.

"reaffirms the inherent sovereign right of the Osage Tribe to determine its own form of government" and "to determine its own membership, provided that the rights of any person to Osage mineral estate shares are not diminished thereby." *Id.* § 1(b)(2).[4]

In reaffirming the Osage Nation's sovereignty, the 2004 Sovereignty Act clarifies the distinction between (a) the 1906 Act's "legal" membership in the Osage Nation for the purpose of determining which individuals would receive surface land allotments and the right to monies derived from the tribal mineral estate (*i.e.*, a headright); and (b) membership in the Osage Nation granted not by federal statute but by the Nation itself as a sovereign. "[T]he term 'legal membership' in section 1 of the [1906 Act] means the persons eligible for allotments of Osage Reservation lands and a pro rata share of the Osage mineral estate [proceeds] as provided in that Act, not membership in the Osage Tribe for all purposes." 2004 Act § 1(b)(1). It also preserves the 1906 Act's trust machinery for collecting and disbursing revenues derived from the tribal mineral trust to the headright holders. *Id.*[5]

Thus, the 2004 Act clarifies that although there are two kinds of membership ("legal" and "for all purposes") in the Osage Nation, there is only *one* Osage Nation, which (1) has the sovereign power to determine its own membership "for all purposes" independent of headright ownership, (2) can determine its own form of government notwithstanding the 1906 Act, and (3) is the 1906 Act trust beneficiary of the Osage mineral estate and the tribal trust fund account

---

[4] *Cf. United States v. Lara*, 541 U.S. 193 (2004). In *Lara*, the Court considered a statute that recognized the inherent sovereign right of tribes to prosecute misdemeanors against nonmembers, even though prior Court decisions had found no such sovereign right. The Court affirmed the statute, holding, in essence, that Congress can validly regulate the scope of tribal sovereignty.

[5] *See also* 2006 Const. Art. XV, § 4 ("The Mineral Estate of the Osage Reservation is reserved to the Osage Nation. The government of the Osage Nation shall have the perpetual obligation to ensure the preservation of the Osage Mineral Estate. The government shall further ensure that the rights of members of the Osage Nation to income derived from that Mineral Estate are protected.").

from which funds are distributed to the headright owners. In this manner, the 2004 Act expressly recognizes the Osage Nation's pre-existing sovereign power to adopt such measures as the 2006 Constitution *without* ceasing to be the trust beneficiary named in the 1906 Act. Accordingly, the sovereign Osage Nation is the "Osage Tribe" referred to in the 1906 Act.

Therefore, contrary to Mr. Brickell's assertions, the 2006 Constitution did not create a "new" Osage Nation that is inconsistent with the 1906 Act and outside federal law. Rather, it is an exercise of sovereign authority, authority that existed before the 1906 Act and is recognized by federal law. The 2004 Act supports precisely those provisions in the 2006 Constitution that Mr. Brickell argues deprive the so-called "new" Osage Nation of legitimacy as trust beneficiary. As recognized by this controlling federal law, the sovereign Osage Nation had the authority to expand its membership and change its government in 2006 without (as Mr. Brickell would have it) creating an entirely new entity. (In similar fashion, the sovereign United States did not create a new entity each time it amended its Constitution to expand suffrage or passed laws extending citizenship rights.) Thus, because the 2006 Constitution did not make the plaintiff here any less the trust beneficiary under the 1906 Act, it did not make the plaintiff any less Mr. Brickell's former client. His attempt to disavow his former client is contrary to federal law, and the evidentiary hearing Mr. Brickell seeks would serve no purpose.

Besides being contrary to federal law, Mr. Brickell's disavowal of the Osage Nation as his former client and as the trust beneficiary under the 1906 Act leaves him with an awkward question: After 2006, who *is* the Osage Tribe described in the 1906 Act? His answer is that since 2006, the "Osage Tribe" of the 1906 Act has been the associated headright owners, with no form of government or organization. Thus, he essentially equates the headright owners with the Tribe itself. This aspect of his argument further highlights the incorrectness of his position,

because it conflicts with this Court's ruling that "the Tribe, not the headright holders, is the direct trust beneficiary." *Osage Nation v. United States*, 57 Fed. Cl. 392, 395 (2003) (quoting Plaintiff's Post-Hearing Brief at 1) (footnote omitted).

