**No. 99-cv-00550 ECH**
**EMILY C. HEWITT**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**THE OSAGE NATION OF INDIANS OF OKLAHOMA,**

**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA,**

**Defendant.**

---

# RESPONSE OF PROPOSED INTERVENORS TO ISSUES RAISED RE: MOTION TO DISQUALIFY BY THE OSAGE NATION IN ITS REPLY BRIEF (DOCUMENT 287) AND AT THE HEARING ON JANUARY 4, 2008

---

**Dated JANUARY 18, 2008**

**RESPONSE OF PROPOSED INTERVENORS TO ISSUES RAISED RE: MOTION TO DISQUALIFY BY THE OSAGE NATION IN ITS REPLY BRIEF (DOCUMENT 287) AND AT THE HEARING ON JANUARY 4, 2008**

## I. APPLICATION OF OKLAHOMA LAW AND RULE 1.9

The undersigned proposed intervenors ("intervenors"), on page 3 of their response brief herein (document 286) cited *Bayside Federal Savings & Loan Association, et al.* v. U.S., 57 Fed. Cl. 18 (2003) for the proposition that the Court, in evaluating the disqualification motion, is to be guided by the model rules of the ABA and **the rules of professional conduct in Oklahoma**. At the January 4, 2008, telephonic hearing (herein after referred to as HRG. TRAN. p.__), the Plaintiff agreed. *See* HRG. TRAN. p. 9, lines 11-15.

In its reply brief (document 287) and at the January 4, 2008 hearing, the Plaintiff contended that the Oklahoma cases cited by the undersigned were distinguishable because Rule 1.10 was involved, not Rule 1.9, the stated basis for Plaintiff's motion. *See* Plaintiff Reply, document 287, p. 10 and HRG. TRAN. p. 10. However, the **Oklahoma Supreme Court has now published a new opinion**, *Arkansas Valley State Bank v. Phillips*, 2007 OK 78, 171 P.3d 899, a copy of which is appended hereto as **Exhibit 1**. In *Arkansas Valley State Bank*, the Oklahoma Supreme Court specifically discusses Rule 1.9 and holds at para. 23 and in its conclusion at para. 25 the following:

1. A party litigant's right to employ the counsel of his or her choice is fundamental.

2. A disqualification order is a drastic measure.

3. The standard for granting a motion to disqualify counsel is whether real harm to the integrity of the judicial process is likely to result; and,

4. If the trial court grants a motion to disqualify based on conflict of interest or improper possession of confidential information, it must hold an evidentiary hearing

and make a specific factual finding that the attorney had knowledge of material and confidential information which would be used improperly.

Model Rule 1.9, in pertinent part, provides:

(a) A lawyer who has formerly represented a client in the matter shall not thereafter represent another person in the same or a substantially related matter in which that persons interests are materially adverse to the interest of the former client...

The official Comments to ABA Model Rules Rule 1.9 show that **the "material adversity" must be in the transaction in dispute in the litigation**, as follows:

> (2) The Scope of a "matter" for purposes of this Rule depends on the facts of a particular situation or transaction...When a Lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited....
>
> The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question. (emphasis added)

(*See* Copies of Comments and Rule appended as **"Exhibit 2"**)

Herein, "changing sides" would involve attorney Brickell being the former legal counsel for the United States, not the Osage Tribe of Indians.

At the January 4, 2008 hearing, the undersigned counsel challenged Plaintiff to explain to the Court what type of confidential information he possessed that would work to the detriment of (i.e. be materially adverse to) the Plaintiff. Counsel for Plaintiff could not respond to the question. (*see* HRG. TRAN. p.14, line 17 through 25).

## II. WHO IS THE CURRENT PLAINTIFF AND WHO IS THE OSAGE TRIBE OF INDIANS

In the Plaintiff's Reply (document 287), and at the January 4, 2008 hearing, the Plaintiff referred this Court to 118 stat. 2609, passed December 3, 2004, ("the 2004 Act") (*See* **Exhibit "3"**), for the proposition that the current Plaintiff, the Osage Nation, is one and the same as the Osage Tribe of Indians who were represented by Brickell in 2002. However, the 2004 Act and its predecessors, as well as the Plaintiff's admissions at the January 4, 2008 hearing, prove the opposite is true.

The 2004 Act references the 1906 act and further states in (a)(3),

> **Today**, only Osage Indians who have a headright share in the mineral estate are members of the Osage Tribe. (emphasis added)

Attorney Brickell had already been replaced prior to 2004. When questioned at the January 4, 2008 hearing, the Plaintiff averred that the government had not changed (HRG. TRAN. p. 8, line 14). However, immediately thereafter, Plaintiff's counsel admitted the form of government had changed, the constituency had changed (HRG. TRAN. p. 8, lines 15 and 16) and then reiterated that the Osage Tribe has changed its membership and form of government (HRG. TRAN. p. 8 line 23).

The Plaintiff also attached the principal governing document, its Constitution, signed in the spring of 2006, as "Exhibit B" to its reply, document 288. Therein, the "new" Osage Nation, the current Plaintiff, was formed. In Article III, Section 2, this Constitution states that, all Osages, not just headright owners, are "members" of the Osage Nation and now have the right to vote. As explained in Intervenors' Response (document 286) at pages 8 & 9, **the Osage Tribe set forth in the Act of June 28, 1906 is a closed roll tribe consisting of only the headright owners, who are the proposed intervenors herein**.

A principal cause of action herein, a portion of which has already been tried in this Court, concerns the failure on behalf of the Defendant to collect the proper amount of royalty from oil and gas operators in accordance with the terms of the oil and gas leases covering minerals "held by the United States in trust for benefit of the Osage Indian Tribe" *see* 98 stat. 3163 at 3165 § 11(1) (Act of October 30, 1984) (*See* **Exhibit 5**). **Clearly, the parties damaged are those owning the right to receive those mineral revenues**. As noted in January 4, 2008 hearing, this becomes even more important due to the Defendant's continued and persistent challenges to the standing of the Plaintiff (now the Osage Nation) to bring this matter. The Federal Circuit has now granted the Appellant's motion to dismiss Appeal No. 2007-5120 on January 9, 2008, leaving this defense intact.

In its ruling of July 28, 2003, this Court overruled Defendant's motion to dismiss on the standing issue since **(a)** the 1906 Act created a trust fund for the members of the Osage Tribe, **(b)** the Tribe has a real interest when the funds are within "the tribal trust account established under the 1906 Act" and **(c)** the Tribe also owns some headright interest in its own name. *See The Osage Nation v. The United States*, 57 Fed. Cl. 392 at 394-395 (2003). Note, the tribe's current ownership is believed to be approximately 1.8 headrights, acquired after 1978. It is clear that the current Plaintiff, the Osage Nation, came into existence in 2006. *See* the Nation's Constitution, Exhibit B to document 288, which relies upon the 2004 Act to authorize its very existence. As noted above, the Osage Nation "membership" is not the same as the tribe's, whose membership is defined in the 2004 Act:

> "legal membership" in section 1 of the Act entitled, "An Act for the division of lands and funds of the Osage Indians in Oklahoma Territory, and for other purposes", approved June 28, 1906 (34 Stat. 539), means the person eligible for allotments of Osage Reservation lands and a pro rata share of the Osage mineral estate as provided in that Act. *See* Act of 2004, Sec 1(b)(1)

The Osage Nation owns no headrights, unlike the Tribe. The very restrictive laws allowing ownership of Osage headrights by the Tribe start with the Act of October 21, 1978, 92 Stat. 1660 at 1663, §§ 7 and 8a. *(See* **Exhibit 4**), and the Act known as the Osage Tribe of Indians Technical Corrections Act of 1984, found at 98 Stat. 3163 at 3165 § 8(a)(3), and §11 (*See* **Exhibit 5**). In § 11(2), this act defines the "headright" as part of the Osage Mineral Estate. In § 11(1) the Osage Mineral Estate is the interest in minerals held by the United States in trust for the benefit of the Osage Indian Tribe under § 3 of the Osage Tribe Allotment Act. In § 11(5) the Osage Tribe Allotment Act is defined as the Act of June 28, 1906. Therefore, the headright(s) can be conveyed only to certain individuals or the Osage Tribe, as defined in 1906.

In the January 4, 2008 hearing, the Osage Nation claims that it is the "beneficiary" of this case, not the undersigned headright owners. *See* HRG. TRAN. p. 30, lines 12 & 13. (Note, p. 29, line 21 contains a scriveners error and statements following line 21 should be attributed to Mr. Godfrey, not "the Court").

In conclusion, two things are clear:

1. The Plaintiff has admitted that Oklahoma law should apply to its motion to disqualify. Oklahoma law has now been clarified by the recent decision of the Oklahoma Supreme Court, *Arkansas Valley State Bank v. Phillips*, cited above; and its holdings should be applied herein;

2. The Act of 2004, along with the admissions by Plaintiff at the January 4, 2008 hearing, show that the current Plaintiff is not the former client of attorney Brickell. The Plaintiff has no standing to pursue its motion of disqualification, as previously proposed in the intervenors' response, document 286.

WHEREFORE, in consideration of these premises the Plaintiff's motion to disqualify should be denied.

Respectfully submitted,

*/s Bradlely D. Brickell*

Bradley D. Brickell, OBA #1117
**BRICKELL & ASSOCIATES, P.C.**
400 Hightower Building
105 North Hudson
Oklahoma City, OK 73102
Telephone 405-236-0008
Facsimile 405-236-0013
**ATTORNEYS FOR PROPOSED INTERVENORS**