**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 99-550 L (into which has been consolidated No. 00-169 L)<br>Judge Emily C. Hewitt<br><br>Electronically Filed<br>January 25, 2008 |

**PLAINTIFF OSAGE NATION'S SECOND REPLY IN SUPPORT OF ITS MOTION TO DISQUALIFY BRADLEY D. BRICKELL AS COUNSEL FOR THE PROPOSED INTERVENORS**

**ARGUMENT**

**I. UNDER ABA MODEL RULE 1.9(a), NO SHOWING OF CONFIDENTIAL INFORMATION IS REQUIRED, AND THE OKLAHOMA CASES CITED BY MR. BRICKELL ARE IRRELEVANT.**

In his surreply, Mr. Brickell again fails to recognize that the correct legal test here requires no showing regarding confidential information. The Court has adopted ABA Model Rule 1.9(a), which categorically prohibits Mr. Brickell from representing any person in this matter whose *interests* are "materially adverse" to his former client here, the Osage Nation:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client . . . .

Mr. Brickell's arguments regarding confidential information entirely ignore the text of the rule. Mr. Brickell offers in its stead his own surprising and novel test.

Mr. Brickell laid out his theory at the January 4, 2008 hearing. At that hearing, the Osage Nation argued that confidential information is not mentioned in the text of Rule 1.9(a) because an attorney is irrebuttably presumed to possess confidential information from any prior representation in the same matter. *See* Tr. at 14:9-14; *see also* Tr. at 15:21-24. In response, Mr. Brickell admitted that he possesses confidential information obtained from the Osage Nation in the previous representation, but argued that this information "is not, and absolutely not, materially adverse to the plaintiff . . . ." Tr. at 16:4-5. Thus, Mr. Brickell argues that the Court cannot grant the motion to disqualify unless it finds that he has confidential *information* that is "materially adverse" to the Osage Nation. *See* Surreply at 2 (citing Tr. at 14:17-25). This argument misstates the relevant legal standard.

The question is not, as Mr. Brickell would have it, whether he possesses *information* that is "materially adverse" to the Osage Nation. Under Rule 1.9(a), the question is whether the *interests* of the Proposed Intervenors are materially adverse to the *interests* of the Osage Nation in this matter. As the Osage Nation has previously shown, Mr. Brickell does not and cannot dispute that they are. *See* Motion to Disqualify at 8-11; Reply at 7-9. He in fact amplifies the adversity in his surreply, highlighting the Proposed Intervenors' claim that as headright owners, *they* are the "Osage Tribe" referred to in the 1906 Act and are thus the proper plaintiff here.[1] Mr. Brickell has switched sides on that issue, as he has on others. *See* Motion to Disqualify at 8-10.

[1] *See* Surreply at 3 (arguing that "the Osage Tribe set forth in the [1906 Act]" consists of only "the proposed intervenors"); *id.* at 4 ("the Osage Nation 'membership' is not the same as *the tribe's*") (emphasis added); *id* at 4 (aligning himself with the United States and attacking this Court's July 2003 ruling in favor of the Osage Nation's standing: "the parties damaged [as a result of the United States' breaches of trust] are those owning the right to receive those mineral revenues"); *id.* at 5 (disputing the Osage Nation's argument "that [the Osage Nation] is the 'beneficiary' of this case, not the undersigned headright owners"); *id* at 4-5 (claiming that, under his theory, the Osage Nation is not the legal owner of valuable headright shares that form part of its legal stake in this suit).

In these circumstances, under Model Rule 1.9(a), neither the possession of confidential information nor the content of any such information is a factor. Disqualification is mandatory when a lawyer such as Mr. Brickell first represents one client in a matter and then represents another client adverse to the first in the same matter.

Mr. Brickell also mistakenly relies on standards applicable only to imputed conflicts of interest. In the case of an imputed conflict of interest, the lawyer for the former client is different from the lawyer for the current client, and the question is whether the relationship between the two lawyers (such as partnership in the same firm) supports disqualification. Under Rule 1.9(b), as under Rule 1.10, such imputed disqualification depends in part on whether the first lawyer has shared confidential information with the second. Here, Mr. Brickell is the *same* lawyer that previously represented the Osage Nation, so he has a direct conflict of interest—there is no need for imputation. As shown above, Rule 1.9(a) prohibits all direct conflicts of interest and does not require any showing regarding confidential information.

Mr. Brickell's citations to Oklahoma cases do not change the analysis. He takes the implausible position that Oklahoma cases limit this Court's power to discipline him. He also misleadingly suggests that the Osage Nation endorsed this position at the January 4, 2008 hearing, *see* Surreply at 1, when in fact the Osage Nation stated that Oklahoma law "does not restrict the Court's authority to apply the [M]odel [R]ules," and is "relevant" only to the extent that that law "expands [Mr. Brickell's] duties" beyond those required by this Court's rules. Tr. at 9:14-25. In applying its own rules of conduct, this Court is not bound by the decisions of state courts.

In any event, the Osage Nation has already shown that the two Oklahoma cases previously cited by Mr. Brickell are irrelevant to the facts here, *see* Reply at 10-11, and the

"new" case Mr. Brickell cites in his surreply fares no better. *See* Surreply at 1-2, citing *Arkansas Valley State Bank v. Phillips*, 171 P.3d 899 (Okla. 2007). Contrary to Mr. Brickell's assertions, *Arkansas Valley* is not a "new" case (it was issued on October 16, 2007, two months before Mr. Brickell filed his first brief regarding disqualification). And it is entirely irrelevant here. It does not involve a conflict of interest at all, and thus does not interpret or apply Rule 1.9(a). It rather deals with a situation where a lawyer was alleged to have obtained his opponent's confidential work product.

Mr. Brickell argues that an evidentiary hearing is required nonetheless. Apparently he thinks the Osage Nation must reveal the content of its confidential information in an evidentiary hearing and show that the information could be used to its detriment. According to Mr. Brickell, the price of enforcing Rule 1.9(a) is that the Osage Nation must reveal—and thereby destroy—its confidential communications with its former lawyer. This interpretation of the rule would defeat the rule, and thus reveals the absurdity of his position. By its terms, Rule 1.9(a) forecloses a lawyer from putting a former client in such a quandary.[2] Under that rule, Mr. Brickell must be disqualified.

---

[2] Even when possession of confidential information is relevant to show that two different matters are substantially related, it need not be revealed in an evidentiary hearing.

> A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.

ABA Model Rule 1.9, cmt. 3.

## II. MR. BRICKELL FAILS IN HIS ATTEMPT TO DISAVOW THE OSAGE NATION AS HIS FORMER CLIENT.

The sovereign "Osage Nation and/or Tribe of Indians of Oklahoma" that is plaintiff here is the same sovereign "Osage Tribe" referred to in the 1906 Act. Mr. Brickell's effort to distinguish between the two is futile. In his surreply, Mr. Brickell repeats his argument that the 2006 Osage Constitution created a "new" Osage Nation entirely distinct from the Osage Nation and/or Tribe that Mr. Brickell formerly represented. *See* Surreply at 3. (Mr. Brickell is less clear on whether the reestablishment of an Osage constitution leads to the creation of two Osage sovereigns, or one Osage sovereign and a group of associated Osage individuals.) He repeats his theory that the "Osage Tribe" referred to in the 1906 Act was powerless to change its membership requirements and its form of government and still remain the beneficiary of the Osage mineral trust. As before, he offers no legal authority for his theories and ignores the provisions of the 2004 Act to the contrary.

As explained in the Osage Nation's reply brief, the 2004 Act "reaffirms the inherent sovereign right of the Osage Tribe to determine its own form of government" and "to determine its own membership, provided that the rights of any person to Osage mineral estate shares are not diminished thereby." *Id.* § 1(b)(2). There is no suggestion that, by deciding to do either of these things, the Tribe would forfeit its sovereign identity or its status as beneficiary of the mineral trust, or that it would create a "new" entity. Certainly the 2004 Act does nothing to alter Osage tribal ownership of the mineral estate. These notions are purely Mr. Brickell's invention, and lack any legal support.

Mr. Brickell cites language in the preamble of the 2004 Act recognizing that at the time the Act was passed, only headright owners could be members of the Osage Nation. But the 2004 Act, in the language quoted above (which Mr. Brickell does not address), conclusively provides

that when the 2006 Constitution expanded membership, it did not change the identity of the Osage Nation. *See* Surreply at 3. Just as a corporation does not change its corporate identity every time it issues a new class of shares with new owners and/or new voting rights, neither does a sovereign government change its sovereign identity every time it modifies its form of government or citizenship laws. *See* Reply at 2-3, 5; *cf.* Tr. at 20:20-24 (the Court).

Moreover, the 2004 Act confirms the Osage Nation's status as the beneficiary of the trust under the 1906 Act, and requires that the *proceeds* of the trust continue to be distributed to headright owners.[3] *See* Reply at 4 & n.5. Just as shareholders' rights to dividends do not make the collective shareholders a corporation, the interest of headright owners in the proceeds of the trust does not make them the Osage Tribe. As Mr. Brickell himself previously advocated, and as this Court has already held, only the sovereign Osage Nation is the designated beneficiary of the trust. Thus, the 2004 Act mandates the conclusion that the Osage Nation is the same sovereign entity that Mr. Brickell formerly represented. For this Court to hold otherwise would have sweeping implications for the Osage Nation, far beyond the scope of the pending motion.

Finally, Mr. Brickell attempts to prop up his theory by citing to two amendments to the 1906 Act that refer to the "Osage Tribe." These amendments, adopted by Congress in 1978 and 1984, allow the "Osage Tribe" to own headrights. Mr Brickell argues, in circular fashion, that "[t]he Osage Nation owns no headrights" because it is not the "Tribe" referred to in these

---

[3] The Osage Nation emphatically rejects Mr. Brickell's alarmist statements suggesting that the Osage Nation is somehow trying to wrest assets from its own headright owners (*see*, *e.g.*, Motion for Intervention at 9). Federal and Osage tribal law unequivocally require that the *proceeds* of the trust, *including any money recovered by the Osage Nation in this lawsuit*, must be distributed to the headright owners, and *not* to all current members of the Osage Nation. That is, although the Osage Nation is the trust beneficiary of the Osage mineral estate under the 1906 Act and its amendments, that same body of law along with the 2004 Act require that the *proceeds* from the trust containing the mineral estate must be distributed *to headright owners*, as has always been done under the 1906 Act.

amendments. Surreply at 4-5. Under the federal law cited here and in the Reply, the Osage Nation *is* the "Tribe."[4] Mr. Brickell's arguments to the contrary must be rejected out of hand.

**CONCLUSION**

The Court should enter an order disqualifying Mr. Brickell as counsel for the proposed intervenors.

January 25, 2008

Respectfully submitted,

*s/Wilson K. Pipestem*
WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation

[4] In fact, Congress anticipated a change in Osage government in the 1978 amendment, directing that the form of Osage government would remain in place "until otherwise provided by an Act of Congress." 92 Stat. 1660.