# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 99-550 L (into which has been consolidated No. 00-169 L)<br>Judge Emily C. Hewitt<br><br>Electronically Filed<br>March 19, 2008 |

## PLAINTIFF OSAGE NATION'S MOTION FOR A SCHEDULING ORDER

Plaintiff Osage Nation moves the Court to enter an order adopting the two-part schedule set out in Exhibit A to govern further proceedings in this case. The Court has previously directed that "a method which allows for as speedy as possible a resolution of the matter should and must be used under Rule 1 . . . ." Tr. at 23:11-13, Dec. 10, 2003, No. 00-169. The Osage Nation believes that the proposed schedule is in keeping with that directive.[1]

In part one of the proposed schedule, the Osage Nation would file a motion for partial summary judgment on July 1, 2008. The motion would apply the Court's Tranche One rulings to calculate damages owed as a result of (a) all deposit-lag, excessive-cash-balance, and investment-yield claims for United States fiscal years 1973 to 1992, based on the Arthur Andersen report and methodologies approved by the Court in Tranche One; and (b) all oil-royalty undercollection claims for July 1974 to December 2000, based on information collected by the parties since the Court's Tranche One rulings. The oil-royalty damages calculation would

[1] The United States has advised that it opposes this motion and that it intends to file an opposition.

be supported by an affidavit and expert report prepared by plaintiff's oil-royalty expert, Dan Reineke.

Part two of the proposed schedule provides for the completion of discovery and a trial, before the end of 2009, for all other claims, including: (1) oil-royalty undercollection claims before July 1974; (2) deposit-lag and investment-yield claims for periods other than fiscal 1973 to 1992; (3) the disbursement-lag claim previously severed from Tranche One; (4) royalty claims for other minerals besides oil for all periods; and (5) all other claims.

As discussed below, entry of a scheduling order adopting this two-part approach would promote the just, speedy, and efficient resolution of this case. Although the Federal Circuit's dismissal of the appeal of the Tranche One judgment postpones appellate review, the Tranche One rulings are the law of the case in this Court and provide precedent for resolution of a major portion of the case. The parties have used the time since the Court's Tranche One rulings to gather oil-royalty data. With that data and the Court's Tranche One rulings, the Osage Nation will soon be in a position, after a short period of minimal additional discovery, to prepare a motion for partial summary judgment.

## BACKGROUND

Tranche One was devised as a means of proceeding to a trial on the merits for a significant, representative portion of this case. It was tailored to fit the discovery then available from the United States.

In late 2003, when the concept of tranches was first discussed, the previous three years of court proceedings in No. 00-169 had focused mainly on the United States' motion to dismiss, which raised jurisdictional and limitations issues. Discovery and briefing relating to that motion began in late 2000 and lasted until the filing of the United States' reply brief on March 3, 2003. After the Court denied the government's motion on July 28, 2003, the focus in No. 00-169

shifted to discovery on the merits of the Osage Nation's case for money damages. That was the context in which the Court accepted the parties' joint suggestion to try the case in tranches. *See* Order, Feb. 17, 2004, No. 00-169 (Docket No. 128).

As originally defined, Tranche One included all "plaintiff's claims for transactions from 1972 to present" and a number of other claims from previous periods. Order, Feb. 17, 2004, No. 00-169 (Docket. No. 128), at 1. The United States eventually expressed an inability to meet the discovery deadline for this definition of Tranche One. As a result, the Court suggested that, to avoid further delay, Tranche One be narrowed to conform to available discovery. *See* Tr. at 32:11-22, Jan. 24, 2005, No. 00-169. The Court explained,

> if we actually get a segment of the case to trial[,] . . . that will set standards that will follow in the other tranches.
>
> It will set standards for proof. It will set . . . liability standards. It will allow us to learn what our trial [on further claims] will look like, what our discovery will look like, and I believe that that will lead to efficiencies in the subsequent tranches.
>
> I think we should shoe horn into the description of the tranche by the availability of the discovery.

*Id.* The Osage Nation agreed to this approach, and the United States "wholeheartedly concur[red]," stating "that it would be useful to both parties to agree or stipulate to particular transactions or time frames," *Id.* at 35:5-7. The United States further stated that the parties would discuss "some sort of exemplar or sample, claim, and once we have an idea of the time frames or transactions or types of documents, then both parties can work together to do more focused preparation of discovery." *Id.* at 37:18-22.

After hearing proposals from both parties, the Court redefined Tranche One as "plaintiff's trust fund mismanagement claims falling within the parameters described in *Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1350-51 (Fed. Cir. 2004), for five oil and

gas leases for the following six months: January 1976, May 1979, November 1980, February 1986, July 1989, and October 1990." Order, Apr. 15, 2005, No. 00-169 (Docket No. 194), at 1. Tranche Two was defined as "all outstanding issues for all other time periods." *Id.*

The Court required the Osage Nation to restate its Tranche One claims and allowed the United States to file dispositive motions in response. Accordingly, the Osage Nation restated its *Shoshone* trust fund mismanagement claims for Tranche One as having two components: (1) "payments due under the Tranche One leases for the Tranche One months that the trustee failed to collect" and (2) "investment income from the proceeds of the Tranche One leases during the relevant months that the United States failed to earn as required by law." Osage Nation's Statement of Trust Fund Mismanagement Claims for Tranche One at 2,5, May 13, 2005, No. 00-169 (Docket No. 203). On June 14, 2005, the United States moved to dismiss these claims, and on October 27, 2005, the Court denied the motion. *See Osage Tribe of Indians v. United States*, 68 Fed. Cl. 322 (2005). In September 2005, discovery came to a close, and the court consolidated cases 99-550 and 00-169.

At a pretrial conference in February 2006, the Court stated that "this trial [on Tranche One] is hoped to be, on the issues that it addresses, an exemplar that the parties can repair to after the appeal of the relevant issues to determine the rest of the disputes between them, as far as we can get." Tr. at 188:23-189:2, Feb. 16, 2006, No. 99-550. At the conference, the definition of Tranche One was refined one last time with both parties' input and consent. For reasons related to the United States' delay in producing certain documents, the parties agreed to omit from Tranche One the month August 1990, the Stanley Stringer lease, and all claims based on the government's failure to pay interest on funds between the time of a check's issuance and its disbursement. *See Osage Tribe of Indians v. United States*, 72 Fed. Cl. 629, 630 n.2 (2006).

Before agreeing to remove those claims from Tranche One, the Court asked for and received assurances from both parties that the remaining Tranche One claims would provide "a reasonable exemplar going forward." Tr. at 350, Feb. 17, 2006, No. 99-550.

A trial on the Tranche One claims was held from March 30 to April 7, 2006. On September 21, 2006, the Court issued a decision in which it held that the United States had failed to collect royalties based on highest offered prices, collect full royalties during price controls, deposit funds promptly, maintain appropriate cash balances, and obtain investment yields in accordance with law. *Osage Tribe*, 72 Fed. Cl. at 671. In February 2007, the Court determined the appropriate rate of interest to apply in calculating damages. *Osage Tribe of Indians v. United States*, 75 Fed. Cl. 462 (2007). After further briefing on damages calculations, the Court entered judgment under Rule 54(b) on March 16, 2007. *See* Judgment, Mar. 16, 2007, No. 99-550 (Docket No. 269). The United States appealed to the Federal Circuit, obtained two lengthy extensions of time to file its opening brief, and then moved to dismiss on the ground that this Court's judgment failed to comply with Rule 54(b). On January 9, 2008, the Federal Circuit granted the government's motion.

## ARGUMENT

### I. THE COURT'S TRANCHE ONE DECISIONS PROVIDE A BASIS FOR RESOLVING MUCH OF THIS CASE THROUGH SUMMARY JUDGMENT.

Summary judgment applying the Court's Tranche One rulings to additional data is the most efficient procedural course for resolving a substantial share of this case. "A party seeking to recover upon a claim . . . may, at any time after the expiration of 60 days from the commencement of the action in this court . . . , move with or without supporting affidavits for a summary judgment in such party's favor upon all or any part thereof." RCFC 56(a). Under this rule there is no need to seek leave of court before filing such a motion. Nevertheless, the Osage

Nation believes that an order defining the scope of such a motion and setting a schedule for resolving both the motion and the remainder of the case will promote efficiency.

As the Court envisioned, Tranche One indeed provides "standards of proof" and "liability standards" that produce "efficiencies." The Court's rulings are the law of the case. "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" except in "extraordinary circumstances." *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The law-of-the-case doctrine "promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'" *Christianson*, 486 U.S. at 816 (quoting *Moore's Federal Practice* ¶ 0.404[1] (1984)). Here, the law of the case established by the Court's Tranche One rulings dictates the legal framework by which investment-management and oil-royalty claims can be decided for appropriate transactions and time periods. And, as discussed below, the material facts needed to resolve such claims can be established by affidavit and are uncontested.

**A. The Court's Tranche One Investment-Management Rulings Can Be Applied to Fiscal 1973 Through 1992.**

The Court's Tranche One Rulings on deposit lag, cash balances, and prudent return on investment were all derived from data in the Arthur Andersen report, which covers United States fiscal years 1973-1992. The same methodologies adopted by the Court for the determination of breach and calculation of damages in the Tranche One months for the Tranche One leases govern those same determinations and calculations for the other months and leases covered by the Andersen report.

First, "the United States is liable for additional investment income that would have been earned had the United States made prudent investments of any cash balances of royalty income

in excess of $25,000." *Osage Tribe*, 72 Fed. Cl. At 667. Second, "[t]he United States is liable for any failure to achieve the expected return of a combination of contemporaneous 3-month CD rates (80%) and 3-month T-bill rates (20%) . . . on average daily balances in excess of $25,000." *Id.* at 668. Third, the United States "is liable for investment income lost owing to its failure to meet the policy objective" of "depositing payments within 24 hours or no later than the next business day following receipt of the payment." *Id.* at 665.

In light of this law of the case and the data available in the Andersen report for fiscal 1973-1992, a motion for summary judgment is the proper way to resolve this portion of the case. Only a minor amount of additional discovery on the dollar amount of Electronic Funds Transfers during this period would be needed. Thereafter, resolution of these claims would be based on an essentially mechanical application of the Tranche One rulings, involving straightforward mathematical computations, to undisputed facts in the Andersen report.

### B. The Court's Tranche One Rulings on Oil-Royalty Collection, as Applied to Additional Data Gathered by the Parties, Will Allow Adjudication of Oil-Royalty Claims from July 1974 to December 2000.

In Tranche One, the Court held that the United States was liable for any failure to follow the requirement in the 1974 regulations of basing royalty valuation on crude oil's "actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area" even if such price were not paid or offered to the lessor and even if such price was for unregulated oil during periods of price regulation. *Id.* at 649.

These rulings, taken together with documents and data the parties have been able to locate since entry of the Court's Tranche One judgment, make it possible for the Osage Nation's

expert, Mr. Reineke, to calculate damages for the United States' failure to collect the full royalty due on oil sold from the Osage mineral estate for the period July 1974 to December 2000[2]:

- For June 1994 to December 2000, the United States has located, on a lease-by-lease basis, virtually all relevant oil-production data, including volume, gravity, royalty rate, date-of-sale, and royalty actually paid.

- For June 1979 to December 1994, the United States has located detailed lease-by-lease data on System 36 backup tapes at the Osage Agency. The United States is currently extracting and restoring the relevant data from the backup tapes. Using the restored System 36 data and by correlating the post-1994 data to the June 1979 to December 1994 data, the Osage Nation will soon finish recreating the oil production data for that period.

- For the gaps in the electronic data, including the period July 1974 to May 1979 (for which electronic data does not exist), Mr. Reineke can use the records the United States has produced and detailed commercial sources of data, similar to the commercial data he used in Tranche One, to complete the royalty analysis.

- The United States also has located previously missing lists of major purchasers for a number of months as well as additional documentation relating to royalty calculation and payment.

- Mr. Reineke also has collected offered- and posted-price data from several sources, including the Minerals Management Service.

These sources of data, along with other information and the Court's Tranche One rulings, will allow an accurate calculation of the oil-royalty damages due for the period July 1974 to December 2000.

While documents and data already produced (or due to be produced in the immediate future) are sufficient to quantify oil-royalty undercollection for the July 1974 to December 2000 period, the schedule proposed by the Osage Nation contemplates some limited additional discovery to gather any additional information the United States may have on these issues. This

[2] Although the Tranche One rulings deal directly with the regulations in effect from July 22, 1974, to September 12, 1990, subsequent changes in the regulations are not expected to raise any unresolved issues of fact or law.

discovery would be focused narrowly on the oil-production, royalty-calculation, and royalty-payment documents relevant to the application of the Tranche One rulings. These document requests and interrogatories are attached as Exhibit B. The proposed schedule also allows time for the United States and its consultants to complete the restoration of the System 36 back-up tapes and to produce those files to the Osage Nation.

## II. SUMMARY JUDGMENT PROCEEDINGS CANNOT APPROPRIATELY BE DELAYED BY FURTHER REQUESTS FROM THE UNITED STATES FOR TIME TO SEARCH ITS OWN DOCUMENTS.

As discussed above, the Osage Nation expects to have, within a matter of weeks, sufficient information to prepare a summary judgment motion on claims governed by the Tranche One rulings. The United States already has had more than ample time to prepare its defense on these claims, and thus the United States should not be permitted to delay this case any further to search its own files. Not only has the United States as trustee had a continuing duty under trust law to provide its beneficiary with information regarding management of trust assets, but discovery in this case (either formal or informal) has been open for almost eight years. Moreover, from the filing of the original complaint in 1999, the United States has been on specific notice of the need to gather all available evidence relevant to its oil royalty collection duties: the complaint in No. 99-550 described the case as, among other things, "an action for money damages for underpayment of oil royalties." Compl. at 1, Aug. 2, 1999, No. 99-550. The interests of the trustee in searching its own documents for a defense must now yield to the beneficiary's right to be made whole based on what is known. "The Osage Tribe is entitled to damages reasonably estimated *based on existing information*." *Osage Tribe*, 72 Fed. Cl. at 670 (emphasis added).

The Court previously has advised the Osage Nation to "us[e] the assistance that the Court can provide through a discovery schedule, which would include deadlines for the Department of

Justice" to produce discovery responses. Tr. at 30:5-8, Dec. 10, 2003, No. 00-169. As the Court has presciently noted in a previous stage of these proceedings, open-ended cooperation between the parties is fine, but in a case such as this, there comes a time when the plaintiff needs to have the Court impose discovery deadlines on the United States. "[Y]ou either need to do discovery [under definite deadlines] or be slow walked to death here. Those are your choices, Mr. Pipestem." *Id.* at 17:21-22. Accordingly, the Osage Nation now respectfully requests that the Court adopt the proposed schedule.

**CONCLUSION**

The Court should enter an order adopting the schedule attached to this motion as Exhibit A.

March 19, 2008

Respectfully submitted,

*s/Wilson K. Pipestem*

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation

**EXHIBIT A**

**PROPOSED SCHEDULE**

**PART ONE:** Motion for Partial Summary Judgment on (a) all deposit-lag, excessive-cash-balance, and investment-yield claims for United States fiscal years 1973 to 1992 and (b) all oil-royalty undercollection claims for July 1974 to December 2000; opening of discovery for all other claims.

| | |
|---|---|
| April 15, 2008, or date of entry of scheduling order | Formal fact discovery begins for all claims—those inside as well as those outside the scope of the forthcoming Motion for Partial Summary Judgment. |
| June 17, 2008 | End of fact discovery with respect to claims within the scope of forthcoming Motion for Partial Summary Judgment; other fact discovery to continue. |
| July 1, 2008 | Plaintiff files Motion for Partial Summary Judgment, including expert affidavits/reports and Rule 26(a)(2) disclosures. |
| July 2008 | Defendant deposes Plaintiff's expert(s). |
| July 15, 2008 | Defendant files any Rule 56(f) motion. |
| July 22, 2008 | Plaintiff files Opposition to Rule 56(f) Motion (if necessary). |
| July 29, 2008 | Defendant files Reply on Rule 56(f) Motion (if necessary). |
| August 4, 2008 | Hearing on Rule 56(f) Motion (if necessary). |
| September 9, 2008 | Defendant files Opposition to Motion for Partial Summary Judgment, including expert affidavits/reports and Rule 26(a)(2) disclosures. |
| September 2008 | Plaintiff deposes Defendant's expert(s). |
| October 14, 2008 | Plaintiff files Reply in Support of Motion for Partial Summary Judgment, including expert affidavits/reports and Rule 26(a)(2) disclosures (if necessary). |
| October 21, 2008 | Hearing on Motion for Partial Summary Judgment (if necessary); *Proceedings on Motion for Partial Summary Judgment concluded.* |

**PART TWO:** Conclusion of discovery and trial on all other claims, including: (1) oil-royalty undercollection claims before July 1974; (2) deposit-lag and investment-yield claims for periods other than fiscal 1973 to 1992; (3) the disbursement-lag claim previously severed from Tranche One; (4) royalty claims for other minerals besides oil for all periods; and (5) all other claims.

| | |
|---|---|
| January 13, 2009 | Fact discovery for claims not covered by Motion for Partial Summary Judgment ends. |
| March 31, 2009 | Plaintiff files Expert Report(s) and Rule 26(a)(2) disclosures. |
| April 2009 | Defendant deposes Plaintiff's expert(s). |
| May 12, 2009 | Defendant files Expert Report(s) and Rule 26(a)(2) disclosures. |
| May 2009 | Plaintiff deposes Defendant's expert(s). |
| June 16, 2009 | Plaintiff files Rebuttal Expert Report(s) and Rule 26(a)(2) disclosures. |
| June 30, 2009 | Deadline to file dispositive motions. |
| July 14, 2009 | RCFC App. A Conference. |
| August 4, 2009 | Plaintiff files Memorandum of Contentions of Fact and Law, witness and exhibit lists and motions in limine, motions in limine and objections to Defendant's witness and exhibit lists. |
| September 1, 2009 | Defendant files responsive Memorandum of Contentions of Fact and Law, witness and exhibit lists, motions in limine, objections to Plaintiff's witness and exhibit lists and oppositions to Plaintiff's motions. |
| September 29, 2009 | Oppositions to dispositive motions due. |
| October 13, 2009 | Replies to dispositive motions due. |
| October 20, 2009 | Pre-Trial Conference. |
| November 3, 2009 | Trial begins. |

**EXHIBIT B**

**DRAFT DISCOVERY REQUESTS FOR PART ONE OF THE PROPOSED SCHEDULE**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 99-550 L (into which has been consolidated No. 00-169 L)<br>Judge Emily C. Hewitt |

**PRELIMINARY DRAFT OF PLAINTIFF OSAGE NATION'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS FROM THE UNITED STATES**

Pursuant to Rules 26 and 34 of the Rules of the United States Court of Federal Claims ("RCFC"), and in accordance with the definitions and instructions set forth herein, Plaintiff Osage Nation requests that the Defendant United States produce for inspection and copying at Akin Gump Strauss Hauer & Feld LLP, 1333 New Hampshire Avenue, NW, Washington, D.C. 20036, the following documents, by _____ __, 2008, or at such other time and place as may be agreed upon among counsel.

**DEFINITIONS**

In addition to the definitions set forth in the Rules of the Court of Federal Claims, the following definitions apply to each of the Requests below:

1. The terms "United States," "you," "your" or "defendant" mean the United States of America and all its present and former departments, agencies, bureaus and other subdivisions, including without limitation the Departments of Interior and Treasury, the Bureau of Indian Affairs, the Osage Agency, the United States Geologic Survey and the Minerals Management Service, and its present and former officials, employees, agents, representatives, and other persons acting on its behalf.

2. The term "communication" is used in its broadest sense and means, without limitation of its generality, any manner or means of disclosure, transmittal, transfer or exchange of information (in the form of fact, ideas, inquiries or otherwise) by any means, including without limitation oral, written or electronic means.

3. The term "contract" refers to any written or oral agreement, including without limitation pricing agreements, supplier agreements, letters of commitment, and memoranda of understanding.

4. The terms "document" and "thing," and their cognates, are defined to be synonymous in meaning and equal in scope to the usage of this term in RCFC 34(a) and include without limitation every writing or recordation of every type and description, and every other medium, instrument or device by which, through which or on which information has been transmitted, recorded and/or preserved, including, but not limited to electronically stored information, letters, electronic mail, telexes, telefaxes, telegrams, memos, internal memos, handwritten notes, reports, tapes or notes of telephone conversations, contracts, agreements, notes, diaries, logs, memoranda of understanding, purchase orders, acknowledgments, change orders, invoices, receipts, canceled checks, letters of credit and other banking documents, financial statements, schedules, drawings, plans, tables, charts, graphs, computer data, computer

diskettes, CD-ROMs, DVD-ROMs, and hard drives, computer printouts, photographs, media storage devices, or other electronically stored information in the possession, custody or control of the producing party. The term "document" also means every copy of a document where such copy is not an identical duplicate of the original, whether because of deletions, underlinings, showing of blind copies, initialing, signatures, receipt stamps, comments, notations, differences in stationery or any other difference or modification of any kind. A draft is a separate document within the meaning of this term. This definition is intended to define the terms "document" and "thing," and their cognates, in the broadest way consistent with applicable law.

5. The terms "person" and "persons" mean and encompass natural persons, businesses, firms, partnerships, corporations, proprietorships, associations, governmental bodies, and all other types of organizations and entities.

6. When referring to a person, "identify" means to give, if known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

7. When referring to documents, "identify" means to give, if known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s), addressee(s) and recipient(s); and (v) Bates label of the document.

8. When referring to communications, "identify" means, if known, to (i) give the date of the communication; (ii) identify the parties to the communication; (iii) identify the means of transmission of the communication; and, (iv) identify all documents memorializing all or part

of the communication. If any responsive communication is memorialized in a document, please also produce a copy of the document for inspection and copying.

9. The terms "refer to," "relate to," or "concerning," or any derivative thereof means referring to, reflecting, constituting, describing, summarizing, containing, embodying, mentioning, showing, comprising, evidencing, discussing, commenting about, or relating in any manner logically, factually, directly or indirectly to the matters discussed in the applicable Request.

10. The terms "all" and "each" shall be construed as each and all.

11. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

12. The singular form of a noun or pronoun shall be considered to include also within its meaning the plural form of the noun or pronoun, and vice versa. The use of any tense of any verb shall be considered to include also within its meaning all other tenses of the verb. In each such instance, the discovery request shall be construed so as to require the most inclusive production of all documents.

## INSTRUCTIONS

1. You are obligated to produce all responsive documents in your possession, custody or control. A document is deemed to be in your control if you have the right to secure the document, or a copy thereof, from another person having actual possession thereof. If you know or believe that there may be, or were, documents otherwise responsive to a particular request, but which are no longer within your possession, custody or control, or which no longer exist, state so in your response to that particular request and identify why the document or thing is no longer in your possession, custody or control.

2. Each document responsive to these requests that is not produced because of a claim of attorney-client, deliberative process, work product doctrine or other privilege, or for any other reason, shall be identified in writing by a sufficiently detailed description to permit assessment of whether your basis for withholding those documents is legally sufficient, including without limitation: (a) date; (b) author; (c) recipient; (d) general subject matter; (e) identity of person or persons to whom the contents of the document have already been revealed; (f) identity of the person or entity now in possession or control of the document; and (g) the basis upon which it is being withheld.

3. You shall produce all documents as they are kept in the ordinary course of business. All documents that are physically attached to each other when located for production shall be left so attached. Documents that are segregated or separated from other documents, whether by use of binders, files, sub-files, or by dividers, tabs, or any other method, shall be left so segregated or separated. All labels or markings on any such binders, files, sub-files, dividers, tabs, or folders shall be produced. Any copy of a document that varies in any way from the original or from any other copy of the document for any reason, including without limitation because of handwritten or other notation or omission, shall constitute a separate document and must be produced.

4. If documents or data compilations are maintained in electronic form, such documents or data compilations are to be produced in the electronic form in which they are maintained in the usual course of business, together with the software and hardware necessary to view those documents or data compilations in electronic form. Electronic files that have been sent to any third party for copying or decoding or reformatting shall be produced in the electronic form and format in which they were received from such third party.

5. If no documents exist that are responsive to a particular document request, state in writing that no responsive documents exist.

6. Unless otherwise specified, these Request seek the production of documents from January 1, 1974 through the data of production. If a document prepared or dated before January 1, 1974 is necessary for a complete or correct understanding of any document otherwise covered by these requests, however, such earlier documents shall be produced as well. If a document is undated or incorrectly dated, and the time of its creation or preparation cannot be determined or is in doubt, the document should be produced if it is otherwise responsive to these requests. A document remains responsive to these requests even if it applies to only a portion of the relevant period.

7. These document requests are continuing in nature and you are required to amend or supplement each response and your production if you later become aware of facts or documents that indicate a prior response was incorrect or incomplete.

**DOCUMENTS TO BE PRODUCED**

Produce the following documents in your possession, custody or control:

1. All highest posted price letters, and supporting posted price bulletins and gravity adjustment tables created, used or referred to by the Osage Agency.

2. All electronic or hard copies of Lease Activity Files or other similar data compilations showing, for each lease, the volume of oil produced, the gravity of the oil, the price paid for that oil, the identity of the purchaser, the royalty rate and any adjustments to any royalty payments.

3. All lists showing your determination of Major Purchasers for any month, including supporting worksheets, drafts and revisions.

4. All oil sales contracts or other documents or data evidencing prices offered or paid for oil in Kansas or Oklahoma, including without limitation records of sales of oil from leases in which the United States and/or a Native American tribe or individual has an interest, from February 1981 to April 1994.

5. For the period July 1974 to May 1979, all documents or data compilations showing, for each lease or part of an Osage County oil lease, the volume of oil produced, the gravity of the oil, the price paid for that oil, the identity of the purchaser, the royalty rate and any adjustments to any royalty payments.

6. All documents relied upon or referred to in your Responses to the Interrogatories

_____ __, 2008.

7. All other documents that would show, for the period July 1974 through December 2000, how much money the United States collected on Osage County oil leases and/or how much money the United States was required to collect on Osage County oil leases in accordance with previous court decisions in this case.

8. Documents sufficient to show the dollar amounts of payments due under Osage County oil leases made by Electronic Funds Transfer on a monthly basis during the United States fiscal years 1973 to 1992.

________________________

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE NATION AND/OR TRIBE OF INDIANS OF OKLAHOMA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 99-550 L (into which has been consolidated No. 00-169 L)<br>Judge Emily C. Hewitt |

**PRELIMINARY DRAFT OF PLAINTIFF OSAGE NATION'S**
**<u>SECOND SET OF INTERROGATORIES TO THE UNITED STATES</u>**

Pursuant to Rules 26 and 33 of the United States Court of Federal Claims ("RCFC"), and in accordance with the definitions and instructions set forth herein, Plaintiff the Osage Nation propounds the following Interrogatories to be answered by Defendant United States in writing and under oath, by _____ __, 2008.

**DEFINITIONS**

1. The terms "United States," "you," "your" or "defendant" mean the United States of America and all its present and former departments, agencies, bureaus and other subdivisions, including without limitation the Departments of Interior and Treasury, the Bureau of Indian Affairs, the Osage Agency, the United States Geologic Survey and the Minerals Management Service, and its present and former officials, employees, agents, representatives, and other persons acting on its behalf.

2. The term "communication" is used in its broadest sense and means, without limitation of its generality, any manner or means of disclosure, transmittal, transfer or exchange of information (in the form of fact, ideas, inquiries or otherwise) by any means, including without limitation oral, written or electronic means.

3. The terms "document" and "thing," and their cognates, are defined to be synonymous in meaning and equal in scope to the usage of this term in ("RCFC") 34(a) and include without limitation every writing or recordation of every type and description, and every other medium, instrument or device by which, through which or on which information has been transmitted, recorded and/or preserved, including, but not limited to electronically stored information, letters, electronic mail, telexes, telefaxes, telegrams, memos, internal memos, handwritten notes, reports, tapes or notes of telephone conversations, contracts, agreements, notes, diaries, logs, memoranda of understanding, purchase orders, acknowledgments, change orders, invoices, receipts, canceled checks, letters of credit and other banking documents, financial statements, schedules, drawings, plans, tables, charts, graphs, computer data, computer diskettes, CD-ROMs, DVD-ROMs, and hard drives, computer printouts, photographs, media storage devices, or other electronically stored information in the possession, custody or control of the producing party. The term "document" also means every copy of a document where such copy is not an identical duplicate of the original, whether because of deletions, underlinings, showing of blind copies, initialing, signatures, receipt stamps, comments, notations, differences in stationery or any other difference or modification of any kind. A draft is a separate document within the meaning of this term. This definition is intended to define the terms "document" and "thing," and their cognates, in the broadest way consistent with applicable law.

4. The terms "person" and "persons" mean and encompass natural persons, businesses, firms, partnerships, corporations, proprietorships, associations, governmental bodies, and all other types of organizations and entities.

5. When referring to a person, "identify" means to give, if known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

6. When referring to documents, "identify" means to give, if known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s), addressee(s) and recipient(s); and (v) Bates label of the document.

7. When referring to communications, "identify" means, if known, to (i) give the date of the communication; (ii) identify the parties to the communication; (iii) identify the means of transmission of the communication; and, (iv) identify all documents memorializing all or part of the communication. If any responsive communication is memorialized in a document, please also produce a copy of the document for inspection and copying.

8. The terms "refer to," "relate to," or "concerning," or any derivative thereof means referring to, reflecting, constituting, describing, summarizing, containing, embodying, mentioning, showing, comprising, evidencing, discussing, commenting about, or relating in any manner logically, factually, directly or indirectly to the matters discussed in the applicable Request.

9. The terms "all" and "each" shall be construed as each and all.

10. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

11. The singular form of a noun or pronoun shall be considered to include also within its meaning the plural form of the noun or pronoun, and vice versa. The use of any tense of any verb shall be considered to include also within its meaning all other tenses of the verb. In each such instance, the discovery request shall be construed so as to require the most inclusive production of all documents.

## INSTRUCTIONS

1. If you object to a portion of an interrogatory or otherwise refuse to respond to it (*e.g.*, assert a privilege), you are required to respond to the remainder.

2. These interrogatories are continuing in nature and you are required to amend or supplement each response if you later become aware of facts that indicate a prior response was incorrect or incomplete. If you do not have all of the information that you require to provide a complete response to any interrogatory, provide all of the information that you do have and state that the information is incomplete. In addition, in regard to any incomplete response, identify the information you would need to make a complete response and provide a supplemental response when you obtain that information.

3. For each response to each interrogatory, identify each person providing information for the response, and identify the individuals who are the most knowledgeable about the subject matter of the interrogatory.

4. If an interrogatory requires that you identify a document, also identify the document's current location.

5. Where a claim of privilege is asserted in objecting to any means of discovery or disclosure and an answer is not provided on the basis of such assertion,

a. Identify the nature of the privilege (including work product) which is being claimed, the person claiming it, and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

b. Provide the following information unless divulgence of such information would cause disclosure of the allegedly privileged information:

(1) For documents: (i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; (iv) all persons or entities to whom the document was shown, made available to or given; and (v) such other information as is sufficient to identify the document in a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other; and

(2) For oral communications: (i) the name of the person making the communication and the name of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of communication; (iii) the general subject matter of the communication; and (iv) all persons to whom the contents of the communications was disclosed in whole or in part.

6. When an interrogatory requests a date or dates, provide the exact day, month, and year if ascertainable. If these are not ascertainable, provide the best available approximation of the date.

7. If you respond to any interrogatory by reference to electronic data that you have produced in this matter, identify and describe fully the precise location of the relevant data (*e.g.*, date it was produced, relevant file and subfolder names) and the precise search query or queries that will yield the responsive information on which you are relying.

8. If you rely on RCFC Rule 33(d) in response to any interrogatory, identify and describe fully the precise location of the relevant documents or data and specific Bates labels for such documents or search queries that will yield the relevant information and identify whether the information in the documents you reference provides a complete response to that interrogatory.

## INTERROGATORIES

1. For each of the Osage Nation's Second Set of Requests for Production, describe the efforts you made to locate responsive documents.

2. For each of the Osage Nation's Second Set of Requests for Production for which you believe responsive documents exist in addition to the documents you have or will produce (or acknowledge exist):

a. Describe, with as much specificity as possible, the type and date ranges of those documents;

b. Set forth that reasons you believe additional responsive documents exist;

c. Identify any indices or other records indicating that such documents exist;

d. Identify the expected location(s) of such documents;

e. Describe in detail all previous efforts to locate such documents, including the amount of time spent on such efforts; and

f. Provide an estimate of how long you think it will take to locate and produce those documents.

3. For each of the Osage Nation's Second Set of Requests for Production for which you believe additional responsive documents may have existed but have been destroyed, lost or are otherwise unobtainable:

a. Identify, with as much specificity as possible the type, content, and date ranges of those documents; and

b. Describe the basis for your belief that those documents have been destroyed, lost or are otherwise unobtainable.

_____ __, 2008

____________________________

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation