**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE TRIBE OF INDIANS OF OKLAHOMA, Plaintiff, | ) | Electronically Filed: April 7, 2008 |
| v. | ) | No. 99-550L (into which has been consolidated No. 00-169L) |
| THE UNITED STATES OF AMERICA, Defendant. | ) | Judge Emily C. Hewitt |

**DEFENDANT'S OPPOSITION TO PLAINTIFF OSAGE NATION'S MOTION FOR A SCHEDULING ORDER**

On March 19, 2008, the Osage Nation requested that this Court issue an order setting a schedule to adjudicate their remaining claims. Plaintiff has requested a two-part schedule. In part one the Court would apply its Tranche One decisions to certain time periods set forth in Plaintiff's motion. Part two of Plaintiff's proposed schedule would decide all other claims. The United States objects to part one of the proposed schedule as being premature at this time. As the United States has informed this Court, the United States is considering whether to request that this Court certify for interlocutory appeal some of the Tranche One decisions. Further, this Court has given the proposed intervenors until June 2, 2008 to retain new counsel and proceed with their Motion to Intervene; the interests of those individual (and other) headright owners in this litigation should be decided before proceeding any further on the merits. Likewise, the United States objects to part two of the proposed schedule as being vague and premature as to the Plaintiff's remaining claims.

**<u>Objections to Plaintiff's Proposed Schedule: Part One</u>**

Part one of Plaintiff's schedule proposes applying the Tranche One decisions to calculate damages as a result of a) all deposit-lag, excessive-cash balance, and investment-yield claims for fiscal years 1973-1992, the years of the Arthur Andersen report; and b) all oil royalty undercollection claims for July 1974 to December 2000. Pl.'s Mot. at 1, Exhibit A at 1. As Plaintiff accurately points out in its opening motion, the United States has long agreed that the best way to proceed with these cases was for the Court to decide some portion of Plaintiff's claims, which following appellate review could be used to help fully decide the remainder of Plaintiff's claims. <u>See</u> Tr. January 24, 2005, No. 99-550. As Plaintiff also points out, the Federal Circuit has held that the Tranche One decisions are not final for purposes of Rule 54. <u>Osage Tribe of Indians of Oklahoma v. United States</u>, 2008 WL 268707 (Fed. Cir. Jan. 9, 2008). The United States still believes that appellate review of the Tranche One decisions presents the most judicially efficient way of proceeding, and is therefore currently considering whether to request certification from this Court for interlocutory appeal pursuant to 28 U.S.C. § 1292 (d)(2). In other words, the position of the United States has not changed.

Determining whether the United States will request interlocutory certification requires coordination between several offices within the United States Department of Justice as well as interested agencies, including the Department of the Interior and the Department of the Treasury. The Solicitor General's Office conducts its own analysis to determine whether the United States should request certification for interlocutory appeal, and the Solicitor General makes the decision whether to request certification. <u>See</u> 28 C.F.R. § 0.20(b). Following any authorization to request certification for interlocutory appeal by the Solicitor General, the United States would then

request that this Court certify certain orders for appellate review pursuant to 28 U.S.C. § 1292(d).[1] If this Court agreed, the United States would then petition the Federal Circuit to hear the interlocutory appeal.

This Court recently entered its order granting Plaintiff's Motion to Disqualify the proposed intervenors' counsel. See Osage v. United States, No. 99-550, Dkt. 296, Opinion and Order (March 31, 2008). This Court has given the proposed intervenors until June 2, 2008 to retain new counsel to proceed with their Motion to Intervene. Id. at 21. Along these lines, the United States notes the headright owners who are also part of the class action in Cobell v. Kempthorne, Civ. No. 96cv01285 (D.D.C.), have requested money damages as part of their claims in the District Court and have recently claimed that the Osage tribe does not have an interest in the tribal trust fund that is also at issue in the cases before this Court. See Plfs.' Memorandum in Support of Equitable Restitution and Disgorgement, Dkt. 3515, Cobell v. Kempthorne, Civ. No. 96cv01285 (D.D.C.) at 33 ("The Osage mineral estate is not owned by the Osage Tribe, but by individual trust beneficiaries who are entitled to a 'headright' share in the proceeds derived from the mineral estate. . . . [t]he funds are held in trust at Treasury solely for the benefit and to the 'credit of [its] members,' not the tribe nor its government."). At a minimum, the status of the proposed intervenors and clarification of who the parties to this case are should be determined before proceeding with the next round of litigation.

[1] One of the factors that this Court would consider in the event it were asked to certify any orders for interlocutory appeal is whether "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(d). Plaintiff's scheduling motion contemplates that this Court will apply the Tranche One decisions to the remaining leases throughout the Tranche One time frame. Plaintiff foresees that the Tranche One decisions will be applied to resolve certain remaining claims.

Moreover, Plaintff's proposed schedule for part one presents an unrealistic time frame in which to complete discovery. Plaintiff believes that a short three months is all that is needed to complete the joint settlement database (covering the remaining Tranche One years) that the parties have been working on collectively since the Tranche One rulings. Pl.'s Mot. at 7-8, Exhibit A (proposing three months to complete discovery). The Government's expert believes that more time (most likely six months) will be needed to complete the oil royalty database for the time frame Plaintiff proposes (1974-2000). It also appears that Plaintiff misunderstands the scope of the work that has not yet been completed. For example, Plaintiff bases its three-month time frame in part on the premise that, once it receives the "restored System 36 data [from the backup reels of an electronic computer database covering years 1979-1996] ... the Osage Nation will soon finish recreating the oil production data for [June 1979 to December 1994]." Id. at 8. The United States only just provided this data from this recent data recovery effort to Plaintiff on April 4, 2008. The parties' previous efforts to recover this same data resulted in electronic royalty data for the years 1988-1992, and the parties had hoped that this new effort to recover the data from the System 36 machine would result in an electronic data collection for the rest of the outstanding years. Based on a preliminary review of the data it appears unlikely that this goal will be realized; hence, the data for years 1974-1987 and 1993-1994 will need to be converted from its current paper form to electronic form, which is labor- and time-intensive.

Additionally, Plaintiff claims that even though the Tranche One rulings only interpret the regulations in effect from 1974 until 1990, "subsequent changes in the regulations are not expected to raise any unresolved issues of fact or law." Pl.'s Mot. at 8, n.2. The United States believes that whether the Tranche One rulings apply to the subsequent regulatory changes will

need to be decided by this Court. For example, the 1994 regulatory change removed the term "offered price," at the tribe's request. See 59 Fed. Reg. 22104 (April 28, 1994). Other subsequent revisions to the regulations changed the scope of the geographical area regarding the "highest posted price by a major purchaser." See 55 Fed. Reg. 33112 (Aug. 14, 1990). Any scheduling order will need to take into consideration the need to have the Court decide these questions.

For these reasons, the United States believes it is premature for this Court to enter any scheduling order at this time. If the Court is nonetheless inclined to enter Plaintiff's scheduling order at this time, the United States requests the opportunity to fully respond and present an alternative proposed case management order.

**Objections to Plaintiff's Proposed Schedule: Part Two**

Part two of Plaintiff's schedule proposes the completion of discovery and a trial, as to claims not covered by part one, including: 1) oil-royalty undercollection claims before July 1974; 2) deposit-lag and investment-yield claims for periods other than fiscal years 1973-1992; 3) the disbursement-related claims previously severed from Tranche One; 4) royalty claims for other minerals besides oil, for all periods; and 5) all other claims. See Pl.'s Mot. at 2, Exhibit A at 2.

For reasons similar to those already discussed, the United States believes scheduling part two would also be premature at this time. Assuming an interlocutory appeal is pending and depending on which orders are certified, the United States may seek a partial or full stay of these consolidated cases while those issues are resolved. For example, if the United States requests certification of an interlocutory appeal, this Court certifies and the Federal Circuit grants leave to appeal, one question that may be presented is whether there is a money-mandating duty. In that

case, it would be most efficient for this Court to stay these proceedings while awaiting the outcome of the interlocutory appeal, as an appellate decision in the government's favor would likely end these cases.

The United States also objects to the proposed schedule part two because Plaintiff's claims have not yet been fully articulated. The United States cannot comment on whether the time frames set forth by the Plaintiff are sufficient or insufficient as it cannot determine the universe of remaining claims from the limited characterization Plaintiff has provided. For example, the United States does not know which minerals other than oil the tribe claims to be owed additional royalties or what "all other claims" Plaintiff envisions taking to trial. Until all such claims are fully specified (as was done with Tranche One), the United States will remain unable to respond. See Tr. March 21, 2007, No. 99-550 at p. 61, line 24 - p. 62, line 11 (When severing disbursement-related claims from Tranche One, this Court noted that those claims will require further specification before being adjudicated.). If the Court believes going forward with these unarticulated claims at this time is appropriate, the United States requests the Court order Plaintiff to set forth its remaining claims and then allow the United States to file a proposed case management order.

Respectfully submitted this 7th day of April 2008,

RONALD J. TENPAS
Assistant Attorney General

/s/ *Maureen E. Rudolph*
MAUREEN E. RUDOLPH, SD Bar #3176
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663

Washington, D.C. 20044-0663
Tel: 202-305-0479
Fax: 202-353-2021
maureen.rudolph@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

ANTHONY P. HOANG, FL Bar # 798193
KEVIN REGAN, OR Bar # 044825
BRIAN COLLINS, TX Bar # 24038827
JOSEPH KIM, IL Bar # 6243249
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: 202-305-0241
Tel: 202-305-3022
Tel: 202-305-0428
Tel: 202-305-0207
Fax: 202-353-2021

ELISABETH C. BRANDON
CANDACE BECK
HOLLY CLEMENT
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240

TERESA E. DAWSON
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C. 20227