**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE OSAGE TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 99-550 L (into which has been consolidated No. 00-169 L) Judge Emily C. Hewitt |
| | ) | Electronically Filed April 14, 2008 |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF OSAGE NATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR A SCHEDULING ORDER**

Plaintiff Osage Tribe of Indians of Oklahoma ("the Osage Nation") respectfully submits this reply brief in support of its motion for a scheduling order to address the arguments raised by the United States in its opposition. The United States objects to both parts of the proposed schedule, but does not move for a stay and does not offer an alternative schedule for further proceedings to resolve this case. As discussed below, the concerns raised by the United States do not justify further delay.

## I. THE UNITED STATES HAS RAISED NO LEGITIMATE BASIS FOR PRECLUDING PLAINTIFF FROM MOVING FORWARD WITH A MOTION FOR PARTIAL SUMMARY JUDGMENT.

The United States advances two reasons in support of its argument that it would be "premature" for the Court to enter a schedule for consideration of a motion for partial summary judgment. First, it objects because "the United States is *considering* whether to request that this Court certify for interlocutory appeal some of the Tranche One decisions" under 28 U.S.C. § 1292(d). Opp. at 1 (emphasis added). But the Osage Nation should not be made to wait

indefinitely to present its case while the United States decides whether to seek an extraordinary, discretionary, partial, and interlocutory appeal. As the United States admits, the filing (not to mention the granting) of a § 1292(d) motion is a matter of mere speculation at this point in time. All that the United States can say now is that the question whether to file such an appeal continues to be under consideration—as it has been for more than six months. On October 9, 2007, when the United States moved to dismiss its own appeal in the Federal Circuit, it told that court:

> The Office of the Solicitor General currently has under consideration whether the United States should seek certification of some of the CFC's orders for an interlocutory appeal pursuant to 28 U.S.C. 1292(d)(2), which would require both certification from the CFC and acceptance of the appeal by this Court, as an alternative means of obtaining appellate review of rulings of the CFC that could be applied to the remainder of the case.

Motion to Dismiss at 4; *accord id.* at 19 n.5. Further, even if the United States were to file a § 1292(d) motion, and even if this Court and the Federal Circuit were each to exercise discretion in favor of such an exceptional interlocutory appeal, there would be a statutory presumption that proceedings in this Court not be stayed. *See* 28 U.S.C. § 1292(d)(3).[1] In sum, it would make no sense to suspend the Osage Nation's presentation of its case while the United States contemplates an appeal that may never be sought, may never be approved, and likely would not justify a stay.[2]

---

[1] "Obviously that which is contemplated is a review of the interlocutory order, and of that only. It was not intended that the cause as a whole should be transferred to the appellate court prior to the final decree. The case, except for the hearing on the appeal from the interlocutory order, is to proceed in the lower court as though no such appeal had been taken, unless otherwise specially ordered." *Ex parte Nat. Enameling & Stamping Co.*, 201 U.S. 156, 162 (1906); *accord, e.g.*, *Columbus-Am. Discovery Gp. v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 301-02 (4th Cir. 2000).

[2] The United States also relies on the parties' previous agreements with respect to the utility of a Rule 54(b) appeal of Tranche One to suggest that a § 1292(d) appeal would be appropriate. That argument is not properly before the Court until a § 1292(d) motion is filed, and therefore the Osage Nation will not take any position on such a hypothetical appeal here. It suffices here to note that much has changed since the Osage Nation agreed to structure the litigation pursuant to Rule 54(b). Large amounts of new data are now available, and almost a year elapsed while the United States filed and then moved to dismiss its aborted appeal.

Second, the United States argues that the pending motion to intervene, filed by prospective intervenors who currently lack counsel in this Court, "should be decided before proceeding any further on the merits." Opp. at 1. This argument gets things backwards. A requirement for intervention, whether permissive or as of right, is that the intervention be "timely," so as not to prejudice the parties' ongoing litigation. RCFC 24(a), (b). In deciding timeliness, a court must consider possible "prejudice to the rights of existing parties." *John R. Sand & Gravel Co. v. United States*, 59 Fed.Cl. 645, 649 (2004) (Hewitt, J.) (quoting *Belton Indus., Inc. v. United States*, 6 F.3d 756, 762 (Fed. Cir. 1993)). It would make little sense, while deciding whether intervention would prejudice the Osage Nation, to derail the Osage Nation's case. That is especially so in these circumstances, where the timeliness of intervention—more than eight years into this litigation—is very much in doubt. The potential future prosecution of the motion to intervene does not justify an across-the-board stay in these proceedings, particularly where no one has moved for a stay.[3]

## II. PROCEEDINGS ON THE OSAGE NATION'S PROPOSED MOTION FOR PARTIAL SUMMARY JUDGMENT NEED NOT AWAIT ANY FURTHER DATA.

The United States argues that the schedule proposed by the Osage Nation sets "an unrealistic time frame in which to complete discovery" because it will take "six months" for the government's expert, Ronnie Martin, "to complete the oil royalty database for the time frame Plaintiff proposes (1974-2000)." Opp. at 4. The joint data collection project referred to by the

---

[3] For example, a stay pending appeal of a denial of intervention requires a four-factor analysis: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *John R. Sand and Gravel Co. v. U.S.* 60 Fed. Cl. 347, 349 (2004) (Hewitt, J.) (quoting *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990) and *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)).

United States in its opposition has already yielded data that would allow presentation of a motion for partial summary judgment covering all royalty undercollection claims from August 1974 to December 1980, and from January 1988 to December 2000. Since the filing of the Osage Nation's motion for a scheduling order several weeks ago, the parties have learned that, contrary to their previous expectations, they do not have electronic lease activity files for 1981-1987. Although the parties have summary-level System 36 data for that period, the parties still need to convert one set of data from paper to electronic form for 1981-1987: the prices paid by major purchasers in Osage County on a purchase-by-purchase basis.

Still, because data for all other periods is available, the current gap in electronic data for 1981-1987 is of relatively minor consequence in the context of the proposed motion for partial summary judgment. Among the undercollection claims included in the motion (1974-1980 and 1988-2000) would be claims for 1988-1990. Because the methodology for calculating damages will be the same for the entire period from January 1981 (when price controls ended) to July 1990 (when the 1974 royalty-value regulation was amended), the motion would establish a methodology that could later be applied mechanically to 1981-1987, once complete electronic data for that period is available. Therefore it still makes sense to go forward under the Osage Nation's proposed schedule. To put off adjudicating a large segment of this case until that last set of data is available is unnecessary; it would let the tail wag the dog.

Accordingly, the Osage Nation is willing to defer addressing 1981-1987 for six months to permit Mr. Martin to convert paper records to electronic form for 1981-1987. At the same time,

however, the Court should enter the Osage Nation's proposed schedule for partial summary judgment (tailored as described above) to move this case to an efficient resolution.[4]

## III. DISCOVERY TO IDENTIFY NON-TRANCHE ONE CLAIMS SHOULD BEGIN IMMEDIATELY.

With respect to the schedule for proceedings following partial summary judgment, the United States objects on the ground that it is "vague and premature as to the Plaintiff's remaining claims," "because Plaintiff's claims have not yet been fully articulated." Opp. at 1, 6. This misperceives the nature of the second part of the schedule, in two respects.

First, the Osage Nation should be allowed some discovery *before* it is required to articulate further claims, in light of the trustee's failure to provide an accounting and its inability to produce complete trust records. Such discovery should begin sooner rather than later, so that any further claims can be articulated as soon as possible.

Second, the Osage Nation's goal in including a second part to the proposed schedule was not to set dates in stone, but rather to set out plausible goals for the conclusion of this litigation and to place in context the need for further discovery. The United States raises a fair point in withholding consent to the specific timetable set out in part two of the Osage Nation's proposed schedule. The Osage Nation agrees that the United States should not be expected to bind itself to complying with a specific schedule before knowing what claims may be included. The critical point is that initial discovery deadlines should be set to facilitate the Osage Nation's ability to

[4] The United States notes that the regulations from July 1990 forward differ in some respects from the 1974 regulations at issue in Tranche One, and it argues that the Court may need to include extra time in the schedule to interpret the regulations in effect from 1990 forward. But the changes to the regulations only narrow them, rather than add anything new. The United States does not explain what dispute there possibly could be over the regulations, and, as noted in the Osage Nation's motion, the Osage Nation anticipates no such dispute.

make progress in identifying further claims. The other dates in part two of the schedule could be adopted as tentative goals.

## IV. THE UNITED STATES HAS ALREADY DECLINED THE OPPORTUNITY TO PROPOSE AN ALTERNATIVE SCHEDULE.

In its opposition, the United States asks for a future "opportunity to fully respond" to the Osage Nation's proposed schedule and to "present an alternative proposed case management order." Opp. at 5. Those opportunities have passed—the United States could have offered an alternative schedule in its opposition, but declined to do so. And, as shown above, the United States has not raised any compelling objection to the schedule proposed by the Osage Nation. Accordingly, as this is the Osage Nation's case to prosecute, the Osage Nation respectfully requests that its schedule be adopted by the Court.

## CONCLUSION

The Osage Nation respectfully requests that the Court enter an order adopting the schedule attached to the motion as Exhibit A (with the motion to be tailored as described herein, and with the schedule to include any modifications the Court deems appropriate).

April 14, 2008

Respectfully submitted,

*s/Wilson K. Pipestem*

WILSON K. PIPESTEM
Pipestem Law Firm, P.C.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 419-3526
Fax: (202) 659-4931
wkpipestem@pipestemlaw.com

Attorney for Plaintiff
Osage Nation