shall have full power and authority to do any and all things by this Act required to be done for the carrying on of said celebration, including the detail of such persons as may be necessary for clerical and other services in connection with the work of said Commission from the Departments of which they are respectively at the head, and not in terms expressly entrusted to others, and all things necessary to the appropriate inauguration and successful holding of said celebration, whether herein expressly enumerated or not: *Provided, however*, That said Commission shall do no act which will require any expenditure of money in excess of the sums herein appropriated, and should it transcend this limitation the Government of the United States will not be bound by its acts.

*Proviso.* Limitation on expenditures.

Approved, March 3, 1905.

---

March 3, 1905. [H. R. 17474.] [Public, No. 212.]

**CHAP. 1479.**—An Act Making appropriations for the current and contingent expenses of the Indian Department and for fulfilling treaty stipulations with various Indian tribes for the fiscal year ending June thirtieth, nineteen hundred and six, and for other purposes.

Indian Department appropriations.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the following sums be, and they are hereby, appropriated, out of any money in the Treasury not otherwise appropriated, for the purpose of paying the current and contingent expenses of the Indian Department, and in full compensation for all offices the salaries for which are specially provided for herein, for the service of the fiscal year ending June thirtieth, nineteen hundred and six, and for fulfilling treaty stipulations with various Indian tribes, namely:

## CURRENT AND CONTINGENT EXPENSES.

Pay of agents.

For pay of twenty-two agents of Indian affairs at the following-named agencies, at the rates respectively indicated, namely:

At the Blackfeet Agency, Montana, one thousand eight hundred dollars;

At the Cheyenne River Agency, South Dakota, one thousand eight hundred dollars;

At the Colville Agency, Washington, one thousand five hundred dollars;

At the Crow Creek Agency, South Dakota, one thousand six hundred dollars;

At the Crow Agency, Montana, one thousand eight hundred dollars;

At the Flathead Agency, Montana, one thousand five hundred dollars;

At the Kiowa Agency, Oklahoma Territory, one thousand eight hundred dollars;

At the La Pointe Agency, Wisconsin, one thousand eight hundred dollars;

At the Leech Lake Agency, Minnesota, one thousand eight hundred dollars;

At the Lower Brule Agency, South Dakota, one thousand four hundred dollars;

At the New York Agency, New York, one thousand dollars;

At the Osage Agency, Oklahoma Territory, one thousand eight hundred dollars;

At the Pine Ridge Agency, South Dakota, one thousand eight hundred dollars;

At the Rosebud Agency, South Dakota, one thousand eight hundred dollars;

At the San Carlos Agency, Arizona, one thousand eight hundred dollars;

HeinOnline -- 33 Stat. 1048 1897-1905

At the Shoshone Agency, Wyoming, one thousand eight hundred dollars;

At the Sisseton Agency, South Dakota, one thousand five hundred dollars;

At the Standing Rock Agency, North Dakota, one thousand eight hundred dollars;

At the Uintah and Ouray Agency, Utah (consolidated), one thousand eight hundred dollars;

At the Union Agency, Indian Territory, three thousand dollars;

At the White Earth Agency, Minnesota, one thousand eight hundred dollars;

At the Yankton Agency, South Dakota, one thousand six hundred dollars;

*Provisos.* Not available for army officers as agents.

In all, thirty-eight thousand three hundred dollars: *Provided*, That the foregoing appropriations shall not take effect nor become available in any case for or during the time in which any officer of the Army of the United States shall be engaged in the performance of the duties of Indian agent at any of the agencies above named: *Provided further*, That the Commissioner of Indian Affairs, with the approval of the Secretary of the Interior, may devolve the duties of any Indian agency, or any part thereof, upon the superintendent of the Indian training school located at such agency whenever in his judgment such superintendent can properly perform the duties of such agency. And the superintendent upon whom such duties devolve shall give bond as other Indian agents.

School superintendents may act as agents.

Bond.

Interpreters.

For payment of necessary interpreters, to be distributed in the discretion of the Secretary of the Interior, four thousand dollars; but no person employed by the United States and paid for any other service shall be paid for interpreting.

Inspectors.

Irrigation.

For pay of eight Indian inspectors, two of whom shall be engineers, one to be designated as chief, competent in the location, construction, and maintenance of irrigation works, at two thousand five hundred dollars per annum each, except the chief engineer, who shall receive three thousand five hundred dollars, twenty-one thousand dollars: *Provided*, That the requirement of two engineers skilled in irrigation shall become immediately operative.

*Proviso.* Skilled engineers.

Expenses.

For traveling expenses of eight Indian inspectors, at three dollars per day when actually employed on duty in the field, exclusive of transportation and sleeping-car fare, in lieu of all other expenses now authorized by law, and for incidental expenses of negotiation, inspection, and investigation, including telegraphing and expenses of going to and going from the seat of government, and while remaining there under orders and direction of the Secretary of the Interior, for a period not to exceed twenty days, twelve thousand eight hundred dollars.

Superintendent of schools.

For pay of one superintendent of Indian schools, three thousand dollars.

Traveling expenses.

*Provisos.* Per diem.

For necessary traveling expenses of one superintendent of Indian schools, including telegraphing and incidental expenses of inspection and investigation, one thousand five hundred dollars: *Provided*, That he shall be allowed three dollars per day for traveling expenses when actually on duty in the field, exclusive of cost of transportation and sleeping-car fare, in lieu of all other expenses now allowed by law: *And provided further*, That hereafter he shall perform such other duties as may be imposed upon him by the Commissioner of Indian Affairs, subject to the approval of the Secretary of the Interior.

Other duties.

Agency buildings.

For buildings and repairs of buildings at agencies and for rent of buildings for agency purposes, and for water supply at agencies, sixty-five thousand dollars.

Contingencies.

For contingencies of the Indian Service, including traveling and incidental expenses of Indian agents and of their offices, and of the Commissioner of Indian Affairs; also traveling and incidental expenses

HeinOnline -- 33 Stat. 1049 1897-1905

of special agents, at three dollars per day when actually employed on duty in the field, exclusive of transportation and sleeping-car fare, in lieu of all other expenses now authorized by law, and expenses of going to and going from the seat of government, and while remaining there under orders and direction of the Commissioner of Indian Affairs, for a period not to exceed twenty days; for pay of employees not otherwise provided for, and for pay of the special agents, at two thousand dollars per annum each, seventy-five thousand dollars.

Citizen commission. Vol. 16, p. 40.

For expenses of the commission of citizens, serving without compensation, appointed by the President under the provisions of the fourth section of the Act of April tenth, eighteen hundred and sixty-nine, four thousand dollars, of which amount a sum not to exceed three hundred dollars may be used by the commission for office rent.

Rent.

Practical farmers.

To enable the Secretary of the Interior to employ practical farmers and practical stockmen subject only to such examination as to qualifications as the Secretary of the Interior may prescribe, in addition to the agency farmers now employed, at wages not exceeding seventy-five dollars each per month, to superintend and direct farming and stock raising among such Indians as are making effort for self-support, one hundred and twenty-five thousand dollars: *Provided*, That the amounts paid said farmers and stockmen shall not come within the limit for employees fixed by the Act of June seventh, eighteen hundred and ninety-seven. (Thirtieth Statutes, page ninety.)

*Proviso.* Not included in limit for employees.

Vol. 30, p. 90.

Indian police.

For services of officers at fifteen dollars per month each, and privates at ten dollars per month each, of Indian police, to be employed in maintaining order and prohibiting illegal traffic in liquor on the several Indian reservations and within the Territory of Alaska, in the discretion of the Secretary of the Interior, for the purchase of equipments, and for the purchase of rations for policemen at nonration agencies, one hundred thousand dollars.

Judges of Indian courts.

For compensation of judges of Indian courts, twelve thousand dollars.

Matrons to teach housekeeping.

To enable the Secretary of the Interior to employ suitable persons as matrons to teach Indian girls in housekeeping and other household duties, at a rate not to exceed seventy dollars per month, and for furnishing necessary equipments, and renting quarters where necessary, twenty-five thousand dollars: *Provided*, That the amount paid said matrons shall not come within the limit for employees fixed by the Act of June seventh, eighteen hundred and ninety-seven. (Thirtieth Statutes, page ninety.)

*Proviso.* Not included in limit for employees. Vol. 30, p. 90.

Purchasing supplies, etc.

Telegraphing, telephoning, and purchase of Indian supplies: To pay the expense of purchasing goods and supplies for the Indian Service, and pay of necessary employees; advertising, at rates not exceeding regular commercial rates; inspection, and all other expenses connected therewith, and for telegraphing and telephoning, sixty thousand dollars.

Transporting supplies.

For necessary expenses of transportation of such goods, provisions, and other articles for the various tribes of Indians provided for by this Act, including pay and expenses of transportation agents and rent of warehouses, two hundred thousand dollars.

Vaccination.

For pure vaccine matter and vaccination of Indians, five thousand dollars.

Fulfilling treaties.

## FULFILLING TREATY STIPULATIONS WITH AND SUPPORT OF INDIAN TRIBES.

Chippewas of the Mississippi.

### CHIPPEWAS OF THE MISSISSIPPI.

Schools. Vol. 16, p. 720.

For support of a school or schools upon said reservation, during the pleasure of the President, in accordance with third article of treaty of March nineteenth, eighteen hundred and sixty-seven, four thousand dollars.

HeinOnline -- 33 Stat. 1050 1897-1905

CHOCTAWS.

Choc.

Permanent annuities. Vol. 7, p. 99. Vol. 11, p. 614.

For permanent annuity, per second article of treaty of November sixteenth, eighteen hundred and five, and thirteenth article of treaty of June twenty-second, eighteen hundred and fifty-five, three thousand dollars;

Light horsemen. Vol. 7, p. 213. Vol. 11, p. 614.

For permanent annuity for support of light horsemen, per thirteenth article of treaty of October eighteenth, eighteen hundred and twenty, and thirteenth article of treaty of June twenty-second, eighteen hundred and fifty-five, six hundred dollars;

Blacksmith. Vol. 7, p. 212. Vol. 7, p. 236. Vol. 11, p. 614.

For permanent annuity for support of blacksmith, per sixth article of treaty of October eighteenth, eighteen hundred and twenty, ninth article of treaty of January twentieth, eighteen hundred and twenty-five, and thirteenth article of treaty of June twenty-second, eighteen hundred and fifty-five, six hundred dollars;

Education. Vol. 7, p. 235. Vol. 11, p. 615.

For permanent annuity for education, per second and thirteenth articles of last two treaties named above, six thousand dollars;

Iron and steel. Vol. 7, p. 236. Vol. 11, p. 614.

For permanent annuity for iron and steel, per ninth article of treaty of January twentieth, eighteen hundred and twenty-five, and thirteenth article of treaty of June twenty-second, eighteen hundred and fifty-five, three hundred and twenty dollars;

Interest. Vol. 7, p. 236. Vol. 11, p. 614.

For interest on three hundred and ninety thousand two hundred and fifty-seven dollars and ninety-two cents, at five per centum per annum, for education, support of the government, and other beneficial purposes, under the direction of the general council of the Choctaws, in conformity with the provisions contained in the ninth and thirteenth articles of treaty of January twentieth, eighteen hundred and twenty-five, and treaty of June twenty-second, eighteen hundred and fifty-five, nineteen thousand five hundred and twelve dollars and eighty-nine cents; in all, thirty thousand and thirty-two dollars and eighty-nine cents.

CHIPPEWAS OF MINNESOTA, REIMBURSABLE.

Chippewas of Minnesota.

Advance interest. Vol. 25, p. 645.

Advance interest to the Chippewa Indians in Minnesota, as required by section seven of "An Act for the relief and civilization of the Chippewa Indians in the State of Minnesota," approved January fourteenth, eighteen hundred and eighty-nine, to be expended under the direction of the Secretary of the Interior, in the manner required by said Act (reimbursable), ninety thousand dollars.

Civilization, etc. Vol. 25, p. 642.

To enable the Commissioner of Indian Affairs, under the direction of the Secretary of the Interior, to carry out an Act entitled "An Act for the relief and civilization of the Chippewa Indians in the State of Minnesota," approved January fourteenth, eighteen hundred and eighty-nine, namely, the purchase of material and employment of labor for the erection of houses for Indians; for the purchase of agricultural implements, stock, and seeds, breaking and fencing land; for payment of expenses of delegations of Chippewa Indians to visit the White Earth Reservation; for the erection and maintenance of day and industrial schools; for subsistence and for pay of employees; fot pay of commissioners and their expenses, and for removal of Indians and for their allotments, to be made under the supervision of said commissioners, to be reimbursed to the United States out of the proceeds of sale of their lands, one hundred and fifty thousand dollars.

CŒUR D'ALENES.

Cœur d'Alenes.

Vol. 26, p. 1028. Vol. 26, p. 1029.

For fourteenth of fifteen installments of eight thousand dollars each, to be expended under the direction of the Secretary of the Interior, under the sixth article of agreement of March twenty-sixth, eighteen hundred and eighty-seven, ratified by Act of March third, eighteen hundred and ninety-one, eight thousand dollars;

For pay of blacksmith, carpenter, and physician, and purchase of medicines, as per the eleventh article of said agreement, three thousand five hundred dollars; in all, eleven thousand five hundred dollars.

Crows.

CROWS.

Vol. 22, p. 43.

For the twenty-fourth of twenty-five installments, as provided in agreement with the Crows, dated June twelfth, eighteen hundred and eighty, to be used by the Secretary of the Interior in such manner as the President may direct, thirty thousand dollars.

Fort Hall Indians.

FORT HALL INDIANS.

Vol. 25, p. 688.

For seventeenth of twenty installments, as provided in agreement with said Indians approved February twenty-third, eighteen hundred and eighty-nine, to be used by the Secretary of the Interior for the benefit of the Indians in such manner as the President may direct, six thousand dollars.

Blackfeet Agency.

INDIANS AT BLACKFEET AGENCY.

Vol. 29, p. 354.

For eighth of nine installments, to be disposed of as provided in article two of the agreement with the Indians of the Blackfeet Reservation, ratified by Act approved June tenth, eighteen hundred and ninety-six, one hundred and fifty thousand dollars.

Iowas.

IOWAS.

Interest.

Vol. 10, p. 1071.

For interest in lieu of investment on fifty-seven thousand five hundred dollars, balance of one hundred and fifty-seven thousand five hundred dollars, to July first, nineteen hundred and five, at five per centum per annum, for education or other beneficial purposes, under the direction of the President, per ninth article of treaty of May seventeenth, eighteen hundred and fifty-four, two thousand eight hundred and seventy-five dollars.

Kickapoos.

KICKAPOOS IN KANSAS.

Interest.

Vol. 10, p. 1079.

Payment to estate of deceased Indians.

Vol. 24, p. 219.

Vol. 25, p. 223.

Interest on sixty-five thousand two hundred and three dollars and eleven cents, at five per centum per annum, for educational and other beneficial purposes, per treaty of May eighteenth, eighteen hundred and fifty-four, three thousand two hundred and sixty dollars and fifteen cents. This amount to enable the President of the United States to pay the legal representatives of one deceased Kickapoo Indian (Sakto), the settlement of whose estate is desired under the provisions of section two of the Act of August fourth, eighteen hundred and eighty-six, such sum as may be the proportion of one hundred thousand dollars provided by said tribe for education, and other beneficial purposes, not exceeding three hundred and thirty-seven dollars and eighty-three cents. (Act of June twenty-ninth, eighteen hundred and eighty-eight, Twenty-fifth Statutes, page twenty-four.)

Molels.

MOLELS.

Schools.

Vol. 12, p. 981.

For pay of teachers and for manual-labor schools, and for all necessary materials therefor, and for the subsistence of the pupils, per second article of treaty of December twenty-first, eighteen hundred and fifty-five, three thousand dollars.

Northern Cheyennes and Arapahoes.

NORTHERN CHEYENNES AND ARAPAHOES.

Subsistence, etc.

Vol. 19, p. 256.

For subsistence and civilization, as per agreement with the Sioux Indians approved February twenty-eighth, eighteen hundred and

seventy-seven, including subsistence and civilization of Northern Cheyennes removed from Pine Ridge Agency to Tongue River, Montana, ninety thousand dollars;

For pay of physician, two teachers, two carpenters, one miller, two farmers, a blacksmith, and engineer, per seventh article of the treaty of May tenth, eighteen hundred and sixty-eight, nine thousand dollars; in all, ninety-nine thousand dollars. Physician etc. Vol. 15, p. 658.

OSAGES. Osages.

For interest on sixty-nine thousand one hundred and twenty dollars, at five per centum per annum, being value of fifty-four sections of land set apart by treaty of June second, eighteen hundred and twenty-five, for educational purposes, per Senate resolution of January ninth, eighteen hundred and thirty-eight, three thousand four hundred and fifty-six dollars. Interest. Vol. 7, p. 242.

PAWNEES. Pawnees.

For perpetual annuity, which is to be paid in cash to them, per second article of treaty of September twenty-fourth, eighteen hundred and fifty-seven, and agreement of November twenty-third, eighteen hundred and ninety-two, article three, thirty thousand dollars; Annuity. Vol. 11, p. 729.

For support of two manual-labor schools, per third article of same treaty, of September twenty-fourth, eighteen hundred and fifty-seven, ten thousand dollars;

For pay of one farmer, two blacksmiths, one miller, one engineer, and apprentices, and two teachers, per same treaty, five thousand and four hundred dollars; Farmer, etc.

For pay of physician and purchase of medicines, one thousand two hundred dollars;

For purchase of iron and steel and other necessaries for the shops, as per fourth article of treaty of September twenty-fourth, eighteen hundred and fifty-seven, five hundred dollars; in all, forty-one thousand seven hundred dollars. Iron and steel, etc. Vol. 11, p. 730.

POTTAWATOMIES. Pottawatomies.

For permanent annuity, in silver, per fourth article of treaty of August third, seventeen hundred and ninety-five, three hundred and fifty-seven dollars and eighty cents; Annuities. Vol. 7, p. 51.

For permanent annuity, in silver, per third article of treaty of September thirtieth, eighteen hundred and nine, one hundred and seventy-eight dollars and ninety cents; Vol. 7, p. 114.

For permanent annuity, in silver, per third article of treaty of October second, eighteen hundred and eighteen, eight hundred and ninety-four dollars and fifty cents; Vol. 7, p. 185.

For permanent annuity, in money, per second article of treaty of September twentieth, eighteen hundred and twenty-eight, seven hundred and fifteen dollars and sixty cents; Vol. 7, p. 317.

For permanent annuity, in specie, per second article of treaty of July twenty-ninth, eighteen hundred and twenty-nine, and second article of treaty of September twentieth, eighteen hundred and twenty-eight, five thousand seven hundred and twenty-four dollars and seventy-seven cents; Vol. 7, p. 320. Vol. 7, p. 317.

For permanent provision for payment of money in lieu of tobacco, iron, and steel, per second article of treaty of September twentieth, eighteen hundred and twenty-eight, and tenth article of treaties of June fifth and seventeenth, eighteen hundred and forty-six, one hundred and seven dollars and thirty-four cents; Vol. 7, p. 318. Vol. 9, p. 855.

For permanent provision for fifty barrels of salt, per second article of treaty of July twenty-ninth, eighteen hundred and twenty-nine, fifty dollars; Vol. 7, p. 320.

Interest. Vol. 9, p. 854.

For interest on two hundred and thirty thousand and sixty-four dollars and twenty cents, at five per centum, in conformity with provisions of article seven of treaties of June fifth and seventeenth, eighteen hundred and forty-six, eleven thousand five hundred and three dollars and twenty-one cents; in all, nineteen thousand five hundred and thirty-two dollars and twelve cents.

Quapaws.

QUAPAWS.

Education. Vol. 7, p. 425.

For education, per third article of treaty of May thirteenth, eighteen hundred and thirty-three, one thousand dollars; for blacksmith and assistants, and tools, iron, and steel for blacksmith shop, per same article and treaty, five hundred dollars; in all, one thousand five hundred dollars: *Provided*, That the President of the United States shall certify the same to be for the best interests of the Indians.

*Proviso.* Certificate of the President.

Sacs and Foxes of the Mississippi.

SACS AND FOXES OF THE MISSISSIPPI.

Annuity. Vol. 7, p. 85.

Interest. Vol. 7, p. 541.

For permanent annuity, in goods or otherwise, per third article of treaty of November third, eighteen hundred and four, one thousand dollars; for interest on two hundred thousand dollars, at five per centum, per second article of treaty of October twenty-first, eighteen hundred and thirty-seven, ten thousand dollars; for interest on eight hundred thousand dollars, at five per centum, per second article of treaty of October eleventh, eighteen hundred and forty-two, forty thousand dollars: *Provided*, That the sum of one thousand five hundred dollars of this amount shall be used for the pay of a physician and for purchase of medicine; in all, fifty-one thousand dollars.

*Proviso.* Physician, etc.

Sacs and Foxes of the Missouri.

SACS AND FOXES OF THE MISSOURI.

Interest. Vol. 7, p. 541.

For interest on one hundred and fifty-seven thousand four hundred dollars, at five per centum, under the direction of the President, per second article of treaty of October twenty-first, eighteen hundred and thirty-seven, seven thousand eight hundred and seventy dollars;

School. Vol. 12, p. 1173.

For support of a school, per fifth article of treaty of March sixth, eighteen hundred and sixty-one, two hundred dollars; in all, eight thousand and seventy dollars.

Seminoles.

SEMINOLES.

Interest. Vol. 11, p. 702.

For five per centum interest on two hundred and fifty thousand dollars, to be paid as annuity, per eighth article of treaty of August seventh, eighteen hundred and fifty-six, twelve thousand five hundred dollars;

For five per centum interest on two hundred and fifty thousand dollars, to be paid as annuity (they having joined their brethren West), per eighth article of treaty of August seventh, eighteen hundred and fifty-six, twelve thousand five hundred dollars;

Vol. 14, p. 757.

For interest on fifty thousand dollars, at the rate of five per centum per annum, to be paid annually for the support of schools, as per third article of treaty of March twenty-first, eighteen hundred and sixty-six, two thousand five hundred dollars;

For interest on twenty thousand dollars, at the rate of five per centum per annum, to be paid annually for the support of the Seminole government, as per same article, same treaty, one thousand dollars; in all, twenty-eight thousand five hundred dollars.

Senecas of New York.

SENECAS OF NEW YORK.

Annuity. Vol. 4, p. 442.

For permanent annuity, in lieu of interest on stock, per Act of February nineteenth, eighteen hundred and thirty-one, six thousand dollars;

HeinOnline -- 33 Stat. 1054 1897-1905

For interest, in lieu of investment, on seventy-five thousand dollars, at five per centum, per Act of June twenty-seventh, eighteen hundred and forty-six, three thousand seven hundred and fifty dollars; Interest. Vol. 9, p. 35.

For interest, at five per centum, on forty-three thousand and fifty dollars transferred from the Ontario Bank to the United States Treasury, per Act of June twenty-seventh, eighteen hundred forty-six, two thousand one hundred and fifty-two dollars and fifty cents; in all, eleven thousand nine hundred and two dollars and fifty cents.

SHOSHONES AND BANNOCKS.

Shoshones and Bannocks.

SHOSHONES: For pay of physician, teacher, carpenter, miller, engineer, farmer, and blacksmith, as per tenth article of treaty of July third, eighteen hundred and sixty-eight, five thousand dollars; Shoshones. Physician, etc. Vol. 15, p. 676.

For pay of second blacksmith, and such iron and steel and other materials as may be required, as per eighth article of same treaty, one thousand dollars;

BANNOCKS: For pay of physician, teacher, carpenter, miller, engineer, farmer, and blacksmith, as per tenth article of treaty of July third, eighteen hundred and sixty-eight, five thousand dollars; in all, eleven thousand dollars. Bannocks. Physician, etc. Vol. 15, p. 676.

SIX NATIONS OF NEW YORK.

Six Nations of New York.

For permanent annuity, in clothing and other useful articles, per sixth article of treaty of November eleventh, seventeen hundred and ninety-four, four thousand five hundred dollars. Annuity. Vol. 7, p. 46.

SIOUX OF DIFFERENT TRIBES, INCLUDING SANTEE SIOUX OF NEBRASKA.

Sioux of different tribes.

For pay of five teachers, one physician, one carpenter, one miller, one engineer, two farmers, and one blacksmith, per thirteenth article of treaty of April twenty-ninth, eighteen hundred and sixty-eight, ten thousand four hundred dollars; Teachers, etc. Vol. 15, p. 640.

For pay of second blacksmith, and furnishing iron, steel, and other material, per eighth article of same treaty, one thousand six hundred dollars;

For pay of additional employees at the several agencies for the Sioux in Nebraska and in North Dakota and South Dakota, eighty-five thousand dollars; Employees.

For subsistence of the Sioux, and for purposes of their civilization, as per agreement ratified by Act of Congress approved February twenty-eighth, eighteen hundred and seventy-seven, seven hundred thousand dollars: *Provided*, That this sum shall include transportation of supplies from the termination of railroad or steamboat transportation, and in this service Indians shall be employed whenever practicable: *And provided further*, That the number of rations issued shall not exceed the number of Indians on each reservation, and any excess in the number of rations issued shall be disallowed in the settlement of the agent's account: *Provided further*, That the unexpended balance for the fiscal year nineteen hundred and five is hereby appropriated and made available for nineteen hundred and six; Subsistence. Vol, 19, p. 256. *Provisos.* Transportation. Rations. Unexpended balance available.

For support and maintenance of day and industrial schools, including erection and repairs of school buildings, in accordance with article seven of the treaty of April twenty-ninth, eighteen hundred and sixty-eight, which article is continued in force for twenty years by section seventeen of the Act of March second, eighteen hundred and eighty-nine, two hundred and twenty-five thousand dollars; in all, one million and twenty-two thousand dollars. Schools, etc. Vol, 15, p. 637. Vol. 25, p. 894.

SIOUX, YANKTON TRIBE.

Sioux, Yankton tribe.

For seventeenth of twenty installments (last series), to be paid to them or expended for their benefit, per fourth article of treaty of Vol. 11, p. 744.

April nineteenth, eighteen hundred and fifty-eight, fifteen thousand dollars;

Subsistence. Vol. 19, p. 287.

For subsistence and civilization of Yankton Sioux, heretofore provided for in appropriations under "Fulfilling treaty with Sioux of different tribes," and so forth, thirty thousand dollars; in all, forty-five thousand dollars.

Spokanes.

SPOKANES.

Blacksmith, etc. Vol. 27, p. 139.

For pay of a blacksmith and carpenter to do necessary work and to instruct the said Indians in those trades, one thousand dollars each, per sixth article of agreement, with said Indians, dated March eighteenth, eighteen hundred and eighty-seven, ratified by Act of Congress approved July thirteenth, eighteen hundred and ninety-two, two thousand dollars.

Utes, Confederated Bands.

CONFEDERATED BANDS OF UTES

Carpenters, etc. Vol. 13, p. 675. Vol. 15, p. 622.

For pay of two carpenters, two millers, two farmers, and two blacksmiths, as per tenth article of treaty of October seventh, eighteen hundred and sixty-three, and fifteenth article of treaty of March second, eighteen hundred and sixty-eight, six thousand seven hundred and twenty dollars;

For pay of two teachers, as per same article of same treaty, one thousand eight hundred dollars;

Vol. 15, p. 621.

For purchase of iron and steel and the necessary tools for blacksmith shop, per ninth article of same treaty, two hundred and twenty dollars;

Food. Vol. 15, p. 622.

For annual amount for the purchase of beef, mutton, wheat, flour, beans, and potatoes, or other necessary articles of food, as per twelfth article of same treaty, thirty thousand dollars;

Employees.

For pay of employees at the several Ute agencies, fifteen thousand dollars; in all, fifty-three thousand seven hundred and forty dollars.

Winnebagoes.

WINNEBAGOES.

Interest. Vol. 7, p. 545. Vol. 12, p. 628.

For interest on eight hundred and four thousand nine hundred and nine dollars and seventeen cents, at five per centum per annum, per fourth article of treaty of November first, eighteen hundred and thirty-seven, and joint resolution of July seventeenth, eighteen hundred and sixty-two, forty thousand two hundred and forty-five dollars and forty-five cents; and the Secretary of the Interior is hereby directed to expend said interest for the support, education, and civilization of said Indians;

Purchase of stock. Vol. 16, p. 355.

For interest on seventy-eight thousand three hundred and forty dollars and forty-one cents, at five per centum per annum, to be expended under the direction of the Secretary of the Interior for the erection of houses, improvement of their allotments of land, purchase of stock, agricultural implements, seeds, and other beneficial objects, three thousand nine hundred and seventeen dollars and two cents; in all, forty-four thousand one hundred and sixty-two dollars and forty-seven cents.

Miscellaneous supports, etc.

## MISCELLANEOUS SUPPORTS AND GRATUITIES.

Apaches, Kiowas, Comanches, Wichitas, etc.

For subsistence and civilization of the Apaches, Kiowas, Comanches, Wichitas, and affiliated bands who have been collected in the reservations set apart for their use and occupation, twenty-five thousand dollars.

For support and civilization of the Arapahoes and Cheyennes who have been collected on the reservations set apart for their use and occupation, thirty-five thousand dollars. Arapahoes and Cheyennes.

For support and civilization of the Chippewas of Lake Superior, Wisconsin, to be expended for agricultural and educational purposes; pay of employees, including pay of physician, at one thousand two hundred dollars; purchase of goods and provisions, and for such other purposes as may be deemed for the best interest of said Indians, seven thousand dollars. Chippewas, Lake Superior.

For support and civilization of Turtle Mountain Band of Chippewas, North Dakota, including seeds, thirteen thousand dollars. Chippewas, Turtle Mountain Band.

For support and civilization of the confederated tribes and bands in middle Oregon, and for pay of employees, four thousand dollars. Confederated tribes, middle Oregon.

To furnish such articles of food as, from time to time, the condition and necessities of the Crow Indians may require, fifteen thousand dollars. Crows.

For support and civilization of the D'Wamish and other allied tribes in Washington, including pay of employees, five thousand dollars. D'Wamish, etc., Wash.

For support and civilization of Indians at Flathead Agency, Montana, including pay of employees, nine thousand dollars. Flatheads, etc.

For support and civilization of the Apache and other Indians in Arizona and New Mexico who have been or may be collected on reservations in Arizona and New Mexico, two hundred and twenty-five thousand dollars: *Provided*, That the unexpended balance for the fiscal year nineteen hundred and five is hereby appropriated and made available for nineteen hundred and six. Apaches, etc., Arizona and New Mexico. *Proviso.* Unexpended balance available.

For support and civilization of the Indians at Fort Belknap Agency, Montana, including pay of employees, twenty thousand dollars. Fort Belknap Indians.

For support and civilization of the Shoshones and Bannocks and other Indians of the Fort Hall Reservation in Idaho, including pay of employees, twenty thousand dollars. Fort Hall Indians.

For the support and civilization of Indians at Fort Berthold Agency, including pay of employees, twenty thousand dollars. Fort Berthold Indians.

For the construction of fence on said Fort Berthold Indian Reservation, under the direction of the Secretary of the Interior, to be immediately available, five thousand dollars: *Provided*, That so far as it can be done Indians of said reservation shall be exclusively employed in the construction of said fence. Fence. *Proviso.* Indian labor.

For support and civilization of the Indians at Fort Peck Agency, including pay of employees, fifty thousand dollars. Fort Peck Indians.

For support, civilization, and instruction of the Shoshones, Bannocks, Sheepeaters, and other Indians of the Lemhi Agency, Idaho, including pay of employees, ten thousand dollars. Lemhi Agency Indians.

For support and civilization of the Klamaths, Modocs, and other Indians of the Klamath Agency, Oregon, including pay of employees, five thousand dollars. Klamath Agency Indians.

For support and civilization of the Kansas Indians, Oklahoma Territory, including agricultural assistance and pay of employees, two thousand dollars. Kansas.

For support and civilization of the Kickapoo Indians in Oklahoma Territory, two thousand dollars. Kickapoos.

For the purchase of teams, farming implements, seeds, and other necessary articles for the Mexican Kickapoo Indians, known as the "Kicking Kickapoos," in Oklahoma Territory, in the discretion of the Secretary of the Interior, three thousand dollars. "Kicking Kickapoos."

For support and civilization of the Makahs, Washington, including pay of employees, two thousand dollars. Makahs.

For support and civilization of the Mission Indians in California, including pay of exployees, five thousand dollars. Mission Indians.



HeinOnline -- 33 Stat. 1057 1897-1905

Northern Indians, Cal.

For support and civilization of the Northern Indians, California, ten thousand dollars.

Investigation and report.

That the Secretary of the Interior is hereby authorized to investigate through an inspector or otherwise existing conditions of the California Indians and to report to Congress at the next session some plan to improve the same.

Round Valley Indian Reservation, Cal. Division line fence.

For fencing division line between the relinquished and diminished portions of the Round Valley Indian Reservation, California, two thousand five hundred dollars, to be reimbursed to the Treasury of the United States out of any money received from the sale of the said relinquished lands.

Nez Perce, Joseph's Band.

For purchase of agricultural implements, and support and civilization of Joseph's Band of Nez Perce Indians, one thousand dollars.

Pima Agency Indians.

For support and civilization of the Indians of Pima Agency, Arizona, forty thousand dollars, ten thousand dollars of which shall be made immediately available, to be expended for their benefit in such manner as the Secretary of the Interior, in his discretion, may deem best.

Poncas.

For support and civilization of the Ponca Indians, including pay of employees, ten thousand dollars.

Qui-nai-elts and Quil-leh-utes.

For support and civilization of the Qui-nai-elts and Quil-leh-utes, including pay of employees, one thousand dollars.

Shoshones, Wyo.

For support and civilization of Shoshone Indians in Wyoming, fifteen thousand dollars.

Shoshones, Nev.

For support and civilization of the Indians of the Western Shoshone Agency, Nevada, including pay of employees, eight thousand dollars.

Absentee Shawnees. Big Jim's Band.

For purchase of teams, farming implements, seeds, and other necessary articles for the Big Jim's Band of Absentee Shawnee Indians in Oklahoma Territory, in the discretion of the Secretary of the Interior, two thousand dollars.

Sioux, Devils Lake.

For support and civilization of Sioux of Devils Lake, North Dakota, ten thousand dollars.

Walla Wallas, Cayuses, and Umatillas.

For support and civilization of the Walla Walla, Cayuse, and Umatilla tribes, Oregon, including pay of employees, three thousand dollars.

Yakimas.

For support and civilization of Yakimas, and other Indians at said agency, including pay of employees, eight thousand dollars.

Incidental expenses.

## GENERAL INCIDENTAL EXPENSES OF THE INDIAN SERVICE.

Arizona.

Arizona: For general incidental expenses of the Indian Service in Arizona, including traveling expenses of agents, one thousand five hundred dollars.

California.

California: For general incidental expenses of the Indian Service in California, including traveling expenses of agents, and support and civilization of Indians at the Round Valley, Hoopa Valley, and Tule River agencies, four thousand dollars; and pay of employees at same agencies, eight thousand dollars; in all, twelve thousand dollars.

Colorado.

Colorado: For general incidental expenses of the Indian Service in Colorado, including traveling expenses of agents, five hundred dollars.

Idaho.

Idaho: For general incidental expenses of the Indian Service in Idaho, including traveling expenses of agents, five hundred dollars.

Indian Territory.

Indian Territory: For general incidental expenses of the Indian Service in the Indian Territory, and for pay of employees, eighteen thousand dollars.

Montana.

Montana: For general incidental expenses of the Indian Service in Montana, including traveling expenses of agents and pay of employees, eight thousand five hundred dollars.

Nevada.

Nevada: For general incidental expenses of the Indian Service in Nevada, including traveling expenses of agents, and support and civilization of Indians located on the Piute, Walker River, and Pyramid

Lake reservations, five thousand dollars; and pay of employees, including physician at the Walker River Reservation, at nine hundred dollars, four thousand nine hundred dollars; in all, nine thousand nine hundred dollars.

New Mexico.

NEW MEXICO: For general incidental expenses of the Indian Service in New Mexico, including traveling expenses of agents, one thousand dollars.

North Dakota.

NORTH DAKOTA: For general incidental expenses of the Indian Service in North Dakota, including traveling expenses of agents at three agencies, one thousand dollars.

Oregon.

OREGON: For general incidental expenses of the Indian Service in Oregon, including traveling expenses of agents, and support and civilization of Indians of Grande Ronde and Siletz agencies, three thousand dollars; and pay of employees at the same agencies, three thousand dollars; in all, six thousand dollars.

South Dakota.

SOUTH DAKOTA: For general incidental expenses of the Indian Service in South Dakota, including traveling expenses of agents at seven agencies, two thousand five hundred dollars.

Pine Ridge Indian Reservation.
Clerical work, etc., surveyor-general's office.

For clerical work and stationery in the office of the United States surveyor-general required on surveys within the Pine Ridge Indian Reservation, South Dakota, three thousand two hundred dollars.

Utah.

UTAH: For general incidental expenses of the Indian Service in Utah, including traveling expenses of agents, one thousand dollars.

Washington.

WASHINGTON: For general incidental expenses of the Indian Service in Washington, including traveling expenses of agents, and support and civilization of Indians at Colville and Puyallup agencies, and for pay of employees, twelve thousand dollars.

Wyoming.

WYOMING: For general incidental expenses of the Indian Service in Wyoming, including traveling expenses of agents, five hundred dollars.

Miscellaneous.

## MISCELLANEOUS.

Indian Territory.
Inspector's office.
Vol. 30, p. 504.

For clerical and incidental expenses of the United States inspector's office, Indian Territory, in accordance with the provisions of section twenty-seven of the Act of June twenty-eighth, eighteen hundred and ninety-eight, entitled "An Act for the protection of the people of the Indian Territory, and for other purposes," ten thousand dollars.

Confidential clerk to Commissioner.

For pay of confidential clerk in office of Commissioner of Indian Affairs, at the rate of one hundred and fifty dollars per month, one thousand eight hundred dollars, to be immediately available.

Five Civilized Tribes.
Survey, etc., of town sites.
Vol. 30, p. 500.

To pay all expenses incident to completion of the survey, platting, and appraisement of town sites in the Choctaw, Chickasaw, Creek, and Cherokee Nations, Indian Territory, under the provisions of an Act of June twenty-eighth, eighteen hundred and ninety-eight, and all Acts amendatory thereof or supplemental thereto, ten thousand dollars, the same to be immediately available: *Provided*, That the several town site commissions in the Choctaw, Chickasaw, Creek, and Cherokee Nations shall, upon the completion of the appraisement of the town lots in their respective nations, be abolished by the Secretary of the Interior at such time as in his judgment it is considered proper; and all unfinished work of such commissions, the sale of town lots at public auctions, disposition of contests, the determination of the rights of claimants, and the closing up of all other minor matters appertaining thereto shall be performed by the Secretary of the Interior under such rules and regulations as he may prescribe: *Provided further*, That all unsold lots, the disposition of which is required by public auction, shall be offered for sale and disposed of from time to time by the Secretary of the Interior for the best obtainable price as will in his judgment best subserve the interests of the several tribes; and the various provisions of law in conflict herewith are modified accordingly.

*Provisos.*
Town-site commissions abolished.
Unfinished work of.

Sale of unsold lots.

Conflicting laws modified.

HeinOnline -- 33 Stat. 1059 1897-1905

Removal of intruders.

Removal of intruders, Five Civilized Tribes: For the purpose of removing intruders and placing allottees in unrestricted possession of their allotments, to be expended under the direction of the Secretary of the Interior, fifteen thousand dollars.

For clerical work and labor connected with the sale and leasing of Creek and the leasing of Cherokee lands, fifteen thousand dollars.

Union agency.

Miscellaneous expenses.

For special clerical force in the office of the United States Indian Agent, Union Agency, and miscellaneous expenses in connection with entering of remittances received on account of payments of town lots and issuance of patents, and conveying same, six thousand dollars.

Commission, Five Civilized Tribes.

Completing work of, etc.

For the completion of the work heretofore required by law to be done by the Commission to the Five Civilized Tribes, and the provisions for investigations herein contained two hundred thousand dollars. Said appropriation to be disbursed under the direction of the Secretary of the Interior: *Provided*, That the work of completing the unfinished business, if any, of the Commission to the Five Civilized Tribes shall devolve upon the Secretary of the Interior, and that all the powers heretofore granted to the said Commission to the Five Civilized Tribes are hereby conferred upon the said Secretary on and after the first of July, nineteen hundred and five.

*Proviso.*

Powers conferred upon Secretary of the Interior.

Leases of allotted lands, Indian Territory.

Investigation of.

It shall be the duty of the Secretary of the Interior to investigate, or cause to be investigated, any lease of allotted land in the Indian Territory which he has reason to believe has been obtained by fraud, or in violation of the terms of existing agreements with any of the Five Civilized Tribes, and he shall in any such case where in his opinion the evidence warrants it refer the matter to the Attorney-General for suit in the proper United States court to cancel the same, and in all cases where it may appear to the court that any lease was obtained by fraud, or in violation of such agreements, judgment shall be rendered canceling the same upon such terms and conditions as equity may prescribe, and it shall be allowable in cases where all parties in interest consent thereto to modify any lease and to continue the same as modified: *Provided*, No lease made by any administrator, executor, guardian or curator which has been investigated by and has received the approval of the United States court having jurisdiction of the proceeding shall be subject to suit or proceeding by the Secretary of the Interior or Attorney-General: *Provided further*, No lease made by any administrator, executor, guardian, or curator shall be valid or enforcible without the approval of the court having jurisdiction of the proceeding.

Suits to cancel fraudulent leases.

Cancellation of leases.

*Proviso.*

Leases approved by United States court valid.

Leases not valid.

Allotments.

Vol. 24, p. 388.

To enable the President to cause, under the provisions of the Act of February eighth, eighteen hundred and eighty-seven, entitled "An Act to provide for the allotment of lands in severalty to Indians," such Indian reservations as in his judgment are advantageous for agricultural and grazing purposes to be surveyed or resurveyed, for the purposes of said Act, and to complete the allotment of the same, including the necessary clerical work incident thereto in the field and in the Office of Indian Affairs, and delivery of trust patents, so far as allotments shall have been selected under said Act, forty thousand dollars.

Irrigation.

For construction of ditches and reservoirs, purchase and use of irrigating tools and appliances, and purchase of water rights on Indian reservations, in the discretion of the Commissioner of Indian Affairs, under the direction of the Secretary of the Interior and subject to his control, one hundred and eighty-five thousand dollars, of which twenty-five thousand dollars shall be made immediately available: *Provided*, That the Commissioner of Indian Affairs, under the direction of the Secretary of the Interior, may employ such superintendents of irrigation, who shall be skilled irrigation engineers, not to exceed four, as in his judgment may be necessary to secure the construction of ditches and other irrigation works in a substantial and workmanlike manner.

*Proviso.*

Skilled engineers.

HeinOnline -- 33 Stat. 1060 1897-1905

For survey and subdivision of Indian reservations and of lands to be allotted to Indians, and to make allotments in severalty, to be expended by the Commissioner of Indian Affairs, under the direction of the Secretary of the Interior, twenty-five thousand dollars. And the President is hereby authorized, in his discretion, to allot the lands of any tribes of Indians to the individual members thereof whenever, in his judgment, it is advantageous for such Indians that such allotments be made: *Provided*, That any allotments which may be made of the Osage Reservation in Oklahoma Territory shall be made subject to the terms and conditions of the lease herein authorized, the same being a renewal as to a part of the premises covered by a certain lease dated March sixteenth, eighteen hundred and ninety-six, given by the Osage Nation of Indians to Edwin B. Foster and approved by the Secretary of the Interior and now owned by the Indian Territory Illuminating Oil Company under assignments approved by the Secretary of the Interior, which said lease and all subleases thereof duly executed on or before December thirty-first, nineteen hundred and four, or executed after that date based upon contracts made prior thereto, and which have been or shall be approved by the Secretary of the Interior, to the extent of six hundred and eighty thousand acres in the aggregate, are hereby extended for the period of ten years from the sixteenth day of March, nineteen hundred and six, with all the conditions of said original lease except that from and after the sixteenth day of March, nineteen hundred and six, the royalty to be paid on gas shall be one hundred dollars per annum on each gas well, instead of fifty dollars as now provided in said lease, and except that the President of the United States shall determine the amount of royalty to be paid for oil. Said determination shall be evidenced by filing with the Secretary of the Interior on or before December thirty-first, nineteen hundred and five, such determination; and the Secretary of the Interior shall immediately mail to the Indian Territory Illuminating Oil Company and each sublessee a copy thereof.

Surveying and allotting.

Lands allotted to individual Indians.

*Proviso.*
Oil leases in Osage Reservation.
Indian Territory Illuminating Oil Company.
Renewal of lease to.

Lease, etc., extended.

Royalty on gas to be increased.
On oil, may be determined by the President.
Filing of determination, copy to sublessee.

That there shall be created an Osage Townsite Commission consisting of three members, one of whom shall be the United States Indian Agent at the Osage Agency, one to be appointed by the Chief Executive of the Osage tribe and one by the Secretary of the Interior, who shall receive such compensation as the Secretary of the Interior may prescribe to be paid out of the proceeds of the sale of the lots sold under this Act.

Osage Townsite Commission, to be created.
Composition of.
Compensation.

That the Secretary of the Interior shall reserve from selection and allotment the south half of section four and the north half of section nine, township twenty-five north, range nine east, of the Indian meridian, including the town of Pawhuska, which, except the land occupied by the Indian school buildings, the agency reservoir, the Agent's office, the Council building and the residences of agency employees, and a twenty acre tract of land including the Pawhuska cemetery, shall be surveyed, appraised and laid off into lots, blocks, streets and alleys by said Townsite Commission, under rules and regulations prescribed by the Secretary of the Interior, business lots to be twenty-five feet wide and residence lots fifty feet wide, and sold at public auction, after due advertisement, to the highest bidder by said Townsite Commission, under such rules and regulations as may be prescribed by the Secretary of the Interior, and the proceeds of such sale shall be placed to the credit of the Osage tribe of Indians: *Provided*, That said lots shall be appraised at their real value exclusive of improvements thereon or adjacent thereto, and the improvements appraised separately: *And provided further*, That any person, church, school or other association in possession of any of said lots and having permanent improvements thereon, shall have a preference right to purchase the same at the appraised value, but in case the owner of the improvements refuses or

Town site at Pawhuska.

Survey, appraisal, and subdivision of.

Lots sold at public auction.

Proceeds credited to Osage Indians.
*Provisos.*
To be appraised at real value.

Preference right of owner.

Refusal to purchase.

neglects to purchase the same, then such lots shall be sold at public auction at not less than the appraised value, the purchaser at such sale to have the right to take possession of the same upon paying the occupant the appraised value of the improvements. There shall in like manner be reserved from selection and allotment one hundred and sixty acres of land, to conform to the public surveys, including the buildings now used by the licensed traders and others, for a town site at the town of Hominy; and the south half of the northwest quarter and the north half of the southwest quarter of section seven, township twenty-four north, range six east, for a townsite at the town of Fairfax, and the northeast corner, section thirteen, township twenty-four, range five east, consisting of ten acres, to be used for cemetery purposes; and two town sites of one hundred and sixty acres each on the line of the Midland Valley Railroad Company adjacent to stations on said line, not less than ten miles from Pawhuska. And the town lots at said towns of Fairfax and Hominy and at said town sites on line of the Midland Valley Railroad shall be surveyed, appraised and sold the same as provided for town lots in the town of Pawhuska.

Town site at Hominy.

Town site at Fairfax.

Cemetery.

Two additional town sites.

Sale, etc., of lots.

Choctaw and Chickasaw Citizenship Court.

Payment to bailiff, reporter, and stenographers.

That the disbursing clerk of the Department of Justice be, and he hereby is, authorized and directed to pay out of the unexpended balances of the appropriations for "Salaries and Expenses, Choctaw and Chickasaw Citizenship Court," such expenses as were incurred by the bailiff, reporter, and stenographers of the said court for subsistence while in the performance of their duties at the headquarters of the said court, and which remain unpaid by reason of a decision of the Comptroller of the Treasury, whether such expenses were actually paid by the disbursing clerk and disallowed by the accounting officers of the Treasury or payment refused by the disbursing clerk in the first instance.

Omaha, Nebr. Warehouse.

To maintain at the city of Omaha, Nebraska, in the discretion of the Secretary of the Interior, a warehouse for the receipt, storage, and shipping of goods for the Indian Service, ten thousand dollars.

Saint Louis, Mo. Warehouse.

To maintain at the city of Saint Louis, Missouri, in the discretion of the Secretary of the Interior, a warehouse for the receipt, storage, and shipping of goods for the Indian Service, ten thousand dollars.

Howell P. Myton. Credit in accounts.

That the Secretary of the Treasury is hereby authorized to place to the credit of Howell P. Myton the sum of seven hundred and ninety-six dollars and fourteen cents, being the amount charged against him as money paid to unlawfully enrolled members of said tribes while Indian agent, Uintah and Ouray Agency, Utah, during his term of service ending March thirty-first, nineteen hundred and three.

Fort Peck Indian Reservation.

Resurvey, etc.

For the resurvey and subdivision of a portion of the Fort Peck Indian Reservation, in the State of Montana, seventeen thousand dollars.

Turtle Mountain Reservation.

Payment to squatters on.

For payment of certain squatters on the Turtle Mountain Reservation for their improvements, namely, Francois Le Forte, five hundred and ten dollars; Corbet Bercier, six hundred and thirty dollars; William Bercier, three hundred and fifty-eight dollars; and Joseph Bercier, two hundred and seventy-five dollars; in all, one thousand seven hundred and seventy-three dollars: *Provided*, That they shall upon payment relinquish all claim to the lands they are occupying and remove from the reservation at such time as may be prescribed by the Secretary of the Interior.

*Proviso.*

Relinquishment of claims, etc.

Albert M. Anderson. Payment to.

To pay Albert M. Anderson, formerly agent at the Colville Agency, State of Washington, for expenses incurred in bringing a delegation of Colville Indians from the Colville Agency to Washington and return in January, nineteen hundred, as approved by the Secretary of the Interior, six hundred and two dollars and fifty cents.

Sioux Indian Reservation, Dak.

Allotments.

To enable the President to cause, under the provisions of the Act of March second, eighteen hundred and eighty-nine, entitled "An Act to

divide a portion of the reservation of the Sioux Nation of Indians in Dakota into separate reservations and to secure the relinquishment of the Indian title to the remainder, and for other purposes," to be allotted the lands in said separate reservations as provided in said Act, including the necessary resurveys, ten thousand dollars. Vol. 25, p. 888.

Canton, S. Dak. Asylum for insane Indians.

For the equipment and maintenance of the asylum for insane Indians at Canton, South Dakota, for incidental and all other expenses necessary for its proper conduct and management, including pay of employees, and for necessary expense of transporting insane Indians to and from said asylum, twenty-five thousand dollars.

Pueblo Indians, N. Mex. Attorney.

For pay of one special attorney for the Pueblo Indians of New Mexico, one thousand five hundred dollars, and for necessary traveling and incidental expenses of said attorney for the Pueblo Indians of New Mexico, five hundred dollars; in all, two thousand dollars.

J. Hale Sypher. Payment to.

For payment to J. Hale Sypher, out of any funds in the Treasury of the United States belonging to the Choctaw Nation, five thousand dollars, being in full settlement of the claim of the said Sypher against the said Choctaw Nation growing out of legal services performed by him under and by virtue of a certain agreement made and entered into between the legally authorized commissioners of said nation and said Sypher on the seventh day of November, eighteen hundred and ninety-one, in accordance with the findings of the Court of Claims made in pursuance of the reference of the claim of the said J. Hale Sypher to the said Court of Claims for adjudication, under the Act of Congress of April twenty-first, nineteen hundred and four, being "An Act making appropriations for the current and contingent expenses of the Indian Department, and for fulfilling treaty stipulations with various Indian tribes, for the fiscal year ending June thirtieth, nineteen hundred and five, and for other purposes," which said sum the Secretary of the Treasury is hereby authorized and directed to immediately pay to the said J. Hale Sypher upon execution by him of a receipt in full for all claims against the said Choctaw Nation for legal and professional services rendered by him to said nation under the agreement aforesaid. *Ante*, p. 208. Receipt.

Suits against Indians in Oklahoma.

That all actions against Indians or their property in the Territory of Oklahoma, whose affairs are under the supervision of Indian agents or bonded superintendents, shall be brought in the district court of the county in which the Indian resides.

Axel Jacobson. Reimbursement.

To enable the Secretary of the Interior to reimburse, as heretofore approved by him, to Axel Jacobson, the sum of two hundred and forty-three dollars actually expended by him in feeding, clothing, and caring for twenty-five Indian pupils at the Indian school, Wittemberg, Wisconsin, from July first to August twenty-fourth, eighteen hundred and ninety-five.

Ira M. Jones. Patent in fee to.

The President is hereby authorized and directed to issue a patent in fee to Ira M. Jones, an Ottawa allottee, for a part of the land heretofore allotted to him in the Indian Territory, to wit: The northwest quarter of the southeast quarter of section thirty, township twenty-eight north, range twenty-three east, of the Indian meridian, and all restrictions as to the sale, encumbrance, or taxation of said land are hereby removed.

Joseph E. Milot. May sell part of allotment.

That Joseph E. Milot, citizen Pottawatomie allottee numbered one hundred and forty-four, to whom a trust patent has been issued containing restrictions upon the alienation, may sell and convey the unsold portion of his allotment, but such conveyance shall be subject to the approval of the Secretary of the Interior, and when so approved shall convey full title to the purchaser the same as if a final patent without restrictions had been issued to the allottee.

Kansas Indians. Patents in fee to members of.

That the Secretary of the Interior be, and is hereby, authorized and directed to issue a patent in fee simple to W. E. Hardy, Amelia

HeinOnline -- 33 Stat. 1063 1897-1905

Clavier, Melinda Harris, William Hardy, W. F. S. Hardy, and members of the Kansas tribe of Indians in Oklahoma, for the land heretofore allotted to her in the Territory of Oklahoma and described as follows: Lot six of section seven, and the north half of the southwest one-quarter of section eight, all in township twenty-seven, range four, containing one hundred and fifty-five acres, and the west half of the southwest one-quarter and the northwest one-quarter of section twenty-one, township twenty-eight, range five, containing two hundred and forty acres, all on the Kansas Reservation in Oklahoma Territory.

Kickapoos. Patents in fee to members of.

That the Secretary of the Interior be, and is hereby, authorized and directed to issue patents in fee to Okemah and his wife Thithequa, Wahnahkethehah, Noten, Tahpahthea, Shuckequah, and Neconopit, members of the Kickapoo tribe heretofore allotted in the Territory of Oklahoma for lands so allotted to them, in said Territory, and all restrictions as to sale, incumbrance, or taxation of said land are hereby removed.

W. T. Whittaker. Patent in fee to.

That the Secretary of the Interior be, and he is hereby, authorized and directed to issue a patent in fee to W. T. Whittaker for the land heretofore allotted to him in the Cherokee Nation, as follows: The west one-half of the northwest quarter of the southwest quarter of section seventeen, township twenty-one, north, range nineteen east, and the northeast quarter of the northwest quarter of the southwest quarter of section seventeen, township twenty-one north, range nineteen east, containing thirty acres.

Henry Hicks and Philip R. Dawson. May alienate part of allotments.

That the following-named allottees of lands in the Quapaw Agency, Indian Territory, are authorized upon approval of the Secretary of Interior, to alienate certain portions of their allotments therein described, as follows: Henry Hicks, lot numbered three, containing three acres, more or less, and Philip R. Dawson, lot numbered four, containing twenty-eight acres, all in section thirty, township twenty-seven north of range twenty-four east.

Quapaw Agency. Restrictions on certain allottees, removed.

That all restrictions on lands of adopted full blood adult white allottees in the Quapaw Agency are hereby removed.

Keller and Indiana Consolidated Smelting Company. Land in Colville Indian Reservation granted to.

That the Secretary of the Interor be, and he is hereby, authorized and directed to set apart a tract of land not exceeding one hundred and twenty acres in extent, immediately adjacent to the lands now owned by the Keller and Indiana Consolidated Smelting Company, in the south half of the Colville Indian Reservation, in the State of Washington, suitable in its location for a town site, and that he cause the same to be conveyed to such person as may be designated by said company to receive title thereto, upon payment by said company of such price as may be fixed by him, and that the money received therefrom shall be deposited in the Treasury of the United States to the credit of the Colville Indians.

Henry Guitar. Patent in fee to.

That the President be, and he is hereby, authorized to issue a fee-simple patent to Henry Guitar, an Omaha Indian, for lands heretofore allotted to him in Nebraska, to wit: the northeast quarter of the southwest quarter, and lot four, section fifteen, township twenty-five north, range six east, of the sixth principal meridian, Nebraska, and all restrictions as to the sale, encumbrance, or taxation of said lands are hereby removed.

Susan E. Hines. Patent in fee to.

That the Secretary of the Interior be, and he is hereby, authorized and directed to issue a patent in fee to Susan E. Hines, a member of the Sisseton and Wahpeton tribe of Indians, for the land heretofore allotted to her in Roberts County, in the State of South Dakota, and all restrictions as to sale, encumbrance, or taxation of said land is hereby removed.

Long Jim. Patent in fee to.

That the Secretary of the Interior be, and hereby is, authorized and directed to issue a patent in fee to Long Jim for the lands heretofore allotted to him by the Secretary of the Interior on April eleventh,

HeinOnline -- 33 Stat. 1064 1897-1905

eighteen hundred and ninety-four, as modified and changed by Department order of April twentieth, eighteen hundred and ninety-four, under and by virtue of the agreement concluded July seventh, eighteen hundred and eighty-three, by and between the Secretary of the Interior and the Commissioner of Indian Affairs and Chief Moses and other Indians of the Columbia and Colville reservations, commonly known as the "Moses agreement," accepted, ratified, and confirmed by the Act of Congress approved July fourth, eighteen hundred and eighty-four (Twenty-third Statutes, pages seventy-nine and eighty), and under the decision of the General Land Office of July ninth, eighteen hundred and ninety-two, affirmed by the Department of the Interior January sixth, eighteen hundred and ninety-three, to wit: the northeast quarter, northeast quarter of the southeast quarter and lot one of section eleven, the northwest quarter and southwest quarter of the southwest quarter of section twelve, lot one of section fourteen, and lots one and two of section thirteen, township twenty-seven north, range twenty-two east, Willamette meridian, Washington, free of all restrictions as to sale, incumbrance, or taxation. Vol. 23, pp. 79, 80.

Cornelius Doxtater. May sell part of allotment.

That Cornelius Doxtater, Oneida allottee numbered three hundred and ninety, to whom trust patent has been issued containing restrictions upon alienation, may sell and convey any portion of his allotment, but such conveyance shall be subject to the approval of the Secretary of the Interior, and when so approved shall convey a full title to the purchaser of the same as if a final patent without restrictions had been issued to the allottee.

Paith-tite. May sell part of allotment.

That Paith-tite, Kiowa allottee numbered twenty-six hundred and eighty-seven, to whom a trust patent has been issued containing restrictions upon alienation, may sell and convey not exceeding ten acres of his allotment, and that Otto Wells, Comanche allottee numbered one hundred and two, to whom a similar patent has been issued, may sell and convey not exceeding eighty acres of his allotment, but that such conveyances shall be subject to the approval of the Secretary of the Interior, and when so approved shall convey full title to the purchasers the same as if a final patent, without restrictions, had been issued to the respective allottees.

William Lyons. Patent in fee to.

That the Secretary of the Interior be, and he is hereby, authorized and directed to issue a patent in fee simple to William Lyons, a Chippewa Indian, for the lands heretofore allotted to him on the Fond du Lac Reservation, in the State of Minnesota, to wit: the southeast quarter of the southwest quarter and the southwest quarter of the southeast quarter of section twenty-one, township forty-nine north, range seventeen west of the fourth principal meridian, and all restrictions as to sale, incumbrance, or taxation of said lands are hereby removed.

Theresa Anderson. Patent in fee to.

That the President be, and he is hereby, authorized and directed to issue a patent in fee to Theresa Anderson, allottee, of allotment of the lands of the Ponca Indian Reservation in Boyd County, Nebraska, numbered twelve, being the southeast quarter and the north one-half of the southwest quarter, and the south one-half of the northwest quarter of section eight, in township thirty-three north of range eleven west of the sixth principal meridian, in the county of Boyd, in the State of Nebraska; and all restrictions as to the sale, incumbrance, or taxation of said lands are hereby removed.

Jennie M. Brown. Patent in fee to.

That the president be, and he hereby is, authorized to issue a patent is fee to Jennie M. Brown, a member of the Sisseton and Wahpeton band of Sioux Indians, for lands heretofore allotted to her in the State of South Dakota, and all restrictions as to sale, incumbrance, or taxation of said lands are hereby removed.

Louisa Morgan and Mrs. Mandan. May sell allotments.

That Louisa Morgan and Mrs. Mandan (Wanyagwankewin), Yankton Sioux allottees, to whom trust patents have been issued containing restrictions upon alienation, may sell and convey all, or any part of

their allotments, but that such conveyance shall be subject to the approval of the Secretary of the Interior, and when so approved, shall convey full title to the purchaser, the same as if final patent, without restrictions, had been issued to said allottees.

Abraham Elm. Patent in fee to.

That the Secretary of the Interior be, and he is hereby, authorized and directed to issue a patent in fee simple to Abraham Elm, an Oneida Indian, for the lands heretofore allotted to him in the State of Wisconsin, and all restrictions as to sale, incumbrance, or taxation of said lands are hereby removed.

Simon Antone. Patent in fee to.

That the Secretary of the Interior be, and he is hereby, authorized in his discretion to issue a patent in fee simple to Simon Antone, an Oneida Indian, for the lands heretofore allotted to him in the State of Wisconsin, and all restrictions as to sale, incumbrance, or taxation of said lands are hereby removed.

William T. Selwyn. May purchase lands reserved for Yankton Agency, S. Dak.

That William T. Selwyn, a Yankton Sioux Indian, may purchase, upon such terms and conditions as the Secretary of the Interior may prescribe, a tract of not exceeding thirty-eight and sixty-one one-hundredths acres from the lands reserved for the Yankton Agency, South Dakota, including the land upon which the improvements of the said Selwyn are located, described as follows: Northeast quarter (lot five) of southwest quarter of section twenty-seven, township ninety-four, of range sixty-four, and the Secretary of the Interior is authorized to convey said tract to the said Selwyn by patent in fee.

Frank Meecham. Patent in fee to

That the Secretary of the Interior be, and he is hereby, authorized in his discretion to issue a patent in fee to Frank Meecham, a Yakima Indian, whose allotment is numbered eleven hundred and thirty-four, for the east half of the northeast quarter of section fifteen, township eleven north, range nineteen east, of the Willamette meridian, and all restrictions as to sale, incumbrances, or taxation of said lands are hereby removed.

Samuel J. Brown, Phoebe S. Lowe, Lilian S. Clay. Patents in fee to.

That the Secretary of the Interior be, and he is hereby, authorized and empowered to issue patents in fee simple to the following-named persons for the following tracts of land, respectively, the same being allottees on the Sisseton Indian Reservation of South Dakota, to wit: To Samuel J. Brown, junior, lot five, section twenty-four, township one hundred and twenty-five north, range fifty west, fifth principal meridian; the south half of the southwest quarter of section twenty-nine, and the northwest quarter of the northwest quarter of section thirty-two, township one hundred and twenty-six north, range fifty west. To Phoebe S. Lowe, formerly Phoebe S. Brown, the southwest quarter of the southwest quarter of section twenty-four, township one hundred and twenty-five north, range fifty west; the northeast quarter of the northwest quarter, the northwest quarter of the northeast quarter of section thirty-two, and the southwest quarter of the southeast quarter of section twenty-nine, township one hundred and twenty-six north, range fifty west. To Lillian S. Clay, formerly Lillian S. Brown, lot one, section twenty-five, township one hundred and twenty-five north, range fifty west; the southwest quarter of the northeast quarter, the northwest quarter of the southeast quarter of section thirty-two, and the southeast quarter of the southeast quarter of section twenty-nine, township one hundred and twenty-six north, range fifty west. And all provisions restricting or limiting the issue of patent or alienation of said lands by said allottees are hereby repealed so far as they conflict with this Act.

Henry Meagher. Patent in fee to.

That the Secretary of the Interior be, and he is hereby, authorized at his discretion to issue patents in fee to Henry Meagher, a Cheyenne and Arapaho Indian, for the lands heretofore allotted to him in the Territory of Oklahoma, to wit: The southwest quarter of section thirty-two, township eleven north, of range seven west, of the Indian meridian; and all restrictions as to sale, incumbrances, or taxation of said lands are hereby removed.

HeinOnline -- 33 Stat. 1066 1897-1905

That the Secretary of the Interior be, and he is hereby, authorized and directed to issue patents in fee to Jennet Jackson, formerly Jennie Meagher, a Cheyenne and Arapaho Indian, for the lands heretofore allotted to her in the Territory of Oklahoma, to wit: The northeast quarter of section thirty-one, township eleven north, of range seven west, of the Indian meridian; and all restrictions as to sale, incumbrances, or taxation of said lands are hereby removed. Jennet Jackson. Patent in fee to.

That the Secretary of the Interior be, and he is hereby, authorized and directed to issue patents in fee to Maggie Meagher, a Cheyenne and Arapaho Indian, for the lands heretofore allotted to her in the Territory of Oklahoma, to wit: The southeast quarter of section thirty-one, township eleven north, of range seven west, of the Indian meridian; and all restrictions as to the sale, incumbrances, or taxation of said lands are hereby removed. Maggie Meagher. Patent in fee to.

That the Secretary of the Interior be, and he is hereby, authorized and directed to issue a patent in fee simple to Jefferson Goulette, for the lands heretofore allotted to him in the State of South Dakota, to wit: The northwest quarter of the southwest quarter, or lots numbered three, four, and five of section thirty-one, township ninety-seven north, range sixty-four west, of the fifth principal meridian, and all restrictions as to sale, incumbrance, or taxation of said lands are hereby removed. Jefferson Goulette. Patent in fee to.

That Josephine Lillie is hereby given and granted the absolute, unqualified fee-simple title to the west half of the northwest quarter of section ten, in township ten north, range twenty east, of the Willamette meridian, in the Yakima Indian Reservation in the State of Washington, under patent heretofore issued to her by the United States of America, bearing date July tenth, eighteen hundred and ninety-seven, which patent is recorded in volume fifty-two, page two hundred and thirty-five, in the records of the General Land Office, free and clear from any trust or reservation, and with full power in her to sell and convey the same, free from any trust or reservation, and that a patent in due form of law shall be issued to her, her heirs and assigns, by the United States of America, giving, granting, and conveying to her the absolute fee-simple title thereto, free and clear from any trusts or reservations, and with full power in her to dispose of the same without restriction. And the provisions of the Act of Congress approved February eighth, eighteen hundred and eighty-seven (Twenty-fourth Statutes, page three hundred and eighty-eight), as amended by the Act of February twenty-eighth, eighteen hundred and ninety-one (Twenty-sixth Statutes, page seven hundred and ninety-four), shall not hereafter apply to or affect the said real property, and the patent hereto issued to her, bearing date July tenth, eighteen hundred and ninety-seven, and recorded in volume fifty-two, page two hundred and thirty-five, in the records of the General Land Office, be, and the same is hereby, canceled and held for naught. Josephine Lillie. Patent in fee to. Vol. 24, p. 388. Vol. 26, p. 794.

That the President be, and he is hereby, authorized, in his discretion, to issue a patent in fee to Mrs. Kiva C. Lewis, Rosebud allottee numbered thirty-nine hundred and eighty-six, for the lands heretofore allotted to her, and all restrictions as to sale, incumbrance, or taxation of said lands are hereby removed. Mrs. Kiva C. Lew... Patent in fee to.

That all restrictions as to the sale, incumbrance, or taxation of the lands heretofore allotted or that may hereafter be allotted to Mrs. Jennie O. Morton, of Ramona, Indian Territory, or to Fred. A. Kerr, of Hereford, Indian Territory, both citizens of the Cherokee Nation, and duly enrolled as such, be, and the same hereby are, removed. Jennie O. Morton, Fred. A. Kerr. Sale restrictions removed.

That the Secretary of the Interior is hereby authorized and empowered to issue a patent to Henry A. Quinn for the east half of the northwest quarter, the northeast quarter of the southwest quarter, and the northwest quarter of the southeast quarter of section thirty-two, town- Henry A. Quinn. Patent in fee to.

ship one hundred and twenty-five north, range fifty west of the fifth principal meridian, South Dakota.

Benjamin McBride. Patent in fee to.

That the Secretary of the Interior be, and he is hereby, authorized, in his discretion, to issue a patent in fee to Benjamin McBride, Yankton Sioux allottee, for the lands heretofore allotted him in South Dakota, and all restrictions as to the sale, incumbrance, or taxation of said lands are hereby removed.

Louisa Quinn Miller. Patent in fee to.

That the Secretary of the Interior be, and he is hereby, authorized and directed to issue a patent in fee to Louisa Quinn Miller, a member of the Sisseton and Wahpeton band of Sioux Indians, for lands heretofore allotted to her in the State of South Dakota, and all restrictions as to sale, incumbrance, or taxation of said lands are hereby removed.

Yankton Indian Reservation. Land reserved for park, etc., purposes.

That the Secretary of the Interior be, and he is hereby, authorized and empowered to set apart a tract of land not exceeding twenty acres in extent on the land reserved for agency purposes on the Yankton Indian Reservation, in the State of South Dakota, for the perpetual use of the Yankton tribe of Sioux Indians for a park and site for a monument or monuments to the memory of deceased Yankton Sioux chiefs and eminent members of their said tribe whose memory they may desire to perpetuate.

John F. Brown. Sale of lots to, confirmed.

That the resolutions of the Seminole council, passed and approved on April eighteenth, nineteen hundred, accepting and ratifying the contract and sale made by the Seminole town-site commissioners to John F. Brown, of the unsold lots in the town of Wewoka, Indian Territory, for the sum of twelve thousand dollars, and also providing for the distribution of the said money among the Seminole people per capita, be, and the same is hereby, ratified and confirmed.

Chippewa Reservation, Minn. Patent to diocese of Duluth for land in.

That the Secretary of the Interior is hereby authorized to sell and convey a patent to the diocese of Duluth for one hundred and sixty acres of land in the Chippewa Reservation of Minnesota, within the county of Cass, in said State, to be used as a site for a mission church to be established and maintained by said diocese of Duluth, said land to be selected by the Secretary of the Interior: *Provided*, That such sale does not conflict with any prior claim to such land. Such land to be sold for one dollar and twenty-five cents per acre, and the timber, if any, on said land to be sold at such price as may be determined by the Secretary of the Interior, the proceeds of said land and timber to be placed to the credit of the Chippewas of Mississippi.

*Proviso.* Prior claim. Price per acre, etc.

Rosa Rice and Thomas Quinn. Patents in fee to.

That the Secretary of the Interior be, and he is hereby, authorized to issue patents in fee to Rosa Rice and Thomas Quinn, Sisseton allottees, for the lands heretofore allotted to them in South Dakota, and that he be authorized, in his discretion, to issue a patent in fee to Alice Powless, an Oneida allottee, to lands heretofore allotted to her in Wisconsin, and all restrictions as to sale, encumbrance, and taxation of said lands are hereby removed.

Antoine Cabney and Carroll Farley. Patents in fee to.

That the President be, and he is hereby, authorized, in his discretion, to issue fee simple patents to Antoine Cabney and Carroll Farley, Omaha Indians, for lands heretofore allotted them in Nebraska, and all restrictions as to the sale, encumbrance, or taxation of said lands are hereby removed.

Runs Bowing. May sell part of allotment.

That Runs Bowing or William Elk, Ponca allottee numbered eighty-four, to whom a trust patent has been issued for lands heretofore allotted to him in Nebraska containing restrictions upon alienation, may sell and convey a tract of land lying on both sides of the right of way of the Chicago and Northwestern Railway, not exceeding five acres, but that such conveyance shall be subject to the approval of the Secretary of the Interior, and when so approved shall convey full title to the purchaser the same as if a final patent without restrictions had been issued to the allottee.

John Thompson. Patent in fee to.

That the Secretary of the Interior be, and he hereby is, authorized, in his discretion, to issue a patent in fee to John Thompson, a Santee

HeinOnline -- 33 Stat. 1068 1897-1905

Sioux Indian, in lieu of the trust patent heretofore issued to him for the lands in Nebraska, and all restrictions as to sale, encumbrance, or taxation of said lands are hereby removed.

Mille Lac Indians. Purchase of burial place for.

Vol. 30, p. 745.

To enable the Secretary of the Interior to purchase, for the use and benefit of the Mille Lac Indians, lot numbered four in section twenty-eight, township forty-three north, of range twenty-seven west of the fourth principal meridian, Minnesota, reserved by joint resolution of Congress of May twenty-seventh, eighteen hundred and ninety-eight, as a perpetual burial place for the Mille Lac Indians, five hundred dollars, or so much thereof as may be necessary, the person or persons holding the legal title to said lot to deed the same by warranty deed to the United States in trust for the use and benefit of the Mille Lac Indians.

Pueblo Indians, New Mexico. Land, etc., of, exempt from taxation.

That the lands now held by the various villages or pueblos of Pueblo Indians, or by individual members thereof, within Pueblo reservations or lands, in the Territory of New Mexico, and all personal property furnished said Indians by the United States, or used in cultivating said lands, and any cattle and sheep now possessed or that may hereafter be acquired by said Indians shall be free and exempt from taxation of any sort whatsoever, including taxes heretofore levied, if any, until Congress shall otherwise provide.

Chippewa Indian Reservation, Minn. Reimbursement to purchasers of timber on.

Vol. 25, p. 644.
Vol. 32, p. 268.

That the Secretary of the Treasury be, and he is hereby, authorized to return to the several purchasers of the pine timber from the lands of the ceded Chippewa Indian reservations, in the State of Minnesota, all or such parts of the moneys heretofore or hereafter severally deposited with their sealed bids, being twenty per centum of the amount of such bids, at sales held, or to be held, under the Act of January fourteenth, eighteen hundred and eighty-nine, as amended by Act of June twenty-seventh, nineteen hundred and two, as the Secretary of the Interior may determine such purchasers entitled to after the completion of their contracts of purchase.

Uintah Reservation, Utah. Restriction on grazing lands repealed. Vol. 32, p. 998. Vol. 32, p. 744.

That so much of the Act of March third, nineteen hundred and three, as provides that the grazing lands to be set apart for the use of the Uintah, White River Utes, and other Indians on the Uintah Reservation, as provided by public resolution numbered thirty-one, of June nineteenth, nineteen hundred and two, shall be confined to the lands south of the Strawberry River, be, and the same is hereby, repealed.

Unallotted lands. Time extended for opening, to entry. *Ante*, p. 207.

Vol. 32, p. 263.

That the time for opening to public entry the unallotted lands on the Uintah Reservation in Utah having been fixed by law as the tenth day of March, nineteen hundred and five, it is hereby provided that the time for opening said reservation shall be extended to the first of September, nineteen hundred and five, unless the President shall determine that the same may be opened at an earlier date and that the manner of opening such lands for settlement and entry, and for disposing of the same, shall be as follows: That the said unallotted lands, excepting such tracts as may have been set aside as national forest reserve, and such mineral lands as were disposed of by the Act of Congress of May twenty-seventh, nineteen hundred and two, shall be disposed of under the general provisions of the homestead and town-site laws of the United States, and shall be opened to settlement and entry by proclamation of the President, which proclamation shall prescribe the manner in which these lands may be settled upon, occupied, and entered by persons entitled to make entry thereof; and no person shall be permitted to settle upon, occupy, or enter any of said lands, except as prescribed in said proclamation, until after the expiration of sixty days from the time when the same are thereby opened to settlement and entry:

*Provisos.* Soldiers' and sailors' rights. R. S., secs. 2304, 2305, p. 422. Vol. 31, p. 847.

*Provided*, That the rights of honorably discharged Union soldiers and sailors of the late civil and the Spanish war or Philippine insurrection, as defined and described in sections twenty-three hundred and four and twenty-three hundred and five of the Revised Statutes, as

amended by the Act of March first, nineteen hundred and one, shall not be abridged: *And provided further*, That all lands opened to settlement and entry under this Act remaining undisposed of at the expiration of five years from the taking effect of this Act shall be sold and disposed of for cash, under rules and regulations to be prescribed by the Secretary of the Interior, not more than six hundred and forty acres to any one person. The proceeds of the sale of such lands shall be applied as provided in the Act of Congress of May twenty-seventh, nineteen hundred and two, and the Acts amendatory thereof and supplemental thereto.

Sale of remaining lands.

Proceeds of sale.
Vol. 32, p. 263.

That before the opening of the Uintah Indian Reservation the President is hereby authorized to set apart and reserve as an addition to the Uintah Forest Reserve, subject to the laws, rules, and regulations governing forest reserves, and subject to the mineral rights granted by the Act of Congress of May twenty-seventh, nineteen hundred and two, such portion of the lands within the Uintah Indian Reservation as he considers necessary, and he may also set apart and reserve any reservoir site or other lands necessary to conserve and protect the water supply for the Indians or for general agricultural development, and may confirm such rights to water thereon as have already accrued: *Provided*, That the proceeds from any timber on such addition as may with safety be sold prior to June thirtieth, nineteen hundred and twenty, shall be paid to said Indians in accordance with the provisions of the Act opening the reservation.

Uintah Forest Reserve.
Additional land reserved.
Vol. 29, p. 895.
Vol. 32, p. 263.
Reservoir site.
*Proviso.*
Proceeds of timber sales.

That the Raven Mining Company shall, within sixty days from the passage of this Act, file for record, in the office of the recorder of deeds of the county in which its claims are located, a proper certificate of each location; and it shall also, within the same time, file in the office of the Secretary of the Interior, in the city of Washington, said description and a map showing the locations made by it on the Uintah Reservation, Utah, under the Act of Congress of May twenty-seventh, nineteen hundred and two (Statutes at Large, volume thirty-two, page two hundred and sixty-three); and thereupon the Secretary of the Interior shall forthwith cause said locations to be inspected and report made, and if found to contain the character of mineral to which said company is entitled by the Act of Congress aforesaid and that each of said claims does not exceed the size of a regular mining claim, to wit, six hundred by fifteen hundred feet, he shall issue a patent in fee to the Raven Mining Company for each of said claims: *Provided further*, That the Florence Mining Company entitled under the Act of Congress approved May twenty-seventh, nineteen hundred and two, to the preferential right to locate not to exceed six hundred and forty acres of contiguous mineral land in the Uintah Reservation, Utah, shall within sixty days from the passage of this Act file in the office of the recorder of deeds of the county in which its location is made a proper description of its claim, and it shall within the same time file in the office of the Secretary of the Interior said description and a map showing the location made by it on the Uintah Reservation, Utah, and thereupon the Secretary of the Interior shall forthwith cause said location to be inspected and report thereon made, and if found not to exceed six hundred and forty acres he shall issue a patent in fee to said Company for the said land: *And provided further*, That the extension of time for opening the unallotted lands to public entry herein granted shall not extend the time to make locations to any person or company heretofore given a preferential right, but the Raven Mining Company and the Florence Mining Company pending the time for opening to public entry the Uintah Reservation shall have the right of ingress and egress to and from their respective properties over and through said reservation.

Raven Mining Company.
Certificate of location of claims, etc.
Vol. 32, p. 263.
Patent to.
*Provisos.*
Florence Mining Company.
Certificate of location of claim.
Patent to.
Right of ingress, etc.

HeinOnline -- 33 Stat. 1070 1897-1905

Cherokee Nation. Enrollment.

That in the case entitled "In the matter of enrollment of persons claiming rights in the Cherokee Nation by intermarriage against The United States, Departmental, Numbered Seventy-six," now pending in the Court of Claims, the said court is hereby authorized and empowered to render final judgment in said case, and either party feeling itself aggrieved by said judgment shall have the right of appeal to the Supreme Court of the United States within thirty days from the filing of said judgment in the Court of Claims. And the said Supreme Court of the United States shall advance said case on its calendar for early hearing.

Delaware-Cherokee citizens granted right to sell certain improvements.

That Delaware-Cherokee citizens who have made improvements, or were in rightful possession of such improvements upon lands in the Cherokee Nation on April twenty-first, nineteen hundred and four to which there is no valid adverse claim, shall have the right within six months from the date of the approval of this Act to dispose of such improvements to other citizens of the Cherokee Nation entitled to select allotments at a valuation to be approved by an official to be designated by the President for that purpose and the amount for which said improvements are disposed of, if sold according to the provisions of this Act, shall be a lien upon the rents and profits of the land until paid, and such lien may be enforced by the vendor in any court of competent jurisdiction: *Provided*, That the right of any Delaware-Cherokee citizen to dispose of such improvements shall, before the valuation at which the improvements may be sold, be determined under such regulations as the Secretary of the Interior may prescribe.

*Proviso.* Restriction.

Commission, Five Civilized Tribes. Choctaw and Chickasaw Indians. Allotments, etc., to children of born, prior to September 25, 1902. *Ante*, p. 571.

That the Commission to the Five Civilized Tribes is hereby authorized for sixty days after the date of the approval of this Act to receive and consider applications for enrollment of infant children born prior to September twenty-fifth, nineteen hundred and two, and who were living on said date, to citizens by blood of the Choctaw and Chickasaw tribes of Indians whose enrollment has been approved by the Secretary of the Interior prior to the date of the approval of this Act; and to enroll and make allotments to such children.

Subsequent, etc., births.

That the Commission to the Five Civilized Tribes is authorized for sixty days after the date of the approval of this Act to receive and consider applications for enrollment of children born subsequent to September twenty-fifth, nineteen hundred and two, and prior to March fourth, nineteen hundred and five, and who were living on said latter date, to citizens by blood of the Choctaw and Chickasaw tribes of Indians whose enrollment has been approved by the Secretary of the Interior prior to the date of the approval of this Act; and to enroll and make allotments to such children.

Creek children.

That the Commission to the Five Civilized Tribes is authorized for sixty days after the date of the approval of this Act to receive and consider applications for enrollments of children born subsequent to May twenty-five, nineteen hundred and one, and prior to March fourth, nineteen hundred and five, and living on said latter date, to citizens of the Creek tribe of Indians whose enrollment has been approved by the Secretary of the Interior prior to the date of the approval of this Act; and to enroll and make allotments to such children.

Seminole children.

That the Commission to the Five Civilized Tribes is authorized for ninety days after the date of the approval of this Act to receive and consider applications for enrollment of infant children born prior to March fourth, nineteen hundred and five, and living on said latter date, to citizens of the Seminole tribe whose enrollment has been approved by the Secretary of the Interior; and to enroll and make allotments to such children giving to each an equal number of acres of land, and such children shall also share equally with other citizens

HeinOnline -- 33 Stat. 1071 1897-1905

of the Seminole tribe in the distribution of all other tribal property and funds.

Chickasaws. Payment of school warrants.

That the sum of three hundred thousand dollars be, and the same is hereby, appropriated from the trust or invested funds of the Chickasaw tribe now in the Treasury of the United States belonging to said tribe, for the immediate payment of all the outstanding school warrants of said tribe, legally issued for the purpose of maintaining the public schools of said tribe, such payment to be made under the direction of the Secretary of the Interior: *Provided*, That any unexpended balance of said three hundred thousand dollars shall be held by the Secretary of the Interior and be by him added to the interests of the Chickasaw tribe in the coal and asphaltum royalty fund, and used for the maintenance of public schools of said tribe during the existence of the tribal government: *And provided further*, That the sum of seventy-five thousand dollars of the money in the Treasury belonging to the Creek Nation, derived from the sale of lots in town sites, is hereby appropriated and made immediately available for the payment, under the direction of the Secretary of the Interior, of the outstanding indebtedness of said Nation.

*Provisos.* Unexpended balance.

Creek Nation. Payment of outstanding indebtedness

Turner Hardware Company. Payment to.

That the Secretary of the Interior be, and he is hereby, authorized and directed to pay, out of any available funds of the Creek Nation of Indians in the Treasury of the United States, to the Turner Hardware Company, of Muscogee, Indian Territory, the sum of one thousand two hundred and forty-nine dollars and five cents, in full payment of accounts for certain school supplies purchased by the superintendents for the use of various Creek boarding schools in the years eighteen hundred and ninety-nine and nineteen hundred, which accounts are approved by the superintendent of schools in Indian Territory.

Delos K. Lonewolf. Reimbursement.

To reimburse Delos K. Lonewolf, a Kiowa Indian, for the value of the improvements owned by him and surrendered to the United States on the Kiowa, Comanche, and Apache Indian Reservation, in Oklahoma, the sum of one hundred and fifty dollars, and the acceptance of said sum by said Lonewolf shall be a complete and absolute bar to any and all claims against the United States for said improvements.

George Walker. Payment to.

That the Secretary of the Interior be, and he is hereby, authorized and directed to pay to George Walker, a Pottawatomie Indian, of Michigan, whose name was omitted from Schedule A of the findings of the Court of Claims, his proportionate share of the sum of seventy-eight thousand three hundred and twenty-nine dollars and twenty-five cents appropriated for certain Pottawatomies of Michigan by the Act approved April twenty-first, nineteen hundred and four, amounting to two hundred and eighty-seven dollars and ninety-seven cents.

Creek lands. Sale of unallotted, repealed. *Ante*, p. 204. Vol. 31, p. 862.

That the provision in the Indian appropriation bill for the fiscal year ending June thirtieth, nineteen hundred and four, authorizing the Secretary of the Interior to sell the residue of the lands of the Creek Nation not taken as allotments is hereby repealed and the provision of the Creek agreement, Article III, approved March one, nineteen hundred and one, is hereby restored and reenacted.

Creek lands allotted to Seminoles. Payment for.

That the Secretary of the Interior shall make an investigation and definitely ascertain what amount of land, if any, belonging to the Creek Nation, has been taken and allotted to the members of the Seminole tribe and arrange payment to the Creek Nation for such land if there be anything due by the Seminole Nation.

Improvements.

That the improvements of Seminole citizens upon Creek lands and the improvements of Creek citizens upon Seminole lands that are unpaid for by said allottees shall be investigated by the Secretary of the Interior and paid for by said nations, respectively.

Umatilla Indian Reservation. Patents for grazing lands. Vol. 23, p. 342. Vol. 32, p. 730.

That all persons who have heretofore purchased any of the lands of the Umatilla Indian Reservation and have made full and final payment thereof in conformity with the Acts of Congress of March third, eighteen hundred and eighty-five, and of July first, nineteen hundred

and two, respecting the sale of such lands, shall be entitled to receive patent therefor upon submitting satisfactory proof to the Secretary of the Interior that the untimbered lands so purchased are not susceptible of cultivation or residence and are exclusively grazing lands, incapable of any profitable use other than for grazing purposes.

Oregon and Washington Indians. Investigation.

That the Secretary of the Interior be and he is hereby authorized and directed to investigate the number of Clatsop Indians of Oregon and Washington, Tillamook Indians of Oregon, Lower Band of Chinook Indians of Washington and Kathlamet Band of Chinook Indians of the State of Oregon, or their heirs, who can be identified as belonging to said tribes at the time of executing certain agreements dated August fifth, August seventh and August ninth, in the year eighteen hundred and fifty-one, and report his findings to Congress at its next session.

## SUPPORT OF SCHOOLS.

Indian schools.

Support, etc.

For support of Indian day and industrial schools, and for other educational purposes not hereinafter provided for, one million three hundred thousand dollars.

Buildings, etc.

For construction, purchase, lease, and repair of school buildings, and sewerage, water supply, and lighting plants, and purchase of school sites, and improvement of buildings and grounds, four hundred thousand dollars; in all, one million seven hundred thousand dollars.

Albuquerque, N. Mex.

For support and education of three hundred Indian pupils at Albuquerque, New Mexico, fifty thousand one hundred dollars; for pay of superintendent of said school, one thousand eight hundred dollars; for improvements to water supply, four thousand dollars; general repairs and improvements, five thousand dollars; in all, sixty thousand nine hundred dollars.

Chamberlain, S. Dak.

For the support and education of two hundred Indian pupils at Chamberlain, South Dakota, thirty-three thousand four hundred dollars; for pay of superintendent of said school, one thousand six hundred dollars; for general repairs and improvements, two thousand five hundred dollars; in all, thirty-seven thousand five hundred dollars.

Cherokee, N. C.

For support and education of one hundred and sixty pupils at the Indian school at Cherokee, North Carolina, twenty-six thousand seven hundred and twenty dollars; for pay of superintendent of said school, one thousand five hundred dollars; for general repairs and improvements, two thousand five hundred dollars; for laundry, four thousand dollars; in all, thirty-four thousand seven hundred and twenty dollars.

Carlisle, Pa.

For support of Indian school at Carlisle, Pennsylvania, for transportation of pupils to and from said school, and for general repairs and improvements, one hundred and fifty thousand dollars; for an addition to hospital, ten thousand dollars; for additional salary for superintendent in charge, one thousand dollars; in all, one hundred and sixty-one thousand dollars.

Carson City, Nev.

For support and education of three hundred Indian pupils at the Indian school at Carson City, Nevada, fifty thousand one hundred dollars; for pay of superintendent at said school, one thousand eight hundred dollars; for general repairs and improvements, four thousand dollars; for pumping and power plant, two thousand dollars; in all, fifty-seven thousand nine hundred dollars.

Chilocco, Okla.

For support and education of seven hundred Indian pupils at the Indian school at Chilocco, Oklahoma Territory, one hundred and sixteen thousand nine hundred dollars; for pay of superintendent at said school, three thousand dollars; for general repairs and improvements, ten thousand dollars; for cottage for assistant superintendent, three thousand dollars; for steam boilers, three thousand dollars; for ice plant, five thousand dollars; in all, one hundred and forty thousand nine hundred dollars.



HeinOnline -- 33 Stat. 1073 1897-1905

Flandreau, S. Dak.

For support and education of four hundred Indian pupils at Riggs Institute, Flandreau, South Dakota, sixty-six thousand eight hundred dollars; for general repairs and improvements, three thousand five hundred dollars; for pay of superintendent of said school, one thousand eight hundred dollars; in all, sixty-seven thousand nine hundred and twenty-five dollars: *Provided*, That, if in the discretion of the Commissioner of Indian Affairs it becomes necessary to continue at said school an excess of pupils over three hundred and seventy-five for the fiscal year ending June thirtieth, nineteen hundred and five, there is hereby appropriated therefor, to be immediately available, not exceeding four thousand one hundred and seventy-five dollars.

*Proviso.* Pupils.

Fort Mojave, Ariz.

For support and education of two hundred and ten Indian pupils at the Indian school, Fort Mojave, Arizona, thirty-five thousand and seventy dollars; for pay of superintendent of said school, one thousand six hundred dollars; for general repairs and improvements, two thousand dollars; for power house and steam pumps, six thousand dollars; in all, forty-four thousand six hundred and seventy dollars.

Fort Totten, N. Dak.

For support and education of three hundred and twenty-five Indian pupils at the Indian school, Fort Totten, North Dakota, fifty-four thousand two hundred and seventy-five dollars; for pay of superintendent at said school, one thousand seven hundred dollars; for general repairs and improvements, five thousand dollars; in all, sixty thousand nine hundred and seventy-five dollars.

Genoa, Nebr.

For support and education of three hundred Indian pupils at the Indian school, Genoa, Nebraska, fifty thousand one hundred dollars; for general repairs and improvements, four thousand dollars; for pay of superintendent of said school, one thousand seven hundred dollars; for office building, two thousand five hundred dollars; for shop buildings, six thousand dollars; in all, sixty-four thousand three hundred dollars.

Grand Junction, Colo.

Support and education of two hundred Indian pupils at the Indian school at Grand Junction, Colorado, thirty-three thousand four hundred dollars; pay of superintendent at said school, one thousand six hundred dollars; general repairs and improvements, two thousand dollars; dairy barn, four thousand five hundred dollars; superintendent's cottage, three thousand five hundred dollars; increase to gas plant, one thousand two hundred dollars; in all, forty-six thousand two hundred dollars.

Hampton, Va.

For the support and education of one hundred and twenty Indian pupils at the school at Hampton, Virginia, twenty thousand and forty dollars.

Hayward, Wis.

For the support and education of two hundred and fifteen pupils at the Indian school at Hayward, Wisconsin, thirty-three thousand six hundred and seventy dollars; pay of superintendent, one thousand five hundred dollars; general repairs and improvements, two thousand two hundred dollars; addition to warehouse, one thousand five hundred dollars; in all, thirty-eight thousand eight hundred and seventy dollars.

Kickapoo Reservation, Kans.

For support and education of seventy Indian pupils at the Indian school, Kickapoo Reservation, Kansas, eleven thousand six hundred and ninety dollars; for pay of superintendent, one thousand three hundred dollars; general repairs and improvements, one thousand two hundred dollars; in all, fourteen thousand one hundred and ninety dollars.

Lawrence, Kans.

For support and education of seven hundred and fifty Indian pupils at the Indian school, Haskell Institute, Lawrence, Kansas, for transportation of pupils to and from said school, one hundred and thirty-five thousand two hundred and fifty dollars; for pay of superintendent at said school, two thousand five hundred dollars; for general repairs and improvements, twelve thousand dollars; in all, one hundred and forty-nine thousand seven hundred and fifty dollars.

HeinOnline -- 33 Stat. 1074 1897-1905

Morris, Minn.

For the support and education of one hundred and fifty Indian pupils at Morris, Minnesota, Indian School, twenty-five thousand and fifty dollars; pay of superintendent, one thousand five hundred dollars; for addition to barn, one thousand five hundred dollars; for addition to and seating of school building, five thousand dollars; for equipment of laundry, one thousand dollars; for general repairs and improvements, one thousand five hundred dollars; in all, thirty-six thousand one hundred and fifty dollars.

Mount Pleasant, Mich.

For support and education of three hundred Indian pupils at the Indian school, Mount Pleasant, Michigan, fifty thousand one hundred dollars; for pay of superintendent of said school, one thousand seven hundred dollars; for general repairs and improvements, three thousand one hundred dollars, to be immediately available; for employees' quarters, six thousand dollars, to be immediately available; for dairy building, three thousand five hundred dollars, to be immediately available; for superintendent's cottage, four thousand dollars, to be immediately available; in all, sixty-eight thousand four hundred dollars.

Phoenix, Ariz.

For support and education of seven hundred Indian pupils at the Indian school at Phoenix, Arizona, one hundred and sixteen thousand nine hundred dollars; for general repairs and improvements, ten thousand dollars; for pay of superintendent at said school, two thousand five hundred dollars; horse barn, five thousand dollars; in all, one hundred and thirty-four thousand four hundred dollars.

Pierre, S. Dak.

For support and education of one hundred and fifty Indian pupils at the Indian industrial school at Pierre, South Dakota, twenty-five thousand and fifty dollars; for new school building, fifteen thousand dollars; for pay of superintendent of said school, one thousand five hundred dollars; for general repairs and improvements, three thousand dollars, to be immediately available; for equipment for workshop and laundry, three thousand five hundred dollars, to be immediately available; in all, thirty-three thousand and fifty dollars.

Pipestone, Minn.

For support and education of two hundred Indian pupils at the Indian school, Pipestone, Minnesota, thirty-three thousand four hundred dollars; for pay of superintendent at said school, one thousand six hundred dollars; for residence of employees, to be built of stone, ten thousand dollars; for equipment of industrial school, five thousand dollars; for general repairs and improvements, two thousand dollars; for superintendent's residence, four thousand five hundred dollars; in all, fifty-six thousand five hundred dollars.

Rapid City, S. Dak.

For support and education of two hundred and fifty Indian pupils at Rapid City, South Dakota, forty-one thousand seven hundred and fifty dollars; for pay of superintendent, one thousand six hundred dollars; for general repairs and improvements, three thousand dollars; for brick barn, five thousand dollars; in all, fifty-one thousand three hundred and fifty dollars.

Riverside, Cal.

For support and education of four hundred and fifty Indian pupils at the Sherman Institute, Riverside, California, seventy-five thousand one hundred and fifty dollars; for pay of superintendent, two thousand dollars; for additional water system, three thousand dollars; for industrial building for boys, ten thousand dollars; for general repairs and improvements, five thousand dollars; for purchase of reservoir site, five hundred dollars, to be immediately available; in all, ninety-uve thousand six hundred and fifty dollars: *Provided*, That the Indian school at Perris, California, is hereby discontinued, and the Commissioner of Indian Affairs, under the direction of the Secretary of the Interior, is authorized to sell and convey said property, and apply the proceeds thereof to the improvement of Sherman Institute, at Riverside, California.

*Proviso.*
Indian school, Perris, Cal.
Sale of, authorized.

Salem, Oreg.

For support and education of six hundred Indian pupils at the Indian school, Salem, Oregon, one hundred thousand two hundred dollars; for

pay of superintendent at said school, two thousand dollars; for general repairs and improvements, ten thousand dollars; in all, one hundred and twelve thousand two hundred dollars.

Sac and Fox Reservation, Iowa.

For the support and education of eighty Indian pupils, Sac and Fox Reservation, Iowa, thirteen thousand three hundred and sixty dollars; for pay of superintendent, one thousand dollars; for general repairs and improvements, one thousand two hundred dollars; laundry building, three thousand dollars; in all, eighteen thousand five hundred and sixty dollars.

Santa Fe, N. Mex.

For support and education of three hundred Indian pupils at the Indian school at Santa Fe, New Mexico, fifty thousand one hundred dollars; for pay of superintendent at said school, one thousand eight hundred dollars; for water supply, one thousand five hundred dollars; for general repairs and improvements, five thousand dollars; electric-light plant, three thousand dollars; in all, sixty-one thousand four hundred dollars.

Shoshone Reservation, Wyo.

For support and education of one hundred and seventy-five Indian pupils at the Indian school, Shoshone Reservation, Wyoming, twenty-nine thousand two hundred and twenty-five dollars; for pay of superintendent at said school, one thousand five hundred dollars; for general repairs and improvements, three thousand five hundred dollars; for new buildings, twelve thousand dollars (to be made immediately available); for additional water and sewer systems, eight thousand dollars (to be made immediately available); in all, fifty-four thousand two hundred and twenty-five dollars.

Pauquitch, Utah.

For support and education of seventy-five pupils at the Pauquitch Indian school in Utah, twelve thousand five hundred and twenty-five dollars; pay of superintendent, nine hundred dollars; general repairs and improvements, three thousand dollars; for hospital building, five thousand dollars; in all, twenty-one thousand four hundred and twenty-five dollars.

Tomah, Wis.

For the support and education of two hundred and fifty Indian pupils at the Indian school, Tomah, Wisconsin, forty-one thousand seven hundred and fifty dollars; for pay of superintendent at said school, one thousand seven hundred dollars; for girls' dormitory, ten thousand dollars; for purchase of lands, six thousand dollars; for general repairs and improvements, three thousand dollars; in all, sixty-two thousand four hundred and fifty dollars.

Truxton Canyon, Ariz.

For support and education of one hundred and fifty pupils at the Indian school at Truxton Canyon, Arizona, twenty-five thousand and fifty dollars; pay of superintendent, one thousand five hundred dollars; general repairs and improvements, four thousand dollars; for irrigation plant, four thousand dollars; for barn, three thousand dollars; in all, thirty-seven thousand five hundred and fifty dollars.

Coeur d'Alene Reservation, Idaho.

For a superintendent in charge of agency and educational matters on the Coeur d'Alene Reservation in Idaho, one thousand two hundred dollars; which reservation is hereby segregated from the Colville Agency in Washington.

Cherokee, Creek, Choctaw, etc., Indians.
Maintenance, etc., tribal schools.

For the maintenance, strengthening, and enlarging of the tribal schools of the Cherokee, Creek, Choctaw, Chickasaw, and Seminole nations, and making provision for the attendance of children of noncitizens therein, and the establishment of new schools under the control of the tribal school boards and the Department of the Interior, the sum of one hundred and fifty thousand dollars, or so much thereof as may be necessary, to be placed in the hands of the Secretary of the Interior, and disbursed by him under such rules and regulations as he may prescribe: *Provided*, That the Attorney-General of the United States is hereby authorized and directed to turn over to the Secretary of the Interior all money now in his hands paid over to him by the

*Proviso.*
Permanent school fund.
Use of surplus recording fees.

clerks and deputy clerks of the United States courts in the Indian Territory under the provisions of the Act of February nineteenth, nineteen hundred and three, which, under the terms of said Act, is to be applied to the permanent school fund of the district, and all money which may hereafter come into his hands from the same source under said Act; and the Secretary of the Interior is hereby authorized to use said money in maintaining, strengthening, and enlarging the schools in the Indian Territory as provided for in this paragraph. Vol. 32, p. 842.

Transportation, etc.

For collection and transportation of pupils to and from Indian schools, and also for the transportation of Indian pupils from all the Indian schools and placing of them, with the consent of their parents, under the care and control of such suitable white families as may in all respects be qualified to give such pupils moral, industrial, and educational training, under arrangements in which their proper care, support, and education shall be in exchange for their labor, sixty thousand dollars.

Supervision of expenditures.

That all expenditure of money appropriated for school purposes in this Act shall be at all times under the supervision and direction of the Commissioner of Indian Affairs, and in all respects in conformity with such conditions, rules, and regulations as to the conduct and methods of instruction and expenditure of money as may be from time to time prescribed by him, subject to the supervision of the Secretary of the Interior: *Provided*, That not more than one hundred and sixty-seven dollars shall be expended for the annual support and education of any one pupil in any school herein specifically provided for, except when, by reason of epidemic, accident, or other sufficient cause, the attendance is so reduced or cost of maintenance so high that a larger expenditure is absolutely necessary for the efficient operation of the school affected, when the Commissioner of Indian Affairs, with the approval of the Secretary of the Interior, may allow a larger per capita expenditure, such expenditure to continue only so long as the said necessity therefor shall exist: *Provided further*, That the total amount appropriated for the support of such school shall not be exceeded: *Provided further*, That the number of pupils in any school entitled to the per capita allowance hereby provided for shall be determined by taking the average enrollment for the entire fiscal year and not any fractional part thereof.

*Provisos.*
Limit of per capita expense.

Total for schools.

Determination of per capita allowance.

Purchase of supplies to be advertised.

SEC. 2. That no purchase of supplies for which appropriations are herein made, exceeding in the aggregate five hundred dollars in value at any one time, shall be made without first giving at least three weeks' public notice by advertisement, except in case of exigency, when, in the discretion of the Secretary of the Interior, who shall make official record of the facts constituting the exigency, and shall report the same to Congress at its next session, he may direct that purchases may be made in open market in amount not exceeding three thousand dollars at any one purchase: *Provided*, That supplies may be purchased, contracts let, and labor employed for the construction of artesian wells, ditches, and other works for irrigation, in the discretion of the Secretary of the Interior, without advertising as hereinbefore provided: *Provided further*, That as far as practicable Indian labor shall be employed and purchase in the open market made from Indians, under the direction of the Secretary of the Interior.

Exceptions.

*Provisos.*
Irrigation.

Purchases in open market, etc.

Use of surplus for subsistence deficiencies.

SEC. 3. That the Secretary of the Interior, under the direction of the President, may use any surplus that may remain in any of the said appropriations herein made for the purchase of subsistence for the several Indian tribes, to an amount not exceeding twenty-five thousand dollars in the aggregate, to supply any subsistence deficiency that may occur: *Provided*, That any diversions which shall be made under authority of this section shall be reported in detail, and the reason

*Provisos.*
Report of diversions.

therefor, to Congress, at the session of Congress next succeeding such diversion: *Provided further*, That the Secretary of the Interior, under direction of the President, may use any sums appropriated in this Act for subsistence, and not absolutely necessary for that purpose, for the purchase of stock cattle for the benefit of the tribe for which such appropriation is made, and shall report to Congress, at its next session thereafter, an account of his action under this provision: *Provided further*, That funds appropriated to fulfill treaty obligations shall not be used.

Purchase of stock cattle from subsistence supplies.

Treaty funds.

Transfer of funds for employees, etc.

SEC. 4. That when not required for the purpose for which appropriated, the funds herein provided for the pay of specified employees at any agency may be used by the Secretary of the Interior for the pay of other employees at such agency, but no deficiency shall be thereby created; and, when necessary, specified employees may be detailed for other service when not required for the duty for which they were engaged; and that the several appropriations herein or heretofore made for millers, blacksmiths, engineers, carpenters, physicians and other persons, and for various articles provided for by treaty stipulation for the several Indian tribes, may be diverted to other uses for the benefit of said tribes, respectively, within the discretion of the President, and with the consent of said tribes, expressed in the usual manner; and that he cause report to be made to Congress, at its next session thereafter, of his action under this provision.

Rejection of bids.

SEC. 5. That whenever after advertising for bids for supplies in accordance with sections three and four of this Act those received for any article contain conditions detrimental to the interests of the Government, they may be rejected, and the articles specified in such bids purchased in open market, at prices not to exceed those of the lowest bidder, and not to exceed the market price of the same, until such time as satisfactory bids can be obtained, for which immediate advertisement shall be made: *Provided*, That so much of the appropriations herein made as may be required to pay for goods and supplies, for expenses incident to their purchase, and for transportation of the same, for the year ending June thirtieth, nineteen hundred and six, shall be immediately available, but no such goods or supplies shall be distributed or delivered to any of said Indians prior to July first, nineteen hundred and five.

Open market purchases.

*Proviso.*
Amount for supplies immediately available.

Agreement with Port Madison Reservation Indians, Wash., ratified.

SEC. 6. That the following agreement made and concluded on the twenty-eighth day of May, nineteen hundred and four, by James McLaughlin, United States Indian inspector, with the male adult Indians residing on the Port Madison Indian Reservation, in the State of Washington, is hereby accepted, ratified, and confirmed:

Agreement.

This agreement made and entered into on the the twenty-eighth day of May, nineteen hundred and four, by and between James McLaughlin, United States Indian inspector, on the part of the United States, and the Indians belonging on the Port Madison Indian Reservation, in the State of Washington, witnesseth:

Lands ceded.

ARTICLE I. The said Indians belonging on the Port Madison Indian Reservation, in the State of Washington, for the consideration hereinafter named, do hereby cede, grant, and relinquish to the United States all right, title, and interest which they may have in and to that portion of the unallotted lands of the said Port Madison Indian Reservation, in the State of Washington, described by legal subdivision or Government survey as lots four and five, in section twenty-one, township twenty-six north, range two east, Willamette meridian, containing forty-eight and seventy-five one-hundredths acres, more or less.

Payment to Indians.

ARTICLE II. In consideration of the lands ceded, granted, relinquished, and conveyed by Article I of this agreement, the United States stipulates and agrees to pay to the said Indians per capita in cash the sum of three thousand nine hundred dollars, share and share alike, to

each man, woman, and child belonging on the said Port Madison Indian Reservation, within ninety days after the ratification of this agreement, and also to pay to certain of said Indians, within the said time limit, the sum of three thousand six hundred and twenty-eight dollars for certain personal improvements, and four hundred and sixty-six and seventy-five one-hundredths dollars to the treasurer of the Port Madison Indian Improvement Club for floating wharf, and three hundred and fifty-five dollars to the treasurer of the board of trustees of the Port Madison Indian Church, as listed in schedule of appraisement of said improvements upon lands ceded by Article I of this agreement, a copy of which schedule of appraisement is hereunto attached. And it is further agreed that the disposition of the sum of eight hundred and eighty-four dollars, the appraisement of the Government schoolhouse and farmer's dwelling, and two hundred dollars for cable anchorages of two telegraph companies, as per attached schedule, is discretionary with the Secretary of the Interior, and may be expended, in his discretion, in the erection of a day school building upon the remaining thirty-six acres unallotted subdivision of the Port Madison Indian Reservation, described as lot three, section twenty-one, township twenty-six north, range two east, Willamette meridian, which unallotted subdivision adjoins lot four of the tract ceded by Article I of this agreement.

Rights of Indians not impaired.

ARTICLE III. It is understood that nothing in this agreement shall be construed to deprive the said Indians of the Port Madison Indian Reservation of any benefits to which they are entitled under existing treaties or agreements not inconsistent with the provisions of this agreement.

Effect.

ARTICLE IV. This agreement shall take effect and be in force when signed by United States Indian Inspector James McLaughlin and by a majority of the male adult Indian parties hereto, and when accepted and ratified by the Congress of the United States.

In witness whereof the said James McLaughlin, United States Indian inspector, on the part of the United States, and the male adult Indians belonging on the Port Madison Indian Reservation, in the State of Washington, have hereunto set their hands and seals at the Port Madison Subagency, Kitsap County, Washington, this twenty-eighth day of May, anno Domini nineteen hundred and four.

Claf-wha George. May sell allotment.

That Claf-wha George, Indian allottee numbered ten, of the Port Madison Indian Reservation, in the State of Washington, to whom a trust patent was issued on November fourth, eighteen hundred and eighty-six, for lot one, in section twenty-eight, township twenty-six north, range two east, of the Willamette meridian, together with other lands, is hereby authorized to sell and convey to the United States of America the said lot one, including improvements thereon.

Qu-dis-kid Big John. May sell allotment.

That Qu-dis-kid Big John, Indian allottee numbered eleven, of the Port Madison Indian Reservation, in the State of Washington, to whom a trust patent was issued on November fourth, eighteen hundred and eighty-six, for lot two, in section twenty-eight, township twenty-six north, range two east, of the Willamette meridian, together with other lands, is hereby authorized to sell and convey to the United States of America the said lot two, including improvements thereon.

Kansas or Kaw Indians. Payment of award. Vol. 32, p. 640.

SEC. 7. For payment to the Kansas or Kaw Indians in settlement of their claims against the United States, as established by the award of the Kaw Commission, under the provisions of the Act of Congress of July first, nineteen hundred and two (Thirty-second Statutes at Large, page six hundred and thirty-six), one hundred and fifty-five thousand nine hundred and seventy-six dollars and eighty-eight cents, to be immediately available: *Provided*, That the amount herein appropriated is accepted by the said Kansas or Kaw Indians in full settlement for all claims of whatever nature which they may have or claim to have

*Provisos.* Acceptance to be in full.

Samuel J. Crawford. Attorney's fees.

against the United States: *Provided further*, That the Secretary of the Interior be, and is hereby, authorized and directed to pay out of the above amount to Samuel J. Crawford, attorney of record for said Indians, an amount equal to ten per cent of said sum of one hundred and fifty-five thousand nine hundred and seventy-six dollars and eighty-eight cents, in full for services and expenses incident to the prosecution of the claims of said Indians: *Provided, however*, That no part of said sum shall be paid until said Indians, in general council lawfully convened for that purpose, shall execute and deliver to the United States a general release of all claims and demands of every name and nature against the United States: *Provided further*, That out of the amount of one hundred and fifty-five thousand nine hundred and seventy-six dollars and eighty-eight cents, for payment of the claim of the Kaw or Kansas Indians, the Secretary of the Interior is hereby authorized and directed to pay the accounts of the twenty-two newspapers, aggregating the sum of three thousand six hundred and ninety-four dollars and seventy-six cents, set out in the report of the Secretary of the Interior, printed in House of Representatives Executive Document Numbered Sixty, Forty-seventh Congress, first session, at not exceeding the commercial rates at the time the service was rendered, for advertising under previous authority of the Department of the Interior the sale of Kansas trust and diminished reserve Indian lands in eighteen hundred and seventy-four and eighteen hundred and seventy-five.

General release from Indians.

Advertising.

Southern Utes of Colorado.
Purchase of water rights for irrigation.

SEC. 8. That the Secretary of the Interior shall make an investigation as to the practicability of providing a water supply for irrigation purposes to be used on a portion of the reservation of the Southern Utes in Colorado, and he is authorized to contract for and to expend from the funds of said Southern Utes in the purchase of perpetual water rights sufficient to irrigate not exceeding ten thousand acres on the western part of the Southern Ute Reservation and for annual charges for maintenance of such water thereon such amount and upon such terms and conditions as to him may seem just and reasonable, not exceeding one hundred and fifty thousand dollars, for the purchase of such perpetual water rights and not exceeding a maximum of fifty cents per acre per annum for the maintenance of water upon the land to be irrigated: *Provided*, That after such an investigation he shall find all the essential conditions relative to the water supply and to the perpetuity of its availability for use upon said lands as will justify a contract for its perpetual use the contract for such water shall be for a specific number of inches: *Provided*, That the Secretary of the Interior, upon making all such contracts, shall require from the company, person, or persons entering into such contract a bond of indemnity, to be approved by him, for the faithful and continuous execution of such contract as provided therein.

*Provisos.*
Condition.

Indemnity bond.

SEC. 9. That section twelve, chapter fourteen hundred and ninety-five, Statutes of the United States of America, entitled "An Act for the survey and allotment of lands now embraced within the limits of the Flathead Indian Reservation, in the State of Montana, and the sale and disposal of all surplus lands after allotment," be, and the same is hereby, amended so as to read as follows:

Flathead Indian Reservation.
Land for Catholic mission schools, etc.
*Ante*, p. 304, amended.

"SEC. 12. That the President may reserve and except from said lands, not to exceed one thousand two hundred and eighty acres, for Catholic mission schools, church, and hospital and such other eleemosynary institutions as may now be maintained by the Catholic Church on said reservation, which lands are hereby granted to those religious organizations of the Catholic Church now occupying the same, known as the Society of Jesus, the Sisters of Charity of Providence, and the Ursuline Nuns, the said lands to be granted in the following amounts, namely: To the Society of Jesus, six hundred and forty acres; to the

Sisters of Charity of Providence, three hundred and twenty acres, and to the Ursuline Nuns, three hundred and twenty acres, such lands to be reserved and granted for the uses indicated only so long as the same are maintained, used, and occupied by said organizations for the purposes indicated, except that forty acres of the six hundred and forty acres hereinbefore mentioned as granted to the Society of Jesus are hereby granted in fee simple to said Society of Jesus, its successors and assigns: *And be it further provided*, That the President shall further reserve and except from said lands for the use of the University of Montana for biological station purposes one hundred and sixty acres, which land is hereby granted to the State of Montana for the use of the University of Montana. The governor of said State, with the approval of the Secretary of the Interior, is hereby authorized to locate said last-mentioned lands.

*Proviso.* Lands granted to University of Montana.

"The President is also authorized to reserve lands upon the same conditions and for similar purposes for any other missionary or religious societies that may make application therefor within one year after the passage of this Act in such quantity as he may deem proper. The President may also reserve such of said lands as may be convenient or necessary for the occupation and maintenance of any and all agency buildings, substations, mills, and other governmental institutions now in use on said reservation, or which may be used or occupied by the Government of the United States."

Land for other religious organizations.

The President is also hereby authorized to reserve not to exceed five thousand acres of timber lands for the use of said Indians as a fuel supply, under such restrictions and regulations as may be prescribed by the Secretary of the Interior.

Indian fuel supply.

SEC. 10. For the construction of an irrigation system necessary for developing and furnishing a water supply for the irrigation of the lands of the Pima Indians in the vicinity of Sacaton on the Gila River Indian Reservation the sum of fifty thousand dollars to be expended under the direction of the Secretary of the Interior: *Provided*, That the total cost of the entire construction and installation of said irrigating system shall not exceed five hundred and forty thousand dollars: *Provided further*, That when said irrigation system is in successful operation and the Indians have become self-supporting the cost of operating the said system shall be equitably apportioned upon the lands irrigated and to the annual charge shall be added an amount sufficient to pay back into the Treasury the cost of the work within thirty years, suitable deduction being made for the amounts received from disposal of lands which now form a part of the said reservation.

Pima Indians. Irrigation of lands of.

*Provisos.* Cost limit.

Reimbursement.

SEC. 11. That townships twenty-two north of ranges one and two east of the Indian meridian, all in the Oto and Missouria Indian Reservation, shall be attached to and become a part of Noble County, Oklahoma Territory.

Otoe and Missouria Indian Reservation. Part of, attached to Noble County, Okla.

SEC. 12. That hereafter all appeals and writs of error shall be taken from the United States courts in the Indian Territory to the United States court of appeals in the Indian Territory, and from the United States court of appeals in the Indian Territory to the United States circuit court of appeals for the eighth circuit in the same manner as is now provided for in cases taken by appeal or writ of error from the circuit courts of the United States to the circuit court of appeals of the United States for the eighth circuit.

Appeals, etc., Indian Territory courts.

SEC. 13. That the Ottawa and Chippewa Indians of the State of Michigan are hereby authorized, within ninety days from the approval of this Act, to file a petition in the Court of Claims of the United States for the purpose of settling the question as to the ownership of the stocks, Government bonds, or moneys held in trust by the Government at the date of the treaty of July, eighteen hundred and fifty-five, between the Ottawa and Chippewa Indians and the United States

Ottawa and Chippewa Indians, Mich. Suit to settle ownership of certain stocks, etc., of trust fund.

HeinOnline -- 33 Stat. 1081 1897-1905

Vol. 11, p. 624.
Vol. 7, p. 491.

(Eleventh Statutes, page six hundred and twenty-four), under the treaty of eighteen hundred and thirty-six (Seventh Statutes, page four hundred and ninety-nine), which was then deposited in the Treasury of the United States; and for the further purpose of ascertaining the amount, if any, due the Ottawa and Chippewa Indians, under a conversion made on March ninth, eighteen hundred and eighty-five, as set forth in the report of the honorable Secretary of the Interior on Senate bill numbered sixty-seven hundred and sixty-six, Fifty-seventh Congress, second session, bearing date January seventeenth, nineteen hundred and three, and the report of the Commissioner of Indian Affairs, bearing date January fourteenth, nineteen hundred and three, thereunto attached. That said petition shall name the United States as defendant, and may be verified by attorney. That the Court of Claims is hereby granted jurisdiction in law and in equity to render judgment upon said petition, and to pass upon and find, as a matter of law, whether or not the conversion of said funds was authorized under the third article of the treaty of eighteen hundred and fifty-five above referred to. That the Court of Claims shall advance said cause upon the docket, and, if judgment be rendered for the petitioner, shall award a proper attorney fee for the attorneys of record, to be paid on separate warrants from the amount recovered.

Court of Claims granted jurisdiction.

Attorney's fee.

Approved, March 3, 1905.

---

March 3, 1905.
[H. R. 17865.]
[Public, No. 213.]

**CHAP. 1480.**—An Act Making appropriations for the service of the Post-Office Department for the fiscal year ending June thirtieth, nineteen hundred and six, and for other purposes.

Postal service appropriations.
Vol. 5, p. 80.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the following sums be, and they are hereby, appropriated for the service of the Post-Office Department, in conformity with the Act of July second, eighteen hundred and thirty-six, as follows:

Postmaster-General.

OFFICE OF THE POSTMASTER-GENERAL.

Advertising.

For advertising, five thousand dollars.

Delegates to Postal Congress.

For compensation and expenses of United States delegates to the Universal Postal Congress, to convene at Rome, Italy, five thousand dollars.

Post-office inspectors.
Salaries.

SALARIES OF POST-OFFICE INSPECTORS: For salaries of five inspectors in charge of divisions, at three thousand dollars each; ten inspectors in charge of divisions, at two thousand five hundred dollars each; six inspectors, at two thousand four hundred dollars each; fifteen inspectors, at two thousand two hundred and fifty dollars each; fifteen inspectors, at two thousand dollars each; seventy inspectors, at one thousand six hundred dollars each; sixty inspectors, at one thousand four hundred dollars each; and forty-five inspectors, at one thousand two hundred dollars each; in all, three hundred and sixty-eight thousand one hundred and fifty dollars.

Per diem.

For per diem allowance of inspectors in the field while actually traveling on official business away from their home, their official domicile, and their headquarters, two hundred and five thousand dollars: *Provided*, That the Postmaster-General may, in his discretion, allow post-office inspectors per diem while temporarily located at any place on business away from their home, or their designated domicile, for a period not exceeding twenty consecutive days at any one place, and may make rules and regulations governing the foregoing provisions relating to per diem: *And provided further*, That no per diem shall be paid to inspectors receiving annual salaries of two thousand dollars or more.

*Provisos.*
Temporary allowances.

Limit.

BEST AVAILABLE COPY

74574

# REGULATIONS

## Governing the Leasing of Lands for Oil and Gas on the Osage Reservation, Oklahoma.

Under the Act of March 3, 1905.

---

The following regulations are hereby prescribed for the purpose of carrying into effect the provisions of the act of Congress approved March 3, 1905 (Public, 112), which provides:

> That any allotment which may be made of the Osage Reservation in Oklahoma Territory shall be made subject to the terms and conditions of the lease herein authorized, the same being a renewal as to a part of the premises covered by a certain lease dated March sixteenth, eighteen hundred and ninety-six, given by the Osage Nation of Indians to Edwin B. Foster and approved by the Secretary of the Interior and now owned by the Indian Territory Illuminating Oil Company under assignments approved by the Secretary of the Interior, which said lease and all subleases thereof duly executed on or before December thirty-first, nineteen hundred and four, or executed after that date based upon contracts made prior thereto, and which have been or shall be approved by the Secretary of the Interior, to the extent of six hundred and eighty thousand acres in the aggregate, are hereby extended for the period of ten years from the sixteenth day of March, nineteen hundred and six, with all the conditions of said original lease except that from and after the sixteenth day of March, nineteen hundred and six, the royalty to be paid on gas shall be one hundred dollars per annum on each gas well, instead of fifty dollars as now provided in said lease, and except that the President of the United States shall determine the amount of royalty to be paid for oil. Said determination shall be evidenced by filing with the Secretary of the Interior on or before December thirty-first, nineteen hundred and five, such determination; and the Secretary of the Interior shall immediately mail to the Indian Territory Illuminating Oil Company and each sublessee a copy thereof.

The said act of March 3, 1905, renews and extends the—

> said lease and all subleases thereof duly executed on or before December thirty-first, nineteen hundred and four, or executed after that date based upon contract made prior thereto, and which have been or shall be approved by the Secretary of the Interior, to the extent of six hundred and eighty thousand acres in the aggregate * * *.

SECTION 1. The original lease and all subleases and assignments thereunder provided for by the act of Congress of March 3, 1905,

above referred to, are, when approved by the Secretary of the Interior, extended for a period not longer than March 16, 1916.

SECTION 2. All subleases or assignments made hereafter must be submitted to the U. S. Indian Agent, Osage Agency, Pawhuska, Oklahoma, for consideration and transmittal to the Department within thirty days from and after the date of execution of the instrument, and all such subleases and assignments which have been heretofore executed must be submitted to the said agent within thirty days of the approval of these regulations. No such sublease or assignment presented after the time herein designated will be received by the agent or transmitted to the Department or regarded as having any effect whatever.

SECTION 3. All subleases or assignments or instruments operating as assignments to be presented for the approval of the Secretary of the Interior shall be submitted to the United States Indian Agent, Osage Agency, Pawhuska, Oklahoma, for transmittal by him with his recommendation to the Commissioner of Indian Affairs, for the consideration of the Department.

SECTION 4. All subleases or assignments must be made in triplicate, filed with the Indian Agent, Osage Agency, and, when approved, one copy to be immediately filed in the office of the Commissioner of Indian Affairs, one to the United States Indian Agent, Osage Agency, Pawhuska, Oklahoma, and one to be delivered to the lessee or assignee.

SECTION 5. All sublessees or assignees will be required to furnish a bond of not less than $3,000, and larger amounts where recommended by the Indian Agent, executed by some responsible surety company, guaranteeing the payment of all rents or royalties at the time and in the manner specified in the sublease or assignment, and the performance of all covenants and agreements named in the indenture to be paid and performed by the lessee.

SECTION 6. In order that the Department may have definite information before it concerning lessees in oil and gas leases covering lands in the Osage Nation, it is required that corporation lessees must furnish a certified copy of their articles of incorporation and affidavits covering the following points, to be submitted to the said U. S. Indian Agent, Osage Agency, Pawhuska, Oklahoma, with the triplicate copies of subleases or assignments, heretofore referred to in section 4:

(*a*) A list of officers and directors.

(*b*) State the number of shares of stock issued, and by whom held. giving post-office addresses of stockholders, and specifically stating the amount of cash paid into the treasury on each share sold; or if paid in property, state kind, quantity, and sum paid per share.

(*c*) Of the stock
ject to assessment?
(*d*) How much c
Certificates by offi
amount deposited
company.
(*e*) What prop
and its value?
(*f*) What is th
the nature of its
(*g*) State what
connected with o
petroleum and na
Affidavits shoul
their financial res
for mining operat
or other business.
showing the amou
All required in
be furnished witl
U. S. Indian Age
SECTION 7. The
statement under
ment is not made
the mineral speci
such other inforn
dian Agent, Osag
ized officer of th
operations. Subl
the parties thems
land.
SECTION 8. All
the lands, and sp
when the same a
effect that if the
part thereof whe
terms and condit
feiture of the su
upon the land by
mediate possessio
thereon, and sha
penalties of the
Illuminating Oil

of the Inte-
6.
ter must be
uska, Okla-
nent within
instrument,
heretofore
rty days of
assignment
ved by the
having any

s operating
ecretary of
lian Agent,
him with
irs, for the

triplicate,
proved, one
issioner of
ge Agency,
lessee or

to furnish
ere recom-
ible surety
lties at the
ment, and
the inden-

inite infor-
's covering
essees must
n and affi-
said U. S.
the tripli-
rred to in

whom held.
lly stating
sold; or if
hare.



74576

(*c*) Of the stock sold, how much per share remains unpaid and subject to assessment?

(*d*) How much cash has the company in its treasury and elsewhere? Certificates by officers of the banks should be furnished showing the amount deposited therein to the credit and subject to the check of the company.

(*e*) What property, exclusive of cash, is owned by the company, and its value?

(*f*) What is the total indebtedness of the company, and specifically the nature of its obligations?

(*g*) State what experience the officers of the company or others connected with or employed by it have had in the production of petroleum and natural gas, or in any other business.

Affidavits should also be furnished by individual lessees showing their financial responsibility, the amount of cash on hand available for mining operations, and their experience in the oil and gas business or other business. They should also submit affidavits by bank officers showing the amounts deposited to their credit.

All required information relative to subleases or assignments shall be furnished within fifteen days from the date of the letter of the U. S. Indian Agent, Osage Agency, requesting it.

SECTION 7. There shall accompany each sublease or assignment a statement under oath by the applicant that such sublease or assignment is not made for speculation, but in good faith and for mining the mineral specified, and such persons or corporations must furnish such other information as may be desired by the United States Indian Agent, Osage Agency, Pawhuska, Oklahoma, or other authorized officer of the Interior Department, regarding their prospective operations. Subleases or assignments will not be approved where the parties themselves do not intend to conduct the operations on the land.

SECTION 8. All subleases or assignments must accurately describe the lands, and specify the mineral to be mined, the rents or royalties, when the same are to be paid, and must contain a provision to the effect that if the lessee shall fail to pay the rents or royalties, or any part thereof when due, or shall fail to faithfully comply with the terms and conditions of the lease, such failure shall constitute a forfeiture of the sublease or assignment and all improvements placed upon the land by the lessee, the Osage Nation shall be entitled to immediate possession of the leased lands and the improvements located thereon, and shall in all respects be subject to the provisions and penalties of the original lease now owned by the Indian Territory Illuminating Oil Company.

SECTION 9. All lessees must agree to allow the lessor and his agents and any authorized representative of the Interior Department, from time to time, to enter upon and into all parts of the leased premises for the purpose of inspection, and agree to keep a full and correct account of all of their operations, and make report thereof, promptly at the end of each month to the lessor or to such persons as may be designated by the Secretary of the Interior, and their books shall be open at all times to the examination of such officers of the Department as may be instructed in writing by the Secretary of the Interior to make such examination. All subleases or assignments must be executed in the presence of two subscribing witnesses, the post-office address of each party in interest must be shown by the lease which is sought to be approved, and the post-office addresses of the subscribing witnesses must appear upon the papers.

SECTION 10. All rents, royalties, or payments accruing under any lease, sublease, or assignment, to the Osage tribe of Indians, which have been approved by the Secretary of the Interior, or which require his approval, shall be paid to the United States Indian Agent, Osage Agency, Pawhuska, Oklahoma, or to such other officer or person as the Secretary of the Interior may designate.

SECTION 11. With the consent of the United States Indian Agent, Osage Agency, Pawhuska, Oklahoma, lessees may make arrangements with the purchasers of oil for the payment of royalty to the U. S. Indian Agent by such purchasers, but such arrangement, if made, shall not operate to relieve the lessee from the responsibility of the payment of the royalty should such purchaser fail, neglect, or refuse to pay same when it becomes due, but in such cases no oil shall be extracted from such lands or removed therefrom until such arrangements have been perfected with the said Indian Agent.

SECTION 12. No lease, sublease, or interest therein, by working or drilling contract or assignment, or otherwise, or the use thereof, directly or indirectly, shall be valid or recognized, without the consent of the Secretary of the Interior, nor shall any operations thereunder be commenced until after approval by him; and if at any time the Secretary of the Interior is satisfied that the provisions of any lease or that any of the regulations heretofore or that may hereafter be prescribed, have been violated, he shall have authority, after ten days from notice to the parties, to cancel and annul such lease, without resorting to the courts and without any further proceedings, and the lessor shall be entitled to immediate possession of the lands.

SECTION 13. These regulations shall be applicable to all leases, subleases, or assignments heretofore made, as well as to those that may hereafter be made.

RULES

SECTION 1. A
regulations, bef
Indians and d
Indians for da
and where such
investigated by
determine shall
Commissioner
SECTION 2. I
within 200 feet
leases and adj
unleased, allott
35 feet of any s
SECTION 3.
proved leases,
shall keep a tr
the same, and s
Agency, Pawh
teen days after
oath, by the d
operator or his
oath as to whe
ervation, and i
whom the said
other informat
of said well, c
such operation.
SECTION 4.
of petroleum
practical and
doned oil and
manner to excl
rock or sand b
ner satisfacto
Indians, and t
followed, but t
put in such oth
of oil or gas be
results contem
shall furnish
other person,
detail the man
furnish a log
representative

l his agents
ment, from
›d premises
ınd correct
f, promptly
as may be
›ks shall be
)epartment
Interior to
ust be exe-
post-office
se which is
subscribing

under any
ans, which
ich require
;ent, Osage
· person as

ian Agent,
'angements
the U. S.
:, if made,
lity of the
:, or refuse
›il shall be
h arrange-

vorking or
se thereof,
ıt the con-
ions there-
ıt any time
ons of any
y hereafter
', after ten
ease, with-
:dings, and
lands.
leases, sub-
› that may



## RULES AND REGULATIONS FOR OPERATING PROPERTIES.

SECTION 1. All persons or corporations operating under these regulations, before commencing operations on any lands allotted to Indians and during such operations, shall duly compensate such Indians for damages done to the surface of the land in cultivation, and where such can not be satisfactorily adjusted, the matter shall be investigated by the U. S. Indian Agent, and such payments as he may determine shall be made, subject to appeal from his decision to the Commissioner of Indian Affairs.

SECTION 2. Lessees shall not be allowed to drill oil or gas wells within 200 feet of the division line between the lands covered by their leases and adjoining lands, whether the latter lands are leased or unleased, allotted or unallotted, nor shall any wells be drilled within 35 feet of any section line on the Osage Reservation.

SECTION 3. All persons or corporations drilling wells under approved leases, subleases, or assignments upon the Osage Reservation shall keep a true and correct record of each well, including the log of the same, and shall furnish to the United States Indian Agent, Osage Agency, Pawhuska, Oklahoma, a copy of said log not later than fifteen days after the said well has been drilled, duly certified to under oath, by the driller and operator or his representative, and the said operator or his representative shall furnish a further statement under oath as to whether the rig timbers were procured on the Osage Reservation, and if so, state the name of the citizen, or other person, from whom the said rig timbers were purchased, and shall also furnish any other information the said Agent may desire relative to the drilling of said well, or the procurement of timber used in connection with such operation.

SECTION 4. All lessees or operators for the mining and production of pétroleum and natural gas on the Osage Reservation shall, in a practical and workmanlike manner, plug all of their dry and abandoned oil and gas wells at a proper depth with wood or sediment in a manner to exclude all fresh or salt water from the oil or gas bearing rock or sand before the casing is drawn from the said well in a manner satisfactory to the United States Indian Agent for the Osage Indians, and to this end the following general regulations must be followed, but the lessee will be required to exercise his judgment and put in such other necessary plugs as will effectually protect all stratas of oil or gas bearing rock or sand from fresh or salt water, so that the results contemplated will be obtained, and the said lessee or operator shall furnish an affidavit by himself or his representative and one other person, who assisted in the plugging of said well, stating in detail the manner in which the said well was plugged, and shall also furnish a log of the well, certified to under oath, by himself or his representative and the driller, the said log to be attached to the affi-

74579



davit as to the plugging of the well, and they together shall be filed with the U. S. Indian Agent, Osage Agency, Pawhuska, Oklahoma, not later than fifteen days after the said oil or gas well has been abandoned.

Before the casing shall be drawn from any well for the purpose of abandonment thereof, which has been drilled into any oil or gas bearing rock or sand, it shall be the duty of the lessee or operator having the custody or control of such well at the time of such abandonment, to properly and securely stop or plug the same in the following manner:

Such hole shall first be solidly filled from the bottom thereof to a point at least twenty-five feet above such gas or oil bearing rock or sand with sand, gravel, or pulverized rock; immediately on the top of such filling shall be seated a dry pine plug, not less than two feet in length, having a diameter not less than one-fourth of an inch less than the inside diameter of the casing in such well; above such wooden plug such well shall be solidly filled for at least twenty-five feet with the above-mentioned filling material, immediately above which shall be seated another wood plug of the same kind and size as above provided, and such well shall again be solidly filled for at least twenty-five feet above such plug with the said filling material. After the casing has been drawn from such well there shall be immediately seated at the point where such casing was seated a cast-iron ball or tapered wood plug at least two feet in length, the diameter of which ball or the top of which plug shall be greater than that of the hole below the point where such casing was seated, and above such ball or plug such well shall be solidly filled with the aforesaid filling material for at least a distance of fifty feet.

Section 5. All lessees and operators upon the abandonment or ceasing to use and operate any well which shall have been drilled for oil or gas, he or they shall plug the same so as to completely shut off and prevent the escape of all water therefrom which may be impregnated with salt or other substances which will render such water unfit for use for domestic, steam making, or manufacturing purposes, and in such manner as to prevent water from any such well injuring or polluting any spring, water well, or stream which is or may be used for the purposes aforesaid.

Section 6. All "B-S" or other refuse from tanks and wells shall be drawn off in proper receptacles at a convenient distance from the tanks or wells, to the end that it may be disposed of by being burned, and in no case or circumstance shall it be permitted to flow over the surface of the land to the injury of any surrounding property or the pollution of any stream.

Section 7. All lessees and operators in possession of any well producing natural gas on the Osage Reservation, in order to prevent the

said gas well from wast
approval of these regu
penetrating the gas be
in and confine the gas i
shall be utilized for li
regulation shall not ap
the production of the oi
production of gas ther
reasonable diligence, o
and the well is operat
stratum of sand is ca
pay to the U. S. India
the sum of $10.00 per
wells are allowed to g
this section, unavoida

Section 8. All less
Osage Reservation, usi
provide the same, with
lations, with what is
fillen" boiler regulat
nected to the boiler t
of gas.

Section 9. All less
or may hereafter be u
their premises, shall n
other than in what is
consume no more gas
using such gas in the
off said gas not later t
lights are burning o
same between the hou
the U. S. Indian Age
be the judge as to the
any lease, subject to a

Section 10. Any g
been placed in service
paid, will not be consi
served on the U. S. I
homa, of the same, an
all service lines. The
sufficient to take a wel

Section 11. The reg
and assignments heret
hereafter approved, a
comply with any rule

ner shall be filed
uska, Oklahoma,
is well has been

or the purpose of
y oil or gas bear-
operator having
f such abandon-
in the following

tom thereof to a
bearing rock or
ely on the top of
than two feet in
an inch less than
ove such wooden
nty-five feet with
bove which shall
ize as above pro-
r at least twenty-
erial. After the
l be immediately
cast-iron ball or
iameter of which
that of the hole
above such ball or
said filling mate-

abandonment or
e been drilled for
ompletely shut off
h may be impreg-
r such water unfit
ing purposes, and
well injuring or
is or may be used

ks and wells shall
distance from the
f by being burned,
d to flow over the
ng property or the

n of any well pro-
der to prevent the



said gas well from wasting by escape, shall, within ten days after the approval of these regulations, and thereafter within five days after penetrating the gas bearing rock or sand in any well drilled, shut in and confine the gas in said well until such time as the gas therein shall be utilized for light, fuel, or steam power; provided that this regulation shall not apply to any well that is operated for oil when the production of the oil has a greater available market value than the production of gas therefrom, or during the process of drilling, with reasonable diligence, or when oil is found in a lower stratum of sand and the well is operated as an oil well and the gas from the upper stratum of sand is cased off. And said lessees and operators shall pay to the U. S. Indian Agent, Osage Agency, Pawhuska, Oklahoma, the sum of $10.00 per day for each well during the time such well or wells are allowed to go uncontrolled or uncared for, as directed by this section, unavoidable accidents excepted.

SECTION 8. All lessees, and those operating under them, on the Osage Reservation, using natural gas for fuel in steam boilers, shall provide the same, within thirty days after the approval of these regulations, with what is known as a "Fulton," "Northrup," or "Gilfillen" boiler regulator, or other regulator equal thereto, so connected to the boiler that the steam pressure will regulate the flow of gas.

SECTION 9. All lessees, and those operating under them, who are or may hereafter be using natural gas for outside illumination upon their premises, shall not use the said gas for illuminating purposes, other than in what is known as "Storm" burners, or burners which consume no more gas than the said "Storm" burners, and anyone using such gas in the open air or in and around derricks, shall turn off said gas not later than 8 o'clock in the morning of each day such lights are burning or used, and shall not turn on or relight the same between the hours of 8 o'clock a. m. and 5 o'clock p. m., and the U. S. Indian Agent, Osage Agency, Pawhuska, Oklahoma, shall be the judge as to the number of lights permitted upon and around any lease, subject to appeal to the Commissioner of Indian Affairs.

SECTION 10. Any gas well upon the Osage Reservation which has been placed in service commercially, and for which royalty is being paid, will not be considered out of service until due notice has been served on the U. S. Indian Agent, Osage Agency, Pawhuska, Oklahoma, of the same, and that the said well has been disconnected from all service lines. The mere turning of a valve will not be considered sufficient to take a well out of service.

SECTION 11. The regulations shall be applicable to leases, subleases, and assignments heretofore approved, as well as those that may be hereafter approved, and for any failure on the part of the lessee to comply with any rule or regulation, or any obligation in his lease,

sublease, or assignment, the Secretary of the Interior may revoke his approval of such lease, after due notice to the lessee.

SECTION 12. Wherever in the drilling of oil or gas wells under approved oil and gas mining leases covering lands within the Osage Reservation both gas and oil are encountered in commercial quantities, and the gas is found in a formation sufficiently above the oil-bearing sand to permit of the same being separated from the oil by casing, such gas shall be so separated from the oil and securely shut in and preserved, and shall not be permitted to flow with the oil through the same string of casing.

---

DEPARTMENT OF THE INTERIOR,
OFFICE OF INDIAN AFFAIRS,

*April 8, 1907.*

The foregoing regulations are respectfully submitted for the approval of the Secretary of the Interior.

C. F. LARRABEE,
*Acting Commissioner.*

---

DEPARTMENT OF THE INTERIOR,

*April 17, 1907.*

Approved:

JAMES RUDOLPH GARFIELD,
*Secretary.*

O