Westlaw.

59 Cong. Ch. 3572, June 28, 1906, **34 Stat. 539**

UNITED STATES STATUTES AT LARGE
59TH CONGRESS - 1ST SESSION
Convening December 4, 1905

An Act

For the division of the lands and funds of the Osage Indians in Oklahoma Territory, and for other purposes.

June 28, 1906

34 Stat. 539-545

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**CHAP. 3569.**—An Act To amend section twenty-eight hundred and forty-four of the Revised Statutes of the United States, and to provide for an authentication of invoices of merchandise shipped to the United States from the Philippine Islands.

June 28, 1906. [H. R. 19756.] [Public, No. 318.]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That section numbered twenty-eight hundred and forty-four of the Revised Statutes of the United States is hereby amended by adding thereto the following: "*Provided,* That the authentication may be made by the collector or a deputy collector of customs in the case of merchandise shipped to the United States from the Philippine Islands."

Invoices. R. S., sec. 2844, p. 551, amended.

Authentications in Philippines.

Approved, June 28, 1906.

---

**CHAP. 3570.**—An Act To authorize the Monongahela Connecting Railroad Company to construct a bridge across the Monongahela River in the State of Pennsylvania.

June 28, 1906. [H. R. 19850.] [Public, No. 319.]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Monongahela Connecting Railroad Company, a corporation organized under the laws of the State of Pennsylvania, its successors and assigns, be, and they are hereby, authorized to construct, maintain, and operate a bridge and approaches thereto across the Monongahela River at Pittsburg, from a point on the north shore between Hazlewood avenue and the Glenwood highway bridge to a point on the south shore in the township of Baldwin or the township of Lower Saint Clair, in Allegheny County, in the State of Pennsylvania, in accordance with the provisions of the Act entitled "An Act to regulate the construction of bridges over navigable waters," approved March twenty third, nineteen hundred and six.

Monongahela River. Monongahela Connecting Railroad Company may bridge, at Pittsburg, Pa.

*Ante*, p. 84.

Sec. 2. That the right to alter, amend, or repeal this Act is hereby expressly reserved.

Amendment.

Approved, June 28, 1906.

---

**CHAP. 3571.**—An Act To authorize the board of supervisors of Sunflower County, Mississippi, to construct a bridge across Sunflower River.

June 28, 1906. [H. R. 19854.] [Public, No. 320.]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the board of supervisors of Sunflower County, Mississippi, be, and they are hereby, authorized to construct, maintain, and operate a bridge and approaches thereto across the Sunflower River at Lehrton, in Sunflower County, in the State of Mississippi, in accordance with the provisions of the Act entitled "An Act to regulate the construction of bridges over navigable waters," approved March twenty-third, nineteen hundred and six.

Sunflower River. Sunflower County, Miss., may bridge, at Lehrton.

*Ante*, p. 84.

Sec. 2. That the right to alter, amend, or repeal this Act is hereby expressly reserved.

Amendment.

Approved, June 28, 1906.

---

**CHAP. 3572.**—An Act For the division of the lands and funds of the Osage Indians in Oklahoma Territory, and for other purposes.

June 28, 1906. [H. R. 15333.] [Public, No. 321.]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the roll of the Osage tribe of Indians, as shown by the records of the United States in the office of the United States Indian agent at the Osage Agency, Okla-

Osage Indians, Okla. Division of tribal land, etc. Tribal roll.

homa Territory, as it existed on the first day of January, nineteen hundred and six, and all children born between January first, nineteen hundred and six, and July first, nineteen hundred and seven, to persons whose names are on said roll on January first, nineteen hundred and six, and all children whose names are not now on said roll, but who were born to members of the tribe whose names were on the said roll on January first, nineteen hundred and six, including the children of members of the tribe who have, or have had, white husbands, is hereby declared to be the roll of said tribe and to constitute the legal membership thereof: *Provided*, That the principal chief of the Osages shall, within three months from and after the approval of this Act, file with the Secretary of the Interior a list of the names which the tribe claims were placed upon the roll by fraud, but no name shall be included in said list of any person or his descendants that was placed on said roll prior to the thirty-first day of December, eighteen hundred and eighty-one, the date of the adoption of the Osage constitution, and the Secretary of the Interior, as early as practicable, shall carefully investigate such cases and shall determine which of said persons, if any, are entitled to enrollment; but the tribe must affirmatively show what names have been placed upon said roll by fraud; but where the rights of persons to enrollment to the Osage roll have been investigated by the Interior Department and it has been determined by the Secretary of the Interior that such persons were entitled to enrollment, their names shall not be stricken from the roll for fraud except upon newly discovered evidence; and the Secretary of the Interior shall have authority to place on the Osage roll the names of all persons found by him, after investigation, to be so entitled, whose applications were pending on the date of the approval of this Act: and the said Secretary of the Interior is hereby authorized to strike from the said roll the names of persons or their descendants which he finds were placed thereon by or through fraud, and the said roll as above provided, after the revision and approval of the Secretary of the Interior, as herein provided, shall constitute the approved roll of said tribe; and the action of the Secretary of the Interior in the revision of the roll as herein provided shall be final, and the provisions of the Act of Congress of August fifteenth, eighteen hundred and ninety-four, Twenty-eighth Statutes at Large, page three hundred and five, granting persons of Indian blood who have been denied allotments the right to appeal to the courts, are hereby repealed as far as the same relate to the Osage Indians; and the tribal lands and tribal funds of said tribe shall be equally divided among the members of said tribe as hereinafter provided.

*Proviso.*
Fraudulent enrollment.

Restriction.

Revision of roll.

Decision of Secretary final.
Vol. 28, p. 305.

Division of lands.

Sec. 2. That all lands belonging to the Osage tribe of Indians in Oklahoma Territory, except as herein provided, shall be divided among the members of said tribe, giving to each his or her fair share thereof in acres, as follows:

First selection.

First. Each member of said tribe, as shown by the roll of membership made up as herein provided, shall be permitted to select one hundred and sixty acres of land as a first selection; and the adult members shall select their first selections and file notice of the same with the United States Indian agent for the Osages within three months after the approval of this Act: *Provided*, That all selections of lands heretofore made by any member of said tribe, against which no contest is pending, be, and the same are hereby, ratified and confirmed as one of the selections of such member. And if any adult member fails, refuses, or is unable to make such selection within said time, then it shall be the duty of the United States Indian agent for the Osages to make such selection for such member or members, subject to the approval of the Secretary of the Interior. That all said first selections for minors shall be made by the United States Indian agent for the Osages, sub-

Filing notice.
Time limit.

*Proviso.*
Ratification.

Failure to select.

First selections for minors.

ject to the approval of the Secretary of the Interior: *Provided*, That said first selections for minors having parents may be made by said parents, and the word "minor" or "minors" used in this Act shall be held to mean those who are under twenty-one years of age: *And provided further*, That all children born to members of said tribe between January first, nineteen hundred and six, and the first day of January, nineteen hundred and seven, shall have their selections made for them within six months after approval of this Act, or within six months after their respective births. That all children born to members of said tribe on and after the first day of January, nineteen hundred and seven, and before the first day of July, nineteen hundred and seven, shall have their selections made for them on or before the last day of July, nineteen hundred and seven, the proof of birth of such children to be made to the United States Indian agent for the Osages.

Parents may select.

Time of selection.

Second. That in making his or her first selection of land, as herein provided for, a member shall not be permitted to select land already selected by, or in possession of, another member of said tribe as a first selection, unless such other member is in possession of more land than he and his family are entitled to for first selections under this Act; and in such cases the member in possession and having houses, orchards, barns, or plowed land thereon shall have the prior right to make the first selection: *Provided*, That where members of the tribe are in possession of more land than they are entitled to for first selections herein, said members shall have sixty days after the approval of this Act to dispose of the improvements on said lands to other members of the tribe.

Prior rights protected.

*Proviso.* Disposal of improvements.

Third. After each member has selected his or her first selection as herein provided, he or she shall be permitted to make a second selection of one hundred and sixty acres of land in the manner herein provided for the first selection.

Second selection.

Fourth. After each member has selected his or her second selection of one hundred and sixty acres of land as herein provided, he or she shall be permitted to make a third selection of one hundred and sixty acres of land in the manner herein provided for the first and second selections: *Provided*, That all selections herein provided for shall conform to the existing public surveys in tracts of not less than forty acres, or a legal subdivision of a less amount, designated a "lot." Each member of said tribe shall be permitted to designate which of his three selections shall be a homestead, and his certificate of allotment and deed shall designate the same as a homestead, and the same shall be inalienable and nontaxable until otherwise provided by Act of Congress. The other two selections of each member, together with his share of the remaining lands allotted to the member, shall be known as surplus land, and shall be inalienable for twenty-five years, except as hereinafter provided.

Third selection.

*Proviso.* Surveys.

Homesteads inalienable, etc.

Surplus lands.

Fifth. After each member has selected his or her first, second, and third selections of one hundred and sixty acres of land, as herein provided, the remaining lands of said tribe in Oklahoma Territory, except as herein provided, shall be divided as equally as practicable among said members by a commission to be appointed to supervise the selection and division of said Osage lands.

Disposal of remaining lands.

Sixth. The selection and division of lands herein provided for shall be made under the supervision of, or by, a commission consisting of one member of the Osage tribe, to be selected by the Osage council, and two persons to be selected by the Commissioner of Indian Affairs subject to the approval of the Secretary of the Interior; and said commission shall settle all controversies between members of the tribe relative to said selections of land; and the schedules of said selections and division of lands herein provided for shall be subject to the approval of the Secretary of the Interior. The surveys, salaries of said com-

Commission.

Duties.

Expenses.

mission, and all other proper expenses necessary in making the selections and division of land as herein provided shall be paid by the Secretary of the Interior, out of any Osage funds derived from the sale of town lots, royalties from oil, gas, or other minerals, or rents from grazing land.

Authority to sell selected lands.

Seventh. That the Secretary of the Interior, in his discretion, at the request and upon the petition of any adult member of the tribe, may issue to such member a certificate of competency, authorizing him to sell and convey any of the lands deeded him by reason of this Act, except his homestead, which shall remain inalienable and nontaxable for a period of twenty-five years, or during the life of the homestead allottee, if upon investigation, consideration, and examination of the request he shall find any such member fully competent and capable of transacting his or her own business and caring for his or her own individual affairs: *Provided*, That upon the issuance of such certificate of competency the lands of such member (except his or her homestead) shall become subject to taxation, and such member, except as herein provided, shall have the right to manage, control, and dispose of his or her lands the same as any citizen of the United States: *Provided*, That the surplus lands shall be nontaxable for the period of three years from the approval of this Act, except where certificates of competency are issued or in case of the death of the allottee, unless otherwise provided by Congress: *And provided further*, That nothing herein shall authorize the sale of the oil, gas, coal, or other minerals covered by said lands, said minerals being reserved to the use of the tribe for a period of twenty-five years, and the royalty to be paid to said tribe as hereinafter provided: *And provided further*, That the oil, gas, coal, and other minerals upon said allotted lands shall become the property of the individual owner of said land at the expiration of said twenty-five years, unless otherwise provided for by Act of Congress.

Homesteads excepted.

*Proviso.* Taxation, etc.

Sale of oil, etc., lands prohibited.

Individual ownership after 25 years.

Sisters of Saint Francis. Land donated to.

Eighth. There shall be reserved from selection and division, as herein provided, one hundred and sixty acres on which the Saint Louis School, near Pawhuska, is located, and the one hundred and sixty acres on which the Saint John's School, on Hominy Creek, Osage Indian Reservation, is located, said tracts to conform to the public surveys; and said tracts of land are hereby set aside and donated to the order of the Sisters of Saint Francis; and said tracts shall be conveyed to said order, the Sisters of Saint Francis, as early as practicable, by deed. There shall also be reserved from selection and division forty acres of land near Gray Horse, to be designated by the Secretary of the Interior, on which are located the dwelling houses of John N. Florer, Walter O. Florer, and John L. Bird; and said John N. Florer shall be allowed to purchase said forty acres at the appraised value placed thereon by the Osage Allotting Commission, the proceeds of the sale to be placed to the credit of the Indians and to be distributed like other funds herein provided for.

Lands reserved near Gray Horse.

Lands reserved for dwelling purposes.

Ninth. There shall be reserved from selection and division, as herein provided, the northeast quarter of section three, township twenty-five, range nine east, of the Indian meridian, and one hundred and sixty acres to conform to the public survey at the town of Gray Horse, including the Government doctor's building, other valuable buildings, and the cemetery, and the one hundred and sixty acres to conform to the public survey, adjoining or near the town site of Hominy; said lands or tracts are hereby set aside for the use and benefit of the Osage Indians, exclusively, for dwelling purposes, for a period of twenty-five years from and after the first day of January, nineteen hundred and seven: *Provided*, That said land may, in the discretion of the Osage tribe, be sold under such rules and regulations as the Secretary of the Interior may prescribe; and the proceeds of the same under such sale shall be apportioned and placed to the credit of the individual members of the tribe according to the roll herein provided for.

*Proviso.* Sale of reserved lands.

Tenth. The Osage Boarding School reserve of eighty-seven and five-tenth acres, and the reservoir reserve of seventeen and three-tenths acres, and the agent's residence reserve, together with all the buildings located on said reservations in the town site of Pawhuska, as shown by the official plat of the same, are hereby reserved from selection and division as herein provided; and the same may be sold in the discretion of the Osage tribe, under such rules and regulations as the Secretary of the Interior may provide: and the proceeds of such sale shall be apportioned and placed to the credit of the individual members of said tribe according to the roll herein provided for.

Osage Boarding School reserve, etc.

Sale of.

Proceeds.

Eleventh. That the United States Indian agent's office building, the Osage council building, and all other buildings which are for the occupancy and use of Government employees, in the town of Pawhuska, together with the lots on which the said buildings are situated, shall be sold to the highest bidder as early as practicable, under such rules and regulations as the Secretary of the Interior may prescribe; and with the proceeds he shall erect other suitable buildings for the uses mentioned, on such sites as he may select, the remaining proceeds, if any, to be placed to the credit of the individual members of the Osage tribe of Indians: *Provided*, That the house known as the chief's house, together with the lot or lots on which said house is located, and the house known as the United States interpreter's house, in Pawhuska, Oklahoma Territory, together with the lot or lots on which said houses are located, shall be reserved from sale to the highest bidder and shall be sold to the principal chief of the Osages and the United States interpreter for the Osages, respectively, at the appraised value of the same, said appraisement to be made by the Osage town-site commission, subject to the approval of the Secretary of the Interior.

Sale of Government buildings, etc.

Erection of new buildings.

*Proviso.* Buildings reserved from sale.

Twelfth. That the cemetery reserve of twenty acres in the town site of Pawhuska, as shown by the official plat thereof, is hereby set aside and donated to the town of Pawhuska for the purposes of sepulture, on condition that if said cemetery reserve of twenty acres, or any part thereof, is used for purposes other than that of sepulture, the whole of said cemetery reserve of twenty acres shall revert to the use and benefit of the individual members of the Osage tribe, according to the roll herein provided, or to their heirs; and said tract shall be conveyed to the said town of Pawhuska by deed, and said deed shall recite and set out in full the conditions under which the above donation and conveyance are made.

Cemetery reserve donated to Pawhuska.

Reversion.

That the provisions of an Act entitled "An Act making appropriations for the current and contingent expenses of the Indian Department and for fulfilling treaty stipulations with various Indian tribes for the fiscal year ending June thirtieth, nineteen hundred and six, and for other purposes," approved March third, nineteen hundred and five, relating to the Osage Reservation, pages one thousand and sixty-one and one thousand and sixty-two, volume thirty-three, United States Statutes at Large, be, and the same are hereby, continued in full force and effect.

Osage town-site commission. Present law not affected.

Vol. 33, pp. 1061, 1062.

SEC. 3. That the oil, gas, coal, or other minerals covered by the lands for the selection and division of which provision is herein made are hereby reserved to the Osage tribe for a period of twenty-five years from and after the eighth day of April, nineteen hundred and six; and leases for all oil, gas, and other minerals, covered by selections and division of land herein provided for, may be made by the Osage tribe of Indians through its tribal council, and with the approval of the Secretary of the Interior, and under such rules and regulations as he may prescribe: *Provided*, That the royalties to be paid to the Osage tribe under any mineral lease so made shall be determined by the President of the United States: *And provided further*, That no mining of or prospecting for any of said mineral or minerals shall be permitted on the homestead selections herein provided for without the

Oil and mineral lands. Leases.

*Provisos.* Royalties.

Prospecting restricted.

written consent of the Secretary of the Interior: *Provided, however*, That nothing herein contained shall be construed as affecting any valid existing lease or contract.

Existing contracts, etc., not affected.

Trust fund.

Sec. 4. That all funds belonging to the Osage tribe, and all moneys due, and all moneys that may become due, or may hereafter be found to be due the said Osage tribe of Indians, shall be held in trust by the United States for the period of twenty-five years from and after the first day of January, nineteen hundred and seven, except as herein provided:

Segregation of funds.

First. That all the funds of the Osage tribe of Indians, and all the moneys now due or that may hereafter be found to be due to the said Osage tribe of Indians, and all moneys that may be received from the sale of their lands in Kansas under existing laws, and all moneys found to be due to said Osage tribe of Indians on claims against the United States, after all proper expenses are paid, shall be segregated as soon after January first, nineteen hundred and seven, as is practicable and placed to the credit of the individual members of the said Osage tribe on a basis of a pro rata division among the members of said tribe, as shown by the authorized roll of membership as herein provided for, or to their heirs as hereinafter provided, said credit to draw interest as now authorized by law; and the interest that may accrue thereon shall be paid quarterly to the members entitled thereto, except in the case of minors, in which case the interest shall be paid quarterly to the parents until said minor arrives at the age of twenty-one years: *Provided*, That if the Commissioner of Indian Affairs becomes satisfied that the said interest of any minor is being misused or squandered he may withhold the payment of such interest; *And provided further*, That said interest of minors whose parents are deceased shall be paid to their legal guardians, as above provided.

Pro rata division.

Interest payments.

*Provisos.*
Misuse of interest money of minors.

Payments to guardians.

Deposit of funds to credit of Indians.

Second. That the royalty received from oil, gas, coal, and other mineral leases upon the lands for which selection and division are herein provided, and all moneys received from the sale of town lots, together with the buildings thereon, and all moneys received from the sale of the three reservations of one hundred and sixty acres each heretofore reserved for dwelling purposes, and all moneys received from grazing lands, shall be placed in the Treasury of the United States to the credit of the members of the Osage tribe of Indians as other moneys of said tribe are to be deposited under the provisions of this Act, and the same shall be distributed to the individual members of said Osage tribe according to the roll provided for herein, in the manner and at the same time that payments are made of interest on other moneys held in trust for the Osages by the United States, except as herein provided.

Distribution of.

Royalties reserved for school purposes.

Third. There shall be set aside from the royalties received from oil and gas not to exceed fifty thousand dollars per annum for ten years from the first day of January, nineteen hundred and seven, for the support of the Osage Boarding School and for other schools on the Osage Indian Reservation conducted or to be established and conducted for the education of Osage children.

For agency purposes.

Fourth. There shall be set aside and reserved from the royalties received from oil, gas, coal, or other mineral leases, and moneys received from the sale of town lots, and rents from grazing lands not to exceed thirty thousand dollars per annum for agency purposes and an emergency fund for the Osage tribe, which shall be paid out from time to time, upon the requisition of the Osage tribal council, with the approval of the Secretary of the Interior.

Termination of trust fund.

Sec. 5. That at the expiration of the period of twenty-five years from and after the first day of January, nineteen hundred and seven, the lands, mineral interests, and moneys, herein provided for and held in trust by the United States shall be the absolute property of the individual members of the Osage tribe, according to the roll herein provided for, or their heirs, as herein provided, and deeds to said lands

shall be issued to said members, or to their heirs, as herein provided, and said moneys shall be distributed to said members, or to their heirs, as herein provided, and said members shall have full control of said lands, moneys, and mineral interests, except as hereinbefore provided.

Right of inheritance.

SEC. 6. That the lands, moneys, and mineral interests, herein provided for, of any deceased member of the Osage tribe shall descend to his or her legal heirs, according to the laws of the Territory of Oklahoma, or of the State in which said reservation may be hereinafter incorporated, except where the decedent leaves no issue, nor husband nor wife, in which case said lands, moneys, and mineral interests must go to the mother and father equally.

Exception.

Leases for farming purposes.

SEC. 7. That the lands herein provided for are set aside for the sole use and benefit of the individual members of the tribe entitled thereto, or to their heirs, as herein provided; and said members, or their heirs, shall have the right to use and to lease said lands for farming, grazing, or any other purpose not otherwise specifically provided for herein, and said members shall have full control of the same, including the proceeds thereof: *Provided*, That parents of minor members of the tribe shall have the control and use of said minors' lands, together with the proceeds of the same, until said minors arrive at their majority: *And provided further*, That all leases given on said lands for the benefit of the individual members of the tribe entitled thereto, or for their heirs, shall be subject only to the approval of the Secretary of the Interior.

*Provisos.*
Parents to control minors' lands.

Approval of leases.

Deeds.

SEC. 8. That all deeds to said Osage lands or any part thereof shall be executed by the principal chief for the Osages, but no such deeds shall be valid until approved by the Secretary of the Interior.

Tribal officers.
Elections, etc.

SEC. 9. That there shall be a biennial election of officers for the Osage tribe as follows: A principal chief, an assistant principal chief, and eight members of the Osage tribal council, to succeed the officers elected in the year nineteen hundred and six, said officers to be elected at a general election to be held in the town of Pawhuska, Oklahoma Territory, on the first Monday in June; and the first election for said officers shall be held on the first Monday in June, nineteen hundred and eight, in the manner to be prescribed by the Commissioner of Indian Affairs, and said officers shall be elected for a period of two years, commencing on the first day of July following said election, and in case of a vacancy in the office of principal chief, by death, resignation, or otherwise, the assistant principal chief shall succeed to said office, and all vacancies in the Osage tribal council shall be filled in a manner to be prescribed by the Osage tribal council, and the Secretary of the Interior is hereby authorized to remove from the council any member or members thereof for good cause, to be by him determined.

Public highways.

SEC. 10. That public highways or roads, two rods in width, being one rod on each side of all section lines, in the Osage Indian Reservation, may be established without any compensation therefor.

Lands for railroad purposes.
Vol. 32, p. 47.

SEC. 11. That all lands taken or condemned by any railroad company in the Osage Reservation, in pursuance of any Act of Congress or regulation of the Department of the Interior, for rights of way, station grounds, side tracks, stock pens and cattle yards, water stations, terminal facilities, and any other railroad purpose, shall be, and are hereby, reserved from selection and allotment and confirmed in such railroad companies for their use and benefit in the construction, operation, and maintenance of their railroads: *Provided*, That such railroad companies shall not take or acquire hereby any right or title to any oil, gas, or other mineral in any of said lands.

*Proviso.*
Restriction.

Enforcement.

SEC. 12. That all things necessary to carry into effect the provisions of this Act not otherwise herein specifically provided for shall be done under the authority and direction of the Secretary of the Interior.

Approved, June 28, 1906.

59TH CONGRESS, 1st Session. } HOUSE OF REPRESENTATIVES. { REPORT No. 3219.

# DIVISION OF LANDS AND FUNDS OF OSAGE INDIANS, OKLAHOMA.

APRIL 14, 1906.—Committed to the Committee of the Whole House on the state of the Union and ordered to be printed.

Mr. CURTIS, from the Committee on Indian Affairs, submitted the following

## REPORT.

[To accompany H. R. 15333.]

The Committee on Indian Affairs, to whom was referred the bill (H. R. 15333) for the division of the lands and funds of the Osage Indians, in Oklahoma, submit the following report:

For several years the Osage tribe of Indians, of Oklahoma, has been considering the question of asking the Government to divide its lands and moneys among the members of the tribe. In all contests for the election of officers in this tribe this question has been an issue. For the past two years these Indians have virtually agreed that their lands and moneys should be divided, but they have been unable to agree upon a plan of division until this year. The bill which your committee herewith reports was submitted to the Osages at the last general election held by them, and it was adopted by all factions of the tribe. It was brought to Washington by delegates representing those factions, submitted to the Secretary of the Interior for his consideration, and the committee has given the measure very careful consideration and recommends its passage with the amendments suggested by the Department and also with some amendments which the committee thought should be agreed upon.

The bill provides for making rolls of the tribe and for equally dividing the lands among the members who are entitled to enrollment, giving each his fair share in acres as nearly as possible.

The bill prohibits the sale or disposition of the lands for twenty-five years, except your committee thought it advisable to add a section which would authorize any member who felt himself qualified to transact his own business to file application with the Secretary of the Interior, and if the Secretary, upon investigation, concludes that such member is qualified, then he is authorized to issue a certificate which

will en… applicant to sell his surplus lands, which upon the issuance o… certificate becomes subject to taxation.

The bill … presented by the Indians asked for the reservation of the oil, gas, coal, and other mineral lands to the tribe in common for twenty-five years. They also asked that the leases made to James S. Glenn and George L. Craig be ratified and that the Foster lease be extended so as to make them all run for a period of twenty-five years. The Department recommended against this part of the section, and your committee has adopted the recommendations of the Department.

The bill as reported reserves the mineral lands for the use of the tribe for the period of twenty-five years and authorizes mineral leases by the tribal council to be approved by the Secretary of the Interior, under such rules and regulations as he may prescribe.

The bill makes ample provision for the maintenance of schools and the tribal government. It also sets aside lands for school purposes and donates lands to schools already in existence.

There are about 1,800 Osages of whom about 900 are half-breeds, or are so designated, and the others are recognized as full bloods. They own 1,400,000 acres of land, much of which is valuable for farming and the balance is good grazing land. They have over $8,000,000 in the Treasury of the United States, and the greatest oil and gas wells in this country have been discovered on their reservation and from which they receive large amounts in royalties.

This measure was prepared by the members of the tribe and submitted to a vote. It has been carefully considered by the Department and by your committee, and it is the opinion of your committee that it fully protects the interests of the Indians, and would be best for all concerned if the same were enacted into law.

Therefore your committee recommends the passage of the bill with the following amendments:

Amend the title by inserting, after the word "lands," the words "and funds," and after the word "Territory" the words "and for other purposes."

Page 2, line 3, strike out the word "may" and insert in lieu thereof the word "shall."

Page 2, line 4, strike out the words "agreement by the President of the United States" and insert in lieu thereof the word "act."

Page 2, line 12, strike out the word "carefully."

Page 2, line 15, after the word "fraud," insert—

but where the rights of persons to enrollment to the Osage roll have been investigated by the Interior Department, and it has been determined by the Secretary of the Interior that such persons were entitled to enrollment, their names shall not be stricken from the roll for fraud except upon newly discovered evidence; and the Secretary of the Interior shall have authority to place on the Osage roll the names of all persons found by him, after investigation, to be so entitled, whose applications were pending on the date of the introduction of this bill in the House of Representatives, viz: February twenty-first, nineteen hundred and six.

Page 2, line 17, strike out the word "whom" and insert in lieu thereof the word "which."

Page 2, line 21, after the word "tribe," insert—

and the action of the Secretary of the Interior in the revision of the roll as herein provided shall be final, and the provisions of the act of Congress of August fifteenth, eighteen hundred ninety-four, Twenty-eighth Statutes at Large, page three hundred and five, granting persons of Indian blood who have been denied allotments the right to appeal to the courts, are hereby repealed as far as the same relate to the Osage I… .



P… line 23, after the word "provided," insert—

*Pro… further*, That said list shall contain the name of persons now on the Osage roll heretofore investigated by the Secretary of the Interior and whose right to be on said roll was sustained by him unless new and material evidence is submitted.

Page 3, line 8, strike out the word "six" and insert in lieu thereof the word "three."

Page 3, line 9, strike out the words "agreement by the President of the United States" and insert in lieu thereof the word "act," after which insert—

*Provided*, That all selections of lands heretofore made by any member of said tribe, against which no contest is pending, be, and the same are hereby, ratified and confirmed as one of the selections of such member.

Page 3, line 18, strike out the word "agreement" and insert in lieu thereof the word "act."

Page 3, lines 23 and 24, strike out the words "this agreement is approved by the President of the United States" and insert in lieu thereof the words "the approval of this act."

Page 4, line 12, strike out the word "agreement" and insert in lieu thereof the word "act."

Page 4, lines 18 and 19, strike out the words "agreement by the President of the United States" and insert in lieu thereof the word "act."

Page 5, line 8, after the word "lot" insert:

Each member of said tribe shall be permitted to designate which of his three selections shall be a homestead and his certificate of allotment and deed shall designate the same as a homestead, and the same shall be inalienable and nontaxable until otherwise provided by act of Congress. The two other selections of each member, together with his share of the remaining lands allotted to the member, shall be known as surplus land and shall be nontaxable and inalienable for twenty-five years and shall be designated as surplus lands.

Page 6, strike out lines 7 to 13, inclusive, and insert in lieu thereof:

Seventh. That the Secretary of the Interior, in his discretion, at the request and upon the petition of any adult member of the tribe, may issue to such member a certificate of competency, authorizing him to sell and convey any of the lands deeded him by reason of this act, except his homestead, which shall remain inalienable and untaxable for a period of twenty-five years, or during the life of the homestead allottee, if, upon investigati… consideration, and examination of the request, he shall find any such member …ully competent and capable of transacting his or her own business and caring for … is or her own individual affairs: *Provided*, That upon the issuance of such certificate of competency the lands of such member (except his or her homestead) shall become subject to taxation, and such member, except as herein provided, shall have the right to manage, control, and dispose of his or her lands the same as any citizen of the United States: *Provided further*, That nothing herein shall authorize the sale of the oil, gas, coal, or other minerals covered by said lands, said minerals being reserved to the use of the tribe for a period of twenty-five years, and the royalty to be paid to said tribe as hereinafter provided: *And provided further*, That the oil, gas, coal, and other minerals upon said allotted lands shall become the property of the individual owner of said land at the expiration of said twenty-five years, unless otherwise provided for by act of Congress.

Page 6, line 23, after the word "deed" insert:

There shall also be reserved from selection and division the quarter section of land conforming to the public surveys, near Grayhorse, on which are located the dwelling houses of John N. Florer, Walter O. Florer, and John L. Bird; and said John N. Florer shall be allowed to purchase said quarter section of land at the appraised value placed thereon by the Osage allotting commission, the proceeds of the sale to be placed to the credit of the Indians and to be distributed like other funds herein provided for.

Page [illegible] 1, strike out the words "and the proceeds of such sale shall be pl[illegible] to the credit of" and insert:

and with the proceeds he shall erect other suitable buildings for the uses mentioned on such sites as he may select, the remaining proceeds, if any, to be placed to the credit of.

Page 8, line 17, add "s" to the word "house" and strike out the word "is" and insert the word "are" in lieu thereof.

Page 9, after line 8, insert the following paragraph:

That the provisions of an act entitled "An act making appropriations for the current and contingent expenses of the Indian Department and for fulfilling treaty stipulations with various Indian tribes for the fiscal year ending June thirtieth, nineteen hundred and six, and for other purposes," approved March third, nineteen hundred and five, be, and the same are hereby, continued in full force and effect.

Page 9, line 13, strike out all after the word "six" down to and including line 4 on page 10.

Page 10, line 6, strike out "Second. That the" and insert in lieu thereof "and."

Page 10, line 5, after the word "all," insert "oil, gas, and other."

Page 10, after the word "minerals," in line 5, strike out the words "other than oil and gas" in lines 5 and 6.

Page 10, lines 9, 10, and 11, strike out "for a period of not to exceed twenty-five years from and after the first day of January, nineteen hundred and seven," and insert in lieu thereof "and under such rules and regulations as he may prescribe."

Page 10, line 12, strike out the word "mining" and insert in lieu thereof the word "mineral."

Page 10, line 15, strike out the word "first" and insert in lieu thereof the word "homestead."

Page 10, line 16, strike out the words "of land."

Page 12, line 3, strike out the word "sites" and insert in lieu thereof the word "lots."

Page 12, line 10, strike out the word "agreement" and insert the word "act" in lieu thereof.

Page 12, line 18, strike out the word "as" and insert in lieu thereof word "that."

Page 12, line 25, strike out the word "sites" and insert in lieu thereof the word "lots."

Page 13, line 1, strike out the word "twenty" and insert in lieu thereof the words "not to exceed thirty."

Page 13, line 24, strike out the word "agreement" and insert in lieu thereof the word "act."

Page 15, strike out after the word "Oklahoma" all of lines 10, 11, 12, 13, and 14 and insert in lieu thereof the words "or of the State in which said reservation may be hereafter incorporated."

Page 15, strike out all after the word "for" in line 15, down to and including the word "seven" in line 18.

Page 16, line 9, strike out the words "and shall be approved by the Secretary of the Interior" and insert in lieu thereof the words "and no such deeds shall be valid until approved by the Secretary of the Interior."

Page 16, lines 16 and 17, strike out the words "ratification and approval of this agreement" and insert in lieu thereof the words "approval of this act."

Page 16, line 18, strike out the word "as."

P[illegible] line 2, after the word "are" insert the words "qualified elector[illegible]

Page 18, strike out lines 1 to 8, inclusive, and insert in lieu thereof—

SEC. 14. That all lands taken or condemned by any railroad company in the Osage Reservation in pursuance of any act of Congress or regulation of the Department of the Interior for rights of way, station grounds, side tracks, stock pens and cattle yards, water stations, terminal facilities, and any other railroad purpose, shall be, and are hereby, reserved from selection and allotment and confirmed in such railroad companies for their use and benefit in the construction, operation, and maintenance of their railroads: *Provided*, That such railroad companies shall not take or acquire hereby any right or title to any oil, gas, or other mineral in any of said lands.

Page 18, line 10, strike out the word "agreement" and insert the word "act" in lieu thereof.

O

59TH CONGRESS, 1st Session. } HOUSE OF REPRESENTATIVES. { REPORT No. 4996.

# DIVISION OF LANDS AND FUNDS OF OSAGE INDIANS IN OKLAHOMA, ETC.

JUNE 22, 1906.—Ordered to be printed.

Mr. SHERMAN, from the committee of conference, submitted the following

## CONFERENCE REPORT.

[To accompany H. R. 15333.]

The committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 15333) entitled "An act for the division of the lands and funds of the Osage Indians in Oklahoma Territory, and for other purposes," having met, after full and free conference have agreed to recommend and do recommend to their respective Houses as follows:

That the Senate recede from its amendments numbered 11 and 24.

That the House recede from its disagreement to the amendments of the Senate numbered 1, 2, 4, 5, 6, 7, 8, 9, 10, 15, 16, 17, 19, 20, 21, 22, 23, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, and 37; and agree to the same.

Amendment numbered 3:

That the House recede from its disagreement to the amendment of the Senate numbered 3, and agree to the same with an amendment as follows:

Strike out the words inserted by the Senate, restore the matter stricken out, and insert, after "members", *subject to the approval of the Secretary of the Interior*; and the Senate agree to the same.

Amendment numbered 12: That the House recede from its disagreement to the amendment of the Senate numbered 12, and agree to the same with an amendment as follows:

Following the word "Oklahoma," in said amendment, insert: *Provided, That the surplus lands shall be nontaxable for the period of three years from the approval of this Act, except where certificates of competency are issued or in case of the death of the allottee, unless otherwise provided by Congress; and*; and the Senate agree to the same.

Amendment numbered 13:

That the House recede from its disagreement to the amendment of the Senate numbered 13, and agree to the same with an amendment as follows:

Strike out the word "ten" and insert *forty*; and the Senate agree to the same.

Amend[illegible]mbered 14:

That the H[illegible]s recede from its disagreement to the amendment of the Senate numbered 14, and agree to the same with an amendment as follows:

Strike out the word "ten" and insert *forty*; and the Senate agree to the same.

Amendment numbered 18:

That the House recede from its disagreement to the amendment of the Senate numbered 18, and agree to the same with an amendment as follows:

In lieu of the matter stricken out by the Senate amendment insert: *And provided further, That no mining of or prospecting for any of said mineral or minerals shall be permitted on the homestead selections herein provided for without the written consent of the Secretary of the Interior: Provided, however, That nothing herein contained shall be construed as affecting any valid existing lease or contract*; and the Senate agree to the same.

J. S. SHERMAN,
CHARLES CURTIS,
WM. T. ZENOR,
*Managers on the part of the House.*
CHESTER I. LONG,
WM. J. STONE,
MOSES E. CLAPP,
*Managers on the part of the Senate.*

STATEMENT OF MANAGERS ON PART OF THE HOUSE.

Statement of the managers on the part of the House on the committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 15333) entitled "An act for the division of the lands and funds of the Osage Indians in Oklahoma Territory, and for other purposes."

The House recedes from its disagreements to amendments 1, 2, 4, 5, 6, 7, 8, 9, 10, 15, 16, 17, 19, 20, 21, 22, 23, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, and 37.

The Senate recedes from its amendments numbered 11 and 24.

The House agrees to the Senate amendments numbered 3, 12, 13, 14, and 18, with amendments.

Amendment No. 1 authorizes the Secretary of the Interior to pass upon applications for enrollment which are pending at the date of the approval of this act.

Amendment No. 2 strikes out the provision in reference to the list of names which is fully provided for in another part of the bill.

Amendment No. 3 provides for the allotment of lands to those who fail to make their own selections by the United States Indian agent, subject to the approval of the Secretary of the Interior.

Amendment No. 4 is substantially the same in reference to lands selected by minors.

Amendments Nos. 5, 6, 11, and 12 are in reference to the taxation of the surplus lands of the Osage Indians. The amendments as finally agreed upon by the conference committee provides that the surplus lands shall be exempt from taxation for a period of three years except where certificates of competency are issued or in case of the death of the allottee and unless otherwise provided by Congress. Your managers thought this was the best disposition to make of the amendment of the Senate.

Amendments Nos. 8 and 9 change the manner of making the appointment of the commission which is to supervise the selection and the division of the lands. As amended, the tribe is given one member of the commission, while the other two are to be appointed by the Commissioner of Indian Affairs, with the approval of the Secretary of the Interior.

Amendment No. 10 is a change of phraseology.

Amendments Nos. 13 and 14 change the amount of land which certain persons owning improvements are permitted to buy from 10 to 40 acres.

Amendment No. 15 requires the appraisement of the town-site commission to be approved by the Secretary of the Interior.

Amendment No. 16 limits the House provision which continued the provisions of the appropriation act for the year 1906 to the pages of said act which apply to the Osage Reservation.

Amendment No. 17 is a change of phraseology.

Amendment No. 18 prohibits any mining or prospecting for minerals upon the homestead of any of the Indians without the approval of the Secretary of the Interior, but provision is made that nothing in said item shall be construed as affecting any valid or existing lease or contract.

Amendment No. 19 is a change of phraseology.

Amendment No. 20 strikes out section 5, which is made unnecessary by an amendment which was agreed to when the bill passed the House, but by oversight section 5 was retained in the bill.

Amendments No. 21, 23, 25, 28, 30, 34, 35, and 36 simply changes the numbering of the sections.

Amendment No. 22 is a change of phraseology.

Amendment No. 26 gives the right to parties to whom lands are set aside for their sole use and benefit, not only to control the lands, but also the proceeds thereof.

Amendment No. 27 provides that leases given on lands for the benefit of individual members of the tribe shall be subject to the approval of the Secretary of the Interior.

Amendment No. 29 strikes out the section creating a county out of the Osage Indian Reservation, as this has been already provided for in the statehood bill.

Amendment No. 31 makes it unnecessary for a new election to be held this year. As the tribe has just had an election it was thought to be unnecessary to require another before 1908.

Amendment No. 32 is made necessary by amendment 31, and changes the word "six" to "eight."

Amendment No. 33 authorizes the Secretary of the Interior to remove any member of the council for good cause.

Amendment No. 37 strikes out section 15, which provided for the ratification of the act by a vote of the members of the tribe. This was deemed unnecessary as the tribe has already virtually voted upon the act, and it has been an issue among the members for a number of years, and at the election in 1905 the tribe was almost unanimous for the measure.

Your managers recommend the adoption of the report.

J. S. SHERMAN,
CHARLES CURTIS,
WM. T. ZENOR,
*Managers on the part of the House.*

O

59TH
1st

SALE

Mr. S

The co
Houses o
authorize
use of th
having m
and do re
That th
the Senat
In the f
Senate ag

STATE

The Sena
inserted in
sition of th
bill, the Se
through the
Menominee

59TH CONGRESS, } SENATE. { REPORT
*1st Session.* } { No. 4210.

# DIVISION OF LANDS AND FUNDS OF OSAGE INDIANS, OKLAHOMA.

JUNE 6, 1906.—Ordered to be printed.

Mr. LONG, from the Committee on Indian Affairs, submitted the following

## REPORT.

[To accompany H. R. 15333.]

The Committee on Indian Affairs, to whom was referred the bill (H. R. 15333) for the division of the lands of the Osage Indians in Oklahoma Territory, having considered the same beg to report the same with amendments and as amended recommend the passage of the same.

In support of the foregoing recommendation your committee beg to submit extracts from the report of the Committee on Indian Affairs of the House of Representatives upon the same measure and correspondence from the Secretary of the Interior.

[Extracts from House Report No. 3219, Fifty-ninth Congress, first session.]

For several years the Osage tribe of Indians, of Oklahoma, has been considering the question of asking the Government to divide its lands and moneys among the members of the tribe. In all contests for the election of officers in this tribe this question has been an issue. For the past two years these Indians have virtually agreed that their lands and moneys should be divided, but they have been unable to agree upon a plan of division until this year. The bill which your committee herewith reports was submitted to the Osages at the last general election held by them, and it was adopted by all factions of the tribe. It was brought to Washington by delegates representing those factions, submitted to the Secretary of the Interior for his consideration, and the committee has given the measure very careful consideration and recommends its passage with the amendments suggested by the Department and also with some amendments which the committee thought should be agreed upon.

The bill provides for making rolls of the tribe and for equally dividing the lands among the members who are entitled to enrollment, giving each his fair share in acres as nearly as possible.

The bill prohibits the sale or disposition of the lands for twenty-five years, except your committee thought it advisable to add a section which would authorize any member who felt himself qualified to transact his own business to file application with the Secretary of the Interior, and if the Secretary, upon investigation, concludes

that such me[illegible] qualified, then he is authorized to issue a certificate which will enable the ap[illegible] sell his surplus lands, which upon the issuance of the certificate becomes sul[illegible] taxation.

The bill as pres[illegible]ed by the Indians asked for the reservation of the oil, gas, coal, and other mineral lands to the tribe in common for twenty-five years. They also asked that the leases made to James S. Glenn and George L. Craig be ratified and that the Foster lease be extended so as to make them all run for a period of twenty-five years. The Department recommended against this part of the section, and your committee has adopted the recommendations of the Department.

The bill as reported reserves the mineral lands for the use of the tribe for the period of twenty-five years and authorizes mineral leases by the tribal council, to be approved by the Secretary of the Interior under such rules and regulations as he may prescribe.

The bill makes ample provision for the maintenance of schools and the tribal government. It also sets aside lands for school purposes and donates lands to schools already in existence.

There are about 1,800 Osages, of whom about 900 are half-breeds, or are so designated, and the others are recognized as full bloods. They own 1,400,000 acres of land, much of which is valuable for farming and the balance is good grazing land. They have over $8,000,000 in the Treasury of the United States, and the greatest oil and gas wells in this country have been discovered on their reservation and from which they receive large amounts in royalties.

This measure was prepared by the members of the tribe and submitted to a vote. It has been carefully considered by the Department and by your committee, and it is the opinion of your committee that it fully protects the interests of the Indians, and would be best for all concerned if the same were enacted into law.

---

DEPARTMENT OF THE INTERIOR,
*Washington, June 1, 1906.*

SIR: Upon the informal request to the Commissioner of Indian Affairs, I transmit herewith a copy of a report from his Office, dated the 31st ultimo, on the bill H. R. 15333, "For the division of the lands and funds of the Osage Indians in Oklahoma Territory, and for other purposes."

Certain amendments are recommended by the Commissioner which have the approval of the Department.

Very respectfully,

E. A. HITCHCOCK,
*Secretary.*

The CHAIRMAN OF THE COMMITTEE ON INDIAN AFFAIRS,
*United States Senate.*

---

DEPARTMENT OF THE INTERIOR,
OFFICE OF INDIAN AFFAIRS,
*Washington, March 13, 1906.*

SIR: The Office has the honor to acknowledge the receipt, by Department reference of February 26 for report, of a letter from Hon. James S. Sherman, chairman of the Committee on Indian Affairs, House of Representatives, dated February 23, inclosing a copy of H. R. 15333, "A bill for the division of the lands of the Osage Indians in Oklahoma Territory." Mr. Sherman requests a report by this Department on the bill.

Reporting on the reference, I have the honor to say that while the Office is in full accord with the main provisions of the bill it is thought that it should be amended in several minor particulars.

The title does not fully express the purpose of the bill. Provision is made in it for a division of the funds as well as the lands. It is accordingly suggested that the title be amended to read, "A bill for the division of the lands and funds of the Osage Indians in Oklahoma Territory."

In line 4, page 2, strike out the words "agreement by the President of the United States" and insert in lieu thereof the word "act."

In line 15, page 2, after the word "fraud," insert the words "but where the rights of persons to enrollment on the Osage roll have been investigated by the Interior Department, and it has been determined by the Secretary of the Interior that such persons we[illegible]titled to enrollment, their names shall not be stricken from the roll [illegible]raud except upon newly discovered evidence; and the Secretary of the In[illegible] have authority to place on the Osage roll the names of the persons found after investigation, to be so entitled, whose applications were pending on t[illegible] date of the introduction of this bill in the House of Representatives, viz, February 21, 1906."

In explanation of the first amendment it is said that in 1897 and 1898 the rights of several persons to enrollment with the Osages were thoroughly investigated by the Department, and it was then determined that they were entitled to enrollment. It does not seem expedient to open up these cases except on the ground of newly discovered evidence. In explanation of the second amendment it is said that several applications for enrollment are now pending. Some provision should be made for the disposition of the pending cases, otherwise they will be cut off without a hearing.

In line 17, page 2, strike out the word "whom" and insert in lieu thereof the word "which."

In line 21, page 2, after the word "tribe" insert the words "and the action of the Secretary of the Interior in the revision of the roll as herein provided shall be final, and the provisions of the act of Congress of August fifteenth, eighteen hundred and ninety-four (twenty-eighth Statutes at Large, page three hundred and five), granting persons of Indian blood who have been denied allotments the right to appeal to the courts, are hereby repealed as far as the same relate to the Osage Indians."

In line 9, page 3, strike out the words "agreement by the President of the United States" and insert the word "act."

In lines 23 and 24, page 3, strike out the words "this agreement is approved by the President of the United States" and insert in lieu thereof "approval of this act."

In line 12, page 4, strike out the word "agreement" and insert the word "act."

In lines 18 and 19, page 4, strike out the words "agreement by the President of the United States" and insert the word "act."

After the word "deed" in line 23, page 6, insert the following:

"There shall also be reserved from selection and division the quarter section of land, conforming to the public surveys, near Gray Horse, on which are located the dwelling houses of John N. Florer, Walter O. Florer, and John L. Bird; and said John N. Florer shall be allowed to purchase said quarter section of land at the appraised value placed thereon by the Osage Allotting Commission, the proceeds of the sale to be placed to the credit of the Indians and to be distributed like other funds herein provided for."

In explanation of this proposed amendment it is stated that Mr. Florer has been a licensed trader among the Osages for more than thirty years; that together with his son and son-in-law he has erected dwellings near Grayhorse at an expense of nearly $10,000, and it would be very unfair to confiscate these improvements, and the only practicable way out of the difficulty seems to be to permit Mr. Florer to purchase the land at its appraised value. The Office believes that the statements concerning Mr. Florer are true.

Strike out the words "and the proceeds of such sale shall be placed to the credit of," comprising line 11, page 8, and insert in lieu thereof the words "[illegible]nd with the proceeds he shall erect other suitable buildings for the uses mentioned on such sites as he may select, the remaining proceeds, if any, to be placed to the credit of." In explanation of this suggested amendment, I have to say that it seems certain that all the machinery of an agency will be necessary for a period of twenty-five years from January 1, 1907. If the present buildings in the business part of Pawhuska are sold the Secretary should be given specific authority to erect other suitable buildings with such of the proceeds as are necessary on sites to be selected by him.

Strike out the first subdivision of section 3 on pages 9 and 10, being lines 16 to 24 on page 9, and lines 1 to 4, inclusive, on page 10. In explanation of this suggested amendment, I have to say that the Secretary of the Interior has declined to approve either the Glenn or the Craig lease. I disapprove entirely the idea of this renewal by legislation of any leases now existing. A legislative act, in the first place, is not the proper means of creating or prolonging a lease. Neither is it possible to look so far into the future and judge of the commercial and other conditions which may, perhaps, exist ten years hence, as to justify us in saying that any lease for a current ten years can, at the end of that period, be wisely renewed on the same terms for another fifteen.

Line 8, page 12, strike out the word "sites," and insert the word "lots."

Line 10, page 12, strike out the word "agreement" and insert the word "act."

Line 18, page 12, strike out the word "as" and insert the word "that."

In line 25 of the same page strike out the word "sites" and insert the word "lots."

The fourth subdivision of section 4, pages 12 and 13, makes provision for reserving from the royalties on oil, gas, coal, and other mineral products, etc., the sum of

$20,000 per [illegible] agency purposes and an emergency fund for the Osage tribe. It is the opinion [illegible] Office that this amount is insufficient for the purpose named. It is suggested [illegible] words "twenty thousand" in line 1, page 13, be stricken out and the words "[illegible] exceed thirty thousand" inserted in lieu thereof.

Line 24, page 13, strike out the word "agreement" and insert the word "Act."

Strike out line 9, page 16, and insert the words "but no such deeds shall be valid until approved by the Secretary of the Interior."

In lines 16 and 17, page 16, strike out the words "ratification and approval of this agreement" and insert the words "approval of this act."

Line 18, same page, strike out the word "as."

In line 2, page 17, after the word "are," insert the words "qualified electors."

Attention is invited to the fact that the bill contains no provision making the Osage Indians citizens of the United States. They are specifically excepted from the provisions of the general allotment act (24 Stats., 388). It is thought that section 11 should be so amended as to make them citizens of the United States and of Oklahoma at the expiration of the trust period of twenty-five years. Recommendation to this effect is accordingly made.

Provision is made in section 12 for the perpetual continuance of the tribal council. It is thought that the section should be amended so as to abolish the council at the expiration of the trust period. Recommendation is accordingly made to this effect.

The minor amendments herein suggested, it is thought, will improve the bill. The general provisions of the bill meet the most hearty approval of this Office.

Most of these suggested amendments have been discussed with such of the members of the Osage delegation as are in the city, and they are in accord with the views herein expressed.

Mr. Sherman's letter and the bill are returned herewith; copy of this report also inclosed.

Very respectfully,

F. E. LEUPP,
*Commissioner.*

The SECRETARY OF THE INTERIOR.

---

DEPARTMENT OF THE INTERIOR,
*Washington, August 1, 1903.*

SIR: Your communication of the 26th of May last, relative to the status and prerogatives of the Osage council and the selection of a business committee for the tribe, has been carefully considered.

In reply, you are advised that in view of the careful consideration given this matter by the inspector of the Department, and in order to provide for the proper transaction of the business of the Osages with the least possible friction, so as to secure the best results both for the Indians and the Government, it is my opinion that the recommendations of Mr. Churchill should be carried out.

I have to request, therefore, that you will take the necessary steps at once, as indicated in Department letter of April 15, 1903, to you, to select the names of eight members of the present council who will serve with yourself as the first council or business committee (the designation thereof being immaterial) and forward the same to the Department with as little delay as possible.

The functions of this committee will be to act upon such matters as are brought before the council under the present arrangement and such other business as may be submitted to it by the Indian agent under the direction of the Commissioner of Indian Affairs, with the approval of the Secretary of the Interior.

Very respectfully,

THOS. RYAN, *Acting Secretary.*

JAMES BIGHEART, Esq.,
*Principal Chief Osage Tribe, Pawhuska, Okla.*

---

DEPARTMENT OF THE INTERIOR,
OFFICE OF INDIAN AFFAIRS,
*Washington, May 31, 1906.*

SIR: Answering the informal request of Hon. Moses E. Clapp, chairman of the Senate Committee on Indian Affairs, of May 23, delivered personally to you by the clerk of the Senate committee, for a report on H. R. 15333, "For the division of the [illegible]funds of the Osage Indians in Oklahoma Territory, and for other purposes," [illegible] the Senate on May 22 and referred to the Committee on Indian Affairs, I have [illegible] honor to submit, by your direction, the views of this Office thereon.

On [illegible] 13 the Office submitted a report to you on the original bill while it was
pending in the House of Representatives. A copy of the report is inclosed herewith.
The Office suggested certain amendments, most of which it appears have been made.
It is thought best, however, after further consideration of the bill, to suggest several
other amendments to certain provisions not touched upon in the former report. It
also appears, from a comparison of the bill with House Report No. 8219, that certain
amendments have been made to the original bill which were not suggested by this
Office. It will therefore be necessary to refer to some of these amendments briefly.
On page 3, lines 16 to 19, inclusive, is an amendment to the original bill not suggested by this Office. This amendment, it is thought, is not really necessary, as it
is embodied in an amendment which the Office did suggest, found on page 2, line 14,
beginning with the word "but" and continuing through to the word "evidence"
in line 19. If the amendment is retained, the word "not" should be inserted in
line 16 after the word "shall" and before the word "contain."
On page 4, line 4, the word "three" has been substituted for the word "six" in
the original bill. It is believed, however, that three months is ample time for making the first selections, as a large majority of the Indians have already selected their
"tentative homesteads."
On page 4, line 10, beginning with the word "it," it is recommended that the
remainder of the line, all of line 11, and that part of line 12 closing with the word
"members," be stricken out and that there be substituted in lieu thereof the words
"such selection shall be made by such person or persons as the Secretary of the
Interior shall designate."
On page 4, line 14, after the word "Osages," insert the words "subject to the
approval of the Secretary of the Interior." This amendment is regarded as necessary.
On page 6, line 5, beginning with the word "each," down to and including line
14, is another amendment not suggested by this Office. The Office, however, sees
no objection thereto.
On page 6, line 24, strike off the "s" on the word "members;" and in the same
line it is urgently recommended that the word "three" be stricken out and the word
"one" inserted in lieu thereof. In explanation of this recommendation I would say
that it is known to this Department by unquestioned proof, if not by the admissions
of the members themselves, that certain members of the Osage Council are absolutely corrupt. This being true, it is believed that the selection of a majority of the
allotting commission by the council might be fatal to the interests of very many of
the Indians, and it should not be allowed.
On page 7, beginning with line 13 and extending through line 12 on page 8, there
is an amendment to the original bill not suggested by this Office. It is in harmony,
however, with the present policy, and there seems to be no objection to its remaining in the bill. / If the competent Indians are given the right to dispose of their lands,
it is the opinion of this Office that they should also be given control of their funds.
To withhold this right is inconsistent with granting them the privilege of disposing
of their lands. It is therefore recommended that the following provision be inserted
on page 8, line 4, after the words "United States:" "and the Secretary of the Interior is hereby authorized, in his discretion, to pay to such member all or any part of
the funds segregated and placed to the individual credit of such member, as hereinafter provided."
On page 9, line 23, it is urgently recommended that the words "quarter section"
be stricken out and that the words "ten acres" be substituted in lieu thereof; and
on page 9, line 2, strike out the words "quarter section" and insert in lieu thereof
the words "ten acres." Since making the recommendation contained in the report
of March 13 the Office has reliable information that this grant is a scheme to secure
title to the town or settlement known as Gray Horse, and it is thought that 10 acres
will amply cover all the improvements Mr. Florer has placed on the reservation. A
larger grant than 10 acres should, therefore, not be allowed.
On page 11, end of line 7, add the words "subject to the approval of the Secretary of the Interior."
On page 11, beginning with line 20 and extending through line 2, page 12, comprises another amendment not passed upon by the Office. The amendment, in the
judgment of this Office, is not necessary, as the interests of all persons having vested
rights on the reservation will be amply protected if the lines be stricken out; but if
it shall be thought by the Senate committee that the rights of persons or corporations
having oil and gas leases on the reservation may be jeopardized without continuing
in force certain provisions of said act of March 3, 1905, it is suggested that the pro-

vision be … by inserting the words "relating to the Osage Reservation, pages one thous… …ty-one and one thousand and sixty-two, volume thirty-three, United States …es at Large," after the word "five" and before the word "be," in line 1, page 1…, otherwise it would continue in force the entire act.

The provision relating to the execution of mineral leases, page 12, lines 7 to 20, while not passed upon by the Office in its present form, seems to be unobjectionable.

On page 12 strike out line 20 and insert in lieu thereof the words "Secretary of the Interior."

Section 5 of the original bill authorizing the Indians to submit their claims of whatsoever nature to the Court of Claims has been stricken out. The Office passed this provision in its first report. Section 5 of this bill, which was section 6 of the original bill, has been retained. This section is necessary only because of the provisions of the section that has been stricken out. If the claims are not to be submitted to the court, the information called for in section 5 will not be needed. It is accordingly recommended that this section be stricken out.

The provisions of section 6, page 15, are somewhat inconsistent with the provisions on page 6, lines 5 to 14. It is suggested that the words "except as hereinbefore provided" be added to the end of the section.

It is thought that the provisions of section 7, page 16, should be amended by adding at the end of the section the words "or to the survivor in case of the death of either."

On page 16, line 20, strike out the word "only;" and in lines 20 and 21, same page, strike out the words "United States Indian agent for the Osages" and insert in lieu thereof the words "Secretary of the Interior."

On page 18, line 2, it is suggested that "September" be substituted for "June;" and in line 5, of the same page, substitute "June" for "July."

In the former report the Office recommended that section 11 be amended so as to make the Indians citizens of the United States at the expiration of the trust period of twenty-five years. The Office did not suggest the form of words to be used, and the amendment was not made. It was also suggested that the tribal council be abolished at the end of twenty-five years. This suggestion likewise was not followed, and because it has been found that certain members of the tribal council are corrupt it is believed that the Secretary of the Interior should have the power to dismiss any councilman for good and sufficient cause. The actions of the council generally require the approval of the Secretary, and his only method of purging it will be by dismissal; and it seems but right and proper that he should be given specific authority in the bill.

It is therefore urgently recommended that section 11 be further amended by adding to the end of the section as it now stands the following words: "The tribal officers and tribal council shall be abolished at the expiration of the trust period herein provided for; and the Secretary of the Interior is hereby authorized to dismiss from the council any member or members thereof for good cause, to be by him determined. And at the expiration of the trust period of twenty-five years herein provided for each and every member of the tribe is hereby declared to be a citizen of the United States and entitled to all the rights, privileges, and immunities of such citizens, and shall have the benefit of and be subject to all the laws, both civil and criminal, of the State or Territory where they may reside; and no State or Territory shall pass or enforce any law denying any Osage Indian within its jurisdiction the equal protection of the law."

Section 13 is not identical with section 14 of the original bill, relating to railway companies, but the Office sees no objection to the section as it now stands.

Section 15, providing for submitting the act to the Indians for their ratification, is an entirely new feature. The wisdom of this provision is doubted. The factional differences that exist among the tribe might prevent the ratification of any measure, no matter how beneficial. If one faction should favor it another faction might oppose it for that reason. While the bill has been variously amended the most important features remain unchanged; these had the sanction of the tribe before their submission to Congress. It is therefore urgently recommended that section 15 be stricken out of the bill. The amendments herein suggested are thought to be necessary to protect the interests of the Indians.

In closing, I respectfully suggest that you request the committee to submit for your views any further amendments that may be offered to the bill. Hon. Charles Curtis asks, by telephone, that a copy of any report made on the Osage bill be sent to the chairman of the House Committee on Indian Affairs. Copy inclosed.

Very respectfully,

C. F. LARRABEE, *Acting Commissioner.*

The SECRETARY OF THE INTERIOR.

SECRETARY'S OFFICE,
DEPARTMENT OF THE INTERIOR,
*Washington, D. C., June 6, 1906.*

MY DEAR SENATOR: I regret the delay in sending the amended report on the Osage bill, but it was unavoidable. The amended report herewith expresses my views at length, and I regret to say that I can not, under any circumstances, make a favorable report to the President should the bill pass, except as we have recommended.

In my judgment, the reinsertion of section 5 of the original bill providing that the claims of the Indians of "whatsoever nature shall be submitted to the Court of Claims," I can not subscribe to under any circumstances, as it would open the door to endless frauds with regard to claims, some of which have been already settled by the Department, and others which would surely follow.

I also note that the amendment offered in the Department report of May 31, suggesting an important amendment at the end of section 11, page 18, is omitted in the bill you handed me. I refer to the amendment which is to be found on page 6 of this report regarding the powers of the Department with respect to the tribal officers and tribal council. This amendment I must insist upon in view of the recent attempted frauds and actual bribery which have been acknowledged by the members of the present council, the absolute control of which must be vested in the Department or we had better have no bill at all.

As explained to you, no less than five members of the business council have accepted, as shown by their own affidavits, bribes ranging from $700 to $50, and it is out of the question that such a condition should be tolerated without means of applying a most drastic remedy.

In haste.

Yours, sincerely,

E. A. HITCHCOCK,
*Secretary.*

Hon. CHESTER I. LONG,
*United States Senate.*

---

DEPARTMENT OF THE INTERIOR,
OFFICE OF INDIAN AFFAIRS,
*Washington, June 5, 1906.*

SIR: Upon examination of the copy of the Osage bill (H. R. 15333), which you informally handed to me this morning, it appears that several amendments have been proposed, as shown by interlineations and marginal notes thereon, concerning which you desire the views of this Office.

Reporting thereon, I have the honor to say that on May 31 the Office made a report to you on the bill, as read in the Senate on May 22 at the request of Hon. Moses E. Clapp, chairman of the Senate Committee on Indian Affairs. A number of the amendments above referred to are spoken of in said report. This report will be limited to the amendments suggested in the copy of the bill above mentioned.

Page 2, lines 23, 24, and 25 (by erasure and interlineation), the Office sees no objection to the amendment.

Page 3, lines 15, 16, 17, 18, and 19 (by erasure), the Office recommended that this provision be stricken out.

Page 4, lines 10, 11, and 12 (by erasure and marginal note), the Office recommended that this amendment be made.

Page 4, line 14 (by marginal note), the Office also recommended that this amendment be made.

Page 6, lines 12 and 13 (by erasure and interlineation), making the surplus lands subject to taxation, the Office sees no special objection to this provision.

Page 6, lines 24 and 25, and page 7, lines 1 and 2 (by erasure and interlineation), the Office recommended that these amendments be made.

Page 7, line 18, the word "nontaxable" is substituted for the word "untaxable." This amendment should, of course, be made.

Page 8, line 4, after the word "United States" occurs a proposed amendment by marginal note of considerable length. The first part of the amendment, namely, "And the Secretary of the Interior is hereby authorized, in his discretion, to pay such member all or any part of the funds segregated and placed to the individual credit of such member as hereinafter provided," was recommended by the Office in its report of May 31. The remainder of the proposed amendment in the first part directs the Secretary of the Interior to pay the taxes from the Indians' funds on all homestead lands and on all surplus lands of persons to whom a certificate of compe-

tency h[illegible] issued, as authorized by the first part of the section; following this is a[illegible] e amendment, authorizing the Secretary simply to pay the taxes on the surp[illegible] of persons to whom a certificate of competency has not been issued. This [illegible]tive amendment relates to and must be construed with a proposed amendme[illegible]n lines 13 and 14 on page 6 hereinbefore referred to.

The Office strongly opposes the first proposed amendment providing for the collection of taxes on the homesteads. This is in direct conflict with the provision in lines 8 and 9 on page 6, which declares that the homesteads shall be inalienable and nontaxable until otherwise provided by act of Congress. Certainly the homesteads of the Indians should be free from taxation as long as they are held in trust for the benefit of the allottees. Such has been the invariable policy of the Government from the time the first Indian allotments were made, and it is thought that an exception should not be made in the case of the Osages. But I see no special objection to the alternative amendment which provides merely for the payment of taxes on the surplus lands. It is believed that the Osage Indians should be required to pay taxes on their surplus lands the same as citizens of Oklahoma Territory. There occurs to me no valid reason why the Indians should not be required to bear their share of the burden of State and county maintenance through taxation on their surplus lands.

Page 8, lines 23, 24, and 25 and page 9, line 2 (by erasure and interlineation), the Office recommended that this amendment be made.

Page 11, at the end of line 7 (by marginal note), the Office also recommended this amendment.

Page 12, line 1, after the word "five" (by marginal note), the Office recommended that this amendment be made.

Page 12, line 20 (by marginal note), the Office sees no objection to this proposed amendment.

Page 15, after line 7, it is proposed to insert section 5 of the original bill, providing that the claims of the Indians of whatsoever nature may be submitted to the Court of Claims, and to add section 5 of the amended bill as presented in the Senate on May 22.

It is my judgment that the entire section should be eliminated. If it enumerated the claims which the Indians have against the United States there might be some justification in leaving it in the bill; but in its present "omnibus" form it is very objectionable, especially as it requires this Department to furnish the tribe a complete record of all transactions of every character between the United States and the Osage tribe, and all acts of the United States or its officials relating to the Osage Indians. I feel very safe in saying that at least ninety-nine one-hundredths of the transactions between the Government and the Osage Indians bear no relation to any possible claim they can have against the United States, and it seems like imposing on this Department a very unnecessary burden to furnish the tribe with a complete record of every transaction in order that it may sift out some possible claim against the Government.

I know of no valid claim which the Indians have against the United States, and this makes it seem all the more unnecessary to furnish them with the voluminous record called for. If they had valid claims against the United States it seems possible that they could state them, and this Office could with some certainty furnish a record of the transactions relating to such claims, but in its present form it is like thrashing 1,000 bushels of chaff to find a possible kernel of wheat. I therefore recommend that the entire section be eliminated.

Page 15, at the end of line 25 (by marginal note); the Office recommended that this amendment be made.

On page 16, at the end of line 7 (by marginal note); the Office recommended that this amendment be made. And on the same page, in line 14, after the word "same" (by marginal note); the Office also recommended that this amendment be made. On the same page, in line 20 (by marginal note); the Office likewise recommended that this amendment be made.

Page 17 it is proposed to strike out all of section 10, making the Osage Reservation one county, to be known as Osage County. It is believed that this suggestion is made because of a similar provision in the statehood bill. If it were certain that the statehood bill would pass at this session of Congress, and that the provision is substantially similar, I would see no objection to the section being eliminated, but I understand that it is doubtful whether said bill will become law at this session, and I therefore regard it as very important that the section remain in the bill. The Commissioner, who is now out of the city, was very insistent that this provision go in the bill.

Page 18, lines 1 and 2 (by erasure) and line 10 (by marginal note); the Office sees no objection to these amendments.

In its report of May 31 the Office suggested an important amendment at the end [illegible]I, page 18. This amendment is not attached to the bill informally hande[illegible] [illegible]rt. The amendment is as follows:

"[illegible]al officers and tribal council shall be abolished at the expiration of the trust p[illegible] herein provided for; and the Secretary of the Interior is hereby authorized to dismiss from the council any member or members thereof for good cause to be by him determined. And at the expiration of the trust period of twenty-five years herein provided for, each and every member of the tribe is hereby declared to be a citizen of the United States, and entitled to all the rights, privileges, and immunities of such citizens, and shall have the benefit of and be subject to all the laws, both civil and criminal, of the State or Territory where they may reside; and no State or Territory shall pass or enforce any law denying any Osage Indian within its jurisdiction the equal protection of the law."

It is urgently recommended that this amendment be incorporated in the bill.

Page 19, it is proposed to strike out all of section 15 relating to the submission of the act to the Osage Indians for their approval. In its report of May 31, the Office recommended that this section be eliminated.

Copy of the bill herein referred to and a copy of this report are submitted herewith.

Very respectfully,

C. F. Larrabee,
*Acting Commissioner.*

The Secretary of the Interior.