# REGULATIONS TO GOVERN THE LEASING OF LANDS IN THE OSAGE RESERVATION, OKLA., FOR OIL AND GAS MINING PURPOSES.

---

Section 3 of an act of Congress, approved June 28, 1906 (34 Stat L., 539, 543), provides:

That the oil, gas, coal, or other minerals covered by the lands for the selection and division of which provision is herein made are hereby reserved to the Osage tribe for a period of twenty-five years from and after the eighth day of April, nineteen hundred and six; and leases for all oil, gas, and other minerals, covered by selections and division of land herein provided for, may be made by the Osage Tribe of Indians through its tribal council, and with the approval of the Secretary of the Interior, and under such rules and regulations as he may prescribe: *Provided*, That the royalties to be paid to the Osage Tribe under any mineral lease so made shall be determined by the President of the United States: *And provided further*, That no mining of or prospecting for any of said mineral or minerals shall be permitted on the homestead selections herein provided for without the written consent of the Secretary of the Interior: *Provided, however*, That nothing herein contained shall be construed as affecting any valid existing lease or contract.

To carry this provision of law into effect the following regulations are prescribed to govern the leasing of such lands for oil and gas mining purposes:

## DEFINITION.

1. The term "officer in charge" shall refer to the superintendent of the Osage Indian School or other representative of the Government who may, for the time, be in charge of the Osage Agency and Reservation, or any person who may be detailed by the Secretary of the Interior or the Commissioner of Indian Affairs to take charge of leasing or mining operations under these regulations.

2. At such times as the Secretary of the Interior shall direct, the officer in charge shall publish in the two leading newspapers of Pawhuska, Okla., and in such other manner as shall be deemed appropriate notices that specific tracts of Osage lands will be offered for lease to the highest and most responsible bidder, under the sealed-bid system, leases to be executed upon the prescribed form and subject to these regulations.

## BIDS.

3. Should the Osage National Council or any person or corporation desire to have any particular tract of land offered for lease, written request to that effect should be submitted to the officer in charge, who will promptly transmit such requests to the Secretary of the Interior with his recommendation.

4. The lands selected for lease will, as a rule, be offered in large tracts, with designated subdivisions thereof of from three hundred and twenty (320) to five thousand one hundred and twenty (5,120) acres.

Bids will be considered for any one or more of the smaller tracts or designated subdivisions, up to the maximum acreage which may be leased by any one person, firm, or corporation, as provided in section eighteen (18) of these regulations.

No bid for any fractional part or subdivision of any tract, except as advertised, will be considered.

The right is reserved to reject any and all bids.

5. If a bidder for several designated subdivisions desires to secure all or none, he may so state in his bid.

6. All bids shall be submitted on form "A," which may be obtained from the officer in charge.

7. Bids must be inclosed in a sealed envelope addressed to the Superintendent, Osage Indian School, Pawhuska, Okla., on which must be plainly written "Bids for leases, Osage Nation, to be opened ———" (giving the date of opening named in the published advertisement). Each bid must be accompanied by a certified check on a solvent national bank, payable to the superintendent and special disbursing officer, Osage Agency, in an amount representing ten per cent (10%) of the bonus offered plus the first year's advance rental of fifteen (15) cents per acre, as a guarantee of good faith and the intention of the bidder to comply with the conditions of the bid and of the regulations.

8. A corporation shall file with its first bid one certified copy of articles of incorporation, and, if a foreign corporation, evidence showing compliance with local corporation laws; a list of all officers and stockholders, with their post-office addresses, and showing the number of shares of capital stock held by each; together with a sworn statement of its proper officer showing—

(*a*) The total number of shares of the capital stock actually issued, the number of shares actually sold and specifically the amount of cash paid into the treasury on the stock sold; or, if paid in property, state kind, quantity, and value of the same paid.

(*b*) Of the stock sold, how much per share remains unpaid and subject to assessment.

(*c*) How much cash the company has in its treasury and elsewhere, and from what sources it was received.

(*d*) What property, exclusive of cash, is owned by the company, and its value.

(*e*) What the total indebtedness of the company is, and specifically the nature of its obligations.

(*f*) List of officers and directors.

9. All bids received by the officer in charge in pursuance of any authorized advertisement shall be opened by him or his representative on the day and at the hour named in the published advertisement in the council room of the Osage Tribe and in the presence of the Osage National Council, or such members thereof as may attend.

As the bids are opened full information concerning each bid shall be entered in a journal and the same placed before the Osage Council for its action.

## EXECUTION OF LEASES AND BONDS.

10. Successful bidders will be allowed thirty (30) days from date of notice of acceptance of bid within which to execute leases and otherwise comply with these regulations. Failure on the part of a bidder whose bid shall be accepted to comply with this paragraph shall operate as a forfeiture of the amount tendered as a guarantee of good faith.

Successful bidders shall pay to the officer in charge the unpaid balances of their bids upon approval of their leases by the Secretary of the Interior. Delivery of leases shall be withheld pending such payment.

The amounts tendered with all bids that are rejected shall be immediately returned to the bidders.

11. No drilling or mining shall be permitted upon any tract of land until a lease covering such tract shall have been approved by the Secretary of the Interior and delivered to the lessee.

12. All leases shall be made for a period of ten (10) years from the date of the approval thereof by the Secretary of the Interior and as long thereafter as oil and gas are found in paying quantities: *Provided*, That in no case shall the term of any lease extend beyond April eight (8), nineteen hundred and thirty-one (1931).

One lease shall be executed to cover all the designated subdivisions of the particular large tract advertised which may be awarded to the same bidder.

Leases made by corporations shall be accompanied by a single affidavit, form "E," by the secretary or president of the company, showing the authority of its officers to execute leases, bonds, and other papers.

13. No individual, firm, pipe-line company or other corporation, engaged in the business of transporting oil, shall be permitted to acquire any lease or any interest therein.

Lessees shall furnish with each lease an affidavit on form "D," which shall state specifically that he, it, or they are not engaged in the business of transporting oil, and what, if any, consideration has been paid by such lessee or on his behalf, and to whom, for the execution of the lease.

14. The action of the tribal council in connection with the acceptance of any bid or bids and the execution of any lease or leases shall be reduced to writing and properly signed and authenticated. A certificate signed by the principal chief or assistant principal chief and attested by the secretary, showing action of the council, should be attached to each lease.

15. Lessees shall furnish with each lease, at the time it is filed with the officer in charge, a bond (Form "C") with two or more acceptable sureties, or with a surety company duly authorized to act as sole surety on bonds running to the United States. Such bonds shall be in an amount equal to three thousand dollars ($3,000) for each and every designated subdivision covered by the particular lease.

All bonds shall be conditioned for the payment of all rents, royalties, and damages, if any, and for the faithful carrying out of all other provisions of the lease, and shall contain specific reference to the drilling of test wells, payment of liquidated damages in case such

test wells are not drilled within the time required, and payment of damages done to the surface of the land, as provided in section twenty-six (26) of these regulations.

The right is specifically reserved to change the amount of the bond in any particular case or to require a new bond where the Secretary of the Interior may deem it proper so to do.

16. The officer in charge may, at any time, either before or after approval of a lease, call for any additional information necessary to carry out the purpose and intent of these regulations, and such information shall be furnished within the time specified in the request therefor.

17. Should a lessee fail to furnish, within the time specified after his bid is accepted, the papers necessary to put his lease and bond in proper form for consideration, the officer in charge shall forward such lease immediately for disapproval.

## ACREAGE.

18. No person, firm, or corporation may hold at any one time under lease, assignment, drilling contract, or otherwise, more than twenty-five thousand (25,000) acres of Osage lands at present not under lease for oil or gas production; but any lessee who may surrender or in good faith transfer, in the manner prescribed in these regulations, all or any part of his holdings may acquire other lands in lieu of those surrendered or transferred.

## RENTALS AND ROYALTIES.

19. Lessees shall pay, in addition to other considerations, annual advance rentals as follows: Fifteen cents per acre for the first year; 30 cents per acre for the second year; 50 cents per acre for the third year; and $1 per acre per annum for the fourth and each succeeding year during the life of any lease: *Provided*, That all such payments of advance rentals shall be credits on royalties on production during the year for which payment of advance rental is made.

The payment of annual advance rental shall not release the lessee from the obligation to drill test wells, as required by the terms of the lease.

20. As provided in the act of June 28, 1906, supra, the President has fixed royalties on production as follows:

(*a*) On oil the rate of royalty shall be sixteen and two-thirds per-cent ($16\frac{2}{3}\%$) of the gross proceeds of all oil produced from the leased premises and such royalty shall be paid in money, based on the actual market value, not less than the guaranteed minimum value of sixty (60) cents per barrel, unless the Osage Council elects, with the approval of the Secretary of the Interior, to take the royalty in oil.

(*b*) For gas, which is sold or used other than for the development of the lands covered by the lease, the rate of royalty shall be sixteen and two-thirds per cent ($16\frac{2}{3}\%$) of the market value of such gas at the well: *Provided*, That should either the Osage Council or the Secretary of the Interior be of the opinion that the price at which the lessee sells such gas is not the true market value at the well, the Secretary of the Interior shall, after notice and hearing, determine the market value, and the lessee shall account to the lessor at the rate

fixed by the Secretary of the Interior as aforesaid. Meters shall be installed at the expense of the lessee for the purpose of measuring the supply of gas, and the accounting shall be on the basis of the supply as hown by the meter statements.

The standard rock pressure in the sale of gas shall be 2 pounds.

Where wells produce both oil and gas in commercial quantities and the gas is found in a formation sufficiently above the oil-bearing sand and has been cased off and utilized, such gas shall be gauged and the royalty determined as herein provided for gas wells. Where wells produce both oil and gas through the same casing, or gas alone in limited quantities, lessees may dispose of such gas upon payment of royalty.

Failure on the part of the lessee to use a gas-producing well which can not be profitably utilized at the rate herein described shall not work a forfeiture of his lease so far as the same relates to mining oil, but if the lessee desires to retain gas-producing privileges he shall pay a rental of one hundred dollars ($100) per annum in advance, calculated from the date of discovery of gas, on each gas-producing well, gas from which is not marketed or utilized otherwise than for operations under the lease.

In the event that any lessee during the course of a year desires to utilize commercially the gas from a well retained in accordance with the foregoing paragraph, the one hundred dollars ($100) paid as royalty shall be credited on the amount due from the lessee during the course of that year on account of the sale of gas from such well; the total amount to be paid by any lessee, however, in any one year shall be not less than one hundred dollars ($100) on each gas well on the land covered by his lease.

## PAYMENT OF RENTALS AND ROYALTIES.

21. All rentals, royalties, damages, or other amounts which may become due under leases approved in accordance with these regulations shall be paid to the superintendent of the Osage Indian School at Pawhuska, Okla. The remittances shall be in St. Louis or Kansas City exchange, except that where such exchange can not be procured post-office or express money orders will be accepted. All royalties or other payments or claims of the Osage Tribe arising under such leases shall be a lien upon the mining plant, machinery, and all minerals mined on the property leased or in which the lessee still retains any right, claim, or interest.

22. Royalties on all oil and gas produced in any month shall be paid on or before the twenty-fifth (25th) day of the month next succeeding, and the remittances shall be accompanied by sworn reports covering all operations whether there has been production or not. Lessees shall show in this statement the total amount of oil and gas sold and not merely their working interest, and also the dates of discovery and beginning of utilization of gas from gas wells.

23. The lessee may include in one sworn statement all leases upon which there is no production or upon which dry holes have been drilled.

24. Unless the Osage National Council elects to take its royalties in oil, as provided in section twenty (20) hereof, the lessee may, with the consent of the officer in charge, make arrangements with the

purchasers of oil for the payment of royalty to the superintendent of the Osage Indian School, but such arrangements, if made, shall not operate to relieve the lessee from the responsibility for the payment of the royalty, should such purchaser fail, neglect, or refuse to pay the royalty. Where lessees avail themselves of the privilege outlined in this paragraph, division orders authorizing pipe-line companies or other purchasers of oil to withhold the royalty interest shall be executed and forwarded to the officer in charge for approval before the oil from any well is run to any pipe-line company or other purchaser. Pipe-line companies shall not accept or run oil from such leases until after the approval of division orders showing that the lessee has a lease regularly approved and in effect.

## OPERATIONS.

25. Each lessee shall commence to drill at least one well on each and every leased designated subdivision within ninety (90) days and shall complete such well or wells within one year from the date of the approval of the lease by the Secretary of the Interior. After the drilling of a well is commenced, the drilling operations shall be conducted with due and reasonable diligence until such well is completed or is drilled to such depth as the oil inspector of the Osage Agency shall deem reasonable. Failure on the part of the lessee to begin, continue, or complete the drilling of the well shall be cause for cancellation or forfeiture of all or any part of the lease, as the Secretary of the Interior, in his discretion, may determine.

In addition to forfeiture of the lease for failure to drill the required test well or wells provided for in the lease, the lessee and his surety, by reason of the impossibility of accurately determining the amount of damages which will be occasioned the Osage Nation by such default, shall pay to the officer in charge for the use and benefit of the lessor, as and for liquidated damages and not as a penalty, the sum of two thousand dollars ($2,000) for each and every test well required by the lease to be drilled and not completed within one year from the date of the approval of the lease by the Secretary of the Interior, and execution of the lease shall be conclusive evidence of the assent of lessee and lessor to liquidated damages in the sum of two thousand dollars ($2,000) per well for defaults within the time limit named herein, and the lessee and his surety shall be liable for such payment, even though the Secretary of the Interior, in his discretion, should continue the lease in force and effect.

Any lessee, having drilled and completed the test well or wells required by the lease to be drilled and completed, may release and surrender all the land covered by the lease or any designated subdivision thereof, or such sections of six hundred and forty (640) acres of any designated subdivision as he may elect, on the payment of all rentals and royalties due on the date of such surrender, as provided in section forty-five (45) of these regulations.

Any lessee electing to hold his lease, or any designated subdivision thereof exceeding in area two thousand five hundred and sixty (2,560) acres, after the period of one year allowed for the drilling of one test well on each designated subdivision has expired shall drill and complete at least one additional test well on each designated

subdivision exceeding two thousand five hundred and sixty (2,560) acres within one year from and after the date of expiration of the time allowed for the drilling and completion of the first test well, or in default thereof shall pay to the officer in charge for the use and benefit of the Osage Nation by reason of the impossibility of determining the amount of damage which will be occasioned to the lessor on account of failure to drill the second test well as aforesaid the sum of two thousand dollars ($2,000), as and for liquidated damages and not as a penalty, for each second test well for which the lessee is in default, in addition to any and all other payments required by these regulations and the terms of the lease.

26. Lessees may use so much of the surface of the leased land as shall be reasonably necessary for the prospecting and mining operations required by the lease, and shall also have the right of way over and across such land to any point of prospecting or mining operations, but such use of the surface shall be permissible only under condition of least injury and inconvenience to the allottee or owner of the land. Lessees before commencing and during such operations shall pay all reasonable damages for the use of the surface land and to any growing crops thereon, or to improvements on said land, or any damage that during the life of the lease may be occasioned in any manner whatsoever by the use of the surface, to the allottee or his successor in interest or assignee, or to a lessee of the surface of said land, damages to be apportioned among the parties interested in the surface, whether as owners, lessees, or otherwise, as the parties in interest may mutually agree or as their interests may appear: *Provided*, That when the amount of such damage is not agreed upon between the parties in interest any of said parties may notify the officer in charge, whereupon such officer shall notify the parties in interest that he will after ten days from date of notice investigate the matter of damages, such notice to be sent to the lessee, allottee, or his heirs, and such other persons as may have informed the officer in charge in writing of a claim to an interest in the lands. The officer in charge shall thereupon determine the damages and apportionment thereof between the parties in interest, such determination to be final unless an appeal therefrom be taken to the Secretary of the Interior within ten (10) days from date of notice of the determination by the officer in charge. The decision of the Secretary of the Interior on appeal shall be final and conclusive on all parties. Where appeals are taken to the Secretary of the Interior the lessee may proceed with operations, pending appeal, by depositing with the officer in charge the amount fixed by him as damages, and pending action on the appeal so much of said amount as is not in dispute between the parties in interest may be disbursed. Where any party in interest is a minor or noncompetent Indian any agreement made as to damages, or failure to agree, may be investigated by both the principal chief of the Osage Tribe and the officer in charge within ten days after notification to them by any party in interest, and an appraisal and written statement in reference thereto made by the principal chief and the officer in charge in writing, said written appraisal and statements to be transmitted to the Secretary of the Interior in case of a disagreement between them or of an appeal from their determination, and the action of the Secretary of the Interior shall be final and conclusive on all parties.

27. Lessees and those acting under them shall not conduct prospecting or mining operations within or upon any homestead selection or upon land which has been cultivated thirty days or more prior to application to drill, without the written consent of the Secretary of the Interior, to be given only after a written statement showing the views of the allottee with reference thereto or after reasonable opportunity shall have been given for the allottee to be heard, and after appraisal and determination of damages shall have been agreed upon or fixed as heretofore provided with respect to other allotments. Guardians, legal or natural, may make such written statement for their Indian wards, and where no one is authorized or where no person is deemed by the officer in charge to be a proper party to speak for a minor or person of unsound mind or of feeble understanding, such written statement may be made by the principal chief of the Osage Tribe.

28. Any person, other than a lessee or an allottee or the heirs of a deceased allottee, claiming an interest in any leased tract or in damages thereto must furnish to the officer in charge a statement in writing showing his interest, and failure to furnish such statement shall constitute a waiver of notice and estop said person from claiming any part of such damages after the same shall have been disbursed.

29. Lessees will not be permitted to use any timber from any Osage lands not relieved of restrictions upon alienation except under written agreement with the owner approved by the officer in charge.

30. No well shall be drilled within fifty feet of any public highway or section line. No oil or gas well or tank shall be located within three hundred (300) feet of any building used as a dwelling, granary, shelter for stock, or established watering place, unless, in order to prevent serious loss to any lessee by reason of drainage, written permission to drill within said prohibited distance shall be given by the officer in charge after ten (10) days' notice to the allottee as herein provided. As far as practicable, all pipes shall be laid underground, so as not to interfere with agricultural or grazing privileges, and the oil inspector of the Osage Agency shall have the right of final decision in all cases as to the practicability in view of all the circumstances including the place of operations and the cost of laying such pipes underground.

31. Lessees or operators shall plug all dry or abandoned wells in accordance with the laws of the State of Oklahoma. In the event the lessee or operator shall fail to plug properly any dry or abandoned well in accordance with the laws of the State, the officer in charge may, after five (5) days' notice to the parties in interest, plug such well at the risk and cost of the lessee and his sureties. Failure to plug a dry or abandoned well as herein provided shall be a good and sufficient cause for the cancellation of the lease in the discretion of the Secretary of the Interior.

32. Whenever any lessee or operator, in drilling wells for oil or gas on lands from which coal or other minerals are being mined, finds that such well passes through any such mine, the lessee or operator shall drill the well to a depth of at least 10 feet below the vein of coal or other mineral being mined, and such well shall be cased and sealed on the outside of the casing with suitable material to the level of the floor of the mine, and each vein of coal or other mineral being mined, pierced by such well, shall be sealed in the same manner.

Upon the abandonment of any well drilled for oil or gas, which has passed through any vein of coal or other mineral, the lessee or operator shall fully protect such vein of coal or other mineral in the same manner as has been heretofore provided in section thirty-one hereof for the protection of oil or gas bearing rock or sand or in such manner as shall be satisfactory to the officer in charge.

33. All "B-S" or other refuse from tanks and wells shall be drawn off into proper receptacles at a safe distance from the tanks, well, or buildings, and disposed of by being burned; but in no case shall it be permitted to flow over the surface of the land to the injury of any surrounding property or to the polution of any stream: *Provided*, That in cases where it is impossible to burn "B-S" and other refuse, or where in the operation of a well it is necessary to pump salt water in such quantities as would damage the surface of the lands or pollute any stream, the officer in charge, after having been so notified by the lessee or operator, shall cause an examination of the conditions and shall issue instructions in each separate instance as to the manner in which the "B-S" and refuse or salt water shall be disposed of. Failure on the part of the lessee to properly care for "B-S" and other refuse, in accordance with this provision, will be sufficient cause for the cancellation of the lease by the Secretary of the Interior after notice and opportunity to be heard.

34. If in the drilling of wells both gas and oil are encountered in commercial quantities and the gas is found in a formation sufficiently above the oil-bearing sand to permit being separated from the oil by casing, such gas shall be so separated from the oil and securely shut in and preserved, and shall not be permitted to flow with the oil through the same string of casing: *Provided*, That in all those cases where a well is producing both oil and gas and it is impossible or impracticable to case the gas off from the oil, it shall then be within the discretion of the officer in charge, subject to appeal to the Secretary of the Interior, to determine whether such well shall be operated as an oil well or shall be closed in until such time as the gas may be utilized and the oil produced without waste of gas.

35. To prevent the escape of gas, lessees and operators in possession of any gas-producing well shall, within five days after penetrating the gas-bearing rock or sand, shut in and confine the gas in such well until such time as the gas shall be utilized for light, fuel, steam, or other purposes: *Provided*, That this regulation shall not apply to any well which is operated for oil, or during the process of drilling when reasonable diligence is used, or when oil is found in a lower stratum of sand and the gas found in the upper stratum is cased off and the well is operated as an oil well. Lessees or operators shall pay to the officer in charge the sum of ten dollars ($10) per day for each well during the time such well is allowed to go uncontrolled or uncared for, as provided in this section, unavoidable accidents excepted.

36. Lessees shall have the right to the free use of so much of the oil and gas on any leased tract as shall be fairly necessary for light and fuel in mining operations conducted on such tract, but such privilege shall be restricted to an economical use by the means of modern appliances: *Provided*, That should oil or gas be furnished from any leased tract to the lessee, driller, or operator on another leased tract, the lessee furnishing oil or gas for mining operations on

such other leased tract not producing sufficient oil or gas to conduct operations thereon shall pay to the officer in charge the royalties prescribed in the lease.

37. Lessees and those operating under them who may use natural gas for outside illumination upon the premises covered by a lease shall be required to use the device known as a "Storm burner," or other burner which consumes no more gas than the "Storm burner." Lamps shall not be lighted earlier than five (5) o'clock in the afternoon and shall be extinguished not later than eight (8) o'clock each morning, and the officer in charge shall be the sole judge as to the number of lights to be permitted upon and around any leased tract, subject to appeal therefrom to the Secretary of the Interior. Stopcocks shall be placed on all pipes used for conveying gas to burning devices of any character and the gas shall be shut off at all times when not in use.

38. Lessees and those operating under them, using natural gas for fuel in steam boilers, shall provide a standard economical burner adapted for steam boilers and shall also provide such boilers with standard boiler regulators so connected that the steam pressure will regulate the flow of gas. The boiler shall also be provided with a smokestack not less than ten (10) feet in height.

39. Lessees shall provide proper tankage of suitable shape for accurate measurement into which production of crude oil shall be conducted direct from wells through pipes or other closed connections. If the contents of such tanks are removed from the leased premises or disposed of in any manner other than to a purchaser to whom a division order has been approved, authority therefor must first be procured from the officer in charge, accurate measurement made and the production reported and royalty thereon paid in the usual manner.

40. In cases of emergency where the capacity of new wells is such that lessees are unable immediately to provide proper tankage, production may, with the approval of the officer in charge, be conducted to open ponds or earthen tanks, but in no case shall any embankment exceed fifteen (15) feet in height. Such ponds or earthen tanks shall be so constructed as to minimize the danger of overflow or collapse or damage to crops on adjacent property.

41. Crude oil run into earthen tanks in cases of emergency shall not be allowed to remain in such earthen tankage for a longer period than fifteen (15) days, except that where lessees desire so to store their oil, such tankage may be used after the oil has been properly gauged and royalty paid thereon when the tanks are so constructed as to remove all reasonable danger of fires, overflow, and damage to other property. The right is reserved for the officer in charge to supervise the construction of earthen tanks.

42. Oil to be temporarily held or stored in earthen tankage must be run from the wells into receiving tanks capable of accurate measurement, and then gauged before being turned into earthen tankage.

43. Oil shall not be sold to a pipe-line company until a division order is approved by the officer in charge. Should the lessee desire to sell or remove oil from the leased premises in any other manner, such sale or removal shall not be made until first authorized by the officer in charge. The lessee or his authorized representative shall actually be present when oil taken under division orders is run by the pipe-line company and the lessee shall be responsible for the

correct measurement and report of oil so run; and shall be liable to account on the basis of the pipe-line reports, plain error or mistake excepted, otherwise the approval of division orders may be revoked.

## ASSIGNMENTS.

44. Approved leases or any interest therein may be sublet, transferred, or assigned with the consent and approval of the Secretary of the Interior and not otherwise. Subleases, transfers, or assignments, when so approved, shall be subject to the terms and conditions of the original leases and the regulations under which such leases were approved as well as to such additional requirements as the Secretary of the Interior may prescribe. The sublessee, transferee, or assignee shall furnish with his sublease, transfer, or assignment a satisfactory bond as hereinbefore prescribed in connection with leases.

Any attempt to sublease, transfer, or assign an approved lease or any interest therein without the consent and approval of the Secretary of the Interior shall be absolutely void and shall subject the original lease to cancellation in the discretion of such Secretary.

## SURRENDER AND CANCELLATION.

45. When a lessee makes application for the cancellation of a lease in whole or in part, all royalties or rentals due up to and including the date of the application for cancellation must be paid, and that part of the lease delivered the lessee shall be surrendered before such application will be considered. In the event a lease is surrendered for cancellation, in whole or in part, after a new lease year has been entered upon, the lessee and his surety shall be liable for the advanced rentals required to be paid under the lease for that year, and no part of such rentals which may have been paid shall be refunded.

## GENERAL.

46. All lessees shall maintain offices or have representatives at Pawhuska, in Osage County, Okla.

47. Lessees, sublessees and assignees must submit to the officer in charge on January first (1) of each year, and at such other times as may be required by the Secretary of the Interior, a statement containing the information called for in paragraphs "a" and "f" of section eight (8) of these regulations and also showing any changes in officers or changes in or additions to stockholders. At any time individual stockholders may be required to show to the satisfaction of the Secretary of the Interior in what companies or with what persons or firms they are interested in oil or gas mining leases on the Osage Reservation and whether they hold such stock or interests for themselves or in trust.

48. Lessees shall allow the agents and representatives of the lessor, or any authorized representative of the Interior Department, to enter, from time to time, upon and into all parts of the leased premises for the purpose of inspection, and shall further agree to keep a full and correct account of all operations and make reports thereof, as herein required, and their books and records showing manner of operations and persons interested shall be open at all times for the examination

of such officers of the department as shall be instructed by the Secretary of the Interior to make such examinations.

49. All persons or corporations drilling wells under approved leases, subleases, or assignments shall keep a true and correct record of each well, including the log of same, and shall furnish to the officer in charge a copy of such log not later than 15 days after such well has been drilled, duly certified to under oath by the operator or his representative, and the said operator or his representative shall furnish a statement under oath as to whether the rig timbers were procured on the Osage Reservation; and, if so, state the name of the allottee or other person from whom the said rig timbers were purchased, and shall also furnish any other information the officer in charge may desire relative to the drilling of said well, or the procurement of timber used in connection with such operation.

50. Wherever notice is provided for in these regulations it shall be sufficient if notice has been mailed to the last-known place of address of the party, and time shall begin to run with the day next ensuing after the mailing or from the date of delivery of personal notice; but where the party is outside the State of Oklahoma the officer in charge may, in his discretion, increase the time allowed.

51. Lessees are required, when so requested, to file a plat of their leases showing exact locations of all producing oil or gas wells, dry holes, proposed locations, tanks, power houses, pumping stations, etc. Such plats should also show locations of dry or producing wells upon the adjoining tracts, so far as known to the lessee.

52. The Osage Nation shall have the right to the free use of gas for all school and other buildings belonging to the Osage Nation from any well or wells that may be discovered: *Provided*, That no expense shall be incurred by the lessee in piping gas for such purposes and the lessee shall not be required to pay royalty on such gas.

53. All gas discovered and produced under any lease made in accordance with these regulations shall be utilized within the limits of Osage County, except with the consent of the Osage National Council, approved by the Secretary of the Interior.

54. Except in cases of emergency which shall not exceed ten (10) days, not more than sixty per cent (60%) of the capacity of any gas well shall be utilized.

## FORMS.

55. Bids, leases, and other papers must be upon forms prepared by the department, and the superintendent of the Osage Indian School, Pawhuska, Okla., will furnish prospective lessees with such forms at a cost of one dollar ($1) per set. Copies of such forms are printed herewith.

Form A. Bid and application for oil and gas lease, including financial showing.
Form B. Oil and gas leases.
Form C. Bond.
Form D. Affidavit of lessee and proof of bonus.
Form E. Authority of officers to execute papers.
Form F. Assignment.

56. On the failure of any lessee, sublessee, or assignee to comply with any regulation or any obligation in the lease, sublease, or assignment, the Secretary of the Interior may cancel and annul such lease

without resorting to the courts and without any further proceeding: *Provided*, That the party or parties charged with such violation shall be first given not less than thirty (30) days' notice to show cause why such lease should not be canceled and annulled or other order made with reference thereto.

These regulations are subject to change or alteration, at any time, by the Secretary of the Interior.

DEPARTMENT OF THE INTERIOR,
OFFICE OF INDIAN AFFAIRS,

The foregoing regulations are respectfully submitted to the Secretary of the Interior with the recommendation that they be approved.

F. H. ABBOTT,
*Assistant Commissioner of Indian Affairs.*

DEPARTMENT OF THE INTERIOR, *July 3, 1912.*
Approved:
SAMUEL ADAMS,
*First Assistant Secretary.*

# FORMS.

## Form A.—BID AND APPLICATION FOR OIL AND GAS MINING LEASE, OSAGE RESERVATION.

——— ———, 191—.

The SECRETARY OF THE INTERIOR
(Through United States Indian Superintendent),
*Osage Indian Agency, Pawhuska, Okla.*

The undersigned, hereinafter called the applicant, hereby offers a bonus of $——— per acre for a lease for oil and gas mining purposes on designated subdivisions of tract ——— of Osage Indian lands described as: Subdivision ———, ——— T. — N., R. — E., as advertised under date of ———, 191—. There is inclosed certified check for $———, the same being 10 per cent of the amount of bonus offered plus the advance annual rental of 15 cents per acre for the first year. In event of the acceptance of this bid the applicant hereby agrees to be bound by the conditions and requirements set forth in the regulations prescribed for the leasing of said lands, and that on failure of the applicant so to do the amount herewith shall be forfeited to the Osage Nation of Indians, and such forfeiture shall not be a waiver of any right of action the Osage Tribe may have. It is further agreed by the applicant that this bid, if accepted, shall be considered a part of the lease which shall be executed in accordance herewith.

The applicant guarantees to pay royalty on a minimum price of 60 cents per barrel on all oil produced.

Remarks: ———.

The applicant solemnly swears that the lease, for which bid and application is hereby made, is to be taken in good faith in the interest and for the exclusive benefit of the applicant, and not for speculation or transfer, or as agent for, or in the interest of or for the benefit of any other person, firm, corporation, or association; that no other person, firm, corporation, or association has any interest, present or prospective, directly or indirectly, therein, and that there is no understanding or agreement, expressed or implied, by which the land leased, or any interest in or under the lease by working or drilling contract or otherwise, is to be used, sublet, assigned, or transferred, without the consent of the Secretary of the Interior first obtained, but that it is to be taken for the purpose of operation and development under the direction, supervision, and control of the applicant, except as herein stated.

Affiant solemnly swears that the applicant is not interested, either directly or indirectly, in oil and gas mining leases in that portion of the Osage reservation to be leased under regulations of July 3, 1912, except with the following-named persons, firms, corporations, or associations, and that the aggregate of all these interests, together with the leases held by the applicant alone, and that applied for herein, will not exceed 25,000 acres:

——— ——— Name. ——— ——— Post-office address.

The applicant hereby states that his general business experience for the past five years has been as follows: ———

The applicant's financial condition at this time is ———.

The applicant's resources are as follows: ———, and he has available at least $——— for the development of the land for which this application is made.

The applicant, a corporation, hereby shows that at this time it has $——— paid up capital and $——— in its treasury available for oil and gas operations. (Note a.)

It is hereby agreed that on the issue, transfer, or cancellation of stock of corporations, or changes in officers, prompt reports will be made thereof as required by the regulations.

The books and accounts of the applicant covering the business to be carried on under the lease, if approved, will be kept at ———, in the custody of ———.

——— ——— (References, Note b) ——— ——— (Post office address)

Executed this ——— day of ———, 19—, at ———, ———. ——— ———

——— ———

Before me, a notary public in and for the county of ———, State of ———, personally appeared ——— ———, who, being first duly sworn according to law, deposes and says that the foregoing bid and application was signed by proper authority in good faith for the purposes therein stated, and that the statements made therein are true as he verily believes.

——— ———
*Notary Public.*

[SEAL.]
My commission expires ———.

(a) Corporations shall furnish with their first application the additional financial showing required by the regulations.
(b) Bank references are preferred.

## Form B.—OIL AND GAS MINING LEASE, OSAGE RESERVATION, OKLAHOMA.

This indenture of lease made and entered into, in quadruplicate, on this ——— day of ———, A. D. 19—, by and between the Osage Tribe of Indians, by ——— ———, its principal chief, under authority conferred by the Osage Tribal Council, of the State of Oklahoma, party of the first part, hereinafter designated as lessor, and ——— ——— of ——— ———, party of the second part, hereinafter designated as lessee—, under and in pursuance of the provisions of section 3 of the act of Congress approved June 28, 1906 (34 Stat., 539, 543), witnesseth:

1. The lessor, for and in consideration of one dollar, the receipt whereof is acknowledged, and of the royalties, covenants, stipulations, and conditions hereinafter contained, and hereby agreed to be paid, observed, and performed by the lessee—, does hereby demise, grant, lease, and let unto the lessee—, for the term of ten years from the date of the approval hereof by the Secretary of the Interior, and as long thereafter as oil or gas is found in paying quantities, provided, however, that the term of this lease shall not extend beyond April 8, 1931, all the oil deposits and natural gas in or under the following designated subdivisions of land, of tract ———, lying and being within the Osage Reservation, Osage County, State of Oklahoma, described as: Subdivision ——— ———, T. — N., R. — E. (insert description in full in each case), of the Indian meridian, and containing in the aggregate ——— acres, more or less, with the exclusive right to prospect for, extract, pipe, store, and remove oil and natural gas, and to occupy and use so much only of the surface of said land as may be reasonably necessary to carry on the work of prospecting for, extracting, piping, storing, and removing such oil and natural gas; also the right to obtain from wells or other sources on said land, by means of pipe lines or otherwise, a sufficient supply of water to carry on said operations, and also the right to use, free of cost, oil and natural gas as light and fuel so far as necessary to the development and operation of said property.

2. The lessee— hereby agree— to pay or cause to be paid to the superintendent of the Osage Indian School, at Pawhuska, Okla., for the lessor, as royalty, 16⅔ per cent of the gross proceeds of all crude oil extracted from the said land, such royalty to be paid in money based on the actual market value, unless the Osage National Council, with the approval of the Secretary of the Interior, shall elect to take the royalty in oil, payment to be made at the time of sale or removal of the oil. It is understood and agreed, however, that should the actual market value of such oil be less than 60 cents per barrel, the lessee— guarantee— to pay royalty based on the minimum price of 60 cents per standard barrel. And the lessee— agree— to pay as royalty on each gas-producing well utilized otherwise than as provided herein 16⅔ per cent of the market value of the gas at the well: *Provided*, That should either the Osage National Council or the Secretary of the Interior be of the opinion that the price at which the lessee— sell— such gas is not the true market value at the well, the Secretary of the Interior shall, after notice and hearing, determine the market value and the lessee— shall account to the lessor at the rate fixed by the Secretary of the Interior as aforesaid. The lessee shall establish meters at ——— expense to measure the supply of gas received from the leased premises, and the accounting shall be on the basis of the supply as shown by such meter statements. It is understood and agreed by the parties hereto that the standard rock pressure for the sale of gas from this lease shall be two pounds. The Osage Nation shall have the right to the free use of gas for school and public buildings of the Osage Nation from any well or wells that may be discovered on the leased lands: *Provided*, That no expense shall be incurred by the lessee— in piping gas for such purposes, and the lessee— shall not be required to pay royalty on such gas. Failure on the part of the lessee— to use a gas-producing well, which can not profitably be utilized at the rate herein prescribed, shall not work a forfeiture of this lease so far as the same relates to mining oil, but if

the lessee— desires to retain gas-producing rights or privileges, lessee— shall pay a rental of one hundred dollars per annum in advance on each gas-producing well, the gas from which is not marketed or not utilized otherwise than for operations under this lease, and the same shall be credited on gas royalties due and payable, if, during the year for which advance gas royalties are paid lessee— elects to market the gas.

3. The lessee— shall pay to the officer in charge, as advance annual rental on this lease, fifteen cents per acre in advance for the first year; thirty cents per acre in advance for the second year; fifty cents per acre in advance for the third year; and one dollar per acre per annum, in advance for the fourth and each succeeding year thereafter, it being understood and agreed that the said sums of money so paid during any year in which royalties on production are payable, shall be a credit on the stipulated royalties due from the lessee— if such royalties on production exceed the advance annual rental for that year.

4. The lessee— covenant— and agree— to commence to drill at least one well on every leased designated subdivision within ninety days and to complete such well or wells within one year from the date of the approval of this lease by the Secretary of the Interior. After the drilling of a well is commenced the drilling operation shall be conducted with due and reasonable diligence until such well is completed or is drilled to such depth as the oil inspector of the Osage Nation shall deem reasonable. In addition to forfeiture in the sole discretion of the Secretary of the Interior of the lease for failure to drill and complete the required test well or test wells on each and every designated subdivision as aforesaid, within the time provided by this lease and the regulations relating thereto, the lessee— and ——— surety, by reason of the impossibility of accurately determining the amount of damages which will be occasioned the Osage Nation by such default, shall pay to the superintendent of the Osage school for the use and benefit of the lessor as and for liquidated damages, and not as a penalty, the sum of two thousand dollars ($2,000) for each and every test well required to be drilled and not completed within one year from the date of approval of this lease by the Secretary of the Interior and the execution of this lease shall be conclusive evidence of the assent of lessor and lessee to liquidated damages in the sum of two thousand dollars ($2,000) per well for defaults within the time limit named herein. The lessee—, after having drilled and completed the test well or wells required to be drilled and completed, may release and surrender all the land covered by the lease, or any designated subdivision thereof, or such sections of six hundred forty acres of any designated subdivision as he may elect on the payment of all rentals and royalties due on the date of such surrender, as provided in paragraph eight of this lease. Should the lessee— elect to hold the lease or any designated subdivision thereof exceeding in area 2,560 acres after the period of one year allowed for the drilling of one test well on each designated subdivision has expired, —he— shall drill and complete at least one additional test well on each designated subdivision exceeding in area 2,560 acres within one year from and after the date of expiration of the time allowed for the drilling and completion of the first test well, or in default thereof, shall pay to the superintendent of the Osage Indian School for the use and benefit of the Osage Nation by reason of the impossibility of determining the amount of damage which will be occasioned to said nation on account of failure to drill such second test well as aforesaid the sum of two thousand dollars ($2,000), as and for liquidated damages and not as a penalty, for each second test well for which the lessee— may be in default, in addition to any and all other payments required by the regulations and the terms of this lease. Failure on the part of the lessee— to comply strictly with the provisions of this paragraph shall constitute a violation of one of the substantial terms and conditions of this lease and shall shall operate as a forfeiture of the lessee— rights and subject the lease to cancellation in the discretion of the Secretary of the Interior, but such forfeiture and cancellation shall not operate to relieve or release the lessee— and surety from the payment of liquidated damages as herein provided for even though the Secretary of the Interior shall, in his discretion, continue the lease in force and effect.

5. The lessee— may use so much of the surface of the land as may be reasonably necessary for prospecting and mining operations required by this lease and shall also have the right of way over and across such land to any point of prospecting or mining operations, but such use of the surface shall be permissible only under the condition of least injury and inconvenience to the allottee and owner of the land. Lessee, before commencing and during such operations shall pay all reasonable damages for the use of such surface of the land and to any growing crops thereon, or to any improvements on such land or any damages that during the life of this lease shall be occasioned in any manner whatsoever to the allottee or his successor in interest or assignee, or to the lessee of the surface of the land by the use of the surface, such damages to be apportioned among the parties interested in the surface, whether as owners lessees, or otherwise, as such parties may mutually agree or as their interests may appear: *Provided*, That when the damages can not be agreed upon between the parties in in-

terest, the amount of such damage shall be determined in accordance with the regulations approved by the Secretary of the Interior.

6. The lessee shall carry on development and operations in a workmanlike manner, commit no waste on the said land, suffer none to be committed upon the portion in ——— occupancy or use, take good care of the same, and promptly surrender and return the premises upon the termination of this lease to whomsoever shall be lawfully entitled thereto, unavoidable casualties excepted; shall not remove therefrom any buildings or permanent improvements erected thereon during the said term by the said lessee–, but said buildings and improvements shall remain a part of said land and become the property of the owner of the surface of the land, excepting the tools, derricks, boilers, boiler houses, pipe lines, pumping and drilling outfits, tanks, engines and machinery, and the casing of all dry or exhausted wells, which shall remain the property of the lessee–, and may be removed at any time within sixty days after the termination of the lease by forfeiture or otherwise, provided the payments agreed upon by this lease and the regulations applicable thereto have been made to the lessor but not otherwise; shall not permit any nuisance to be maintained on the premises under lessee–, control, nor allow any intoxicating liquors to be sold or given away for any purposes on such premises; shall not use such premises for any other purpose than those authorized in this lease; and before abandoning any well shall securely plug the same, so as effectually to shut off all water from the oil-bearing stratum, as provided in the regulations prescribed by the Secretary of the Interior.

7. The lessee– shall keep an accurate account of all oil and gas mining operations, showing the sales, prices, dates, purchasers, and the whole amount of oil mined or removed and the quantity of gas sold and the gross receipts derived therefrom, and shall make sworn reports thereof as required by the regulations, and all sums due as royalty, advance rental, liquidated or surface damages shall be a lien on all implements, tools, movable machinery, and all other personal chattels used in operating said property, and upon all of the unsold oil obtained from the land herein leased, as security for payment of said sums.

8. The lessee– may at any time, by paying to the Indian superintendent all amounts then due as provided herein and the further sum of $1, surrender all or any part of the land covered by this lease and have the lease canceled as to the land surrendered and be relieved from all further obligations and liabilities thereunder as to the part surrendered: *Provided*, That in the event the lease is surrendered for cancellation in whole or in part after a new lease year has been entered upon, the lessee– and the surety shall be held liable for the advance rentals required to be paid for that year, and no part of such rentals which may have been paid shall be refunded.

9. This lease shall be subject to the regulations of the Secretary of the Interior, now or hereafter in force, relative to such leases, all of which regulations are made a part and condition of this lease: *Provided*, That no regulations made after the approval of this lease, affecting either the payments or damages thereunder, shall operate to affect the terms and conditions of this lease.

10. Upon the violation of any of the terms and conditions of this lease, the Secretary of the Interior shall have the right at any time after thirty (30) days' notice to the lessee—specifying the terms or conditions violated, to declare this lease null and void.

11. Before this lease shall be in force and effect the lessee—shall furnish a bond with responsible surety to the satisfaction of the Secretary of the Interior, conditioned for the performance of this lease, which bond shall be deposited and remain on file in the Indian Office.

12. Assignment of this lease or any interest therein may be made with the approval of the Secretary of the Interior and not otherwise.

13. Each and every clause and covenant of this indenture shall extend to the heirs, executors, administrators, successors, and lawful assigns of the parties hereto.

In witness whereof, the said parties have hereunto subscribed their names and affixed their seals on the day and year first above mentioned.

Two witnesses to execution by lessor:

——— ——— [SEAL].

——— ———

Post Office, ——— ———.

Attest ——— ———

——— ———.

Post Office, ——— ———.

Two witnesses to execution by lessees:

——— ——— [SEAL]

——— ———.

Post Office ——— ———

Attest ——— ———

——— ———

Post Office, ——— ———.

ACKNOWLEDGMENT OF PRINCIPAL CHIEF.

STATE OF ———, *County of* ———, *ss:*

Before me, ——— ———, on this ——— day of ———, 19—, personally appeared ——— ———, to me known to be the ——— principal chief of the Osage Nation, and the identical person who executed the within and foregoing lease, and acknowledged to me that he executed the same as his voluntary act and deed on behalf of the Osage Nation and in accordance with the authority given him by the Osage National Council.

——— ———,

——— ———.

(Official title).

ACKNOWLEDGMENT OF INDIVIDUAL.

STATE OF ———, *County of* ———, *ss:*

Before me, a notary public, in and for said county and State, on this ——— day of ———, 19—, personally appeared ——— ———, to me known to be the identical person—who executed the within and foregoing lease, and acknowledged to me that ——— executed the same as ——— free and voluntary act and deed for the uses and purposes therein set forth.

——— ———,

*Notary Public.*

My commission expires ———.

ACKNOWLEDGMENT OF CORPORATION.

STATE OF ———, *County of* ———, *ss:*

On this ——— day of ———, A. D. 19—, before me, a ——— within and for the ——— and ———, aforesaid, personally appeared ——— ——— and ——— ———, to me personally known, who being by me duly sworn, did each say that ——— ——— is the ——— president and ——— ——— is the ——— secretary of ———, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said ——— ——— and ——— ——— duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this ——— day of ———, 19—.

——— ———,

——— ———.

My commission expires ———.

DEPARTMENT OF THE INTERIOR,
U. S. INDIAN SERVICE,
OSAGE AGENCY,
*Pawhuska, Okla.*, ———, *19*—.

The within lease is forwarded to the Commissioner of Indian Affairs with recommendation that it be ———. See my report of even date.

——— ———,

——— ———.

(Official title.)

OFFICE OF INDIAN AFFAIRS,
*Washington, D. C.*, ———, *19*—.

Respectfully submitted to the Secretary of the Interior with recommendation that it be ———.

——— ———,

*Commissioner.*

WASHINGTON, D. C., ———, 19—.

The within lease is ———.

——— ———,

*Secretary of the Interior.*

Filed for record this ——— day of ———, 19—, at ——— o'clock — m.

——— ———,

By ——— ———.

## Form C.—BOND.

(To accompany leases for oil and gas mining purposes, Osage Reservation, Okla.)

Know all men by these presents that ——— ———, of ———, as principal, and ——— ———, of ———, as suret—, are held and firmly bound unto the United States of America in the sum of ——— dollars, lawful money of the United States, for the payment of which, well and truly to be made, we bind ourselves, and each of us, our and each of our heirs, successors, executors, or administrators, jointly and severally, firmly by these presents.

Sealed with our seals and dated this ——— day of ———, 19—.

The condition of this obligation is such that:

Whereas the above-bounden ——— ———, as principal —, entered into a certain indenture of lease, dated ———, 19—, with the Osage tribe of Indians, for the lease of certain lands described as:

Subdivision —.——— T. — N., R. — E. (Insert description in full in each case.) of the Indian Meridian, and located in tract ——— in the Osage Reservation, Okla., for oil and gas mining purposes for the period of 10 years from the date of approval thereof by the Secretary of the Interior and as long thereafter as oil and gas are found in paying quantities on said land: *Provided*, That in no event should the term of said lease extend beyond April 8, 1931; and

Whereas, the above-bounden ——— ——— did covenant and agree in said lease to pay advance rentals annually at the rate of fifteen cents per acre for the first year, thirty cents per acre for the second year, fifty cents per acre for the third year, and one dollar per acre per annum for the fourth and each succeeding year during the life of said lease, and to pay royalties on production at the rate of sixteen and two-thirds per cent of the gross proceeds of all oil produced from the leased premises based on the actual market value, but not in any event to be less than sixty cents per standard barrel and sixteen and two-thirds per cent of the market value at the well of all gas sold or utilized other than for operations under the lease; and

Whereas, the above-bounden ——— ——— did covenant and agree in said lease to drill and complete one test well on each designated subdivision covered by said lease within one year from the date of approval of the lease by the Secretary of the Interior, or in default thereof, to pay to the Osage Nation as liquidated damages and not as a penalty the sum of two thousand dollars ($2,000) for each and every test well not drilled and completed within one year after the date of the approval of the lease as aforesaid and the same sum for failure to drill a second test well within two years on any retained subdivision exceeding 2,560 acres in extent; and

Whereas, the above-bounden ——— ——— did covenant to pay all reasonable damages for the use of the surface of the land and to any improvements and growing crops thereon in accordance with the terms of said lease and the regulations prescribed by the Secretary of the Interior;

Now, therefore, if the above-bounden ——— shall faithfully carry out and observe all the obligations assumed in said indenture of lease by ———, shall pay all rentals and royalties as the same may become due, shall pay liquidated damages on failure to drill the test well or test wells as required by said lease, shall pay all damage to the surface of the land or to any growing crops or improvements thereon caused by prospecting and mining operations, and shall observe all the laws of the United States, and regulations made, or which shall be made thereunder, for the Government of trade and intercourse with Indian tribes, and all the rules and regulations that have been, or may be lawfully prescribed by the Secretary of the Interior relative to leases on lands in the Osage Reservation, Oklahoma, then this obligation shall be null and void; otherwise to remain in full force and effect.

Signed and sealed in the presence of—

Witnesses: [a]

——— ———
Post office ——— ——— ——— ——— [SEAL.]

——— ———
Post office ——— ———

——— ———
Post office ——— ——— ——— ——— [SEAL

——— ———
Post office ——— ———

——— ———
Post office ——— ——— ——— ——— [SEAL.]

——— ———
Post office ——— ———

[a] Two witnesses to all signatures.

## Form D.—AFFIDAVIT OF LESSEE, PROOF OF BONUS, AND NO DEVELOPMENT.

(Must in all cases be properly executed and accompany lease when filed.)

STATE OF ———, *County of* ———, *ss:*

I, ——— ———of, ———, being first duly sworn according to law, state upon oath that I am the lessee or the duly authorized agent of the lessee in a lease between the Osage Tribe of Indians and ——— ———, for ——— mining purposes covering the following described land in the Osage Reservation, Oklahoma: ——— that I know of my own personal knowledge that the lessee is not engaged in the transportation of oil except as incidental to any refining or production of oil by lessee; that the only amount to be paid for the execution of said lease, directly or indirectly, by the lessee to ——— ———, or any one for him, is $———, of which $——— has been paid to ——— ———, and $——— payable on ———; that there have been no mining operations of any kind whatsoever by the lessee or any one for him upon the premises included in the above-described lease; and that said lease will be completed under the regulations of the Secretary of the Interior without unnecessary delay.

Sworn and subscribed to before me this ——— day of ———, 19—.

[L. S.]

——— ———,
*Notary Public.*

My commission expires ———.

CERTIFICATE OF INDIAN SERVICE OFFICER.

I, ——— ———, hereby certify that the above statement is true and correct; that I have received $——— from ——— ——— as bonus consideration for the execution of said lease, which amount has been taken up in my official accounts for the ——— quarter, fiscal year 19—, and that there is still due on said bonus consideration $——— payable on ———, which I will take up in my official accounts when received.

——— ———,
——— ———
(Official title.)

## Form E.—EVIDENCE SHOWING AUTHORITY OF OFFICERS TO EXECUTE LEASES, BONDS, AND ACCOMPANYING PAPERS.

Whereas, ——— ——— is the duly elected, qualified, and acting ——— president of ——— ———, a corporation duly organized and existing under the laws of ———, and

Whereas ——— ———, is the duly elected, qualified, and acting ——— secretary of said corporation, and

Whereas, both the said persons were ——— president and ——— secretary, respectively, on the ——— day of ———, 19—, at which time they executed an oil and gas mining lease with the Osage Tribe of Indians covering certain lands in the Osage Reservation, Okla.

Now, therefore, I, the undersigned ——— of said corporation, do solemnly swear that the mining lease mentioned above was duly and regularly entered into by the officers of said corporation named, by and under the authority of the board of directors of said corporation, and in accordance with the by-laws thereof; and further that said officers were duly authorized and empowered on behalf of the corporation named to execute any and all bonds, applications, or other papers required in connection with said mining lease.

I further certify that the action of said officers in executing the papers mentioned on behalf of said corporation, binds said corporation to a full and complete performance of any and all obligations contained therein.

Dated at ———, this ——— day of ———, 19—.

[CORPORATE SEAL.]

——— ———.

Subscribed and sworn to before me this ——— day of ———, 19—.

——— ———.
*Notary Public.*

My commission expires ———.

NOTE.—To be executed by secretary or president—secretary in all cases where possible—and in every case to have corporate seal affixed.

## Form F.—ASSIGNMENT OF OIL AND GAS MINING LEASE.

[Must be executed in quadruplicate.

Whereas the Secretary of the Interior has heretofore approved an oil and gas mining lease, dated ———, 19—, entered into by and between the Osage tribe of Indians, lessor, and ——— ———, lessee, covering the following-described land in the Osage Reservation, Oklahoma: ———.

Now, therefore, for and in consideration of the sum of ——— dollars ($———), the receipt of which is hereby acknowledged, the said ——— ———, the lessee in the above-described lease, hereby bargains, sells, transfers, assigns, and conveys ——— right, title, and interest of the lessee in and to said lease, subject to the approval of the Secretary of the Interior, to ——— ———.

In witness whereof the said lessee has hereunto set — hand and seal this ——— day of ———, 19—.

——— ———.
——— ———.
——— ———.

### ACKNOWLEDGMENT OF INDIVIDUAL.

STATE OF ———, *County of* ———, *ss:*

Be it remembered that on this day came before me, the undersigned ——— ———, within and for the ——— ———, duly commissioned and acting as such ———, to me personally well known, and stated that ——— executed the foregoing and annexed instrument for the consideration and purposes therein mentioned and set forth; and I do hereby so certify.

Witness my hand and seal as such ——— on this ——— day of ———, 19—.

——— ———,
——— ———.

My commission expires ———.

### ACKNOWLEDGMENT OF CORPORATION.

STATE OF ———. *County of* ———, *ss:*

On this ——— day of ———, A. D. 19—, before me, a ——— within and for the ——— and ——— aforesaid, personally appeared ——— ——— and ——— ———, to me personally known, who, being by me duly sworn, did each say that ——— ——— is the ——— president and ——— ——— is the ——— secretary of ———, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said ——— ——— and ——— ——— duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this ——— day of ———, 19—.

——— ———,
——— ———

My commission expires ———.

### ACCEPTANCE BY ASSIGNEE.

The assignee in the above and foregoing assignment, made subject to the approval of the Secretary of the Interior, hereby accepts such assignment and agrees to fulfill all the obligations, conditions, and stipulations in said described indenture of lease, when assigned, and the rules and regulations of the Secretary of the Interior, so far as applicable thereto, and to furnish proper bond guaranteeing a faithful compliance with said lease and this agreement.

In witness whereof the said assignee has hereunto set — hand and seal this ——— day of ———, 19—.

——— ———
——— ———
——— ———

CONSENT OF SURETY.

The ——— of ———, surety for ——— ——— on the bond accompanying the lease above described, hereby consents to the assignment and transfer of said lease as above made ———.

Dated at ——— this ——— day of ———, 19—.

——— ———
——— ———
——— ———

DEPARTMENT OF THE INTERIOR,
*Washington, D. C.*, ———, *19*—.

Approved.

——— ———
*Secretary.*

NOTE.—If bond accompanying the original lease is to remain in full force and effect, it must be specifically so stated in the consent of the surety company. The consent of the surety company need only be executed on the original copy of the assignment.

O