# REGULATIONS TO GOVERN THE LEASING OF LANDS IN THE OSAGE RESERVATION, OKLA., FOR OIL AND GAS MINING PURPOSES.

*Approved, August 26, 1915.*

Section 3 of the act approved June 28, 1906 (34 Stat. L., 539–543), provides:

That the oil, gas, coal, or other minerals covered by the lands for the selection and division of which provision is herein made are hereby reserved to the Osage Tribe for a period of twenty-five years from and after the eighth day of April, nineteen hundred and six; and leases for all oil, gas, and other minerals, covered by selection and division of land herein provided for, may be made by the Osage Tribe of Indians through its tribal council, and with the approval of the Secretary of the Interior, and under such rules and regulations as he may prescribe: *Provided*, That the royalties to be paid to the Osage Tribe under any mineral lease so made shall be determined by the President of the United States: *And provided further*, That no mining of or prospecting for any of said mineral or minerals shall be permitted on the homestead selections herein provided for without the written consent of the Secretary of the Interior: *Provided, however*, That nothing herein contained shall be construed as affecting any valid existing lease or contract.

To carry this provision of law into effect, the following forms and regulations are prescribed to govern the leasing of such lands for oil and gas mining:

## DEFINITIONS.

The following expressions wherever used in the lease and regulations shall have the meaning now designated, viz:

SUPERINTENDENT: The superintendent of the Osage Agency, Pawhuska, Okla., in charge of the Osage Agency and Reservation, or any other person who may be in charge of such agency and reservation, and it shall be his duty to enforce compliance with these regulations.

INSPECTOR: Any person appointed as inspector of oil and gas wells, or who may be designated by the Secretary of the Interior or the Commissioner of Indian Affairs to supervise oil or gas operations on Osage lands under the direction of the superintendent.

FOSTER LEASE: That contract made on March 16, 1896, between the Osage Tribe of Indians and Edwin B. Foster, and extended by the act of March 3, 1905 (33 Stat. L., 1061), as to approximately 680,000 acres.

SUBLESSEE: Any person, firm, or corporation which has any leasehold interest in Osage oil and gas lands acquired under the Foster lease.

SUBLEASE: Any land or any leasehold interest in any land acquired under the Foster lease.

OIL LESSEE: Any person, firm, or corporation to whom an oil mining lease is made under these regulations.

GAS LESSEE: Any person, firm, or corporation to whom a gas lease is made under these regulations.

ARBITRATION: Each of the parties to the controversy, dispute, or matter to be adjusted shall designate one representative, and the representatives so designated shall immediately together appoint a third person, and on failure to agree within five days upon a third person, the superintendent may designate same. These three shall constitute a board of arbitration and the action of such board shall be final and conclusive between the parties. The expense of arbitration in any case shall be divided between the parties in interest in equal proportions.

CASING-HEAD GAS: The gas coming through the casing when the well is equipped for pumping oil.

SPECIFIC PROVISIONS RELATING TO NEW LEASES OF LANDS COVERED BY THE FOSTER LEASE.

1. Each and every person, firm, partnership, joint-stock association, corporation, and each and every combination of person and corporation, partnership and corporation, or corporation and corporation holding subleases and assignments under the Foster lease approved by the Secretary of the Interior, shall be considered and treated as a distinct and separate entity independent of his or their affiliations with any other sublessee. No assignment or sublease made subsequent to July 1, 1915, will be approved.

2. Any such sublessee who in good faith shall have made an effort prior to October 1, 1915, to develop any lands under the Foster lease for oil, and shall have drilled one or more wells thereon, even though such wells may have resulted in dry holes, will be granted a new oil lease on the expiration of the Foster lease on March 16, 1916, under the conditions set forth in sections 3 to 9 of these regulations, provided acceptance of the resolution of the tribal council dated June 17, 1915, is filed with the superintendent not later than September 1, 1915.

3. Any such sublessee may select from his present holdings and obtain an oil lease embracing not to exceed 4,800 acres of land in quarter-section units according to the public survey, or in fractional parts of such units where the present sublease does not cover a full quarter section, except such quarter section or fractional quarter-section units the producing wells of which were capable of averaging 25 or more barrels of oil per day on July 1, 1915, which units shall be released to the Osage Tribe on March 16, 1916, together with all other producing and nonproducing properties held by each such sublessee in excess of 4,800 acres.

4. All units on which there are producing oil wells released to the Osage Tribe shall be offered for lease to the highest bidder at public auction not later than February 15, 1916, the purchaser to take possession on March 17, 1916. Any sublessee releasing producing units to the tribe shall be permitted to bid for such units at the sale, and any such properties acquired shall not be considered a part of his 4,800 acres. The terms, conditions, and rules under which the public sale shall be conducted shall be stated in the advertisements.

5. Should a sublessee, in expectation of becoming a purchaser at the public auction, not have selected from his present holdings the full area of oil lands on which he might be granted a lease under section 3 hereof, and it develops that such sublessee is unable to acquire the units which he had expected to purchase at the public sale, he may on or before March 1, 1916, select other lands within his sub-

lease, so as to obtain the full benefits of section 3 of these regulations: *Provided*, That the sublessee, at the time he submits the plat of lands on which he seeks to acquire a new lease as provided in section 9, shall give notice of his intention to take advantage of the benefits of this section.

6. An appraisement shall be made under the direction of the Secretary of the Interior of each quarter section and fractional quarter section unit the producing wells of which were capable of averaging 25 or more barrels per day on July 1, 1915, to be released to the Osage Tribe, together with the equipment on all producing units released to the tribe, including the casings in the wells. Should the sublessee be unwilling to accept the appraisement of the equipment as made he shall have 30 days after March 16, 1916, within which to remove any engines, derricks, tools, and machinery, but in no case shall the casings in any producing wells be removed, and the value of such casings shall be determined by arbitration and the sublessee shall be reimbursed by the purchaser. The appraised value of the equipment shall be published and no bid will be accepted less than such appraisement. The successful bidder shall pay the sublessee for the equipment, and the bonus for the land shall be paid to the superintendent.

7. In the event that no acceptable offer is received at the public sale for any producing oil unit, the sublessee shall be permitted to continue the development and operation of such unit and to have a lease on the same, and such acreage shall not be considered as a part of the 4,800 acres which he is entitled to hold under these regulations.

8. Gas leases shall be made by the tribal council to the present gas lessees covering all or part of their present holdings and for such periods as the Secretary of the Interior may determine: *Provided*, That applications made prior to June 17, 1915, for leases of gas may be granted in the discretion of the Secretary of the Interior.

9. Each oil and gas sublessee shall furnish the superintendent on or before November 1, 1915, with a plat showing legal subdivisions of the lands upon which he desires a new lease, together with an itemized statement showing first cost and present value of all surface equipment on each producing quarter section or fractional quarter section to be released to the Osage Tribe which he desires to have appraised and sold with the property.

Applicants for gas leases shall file a certified plat indicating the lands desired, showing the location and ownership of gas wells, together with all gas-pipe lines and any other related equipment, with a statement of any indebtedness covering any improvements and equipment within the area applied for.

10. All contracts for the sale of gas for industrial purposes and sworn statements showing terms, conditions, and schedule of prices contained in contracts with domestic consumers shall be subject to the approval of the Secretary of the Interior, and shall be filed with the superintendent, who shall forward them without recommendation to the Secretary of the Interior through the Commissioner of Indian Affairs. Before any such contract or schedule is approved the superintendent shall be notified of the terms upon which the Secretary of the Interior will approve the same, and he will thereupon notify the principal chief, who shall convene the tribal council and inform the members of the terms of the proposed contract.

The tribal council may within 10 days from receipt of such notice by the superintendent communicate to the Secretary of the Interior, through the superintendent and the Commissioner of Indian Affairs, their views with reference to any proposed contract.

In the sale and disposition of gas preference shall at all times be given to domestic consumers. All contracts for the industrial use of gas shall contain a clause to the effect that when it is shown to the satisfaction of the Secretary of the Interior that such gas is needed by domestic consumers within an area fixed by the Secretary of the Interior, such contract shall terminate upon the expiration of 30 days' notice from the Secretary of the Interior, and that the superintendent shall have authority to immediately suspend the furnishing of gas to industrial consumers when he is of opinion that such gas is needed for domestic consumers. All gas furnished to industrial and domestic consumers shall be metered and sold at meter rates: *Provided*, That gas furnished to an oil lessee may be sold as provided in the gas lessee's contract.

All contracts with domestic consumers shall be subject to the inspection of the superintendent.

(Form B.)

OIL MINING LEASE, OSAGE RESERVATION, OKLAHOMA.

This lease, made and entered into in quadruplicate on this —— day of ———, A. D. 19—, by and between the Osage Tribe of Indians in Oklahoma, by ——— ———, principal chief, under authority of the resolution of the Osage tribal council, dated June 17, 1915, party of the first part, designated as lessor, and ——— ———, of ———, ———, party of the second part, designated as lessee, under and in pursuance of section 3 of the act approved June 28, 1906 (34 Stat. L., 539–543), witnesseth:

1. The lessor, in consideration of $1, the receipt whereof is acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed, and performed by the lessee, does hereby demise, grant, lease, and let unto the lessee, for five years from the date of approval hereof, and as long thereafter as oil is found in paying quantities, provided that the term of this lease shall not extend beyond the date the title to the minerals remains in the Osage Tribe, all the oil deposits in or under lands described as follows, to wit:

-------------------------------------Sec. ------, T. ------ N., R. ------ E.,
-------------------------------------Sec. ------, T. ------ N., R. ------ E.,

of the Indian meridian, and containing ——— acres, more or less, with the exclusive right to extract, pipe, store, and remove oil.

2. The lessee agrees to pay or cause to be paid to the superintendent of the Osage Indian Agency, at Pawhuska, Okla., for the lessor, as royalty, the sum of 16⅔ per cent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease, unless the Osage tribal council, with the approval of the Secretary of the Interior, shall elect to take the royalty in oil; payment to be made at time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal: *Provided*, That when the quantity of oil taken from all the producing wells on any quarter section according to the public survey, or fractional part of a quarter section if the land covered by this lease does not include the full quarter section, during any calendar month, is sufficient to average 100 or more barrels per well per day, the royalty on such oil shall be 20 per cent.

Should the lessor, with the approval of the Secretary of the Interior, elect to take the royalty in oil, the lessee shall furnish free storage for the royalty oil for not exceeding 30 days.

Any of the executive departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under this lease.

3. Lessees shall drill at least one well to the Mississippi lime, unless oil or gas is found in commercial quantities at a lesser depth, on each and every quarter section or fractional quarter section of land covered by this lease which is not producing oil on March 16, 1916, within one year from the date of approval hereof, or shall pay to the superintendent, for the lessor, a rental of $1 per acre, payable annually, for each year or fractional part of a year the land is held by the lessee and a well is not drilled: *Provided*, That the time within which a well shall be drilled or rental paid in lieu of drilling shall not begin to run on any homestead selection until the consent of the Secretary of the Interior to drilling on such homestead shall have been given. Should the lessee elect to surrender any such quarter section or fractional quarter section before the end of any such yearly period without drilling a well thereon, he shall pay the rental of $1 per acre for the fractional part of a year the land is held and a well is not drilled, and failure of the lessee to pay such rental within 25 days from the expiration of any yearly period during which such well is not drilled shall be cause for cancellation of this lease by the Secretary of the Interior, but such cancellation shall not release the lessee and his sureties from the obligation to pay such rental: *Provided*, That the lessee may surrender this lease and have the same cancelled at any time as to any homestead selection should the Secretary of the Interior refuse to give his consent to drilling thereon: *Provided further*, That whenever the Secretary of the Interior shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on all producing lands.

4. Lessee shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of operations under condition of least injury and inconvenience to the owner and occupant of the surface. Before commencing operations the lessee shall pay to the surface owner the sum of $100 for each well located on cultivated land or land suitable for cultivation and $35 for each location on land not susceptible to cultivation. Location sites shall not exceed 1½ acres in area. Lessee shall also pay $10 for each site outside of the well location used for oil tank of not exceeding 1,600 barrels' capacity, allowing 50 feet square for each tank site. The sum to be paid for an oil-tank site of larger capacity and occupying a greater area shall be as agreed upon between the surface owner and the lessee, and on failure to agree the same shall be fixed by arbitration.

During operations the lessee shall pay all damages for the use of the surface other than that included in the location and tank sites, all damages to any growing crops or to any improvements on the lands, and all other damages as may be occasioned by reason of operations. Such damages shall be apportioned among the parties interested in the surface, whether as owner, lessee, or otherwise, as the parties may mutually agree or as their interests may appear. If the parties are unable to agree concerning damages, the same shall be determined by arbitration.

All agreements (or authenticated copies thereof) providing for the settlement of damages shall be filed in the Osage Agency if the surface owner is a restricted Indian, and all such amounts which may be due and payable to any such Indian shall be paid to the superintendent and by him immediately remitted to the Indian entitled thereto. All sums due as royalty or damages shall be a lien on all equipment and unsold oil on leased premises.

5. The lessee shall carry on operations in a workmanlike manner, commit no waste, and suffer none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control, nor allow any intoxicating liquors to be introduced, brought upon, sold, or given away for any purposes on such premises; also keep an accurate account of all operations, receipts, and disbursements, furnishing sworn reports of such when and as required by the regulations or by an authorized representative of the Secretary of the Interior.

All buildings and permanent improvements, including casings of all producing wells drilled three years or more prior to the expiration of the lease, shall remain a part of said land and become the property of the surface owner at expiration of the lease, excepting tools, tanks, boiler houses, pipe lines, pumping and drilling outfits, derricks, engines, machinery, and the casings of all dry or nonpaying wells. The casings of wells drilled less than three years prior to and producing oil on the expiration of the lease shall remain the property of

c 5.3. provision

the oil lessee: *Provided*, That such casings shall not be removed from the wells, but shall be purchased from the lessee by the owner of the oil rights at such price as may be mutually agreed upon, and on failure to agree the price shall be fixed by arbitration.

6. The lessee accepts this lease with the understanding that the lands covered thereby may be leased to some other party, who shall have the exclusive right to all gas except as herein provided.

7. If the oil lessee shall drill a gas well, he shall, without removing from the well any of the casing or other equipment, immediately shut the well in and notify the gas lessee and the superintendent. In the event the gas lessee does not within 30 days after receiving notice elect to take over such well and reimburse the oil lessee the cost of drilling the same, including all damages paid, in addition to the cost in place of casing, tubing, and other equipment, the oil lessee shall immediately confine the gas to the original stratum, and the disposition of such well shall be subject to the approval of the superintendent.

8. If the gas lessee shall drill an oil well upon the lands described herein, he shall immediately, without removing from the well any of the casing or other equipment, notify the oil lessee and the superintendent. In the event the oil lessee does not within 30 days after receipt of notice elect to take over such well, he shall immediately so notify the gas lessee, and the disposition of such well shall be subject to the approval of the superintendent. Should the oil lessee elect to take over the well, he shall pay the gas lessee the cost of drilling the same, including all damages paid, in addition to the cost in place of casing and other equipment.

9. If the oil lessee shall drill a well which produces both oil and gas in commercial quantities from the same sand, he shall immediately notify the gas lessee, and together they shall arrange for the separation and utilization of the oil and gas and the cost pertaining to said well.

10. Whenever oil and gas are found in separate sands and the oil lessee desires to drill through the gas sand for the oil, he may do so, provided the method of protecting the gas sand shall be approved by the inspector.

11. If at any time any oil or gas well becomes unprofitable and the oil or gas lessee desires to deepen the same, such action as may be mutually agreed upon may be taken not in conflict with the regulations. Upon failure to agree the disposition of such well shall be subject to the approval of the superintendent.

12. All casing-head gas shall belong to the oil lessee, and when used for the manufacture of gasoline shall be metered and be subject to a royalty of 16⅔ per cent, based on the market value of the gasoline contents, and all such gas not utilized by the oil lessee on his leased premises or for operating other adjoining leases within the Osage Reservation shall belong to the gas lessee, subject to the prescribed royalty of 16⅔ per cent.

13. The gas lessee shall furnish the oil lessee, free of royalty, sufficient gas for drilling and operating purposes at a rate to be agreed upon, or on failure to agree the rate shall be fixed by arbitration: *Provided*, That the oil lessee shall make necessary connections between the well and the meter whenever possible.

14. The oil lessee may at any time by paying to the superintendent all amounts then due, including rentals in lieu of development as provided in paragraph numbered three hereof, and the further sum of $1, surrender all or any quarter section or fractional part of quarter section where the lease does not cover the full quarter section, and have the lease cancelled as to the lands surrendered and be relieved from all further obligations and liabilities thereunder as to the part surrendered: *Provided*, That if this lease has been recorded lessee shall execute a release and record the same in the proper office.

15. All amounts due and payable under this lease shall be paid to the superintendent in St. Louis or Kansas City exchange, except that where such exchange can not be procured, post office or express money orders will be accepted.

16. This lease is subject to the regulations now or hereafter prescribed by the Secretary of the Interior, relative to such leases, all of which are made a part of this lease: *Provided*, That no regulations made after the approval of this lease shall operate to affect the term of lease, rate of royalty, rental or acreage, unless agreed to by both parties.

17. Violation of any of the terms or conditions of this lease or of the regulations pertaining thereto shall subject the lease to cancellation by the Secretary of the Interior, or the lessee to a fine of not exceeding $500 per day for each

and every day the terms of the lease or of the regulations are violated, or the orders of the superintendent in reference thereto are not complied with, or to both such fine and cancellation in the discretion of the Secretary of the Interior: *Provided*, That the lessee shall be entitled to notice and hearing with respect to the terms of the lease or of the regulations violated, which hearing shall be held by the superintendent whose finding shall be conclusive unless an appeal be taken to the Secretary of the Interior within 30 days after notice of the superintendent's decision, and the decision of the Secretary of the Interior upon appeal shall be conclusive.

18. Before this lease shall be in force and effect the lessee shall furnish a bond with responsible surety to the satisfaction of the Secretary of the Interior, conditioned for the performance of this lease, which bond shall be deposited and remain on file in the Indian Office.

19. Assignment of this lease or any interest therein may be made with the approval of the Secretary of the Interior and not otherwise.

20. Each and every clause and covenant of this indenture shall extend to the heirs, executors, administrators, successors, and lawful assigns of the parties hereto.

In witness whereof, the said parties have hereunto subscribed their names and affixed their seals on the day and year first above mentioned.

——— ——— [SEAL].

Attest: ——— ———.

Two witnesses to execution by lessor:

——— ———,
P. O. ———, ———.

——— ———,
P. O. ———, ———.

——— ——— [SEAL.]

Attest:

——— ———.

Two witnesses to execution by lessees:

——— ———,
Post office, ———, ———.

——— ———,
Post office, ———, ———.

ACKNOWLEDGMENT OF PRINCIPAL CHIEF.

STATE OF ———, COUNTY OF ———, *ss:*

Before me, ——— ———, on this ——— day of ———, 19—, personally appeared ——— ———, to me known to be the ——— principal chief of the Osage Tribe, and the identical person who executed the within and foregoing lease, and acknowledged to me that he executed the same as his voluntary act and deed on behalf of the Osage Tribe and in accordance with the authority given him by the Osage tribal council.

——— ———,
(*Official title*).

ACKNOWLEDGMENT OF INDIVIDUAL.

STATE OF ———, COUNTY OF ———, *ss:*

Before me, a notary public in and for said county and State, on this ——— day of ———, 19—, personally appeared ——— ———, to me known to be the identical person— who executed the within and foregoing lease, and acknowledged to me that ——— executed the same as ——— free and voluntary act and deed for the uses and purposes therein set forth.

——— ———,
*Notary Public.*

My commission expires ——— —, ———.

ACKNOWLEDGMENT OF CORPORATION.

STATE OF ———, COUNTY OF ———, *ss:*

On this —— day of ———, A. D. 19—, before me, a ——— within and for the State and county aforesaid, personally appeared ——— ——— and ——— ———, to me personally known, who, being by me duly sworn, did each say that ——— ——— is the president and ——— ——— is the ——— secretary of ———, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said ——— ——— and ——— ——— duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this —— day of ———, 19—.

——— ———,

——— ———.

My commission expires ——— —, ——.

DEPARTMENT OF THE INTERIOR, UNITED STATES INDIAN SERVICE,
*Osage Agency, Pawhuska, Okla.*, ———, *19—.*

The within lease is forwarded to the Commissioner of Indian Affairs with recommendation that it be ———. See my report of even date.

——— ———.

(*Official title.*)

OFFICE OF INDIAN AFFAIRS,
*Washington, D. C.*, ———, *19—.*

Respectfully submitted to the Secretary of the Interior with recommendation that it be ———.

——— ———,

*Commissioner.*

WASHINGTON, D. C., ———, *19—.*

The within lease is ———.

——— ———,

*Secretary of the Interior.*

---

(Form C.)

GAS MINING LEASE, OSAGE RESERVATION, OKLAHOMA.

This lease, made and entered into in quadruplicate, on this —— day of ———, A. D., 19—, by and between the Osage Tribe of Indians of Oklahoma, by ——— ———, principal chief, under authority of the resolution of the Osage tribal council dated June 17, 1915, party of the first part, designated as lessor, and ——— ———, of ———, party of the second part, designated as lessee, under and in pursuance of section 3 of the act approved June 28, 1906 (34 Stat. L., 539–543), witnesseth:

1. The lessor, in consideration of $1, the receipt whereof is acknowledged, and of the royalties, covenants, stipulations, and conditions herein contained, and hereby agreed to be paid, observed and performed by the lessee, does hereby demise, grant, lease and let unto the lessee for as long as gas is found in paying quantities, provided that the term of this lease shall not extend beyond the date the title to the minerals remain in the Osage tribe, all the gas deposits in or under lands described as follows, to wit:

———————————————— Sec. ———, T. ——— N., R. ——— E.,
———————————————— Sec. ———, T. ——— N., R. ——— E.,

of the Indian meridian, and containing ——— acres, more or less, with the exclusive right to extract, pipe, and remove gas.

2. The lessee agrees to pay, or cause to be paid, to the superintendent of the Osage Indian Agency, at Pawhuska, Okla., for the lessor, as royalty, the sum of 16⅔ per cent of the market value of the gas at the well after deducting the gas used for fuel in operating the lease, settlement of royalty to be made

monthly, and the accounting shall be on the basis of the supply as shown by meters approved by the Secretary of the Interior, to be installed at the expense of the lessee at such places as may be determined by the inspector with the approval of the superintendent. The basis for measurement for gas sold shall be 10 ounces above an atmospheric pressure, to which basis all gas delivered shall be reduced by computation, no matter at what pressure it may have been actually measured. All contracts for the sale of gas for industrial purposes, and sworn statements showing terms, conditions, and schedule of prices contained in contracts with domestic consumers shall be subject to the approval of the Secretary of the Interior. Should the Secretary of the Interior be of the opinion that the price at which the lessee sells gas is not the true market value at the well, he shall, after notice and hearing, determine the value.

In the sale and disposition of gas preference right shall at all times be given to domestic consumers within an area to be fixed by the Secretary of the Interior. All contracts for the industrial use of gas shall contain a clause to the effect that the Secretary of the Interior may terminate contracts for the industrial use of gas upon the expiration of 30 days' notice, and that the superintendent shall have authority to immediately suspend the furnishing of gas to industrial consumers when he is of opinion that such gas is needed for domestic consumers.

3. Lessee shall have the right to use so much of the surface of the land and such water on the premises as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods, and other appliances necessary for the operation of the wells; also the right of ingress and egress and the rights of way to any point of mining operations, under condition of least injury and inconvenience to the owner or occupant of the surface. Before commencing operations the lessee shall pay to the surface owner the sum of $100 for each well location on cultivated land or land suitable for cultivation, and $35 for each location on land not susceptible to cultivation. Location sites shall not exceed 1½ acres in area. During operations the lessee shall pay all damages for the use of the surface other than included in the location sites, all damages to any growing crops or to any improvements on the lands, and all other damages as may be occasioned by reason of operations. Such damages shall be apportioned among the parties interested in the surface, whether as owner, lessee, or otherwise, as the parties may mutually agree, or as their interests may appear. If the parties are unable to agree concerning damages, the same shall be determined by arbitration.

All agreements (or authenticated copies thereof) providing for the settlement of damages shall be filed in the Osage Agency if the surface owner is a restricted Indian, and all such amounts which may be due and payable to any such Indian shall be paid to the superintendent and by him immediately remitted to the Indian entitled thereto. All sums due as royalty or damages shall be a lien on all equipment on leased premises.

4. The lessee shall carry on operations in a workmanlike manner, commit no waste, and suffer none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control, nor allow any intoxicating liquor to be introduced, brought upon, sold, or given away for any purpose on such premises; also keep an accurate account of all operations, receipts, and disbursements, furnishing sworn reports of such when and as required by the regulations or by an authorized representative of the Secretary of the Interior.

All buildings and permanent improvements, including casings of all producing wells drilled two years or more prior to the expiration of the lease, shall remain a part of said land and become the property of the surface owner at expiration of the lease, excepting tools, tanks, boiler houses, pipe-lines, pumping and drilling outfits, derricks, engines, machinery, and the casings of all dry or nonpaying wells. The casings of wells drilled less than two years prior to and producing gas on the expiration of the lease shall remain the property of the gas lessee: *Provided*, That such casings shall not be removed from the wells, but shall be purchased from the lessee by the owner of the gas rights at such price as may be mutually agreed upon, and on failure to agree the price shall be fixed by arbitration.

5. The lessee accepts this lease with the understanding that the lands covered thereby may be leased to some other party, who shall have exclusive right to all oil except as herein provided.

6. If the gas lessee shall drill an oil well upon the land described herein, he shall immediately, without removing from the well any of the casing or other equipment, notify the oil lessee and the superintendent. In the event the oil lessee does not within 30 days after receipt of notice elect to take over such well, he shall immediately so notify the gas lessee. The action taken and the disposition of such well shall be subject to the approval of the superintendent. Should the oil lessee elect to take over the well, he shall pay the gas lessee the cost of drilling the same, incuding all damages paid in addition to the cost in place of casing and other equipment.

7. If the oil lessee shall drill a gas well, he shall, without removing from the well any of the casing or other equipment, immediately shut the well in and notify the gas lessee and the superintendent. In the event the gas lessee does not, within thirty days after receiving notice, elect to take over such well and reimburse the oil lessee the cost of drilling the same, including all damages paid in additon to the cost in place of casing, tubing, or other equipment, the oil lessee shall immediately confine the gas to the original stratum, and the disposition of such well shall be subject to the approval of the superintendent.

8. If the gas lessee shall drill an oil well upon lands not leased for oil purposes, he shall immediately notify the superintendent, furnishing him with all information pertaining thereto. When the land shall thereafter be leased for oil purposes the gas lessee shall be reimbursed by the oil lessee the cost of drilling said well, including all damages paid in addition to the cost in place of casing and other equipment; and until such time as said land shall be leased for oil purposes the gas lessee shall be permitted to operate said well as an oil well upon payment of the prescribed royalty on oil of 16⅔ per cent.

9. If the gas lessee shall drill a well which produces both oil and gas in commercial quantities from the same sand, he shall immediately notify the oil lessee, and together they shall arrange for the separation and utilization of the oil and gas and the cost pertaining to said well.

10. Whenever oil and gas are found in separate sands, and the gas lessee desires to drill through the oil sand for the gas, he may do so, provided the method of protecting the oil sand shall be approved by the inspector.

11. If at any time any oil or gas well becomes unprofitable, and the oil or gas lessee desires to deepen the same, such action as may be mutually agreed upon may be taken, not in conflict with the regulations. Upon failure to agree the disposition of such well shall be subject to the approval of the superintendent.

12. All casing-head gas shall belong to the oil lessee.

13. The gas lessee shall furnish the oil lessee, free of royalty, sufficient gas for drilling and operating purposes at a rate to be agreed upon; or on failure to agree, the rate shall be fixed by arbitration: *Provided*, That the oil lessee shall make necessary connections between the well and the meter whenever possible.

14. The lessee may at any time, by paying to the superintendent all amounts then due and the further sum of $1, surrender all or any quarter section or fractional part of quarter section where the lease does not cover the full quarter section and have the lease canceled as to the lands surrendered and be relieved from all further obligations and liabilities thereunder as to the part surrendered: *Provided*, That if this lease has been recorded lessee shall execute a release and record the same in the proper office.

15. All amounts due and payable under this lease shall be paid to the superintendent in St. Louis or Kansas City exchange, except that where such exchange cannot be procured postoffice or express money orders will be accepted.

16. This lease is subject to the regulations now or hereafter prescribed by the Secretary of the Interior relative to such leases, all of which are made a part of this lease: *Provided*, That no regulations made after the approval of this lease shall operate to affect the term of lease, rate of royalty, or acreage, unless agreed to by both parties.

17. The Osage tribe shall have the right to the use of gas delivered at the well or at the nearest gas trunk line for any desired school or other building belonging to the tribe: *Provided*, That the lessee shall not be required to pay royalty on such gas.

18. Violation of any of the terms and conditions of this lease or of the regulations pertaining thereto shall subject the lease to cancellation by the Secretary of the Interior, or the lessee to a fine of not exceeding $500 per day for each and every day the terms of the lease or of the regulations are violated or

the orders of the superintendent in reference thereto are not complied with, or to both such fine and cancellation in the discretion of the Secretary of the Interior: *Provided*, That the lessee shall be entitled to notice and hearing with respect to the terms of the lease or of the regulations violated, which hearing shall be held by the superintendent whose finding shall be conclusive unless an appeal be taken to the Secretary of the Interior within 30 days after notice of the superintendent's decision, and the decision of the Secretary of the Interior upon appeal shall be conclusive.

19. Before this lease shall be in force and effect the lessee shall furnish a bond with responsible surety to the satisfaction of the Secretary of the Interior, conditioned for the performance of this lease, which bond shall be deposited and remain on file in the Indian Office.

20. Assignment of this lease or any interest therein may be made with the approval of the Secretary of the Interior and not otherwise.

21. Each and every clause and covenant of this indenture shall extend to the heirs, executors, administrators, successors, and lawful assigns of the parties hereto.

The remainder of this form is identical with form B.

## ACREAGE.

11. After the approval of leases to sublessees as provided in sections 1 to 9, inclusive, of these regulations, no person, firm, partnership, joint stock association, or corporation will be permitted to acquire any interest in Osage lands for oil purposes by lease, assignment, drilling contract, or otherwise in excess of 4,800 acres.

## HOW TO ACQUIRE LEASES OF TRIBAL LANDS.

12. Should the Osage tribal council or any person or corporation desire to have any particular tract of land offered for lease, written request to that effect should be submitted to the superintendent, who will promptly transmit such request to the Commissioner of Indian Affairs with his recommendation.

At such times as the Secretary of the Interior may direct, the superintendent shall publish in such manner as shall be deemed appropriate, notices that specific tracts of Osage lands will be offered at public auction for lease to the highest responsible bidder.

The successful bidder must deposit with the superintendent on the day of sale a certified check on a solvent national bank in an amount equal to 20 per cent of the bid, as a guaranty of good faith. The superintendent after each sale shall furnish a list of all successful bidders to the Commissioner of Indian Affairs with the recommendation of the Osage tribal council.

The right is reserved by the Secretary of the Interior to reject any and all bids, and to disapprove and reject any lease made on an accepted bid. Should any lease be disapproved after deposit made by bidder, the deposit shall be immediately returned.

13. Upon being notified of the acceptance of its bid, a corporation shall file a certified copy of articles of incorporation, and evidence showing compliance with local corporation laws if a foreign corporation: *Provided*, That if any such papers have already been filed a statement to that effect may be submitted.

A corporation must also file with its first lease and on January 1 of each year, and at such other times as may be required by the Secretary of the Interior, a list of all officers, directors, and stockholders,

with their post-office addresses, and showing the number of shares of capital stock held by each and whether held for themselves or in trust, together with a sworn statement of its proper officer, showing:

(*a*) The total number of shares of the capital stock actually issued, the number of shares actually sold and specifically the amount of cash paid into the treasury on the stock sold, or, if paid in property, state kind, quantity, and value of same paid.

(*b*) Of the stock sold, how much per share remains unpaid and subject to assessment.

(*c*) How much cash the company has in its treasury and elsewhere, and from what sources it was received.

(*d*) What property, exclusive of cash, is owned by the company, and its value.

(*e*) What the total indebtedness of the company is and specifically the nature of its obligations.

At any time individual stockholders may be required to show to the satisfaction of the Secretary of the Interior in what companies or with what persons or firms they are interested in oil or gas mining leases on the Osage Reservation and whether they hold such interests for themselves or in trust.

Leases made by corporations shall be accompanied by an affidavit (Form E) showing the authority of its officers to execute leases, bonds, and other papers.

**(Form E.)**

EVIDENCE OF AUTHORITY OF OFFICERS TO EXECUTE PAPERS.

[To be sworn to by secretary or president of a corporation and sealed with its seal.]

I solemnly swear that ——— ——— and ——— ——— were on the —— day of ———, 191—, the duly elected, qualified, and acting president and secretary, respectively, of —————, a corporation organized under the laws of ———, on which day they executed —— mining lease for and in behalf of said corporation as lessee, covering certain lands of the Osage tribe; that they were fully empowered to execute said lease and all papers in connection therewith; and that their action in executing the same binds the said corporation to full performance of all obligations thereunder.

——— ———,
(*Title.*)

This —— day of ———, 191—.
[CORPORATE SEAL.]

Subscribed and sworn to before me this —— day of ———, 191—.
(Signed) ——— ———,
[SEAL.] (*Title.*)

14. A successful bidder shall file an application for approval of lease (Form A), giving the information called for therein, and will be allowed 30 days from date of notice of acceptance of bid within which to execute leases and otherwise comply with these regulations. Failure on the part of an applicant to comply with the requirements shall operate as a forfeiture of the amount deposited as a guarantee of good faith. Delivery of lease shall be withheld pending payment of balance of any bonus, and if such balance be not paid within 20 days after notice by the superintendent of the approval of the lease the approval shall be revoked and the deposit forfeited, in the discretion of the Secretary of the Interior.

**(Form A.)**

APPLICATION FOR APPROVAL OF ——— LEASE, OSAGE RESERVATION.

To the SECRETARY OF THE INTERIOR:

——— ———, of ———, ———, designated as the applicant, hereby applies to have approved the accompanying lease embracing —— acres of Osage lands, and agrees that this application shall be considered a part of the lease so described.

The applicant solemnly swears that the lease, for which approval is requested, is taken in good faith in the interest and for the benefit of the applicant, and not for speculation or transfer, or as agent for, or in the interest or for the exclusive benefit of, any other person, corporation, or association; that no other person, corporation, or association has any interest, present or prospective, directly or indirectly, therein, and that there is no understanding or agreement, express or implied, by which the land leased or any interest in or under the lease by working or drilling contract or otherwise, is to be used, sublet, assigned, or transferred without the consent of the Secretary of the Interior first obtained, but that it is taken for the purpose of operation and development under the direction, supervision, and control of the applicant, except as herein stated.

In addition to the leases in the name of the applicant for which approval is requested, the affiant solemnly swears that the applicant is not interested, either directly or indirectly, in ——— mining leases of lands in the Osage Reservation, except with the following-named persons, corporations, or associations, and that the aggregate of all these interests, together with the leases held by the applicant alone is not more than ——— acres:

(Names of person, corporation, or association with whom applicant is interested:)

——— ———.

(Post-office address:)

———, ———.

The applicant hereby states that his general business experience for the past five years has been as follows: ____________________________________________

____________________________________________

The applicant's financial condition at this time is____________________________

____________________________________________

It is further stated that the applicant's resources are as follows____________

____________________________________________

and that he has available at least $——— for the development of the land covered by said lease.

Where the applicant is a corporation it hereby shows that at this time it has $——— paid-up capital and $——— in its treasury available for oil and gas operations.[1]

It is hereby agreed that on the issue, transfer, or cancellation of stock of corporations or changes in officers prompt reports will be made thereof as required by the regulations.

The books and accounts of the applicant covering the business to be carried on under this lease, if approved, will be kept at ———, in the custody of ——— ———.

References:[2]

——— ———, P. O. ———, ———.
——— ———, P. O. ———, ———.
——— ———, P. O. ———, ———.

Executed this —— day of ———, 191—, at ———, ———.

———, ———.

Before me a notary public in and for the county of ———, State of ———, personally appeared ——— ———, who, being first duly sworn according to law, depose— and say— that the foregoing application was signed by proper authority and in good faith for the purpose therein stated, and that the statements made therein are true as —— verily believe—.

[L. S.]

——— ———,
*Notary Public.*

My commission expires ——— ——, ——.

[1] Corporations shall furnish with their first application the additional financial showing required by the regulations.
[2] Bank references are preferred.