15. Oil lessees shall furnish with each oil lease, to be filed at the time the lease is presented, a bond upon Form D, with two or more sureties, or with a surety company duly authorized to execute bonds. Such bonds shall be in the sum of $1,000 for each quarter-section or fractional quarter-section unit covered by the lease: *Provided, however*, That the lessee shall be allowed to file one bond, Form G, covering all leases to which he or they are or may become parties instead of a separate bond in each case, such bond to be in the penal sum of $15,000.

Gas lessees are required to furnish with each gas lease a bond of the same character in the sum of $5,000 when the gas lease covers 25,000 acres or less, $15,000 for a lease covering more than 25,000 but not more than 50,000 acres, and $25,000 for a lease covering more than 50,000 acres.

The right is specifically reserved to increase the amount of any such bond above the sum named in any particular case where the Secretary of the Interior deems it proper to do so.

**(Form D.)**

[To accompany mining leases of Osage lands.]

BOND.

KNOW ALL MEN BY THESE PRESENTS: That ——— ———, of ———, ———, as principal—, and ——— ———, of ———, ———, as suret—, are held and firmly bound unto the United States of America in the sum of ——— dollars, lawful money of the United States, for the payment of which, well and truly to be made, we bind ourselves, and each of us, our heirs, successors, executors, or administrators, jointly and severally, firmly by these presents.

Sealed with our seals and dated this —— day of ———, 191—.

The condition of this obligation is such that whereas the above-bounden ——— ———, as principal—, entered into —— certain indenture of lease, dated ———, with the Osage Tribe of Indians for the lease of a tract of land described as follows: ----------------------------------------

----------------------------------------

and located in Osage County Oklahoma, for ——— purposes for the period of ———.

Now, if the above-bounden ——— ——— shall faithfully carry out and observe all the obligations assumed in said indenture of lease by ——— ——— and shall observe all the laws of the United States, and regulations made, or which shall be made thereunder, for the government of trade and intercourse with Indian tribes, and all the rules and regulations that have been, or may be, lawfully prescribed by the Secretary of the Interior relative to leases executed by the Osage Tribe in Oklahoma, then this obligation shall be null and void; otherwise to remain in full force and effect.

Signed and sealed in the presence of—

Witnesses:[1]

——— ———,
P. O., ——— ———. } as to ——— ———. [SEAL.]
——— ———,
P. O., ——— ———.

——— ———,
P. O., ——— ———. } as to ——— ———. [SEAL.]
——— ———,
P. O., ——— ———.

DEPARTMENT OF THE INTERIOR,
*Washington, D. C.*, ——— ———, *191—.*

Approved:

——— ———,
*Assistant Secretary of the Interior.*

[1] Two witnesses to all signatures.

(Form G.)

BOND.

KNOW ALL MEN BY THESE PRESENTS, THAT ——— ———, of ———, ———, as principal—, and ——— ———, of ———, ———, as suret—, are held and firmly bound unto the United States of America in the sum of $15,000 lawful money of the United States, for the payment of which well and truly to be made we bind ourselves and each of us, our and each of our heirs, successors, executors, administrators, or assigns, jointly and severally, firmly by these presents.

Sealed with our seals, and dated this —— day of ———, 191—.

The condition of this obligation is such that whereas the above-bounden ——— ———, as principal—, ha— heretofore or may hereafter enter into oil-mining leases with the Osage Tribe in Oklahoma, of various dates and periods of duration, covering the lands described in such leases, which leases have been or may hereafter be approved by the Secretary of the Interior, and the identification of which herein is expressly waived by both principal— and suret— hereto.

Now, if the above-bounden ——— ——— shall faithfully carry out and observe all the obligations assumed in said indenture of lease to which ——— is now or may hereafter become a party, and shall observe all the laws of the United States and regulations made or which shall be made thereunder for the government of trade and intercourse with Indian tribes, and all regulations that have been or shall hereafter be lawfully prescribed by the Secretary of the Interior relative to oil and gas mining leases executed by the Osage Tribe of Indians and the development thereof, and shall in all particulars comply with the provision of said leases and such regulations, then this obligation shall be null and void; otherwise to remain in full force and effect.

Signed and sealed in the presence of—

Witnesses:

——— ———,
P. O. ———, ———. } as to ——— ———. [SEAL.]
——— ———,
P. O. ———, ———.

——— ———,
P. O. ———, ———. } as to ——— ———. [SEAL.]
——— ———,
P. O. ———, ———.

DEPARTMENT OF THE INTERIOR,
*Washington, D. C.*, ——— ——, *191—*.

Approved:

——— ———,
*Assistant Secretary of the Interior.*

16. Any person, other than a lessee or an allottee or the heirs of a deceased allottee, claiming an interest in any leased tract, or in damages thereto, must furnish to the superintendent a statement in writing showing his interest, and failure to furnish such statement shall constitute a waiver of notice and estop said person from claiming any part of such damages after the same shall have been disbursed.

17. Lessees and those acting under them shall not conduct operations within or upon any homestead selection without the written consent of the Secretary of the Interior.

If the allottee is unwilling to permit operations on his homestead, the superintendent will direct the inspector to make an examination of the premises with the allottee and the lessee, or his representative, and should the inspector be of the opinion that the interests of the Osage Tribe requires that the particular tract be developed he will endeavor to have the parties agree upon the terms under which operations on the homestead may be conducted.

In the event the allottee and the lessee can not, with the assistance of the inspector, agree on the matter, the allottee shall be permitted to go before the Osage tribal council, and the council, after hearing the allottee, the lessee, and the inspector, shall make such recommendations as it deems proper. Guardians, legal or natural, may represent their Indian wards, and where no one is authorized or where no person is deemed by the superintendent to be a proper party to speak for a minor or person of unsound mind or of feeble understanding, the principal chief of the Osage Tribe shall represent them.

Rental in lieu of development shall not begin to run on any homestead selection until the consent of the Secretary of the Interior to operations on such homestead shall have been given.

18. Each and every lessee and assignee shall, from the date of approval of lease or assignment, maintain an office at Pawhuska, Okla., with an agent upon whom service of process may be had in conformity with the laws of the State of Oklahoma, and who shall have authority to represent and speak for the lessee or assignee in controversies affecting any individual member of the Osage Tribe.

19. Lessee shall comply with all orders or instructions issued by the superintendent or inspector within the time specified, and shall allow the lessor and his agents, or any authorized representative of the Secretary of the Interior, to enter, from time to time, upon and into all parts of the leased premises for the purpose of inspection; and shall further agree to keep a full and correct account of all operations, receipts, and disbursements and make reports thereof, as herein required, and their books and records, showing manner of operations and persons interested, shall be open at all times for the examination of any authorized representative of the superintendent or of the Secretary of the Interior.

20. Royalties on all oil and gas produced in any month shall be paid on or before the 25th day of the month next succeeding, and the remittances shall be accompanied by sworn reports covering all operations whether there has been production or not. Lessees shall show in this statement the total amount of oil and gas sold, and not merely their working interest, and also the dates of discovery and beginning of utilization of gas from gas wells. The lessee may include in one sworn statement all leases upon which there is no production or upon which dry holes have been drilled.

### ASSIGNMENTS.

21. Approved leases or any interest therein may be sublet, transferred, or assigned with the consent and approval of the Secretary of the Interior, and not otherwise. Subleases, transfers, or assignments, when so approved, shall be subject to the terms and conditions of the original leases and the regulations under which such leases were approved, as well as to such additional requirements as the Secretary of the Interior may prescribe. The sublessee, transferee, or assignee shall furnish with his sublease, transfer, or assignment a satisfactory bond as hereinbefore prescribed in connection with leases.

Any attempt to sublease, transfer, or assign an approved lease or any interest therein without the consent and approval of the Secretary of the Interior shall be absolutely void and shall subject the original lease to cancellation in the discretion of such Secretary.

(Form F.)

[Must be executed in quadruplicate.]

ASSIGNMENT OF ——— LEASE.

Whereas the Secretary of the Interior has heretofore approved ——— mining lease, dated ——— ———, 191—, entered into by and between ——— ———, lessee, and the Osage tribe of Indians, lessor, covering the following-described land in the Osage Reservation, State of Oklahoma:

---

Now, therefore, for and in consideration of $———, the receipt of which is hereby acknowledged, the said ——— ———, the lessee in the above-described lease, hereby bargains, sells, transfers, assigns, and conveys —— right, title, and interest of the lessee in and to said lease, subject to the approval of the Secretary of the Interior, to ——— ———.

In witness whereof the said lessee has hereunto set —— hand and seal this ——— day of ———, 191—.

——— ———.

ACKNOWLEDGMENT OF INDIVIDUAL.

STATE OF ———, COUNTY OF ———, *ss:*

Be it remembered that on this day came before me, the undersigned ——— ———, within and for the State and county aforesaid, duly commissioned and acting as such, ——— ———, to me personally well known, and stated that —— executed the foregoing and annexed instrument for the consideration and purposes therein mentioned and set forth; and I do hereby so certify.

Witness my hand and seal on this ——— day of ———, 191—.

——— ———.

My commission expires ——— —, ——.

ACKNOWLEDGMENT OF CORPORATION.

STATE OF ———, COUNTY OF ———, *ss:*

On this —— day of ———, A. D. 191—, before me, a ——— within and for the State and county aforesaid, personally appeared ——— ——— and ——— ———, to me personally known, who, being by me duly sworn, did each say that ——— ——— is the ——— president and ——— ——— is the secretary of ———, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said ——— ——— and ——— ——— duly acknowledged that they each had in their said official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth; and I do hereby so certify.

Witness my hand and seal on this ——— day of ———, 191—.

——— ———,
———.

My commission expires ——— —, ——.

ACCEPTANCE BY ASSIGNEE.

The assignee in the above and foregoing assignment, made subject to the approval of the Secretary of the Interior, hereby accepts such assignment and agrees to fulfill all the obligations, conditions, and stipulations in said described indenture of lease, when assigned, and the rules and regulations of the Secretary of the Interior, so far as applicable thereto, and to furnish proper bond guaranteeing a faithful compliance with said lease and this agreement.

In witness whereof the said assignee has hereunto set —— hand and seal this ——— day of ———, 191—.

——— ———.

CONSENT OF SURETY.

The ———, of ———, ———, surety for ——— ——— on the bond accompanying the lease above described, hereby consents to the assignment and transfer of said lease as above made.

Dated at ———, ———, this ——— day of ———, 191—.

——— ———.

DEPARTMENT OF THE INTERIOR,
*Washington, D. C.*, ——— ———, *191—*.

Approved:

——— ———,
*Assistant Secretary of the Interior.*

NOTE.—If bond accompanying the original lease is to remain in full force and effect, it must be specifically so stated in the consent of the surety company.

22. Wherever notice is provided for in these regulations, unless otherwise specifically stated, it shall be sufficient if notice has been mailed to the last known place of address of the party, and time shall begin to run from the day next ensuing after the mailing or from the date of delivery of personal notice; but where the party is outside the State of Oklahoma, the superintendent may, in his discretion, increase the time allowed.

OPERATIONS.

23. No operations shall be permitted upon any tract of land until a lease covering such tract shall have been approved by the Secretary of the Interior.

POWERS AND DUTIES OF INSPECTORS.

It shall be the duty of the inspector—

24. To visit from time to time leased lands where oil and gas mining operations are being conducted, and to inspect and supervise such operations with a view to preventing waste of oil and gas, damage to oil, gas, or water bearing formations, or to coal measures or other mineral bearing deposits; or injury to property or life, in accordance with the provisions of these regulations.

25. To make reports to the superintendent and to the Bureau of Mines as to the general conditions of the leases, property, and the manner in which operations are being conducted and his orders complied with.

26. To consult and advise with the superintendent as to the condition of the leased lands, and to submit information and recommendations from time to time for safeguarding and protecting the property of the lessor and securing compliance with the provisions of these regulations.

27. To give such orders or notices as may be necessary to secure compliance with the regulations and to issue all necessary instructions or orders to lessees to stop or modify such methods or practices as he may consider contrary to the provisions of such regulations.

28. To modify or prohibit the use or continuance of any operation or method which, in his opinion, is causing or is likely to cause any surface or underground waste of oil or gas, or injury to any oil, gas, water, coal, or other mineral formation, or which is dangerous to life or property, or in violation of the provisions of these regulations.

29. To prescribe, subject to the approval of the superintendent, the manner and form in which all records or reports called for by these regulations shall be made by the lessee.

30. To prohibit the drilling of any well into any producing sand when in his opinion and with the approval of the superintendent the marketing facilities are inadequate, or insufficient provision has been made for controlling the flow of oil or gas reasonably to be expected therefrom, until such time as suitable provision can be made.

31. To prescribe or approve the methods of drilling wells through coal measures or other mineral deposits.

32. To determine when and under what conditions a *producing* well may be drilled deeper, and under what conditions a producing well, or sand, may be abandoned.

33. To require that tests shall be made to detect waste of oil or gas or the presence of water in a well, and to prescribe or approve the methods of conducting such tests.

34. To require that any condition existing subsequent to the completion of a well which is causing, or is likely to cause, damage to an oil, gas, or water bearing formation, or to coal measures, or other mineral deposits, or which is dangerous to life or property, be corrected as he may prescribe or approve.

35. To approve the type or size of separators used to separate the oil, gas, or water coming from a well.

36. The inspector may limit the percentage of the open-flow capacity of any well which may be utilized when, in his opinion, such action is necessary to properly protect the gas-producing formation.

37. The inspector shall be the sole judge of whether his orders have been fully complied with and carried out.

## DUTIES OF LESSEES.

38. Before actual drilling or development operations are commenced on the leased lands, or within not less than 30 days from the date of approval of these regulations, in case of producing leases or leased lands on which such operations have been commenced prior to such approval, the lessee or assignee shall appoint a local or resident representative within Osage County of Oklahoma on whom the superintendent or other authorized representative of the Department of the Interior may serve notices or otherwise communicate with in securing compliance with these regulations, and shall notify the superintendent of the name and post-office address of the representative so appointed.

In the event of the incapacity or absence from the county of such designated local or resident representative, the lessee shall appoint some person to serve in his stead, and in the absence of such representative or of notice of the appointment of a substitute, any employee of the lessee upon the leased premises, or the contractor or other person in charge of drilling or related operations thereon, shall be considered the representative of the lessee for the purpose of service of orders or notices as herein provided, and service upon any such employee, contractor, or other person shall be deemed service upon the lessee.

39. Five days prior to the commencement of drilling operations lessee shall submit, on forms to be furnished by the superintendent, a report in duplicate showing the location of the proposed wells.

40. Lessee shall keep upon the leased premises accurate records of the drilling, redrilling, or deepening of all wells, showing formations drilled through, casing used, together with other information as indicated on prescribed forms to be furnished by the superintendent, and shall transmit such and other reports of operations when required by the superintendent.

41. Lessee shall furnish on the 1st day of January and the 1st day of July of each year a plat, in manner and form as prescribed by the superintendent, showing all wells, active or abandoned, on the leased lands, and other related information. Blank plats will be furnished upon application.

42. Lessee shall clearly and permanently mark all rigs or wells in a conspicuous place with the name of the lessee and the number or designaiton of the well, and shall take all necessary precautions for the preservation of these markings.

43. Lessee shall not drill within 300 feet of boundary line of leased lands, except with the consent of the superintendent. Lessees shall not locate any well or tank within 200 feet of any public highway or any building used as a dwelling, granary, barn, or established watering place, except with the written permission of the superintendent.

44. Lessee shall notify the superintendent, in advance, of intention to use the mud fluid process of drilling, so that the inspector may approve the method and material to be used, in the event the operator is not familiar with this process.

45. Lessee shall provide a properly prepared slush pit, into which all sand pumpings and other materials extracted from the well during the process of drilling shall be deposited. Such sand pumpings and materials shall not be allowed to run over the surface of the land. The construction of such pits shall be subject to the approval of the inspector.

46. Lessee shall effectually shut out and exclude all water from any oil or gas bearing stratum and take all proper precautions and measures to prevent the contamination or pollution of any fresh-water supply encountered in any well drilled for oil or gas.

47. Lessee shall protect to the satisfaction of the inspector each productive oil or gas bearing formation drilled through for the purpose of producing oil or gas from a lower formation.

48. Lessee shall place an approved gate valve or other approved controlling device on the innermost string of casing seated in the well, and keep same in place and in proper condition for use until the well is completed, whenever drilling operations are commenced in "wildcat" territory or in a gas or oil field where high pressures are known to exist, whenever the inspector shall deem same necessary for the proper control of the production from the well.

49. When natural gas is encountered in commercial quantities in any well, lessee shall confine such gas to its natural stratum until such time as the same can be produced and utilized without waste, it being understood that a commercial quantity of gas produced by a well is any unrestricted flow of natural gas in excess of 2,000,000 cubic feet per 24 hours: *Provided*, That if in the opinion of the superintendent gas of a lesser quantity shall be of commercial value,

the superintendent shall have authority to require the conservation of said gas. Water shall not be introduced into any well where such introduction will operate to kill or restrict the open flow of gas therein.

50. Lessee shall separate the oil from the gas when both are produced in commercial quantities from the same formation, or under such conditions as might result in waste of oil or gas in commercial quantities.

51. Lessee shall not use natural gas from a distinct or separate stratum for the purpose of flowing or lifting the oil.

52. Lessee shall prevent oil or gas, or both, from escaping from any well into the open air, and not permit any oil or gas well to go wild or to burn wastefully.

53. Lessee shall not use natural gas in place of steam to operate engines or pumps under direct pressure, except with the special permission of the inspector.

54. Lessee shall not use natural gas in flambeau lights, save as authorized or approved by the inspector.

55. Lessee shall use every possible precaution, in accordance with the most approved methods, to stop and prevent waste of natural gas and oil, or both, at the wells and from connecting lines and to prevent the wasteful utilization of such gas about the well.

56. Lessee shall notify the superintendent a reasonable time in advance of starting work of intention to redrill, deepen, plug, or abandon a well; and whenever the superintendent or inspector has given notice that extra precautions are necessary in the plugging of wells in a particular territory lessee shall give at least three days' advance notice of such intended plugging.

57. Lessee shall not abandon any well for the purpose of drilling deeper for oil or gas unless the producing stratum is properly protected, and shall not abandon any well producing oil or gas except with the approval of the superintendent or where it can be demonstrated that the further operation of such well is commercially unprofitable.

58. Lessee shall plug and fill all dry or abandoned wells on the leased lands in the manner required, and where any such well penetrates an oil or gas bearing formation it shall be thoroughly cleaned to the bottom of the hole before being plugged or filled, and shall then be filled with mud-laden fluid of a consistency approved by the inspector, from the bottom to the top thereof, before any casing is removed from the well, or, in lieu of the use of such mud fluid, each oil and gas bearing formation shall be adequately protected by cement or approved plugs, or by both such plugs and cement, and the well filled in above and below such cement or plugs with material approved by the inspector.

Where both fresh water and salt water are encountered in any dry or abandoned well which is not being filled with mud-laden fluid as hereinbefore provided, the fresh water shall be efficiently protected against contamination by cement or approved plugs, or by both such cement and plugs, to be placed at such points in the well as the inspector shall approve for the protection of the fresh water.

59. If such abandoned or dry well be in a coal bed or other mineral vein deposit, or be in such condition as to warrant taking extraordinary precautions, the inspector may require such variations

in the above-prescribed methods of plugging and filling as may be necessary in his judgment to protect such seam or deposit against infiltration of gas or water and to protect all other strata encountered in the well.

60. The manner in which such mud-laden fluid, cement, or plugs shall be introduced into any well being plugged and the type of plugs so used shall be subject to the approval of the inspector.

In the event the lessee or operator shall fail to plug properly any dry or abandoned well in accordance with these regulations the superintendent may, after five days' notice to the parties in interest, plug such well at the expense of the lessee or his surety.

61. All B-S or water from tanks or wells shall be drained off into proper receptacles located at a safe distance from tanks, wells, or buildings, to the end that same may be disposed of by being burned or transported from the premises.

Where it is impossible to burn the B-S, or where it is necessary to pump salt water in such quantities as would damage the surface of the leased land or adjoining property, or pollute any fresh water, the lessee shall notify the superintendent, who shall give instructions in each instance as to the disposition of such B-S or salt water.

62. Lessee shall make a full and complete report to the superintendent of all accidents or fires occurring on the leased premises.

63. Lessee shall provide approved tankage of suitable shape for accurate measurement, into which all production of crude oil shall be run from the wells, and shall furnish the superintendent copies of accurate tank tables and all run tickets, as and when requested.

64. The superintendent may make arrangements with the purchasers of oil for the payment of the royalty, but such arrangements, if made, shall not relieve the lessee from responsibility for the payment of the royalty, should such purchaser fail, neglect, or refuse to pay the royalty when it becomes due: *Provided*, That no oil shall be run to any purchaser or delivered to the pipe line or other carrier for shipment, or otherwise conveyed or removed from the leased premises, until a division order is executed, filed, and approved by the superintendent, showing that the lessee has a regularly approved lease in effect, and the conditions under which the oil may be run. Lessees shall be required to pay for all oil or gas used off the leased premises for operating purposes; affidavit shall be made as to the production used for such purposes and royalty paid in the usual manner. The lessee or his representative shall be present when oil is taken from the leased premises under any division order and will be responsible for the correct measurement thereof and shall report all oil so run.

The lessee shall also authorize the pipe-line company or the purchaser of oil to furnish the superintendent with a monthly statement, not later than the tenth day of the following calendar month, of the gross barrels run as common-carrier shipment or purchased from his lease or leases.

65. Lessee will not be permitted to use any timber from any Osage lands except under written agreement with the owner, and in all cases where lands are restricted such agreement shall be subject to the approval of the superintendent or inspector. Lessee shall, when requested by the superintendent, furnish a statement under oath as

to whether the rig timbers were purchased on the leased tract. and if so, state the name of the person from whom purchased, and give such other information regarding the procurement of timber as the superintendent may desire.

66. The use of and damages to surface of lands shall be settled as provided in the lease.

67. Failure to comply with any provision of the lease or of these regulations shall subject the lease to cancellation by the Secretary of the Interior or the lessee to a fine of not more than $500 per day for each and every day the terms of the lease or of the regulations are violated, or the orders of the superintendent pertaining thereto are not complied with, or to both such fine and cancellation, in the discretion of the Secretary of the Interior: *Provided*, That the lessee shall be entitled to notice and hearing with respect to the terms of the lease or of the regulations violated, which hearing shall be held by the superintendent, whose finding shall be conclusive unless an appeal be taken to the Secretary of the Interior within 30 days after notice of the superintendent's decision, and the decision of the Secretary of the Interior upon appeal shall be conclusive.

68. These regulations shall become effective and in full force from and after the date of approval, and shall be subject to change or alteration at any time by the Secretary of the Interior: *Provided*, That no regulations made after the approval of any lease shall operate to affect the term of lease, rate of royalty, rental, or acreage, unless agreed to by both parties to the lease.

69. Applications, leases, and other papers must be upon forms prescribed by the Secretary of the Interior, and the superintendent will furnish prospective lessees with such forms at a cost of $1 per set.

Form A.—Application for oil or gas lease, including financial showing.
Form B.—Oil lease.
Form C.—Gas lease.
Form D.—Bond.
Form E.—Authority of officers to execute papers.
Form F.—Assignment.
Form G.—Collective bond.

All sums received from sale of forms shall be placed in a special fund, to be expended under the direction of the Commissioner of Indian Affairs for the expenses necessary to carry out these regulations.

Department of the Interior,
Office of Indian Affairs,
*August 26, 1915.*

The foregoing regulations are respectfully submitted to the Secretary of the Interior with the recommendation that they be approved.

E. B. Meritt,
*Assistant Commissioner of Indian Affairs.*

Department of the Interior,
*August 26, 1915.*

Approved:

Franklin K. Lane.

# AMENDMENT NO. 1 TO REGULATIONS APPROVED AUGUST 26, 1915, GOVERNING THE LEASING OF LANDS IN THE OSAGE RESERVATION FOR OIL AND GAS MINING PURPOSES.

*Approved May 22, 1916.*

---

Section 68 of the regulations provide:

"These regulations shall become effective and in full force from and after the date of approval, and shall be subject to change or alteration at any time by the Secretary of the Interior: *Provided*, That no regulations made after the approval of any lease shall operate to affect the term of lease, rate of royalty, rental, or acreage, unless agreed to by both parties to the lease."

Section 7 of said regulations provide as follows:

"In the event that no acceptable offer is received at the public sale for any producing oil unit, the sublessee shall be permitted to continue the development and operation of such unit and to have a lease on the same, and such acreage shall not be considered as a part of the 4,800 acres which he is entitled to hold under these regulations."

In view of the misinterpretation and understanding of Section 7 and in accordance with the provisions of Section 68 said Section 7 is hereby modified and changed to read as follows:

In the event that no acceptable offer is received at the public sale for any producing oil unit any such unit shall thereafter be disposed of or leased in such manner as the Secretary of the Interior may direct.

FRANKLIN K. LANE.

# AMENDMENT NO. 2 TO THE REGULATIONS OF AUGUST 26, 1915.

*Approved July 8, 1916.*

---

"Where casing-head gas is sold by the oil lessee as provided in paragraph 12 of oil leases executed in accordance with the regulations of the department, approved August 26, 1915, he shall pay one-sixth of the proceeds of such sale to the United States Indian Superintendent as royalty for the Osage Tribe, and where such gas is used by the lessee for the manufacture of gasoline he shall pay one-sixth of the value thereof to such superintendent as royalty, such value to be the general average value of gas of like kind and quality in the vicinity, such general average to be ascertained by the United States Indian Superintendent from written contracts for sale of gas on file at the Indian agency. In all cases where casing-head gas is used by the lessee in the manufacture of gasoline, the same shall be metered in accordance with the terms of the lease and under such rules and regulations of the department as may be in force governing the same: *Provided*, That should such gas be sold or disposed of in any manner other than by the oil lessee in the operation of his lease after extracting the gasoline there shall be paid to said superintendent for the Osage Tribe a royalty of one-sixth of the proceeds of such sale: *Provided further*, That all contracts for sale of such casing-head gas shall contain a clause requiring a minimum price for such gas of four cents per thousand cubic feet at a pressure of ten ounces to the square inch. The price of four cents per thousand cubic feet shall be based on a price of eight cents, or less, per gallon for the finished product. Should the price for this product during any month be greater than eight cents per gallon, then the price of gas shall be greater than four cents per thousand cubic feet by one-half cent per thousand cubic feet for each one cent increase in the price per gallon of gasoline. For example: Should such price of gasoline be eleven cents per gallon, then the price would be five and one-half cents per thousand cubic feet for gas. If such price of the product be twelve cents per gallon, then the price for gas should be six cents, and so on. Such price shall be determined by the best price paid for casing-head gasoline at gasoline plants by any responsible dealer during the calendar month during which such casing-head gas is delivered."



WASHINGTON : GOVERNMENT PRINTING OFFICE : 1917