# REGULATIONS TO GOVERN THE LEASING OF LANDS IN THE OSAGE RESERVATION, OKLA., FOR MINING PURPOSES (EXCEPT OIL AND GAS MINING).

Section 3 of the act of Congress, approved June 28, 1906 (34 Stat. L., 539, 543), provides:

That the oil, gas, coal, or other minerals covered by the lands for the selection and division of which provision is herein made, are hereby reserved to the Osage Tribe for a period of twenty-five years from and after the eighth day of April, nineteen hundred and six; and leases for all oil, gas, and other minerals, covered by selection and division of land herein provided for, may be made by the Osage Tribe of Indians through its tribal council, and with the approval of the Secretary of the Interior, and under such rules and regulations as he may prescribe: *Provided*, That the royalties to be paid to the Osage Tribe under any mineral lease so made shall be determined by the President of the United States: *And provided further*, That no mining of or prospecting for any of said mineral or minerals shall be permitted on the homestead selections herein provided for without the written consent of the Secretary of the Interior: *Provided, however*, That nothing herein contained shall be construed as affecting any valid existing lease or contract.

1. The term "Officer in charge" shall refer to the superintendent of the Osage Indian Agency and School or other representative of the Government who may, for the time, be in charge of the Osage Agency and School, or any person who may be detailed by the Secretary of the Interior or the Commissioner of Indian Affairs to take charge of leasing or mining operations under these regulations.

2. Any person, firm, or corporation desiring to lease any particular tract of land for mining purposes (other than oil and gas) shall file with the officer in charge an application giving a description of same. At such times as the Secretary of the Interior may direct and as soon as practicable thereafter, the officer in charge shall offer such lands as may be desired to be leased at public auction to the highest responsible bidder after advertising same in such manner as he may deem appropriate. Bids will be received for a bonus in addition to stipulated royalties, and the right is reserved by the Secretary of the Interior to reject any and all bids. The successful bidder must deposit with the officer in charge on the day of the sale a certified check on a solvent bank in an amount equal to 25 per cent of the bonus bid as a guaranty of good faith. Successful bidders shall execute leases and file same, with necessary accompanying papers, with the officer in charge as soon as practicable and within 30 days from notice of acceptance of bid. Failure on the part of any

152328—20——1

bidder to comply with this requirement will operate as a forfeiture of the amount theretofore paid and subject the lease, if thereafter submitted, to disapproval. After execution of the lease of the successful bidder by the principal chief of the Osage Tribe, with the approval of the council, the officer in charge shall forward the papers to the Commissioner of Indian Affairs for the consideration of the Secretary of the Interior. In event any bid is rejected the amount deposited on day of sale shall be returned. If lease is approved, balance due shall be paid before delivery of lease.

3. A corporation shall file with its first lease a certified copy of articles of incorporation, and, if a foreign corporation, evidence showing compliance with local corporation laws in duplicate; a list of all stockholders, with their post-office addresses, and showing the number of shares of capital stock held by each; together with a sworn statement of its proper officer showing—

(*a*) The total number of shares of the capital stock actually issued, the number of shares actually sold and the amount of cash paid into the treasury out of the stock sold, or, if paid in property, kind, quantity, and value of the same.

(*b*) Of the stock sold, how much per share remains unpaid and subject to assessment.

(*c*) How much cash the company has in its treasury and elsewhere, and from what source it was received.

(*d*) What property, exclusive of cash, is owned by the company, and its value.

(*e*) What the total indebtedness of the company is, and the nature of its obligations.

(*f*) Names of officers and directors.

4. Lessee shall furnish with each lease at the time it is filed with the officer in charge an acceptable bond, which shall be in amount as follows: For less than 80 acres, $1,000; for 80 acres and less than 120 acres, $1,500; for 120 acres and not more than 160 acres, $2,000: *Provided, however*, That the lessee shall be allowed to file 1 bond, Form S, covering all leases to which he or they are or may become parties instead of a separate bond in each case, such bond to be in the penal sum of $15,000. The right is reserved to change the amount of the bond in any particular case, or to require a new bond in the discretion of the Secretary of the Interior.

5. The officer in charge may, at any time, either before or after approval of a lease, call for any additional information necessary to carry out the purpose and intent of these regulations, and such information shall be furnished within the time specified in the request therefor.

6. Should a lessee fail to furnish, within the time specified after his bid is accepted, the papers necessary to put his lease and bond

in proper form for consideration, the officer in charge shall recommend that the sale be disapproved and money paid forfeited to the Osage Tribe.

7. No mining or work of any nature will be permitted upon any tract of land until a lease covering such tract shall have been approved by the Secretary of the Interior and delivered to the lessee. All leases shall be made for such period as the title to the minerals remain in the Osage Tribe, which time will expire April 8, 1931, unless otherwise provided by Congress, and shall be subject to cancellation or termination as hereinafter specified. Leases made by corporations shall be accompanied by an affidavit by the secretary or president of the company showing the authority of its officers to execute leases, bonds, and other papers. No lease shall be made covering more than 160 acres.

8. No person, firm, or corporation shall hold under lease at any one time without special permission from the Secretary of the Interior in excess of the following areas:

(*a*) For deposits of the nature of lodes, or veins containing ores of gold, silver, copper, or other useful metals, 640 acres.

(*b*) For beds of placer gold, gypsum, asphaltum, phosphate, iron ores, and other useful minerals, other than coal, lead, and zinc, 960 acres.

(*c*) For coal, 4,800 acres.

(*d*) For lead and zinc, 1,280 acres.

9. Lessees shall pay, in addition to other considerations, annual advance rentals as follows: 15 cents per acre for the first year; 30 cents per acre for the second year; 50 cents per acre for the third year; and $1 per acre per annum for the fourth and each succeeding year during the life of any lease: *Provided*, That all such payments of advance rentals shall be credits on royalties on production during the year for which payment of advance rental is made.

The payment of annual advance rental shall not release the lessee from the obligation to conduct mining operations, as required by the terms of the lease.

10. Royalties will be required as follows, subject to the approval of the President, in accordance with the act of June 28, 1906, *supra:*

(*a*) For gold, silver, or copper lessee shall pay quarterly a royalty of 10 per cent, to be computed on the gross value of the ores as shown by reduction returns after deducting freight and treatment charges. Duplicate reduction returns shall be filed by the lessee with the officer in charge within 20 days after the reduction of the ores.

(*b*) For coal the lessee shall pay a royalty of 10 cents per ton of 2,000 pounds on mine run or coal as taken from the mines, including what is commonly called "slack."

(*c*) For asphaltum and allied substances, the lessee shall pay quarterly a royalty of 10 cents per ton of 2,000 pounds on crude material, and 60 cents per ton on refined substances.

(*d*) For substances other than gold, silver, copper, lead, zinc, coal, and asphaltum the lessee shall pay quarterly a royalty of 10 per cent of the value at the nearest shipping point of all ores, metals, or minerals marketed.

(*e*) The royalties to be paid for lead and zinc shall be computed for each mineral at the same rate that the amount of the concentrates of such mineral bears to the total amount of dirt or rock actually mined, except as hereinafter stipulated. The royalty so determined shall be increased by adding 1 per cent for each increase of $10 in the selling price per ton thereof over and above the following, which shall be the agreed base or standard:

| | |
|---|---|
| For zinc | $50 |
| For lead | 65 |

but in no case shall the rate of royalty be less than 5 per cent or more than 20 per cent. The percentage of recovery shall be computed as nearly as practicable upon the ore included in each sale, but where it is impracticable so to do the officer in charge and the lessee shall agree upon some other method of computation which will produce substantially the same result: *Provided*, That in case of their disagreement the Commissioner of Indian Affairs shall prescribe a rule of computation to be followed in such cases.

NOTE.—The royalty would always be determined under this rule by ascertaining the percentage of recovery were it not for two things: (1) the flat rates which are fixed as the minimum and the maximum rates of royalty and (2) variations in the selling price of the ores. Concrete examples coming under the rule are set forth in the following table:

*Zinc.*

(Where the base or standard is $50 per ton.)

| Percentage of recovery. | Selling price. | Royalty. |
|---|---|---|
| *Per cent.* | *Per ton.* | *Per cent.* |
| 7 | $48 | 7 |
| 14 | 49 | 14 |
| 12 | 50 | 12 |
| 15 | 60 | 16 |
| 30 | 60 | 20 |
| 9 | 70 | 11 |

A similar table might be constructed for royalties on lead, but in so doing it would be necessary to bear in mind that the base or or standard selling price for the lead is to be $65 instead of $50.

11. All rentals, royalties, damages, or other amounts which may become due under leases approved in accordance with these regulations shall be paid to the disbursing agent at Pawhuska, Okla. The remittances shall be in St. Louis exchange, except that where such exchanges can not be procured post-office or express money orders will be accepted. All royalties or other payments or claims of the Osage Tribe arising under such leases shall be a lien upon the mining plant, machinery, and all minerals mined on the property leased or in which the lessee still retains any right, claim, or interest.

12. Royalties on all minerals produced in any quarter (January–March, April–June, July–September, October–December) shall be paid on or before the 25th day of the month next succeeding, and the remittance shall be accompanied by sworn reports covering all operations, whether there has been production or not. Annual advance rentals shall be paid within 10 days after the beginning of the lease year.

13. Lessees shall exercise diligence in the conduct of prospecting and mining operations, and on all leases of class A (sec. 8) shall expend annually in development work a sum which with the annual rental shall make an amount of not less than $5 per acre. On all leases of classes B and C there shall be expended annually in development work a sum which inclusive of the annual rental shall make an amount of not less than $1 for each acre or fraction thereof included in the lease. The lands covered by each lease of class D shall be prospected for lead and zinc ores by drilling within one year test holes aggregating 2,000 feet unless a sufficient ore body is discovered to justify the sinking of a shaft to the ore body and the erecting of a mill when such tract may be released from further prospecting by the written consent of the superintendent: *Provided*, That within 90 days after an ore body of sufficient quantity is discovered, as shown by the logs or records of the drill holes, to justify the expenditure, the sinking of a shaft to the ore body and the erection of a mill shall be commenced and continued to completion without cessation of work thereon, barring unavoidable accidents or causes beyond the control of the lessee.

Lessee shall keep upon the leased premises accurate records of the drilling, redrilling, or deepening of all holes showing the formations, and upon the completion of such holes, copies of such records shall be transmitted to the superintendent by the lessee after the first completion and of any further drilling thereafter, and a failure to so furnish report within the time prescribed shall be considered a violation of the regulations. Lessee shall, before commencing operations, file with the superintendent a plat and preliminary statement of how the openings are to be made and the property developed.

14. Lessees may use so much of the surface of the leased land as shall be reasonably necessary for the prospecting and mining operations and buildings required by the lease, and shall also have the right of way over and across such land to any point of prospecting or mining operations, but such use of the surface shall be permissible only under condition of least injury and inconvenience to the allottee or owner of the land. Lessees before commencing and during such operations shall pay all reasonable damages for the use of the surface land and to any growing crops thereon, or to improvements on said land, or any damage that during the life of the lease may be occasioned in any manner whatsoever by the use of the surface, to the allottee or his successor in interest or assignee, or to a lessee of the surface of said land or to an oil and gas lessee, damages to be apportioned among the parties interested in the surface, whether as owner, lessee, or otherwise, as the parties in interest may mutually agree or as their interests may appear. If the parties are unable to agree concerning damages the same shall be determined by arbitration.

All agreements (or authenticated copies thereof) providing for the settlement of damages shall be filed in the Osage agency if the surface owner is a restricted Indian, and all such amounts which may be due and payable to any such Indian shall be paid to the superintendent and by him immediately remitted to the Indian entitled thereto. All sums due as royalty or damages shall be a lien on all equipment on leased premises.

15. Lessees and those acting under them shall not conduct prospecting or mining operations within or upon any homestead selection without the written consent of the Secretary of the Interior.

16. Any person, other than a lessee or an allottee or the heirs of a deceased allottee, claiming an interest in any leased tract or in damages thereto must furnish to the officer in charge a statement in writing showing his interest, and failure to furnish such statement shall constitute a waiver of notice and estop said person from claiming any part of such damages after the same shall have been disbursed.

17. Lessees will not be permitted to use any timber from any Osage lands not relieved of restrictions upon alienation except under written agreement with the owner approved by the officer in charge.

18. Approved leases or any interest therein may be transferred or assigned with the consent and approval of the Secretary of the Interior and not otherwise. Transfers or assignments, when so approved, shall be subject to the terms and conditions of the original leases and regulations under which such leases were approved as well as to such additional requirements as the Secretary of the Interior may prescribe. The transferee or assignee shall furnish with his transfer or assignment a satisfactory bond as hereinbefore pre-

scribed in connection with leases. Any attempt to transfer or assign an approved lease or any interest therein without the consent and approval of the Secretary of the Interior shall be absolutely void and shall subject the original lease to cancellation in the discretion of the secretary.

19. When a lessee makes application for the cancellation of a lease in whole or in part, all royalties or rentals due up to and including the date of the application for cancellation must be paid, and that part of the lease delivered to the lessee shall be surrendered before such appplication will be considered. In the event a lease is surrendered for cancellation, in whole or in part, after a new lease year has been entered upon, the lessee and his surety shall be liable for the advance rentals required to be paid under the lease for that year, and no part of such rentals which may have been paid shall be refunded.

20. Lessees and assignees must submit to the officer in charge on January 1 of each year, and at such other times as may be required by the Secretary of the Interior, a statement containing the information called for in paragraphs A and F of section 3 of these regulations and also showing any changes in officers or changes in or additions to stockholders. At any time individual stockholders may be required to show to the satisfaction of the Secretary of the Interior in what companies or with what persons or firms they are interested in mining leases on the Osage Reservation and whether they hold such stock or interest for themselves or in trust.

21. Lessees shall allow the agents and representatives of the lessor, or any authorized representative of the Interior Department, to enter, from time to time, upon and into all parts of the leased premises for the purpose of inspection, and their books and records showing manner of operations and persons interested shall be open at all times for the examination of such officers of the department as shall be instructed by the Secretary of the Interior to make such examinations.

22. Wherever notice is provided for in these regulations it shall be sufficient if notice has been mailed to the last known place of address of the party, and time shall begin to run with the day next ensuing after the mailing or from the date of delivery of personal notice; but where the party is outside the State of Oklahoma the officer in charge may, in his discretion, increase the time allowed.

23. Lessees are required, when so requested, to file a plat of their leases showing exact locations of all mines, proposed locations, power houses, etc.

24. Applications, leases, and other papers must be upon forms prepared by the department, and the Superintendent of the Osage Indian

School, Pawhuska, Okla., will furnish prospective lessees with such forms at a cost of $1 per set. Copies of such forms are printed herewith.

Form M. Application for mining lease, including financial showing.
Form N. Lease (except lead and zinc).
Form O. Bond.
Form P. Authority of officers to execute papers.
Form Q. Assignment.
Form R. Lease for lead and zinc.
Form S. Collective bond.

25. On the failure of any lessee or assignee to comply with any regulation or any obligation in the lease or assignment, the Secretary of the Interior may cancel and annul such lease without resorting to the courts and without any further proceeding: *Provided*, That the party or parties charged with such violation shall be first given not less than 30 days' notice to show cause why such lease should not be canceled and annulled or other order made with reference thereto.

26. Violation of any of the terms or conditions of any lease or of the regulations pertaining thereto shall subject the lease to cancellation by the Secretary of the Interior, or the lessee to a fine of not exceeding $500 per day for each and every day the terms of the lease or of the regulations are violated, or the orders of the superintendent in reference thereto are not complied with, or to both such fine and cancellation in the discretion of the Secretary of the Interior: *Provided*, That the lessee shall be entitled to notice and hearing with respect to the terms of the lease or of the regulations violated, which hearing shall be held by the superintendent, whose finding shall be conclusive unless an appeal be taken to the Secretary of the Interior within 30 days after notice of the superintendent's decision, and the decision of the Secretary of the Interior upon appeal shall be conclusive.

These regulations are subject to change or alteration at any time by the Secretary of the Interior.

27. In event of disagreement between two or more mineral lessees regarding sites for the location of wells, mines, buildings, plants, etc., the same shall be determined by the superintendent after investigation and after due consideration of prior right of any lessee by reason of date of approval of lease.

28. All prospecting or mining operations or the abandonment of a well or mine shall be subject to the approval of the superintendent, and any disagreement between lessees of mineral leases regarding operations likely to result in injury to either lessee shall be determined by the superintendent, whose decision shall be final, unless an

appeal is filed with the Secretary of the Interior within 30 days after notice of such decision.

29. Before actual drilling or development operations are commenced on leased lands, the lessee or assignee shall appoint a local or resident representative within the State, on whom the superintendent or other authorized representative of the department may serve notice or otherwise communicate with in securing compliance with these regulations and shall notify the superintendent of the name and post-office address of the representative so appointed.

DEPARTMENT OF THE INTERIOR,
OFFICE OF INDIAN AFFAIRS,
*November 1, 1919.*

The foregoing regulations are respectfully submitted to the Secretary of the Interior with the recommendation that they be approved.

CATO SELLS,
*Commissioner of Indian Affairs.*

Approved:

F. K. LANE, *Secretary.*

(Form M.)

APPLICATION FOR ——— MINING LEASE, OSAGE RESERVATION.

To the SECRETARY OF THE INTERIOR,
*Washington, D. C.*

The undersigned, ——— ———, of ———, ———, designated as applicant, hereby applies to have approved the accompanying lease for ——— mining purposes on Osage Indian lands described as________________________

_______________________________________________

The applicant agrees to be bound by the conditions and requirements set forth in the regulations prescribed for the leasing of said lands, and that on failure of the applicant so to do the lease will be subject to cancellation. It is further agreed by the applicant that this application shall be considered a part of the lease, which shall be executed in accordance herewith.

The applicant solemnly swears that the lease, for which application is hereby made, is to be taken in good faith, in the interest and for the exclusive benefit of the applicant and not for speculation or transfer, or as agent for, or in the interest of, or for the benefit of, any other person, firm, corporation, or association; that no other person, firm, corporation, or association has any interest, present or prospective, directly or indirectly, therein ,and that there is no understanding or agreement, expressed or implied, by which the land leased, or any interest in or under the lease by working contract or otherwise, is to be used, sublet, assigned, or transferred, without the consent of the Secretary of the Interior first obtained, but that it is to be taken for the purpose of operation and development under the direction, supervision, and control of the applicant except as herein stated.

Affiant solemnly swears that the applicant is not interested, either directly or indirectly, in ——— mining leases of lands in the Osage Reservation, except with e following-named persons, firms, corporations, or associations, and

that the aggregate of all these interests, together with the leases held by the applicant alone, and that applied for herein, will not exceed ——— acres.

| Name. | Post-office address. |
|---|---|
| ——— ———, | ———, ———. |
| ——— ———, | ———, ———. |
| ——— ———, | ———, ———. |

The applicant hereby states that his general business experience for the past five years has been as follows________________________________________

__________________________________________________________

Where the applicant, or any officer of the company applying, has had actual experience in operating mineral leases, or has producing mining properties, such facts should be briefly detailed.

__________________________________________________________

__________________________________________________________

__________________________________________________________

The applicant's financial condition at this time is____________________________

__________________________________________________________

The applicant's resources are as follows__________________________________

__________________________________________________________

and he has available at least $——— for the development of the land for which this application is made.

The applicant, a corporation, hereby shows that at this time it has $——— paid-up capital and $——— in its treasury available for mining operations.[1]

It is hereby agreed that on the issue, transfer, or cancellation of stock of corporation, or changes in officers, prompt reports will be made thereof as required by the regulations.

The books and accounts of the applicant covering the business to be carried on under the lease, if approved, will be kept at ——— in the custody of ——— ———.

References:[2]

——— ———, P. O. ——— ———.
——— ———, P. O. ——— ———.
——— ———, P. O. ——— ———.

Executed this ——— day of ———, 192–, at ——— ———.

——— ———.

Before me, a notary public in and for the county of ———, State of ———, personally appeared ——— ———, who, being first duly sworn according to law, deposes and says that the foregoing application was signed by proper authority in good faith for the purposes therein stated, and that the statements made therein are true, as he verily believes.

——— ———,
*Notary Public.*

[SEAL.]
My commission expires ——— —, ———.

[1] Corporation shall furnish with their first application the additional financial showing required by the regulations.
[2] Bank references are preferred.

(Form N.)

——— MINING LEASE, OSAGE RESERVATION, OKLA.

[For minerals except oil, gas, lead, and zinc.]

This indenture of lease made and entered into, in quadruplicate, on this ——— day of ———, A. D. 192–, by and between the Osage Tribe of Indians, by ——— ———, its principal chief, under authority conferred by the Osage tribal council, of the State of Oklahoma, party of the first part, hereinafter designated as lessor, and ———, ———, of ——— ———, party of the second part, hereinafter designated as lesee– under and in pursuance of the provisions of section 3 of the act of Congress approved June 28, 1906 (34 Stat., 539, 543), Witnesseth:

1. The lessor for and in consideration of the royalties, covenants, stipulations, and conditions hereinafter contained, and hereby agreed to be paid, observed, and performed by the lessee—, does hereby demise, grant, lease, and let unto the lessee–, for the term ending April 8, 1931, or as long thereafter as the title to the minerals remains in the Osage tribe, all the deposits of ——— in or under the following tracts of land, lying and being within the Osage Reservation, Osage County, State of Oklahoma, described as ---------------

-----------------------------------------------------------------------

of the Indian meridian, and containing in the aggregate ——— acres more or less, with the exclusive right to prospect for, extract, mine, store, and remove ——— and to occupy and use so much only of the surface of said land as may be reasonably necessary to carry on the work of prospecting for, extracting, mining, storing, and removing such mineral, also the right to obtain from wells or other sources on said land, by means of pipe lines or otherwise, a sufficient supply of water to carry on said operations.

2. The lessee– hereby agree– to pay or cause to be paid to the superintendent of the Osage Indian School, at Pawhuska, Okla., for the lessor, as royalty ———. (See regulations.)

3. The lessee– shall pay to the officer in charge, as advance annual rental on this lease, 15 cents per acre in advance for the first year; 30 cents per acre in advance for the second year; 50 cents per acre in advance for the third year; and $1 per acre, per annum, in advance for the fourth and each succeeding year thereafter, it being understood and agreed that the said sums of money so paid during any year in which royalties on production are payable, shall be a credit on the stipulated royalties due from the lessee– of such royalties on production exceed the advance annual rental for that year.

4. The lessee– covenant– and agreed– to exercise diligence in the conduct of prospecting and mining operations, and to open mines and operate the same in a workmanlike manner, and to the fullest possible extent on the leased premises or upon the mines that may be thereon, and to suffer no waste to be committed thereon; to leave in the mines proper pillars, columns or such other permanent supports to prevent the caving or subsidence of the surface. In addition to the payment of advance royalties as herein specified, the lessee as a further consideration shall on deposits of the nature of lodes or veins containing ores of gold, silver, copper or other useful metals (except lead and zinc) expend annually in developing work, a sum which with the annual advance royalty, shall amount to not less than $5 per acre in conducting mining operations, and on beds of placer gold, gypsum, asphaltum, phosphate, iron ores, coal or other useful minerals (except lead or zinc) a sum which inclusive of the advance and royalty shall amount to not less than $1 an acre or fraction thereof covered by this lease: *Provided:* That whenever the Secretary shall con-

sider the marketing facilities inadequate or the economic conditions unsatisfactory, he may authorize the suspension of operations for such time as he may deem advisable, but such action will not release the lessee from the payment of the advanced annual royalty.

5. The lessee— may use so much of the surface of the land as may be reasonably necessary for prospecting and mining operations required by this lease; and shall also have the right of way over and across such land to any point of prospecting or mining operations, but such use of the surface shall be permissible only under the conditions of least injury and inconvenience to the allottee and owner of the land. Lessee— before commencing and during such operations shall pay all reasonable damages for the use of such surface of the land and to any growing crops thereon or to any improvements on such land or any damages that during the life of this lease shall be occasioned in any manner whatsoever to the allottee or his successor in interest or assignee or to the lessee— of the surface of the land by the use of the surface, such damages to be apportioned among the parties interested in the surface, whether as owners, lessees, or otherwise, as such parties may mutually agree or as their interests may apppear: *Provided*, That when the damages can not be agreed upon between the parties in interest, the amount of such damages shall be determined in accordance with the regulations approved by the Secretary of the Interior.

6. The lessee— shall carry on development and operations in a workmanlike manner, commit no waste on the said land, suffer none to be committed upon the portion in ——— occupancy or use; take good care of the same and promptly surrender and return the premises upon the termination of this lease to whomsoever shall be lawfully entitled thereto, in as good condition as received, excepting for the ordinary wear and tear and unavoidable accidents in their proper use; shall not remove therefrom any buildings or permanent improvements erected thereon during the said term by the said lessee—, but said buildings and improvements shall remain a part of said land and become the property of the owner of the surface of the land, excepting the tools, boilers, boiler houses, pumping and drilling outfits, engines, and mining machinery, which shall remain the property of the lessee—, and may be removed at any time prior to 60 days after the termination of the lease by forfeiture or otherwise, provided the payments agreed upon by this lease and the regulations applicable thereto have been made to the lessor, but not otherwise; shall not permit any nuisance to be maintained on the premises under lessee— control, nor allow any intoxicating liquors to be sold or given away for any purposes on such premises; and shall not use such premises for any other purpose than those authorized in this lease.

7. The lessee— shall keep an accurate account of all mining operations showing the sales, prices, dates, purchasers, and the whole amount of minerals mined or removed, and the gross receipts derived therefrom, and shall make sworn reports thereof as required by the regulations, and all sums due as royalty, advance rental, surface damages, shall be a lien on all implements, tools, movable machinery, and all other personal chattels used in operation upon said property, and upon all of the unsold minerals obtained from the land herein leased, as security for payment of said sums.

8. The lessee— may at any time, by paying to the Indian superintendent all amounts then due as provided herein, and the further sum of $1, surrender all or any part of the land covered by this lease and have the lease cancelled as to the land surrendered and be relieved from all further obligations and liabilities thereunder as to the part surrendered: *Provided*, That in the event the lease is

surrendered for cancellation in whole or in part after a new lease year has been entered upon, the lessee– and the surety shall be held liable for the advance rentals required to be paid for that year, and no part of such rentals which may have been paid shall be refunded.

9. This lease shall be subject to the regulations of the Secretary of the Interior, now or hereafter in force, relative to such leases, all of which regulations are made a part and condition of this lease: *Provided*, That no regulations made after the approval of this lease, affecting either the payments or damages thereunder shall operate to affect the terms and conditions of this lease.

10. Upon the violation of any of the terms and conditions of this lease, the Secretary of the Interior shall have the right at any time after 30 days' notice to the lessee, specifying the terms or conditions violated, to declare this lease null and void.

11. Before this lease shall be in force and effect the lessee– shall furnish a bond with responsible surety to the satisfaction of the Secretary of the Interior, conditioned for the performance of this lease, which bond shall be deposited and remain on file in the Indian Office.

12. Assignment of this lease or any interest therein may be made with the approval of the Secretary of the Interior and not otherwise.

13. Each and every clause and covenant of this indenture shall extend to the heirs, executors, administrators, successors, and lawful assigns of the parties hereto.

In witness whereof, the said parties have hereunto subscribed their names and affixed their seals on the day and year first above mentioned.

Two witnesses to execution of lessor:

——— ———,

P. O. ——— ———.

——— ———,

P. O. ——— ———.

——— ——— [SEAL].

Attest: ——— ———.

Two witnesses to execution by lessee:

——— ———,

P. O. ——— ———.

——— ———,

P. O. ——— ———.

——— ——— [SEAL].

Attest: ——— ———.

ACKNOWLEDGMENT OF PRINCIPAL CHIEF.

STATE OF ———, COUNTY OF ———, *ss:*

Before me, ——— ———, on this ——— day of ———, 192—, personally appeared ——— ———, to me known to be the ——— principal chief of the Osage Nation and the identical person who executed the within and foregoing lease, and acknowledge to me that he executed the same as his voluntary act and deed on behalf of the Osage Nation and in accordance with the authority given him by the Osage national council.

——— ———,

(*Official title.*)

ACKNOWLEDGMENT OF INDIVIDUAL.

STATE OF ———, COUNTY OF ———, *ss:*

Before me, a notary public, in and for said county and State, on this ——— day of ———, 192—, personally appeared ——— ———, to me known to be the identical person— who executed the within and foregoing lease, and acknowledged to me that ——— executed the same as ——— free and voluntary act and deed for the uses and purposes therein set forth.

——— ———,
*Notary Public.*

My commission expires ——— —, ——.

---

ACKNOWLEDGEMENT OF CORPORATION.

STATE OF ———, COUNTY OF ———, *ss:*

On this ——— day of ———, A. D., 192—, before me, a ——— within and for the ——— and ——— aforesaid, personally appeared ——— ——— and ———, to me personally known, who being by me duly sworn, did each say that ——— ——— is the ——— president, and ——— ——— is the secretary of ———, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said ——— ——— and ——— ——— duly acknowledged that they each had in their official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this ——— day of ———, 192—.

——— ———,
*(Official title.)*

My commission expires ——— —, ——.

DEPARTMENT OF THE INTERIOR, UNITED STATES INDIAN SERVICE,
*Osage Agency, Pawhuska, Okla.*, ———, *192*—.

The within lease is forwarded to the Commissioner of Indian Affairs with recommendation that it be ———. See my report of even date.

——— ———,
*(Official title.)*

OFFICE OF INDIAN AFFAIRS,
*Washington, D. C.*, ———, *192*—.

Respectfully submitted to the Secretary of the Interior with recommendation that it be ———.

——— ———,
*Commissioner.*

WASHINGTON, D. C., ———, *192*—.

The within lease is ———.

——— ———,
*Secretary of the Interior.*

Filed for record this ——— day of ———, 192—, at ——— o'clock, —— M.

——— ———.

By ——— ———.

(Form O.)

BOND.

[To accompany leases for mining purposes, Osage Reservation, Okla.]

KNOW ALL MEN BY THESE PRESENTS: That ——— ——— as principal, and ——— ——— of ——— ——— as suret—, are held and firmly bound unto the United States of America in the sum of $———, lawful money of the United States, for the payment of which, well and truly to be made, we bind ourselves, and each of us, our heirs, successors, executors, administrators, or assigns, jointly and severally, firmly by these presents.

Sealed with our seals and dated this ——— day of ———, 192—.

The condition of this obligation is such that whereas the above-bounden ——— ———, as principal, entered into a certain indenture of lease, dated ———, with the Osage Tribe of Indians, for the lease of a tract of land described as follows———————————————————————————————————————— on the Osage Reservation, in the State of Oklahoma, for ——— mining purposes for the period ending April 8, 1931.

Now, if the above-bounden ——— ——— shall faithfully carry out and observe all the obligations assumed in said indenture of lease by ———, shall pay all rentals and royalties as the same may become due, shall pay all damages to the surface of the land, or to any growing crops or improvements thereon caused by prospecting and mining operations, and shall observe all the laws of the United States, and regulations made, or which shall be made thereunder, for the government of trade and intercourse with Indian tribes, and all the rules and regulations that have been, or may be, lawfully prescribed by the Secretary of the Interior relative to leases on lands in the Osage Reservation, Okla., then this obligation shall be null and void; otherwise to remain in full force and effect.

Signed and sealed in the presence of—

Witnesses:

——— ———, P. O.——— ———. } as to ——— ———. [SEAL.]
——— ———, P. O.——— ———.

——— ———, P. O.——— ———. } as to ——— ———. [SEAL.]
——— ———, P. O.——— ———.

——— ———, P. O.——— ———. } as to ——— ———. [SEAL.]
——— ———, P. O.——— ———.

——— ———, P. O.——— ———. } as to ——— ———. [SEAL.]
——— ———, P. O.——— ———.

Two witnesses to each signature.

DEPARTMENT OF THE INTERIOR,
*Washington, D. C.*, ———, *192*—.

Approved.

——— ———,
*Assistant Secretary.*

(Form P.)

EVIDENCE SHOWING AUTHORITY OF OFFICERS TO EXECUTE LEASES, BONDS, AND ACCOMPANYING PAPERS, OSAGE RESERVATION, OKLA.

Whereas ——— ——— is the duly elected, qualified, and acting ——— president of ———, a corporation duly organized and existing under the laws of ———, and

Whereas ——— ——— is the duly elected, qualified, and acting secretary of said corporation, and

Whereas both of said persons were ——— president and secretary, respectively, on the ——— day of ———, 192—, at which time they executed an oil and gas mining lease with the Osage Tribe of Indians covering certain lands in the Osage Reservation, Okla.

Now, therefore, I, the undersigned ——— of said corporation, do solemnly swear that the mining lease mentioned above was duly and regularly entered into by the officers of said corporation named, by and under the authority of the board of directors of said corporation, and in accordance with the by-laws thereof; and further that said officers were duly authorized and empowered on behalf of the corporation named to execute any and all bonds, applications, or other papers required in connection with said mining lease.

I further certify that the action of said officers in executing the papers mentioned on behalf of said corporation, binds said corporation to a full and complete performance of any and all obligations contained therein.

Dated at ——— ——— this day of ———, 192—.

——— ———.

[CORPORATE SEAL.]

Subscribed and sworn to before me this ——— day of ———, 192—.

——— ———,
*Notary Public.*

My commission expires ——— —, ——.

NOTE.—To be executed by secretary or president—secretary in all cases where possible—and in every case to have corporate seal affixed.

(Form Q.)

[Must be executed in quadruplicate.]

ASSIGNMENT OF ——— MINING LEASE, OSAGE RESERVATION, OKLA.

Whereas the Secretary of the Interior has heretofore approved a ——— mining lease, dated ———, 192—, entered into by and between the Osage Tribe of Indians, lessor, and ——— ———, lessee, covering the following described land in the Osage Reservation, Okla.------------------------------

---------------------------------------------------------------------------

Now, therefore, for and in consideration of the sum of ——— dollars ($———), the receipt of which is hereby acknowledged, the said ——— ———, the lessee— in the above-described lease, hereby bargains, sells, transfers, assigns, and conveys ——— right, title, and interest of the lessee— in and to said lease, subject to the approval of the Secretary of the Interior, to ——— ———.

In witness whereof, the said lessee— has hereunto set ——— hand and seal this ——— day of ———, 192—.

——— ———.

ACKNOWLEDGMENT OF INDIVIDUAL.

STATE OF ———,
COUNTY OF ———, *ss:*

Be it remembered that on this day came before me, the undersigned ——— ——— within and for the State and county aforesaid ———, duly com-

missioned and acting as such ——— ———, to me personally well known, and stated that ——— executed the foregoing and annexed instrument for the consideration and purposes therein mentioned and set forth; and I do hereby so certify.

Witness my hand and seal as such ——— on this ——— day of ———, 192—,

——— ———.

My commission expires ——— —, ——.

ACKNOWLEDGMENT OF CORPORATION.

STATE OF ———,
COUNTY OF ———, *ss:*

On this ——— day of ———, A. D. 192—, before me, a ——— ——— within and for the ——— and ——— aforesaid, personally appeared ——— ——— and ——— ——— to me personally known, who, being by me duly sworn, did each say that ——— ——— is the ——— president, and ——— ——— is the secretary of ——— ——— a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors: and said ——— ——— and ——— ——— duly acknowledged that they each had in their said official capacity executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this ——— day of ———, 192—.

——— ———.

My commission expires ——— —, ——.

ACCEPTANCE BY ASSIGNEE.

The assignee in the above and foregoing assignment, made subject to the approval of the Secretary of the Interior, hereby accepts such assignment and agrees to fulfill all the obligations, conditions, and stipulations in said described indenture of lease, when assigned, and the rules and regulations of the Secretary of the Interior, so far as applicable thereto, and to furnish proper bond guaranteeing a faithful compliance with said lease and this agreement.

In witness whereof the said assignee has hereunto set ——— hand and seal this ——— day of ———, 192—.

——— ———.

CONSENT OF SURETY.

The ———, of ——— ———, surety for ——— ——— on the bond accompanying the lease above described, hereby consents to the assignment and transfer of said lease as above made.

Dated at ——— ———, this day of ———, 192—.

——— ———.

DEPARTMENT OF THE INTERIOR,
*Washington, D. C.*, ——— ———, *192—.*

Approved:

——— ———,
*Assistant Secretary.*

NOTE.—If bond accompanying the original lease is to remain in full force and effect, it must be specifically so stated in the consent of the surety company. The consent of the surety company need only be executed on the original copy of the assignment.

(Form R.)

LEAD AND ZINC MINING LEASE, OSAGE RESERVATION, OKLA.

This indenture of lease made and entered into, in quadruplicate, on this ——— day of ———, A. D. 192—, by and between the Osage Tribe of Indians, by ——— ———, its principal chief, under authority conferred by the Osage tribal council, of the State of Oklahoma, party of the first part, hereinafter designated as lessor, and ——— ———, of ——— ———, party of the second part, hereinafter designated as lessee—, under and in pursuance of the provisions of section 3 of the act of Congress approved June 28, 1906 (34 Stat., 539, 543), witnesseth:

1. The lessor for and in consideration of the royalties, covenants, stipulations, and conditions hereinafter contained, and hereby agreed to be paid, observed and performed by the lessee—, does hereby demise, grant, lease, and let unto the lessee—, for the term ending April 8, 1931, or as long thereafter as the title to the mineral remains in the Osage Tribe all the deposits of ——— in or under the following tracts of land, lying and being within the Osage Reservation, Osage County, State of Oklahoma, described as: ———————————

———————————————————————————

of the Indian meridian, and containing in the aggregate ——— acres, more or less, with the exclusive right to prospect for, extract, mine, store, and remove ———, and to occupy and use so much only of the surface of said land as may be reasonably necessary to carry on the work of prospecting for, extracting, mining, storing, and removing such mineral, also the right to obtain from wells or other sources on said land, by means of pipe lines or otherwise, a sufficient supply of water to carry on said operations.

2. The lessee— hereby agree— that the royalties to be paid under this lease to the officer in charge for the Osage Tribe, shall be computed for each mineral at the same rate that the amount of concentrates of such mineral bears to the total amount of dirt or rock actually mined, except as hereinafter stipulated. The royalty so determined on each mineral shall be increased by adding 1 per cent for each increase of $10 in the selling price per ton thereof over and above the following, which shall be the agreed base or standard:

For zinc ---------------------------------------------------- $50

For lead ---------------------------------------------------- 65

but in no case shall the rate of royalty to the lessor or owner of the land be less than 5 per cent or more than 20 per cent on any mineral. The percentage of recovery shall be computed as nearly as practicable upon the ore included in each sale, but where it is impracticable to do so, the officer in charge and the lessee shall agree upon some other method of computation which will produce substantially the same result: *Provided*, That in case of their disagreement the Commissioner of Indian Affairs shall prescribe a rule of computation to be followed in each case.

3. The lessee— shall pay to the officer in charge, as advance annual rental on this lease, 15 cents per acre in advance for the first year; 30 cents per acre in advance for the second year; 50 cents per acre in advance for the third year; and $1 per acre, per annum, in advance for the fourth and each succeeding year thereafter, it being understood and agreed that the said sums of money so paid during any year in which royalties on production are payable, shall be a credit on the stipulated royalties due from the lessee— if such royalties on production exceed the advance annual rental for that year.

4. The lessee— covenant— and agree— to exercise diligence in the conduct of prospecting and mining operations, and to open mines and operate the same in a workmanlike manner, and to the fullest possible extent on the leased

premises; to permit no waste upon said premises or upon the mines that may be thereon, and to suffer no waste to be committed thereon; to leave in the mines proper pillars, columns or such other permanent supports to prevent the caving or subsidence of the surface. In addition to the payment of advance royalties as herein specified, the lessee– as a further consideration, shall prospect the premises for lead and zinc ores by drilling within one year test holes aggregating 2,000 feet unless a sufficient ore body is discovered to justify the sinking of a shaft to the ore body and the erecting of a mill when such tract may be released from further prospecting by the written consent of the superintendent: *Provided*, That within 90 days after an ore body of sufficient quantity is discovered, as shown by the logs or records of the drill holes, to justify the expenditure, the sinking of a shaft to the ore body, and the erection of a mill shall be commenced and continued to completion without cessation of work thereon barring unavoidable accidents or causes beyond the control of the lessee–. *Provided*, That whenever the Secretary of the Interior shall consider the marketing facilities inadequate or the economic conditions unsatisfactory he may authorize the suspension of operations for such time as he may deem advisable, but such action will not release the lessee from the payment of the advance annual royalty.

5. The lessee– may use so much of the surface of the land as may be reasonably necessary for prospecting and mining operations required by this lease, and shall also have the right of way over and across such land to any point of prospecting or mining operations, but such use of the surface shall be permissible only under the conditions of least injury and inconvenience to the allottee and owner of the land. Lessee– before commencing and during such operations shall pay all reasonable damages for the use of such surface of the land and to any growing crops thereon or to any improvements on such land or any damages that, during the life of this lease, shall be occasioned in any manner whatsoever to the allottee or his successor in interest or assignee or to the lessee– of the surface of the land by the use of the surface, such damages to be apportioned among the parties interested in the surface, whether as owners, lessees, or otherwise, as such parties may mutually agree or as their interests may appear: *Provided*, That when the damages can not be agreed upon between the parties in interest, amount of such damage shall be determined in accordance with the regulations approved by the Secretary of the Interior.

6. The lessee– shall carry on development and operations in a workmanlike manner, commit no waste on the said land, suffer none to be committed upon the portion in ——— occupancy or use, take good care of the same, and promptly surrender and return the premises upon the termination of this lease to whomsoever shall be lawfully entitled thereto in as good condition as received, excepting for the ordinary wear and tear and unavoidable accidents in their proper use; shall not remove therefrom any buildings or permanent improvements erected thereon during the said term by the said lessee–, but said buildings and improvements shall remain a part of said land and become the property of the owner of the surface of the land, excepting the tools, boilers, boiler houses, pumping and drilling outfits, engines, and mining machinery, which shall remain the property of the lessee–, and may be removed at any time prior to 60 days after the termination of the lease by forfeiture or otherwise, provided the payments agreed upon by this lease and the regulations applicable thereto have been made to the lessor, but not otherwise; shall not permit any nuisance to be maintained on the premises under lessee– control nor allow any intoxicating liquors to be sold or given away for any purpose on such premises; and shall not use such premises for any other purpose than those authorized in this lease.

7. The lessee— shall keep an accurate account of all mining operations, showing the sales, prices, dates, purchasers, and the whole amount of minerals mined or removed, and the gross receipts derived therefrom, and shall make sworn reports thereof as required by th regulations, and all sums due as royalty, advance rental, surface damages, shall be a lien on all implements, tools, movable machinery, and all other personal chattels used in operation upon said property, and upon all of the unsold minerals obtained from the land herein leased, as security for payment of said sums.

8. The lessee— may at any time, by paying to the Indian Superintendent all amounts then due as provided herein, and the further sum of one dollar, surrender all or any part of the land covered by this lease and have the lease canceled as to the land surrendered, and be relieved from all further obligations and liabilities thereunder as to the part surrendered: *Provided*, That in the event the lease is surrendered for cancellation in whole or in part after a new lease year has been entered upon, the lessee— and the surety shall be held liable for the advance rentals required to be paid for that year, and no part of such rentals which may have been paid shall be refunded.

9. This lease shall be subject to the regulations of the Secretary of the Interior, now or hereafter in force, relative to such leases, all of which regulations are made a part and condition of this lease: *Provided*, That no regulations made after the approval of this lease, affecting either the payments or damages thereunder shall operate to affect the terms and conditions of this lease.

10. Upon the violation of any of the terms and conditions of this lease, the Secretary of the Interior shall have the right at any time after 30 days' notice to the lessee— specifying the terms or conditions violated, to declare this lease null and void.

11. Before this lease shall be in force and effect the lessee— shall furnish a bond with responsible surety to the satisfaction of the Secretary of the Interior, conditioned for the performance of this lease, which bond shall be deposited and remain on file in the Indian Office.

12. Assignment of this lease or any interest therein may be made with the approval of the Secretary of the Interior and not otherwise.

13. Each and every clause and covenant of this indenture shall extend to the heirs, executors, administrators, successors, and lawful assigns of the parties hereto.

In witness whereof, the said parties have hereunto subscribed their names and affixed their seals on the day and year first above mentioned.

Two witnesses to execution by lessor—

——— ———,

P. O. ——— ———. ——— ———. [SEAL.]

——— ———,

P. O. ——— ———. Attest: ——— ———.

Two witnesses to execution by lessee—

——— ———,

P. O. ——— ———. ——— ———. [SEAL.]

——— ———,

P. O. ——— ———. Attest: ——— ———.

ACKNOWLEDGMENT OF PRINCIPAL CHIEF.

STATE OF ———, COUNTY OF ———, *ss:*

Before me, ——— ———, on this ——— day of ———, 192—, personally appeared ——— ———, to me known to be the principal chief of the Osage Nation and the identical person who executed the within and foregoing lease, and

acknowledged to me that he executed the same as his voluntary act and deed on behalf of the Osage Nation and in accordance with the authority given him by the Osage tribal council.

——— ———,
*(Official title.)*

ACKNOWLEDGMENT OF INDIVIDUAL.

STATE OF ———, COUNTY OF ———, *ss:*

Before me, a notary public in and for said county and State, on this ——— day of ———, 192—, personally appeared ——— ———, to me known to be the identical person— who executed the within and foregoing lease, and acknowledged to me that ——— executed the same as ——— free and voluntary act and deed for the uses and purposes therein set forth.

——— ———,
*Notary Public.*

My commission expires ——— —, ———.

ACKNOWLEDGMENT OF CORPORATION.

STATE OF ———, COUNTY OF ———, *ss:*

On this ——— day of ———, A. D. 192—, before me, a ——— within and for the ——— and ——— aforesaid, personally appeared ——— ——— and ——— ———, to me personally known, who being by me duly sworn, did each say that ——— ——— is the president, and ——— ——— is the secretary of ———, a corporation, and that the seal affixed to the foregoing and annexed instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said ——— ——— and ——— ——— duly acknowledge that they each had in their official capacities executed the foregoing instrument as the act and deed of the said company for the consideration and purposes therein mentioned and set forth.

Witness my hand and official seal this ——— day of ———, 192—.

——— ———.

My commission expires ——— —, ———.

DEPARTMENT OF THE INTERIOR,
UNITED STATES INDIAN SERVICE,
*Osage Agency, Pawhuska, Okla.*, ———, *192—.*

The within lease is forwarded to the Commissioner of Indian Affairs with recommendation that it be ———. See my report of even date.

——— ———,
*(Official title.)*

OFFICE OF INDIAN AFFAIRS,
*Washington, D. C.*, ———, *192—.*

Respectfully submitted to the Secretary of the Interior with recommendation that it be ———.

——— ———,
*Commissioner.*

WASHINGTON, D. C., ———, *192—.*

The within lease is ———.

——— ———,
*Secretary of the Interior.*

Filed for record this ——— day of ———, 192–, at ——— o'clock, ——— M.

——— ———,
By ——— ———.

(Form S.)

BOND.

Know all men by these presents, That ——— ———, of ——— ———, as principal—, and ——— ——— as suret—, are held and firmly bound unto the United States of America in the sum of fifteen thousand ($15,000) dollars, lawful money of the United States, for the payment of which well and truly to be made, we bind ourselves and each of us, our and each of our heirs, successors, executors, administrators, or assigns jointly and severally, firmly by these presents.

Sealed with our seals, and dated this ——— day of ———, 192–.

The condition of this obligation is such that whereas the above-bounden ——— ——— as principal—, ha— heretofore or may hereafter enter into ——— ——— mining leases other than oil and gas with the Osage Tribe in Oklahoma of various dates and periods of duration, covering the lands described in such leases, which leases have been or may hereafter be approved by the Secretary of the Interior, and the identification of which herein is expressly waived by both the principal— and suret— hereto.

Now if the above-bounden ——— ——— shall faithfully carry out and observe all the obligations assumed in said indentures of lease to which ——— is now or may hereafter become a party, and shall observe all the laws of the United States and regulations made or which shall be made thereunder for the government of trade and intercourse with Indian tribes, and all regulations that have been or shall hereafter be lawfully prescribed by the Secretary of the Interior relative to mining leases other than oil and gas executed by the Osage Tribe of Indians and the development thereof, and shall in all particulars comply with the provision of said leases and such regulations, then this obligation shall be null and void; otherwise to remain in full force and effect.

Signed and sealed in the presence of—

——— ———,
P. O. ——— ———.
——— ———,
P. O. ——— ———. } as to ——— ———. [SEAL.]

——— ———,
P. O. ——— ———.
——— ———,
P. O. ——— ———. } as to ——— ———. [SEAL.]

——— ———,
P. O. ——— ———.
——— ———,
P. O. ——— ———. } as to ——— ———. [SEAL.]

——— ———,
P. O. ——— ———.
——— ———,
P. O. ——— ———. } as to ——— ———. [SEAL.]

DEPARTMENT OF THE INTERIOR,
*Washington, D. C.*, ———, *192—*.

Approved:

——— ———,
*Assistant Secretary of the Interior.*

WASHINGTON : GOVERNMENT PRINTING OFFICE : 1920