leases were approved, as well as to such additional requirements as the Secretary of the Interior may prescribe. The sublessee, transferee, or assignee shall furnish with his sublease, transfer, or assignment a satisfactory bond as hereinbefore prescribed in connection with leases.

Any attempt to sublease, transfer, or assign an approved lease or any interest therein without the consent and approval of the Secretary of the Interior shall be absolutely void and shall subject the original lease to cancellation in the discretion of such Secretary.

29. Assignments of any lease or any interest therein by drilling contract or otherwise shall be filed with the Superintendent within 30 days from date of such assignment by the assignor, except in instances where the necessary papers cannot be executed within such time in which event, however, formal notice shall be filed within the 30 days stipulated and where necessary the Superintendent may grant 15 days additional: Provided, that any oil or gas lessee holding an approved lease shall at the date of making any contract or agreement in writing or otherwise to assign or transfer any interest in any lease approved to him immediately, on the same date, advise the Superintendent of such proposed transfer or assignment which he is making subject to approval of the Department, giving in full the name and address of the party and the interest he proposes assigning. Any assignment made without previous notice to the Superintendent will not receive consideration except where authorized by the Department.

In case of contracts made by oil lessees for drilling wells which contracts provide that in consideration of drilling a well free of cost to the lease owner that should such well produce oil a subsequent assignment of an interest in such lease will be made subject to the approval of the Department, the Superintendent is hereby authorized to approve such drilling contracts with a stipulation that such approval does not in any way bind the Department to approve formal assignments that may thereafter be submitted and that such approval merely authorizes the drilling contractor to enter into possession of the lease for the purpose of development work and the formal assignment shall thereafter be submitted for approval of the Secretary of the Interior and will be considered on the merits of each case independent of the approval by the Superintendent of drilling contracts.

30. Wherever notice is provided for in these regulations, unless otherwise specifically stated, it shall be sufficient if notice has been mailed to the last known place of address of the party, and time shall begin to run from the day next ensuing after the mailing or from the date of delivery of personal notice; but where the party is outside the State of Oklahoma, the superintendent may, in his discretion, increase the time allowed.

OPERATIONS

31. No operations shall be permitted upon any tract of land until a lease covering such tract shall have been approved by the Secretary of the Interior, or such operations specifically authorized by him.

32. Approved oil and gas leases provide in part:

During operations the lessee shall pay all damages for the use of the surface, other than that included in the location and tanksite, all damages to any growing crops, or any improvements on the lands and all other damages

as may be occasioned by reason of operations. Such damages shall be apportioned among the parties interested in the surface, whether as owner, lessee, or otherwise, as the parties may mutually agree or as their interests may appear. If the parties are unable to agree concerning damages, the same shall be determined by arbitration, but nothing herein contained shall be construed to deny to the surface owner or lessee the right to appeal to the courts without the consent of the Secretary of the Interior, in the event he is dissatisfied with the amount of damages awarded him.

Any person, other than a lessee or an allottee or the heirs of a deceased allottee, claiming an interest in any leased tract, or in damages thereto, must furnish to the superintendent a statement in writing showing his interest, and failure to furnish such statement shall constitute a waiver of notice and estop said person from claiming any part of such damages after the same shall have been disbursed.

33. Before commencing operations on lands embraced in any approved oil or gas mining lease the mineral lessee shall pay, tender or deposit the proper well location fee as provided in the lease and these regulations, after which such lessee shall be entitled to enter upon the lands covered by the lease for mining purposes. Before commencing operations on any subsequent well on such quarter section the mining lessee shall pay, tender or deposit the proper location fee therefor.

Where the surface owner is a restricted Indian, adult or minor, well location fee shall be paid to the Superintendent Osage Agency for such Indian. All other surface owners, whether Indians or whites, shall be paid or tendered such fees direct, and where such surface owners are not residents of Osage County nor have a representative located therein, such payments shall be made or tendered by check, postage prepaid, to last known address of said surface owner at least five days before commencing drilling operations on any well; Provided, that if the address of the proper parties are unknown, such well location fee shall be deposited to the credit of the surface owner in a bank at Pawhuska, Oklahoma, at which time the mining lessee shall notify the Superintendent of Osage Agency of such deposit and the reason therefor. Should interested parties be unable to agree upon the character of land embraced in any well location site and whether fee should be $100.00 or $35.00, mining lessee in the manner above provided shall pay, or tender the minimum fee of $35.00 and at the same time deposit in escrow in a bank at Pawhuska, Oklahoma, the remaining $65.00, together with the $35.00 previously tendered (where returned to him), and notify the surface owner accordingly. Thereupon the dispute between the parties shall be arbitrated and said deposit in escrow shall be made upon the condition that should the arbitrators' award be in favor of the surface owner the amount deposited shall be paid to him. Should the award be in favor of the mineral lessee the sum of $65.00 shall be returned to him and $35.00 shall again be tendered the surface owner.

34. Prior to beginning operations of any kind or moving any rig material, pipe or other drilling equipment on lands embraced in any approved oil or gas lease, the mineral lessee shall meet with the surface owner of such tract if a resident of Osage County, Oklahoma, and at such meeting the mining lessee shall comply with the following requirements:

(a) Indicate the location of the first well to be drilled by him on said quarter section.

(b) Indicate the location of any additional wells which he at the time may contemplate drilling.

(c) Impart to said surface owner the name and address of his foreman or superintendent upon whom the surface owner shall serve any claim for damages which he may sustain by reason of the development and operation of said lands by the mineral lessee, and in the event such foreman or superintendent shall leave the employ of the mineral lessee or be removed to another district then the mineral lessee shall notify the surface owner of the name and address of his successor, to the end that any claim for damages sustained by the surface owner may be promptly served upon the mineral lessee.

(d) Advise the surface owner that should he or his tenant or lessee sustain damages by reason of the development and operation of said land by the mining lessee and in the event the parties are unable to agree upon the mining lessee's liability therefor and upon the amount of damages resulting therefrom, the mining lessee shall submit the matter to arbitration as provided in these regulations; Provided, that within ten days from the date of such meeting the mining lessee shall file with the Superintendent of the Osage Agency a written report of such meeting showing the date thereof and the name of the surface owner taking part therein. Failure to so notify the Superintendent shall subject the mineral lessee to a fine of $5.00 per day for each day's delay within the discretion of the Superintendent; Provided further, that where the surface owner is a restricted Indian the mineral lessee in the manner provided above shall meet with the Superintendent of the Osage Agency. Where the surface owner is not a restricted Indian and not a resident of Osage County, Oklahoma, then the Superintendent of Osage Agency shall be so advised whereupon the mineral lessee shall have the right to proceed with operations; Provided, however, that in the event the Superintendent should so arrange with the surface owner or his tenant, the mineral lessee or his representative within five days after receipt of notice from the Superintendent shall meet with the surface owner or his tenant on the leased premises and arrange for procedure as indicated in this paragraph.

35. Where the surface owner or his lessee suffers damages on account of the operations of any oil or gas lessee, procedure for recovery shall be as follows:

(a) The party or parties aggrieved shall serve the oil or gas lessee or the foreman or superintendent named by him under paragraph 34 hereof with written notice setting forth the nature of alleged damages, the date when the same were sustained, as nearly as possible, the nature of the damages together with the names of the party or parties causing the same if obtainable, and the amount of damages resulting therefrom.

(b) In cases where such alleged damages are not amicably adjusted at the time of such notice, the oil or gas lessee or his representative shall within ten days from receipt of such notice seek an amicable adjustment of the claim with the party or parties aggrieved. If the claimant is a restricted Indian, and should a settlement result, a copy of such settlement agreement shall be filed in the Osage

Agency and the damages agreed upon when approved by the Superintendent shall be paid to the Superintendent of the Osage Agency, for the benefit of said restricted Indian.

(c) Should the parties fail to adjust the claim within the ten days specified, then within five days thereafter each of the interested parties shall appoint an arbitrator who immediately upon their appointment shall agree upon a third arbitrator; and in the event the two arbitrators shall fail to agree upon a third arbitrator they shall immediately notify the parties in interest of such fact, who thereupon shall appoint the third arbitrator.

(d) As soon as the third arbitrator is appointed the arbitrators shall meet, hear the evidence and arguments of the parties, examine the lands, crops, improvements, or other property alleged to have been injured, and within ten days from the date of the final submission of the controversy they shall render their award. The arbitrators shall be disinterested persons and the fees and expenses of the third arbitrator shall be borne equally by the claimant and the mining lessee; the mining lessee to pay the fees and expenses of the arbitrator appointed by him and the claimant to pay the fee and expenses of the arbitrator appointed by him.

(e) When an act of an oil or gas lessee or any of his employees results in injury to both the surface owner and his lessee, the parties aggrieved shall join in the appointment of an arbitrator, and where the injury complained of is chargeable to one or more oil or gas lessees, such lessees shall join in the appointment of an arbitrator.

(f) When the arbitrators have made an award they shall forthwith notify the parties in interest and should the award be against the oil or gas lessee, the amount adjudged shall be paid within fifteen days from the receipt of notice thereof; and should an oil or gas lessee fail or neglect to pay an award, then in the discretion of the Superintendent of the Osage Agency, he may be subjected to a penalty of not exceeding $10.00 a day during the period of default. The arbitrators shall make their award in writing and shall set forth the amount of award on each item of damage claimed or on which damages are allowed.

36. On receipt of complaint from any surface owner or his lessee, the Superintendent of Osage Agency after investigation and where action is deemed advisable, shall require any oil or gas lessee within ten days from receipt of such notice, to enclose slush pits, earthen tanks or reservoirs for salt water or B. S. with a substantial four-wire fence and shall maintain same during the time such pits or reservoirs are in use, and this regulation shall apply to slush pits, earthen tanks or reservoirs now in use, as well as to those which may be constructed in the future, provided this regulation shall not apply where the mineral lessee owns the surface of the land covered by his lease or has an agricultural or grazing lease covering the same. Failure to comply with the requirements of this paragraph will subject the lessee to a fine of $5.00 for each day's delay.

37. Surface owners or their lessees of any lands in the Osage claiming damages for salt water or B. S. on their lands shall immediate y and within ten days from the date of discovery of such al'eged damages communicate with oil or gas lessees or their representatives from whose leases such B. S. or salt water was produced, and such oil or gas lessee shall proceed within ten days from

such notice to adjust any claims for such damages in the same manner as provided for settlement of other alleged damages. In cases where oil or gas lessees fail to take up the matter of such damages claimed with such surface owner or his lessee within ten days thereafter, such surface owners or their lessees shall notify the Superintendent of the Osage Agency in writing, who shall thereupon immediately so advise the proper oil or gas lessee, and if action is not taken by him within ten days thereafter he shall be subject to fines as in other cases provided in these regulations.

38. Surface owners shall notify their lessees or tenants of these regulations and of the procedure necessary in all cases of alleged damages to crops and oil and gas lessees will in such cases be governed accordingly.

Where surface lessees or tenants represent the surface owner they shall be so authorized in writing.

39. Oil and gas lessees may with the approval of the Superintendent use water from streams and natural water courses to the extent that same does not diminish the supply below the requirements of the surface owner from whose land the water is taken. When such water supply is located off the lease upon which the water is to be used, the oil or gas lessee may lay necessary lines across intervening lands to obtain such water. Any damage to the surface or crops resulting from laying such water lines shall be settled by arbitration as provided in Section 35.

POWERS AND DUTIES OF INSPECTORS

It shall be the duty of the inspector—

40. To visit from time to time leased lands where oil and gas mining operations are being conducted, and to inspect and supervise such operations with a view to preventing waste of oil and gas, damage to oil, gas, or water bearing formations, or to coal measures or other mineral bearing deposits, or injury to property or life, in accordance with the provisions of these regulations.

41. To make reports to the superintendent and to the Bureau of Mines as to the general conditions of the leases, property, and the manner in which operations are being conducted and his orders complied with.

42. To consult and advise with the superintendent as to the condition of the leased lands, and to submit information and recommendations from time to time for safeguarding and protecting the property of the lessor and securing compliance with the provisions of these regulations.

43. To give such orders or notices as may be necessary to secure compliance with the regulations and to issue all necessary instructions or orders to lessees to stop or modify such methods or practices as he may consider contrary to the provisions of such regulations.

44. To modify or prohibit the use or continuance of any operation or method which, in his opinion, is causing or is likely to cause any surface or underground waste of oil or gas, or injury to any oil, gas, water, coal, or other mineral formation, or which is dangerous to life or property, or in violation of the provisions of these regulations.

45. To prescribe, subject to the approval of the superintendent, the manner and form in which all records or reports called for by these regulations shall be made by the lessee.

such notice to adjust any claims for such damages in the same manner as provided for settlement of other alleged damages. In cases where oil or gas lessees fail to take up the matter of such damages claimed with such surface owner or his lessee within ten days thereafter, such surface owners or their lessees shall notify the Superintendent of the Osage Agency in writing, who shall thereupon immediately so advise the proper oil or gas lessee, and if action is not taken by him within ten days thereafter he shall be subject to fines as in other cases provided in these regulations.

38. Surface owners shall notify their lessees or tenants of these regulations and of the procedure necessary in all cases of alleged damages to crops and oil and gas lessees will in such cases be governed accordingly.

Where surface lessees or tenants represent the surface owner they shall be so authorized in writing.

39. Oil and gas lessees may with the approval of the Superintendent use water from streams and natural water courses to the extent that same does not diminish the supply below the requirements of the surface owner from whose land the water is taken. When such water supply is located off the lease upon which the water is to be used, the oil or gas lessee may lay necessary lines across intervening lands to obtain such water. Any damage to the surface or crops resulting from laying such water lines shall be settled by arbitration as provided in Section 35.

POWERS AND DUTIES OF INSPECTORS

It shall be the duty of the inspector—

40. To visit from time to time leased lands where oil and gas mining operations are being conducted, and to inspect and supervise such operations with a view to preventing waste of oil and gas, damage to oil, gas, or water bearing formations, or to coal measures or other mineral bearing deposits, or injury to property or life, in accordance with the provisions of these regulations.

41. To make reports to the superintendent and to the Bureau of Mines as to the general conditions of the leases, property, and the manner in which operations are being conducted and his orders complied with.

42. To consult and advise with the superintendent as to the condition of the leased lands, and to submit information and recommendations from time to time for safeguarding and protecting the property of the lessor and securing compliance with the provisions of these regulations.

43. To give such orders or notices as may be necessary to secure compliance with the regulations and to issue all necessary instructions or orders to lessees to stop or modify such methods or practices as he may consider contrary to the provisions of such regulations.

44. To modify or prohibit the use or continuance of any operation or method which, in his opinion, is causing or is likely to cause any surface or underground waste of oil or gas, or injury to any oil, gas, water, coal, or other mineral formation, or which is dangerous to life or property, or in violation of the provisions of these regulations.

45. To prescribe, subject to the approval of the superintendent, the manner and form in which all records or reports called for by these regulations shall be made by the lessee.

46. To prohibit the drilling of any well into any producing sand when in his opinion and with the approval of the superintendent the marketing facilities are inadequate, or insufficient provision has been made for controlling the flow of oil or gas reasonably to be expected therefrom, until such time as suitable provision can be made.

47. To prescribe or approve the methods of drilling wells through coal measures or other mineral deposits.

48. To determine when and under what conditions a producing well may be drilled deeper, and under what conditions a producing well, or sand, may be abandoned.

49. To require that tests shall be made to detect waste of oil or gas or the presence of water in a well, and to prescribe or approve the methods of conducting such tests.

50. To require that any condition existing subsequent to the completion of a well which is causing, or is likely to cause, damage to an oil, gas, or water bearing formation, or to coal measures, or other mineral deposits, or which is dangerous to life or property, be corrected as he may prescribe or approve.

51. To approve the type or size of separators used to separate the oil, gas, or water coming from a well.

52. The inspector may limit the percentage of the open-flow capacity of any well which may be utilized when, in his opinion, such action is necessary to properly protect the gas-producing formation.

53. The inspector shall be the sole judge of whether his orders have been fully complied with and carried out.

54. Five days prior to the commencement of drilling operations lessee shall submit, on forms to be furnished by the superintendent, a report in duplicate showing the location of the proposed wells.

55. Lessee shall keep upon the leased premises accurate records of the drilling, redrilling, or deepening of all wells showing all the formations drilled through and casing used during the drilling of such wells, and upon the completion of such wells, copies of such records shall be transmitted to the Superintendent by the lessee within ten days after the first completion of any well, and of any further drilling thereafter, and a failure to so furnish report within the time prescribed shall be considered a violation of the regulations. The lessee or any employee on the leased premises shall immediately furnish any such information to the inspector upon his request. In connection therewith, it will be held that such completion report is to be filed within ten days after any well is shot, or is producing natural, or being pumped, and if not then finally completed with tubing, etc., a subsequent report to be filed thereafter.

56. Lessee shall furnish on the 1st day of January of each year and such other times as required, a plat, in manner and form as prescribed by the superintendent, showing all wells, active or abandoned, on the leased lands, and other related information. Blank plats will be furnished upon application.

57. Lessee shall clearly and permanently mark all rigs or wells in a conspicuous place with the name of the lessee and the number or designation of the well, and shall take all necessary precautions for the preservation of these markings.

58. Lessee shall not drill within 300 feet of boundary line of

46. To prohibit the drilling of any well into any producing sand when in his opinion and with the approval of the superintendent the marketing facilities are inadequate, or insufficient provision has been made for controlling the flow of oil or gas reasonably to be expected therefrom, until such time as suitable provision can be made.

47. To prescribe or approve the methods of drilling wells through coal measures or other mineral deposits.

48. To determine when and under what conditions a producing well may be drilled deeper, and under what conditions a producing well, or sand, may be abandoned.

49. To require that tests shall be made to detect waste of oil or gas or the presence of water in a well, and to prescribe or approve the methods of conducting such tests.

50. To require that any condition existing subsequent to the completion of a well which is causing, or is likely to cause, damage to an oil, gas, or water bearing formation, or to coal measures, or other mineral deposits, or which is dangerous to life or property, be corrected as he may prescribe or approve.

51. To approve the type or size of separators used to separate the oil, gas, or water coming from a well.

52. The inspector may limit the percentage of the open-flow capacity of any well which may be utilized when, in his opinion, such action is necessary to properly protect the gas-producing formation.

53. The inspector shall be the sole judge of whether his orders have been fully complied with and carried out.

54. Five days prior to the commencement of drilling operations lessee shall submit, on forms to be furnished by the superintendent, a report in duplicate showing the location of the proposed wells.

55. Lessee shall keep upon the leased premises accurate records of the drilling, redrilling, or deepening of all wells showing all the formations drilled through and casing used during the drilling of such wells, and upon the completion of such wells, copies of such records shall be transmitted to the Superintendent by the lessee within ten days after the first completion of any well, and of any further drilling thereafter, and a failure to so furnish report within the time prescribed shall be considered a violation of the regulations. The lessee or any employee on the leased premises shall immediately furnish any such information to the inspector upon his request. In connection therewith, it will be held that such completion report is to be filed within ten days after any well is shot, or is producing natural, or being pumped, and if not then finally completed with tubing, etc., a subsequent report to be filed thereafter.

56. Lessee shall furnish on the 1st day of January of each year and such other times as required, a plat, in manner and form as prescribed by the superintendent, showing all wells, active or abandoned, on the leased lands, and other related information. Blank plats will be furnished upon application.

57. Lessee shall clearly and permanently mark all rigs or wells in a conspicuous place with the name of the lessee and the number or designation of the well, and shall take all necessary precautions for the preservation of these markings.

58. Lessee shall not drill within 300 feet of boundary line of

leased lands, except with the consent of the superintendent. Lessee shall not locate any well or tank within 200 feet of any public highway or any building used as a dwelling, granary, barn, or established watering place, except with the written permission of the superintendent.

59. Lessee shall notify the superintendent, in advance, of intention to use the mudfluid process of drilling, so that the inspector may approve the method and material to be used, in the event the operator is not familiar with this process.

60. Lessee shall provide two properly prepared slush pits, into one of which he must deposit sand pumpings and other materials extracted from the well during the process of drilling, but such material as is suitable for the mudding of a well shall be run into the other pit. The construction of such pits shall be subject to the approval of the inspector. Sand pumpings and such materials shall not be allowed to run over the surface of the land.

61. Lessee shall effectually shut out and exclude all water from any oil or gas bearing stratum and take all proper precautions and measures to prevent the contamination or pollution of any freshwater supply encountered in any well drilled for oil or gas.

62. Lessee shall protect to the satisfaction of the inspector each productive oil or gas bearing formation drilled through for the purpose of producing oil or gas from a lower formation.

63. In drilling operations in "wildcat" territory, or in a gas or oil field where high pressures are known to exist, the lessee shall have on such leased premises an approved gate valve or other approved controlling device in proper condition for use until the well is completed.

64. When natural gas is encountered in commercial quantities in any well, the oil or gas lessee shall confine such gas to its natural stratum until such time as the same can be produced and utilized without waste, it being understood that a commercial quantity of gas produced by a well is any unrestricted flow of natural gas of 2,000,000 cubic feet or more per 24 hours: Provided, That if in the opinion of the Superintendent, gas of a lesser quantity shall be of commercial value, the Superintendent shall have authority to require the conservation of said gas: Provided further, That under section 9 of the oil lease a well producing oil in paying quantities and gas from the same shall be held to produce gas in commercial quantities when and so long as it produces gas with an open flow capacity of 2,000,000 cubic feet or more per day of 24 hours, and gas produced from any such well of less than 2,000,000 cubic feet per day may be considered and termed gas in commercial quantities in the discretion of the Superintendent, except when gas from such well contains gasoline in commercial quantities, in which event, it shall be termed "casing-head gas" but only when, and only while actually used for the manufacture of gasoline, as provided for under paragraph 12 of the oil lease. Any casing-head gas coming direct from the wells and not utilized by the oil lessee as above provided for, or for operations as provided for in Section 12 of the oil lease shall be delivered to the gas lessee at a central point on the oil lessee's gathering or carrying lines, at the same schedule of prices as fixed for delivery of residue gas at gasoline plants into the line or lines provided by the gas lessee; also all gas after extraction of gasoline,

leased lands, except with the consent of the superintendent. Lessee shall not locate any well or tank within 200 feet of any public highway or any building used as a dwelling, granary, barn, or established watering place, except with the written permission of the superintendent.

59. Lessee shall notify the superintendent, in advance, of intention to use the mudfluid process of drilling, so that the inspector may approve the method and material to be used, in the event the operator is not familiar with this process.

60. Lessee shall provide two properly prepared slush pits, into one of which he must deposit sand pumpings and other materials extracted from the well during the process of drilling, but such material as is suitable for the mudding of a well shall be run into the other pit. The construction of such pits shall be subject to the approval of the inspector. Sand pumpings and such materials shall not be allowed to run over the surface of the land.

61. Lessee shall effectually shut out and exclude all water from any oil or gas bearing stratum and take all proper precautions and measures to prevent the contamination or pollution of any freshwater supply encountered in any well drilled for oil or gas.

62. Lessee shall protect to the satisfaction of the inspector each productive oil or gas bearing formation drilled through for the purpose of producing oil or gas from a lower formation.

63. In drilling operations in "wildcat" territory, or in a gas or oil field where high pressures are known to exist, the lessee shall have on such leased premises an approved gate valve or other approved controlling device in proper condition for use until the well is completed.

64. When natural gas is encountered in commercial quantities in any well, the oil or gas lessee shall confine such gas to its natural stratum until such time as the same can be produced and utilized without waste, it being understood that a commercial quantity of gas produced by a well is any unrestricted flow of natural gas of 2,000,000 cubic feet or more per 24 hours: Provided, That if in the opinion of the Superintendent, gas of a lesser quantity shall be of commercial value, the Superintendent shall have authority to require the conservation of said gas: Provided further, That under section 9 of the oil lease a well producing oil in paying quantities and gas from the same shall be held to produce gas in commercial quantities when and so long as it produces gas with an open flow capacity of 2,000,000 cubic feet or more per day of 24 hours, and gas produced from any such well of less than 2,000,000 cubic feet per day may be considered and termed gas in commercial quantities in the discretion of the Superintendent, except when gas from such well contains gasoline in commercial quantities, in which event, it shall be termed "casing-head gas" but only when, and only while actually used for the manufacture of gasoline, as provided for under paragraph 12 of the oil lease. Any casing-head gas coming direct from the wells and not utilized by the oil lessee as above provided for, or for operations as provided for in Section 12 of the oil lease shall be delivered to the gas lessee at a central point on the oil lessee's gathering or carrying lines, at the same schedule of prices as fixed for delivery of residue gas at gasoline plants into the line or lines provided by the gas lessee; also all gas after extraction of gasoline,