70 Cong. Ch. 493, March 2, 1929, 45 Stat. 1478

UNITED STATES STATUTES AT LARGE
70TH CONGRESS - 2ND SESSION
Convening December 3, 1928

An Act

Relating to the tribal and individual affairs of the Osage Indians of Oklahoma.

March 2, 1929

45 Stat. 1478-1481

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

March 2, 1929.
[H. R. 13592.]
[Public, No. 917.]

CHAP. 491.—An Act To legalize a bridge across the Fox River at East Dundee, Illinois.

Fox River.
Bridge across, by East Dundee, Ill., legalized.
Conditions.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the bridge now being constructed across the Fox River at the foot of North Street, East Dundee, Illinois, by the village of East Dundee, Illinois, if completed in accordance with plans accepted by the Chief of Engineers and the Secretary of War, as providing suitable facilities for navigation, shall be a lawful structure and shall be subject to the conditions and limitations of the Act entitled "An Act to regulate the construction of bridges over navigable waters," approved March 23, 1906, other than those requiring the approval of plans by the Chief of Engineers and the Secretary of War before the bridge is commenced.

Construction.
Vol. 34, p. 84.

Amendment.

Sec. 2. The right to alter, amend, or repeal this Act is hereby expressly reserved.

Approved, March 2, 1929.

---

March 2, 1929.
[H. R. 16533.]
[Public, No. 918.]

CHAP. 492.—An Act To authorize the American Legion, Department of New Jersey, to erect a memorial chapel at the Naval Air Station, Lakehurst, New Jersey.

Naval Air Station, Lakehurst, N. J.
American Legion, permitted to erect memorial chapel at.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the Secretary of the Navy be, and he is hereby, authorized to permit the American Legion, Department of New Jersey, to erect at the Naval Air Station, Lakehurst, New Jersey, a memorial chapel in commemoration of those whose lives are lost in aviation and particularly in lighter-than-aircraft activities. The erection of this memorial chapel shall be subject to the following conditions:

Conditions.

Site, design, etc., subject to approval of Secretary of the Navy.

First. The site of the memorial chapel shall be selected by the Secretary of the Navy, and its design and construction, with its individual memorials and memorial windows, shall be subject to his approval and supervision.

No Government cost.

Second. The design and construction of the memorial chapel shall be without cost to the United States.

Acceptance as unconditional gift when completed and dedicated.

Sec. 2. Upon the completion and dedication of the memorial chapel, the Secretary of the Navy is authorized to accept it as an unconditional gift to the United States from the American Legion, Department of New Jersey.

Approved, March 2, 1929.

---

March 2, 1929.
[S. 2360.]
[Public, No. 919.]

CHAP. 493.—An Act Relating to the tribal and individual affairs of the Osage Indians of Oklahoma.

Osage Indians, Okla.
Vol. 41, p. 1249, amended.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That section 1 of the Act of Congress of March 3, 1921 (Forty-first Statutes at Large, page 1249), relating to the Osage Indians of Oklahoma, be, and the same is hereby, amended to read as follows:

Oil, etc., lands reserved to, until April 8, 1958.
Vol. 34, p. 542.

"That all that part of the Act of June 28, 1906 (Thirty-fourth Statutes at Large, page 539), entitled 'An Act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes,' which reserves to the Osage Tribe the oil, gas, coal, or other minerals, covered by the lands for the selection and division of which provision is made in that Act is hereby amended so that the oil, gas, coal, or other minerals, covered by said lands are

reserved to the Osage Tribe, until the 8th day of April, 1958, unless otherwise provided by Act of Congress, and all royalties and bonuses arising therefrom shall belong to the Osage Tribe of Indians, and shall be disbursed to members of the Osage Tribe or their heirs or assigns as now provided by law, after reserving such amounts as are now or may hereafter be authorized by Congress for specific purposes.

Royalties therefrom to be disbursed to members of the tribe.

"The lands, moneys, and other properties now or hereafter held in trust or under the supervision of the United States for the Osage Tribe of Indians, the members thereof, or their heirs and assigns, shall continue subject to such trust and supervision until January 1, 1959, unless otherwise provided by Act of Congress.

Lands, etc., held in trust, continued subject thereto, until January 1, 1959.

"The Secretary of the Interior and the Osage tribal council are hereby authorized and directed to offer for lease for oil, gas, and other mining purposes any unleased portion of said land in such quantities and at such times as may be deemed for the best interest of the Osage Tribe of Indians: *Provided*, That not less than twenty-five thousand acres shall be offered for lease for oil and gas mining purposes during any one year: *Provided further*, That as to all lands hereafter leased, the regulations governing same and the leases issued thereon shall contain appropriate provisions for the conservation of the natural gas for its economic use, to the end that the highest percentage of ultimate recovery of both oil and gas may be secured: *Provided, however*, That nothing herein contained shall be construed as affecting any valid existing lease for oil or gas or other minerals, but all such leases shall continue as long as gas, oil, or other minerals are found in paying quantities.

Unleased land to be offered for oil and gas leases.

*Provisos.* Minimum yearly offering.

Regulations for conservation of gas to be contained in leases.

Valid existing leases continued.

"Homestead allotments of Osage Indians not having a certificate of competency shall remain exempt from taxation while the title remains in the original allottee of one-half or more of Osage Indian blood and in his unallotted heirs or devisees of one-half or more of Osage Indian blood until January 1, 1959: *Provided*, That the tax-exempt land of any such Indian allottee, heir, or devisee shall not at any time exceed one hundred and sixty acres.

Tax exemption of homesteads of Indians without competency certificate.

*Proviso.* Area limited.

SEC. 2. That section 2 of the Act of March 3, 1921 (Forty-first Statutes at Large, page 1249), entitled "An Act to amend section 3 of the Act of Congress of June 28, 1906, entitled 'An Act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes,'" be, and the same is hereby, amended to read as follows:

Vol. 41, p. 1249, amended.

"The bona fide owner or lessee of the surface of the land shall be compensated, under rules and regulations prescribed by the Secretary of the Interior in connection with oil and gas mining operations, for any damage that shall accrue after the passage of this Act as a result of the use of such land for oil or gas mining purposes, or out of damages to the land or crops thereon, occasioned thereby, but nothing herein contained shall be construed to deny to the surface owner or lessee the right to appeal to the courts, without the consent of the Secretary of the Interior, in the event he is dissatisfied with the amount of damages awarded him. All claims for damages arising under this section shall be settled by arbitration under rules and regulations to be prescribed by the Secretary of the Interior; but either party shall have the right to appeal to the courts without consent of the Secretary of the Interior in the event he is dissatisfied with the award to or against him. The appeal herein authorized shall consist of filing an original action in any court of competent jurisdiction sitting at the county seat of Osage County, to enlarge, modify or set aside the award, and in any such action, upon demand of either party, the issues, both of law and of fact shall be tried de novo before a jury upon the request of either party. Arbitration, or

Surface owners to be paid for damages from mining operations.

Appeal to court.

Settlement by arbitration.

Procedure for appeals in county court.

a bona fide offer in writing to arbitrate, shall constitute conditions precedent to the right to sue for such damages: *Provided*, That nothing herein contained shall preclude the institution of any such suit in a Federal court having jurisdiction thereof, or the removal to said court of any such suit brought in the State court, which under Federal law may be removed to the Federal court: *Provided further*, That nothing herein shall be construed to limit the time for any action to be filed to less than ninety days."

*Provisos.* Suit in Federal court allowed.

Time for filing.

Sec. 3. That section 1 of the Act of Congress of February 27, 1925 (Forty-third Statutes at Large, page 1008), is hereby amended by adding thereto the following:

Vol. 43, p. 1010, amended. Payments from income.

"The Secretary of the Interior be, and is hereby, authorized, in his discretion, under such rules and regulations as he may prescribe, upon application of any member of the Osage Tribe of Indians not having a certificate of competency, to pay all or any part of the funds held in trust for such Indian: *Provided*, That the Secretary of the Interior shall, within one year after this Act is approved, pay to each enrolled Indian of less than half Osage blood, one-fifth part of his or her proportionate share of accumulated funds. And such Secretary shall on or before the expiration of ten years from the date of the approval of this Act, advance and pay over to such Osage Indians of less than one-half Osage Indian blood, all of the balance appearing to his credit of accumulated funds, and shall issue to such Indian a certificate of competency: *And provided further*, That nothing herein contained shall be construed to interfere in any way with the removal by the Secretary of the Interior of restrictions from and against any Osage Indian at any time."

Indians without competency certificate.

*Proviso.* Payments hereafter to enrolled Indians of less than one-half Osage blood.

Removal of restrictions at any time.

Sec. 4. That section 2 of the Act of Congress approved February 27, 1925 (Forty-third Statutes at Large, page 1011), being an Act to amend the Act of Congress of March 3, 1921 (Forty-first Statutes at Large, page 1249), be, and the same is hereby, amended to read as follows:

Vol. 43, p. 1010, amended.

"Upon the death of an Osage Indian of one-half or more Indian blood who does not have a certificate of competency, his or her moneys and funds and other property accrued and accruing to his or her credit and which have heretofore been subject to supervision as provided by law may be paid to the administrator or executor of the estate of such deceased Indian or direct to his heirs or devisees, or may be retained by the Secretary of the Interior in the discretion of the Secretary of the Interior, under regulations to be promulgated by him: *Provided*, That the Secretary of the Interior shall pay to administrators and executors of the estates of such deceased Osage Indians a sufficient amount of money out of such estates to pay all lawful indebtedness and costs and expenses of administration when approved by him; and, out of the shares belonging to heirs or devisees, above referred to, he shall pay the costs and expenses of such heirs or devisees, including attorney fees, when approved by him, in the determination of heirs or contest of wills. Upon the death of any Osage Indian of less than one-half of Osage Indian blood or upon the death of an Osage Indian who has a certificate of competency, his moneys and funds and other property accrued and accruing to his credit shall be paid and delivered to the administrator or executor of his estate to be administered upon according to the laws of the State of Oklahoma: *Provided*, That upon the settlement of such estate any funds or property subject to the control or supervision of the Secretary of the Interior on the date of the approval of this Act, which have been inherited by or devised to any adult or minor heir or devisee of one-half or more Osage Indian

Disposition of property, etc., to estates of Indians without competency certificates.

*Provisos.* Payment of indebtedness, administration expenses, etc.

Delivery of property to administrator of Indian with less than one-half Osage blood, and having competency certificate.

Funds from the estate, for Indians without competency certificate, to be delivered to Secretary of Interior for disposition.

blood who does not have a certificate of competency, and which have been paid or delivered by the Secretary of the Interior to the administrator or executor shall be paid or delivered by such administrator or executor to the Secretary of the Interior for the benefit of such Indian and shall be subject to the supervision of the Secretary as provided by law."

Restrictions applicable to unallotted Osages born since July 1, 1907, and their heirs.

SEC. 5. The restrictions concerning lands and funds of allotted Osage Indians, as provided in this Act and all prior Acts now in force, shall apply to unallotted Osage Indians born since July 1, 1907, or after the passage of this Act, and to their heirs of Osage Indian blood, except that the provisions of section 6 of the Act of Congress approved February 27, 1925, with reference to the validity of contracts for debt, shall not apply to any allotted or unallotted Osage Indian of less than one-half degree Indian blood: *Provided*, That the Osage lands and funds and any other property which has heretofore or which may hereafter be held in trust or under supervision of the United States for such Osage Indians of less than one-half degree Indian blood not having a certificate of competency shall not be subject to forced sale to satisfy any debt or obligation contracted or incurred prior to the issuance of a certificate of competency: *Provided further*, That the Secretary of the Interior is hereby authorized in his discretion to grant a certificate of competency to any unallotted Osage Indian when in the judgment of the said Secretary such member is fully competent and capable of transacting his or her own affairs.

Validity of contracts for debt.

Vol. 43, p. 1011.

*Proviso.*

Property in trust for Indians of less than one-half Osage blood, etc., not subject to forced sale, etc.

Certificate of competency granted to unallotted Osage Indian, at discretion of the Secretary.

Outstanding obligations of restricted Indians to be paid from funds thereof.

SEC. 6. All just existing obligations of restricted Osage Indians outstanding January 1, 1929, when approved by the Superintendent of the Osage Agency, shall be paid out of the money of such Indian appearing to his credit, in addition to his quarterly allowances: *And provided further*, That nothing herein contained shall be construed to interfere in any way with the granting of a certificate of competency by the Secretary of the Interior, as provided for by existing law, at any time after the payment of all of his or her just debts which have been presented to and approved by the Superintendent of the Osage Indian Agency.

*Proviso.*

Competency certificates may be granted after payments of all debts.

Vol. 34, p. 545, amended.

Tribal officers, etc.

SEC. 7. That section 9 of the Act of Congress approved June 28, 1906 (Thirty-fourth Statutes at Large, page 539), be, and the same is hereby, amended to read as follows:

Quadrennial election of principal chief, and members of tribal council.

"That there shall be a quadrennial election of officers of the Osage Tribe as follows: A principal chief, an assistant principal chief, and eight members of the Osage tribal council, to succeed the officers elected in the year 1928, said officers to be elected at a general election to be held in the town of Pawhuska, Oklahoma, on the first Monday in June, 1930, and on the first Monday in June each four years thereafter, in the manner to be prescribed by the Commissioner of Indian Affairs, and said officers shall be elected for a period of four years commencing on the 1st day of July following said elections, and in case of vacancy in the office of principal chief or other such officer by death, resignation, or otherwise, the vacancies of the Osage tribal council shall be filled in a manner to be prescribed by the Osage tribal council, and the Secretary of the Interior is hereby authorized to remove from the council any member or members thereof for good cause, to be by him determined, after the party involved has had due notice and opportunity to appear and defend himself, and said tribal government so constituted shall continue in full force and effect to January 1, 1959."

Filling vacancies.

Approved, March 2, 1929.

70TH CONGRESS } HOUSE OF REPRESENTATIVES { REPORT
1st Session } { No. 1901

# AMENDING ACT FOR DIVISION OF LANDS AND FUNDS OF OSAGE INDIANS OF OKLAHOMA

MAY 26, 1928.—Referred to the House Calendar and ordered to be printed

Mr. LEAVITT, from the Committee on Indian Affairs, submitted the following

## REPORT

[To accompany S. 2360]

The Committee on Indian Affairs, to whom was referred the bill (S. 2360) to amend section 1 of the act of Congress of March 3, 1921 (43 Stat. L. 1249), entitled "An act to amend section 3 of the act of Congress of June 28, 1906," entitled "An act for the division of the lands and funds of the Osage Indians of Oklahoma, and for other purposes," having considered the same, report thereon with a recommendation that it do pass with the following amendment:

Strike out all after the enacting clause and insert:

That section 1 of the act of Congress of March 3, 1921 (Forty-first Statutes at Large, page 1249), relating to the Osage Indians of Oklahoma, be, and the same is hereby, amended to read as follows:

"That all that part of the act of June 28, 1906 (Thirty-fourth Statutes at Large, page 539) entitled 'An act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes,' which reserves to the Osage Tribe the oil, gas, coal, or other minerals, covered by the lands for the selection and division of which provision is made in that act is hereby amended so that the oil, gas, coal, or other minerals, covered by said lands are reserved to the Osage Tribe, until the 8th day of April, 1958, and as long thereafter as oil or gas, or other minerals are found in paying quantities, and all royalties and bonuses arising therefrom shall belong to the Osage Tribe of Indians, and shall be disbursed to members of the Osage Tribe or their heirs or assigns as now provided by law, after reserving such amounts as are now or may hereafter be authorized by Congress for specific purposes, and the lands, moneys, and other properties now held in trust or under the supervision of the United States for the Osage Tribe of Indians, the members thereof, or their heirs and assigns shall continue subject to such trust and supervision until January 1, 1959, unless otherwise provided by act of Congress. The Secretary of the Interior and the Osage tribal council are hereby authorized and directed to offer for lease for oil, gas, and other mining purposes any unleased portion of said land in such quantities and at such times as may be deemed for the best interest of the Osage Tribe of Indians: *Provided*, That not less than twenty-five thousand acres shall be offered for lease for oil and gas mining purposes during any one year: *Provided further*, That as to all lands hereafter leased, the regulations governing same and the leases issued

thereon shall contain appropriate provisions for the conservation of the natural gas for its economic use, to the end that the highest percentage of ultimate recovery of both oil and gas may be secured: *Provided, however*, That nothing herein contained shall be construed as affecting any valid existing lease for oil or gas or other minerals.

"Homestead allotments shall remain exempt from taxation while the title remains in the allottee or in his unallotted heirs or devisees of one-half degree or more of Osage Indian blood until January 1, 1959: *Provided*, That the tax-exempt land of any such Indian allottee, heir, or devisee shall not at any time exceed one hundred and sixty acres."

SEC. 2. That section 2 of the act of March 3, 1921 (Forty-first Statutes at Large, page 1249), entitled "An act to amend section 3 of the act of Congress of June 28, 1906, entitled 'An act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes,'" be, and the same is hereby, amended to read as follows:

"The bona fide owner, lessee, or occupant of the surface of lands in the Osage Nation in Oklahoma shall be compensated, as his interest may appear, and under rules and regulations to be prescribed by the Secretary of the Interior, for damages to crops and improvements occasioned by the oil or gas lessees, their servants, or agents in going upon such premises and in carrying on oil or gas mining operations. Such surface owner, lessee, or occupant shall also be compensated, as his interest may appear, and under rules and regulations to be prescribed by the Secretary of the Interior, for such other damages, including those arising out of pollution of ponds or streams and out of injuries to the surface of lands, as are caused by the negligence of the oil or gas lessees, their servants, or agents in developing or operating oil or gas properties in said Osage Nation. The word 'negligence' as used in this act shall mean 'negligence' as defined and construed by the courts of the State of Oklahoma. All claims for damages arising under this section shall be settled by arbitration; but either party shall have the right to appeal to the courts, without consent of the Secretary of the Interior, in the event he is dissatisfied with the award to or against him. The award shall be in writing and shall be filed in the office of the superintendent of the Osage Indian Agency within ten days after it is made, and thereupon the said superintendent shall give the parties written notice thereof by personal service or registered mail. Unless appealed from within sixty days after service or mailing of said notice, the award shall become final. The appeal herein authorized shall consist of filing an original action in any court of competent jurisdiction sitting at the county seat of Osage County, to enlarge, modify, or set aside the award; and in any such action, upon demand of either party, the issues both of law and of fact shall be tried de novo. Arbitration or a bona fide offer in writing to arbitrate shall constitute conditions precedent to the right to sue for such damages."

SEC. 3. That section 1 of the act of Congress of February 27, 1925 (Forty-third Statutes at Large, page 1008), is hereby amended by adding thereto the following:

"The Secretary of the Interior be, and is hereby, authorized, in his discretion, under such rules and regulations as he may prescribe, upon application of any member of the Osage Tribe of Indians not having a certificate of competency, to pay all or any part of the funds held in trust for such Indian: *Provided*, That the Secretary of the Interior shall, within one year after this act is approved, pay to each enrolled Indian of less than half Osage blood, one-fifth part of his or her proportionate trust-fund credit. And such Secretary shall on or before the expiration of ten years from the date of the approval of this act, advance and pay over to such Osage Indian of less than one-half Osage Indian blood, all of the balance appearing to his credit in the Osage Tribal Trust Fund and shall issue to such Indian a certificate of competency: *Provided further*, That when and where any Osage Indian of less than half Osage Indian blood shall owe debts and obligations for necessaries of life, then and in that event the Secretary of the Interior is hereby directed to retain from and not pay out to such Osage Indian debtor 25 per centum of his quarterly dues, to be by the Secretary of the Interior paid in installments upon the now existing claims against such Indian for necessaries of life, such as medicines, doctor bills, food, clothing, dry goods, and for implements and other materials required in the operation of the Indian's farm lands, against which claims the statute of limitations of Oklahoma has not run: But no money shall be retained out of the quarterly allowances due such Osage Indians, by the Secretary of the Interior for any other purpose, without the consent and approval of such Indians. The Secretary of the Interior shall deter-

mine such rules and regulations for the payment of said retained moneys of said Osage Indians, upon such meritorious claims for necessaries of life against which claims the statute of limitations of Oklahoma has not run. But the provisions herein made for payment of debts shall only apply to present existing meritorious claims against which the statute of limitations of Oklahoma has not run: *Provided further*, That the Secretary of the Interior shall by or before the end of five years from the date of the approval of this act, pay to each restricted Osage Indian of less than half Osage blood, who is not incompetent under the laws of the State of Oklahoma, and who is at the date of approval of this act more than twenty-five years of age, the whole of his or her pro rata share of the tribal trust fund then being to the credit of such Indian: *Provided further*, That the Secretary of the Interior shall, in his discretion, pay any present existing meritorious debts and obligations of any restricted Osage Indian, against which debts and claims the statute of limitations of Oklahoma has not run, out of any moneys appearing to the credit of such Osage Indian in the Tribal Trust Fund: *And provided further*, That nothing herein contained shall be construed to interfere in any way with the removal by the Secretary of the Interior of restrictions from and against any Osage Indian at any time."

SEC. 4. That section 2 of the act of Congress approved February 27, 1925 (Forty-third Statutes at Large, page 1011), being an act to amend the act of Congress of March 3, 1921 (Forty-first Statutes at Large, page 1249), be, and the same is hereby, amended to read as follows:

"Upon the death of an Osage Indian of one-half or more Indian blood who does not have a certificate of competency, his or her moneys and funds and other property accrued and accruing to his or her credit and which have heretofore been subject to supervision as provided by law shall be paid to the administrator or executor of the estate of such deceased Indian or direct to his heirs or devisees, in the discretion of the Secretary of the Interior, under regulations to be promulgated by him: *Provided*, That the Secretary of the Interior shall pay to administrators and executors of the estates of such deceased Osage Indians a sufficient amount of money out of such estates to pay all lawful indebtedness and costs and expenses of administration when approved by him; and, out of the shares belonging to heirs or devisees, above referred to, he shall pay the costs and expenses of such heirs or devisees, including attorney fees, when approved by him, in the determination of heirs or contest of wills. Upon the death of any Osage Indian of less than one-half degree of Osage Indian blood or upon the death of an Osage Indian who has a certificate of competency, his moneys and funds and other property accrued and accruing to his credit shall be paid and delivered to the administrator or executor of his estate to be administered upon according to the laws of the State of Oklahoma: *Provided*, That upon the settlement of such estate any funds or property subject to the control or supervision of the Secretary of the Interior on the date of the approval of this act, which have been inherited by or devised to any adult or minor heir or devisee of one-half or more Osage Indian blood who does not have a certificate of competency, and which have been paid or delivered by the Secretary of the Interior to the administrator or executor shall be paid or delivered by such administrator or executor to the Secretary of the Interior for the benefit of such Indian and shall be subject to the supervision of the Secretary, as provided by law."

SEC. 5. The restrictions concerning lands and funds of allotted Osage Indians, as provided in this act and all prior acts now in force, shall apply only to unallotted Osage Indians of one-half or more Osage Indian blood born since July 1, 1907, or after the passage of this act, and to their heirs of one-half or more Osage Indian blood, except that the provisions of section 6 of the act of Congress approved February 27, 1925, with reference to the validity of contracts for debt, shall not apply to any allotted or unallotted Osage Indian of less than one-half degree Indian blood: *Provided*, That the Osage lands and funds and any other property which has heretofore or which may hereafter be held in trust or under supervision of the United States for such Osage Indians of less than one-half degree Indian blood not having a certificate of competency shall not be subject to forced sale to satisfy any debt or obligation contracted or incurred prior to the issuance of a certificate of competency: *Provided further*, That the Secretary of the Interior is hereby authorized, in his discretion to grant a certificate of competency to any unallotted Osage Indian when in the judgment of the said Secretary such member is fully competent and capable of transacting his or her own affairs.

SEC. 6. The first provision of section 1 of the act of February 27, 1925 (Forty-third Statutes at Large, page 1008), entitled "An act to amend the act of Congress of March 3, 1921, entitled 'An act to amend section 3 of the act of Congress

of June 28, 1906, entitled "An act of Congress for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes,'" is hereby amended to read as follows:

"That the Secretary of the Interior shall cause to be paid at the end of each fiscal quarter to each adult member of the Osage Tribe of Indians in Oklahoma having a certificate of competency, his or her pro rata share, either as a member of the tribe or heir or devisee of a deceased member, of the interest on trust funds, the bonus received from the sale of oil or gas leases, the royalties therefrom, and any other moneys due such Indian received during each fiscal quarter, including all moneys received prior to the passage of this act and remaining unpaid; and so long as the accumulated income is sufficient the Secretary of the Interior shall cause to be paid to the adult members of said tribe not having a certificate of competency $1,500 quarterly, except where such adult members have legal guardians, in which case the amounts provided for herein may be paid to the legal guardian or direct to such Indian in the discretion of the Secretary of the Interior the total amounts of such payments, however, shall not exceed $1,500 quarterly except as hereinafter provided; and shall cause to be paid for the maintenance and education, to either one of the parents or legal guardians actually having personally in charge, enrolled or unenrolled, minor member under twenty-one years of age, and above eighteen years of age, $1,500 quarterly out of the income of each of said minors, and out of the income of minors under eighteen years of age, $750 quarterly, and so long as the accumulated income of the parent or parents of a minor who has no income or whose income is less than $750 per quarter is sufficient, shall cause to be paid to either of said parents having the care and custody of such minor, $750 quarterly, or such proportion thereof as the income of such minor may be less than $750, in addition to the allowances above provided for such parents. Rentals due such adult members from their lands and their minor children's lands and all income from such adults' investments shall be paid to them in addition to the allowance above provided. All payments to legal guardians of Osage Indians shall be expended subject to the joint approval in writing of the court and the superintendent of the Osage Agency. All payments to adults not having certificates of competency, including amounts paid for each minor, shall, in case the Secretary of the Interior finds that such adults are wasting or squandering said income, be subject to the supervision of the superintendent of the Osage Agency."

SEC. 7. That section 9 of the act of Congress approved June 28, 1906 (Thirty-fourth Statutes at Large, page 539), be, and the same is hereby, amended to read as follows:

"That there shall be a quadrennial election of officers of the Osage Tribe as follows: A principal chief, an assistant principal chief, and eight members of the Osage tribal council, to succeed the officers elected in the year 1926, said officers to be elected at a general election to be held in the town of Pawhuska, Oklahoma, on the first Monday in June, 1928, and on the first Monday in June each four years thereafter, in the manner to be prescribed by the Commissioner of Indian Affairs, and said officers shall be elected for a period of four years commencing on the 1st day of July following said elections, and in case of vacancy in the office of principal chief by death, resignation, or otherwise, the vacancies of the Osage tribal council shall be filled in a manner to be prescribed by the Osage tribal council; and the Secretary of the Interior is hereby authorized to remove from the council any member or members thereof for good cause, to be by him determined, after the party involved has had due notice and opportunity to appear and defend himself, and said tribal government so constituted shall continue in full force and effect to January 1, 1959."

On January 13, 1928, the Member within whose district the Osage Reservation lies introduced H. R. 9294, which embodied certain legislation greatly desired by members of that tribe.

The bill as introduced was the result of several months' study on the part of the Indians and the Office of Indian Affairs. A subcommittee of this committee was named to consider the bill and a delegation of Osages, including a number of members of the tribal council, appeared and expressed their views.

The delegation returned to Oklahoma and once more came to Washington following consideration of the bill with other members of the tribe, persons directly affected in a business way, and others.

They this time asked that certain changes be made in the original bill. Hearings were held by the subcommittee and the full committee. The Indians, their superintendent, and representatives of the Office of Indian Affairs were heard, as were representatives of businesses operating upon the reservation and who would be affected by the operation of the provisions of the proposed legislation.

Subsequent to this second hearing, in which the Indians took part, extended discussion was had by the subcommittee and again by the full committee. The more desirable provisions of each proposal submitted are contained in the above amendment. The full situation was not covered by the Senate bill as it passed that body and it has been believed best in the light of facts presented to make the changes indicated.

The necessity for legislation of this kind is well set forth in the following letter from the Secretary of the Interior with regard to H. R. 9294. The present bill is the same in its purposes, but is in the form worked out in numerous conferences and follows quite closely the form submitted by the Indians themselves:

DEPARTMENT OF THE INTERIOR,
*Washington, February 4, 1928.*

Hon. SCOTT LEAVITT,
*Chairman Committee on Indian Affairs,*
*House of Representatives.*

MY DEAR MR. LEAVITT: Reference is made to your letter of January 16, 1928, asking for a report on H. R. 9294, relating to the tribal and individual affairs of the Indians of the Osage Reservation, Okla.

By section 1 of the act of March 3, 1921 (41 Stat. L. 1249), the minerals underlying the Osage Reservation are reserved for the benefit of the Osage Tribe in common for a period ending April 7, 1946. By the same section of the said act all valid, existing oil and gas leases on April 7, 1931—prior to which date it is provided all the unleased lands of the reservation shall be offered for lease—are extended to April 8, 1946, and as much longer thereafter as oil or gas is found in paying quantities. One of the principal effects of section 1 of the bill under consideration would be to extend the period of restrictions on the minerals of lands that may not be under lease on April 7, 1931, for a period equal to that on minerals where the lands are then under lease. This would seem to be a desirable provision and is consistent with the present law regarding the continuance of leases that may be in force April 7, 1931.

Section 1 of the bill also provides that the Secretary of the Interior and the Osage tribal council may offer mineral leases of any unleased lands on the reservation at such time and in such quantities as may be deemed for the best interests of the Osage Tribe. By letter to you of January 6, 1928, a draft of bill was submitted and recommended for favorable consideration covering the matter of offering mineral lands for lease on the Osage Reservation. It was recommended that the Secretary of the Interior be authorized to reduce the acreage to be offered under the act of March 3, 1921, or to suspend the offering of any new leases for a period of not more than two years at any one time when an overproduction of oil or inadequate prices in his opinion made such action desirable in the interests of the Osage Tribe. This was made subject to the provision that the entire unleased area on the Osage Reservation be offered for lease by April 8, 1936. Under the act of March 3, 1921, supra, all the unleased acreage of the reservation must be offered for lease prior to April 8, 1931. It is therefore necessary to offer each year approximately 100,000 acres. Should favorable action be taken on H. R. 9294, there will be no necessity for the legislation recommended in my letter of January 6, 1928.

I desire to suggest the following language in lieu of that contained in the bill on page 2, beginning with line 20 and ending with the word "homestead," in line 25, page 2:

"Homestead allotments belonging to the original allottee, and which may be inherited, obtained by devise, gift, or in case an Osage Indian has no homestead and it is deemed advisable to purchase the same with funds held in trust, shall

remain nontaxable until otherwise provided by the Congress: *Provided*, That this exemption shall apply to not exceeding 160 acres of land to be designated by the Indian owner, or by the Secretary of the Interior in the case of purchased lands, as his or her homestead."

This change in the wording of the bill would place Osage homesteads hereafter purchased with restricted funds in the same status as to taxation as the homesteads heretofore acquired.

Section 2 of the bill relates to the settlement of damages between a mineral lessee and the surface owner, occupant, or lessee. The regulations of the department prescribed pursuant to section 2 of the act of March 3, 1921, relating to this matter provide for the appointment of a board of arbitration to consider and settle questions of disputed damages arising between mineral lessees and surface owners or lessees. In general, these regulations have been satisfactory. Several cases have arisen where the surface owners or lessees attempted to interfere with the operations of the oil and gas lessees properly entitled to possession of the lands, and in which it was found necessary to institute court proceedings looking to obtaining restraining orders. The provisions of H. R. 9294 appear to be somewhat broader and more specific in terms than the law relating to this subject which it is proposed to amend. The present law provides that the surface owner or lessee may appeal from the award of the board of arbitration. Should the provision now under consideration be enacted, either party concerned in the award would have the right of appeal. Arbitration or a bona fide offer in writing to arbitrate, by the terms of the bill, is made a condition precedent to a resort to the courts by either party, which is not the case under existing law. H. R. 9294 would specifically clothe the United States district court having jurisdiction in Osage County, Okla., with exclusive original jurisdiction in all such cases where court action is to be had, whereas the question of jurisdiction as between the Oklahoma State and Federal courts is left open in the existing statute.

Section 3 of the bill would authorize the Secretary of the Interior, in his discretion and under prescribed rules and regulations, to pay to an Osage Indian to whom no certificate of competency has been issued, any or all of such Indian's trust funds upon application therefor by the Indian. The virtue of this provision, it is believed, lies in the fact that it will permit the placing in the hands of an Indian a limited amount of his funds for independent use as a means of gaining experience in the conduct of his own business and affairs, which would no doubt be a valuable training for him before he is given a certificate of competency and all of his trust funds turned over to him.

Section 4 of the bill would make little, if any, material change in the present law relating to the handling of Osage inherited funds. It is believed that it clarifies the present law on the subject, and is, therefore, desirable from an administrative point of view.

Section 5 of H. R. 9294 would apply the present restrictions as to lands and funds of Osage allottees to the lands and funds of Osage Indian children born since July 1, 1907, and their heirs, which children could not be enrolled under the act of June 28, 1906 (34 Stat. 539). This is a provision for the supervision and administration of inherited property of Osage children. It is considered a wise provision as many children born since the closing of the rolls become heirs to large estates and sums of money, and supervision is as necessary in many such cases as it was in the case of their parents.

Under section 6 of the bill the tribal government (organization) provided for in section 9 of the act of June 28, 1906 (34 Stat. 539), is to be continued, "until otherwise provided by Congress." It is quite necessary that the tribal organization should continue to exist so long as the tribal mineral rights obtain, as the law provides for a council in connection with oil and gas mining leases. It is suggested, however, that in lieu of the words "until otherwise provided by Congress" there is substituted the words "for so long as the minerals are reserved for the use and benefit of the Osage Tribe."

On page 5 of the bill, in line 16, after the word "Osage", it is recommended that the phrase "or other" be inserted. This is desirable because of the mixture of tribal blood when Osages marry members of other Indian tribes.

If amended as herein suggested, it is recommended that the bill be given favorable consideration.

Very truly yours,

HUBERT WORK.

# Calendar No. 276

70TH CONGRESS } SENATE { REPORT
1st Session } { No. 272

## OIL AND GAS LEASES ON OSAGE INDIAN LANDS

FEBRUARY 8, 1928.—Ordered to be printed

Mr. THOMAS, from the Committee on Indian Affairs, submitted the following

## REPORT

[To accompany S. 2360]

The Committee on Indian Affairs, to whom was referred the bill (S. 2360) to amend section 1 of the act of Congress of March 3, 1921 (41 Stat. L. 1249), entitled "An act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes," having considered the same, report favorably thereon with the recommendation that the bill do pass without amendment.

This bill is recommended by the Secretary of the Interior as is shown in letter from him under date of January 6, 1928, which is attached hereto and made a part of this report.

DEPARTMENT OF THE INTERIOR,
*Washington, January 6, 1928.*

Hon. LYNN J. FRAZIER,
*Chairman Committee on Indian Affairs,*
*United States Senate.*

MY DEAR SENATOR FRAZIER: Your attention is invited to section 1 of the act of March 3, 1921 (41 Stat. 1249), which authorizes and directs the Secretary of the Interior and the tribal council of the Osage Tribe of Indians of Oklahoma to offer for lease for oil and gas mining purposes all of the remaining unleased portion of the Osage Indian lands prior to April 8, 1931, offering the same annually at the rate of not less than one-tenth of the unleased area.

Practically the entire Osage Reservation is under lease for gas mining purposes, and there has been offered for lease for oil mining purposes each year since the passage of the act of March 3, 1921, approximately 100,000 acres, as there were at that time about 1,000,000 acres not under lease for oil mining purposes. Under the law about 100,000 acres of land must be offered for oil leases each year regardless of the state of the market. There has been an overproduction of oil in the country, and it is believed that the best interests of the Osage Indians, the oil industry, and the public generally, would be served by amending the law so as to permit the Secretary of the Interior to exercise some degree of discretion in the offering of leases. Under the act of March 3, 1921, the title of

Case 1:99-cv-00550-ECH Document 309-23 Filed 06/30/2008 Page 13 of 13



the Osage Tribe to all the mineral deposits was extended to April 8, 1946, and it is believed that if the law be amended so as to give the lessees a minimum of 10 years within which to extract the oil under their leases prior to that date, the rights of the Osages to the royalties on production would be properly safeguarded. A draft of a bill is therefore submitted which authorizes the Secretary of the Interior, in his discretion, to reduce the area offered annually, the entire unleased area, however, to be offered for oil leases not later than April 8, 1936. Early and favorable consideration of the draft of the bill is respectfully recommended.

Very truly yours,

HUBERT WORK.