be heard has been afforded them, subject to appeal to the Secretary of the Interior within 30 days from notice of decision of the Superintendent.

10. When oil lessees manufacture casing-head gasoline from casing-head gas produced from their own leases; payment for the royalty interest of the lessor shall be at the rate of 16 2-3 per cent (or the royalty specified in the lease) to be computed on 33 1-3 per cent of the gasoline extracted as provided in paragraph 6, and which shall be subject to change as provided in paragraph 9.

11. The gasoline content of all casing-head gas per 1000 cubic feet for royalty purposes shall be determined by dividing the total amount of gasoline extracted, marketed, or utilized during any month, after deducting all naptha or other products used for blending purposes, by the amount of casing-head gas used in such plant, as shown by meters. In cases where one gasoline plant purchases casing-head gas from more than one oil lessee and it is impossible to determine from the plant operations the gasoline content of casing-head gas from any particular lease, they may use any physical field test desired to determine the productivity for the purpose of prorating the 33 1-3 per cent of the value of all gasoline extracted from the different leases, but in all cases the minimum royalty shall be 16 2-3 per cent of 33 1-3 per cent of the gross amount of gasoline extracted whether paid by the oil lessee or by the operator of the gasoline plant when a division order has been executed and approved by the Superintendent.

12. All casing-head gas shall be metered and computed on a basis of 10 ounces above atmospheric pressure, the location and type of meters to be approved by the Superintendent or Inspector, and where proportional meters are used they shall be equipped with volumetric recording gauges. All meters and charts shall be open to inspection at any time by the inspectors in the Indian Service, or whoever the Superintendent may designate for such purpose.

13. Sworn statements shall be made to the Superintendent by lessees, and owners or persons in charge of the gasoline plants to whom casing-head gas is sold, showing: (1) volume of casing-head gas purchased from each lessee, (2) the total amount of gasoline extracted in any plant and where casing-head gas is purchased from more than one oil lessee method used to determine the productivity of the casing-head gas purchased from the different lessees, (3) the price at which the merchantable or blended gasoline is sold and dates of sale (4) the amount paid to each lessee. The statements shall be made not later than the 25th day of each month and shall cover the preceding month, and at the same time payment shall be made of royalty interest to the Superintendent by the oil lessee, or by the purchaser where division orders have been executed and approved by the Superintendent. The books of both lessee and purchaser shall be open to inspection on order of the Superintendent so far as to test the accuracy of the sworn statements referred to above, and to determine whether the royalty interests are fully protected.

14. Oil lessees shall secure the consent of the Superintendent to manufacture gasoline from casing-head gas produced on their approved leases. The productivity of the casing-head gas shall be deter-

Case 1:99-cv-00550-ECH Document 309-25 Filed 06/30/2008 Page 2 of 17



mined as prescribed in paragraph 11, and sworn statements, as indicated in paragraph 13, accompanied by remittance of the royalty interest shall be mailed to the Superintendent not later than the 25th day of each month for casing-head gas utilized for the manufacture of casing-head gasoline during the preceding month, the computation to be made on the basis indicated in paragraph 6.

15. When division orders or contracts are executed and approved for the payment of the royalty interest, same shall not relieve the lessees from responsibility for payment should the purchaser fail, neglect, or refuse to pay the royalty when it becomes due.

16. The residue or dry gas remaining after extracting the gasoline, not used for development purposes on the leases where it was produced or adjoining leases owned by the same lessee in Osage County, shall be delivered to the gas lessee as provided in paragraph 64 of the rules and regulations governing leases in Osage County, and all contracts for the sale of casing-head gas shall contain a provision to such effect.

17. Where any casing-head gas is sold to gasoline plants located outside of Osage County tests shall be made under Government supervision to determine the gasoline content, and when deemed advisable tests shall be made of all casing-head gas used in any such plant in order to determine whether the physical field test of gas from Osage County shows as large a gasoline content as is extracted in actual plant operations, and after such tests have been made the Superintendent shall determine the productivity of the gas from Osage County.

18. Where non royalty oil or gas is used for operating purposes by lessee, the Superintendent may require to be installed and used an efficient burner of a type to be approved by him.

19. All gas utilized by oil or gas lessees shall be metered with the exception of casing-head gas coming from wells so located in the opinion of the Oil and Gas Inspector that it would be impracticable to gather and utilize same for royalty purposes, and as provided in Paragraph 64 of these regulations. Gas not metered but utilized for lease operations shall be estimated as to quantity and report thereof made monthly on forms which will be furnished by the Superintendent upon application, such report to be prepared so as to reach the Superintendent's office not later than the 25th day of the succeeding month for which the report is made.

ACREAGE

20. There is no limitation to the number of acres any leasee may acquire, by lease or assignment, for oil mining purposes on the West Side of the Osage Indian Reservation. On the East Side, no person, firm, partnership, joint stock association, or corporation will be permitted to acquire or hold any interest in Osage lands for oil-mining purposes by lease, assignment, drilling contract, or otherwise in excess of 20,000 acres, except that any lessee in addition to acreage theretofore obtained, may also acquire by assignment without limitation as to acreage developed oil leases where wells on any quarter section are capable of averaging not more than three barrels of oil per well per day.

HOW TO ACQUIRE LEASES OF TRIBAL LANDS

21. Should any parties desire to have any particular tract of land offered for lease, request should be filed with the Superintendent who will consider same when preparing schedule of land to be offered and submitted to the Commissioner of Indian Affairs.

The Commissioner of Indian Affairs shall cause to be published, in such manner as shall be deemed appropriate, notices that specific tracts of Osage lands will be offered at public auction for lease to the highest bidder, in accordance with such terms and conditions as may be approved by the Secretary of the Interior and indicated in the advertisement.

22. Upon being notified of the acceptance of its bid, a corporation shall file a certified copy of articles of incorporation, and evidence showing compliance with local corporation laws if a foreign corporation: Provided, That if any such papers have already been filed a statement to that effect may be submitted.

A corporation must also file with its first lease, and at such other times as the Secretary of the Interior may direct, a list in duplicate of all officers, directors, and of such stockholders, as may be required with their post-office addresses, and showing the number of shares of capital stock held by each and whether held for themselves or in trust, together with a sworn statement of its proper officer, showing:

(a) The total number of shares of the capital stock actually issued, the number of shares actually sold and specifically the amount of cash paid into the treasury on the stock sold, or, if paid in property, state kind, quantity, and value of same paid.

(b) Of the stock sold, how much per share remains unpaid and subject to assessment.

(c) How much cash the company has in its treasury and elsewhere, and from what sources it was received.

(d) What property, exclusive of cash, is owned by the company, and its value.

(e) What the total indebtedness of the company is and specifically the nature of its obligations.

Leases made by corporations shall be accompanied by an affidavit (Form E) showing the authority of its officers to execute leases, bonds, and other papers.

23. Lessees and those acting under them shall not conduct operations within or upon any homestead selection without the written consent of the Secretary of the Interior.

If the allottee is unwilling to permit operations on his homestead, the superintendent will direct the inspector to make an examination of the premises with the allottee and the lessee, or his representative, and should the inspector be of the opinion that the interests of the Osage Tribe require that the particular tract be developed he will endeavor to have the parties agree upon the terms under which operations on the homestead may be conducted.

In the event the allottee and the lessee can not, with the assistance of the inspector, agree on the matter, the allottee shall be permitted to go before the Osage tribal council, and the council, after hearing the allottee, the lessee, and the inspector, shall make such recommendation as it deems proper. Guardians, legal or natural, may repre-

sent their Indian wards, and where no one is authorized or where no person is deemed by the superintendent to be a proper party to speak for a minor or person of unsound mind or of feeble understanding, the principal chief of the Osage Tribe shall represent them.

Where any interested party does not appear before the Council, either in person or by representative, when notified by the Superintendent, or the Council fails to act in the matter within ten days after being referred to them, the Superintendent shall thereupon submit a report in the premises and recommendation to the Commissioner of Indian Affairs for consideration and appropriate action.

24. Rental in lieu of development shall not begin to run on any homestead selection until the consent of the Secretary of the Interior to operations on such homestead shall have been given.

25. Each and every lessee and assignee shall, from the date of approval of lease or assignment, maintain an office at Pawhuska, Okla., with an agent upon whom service of process may be held in conformity with the laws of the State of Oklahoma, and who shall have authority to represent and speak for the lessee or assignee in controversies affecting any individual member of the Osage Tribe.

Where several parties own a lease jointly, only one representative or agent need be designated whose duties shall be to act for all parties concerned. Designation of such representative should be made by the party in charge of operations.

In the event of the incapacity or absence from the county of such designated local or resident representative, the lessee shall appoint some person to serve in his stead, and in the absence of such representative or of notice of the appointment of a substitute any employee of the lessee upon the leased premises, or the contractor or other person in charge of drilling or related operations thereon, shall be considered the representative of the lessee for the purpose of service of orders or notices as herein provided, and service upon any such employee, contractor, or other person shall be deemed service upon the lease.

26. Lessee shall comply with all orders or instructions issued by the superintendent or inspector within the time specified, and shall allow the lessor and his agents, or any authorized representative of the Secretary of the Interior, to enter, from time to time, upon and into all parts of the leased premises for the purpose of inspection; and shall further agree to keep a full and correct account of all operations, receipts, and disbursements and make reports thereof, as herein required, and their books and records, showing manner of operations and persons interested, shall be open at all times for the examination of any authorized representative of the superintendent or of the Secretary of the Interior.

27. Royalties on all oil and gas, included casing-head gas or on gasoline manufactured therefrom, produced in any month, shall be paid on or before the 25th of the month next succeeding by either purchaser or lessee. Failure to so remit will subject the lessee to fines as hereinafter indicated and also subject division order to cancellation. Lessees shall also furnish monthly sworn reports covering all operations whether there has been production or not, indicating therein the total amount of oil, gas, or gasoline sold and not merely their working interest, and also the dates of discovery and beginning of

utilization of gas from gas wells. The lessee may include in one sworn statement all leases upon which dry holes have been drilled or the wells have ceased to produce.

ASSIGNMENTS

28. Approved leases or any interest therein may be sublet, transfered, or assigned with the consent and approval of the Secretary of the Interior, and not otherwise. Subleases, transfers, or assignments, when so approved, shall be subject to the terms and conditions of the original leases and the regulations under which such leases were approved, as well as to such additional requirements as the Secretary of the Interior may prescribe. The sublessee, transferee, or assignee shall furnish with his sublease, transfer, or assignment a satisfactory bond as hereinbefore prescribed in connection with leases.

Any attempt to sublease, transfer, or assign an approved lease or any interest therein without the consent and approval of the Secretary of the Interior shall be absolutely void and shall subject the original lease to cancellation in the discretion of such Secretary.

29. Assignments of any lease or any interest therein by drilling contract or otherwise shall be filed with the Superintendent within 30 days from date of such assignment by the assignor, except in instances where the necessary papers cannot be executed within such time in which event, however, formal notice shall be filed within the 30 days stipulated and where necessary the Superintendent may grant 15 days additional: Provided, that any oil or gas lessee holding an approved lease shall at the date of making any contract or agreement in writing or otherwise to assign or transfer any interest in any lease approved to him immediately, on the same date, advise the Superintendent of such proposed transfer or assignment which he is making subject to approval of the Department, giving in full the name and address of the party and the interest he proposes assigning. Any assignment made without previous notice to the Superintendent will not receive consideration except where authorized by the Department.

In case of contracts made by oil lessees for drilling wells which contracts provide that in consideration of drilling a well free of cost to the lease owner that should such well produce oil a subsequent assignment of an interest in such lease will be made subject to the approval of the Department, the Superintendent is hereby authorized to approve such drilling contracts with a stipulation that such approval does not in any way bind the Department to approve formal assignments that may thereafter be submitted and that such approval merely authorizes the drilling contractor to enter into possession of the lease for the purpose of development work and the formal assignment shall thereafter be submitted for approval of the Secretary of the Interior and will be considered on the merits of each case independent of the approval by the Superintendent of drilling contracts.

30. Wherever notice is provided for in these regulations, unless otherwise specifically stated, it shall be sufficient if notice has been mailed to the last known place of address of the party, and time shall begin to run from the day next ensuing after the mailing or from the date of delivery of personal notice; but where the party is outside the State of Oklahoma, the superintendent may, in his discretion, increase the time allowed.

## OPERATIONS

31. No operations shall be permitted upon any tract of land until a lease covering such tract shall have been approved by the Secretary of the Interior, or such operations specifically authorized by him.

32. Approved oil and gas leases provide in part:

During operations the lessee shall pay all damages for the use of the surface, other than that included in the location and tanksite, all damages to any growing crops, or any improvements on the lands and all other damages as may be occasioned by reason of operations. Such damages shall be apportioned among the parties interested in the surface, whether as owner, lessee, or otherwise, as the parties may mutually agree or as their interests may appear. If the parties are unable to agree concerning damages, the same shall be determined by arbitration, but nothing herein contained shall be construed to deny to the surface owner or lessee the right to appeal to the courts without the consent of the Secretary of the Interior, in the event he is dissatisfied with the amount of damages awarded him.

Any person, other than a lessee or an allottee or the heirs of a deceased allottee, claiming an interest in any leased tract, or in damages thereto, must furnish to the superintendent a statement in writing showing his interest, and failure to furnish such statement shall constitute a waiver of notice and estop said person from claiming any part of such damages after the same shall have been disbursed.

33. Before commencing operations on lands embraced in any approved oil or gas mining lease the mineral lessee shall pay, tender or deposit the proper well location fee as provided in the lease and these regulations, after which such lessee shall be entitled to enter upon the lands covered by the lease for mining purposes. Before commencing operations on any subsequent well on such quarter section the mining lessee shall pay, tender or deposit the proper location fee therefor.

Where the surface owner is a restricted Indian, adult or minor, well location fee shall be paid to the Superintendent Osage Agency for such Indian. All other surface owners, whether Indians or whites, shall be paid or tendered such fees direct, and where such surface owners are not residents of Osage County nor have a representative located therein, such payments shall be made or tendered by check, postage prepaid, to last known address of said surface owner at least five days before commencing drilling operations on any well; Provided, that if the address of the proper parties are unknown, such well location fee shall be deposited to the credit of the surface owner in a bank at Pawhuska, Oklahoma, at which time the mining lessee shall notify the Superintendent of Osage Agency of such deposit and the reason therefor. Should interested parties be unable to agree upon the character of land embraced in any well location site and whether fee should be $100.00 or $35.00, mining lessee in the manner above provided shall pay, or tender the minimum fee of $35.00 and at the same time deposit in escrow in a bank at Pawhuska, Oklahoma, the remaining $65.00, together with the $35.00 previously tendered (where returned to him), and notify the surface owner accordingly. Thereupon the dispute between the parties shall be arbitrated and said deposit in escrow shall be made upon the condition that should the arbitrators' award be in favor of the surface owner the amount deposited shall be paid to him. Should the award be in favor of the

mineral lessee the sum of $65.00 shall be returned to him and $35.00 shall again be tendered the surface owner.

34. Prior to beginning operations of any kind or moving any rig material, pipe or other drilling equipment on lands embraced in any approved oil or gas lease, the mineral lessee shall meet with the surface owner of such tract if a resident of Osage County, Oklahoma, and at such meeting the mining lessee shall comply with the following requirements:

(a) Indicate the location of the first well to be drilled by him on said quarter section.

(b) Indicate the location of any additional wells which he at the time may contemplate drilling.

(c) Impart to said surface owner the name and address of his foreman or superintendent upon whom the surface owner shall serve any claim for damages which he may sustain by reason of the development and operation of said lands by the mineral lessee, and in the event such foreman or superintendent shall leave the employ of the mineral lessee or be removed to another district then the mineral lessee shall notify the surface owner of the name and address of his successor, to the end that any claim for damages sustained by the surface owner may be promptly served upon the mineral lessee.

(d) Advise the surface owner that should he or his tenant or lessee sustain damages by reason of the development and operation of said land by the mining lessee and in the event the parties are unable to agree upon the mining lessee's liability therefor and upon the amount of damages resulting therefrom, the mining lessee shall submit the matter to arbitration as provided in these regulations; Provided, that within ten days from the date of such meeting the mining lessee shall file with the Superintendent of the Osage Agency a written report of such meeting showing the date thereof and the name of the surface owner taking part therein. Failure to so notify the Superintendent shall subject the mineral lessee to a fine of $5.00 per day for each day's delay within the discretion of the Superintendent; Provided further, that where the surface owner is a restricted Indian the mineral lessee in the manner provided above shall meet with the Superintendent of the Osage Agency. Where the surface owner is not a restricted Indian and not a resident of Osage County, Oklahoma, then the Superintendent of Osage Agency shall be so advised whereupon the mineral lessee shall have the right to proceed with operations; Provided, however, that in the event the Superintendent should so arrange with the surface owner or his tenant, the mineral lessee or his representative within five days after receipt of notice from the Superintendent shall meet with the surface owner or his tenant on the leased premises and arrange for procedure as indicated in this paragraph.

35. Where the surface owner or his lessee suffers damages on account of the operations of any oil or gas lessee, procedure for recovery shall be as follows:

(a) The party or parties aggrieved shall within ten (10) days after the discovery of any such damages, or within such extended time as the Superintendent of the Osage Indian Agency may grant,

serve the oil or gas lessee, or the foreman or superintendent named by him under paragraph 34 hereof, with written notice setting forth the nature of alleged damages, the date when the same were sustained, as nearly as possible, together with the names of the party or parties causing the same, if obtainable, and the amount of damages resulting therefrom. It is not intended by this requirement to limit the time within which action may be brought in the courts to less than the ninety-day period allowed by section 2 of the act of March 2, 1929, but it is intended to provide for an early examination of the property damaged by all parties interested to the end that the best possible evidence, much of which due to the nature of the damages or the property damaged, will be gradually obliterated and completely lost with the passage of time, be preserved for the board of arbitration or the court in event of failure of the parties to settle the claim by arbitration.

(b) In cases where such alleged damages are not amicably adjusted at the time of such notice, the oil or gas lessee or his representative shall within twenty (20) days from receipt of such notice seek an amicable adjustment of the claim with the party or parties aggrieved. If the claimant is a restricted Indian, and should a settlement result, a copy of such settlement agreement shall be filed in the Osage Agency and the damages agreed upon when approved by the Superintendent shall be paid to the Superintendent of the Osage Agency, for the benefit of said restricted Indian.

(c) Should the parties fail to adjust the claim within the twenty (20) days specified, then within ten (10) days thereafter each of the interested parties shall appoint an arbitrator who immediately upon their appointment shall agree upon a third arbitrator; and in the event the two arbitrators shall fail to agree upon a third arbitrator within ten (10) days, they shall immediately notify the parties in interest of such fact and if said parties in interest cannot agree upon a third arbitrator within five (5) days after receipt of such notice, the condition precedent as provided by the act of March 2, 1929, shall be considered as having been complied with and either party shall have the right to resort to a court of competent jurisdiction.

(d) As soon as the third arbitrator is appointed the arbitrators shall meet, hear the evidence and arguments of the parties, examine the lands, crops, improvements, or other property alleged to have been injured, and within ten days from the date of the final submission of the controversy they shall render their award. The arbitrators shall be disinterested persons and the fees and expenses of the third arbitrator shall be borne equally by the claimant and the mining lessee; the mining lessee to pay the fees and expenses of the arbitrator appointed by him and the claimant to pay the fee and expenses of the arbitrator appointed by him.

(e) When an act of an oil or gas lessee or any of his employees results in injury to both the surface owner and his lessee, the parties aggrieved shall join in the appointment of an arbitrator, and where the injury complained of is chargeable to one or more oil or gas lessees, such lessees shall join in the appointment of an arbitrator.

(f) Any two of the arbitrators may make an award, which shall be in writing, and forthwith shall be served upon the parties in interest. Each party shall have ninety days from the date of such

service in which to file an action in a court of competent jurisdiction to enlarge, modify or set aside said award. If no such action is filed within said time, and if the award be against the oil or gas lessee, he shall pay the same together with interest at the rate of six per cent per annum from date of award, within ten (10) days after the expiration of said period for appeal, and in case of his failure to do so, in the discretion of the Superintendent, shall be subject to a penalty of ten ($10.00) dollars per day for each day thereafter that he remains in default.

36. On receipt of complaint from any surface owner or his lessee, the Superintendent of Osage Agency after investigation and where action is deemed advisable, shall require any oil or gas lessee within ten days from receipt of such notice, to enclose slush pits, earthen tanks or reservoirs for salt water or B. S. with a substantial four-wire fence and shall maintain same during the time such pits or reservoirs are in use, and this regulation shall apply to slush pits, earthen tanks or reservoirs now in use, as well as to those which may be constructed in the future, provided this regulation shall not apply where the mineral lessee owns the surface of the land covered by his lease or has an agricultural or grazing lease covering the same. Failure to comply with the requirements of this paragraph will subject the lessee to a fine of $5.00 for each day's delay.

37. Surface owners shall notify their lessees or tenants of these regulations and of the procedure necessary in all cases of alleged damages.

38. Where surface lessees or tenants represent the surface owner they shall be so authorized in writing.

39. Oil and gas lessees may with the approval of the Superintendent use water from streams and natural water courses to the extent that same does not diminish the supply below the requirements of the surface owner from whose land the water is taken. When such water supply is located off the lease upon which the water is to be used, the oil or gas lessee may lay necessary lines across intervening lands to obtain such water. Any damage resulting from laying such water lines shall be settled by arbitration as provided in Section 35.

## POWERS AND DUTIES OF INSPECTORS

It shall be the duty of the inspector—

40. To visit from time to time leased lands where oil and gas mining operations are being conducted, and to inspect and supervise such operations with a view to preventing waste of oil and gas, damage to oil, gas, or water bearing formations, or to coal measures or other mineral bearing deposits, or injury to property or life, in accordance with the provisions of these regulations.

41. To make reports to the superintendent and to the Bureau of Mines as to the general conditions of the leases, property, and the manner in which operations are being conducted and his orders complied with.

42. To consult and advise with the superintendent as to the condition of the leased lands, and to submit information and recommendations from time to time for safeguarding and protecting the

property of the lessor and securing compliance with the provisions of these regulations.

43. To give such orders or notices as may be necessary to secure compliance with the regulations and to issue all necessary instructions or orders to lessees to stop or modify such methods or practices as he may consider contrary to the provisions of such regulations.

44. To modify or prohibit the use or continuance of any operation or method which, in his opinion, is causing or is likely to cause any surface or underground waste of oil or gas, or injury to any oil, gas, water, coal, or other mineral formation, or which is dangerous to life or property, or in violation of the provisions of these regulations.

45. To prescribe, subject to the approval of the superintendent, the manner and form in which all records or reports called for by these regulations shall be made by the lessee.

46. To prohibit the drilling of any well into any producing sand when in his opinion and with the approval of the superintendent the marketing facilities are inadequate, or insufficient provision has been made for controlling the flow of oil or gas reasonably to be expected therefrom, until such time as suitable provision can be made.

47. To prescribe or approve the methods of drilling wells through coal measures or other mineral deposits.

48. To determine when and under what conditions a producing well may be drilled deeper, and under what conditions a producing well, or sand, may be abandoned.

49. To require that tests shall be made to detect waste of oil or gas or the presence of water in a well, and to prescribe or approve the methods of conducting such tests.

50. To require that any condition existing subsequent to the completion of a well which is causing, or is likely to cause, damage to an oil, gas, or water bearing formation, or to coal measures, or other mineral deposits, or which is dangerous to life or property, be corrected as he may prescribe or approve.

51. To approve the type or size of separators used to separate the oil, gas, or water coming from a well.

52. The inspector may limit the percentage of the open-flow capacity of any well which may be utilized when, in his opinion, such action is necessary to properly protect the gas-producing formation.

53. The inspector shall be the sole judge of whether his orders have been fully complied with and carried out.

54. Five days prior to the commencement of drilling operations lessee shall submit, on forms to be furnished by the superintendent, a report in duplicate showing the location of the proposed wells.

55. Lessee shall keep upon the leased premises accurate records of the drilling, redrilling, or deepening of all wells showing all the formations drilled through and casing used during the drilling of such wells, and upon the completion of such wells, copies of such records shall be transmitted to the Superintendent by the lessee within ten days after the first completion of any well, and of any further drilling thereafter, and a failure to so furnish report within the time pre-

scribed shall be considered a violation of the regulations. The lessee or any employee on the leased premises shall immediately furnish such information to the inspector upon his request. In connection therewith, it will be held that such completion report is to be filed within ten days after any well is shot, or is producing natural, or being pumped, and if not then finally completed with tubing, etc., a subsequent report to be filed thereafter.

56. Lessee shall furnish on the 1st day of January of each year and such other times as required, a plat, in manner and form as prescribed by the superintendent, showing all wells, active or abandoned, on the leased lands, and other related information. Blank plats will be furnished upon application.

57. Lessee shall clearly and permanently mark all rigs or wells in a conspicuous place with the name of the lessee and the number or designation of the well, and shall take all necessary precautions for the preservation of these markings.

58. Lessee shall not drill within 300 feet of boundary line of leased lands, except with the consent of the superintendent. Lessee shall not locate any well or tank within 200 feet of any public highway or any building used as a dwelling, granary, barn, or established watering place, except with the written permission of the superintendent.

59. Lessee shall notify the superintendent, in advance of intention to use the mudfluid process of drilling, so that the inspector may approve the method and material to be used, in the event the operator is not familiar with this process.

60. Lessee shall provide two properly prepared slush pits, into one of which he must deposit sand pumpings and other materials extracted from the well during the process of drilling, but such material as is suitable for the mudding of a well shall be run into the other pit. The construction of such pits shall be subject to the approval of the inspector. Sand pumpings and such materials shall not be allowed to run over the surface of the land.

61. Lessee shall effectually shut out and exclude all water from any oil or gas bearing stratum and take all proper precautions and measures to prevent the contamination or pollution of any freshwater supply encountered in any well drilled for oil or gas.

62. Lessee shall protect to the satisfaction of the inspector each productive oil or gas bearing formation drilled through for the purpose of producing oil or gas from a lower formation.

63. In drilling operations in "wildcat" territory, or in a gas or oil field where high pressures are known to exist, the lessee shall have on such leased premises an approved gate valve or other approved controlling device in proper condition for use until the well is completed.

64. When natural gas is encountered in commercial quantities in any well, the oil or gas lessee shall confine such gas to its natural stratum until such time as the same can be produced and utilized without waste, it being understood that a commercial quantity of gas produced by a well is any unrestricted flow of natural gas of 2,000,000 cubic feet or more per 24 hours: Provided, That if in the opinion of the Superintendent, gas of a lesser quantity shall be of

commercial value, the Superintendent shall have authority to require the conservation of said gas: Provided further, That under section 9 of the oil lease a well producing oil in paying quantities and gas from the same shall be held to produce gas in commercial quantities when and so long as it produces gas with an open flow capacity of 2,000,000 cubic feet or more per day of 24 hours, and gas produced from any such well of less than 2,000,000 cubic feet per day may be considered and termed gas in commercial quantities in the discretion of the Superintendent, except when gas from such well contains gasoline in commercial quantities, in which event, it shall be termed "casing-head gas" but only when, and only while actually used for the manufacture of gasoline, as provided for under paragraph 12 of the oil lease. Any casing-head gas coming direct from the wells and not utilized by the oil lessee as above provided for, or for operations as provided for in Section 12 of the oil lease shall be delivered to the gas lessee at a central point on the oil lessee's gathering or carrying lines, at the same schedule of prices as fixed for delivery of residue gas at gasoline plants into the line or lines provided by the gas lessee; also all gas after extraction of gasoline, and not used for operations under the terms of Paragraph 12 of the oil lease, shall be delivered to gas lessee at points where the gasoline is extracted at as high a pressure as the efficient operation of such plant will permit, and where same is delivered at a pressure not above fifty pounds the oil lessee shall receive one cent per thousand cubic feet and an additional one-half cent increase for each additional 50 pounds pressure not exceeding three cents per thousand cubic feet. Settlement for same to be made on or before the twentieth day of each month for all gas delivered during the preceding month and to be computed on the usual basis of ten ounces above atmospheric pressure, provided that royalty on such gas shall be computed the same as though it were gas produced and utilized by the gas lessees under the terms of their leases from their wells proper, and provided further that the rights herein conferred are optional and in no event shall the gas lessees be obligated to utilize, or pay the oil lessee, or pay royalty to the Tribe, if not utilized, for any such gas as is described; and if the gas lessee does not accept such gas and utilize the same after tender thereof by the oil lessee, then such gas may be otherwise disposed of by the oil lessee upon the same basis of royalty as fixed in case of utilization by the gas lessee. In case of combination wells where the gas lessee has no market for and does not utilize such gas for any purpose, the oil lessee shall be permitted to utilize and sell the same to adjoining lessees for operating purposes until such time only as the gas lessee is in a position to and does utilize such gas. Water shall not be introduced into any well where such introduction will operate to kill or restrict the open flow of gas therein.

The term "cost price of a well," as applied where one lessee takes over a well drilled by another, shall include all reasonable, usual, necessary and proper expenditures including the following expenditures made by the lessee drilling the well.

(a) All location, right of way, or other surface damages occasioned by the drilling of such well.

(b) All expenses of laying, taking up, repairing, operating and maintaining gas and water lines where such lines including amount

paid for water privilege or constructing dam, are used for the exclusive purpose of drilling the particular well.

(c) Customary charge for furnishing water where purchased shall be the price prevailing in the particular locality: Provided, Where the parties cannot agree upon the charge made under this subdivision, such charge shall be determined by the Superintendent.

(d) Amounts expended in spudding or drilling a water well: Provided, That where any or all of the facilities referred to in subdivisions "b," "c," and "d," are not employed exclusively in connection with the drilling of the well to be taken over, or are also used in connection with the drilling or operation of other wells by the lessee drilling the well to be taken over by the other lessee, then a fair proportion of the charges covered by the said subdivisions of this paragraph shall be assessed against each well, including the well to be taken over, and in the event of a disagreement between the parties as to the charges assessed against the well that is to be taken over, such charge shall be fixed by the Superintendent.

(e) All expenses of hauling and erecting standard rig, with an additional charge for use of said rig which shall be twenty cents per foot for wells not exceeding 2,200 feet in depth and the charge for rigs for wells exceeding a depth of 2,200 feet shall be at a price agreed upon, or on failure to agree, to be determined by the Superintendent.

(f) All amounts paid for drilling and reaming, except where reaming is done for the sole benefit of party drilling the well. If price charged for drilling is above the average drilling price in the field, the price to be paid shall be determined by the Superintendent: Provided, That where the well to be taken over is drilled below the stratum in which the lessee taking over the well is interested, that is, the gas stratum in the case of a well taken over by a gas lessee, and the oil stratum in a well taken over by the oil lessee, then the lessee doing such further drilling shall sustain the cost of drilling and reaming where such drilling and reaming is done below such stratum.

(g) All expenses of mudding, except where mudding is done for the sole benefit of the lessee drilling the well.

(h) Settlement for casing or other pipe left in the well to be made at the prevailing market price for the character and kind of casing when placed in the well.

(i) All expenses of placing and removing all casing or other pipe used in drilling said well.

(j) A sum of not exceeding $100 to cover supervision and overhead expenses.

(k) Any additional charges which cannot be mutually agreed upon shall be submitted to and determined by the Superintendent. An approximate list of expenses hereinbefore mentioned shall be presented to proposed purchasing lessee within ten days after the completion of the well.

65. Lessee shall separate the oil from the gas when both are produced in commercial quantities from the same formation, or under such conditions as might result in waste of oil or gas in commercial quantities.

66. Lessee shall not use natural gas from a distinct or separate stratum for the purpose of flowing or lifting the oil.

67. Lessee shall prevent oil or gas, or both, from escaping from any well into the open air, and not permit any oil or gas well to go wild or to burn wastefully.

68. Lessee shall not use natural gas in place of steam to operate engines or pumps under direct pressure, except with the special permission of the inspector.

69. Lessee shall not use natural gas in flambeau lights, save as authorized or approved by the inspector.

70. Lessee shall use every possible precaution, in accordance with the most approved methods, to stop and prevent the waste of oil and gas, or both, in all drilling and producing operations and from connecting lines, and he shall not wastefully utilize oil or gas.

71. Lessee shall notify the superintendent a reasonable time in advance of starting work of intention to redrill, deepen, plug, or abandon a well; and whenever the superintendent or inspector has given notice that extra precautions are necessary in the plugging of wells in a particular territory lessee shall give at least three days' advance notice of such intended plugging.

72. Lessee shall not abandon any well for the purpose of drilling deeper for oil or gas unless the producing stratum is properly protected, and shall not abandon any well producing oil or gas except with the approval of the superintendent or where it can be demonstrated that the further operation of such well is commercially unprofitable.

73. Lessee shall plug and fill all dry or abandoned wells on the leased lands in the manner required, and where any such well penetrates an oil or gas bearing formation it shall be thoroughly cleaned to the botton of the hole before being plugged or filled, and shall then be filled with mud-laden fluid of a consistency approved by the inspector, from the bottom to the top thereof, before any casing is removed from the well, or, in lieu of the use of such mud fluid, each oil and gas bearing formation shall be adequately protected by cement or approved plugs or by both such plugs and cement, and the well filled in above and below such cement or plugs with material approved by the inspector.

Where both fresh water and salt water are encountered in any dry or abandoned well which is not being filled with mud-laden fluid as hereinbefore provided, the fresh water shall be efficiently protected against contamination by cement or approved plugs, or by both such cement and plugs, to be placed at such points in the well as the inspector shall approve for the protection of the fresh water.

74. If such abandoned or dry well be in a coal bed or other mineral vein deposit, or be in such condition as to warrant taking extraordinary precautions, the inspector may require such variations in the above prescribed methods of plugging and filling as may be necessary in his judgment to protect such seam or deposit against infiltration of gas or water to protect all other strata encountered in the well.

75. The manner in which such mud-laden fluid, cement or plugs shall be introduced into any well being plugged and the type of plugs so used shall be subject to the approval of the inspector.

In the event the lessee or operator shall fail to plug properly any dry or abandoned well in accordance with these regulations the su-

perintendent may, after five days' notice to the parties in interest plug such well at the expense of the lessee or his surety.

76. All B-S and salt water from tanks or wells shall be drawn off into proper receptacles to hold and retain same without permitting it to run over the surface of the land or into the creeks and ravines and where earthen tanks or sump-holes are used, they shall not be located in any draw or ravine, but must be located in places and be so constructed that water from rains will not flow into them and wash out the B-S or destroy the dams, and in cases where the B-S is not run through some treating process, same shall when in sufficient quantities be burned at least once every week and at more frequent intervals when possible.

Where it is impossible to burn the B-S, or where it is necessary to pump salt water in such quantities as would damage the surface of the leased land or adjoining property, or pollute any fresh water, the lessee shall notify the Superintendent, who shall give instructions in each instance as to the disposition of such B-S or salt water. Such instructions shall be issued in writing and a copy thereof shall be immediately delivered to the oil or gas lessee.

77. Lessee shall make a full and complete report to the superintendent of all accidents or fires occurring on the leased premises.

78. Lessee shall provide approved tankage of suitable shape for accurate measurement, into which all production of crude oil shall be run from the wells, and shall furnish the superintendent copies of accurate tank tables and all run tickets, as and when requested.

79. The superintendent may make arrangements with the purchasers of oil for the payment of the royalty, but such arrangements, if made, shall not relieve the lessee from responsibility for the payment of the royalty, should such purchaser fail, neglect, or refuse to pay the royalty when it becomes due; Provided, That no oil shall be run to any purchaser or delivered to the pipe line or other carrier for shipment, or otherwise conveyed or removed from the leased premises, until a division order is executed, filed, and approved by the superintendent, showing that the lessee has a regularly approved lease in effect, and the conditions under which the oil may be run. Lessees shall be required to pay for all oil or gas used off the leased premises for operating purposes; affidavit shall be made as to the production used for such purposes and royalty paid in the usual manner. The lessee or his representative shall be present when oil is taken from the leased premises under any division order and will be responsible for the correct measurement thereof and shall report all oil so run.

The lessee shall also authorize the pipe-line company or the purchaser of oil to furnish the superintendent with a monthly statement, not later than the tenth day of the following calendar month, of the gross barrels run as common-carrier shipment or purchased from his lease or leases.

80. Lessee will not be permitted to use any timber from any Osage lands except under written agreement with the owner, and in all cases where lands are restricted such agreement shall be subject to the approval of the superintendent or inspector. Lessee shall, when requested by the superintendent, furnish a statement under oath as to whether the rig timbers were purchased on the leased tract, and if so, state the name of the person from whom purchased, and

give such other information regarding the procurement of timber as the superintendent may desire.

81. When an oil lessee in drilling a well encounters gas in excess of one million cubic feet per 24 hours, or the gas lessee in drilling a well encounters oil, he shall immediately suspend drilling, and notify the oil or gas lessee, as the case may be, and the Superintendent, in order that such lessee and the inspector may be present while the sand is being drilled through, such further drilling, however, shall not be resumed until authorized by the inspector, except as otherwise permitted in advance in writing by the inspector.

82. The use of and damages to surface of lands shall be settled as provided in the lease.

83. Failure to comply with any provision of the lease or of these regulations shall subject the lease to cancellation by the Secretary of the Interior or the lessee to a fine of not more than $500 per day for each and every day the terms of the lease or of the regulations are violated, or the orders of the Superintendent pertaining thereto are not complied with, or to both such fine and cancellation, in the discretion of the Secretary of the Interior: Provided. That the lessee shall be entitled to notice and hearing with respect to the terms of the lease or of the regulations violated, which hearing shall be held by the Superintendent, whose finding shall be conclusive unless an appeal be taken to the Secretary of the Interior within 30 days after notice of the Superintendent's decision, and the decision of the Secretary of the Interior upon appeal shall be conclusive: Provided further, That fines will be imposed by the Superintendent without right of appeal for violation of certain paragraphs of the regulations, as follows:

Fines for Non-Compliance with Terms of Lease or Regulations.

A—For failure to file preliminary report required by paragraph 54, $5.00 a day for first violation and $10.00 a day for each violation thereafter.

B—For failure to file completion report, as required by paragraph 55, $5.00 a day for first violation, and $10.00 a day for each violation thereafter.

C—For failure to mark rigs or wells, as required by paragraph 57, $50 for each well.

D—For failure to construct slush pits, as required by paragraph 60, $10.00 for each day after drilling is commenced on any well.

E—For failure to comply with paragraph 63, regarding gate valve and other approved controlling device, $100.00.

F—For failure to comply with paragraph 68, in regard to using gas in place of steam to operate engines or pumps, $10.00 per day for first violation and $20.00 a day for each violation thereafter.

G—For failure to comply with paragraph 69 which prohibits the burning of gas in flambeau lights, $50 per day.

H.—For failure to notify superintendent and secure authority before redrilling, deepening, plugging or abandoning any well, $200, as required by Paragraphs 71 and 81.

I—For failure to construct sump-holes, or burning holes, to properly care for and dispose of B-S and salt water as provided in paragraph 76, $10.00 a day for the first violation, and in event of failure

to properly construct or repair sump holes, or burning holes, within five days after notification by Superintendent or his authorized representative, $25 to $50 a day.

J—For failure to file reports and remit royalties required by Paragraph 27, $5.00 a day for first violation and $10.00 a day for each violation thereafter.

All moneys received from fines under Section 83, shall be expended when authorized as provided in Section 85.

84. These regulations shall become effective and in full force from and after the date of approval, and shall be subject to change or alteration at any time by the Secretary of the Interior: Provided, That no regulations made after the approval of any lease shall operate to affect the term of lease, rate of royalty, rental, or acreage, unless agreed to by both parties to the lease.

85. Applications, leases, and other papers must be upon forms prescribed by the Secretary of the Interior, and the superintendent will furnish prospective lessees with such forms for preparation of original leases without charge, but shall make a charge of 50 cents per set for forms used in preparing assignments.

Form A—Application for oil or gas lease, including financial showing.

Form B—Oil lease.

Form D—Bond.

Form G—Collective bond.

Form H—Assignment bond.

Form E—Authority of officers to execute papers.

Form F—Assignment.

All sums received from sale of forms and fines shall be placed in a special fund, to be expended under the direction of the Commissioner of Indian Affairs for the expenses necessary to carry out these regulations.

86. A fee of $5.00 will be charged for each lease, each sublease, each drilling contract affecting oil and gas mining leases, and each assignment of lease, such amount to be paid by the lessee, sublessee or assignee upon notice of approval of the contract, as provided by the Act of February 14, 1920 (41 Stat. L., 408-415).

Department of the Interior
Office of Indian Affairs,
July 9, 1932.

The foregoing regulations and forms are respectfully submitted to the Secretary of the Interior with the recommendation that they be approved.

(Signed) B. S. GARBER,
Acting Commission of Indian Affairs.

APPROVED: July 12, 1932.
(Signed) JOS. M. DIXON,
First Assistant Secretary.