ing to the Academy on and after June 1, 1946.

(c) Effective for all cadet-midshipmen who reported to cadet schools on and after September 1, 1945, and while attached to the cadet schools and academy, towels shall be furnished by and laundered at the expense of cadet-midshipmen. Bed linen, spreads, pillow cases, blankets, pillows and mattresses shall be issued to all cadet-midshipmen on custody receipt while attached to Cadet Schools and the Academy, but the expense of laundering, cleaning and fumigation shall be borne by the cadet-midshipmen.

15. Section 310.69 *Resignations and dismissals* is amended as follows:

Subparagraphs (2) and (3) of paragraph (a) are stricken out and the following inserted in lieu thereof:

(2) If attached to a cadet school or the Academy, to the superintendents of those units.

The following subparagraph is added to paragraph (b)

(5) A cadet-midshipman may be dismissed or requested to resign for academic deficiencies or disciplinary reasons.

Paragraph (e) is amended to read:

(e) Recommendations of a responsible officer of the Cadet Corps for the dismissal of a cadet-midshipman must be supported by unanimous vote of an aptitude board consisting of three or more officers.

The following paragraphs are added:

(f) Cadet-midshipmen, fourth, second and first classes, recommended for dismissal or requested resignation shall be restricted to cadet schools or academy in a no-pay status until action is taken by the supervisor with the approval of the assistant deputy administrator.

(g) No person who has resigned or has been dismissed will be reappointed without the approval of the assistant deputy administrator upon recommendation of the supervisor.

16. Paragraph (a) of § 310.70 *Graduation; diploma* is amended by striking out the words "Educational Unit" and inserting in lieu thereof the words "Academic and Research Section"

(E.O. 9083, 9054, 9198; 3 C.F.R. Cum. Supp.)

[SEAL] GRANVILLE CONWAY,
*Acting Administrator*

JANUARY 31, 1946.

[F. R. Doc. 46-2086; Filed, Feb. 6, 1946; 10:53 a. m.]

## *Notices*

## DEPARTMENT OF THE INTERIOR.

### Office of the Secretary.

[Order 2161]

SUPERINTENDENT OF OSAGE INDIAN AGENCY

DELEGATION OF AUTHORITY WITH RESPECT TO OIL LEASES

JANUARY 31, 1946.

Pursuant to the provisions of section 5 of the act of May 11, 1938 (52 Stat. 347, 348; 25 U.S.C. sec. 396e) it is hereby ordered as follows:

I. The Superintendent of the Osage Indian Agency or such other officer in charge of the Agency acting in his stead, may hereafter act in the following classes of matters, subject to right of appeal to the Secretary of the Interior as hereinafter provided:

(a) Approve oil leases made by the Osage Tribal Council such authority to be exercised as to each lease sale only after approval by the Secretary of the Interior of the schedule of bids covering the particular sale.

(b) Approve assignments of Osage oil leases now or hereafter in force, bonds and other instruments required for leases or assignments thereof, and the acceptance of the voluntary surrender of leases.

II. Any person aggrieved by any decision or order of the Superintendent approving, disapproving, or rejecting any lease, assignment, bond, or voluntary surrender of a lease, may appeal to the Secretary of the Interior within 30 days from the date of such decision or order.

III. This order shall become effective thirty days after publication in the FEDERAL REGISTER.

HAROLD L. ICKES,
*Secretary of the Interior*

[F. R. Doc. 46-2074; Filed, Feb. 6, 1946; 9:54 a. m.]

## CIVILIAN PRODUCTION ADMINISTRATION.

[C-424]

CONSUMERS TEXTILE MFG. CO., INC.

CONSENT ORDER

Consumers Textile Manufacturing Company, Inc., a corporation located at 312 E. 96th Street, New York, New York, is engaged in the business of manufacturing work clothes such as aprons, coats and coveralls. David Ullman is president of the corporation and its operating head. The corporation is charged by the Civilian Production Administration with wilful violations of Conservation Order M-317 and Priorities Regulation No. 3, in that (1) it accepted the delivery of 31,258 yards of cotton textile (osnaburg) which material it had acquired by use of preference ratings AA2X, and it thereafter used this material for purposes other than those for which such preference ratings were assigned and authorized; (2) it knowingly purported to apply or extend preference ratings of AA2X, assigned by Conservation Order M-317 and Supplementary Order M-317-a, to purchase orders covering approximately 225,000 yards of cotton textile (osnaburg) without being entitled to do so. The violations in question began on September 6, 1944 and continued to March 30, 1945. Consumers Textile Manufacturing Company, Inc., admits the violations charged, acknowledges that it has on hand and in its inventory 90,000 yards of the above-mentioned osnaburg, and has consented to the issuance of this order.

Wherefore, upon the agreement and consent of Consumers Textile Manufacturing Company, Inc., the Regional Compliance Manager and the Regional Attorney and upon the approval of the Compliance Commissioner, *It is hereby ordered*, That:

(a) Consumers Textile Manufacturing Company, Inc., shall not sell, deliver, or use the 90,000 yards of osnaburg which it has in inventory except in accordance with written instructions and authority from the Civilian Production Administration.

(b) Consumers Textile Manufacturing Company, Inc., shall promptly consummate any sale or complete any use of the said osnaburg which may be authorized and approved by the Civilian Production Administration.

(c) Consumers Textile Manufacturing Company, Inc., shall not sell, deliver, or use the said osnaburg for any purpose which may be contrary to the provisions of this order.

(d) Nothing contained in this order shall be deemed to relieve Consumers Textile Manufacturing Company, Inc., from any restriction, prohibition, or provision containd in any other order or regulation of the Civilian Production Administration except insofar as the same may be inconsistent with the provisions hereof.

(e) The restrictions and prohibitions contained herein shall apply to Consumers Textile Manufacturing Company, Inc., its successors and assigns or persons acting on its behalf. Prohibitions against the taking of any action include the taking indirectly as well as directly of any such action.

Issued this 5th day of February 1946.

CIVILIAN PRODUCTION ADMINISTRATION,
By J. JOSEPH WHELAN,
*Recording Secretary.*

[F. R. Doc. 46-2071; Filed, Feb. 5, 1946; 4:49 p. m.]

## FEDERAL COMMUNICATIONS COMMISSION.

WDSM, INC.[1]

PROPOSED TRANSFER OF CONTROLS

The Commission hereby gives notice that on January 17, 1946, there was filed with it an application (B4-TC-474) for its consent under section 310 (b) of the Communications Act (47 USCA 310) to the proposed transfer of control of WDSM, Inc. (licensee of standard broadcast station WDSM, Superior, Wisconsin) from James J. Conroy, Roland C. Buck, George W Welles, Jr., Victoria B. Conroy, and Joseph H. Weisberg to Ridson, Inc., 55 East Fourth Street, St. Paul, Minnesota. The proposed transfer of control of the above licensee is based upon a contract entered into between the selling stockholders and Robert Ridder on December 13, 1945, pursuant to which the stockholders proposed to sell to Ridder all of the outstanding stock of WDSM, Inc. for the sum of $15,000 plus the amount of cash on hand, bills and accounts receivable at closing, the net proceeds of federal and state tax refunds and minus any indebtedness or liability of licensee for taxes or otherwise existing or accrued at closing. The price, however, is not to be increased by any amount of cash, bills or accounts receivable arising out the sale of fixed assets after December 10, 1945. Of the pur-

[1] Section 1.364, Part 1, Rules of Practice and Procedure.