Westlaw.

80 Cong. Ch. 334, July 25, 1947, **61 Stat. 459**

UNITED STATES STATUTES AT LARGE
80TH CONGRESS - 1ST SESSION
Convening January 3, 1947

An Act

To enable the Osage Tribal Council to determine the bonus value of tracts offered for lease for oil, gas, and other mining purposes, Osage Mineral Reservation, Oklahoma.

July 25, 1947

61 Stat. 459-460

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[CHAPTER 332]

AN ACT

To confer upon the Governor of Alaska the power to pardon and remit fines and forfeitures for offenses against laws of the Territory of Alaska.

July 25, 1947
[H. R. 176]
[Public Law 244]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That section 2 of the Act of June 6, 1900 (31 Stat. 321; 48 U. S. C. 61), be amended by striking out the sentence, "He may also grant reprieves for offenses committed against the laws of the district or of the United States until the decision of the President thereon shall be made known.", and inserting in lieu thereof the following: "He may grant pardons and reprieves and remit fines and forfeitures for offenses against the laws of the said Territory and reprieves for all offenses against the laws of the United States until the decision of the President thereon shall be made known.".

Alaska.
Power of Governor to grant pardons, etc.

SEC. 2. This Act shall take effect upon the date of its enactment.

Effective date.

Approved July 25, 1947.

[CHAPTER 333]

AN ACT

To amend the Natural Gas Act approved June 21, 1938, as amended.

July 25, 1947
[H. R. 2956]
[Public Law 245]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That section 7 of the Natural Gas Act, approved June 21, 1938, as amended (15 U. S. C. 717f), is hereby amended by adding after subsection (g) the following new subsection:

52 Stat. 824.

"(h) When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided*, That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000."

Right-of-way for pipe line, etc.

Practice and procedure.

Jurisdiction of courts.

Approved July 25, 1947.

[CHAPTER 334]

AN ACT

To enable the Osage Tribal Council to determine the bonus value of tracts offered for lease for oil, gas, and other mining purposes, Osage Mineral Reservation, Oklahoma.

July 25, 1947
[H. R. 3323]
[Public Law 246]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the third paragraph of section 3 of the Act entitled "An Act relating to the tribal and individual affairs of the Osage Indians of Oklahoma", approved

Osage Indians, Okla.
Determination of bonus value of certain tracts.

June 24, 1938 (52 Stat. 1034), is amended by striking out the colon following the phrase "as may be deemed for the best interest of the Osage Tribe of Indians" and inserting in lieu of said colon the following clause: "and the Osage tribal council may determine the bonus value of any tract offered for lease for oil, gas, and other mining purposes on any unleased portion of said land, and such determination shall be final:".

Approved July 25, 1947.

[CHAPTER 337]

AN ACT

July 25, 1947 [H. R. 3123] [Public Law 237]

Making appropriations for the Department of the Interior for the fiscal year ending June 30, 1948, and for other purposes.

Interior Department Appropriation Act, 1948. *Ante*, pp. 118, 187, 193, 245, 361; *post*, pp. 608, 609, 821, 821, 690, 943.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the following sums are appropriated, out of any money in the Treasury not otherwise appropriated, for the Department of the Interior for the fiscal year ending June 30, 1948, namely:

## OFFICE OF THE SECRETARY

### SALARIES

60 Stat. 810. 5 U. S. C. § 55a.

Radio broadcasts respecting legislation.

Division of Power.

Division of Information.

Salaries: For the Secretary of the Interior (hereafter in this Act referred to as the Secretary), and other personal services in the District of Columbia and elsewhere, including temporary services as authorized by section 15 of the Act of August 2, 1946 (Public Law 600), but at rates for individuals not in excess of $35 per diem, $1,103,000: *Provided*, That no part of this appropriation shall be used for the broadcast of radio programs designed or calculated to influence the passage or defeat of any legislation pending before the Congress: *Provided further*, That not to exceed $50,000 of this appropriation may be used for the Division of Power under the Office of the Secretary: *Provided further*, That not to exceed $42,500 of this appropriation may be used for the Division of Information or for publicity and public relations activities.

*Ante*, p. 245; *post*, p. 830.

### WAR AGENCY LIQUIDATION

50 U. S. C. app. § 601 note.

War Agency Liquidation: For expenses necessary for liquidating the Solid Fuels Administration for War provided for in Executive Order 9332, including personal services in the District of Columbia; and printing and binding; $60,000.

### OFFICE OF SOLICITOR

For personal services in the District of Columbia and in the field, $215,460.

### DIVISION OF TERRITORIES AND ISLAND POSSESSIONS

For personal services in the District of Columbia, $140,000.

### OIL AND GAS DIVISION

Oil and Gas Division: For expenses necessary for coordinating and unifying policies and administration of Federal activities relative to oil, gas, and synthetic fuels, including cooperation with the petroleum industry and State authorities in the production, processing, and utilization of petroleum and petroleum products, natural gas, and

w York; Cle[illegible]hio; Portland, Maine; Los Angeles, California; Juneau, [illegible]ska; Saint M[illegible]aska; and Norfolk, Virginia; Honolulu, Hawaii; and [illegible] Juan, Puerto R[illegible] the rate of $2,500 per year for each local inspector.

For the districts of C[illegible]o, New York; Willamette, Oregon; Detroit, Michigan; [illegible] Mobile, Alabama; and the ports of Saint Louis, Missouri, and Port Huron, [illegible]chigan; at the rate of $2,350 per year for each local inspector.

For the districts of Pittsburgh, Pennsylvania; New Haven, Connecticut; [illegible]vannah, Georgia; Charleston, South Carolina; Galveston, Texas; New London, [illegible]nnecticut; Superior, Michigan; and Bangor, Maine; and the ports of Dubuque, [illegible]wa; Toledo, Ohio; Evansville, Indiana; Memphis, Tennessee; Nashville, [illegible]nnessee; Point Pleasant, West Virginia; Jacksonville, Florida; Tampa, Florida; [illegible]uisville, Kentucky; and Cincinnati, Ohio; at the rate of $2,100 per year for each [illegible]al inspector.

And, in addition, the Secretary of Commerce may appoint, in districts or ports [illegible]ere the volume of work requires them, assistant inspectors, at a salary, for the [illegible]rt of New York, of $2,500 a year each; for the port of New Orleans, Louisiana; [illegible] district of Philadelphia, Pennsylvania; Baltimore, Maryland; the ports of [illegible]ston, Massachusetts; Providence, Rhode Island; and the district of San [illegible]ancisco, California; at $2,350 per year each, and for all other districts and [illegible]rts at a salary of $2,100 a year each; and he may appoint a clerk to any such [illegible]ard at a compensation not exceeding $1,500 a year to each person so appointed. [illegible]ery inspector provided for in this section or sections 361, 362, 364, 371–373, [illegible]5–381, and 439 of this title shall be paid his actual necessary traveling expenses [illegible]ile traveling on official business assigned him by competent authority, together [illegible]th his actual and reasonable expenses for transportation of instruments, which [illegible]all be certified and sworn to under such instructions as shall be given by the [illegible]cretary of Commerce.

Assistant inspectors, appointed as provided by law, shall perform such duties [illegible] actual inspection as may be assigned to them under the direction, supervision, [illegible]d control of the local inspectors.

The Secretary of Commerce may appoint not exceeding four traveling inspec[illegible]rs, when in his judgment they are necessary for the improvement of the service, [illegible]ch of whom shall be entitled to a salary of $3,000 a year and his actual necessary [illegible]aveling expenses while traveling on official business.

And the Secretary of Commerce may from time to time detail said assistant [illegible]spectors of one port or district for service in any other port or district as the [illegible]eds of the Bureau of Marine Inspection and Navigation may, in his discretion, [illegible]quire, and the actual necessary traveling expenses of assistant inspectors so [illegible]tailed, while traveling on official business assigned them by competent author[illegible]y, shall, subject to such limitations as the said Secretary may in his discretion [illegible]escribe, be paid in the same manner as provided in this section for inspectors.

[illegible]ction 4450 of the Revised Statutes, as Amended (U. S. C., 1940 Edition, Title 46, Sec. 239 (a))

In any investigation of acts of incompetency or misconduct or of any act in [illegible]olation of the provisions of sections 170, 214, 215, 222, 224, 224a, 226, 228–234, [illegible]39, 240, 361, 362, 364, 371–373, 375–382, 384, 385, 391, 391a, 392, 393, 399, 400, [illegible]02–416, 435–440, 451–453, 460–463, 464, 467, 470–481, 482, and 489–498 of this [illegible]tle, or of any of the regulations issued thereunder, committed by any licensed [illegible]ficer or any holder of a certificate of service, the person whose conduct is under [illegible]vestigation shall be given reasonable notice of the time, place, and subject of [illegible]ch investigation and an opportunity to be heard in his own defense. The [illegible]hole record of the testimony received by the board conducting such investi[illegible]ation and the findings and recommendations of such board shall be forwarded [illegible] the Director of the Bureau of Marine Inspection and Navigation, and if that [illegible]ficer shall find that such licensed officer or holder of certificate of service is [illegible]competent or has been guilty of misbehavior, negligence, or unskillfulness, or [illegible]as endangered life, or has willfully violated any of the provisions of such sections [illegible]r any of the regulations issued thereunder, he shall, in a written order reciting [illegible]id findings, suspend or revoke the license or certificate of service of such officer [illegible]r holder of such certificate. The person whose license or certificate of service [illegible] suspended or revoked may, within thirty days, appeal from the order of the [illegible]aid Director to the Secretary of Commerce. On such appeal the appellant shall [illegible]e allowed to be represented by counsel. The Secretary of Commerce may alter [illegible]r modify any finding of the board which conducted the investigation or of the [illegible]irector of the Bureau of Marine Inspection and Navigation, but the decision [illegible]f the Secretary of Commerce shall be based solely on the testimony received by [illegible]he said board and shall recite the findings of fact on which it is based.

O

[illegible]th Congress, [illegible]t Session } HOUSE OF REPRESENTATIVES { No.

ENABLING THE OSAGE TRIBAL COUNCIL TO DETERMINE THE BONUS VALUE OF TRACTS OFFERED FOR LEASE FOR OIL, GAS, AND OTHER MINING PURPOSES, OSAGE MINERAL RESERVATION, OKLA.

June 30, 1947.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. Welch, from the Committee on Public Lands, submitted the following

# REPORT

[To accompany H. R. 3323]

The Committee on Public Lands, to whom was referred the bill (H. R. 3323) to enable the Osage Tribal Council to determine the bonus value of tracts offered for lease for oil, gas, and other mining purposes, Osage Mineral Reservation, Okla., having considered the same, report favorably thereon without amendment and recommend that the bill do pass.

## EXPLANATION OF THE BILL

This bill gives to the Osage Indian Tribal Council the right to determine the bonus value of tracts offered for lease for oil, gas, and other mining purposes on the Osage Mineral Reservation, Okla.

During recent years it has been the practice of the Department of the Interior to have an appraiser present during oil lease sales, who fixed a minimum acceptable bonus value on each tract offered for sale. These appraisals were not announced during the time auction sales were held, but if the bidding failed to reach the amount deemed acceptable by the appraiser, he asked the auctioneer to announce the acceptable figure and the high bidder was given an opportunity to increase his bid to meet the appraisal. Several bidders stopped attending the Osage oil lease sales because of their dissatisfaction with this procedure.

The Tribal Council feels that its members are competent to determine whether or not the tribe is receiving an adequate bonus for the oil leases offered for sale, particularly since the leases now are disposed of through sealed bid sales. H. R. 3323 will give the Council assurance that once it has accepted the high bid on any tract, a lease which

gular in all ... aspects will be approved by the Secretary of Interior.

... hearings held ... his bill, representatives of the Bureau of an Affairs, Department of the Interior, testified in its behalf asked that it be enacted.

he Committee on Public Lands unanimously recommend passage . R. 3323.

ırsuant to the provisions of clause 2a, rule XIII, of the Rules of House of Representatives, proposed changes in existing law are ated below with the matter proposed to be omitted in black kets, and the new matter proposed to be inserted in italics:

hird paragraph, section 3, of the act entitled "An act relating to tribal and individual affairs of the Osage Indians of Oklahoma," oved June 24, 1938 (52 Stat. 1034):

e Secretary of the Interior and the Osage tribal council are hereby authorized lirected to offer for lease for oil, gas, and other mining purposes any unleased on of said land in such quantities and at such times as may be deemed for est interest of the Osage Tribe of Indians [:] *and the Osage tribal council may mine the bonus value of any tract offered for lease for oil, gas, and other mining oses on any unleased portion of said land, and such determination shall be*

... Congress } HOUSE OF REPRESENTATIVES { Rep.
... Session } { No. 7...

PROVIDING ADDITIONAL FUNDS FOR COOPERATION WITH PUBLIC-SCHOOL DISTRICTS (ORGANIZED AND UNORGANIZED) IN MAHNOMEN, ITASCA, PINE, BECKER, AND CASS COUNTIES, MINN., IN THE CONSTRUCTION, IMPROVEMENT, AND EXTENSION OF SCHOOL FACILITIES TO BE AVAILABLE TO BOTH INDIAN AND WHITE CHILDREN

June 30, 1947.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. Welch, from the Committee on Public Lands, submitted the following

# REPORT

[To accompany H. R. 2825]

The Committee on Public Lands, to whom was referred the bill (H. R. 2825) to provide additional funds for cooperation with public-school districts (organized and unorganized) in Mahnomen, Itasca, Pine, Becker, and Cass Counties, Minn., in the construction, improvement, and extension of school facilities to be available to both Indian and white children having considered the same, report favorably thereon with amendments and recommend that the bill do pass.

The amendments are as follows:

Page 2, line 23, strike out the words "*Provided further*,". Strike out all of lines 24 and 25.

Page 3, line 1, strike out the phrase "improvement of the said public-school facilities;".

Page 3, line 3, following the word "under", insert a comma and the following: "title to which will, after recoupment is accomplished, vest in the public school district,".

Page 3, line 10, strike out the figure "2" and insert in lieu thereof the figure "3".

## EXPLANATION OF THE BILL

The purpose of this bill is to authorize an appropriation of $213,000 to aid in the construction, improvement, and extension of school facilities in certain Minnesota public school districts which will be available to both Indian and white children.

Calendar 562

80TH CONGRESS, 1st Session } SENATE { REPORT No. 544

# ENABLING THE OSAGE TRIBAL COUNCIL TO DETERMINE THE BONUS VALUE OF TRACTS OFFERED FOR LEASE FOR OIL, GAS, AND OTHER MINING PURPOSES, OSAGE MINERAL RESERVATION, OKLA.

JULY 14 (legislative day, JULY 10), 1947.—Ordered to be printed

Mr. WATKINS, from the Committee on Public Lands, submitted the following

## REPORT

[To accompany H. R. 3323]

The Committee on Public Lands, to whom was referred the bill (H. R. 3323) to enable the Osage Tribal Council to determine the bonus value of tracts offered for lease for oil, gas, and other mining purposes, Osage Mineral Reservation, Okla., having considered the same, report thereon with the recommendation that the bill do pass without amendment.

The Osage Tribal Council has submitted to your committee a statement in respect to this proposed legislation, which is as follows:

During the past 5 years, it has been the practice of the Interior Department to have an observer or appraiser present during oil lease sales, who fixes a minimum acceptable bonus value on each tract offered for sale. These appraisals were not announced during the time auction sales were held, until the bidding stopped on a particular tract—if the bidding failed to reach the amount deemed acceptable by the appraiser, he would then have the auctioneer announce the acceptable figure and the high bidder would be given an opportunity to increase his bid to meet the appraisal. This practice led to considerable criticism of our lease sales by some of the major oil companies and others, and a number of bidders have stopped attending our sales on that account. We think our tribal council, all members of which own headrights, are competent to determine whether or not the tribe is receiving an adequate bonus for the oil leases offered for sale, especially since we are now disposing of our oil leases through sealed bid sales. The purpose of the proposed legislation, therefore, is simply to give us the right to determine the bonus value of any tract offered for sale for oil and gas mining purposes and to give us assurance that once we have accepted the high bid on any tract, that a lease that is regular in all other respects will be approved by the Secretary of the Interior. Oil production in Osage County has been steadily declining over a period of years, and bonus considerations are no longer as important as they once were, in fact the bonus realized from the sale of leases amounts to only a very small proportion of the total income received from oil and gas sources. We feel that if we can give the bidders complete assurance on the day of the sale as to whether or not their bid has been accepted, and that a lease will be given them

and enable us[illegible] more acreage under lease and encourage additional exploration for oil [illegible]

This bill [illegible]onsidered by the Committee on Public Lands of the House; on June 30, [illegible] committee submitted its report (H. Rept. No. 737) to the House recommen[illegible] its passage, and on July 7, 1947, it passed the House.

A full explanation of the purposes of this proposed legislation is contained in said House Report No. 737, a copy of which is attached hereto and made a part of this report as follows:

[H. Rept. No. 737, 80th Cong., 1st sess.]

The Committee on Public Lands, to whom was referred the bill (H. R. 3323) to enable the Osage Tribal Council to determine the bonus value of tracts offered for lease for oil, gas, and other mining purposes, Osage Mineral Reservation, Okla., having considered the same, report favorably thereon without amendment and recommend that the bill do pass.

EXPLANATION OF THE BILL

This bill gives to the Osage Indian Tribal Council the right to determine the bonus value of tracts offered for lease for oil, gas, and other mining purposes on the Osage Mineral Reservation, Okla.

During recent years it has been the practice of the Department of the Interior to have an appraiser present during oil lease sales, who fixed a minimum acceptable bonus value on each tract offered for sale. These appraisals were not announced during the time auction sales were held, but if the bidding failed to reach the amount deemed acceptable by the appraiser, he asked the auctioneer to announce the acceptable figure and the high bidder was given an opportunity to increase his bid to meet the appraisal. Several bidders stopped attending the Osage oil lease sales because of their dissatisfaction with this procedure.

The Tribal Council feels that its members are competent to determine whether or not the tribe is receiving an adequate bonus for the oil leases offered for sale, particularly since the leases now are disposed of through sealed bid sales. H. R. 3323 will give the Council assurance that once it has accepted the high bid on any tract, a lease which is regular in all other respects will be approved by the Secretary of the Interior.

At hearings held on this bill, representatives of the Bureau of Indian Affairs, Department of the Interior, testified in its behalf and asked that it be enacted.

The Committee on Public Lands unanimously recommend passage of H. R. 3323.

Pursuant to the provisions of clause 2a, rule XIII, of the Rules of the House of Representatives, proposed changes in existing law are indicated below with the matter proposed to be omitted in black brackets, and the new matter proposed to be inserted in italics:

Third paragraph, section 3, of the act entitled "An act relating to the tribal and individual affairs of the Osage Indians of Oklahoma," approved June 24, 1938 (52 Stat. 1034):

"The Secretary of the Interior and the Osage tribal council are hereby authorized and directed to offer for lease for oil, gas, and other mining purposes any unleased portion of said land in such quantities and at such times as may be deemed for the best interest of the Osage Tribe of Indians [.] *and the Osage tribal council may determine the bonus value of any tract offered for lease for oil, gas, and other mining purposes on any unleased portion of said land, and such determination shall be final.*"

80TH CONGRESS } 1st Session } SENATE { [illegible] 1

# DIRECTING THE ISSUANCE OF A PATENT IN FEE TO MARGERT PICKETT YELLOWTAIL

JULY 14 (legislative day, JULY 10), 1947.—Ordered to be printed

MR. ECTON, from the Committee on Public Lands, submitted the following

## REPORT

[To accompany S. 1150]

The Committee on Public Lands, to whom was referred the bill (S. 1150) to authorize and direct the Secretary of the Interior to issue to Margert Pickett Yellowtail a patent in fee to lands allotted to her on the Crow Reservation, Mont., having considered same, report thereon with the recommendation that it do pass with the following amendment:

Page 1, line 3, after the word "That", insert the following: "upon application in writing".

This bill, as amended, and if enacted, will, upon application in writing, direct the Secretary of the Interior to issue to Margert Pickett Yellowtail a patent in fee to land allotted to her on the Crow Reservation, Mont.

The act of June 4, 1920 (41 Stat. 751), provides that a Crow Indian allottee shall not sell more than one-half of his homestead, or 320 acres thereof.

Margert Pickett Yellowtail is the wife of Robert Yellowtail, who served as superintendent of the Crow Agency for about 11 years. He resigned this position about 2 years ago. Mrs. Yellowtail and her husband are well qualified to conduct their own affairs. They have large land holdings in addition to the land described in the bill.

It is a matter of record in hearings before the Senate Committee on Civil Service, which hearings have been certified to your committee, Indian Bureau officials, during the course of their testimony, submitted a number of proposals for specific steps which the Department of the Interior and Congress might take to bring about the release from Federal supervision the various tribes and individual members thereof. Ten tribes enumerated in group 1 could be released now from Federal supervision; 19 tribes enumerated in group 2 could be released in 10 years; and 35 tribes enumerated in group 3 in an