THE NATIONAL ARCHIVES OF THE UNITED STATES 1934 LITTERA SCRIPTA MANET

# FEDERAL REGISTER

VOLUME 17 NUMBER 60

Washington, Wednesday, March 26, 1952

## TITLE 3—THE PRESIDENT

### PROCLAMATION 2966

ARMED FORCES DAY, 1952

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

WHEREAS the armed forces of the United States serve this Nation with unselfish devotion not only in time of war, but also in time of peace; and

WHEREAS our fighting forces, welded into a unified team that symbolizes our strength as a united people, have been waging the battle of freedom in Korea and are guarding the vital interests of peace in other lands across the sea; and

WHEREAS it is fitting that we devote one day each year to paying special tribute to these defenders of our liberty:

NOW, THEREFORE, I, HARRY S. TRUMAN, President of the United States of America, do hereby proclaim Saturday, May 17, 1952, as Armed Forces Day; and I direct the Secretary of Defense and the Secretaries of the Army, the Navy, and the Air Force to arrange for the military observance of that day and to cooperate with civil authorities in suitable commemorative ceremonies.

I also invite the Governors of the States, Territories, and possessions of the United States to arrange for celebrations designed to honor the members of the armed forces on the designated day; and I request all of our citizens to display the flag of the United States on that day as a token of our gratitude to the men and women of the military services.

IN WITNESS WHEREOF, I have hereunto set my hand and caused the Seal of the United States of America to be affixed.

DONE at the City of Washington this 19th day of March in the year of our Lord nineteen hundred and [SEAL] fifty-two, and of the Independence of the United States of America the one hundred and seventy-sixth.

HARRY S. TRUMAN

By the President:

DEAN ACHESON,
*Secretary of State.*

[F. R. Doc. 52-3501; Filed, Mar. 24, 1952; 4:45 p. m.]

## TITLE 6—AGRICULTURAL CREDIT

### Chapter I—Farm Credit Administration, Department of Agriculture

Subchapter F—Banks for Cooperatives

[FCA Order 542]

PART 70—LOAN INTEREST RATES AND SECURITY

INCREASE IN INTEREST RATE; ST. PAUL BANK FOR COOPERATIVES

Effective April 1, 1952, the rate of interest which may be charged by the St. Paul Bank for Cooperatives, as specified in § 70.5 of Chapter I, Title 6, Code of Federal Regulations[1] is hereby changed to 2¾ per centum per annum.

(Sec. 41, 48 Stat. 264, sec. 14, 49 Stat. 317, sec. 36, 50 Stat. 717, secs. 34, 33, 48 Stat. 262, 264, sec. 13, 49 Stat. 317, sec. 35, 50 Stat. 717, sec. 8, 46 Stat. 14, sec. 54, 48 Stat. 269, sec. 11, 49 Stat. 316, sec. 5, 50 Stat. 704; 12 U. S. C. 1134c, 1134j, 1141f. E. O. 6084, Mar. 27, 1933)

[SEAL] I. W. DUGGAN, *Governor.*

MARCH 21, 1952.

[F. R. Doc. 52-3463; Filed, Mar. 25, 1952; 8:51 a. m.]

---

### Chapter IV—Production and Marketing Administration and Commodity Credit Corporation, Department of Agriculture

Subchapter C—Loans, Purchases, and Other Obligations

PART 638—NAVAL STORES

SUBPART—1952 GUM NAVAL STORES PRICE SUPPORT LOAN PROGRAM

Statement with respect to the Gum Naval Stores Price Support Loan Program for the calendar year 1952, formulated by the Commodity Credit Corporation and the Production and Marketing Administration (hereinafter referred to as "CCC" and "PMA").

Sec.
638.301 Administration.
638.302 Eligible producer.
638.303 Eligible naval stores.

[1] 17 F. R. 1493.

(Continued on p. 2589)

## CONTENTS

THE PRESIDENT


| | Page |
|---|---|
| **Proclamation** | |
| Armed Forces Day, 1952 | 2587 |
| **EXECUTIVE AGENCIES** | |
| **Agriculture Department** | |
| *See* Animal Industry Bureau; Commodity Credit Corporation; Farm Credit Administration; Production and Marketing Administration. | |
| **Animal Industry Bureau** | |
| Proposed rule making: | |
| Interstate transportation of animals and poultry | 2626 |
| Meat inspection regulations | 2624 |
| Rules and regulations: | |
| Goats; recognition of breeds and books of record of purebred animals | 2591 |
| **Canal Zone** | |
| Rules and regulations: | |
| Public lands, military and naval reservations; Curundu Military Reservation | 2622 |
| Revising boundary | 2622 |
| **Civil Aeronautics Administration** | |
| Rules and regulations: | |
| Minimum en route instrument altitudes; alterations | 2591 |
| **Civil Aeronautics Board** | |
| Notices: | |
| Island Air Ferries, Inc., renewal case; hearing | 2632 |
| Proposed rule making: | |
| Air traffic rules | 2629 |
| **Commerce Department** | |
| *See* Civil Aeronautics Administration; International Trade, Office of; National Production Authority; National Shipping Authority. | |
| **Commodity Credit Corporation** | |
| Rules and regulations: | |
| Naval stores; 1952 gum naval stores price support loan program | 2587 |
| **Customs Bureau** | |
| Notices: | |
| Petroleum oil foots; prospective tariff classification | 2630 |




HeinOnline -- 17 Fed. Reg. 2587 1952

came effective May 1, 1951 (16 F. R. 1934).

Notice and public procedure are not necessary prerequisites to the promulgation of this order, and I so find, since the amendment is based upon the recommendation of the Board of Tea Experts; which is comprised of experts in teas drawn from the Food and Drug Administration and the tea trade, so as to be representative of the tea trade as a whole.

(Sec. 10, 29 Stat. 607, as amended; 21 U. S. C. 50. Interprets or applies sec. 1, 29 Stat. 604, as amended; 21 U. S. C. 41)

Dated: March 20, 1952.

[SEAL] JOHN L. THURSTON, *Acting Administrator.*

[F. R. Doc. 52-3435; Filed, Mar. 25, 1952; 8:49 a. m.]

## TITLE 25—INDIANS

### Chapter I—Bureau of Indian Affairs, Department of the Interior

PART 180—LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING

MISCELLANEOUS AMENDMENTS

The regulations in this part are amended, as follows:

1. Sections 180.1 to 180.4 are amended to read as follows:

§ 180.1 *Definitions.* The following words or terms when used in the lease and regulations in this part shall have the meaning shown in this section:

(a) *Superintendent.* The Superintendent of the Osage Agency, Pawhuska, Oklahoma, in charge of the Osage Agency and Reservation, or any other person who may be in charge of such agency and reservation, and it shall be his duty to enforce compliance with the regulations in this part.

(b) *Inspector.* Any person appointed as Inspector of oil and gas wells, or who may be designated by the Secretary of the Interior or the Commissioner of Indian Affairs to supervise oil or gas operations on Osage lands under the direction of the Superintendent.

(c) *Oil lessee.* Any person, firm, or corporation to whom an oil mining lease is made under the regulations in this part.

(d) *Gas lessee.* Any person, firm, or corporation to whom a gas lease is made under the regulations in this part.

§ 180.2 *Royalty payments*—(a) *Royalty on oil produced by primary or gas injection methods.* The lessee shall pay or cause to be paid to the Superintendent, for the lessor as a royalty, the sum of 16⅔ percent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs, shall elect to take the royalty in oil; payment to be made at time of sale or removal of the oil, except where payments are made on division orders; and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal: *Provided,* That when the quantity of oil taken from all the producing wells on any quarter-section according to the public survey, or fractional quarter-section if the land covered by the lease does not include the full quarter-section, during any calendar month, is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 percent.

(b) *Royalty on oil produced by the water flood process.* When the estimated reserves of oil recoverable by primary and/or gas injection methods from a specified sand or sands have been depleted or partially depleted, the lessee and the Tribal Council may agree upon a new royalty rate to be approved by the Superintendent, the sum to be not less than 12½ percent of the gross proceeds from sales of oil produced by the water flood process after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs, shall elect to take the royalty in oil; payment to be made at time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal.

(c) *Royalty in kind.* Should the lessor, with the approval of the Commissioner of Indian Affairs, elect to take the royalty in oil, the lessee shall furnish free storage for the royalty oil for not exceeding 30 days.

§ 180.3 *Government reserves right to purchase oil.* Any of the executive departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under any lease. The Commissioner of Indian Affairs may impose restrictions as to time or times for drilling of wells and as to the production from any well or wells when in his judgment or the judgment of his representative, such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in taking action, the Commissioner may take into consideration, among other things, Federal laws, State laws, or regulations by competent Federal or State authorities or lawful agreements among operators regulating either drilling or production, or both.

§ 180.4 *Drilling obligations.* (a) Lessees shall drill at least one well to the Mississippi line, unless oil or gas is found in commercial quantities at a lesser depth, on the land embraced in their leases, within 12 months from date of approval of leases, or the leases may be held for the full 5-year fixed term without drilling; upon payment of rentals to the Superintendent for the lessor at the rate of $1 per acre per annum, or a proportionate part thereof for each 3 months' period a lease is held and a well is not drilled, such rental beginning twelve months from date of approval of lease: *Provided,* That the time within which a well shall be drilled or rental paid in lieu of drilling shall not begin to run on any restricted homestead selection until the consent of the Superintendent to drilling on such homestead shall have been given: *Provided,* That the Superintendent in his discretion may direct the drilling of any undrilled lease, if in his opinion the interests of the Osage Tribe warrant. Should the lessee elect to surrender his lease before the end of any such yearly period without drilling a well thereon, he shall pay the rental of $1 per acre for the fractional part of the year the land is held and a well is not drilled, and failure of the lessee to pay such rental within 25 days from the expiration of any yearly period during which such well is not drilled shall be cause for cancellation of the lease by the Superintendent, but such cancellation shall not release the lessee and his sureties from the obligation to pay such rental: *Provided, further,* That whenever the Commissioner of Indian Affairs shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on any lease.

(b) Prior to the expiration of a term of a lease, the Osage Tribal Council may, with the approval of the Superintendent, and a finding by him that such action is in the best interest of the Osage Tribe, grant an extension of the term of the lease for a period of not to exceed six months for the purpose of enabling the lessee to drill a well to the Mississippi Line unless oil or gas is found in paying quantities at a lesser depth.

2. Section 180.15 is amended to read as follows:

§ 180.15 *Gas for operating purposes.* The gas lessee shall furnish the oil lessee sufficient gas for drilling and operating purposes at a rate to be agreed upon, or on failure to agree the rate shall be fixed by arbitration: *Provided,* That the oil lessee shall make necessary connections between the well and the meter whenever possible.

3. Section 180.17 is amended to read as follows:

§ 180.17 *Form of payment.* All amounts due and payable under a lease shall be paid to the Superintendent by check or bank draft on a solvent bank.

4. Sections 180.19 and 180.20 are amended to read as follows:

§ 180.19 *Penalty for violation of lease terms.* Violation of any of the terms or conditions of any lease or of the regulations in this part shall subject the lease to cancellation by the Superintendent, or the lessee to a fine of not exceeding $500 per day for each and every day the terms of the lease or of the regulations are violated, or the orders of the Superintendent in reference thereto are not complied with, or to both such fine and cancellation in the discretion of the Superintendent: *Provided,* That prior to cancellation of a lease or the imposition of a fine as provided for in this section, the lessee shall be entitled to notice and hearing with respect to the terms of the lease or of the regulations violated, which hearing shall be held by the Superintendent.

§ 180.20 *Bonds.* (a) Lessees shall furnish with each oil lease and each gas lease, to be filed at the time the lease is presented, a bond upon Form D, with a surety company duly authorized to execute bonds. Such bonds shall be in the sum of $1,000 for each quarter-section or fractional quarter-section unit covered by the lease: *Provided, however,* That the lessee may file one bond, Form G, covering all leases to which he or they are or may become parties instead of a separate bond in each case, such bond to be in the penal sum of $15,000.

(b) The right is specifically reserved to increase the amount of any such bond in any particular case when the Superintendent deems it proper to do so.

(c) Form H should be used in the preparation of a bond covering a lease acquired through assignment where the assignee does not have a collective bond, or the surety does not execute its consent to remain bound under the original bond given to secure the faithful performance of the terms and conditions of the lease.

5. Sections 180.23 and 180.24 are amended to read as follows:

§ 180.23 *Contracts for the sale of gas for industrial purposes.* (a) All contracts for the sale of gas for industrial purposes and sworn statements showing the terms, conditions, and schedules of prices contained in contracts with domestic consumers shall be filed with the Superintendent, and shall be subject to the approval of the Commissioner of Indian Affairs whenever, in his opinion, the interests of the Osage Tribe or the public require such action.

(b) In the sale and disposition of gas, preference shall at all times be given to domestic consumers, unless provided otherwise in the lease, and all contracts for the industrial use of gas shall contain a clause to the effect that when it is shown to the satisfaction of the Commissioner that such gas is needed for domestic consumers within an area fixed by the Commissioner, such contract shall terminate upon the expiration of 30 days' notice from the Commission, and that the Commissioner shall have authority immediately to suspend the furnishing of gas to industrial consumers when he is of the opinion that such gas is needed for domestic consumers. All gas furnished to industrial and domestic consumers shall be metered and sold at meter rates: *Provided,* That gas furnished to an oil lessee may be sold as provided in the gas lessee's contract.

(c) All contracts with domestic consumers shall be subject to the inspection of the Superintendent.

§ 180.24 *Royalty on casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from gas, drip gasoline, or other natural condensate.* (a) A royalty of 16⅔ percent ofthe gross proceeds of sales shall be paid on the value of one-third (or the lessee's portion if greater than one-third) of all casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from the gas produced from the leasehold. The value of the remainder is an allowance for the cost of manufacture, and no royalty thereon is required. The royalty shall be computed on the sale price received by the manufacturers of such products, or such higher price the lessee may receive the same to be reported under oath and remitted to the Superintendent not later than the 25th of the succeeding month for all such products sold during the previous month. If the manufacturer of any product extracted from casing-head gas produced from an Osage leasehold should sell his product at an arbitrary price below that obtained by other manufacturers selling such product in the open market during a particular month, the Superintendent shall notify said manufacturer of such discrepancy and require settlement for royalty upon the average price obtained by manufacturers selling such product in the open market during the same period. The place of sale of liquid hydrocarbons extracted from gas shall be at the plant where manufactured or when loaded into tank cars at or near the plant. Should any manufacturer sell such product by delivery to pipelines at distant points he may be allowed the average loss by waste, evaporation or otherwise sustained by other manufacturers in the Osage, of such product from the plant to tank cars as shown by sworn statements which shall be furnished when required by the Superintendent.

(b) The royalty on all drip gasoline, or other natural condensate recovered from gas produced from the leased lands without resort to manufacturing process shall be 16⅔ percent of the gross proceeds from sales, except that such substance, if processed in a casing-head gasoline plant shall be treated for royalty purposes as though it were gasoline.

6. Section 180.30 is amended to read as follows:

§ 180.30 *Measuring casing-head gas.* All casing-head gas shall be metered and computed on a basis of 10 ounces above atmospheric pressure, the location and type of meters to be approved by the Superintendent or Inspector. All meters and charts shall be open to inspection at any time by the Inspectors of the Bureau of Indian Affairs, or such other employee as the Superintendent may designate for such purpose.

7. Sections 180.39 to 180.42 are amended to read as follows:

§ 180.39 *Sales of oil leases and gas leases: leases to be sold at public auction.* (a) Written application for tracts to be offered for lease may be filed with the Superintendent.

(b) The Superintendent, with the consent of the Osage Tribal Council, may at such times and in such manner as shall be deemed appropriate, publish and distribute notices that oil leases and/or gas leases on specific tracts of unleased tribal lands, each of which shall be in a compact body, will be offered at public auction to the highest responsible bidder: *Provided,* That not less than 25,000 acres of the unleased portion of the Osage mineral reserve shall be offered for lease during any one year. Successful bidders must deposit with the Superintendent on day of sale, a check, or bank draft on a solvent bank in the amount equal to 25 percent of the bonus as a guaranty of good faith. The Superintendent may require any bidder to submit satisfactory evidence of good faith, that he has the cash in hand or at his command, and to furnish whenever called upon by the Superintendent during the progress of the sale, authenticated statement of a solvent bank to the effect the bidder has the means to purchase the lease. The balance of the bonus, together with a $5.00 filing fee for each lease, shall be paid, and the lease in completed form with necessary accompanying papers shall be filed with the Superintendent within 20 days after the lease is forwarded, by the Superintendent, to the lessee for execution, unless such period has been extended by the Superintendent for good and sufficient reason. If the successful bidder fails to complete the lease or to pay the full consideration within 20 days or an authorized extension thereof, or if the lease is disapproved through no fault of the lessor or the Department of the Interior, the amount deposited as a guaranty of good faith shall be forfeited for the use and benefit of the lessor. Any and all bids shall be subject to acceptance by the Osage Tribal Council. The Superintendent may disapprove a lease made on an accepted bid, upon evidence satisfactory to him of collusion, fraud or other irregularity in connection with the sale of the lease.

(c) No lease, assignment thereof, or interest therein will be approved to any employee or employees of the Government, and no such employee shall be permitted to acquire any interest in leases covering Osage Tribal lands, by ownership of stock in corporations having leases or in any other manner.

§ 180.40 *Corporations and corporate showing.* (a) Upon being notified of the acceptance of its bid, a corporation shall file a certified copy of articles of incorporation, and evidence showing compliance with local corporation laws if a foreign corporation: *Provided,* That if any such papers have already been filed a statement to that effect may be submitted.

(b) A corporation must also file with its first lease, and at such other times as the Superintendent may direct, a list in duplicate of all officers, directors, and of such stockholders, as may be required with their post-office addresses, and showing the number of shares of capital stock held by each and whether held for themselves or in trust, together with a sworn statement of its proper officer, showing:

(1) The total number of shares of the capital stock actually issued, the number of shares actually sold and specifically the amount of cash paid into the treasury on the stock sold, or, if paid in property, state kind, quantity, and value of same paid.

(2) Of the stock sold, how much per share remains unpaid and subject to assessment.

(3) How much cash the company has in its treasury and elsewhere, and from what sources it was received.

No. 60——3

HeinOnline -- 17 Fed. Reg. 2603 1952

(4) What property, exclusive of cash, is owned by the company and its value.

(5) What the total indebtedness of the company is and specificially the nature of its obligations.

(c) Leases made by corporations shall be accompanied by an affidavit (Form E) showing the authority of its officers to execute leases, bonds and other papers.

§ 180.41 *How to acquire permission to begin operations on homestead allotments.* (a) Lessees may conduct operations within or upon homestead selections with the written consent of the Superintendent and not otherwise.

(b) If the allottee is unwilling to permit operations on his homestead, the Superintendent will direct the Inspector to make an examination of the premises with the allottee and the lessee, or his representative, and should the Inspector be of the opinion that the interests of the Osage Tribe require that the particular tract be developed he will endeavor to have the parties agree upon the terms under which operations on the homestead may be conducted.

(c) In the event the allottee and the lessee cannot, with the assistance of the Inspector, agree on the matter, the allottee shall be permitted to go before the Osage Tribal Council, and the Council, after hearing the allottee, the lessee, and the Inspector, shall make such recommendation as it deems proper. Guardians, legal or natural, may represent their Indian wards, and where no one is authorized or where no person is deemed by the Superintendent to be a proper party to speak for a minor or person of unsound mind or of feeble understanding, the Principal Chief of the Osage Tribe shall represent him.

(d) Where the allottee does not appear before the Council, either in person or by representative, when notified by the Superintendent, or the Council fails to act in the matter within 10 days after being referred to it, the Superintendent may authorize the lessee to proceed with operations in conformity with the provisions of his lease and the regulations in this part. If the Council by appropriate resolution should recommend that a lessee be not permitted to conduct drilling operations on a homestead selection, the Superintendent shall submit the question to the Area Director.

§ 180.42 *Rental period after consent of Superintendent to begin operations on homesteads.* Rental in lieu of development shall not begin to run on any homestead selection until one year after the consent of the Superintendent or Area Director to operations on such homestead shall have been given.

38. Sections 180.46 and 180.47 are amended to read as follows:

§ 180.46 *Approval of lease instruments—*(a) *Oil and gas leases.* The Superintendent may approve the schedule of bids accepted by the Osage Tribal Council following a sale of oil leases and gas leases conducted in conformity with the provisions of § 180.39. The Superintendent may also approve oil leases and gas leases made by the Osage Tribal Council in conformity with the regulations in this part, bonds and other instruments required for leases or assignments thereof, and the acceptance of the voluntary surrender of leases.

(b) *Unitization of oil leases.* As a consideration for their further development by the water flood process, two or more oil leases may be unitized and merged in a single blanket lease with the approval of the Superintendent. The instrument of unitization (blanket lease) shall include all the requirements and provisions of sections numbered 1, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19, and 20 of Osage oil lease Form B, *Provided:* That the preamble of Form B and the provisions of section numbered 2 in respect to royalty rates; section numbered 3 in respect to payment of rental; section numbered 4 in respect to payment of well site and tank location fees; and section numbered 14 in respect to the surrender of the lease, may be modified and/or supplemented by the parties, with the approval of the Superintendent, to the extent deemed appropriate for the equitable and efficient conduct of unitized operations, and not otherwise in conflict with the regulations in this part. Lessee(s) shall, before commencing water flood operations, and on or before December 31st of each year thereafter, submit to the Superintendent an acceptable plan of development and operation for the unit area for the ensuing year.

(c) *Assignments.* Approved leases or any interest therein may be assigned with the approval of the Superintendent, and not otherwise. Assignments, when so approved, shall be subject to the terms and conditions of the original leases, and the regulations under which such leases were approved. The assignee shall furnish with his assignment a satisfactory bond as provided in § 180.20 (c). Any attempt to assign an approved lease or any interest therein without the consent and approval of the Superintendent shall be absolutely void and shall subject the original lease to cancellation in the discretion of the Superintendent.

§ 180.47 *Filing of assignments and drilling contracts.* (a) Assignments of any lease or any interest therein by drilling contract or otherwise shall be filed with the Superintendent within 30 days from the date of such assignment by the assignor, except in instances where the necessary papers cannot be executed within such time, in which event, however, formal notice shall be filed within the 30 days stipulated and where necessary the Superintendent may grant 15 days additional.

(b) In case of contracts made by oil lessees for drilling wells, which contracts provide that, in consideration of drilling a well on the leased premises a subsequent assignment of an interest in such lease will be made subject to the approval of the Department, the Superintendent is hereby authorized to approve such drilling contracts with a stipulation that such approval does not in any way bind the Department to approve formal assignments that may thereafter be submitted and that such approval merely authorizes the drilling contractor to enter into possession of the lease for the purpose of development work.

9. Section 180.49 is amended to read as follows:

§ 180.49 *Commencement of operation.* No operations shall be permitted upon any tract of land until a lease covering such tract shall have been approved by the Superintendent or such operations specifically authorized by him.

10. Section 180.59 is amended to read as follows:

§ 180.59 *Duties of Inspectors.* It shall be the duty of the Inspector—

(a) To visit from time to time leased lands where oil and gas mining operations are being conducted, and to inspect and supervise such operations with a view to preventing waste of oil and gas, damage to oil, gas, or water bearing formations, or injury to property or life, in accordance with the provisions of the regulations in this part.

(b) To make reports to the Superintendent as to the general conditions of the leases, property, and the manner in which operations are being conducted and his orders complied with.

(c) To consult and advise with the Superintendent as to the conditions of the leased lands, and to submit information and recommendations from time to time for safeguarding and protecting the property of the lessor and securing compliance with the provisions of the regulations in this part.

(d) To give such orders or notices as may be necessary to secure compliance with the regulations and to issue all necessary instructions or orders to lessees to stop or modify such methods or practices as he may consider contrary to the provisions of such regulations.

(e) To modify or prohibit the use or continuance of any operation or method which, in his opinion, is causing or is likely to cause any surface or underground waste of oil or gas, or injury to any oil, gas, water, coal, or other mineral formation, or which is dangerous to life or property, or in violation of the provisions of the regulations in this part.

(f) To prescribe, subject to the approval of the Superintendent, the manner and form in which all records or reports called for by the regulations in this part shall be made by the lessee.

(g) To prohibit the drilling of any well into any producing sand when in his opinion and with the approval of the Superintendent the marketing facilities are inadequate, or insufficient provision has been made for controlling the flow of oil or gas reasonably to be expected therefrom until such time as suitable provision can be made.

(h) To prescribe or approve the methods of drilling wells through coal measures or other mineral deposits.

(i) To determine when and under what conditions a producing well may be drilled deeper, and under what conditions a producing well, or sand, may be abandoned.

(j) To require that tests shall be made to detect waste of oil or gas or the presence of water in a well and to prescribe or approve the methods of conducting such tests.

(k) To require that any condition existing subsequent to the completion of

HeinOnline -- 17 Fed. Reg. 2604 1952

a well which is causing, or is likely to cause, damage to an oil, gas, or water bearing formation, or to coal measures or other mineral deposits, or which is dangerous to life or property, be corrected as he may prescribe or approve.

(l) To approve the type or size of separators used to separate the oil, gas, or water coming from a well.

11. Section 180.64 is amended to read as follows:

§ 180.64 *Plats showing location of wells.* Lessee shall furnish as required, a plat, in manner and form as prescribed by the Superintendent, showing all wells, active or abandoned, on the leased lands, and other related information. Blank plats will be furnished upon application.

12. Section 180.67 is amended to read as follows:

§ 180.67 *Notice prior to removal of casing.* Lessee shall obtain permission from the Superintendent before removing any casing from any well.

13. Section 180.84 is amended to read as follows:

§ 180.84 *Plugging to be approved by Inspector.* (a) The manner in which mud-laden fluid, cement or plugs shall be introduced into any well being plugged and the type of plugs so used shall be subject to the approval of the Inspector, and the lessee shall within 10 days file with the Superintendent a complete report of the plugging of such well.

(b) In the event the lessee or operator shall fail to plug properly any dry or abandoned well in accordance with the regulations in this part the Superintendent may, after 5 days' notice to the parties in interest, plug such well at the expense of the lessee or his surety.

14. Section 180.89 is amended to read as follows:

§ 180.89 *Use of timber from leased lands.* Lessee will not be permitted to use any timber from Osage lands except under written agreement with the owner.

15. Section 180.91 is amended to read as follows:

§ 180.91 *Amount of penalties.* Fines may be imposed by the Superintendent without right of appeal for violations of certain sections of the regulations in this part, as follows:

Fines for noncompliance with terms of lease or regulations.

(a) For failure to file preliminary report required by § 180.62, $5 a day for the first violation and $10 a day for each violation thereafter.

(b) For failure to file a completion report, as required by §180.63, $5 a day for the first violation and $10 a day for each violation thereafter.

(c) For failure to mark rigs or wells, as required by § 180.65, $50 for each well.

(d) For failure to construct slush pits, as required by § 180.68, $10 for each day after drilling is commenced on any well.

(e) For failure to comply with § 180.71, regarding gate valve and other approved controlling devices, $100.

(f) For failure to comply with § 180.77, in regard to using gas in place of steam to operate engines or pumps, $10 per day for the first violation and $20 a day for each violation thereafter.

(g) For failure to comply with § 180.78, which prohibits the burning of gas in flambeau lights, $50 per day.

(h) For failure to notify Superintendent and secure authority before redrilling, deepening, plugging or abandoning any well, $200, as required by §§ 180.80 and 180.90.

(i) For failure to construct sump-holes, or burning holes, to properly care for and dispose of B. S. and salt water as provided in § 180.85, $10 a day for the first violation, and in event of the failure properly to construct or repair sump-holes, or burning holes, within 5 days after notification by Superintendent or his authorized representative, $25 to $50 a day.

(j) For failure to file plugging reports as required by § 180.84 and for failure to file reports, and remit royalties required by § 180.45, $5 a day for the first violation and $10 a day for each violation thereafter.

All moneys received from fines collected under this section shall be deposited as provided in § 180.93.

16. Section 180.93 is amended to read as follows:

§ 180.93 *Forms.* (a) Leases, and other papers must be upon forms prescribed by the Secretary of the Interior, and the Superintendent will furnish prospective leasees with such forms for preparation of original leases without charge, but shall make a charge of 50 cents per set for forms used in preparing assignments.

Form A—Gas mining lease.
Form B—Oil mining lease.
Form D—Bond.
Form E—Authority of officers to execute papers.
Form F—Assignment.
Form G—Collective bond.
Form H—Assignment bond.

(b) All sums received from sale of forms and fines shall be placed in a special fund, and may be expended under the direction of the Commissioner of Indian Affairs for the expenses necessary to carry out the regulations in this part.

17. Section 180.95 is added to read as follows:

§ 180.95 *Hearings and appeals.* (a) Any person, firm or corporation aggrieved by any decision or order issued by or under authority of the Superintendent pursuant to the regulations in this part, may file with the Superintendent at anytime an application for modification or revocation of such decision or order. The Superintendent shall give notice of the time and place and conduct a hearing upon the application within ten days after its receipt by him. If the applicant is not satisfied with the decision of the Superintendent, an appeal may be taken as hereinafter set forth except as provided in paragraph (b) of this section.

(b) An appeal to the Commissioner of Indian Affairs may be taken from any decision or order issued by or under authority of the Superintendent except decisions or orders issued under authority of §§ 180.54, 180.59, and 180.91, by filing such appeal with the Superintendent within 30 days after service of the decision or order. The appeal shall incorporate or be accompanied by such written showing and argument on the facts and law as the appellant may deem adequate to justify reversal or modification of the order. All statements of facts must be made under oath. The Superintendent shall transmit the appeal and accompanying papers with a full report and recommendations, through official channels, to the Commissioner of Indian Affairs.

(c) An appeal from any decision of the Commissioner of Indian Affairs may be taken to the Secretary of the Interior within 30 days after service of the Commissioner's decision. The appeal shall be accompanied by such written showing and argument on the facts and law as appellant may deem adequate to justify reversal or modification of the decision. Any statement of facts not submitted to the Commissioner must be made under oath.

(d) Compliance with any decision or order issued by or under authority of the Superintendent shall not be suspended by reason of an appeal having been taken unless such suspension is authorized in writing by the Commissioner of Indian Affairs, and then only on a determination that such suspension will not be detrimental to the lessor or upon submission and acceptance of a bond deemed adequate to indemnify the lessor from loss or damage.

(Sec. 3, 34 Stat 543. Interpret or apply secs. 1, 2, 45 Stat. 1478, 1479)

OSCAR L. CHAPMAN,
*Secretary of the Interior.*

MARCH 20, 1952.

[F. R. Doc. 52-3383; Filed, Mar. 25, 1952; 8:53 a. m.]

# TITLE 31—MONEY AND FINANCE: TREASURY

## Chapter II—Fiscal Service, Department of the Treasury

### Subchapter A—Bureau of Accounts

### PART 224—FEDERAL PROCESS AGENTS OF SURETY COMPANIES

MISCELLANEOUS AMENDMENTS

MARCH 20, 1952.

Part 224, Subchapter A, Chapter II, Title 31 of the Code of Federal Regulations of the United States of America (appearing formerly as Department Circular Letter 4, November 15, 1930, and now as Department Circular No. 901, March 20, 1952) is hereby amended in the following respects:

1. By revising § 224.2 to read as follows:

§ 224.2 *Appointment of process agents*—(a) *Generally.* Companies should especially note that the law prohibits the doing of business under the provisions of this act beyond the State under whose laws it was incorporated and in which its principal office is lo-

# 1949 EDITION CODE OF FEDERAL REGULATIONS

Title 25—Indians

1952
CUMULATIVE POCKET SUPPLEMENT
FOR USE DURING 1953 (as of Jan. 1, 1953)

For changes subsequent to December 31, 1952
see the daily issues of the
FEDERAL REGISTER

### SUBPART B—CHARGES ASSESSED AGAINST NON-INDIAN LANDS NOT INCLUDED IN AN IRRIGATION DISTRICT

§ 148.20 *Private contract lands; assessments.* In addition to 4,751.5 acres of non-Indian land included within the two irrigation Districts dealt with in Subpart A, there are 3,237.6 acres of land, more or less, in non-Indian ownership under private ditches, covered by repayment contracts executed pursuant to the act of June 28, 1946 (60 Stat. 333–338), obligating such owners to pay their proper share of such construction costs. The total per acre charge against all such lands is $26.38. This amounts to an annual per acre rate of $0.6595. For the purposes of this notice the annual per acre rate is hereby fixed at $0.66. This annual rate of assessment will continue for a 40-year period within which the total amount of construction cost of $210,726 is to be repaid without interest. The amount of each annual installment chargeable against the lands covered by each of the several contracts with individual landowners whose lands are served under private ditches, shall be determined by multiplying the total acreage, under each contract entitled to Willow Creek storage rights, either directly or by substitution, by the per acre annual rate. Against the amounts due annually by the individual landowners whose lands are served by private ditches, under this notice there shall be allowed any credits due under section 6 of the act of June 28, 1946. Credits due on behalf of any land shall be reflected in any statement submitted to the landowners.

§ 148.21 *Time of payment.* The amount of each annual installment, payable under the private landowner contracts, determined as herein provided, shall be paid by the landowners to the United States, on or before November 15 of each year commencing with the calendar year 1951.

§ 148.22 *Penalty.* To all assessments not paid on the due date there shall be added a penalty of one-half of one per cent per month or fraction thereof, from the due date so long as the delinquency continues.

§ 148.23 *Refusal of water delivery.* The right is reserved to refuse the delivery of water to any landowner in the event of default in the payment of assessments, including penalties on account of delinquencies.

# SUBCHAPTER R—LEASES AND SALES OF MINERALS, RESTRICTED INDIAN LANDS

## Part 180—Leasing of Osage Reservation Lands for Oil and Gas Mining

Sec.
180.1 Definitions. [Revised]

OIL MINING LEASES

180.2 Royalty payments. [Revised]
180.3 Government reserves right to purchase oil. [Revised]
180.4 Drilling obligations. [Revised]
180.15 Gas for operating purposes. [Revised]
180.17 Form of payment. [Revised]
180.19 Penalty for violation of lease terms. [Revised]
180.20 Bonds. [Revised]

GAS MINING LEASES

180.23 Contracts for the sale of gas for industrial purposes. [Revised]

UTILIZATION OF CASING-HEAD GAS WHEN USED FOR THE MANUFACTURE OF GASOLINE

Sec.
180.24 Royalty on casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from gas, drip gasoline, or other natural condensate. [Revised]
180.30 Measuring casing-head gas. [Revised]

HOW TO ACQUIRE LEASES OF TRIBAL LANDS

180.39 Sales of oil leases and gas leases; leases to be sold at public auction. [Revised]
180.40 Corporations and corporate showing. [Revised]
180.41 How to acquire permission to begin operations on homestead allotments. [Revised]
180.42 Rental period after consent of Superintendent to begin operations on homesteads. [Revised]

ı. by the per acre
the amounts due
idual landowners
·ved by private
ice there shall be
e under section 6
946. Credits due
shall be reflected
itted to the land-

*a y m e n t.* The
ıual installment,
rivate landowner
as herein pro-
the landowners to
· before November
ıencing with the

'o all assessments
ate there shall be
e-half of one per
tion thereof, from
s the delinquency

*water delivery.*
to refuse the de-
landowner in the
e payment of as-
penalties on ac-
.

**RESTRICTED**

EAD GAS WHEN USED
RE OF GASOLINE

ng-head or natural
ıe, propane, or other
rbon substances ex-
gas, drip gasoline, or
condensate. [Re-

ng-head gas. [Re-

S OF TRIBAL LANDS

ses and gas leases;
ld at public auction.

ıd corporate show-
l]
permission to begin
n homestead allot-
ised]
after consent of
nt to begin opera-
esteads. [Revised]


ASSIGNMENTS

Sec.
180.46 Approval of lease instruments. [Revised]
180.47 Filing of assignments and drilling contracts. [Revised]

OPERATIONS

180.49 Commencement of operation. [Revised]

POWERS AND DUTIES OF INSPECTORS

180.59 Duties of inspectors. [Revised]

REQUIREMENTS OF LESSEES

180.64 Plats showing location of wells. [Revised]
180.67 Notice prior to removal of casing. [Revised]
180.84 Plugging to be approved by inspector. [Revised]
180.89 Use of timber from leased lands. [Revised]

PENALTIES FOR VIOLATION OF REGULATIONS

180.91 Amount of penalties. [Revised]

FORMS

180.93 Forms. [Revised]

HEARINGS AND APPEALS

180.95 Hearings and appeals. [Added]


SOURCE: §§ 180.1 to 180.95, set forth in this Pocket Supplement, appear at 17 F. R. 2602, Mar. 26, 1952.

§ 180.1 *Definitions.* The following words or terms when used in the lease and regulations in this part shall have the meaning shown in this section:

(a) *Superintendent.* The Superintendent of the Osage Agency, Pawhuska, Oklahoma, in charge of the Osage Agency and Reservation, or any other person who may be in charge of such agency and reservation, and it shall be his duty to enforce compliance with the regulations in this part.

(b) *Inspector.* Any person appointed as Inspector of oil and gas wells, or who may be designated by the Secretary of the Interior or the Commissioner of Indian Affairs to supervise oil or gas operations on Osage lands under the direction of the Superintendent.

(c) *Oil lessee.* Any person, firm, or corporation to whom an oil mining lease is made under the regulations in this part.

(d) *Gas lessee.* Any person, firm, or corporation to whom a gas lease is made under the regulations in this part.

OIL MINING LEASES

§ 180.2 *Royalty p a y m e n t s*—(a) *Royalty on oil produced by primary or gas injection methods.* The lessee shall pay or cause to be paid to the Superintendent, for the lessor as a royalty, the sum of 16⅔ percent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs, shall elect to take the royalty in oil; payment to be made at time of sale or removal of the oil, except where payments are made on division orders; and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal: *Provided,* That when the quantity of oil taken from all the producing wells on any quarter-section according to the public survey, or fractional quarter-section if the land covered by the lease does not include the full quarter-section, during any calendar month, is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 percent.

(b) *Royalty on oil produced by the water flood process.* When the estimated reserves of oil recoverable by primary and/or gas injection methods from a specified sand or sands have been depleted or partially depleted, the lessee and the Tribal Council may agree upon a new royalty rate to be approved by the Superintendent, the sum to be not less than 12½ percent of the gross proceeds from sales of oil produced by the water flood process after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs, shall elect to take the royalty in oil; payment to be made at time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal.

(c) *Royalty in kind.* Should the lessor, with the approval of the Commissioner of Indian Affairs, elect to take the royalty in oil, the lessee shall furnish free storage for the royalty oil for not exceeding 30 days.

§ 180.3 *Government reserves right to purchase oil.* Any of the executive departments of the United States Government shall have the option to purchase at the highest posted market price on the

day of sale all or any part of the oil produced under any lease. The Commissioner of Indian Affairs may impose restrictions as to time or times for drilling of wells and as to the production from any well or wells when in his judgment or the judgment of his representative, such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in taking action, the Commissioner may take into consideration, among other things, Federal laws, State laws, or regulations by competent Federal or State authorities or lawful agreements among operators regulating either drilling or production, or both.

§ 180.4 *Drilling obligations.* (a) Lessees shall drill at least one well to the Mississippi line, unless oil or gas is found in commercial quantities at a lesser depth, on the land embraced in their leases, within 12 months from date of approval of leases, or the leases may be held for the full 5-year fixed term without drilling, upon payment of rentals to the Superintendent for the lessor at the rate of $1 per acre per annum, or a proportionate part thereof for each 3 months' period a lease is held and a well is not drilled, such rental beginning twelve months from date of approval of lease: *Provided*, That the time within which a well shall be drilled or rental paid in lieu of drilling shall not begin to run on any restricted homestead selection until the consent of the Superintendent to drilling on such homestead shall have been given: *Provided*, That the Superintendent in his discretion may direct the drilling of any undrilled lease, if in his opinion the interests of the Osage Tribe warrant. Should the lessee elect to surrender his lease before the end of any such yearly period without drilling a well thereon, he shall pay the rental of $1 per acre for the fractional part of the year the land is held and a well is not drilled, and failure of the lessee to pay such rental within 25 days from the expiration of any yearly period during which such well is not drilled shall be cause for cancellation of the lease by the Superintendent, but such cancellation shall not release the lessee and his sureties from the obligation to pay such rental: *Provided, further*, That whenever the Commissioner of Indian Affairs shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on any lease.

(b) Prior to the expiration of a term of a lease, the Osage Tribal Council may, with the approval of the Superintendent, and a finding by him that such action is in the best interest of the Osage Tribe, grant an extension of the term of the lease for a period of not to exceed six months for the purpose of enabling the lessee to drill a well to the Mississippi Line unless oil or gas is found in paying quantities at a lesser depth.

§ 180.15 *Gas for operating purposes.* The gas lessee shall furnish the oil lessee sufficient gas for drilling and operating purposes at a rate to be agreed upon, or on failure to agree the rate shall be fixed by arbitration: *Provided*, That the oil lessee shall make necessary connections between the well and the meter whenever possible.

§ 180.17 *Form of payment.* All amounts due and payable under a lease shall be paid to the Superintendent by check or bank draft on a solvent bank.

§ 180.19 *Penalty for violation of lease terms.* Violation of any of the terms or conditions of any lease or of the regulations in this part shall subject the lease to cancellation by the Superintendent, or the lessee to a fine of not exceeding $500 per day for each and every day the terms of the lease or of the regulations are violated, or the orders of the Superintendent in reference thereto are not complied with, or to both such fine and cancellation in the discretion of the Superintendent: *Provided*, That prior to cancellation of a lease or the imposition of a fine as provided for in this section, the lessee shall be entitled to notice and hearing with respect to the terms of the lease or of the regulations violated, which hearing shall be held by the Superintendent.

§ 180.20 *Bonds.* (a) Lessees shall furnish with each oil lease and each gas lease, to be filed at the time the lease is presented, a bond upon Form D, with a surety company duly authorized to execute bonds. Such bonds shall be in the sum of $1,000 for each quarter-section or fractional quarter-section unit covered by the lease: *Provided, however*, That the lessee may file one bond, Form G, covering all leases to which he or they are or may become parties instead

oduction he may di-
of drilling operations

expiration of a term
Tribal Council may.
the Superintendent,
n that such action is
of the Osage Tribe,
of the term of the
of not to exceed six
pose of enabling the
ll to the Mississippi
is is found in paying
r depth.

*operating purposes.*
furnish the oil lessee
illing and operating
o be agreed upon, or
he rate shall be fixed
*vided*, That the oil
ecessary connections
nd the meter when-

*f payment.* All
ayable under a lease
e Superintendent by
t on a solvent bank.

*for violation of lease*
any of the terms or
ase or of the regula-
all subject the lease
the Superintendent,
ine of not exceeding
ch and every day the
or of the regulations
orders of the Super-
ence thereto are not
o both such fine and
discretion of the Su-
*vided*, That prior to
ase or the imposition
d for in this section,
ntitled to notice and
t to the terms of the
regulations violated,
all be held by the

(a) Lessees shall
il lease and each gas
the time the lease is
upon Form D, with a
ly authorized to ex-
bonds shall be in the
each quarter-section
ter-section unit cov-
: *Provided, however,*
y file one bond, Form
ases to which he or
ecome parties instead

of a separate bond in each case, such bond to be in the penal sum of $15,000.

(b) The right is specifically reserved to increase the amount of any such bond in any particular case when the Superintendent deems it proper to do so.

(c) Form H should be used in the preparation of a bond covering a lease acquired through assignment where the assignee does not have a collective bond, or the surety does not execute its consent to remain bound under the original bond given to secure the faithful performance of the terms and conditions of the lease.

GAS MINING LEASES

§ 180.23 *Contracts for the sale of gas for industrial purposes.* (a) All contracts for the sale of gas for industrial purposes and sworn statements showing the terms, conditions, and schedules of prices contained in contracts with domestic consumers shall be filed with the Superintendent, and shall be subject to the approval of the Commissioner of Indian Affairs whenever, in his opinion, the interests of the Osage Tribe or the public require such action.

(b) In the sale and disposition of gas, preference shall at all times be given to domestic consumers, unless provided otherwise in the lease, and all contracts for the industrial use of gas shall contain a clause to the effect that when it is shown to the satisfaction of the Commissioner that such gas is needed for domestic consumers within an area fixed by the Commissioner, such contract shall terminate upon the expiration of 30 days' notice from the Commissioner, and that the Commissioner shall have authority immediately to suspend the furnishing of gas to industrial consumers when he is of the opinion that such gas is needed for domestic consumers. All gas furnished to industrial and domestic consumers shall be metered and sold at meter rates: *Provided*, That gas furnished to an oil lessee may be sold as provided in the gas lessee's contract.

(c) All contracts with domestic consumers shall be subject to the inspection of the Superintendent.

UTILIZATION OF CASING-HEAD GAS WHEN USED FOR THE MANUFACTURE OF GASOLINE

§ 180.24 *Royalty on casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from gas, drip gasoline, or other natural condensate.* (a) A royalty of 16⅔ percent of the gross proceeds of sales shall be paid on the value of one-third (or the lessee's portion if greater than one-third) of all casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from the gas produced from the leasehold. The value of the remainder is an allowance for the cost of manufacture, and no royalty thereon is required. The royalty shall be computed on the sale price received by the manufacturers of such products, or such higher price the lessee may receive the same to be reported under oath and remitted to the Superintendent not later than the 25th of the succeeding month for all such products sold during the previous month. If the manufacturer of any product extracted from casing-head gas produced from an Osage leasehold should sell his product at an arbitrary price below that obtained by other manufacturers selling such product in the open market during a particular month, the Superintendent shall notify said manufacturer of such discrepancy and require settlement for royalty upon the average price obtained by manufacturers selling such product in the open market during the same period. The place of sale of liquid hydrocarbons extracted from gas shall be at the plant where manufactured or when loaded into tank cars at or near the plant. Should any manufacturer sell such product by delivery to pipelines at distant points he may be allowed the average loss by waste, evaporation or otherwise sustained by other manufacturers in the Osage, of such product from the plant to tank cars as shown by sworn statements which shall be furnished when required by the Superintendent.

(b) The royalty on all drip gasoline, or other natural condensate recovered from gas produced from the leased lands without resort to manufacturing process shall be 16⅔ percent of the gross proceeds from sales, except that such substance, if processed in a casing-head gasoline plant shall be treated for royalty purposes as though it were gasoline.

§ 180.30 *Measuring casing-head gas.* All casing-head gas shall be metered and computed on a basis of 10 ounces above atmospheric pressure, the location and type of meters to be approved by the Superintendent or Inspector. All meters and charts shall be open to inspection at any time by the Inspectors of the

Bureau of Indian Affairs, or such other employee as the Superintendent may designate for such purpose.

HOW TO ACQUIRE LEASES OF TRIBAL LANDS

§ 180.39 *Sales of oil leases and gas leases; leases to be sold at public auction.* (a) Written application for tracts to be offered for lease may be filed with the Superintendent.

(b) The Superintendent, with the consent of the Osage Tribal Council, may at such times and in such manner as shall be deemed appropriate, publish and distribute notices that oil leases and or gas leases on specific tracts of unleased tribal lands, each of which shall be in a compact body, will be offered at public auction to the highest responsible bidder: *Provided*, That not less than 25,000 acres of the unleased portion of the Osage mineral reserve shall be offered for lease during any one year. Successful bidders must deposit with the Superintendent on day of sale, a check, or bank draft on a solvent bank in the amount equal to 25 percent of the bonus as a guaranty of good faith. The Superintendent may require any bidder to submit satisfactory evidence of good faith, that he has the cash in hand or at his command, and to furnish whenever called upon by the Superintendent during the progress of the sale, authenticated statement of a solvent bank to the effect the bidder has the means to purchase the lease. The balance of the bonus, together with a $5.00 filing fee for each lease, shall be paid, and the lease in completed form with necessary accompanying papers shall be filed with the Superintendent within 20 days after the lease is forwarded, by the Superintendent, to the lessee for execution, unless such period has been extended by the Superintendent for good and sufficient reason. If the successful bidder fails to complete the lease or to pay the full consideration within 20 days or an authorized extension thereof, or if the lease is disapproved through no fault of the lessor or the Department of the Interior, the amount deposited as a guaranty of good faith shall be forfeited for the use and benefit of the lessor. Any and all bids shall be subject to acceptance by the Osage Tribal Council. The Superintendent may disapprove a lease made on an accepted bid, upon evidence satisfactory to him of collusion, fraud or other irregularity in connection with the sale of the lease.

(c) No lease, assignment thereof, or interest therein will be approved to any employee or employees of the Government, and no such employee shall be permitted to acquire any interest in leases covering Osage Tribal lands, by ownership of stock in corporations having leases or in any other manner.

§ 180.40 *Corporations and corporate showing.* (a) Upon being notified of the acceptance of its bid, a corporation shall file a certified copy of articles of incorporation, and evidence showing compliance with local corporation laws if a foreign corporation: *Provided*, That if any such papers have already been filed a statement to that effect may be submitted.

(b) A corporation must also file with its first lease, and at such other times as the Superintendent may direct, a list in duplicate of all officers, directors, and of such stockholders, as may be required with their post-office addresses, and showing the number of shares of capital stock held by each and whether held for themselves or in trust, together with a sworn statement of its proper officer, showing:

(1) The total number of shares of the capital stock actually issued, the number of shares actually sold and specifically the amount of cash paid into the treasury on the stock sold, or, if paid in property, state kind, quantity, and value of same paid.

(2) Of the stock sold, how much per share remains unpaid and subject to assessment.

(3) How much cash the company has in its treasury and elsewhere, and from what sources it was received.

(4) What property, exclusive of cash, is owned by the company and its value.

(5) What the total indebtedness of the company is and specificially the nature of its obligations.

(c) Leases made by corporations shall be accompanied by an affidavit (Form E) showing the authority of its officers to execute leases, bonds and other papers.

§ 180.41 *How to acquire permission to begin operations on homestead allotments.* (a) Lessees may conduct operations within or upon homestead selections with the written consent of the Superintendent and not otherwise.

(b) If the allottee is unwilling to permit operations on his homestead, the

signment thereof, or l be approved to any yees of the Govern- h employee shall be ire any interest in age Tribal lands, by in corporations hav- other manner.

*tions and corporate* i being notified of the d, a corporation shall of articles of incor- nce showing compli- orporation laws if a : *Provided*, That if ve already been filed t effect may be sub-

n must also file with t such other times as may direct, a list in ficers, directors, and s, as may be required ffice addresses, and r of shares of capital and whether held for rust, together with a of its proper officer,

mber of shares of the lly issued, the number sold and specifically n paid into the treas- id, or, if paid in prop- uantity, and value of

: sold, how much per paid and subject to

cash the company has elsewhere, and from s received.

rty, exclusive of cash, ompany and its value. tal indebtedness of the pecificially the nature

by corporations shall an affidavit (Form E) ority of its officers to nds and other papers.

*acquire permission to on homestead allot-* es may conduct opera- upon homestead selec- ritten consent of the nd not otherwise.

tee is unwilling to per- n his homestead, the

Superintendent will direct the Inspector to make an examination of the premises with the allottee and the lessee, or his representative, and should the Inspector be of the opinion that the interests of the Osage Tribe require that the particular tract be developed he will endeavor to have the parties agree upon the terms under which operations on the homestead may be conducted.

(c) In the event the allottee and the lessee cannot, with the assistance of the Inspector, agree on the matter, the allottee shall be permitted to go before the Osage Tribal Council, and the Council, after hearing the allottee, the lessee, and the Inspector, shall make such recommendation as it deems proper. Guardians, legal or natural, may represent their Indian wards, and where no one is authorized or where no person is deemed by the Superintendent to be a proper party to speak for a minor or person of unsound mind or of feeble understanding, the Principal Chief of the Osage Tribe shall represent him.

(d) Where the allottee does not appear before the Council, either in person or by representative, when notified by the Superintendent, or the Council fails to act in the matter within 10 days after being referred to it, the Superintendent may authorize the lessee to proceed with operations in conformity with the provisions of his lease and the regulations in this part. If the Council by appropriate resolution should recommend that a lessee be not permitted to conduct drilling operations on a homestead selection, the Superintendent shall submit the question to the Area Director.

§ 180.42 *Rental period after consent of Superintendent to begin operations on homesteads.* Rental in lieu of development shall not begin to run on any homestead selection until one year after the consent of the Superintendent or Area Director to operations on such homestead shall have been given.

ASSIGNMENTS

§ 180.46 *Approval of lease instruments*—(a) *Oil and gas leases.* The Superintendent may approve the schedule of bids accepted by the Osage Tribal Council following a sale of oil leases and gas leases conducted in conformity with the provisions of § 180.39. The Superintendent may also approve oil leases and gas leases made by the Osage Tribal Council in conformity with the regulations in this part, bonds and other instruments required for leases or assignments thereof, and the acceptance of the voluntary surrender of leases.

(b) *Unitization of oil leases.* As a consideration for their further development by the water flood process, two or more oil leases may be unitized and merged in a single blanket lease with the approval of the Superintendent. The instrument of unitization (blanket lease) shall include all the requirements and provisions of sections numbered 1, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19, and 20 of Osage oil lease Form B, *Provided:* That the preamble of Form B and the provisions of section numbered 2 in respect to royalty rates; section numbered 3 in respect to payment of rental; section numbered 4 in respect to payment of well site and tank location fees; and section numbered 14 in respect to the surrender of the lease, may be modified and/or supplemented by the parties, with the approval of the Superintendent, to the extent deemed appropriate for the equitable and efficient conduct of unitized operations, and not otherwise in conflict with the regulations in this part. Lessee(s) shall, before commencing water flood operations, and on or before December 31st of each year thereafter, submit to the Superintendent an acceptable plan of development and operation for the unit area for the ensuing year.

(c) *Assignments.* Approved leases or any interest therein may be assigned with the approval of the Superintendent, and not otherwise. Assignments, when so approved, shall be subject to the terms and conditions of the original leases, and the regulations under which such leases were approved. The assignee shall furnish with his assignment a satisfactory bond as provided in § 180.20 (c). Any attempt to assign an approved lease or any interest therein without the consent and approval of the Superintendent shall be absolutely void and shall subject the original lease to cancellation in the discretion of the Superintendent.

§ 180.47 *Filing of assignments and drilling contracts.* (a) Assignments of any lease or any interest therein by drilling contract or otherwise shall be filed with the Superintendent within 30 days from the date of such assignment by the assignor, except in instances where the necessary papers cannot be executed

within such time, in which event, however, formal notice shall be filed within the 30 days stipulated and where necessary the Superintendent may grant 15 days additional.

(b) In case of contracts made by oil lessees for drilling wells, which contracts provide that in consideration of drilling a well on the leased premises a subsequent assignment of an interest in such lease will be made subject to the approval of the Department, the Superintendent is hereby authorized to approve such drilling contracts with a stipulation that such approval does not in any way bind the Department to approve formal assignments that may thereafter be submitted and that such approval merely authorizes the drilling contractor to enter into possession of the lease for the purpose of development work.

OPERATIONS

§ 180.49 *Commencement of operation.* No operations shall be permitted upon any tract of land until a lease covering such tract shall have been approved by the Superintendent or such operations specifically authorized by him.

POWERS AND DUTIES OF INSPECTORS

§ 180.59 *Duties of inspectors.* It shall be the duty of the inspector—

(a) To visit from time to time leased lands where oil and gas mining operations are being conducted, and to inspect and supervise such operations with a view to preventing waste of oil and gas, damage to oil, gas, or water bearing formations, or injury to property or life, in accordance with the provisions of the regulations in this part.

(b) To make reports to the Superintendent as to the general conditions of the leases, property, and the manner in which operations are being conducted and his orders complied with.

(c) To consult and advise with the Superintendent as to the conditions of the leased lands, and to submit information and recommendations from time to time for safeguarding and protecting the property of the lessor and securing compliance with the provisions of the regulations in this part.

(d) To give such orders or notices as may be necessary to secure compliance with the regulations and to issue all necessary instructions or orders to lessees to stop or modify such methods or practices as he may consider contrary to the provisions of such regulations.

(e) To modify or prohibit the use or continuance of any operation or method which, in his opinion, is causing or is likely to cause any surface or underground waste of oil or gas, or injury to any oil, gas, water, coal, or other mineral formation, or which is dangerous to life or property, or in violation of the provisions of the regulations in this part.

(f) To prescribe, subject to the approval of the Superintendent, the manner and form in which all records or reports called for by the regulations in this part shall be made by the lessee.

(g) To prohibit the drilling of any well into any producing sand when in his opinion and with the approval of the Superintendent the marketing facilities are inadequate, or insufficient provision has been made for controlling the flow of oil or gas reasonably to be expected therefrom until such time as suitable provision can be made.

(h) To prescribe or approve the methods of drilling wells through coal measures or other mineral deposits.

(i) To determine when and under what conditions a producing well may be drilled deeper, and under what conditions a producing well, or sand, may be abandoned.

(j) To require that tests shall be made to detect waste of oil or gas or the presence of water in a well and to prescribe or approve the methods of conducting such tests.

(k) To require that any condition existing subsequent to the completion of a well which is causing, or is likely to cause, damage to an oil, gas, or water bearing formation, or to coal measures or other mineral deposits, or which is dangerous to life or property, be corrected as he may prescribe or approve.

(l) To approve the type or size of separators used to separate the oil, gas, or water coming from a well.

REQUIREMENTS OF LESSEES

§ 180.64 *Plats showing location of wells.* Lessee shall furnish as required, a plat, in manner and form as prescribed by the Superintendent, showing all wells, active or abandoned, on the leased lands, and other related information. Blank plats will be furnished upon application.

§ 180.67 *Notice prior to removal of casing.* Lessee shall obtain permission

from th
ing any

§ 180
*inspect*
mud-la
be int
pluggec
shall b
Inspect
10 day
comple
well.

(b)
shall f
abandc
regulat
ent ma
ties in
pense

§ 180
*lands.*
use an
under

PENALT

§ 180
may b
withou
certair
this pa
Fine
of leas

(a)
port r
the fir
violati

(b)
port, a
the fir
violati

(c)
as requ

(d)
as req
after c

(e)
regard
contro

(f)
in reg
to ope
for th
each v

(g)
§ 180.7
gas in

(h)
dent a

nay consider contrary
: such regulations.
r prohibit the use or
' operation or method
ion, is causing or is
y surface or under-
l or gas, or injury to
coal, or other mineral
h is dangerous to life
violation of the pro-
ations in this part.
. subject to the ap-
rintendent, the man-
ich all records or re-
he regulations in this
by the lessee.
ie drilling of any well
r sand when in his
the approval of the
' marketing facilities
insufficient provision
controlling the flow
ably to be expected
ch time as suitable
ade.
or approve the meth-
vells through coal
nineral deposits.
e when and under
producing well may
nd under what con-
well, or sand, may

it tests shall be made
il or gas or the pres-
vell and to prescribe
thods of conducting

at any condition ex-
o the completion of
sing, or is likely to
n oil, gas, or water
or to coal measures
eposits, or which is
r property, be cor-
rescribe or approve.
he type or size of
eparate the oil, gas,
m a well.

S OF LESSEES

*howing location of*
furnish as required.
d form as prescribed
nt, showing all wells,
on the leased lands,
nformation. Blank
ed upon application.

*rior to removal of*
l obtain permission

from the Superintendent before removing any casing from any well.

§ 180.84 *Plugging to be approved by inspector.* (a) The manner in which mud-laden fluid, cement or plugs shall be introduced into any well being plugged and the type of plugs so used shall be subject to the approval of the Inspector, and the lessee shall within 10 days file with the Superintendent a complete report of the plugging of such well.

(b) In the event the lessee or operator shall fail to plug properly any dry or abandoned well in accordance with the regulations in this part the Superintendent may, after 5 days' notice to the parties in interest, plug such well at the expense of the lessee or his surety.

§ 180.89 *Use of timber from leased lands.* Lessee will not be permitted to use any timber from Osage lands except under written agreement with the owner.

PENALTIES FOR VIOLATION OF REGULATIONS

§ 180.91 *Amount of penalties.* Fines may be imposed by the Superintendent without right of appeal for violations of certain sections of the regulations in this part, as follows:

Fines for noncompliance with terms of lease or regulations.

(a) For failure to file preliminary report required by § 180.62, $5 a day for the first violation and $10 a day for each violation thereafter.

(b) For failure to file a completion report, as required by §180.63, $5 a day for the first violation and $10 a day for each violation thereafter.

(c) For failure to mark rigs or wells, as required by § 180.65, $50 for each well.

(d) For failure to construct slush pits, as required by § 180.68, $10 for each day after drilling is commenced on any well.

(e) For failure to comply with § 180.71, regarding gate valve and other approved controlling devices, $100.

(f) For failure to comply with § 180.77, in regard to using gas in place of steam to operate engines or pumps, $10 per day for the first violation and $20 a day for each violation thereafter.

(g) For failure to comply with § 180.78, which prohibits the burning of gas in flambeau lights, $50 per day.

(h) For failure to notify Superintendent and secure authority before redrilling, deepening, plugging or abandoning any well, $200, as required by §§ 180.80 and 180.90.

(i) For failure to construct sump-holes, or burning holes, to properly care for and dispose of B. S. and salt water as provided in § 180.85, $10 a day for the first violation, and in event of the failure properly to construct or repair sump-holes, or burning holes, within 5 days after notification by Superintendent or his authorized representative, $25 to $50 a day.

(j) For failure to file plugging reports as required by § 180.84 and for failure to file reports, and remit royalties required by § 180.45, $5 a day for the first violation and $10 a day for each violation thereafter.

All moneys received from fines collected under this section shall be deposited as provided in § 180.93.

FORMS

§ 180.93 *Forms.* (a) Leases, and other papers must be upon forms prescribed by the Secretary of the Interior, and the Superintendent will furnish prospective lessees with such forms for preparation of original leases without charge, but shall make a charge of 50 cents per set for forms used in preparing assignments.

Form A—Gas mining lease.
Form B—Oil mining lease.
Form D—Bond.
Form E—Authority of officers to execute papers.
Form F—Assignment.
Form G—Collective bond.
Form H—Assignment bond.

(b) All sums received from sale of forms and fines shall be placed in a special fund, and may be expended under the direction of the Commissioner of Indian Affairs for the expenses necessary to carry out the regulations in this part.

HEARINGS AND APPEALS

§ 180.95 *Hearings and appeals.* (a) Any person, firm or corporation aggrieved by any decision or order issued by or under authority of the Superintendent pursuant to the regulations in this part, may file with the Superintendent at anytime an application for modification or revocation of such decision or order. The Superintendent shall give notice of the time and place and conduct a hearing upon the application within ten days after its receipt by him.

If the applicant is not satisfied with the decision of the Superintendent, an appeal may be taken as hereinafter set forth except as provided in paragraph (b) of this section.

(b) An appeal to the Commissioner of Indian Affairs may be taken from any decision or order issued by or under authority of the Superintendent except decisions or orders issued under authority of §§ 180.54, 180.59, and 180.91, by filing such appeal with the Superintendent within 30 days after service of the decision or order. The appeal shall incorporate or be accompanied by such written showing and argument on the facts and law as the appellant may deem adequate to justify reversal or modification of the order. All statements of facts must be made under oath. The Superintendent shall transmit the appeal and accompanying papers with a full report and recommendations, through official channels, to the Commissioner of Indian Affairs.

(c) An appeal from any decision of the Commissioner of Indian Affairs may be taken to the Secretary of the Interior within 30 days after service of the Commissioner's decision. The appeal shall be accompanied by such written showing and argument on the facts and law as appellant may deem adequate to justify reversal or modification of the decision. Any statement of facts not submitted to the Commissioner must be made under oath.

(d) Compliance with any decision or order issued by or under authority of the Superintendent shall not be suspended by reason of an appeal having been taken unless such suspension is authorized in writing by the Commissioner of Indian Affairs, and then only on a determination that such suspension will not be detrimental to the lessor or upon submission and acceptance of a bond deemed adequate to indemnify the lessor from loss or damage.

(Sec. 3, 34 Stat. 543. Interprets or applies secs. 1, 2, 45 Stat. 1478, 1479)

## Part 183—Leasing of Restricted Lands of Members of Five Civilized Tribes, Oklahoma, for Mining

Sec.
183.1 Definitions. [Revised]

RENTS AND ROYALTIES

Sec.
183.18 Manner of payment of rents and royalties. [Revised]
183.19 Crediting advance annual payments. [Revised]
183.20 Disposition of income from leases. [Revoked]
183.29 Division orders. [Amended]

§ 183.1 *Definitions.* The term "Area Director" in this part refers to the officer in charge of the Five Civilized Tribes Indian Agency. Whenever the term "superintendent" is used in this part, the term "Area Director" shall be substituted therefor.

The term "supervisor" in this part refers to a representative of the Secretary of the Interior under direction of the Director of the United States Geological Survey, authorized and empowered to supervise and direct operations under oil and gas or other mining leases, to furnish scientific and technical information and advice, to ascertain and record the amount and value of production, and to determine and record rentals and royalties due and paid.

[16 F. R. 9192, Sept. 11, 1951]

RENTS AND ROYALTIES

§ 183.18 *Manner of payment of rents and royalties.* (a) Except as provided in paragraph (b) of this section, all rents, royalties and other payments due under leases which have been or may be approved in accordance with this part shall be paid by check or bank draft to the order of the Treasurer of the United States and mailed to the Area Director for deposit to the credit of the various lessors. When lessees and purchasers are instructed, in writing, by the Area Director, which instructions shall be complete as to lessors for each lease, separate remittances for each payment due each lessor shall be mailed to the Area Director. Any payments under this paragraph, covering lands or interests therein from which restrictions have been removed by death or otherwise, may continue to be made in the manner provided by this paragraph until ten days after notice of relinquishment of supervision has been mailed to the lessee.

(b) The Area Director may, in his discretion, whenever it appears to be in the best interest of any lessor, authorize and direct the lessee to pay directly to the lessor, or to the legal guardian of any lessor under guardianship, the rents, royalties and other payments (other than

bonus
first y
been c
with t
such a
be in
owner
provic
at an
rector
paym
modif
part c
as in t
revoc
5-day
Rents
paid i
stitut
ment
paym
(c)
to pa
tion
porte
Secre
senta
pervi
lease,
lease
show
ties f
shall
remit
namc
(d)
lease
(b)
by a
Direc
Direc
by c
Each
the
name
ing
or, i
mail,
cove
consi
(e)
all a
first
recto
the
the
and
if th
the l
ment