THE NATIONAL ARCHIVES LITTERA SCRIPTA MANET 1934 OF THE UNITED STATES

# FEDERAL REGISTER

VOLUME 18 NUMBER 220

*Washington, Tuesday, November 10, 1953*

## TITLE 3—THE PRESIDENT

### PROCLAMATION 3035

ARMISTICE DAY, 1953

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

WHEREAS November 11, 1953, marks the thirty-fifth anniversary of the signing of the Armistice which ended the bitter hostilities of World War I and served as a beacon of hope to all humanity that peace would prevail on the earth; and

WHEREAS the sons of the heroes of Chateau-Thierry, Saint Mihiel, and the Argonne had scarcely come of age when they were called upon to meet new aggressors at Omaha Beach, Anzio, Iwo Jima, Heartbreak Ridge, and elsewhere, and to give their lives, many of them, before new armistices could still the fighting and give renewed opportunity for establishing a true peace; and

WHEREAS the Congress, by a concurrent resolution of June 4, 1926 (44 Stat. 1982) requested the President to issue a proclamation calling for the observance each year of the anniversary of the signing of the Armistice on November 11, 1918, and, by an act approved May 13, 1938 (52 Stat. 351) made November 11 of each year a legal holiday, and provided that the day should be dedicated to the cause of world peace and should be known as Armistice Day: and

WHEREAS it is a wise custom to rededicate ourselves each year at this time to the prevention of armed conflict among nations:

NOW, THEREFORE, I, DWIGHT D. EISENHOWER, President of the United States of America, do hereby invite and urge the people of the Nation to devote themselves anew on Wednesday, November 11, 1953, to the task of promoting with fervor and zeal a permanent peace among all the peoples of the earth. I also direct the appropriate officials of the Government to arrange for the display of the flag of the United States on all public buildings on that day.

IN WITNESS WHEREOF, I have hereunto set my hand and caused the Seal of the United States of America to be affixed.

DONE at the City of Washington this Fifth day of November in the year of our Lord nineteen hundred and fifty-three, and of the Independence of the United States of America the one hundred and seventy-eighth.

[SEAL]

DWIGHT D. EISENHOWER

By the President:

WALTER B. SMITH,
*Acting Secretary of State.*

[F. R. Doc. 53-9574; Filed, Nov. 9, 1953; 10:44 a. m.]

---

### EXECUTIVE ORDER 10501

SAFEGUARDING OFFICIAL INFORMATION IN THE INTERESTS OF THE DEFENSE OF THE UNITED STATES

WHEREAS it is essential that the citizens of the United States be informed concerning the activities of their government; and

WHEREAS the interests of national defense require the preservation of the ability of the United States to protect and defend itself against all hostile or destructive action by covert or overt means, including espionage as well as military action; and

WHEREAS it is essential that certain official information affecting the national defense be protected uniformly against unauthorized disclosure:

NOW, THEREFORE, by virtue of the authority vested in me by the Constitution and statutes, and as President of the United States, and deeming such action necessary in the best interests of the national security, it is hereby ordered as follows

SECTION 1. *Classification Categories.* Official information which requires protection in the interests of national defense shall be limited to three categories of classification, which in descending order of importance shall carry one of the following designations: Top Secret, Secret, or Confidential. No other designation shall be used to classify defense information, including military information, as requiring protection in the interests of national defense, except as

(Continued on p. 7051)

## CONTENTS

### THE PRESIDENT


| | Page |
|---|---|
| **Proclamation** | |
| Armistice Day, 1953 | 7049 |
| **Executive Order** | |
| Safeguarding official information in the interests of the defense of the United States | 7049 |
| **EXECUTIVE AGENCIES** | |
| **Agriculture Department** | |
| *See* Production and Marketing Administration. | |
| **Army Department** | |
| Rules and regulations: | |
| Procurement procedure; miscellaneous amendments | 7057 |
| **Civil Aeronautics Administration** | |
| *See also* Civil Aeronautics Board. | |
| Rules and regulations: | |
| Blue Civil Airway 28: | |
| Civil airways, designation of | 7055 |
| Control areas, control zones, and reporting points, designation of | 7056 |
| Danger areas; alterations | 7056 |
| **Civil Aeronautics Board** | |
| Notices: | |
| Accident occurring at New York International Airport; investigation and hearing | 7062 |
| Rules and regulations: | |
| Air traffic rules; cruising altitudes within control zones and areas (VFR) | 7055 |
| **Commerce Department** | |
| *See* Civil Aeronautics Administration; National Shipping Authority. | |
| **Defense Department** | |
| *See* Army Department. | |
| **Federal Power Commission** | |
| Notices: | |
| Hearings, etc.. | |
| Central Maine Power Co | 7062 |
| Pacific Gas and Electric Co | 7061 |
| Transcontinental Gas Pipe Line Corp | 7062 |
| **Federal Trade Commission** | |
| Rules and regulations: | |
| Wool stock industry: rescission of part | 7056 |




HeinOnline -- 18 Fed. Reg. 7049 1953

§ 167.1 of the rules and regulations for insurance of accounts (24 CFR 167.1) § 163.13 of the rules and regulations for insurance of accounts (24 CFR 163.13) is hereby amended, effective November 10, 1953, by inserting the following provision after the first sentence thereof: "If, upon the expiration of twenty years from the date its accounts were insured, the Federal insurance reserve account of any insured institution is less than 5 percent but not less than 3 percent of all insured accounts, such institution may earmark undivided profits in an amount which, when combined with the amount in its Federal insurance reserve account will equal 5 percent of all insured accounts, and the funds so earmarked shall be considered a part of the Federal insurance reserve and be subject to all the limitations which apply thereto until such reserve account, exclusive of the funds so earmarked, equals 5 percent of all insured accounts: *Provided*, That the date of compliance with this section for each such insured institution shall be not later than the close of the semi-annual period following the twentieth anniversary date of its insurance of accounts."

So that the section, as amended, shall read as follows:

§ 163.13 *Regular credits.* Each insured institution shall thereafter credit to its Federal insurance reserve, during each of its fiscal years, an amount equal to at least three-tenths of 1 percent of all insured accounts outstanding at the beginning of such fiscal year; and shall build up the Federal insurance reserve to an amount equal to at least 2½ percent of all insured accounts within thirteen years from the effective date of insurance and to an amount equal to at least 5 percent of all insured accounts within twenty years from such date: *Provided*, That credits to the Federal insurance reserve need not be made whenever such insurance reserve account equals or exceeds the minimum amounts required by this section. If, upon the expiration of twenty years from the date its accounts were insured, the Federal insurance reserve account of any insured institution is less than 5 percent but not less than 3 percent of all insured accounts, such institution may earmark undivided profits in an amount which, when combined with the amount in its Federal insurance reserve account will equal 5 percent of all insured accounts, and the funds so earmarked shall be considered a part of the Federal insurance reserve and be subject to all the limitations which apply thereto until such reserve account, exclusive of the funds so earmarked, equals 5 percent of all insured accounts: *Provided*, That the date of compliance with this section for each such insured institution shall be not later that the close of the semi-annual period following the twentieth anniversary date of its insurance of accounts. If for any reason, the Federal insurance reserve account of any institution which has been insured for at least twenty years is thereafter reduced to less that 5 percent of all insured accounts, such institution shall transfer to its Federal insurance reserve account, for each dividend period, at least 25 percent of its net operating income before the declaration of dividends or the payment of interest on savings, until its Federal insurance reserve account is again equal to at least 5 percent of all insured accounts.

*Resolved further* that, as this amendment operates to relieve a restriction, it is found that it is not necessary to issue such regulation with notice and public procedure thereon under § 108.12 of the general regulations of the Home Loan Bank Board (24 CFR 108.12) or section 4 (a) of the Administrative Procedure Act, and that the effective date limitation of section 4 (c) of said act is not applicable.

(Sec. 402, 48 Stat. 1256, as amended; 12 U. S. C. 1725. Interprets or applies sec. 403, 48 Stat. 1257, as amended; 12 U. S. C. 1726)

By the Home Loan Bank Board.

J. FRANCIS MOORE,
*Secretary.*

[F. R. Doc. 53-9502; Filed, Nov. 9, 1953; 8:50 a. m.]

# TITLE 25—INDIANS

## Chapter I—Bureau of Indian Affairs, Department of the Interior

### Subchapter R—Leases and Sale of Minerals, Restricted Indian Lands

### PART 180—LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING

DIVISION ORDERS

Section 180.88 (a) is hereby amended to read as follows:

§ 180.88 *Division orders.* (a) The Superintendent may make arrangements with the purchasers of oil for the payment of the royalty, but such arrangements, if made, shall not relieve the lessee from responsibility for the payment of the royalty, should such purchaser fail, neglect, or refuse to pay the royalty when it becomes due. No oil shall be run to any purchaser or delivered to the pipe line or other carrier for shipment, or otherwise conveyed or removed from the leased premises, until a division order is executed, filed, and approved, by the Superintendent, showing that the lessee has a regularly approved leased in effect, and the conditions under which the oil may be run: *Provided*, That the Superintendent may grant temporary permission to run oil from a lease pending the execution, filing, and approval by him of a division order. Lessees shall be required to pay for all oil or gas used off the leased premises for operating purposes; affidavit shall be made as to the production used for such purposes and royalty paid in the usual manner. The lessee or his representative shall be present when oil is taken from the leased premises under any division order and will be responsible for the correct measurement thereof and shall report all oil so run.

(Sec. 3, 34 Stat. 543)

NOVEMBER 4, 1953.

FRED G. AANDAHL,
*Acting Secretary of the Interior.*

[F. R. Doc. 53-9483; Filed, Nov. 9, 1953; 8:46 a. m.]

# TITLE 29—LABOR

## Chapter V—Wage and Hour Division, Department of Labor

### PART 709—PEARL BUTTON AND BUCKLE DIVISION OF THE BUTTON, BUCKLE, AND JEWELRY INDUSTRY IN PUERTO RICO

MISCELLANEOUS AMENDMENTS

The minimum wage order for the Pearl Button and Buckle Division of the Button, Buckle, and Jewelry Industry in Puerto Rico, as recommended by Special Industry Committee No. 12 for Puerto Rico was approved and made final pursuant to authority under the Fair Labor Standards Act of 1938, as amended (52 Stat. 1060, as amended; 29 U. S. C. 201) and published in the FEDERAL REGISTER on August 18, 1953 (18 F. R. 4889)

This wage order is hereby revised as set forth below.

1. Redesignate § 709.1 *Wage rates* as paragraph (e) of § 709.1.
2. Delete all of § 709.2.
3. Redesignate § 709.3 as subparagraph (5) of § 709.3 (b), as follows.

§ 709.3 * * *
(b) * * *
(5) *Definition of the pearl button and buckle division of the button, buckle, and jewelry industry in Puerto Rico.* The manufacture of buttons and buckles from ocean pearl or other natural shell.

Signed at Washington, D. C., this 9th day of November 1953.

WM. R. MCCOMB,
*Administrator Wage and Hour Division, Department of Labor*

[F. R. Doc. 53-9578; Filed, Nov. 9, 1953; 11:47 a. m.]

# TITLE 32—NATIONAL DEFENSE

## Chapter V—Department of the Army

### Subchapter G—Procurement

### PART 590—GENERAL PROVISIONS

### PART 595—FOREIGN PURCHASES

### PART 596—CONTRACT CLAUSES AND FORMS

### PART 602—GOVERNMENT PROPERTY

ARMY PROCUREMENT PROCEDURE; MISCELLANEOUS AMENDMENTS

1. Section 590.602 is amended by adding a new paragraph (d) as follows:

§ 590.602 *Execution of contracts; requirements.* * * *

(d) *Contracts with partnerships.* Contracts entered into with partnerships will be executed in the partnership name and will enumerate the names of all the partners. The partnership contract need be signed by only one partner, provided the authority of the particular partner to effectively bind the partnership has been established. The Contracting Officer need not require that partnerships execute a certificate of attestation substantially in the form included in DD Form 351-2 provided he obtains other evidence which satisfactorily shows that the partner is empowered to bind the partnership.

2. In § 590.604-1 (a) subparagraph (2) (ii) is amended to read as follows:

45

223

CUMULATIVE POCKET SUPPLEMENT

# TO THE . . . CODE OF FEDERAL REGULATIONS

Title 25—Indians

as of Jan. 1, 1954

FOR USE DURING 1954

For changes subsequent to
December 31, 1953, see the daily issues of the Federal Register

nments, when
ct to the terms
riginal leases,
er which such
The assignee
gnment a sat-
ed in § 180.20
m an approved
in without the
the Superin-
void and shall
to cancellation
uperintendent.

*ignments and*
Assignments of
herein by drill-
shall be filed
within 30 days
gnment by the
ices where the
t be executed
ch event, how-
be filed within
d where neces-
may grant 15

ts made by oil
which contracts
tion of drilling
mises a subse-
nterest in such
to the approval
Superintendent
approve such
stipulation that
n any way bind
ove formal as-
reafter be sub-
pproval merely
ntractor to en-
e lease for the
work.

*nt of operation.*
permitted upon
lease covering
en approved by
such operations
him.

F INSPECTORS

*pectors.* It shall
ctor—

e to time leased
mining opera-
l, and to inspect
erations with a
e of oil and gas,
ter bearing for-
operty or life, in



accordance with the provisions of the regulations in this part.

(b) To make reports to the Superintendent as to the general conditions of the leases, property, and the manner in which operations are being conducted and his orders complied with.

(c) To consult and advise with the Superintendent as to the conditions of the leased lands, and to submit information and recommendations from time to time for safeguarding and protecting the property of the lessor and securing compliance with the provisions of the regulations in this part.

(d) To give such orders or notices as may be necessary to secure compliance with the regulations and to issue all necessary instructions or orders to lessees to stop or modify such methods or practices as he may consider contrary to the provisions of such regulations.

(e) To modify or prohibit the use or continuance of any operation or method which, in his opinion, is causing or is likely to cause any surface or underground waste of oil or gas, or injury to any oil, gas, water, coal, or other mineral formation, or which is dangerous to life or property, or in violation of the provisions of the regulations in this part.

(f) To prescribe, subject to the approval of the Superintendent, the manner and form in which all records or reports called for by the regulations in this part shall be made by the lessee.

(g) To prohibit the drilling of any well into any producing sand when in his opinion and with the approval of the Superintendent the marketing facilities are inadequate, or insufficient provision has been made for controlling the flow of oil or gas reasonably to be expected therefrom until such time as suitable provision can be made.

(h) To prescribe or approve the methods of drilling wells through coal measures or other mineral deposits.

(i) To determine when and under what conditions a producing well may be drilled deeper, and under what conditions a producing well, or sand, may be abandoned.

(j) To require that tests shall be made to detect waste of oil or gas or the presence of water in a well and to prescribe or approve the methods of conducting such tests.

(k) To require that any condition existing subsequent to the completion of a well which is causing, or is likely to cause, damage to an oil, gas, or water bearing formation, or to coal measures or other mineral deposits, or which is dangerous to life or property, be corrected as he may prescribe or approve.

(l) To approve the type or size of separators used to separate the oil, gas, or water coming from a well.

REQUIREMENTS OF LESSEES

§ 180.64 *Plats showing location of wells.* Lessee shall furnish as required, a plat, in manner and form as prescribed by the Superintendent, showing all wells, active or abandoned, on the leased lands, and other related information. Blank plats will be furnished upon application.

§ 180.67 *Notice prior to removal of casing.* Lessee shall obtain permission from the Superintendent before removing any casing from any well.

§ 180.84 *Plugging to be approved by inspector.* (a) The manner in which mud-laden fluid, cement or plugs shall be introduced into any well being plugged and the type of plugs so used shall be subject to the approval of the Inspector, and the lessee shall within 10 days file with the Superintendent a complete report of the plugging of such well.

(b) In the event the lessee or operator shall fail to plug properly any dry or abandoned well in accordance with the regulations in this part the Superintendent may, after 5 days' notice to the parties in interest, plug such well at the expense of the lessee or his surety.

§ 180.88 *Division orders.* (a) The Superintendent may make arrangements with the purchasers of oil for the payment of the royalty, but such arrangements, if made, shall not relieve the lessee from responsibility for the payment of the royalty, should such purchaser fail, neglect, or refuse to pay the royalty when it becomes due. No oil shall be run to any purchaser or delivered to the pipe line or other carrier for shipment, or otherwise conveyed or removed from the leased premises, until a division order is executed, filed, and approved, by the Superintendent, showing that the lessee has a regularly approved leased in effect, and the conditions under which the oil may be run: *Provided,* That the Superintendent may grant temporary permission to run oil from a lease pending the execution, filing, and approval by

him of a division order. Lessees shall be required to pay for all oil or gas used off the leased premises for operating purposes; affidavit shall be made as to the production used for such purposes and royalty paid in the usual manner. The lessee or his representative shall be present when oil is taken from the leased premises under any division order and will be responsible for the correct measurement thereof and shall report all oil so run.

[Paragraph (a) amended, 18 F. R. 7057, Nov. 10, 1953]

* * * * *

§ 180.89 *Use of timber from leased lands.* Lessee will not be permitted to use any timber from Osage lands except under written agreement with the owner.

PENALTIES FOR VIOLATION OF REGULATIONS

§ 180.91 *Amount of penalties.* Fines may be imposed by the Superintendent without right of appeal for violations of certain sections of the regulations in this part, as follows:

Fines for noncompliance with terms of lease or regulations.

(a) For failure to file preliminary report required by § 180.62, $5 a day for the first violation and $10 a day for each violation thereafter.

(b) For failure to file a completion report, as required by §180.63, $5 a day for the first violation and $10 a day for each violation thereafter.

(c) For failure to mark rigs or wells, as required by § 180.65, $50 for each well.

(d) For failure to construct slush pits, as required by § 180.68, $10 for each day after drilling is commenced on any well.

(e) For failure to comply with § 180.71, regarding gate valve and other approved controlling devices, $100.

(f) For failure to comply with § 180.77, in regard to using gas in place of steam to operate engines or pumps, $10 per day for the first violation and $20 a day for each violation thereafter.

(g) For failure to comply with § 180.78, which prohibits the burning of gas in flambeau lights, $50 per day.

(h) For failure to notify Superintendent and secure authority before redrilling, deepening, plugging or abandoning any well, $200, as required by §§ 180.80 and 180.90.

(i) For failure to construct sumpholes, or burning holes, to properly care for and dispose of B. S. and salt water as provided in § 180.85, $10 a day for the first violation, and in event of the failure properly to construct or repair sumpholes, or burning holes, within 5 days after notification by Superintendent or his authorized representative, $25 to $50 a day.

(j) For failure to file plugging reports as required by § 180.84 and for failure to file reports, and remit royalties required by § 180.45, $5 a day for the first violation and $10 a day for each violation thereafter.

All moneys received from fines collected under this section shall be deposited as provided in § 180.93.

FORMS

§ 180.93 *Forms.* (a) Leases, and other papers must be upon forms prescribed by the Secretary of the Interior, and the Superintendent will furnish prospective lessees with such forms for preparation of original leases without charge, but shall make a charge of 50 cents per set for forms used in preparing assignments.

Form A—Gas mining lease.
Form B—Oil mining lease.
Form D—Bond.
Form E—Authority of officers to execute papers.
Form F—Assignment.
Form G—Collective bond.
Form H—Assignment bond.

(b) All sums received from sale of forms and fines shall be placed in a special fund, and may be expended under the direction of the Commissioner of Indian Affairs for the expenses necessary to carry out the regulations in this part.

HEARINGS AND APPEALS

§ 180.95 *Hearings and appeals.* (a) Any person, firm or corporation aggrieved by any decision or order issued by or under authority of the Superintendent pursuant to the regulations in this part, may file with the Superintendent at anytime an application for modification or revocation of such decision or order. The Superintendent shall give notice of the time and place and conduct a hearing upon the application within ten days after its receipt by him. If the applicant is not satisfied with the decision of the Superintendent, an appeal may be taken as hereinafter set forth except as provided in paragraph (b) of this section.



(b) An
of Indian
any decisi
authority
decisions o
ity of §§ 1
filing such
ent within
decision o
corporate
written sh
facts and 1
adequate
cation of
facts mus
Superinte
peal and
full rep
through c
missioner
(c) An
the Comm
be taken t
within 30
missioner'
be accomp
and argu
appellant
reversal o
Any state
the Comm
oath.
(d) Co
order issu
Superinte
by reason
unless suc
writing b
Affairs, a
tion that
detriment
mission an
adequate
loss or da
(Sec. 3, 34
secs. 1, 2, 4

Part 18
Lands
lized
Minin

Sec.
183.1 Def
183.18 M
183.19 Cre