THE NATIONAL ARCHIVES OF THE UNITED STATES 1934
LITTERA SCRIPTA MANET

# FEDERAL REGISTER

VOLUME 20 NUMBER 152

Washington, Friday, August 5, 1955

## TITLE 6—AGRICULTURAL CREDIT

### Chapter IV—Commodity Stabilization Service and Commodity Credit Corporation, Department of Agriculture

Subchapter B—Loans, Purchases, and Other Operations

[1955 CCC Peanut Bulletin, 721 (Peanuts-55)-1]

PART 446—PEANUTS

SUBPART—1955 CROP PEANUT PRICE SUPPORT PROGRAM

This bulletin contains the regulations applicable to the 1955 crop Peanut Price Support Program, under which the Secretary of Agriculture makes price support available through the Commodity Credit Corporation and the Commodity Stabilization Service (hereinafter referred to as CCC and CSS respectively)

Sec.
446.701 Administration.
446.702 Availability.
446.703 Methods of price support.
446.704 Definitions.
446.705 Support prices.
446.706 Price support schedule.
446.707 Eligible peanuts.
446.708 Eligible producer.
446.709 Type and grade.
446.710 Approved lending agencies.
446.711 Service charges and fees.
446.712 Interest rate.
446.713 Personal liability of the borrower.
446.714 Payments and collections; amounts not exceeding $3.00.
446.715 Set-offs.
446.716 Purchase of notes.
446.717 Foreclosure.
446.718 Farm storage loan provisions.
446.719 Loans to cooperatives.

AUTHORITY: §§ 446.701 to 446.719 issued under sec. 4, 62 Stat. 1070, as amended; 15 U. S. C. 714b. Interpret or apply sec. 5, 62 Stat. 1072, secs. 101, 401, 63 Stat. 1051, 1054; sec. 201, 68 Stat. 899; 15 U. S. C. 714c, 7 U. S. C. 1441, 1421.

§ 446.701 *Administration.* (a) The program will be administered by the Oils and Peanut Division, CSS, under the general direction and supervision of the Executive Vice President, CCC. In the field the program will be carried out by Agricultural Stabilization and Conservation State committees and by Agricultural Stabilization and Conservation county committees (hereinafter called State and county committees) and the Dallas CSS Commodity office (hereinafter called the commodity office) State and county committees and the commodity office do not have authority to modify or waive any of the provisions of this subpart or any amendments or supplements thereto.

(b) Cooperatives operating under a Cooperative Loan Agreement, CCC Peanut Form 27 (1955) with CCC (hereinafter referred to as an Agreement with CCC) may receive, arrange for storage, and handle eligible peanuts for and on behalf of eligible producers, using such peanuts as collateral for a loan made available by CCC.

§ 446.702 *Availability*—(a) *Areas* The program will be available in the following areas:

(1) The Southeastern area consisting of the States of Alabama, Georgia, Mississippi, Florida, and that part of South Carolina south and west of the Santee-Congaree-Broad Rivers.

(2) The Southwestern area consisting of the States of Arizona, Arkansas, California, Louisiana, New Mexico, Oklahoma, and Texas.

(3) The Virginia-Carolina area consisting of the States of Missouri, North Carolina, Tennessee, Virginia, and that part of South Carolina north and east of the Santee-Congaree-Broad Rivers.

(b) *Time.* Loans will be made through January 31, 1956, and will mature on May 31, 1956, or such earlier date as may be specified by CCC. All farm storage loan documents must be dated and delivered to the county office on or before January 31, 1956. Warehouse receipts for peanuts delivered to a cooperative operating under an agreement with CCC must show that the peanuts were received not later than January 31, 1956, and that the receipt was issued within 24 hours after the peanuts were received in the warehouse.

§ 446.703 *Methods of price support.* CCC will support the price of eligible 1955 crop quota peanuts through non-recourse farm storage loans to eligible producers and non-recourse warehouse storage loans to cooperatives operating under an agreement with CCC.

§ 446.704 *Definitions.* As used in this subpart and in instructions and documents in connection therewith, the words and phrases defined in this section shall have the meanings herein

(Continued on next page)

## CONTENTS

| | Page |
|---|---|
| **Agricultural Conservation Program Service** | |
| Rules and regulations: | |
| Agricultural conservation; Alaska, 1956 | 5629 |
| **Agricultural Marketing Service** | |
| Proposed rule making: | |
| Milk handling in Indianapolis, Ind., extension of time for filing | 5662 |
| Raisins produced from raisin variety grapes grown in California; handling | 5643 |
| Rules and regulations: | |
| Avocados grown in South Florida, container regulation | 5627 |
| Butter, cheese and other manufactured or processed dairy products | 5622 |
| Grapefruit; prohibitions of imported commodities | 5628 |
| Limes grown in Florida; container regulation | 5527 |
| Pears, summer and fall; U. S. standards | 5620 |
| Potatoes, Irish: | |
| Colorado; approval of expenses and rate of assessment | 5626 |
| Washington; limitation of shipments | 5627 |
| **Agricultural Research Service** | |
| Proposed rule making: | |
| European chafer; administrative instructions regarding proposed quarantine in certain States | 5662 |
| **Agriculture Department** | |
| *See* Agricultural Conservation Program Service; Agricultural Marketing Service; Agricultural Research Service; Commodity Credit Corporation. | |
| **Alien Property Office** | |
| Notices: | |
| Vested property, intention to return: | |
| Baruch, Eduard, et al | 5668 |
| Bruyn, Cornelis Adriaan | 5669 |
| Christensen, Henny Helene Lizzi | 5669 |
| Giafferi, Charles Joseph, and Mrs. Marie Antoinette Charlotte Bailly | 5669 |
| Hemmerdinger, Augusta, et al | 5669 |
| Socha, Rudolf | 5668 |



HeinOnline -- 20 Fed. Reg. 5615 1955

# PROPOSED RULE MAKING

## DEPARTMENT OF THE INTERIOR

### Bureau of Indian Affairs

### [ 25 CFR Part 180 ]

LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING

NOTICE OF HEARING

Pursuant to the authority vested in the Secretary of the Interior by section 3 of the act of June 28, 1906 (34 Stat. 543) and section 1 of the act of March 2, 1929 (45 Stat. 1478) a hearing will be held by a special representative of the Secretary of the Interior on September 6, 1955, at 10 a. m., at the Osage Agency, Pawhuska, Oklahoma, to consider proposed amendments to 25 CFR 180.5 (a) 180.51 (b) 180.30 and 180.46 (b) Osage oil and gas regulations.

Section 180.5 (a) is proposed to be amended so as to increase the amounts payable as well as location and tanksite fees and to clarify the usage of water by the lessee. Section 180.51 (b) is proposed to be amended as to the procedure for payment of location fees when the surface owner cannot be reached in person or by mail, or where the surface owner refuses to accept such payment when tendered to him by the lessee.

It is also proposed to amend § 180.30 to cover the measurement of all kinds of gas rather than only that of casinghead gas. Section 180.46 (b) is proposed to be amended so as to enable the Superintendent, Osage Agency, to approve an agreement rescinding a unit (blanket) lease and restoring to their original status the Form B leases theretofore merged into the unit lease.

The hearing will be open to the attendance of all interested parties. Those desiring to be heard in person at such hearing should file notice thereof with Russell G. Fister, Superintendent, Osage Agency, Pawhuska, Oklahoma, not later than September 2, 1955. Written statements may be filed at the same office by any party so desiring on or prior to September 6, 1955, or with the Chairman at the hearing.

Following the hearing, the Secretary of the Interior will, upon consideration of the complete record, determine whether the following proposed amendments should be adopted and 25 CFR Part 180 be changed accordingly. Such regulations, if adopted will be duly published in the FEDERAL REGISTER.

§ 180.5 *Use of surface lands: settlement of damages to lands and crops.* (a) Lessee shall have the right to use so much of the surface of the land as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods and other appliances necessary for the operation of the wells; also the right of ingress and egress and the right of way to any point of operations under condition of least injury and inconvenience to the owner and occupant of the surface. Lessee may use water from streams and natural water courses for lease operations as set out in § 180.57. Before commencing operations for the drilling of any well the lessee shall pay to the surface owner the sum of $200 for such well located on cultivated land (tilled or cultivated within the immediately preceding three years, and including hay-meadow land) $150 for open pasture land, and $100 for such location on brush or wooded lands, and other lands not suitable for cultivation. Upon payment of such location site money, lessee shall be entitled to possession. Location sites shall be held to the minimum area essential for operations, and in no event shall exceed one and one-half acres in area. Lessee shall also pay tank site fees at the rate of $20 per tank of not exceeding 1,000 barrels capacity: *Provided, however,* That no tank site fee shall be paid for a tank temporarily set on a well location site for testing purposes during the completion of the well. Tank sites shall be held to the minimum area essential to efficient operations, and in no event shall exceed an area of 50 feet square per tank. The sum to be paid for an oil tank site of larger capacity and occupying a greater area shall be as agreed upon between the surface owner and the lessee, and on failure to agree, the same shall be fixed by arbitration.

§ 180.51 *Well locations fees.* * * *

(b) Where the surface owner is a restricted Indian, adult or minor, well location fee shall be paid to the Superintendent of the Osage Agency for such Indian. All other surface owners, whether Indians or whites, shall be paid or tendered such fees direct, and where such surface owners are not residents of Osage County nor have a representative located therein, such payments shall be made or tendered by check, postage prepaid, to last known address of said surface owner at least 5 days before commencing drilling operations on any well: *Provided,* That should the lessee be unable to reach the owner of the surface of the land for the purpose of tendering the location fee, or if owner of the surface of the land upon being tendered the location fee by the lessee, shall refuse to accept the same, the lessee may tender the location fee to the Superintendent of the Osage Agency, and if the lessee and the Superintendent shall agree upon the amount of the location fee, the lessee shall deposit such amount with the Superintendent for payment to the owner of the surface of the land upon demand, and the Superintendent shall thereupon advise the owner of the surface of the land by mail at his last known address, that the location fee is being held for payment to him upon his request.

§ 180.30 *Measurement of gas.* Gas of all kinds (except gas used for purposes of production on the leasehold or unavoidably lost) is subject to royalty, and all gas shall be measured by meter (preferably of the orifice-meter type) unless otherwise agreed to by the Superintendent. All gas meters must be approved by the Superintendent and installed at the expense of the lessee at such places as may be agreed to by the Superintendent. For computing the volume of all gas produced, sold, or subject to royalty, the standard of pressure shall be 10 ounces above an atmospheric pressure of 14.4 pounds to the square inch, regardless of the atmospheric pressure at the point of measurement, and the standard of temperature shall be 60° F. All measurements of gas shall be adjusted by computation to these standards, regardless of the pressure and temperature at which the gas was actually measured, unless otherwise authorized in writing by the Superintendent.

§ 180.46 *Approval of lease instruments.* * * *

(b) *Unitization of oil leases.* As a consideration for their further development by the water flood process, two or more oil leases may be unitized and merged in a single blanket lease with the approval of the Superintendent. The instrument of unitization (blanket lease) shall include all the requirements and provisions of sections numbered 1, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19 and 20 of Osage oil lease Form B, *Provided:* That the preamble of Form B and the provisions of section numbered 2 in respect to royalty rates; section numbered 3 in respect to payment of rental; section numbered 4 in respect to payment of well site and tank location fees; and section numbered 14 in respect to the surrender of the lease, may be modified and/or supplemented by the parties, with the approval of the Superintendent, to the extent deemed appropriate for the equitable and efficient conduct of unitized operations, and not otherwise in conflict with the regulations in this part. Lessee(s) shall, before commencing water flood operations, and on or before December 31st of each year thereafter, submit to the Superintendent an acceptable plan of development and operation for the unit area for the ensuing year. Upon a finding by him that such action would be in the best interest of the Osage Tribe, the Superintendent may also approve an agreement between the lessor and the lessee(s) rescinding a unit (blanket lease) and restoring to their original status the Form B leases theretofore merged in the unit lease: *Provided,* That if oil is being produced in paying quantities on a particular quarter section tract on the date of approval of such agreement, the lessee shall be entitled to hold such tract under the terms of the original Form B lease so long as oil is produced on said tract in paying quantities.

ORME LEWIS,
*Assistant Secretary of the Interior.*

AUGUST 4, 1955.

[F. R. Doc. 55-6443; Filed, Aug. 4, 1955; 11:43 a. m.]



HeinOnline -- 20 Fed. Reg. 5647 1955