THE NATIONAL ARCHIVES OF THE UNITED STATES 1934 LITTERA SCRIPTA MANET

# FEDERAL REGISTER

VOLUME 20 NUMBER 253

Washington, Friday, December 30, 1955

## TITLE 3—THE PRESIDENT

### EXECUTIVE ORDER 10649

AMENDMENT OF EXECUTIVE ORDER NO. 10153[1] PRESCRIBING REGULATIONS RELATING TO CERTAIN TRAVEL TIME OF MEMBERS OF THE UNIFORMED SERVICES CALLED TO ACTIVE DUTY IN EXCESS OF THIRTY DAYS

By virtue of and pursuant to the authority vested in me by the first proviso of subsection 201 (e), Career Compensation Act of 1949 (63 Stat. 807; 37 U. S. C. 232 (e)) as amended (subsection 2 (2) Career Incentive Act of 1955 (Public Law 20, 84th Cong., 69 Stat. 19), Act of July 12, 1955 (Public Law 144, 84th Cong., 69 Stat. 294)), and as President of the United States and Commander in Chief of the Armed Forces of the United States, it is ordered that Executive Order No. 10153 of August 17, 1950, 15 Federal Register 5492, be, and it is hereby, amended as follows:

1. Sections 1 and 2 are amended to read:

SECTION 1. For travel from home to first duty station, in case travel by public transportation is authorized, the travel time included as active duty shall be based upon actual and necessary schedules which most nearly coincide with the possible time of departure and arrival by the mode of transportation actually used, or by public surface transportation if the travel is actually performed by private conveyance without having been specifically authorized. In case travel by private conveyance is specifically authorized and the travel is so performed, the travel time included as active duty shall be computed on the basis of one day for each three hundred miles traveled, and one day of travel time shall also be allowed for each fraction of three hundred miles in excess of one hundred and fifty miles. The distance traveled shall be computed on the basis of distances established by the official mileage tables in use by the uniformed services. Travel by private conveyance shall not be specifically authorized in any case in which the call to active duty is for a period of less than ninety consecutive days.

SEC. 2. For travel from last duty station to home, in case travel by public transportation is authorized, the travel time included as active duty shall be based upon actual and necessary schedules which most nearly coincide with the possible time of departure and arrival by public surface transportation, without regard to the actual performance of such travel. In case travel by private conveyance is specifically authorized, the travel time included as active duty shall be computed on the basis of one day for each three hundred miles traveled, and one day of travel time shall also be allowed for each fraction of three hundred miles in excess of one hundred and fifty miles, without regard to the actual performance of such travel. The distance from last duty station to home shall be computed on the basis of distances established by the official mileage tables in use by the uniformed services. Travel by private conveyance shall not be specifically authorized in any case in which the call to active duty is for a period of less than ninety consecutive days.

2. This order shall become effective on January 1, 1956.

DWIGHT D. EISENHOWER

THE WHITE HOUSE,
*December 28, 1955.*

[F. R. Doc. 55-10555; Filed, Dec. 28, 1955; 4:20 p. m.]

[1] 3 CFR, 1950 Supp., p. 114; 15 F. R. 5492.

## TITLE 7—AGRICULTURE

### Chapter IX—Agricultural Marketing Service (Marketing Agreements and Orders), Department of Agriculture

PART 964—DRIED FIGS PRODUCED IN CALIFORNIA

ADMINISTRATIVE RULES AND PROCEDURES

Pursuant to Marketing Agreement No. 123 and Order No. 64 (20 F. R. 1695) regulating the handling of dried figs produced in California, effective under the Agricultural Marketing Agreement Act of 1937, as amended (7 U. S. C. 601 et seq.) the Dried Fig Administrative Committee, the administrative agency for program operations, has submitted, for the approval of the Secretary of Agriculture, an amendment of § 964.151 (c) (3) of the administrative rules and pro-

(Continued on next page)

## CONTENTS

### THE PRESIDENT

Executive Order — Page
Regulations relating to certain travel time of members of uniformed services called to active duty in excess of thirty days; amendment of E. O. 10153 — 10095

### EXECUTIVE AGENCIES

Agricultural Marketing Service
Rules and regulations:
Dried figs produced in California, administrative rules and procedures — 10095
Agriculture Department
See also Agricultural Marketing Service.
Notices:
Designation of areas for emergency loans:
Economic; North Carolina — 10116
Production:
Mississippi — 10117
Washington and Oregon — 10117
Civil Aeronautics Administration
Rules and regulations:
Restricted areas; alterations — 10111
Civil Aeronautics Board
Notices:
Prehearing conferences:
Bonanza renewal case — 10121
Pan American World Airways, Inc., and Trans World Airlines, Inc., polar routes — 10121
Seven States area investigation — 10121
Commerce Department
See Civil Aeronautics Administration; Maritime Administration.
Customs Bureau
Rules and regulations:
Transportation in bond and merchandise in transit — 10111
Federal Credit Unions Bureau
Rules and regulations:
Credit unions chartered by District of Columbia — 10113
Federal Power Commission
Notices:
Hearings, etc.:
Arizona Public Service Co — 10119
Arkansas Fuel Corp — 10118
Cabot Carbon Co. et al — 10119

amendment for thirty days, or any lesser period, after publication in the FEDERAL REGISTER (see section 4 of the Administrative Procedure Act; 5 U. S. C. 1001 et seq.) in that: (1) Shipments into trade channels of sliced dried figs and fig paste currently are being made, to which the provisions of the amendment should apply; (2) until the amendment becomes effective, reliance must be placed on voluntary use of head count tests for insects in the case of dried figs of the Calimyrna variety being prepared as sliced dried figs or fig paste; (3) dried fig handlers, who are represented on the committee, and the Dried Fruit Association of California, the inspection agency for the program, know that the amendment has been unanimously approved by the committee and may be issued; and (4) the circumstances are such that handlers do not need any further advance notice to prepare for compliance with the provisions of the amendment. It is imperative that this action be made effective on the date on which this order is published in the FEDERAL REGISTER.

(Sec. 5, 49 Stat. 753, as amended; 7 U. S. C. 608c)

Dated: December 27, 1955.

[SEAL] ROY W LENNARTSON,
*Deputy Administrator Marketing Services.*

[F. R. Doc. 55-10466; Filed, Dec. 29, 1955; 8:51 a. m.]

# TITLE 25—INDIANS

## Chapter I—Bureau of Indian Affairs, Department of the Interior

### Subchapter R—Leases and Sale of Minerals, Restricted Indian Lands

### PART 180—LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING

MISCELLANEOUS AMENDMENTS

The regulations in this part are amended as follows:

§ 180.5 *Use of surface lands; settlement of damages to lands and crops.* (a) Lessee shall have the right to use so much of the surface of the land as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods and other appliances necessary for the operation of the wells; also the right of ingress and egress and the right of way to any point of operations under condition of least injury and inconvenience to the owner and occupant of the surface. Lessee may use water from streams and natural water courses for lease operations as set out in § 180.57. Before commencing operations for the drilling of any well the lessee shall pay to the surface owner the sum of $200 for each well located on cultivated land (tilled or cultivated within the immediately preceding three years, and including hay-meadow land) $150 for open pasture land, and $100 for such location on brush or wooded lands, and other lands not suitable for cultivation. Upon payment of such location site money, lessee shall be entitled to possession. Location sites shall be held to the minimum area essential for operations, and in no event shall exceed one and one-half acres in area. Lessee shall also pay tank site fees at the rate of $20 per tank of not exceeding 1,000 barrels capacity: *Provided, however,* That no tank site fee shall be paid for a tank temporarily set on a well location site for testing purposes during the completion of the well. Tank sites shall be held to the minimum area essential to efficient operations, and in no event shall exceed an area of 50 feet square per tank. The sum to be paid for an oil tank site of larger capacity and occupying a greater area shall be as agreed upon between the surface owner and the lessee, and on failure to agree, the same shall be fixed by arbitration.

* * * * *

§ 180.30 *Measurement of gas.* Gas of all kinds (except gas used for purposes of production on the leasehold or unavoidably lost) is subject to royalty, and all gas shall be measured by meter (preferably of the orifice-meter type) unless otherwise agreed to by the Superintendent. All gas meters must be approved by the Superintendent and installed at the expense of the lessee at such places as may be agreed to by the Superintendent. For computing the volume of all gas produced, sold, or subject to royalty, the standard of pressure shall be 10 ounces above an atmospheric pressure of 14.4 pounds to the square inch, regardless of the atmospheric pressure at the point of measurement, and the standard of temperature shall be 60° F. All measurements of gas shall be adjusted by computation to these standards, regardless of the pressure and temperature at which the gas was actually measured, unless otherwise authorized in writing by the Superintendent.

§ 180.46 *Approval of lease instruments.* * * *

(b) *Unitization of oil leases.* As a consideration for their further development by the water flood process, two or more oil leases may be unitized and merged in a single blanket lease with the approval of the Superintendent. The instrument of unitization (blanket lease) shall include all the requirements and provisions of sections numbered 1, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19 and 20 of Osage oil lease Form B: *Provided,* That the preamble of Form B and the provisions of section numbered 2 in respect to royalty rates; section numbered 3 in respect to payment of rental; section numbered 4 in respect to payment of well site and tank location fees; and section numbered 14 in respect to the surrender of the lease, may be modified and/or supplemented by the parties, with the approval of the Superintendent, to the extent deemed appropriate for the equitable and efficient conduct of unitized operations, and not otherwise in conflict with the regulations in this part. Lessee(s) shall, before commencing water flood operations, and on or before December 31st of each year thereafter, submit to the Superintendent an acceptable plan of development and operation for the unit area for the ensuing year. Upon a finding by him that such action would be in the best interest of the Osage Tribe, the Superintendent may also approve an agreement between the lessor and the lessee(s) rescinding a unit (blanket lease) and restoring to their original status the Form B leases theretofore merged in the unit lease: *Provided,* That if oil is being produced in paying quantities on a particular quarter section tract on the date of approval of such agreement, the lessee shall be entitled to hold such tract under the terms of the original Form B lease so long as oil is produced on said tract in paying quantities.

§ 180.51 *Well location fees.* * * *

(b) Where the surface owner is a restricted Indian, adult or minor, well location fee shall be paid to the Superintendent of the Osage Agency for such Indian. All other surface owners, whether Indians or whites, shall be paid or tendered such fees direct, and where such surface owners are not residents of Osage County nor have a representative located therein, such payments shall be made or tendered by check, postage prepaid, to last known address of said surface owner at least 5 days before commencing drilling operations on any well: *Provided,* That should the lessee be unable to reach the owner of the surface of the land for the purpose of tendering the location fee, or if owner of the surface of the land upon being tendered the location fee by the lessee, shall refuse to accept the same, the lessee may tender the location fee to the Superintendent of the Osage Agency, and if the lessee and the Superintendent shall agree upon the amount of the location fee, the lessee shall deposit such amount with the Superintendent for payment to the owner of the surface of the land upon demand, and the Superintendent shall thereupon advise the owner of the surface of the land by mail at his last known address, that the location fee is being held for payment to him upon his request.

(Sec. 3, 34 Stat. 543)

CLARENCE A. DAVIS,
*Acting Secretary of the Interior.*

DECEMBER 22, 1955.

[F. R. Doc. 55-10434; Filed, Dec. 29, 1955; 8:45 a. m.]

# TITLE 26—INTERNAL REVENUE, 1954

## Chapter I—Internal Revenue Service, Department of the Treasury

### Subchapter C—Employment Taxes

[T. D. 6155]

### PART 31—EMPLOYMENT TAXES; APPLICABLE ON AND AFTER JANUARY 1, 1955

On October 12, 1955, a notice of proposed rule making regarding the regulations under sections 3401 (a), 6001, and 6051 of the Internal Revenue Code of 1954 was published in the FEDERAL REGISTER (20 F. R. 7610) in order to provide rules with respect to payments made after December 31, 1955, of amounts subject to section 105 (d) of the 1954 Code. After consideration of the relevant suggestions presented by interested parties

# CUMULATIVE POCKET SUPPLEMENT TO THE . . . CODE OF FEDERAL REGULATIONS

Title 25—Indians

AS OF JANUARY 1 1956

For changes on and after
January 1, 1956, see the daily issues of the Federal Register

§ 171.20 *Liquor clause.* All leases or permits issued under this part shall contain liquor and morality provisions as follows:

The lessee (permittee) further agrees that he will not use or permit to be used any part of said premises for any unlawful conduct or purpose whatsoever; that he will not use or permit to be used any part of said premises for the manufacture, sale, gift, transportation, drinking or storage of intoxicating liquors or beverages in violation of existing laws relating thereto, and that any violation of this clause by the lessee (permittee) or with his knowledge, shall render this lease voidable at the option of the Superintendent.

[19 F. R. 7998, Dec. 3, 1954]

§ 171.30 *Navajo and Hopi lands.* Any restricted Indian lands owned by the Navajo Tribe, members thereof, or associations of such members, or by the Hopi Tribe, members thereof, or associations of such members, may be leased by the Indian owners, with the approval of the Commissioner, Bureau of Indian Affairs, or his duly authorized representative, for public, religious, educational, recreational, or business purposes, including the development or utilization of natural resources in connection with operations under such leases, except oil and gas and other minerals. All leases so granted shall be for a term of not to exceed twenty-five years, but may include provisions authorizing their renewal for an additional term of not to exceed twenty-five years. Restricted allotments of deceased Indians may be leased under this section, for the benefit of their heirs or devisees, in the circumstances and by the persons prescribed in the act of July 8, 1940 (54 Stat. 745; 25 U. S. C. 380).

(R. S. 161; 5 U. S. C 22. Interprets or applies sec. 5, 64 Stat. 46; 25 U. S. C. 635) [19 F. R. 2393, Apr. 23, 1954]

# SUBCHAPTER R—LEASES AND SALES OF MINERALS, RESTRICTED INDIAN LANDS

## Part 180—Leasing of Osage Reservation Lands for Oil and Gas Mining

Sec.
180.1 Definitions. [Revised]

OIL MINING LEASES

180.2 Royalty payments. [Revised]
180.3 Government reserves right to purchase oil. [Revised]
180.4 Drilling obligations. [Revised]
180.5 Use of surface lands; settlement of damages to lands and crops. [Amended]
180.15 Gas for operating purposes. [Revised]
180.17 Form of payment. [Revised]
180.19 Penalty for violation of lease terms. [Revised]
180.20 Bonds. [Revised]

GAS MINING LEASES

180.23 Contracts for the sale of gas for industrial purposes. [Revised]

UTILIZATION OF CASING-HEAD GAS WHEN USED FOR THE MANUFACTURE OF GASOLINE

180.24 Royalty on casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from gas, drip gasoline, or other natural condensate. [Revised]

Sec.
180.30 Measurement of gas. [Revised]

HOW TO ACQUIRE LEASES OF TRIBAL LANDS

180.39 Sales of oil leases and gas leases; leases to be sold at public auction. [Revised]
180.40 Corporations and corporate showing. [Revised]
180.41 How to acquire permission to begin operations on homestead allotments. [Revised]
180.42 Rental period after consent of Superintendent to begin operations on homesteads. [Revised]

ASSIGNMENTS

180.46 Approval of lease instruments. [Revised]
180.47 Filing of assignments and drilling contracts. [Revised]

OPERATIONS

180.49 Commencement of operation. [Revised]
180.51 Well location fees. [Amended]

POWERS AND DUTIES OF INSPECTORS

180.59 Duties of inspectors. [Revised]

REQUIREMENTS OF LESSEES

180.64 Plats showing location of wells. [Revised]

approval of the
Indian Affairs,
resentative, for
tional, recrea-
oses, including
ation of natural
with operations
ot oil and gas
All leases so
n of not to ex-
it may include
eir renewal for
not to exceed
cted allotments
be leased under
t of their heirs
stances and by
n the act of
5; 25 U. S. C.

rprets or applies
635) [19 F. R.

STRICTED

[Revised]

TRIBAL LANDS

and gas leases;
public auction.

orporate show-

ission to begin
mestead allot-

r consent of
begin opera-
s. [Revised]

uments. [Re-

s and drilling
1]

peration. [Re-

Amended]

NSPECTORS

[Revised]

ISEES

ion of wells.



Sec.
180.67 Notice prior to removal of casing. [Revised]
180.84 Plugging to be approved by inspector. [Revised]
180.88 Division orders. [Amended]
180.89 Use of timber from leased lands. [Revised]

PENALTIES FOR VIOLATION OF REGULATIONS [REVISED]

180.91 Amount of penalties.

FORMS

180.93 Forms. [Revised]

HEARINGS AND APPEALS [ADDED]

180.95 Hearings and appeals.

SOURCE: §§ 180.1 to 180.95, set forth in this Pocket Supplement, appear at 17 F. R. 2602, Mar. 26, 1952, except as otherwise noted.

§ 180.1 *Definitions.* The following words or terms when used in the lease and regulations in this part shall have the meaning shown in this section:

(a) *Superintendent.* The Superintendent of the Osage Agency, Pawhuska, Oklahoma, in charge of the Osage Agency and Reservation, or any other person who may be in charge of such agency and reservation, and it shall be his duty to enforce compliance with the regulations in this part.

(b) *Inspector.* Any person appointed as Inspector of oil and gas wells, or who may be designated by the Secretary of the Interior or the Commissioner of Indian Affairs to supervise oil or gas operations on Osage lands under the direction of the Superintendent.

(c) *Oil lessee.* Any person, firm, or corporation to whom an oil mining lease is made under the regulations in this part.

(d) *Gas lessee.* Any person, firm, or corporation to whom a gas lease is made under the regulations in this part.

OIL MINING LEASES

§ 180.2 *Royalty payments*—(a) *Royalty on oil produced by primary or gas injection methods.* The lessee shall pay or cause to be paid to the Superintendent, for the lessor as a royalty, the sum of 16⅔ percent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs, shall elect to take the royalty in oil; payment to be made at time of sale or removal of the oil, except where payments are made on division orders; and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal: *Provided,* That when the quantity of oil taken from all the producing wells on any quarter-section according to the public survey, or fractional quarter-section if the land covered by the lease does not include the full quarter-section, during any calendar month, is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 percent.

(b) *Royalty on oil produced by the water flood process.* When the estimated reserves of oil recoverable by primary and/or gas injection methods from a specified sand or sands have been depleted or partially depleted, the lessee and the Tribal Council may agree upon a new royalty rate to be approved by the Superintendent, the sum to be not less than 12½ percent of the gross proceeds from sales of oil produced by the water flood process after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs, shall elect to take the royalty in oil; payment to be made at time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal.

(c) *Royalty in kind.* Should the lessor, with the approval of the Commissioner of Indian Affairs, elect to take the royalty in oil, the lessee shall furnish free storage for the royalty oil for not exceeding 30 days.

§ 180.3 *Government reserves right to purchase oil.* Any of the executive departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under any lease. The Commissioner of Indian Affairs may impose restrictions as to time or times for drilling of wells and as to the production from any well or wells when in his judgment or the judgment of his representative, such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in taking action, the Commissioner may take into consideration, among

other things, Federal laws, State laws, or regulations by competent Federal or State authorities or lawful agreements among operators regulating either drilling or production, or both.

§ 180.4 *Drilling obligations.* (a) Lessees shall drill at least one well to the Mississippi line, unless oil or gas is found in commercial quantities at a lesser depth, on the land embraced in their leases, within 12 months from date of approval of leases, or the leases may be held for the full 5-year fixed term without drilling, upon payment of rentals to the Superintendent for the lessor at the rate of $1 per acre per annum, or a proportionate part thereof for each 3 months' period a lease is held and a well is not drilled, such rental beginning twelve months from date of approval of lease: *Provided*, That the time within which a well shall be drilled or rental paid in lieu of drilling shall not begin to run on any restricted homestead selection until the consent of the Superintendent to drilling on such homestead shall have been given: *Provided*, That the Superintendent in his discretion may direct the drilling of any undrilled lease, if in his opinion the interests of the Osage Tribe warrant. Should the lessee elect to surrender his lease before the end of any such yearly period without drilling a well thereon, he shall pay the rental of $1 per acre for the fractional part of the year the land is held and a well is not drilled, and failure of the lessee to pay such rental within 25 days from the expiration of any yearly period during which such well is not drilled shall be cause for cancellation of the lease by the Superintendent, but such cancellation shall not release the lessee and his sureties from the obligation to pay such rental: *Provided, further*, That whenever the Commissioner of Indian Affairs shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on any lease.

(b) Prior to the expiration of a term of a lease, the Osage Tribal Council may, with the approval of the Superintendent, and a finding by him that such action is in the best interest of the Osage Tribe, grant an extension of the term of the lease for a period of not to exceed six months for the purpose of enabling the lessee to drill a well to the Mississippi Line unless oil or gas is found in paying quantities at a lesser depth.

§ 180.5 *Use of surface lands; settlement of damages to lands and crops.* (a) Lessee shall have the right to use so much of the surface of the land as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods and other appliances necessary for the operation of the wells; also the right of ingress and egress and the right of way to any point of operations under condition of least injury and inconvenience to the owner and occupant of the surface. Lessee may use water from streams and natural water courses for lease operations as set out in § 180.57. Before commencing operations for the drilling of any well the lessee shall pay to the surface owner the sum of $200 for each well located on cultivated land (tilled or cultivated within the immediately preceding three years, and including haymeadow land), $150 for open pasture land, and $100 for such location on brush or wooded lands, and other lands not suitable for cultivation. Upon payment of such location site money, lessee shall be entitled to possession. Location sites shall be held to the minimum area essential for operations, and in no event shall exceed one and one-half acres in area. Lessee shall also pay tank site fees at the rate of $20 per tank of not exceeding 1,000 barrels capacity: *Provided, however*, That no tank site fee shall be paid for a tank temporarily set on a well location site for testing purposes during the completion of the well. Tank sites shall be held to the minimum area essential to efficient operations, and in no event shall exceed an area of 50 feet square per tank. The sum to be paid for an oil tank site of larger capacity and occupying a greater area shall be as agreed upon between the surface owner and the lessee, and on failure to agree, the same shall be fixed by arbitration.

[Paragraph (a) amended, 20 F. R. 10097, Dec. 30, 1955]

* * * * *

§ 180.15 *Gas for operating purposes.* The gas lessee shall furnish the oil lessee sufficient gas for drilling and operating purposes at a rate to be agreed upon, or on failure to agree the rate shall be fixed by arbitration: *Provided*, That the oil lessee shall make necessary connections between the well and the meter whenever possible.

§ 180.17 *Form of payment.* All amounts due and payable under a lease



shall l
check

§ 18
*terms.*
condit
tions
to ca
or the
$500 p
terms
are vi
inten
compl
cance
perin
cance
of a f
the le
heari
lease
which
Super

§ 1
furni
lease.
prese
suret
ecute
sum
or fr
ered
That
G. c
they
of a
bond

(b
to in
in a
inter

(c)
prep
acqu
assig
or th
sent
bond
form
the l

§ 1
*for*
tract
purp
the
price
mest
Supe
the

' lands; settle- und crops. (a) ;ght to use so le land as may .ons, including tain pipe lines, lines, pull rods 'essary for the so the right of e right of way s under condi- convenience to of the surface. n streams and r lease opera- . Before com- he drilling of ay to the sur- 0 for each well nd tilled or nediately pre- ncluding hay- open pasture ation on brush her lands not Jpon payment y. lessee shall Location sites ninimum area nd in no event -half acres in pay tank site r tank of not apacity: Pro- tank site fee mporarily set sting purposes ne well. Tank ninimum area itions, and in rea of 50 feet to be paid for capacity and shall be as surface owner lure to agree, y arbitration. C F. R. 10037,

* *

'ing purposes. 1 the oil lessee and operating reed upon, or shall be fixed That the oil y connections meter when-

ment. All under a lease



shall be paid to the Superintendent by check or bank draft on a solvent bank.

§ 180.19 *Penalty for violation of lease terms.* Violation of any of the terms or conditions of any lease or of the regulations in this part shall subject the lease to cancellation by the Superintendent, or the lessee to a fine of not exceeding $500 per day for each and every day the terms of the lease or of the regulations are violated, or the orders of the Superintendent in reference thereto are not complied with, or to both such fine and cancellation in the discretion of the Superintendent: *Provided*, That prior to cancellation of a lease or the imposition of a fine as provided for in this section, the lessee shall be entitled to notice and hearing with respect to the terms of the lease or of the regulations violated, which hearing shall be held by the Superintendent.

§ 180.20 *Bonds.* (a) Lessees shall furnish with each oil lease and each gas lease, to be filed at the time the lease is presented, a bond upon Form D, with a surety company duly authorized to execute bonds. Such bonds shall be in the sum of $1,000 for each quarter-section or fractional quarter-section unit covered by the lease: *Provided, however*, That the lessee may file one bond, Form G, covering all leases to which he or they are or may become parties instead of a separate bond in each case, such bond to be in the penal sum of $15,000.

(b) The right is specifically reserved to increase the amount of any such bond in any particular case when the Superintendent deems it proper to do so.

(c) Form H should be used in the preparation of a bond covering a lease acquired through assignment where the assignee does not have a collective bond, or the surety does not execute its consent to remain bound under the original bond given to secure the faithful performance of the terms and conditions of the lease.

GAS MINING LEASES

§ 180.23 *Contracts for the sale of gas for industrial purposes.* (a) All contracts for the sale of gas for industrial purposes and sworn statements showing the terms, conditions, and schedules of prices contained in contracts with domestic consumers shall be filed with the Superintendent, and shall be subject to the approval of the Commissioner of Indian Affairs whenever, in his opinion, the interests of the Osage Tribe or the public require such action.

(b) In the sale and disposition of gas, preference shall at all times be given to domestic consumers, unless provided otherwise in the lease, and all contracts for the industrial use of gas shall contain a clause to the effect that when it is shown to the satisfaction of the Commissioner that such gas is needed for domestic consumers within an area fixed by the Commissioner, such contract shall terminate upon the expiration of 30 days' notice from the Commissioner, and that the Commissioner shall have authority immediately to suspend the furnishing of gas to industrial consumers when he is of the opinion that such gas is needed for domestic consumers. All gas furnished to industrial and domestic consumers shall be metered and sold at meter rates: *Provided*, That gas furnished to an oil lessee may be sold as provided in the gas lessee's contract.

(c) All contracts with domestic consumers shall be subject to the inspection of the Superintendent.

UTILIZATION OF CASING-HEAD GAS WHEN USED FOR THE MANUFACTURE OF GASOLINE

§ 180.24 *Royalty on casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from gas, drip gasoline, or other natural condensate.* (a) A royalty of 16⅔ percent ofthe gross proceeds of sales shall be paid on the value of one-third (or the lessee's portion if greater than one-third) of all casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from the gas produced from the leasehold. The value of the remainder is an allowance for the cost of manufacture, and no royalty thereon is required. The royalty shall be computed on the sale price received by the manufacturers of such products, or such higher price the lessee may receive the same to be reported under oath and remitted to the Superintendent not later than the 25th of the succeeding month for all such products sold during the previous month. If the manufacturer of any product extracted from casing-head gas produced from an Osage leasehold should sell his product at an arbitrary price below that obtained by other manufacturers selling such product in the open market during a particular month, the Superintendent shall notify said manufacturer of such

discrepancy and require settlement for royalty upon the average price obtained by manufacturers selling such product in the open market during the same period. The place of sale of liquid hydrocarbons extracted from gas shall be at the plant where manufactured or when loaded into tank cars at or near the plant. Should any manufacturer sell such product by delivery to pipelines at distant points he may be allowed the average loss by waste, evaporation or otherwise sustained by other manufacturers in the Osage, of such product from the plant to tank cars as shown by sworn statements which shall be furnished when required by the Superintendent.

(b) The royalty on all drip gasoline, or other natural condensate recovered from gas produced from the leased lands without resort to manufacturing process shall be 16⅔ percent of the gross proceeds from sales, except that such substance, if processed in a casing-head gasoline plant shall be treated for royalty purposes as though it were gasoline.

§ 180.30 *Measurement of gas.* Gas of all kinds (except gas used for purposes of production on the leasehold or unavoidably lost) is subject to royalty, and all gas shall be measured by meter (preferably of the orifice-meter type) unless otherwise agreed to by the Superintendent. All gas meters must be approved by the Superintendent and installed at the expense of the lessee at such places as may be agreed to by the Superintendent. For computing the volume of all gas produced, sold, or subject to royalty, the standard of pressure shall be 10 ounces above an atmospheric pressure of 14.4 pounds to the square inch, regardless of the atmospheric pressure at the point of measurement, and the standard of temperature shall be 60° F. All measurements of gas shall be adjusted by computation to these standards, regardless of the pressure and temperature at which the gas was actually measured, unless otherwise authorized in writing by the Superintendent.

[20 F. R. 10097, Dec. 30, 1955]

*Prior Amendments*

1952: 17 F. R. 2603, Mar. 26.

HOW TO ACQUIRE LEASES OF TRIBAL LANDS

**§ 180.39** ***Sales of oil leases and gas leases; leases to be sold at public auction.*** **(a) Written application for tracts to be offered for lease may be filed with the Superintendent.**

(b) The Superintendent, with the consent of the Osage Tribal Council, may at such times and in such manner as shall be deemed appropriate, publish and distribute notices that oil leases and/or gas leases on specific tracts of unleased tribal lands, each of which shall be in a compact body, will be offered at public auction to the highest responsible bidder: *Provided,* That not less than 25,000 acres of the unleased portion of the Osage mineral reserve shall be offered for lease during any one year. Successful bidders must deposit with the Superintendent on day of sale, a check, or bank draft on a solvent bank in the amount equal to 25 percent of the bonus as a guaranty of good faith. The Superintendent may require any bidder to submit satisfactory evidence of good faith, that he has the cash in hand or at his command, and to furnish whenever called upon by the Superintendent during the progress of the sale, authenticated statement of a solvent bank to the effect the bidder has the means to purchase the lease. The balance of the bonus, together with a $5.00 filing fee for each lease, shall be paid, and the lease in completed form with necessary accompanying papers shall be filed with the Superintendent within 20 days after the lease is forwarded, by the Superintendent, to the lessee for execution, unless such period has been extended by the Superintendent for good and sufficient reason. If the successful bidder fails to complete the lease or to pay the full consideration within 20 days or an authorized extension thereof, or if the lease is disapproved through no fault of the lessor or the Department of the Interior, the amount deposited as a guaranty of good faith shall be forfeited for the use and benefit of the lessor. Any and all bids shall be subject to acceptance by the Osage Tribal Council. The Superintendent may disapprove a lease made on an accepted bid, upon evidence satisfactory to him of collusion, fraud or other irregularity in connection with the sale of the lease.

**(c) No lease, assignment thereof, or interest therein will be approved to any employee or employees of the Government, and no such employee shall be permitted to acquire any interest in leases covering Osage Tribal lands, by ownership of stock in corporations having leases or in any other manner.**

**§ 180.40** ***Corporations and corporate showing.*** **(a) Upon being notified of the**

with the con-
Council, may
h manner as
iate, publish
at oil leases
ific tracts of
of which shall
be offered at
st responsible
ot less than
ed portion of
hall be offered
ar. Success-
th the Super-
heck, or bank
the amount
bonus as a
The Superin-
idder to sub-
f good faith,
nd or at his
h whenever
tendent dur-
e, authenti-
t bank to the
eans to pur-
ance of the
filing fee for
nd the lease
ecessary ac-
be filed with
20 days after
the Superin-
e execution,
extended by
d and suffi-
essful bidder
r to pay the
) days or an
of, or if the
no fault of
t of the In-
d as a guar-
forfeited for
lessor. Any
t to accept-
ouncil. The
rove a lease
on evidence
usion, fraud
nection with

thereof, or
oved to any
the Govern-
ee shall be
interest in
al lands, by
rations hav-
anner.

*d corporate*
otified of the

acceptance of its bid, a corporation shall file a certified copy of articles of incorporation, and evidence showing compliance with local corporation laws if a foreign corporation: *Provided*, That if any such papers have already been filed a statement to that effect may be submitted.

(b) A corporation must also file with its first lease, and at such other times as the Superintendent may direct, a list in duplicate of all officers, directors, and of such stockholders, as may be required with their post-office addresses, and showing the number of shares of capital stock held by each and whether held for themselves or in trust, together with a sworn statement of its proper officer, showing:

(1) The total number of shares of the capital stock actually issued, the number of shares actually sold and specifically the amount of cash paid into the treasury on the stock sold, or, if paid in property, state kind, quantity, and value of same paid.

(2) Of the stock sold, how much per share remains unpaid and subject to assessment.

(3) How much cash the company has in its treasury and elsewhere, and from what sources it was received.

(4) What property, exclusive of cash, is owned by the company and its value.

(5) What the total indebtedness of the company is and specificially the nature of its obligations.

(c) Leases made by corporations shall be accompanied by an affidavit (Form E) showing the authority of its officers to execute leases, bonds and other papers.

§ 180.41 *How to acquire permission to begin operations on homestead allotments.* (a) Lessees may conduct operations within or upon homestead selections with the written consent of the Superintendent and not otherwise.

(b) If the allottee is unwilling to permit operations on his homestead, the Superintendent will direct the Inspector to make an examination of the premises with the allottee and the lessee, or his representative, and should the Inspector be of the opinion that the interests of the Osage Tribe require that the particular tract be developed he will endeavor to have the parties agree upon the terms under which operations on the homestead may be conducted.

(c) In the event the allottee and the lessee cannot, with the assistance of the Inspector, agree on the matter, the allottee shall be permitted to go before the Osage Tribal Council, and the Council, after hearing the allottee, the lessee, and the Inspector, shall make such recommendation as it deems proper. Guardians, legal or natural, may represent their Indian wards, and where no one is authorized or where no person is deemed by the Superintendent to be a proper party to speak for a minor or person of unsound mind or of feeble understanding, the Principal Chief of the Osage Tribe shall represent him.

(d) Where the allottee does not appear before the Council, either in person or by representative, when notified by the Superintendent, or the Council fails to act in the matter within 10 days after being referred to it, the Superintendent may authorize the lessee to proceed with operations in conformity with the provisions of his lease and the regulations in this part. If the Council by appropriate resolution should recommend that a lessee be not permitted to conduct drilling operations on a homestead selection, the Superintendent shall submit the question to the Area Director.

§ 180.42 *Rental period after consent of Superintendent to begin operations on homesteads.* Rental in lieu of development shall not begin to run on any homestead selection until one year after the consent of the Superintendent or Area Director to operations on such homestead shall have been given.

ASSIGNMENTS

§ 180.46 *Approval of lease instruments*—(a) *Oil and gas leases.* The Superintendent may approve the schedule of bids accepted by the Osage Tribal Council following a sale of oil leases and gas leases conducted in conformity with the provisions of § 180.39. The Superintendent may also approve oil leases and gas leases made by the Osage Tribal Council in conformity with the regulations in this part, bonds and other instruments required for leases or assignments thereof, and the acceptance of the voluntary surrender of leases.

(b) *Unitization of oil leases.* As a consideration for their further development by the water flood process, two or more oil leases may be unitized and merged in a single blanket lease with the approval of the Superintendent. The

instrument of unitization (blanket lease) shall include all the requirements and provisions of sections numbered 1, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19 and 20 of Osage oil lease Form B: *Provided*, That the preamble of Form B and the provisions of section numbered 2 in respect to royalty rates; section numbered 3 in respect to payment of rental; section numbered 4 in respect to payment of well site and tank location fees; and section numbered 14 in respect to the surrender of the lease, may be modified and/or supplemented by the parties, with the approval of the Superintendent, to the extent deemed appropriate for the equitable and efficient conduct of unitized operations, and not otherwise in conflict with the regulations in this part. Lessee(s) shall, before commencing water flood operations, and on or before December 31st of each year thereafter, submit to the Superintendent an acceptable plan of development and operation for the unit area for the ensuing year. Upon a finding by him that such action would be in the best interest of the Osage Tribe, the Superintendent may also approve an agreement between the lessor and the lessee(s) rescinding a unit (blanket lease) and restoring to their original status the Form B leases theretofore merged in the unit lease: *Provided*, That if oil is being produced in paying quantities on a particular quarter section tract on the date of approval of such agreement, the lessee shall be entitled to hold such tract under the terms of the original Form B lease so long as oil is produced on said tract in paying quantities.

[Paragraph (b) amended, 20 F. R. 10097, Dec. 30, 1955]

(c) *Assignments.* Approved leases or any interest therein may be assigned with the approval of the Superintendent, and not otherwise. Assignments, when so approved, shall be subject to the terms and conditions of the original leases, and the regulations under which such leases were approved. The assignee shall furnish with his assignment a satisfactory bond as provided in § 180.20 (c). Any attempt to assign an approved lease or any interest therein without the consent and approval of the Superintendent shall be absolutely void and shall subject the original lease to cancellation in the discretion of the Superintendent.

**§ 180.47** ***Filing of assignments and drilling contracts.*** (a) Assignments of any lease or any interest therein by drilling contract or otherwise shall be filed with the Superintendent within 30 days from the date of such assignment by the assignor, except in instances where the necessary papers cannot be executed within such time, in which event, however, formal notice shall be filed within the 30 days stipulated and where necessary the Superintendent may grant 15 days additional.

(b) In case of contracts made by oil lessees for drilling wells, which contracts provide that in consideration of drilling a well on the leased premises a subsequent assignment of an interest in such lease will be made subject to the approval of the Department, the Superintendent is hereby authorized to approve such drilling contracts with a stipulation that such approval does not in any way bind the Department to approve formal assignments that may thereafter be submitted and that such approval merely authorizes the drilling contractor to enter into possession of the lease for the purpose of development work.

OPERATIONS

§ 180.49 *Commencement of operation.* No operations shall be permitted upon any tract of land until a lease covering such tract shall have been approved by the Superintendent or such operations specifically authorized by him.

§ 180.51 *Well location fees.* * * *

(b) Where the surface owner is a restricted Indian, adult or minor, well location fee shall be paid to the Superintendent of the Osage Agency for such Indian. All other surface owners, whether Indians or whites, shall be paid or tendered such fees direct, and where such surface owners are not residents of Osage County nor have a representative located therein, such payments shall be made or tendered by check, postage prepaid, to last known address of said surface owner at least 5 days before commencing drilling operations on any well: *Provided*, That should the lessee be unable to reach the owner of the surface of the land for the purpose of tendering the location fee, or if owner of the surface of the land upon being tendered the location fee by the lessee, shall refuse to accept the same, the lessee may tender the location fee to the Superintendent of the Osage Agency, and if the lessee and the Superintendent shall agree upon the amount of the location fee, the lessee

ıerein by drill-
shall be filed
vithin 30 days
gnment by the
ces where the
be executed
h event, how-
e filed within
where neces-
may grant 15

s made by oil
ich contracts
ion of drilling
ises a subse-
terest in such
the approval
perintendent
approve such
ipulation that
any way bind
e formal as-
after be sub-
roval merely
tractor to en-
lease for the
rk.

*of operation.*
rmitted upon
ease covering
approved by
h operations
im.

*ees.* * * *

wner is a re-
minor, well
the Superin-
ncy for such
ace owners.
shall be paid
t, and where
not residents
a representa-
yments shall
eck, postage
dress of said
s before com-
on any well:
lessee be un-
the surface
of tendering
r of the sur-
tendered the
hall refuse to
may tender
perintendent
if the lessee
ll agree upon
ee, the lessee

shall deposit such amount with the Superintendent for payment to the owner of the surface of the land upon demand, and the Superintendent shall thereupon advise the owner of the surface of the land by mail at his last known address, that the location fee is being held for payment to him upon his request.

[Paragraph (b) amended, 20 F. R. 10097, Dec. 30, 1955]

POWERS AND DUTIES OF INSPECTORS

§ 180.59 *Duties of inspectors.* It shall be the duty of the inspector—

(a) To visit from time to time leased lands where oil and gas mining operations are being conducted, and to inspect and supervise such operations with a view to preventing waste of oil and gas, damage to oil, gas, or water bearing formations, or injury to property or life, in accordance with the provisions of the regulations in this part.

(b) To make reports to the Superintendent as to the general conditions of the leases, property, and the manner in which operations are being conducted and his orders complied with.

(c) To consult and advise with the Superintendent as to the conditions of the leased lands, and to submit information and recommendations from time to time for safeguarding and protecting the property of the lessor and securing compliance with the provisions of the regulations in this part.

(d) To give such orders or notices as may be necessary to secure compliance with the regulations and to issue all necessary instructions or orders to lessees to stop or modify such methods or practices as he may consider contrary to the provisions of such regulations.

(e) To modify or prohibit the use or continuance of any operation or method which, in his opinion, is causing or is likely to cause any surface or underground waste of oil or gas, or injury to any oil, gas, water, coal, or other mineral formation, or which is dangerous to life or property, or in violation of the provisions of the regulations in this part.

(f) To prescribe, subject to the approval of the Superintendent, the manner and form in which all records or reports called for by the regulations in this part shall be made by the lessee.

(g) To prohibit the drilling of any well into any producing sand when in his opinion and with the approval of the Superintendent the marketing facilities are inadequate, or insufficient provision has been made for controlling the flow of oil or gas reasonably to be expected therefrom until such time as suitable provision can be made.

(h) To prescribe or approve the methods of drilling wells through coal measures or other mineral deposits.

(i) To determine when and under what conditions a producing well may be drilled deeper, and under what conditions a producing well, or sand, may be abandoned.

(j) To require that tests shall be made to detect waste of oil or gas or the presence of water in a well and to prescribe or approve the methods of conducting such tests.

(k) To require that any condition existing subsequent to the completion of a well which is causing, or is likely to cause, damage to an oil, gas, or water bearing formation, or to coal measures or other mineral deposits, or which is dangerous to life or property, be corrected as he may prescribe or approve.

(l) To approve the type or size of separators used to separate the oil, gas, or water coming from a well.

REQUIREMENTS OF LESSEES

§ 180.64 *Plats showing location of wells.* Lessee shall furnish as required, a plat, in manner and form as prescribed by the Superintendent, showing all wells, active or abandoned, on the leased lands, and other related information. Blank plats will be furnished upon application.

§ 180.67 *Notice prior to removal of casing.* Lessee shall obtain permission from the Superintendent before removing any casing from any well.

§ 180.84 *Plugging to be approved by inspector.* (a) The manner in which mud-laden fluid, cement or plugs shall be introduced into any well being plugged and the type of plugs so used shall be subject to the approval of the inspector, and the lessee shall within 10 days file with the Superintendent a complete report of the plugging of such well.

(b) In the event the lessee or operator shall fail to plug properly any dry or abandoned well in accordance with the regulations in this part the Superintendent may, after 5 days' notice to the parties in interest, plug such well at the expense of the lessee or his surety.

§ 180.88 *Division orders.* (a) The Superintendent may make arrangements with the purchasers of oil for the payment of the royalty, but such arrangements, if made, shall not relieve the lessee from responsibility for the payment of the royalty, should such purchaser fail, neglect, or refuse to pay the royalty when it becomes due. No oil shall be run to any purchaser or delivered to the pipe line or other carrier for shipment, or otherwise conveyed or removed from the leased premises, until a division order is executed, filed, and approved, by the Superintendent, showing that the lessee has a regularly approved leased in effect, and the conditions under which the oil may be run: *Provided*, That the Superintendent may grant temporary permission to run oil from a lease pending the execution, filing, and approval by him of a division order. Lessees shall be required to pay for all oil or gas used off the leased premises for operating purposes; affidavit shall be made as to the production used for such purposes and royalty paid in the usual manner. The lessee or his representative shall be present when oil is taken from the leased premises under any division order and will be responsible for the correct measurement thereof and shall report all oil so run.

[Paragraph (a) amended, 18 F. R. 7057, Nov. 10, 1953]

* * * * *

§ 180.89 *Use of timber from leased lands.* Lessee will not be permitted to use any timber from Osage lands except under written agreement with the owner.

PENALTIES FOR VIOLATION OF REGULATIONS [REVISED]

§ 180.91 *Amount of penalties.* Fines may be imposed by the Superintendent without right of appeal for violations of certain sections of the regulations in this part, as follows:

Fines for noncompliance with terms of lease or regulations.

(a) For failure to file preliminary report required by § 180.62, $5 a day for the first violation and $10 a day for each violation thereafter.

(b) For failure to file a completion report, as required by §180.63, $5 a day for the first violation and $10 a day for each violation thereafter.

(c) For failure to mark rigs or wells, as required by § 180.65, $50 for each well.

(d) For failure to construct slush pits, as required by § 180.68, $10 for each day after drilling is commenced on any well.

(e) For failure to comply with § 180.71, regarding gate valve and other approved controlling devices, $100.

(f) For failure to comply with § 180.77, in regard to using gas in place of steam to operate engines or pumps, $10 per day for the first violation and $20 a day for each violation thereafter.

(g) For failure to comply with § 180.78, which prohibits the burning of gas in flambeau lights, $50 per day.

(h) For failure to notify Superintendent and secure authority before redrilling, deepening, plugging or abandoning any well, $200, as required by §§ 180.80 and 180.90.

(i) For failure to construct sumpholes, or burning holes, to properly care for and dispose of B. S. and salt water as provided in § 180.85, $10 a day for the first violation, and in event of the failure properly to construct or repair sumpholes, or burning holes, within 5 days after notification by Superintendent or his authorized representative, $25 to $50 a day.

(j) For failure to file plugging reports as required by § 180.84 and for failure to file reports, and remit royalties required by § 180.45, $5 a day for the first violation and $10 a day for each violation thereafter.

All moneys received from fines collected under this section shall be deposited as provided in § 180.93.

FORMS

§ 180.93 *Forms.* (a) Leases, and other papers must be upon forms prescribed by the Secretary of the Interior, and the Superintendent will furnish prospective lessees with such forms for preparation of original leases without charge, but shall make a charge of 50 cents per set for forms used in preparing assignments.

Form A—Gas mining lease.
Form B—Oil mining lease.
Form D—Bond.
Form E—Authority of officers to execute papers.
Form F—Assignment.
Form G—Collective bond.
Form H—Assignment bond.

(b) All sums received from sale of forms and fines shall be placed in a special fund, and may be expended under the direction of the Commissioner

truct slush pits.
10 for each day
ed on any well.
ly with § 180.71.
other approved

y with § 180.77.
place of steam
ps. $10 per day
l $20 a day for

omply with
the burning of
) per day.
r Superintend-
before redrill-
or abandoning
d by §§ 180.80

struct sump-
properly care
nd salt water
a day for the
of the failure
repair sump-
within 5 days
rintendent or
ve, $25 to $50

gging reports
for failure to
lties required
e first viola-
ach violation

m fines col-
shall be de-
).93.

eases, and
forms pre-
the Interior,
will furnish
h forms for
ses without
charge of 50
in preparing

rs to execute

om sale of
placed in a
pended un-
ommissioner

of Indian Affairs for the expenses necessary to carry out the regulations in this part.

HEARINGS AND APPEALS [ADDED]

§ 180 95 *Hearings and appeals.* (a) Any person, firm or corporation aggrieved by any decision or order issued by or under authority of the Superintendent pursuant to the regulations in this part, may file with the Superintendent at anytime an application for modification or revocation of such decision or order. The Superintendent shall give notice of the time and place and conduct a hearing upon the application within ten days after its receipt by him. If the applicant is not satisfied with the decision of the Superintendent, an appeal may be taken as hereinafter set forth except as provided in paragraph (b) of this section.

(b) An appeal to the Commissioner of Indian Affairs may be taken from any decision or order issued by or under authority of the Superintendent except decisions or orders issued under authority of §§ 180.54, 180.59, and 180.91, by filing such appeal with the Superintendent within 30 days after service of the decision or order. The appeal shall incorporate or be accompanied by such written showing and argument on the facts and law as the appellant may deem adequate to justify reversal or modification of the order. All statements of facts must be made under oath. The Superintendent shall transmit the appeal and accompanying papers with a full report and recommendations, through official channels, to the Commissioner of Indian Affairs.

(c) An appeal from any decision of the Commissioner of Indian Affairs may be taken to the Secretary of the Interior within 30 days after service of the Commissioner's decision. The appeal shall be accompanied by such written showing and argument on the facts and law as appellant may deem adequate to justify reversal or modification of the decision. Any statement of facts not submitted to the Commissioner must be made under oath.

(d) Compliance with any decision or order issued by or under authority of the Superintendent shall not be suspended by reason of an appeal having been taken unless such suspension is authorized in writing by the Commissioner of Indian Affairs, and then only on a determination that such suspension will not be detrimental to the lessor or upon submission and acceptance of a bond deemed adequate to indemnify the lessor from loss or damage.

(Sec. 3, 34 Stat. 543. Interprets or applies secs. 1, 2, 45 Stat. 1478, 1479)

## Part 183—Leasing of Restricted Lands of Members of Five Civilized Tribes, Oklahoma, for Mining


Sec.
183.1 Definitions. [Revised]

RENTS AND ROYALTIES

183.18 Manner of payment of rents and royalties. [Revised]
183.19 Crediting advance annual payments. [Revised]
183.20 Disposition of income from leases. [Revoked]
183.23 Royalty rates for minerals other than oil and gas. [Revised]
183.29 Division orders. [Amended]


§ 183.1 *Definitions.* The term "Area Director" in this part refers to the officer in charge of the Five Civilized Tribes Indian Agency. Whenever the term "superintendent" is used in this part, the term "Area Director" shall be substituted therefor.

The term "supervisor" in this part refers to a representative of the Secretary of the Interior under direction of the Director of the United States Geological Survey, authorized and empowered to supervise and direct operations under oil and gas or other mining leases, to furnish scientific and technical information and advice, to ascertain and record the amount and value of production, and to determine and record rentals and royalties due and paid.

[16 F. R. 9192, Sept. 11, 1951]

RENTS AND ROYALTIES

§ 183.18 *Manner of payment of rents and royalties.* (a) Except as provided in paragraph (b) of this section, all rents, royalties and other payments due under leases which have been or may be approved in accordance with this part shall be paid by check or bank draft to the order of the Treasurer of the United States and mailed to the Area Director for deposit to the credit of the various lessors. When lessees and purchasers are instructed, in writing, by the Area Director, which instructions shall be complete as to lessors for each lease, separate remittances for each payment due