THE NATIONAL ARCHIVES OF THE UNITED STATES 1934

# FEDERAL REGISTER

VOLUME 21 NUMBER 92

Washington, Friday, May 11, 1956

## TITLE 3—THE PRESIDENT

### EXECUTIVE ORDER 10667

AMENDMENT OF EXECUTIVE ORDER NO. 10629,[1] AUTHORIZING ENLISTMENTS IN THE READY RESERVE OF THE ARMY RESERVE AND MARINE CORPS RESERVE, TO AUTHORIZE ENLISTMENTS IN THE NAVAL AND COAST GUARD RESERVES

By virtue of the authority vested in me by subsection (a) of section 262 of the Armed Forces Reserve Act of 1952, as added by section 2 (i) of the Reserve Forces Act of 1955 (69 Stat. 600), it is ordered that Executive Order No. 10629 of August 13, 1955, authorizing enlistments in the Ready Reserve of the Army Reserve and Marine Corps Reserve, be, and it is hereby, amended to read as follows:

"WHEREAS I have determined that the enlisted strength of the Ready Reserve of the Army Reserve, Marine Corps Reserve, Naval Reserve, and Coast Guard Reserve cannot be maintained at the level necessary for the national defense:

"NOW, THEREFORE, by virtue of the authority vested in me by subsection (a) of section 262 of the Armed Forces Reserve Act of 1952, as added by section 2 (i) of the Reserve Forces Act of 1955 (69 Stat. 600), I hereby authorize the acceptance of enlistments in units of the Ready Reserve of the Army Reserve, Marine Corps Reserve, Naval Reserve, and Coast Guard Reserve pursuant to the provisions of the said section 262 of the Armed Forces Reserve Act of 1952, as added as heretofore indicated, under such regulations as the Secretary of Defense shall prescribe."

DWIGHT D. EISENHOWER

THE WHITE HOUSE,
*May 9, 1956.*

[F. R. Doc. 56-3789; Filed, May 10, 1956; 9:30 a. m.]

[1] 20 F. R. 5911; 3 CFR, 1955 Supp., p. 81.

## TITLE 5—ADMINISTRATIVE PERSONNEL

### Chapter I—Civil Service Commission

PART 4—PROHIBITED PRACTICES

POLITICAL ACTIVITY

Part 4 is redesignated as "Prohibited Practices." Sections 4.101 through 4.108 are designated Subpart A, "Prohibition Against Political Activity." Subpart B is added as set out below.

SUBPART B—PROHIBITION AGAINST HOLDING STATE OR LOCAL OFFICE

Sec.
4.201 Prohibition against holding State or local office.
4.202 State and local positions which may be held by Federal officers and employees.
4.203 Federal positions the incumbents of which are permitted to hold State and local offices.
4.204 Exception of residents of certain municipalities.

AUTHORITY: §§ 4.201 to 4.204 issued under R. S. 1753; sec. 2, 22 Stat. 403, as amended; 5 U. S. C. 631, 633, E. O. 10530, 19 F. R. 2709, 3 CFR, 1954 Supp. Statutory provisions interpreted or applied are cited to text.

§ 4.201 *Prohibition against holding State or local office.* No person may accept or hold any office under a State or local government, including departments and agencies and political subdivisions of such governments at the same time that he holds any office in the executive branch of the Federal government by appointment, unless he is excepted by § 4.202, § 4.203, or § 4.204 and service in the State or local office will not interfere with the regular and efficient discharge of his Federal duties, of which the employing agency is the sole judge, and he obtains the approval of his employing agency in advance. Nothing in this subpart shall be construed as permitting a Federal employee to engage in any partisan political activity prohibited by section 9 of the Hatch Political Activities Act and Civil Service Rule IV.

§ 4.202 *State and local positions which may be held by Federal officers and employees.* Federal employees may hold

(Continued on next page)

CONTENTS

THE PRESIDENT

Executive Order — Page
Amendment of Executive Order No. 10629, authorizing enlistments in the Ready Reserve of the Army Reserve and Marine Corps Reserve, to authorize enlistment in the Naval and Coast Guard Reserves — 3141

EXECUTIVE AGENCIES

Alien Property Office
Notices:
Barrany Es Bartok; vesting order — 3153

Atomic Energy Commission
Notices:
Massachusetts Institute of Technology; issuance of construction permit — 3150

Civil Aeronautics Board
Notices:
Davis, Arthur Vining, and Cutler Corp.; hearing on acquisition of control — 3151
Reeve Alaska Airmotive and Reeve Aleutian Airways, Inc.; postponement of prehearing conference — 3151

Civil Service Commission
Rules and regulations:
Formal education requirements for appointment to certain scientific, technical, and professional positions; metallurgist — 3144
Prohibited practices; political activity — 3141

Commerce Department
See Federal Maritime Board.

Customs Bureau
Rules and regulations:
Customs districts and ports; agency districts — 3147

Federal Communications Commission
Notices:
Hearings, etc.:
Golden, B. L. — 3151
News on the Air, Inc — 3151



HeinOnline -- 21 Fed. Reg. 3141 1956

necessary and appropriate to carry out the provisions of the Natural Gas Act.

The Commission, acting pursuant to authority granted by sections 10 and 16 of the Natural Gas Act (52 Stat. 826, 830; 15 U. S. C. 717i, 717o) orders:

(A) Part 260 of the Commission's regulations entitled "Statements and Reports (Schedules)" of Subchapter G, Approved Forms, Natural Gas Act (18 CFR Part 260) is amended by adding a new § 260.5 to read as follows:

§ 260.5 *Form No. 301, Statement of sales and revenues of independent producers.* (a) FPC Form No. 301, Independent Producers Report of Natural-Gas Transactions for the Year Ending December 31, 1955,[1] being a statement of sales of natural gas made during the calendar year 1955 under rate schedules filed with the Commission pursuant to §§ 154.92 and 154.94 of this chapter.

(b) Each independent producer as defined in § 154.91 of this chapter who had a rate schedule on file with the Commission on December 31, 1955 shall file with the Commission on or before June 30, 1956 two copies of such FPC Form No. 301.[2]

(B) The amendment to Part 260 herein prescribed be and it is hereby made effective upon the issuance of this order.

(Sec. 16, 52 Stat. 830; 15 U. S. C. 717o)

Issued: May 11, 1956.

By the Commission.[3]

[SEAL] LEON M. FUQUAY, *Secretary.*

[F. R. Doc. 56-3748; Filed, May 10, 1956; 8:46 a. m.]

# TITLE 19—CUSTOMS DUTIES

## Chapter I—Bureau of Customs, Department of the Treasury

[T. D. 54084]

### PART 1—CUSTOMS DISTRICTS AND PORTS

CUSTOMS AGENCY DISTRICTS

Section 1.5, Customs Regulations, is amended as follows:

The area shown for Customs Agency District No. 9 is amended by inserting after "47 (Colorado" a comma and the words "except the State of Wyoming".

The headquarters shown for Customs Agency District No. 10 is amended to read "Laredo, Texas".

The area shown for Customs Agency District No. 10 is amended by inserting a period in lieu of the comma after "24 (El Paso)" and deleting "26 (Arizona)."

The headquarters shown for Customs Agency District No. 14 is amended to read "Los Angeles, California".

The area shown for Customs Agency District No. 14 is amended by deleting the period at the end thereof and adding ", 26 (Arizona)."

[1] Filed as part of the original document.

[2] The form prescribed by this order will be sent directly by the Federal Power Commission to the parties affected thereby.

[3] Acting Chairman Digby stated that he dissents for the reason that it would impose an unnecessary hardship upon the independent producers.

The area shown for Customs Agency District No. 15 is amended by inserting a comma in lieu of the period after "33 (Montana and Idaho)" and adding "47 (Colorado, that part comprising the State of Wyoming)."

The foregoing amendments shall be effective on and after July 1, 1956.

(R. S. 161; sec. 624, 46 Stat. 759; 5 U. S. C. 22, 19 U. S. C. 1624)

[SEAL] RALPH KELLY, *Commissioner of Customs.*

Approved: May 4, 1956.

DAVID W. KENDALL, *Acting Secretary of the Treasury.*

[F. R. Doc. 56-3749; Filed, May 10, 1956; 8:46 a. m.]

# TITLE 25—INDIANS

## Chapter I—Bureau of Indian Affairs, Department of the Interior

Subchapter R—Leases and Sale of Minerals, Restricted Indian Lands

MISCELLANEOUS AMENDMENTS TO SUBCHAPTER

The following amendments to Chapter I of Title 25 of the Code of Federal Regulations are hereby prescribed:

### PART 180—LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING

Section 180.20 is amended to read as follows:

§ 180.20 *Bonds.* (a) Lessees shall furnish with each oil lease and each gas lease, to be filed at the time the lease is presented, a bond upon Form D, with a surety company duly authorized to execute bonds. Such bonds shall be in the sum of $1,000 for each quarter-section or fractional quarter-section unit covered by the lease: *Provided, however,* That the lessee may file one bond, Form G, covering all leases to which he or they are or may become parties instead of a separate bond in each case, such bond to be in the penal sum of $15,000.

(b) In lieu of the bonds required under paragraph (a) of this section, a lessee may furnish a bond (Form 5-156) in the sum of $75,000 for full nation-wide coverage with an acceptable company authorized to act as sole surety to cover all oil and gas leases without geographic or acreage limitation to which the lessee is or may become a party.

(c) The right is specifically reserved to increase the amount of bonds prescribed in paragraph (a) of this section in any particular case when the Superintendent deems it proper to do so. The nationwide bond may be increased at any time in the discretion of the Secretary of the Interior.

(d) Form H should be used in the preparation of a bond covering a lease acquired through assignment where the assignee does not have a collective bond, or the surety does not execute its consent to remain bound under the original bond given to secure the faithful performance of the terms and conditions of the lease.

(Sec. 3, 34 Stat. 543)

### PART 183—LEASING OF RESTRICTED LANDS OF MEMBERS OF FIVE CIVILIZED TRIBES, OKLAHOMA, FOR MINING

Section 183.15 is amended to read as follows:

§ 183.15 *Bonds.* (a) Lessee shall furnish with each mining lease a bond (Form 5-154b), and an assignee of a lease shall furnish with each assignment a bond (Form 5-154m), with an acceptable company authorized to act as sole surety, or with two or more personal sureties and a deposit as collateral security of any public-debt obligations of the United States guaranteed as to principal and interest by the United States, equal to the full amount of such bonds, or other collateral satisfactory to the Secretary of the Interior, or show ownership of unencumbered real estate of the value equal to twice the amount of the bonds. Lessee may file a bond on Form 5-154a without sureties and a deposit as collateral security of Government bonds equal in value to the full amount of the bond. Lease bonds except as provided in paragraph (c) of this section shall be in the following amounts:

| | |
|---|---|
| For less than 80 acres | $1,000 |
| For 80 acres and less than 120 acres | 1,500 |
| For 120 acres and not more than 160 acres | 2,000 |
| For each additional 40 acres, or part thereof above 160 acres | 500 |

*Provided,* That a lessee may file a bond (Form 5-154f), in the sum of $15,000 for all leases of minerals up to 10,240 acres under the jurisdiction of the officer in charge of the Five Civilized Tribes Agency.

(b) In lieu of the bonds required under paragraph (a) of this section, a lessee may furnish a bond (Form 5-156) in the sum of $75,000 for full nation-wide coverage with an acceptable company authorized to act as sole surety to cover all oil and gas leases and oil and gas prospecting permits without geographic or acreage limitation to which the lessee or permittee is or may become a party.

(c) The right is specifically reserved to increase the amount of bonds and the collateral security prescribed in paragraph (a) of this section in any particular case when the officer in charge deems it proper to do so. The nation-wide bond may be increased at any time in the discretion of the Secretary of the Interior.

(Sec. 2, 35 Stat. 312, sec. 18, 41 Stat. 426, sec. 1, 45 Stat. 495, sec. 1, 47 Stat. 777; 25 U. S. C. 356)

### PART 186—LEASING OF TRIBAL LAND FOR MINING

Section 186.6 is amended to read as follows:

§ 186.6 *Bonds.* (a) Lessee shall furnish with each lease a bond (Form 5-154b), and an assignee of a lease shall furnish with each assignment a bond (Form 5-154m), with an acceptable company authorized to act as sole surety, or with two or more personal sureties and a deposit as collateral security of any public-debt obligations of the United States guaranteed as to principal and interest by the United States, equal to the

recd 5/3/57

392 p. 1.25

# CUMULATIVE POCKET SUPPLEMENT

# TO THE . . . CODE OF FEDERAL REGULATIONS

## Title 25—Indians

AS OF JANUARY 1 1957

For changes on and after
January 1, 1957, see the daily issues of the Federal Register

# SUBCHAPTER R—LEASES AND SALE OF MINERALS, RESTRICTED INDIAN LANDS

## Part 180—Leasing of Osage Reservation Lands for Oil and Gas Mining

Sec.
180.1 Definition.

OIL MINING LEASES

180.2 Royalty payments.
180.3 Government reserves right to purchase oil.
180.4 Drilling obligations.
180.5 Use of surface lands; settlement of damages to lands and crops.
180.6 Prohibition of waste; intoxicating liquors not permitted; books and accounts.
180.7 Improvements on the land.
180.8 Lands may be leased separately for gas.
180.9 Gas wells to be turned over to gas lessee.
180.10 Oil wells to be turned over to oil lessee.
180.11 Wells producing both oil and gas.
180.12 Drilling through gas sand.
180.13 Deepening wells.
180.14 Casing-head gas.
180.15 Gas for operating purposes.
180.16 Surrender of lease.
180.17 Form of payment.
180.18 Leases subject to current regulations.
180.19 Penalty for violation of lease terms.
180.20 Bonds.
180.21 Provisions of forms made a part of regulations.

GAS MINING LEASES

180.22 Certain provisions of oil mining lease identical with gas mining lease.
180.23 Contracts for the sale of gas for industrial purposes.

UTILIZATION OF CASING-HEAD GAS WHEN USED FOR THE MANUFACTURE OF GASOLINE

180.24 Royalty on casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from gas, drip gasoline, or other natural condensate.
180.25 Casing-head gas contracts and division orders.
180.26 Effective date of casing-head gas contracts.
180.27 Casing-head gas contracts subject to regulations of Interior Department.
180.28 Royalty on casing-head gasoline manufactured from casing-head gas by oil lessees.
180.29 Determining gasoline content of casing-head gas for royalty purposes.
180.30 Measurement of gas.
180.31 Reports of sales of casing-head gas.

Sec.
180.32 Oil lessee may be allowed to manufacture casing-head gasoline from casing-head gas.
180.33 Lessees not relieved by division orders from paying royalties if purchaser fails to pay.
180.34 Residue gas to be delivered to gas lessee.
180.35 Casing-head gas sold to plants outside of Osage County.
180.36 Burners for oil or gas used for operating purposes.
180.37 Measurement of gas used by oil or gas lessees.

ACREAGE

180.38 Limitation.

HOW TO ACQUIRE LEASES OF TRIBAL LANDS

180.39 Sales of oil leases and gas leases; leases to be sold at public auction.
180.40 Corporations and corporate showing.
180.41 How to acquire permission to begin operations on homestead allotments.
180.42 Rental period after consent of Superintendent to begin operations on homesteads.
180.43 Lessees' process agents.
180.44 Lessees subject to superintendent's orders; books and records open to inspection.
180.45 Reports and time of royalty payments.

ASSIGNMENTS

180.46 Approval of lease instrument.
180.47 Filing of assignments and drilling contracts.
180.48 Notices.

OPERATIONS

180.49 Commencement of operations.
180.50 Settlement of damages claimed by persons other than lessee or owner of lands.
180.51 Well location fees.
180.52 Information to be given surface owners before commencement of drilling.
180.53 Procedure for settlement of damage claimed.
180.54 Slush pits; fine for failure to provide.
180.55 Notice to lessees in damage cases.
180.56 Lessees or tenants may represent surface owners.
180.57 Lessee's use of water.
180.58 Settlement of damage claims to surface lands covered by Federal farm loan.

POWERS AND DUTIES OF INSPECTORS

180.59 Duties of inspectors.
180.60 Limit percentage of well flow.

Sec.
180.60a Unit operating area.
180.61 Judge whether orders complied with.

REQUIREMENTS OF LESSEES

180.62 Notice of location of proposed well.
180.63 Drilling records.
180.64 Plats showing location of wells.
180.65 Rigs to be marked.
180.66 Line drilling.
180.67 Notice prior to removal of casing.
180.68 Two slush pits required.
180.69 Water control.
180.70 Productive formations to be protected.
180.71 Control devices.
180.72 Waste of gas to be prevented.
180.73 Determining cost of well.
180.74 Oil and gas to be separated.
180.75 Use of gas for lifting oil.
180.76 Prevent wastage of oil and gas.
180.77 Approval of inspector for use of gas for operations.
180.78 Flambeau lights.
180.79 Most approved methods to be followed in drilling and producing operations.
180.80 Superintendent to be notified of intended operations.
180.81 Abandonment of wells.
180.82 Well plugging.
180.83 Variation in plugging methods in certain cases.
180.84 Plugging to be approved by inspector.
180.85 Disposal of B. S. and salt water.
180.86 Accidents to be reported.
180.87 Tankage for crude oil.
180.88 Division orders.
180.89 Use of timber from leased lands.
180.90 Gas wells drilled by oil lessees and vice versa.

PENALTIES FOR VIOLATION OF REGULATIONS

180.91 Amount of penalties.

EFFECTIVE DATE OF REGULATIONS

180.92 Regulations to be effective from date of approval.

FORMS

180.93 Forms.

APPROVAL FEE

180.94 Amount of fee.

HEARINGS AND APPEALS

180.95 Hearings and appeals.


AUTHORITY: §§ 180.1 to 180.95 issued under sec. 3, 34 Stat. 543. Interpret or apply secs. 1, 2, 45 Stat. 1478, 1479. Other statutory provisions interpreted or applied are cited to text in parentheses.

SOURCE: §§ 180.1 to 180.95 contained in regulations to govern the leasing of lands in the Osage Reservation, Oklahoma, for oil and gas mining purposes, July 12, 1932, except as otherwise noted.

**§ 180.1 *Definitions.*** The following words or terms when used in the lease and regulations in this part shall have the meaning shown in this section:

(a) *Superintendent.* The Superintendent of the Osage Agency, Pawhuska, Oklahoma, in charge of the Osage Agency and Reservation, or any other person who may be in charge of such agency and reservation, and it shall be his duty to enforce compliance with the regulations in this part.

(b) *Inspector.* Any person appointed as Inspector of oil and gas wells, or who may be designated by the Secretary of the Interior or the Commissioner of Indian Affairs to supervise oil or gas operations on Osage lands under the direction of the Superintendent.

(c) *Oil lessee.* Any person, firm, or corporation to whom an oil mining lease is made under the regulations in this part.

(d) *Gas lessee.* Any person, firm, or corporation to whom a gas lease is made under the regulations in this part.

[17 F. R. 2602, Mar. 26, 1952]

OIL MINING LEASES

**§ 180.2 *Royalty payments*—(a)** ***Royalty on oil produced by primary or gas injection methods.*** The lessee shall pay or cause to be paid to the Superintendent, for the lessor as a royalty, the sum of $16\frac{2}{3}$ percent of the gross proceeds from sales after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs, shall elect to take the royalty in oil; payment to be made at time of sale or removal of the oil, except where payments are made on division orders; and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal: *Provided,* That when the quantity of oil taken from all the producing wells on any quarter-section according to the public survey, or fractional quarter-section if the land covered by the lease does not include the full quarter-section, during any calendar month, is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 percent.

(b) ***Royalty on oil produced by the water flood process.*** When the estimated reserves of oil recoverable by primary and/or gas injection methods from

a specified sand or sands have been depleted or partially depleted, the lessee and the Tribal Council may agree upon a new royalty rate to be approved by the Superintendent, the sum to be not less than 12½ percent of the gross proceeds from sales of oil produced by the water flood process after deducting the oil used for fuel in operating the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs, shall elect to take the royalty in oil; payment to be made at time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal.

(c) *Royalty in kind.* Should the lessor, with the approval of the Commissioner of Indian Affairs, elect to take the royalty in oil, the lessee shall furnish free storage for the royalty oil for not exceeding 30 days.

[17 F.R. 2602, Mar. 26, 1952]

§ 180.3 *Government reserves right to purchase oil.* Any of the executive departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under any lease. The Commissioner of Indian Affairs may impose restrictions as to time or times for drilling of wells and as to the production from any well or wells when in his judgment or the judgment of his representative, such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in taking action, the Commissioner may take into consideration, among other things, Federal laws, State laws, or regulations by competent Federal or State authorities or lawful agreements among operators regulating either drilling or production, or both.

[17 F.R. 2602, Mar. 26, 1952]

§ 180.4 *Drilling obligations.* (a) Lessees shall drill at least one well to the Mississippi line, unless oil or gas is found in commercial quantities at a lesser depth, on the land embraced in their leases, within 12 months from date of approval of leases, or the leases may be held for the full 5-year fixed term without drilling, upon payment of rentals to the Superintendent for the lessor at the rate of $1 per acre per annum, or a proportionate part thereof for each 3 months' period a lease is held and a well is not drilled, such rental beginning twelve months from date of approval of lease: *Provided,* That the time within which a well shall be drilled or rental paid in lieu of drilling shall not begin to run on any restricted homestead selection until the consent of the Superintendent to drilling on such homestead shall have been given: *Provided,* That the Superintendent in his discretion may direct the drilling of any undrilled lease, if in his opinion the interests of the Osage Tribe warrant. Should the lessee elect to surrender his lease before the end of any such yearly period without drilling a well thereon, he shall pay the rental of $1 per acre for the fractional part of the year the land is held and a well is not drilled, and failure of the lessee to pay such rental within 25 days from the expiration of any yearly period during which such well is not drilled shall be cause for cancellation of the lease by the Superintendent, but such cancellation shall not release the lessee and his sureties from the obligation to pay such rental: *Provided, further,* That whenever the Commissioner of Indian Affairs shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on any lease.

(b) Prior to the expiration of a term of a lease, the Osage Tribal Council may, with the approval of the Superintendent, and a finding by him that such action is in the best interest of the Osage Tribe, grant an extension of the term of the lease for a period of not to exceed six months for the purpose of enabling the lessee to drill a well to the Mississippi lime unless oil or gas is found in paying quantities at a lesser depth.

[17 F.R. 2602, Mar. 26, 1952]

§ 180.5 *Use of surface lands; settlement of damages to lands and crops.* (a) Lessee shall have the right to use so much of the surface of the land as may be necessary for operations, including the right to lay and maintain pipe lines, telephone and telegraph lines, pull rods and other appliances necessary for the operation of the wells; also the right of ingress and egress and the right of way to any point of operations under condition of least injury and inconvenience to

lessor at the
im, or a pro-
for each 3
ld and a well
al beginning
f approval of
time within
led or rental
not begin to
estead selec-
the Superin-
h homestead
*ovided*, That
iscretion may
idrilled lease,
s of the Osage
lessee elect to
he end of any
drilling a well
ntal of $1 per
t of the year
is not drilled,
ay such rent-
expiration of
hich such well
for cancella-
perintendent,
l not release
from the ob-
al: *Provided*,
the Commis-
hall consider
nadequate to
n he may di-
ng operations

ion of a term
Council may,
perintendent,
such action is
Osage Tribe,
term of the
to exceed six
enabling the
he Mississippi
und in paying
l.

*lands; settle-
nd crops.* (a)
ht to use so
e land as may
ons, including
ain pipe lines,
ines, pull rods
essary for the
so the right of
e right of way
s under condi-
convenience to

the owner and occupant of the surface. Lessee may use water from streams and natural water courses for lease operations as set out in § 180.57. Before commencing operations for the drilling of any well the lessee shall pay to the surface owner the sum of $200 for each well located on cultivated land (tilled or cultivated within the immediately preceding three years, and including hay-meadow land), $150 for open pasture land, and $100 for such location on brush or wooded lands, and other lands not suitable for cultivation. Upon payment of such location site money, lessee shall be entitled to possession. Location sites shall be held to the minimum area essential for operations, and in no event shall exceed one and one-half acres in area. Lessee shall also pay tank site fees at the rate of $20 per tank of not exceeding 1,000 barrels capacity: *Provided, however*, That no tank site fee shall be paid for a tank temporarily set on a well location site for testing purposes during the completion of the well. Tank sites shall be held to the minimum area essential to efficient operations, and in no event shall exceed an area of 50 feet square per tank. The sum to be paid for an oil tank site of larger capacity and occupying a greater area shall be as agreed upon between the surface owner and the lessee, and on failure to agree, the same shall be fixed by arbitration.

(b) All claims for damages for use of the surface other than that included in the location and tank sites, all claims for damages to growing crops or improvements on the lands and all other claims for damages to the surface owners or their lessees arising from operations of the oil or gas lessees shall be settled by arbitration whenever the parties are unable to agree concerning the same. But nothing contained in this section shall be construed to deny to either party to the controversy the right to appeal to the courts in the event he is dissatisfied with the award to or against him.

(c) All agreements (or authenticated copies thereof) providing for the settlement of damages shall be filed in the Osage Agency, if the surface owner is a restricted Indian, and all such amounts which may be due and payable to any such Indian shall be paid to the superintendent and by him immediately remitted to the Indian entitled thereto. All sums due as royalty or damages shall be a lien on all equipment and unsold oil on leased premises.

[Regs. of July 12, 1932, as amended at 20 F. R. 10097, Dec. 30, 1955]

CROSS REFERENCES: For additional regulations pertaining to rights-of-way, see Part 256 of this chapter.

§ 180.6 *Prohibition of waste; intoxicating liquors not permitted; books and accounts.* The lessee shall carry on operations in a workmanlike manner, commit no waste and suffer none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control, nor allow any intoxicating liquors to be introduced, brought upon, sold, or given away for any purposes on such premises; also keep an accurate account of all operations, receipts, and disbursements, furnishing sworn reports of such when and as required by the regulations or by an authorized representative of the Secretary of the Interior.

§ 180.7 *Improvements on the land.* All buildings and permanent improvements, including casings of all producing wells drilled 3 years or more prior to the expiration of the lease, shall remain a part of said land and become the property of the surface owner at expiration of the lease, excepting tools, tanks, boiler houses, pipelines, pumping and drilling outfits, derricks, engines, machinery, and the casings of all dry or nonpaying wells. The casings of wells drilled less than 3 years prior to and producing oil on the expiration of the lease remain the property of the oil lessee: *Provided*, That such casings shall not be removed from the wells but shall be purchased from the lessee by the owner of the oil rights at such price as may be mutually agreed upon, and on failure to agree the price shall be fixed by arbitration.

§ 180.8 *Lands may be leased separately for gas.* The lessee shall accept a lease with the understanding that the lands covered thereby may be leased to some other party who shall have the exclusive right to all gas except as otherwise provided.

§ 180.9 *Gas wells to be turned over to gas lessee.* If the oil lessee shall drill a gas well he shall, without removing from the well any of the casing or other equipment, immediately shut the well in and notify the gas lessee and the superintendent. In the event the gas lessee does

not within 30 days after receiving notice elect to take over such well and reimburse the oil lessee the cost of drilling the same, including all damages paid, in addition to the cost in place of casing, tubing, and other equipment, the oil lessee shall immediately confine the gas to the original stratum, and the disposition of such well shall be subject to the approval of the superintendent.

§ 180.10 *Oil wells to be turned over to oil lessee.* If the gas lessee shall drill an oil well upon the leased lands, he shall immediately, without removing from the well any of the casing or other equipment, notify the oil lessee and the superintendent. In the event the oil lessee does not within 30 days after receipt of notice elect to take over such well he shall immediately so notify the gas lessee, and the disposition of such well shall be subject to the approval of the superintendent. Should the oil lessee elect to take over the well, he shall pay the gas lessee the cost of drilling the same, including all damages paid in addition to the cost in place of casing and other equipment.

§ 180.11 *Wells producing both oil and gas.* If the oil lessee shall drill a well which produces both oil and gas in commercial quantities from the same sand he shall immediately notify the gas lessee and together they shall arrange for the separation and utilization of the oil and gas, and the cost pertaining to said well.

§ 180.12 *Drilling through gas sand* Whenever oil and gas are found in separate sands, and the oil lessee desires to drill through the gas sand for the oil, he may do so provided the method of protecting the gas sand shall be approved by the inspector.

§ 180.13 *Deepening wells.* If at any time any oil or gas well becomes unprofitable and the oil or gas lessee desires to deepen the same, such action as may be mutually agreed upon may be taken not in conflict with the regulations. Upon failure to agree the disposition of such well shall be subject to the approval of the superintendent.

§ 180.14 *Casing-head gas.* All casing-head gas shall belong to the oil lessee and when used for the manufacture of gasoline shall be metered and be subject to a royalty of 16⅔ percent based on the market value of the gasoline contents, and all such gas not utilized by the oil lessee on his leased premises or for operating other adjoining leases within the Osage Reservation, shall belong to the gas lessee, subject to the prescribed royalty of 16⅔ percent.

§ 180.15 *Gas for operating purposes.* The gas lessee shall furnish the oil lessee sufficient gas for drilling and operating purposes at a rate to be agreed upon, or on failure to agree the rate shall be fixed by arbitration: *Provided*, That the oil lessee shall make necessary connections between the well and the meter whenever possible.

[17 F. R. 2602, Mar. 26, 1952]

§ 180.16 *Surrender of lease.* The oil lessee may at any time, by paying to the superintendent all amounts then due, including rentals in lieu of development, and the further sum of $1, surrender all or any quarter-section or fractional part of quarter-section where the lease does not cover the full quarter-section, and have the lease cancelled as to the lands surrendered and be relieved from all further obligations and liabilities thereunder as to the part surrendered: *Provided*, That if this lease has been recorded lessee shall execute a release and record the same in the proper office.

§ 180.17 *Form of payment.* All amounts due and payable under a lease shall be paid to the Superintendent by check or bank draft on a solvent bank.

[17 F. R. 2602, Mar. 26, 1952]

§ 180.18 *Leases subject to current regulations.* Leases shall be subject to current regulations prescribed by the Secretary of the Interior, relative to such leases, all of which are made a part of such leases: *Provided*, That no regulations made after the approval of any lease shall operate to affect the term of lease, rate of royalty, rental or acreage, unless agreed to by both parties.

§ 180.19 *Penalty for violation of lease terms.* Violation of any of the terms or conditions of any lease or of the regulations in this part shall subject the lease to cancellation by the Superintendent, or the lessee to a fine of not exceeding $500 per day for each and every day the terms of the lease or of the regulations are violated, or the orders of the Superintendent in reference thereto are not complied with, or to both such fine and cancellation in the discretion of the Superintendent: *Provided*, That prior to cancellation of a lease or the imposition

of a fine
the lesse
hearing
lease or
which I
Superint
[17 F. R. :

§ 180.2
furnish
lease, to
presente
surety c
cute bon
sum of $
fractiona
by the le
lessee m
ing all le
may becc
bond in e
penal su

(b) In
der para
see may
the sum
coverage
authorize
all oil an
or acreag
is or may

(c) Th
to increa
scribed in
in any pa
tendent c
nationwic
time in th
the Interi

(d) For
preparatic
acquired
assignee c
or the su
sent to re
bond give
formance
the lease.
[21 F. R. 31

§ 180.21
*part of r*
the lease,
papers, de
F. G. and
the regula
will be req
conditions

§ 180.22
*ing lease id*

for operating
hin the Osage
to the gas
cribed royalty

*ting purposes.*
n the oil lessee
and operating
greed upon, or
shall be fixed
That the oil
y connections
meter when-

*ease.* The oil
paying to the
s then due, in-
development,
surrender all
ractional part
he lease does
-section, and
s to the lands
l from all fur-
ities thereun-
red: *Provided,*
recorded les-
e and record
e.

*ment.* All
under a lease
rintendent by
solvent bank.

*to current*
be subject to
ribed by the
elative to such
ade a part of
at no regula-
proval of any
t the term of
al or acreage,
arties.

*lation of lease*
the terms or
of the regula-
ject the lease
perintendent,
not exceeding
every day the
e regulations
of the Super-
erto are not
such fine and
ion of the Su-
That prior to
the imposition

of a fine as provided for in this section, the lessee shall be entitled to notice and hearing with respect to the terms of the lease or of the regulations violated, which hearing shall be held by the Superintendent.

[17 F. R. 2602, Mar. 26, 1952]

§ 180.20 *Bonds.* (a) Lessees shall furnish with each oil lease and each gas lease, to be filed at the time the lease is presented, a bond upon Form D, with a surety company duly authorized to execute bonds. Such bonds shall be in the sum of $1,000 for each quarter-section or fractional quarter-section unit covered by the lease: *Provided, however,* That the lessee may file one bond, Form G covering all leases to which he or they are or may become parties instead of a separate bond in each case, such bond to be in the penal sum of $15,000.

(b) In lieu of the bonds required under paragraph (a) of this section; a lessee may furnish a bond (Form 5-156) in the sum of $75,000 for full nation-wide coverage with an acceptable company authorized to act as sole surety to cover all oil and gas leases without geographic or acreage limitation to which the lessee is or may become a party.

(c) The right is specifically reserved to increase the amount of bonds prescribed in paragraph (a) of this section in any particular case when the Superintendent deems it proper to do so. The nationwide bond may be increased at any time in the discretion of the Secretary of the Interior.

(d) Form H should be used in the preparation of a bond covering a lease acquired through assignment where the assignee does not have a collective bond, or the surety does not execute its consent to remain bound under the original bond given to secure the faithful performance of the terms and conditions of the lease.

[21 F. R. 3147, May 11, 1956]

§ 180.21 *Provisions of forms made a part of regulations.* The provisions of the lease, assignment, and supporting papers, designated as Forms A, B, D, E, F, G, and H are hereby made a part of the regulations in this part, and lessees will be required to adhere strictly to the conditions thereof.

GAS MINING LEASES

§ 180.22 *Certain provisions of oil mining lease identical with gas mining lease.* The terms of the several gas mining leases in effect, covering practically the entire acreage of the Osage Reservation, vary somewhat as to development requirements, but provisions relative to use of surface, payment of damages by reasons of well locations, etc., and duties of lessee are practicaly identical with that of oil lessee. The regulations in this part will govern operations under all gas leases in the Osage Reservation so far as applicable.

§ 180.23 *Contracts for the sale of gas for industrial purposes.* (a) All contracts for the sale of gas for industrial purposes and sworn statements showing the terms, conditions, and schedules of prices contained in contracts with domestic consumers shall be filed with the Superintendent, and shall be subject to the approval of the Commissioner of Indian Affairs whenever, in his opinion, the interests of the Osage Tribe or the public require such action.

(b) In the sale and disposition of gas, preference shall at all times be given to domestic consumers, unless provided otherwise in the lease, and all contracts for the industrial use of gas shall contain a clause to the effect that when it is shown to the satisfaction of the Commissioner that such gas is needed for domestic consumers within an area fixed by the Commissioner, such contract shall terminate upon the expiration of 30 days' notice from the Commissioner, and that the Commissioner shall have authority immediately to suspend the furnishing of gas to industrial consumers when he is of the opinion that such gas is needed for domestic consumers. All gas furnished to industrial and domestic consumers shall be metered and sold at meter rates: *Provided,* That gas furnished to an oil lessee may be sold as provided in the gas lessee's contract.

(c) All contracts with domestic consumers shall be subject to the inspection of the Superintendent.

[17 F. R. 2603, Mar. 26, 1952]

UTILIZATION OF CASING-HEAD GAS WHEN USED FOR THE MANUFACTURE OF GASOLINE

§ 180.24 *Royalty on casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from gas, drip gasoline, or other natural condensate.* (a) A royalty of 16⅔ percent ofthe gross proceeds of sales shall be paid on the value of one-third (or the lessee's portion if greater than

one-third) of all casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from the gas produced from the leasehold. The value of the remainder is an allowance for the cost of manufacture, and no royalty thereon is required. The royalty shall be computed on the sale price received by the manufacturers of such products, or such higher price the lessee may receive the same to be reported under oath and remitted to the Superintendent not later than the 25th of the succeeding month for all such products sold during the previous month. If the manufacturer of any product extracted from casing-head gas produced from an Osage leasehold should sell his product at an arbitrary price below that obtained by other manufacturers selling such product in the open market during a particular month, the Superintendent shall notify said manufacturer of such discrepancy and require settlement for royalty upon the average price obtained by manufacturers selling such product in the open market during the same period. The place of sale of liquid hydrocarbons extracted from gas shall be at the plant where manufactured or when loaded into tank cars at or near the plant. Should any manufacturer sell such product by delivery to pipelines at distant points he may be allowed the average loss by waste, evaporation or otherwise sustained by other manufacturers in the Osage, of such product from the plant to tank cars as shown by sworn statements which shall be furnished when required by the Superintendent.

(b) The royalty on all drip gasoline, or other natural condensate recovered from gas produced from the leased lands without resort to manufacturing process shall be 16⅔ percent of the gross proceeds from sales, except that such substance, if processed in a casing-head gasoline plant shall be treated for royalty purposes as though it were gasoline.

[17 F. R. 2603, Mar. 26, 1952]

§ 180.25 *Casing-head gas contracts and division orders.* Contracts and division orders shall be entered into between a lessee and any other person or corporation for the sale of casing-head gas, which shall provide for a minimum royalty interest for the lessor of 16⅔ percent of 33⅓ percent of the value of the gasoline extracted, unless it is sold on a higher basis, in which event it shall be computed on such basis.

§ 180.26 *Effective date of casing-head gas contracts.* Contracts for the sale of casing-head gas entered into between lessees and others shall be filed with the superintendent within 30 days after date of execution, and shall be effective only from date of approval by the superintendent.

§ 180.27 *Casing-head gas contracts subject to regulations of Interior Department.* All contracts for the sale of casing-head gas shall be made subject to the rules and regulations of the Department now existing or hereafter to be promulgated, and shall provide that § 180.24 in regard to the basis of determining the royalty, may be revised by the Secretary of the Interior upon notice to all parties concerned, and an opportunity being given them to be heard: *Provided,* That such revision shall not apply to contracts approved under the regulations in this part prior to any such revision or change which will in any way alter the terms of the contract, rate of royalty, method of computing royalty, or basis of such computation, without the written consent of the parties thereto filed with the superintendent. Contracts hereafter executed shall also provide that they may be cancelled by the superintendent for violation of the terms thereof or the regulations, after 30 days' notice to the parties concerned and an opportunity to be heard has been afforded them, subject to appeal to the Secretary of the Interior within 30 days from notice of decision of the superintendent.

§ 180.28 *Royalty on casing-head gasoline manufactured from casing-head gas by oil lessees.* When oil lessees manufacture casing-head gasoline from casing-head gas produced from their own leases, payment for the royalty interest of the lessor shall be at the rate of 16⅔ percent (or the royalty specified in the lease) to be computed on 33⅓ percent of the gasoline extracted as provided in § 180.24, and which shall be subject to change as provided in § 180.27.

§ 180.29 *Determining gasoline content of casing-head gas for royalty purposes.* The gasoline content of all casing-head gas per 1,000 cubic feet for royalty purposes shall be determined by dividing the total amount of gasoline extracted, marketed, or utilized during any month, after deducting all naphtha or other products used for blending purposes, by the amount of casing-head gas

used ir
In case
chases
one oil
termin
gasolin
any pa
physica
the pro
rating
all gas
leases,
royalty
cent of
tracted
or by t
when a
and ap

§ 180
of all
poses o
unavoi
and all
(prefer
unless
intende
proved
stalled
such pl
Superir
volume
ject to
shall be
pressur
inch,
pressur
and the
60° F.
be adju
standar
and ten
actually
thorized
ent.

[20 F. R.

§ 180.
head ga
made to
and own
gasoline
is sold,
head ga
(b) the
tracted
head ga
one oil l
the prod
purchase
the price
blended
sale, (d)

*of casing-head* for the sale of into between filed with the days after date effective only the superin-

*gas contracts Interior De-* for the sale of made subject ons of the De- r hereafter to l provide that basis of deter- revised by the upon notice to an opportunity ird: *Provided*, not apply to the regulations such revision y way alter the ite of royalty, lty, or basis of it the written reto filed with acts hereafter that they may rintendent for hereof or the notice to the n opportunity ded them, sub- cretary of the from notice of ident.

*sing-head gas- n casing-head* il lessees man- gasoline from ed from their the royalty in- be at the rate oyalty specified ed on 33⅓ per- racted as pro- ch shall be sub- d in § 180.27.

*gasoline con- or royalty pur-* tent of all cas- cubic feet for determined by nt of gasoline utilized during ng all naphtha r blending pur- casing-head gas

used in such plant, as shown by meters. In cases where one gasoline plant purchases casing-head gas from more than one oil lessee and it is impossible to determine from the plant operations the gasoline content of casing-head gas from any particular lease, they may use any physical field test desired to determine the productivity for the purpose of prorating the 33⅓ percent of the value of all gasoline extracted from the different leases, but in all cases the minimum royalty shall be 16⅔ percent of 33⅓ percent of the gross amount of gasoline extracted whether paid by the oil lessee or by the operator of the gasoline plant when a division order has been executed and approved by the superintendent.

§ 180.30 *Measurement of gas.* Gas of all kinds (except gas used for purposes of production on the leasehold or unavoidably lost) is subject to royalty, and all gas shall be measured by meter (preferably of the orifice-meter type) unless otherwise agreed to by the Superintendent. All gas meters must be approved by the Superintendent and installed at the expense of the lessee at such places as may be agreed to by the Superintendent. For computing the volume of all gas produced, sold, or subject to royalty, the standard of pressure shall be 10 ounces above an atmospheric pressure of 14.4 pounds to the square inch, regardless of the atmospheric pressure at the point of measurement, and the standard of temperature shall be 60° F. All measurements of gas shall be adjusted by computation to these standards, regardless of the pressure and temperature at which the gas was actually measured, unless otherwise authorized in writing by the Superintendent.

[20 F. R. 10097, Dec. 30, 1955]

§ 180.31 *Reports of sales of casing-head gas.* Sworn statements shall be made to the superintendent by lessees, and owners or persons in charge of the gasoline plants to whom casing-head gas is sold, showing: (a) volume of casing-head gas purchased from each lessee, (b) the total amount of gasoline extracted in any plant and where casing-head gas is purchased from more than one oil lessee method used to determine the productivity of the casing-head gas purchased from the different lessees, (c) the price at which the merchantable or blended gasoline is sold and dates of sale, (d) the amount paid to each lessee. The statements shall be made not later than the 25th day of each month and shall cover the preceding month, and at the same time payment shall be made of royalty interest to the superintendent by the oil lessee, or by the purchaser where division orders, have been executed and approved by the superintendent. The books of both lessee and purchaser shall be open to inspection on order of the superintendent so far as to test the accuracy of the sworn statements referred to above, and to determine whether the royalty interests are fully protected.

§ 180.32 *Oil lessees may be allowed to manufacture casing-head gasoline from casing-head gas.* Oil lessees shall secure the consent of the superintendent to manufacture gasoline from casing-head gas produced on their approved leases. The productivity of the casing-head gas shall be determined as prescribed in § 180.29, and sworn statements, as indicated in § 180.31, accompanied by remittance of the royalty interest shall be mailed to the superintendent not later than the 25th day of each month for casing-head gas utilized for the manufacture of casing-head gasoline during the preceding month, the computation to be made on the basis indicated in § 180.24.

§ 180.33 *Lessees not relieved by division orders from paying royalties if purchaser fails to pay.* When division orders or contracts are executed and approved for the payment of the royalty interest, same shall not relieve the lessees from responsibility for payment should the purchaser fail, neglect, or refuse to pay the royalty when it becomes due.

§ 180.34 *Residue gas to be delivered to gas lessee.* The residue or dry gas remaining after extracting the gasoline, not used for development purposes on the leases where it was produced or adjoining leases owned by the same lessee in Osage County, shall be delivered to the gas lessee as provided in § 180.72, and all contracts for the sale of casing-head gas shall contain a provision to such effect.

§ 180.35 *Casing-head gas sold to plants outside of Osage County.* Where any casing-head gas is sold to gasoline plants located outside of Osage County, tests shall be made under Government supervision to determine the gasoline content, and when deemed advisable

tests shall be made of all casing-head gas used in any such plant in order to determine whether the physical field test of gas from Osage County shows as large a gasoline content as is extracted in actual plant operations, and after such tests have been made the superintendent shall determine the productivity of the gas from Osage County.

§ 180.36 *Burners for oil or gas used for operating purposes.* Where nonroyalty oil or gas is used for operating purposes by lessee, the superintendent may require to be installed and used an efficient burner of a type to be approved by him.

§ 180.37 *Measurement of gas used by oil or gas lessees.* All gas utilized by oil or gas lessees shall be metered with the exception of casing-head gas coming from wells so located in the opinion of the oil and gas inspector that it would be impracticable to gather and utilize same for royalty purposes, and as provided in § 180.72. Gas not metered but utilized for lease operations shall be estimated as to quantity and report thereof made monthly on forms which will be furnished by the superintendent upon application, such report to be prepared so as to reach the superintendent's office not later than the 25th day of the succeeding month for which the report is made.

ACREAGE

§ 180.38 *Limitation.* There is no limitation to the number of acres any lessee may acquire, by lease or assignment, for oil mining purposes on the Osage Indian Reservation.

[Order 2423, 13 F. R. 2414, May 5, 1948]

HOW TO ACQUIRE LEASES OF TRIBAL LANDS

§ 180.39 *Sales of oil leases and gas leases; leases to be sold at public auction.* (a) Written application for tracts to be offered for lease may be filed with the Superintendent.

(b) The Superintendent, with the consent of the Osage Tribal Council, may at such times and in such manner as shall be deemed appropriate, publish and distribute notices that oil leases and/or gas leases on specific tracts of unleased tribal lands, each of which shall be in a compact body, will be offered at public auction to the highest responsible bidder: *Provided,* That not less than 25,000 acres of the unleased portion of the Osage mineral reserve shall be offered for lease during any one year. Successful bidders must deposit with the Superintendent on day of sale, a check, or bank draft on a solvent bank in the amount equal to 25 percent of the bonus as a guaranty of good faith. The Superintendent may require any bidder to submit satisfactory evidence of good faith, that he has the cash in hand or at his command, and to furnish whenever called upon by the Superintendent during the progress of the sale, authenticated statement of a solvent bank to the effect the bidder has the means to purchase the lease. The balance of the bonus, together with a $5.00 filing fee for each lease, shall be paid, and the lease in completed form with necessary accompanying papers shall be filed with the Superintendent within 20 days after the lease is forwarded, by the Superintendent, to the lessee for execution, unless such period has been extended by the Superintendent for good and sufficient reason. If the successful bidder fails to complete the lease or to pay the full consideration within 20 days or an authorized extension thereof, or if the lease is disapproved through no fault of the lessor or the Department of the Interior, the amount deposited as a guaranty of good faith shall be forfeited for the use and benefit of the lessor. Any and all bids shall be subject to acceptance by the Osage Tribal Council. The Superintendent may disapprove a lease made on an accepted bid, upon evidence satisfactory to him of collusion, fraud or other irregularity in connection with the sale of the lease.

(c) No lease, assignment thereof, or interest therein will be approved to any employee or employees of the Government, and no such employee shall be permitted to acquire any interest in leases covering Osage Tribal lands, by ownership of stock in corporations having leases or in any other manner.

[17 F. R. 2303, Mar. 26, 1952]

§ 180.40 *Corporations and corporate showing.* (a) Upon being notified of the acceptance of its bid, a corporation shall file a certified copy of articles of incorporation, and evidence showing compliance with local corporation laws if a foreign corporation: *Provided,* That if any such papers have already been filed a statement to that effect may be submitted.

shall be offered
ear. Success-
ith the Super-
check, or bank
n the amount
e bonus as a
The Superin-
bidder to sub-
of good faith,
and or at his
sh whenever
ntendent dur-
le, authenti-
nt bank to the
neans to pur-
lance of the
) filing fee for
and the lease
necessary ac-
be filed with
20 days after
the Superin-
or execution,
extended by
od and suffi-
essful bidder
or to pay the
0 days or an
of, or if the
h no fault of
nt of the In-
d as a guar-
forfeited for
lessor. Any
ct to accept-
Council. The
prove a lease
pon evidence
lusion, fraud
nnection with

t thereof, or
roved to any
the Govern-
yee shall be
interest in
al lands, by
rations hav-
anner.

*nd corporate*
otified of the
oration shall
les of incor-
wing compli-
n laws if a
*ded.* That if
dy been filed
may be sub-

(b) A corporation must also file with its first lease, and at such other times as the Superintendent may direct, a list in duplicate of all officers, directors, and of such stockholders, as may be required with their post-office addresses, and showing the number of shares of capital stock held by each and whether held for themselves or in trust, together with a sworn statement of its proper officer, showing:

(1) The total number of shares of the capital stock actually issued, the number of shares actually sold and specifically the amount of cash paid into the treasury on the stock sold, or, if paid in property, state kind, quantity, and value of same paid.

(2) Of the stock sold, how much per share remains unpaid and subject to assessment.

(3) How much cash the company has in its treasury and elsewhere, and from what sources it was received.

(4) What property, exclusive of cash, is owned by the company and its value.

(5) What the total indebtedness of the company is and specifically the nature of its obligations.

(c) Leases made by corporations shall be accompanied by an affidavit (Form E) showing the authority of its officers to execute leases, bonds and other papers.
[17 F. R. 2603, Mar. 26, 1952]

§ 180.41 *How to acquire permission to begin operations on homestead allotments.* (a) Lessees may conduct operations within or upon homestead selections with the written consent of the Superintendent and not otherwise.

(b) If the allottee is unwilling to permit operations on his homestead, the Superintendent will direct the Inspector to make an examination of the premises with the allottee and the lessee, or his representative, and should the Inspector be of the opinion that the interests of the Osage Tribe require that the particular tract be developed he will endeavor to have the parties agree upon the terms under which operations on the homestead may be conducted.

(c) In the event the allottee and the lessee cannot, with the assistance of the Inspector, agree on the matter, the allottee shall be permitted to go before the Osage Tribal Council, and the Council, after hearing the allottee, the lessee, and the Inspector, shall make such recommendation as it deems proper. Guardians, legal or natural, may represent their Indian wards, and where no one is authorized or where no person is deemed by the Superintendent to be a proper party to speak for a minor or person of unsound mind or of feeble understanding, the Principal Chief of the Osage Tribe shall represent him.

(d) Where the allottee does not appear before the Council, either in person or by representative, when notified by the Superintendent, or the Council fails to act in the matter within 10 days after being referred to it, the Superintendent may authorize the lessee to proceed with operations in conformity with the provisions of his lease and the regulations in this part. If the Council by appropriate resolution should recommend that a lessee be not permitted to conduct drilling operations on a homestead selection, the Superintendent shall submit the question to the Area Director.
[17 F. R. 2604, Mar. 26, 1952]

§ 180.42 *Rental period after consent of Superintendent to begin operations on homesteads.* Rental in lieu of development shall not begin to run on any homestead selection until one year after the consent of the Superintendent or Area Director to operations on such homestead shall have been given.
[17 F. R. 2604, Mar. 26, 1952]

§ 180.43 *Lessees' process agents.* (a) Each and every lessee and assignee shall, from the date of approval of lease or assignment, maintain an office at Pawhuska, Okla., with an agent upon whom service of process may be held in conformity with the laws of the State of Oklahoma, and who shall have authority to represent and speak for the lessee or assignee in controversies affecting any individual member of the Osage Tribe

(b) Where several parties own a lease jointly, only one representative or agent need be designated whose duties shall be to act for all parties concerned. Designation of such representative should be made by the party in charge of operations.

(c) In the event of the incapacity or absence from the county of such designated local or resident representative, the lessee shall appoint some person to serve in his stead, and in the absence of such representative or of notice of the appointment of a substitute any employee of the lessee upon the leased

Case 1:99-cv-00550-ECH Document 309-35 Filed 06/30/2008 Page 14 of 25



premises, or the contractor or other person in charge of drilling or related operations thereon, shall be considered the representative of the lessee for the purpose of service of orders or notices as herein provided, and service upon any such employee, contractor, or other person shall be deemed service upon the lease.

§ 180.44 *Lessees subject to superintendent's orders; books and records open to inspection.* Lessee shall comply with all orders on instructions issued by the superintendent or inspector within the time specified, and shall allow the lessor and his agents, or any authorized representative of the Secretary of the Interior, to enter, from time to time, upon and into all parts of the leased premises for the purpose of inspection; and shall further agree to keep a full and correct account of all operations, receipts, and disbursements and make reports thereof, as herein required, and their books and records, showing manner of operations and persons interested, shall be open at all times for the examination of any authorized representative of the superintendent or of the Secretary of the Interior.

§ 180.45 *Reports and time of royalty payments.* Royalties on all oil and gas, included casing-head gas or on gasoline manufactured therefrom, produced in any month, shall be paid on or before the 25th of the month next succeeding by either purchaser or lessee. Failure to so remit will subject the lessee to fines as hereinafter indicated and also subject division order to cancellation. Lessees shall also furnish monthly sworn reports covering all operations whether there has been production or not, indicating therein the total amount of oil, gas, or gasoline sold and not merely their working interest, and also the dates of discovery and beginning of utilization of gas from gas wells. The lessee may include in one sworn statement all leases upon which dry holes have been drilled or the wells have ceased to produce.

ASSIGNMENTS

§ 180.46 *Approval of lease instruments*—(a) *Oil and gas leases.* The Superintendent may approve the schedule of bids accepted by the Osage Tribal Council following a sale of oil leases and gas leases conducted in conformity with the provisions of § 180.39. The Superintendent may also approve oil leases and gas leases made by the Osage Tribal Council in conformity with the regulations in this part, bonds and other instruments required for leases or assignments thereof, and the acceptance of the voluntary surrender of leases.

(b) *Unitization of oil leases.* As a consideration for their further development by the water flood process, two or more oil leases may be unitized and merged in a single blanket lease with the approval of the Superintendent. The instrument of unitization (blanket lease) shall include all the requirements and provisions of sections numbered 1, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19 and 20 of Osage oil lease Form B: *Provided,* That the preamble of Form B and the provisions of section numbered 2 in respect to royalty rates; section numbered 3 in respect to payment of rental; section numbered 4 in respect to payment of well site and tank location fees; and section numbered 14 in respect to the surrender of the lease, may be modified and or supplemented by the parties, with the approval of the Superintendent, to the extent deemed appropriate for the equitable and efficient conduct of unitized operations, and not otherwise in conflict with the regulations in this part. Lessee(s) shall, before commencing water flood operations, and on or before December 31st of each year thereafter, submit to the Superintendent an acceptable plan of development and operation for the unit area for the ensuing year. Upon a finding by him that such action would be in the best interest of the Osage Tribe, the Superintendent may also approve an agreement between the lessor and the lessee(s) rescinding a unit (blanket lease) and restoring to their original status the Form B leases theretofore merged in the unit lease: *Provided,* That if oil is being produced in paying quantities on a particular quarter section tract on the date of approval of such agreement, the lessee shall be entitled to hold such tract under the terms of the original Form B lease so long as oil is produced on said tract in paying quantities.

(c) *Assignments.* Approved leases or any interest therein may be assigned with the approval of the Superintendent, and not otherwise. Assignments, when so approved, shall be subject to the terms and conditions of the original leases, and the regulations under which such leases were approved. The assignee

Osage Tribal
the regula-
and other
eases or as-
acceptance
of leases.

*eases.* As a
rther devel-
process, two
unitized and
ase with the
ndent. The
(blanket
equirements
s numbered
15, 16, 17, 18,
se Form B:
ple of Form
on numbered
tes; section
payment of
in respect to
ank location
14 in respect
ase, may be
ited by the
the Super-
med appro-
nd efficient
ons, and not
regulations
before com-
ons, and on
each year
Superinten-
levelopment
area for the
ing by him
in the best
the Super-
an agree-
nd the les-
anket lease
inal status
ore merged
That if oil
quantities
en tract on
agreement,
o hold such
he original
is produced
ntities.

ved leases
be assigned
rintendent,
nents, when
o the terms
inal leases,
which such
e assignee

shall furnish with his assignment a satisfactory bond as provided in § 180.20 (c). Any attempt to assign an approved lease or any interest therein without the consent and approval of the Superintendent shall be absolutely void and shall subject the original lease to cancellation in the discretion of the Superintendent. [17 F. R. 2604, Mar. 26, 1952, as amended at 20 F. R. 10097, Dec. 30, 1955]

§ 180.47 *Filing of assignments and drilling contracts.* (a) Assignments of any lease or any interest therein by drilling contract or otherwise shall be filed with the Superintendent within 30 days from the date of such assignment by the assignor, except in instances where the necessary papers cannot be executed within such time, in which event, however, formal notice shall be filed within the 30 days stipulated and where necessary the Superintendent may grant 15 days additional.

(b) In case of contracts made by oil lessees for drilling wells, which contracts provide that in consideration of drilling a well on the leased premises a subsequent assignment of an interest in such lease will be made subject to the approval of the Department, the Superintendent is hereby authorized to approve such drilling contracts with a stipulation that such approval does not in any way bind the Department to approve formal assignments that may thereafter be submitted and that such approval merely authorizes the drilling contractor to enter into possession of the lease for the purpose of development work.

[17 F. R. 2604, Mar. 26, 1952]

§ 180.48 *Notices.* Wherever notice is provided for in the regulations in this part, unless otherwise specifically stated, it shall be sufficient if notice has been mailed to the last known place of address of the party, and time shall begin to run from the day next ensuing after the mailing or from the date of delivery of personal notice; but where the party is outside the State of Oklahoma, the superintendent may, in his discretion, increase the time allowed.

OPERATIONS

§ 180.49 *Commencement of operations.* No operations shall be permitted upon any tract of land until a lease covering such tract shall have been approved by the Superintendent or such operations specifically authorized by him.

[17 F. R. 2604, Mar. 26, 1952]

§ 180.50 *Settlement of damages claimed by persons other than lessee or owner of lands.* Approved oil and gas leases provide in part:

During operations the lessee shall pay all damages for the use of the surface, other than that included in the location and tank site, all damages to any growing crops, or any improvements on the lands and all other damages as may be occasioned by reason of operations. Such damages shall be apportioned among the parties interested in the surface, whether as owner, lessee, or otherwise, as the parties may mutually agree or as their interests may appear. If the parties are unable to agree concerning damages, the same shall be determined by arbitration, but nothing herein contained shall be construed to deny to the surface owner or lessee the right to appeal to the courts without the consent of the Secretary of the Interior, in the event he is dissatisfied with the amount of damages awarded him.

Any person, other than a lessee or an allottee or the hers of a deceased allottee, claiming an interest in any leased tract, or in damages thereto, must furnish to the superintendent a statement in writing showing his interest, and failure to furnish such statement shall constitute a waiver of notice and estop said person from claiming any part of such damages after the same shall have been disbursed.

§ 180.51 *Well location fees.* (a) Before commencing operations on lands embraced in any approved oil or gas mining lease the mineral lessee shall pay, tender or deposit the proper well location fee as provided in the lease and the regulations in this part, after which such lessee shall be entitled to enter upon the lands covered by the lease for mining purposes. Before commencing operations on any subsequent well on such quarter-section the mining lessee shall pay, tender or deposit the proper location fee therefor.

(b) Where the surface owner is a restricted Indian, adult or minor, well location fee shall be paid to the Superintendent of the Osage Agency for such Indian. All other surface owners, whether Indians or whites, shall be paid or tendered such fees direct, and where such surface owners are not residents of Osage County nor have a representative located therein, such payments shall be made or tendered by check, postage prepaid, to last known address of said surface owner at least 5 days before commencing drilling operations on any well:

*Provided*, That should the lessee be unable to reach the owner of the surface of the land for the purpose of tendering the location fee, or if owner of the surface of the land upon being tendered the location fee by the lessee, shall refuse to accept the same, the lessee may tender the location fee to the Superintendent of the Osage Agency, and if the lessee and the Superintendent shall agree upon the amount of the location fee, the lessee shall deposit such amount with the Superintendent for payment to the owner of the surface of the land upon demand, and the Superintendent shall thereupon advise the owner of the surface of the land by mail at his last known address, that the location fee is being held for payment to him upon his request.

[Regs. of July 12, 1932, as amended at 20 F. R. 10097, Dec. 30, 1955]

§ 180.52 *Information to be given surface owners before commencement of drilling.* Prior to beginning operations of any kind or moving any rig material, pipe or other drilling equipment on lands embraced in any approved oil or gas lease, the mineral lessee shall meet with the surface owner of such tract if a resident of Osage County, Oklahoma, and at such meeting the mining lessee shall comply with the following requirements:

(a) Indicate the location of the first well to be drilled by him on said quarter-section.

(b) Indicate the location of any additional wells which he at the time may contemplate drilling.

(c) Impart to said surface owner the name and address of his foreman or superintendent upon whom the surface owner shall serve any claim for damages which he may sustain by reason of the development and operation of said lands by the mineral lessee, and in the event such foreman or superintendent shall leave the employ of the mineral lessee or be removed to another district then the mineral lessee shall notify the surface owner of the name and address of his successor, to the end that any claim for damages sustained by the surface owner may be promptly served upon the mineral lessee.

(d) Advise the surface owner that should he or his tenant or lessee sustain damages by reason of the development and operation of said land by the mining lessee and in the event the parties are unable to agree upon the mining lessee's liability therefor and upon the amount of damages resulting therefrom, the mining lessee shall submit the matter to arbitration as provided in the regulations in this part: *Provided*, That within 10 days from the date of such meeting the mining lessee shall file with the superintendent of the Osage Agency a written report of such meeting showing the date thereof and the name of the surface owner taking part therein. Failure to so notify the superintendent shall subject the mineral lessee to a fine of $5 per day for each day's delay within the discretion of the superintendent: *Provided further*, That where the surface owner is a restricted Indian the mineral lessee in the manner provided above shall meet with the superintendent of the Osage Agency. Where the surface owner is not a restricted Indian and not a resident of Osage County, Oklahoma, then the superintendent of Osage Agency shall be so advised whereupon the mineral lessee shall have the right to proceed with operations: *Provided, however*, That in the event the superintendent should so arrange with the surface owner or his tenant, the mineral lessee or his representative within 5 days after receipt of notice from the superintendent shall meet with the surface owner or his tenant on the leased premises and arrange for procedure as indicated in this paragraph.

§ 180.53 *Procedure for settlement of damages claimed.* Where the surface owner or his lessee suffers damages on account of the operations of any oil or gas lessee, procedure for recovery shall be as follows:

(a) The party or parties aggrieved shall within 10 days after the discovery of any such damages, or within such extended time as the superintendent of the Osage Indian Agency may grant, serve the oil or gas lessee, or the foreman or superintendent named by him under § 180.52, with written notice setting forth the nature of alleged damages, the date when the same were sustained, as nearly as possible, together with the names of the party or parties causing the same, if obtainable, and the amount of damages resulting therefrom. It is not intended by this requirement to limit the time within which action may be brought in the courts to less than the 90-day period allowed by section 2 of the act of March 2, 1929 (45 Stat. 1479), but it is intended to provide for an early examination of the property damaged by

all pa
best
due t
prope
oblite
passa
boarc
of fa
claim
(b)
ages
time
or his
from
cable
party
claim
shoul
settle
Osage
upon
ent sl
of the
said r
(c)
the c
then
the ii
arbitr
appoi
arbitr
arbitr
third
shall
intere
intere
trator
notice
vided
be con
with :
right
jurisd
(d)
appoin
hear t
parties
prover
have !
from t
the co
award
tereste
penses
borne
mining
the fee
appoin
pay th
tor app

n the amount
ıerefrom, the
the matter to
he regulations
hat within 10
h meeting the
th the super-
ency a written
wing the date
the surface
1. Failure to
nt shall sub-
fine of $5 per
ithin the dis-
ent: *Provided*
urface owner
nineral lessee
ve shall meet
of the Osage
owner is not
a resident of
then the su-
ıcy shall be so
ineral lessee
eed with op-
, That in the
should so ar-
er or his ten-
s representa-
eipt of notice
all meet with
enant on the
e for proce-
ragraph.

*settlement of*
the surface
damages on
of any oil or
ecovery shall

es aggrieved
he discovery
hin such ex-
ndent of the
grant, serve
foreman or
him under
otice setting
damages, the
sustained, as
er with the
rties causing
the amount
from. It is
ment to limit
tion may be
ess than the
section 2 of
Stat. 1479),
for an early
damaged by

all parties interested to the end that the best possible evidence, much of which due to the nature of the damages or the property damaged, will be gradually obliterated and completely lost with the passage of time, be preserved for the board of arbitration or the court in event of failure of the parties to settle the claim by arbitration.

(b) In cases where such alleged damages are not amicably adjusted at the time of such notice, the oil or gas lessee or his representative shall within 20 days from receipt of such notice seek an amicable adjustment of the claim with the party or parties aggrieved. If the claimant is a restricted Indian, and should a settlement result, a copy of such settlement agreement shall be filed in the Osage Agency and the damages agreed upon when approved by the superintendent shall be paid to the superintendent of the Osage Agency, for the benefit of said restricted Indian.

(c) Should the parties fail to adjust the claim within the 20 days specified, then within 10 days thereafter each of the interested parties shall appoint an arbitrator who immediately upon their appointment shall agree upon a third arbitrator; and in the event the two arbitrators shall fail to agree upon a third arbitrator within 10 days, they shall immediately notify the parties in interest of such fact that if said parties in interest cannot agree upon a third arbitrator within 5 days after receipt of such notice, the condition precedent as provided by the act of March 2, 1929, shall be considered as having been complied with and neither party shall have the right to resort to a court of competent jurisdiction.

(d) As soon as the third arbitrator is appointed the arbitrators shall meet, hear the evidence and arguments of the parties, examine the lands, crops, improvements, or other property alleged to have been injured, and within 10 days from the date of the final submission of the controversy they shall render their award. The arbitrators shall be disinterested persons and the fees and expenses of the third arbitrator shall be borne equally by the claimant and the mining lessee; the mining lessee to pay the fees and expenses of the arbitrator appointed by him and the claimant to pay the fee and expenses of the arbitrator appointed by him.

(e) When an act of an oil or gas lessee or any of his employees results in injury to both the surface owner and his lessee, the parties aggrieved shall join in the appointment of an arbitrator, and where the injury complained of is chargeable to one or more oil or gas lessees, such lessees shall join in the appointment of an arbitrator.

(f) Any two of the arbitrators may make an award, which shall be in writing, and forthwith shall be served upon the parties in interest. Each party shall have 90 days from the date of such service in which to file an action in a court of competent jurisdiction to enlarge, modify or set aside said award. If no such action is filed within said time, and if the award be against the oil or gas lessee, he shall pay the same together with interest at the rate of 6 percent per annum from date of award, within 10 days after the expiration of said period for appeal, and in case of his failure to do so, in the discretion of the superintendent, shall be subject to a penalty of $10 per day for each day thereafter that he remains in default.

§ 180.54 *Slush pits; fine for failure to provide.* On receipt of complaint from any surface owner or his lessee, the superintendent of Osage Agency after investigation and where action is deemed advisable, shall require any oil or gas lessee within 10 days from receipt of such notice, to enclose slush pits, earthen tanks or reservoirs for salt water or B. S. with a substantial four-wire fence and shall maintain same during the time such pits or reservoirs are in use, and this requirement shall apply to slush pits, earthen tanks or reservoirs now in use, as well as to those which may be constructed in the future provided this requirement shall not apply where the mineral lessee owns the surface of the land covered by his lease or has an agricultural or grazing lease covering the same. Failure to comply with the requirements of this section will subject the lessee to a fine of $5 for each day's delay.

§ 180.55 *Notice to lessees in damage cases.* Surface owners shall notify their lessees or tenants of the regulations in this part and of the procedure necessary in all cases of alleged damages.

§ 180.56 *Lessees or tenants may represent surface owners.* Where surface lessees or tenants represent the surface

owner they shall be so authorized in writing.

§ 180.57 *Lessee's use of water.* Oil and gas lessees may with the approval of the superintendent use water from streams and natural water courses to the extent that same does not diminish the supply below the requirements of the surface owner from whose land the water is taken. When such water supply is located off the lease upon which the water is to be used, the oil or gas lessee may lay necessary lines across intervening lands to obtain such water. Any damage resulting from laying such water lines shall be settled by arbitration as provided in § 180.53.

§ 180.58 *Settlement of damage claims to surface lands covered by Federal farm loan.* Hereafter in all cases where the owners of surface title to lands within the Osage Indian reservation in Oklahoma have obtained Federal farm loans from any lending agency under the supervision of the Farm Credit Administration and have agreed in writing that any and all damages accruing to them from mineral operations under the act of March 2, 1929 (45 Stat. 1478), or amendment thereof, shall be remitted to the mortgagee through the superintendent of the Osage Indian Agency, Pawhuska, Oklahoma, to be credited on the loan; the mineral lessee of any such lands shall make payment of all such damages, including well location fees, in accordance with said agreement. It shall be the duty of each mineral lessee, before making payment of any well location fee or other damage caused by mineral operations to ascertain the facts with respect to the existence or nonexistence of any such Federal farm loan and agreement. The remittances provided for in this section may be made in cash, or by certified check or other suitable form of exchange.

[May 5, 1934, Supp. to Regs. of July 12, 1932]

CROSS REFERENCE: For regulations of lending agencies under supervision of the Farm Credit Administration, see 6 CFR Chapter I.

## POWERS AND DUTIES OF INSPECTORS

§ 180.59 *Duties of inspectors.* It shall be the duty of the inspector—

(a) To visit from time to time leased lands where oil and gas mining operations are being conducted, and to inspect and supervise such operations with a view to preventing waste of oil and gas, damage to oil, gas, or water bearing formations, or injury to property or life, in accordance with the provisions of the regulations in this part.

(b) To make reports to the Superintendent as to the general conditions of the leases, property, and the manner in which operations are being conducted and his orders complied with.

(c) To consult and advise with the Superintendent as to the conditions of the leased lands, and to submit information and recommendations from time to time for safeguarding and protecting the property of the lessor and securing compliance with the provisions of the regulations in this part.

(d) To give such orders or notices as may be necessary to secure compliance with the regulations and to issue all necessary instructions or orders to lessees to stop or modify such methods or practices as he may consider contrary to the provisions of such regulations.

(e) To modify or prohibit the use or continuance of any operation or method which, in his opinion, is causing or is likely to cause any surface or underground waste of oil or gas, or injury to any oil, gas, water, coal, or other mineral formation, or which is dangerous to life or property, or in violation of the provisions of the regulations in this part.

(f) To prescribe, subject to the approval of the Superintendent, the manner and form in which all records or reports called for by the regulations in this part shall be made by the lessee.

(g) To prohibit the drilling of any well into any producing sand when in his opinion and with the approval of the Superintendent the marketing facilities are inadequate, or insufficient provision has been made for controlling the flow of oil or gas reasonably to be expected therefrom until such time as suitable provision can be made.

(h) To prescribe or approve the methods of drilling wells through coal measures or other mineral deposits.

(i) To determine when and under what conditions a producing well may be drilled deeper, and under what conditions a producing well, or sand, may be abandoned.

(j) To require that tests shall be made to detect waste of oil or gas or the presence of water in a well and to prescribe or approve the methods of conducting such tests.

r bearing for-
erty or life, in
visions of the

the Superin-
conditions of
he manner in
ng conducted
ith.

vise with the
conditions of
omit informa-
from time to
protecting the
securing com-
of the regula-

or notices as
e compliance
to issue all
r orders to
such methods
sider contrary
gulations.

oit the use or
on or method
causing or is
ce or under-
, or injury to
other mineral
gerous to life
n of the pro-
n this part.

t to the ap-
nt, the man-
records or re-
lations in this
essee.

ng of any well
when in his
proval of the
ting facilities
ent provision
ling the flow
be expected
e as suitable

ve the meth-
hrough coal
deposits.

and under
ng well may
er what con-
or sand, may

shall be made
s or the pres-
l to prescribe
f conducting

(k) To require that any condition existing subsequent to the completion of a well which is causing, or is likely to cause, damage to an oil, gas, or water bearing formation, or to coal measures or other mineral deposits, or which is dangerous to life or property, be corrected as he may prescribe or approve.

(l) To approve the type or size of separators used to separate the oil, gas, or water coming from a well.

[17 F. R. 2604, Mar. 26, 1952]

§ 180.60 *Limit percentage of well flow.* The inspector may limit the percentage of the open-flow capacity of any well which may be utilized when, in his opinion, such action is necessary to properly protect the gas-producing formation.

§ 180.60a *Unit operating area.* That for the purpose of preventing waste and to permit production of oil and gas in such manner as to promote the greatest ultimate recovery of oil from a source of common supply (single field or pool), a cooperative development or unit operating area shall be established by the oil inspector and delineated on a map. All lands lying within such defined area shall be subject to such specific requirements and regulations with reference to development and production as the oil inspector shall prescribe from time to time. All residue gas having its origin in such defined area and returned to the oil lessee after extraction of gasoline and other liquid products (except that necessary for operating purposes as elsewhere provided in the regulations in this part) must be injected into the sand or horizon from which it was originally withdrawn for the purpose of increasing the recovery of oil. Only with the consent of the oil inspector first had in writing shall less than the full volume of such residue gas available be so injected. The oil inspector shall consent to the injection of less than said full volume only after a study of the area and a determination of the amount of gas necessary to be injected to effect the maximum ultimate recovery of oil and gas as required by the act of March 2, 1929, (45 Stat. 1478). The foregoing is the reissuance of regulations approved, effectuated and given publication as of March 26, 1938.

[4 F. R. 1512, Apr. 8, 1939]

§ 180.61 *Judge whether orders complied with.* The inspector shall be the sole judge of whether his orders have been fuly complied with and carried out.

REQUIREMENTS OF LESSEES

§ 180.62 *Notice of location of proposed well.* Five days prior to the commencement of drilling operations lessee shall submit, on forms to be furnished by the superintendent, a report in duplicate showing the location of the proposed wells.

§ 180.63 *Drilling records.* Lessee shall keep upon the leased premises accurate records of the drilling, redrilling, or deepening of all wells showing all the formations drilled through and casing used during the drilling of such wells, and upon the completion of such wells, copies of such records shall be transmitted to the superintendent by the lessee within 10 days after the first completion of any well, and of any further drilling thereafter, and a failure to so furnish report within the time prescribed shall be considered a violation of the regulations. The lessee or any employee on the leased premises shall immediately furnish such information to the inspector upon his request. In connection therewith, it will be held that such completion report is to be filed within 10 days after any well is shot, or is producing natural, or being pumped, and if not then finally completed with tubing, etc., a subsequent report to be filed thereafter.

§ 180.64 *Plats showing location of wells.* Lessee shall furnish as required, a plat, in manner and form as prescribed by the Superintendent, showing all wells, active or abandoned, on the leased lands, and other related information. Blank plats will be furnished upon application

[17 F. R. 2605, Mar. 26, 1952]

§ 180.65 *Rigs to be marked.* Lessee shall clearly and permanently mark all rigs or wells in a conspicuous place with the name of the lessee and the number or designation of the well, and shall take all necessary precautions for the preservation of these markings.

§ 180.66 *Line drilling.* Lessee shall not drill within 300 feet of boundary line of leased lands, except with the consent of the superintendent. Lessee shall not locate any well or tank within 200 feet of any public highway or any building used as a dwelling, granary, barn, or established watering place, except with the written permission of the superintendent.

§ 180.67 *Notice prior to removal of casing.* Lessee shall obtain permission from the Superintendent before removing any casing from any well.

[17 F. R. 2605, Mar. 26, 1952]

§ 180.68 *Two slush pits required.* Lessee shall provide two properly prepared slush pits, into one of which he must deposit sand pumpings and other materials extracted from the well during the process of drilling, but such material as is suitable for the mudding of a well shall be run into the other pit. The construction of such pits shall be subject to the approval of the inspector. Sand pumpings and such material shall not be allowed to run over the surface of the land.

§ 180.69 *Water control.* Lessee shall effectually shut out and exclude all water from any oil or gas bearing stratum and take all proper precautions and measures to prevent the contamination or pollution of any fresh-water supply encountered in any well drilled for oil or gas.

§ 180.70 *Productive formations to be protected.* Lessee shall protect to the satisfaction of the inspector each productive oil or gas bearing formation drilled through for the purpose of producing oil or gas from a lower formation.

§ 180.71 *Control devices.* In drilling operations in "wildcat" territory, or in a gas or oil field where high pressures are known to exist, the lessee shall have on such leased premises an approved gate valve or other approved controlling device in proper condition for use until the well is completed.

§ 180.72 *Waste of gas to be prevented.* When natural gas is encountered in commercial quantities in any well, the oil or gas lessee shall confine such gas to its natural stratum until such time as the same can be produced and utilized without waste, it being understood that a commercial quantity of gas produced by a well is any unrestricted flow of natural gas of 2,000,000 cubic feet or more per 24 hours: *Provided*, That if in the opinion of the superintendent, gas of a lesser quantity shall be of commercial value, the superintendent shall have authority to require the conservation of said gas: *Provided further*, That under § 180.11 a well producing oil in paying quantities and gas from the same shall be held to produce gas in commercial quantities when and so long as it produces gas with an open flow capacity of 2,000,000 cubic feet or more per day of 24 hours, and gas produced from any such well of less than 2,000,000 cubic feet per day may be considered and termed gas in commercial quantities in the discretion of the superintendent, except when gas from such well contains gasoline in commercial quantities, in which event, it shall be termed "casing-head gas" but only when, and only while actually used for the manufacture of gasoline, as provided for under § 180.14. Any casing-head gas coming direct from the wells and not utilized by the oil lessee as above provided for, or for operations as provided for in § 180.14 shall be delivered to the gas lessee at a central point on the oil lessee's gathering or carrying lines, at the same schedule of prices as fixed for delivery of residue gas at gasoline plants into the line or lines provided by the gas lessee; also all gas after extraction of gasoline, and not used for operations under the terms of §184.14, shall be delivered to gas lessee at points where the gasoline is extracted at as high a pressure as the efficient operation of such plant will permit, and where same is delivered at a pressure not above 50 pounds the oil lessee shall receive 1 cent per 1,000 cubic feet and an additional one-half cent increase for each additional 50 pounds pressure, not exceeding 3 cents per 1,000 cubic feet. Settlement for same to be made on or before the 20th day of each month for all gas delivered during the preceding month and to be computed on the usual basis of 10 ounces above atmospheric pressure, provided that royalty on such gas shall be computed the same as though it were gas produced and utilized by the gas lessees under the terms of their leases from their wells proper: *And provided further*, That the rights conferred in this section are optional and in no event shall the gas lessees be obligated to utilize, or pay the oil lessee, or pay royalty to the tribe, if not utilized, for any such gas as is described; and if the gas lessee does not accept such gas and utilize the same after tender thereof by the oil lessee, then such gas may be otherwise disposed of by the oil lessee upon the same basis of royalty as fixed in case of utilization by the gas lessee. In case of combination wells where the gas lessee has no market for and does not utilize such gas for any purpose, the oil lessee shall be

ces gas with
00,000 cubic
urs, and gas
of less than
nay be con-
commercial
f the super-
from such
commercial
it shall be
only when,
or the man-
rovided for
g-head gas
ls and not
above pro-
as provided
ered to the
on the oil
ng lines, at
as fixed for
oline plants
ded by the
extraction
operations
hall be de-
; where the
igh a pres-
on of such
same is de-
e 50 pounds
nt per 1,000
l one-half
ditional 50
ing 3 cents
lement for
re the 20th
is delivered
and to be
f 10 ounces
, provided
ll be com-
ere gas pro-
lessees un-
from their
rther, That
section are
all the gas
or pay the
he tribe, if
is as is de-
e does not
the same
oil lessee,
ise disposed
same basis
utilization
f combina-
ssee has no
ze such gas
see shall be

permitted to utilize and sell the same to adjoining lessees for operating purposes until such time only as the gas lessee is in a position to and does utilize such gas. Water shall not be introduced into any well where such introduction will operate to kill or restrict the open flow of gas therein.

§ 180.73 *Determining cost of well.* The term "cost price of a well," as applied where one lessee takes over a well drilled by another, shall include all reasonable, usual, necessary and proper expenditures including the following expenditures made by the lessee drilling the well.

(a) All location, right of way, or other surface damages occasioned by the drilling of such well.

(b) All expenses of laying, taking up, repairing, operating and maintaining gas and water lines where such lines including amount paid for water privilege or constructing dam, are used for the exclusive purpose of drilling the particular well.

(c) Customary charge for furnishing water where purchased shall be the price prevailing in the particular locality: *Provided,* Where the parties cannot agree upon the charge made under this paragraph such charge shall be determined by the superintendent.

(d) Amounts expended in spudding or drilling a water well: *Provided,* That where any or all of the facilities referred to in this paragraph and in paragraphs (b) and (c) are not employed exclusively in connection with the drilling of the well to be taken over, or are also used in connection with the drilling or operation of other wells by the lessee drilling the well to be taken over by the other lessee, then a fair proportion of the charges covered by this paragraph and (b) and (c) shall be assessed against each well, including the well to be taken over, and in the event of a disagreement between the parties as to the charges assessed against the well that is to be taken over, such charge shall be fixed by the superintendent.

(e) All expenses of hauling and erecting standard rig, with an additional charge for use of said rig which shall be 20 cents per foot for wells not exceeding 2,200 feet in depth and the charge for rigs for wells exceeding a depth of 2,200 feet shall be at a price agreed upon, or on failure to agree, to be determined by the superintendent.

(f) All amounts paid for drilling and reaming, except where reaming is done for the sole benefit of party drilling the well. If price charged for drilling is above the average drilling price in the field, the price to be paid shall be determined by the superintendent: *Provided,* That where the well to be taken over is drilled below the stratum in which the lessee taking over the well is interested, that is, the gas stratum in the case of a well taken over by a gas lessee, and the oil stratum in a well taken over by the oil lessee, then the lessee doing such further drilling shall sustain the cost of drilling and reaming where such drilling and reaming are done below such stratum.

(g) All expenses of mudding, except where mudding is done for the sole benefit of the lessee drilling the well.

(h) Settlement for casing or other pipe left in the well to be made at the prevailing market price for the character and kind of casing when placed in the well.

(i) All expenses of placing and removing all casing or other pipe used in drilling said well.

(j) A sum of not exceeding $100 to cover supervision and overhead expenses.

(k) Any additional charges which cannot be mutually agreed upon shall be submitted to and determined by the superintendent. An approximate list of expenses mentioned in this section shall be presented to proposed purchasing lessee within 10 days after the completion of the well.

§ 180.74 *Oil and gas to be separated.* Lessee shall separate the oil from the gas when both are produced in commercial quantities from the same formation, or under such conditions as might result in waste of oil or gas in commercial quantities.

§ 180.75 *Use of gas for lifting oil.* Lessee shall not use natural gas from a distinct or separate stratum for the purpose of flowing or lifting the oil.

§ 180.76 *Prevent wastage of oil and gas.* Lessee shall prevent oil or gas, or both, from escaping from any well into the open air, and not permit any oil or gas well to go wild or to burn wastefully.

§ 180.77 *Approval of inspector for use of gas for operations.* Lessee shall not

use natural gas in place of steam to operate engines or pumps under direct pressure, except with the special permission of the inspector.

§ 180.78 *Flambeau lights.* Lessee shall not use natural gas in flambeau lights, save as authorized or approved by the inspector.

§ 180.79 *Most approved methods to be followed in drilling and producing operations.* Lessee shall use every possible precaution, in accordance with the most approved methods, to stop and prevent the waste of oil and gas, or both, in all drilling and producing operations and from connecting lines, and he shall not wastefully utilize oil or gas.

§ 180.80 *Superintendent to be notified of intended operations.* Lessee shall notify the superintendent a reasonable time in advance of starting work of intention to redrill, deepen, plug, or abandon a well; and whenever the superintendent or inspector has given notice that extra precautions are necessary in the plugging of wells in a particular territory lessee shall give at least 3 days' advance notice of such intended plugging.

§ 180.81 *Abandonment of wells.* Lessee shall not abandon any well for the purpose of drilling deeper for oil or gas unless the producing stratum is properly protected, and shall not abandon any well producing oil or gas except with the approval of the superintendent or where it can be demonstrated that the further operation of such well is commercially unprofitable.

§ 180.82 *Well plugging.* (a) Lessee shall plug and fill all dry or abandoned wells on the leased lands in the manner required, and where any such well penetrates an oil or gas bearing formation it shall be thoroughly cleaned to the bottom of the hole before being plugged or filled, and shall then be filled with mud-laden fluid of a consistency approved by the inspector, from the bottom to the top thereof, before any casing is removed from the well, or, in lieu of the use of such mud fluid, each oil and gas bearing formation shall be adequately protected by cement or approved plugs or by both such plugs and cement, and the well filled in above and below such cement or plugs with material approved by the inspector.

(b) Where both fresh water and salt water are encountered in any dry or abandoned well which is not being filled with mud-laden fluid as hereinbefore provided, the fresh water shall be efficiently protected against contamination by cement or approved plugs, or by both such cement and plugs, to be placed at such points in the well as the inspector shall approve for the protection of the fresh water.

§ 180.83 *Variation in plugging methods in certain cases.* If such abandoned or dry well be in a coal bed or other mineral vein deposit, or be in such condition as to warrant taking extraordinary precautions, the inspector may require such variations in the above prescribed methods of plugging and filling as may be necessary in his judgment to protect such seam or deposit against infiltration of gas or water to protect all other strata encountered in the well.

§ 180.84 *Plugging to be approved by inspector.* (a) The manner in which mud-laden fluid, cement or plugs shall be introduced into any well being plugged and the type of plugs so used shall be subject to the approval of the Inspector, and the lessee shall within 10 days file with the Superintendent a complete report of the plugging of such well.

(b) In the event the lessee or operator shall fail to plug properly any dry or abandoned well in accordance with the regulations in this part the Superintendent may, after 5 days' notice to the parties in interest, plug such well at the expense of the lessee or his surety.

[17 F. R. 2605, Mar. 26, 1952]

§ 180.85 *Disposal of B. S. and salt water.* All B. S. and salt water from tanks or well shall be drawn off into proper receptacles to hold and retain same without permitting it to run over the surface of the land or into the creeks and ravines and where earthern tanks or sump-holes are used, they shall not be located in any draw or ravine, but must be located in places and be so constructed that water from rains will not flow into them and wash out the B. S. or destroy the dams, and in cases where the B. S. is not run through some treating process, same shall when in sufficient quantities be burned at least once every week and at more frequent intiervals when possble.

r and salt
ny dry or
being filled
reinbefore
ill be effi-
amination
or by both
placed at
inspector
on of the

ing meth-
bandoned
or other
such con-
extraordi-
r may re-
bove pre-
d filling as
ement to
gainst in-
rotect all
e well.

proved by
in which
ugs shall
ell being
s so used
al of the
ll within
endent a
g of such

operator
y dry or
with the
erintend-
the par-
it the ex-
ety.

and salt
ter from
off into
nd retain
run over
he creeks
ern tanks
shall not
vine, but
e so con-
s will not
e B. S. or
where the
treating
sufficient
nce every
intiervals

Where it is impossible to burn the B. S., or where it is necessary to pump salt water in such quantities as would damage the surface of the leased land or adjoining property, or pollute any fresh water, the lessee shall notify the superintendent, who shall give instructions in each instance as to the disposition of such B. S. or salt water. Such instructions shall be issued in writing and a copy thereof shall be immediately delivered to the oil or gas lessee.

§ 180.86 *Accidents to be reported.* Lessee shall make a full and complete report to the superintendent of all accidents or fires occurring on the leased premises.

§ 180.87 *Tankage for crude oil.* Lessee shall provide approved tankage of suitable shape for accurate measurement, into which all production of crude oil shall be run from the wells, and shall furnish the superintendent copies of accurate tank tables and all run tickets, as and when requested.

§ 180.88 *Division orders.* (a) The Superintendent may make arrangements with the purchasers of oil for the payment of the royalty, but such arrangements, if made, shall not relieve the lessee from responsibility for the payment of the royalty, should such purchaser fail, neglect, or refuse to pay the royalty when it becomes due. No oil shall be run to any purchaser or delivered to the pipe line or other carrier for shipment, or otherwise conveyed or removed from the leased premises, until a division order is executed, filed, and approved, by the Superintendent, showing that the lessee has a regularly approved leased in effect, and the conditions under which the oil may be run: *Provided*, That the Superintendent may grant temporary permission to run oil from a lease pending the execution, filing, and approval by him of a division order. Lessees shall be required to pay for all oil or gas used off the leased premises for operating purposes; affidavit shall be made as to the production used for such purposes and royalty paid in the usual manner. The lessee or his representative shall be present when oil is taken from the leased premises under any division order and will be responsible for the correct measurement thereof and shall report all oil so run.

(b) The lessee shall also authorize the pipe-line company or the purchaser of oil to furnish the superintendent with a monthly statement, not later than the 10th day of the following calendar month, of the gross barrels run as common-carrier shipment or purchased from his lease or leases.

[Regs. of July 12, 1932, as amended at 18 F. R. 7057, Nov. 10, 1953]

§ 180.89 *Use of timber from leased lands.* Lessee will not be permitted to use any timber from Osage lands except under written agreement with the owner.

[17 F. R. 2605, Mar. 26, 1952]

§ 180.90 *Gas wells drilled by oil lessees and vice versa.* When an oil lessee in drilling a well encounters gas in excess of one million cubic feet per 24 hours, or the gas lessee in drilling a well encounters oil, he shall immediately suspend drilling, and notify the oil or gas lessee, as the case may be, and the superintendent, in order that such lessee and the inspector may be present while the sand is being drilled through, such further drilling, however, shall not be resumed until authorized by the inspector, except as otherwise permitted in advance in writing by the inspector.

PENALTIES FOR VIOLATION OF REGULATIONS

§ 180.91 *Amount of penalties.* Fines may be imposed by the Superintendent without right of appeal for violations of certain sections of the regulations in this part, as follows:

Fines for noncompliance with terms of lease or regulations.

(a) For failure to file preliminary report required by § 180.62, $5 a day for the first violation and $10 a day for each violation thereafter.

(b) For failure to file a completion report, as required by §180.63, $5 a day for the first violation and $10 a day for each violation thereafter.

(c) For failure to mark rigs or wells, as required by § 180.65, $50 for each well

(d) For failure to construct slush pits, as required by § 180.68, $10 for each day after drilling is commenced on any well.

(e) For failure to comply with § 180.71, regarding gate valve and other approved controlling devices, $100.

(f) For failure to comply with § 180.77, in regard to using gas in place of steam to operate engines or pumps, $10 per day for the first violation and $20 a day for each violation thereafter.

(g) For failure to comply with § 180.78, which prohibits the burning of gas in flambeau lights, $50 per day.

(h) For failure to notify Superintendent and secure authority before redrilling, deepening, plugging or abandoning any well, $200, as required by §§ 180.80 and 180.90.

(i) For failure to construct sump-holes, or burning holes, to properly care for and dispose of B. S. and salt water as provided in § 180.85, $10 a day for the first violation, and in event of the failure properly to construct or repair sump-holes, or burning holes, within 5 days after notification by Superintendent or his authorized representative, $25 to $50 a day.

(j) For failure to file plugging reports as required by § 180.84 and for failure to file reports, and remit royalties required by § 180.45, $5 a day for the first violation and $10 a day for each violation thereafter.

All moneys received from fines collected under this section shall be deposited as provided in § 180.93.

[17 F. R. 2605, Mar. 26, 1952]

EFFECTIVE DATE OF REGULATIONS

§ 180.92 *Regulations to be effective from date of approval.* The regulations in this part shall become effective and in full force from and after the date of approval, and shall be subject to change or alteration at any time by the Secretary of the Interior: *Provided*, That no regulations made after the approval of any lease shall operate to affect the term of lease, rate of royalty, rental, or acreage, unless agreed to by both parties to the lease.

FORMS

§ 180.93 *Forms.* (a) Leases, and other papers must be upon forms prescribed by the Secretary of the Interior, and the Superintendent will furnish prospective lessees with such forms for preparation of original leases without charge, but shall make a charge of 50 cents per set for forms used in preparing assignments.

Form A—Gas mining lease.
Form B—Oil mining lease.
Form D—Bond.
Form E—Authority of officers to execute papers
Form F—Assignment.
Form G—Collective bond.
Form H—Assignment bond.

(b) All sums received from sale of forms and fines shall be placed in a special fund, and may be expended under the direction of the Commissioner of Indian Affairs for the expenses necessary to carry out the regulations in this part.

[17 F. R. 2605, Mar. 26, 1952]

APPROVAL FEE

§ 180.94 *Amount of fee.* A fee of $5 will be charged for each lease, each sublease, each drilling contract affecting oil and gas mining leases, and each assignment of lease, such amount to be paid by the lessee, sublessee or assignee upon notice of approval of the contract, as provided by the act of February 14, 1920.

(Sec. 1, 41 Stat. 415, as amended; 25 U. S. C. 413)

HEARINGS AND APPEALS

§ 180.95 *Hearings and appeals.* (a) Any person, firm or corporation aggrieved by any decision or order issued by or under authority of the Superintendent pursuant to the regulations in this part, may file with the Superintendent at anytime an application for modification or revocation of such decision or order. The Superintendent shall give notice of the time and place and conduct a hearing upon the application within ten days after its receipt by him. If the applicant is not satisfied with the decision of the Superintendent, an appeal may be taken as hereinafter set forth except as provided in paragraph (b) of this section.

(b) An appeal to the Commissioner of Indian Affairs may be taken from any decision or order issued by or under authority of the Superintendent except decisions or orders issued under authority of §§ 180.54, 180.59, and 180.91, by filing such appeal with the Superintendent within 30 days after service of the decision or order. The appeal shall incorporate or be accompanied by such written showing and argument on the facts and law as the appellant may deem adequate to justify reversal or modification of the order. All statements of facts must be made under oath. The Superintendent shall transmit the appeal and accompanying papers with a full report and recommendations, through official channels, to the Commissioner of Indian Affairs.

(c) An appeal from any decision of the Commissioner of Indian Affairs may be taken to the Secretary of the Interior

om sale of
)laced in a
pended un-
ommissioner
enses neces-
ions in this

A fee of $5
e, each sub-
affecting oil
ach assign-
to be paid
signee upon
ontract, as
ry 14, 1920.
t; 25 U. S. C.

LS

*peals.* (a)
ration ag-
rder issued
the Super-
gulations in
uperintend-
cation for
such deci-
ndent shall
place and
application
ipt by him.
ed with the
nt, an ap-
inafter set
paragraph

mmissioner
aken from
by or under
ent except
ler author-
180.91, by
uperintend-
vice of the
al shall in-
d by such
ent on the
may deem
or modifi-
tements of
oath. The
it the ap-
ers with a
nendations,
the Com-

decision of
Affairs may
he Interior

within 30 days after service of the Commissioner's decision. The appeal shall be accompanied by such written showing and argument on the facts and law as appellant may deem adequate to justify reversal or modification of the decision. Any statement of facts not submitted to the Commissioner must be made under oath.

(d) Compliance with any decision or order issued by or under authority of the Superintendent shall not be suspended by reason of an appeal having been taken unless such suspension is authorized in writing by the Commissioner of Indian Affairs, and then only on a determination that such suspension will not be detrimental to the lessor or upon submission and acceptance of a bond deemed adequate to indemnify the lessor from loss or damage.

[17 F. R. 2605, Mar. 26, 1952]

## Part 183—Leasing of Restricted Lands of Members of Five Civilized Tribes, Oklahoma, for Mining

Sec.
183.1 Definitions.

HOW TO ACQUIRE LEASES

183.2 Applications for leases.
183.3 No Government employee shall acquire leases.
183.4 Sale of oil and gas leases.
183.5 Term of oil and gas leases.
183.6 Leases for minerals other than oil and gas.
183.7 Approval fee.
183.8 Filing of lease deemed constructive notice.
183.9 Noncontiguous tracts.
183.10 Lessor's signature.
183.11 Minor lessors.
183.12 Leases executed by guardians of minors.
183.13 Inherited lands.
183.14 Corporations and corporate information.
183.15 Bonds.
183.16 Additional information may be requested by Area Director.
183.17 Government reserves right to purchase minerals produced.

RENTS AND ROYALTIES

183.18 Manner of payment of rents and royalties.
183.19 Crediting advance annual payments.
183.21 Rate of rents on leases other than oil and gas.
183.22 Expenditures under leases other than oil and gas.

Sec.
183.23 Royalty rates for minerals other than oil and gas.
183.24 Rate of rents and royalties on oil and gas leases.
183.25 Free use of gas by lessor.
183.26 Rate of royalty on casing-head gas.
183.27 Rate of rental for nonutilized gas wells.
183.28 Royalty payments and production reports.
183.29 Division orders.

OPERATIONS

183.30 Permission to start operations.
183.31 Restrictions on operations.
183.32 Wells.
183.33 Diligence and prevention of waste.
183.34 Inspection of premises; books and accounts.
183.35 Mines to be timbered properly.
183.36 Surrender of leased premises in good condition.
183.37 Penalties.
183.38 Assignments.
183.39 Stipulations.
183.40 Cancellations.

REMOVAL OF RESTRICTIONS

183.41 Leases executed but not approved before restrictions removed from land.
183.42 Operations after removal of restrictions from leased lands.
183.43 Relinquishment of Government supervision.
183.44 Division of royalty to separate fee owners.
183.45 Restrictions especially continued as to certain lands.
183.46 Field clerks.
183.47 Forms.
183.48 Effective date.
183.49 Scope of regulations.

AUTHORITY: §§ 183.1 to 183.49 issued under sec. 2, 35 Stat. 312, sec. 18, 41 Stat. 426, sec. 1, 45 Stat. 495, sec. 1, 47 Stat. 777; 25 U. S. C. 356. Interpret or apply secs. 3, 11, 35 Stat. 313, 316, sec. 8, 47 Stat. 779. Other statutory provisions interpreted or applied are cited to text in parentheses.

SOURCE: §§ 183.1 to 183.49 contained in regulations governing the leasing of restricted lands belonging to members of the Five Civilized Tribes of Indians in Oklahoma, for mining purposes, April 27, 1938, except as otherwise noted. See also 16 F. R. 9192, Sept. 11, 1951.

CROSS REFERENCE: For oil and gas operating regulations of the Geological Survey, see 30 CFR Part 221.

**§ 183.1** ***Definitions.*** **The term "Area Director" in this part refers to the officer in charge of the Five Civilized Tribes Indian Agency.**

The term "supervisor" in this part refers to a representative of the Secretary