THE NATIONAL ARCHIVES · LITTERA SCRIPTA MANET · OF THE UNITED STATES · 1934

# FEDERAL REGISTER

VOLUME 23 NUMBER 130

*Washington, Thursday, July 3, 1958*

## TITLE 3—THE PRESIDENT

### EXECUTIVE ORDER 10773

DELEGATING AND TRANSFERRING CERTAIN FUNCTIONS AND AFFAIRS TO THE OFFICE OF DEFENSE AND CIVILIAN MOBILIZATION

By virtue of the authority vested in me as President of the United States, including authority vested in me by the provisions of Reorganization Plan No. 1 of 1958 and including also authority vested in me by provisions of law cited in the preambles of, or relied upon in connection with the issuance of, orders amended by this order, it is ordered as follows:

SECTION 1. The "Office of Defense and Civilian Mobilization" and the "Director of the Office of Defense and Civilian Mobilization", referred to in this order, are the Office of that name and the officer with that title, respectively, provided for in Reorganization Plan No. 1 of 1958.

SEC. 2. (a) There are hereby delegated to the Director of the Office of Defense and Civilian Mobilization, with power of redelegation by him, all functions transferred to the President by the provisions of Reorganization Plan No. 1 of 1958.

(b) Subject to the provisions of section 7 of this order, all functions of the President of the United States heretofore delegated or assigned to the Director of the Office of Defense Mobilization, the Office of Defense Mobilization, the Federal Civil Defense Administrator (or the Administrator of the Federal Civil Defense Administration), or the Federal Civil Defense Administration are, to the extent that those delegations or assignments were in effect June 30, 1958, redelegated or reassigned, as the case may be, to the Director of the Office of Defense and Civilian Mobilization.

SEC. 3. Except in instances wherein the provisions concerned are for any reason inapplicable as of the effective date of Reorganization Plan No. 1 of 1958:

(a) Each reference in any prior Executive order to the Director of the Office of Defense Mobilization and each reference in any prior Executive order to the Federal Civil Defense Administrator (or to the Administrator of the Federal Civil Defense Administration) is hereby amended to refer to the Director of the Office of Defense and Civilian Mobilization.

(b) Each reference in any prior Executive order to the Office of Defense Mobilization and each reference in any prior Executive order to the Federal Civil Defense Administration is hereby amended to refer to the Office of Defense and Civilian Mobilization.

SEC. 4. Without limiting the application of section 3 of this order, the amendments made thereby shall apply, subject to the provisions of section 3 of this order:

(a) To references to the Federal Civil Defense Administrator (or to the Administrator of the Federal Civil Defense Administration) and to references to the Federal Civil Defense Administration in the following-designated Executive orders, including any Executive orders amendatory thereof or supplementary thereto:

(1) Executive Order No. 10242 of May 8, 1951.
(2) Executive Order No. 10260 of June 27, 1951.
(3) Executive Order No. 10346 of April 17, 1952.
(4) Executive Order No. 10421 of December 31, 1952.
(5) Executive Order No. 10427 of January 16, 1953.
(6) Executive Order No. 10529 of April 22, 1954.
(7) Executive Order No. 10737 of October 29, 1957.

(b) To references to the Director of the Office of Defense Mobilization and to references to the Office of Defense Mobilization in the following-designated Executive orders, including any Executive order amendatory thereof or supplementary thereto:

(1) Executive Order No. 10219 of February 28, 1951.
(2) Executive Order No. 10296 of October 2, 1951.
(3) Executive Order No. 10312 of December 10, 1951.
(4) Executive Order No. 10346 of April 17, 1952.
(5) Executive Order No. 10421 of December 31, 1952.
(6) Executive Order No. 10460 of June 16, 1953.
(7) Executive Order No. 10480 of August 14, 1953, (except section 102).

(Continued on p. 5063)

## CONTENTS

### THE PRESIDENT

| | Page |
|---|---|
| **Executive Order** | |
| Delegating and transferring certain functions and affairs to Office of Defense and Civilian Mobilization | 5061 |

### EXECUTIVE AGENCIES

| | |
|---|---|
| **Agriculture Department** | |
| *See* Agricultural Marketing Service. | |
| **Agricultural Marketing Service** | |
| Rules and regulations: | |
| Fruits and vegetables, processed, processed products thereof, and certain other processed food products; editorial note | 5082 |
| **Atomic Energy Commission** | |
| Notices: | |
| General Dynamics Corp.; utilization facility license, amendment | 5102 |
| Rules and regulations: | |
| New mailing address | 5064 |
| **Civil Aeronautics Board** | |
| Notices: | |
| American Airlines, Inc.; prehearing conference | 5103 |
| **Customs Bureau** | |
| Proposed rule making: | |
| Customs Collection District No. 1 (Maine-New Hampshire); revocation of designation of Holeb-Jackman as customs port of entry and designation of Jackman, Maine, as a customs port of entry | 5093 |
| Rules and regulations: | |
| Appraisement; examination of merchandise | 5063 |
| Licenses for certain customs entries and examination of tangible communications, revocation of | 5064 |
| **Federal Civil Defense Administration** | |
| Notices: | |
| Texas; major disaster | 5106 |
| **Federal Communications Commission** | |
| Notices: | |
| Hearings, etc.: | |
| Community Telecasting Corp. et al | 5105 |



HeinOnline -- 23 Fed. Reg. 5061 1958

Case 1:99-cv-00550-ECH Document 309-37 Filed 06/30/2008 Page 2 of 3



## TITLE 49—TRANSPORTATION

### Chapter I—Interstate Commerce Commission

PART 156—REPORTING OF PROPERTY CHANGES: PIPELINE CARRIERS

AMENDMENT OF FORMS

JUNE 27, 1958.

By order dated May 23, 1958, the Commission prescribed revised regulations governing the reporting of property changes by pipeline carriers as contained in the Revised Supplement No. 8 to Valuation Order No. 3—Second Revised Issue. In conjunction with these regulations four forms were also prescribed.

Evidence of the approval of the Bureau of the Budget of the revised reporting requirements and the related forms was inadvertently omitted from the text of the aforementioned order, and from the forms.

Reprints of the above mentioned regulations will contain the following notation: "The reporting requirements contained herein have been approved by the Bureau of the Budget in accordance with the Federal Reports Act of 1942."

Reprints of the prescribed forms shall reflect notation as indicated below in the upper right hand corner of the form:

On ACV Form No. 1:

Form Approved
Budget Bureau No. 60-R340.
This approval will expire on Nov. 30, 1963.

On ACV Form No. 2:

Form Approved
Budget Bureau No. 60-R339.
This approval will expire on Nov. 30, 1963.

On ACV Form No. 3:

Form Approved
Budget Bureau No. 60-R338.
This approval will expire on Nov. 30, 1963.

On ACV Form No. 4:

Form Approved
Budget Bureau No. 60-R337.
This approval will expire on Nov. 30, 1963.

This notice will be filed with the Director, Federal Register Division.

HAROLD D. MCCOY,
*Secretary.*

[F. R. Doc. 58-5101; Filed, July 2, 1958; 8:52 a. m.]

# PROPOSED RULE MAKING

## DEPARTMENT OF THE TREASURY

### Bureau of Customs

### [ 19 CFR Part 1 ]

CUSTOMS COLLECTION DISTRICT NO. 1 (MAINE-NEW HAMPSHIRE)

PROPOSED REVOCATION OF DESIGNATION OF HOLEB-JACKMAN AS A CUSTOMS PORT OF ENTRY AND THE DESIGNATION OF JACKMAN, MAINE, AS A CUSTOMS PORT OF ENTRY

Notice is hereby given that pursuant to the authority vested in the President by section 1 of the act of August 1, 1914, 38 Stat. 623 (19 U. S. C. 2), which was delegated to the Secretary of the Treasury by the President by Executive Order No. 10289, September 17, 1951 (3 CFR, 1951 Supp., Ch. II), it is proposed to revoke the designation of Holeb-Jackman, Maine, as a customs port of entry in Customs Collection District No. 1 (Maine-New Hampshire); to establish in Customs Collection District No. 1 a new customs port of entry at Jackman, Maine, to include the townships of Jackman, Sandy Bay, Bald Mountain, Holeb, Attean, Lowelltown, Dennistown, and Moose River, all in the State of Maine; and to amend § 1.1 (c) of the Customs Regulations to indicate these changes. The purpose of these changes is to consolidate the customs administration of the railroad and highway operations at Jackman in view of the planned transfer of the railroad operations from Holeb to Jackman Station.

This notice is published pursuant to section 4 of the Administrative Procedure Act (5 U. S. C. 1003). Data, views, or arguments with respect to the proposed revocation of the designation of Holeb-Jackman as a customs port of entry and the designation of Jackman as a customs port of entry may be addressed to the Commissioner of Customs, Bureau of Customs, Washington 25, D. C., in writing. To assure consideration of such communications, they must be received in the Bureau of Customs not later than 20 days from the date of publication of this notice in the FEDERAL REGISTER. No hearing will be held.

[SEAL] RALPH KELLY,
*Commissioner of Customs.*

Approved: June 26, 1958.

A. GILMORE FLUES,
*Acting Secretary of the Treasury.*

[F. R. Doc. 58-5109; Filed, July 2, 1958; 8:53 a. m.]



## DEPARTMENT OF THE INTERIOR

### Bureau of Indian Affairs

### [ 25 CFR Part 183 ]

LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING

MISCELLANEOUS AMENDMENTS

*Basis and purpose.* Notice is hereby given that pursuant to the authority vested in the Secretary of the Interior by section 3 of the act of June 28, 1906 (34 Stat. 539-543), it is proposed to amend 25 CFR, §§ 183.4, 183.16, 183.42, and 183.43 as set forth below. The purpose of these amendments is to require that the annual rental in lieu of drilling on oil and gas leases on the Osage Indian Reservation shall be paid annually in advance, and to permit the appointment of a local representative of a lessee or assignee of an Osage oil and gas lease to be located any place within the State of Oklahoma instead of only within the City of Pawhuska.

All interested persons are hereby given an opportunity to submit in triplicate written comments, suggestions, or objections with respect to the proposed amendments to the Commissioner of Indian Affairs, Department of the Interior, Washington 25, D. C., within thirty days of the date of publication of this notice in the FEDERAL REGISTER.

ROGER ERNST,
*Assistant Secretary of the Interior.*

JUNE 26, 1958.

1. The present text of § 183.4 is amended to provide that rental in lieu of drilling shall be paid annually in advance and to read as follows:

§ 183.4 *Drilling obligations.* (a) Lessee shall drill at least one well to the Mississippi Lime, unless oil or gas is found in paying quantities at a lesser depth, on the land covered by his lease, within 12 months from the date of approval of the lease, or the lease may be held for the full five-year primary term without drilling, upon payment to the Superintendent for the lessor of rental at the rate of one dollar per acre per annum, payable annually in advance, beginning one year after the date of approval of the lease. This lease shall terminate as to both parties unless such advance rental shall be received at the Osage Agency or shall have been mailed as indicated by postmark, on or before the due date: *Provided,* That the time within which a well shall be drilled shall not begin to run on any restricted homestead selection until the consent of the Superintendent to drilling on such homestead shall have been given, nor shall advance rental become due until the next anniversary date of the lease following the date of such consent: *Provided further,* That the Superintendent in his discretion may direct the drilling of any undrilled lease, if in his opinion the interests of the Osage Tribe warrant: *Provided further,* That whenever the Commissioner of Indian Affairs shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on this lease. The completion of a well to the Mississippi Lime, or production of oil or gas in paying quantities from a lesser depth than the Mississippi Lime, for such time as such production shall continue, after the lease has entered a rental status, shall relieve the lessee from any further payment of rentals for the balance of the primary term of the lease for which rental has not been paid. Should such production cease, rental shall commence on the next anniversary date of the lease. Rental shall be paid on the basis of a full year, and no refund will be made of advance rental paid in compliance with the regulations in this part.

(b) Prior to the expiration of a term of a lease, the Osage Tribal Council may, with the approval of the Superintendent, and a finding by him that such action is in the best interest of the Osage Tribe,

HeinOnline -- 23 Fed. Reg. 5093 1958

grant an extension of the term of the lease for a period of not to exceed six months for the purpose of enabling the lessee to drill a well to the Mississippi Lime unless oil or gas is found in paying quantities at a lesser depth.

2. The present text of § 183.16 is amended to conform to the proposed provisions of § 183.4 and to provide that no refund of annual rental will be made if a lease is cancelled during the year; and to read as follows:

§ 183.16 *Surrender of lease.* The oil lessee may at any time, by paying to the Superintendent the sum of one dollar, surrender all or any quarter-section or fractional part of quarter-section where the lease does not cover the full quarter-section, and have the lease cancelled as to the lands surrendered; and be relieved from all further obligations and liabilities thereunder, as to the part surrendered; *Provided*, That if this lease has been recorded, the lessee shall execute a release and record the same in the proper office. Such surrender shall not entitle the lessee to a refund of the unused portion of rental paid in lieu of development, nor shall it relieve the lessee and his sureties of any obligation incurred prior to such surrender.

3. Section 183.42 is deleted for the reason that its provisions are included in Sec. 183.4, as amended.

4. The present text of § 183.43 is amended to permit a local representative of a lessee or assignee to be located any place within the State of Oklahoma instead of the City of Pawhuska, and to read as follows:

§ 183.43 *Lessee's process agents.* (a) Before actual drilling or development operations are commenced on leased lands, the lessee or assignee shall appoint a local or resident representative within the State of Oklahoma, on whom the Superintendent or other authorized representative of the Department may serve notice, or otherwise communicate with in securing compliance with the regulations in this part, and shall notify the Superintendent of the name and post office address of the representative so appointed.

(b) Where several parties own a lease jointly, only one representative or agent need be designated, whose duties shall be to act for all parties concerned. Designation of such representative should be made by the party in charge of operations.

(c) In the event of the incapacity or absence from the State of such designated local or resident representative, the lessee shall appoint some person to serve in his stead, and in the absence of such representative or of notice of the appointment of a substitute any employee of the lessee upon the leased premises, or the contractor or other person in charge of drilling or related operations thereon, shall be considered the representative of the lessee for the purpose of service of orders or notices as herein provided and service upon any such employee, contractor, or other person shall be deemed service upon the lessee.

[F. R. Doc. 58-5074; Filed, July 2, 1958; 8:45 a.m.]

## DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE

### Food and Drug Administration

### [ 21 CFR Part 20 ]

[Docket Nos. FDC 34, 34 (a) ]

FROZEN DESSERTS; DEFINITIONS AND STANDARDS OF IDENTITY

ORDER EXTENDING TIME FOR FILING EXCEPTIONS

The order published in the FEDERAL REGISTER of March 26, 1958 (23 F. R. 1991), giving notice of proposed definitions and standards of identity for frozen desserts, fixed a period of time ending 90 days from the date of publication for interested persons to file written exceptions thereto.

The Commissioner of Food and Drugs, having been petitioned by interested persons who appeared at the hearing to extend the period of time for filing such written exceptions, and good cause therefor appearing: *It is ordered*, That the time for filing such exceptions be extended to September 26, 1958.

Dated: June 26, 1958.

[SEAL] GEO. P. LARRICK,
*Commissioner of Food and Drugs.*

[F. R. Doc. 58-5106; Filed, July 2, 1958; 8:52 a.m.]

## FEDERAL COMMUNICATIONS COMMISSION

### [ 47 CFR Part 1 ]

[Docket No. 12509; FCC 58-619]

PRACTICE AND PROCEDURE

NOTICE OF PROPOSED RULE MAKING

In the matter of amendment of §§ 1.311, 1.312, and 1.363 of the Commission's rules; Docket No. 12509.

1. Notice is hereby given of proposed rule making in the above-entitled matter.

2. In an increasing number of broadcast cases designated for comparative hearing competing applications are being amended or dismissed upon agreement for the payment of some consideration or for consolidation of interests, leaving the remaining application free for an unopposed grant. The Commission is concerned that these practices may tend to defeat the purpose of hearings on applications for broadcast facilities and encourage the filing of marginal or "strike" applications in the hope that payment may be exacted in consideration of amendment or dismissal of such applications. In many instances these practices may also represent an abuse of the Commission's hearing processes. Hence, in order to discourage these practices, it is proposed to amend §§ 1.311, 1.312, and 1.363 of the Commission's rules as set forth below so that whenever consideration (including an agreement for consolidation of interests) is paid or promised in connection with the default, dismissal or amendment of an application in hearing status, the applications of all applicants who are parties to the agreement will be dismissed with prejudice.

3. Authority for the adoption of the amendments proposed herein is contained in sections 4 (i) and 303 (r) of the Communications Act of 1934, as amended.

4. Any interested party who is of the view that the proposed amendments should not be adopted, or should not be adopted in the form set forth herein, may file with the Commission on or before July 28, 1958, a written statement or brief setting forth his comments. Comments or briefs in support of the proposed amendments may also be filed on or before the same date. Comments or briefs in reply to the original comments may be filed within fifteen days from the last day for filing said original comments. No additional comments may be filed unless (1) specifically requested by the Commission or (2) good cause for the filing of such additional comments is established.

5. In accordance with the provisions of § 1.54 of the Commission's rules and regulations, an original and 14 copies of all statements, briefs, or comments shall be furnished the Commission.

Adopted: June 26, 1958.

Released: June 30, 1958.

FEDERAL COMMUNICATIONS COMMISSION,
[SEAL] MARY JANE MORRIS,
*Secretary.*

1. Section 1.311 (b) of the Commission's rules is amended to read as follows:

(b) Requests to amend an application after it has been designated for hearing will be considered only upon written petition properly served upon the parties of record, and will be granted only for good cause shown. If the granting of such petition would permit a grant of the amended application or an application theretofore in conflict with the amended application, such petition must be accompanied by an affidavit as to whether or not consideration has been promised to or received by petitioner, directly or indirectly, in connection with the filing of such petition for amendment. The affidavit shall be executed by the applicant, if an individual; a partner of applicant, if a partnership; or an officer of applicant having personal knowledge of the facts, if a corporation or association. If consideration has been received or promised, the application shall be dismissed with prejudice.

2. Section 1.312 (c) of the Commission's rules is amended to read as follows:

(c) Requests to dismiss an application without prejudice after it has been designated for hearing will be considered only upon written petition properly served