# FEDERAL REGISTER

VOLUME 23 NUMBER 181

Washington, Tuesday, September 16, 1958


## TITLE 6—AGRICULTURAL CREDIT

### Chapter III—Farmers Home Administration, Department of Agriculture

Subchapter B—Farm Ownership Loans

[FHA Instruction 443.1]

PART 331—POLICIES AND AUTHORITIES

LOAN INSURANCE CHARGES

Section 331.9 (d) in Title 6, Code of Federal Regulations (21 F. R. 10446), is hereby amended in regard to loan insurance charges on loans involving the deferment of the initial installment on the note, and to read as follows:

§ 331.9 *Sources of funds and terms of loans.* * * *

(d) *Loan insurance charge.* Each insured loan borrower will pay a loan insurance charge in addition to principal and interest payments on his Farm Ownership loan.

(1) *Initial loan insurance charge.* Each insured loan borrower will pay on the date of loan closing an initial loan insurance charge, computed at the rate of one percent of the principal obligation on the note, covering the period from the date of loan closing to the first January 1 thereafter.

(2) *Annual loan insurance charge.* Each insured loan borrower will pay an annual loan insurance charge of one percent of the actual principal obligation remaining unpaid which will include the balance on the note and any unpaid advances made from the insurance fund on behalf of the borrower. Each annual loan insurance charge will be computed on the basis of the principal obligation remaining unpaid as of the date on which each installment on the note is due, and will be paid on or before the date the next succeeding installment is due. (In addition, for notes with deferred payments, the annual loan insurance charge will be established as of each January 1 during the period of deferment of the note installments and will be paid on or before the next succeeding January 1.) Annual loan insurance charges will continue until the loan is paid in full or the mortgaged property is acquired by the Government or until the contract of insurance is otherwise terminated.

(Sec. 41, 50 Stat. 528, as amended; 7 U. S. C. 1015)

Dated: September 10, 1958.

[SEAL] H. C. SMITH,
*Acting Administrator,*
*Farmers Home Administration.*

[F. R. Doc. 58-7539; Filed, Sept. 15, 1958; 8:54 a. m.]

## TITLE 19—CUSTOMS DUTIES

### Chapter I—Bureau of Customs, Department of the Treasury

[T. D. 54682]

PART 1—CUSTOMS DISTRICTS, PORTS, AND STATIONS

PORT OF ENTRY AND PORT OF DOCUMENTATION; MORGAN CITY, LA.

SEPTEMBER 9, 1958.

By virtue of the authority vested in the President by section 1 of the Act of August 1, 1914, 38 Stat. 623 (19 U. S. C. 2), which was delegated to the Secretary of the Treasury by the President by Executive Order No. 10289, September 17, 1951 (3 CFR 1951 Supp., Ch. II), Morgan City, Louisiana, is hereby designated as a Customs port of entry in Customs Collection District No. 20 (New Orleans) effective 30 days after publication of this Treasury decision in the FEDERAL REGISTER.

The customs port of entry at Morgan City, Louisiana, which is hereby also designated a port of documentation, shall include the territory bounded as follows:

Starting at a point where Deer Island Bayou enters the Lower Atchafalaya River, thence northerly along the St. Mary and Terrebonne Parishes boundary lines to the point of intersection of the boundary lines of the parishes of Terrebonne, St. Mary and Assumption, thence along the east side of the boundary line of St. Mary Parish and Assumption Parish to the intersection of the boundary lines of St. Mary, Assumption, and St. Martin Parishes, thence westerly along the boundary line of the Parishes of St. Mary and St. Martin to the west boundary line of Ward 4, St. Mary Parish, thence southerly on the west bank of the Wax Lake Outlet, Wax Lake and Wax Lake Pass and thence in a southeasterly direction along the meandering shore line of Atchafalaya Bay to the point of beginning.

(Continued on p. 7133)

## CONTENTS


| | Page |
|---|---|
| **Agricultural Marketing Service** | |
| Proposed rule making: | |
| Lemons grown in California and Arizona | 7137 |
| Milk in certain marketing areas: | |
| Cincinnati, Ohio, and Dayton-Springfield, Ohio | 7144 |
| Inland Empire and Puget Sound, Wash | 7136 |
| Philadelphia, Pa | 7144 |
| Puget Sound, Wash | 7135 |
| **Agriculture Department** | |
| *See* Agricultural Marketing Service; Farmers Home Administration. | |
| **Army Department** | |
| Notices: | |
| Organization and functions of agencies dealing with public; Office of Chief Signal Officer | 7145 |
| **Atomic Energy Commission** | |
| Proposed rule making: | |
| Financial protection requirements and indemnity agreements | 7145 |
| **Civil Aeronautics Board** | |
| Notices: | |
| Capital Airlines, Inc., postponement of hearing | 7160 |
| **Commerce Department** | |
| *See* Foreign Commerce Bureau. | |
| **Customs Bureau** | |
| Rules and regulations: | |
| Customs districts, ports and stations: | |
| Miscellaneous amendments | 7133 |
| Morgan City, La., designation as Customs port of entry and port of documentation | 7131 |
| **Defense Department** | |
| *See* Army Department. | |
| **Farmers Home Administration** | |
| Rules and regulations: | |
| Farm ownership loans; loan insurance charges | 7131 |
| **Federal Communications Commission** | |
| Notices: | |
| Canadian broadcast stations; list of changes, proposed changes, and corrections in assignments | 7153 |




HeinOnline -- 23 Fed. Reg. 7131 1958

Case 1:99-cv-00550-ECH Document 309-38 Filed 06/30/2008 Page 2 of 8



## CODIFICATION GUIDE—Con.


| | Page |
|---|---|
| **Title 10** | |
| Chapter I: | |
| Part 140 (proposed) | 7145 |
| **Title 19** | |
| Chapter I: | |
| Part 1 (2 documents) | 7131, 7133 |
| **Title 25** | |
| Chapter I: | |
| Part 183 | 7133 |
| **Title 50** | |
| Chapter I: | |
| Part 32 (proposed) | 7134 |
| Part 34 (proposed) | 7134 |
| Part 35 (proposed) | 7135 |


The customs station and port of documentation at Morgan City, Louisiana, which is within the territory described above, shall become part of the port of entry at Morgan City, Louisiana.

Section 1.1 (c), Customs regulations, is amended as follows:

The first sentence of footnote 4 is amended by inserting "and" immediately preceeding the words "at Biloxi, Miss."; by changing the semicolon immediately following the words "(No. 19)" to a period; and by deleting the remainder of the sentence.

The tabulation of customs districts and ports of entry is amended by adding "*Morgan City, La. (including territory described in T. D. 54682)." in the appropriate place in the column headed "Ports of entry" in District No. 20 (New Orleans).

Section 1.2 (d), Customs regulations, is amended by deleting "Morgan City, La." in the column headed "Customs Stations" and on the same line "New Orleans" in the column headed "Ports of Entry having supervision."

Notice of the proposed designation of Morgan City, La., as a customs port of entry was published in the FEDERAL REGISTER of July 8, 1958 (23 F. R. 5170), pursuant to the provisions of section 4 of the Administrative Procedure Act (5 U. S. C. 1003). No objections to this action were received. (MC 192–20.1)

(R. S. 161, as amended, Pub. Law 85–619, 251; 5 U. S. C. 22, 19 U. S. C. 66. Interpret or apply sec. 1, 37 Stat. 434, sec. 1, 38 Stat. 623, as amended, secs. 2, 3, 23 Stat. 118, as amended, 119, as amended; 19 U. S. C. 1, 2, 46 U. S. C. 2, 3)

[SEAL] A. GILMORE FLUES,
*Acting Secretary of the Treasury.*

[F. R. Doc. 58-7503; Filed, Sept. 15, 1958; 8:49 a. m.]

---

[T. D. 54683]

### PART 1—CUSTOMS DISTRICTS, PORTS, AND STATIONS

MISCELLANEOUS AMENDMENTS

SEPTEMBER 9, 1958.

By virtue of the authority vested in the President by section 1 of the act of August 1, 1914, 38 Stat. 623 (19 U. S. C. 2), which was delegated to the Secretary of the Treasury by the President by Executive Order No. 10289, September 17, 1951 (3 CFR, 1951 Supp., Ch. II), the designation of Holeb-Jackman, Maine, as a customs port of entry in Customs Collection District No. 1 (Maine and New Hampshire), is hereby revoked and a new customs port of entry to be known as Jackman, Maine, is hereby designated in said District, which port shall include the townships of Jackman, Sandy Bay, Bald Mountain, Holeb, Attean, Lowelltown, Dennistown, and Moose River, all in the State of Maine.

Section 1.1 (c) of the Customs regulations is amended by deleting "Holeb-Jackman, Maine (E. O. 3609, Jan. 9, 1922) (E. O. 4550, Dec. 8, 1926)." and adding "Jackman, Maine (including the townships of Jackman, Sandy Bay, Bald Mountain, Holeb, Attean, Lowelltown, Dennistown, and Moose River) (T. D. 54683)." in the column headed "Ports of entry" in District No. 1 (Maine and New Hampshire).

Section 1.2 (d) of the Customs regulations is amended by substituting the name "Jackman" for "Holeb-Jackman" in the column headed "Port of Entry having supervision" opposite the listing "Coburn Gore, Maine" in the column headed "Customs Station" in District No. 1.

Customs officers are no longer stationed in St. Andrews, New Brunswick, Canada. Accordingly, the listing of customs offices in § 1.3 of the Customs regulations is amended to read as follows:

| Customs office | Customs district having supervision | Comptroller having supervision |
|---|---|---|
| St. John, New Brunswick (winter). | Maine and New Hampshire. | Boston, Mass. |
| Montreal, Quebec | Vermont | Boston, Mass. |
| Toronto, Ontario | Buffalo | New York, N. Y. |
| Vancouver, British Columbia. | Washington | San Francisco, Calif. |
| Prince Rupert, British Columbia. | Alaska | San Francisco, Calif. |

Notice of the proposed revocation of Holeb-Jackman, and designation of Jackman as a customs port of entry was published in the FEDERAL REGISTER of July 3, 1958 (23 F. R. 5093), pursuant to the provisions of section 4 of the Administrative Procedure Act (5 U. S. C. 1003). No objections to this action were received. Inasmuch as railroad operations have already been transferred from Holeb, Maine, to Jackman Station, Maine, it is considered in the best interest of the public that this action be put in effect as soon as possible. For this reason it is found that compliance with the effective date limitations of section 4 (c) of that Act serves no good purpose. This Treasury decision shall, therefore, be effective upon publication in the FEDERAL REGISTER. (MC 192–1.1)

(R. S. 161, as amended, Pub. Law 85–619, 251; 5 U. S. C. 22, 19 U. S. C. 66. Interpret or apply sec. 1, 37 Stat. 434, sec. 1, 38 Stat. 623, as amended; 19 U. S. C. 1, 2)

[SEAL] A. GILMORE FLUES,
*Acting Secretary of the Treasury.*

[F. R. Doc. 58-7504; Filed, Sept. 15, 1958; 8:50 a. m.]

## TITLE 25—INDIANS

### Chapter I—Bureau of Indian Affairs, Department of the Interior

#### Subchapter Q—Oil and Gas

#### PART 183—LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING

PAYMENT OF ANNUAL RENTAL ON OIL AND GAS LEASES AND LOCATION OF LOCAL REPRESENTATIVES OF LESSEES AND ASSIGNEES

On pages 5093 and 5094 of the FEDERAL REGISTER of July 3, 1958, there was published a notice of intention to amend §§ 183.4, 183.16, 183.42, and 183.43 of 25 CFR. The purpose of the amendments is to require that the annual rental in lieu of drilling on oil and gas leases on the Osage Indian Reservation shall be paid annually in advance, and to permit the appointment of a local representative of a lessee or assignee of an Osage oil and gas lease to be located any place within the State of Oklahoma, instead of only within the City of Pawhuska.

Interested persons were given an opportunity to submit their views, data, and arguments concerning the proposed amendment to the Commissioner of Indian Affairs within 30 days of the date of publication of the notice in the FEDERAL REGISTER. No objections were received.

The proposed amendments to §§ 183.4, 183.16, 183.42, and 183.43 are hereby adopted as set forth below. These amendments are effective upon publication in the FEDERAL REGISTER.

ROGER ERNST,
*Acting Secretary of the Interior.*

SEPTEMBER 9, 1958.

1. The present text of § 183.4 is amended to provide that rental in lieu of drilling shall be paid annually in advance and to read as follows:

§ 183.4 *Drilling obligations.* (a) Lessee shall drill at least one well to the Mississippi Lime, unless oil or gas is found in paying quantities at a lesser depth, on the land covered by his lease, within 12 months from the date of approval of the lease, or the lease may be held for the full five-year primary term without drilling, upon payment to the Superintendent for the lessor of rental at the rate of one dollar per acre per annum, payable annually in advance, beginning one year after the date of approval of the lease. This lease shall terminate as to both parties unless such advance rental shall be received at the Osage Agency or shall have been mailed as indicated by postmark, on or before the due date: *Provided,* That the time within which a well shall be drilled shall not begin to run on any restricted homestead selection until the consent of the Superintendent to drilling on such homestead shall have been given, nor shall advance rental become due until the next anniversary date of the lease following the date of such consent: *Provided further,* That the Superintendent in his discretion may direct the drilling of any undrilled lease, if in his opinion

HeinOnline -- 23 Fed. Reg. 7133 1958

the interests of the Osage Tribe warrant: *Provided further*, That whenever the Commissioner of Indian Affairs shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on this lease. The completion of a well to the Mississippi Lime, or production of oil or gas in paying quantities from a lesser depth than the Mississippi Lime, for such time as such production shall continue, after the lease has entered a rental status, shall relieve the lessee from any further payment of rentals for the balance of the primary term of the lease for which rental has not been paid. Should such production cease, rental shall commence on the next anniversary date of the lease. Rental shall be paid on the basis of a full year, and no refund will be made of advance rental paid in compliance with the regulations in this part.

(b) Prior to the expiration of a term of a lease, the Osage Tribal Council may, with the approval of the Superintendent, and a finding by him that such action is in the best interest of the Osage Tribe, grant an extension of the term of the lease for a period of not to exceed six months for the purpose of enabling the lessee to drill a well to the Mississippi Lime unless oil or gas is found in paying quantities at a lesser depth.

2. The present text of § 183.16 is amended to conform to the provisions of § 183.4 and to provide that no refund of annual rental will be made if a lease is cancelled during the year, and to read as follows:

§ 183.16 *Surrender of lease.* The oil lessee may at any time, by paying to the Superintendent the sum of one dollar, surrender all or any quarter-section or fractional part of quarter-section where the lease does not cover the full quarter-section, and have the lease cancelled as to the lands, surrendered; and be relieved from all further obligations and liabilities thereunder, as to the part surrendered: *Provided*, That if this lease has been recorded, the lessee shall execute a release and record the same in the proper office. Such surrender shall not entitle the lessee to a refund of the unused portion of rental paid in lieu of development, nor shall it relieve the lessee and his sureties of any obligation incurred prior to such surrender.

3. Section 183.42 is deleted for the reason that its provisions are included in § 183.4, as amended.

4. The present text of § 183.43 is amended to permit a local representative of a lessee or assignee to be located any place within the State of Oklahoma instead of the City of Pawhuska, and to read as follows:

§ 183.43 *Lessee's process agents.* (a) Before actual drilling or development operations are commenced on leased lands, the lessee or assignee shall appoint a local or resident representative within the State of Oklahoma, on whom the Superintendent or other authorized representative of the Department may serve notice, or otherwise communicate with in securing compliance with the regulations in this part, and shall notify the Superintendent of the name and post office address of the representative so appointed.

(b) Where several parties own a lease jointly, only one representative or agent need be designated, whose duties shall be to act for all parties concerned. Designation of such representative should be made by the party in charge of operations.

(c) In the event of the incapacity or absence from the State of such designated local or resident representative, the lessee shall appoint some person to serve in his stead, and in the absence of such representative or of notice of the appointment of a substitute any employee of the lessee upon the leased premises, or the contractor or other person in charge of drilling or related operations thereon, shall be considered the representative of the lessee for the purpose of service of orders or notices as herein provided and service upon any such employee, contractor, or other person shall be deemed service upon the lessee.

(Sec. 3, 34 Stat. 543)

[F. R. Doc. 58-7492; Filed, Sept. 15, 1958; 8:47 a. m.]

# PROPOSED RULE MAKING

## DEPARTMENT OF THE INTERIOR

### Fish and Wildlife Service

### [ 50 CFR Part 32 ]

TISHOMINGO NATIONAL WILDLIFE REFUGE, OKLAHOMA

HUNTING

Notice is hereby given that pursuant to the authority contained in section 10 of the Migratory Bird Conservation Act of February 18, 1929 (45 Stat. 1224; 16 U. S. C. 715i), and under authority delegated by Commissioner's Order 4 (22 F. R. 8126), it is proposed to add § 32.169 to Subpart—Tishomingo National Wildlife Refuge, Oklahoma, Title 50, Code of Federal Regulations, to read as set forth in tentative form below. The purpose of this amendment is to provide for the hunting of migratory game birds and resident game birds and mammals on certain lands of the Tishomingo National Wildlife Refuge under certain limitations and subject to compliance with the laws and regulations of the State of Oklahoma.

Interested persons may submit in duplicate written comments, suggestions, or objections with respect to the proposed amendment to the Director, Bureau of Sport Fisheries and Wildlife, Washington 25, D. C., within thirty days of the date of publication of this notice in the FEDERAL REGISTER.

Dated: September 10, 1958.

D. H. JANZEN,
*Director,*
*Bureau of Sport Fisheries and Wildlife.*

§ 32.169 *Hunting permitted.* Subject to compliance with the provisions of Parts 6, 18, and 21 of this chapter, the hunting of migratory game birds and resident game birds and mammals is permitted on the hereinafter described lands of the Tishomingo National Wildlife Refuge, Oklahoma, subject to the following conditions, restrictions, and requirements:

(a) *Hunting area.* The following described area is open to hunting:

All of the lands of the Tishomingo National Wildlife Refuge lying west of old State Highway No. 99.

(b) *State laws.* Strict compliance with all State laws and regulations is required.

(c) *Hunting dogs.* Hunting dogs, not to exceed two per hunter, may be used for the purpose of hunting and retrieving, but such dogs shall not be permitted to run at large on the refuge.

(d) *Use of boats.* Subject to the provisions of Part 6 of this chapter, the use of boats for the purpose of hunting is permitted: *Provided*, That the use of air-thrust or scull boats is prohibited.

(e) *Checking stations.* Hunters, upon entering or leaving the hunting area, shall report at such checking stations as may be established for regulating the hunting.

(f) *State cooperation.* State cooperation may be enlisted in the regulation, management, and operation of the public hunting area, and the State may promulgate such special regulations as may be necessary for such regulation, management, and operation. In the event such State regulations are promulgated, compliance therewith shall be a requisite to lawful entry for the purpose of hunting.

[F. R. Doc. 58-7489; Filed, Sept. 15, 1958; 8:46 a. m.]

### [ 50 CFR Part 34 ]

CHASSAHOWITZKA NATIONAL WILDLIFE REFUGE, FLORIDA

HUNTING

Notice is hereby given that pursuant to the authority contained in section 10 of the Migratory Bird Conservation Act of February 18, 1929 (45 Stat. 1224; 16 U. S. C. 715i), and under authority delegated by Commissioner's Order 4 (22 F. R. 8126), it is proposed to add to

# CUMULATIVE POCKET SUPPLEMENT

# TO THE . . . CODE OF FEDERAL REGULATIONS

Title 25—Indians

AS OF JANUARY 1 1959

For changes on and after January 1, 1959, see the daily issues of the Federal Register

partment

*Cite this Pocket Supplement* 1958 SUPP.

*thus:* 25 CFR, 1958 SUPP., 15.25

## Part 174—Leasing of Restricted Lands of Members of Five Civilized Tribes, Oklahoma, for Mining

OPERATIONS

Sec.
174.38 Assignments and [illegible] [Added]

§ 174.38 *Assignments* [illegible] *royalties.* [illegible]

(b) An agreement creating overriding royalties or payments out of production [illegible] oil and gas leases under this part shall be subject to the provisions of § 171.26 [illegible] of this subchapter, or as hereafter amended.

[illegible] 174.38 the heading was [illegible] set forth above, the existing [illegible] designated paragraph (a), and [illegible] (b) was added, 23 F. R. 9758, [illegible] 8

# SUBCHAPTER Q—OIL AND GAS

## Part 183—Leasing of Osage Reservation Lands for Oil and Gas Mining

OIL MINING LEASES

Sec.
183.4 Drilling obligations. [Revised]
183.16 Surrender of lease. [Revised]

HOW TO ACQUIRE LEASES OF TRIBAL LANDS

183.42 Rental period after consent of Superintendent to begin operations on homesteads. [Superseded]
183.43 Lessee's process agents. [Revised]

ASSIGNMENTS

183.46 Approval of lease instruments. [Amended]

OIL MINING LEASES

§ 183.4 *Drilling obligations.* (a) Lessee shall drill at least one well to the Mississippi Lime, unless oil or gas is found in paying quantities at a lesser depth, on the land covered by his lease, within 12 months from the date of approval of the lease, or the lease may be held for the full five-year primary term without drilling, upon payment to the Superintendent for the lessor of rental at the rate of one dollar per acre per annum, payable annually in advance, beginning one year after the date of approval of the lease. This lease shall terminate as to both parties unless such advance rental shall be received at the Osage Agency or shall have been mailed as indicated by postmark, on or before the due date: *Provided*, That the time within which a well shall be drilled shall not begin to run on any restricted homestead selection until the consent of the Superintendent to drilling on such homestead shall have been given, nor shall advance rental become due until the next anniversary date of the lease following the date of such consent: *Provided further*, That the Superintendent in his discretion may direct the drilling of any undrilled lease, if in his opinion the interests of the Osage Tribe warrant: *Provided further*, That whenever the Commissioner of Indian Affairs shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on this lease. The completion of a well to the Mississippi Lime, or production of oil or gas in paying quantities from a lesser depth than the Mississippi Lime, for such time as such production shall continue, after the lease has entered a rental status, shall relieve the lessee from any further payment of rentals for the balance of the primary term of the lease for which rental has not been paid. Should such production cease, rental shall commence on the next anniversary date of the lease. Rental shall be paid on the basis of a full year, and no refund will be made of advance rental paid in compliance with the regulations in this part.

(b) Prior to the expiration of a term of a lease, the Osage Tribal Council may, with the approval of the Superintendent, and a finding by him that such action is in the best interest of the Osage Tribe, grant an extension of the term of the lease for a period of not to exceed six months for the purpose of enabling the lessee to drill a well to the Mississippi

time unless oil or gas is found in paying quantities at a lesser depth.

[23 F. R. 7133, Sept. 16, 1958]

§ 183.16 *Surrender of lease.* The oil lessee may at any time, by paying to the Superintendent the sum of one dollar, surrender all or any quarter-section or fractional part of quarter-section where the lease does not cover the full quarter-section, and have the lease cancelled as to the lands, surrendered: and be relieved from all further obligations and liabilities thereunder, as to the part surrendered: *Provided*, That if this lease has been recorded, the lessee shall execute a release and record the same in the proper office. Such surrender shall not entitle the lessee to a refund of the unused portion of rental paid in lieu of development, nor shall it relieve the lessee and his sureties of any obligation incurred prior to such surrender.

[23 F. R. 7134, Sept. 16, 1958]

HOW TO ACQUIRE LEASES OF TRIBAL LANDS

§ 183.42 *Rental period after consent of Superintendent to begin operations on homesteads.* [Superseded by § 183.4, 23 F. R. 7134, Sept. 16, 1958]

§ 183.43 *Lessee's process agents.* (a) Before actual drilling or development operations are commenced on leased lands, the lessee or assignee shall appoint a local or resident representative within the State of Oklahoma, on whom the Superintendent or other authorized representative of the Department may serve notice, or otherwise communicate with in securing compliance with the regulations in this part, and shall notify the Superintendent of the name and post office address of the representative so appointed.

(b) Where several parties own a lease jointly, only one representative or agent need be designated, whose duties shall be to act for all parties concerned. Designation of such representative should be made by the party in charge of operations.

(c) In the event of the incapacity or absence from the State of such designated local or resident representative, the lessee shall appoint some person to serve in his stead, and in the absence of such representative or of notice of the appointment of a substitute any employee of the lessee upon the leased premises, or the contractor or other person in charge of drilling or related operations thereon, shall be considered the representative of the lessee for the purpose of service of orders or notices as herein provided and service upon any such employee, contractor, or other person shall be deemed service upon the lessee.

[23 F. R. 7134, Sept. 16, 1958]

ASSIGNMENTS

§ 183.46 *Approval of lease instruments.* * * *

(d) *Overriding royalties.* Agreements creating overriding royalties or payments out of production shall not be considered as interests in the leases as such term is used in paragraph (c) of this section. Agreements creating overriding royalties or payments out of production are hereby authorized and the approval of the Department of the Interior or any agency thereof shall not be required with respect thereto, but such agreements shall be subject to the condition that nothing in any such agreement shall be construed as modifying any of the obligations of the lessee, including, but not limited to, obligations for diligent development and operation, protection against drainage, compliance with oil and gas operating regulations in this part, and the requirement for departmental approval before abandonment of any well. All such obligations are to remain in full force and effect, the same as if free of any such royalties or payments. The existence of agreements creating overriding royalties or payments out of production, whether or not actually paid, shall not be considered as justification for the approval of abandonment of any well. Nothing in this paragraph revokes the requirement for approval of assignments and other instruments which is required in this section, but any overriding royalties or payments out of production created by the terms of such assignments or instruments shall be subject to the condition stated above. Agreements creating overriding royalties or payments out of production need not be filed with the Superintendent unless incorporated in assignments or instruments required to be filed pursuant to paragraph (c) of this section.

[Paragraph (d) added, 23 F. R. 9758, Dec. 18, 1958]

# List of Sections Affected

All sections of Title 25 of the Code of Federal Regulations which were affected by documents published in the FEDERAL REGISTER during 1958 are enumerated in the following list. The list includes amendatory documents codified in full in this Pocket Supplement. It also includes documents which were revoked, superseded, or otherwise terminated during 1958.

## 1958

| TITLE 25 | 23 F. R. Page |
|---|---|
| Chapter I: | |
| Part 1: | |
| *Proposed rules* | 5439 |
| Part 15: | |
| 15.25 | 942 |
| Part 33: | |
| 33.4 | 7106 |
| Part 45 | 4739 |
| Part 47: | |
| *Proposed rules* | 6775 |
| Part 73 | 1948 |
| *Proposed rules* | 1076 |
| 73.32 | 2026 |
| 73.35 | 2027 |
| Part 91: | |
| 91.20 | 10123 |
| Part 104 | 7942 |
| *Proposed rules* | 2610 |
| 104.10 | 942 |
| Part 121: | |
| *Proposed rules* | 1699, 7896 |
| 121.51–121.57 | 6494 |
| 121.61 | 6495 |
| Part 130 | 1921 |
| Part 131: | |
| 131.3 | 87 |
| 131.8 | 87 |
| 131.9 | 87 |
| Part 132: | |
| *Proposed rules* | 4456 |
| Part 141: | |
| *Proposed rules* | 9188 |
| Part 163: | |
| *Proposed rules* | 3601, 7181 |
| 163.1 | 6495 |
| Part 171: | |
| *Proposed rules* | 3132, 3862, 5260, 8732 |
| 171.2 | 9393 |
| 171.3 | 7068 |

| TITLE 25—Continued | 23 F. R. Page |
|---|---|
| Chapter I—Continued | |
| Part 171—Continued | |
| 171.26 | 9758 |
| Part 172: | |
| *Proposed rules* | 3132, 7045, 8732 |
| 172.22 | 9758 |
| Part 173: | |
| *Proposed rules* | 3132, 8732 |
| 173.21 | 9758 |
| Part 174: | |
| *Proposed rules* | 3132, 8732 |
| 174.38 | 9758 |
| Part 183: | |
| *Proposed rules* | 3132, 5093 |
| 183.4 | 7133 |
| 183.16 | 7134 |
| 183.42–183.43 | 7134 |
| 183.46 | 9758 |
| Part 184: | |
| *Proposed rules* | 3132, 8732 |
| 184.26 | 9759 |
| Part 217: | |
| *Proposed rules* | 9782 |
| Part 221: | |
| *Proposed rules* | 843, 1173, 2611, 3719, 4102, 9191 |
| 221.6–221.8a | 1255 |
| 221.8b | 1256 |
| 221.12–221.13c | 613 |
| 221.16–221.17 | 4002 |
| 221.24 | 5432 |
| 221.26 | 5432 |
| 221.28 | 5432 |
| 221.48a | 8055 |
| 221.95 | 1807 |
| 221.130–221.133 | 2402 |
| Part 233: | |
| *Proposed rules* | 7897 |
| 233.51 | 9207 |
| 233.53 | 9207 |
| Appendix | 112 |