Moreover, Mr. Brickell advocated for that ruling when he represented the Osage Nation, so he is now contradicting not only the Court but the arguments that he himself made on behalf of his former client. When he previously represented the Osage Nation, he countered the United States' argument "that the headright owners own all Osage minerals" by stating that "it is the Osage Nation *itself* which owns the beneficial interest in the minerals . . . ." Mot. Exh. B at 13 (emphasis in original); *accord id.* at 15 (noting that the Tribe, not the headright holders, "in 1883, received title to the Osage mineral estate."). He also correctly explained that "the Tribe initially receives all royalty income (as the Tribe itself in fact owns the mineral interests) and for a time holds the funds until they are distributed [to headright holders] as required by law." *Id.* at 12 n.7 (emphases omitted). And when Judge Wiese asked him, "what is the underlying legal relationship between the individual [headright owner] and The Tribe that permits The Tribe to be a representative?", Mr. Brickell explained that under the 1906 Act, "*the tribal body itself is the elected government*, just like the United States can prosecute claims on behalf of its citizens." Mot. Exh. C at 64:14-18 (emphasis added). Thus, Mr. Brickell has already effectively refuted his own claim that beginning in 2006 the Osage Tribe under the 1906 Act has consisted of only the collective headright owners. The one cannot be equated with the other.

In sum, as a matter of law, Mr. Brickell's former client is the plaintiff and movant here. He owes the Osage Nation a duty of loyalty, and he has violated that duty.[6]

---

[6] As noted in the Motion to Disqualify, the Osage Nation objected to a similar ethical violation by Mr. Brickell in 2003, when he sought to represent certain individual headright

## II. MODEL RULE 1.9(a) PROHIBITS ANY REPRESENTATION THAT IS "MATERIALLY ADVERSE" TO A FORMER CLIENT, IRRESPECTIVE OF WHETHER IT IS IN A PLAINTIFF-DEFENDANT POSTURE.

Mr. Brickell's Response does not dispute that the proposed intervenors are in important respects at odds with the Osage Nation's position in this litigation. Indeed, his Response exacerbates the adversity by essentially claiming that the movant here is not the proper plaintiff under the 1906 Act. After thus essentially conceding that his current clients' interests are adverse to the Osage Nation, he takes the baseless, formalistic position that only plaintiff-defendant adversity in litigation satisfies Rule 1.9(a). He claims that "Rule 1.9 has never been applied to exclude an attorney from representation of an additional or new client against a common Defendant on the same issue that he formerly prosecuted against the same Defendant." Resp. at 11 (emphasis omitted). This statement is incorrect.

In *In Re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 164 (3d Cir. 1984), which Mr. Brickell himself cites (Resp. at 14), counsel had jointly represented two plaintiffs in the same case, a class action. When a proposed settlement was negotiated, one plaintiff favored the settlement and the other objected to it. Counsel withdrew from representing the objecting plaintiff but sought to continue representing the settling plaintiff. The objecting plaintiff successfully invoked Rule 1.9(a) on appeal in the Third Circuit. Although the court noted the "interests of Pan-O-Gold in retaining its chosen counsel," the court held that such interests had to yield to "Land O'Lakes' interests in the loyalty of its [former] attorney." *Id*. at 162. Thus, "materially adverse" interests are not limited to plaintiff-defendant adversity. This also is plain from the text of the rule, which contains no such requirement.

---

holders as amici in this case. *See* Motion at 4-5. Now, as in 2003, Mr. Brickell's representation of individual headright owners in this case violates his ethical duties to the Osage Nation.

None of the cases cited by Mr. Brickell require that a lawyer represent a formal opponent in litigation against a former client before being disqualified under Rule 1.9(a). Mr. Brickell quotes language from *United States v. Stiger*, 413 F.3d 1185 (10th Cir. 2005), and *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1384 & n.8 (10th Cir. 1994), referring to disqualification of "opposing counsel" under Rule 1.9(a). *See* Resp. at 6. But each of these cases involved a motion to disqualify "opposing counsel" only, so in each case the court was merely describing the facts before it and applying Rule 1.9(a) accordingly. Each court explained that it was addressing only what "[a] party seeking to disqualify *opposing counsel* on the ground of a former representation must establish." *Cole*, 43 F.3d at 1384; *accord Stiger*, 413 F.3d at 1195. Thus, neither court even had occasion to address a motion for disqualification of an adverse intervenor's counsel, much less bar such motions categorically.

Mr. Brickell also relies on language from the comments to Rule 1.9(a), quoted in *Stiger*, 413 F.3d at 1195, to the effect that Rule 1.9(a) asks "whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." This does not help him, because in *Stiger*, as in the Model Rules comment, the context for this statement is a delineation of what constitutes a "substantially related" matter.[7] Here, Mr. Brickell does not contest that this is the *same* matter in which he previously served as Osage Nation counsel. *See* Resp. at 2. And in any event, his attempts to contradict his own

[7] *See Stiger*, 413 F.3d at 1195 ("In applying . . . the 'substantial relation' test[,] we look to whether the factual contexts of the two representations are similar or related. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.") (internal citations omitted); Model Rule 1.9 cmt. 2 ("The scope of a 'matter' for purposes of this Rule depends on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. . . . The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.")

previous advocacy in this Court amply demonstrate that he is "justly regarded" as having changed sides, irrespective of what the formal alignment of the parties and proposed intervenors may be.

**III. AN EVIDENTIARY HEARING REGARDING CONFIDENCES SHARED WITH MR. BRICKELL WOULD BE IMPROPER AND UNNECESSARY.**

Mr. Brickell argues that this Court must hold an evidentiary hearing to determine whether he possesses confidential information from his previous representation of the Osage Nation. There is no basis in Rule 1.9(a) for holding such a hearing, which would be both unnecessary and improper. As stated in cases cited in the Motion to Disqualify—none of which Mr. Brickell addresses—Rule 1.9(a) does not require that an attorney have received confidential information from a former client to be disqualified. "[U]nder the ethical canons a duty of loyalty exists apart and distinct from the duty to maintain client confidences," and therefore "Model Rule 1.9(a) . . . imposes a blanket prohibition" that "applies *without regard* to whether the prior representation entailed the disclosure of confidential communications." *United States v. Culp*, 934 F. Supp. 394, 398 (M.D. Fla. 1996) (emphasis in original).

The absence of any "confidential information" requirement in Rule 1.9(a) is vivid when that Rule is compared with its counterpart, Rule 1.9(b). Rule 1.9(b), which addresses *imputed* disqualification of an entire law firm, includes an express requirement that the firm have acquired material confidences.[8] A comparison of Rules 1.9(a) and 1.9(b) shows that Mr. Brickell is attempting to read something into Rule 1.9(a) that is not there.

[8] "A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client (1) whose interests are materially adverse to that person; and (2) about whom the lawyer had acquired [confidential] information . . . that is material to the matter . . . ." ABA Model Rule 1.9(b).

Of course, the possession of confidential information can be *relevant* to disqualification under Rule 1.9(a), but Mr. Brickell is wrong to argue that it is a requirement. It can be relevant if, unlike here, the nature of the relationship between the attorney and purported client is in doubt: courts have looked to whether confidential information was shared by the purported client with the lawyer to determine whether an attorney-client relationship arose from the interaction. *See, e.g.*, *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1384 & n.8 (10th Cir. 1994) (cited in Resp. at 6). Also, if there is some question as to whether the prior and current matters are "substantially related," the content of confidential information in the matters at issue can be a relevant factor. *See* ABA Model Rule 1.9 cmt. 3; *In re Meridian Automotive Systems-Composite Operations, Inc.*, 340 B.R. 740, 747 (Bankr. D. Del. 2006) ("[W]hile the risk of a breach of client confidences is a sufficient condition for 'relatedness,' it is not a *necessary* one."). Here, because Mr. Brickell admits that the relationship he had with the Osage Nation in this same matter from 1999-2003 was an attorney-client relationship, the Osage Nation need not allege or prove that he possesses confidential information.

Mr. Brickell cites two Oklahoma cases for the proposition that an evidentiary hearing is always mandatory under Rule 1.9(a) and that an order for disqualification must "include a specific factual finding that the attorney had knowledge of material and confidential information." *See* Resp. at 5-6, 9 (citing *Piette v. Bradley & Leesberg*, 930 P.2d 183 (Okla. 1996), and *Prospective Investment & Trading Co. v. GBK Corp.*, 60 P.3d 520 (Okla. Ct. App. 2002)). *Piette* is a summary disposition that makes no mention of Rule 1.9, much less Rule 1.9(a). It provides no statement of facts regarding the decision on review, and it cites without explanation two cases involving Rule 1.10. Like Rule 1.9(b), Rule 1.10 deals with imputed

disqualification and requires a showing that confidential information was shared, while Rule 1.9(a) does not. Thus, *Piette* is of no relevance here.

*Prospective Investment* incorrectly viewed *Piette* as binding precedent in the context of Rule 1.9(a). Even though the court of appeals in *Prospective Investment* conceded that "our Supreme Court has not specifically identified the standards that must be met in a disqualification proceeding brought under Rule 1.9 only," it inexplicably treated *Piette* as controlling. 60 P.3d at 525 n.1. *Prospective Trading*'s misguided obedience to *Piette*'s inapplicable commands conflicts with the text of Rule 1.9(a) and with every other authority of which we are aware. Even the court in *Prospective Trading* noted that its obedience to *Piette* violated the established principle that "to hold a hearing when disqualification is sought solely under Rule 1.9 would frustrate the reason underlying the rule." *Id.* This Court need not and should not replicate *Prospective Trading*'s error.[9]

## IV. DISQUALIFICATION HERE IS MANDATORY IRRESPECTIVE OF ANY INTEREST OF THE PROPOSED INTERVENORS OR THEIR PUTATIVE CLASS.

As shown in the Motion to Disqualify, where an actual prohibited conflict of interest exists under Rule 1.9(a), disqualification is mandatory. Mr. Brickell resists this controlling law by adamantly defending the headright owners' interest in hiring the Osage Nation's former counsel and by arguing that they would be prejudiced by his disqualification. But none of the

[9] Notwithstanding Mr. Brickell's admission to the Oklahoma bar, these Oklahoma cases have no special weight here, because ABA Model Rule 1.9 "reflects the national standard to be used in ruling on disqualification motions." *Stiger*, 413 F.3d at 1195. Although Mr. Brickell cites *Bayside Federal Savings & Loan Ass'n v. United States*, 57 Fed. Cl. 18 (2003), and *Tannahill v. United States*, 25 Cl. Ct. 149 (1992), for the proposition that in addition to the Model Rules, "the Rules of Professional Conduct of the Bar to which the attorney at issue is admitted to practice" are also relevant, he also concedes that Oklahoma Rule of Professional Conduct 1.9 is identical to ABA Model Rule 1.9. *See* Resp. at 6 (citing *Stiger*). Thus, there is no meaningful choice-of-law issue here.

authorities he cites accord such an interest any weight when a lawyer has an *actual* conflict of interest (as opposed to a theoretical or imputed conflict).

Mr. Brickell cites *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1577 (Fed. Cir. 1984) (applying 7th Circuit law), for the correct principle that "[d]isqualification, *as a prophylactic device* for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary." (Emphasis altered.) Here, disqualification is not a precautionary measure against potential impropriety, because impropriety has already occurred. As shown above and in the Motion to Disqualify, Mr. Brickell has an actual, unwaived, personal conflict of interest with his former client. In this situation, *Panduit* holds that "there can be no hesitation to disqualify where impropriety *has occurred*." 744 F.2d at 1577 (emphasis in original). Mr. Brickell himself quotes cases recognizing this distinction. *See* Resp. at 13 (distinguishing between "probable or real conflicts of interest" and "mere apparent or theoretical conflicts") (quoting *In re Dayco Corp. Derivative Securities Litigation*, 102 F.R.D. 624, 632 (S.D. Ohio 1984)). Although Mr. Brickell emphasizes how harsh the remedy of disqualification is, he relies on cases that arose under rules dealing with situations other than an actual conflict of interest, situations where other remedies were available. Here, there is no way to remedy Mr. Brickell's conflict without disqualifying him.

Mr. Brickell also attempts to rely on the supposed interest of the headright owners as class-action litigants in having him continue to represent them as class counsel. Resp. at 14. He cites *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 589 (3d Cir. 1999), where, in the context of a proposed class-action settlement, a minority of class members objected to the settlement and withdrew from the attorney-client relationship with class attorneys. The *Lazy Oil* court distinguished *In Re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 164 (3d Cir. 1984) (cited

*supra* at 7), on the basis that the lawyers in *Corn Derivatives* had previously represented only discrete plaintiffs rather than the entire class. It then held that where counsel has previously represented an entire class, dissenting class members may not use the threat of a disqualification motion to gain leverage. *Lazy Oil* is inapposite here, and *Corn Derivatives* applies, because the previous representation at issue here was not a class action and the Osage Nation is not a dissenter; rather, the purported class here are the newcomers. The previous representation was solely of the Osage Nation, which is by priority entitled to Mr. Brickell's undivided loyalty irrespective of any countervailing interest.

Finally, unlike *United States v. Cuauhtemoc Gonzalez-Lopez*, 126 S. Ct. 2557 (2006), cited in Resp. at 13, this case does not involve a criminal defendant's constitutional right to counsel of his choosing. The proposed intervenors have no constitutional right to hire the Osage Nation's former counsel in this same matter.

**CONCLUSION**

The Court should deny Mr. Brickell's request for an evidentiary hearing because there are no relevant factual disputes regarding the application of Rule 1.9(a). The Court should enter an order disqualifying Mr. Brickell as counsel for the proposed intervenors.

December 21, 2007

Respectfully submitted,

*s/Wilson K. Pipestem*
WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation