THE NATIONAL ARCHIVES LITTERA SCRIPTA MANET

# FEDERAL REGISTER

OF THE UNITED STATES 1934

VOLUME 23 NUMBER 246

*Washington, Thursday, December 18, 1958*

## TITLE 33—NAVIGATION AND NAVIGABLE WATERS

### Chapter I—Coast Guard, Department of the Treasury

#### Subchapter L—Security of Waterfront Facilities

[CGFR 58-52]

PART 125—IDENTIFICATION CREDENTIALS FOR PERSONS REQUIRING ACCESS TO WATERFRONT FACILITIES OR VESSELS

COAST GUARD PORT SECURITY CARDS

The United States Coast Guard is authorized to issue Coast Guard Port Security Cards (Form CG-2514) as one means of identification of persons regularly employed on vessels or waterfront facilities or persons having regular public or private business connected with the operation, maintenance, or administration of vessels, their cargoes, or waterfront facilities.

There are presently outstanding Coast Guard Port Security Cards originally issued to holders on applications made during the years since 1951. In many instances the application information furnished by the holders of such cards is outdated. Furthermore, outstanding Coast Guard Port Security Cards bear various expiration dates which have been extended from time to time by notices published in the FEDERAL REGISTER. A new regulation designated 33 CFR 125.12 is added to the regulations by this document in order to provide the Coast Guard with current information concerning the holders of Coast Guard Port Security Cards and to establish a uniform period of validity of eight years from the date of issuance. A person who applies for a new Coast Guard Port Security Card must surrender the old or expired Coast Guard Port Security Card at the time he receives his new one or in event the old Coast Guard Port Security Card was lost, stolen, or destroyed the applicant must comply with the provisions in 33 CFR 125.51, regarding the replacement of a lost Coast Guard Port Security Card.

The Coast Guard Document CGFR 57-3, entitled "Coast Guard Port Security Cards," dated January 22, 1957, and published in the FEDERAL REGISTER January 29, 1957 (22 F. R. 581), which specified the period of validity of a Coast Guard Port Security Card, is canceled and is superseded by the regulations in this document.

Since the security interests of the United States call for the application of the provisions in Executive Order 10173, as amended, and because of the national emergency declared by the President, it is found that compliance with the Administrative Procedure Act (respecting notice of proposed rule making, public rule making procedures thereon, and effective date requirements thereof) is impracticable and contrary to the public interest.

By virtue of the authority vested in me as Commandant, United States Coast Guard, by Executive Order 10173, as amended by Executive Orders 10277 and 10352, the following regulation designated § 125.12 is prescribed and shall become effective on and after January 1, 1959:

§ 125.12 *Period of validity of Coast Guard Port Security Cards.* (a) The Coast Guard Port Security Card (Form CG-2514) shall be valid for a period of eight years from the date of issuance thereof unless sooner suspended or revoked by proper authority. On the first day after eight years from the date of issuance, the Coast Guard Port Security Card (Form CG-2514) is hereby declared invalid and shall be considered null and void for all purposes.

(b) The holder of a Coast Guard Port Security Card, which is about to expire or has expired, may apply for a new Coast Guard Port Security Card in accordance with the procedures set forth in § 125.21. In the event the applicant's Coast Guard Port Security Card has expired, such card shall accompany the application for a new Coast Guard Port Security Card. In the event the applicant is holding a valid Coast Guard Port Security Card at the time he submits his application for a new card, such person shall surrender the old or expired Coast Guard Port Security Card at the time he is issued a new Coast Guard Port Security-

(Continued on next page)

## CONTENTS


| | Page |
|---|---|
| **Agricultural Marketing Service** | |
| Proposed rule making: | |
| Milk in southeastern Florida marketing area | 9761 |
| Nectarines grown in California | 9761 |
| Rules and regulations: | |
| Miscellaneous amendments to chapter; correction | 9752 |
| **Agriculture Department** | |
| *See* Agricultural Marketing Service. | |
| **Atomic Energy Commission** | |
| Notices: | |
| New England Tank Cleaning Co.; notice of issuance of amendment to byproduct material license | 9766 |
| **Civil Aeronautics Administration** | |
| Rules and regulations: | |
| Standard instrument approach procedures; alterations | 9753 |
| **Coast Guard** | |
| Rules and regulations: | |
| Identification credentials for persons requiring access to waterfront facilities or vessels; Coast Guard Security Cards | 9751 |
| **Commerce Department** | |
| *See also* Civil Aeronautics Administration. | |
| Notices: | |
| Reports of appointment and statements of financial interests: | |
| Bean, Richard B | 9765 |
| Sands, James H | 9765 |
| **Customs Bureau** | |
| Rules and regulations: | |
| Drawback; substituted merchandise | 9757 |
| **Fish and Wildlife Service** | |
| Rules and regulations: | |
| Frozen haddock fillets; U. S. standards for grades | 9759 |
| **Indian Affairs Bureau** | |
| Rules and regulations: | |
| Overriding royalties on oil and gas leases; miscellaneous amendments to chapter | 9758 |




HeinOnline -- 23 Fed. Reg. 9751 1958

as the basis for the allowance of drawback on the exported articles;

c. Subparagraph (2) is amended by inserting "in the manufacture or production of articles" after the word "used".

d. Subparagraph (3) is amended to read:

(3) That the exported articles on which drawback is claimed were manufactured or produced either with the use of (i) the designated merchandise, (ii) other merchandise of the same kind and quality as the designated merchandise, or (iii) any combination of the foregoing;

e. Subparagraph (6) is amended by substituting "merchandise" for "sugar, metal, ore containing metal, flaxseed or linseed, or flaxseed or linseed oil, or printing papers, coated or uncoated, or domestic products of any of the foregoing".

3. Section 22.5 (b) and (d) are amended by sustituting "merchandise" for "sugar, metal, ore containing metal, flaxseed or linseed, or flaxseed or linseed oil, or printing papers, coated or uncoated, or domestic products of any of the foregoing".

4. Section 22.5 (c) is amended by substituting "merchandise" for "sugar, metal, ore containing metal, flaxseed or linseed, or flaxseed or linseed oil, or printing papers, coated or uncoated," and by deleting "with the use of such merchandise".

(Secs. 313, 624, 46 Stat. 693, as amended, 759; 19 U. S. C. 1313, 1624)

[SEAL] RALPH KELLY,
*Commissioner of Customs.*

Approved: December 10, 1958.

A. GILMORE FLUES,
*Acting Secretary of the Treasury.*

[F. R. Doc. 58-10433; Filed, Dec. 17, 1958; 8:48 a. m.]

## TITLE 25—INDIANS

### Chapter I—Bureau of Indian Affairs, Department of the Interior

PART 171—LEASING OF TRIBAL LANDS FOR MINING

PART 172—LEASING OF ALLOTTED LANDS FOR MINING

PART 173—LEASING OF LANDS IN CROW INDIAN RESERVATION, MONTANA, FOR MINING

PART 174—LEASING OF RESTRICTED LANDS OF MEMBERS OF FIVE CIVILIZED TRIBES, OKLAHOMA, FOR MINING

PART 183—LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING

PART 184—LEASING OF CERTAIN LANDS IN WIND RIVER INDIAN RESERVATION WYOMING, FOR OIL AND GAS MINING

OVERRIDING ROYALTIES ON OIL AND GAS LEASES

On pages 3132 and 3133 of the FEDERAL REGISTER of May 10, 1958, there was published a notice of intention to add new paragraphs to Parts 171, 172, 173, 174, 183, and 184 of 25 CFR. The purpose of these additions is to permit the payment of overriding royalties on oil and gas leases on Indian tribal and allotted lands. Interested persons were given an opportunity to submit their views, data, or arguments in writing on the proposed additions to the regulations to the Commissioner, Bureau of Indian Affairs, within 30 days from the date of publication of the notice in the FEDERAL REGISTER.

Several objections were made to that part of the proposed additions that provided that agreements creating overriding royalties or payments out of production would require the approval of the Secretary of the Interior. The objections have been thoroughly considered since the expiration of the 30-day period. As a result of such consideration, the additions as proposed have been modified to eliminate the requirement for approval by the Secretary of the Interior of agreements creating overriding royalties or payments out of production. In addition, the proposed additions have been enlarged to specifically state that assignments of leases or other instruments that have heretofore required the approval of the Secretary of the Interior would continue to require such approval.

The proposed additions to the regulations, as modified, are hereby adopted as set forth below. These additions are effective upon publication in the FEDERAL REGISTER.

1. Section 171.26 is amended to change the caption and to add a new paragraph identified as (d), as follows:

§ 171.26 *Assignments and overriding royalties.* * * *

(d) Agreements creating overriding royalties or payments out of production on oil and gas leases shall not be considered as interests in the leases as such term is used in this section. Agreements creating overriding royalties or payments out of production are hereby authorized and the approval of the Department of the Interior or any agency thereof shall not be required with respect thereto, but such agreements shall be subject to the condition that nothing in any such agreement shall be construed as modifying any of the obligations of the lessee, including, but not limited to, obligations for diligent development and operation, protection against drainage, compliance with oil and gas operating regulations (30 CFR Part 221), and the requirement for departmental approval before abandonment of any well. All such obligations are to remain in full force and effect, the same as if free of any such royalties or payments. The existence of agreements creating overriding royalties or payments out of production, whether or not actually paid, shall not be considered as justification for the approval of abandonment of any well. Nothing in this paragraph revokes the requirement for approval of assignments and other instruments which is required in this section, but any overriding royalties or payments out of production created by the terms of such assignments or instruments shall be subject to the condition stated above. Agreements creating overriding royalties or payments out of production need not be filed with the Superintendent unless incorporated in assignments or instruments required to be filed pursuant to this section.

(Secs. 16, 17, 48 Stat. 987, 988, sec. 9, 49 Stat. 1968, sec. 4, 52 Stat. 348; 25 U. S. C. 396d, 476, 477, 509)

2. Section 172.22 is amended to change the caption and to add a new paragraph identified as (d), as follows:

§ 172.22 *Assignments and overriding royalties.* * * *

(d) An agreement creating overriding royalties or payments out of production on oil and gas leases under this part shall be subject to the provisions of § 171.26 (d) of this subchapter, or as hereafter amended.

(35 Stat. 783, as amended; 25 U. S. C. 396)

3. Section 173.21 is amended to change the caption and to add a new paragraph identified as (d), as follows:

§ 173.21 *Assignments and overriding royalties.* * * *

(d) An agreement creating overriding royalties or payments out of production on oil and gas leases under this part shall be subject to the provisions of § 171.26 (d) of this subchapter, or as hereafter amended.

(Sec. 6, 41 Stat. 753, sec. 6, 44 Stat. 659)

4. Section 174.38 is amended to change the caption, to designate the existing text as paragraph (a), and to add a new paragraph identified as (b), as follows:

§ 174.38 *Assignments and overriding royalties.* * * *

(b) An agreement creating overriding royalties or payments out of production on oil and gas leases under this part shall be subject to the provisions of § 171.26 (d) of this subchapter, or as hereafter amended.

(Sec. 2, 35 Stat. 312, sec. 18, 41 Stat. 426, sec. 1, 45 Stat. 495, sec. 1, 47 Stat. 777; 25 U. S. C. 356)

5. Section 183.46 is amended by the addition of a new paragraph, reading as follows:

§ 183.46 *Approval of lease instruments.* * * *

(d) *Overriding royalties.* Agreements creating overriding royalties or payments out of production shall not be considered as interests in the leases as such term is used in paragraph (c) of this section. Agreements creating overriding royalties or payments out of production are hereby authorized and the approval of the Department of the Interior or any agency thereof shall not be required with respect thereto, but such agreements shall be subject to the condition that nothing in any such agreement shall be construed as modifying any of the obligations of the lessee, including, but not limited to, obligations for diligent development and operation, protection against drainage, compliance with oil and gas operating regulations in this part, and the requirement for departmental approval before abandonment of any well. All such obligations are to remain in full force and effect, the same as if free of any such royalties or payments. The existence of

HeinOnline -- 23 Fed. Reg. 9758 1958

agreements creating overriding royalties or payments out of production, whether or not actually paid, shall not be considered as justification for the approval of abandonment of any well. Nothing in this paragraph revokes the requirement for approval of assignments and other instruments which is required in this section, but any overriding royalties or payments out of production created by the terms of such assignments or instruments shall be subject to the condition stated above. Agreements creating overriding royalties or payments out of production need not be filed with the Superintendent unless incorporated in assignments or instruments required to be filed pursuant to paragraph (c) of this section.

(Sec. 3, 34 Stat. 543)

6. Section 184.26 is amended to change the caption, to designate the existing text as paragraph (a), and to add a new paragraph identified as (b), as follows:

§ 184.26 *Assignments and overriding royalties.* * * *

(b) An agreement creating overriding royalties or payments out of production under this part shall be subject to the provisions of § 171.26 (d) of this chapter, or as hereafter amended.

(Sec. 1, 39 Stat. 519)

ROSS LEFFLER,
*Acting Secretary of the Interior.*

DECEMBER 12, 1958.

[F. R. Doc. 58-10418; Filed, Dec. 17, 1958; 8:45 a. m.]

# TITLE 50—WILDLIFE

## Chapter I—Fish and Wildlife Service, Department of the Interior

### Subchapter K—Processed Fishery Products, Processed Products Thereof, and Certain Other Processed Food Products

### PART 174—UNITED STATES STANDARDS FOR GRADES OF FROZEN HADDOCK FILLETS [1]

On November 8, 1958, a notice of proposed rule making was published in the FEDERAL REGISTER (23 F. R. 8732) whereby notice was given of the intention of the Director of the Bureau of Commercial Fisheries to recommend to the Secretary of the Interior, the adoption of United States Standards for Grades of Frozen Haddock Fillets, set forth therein in tentative form, to be codified as Title 50, Code of Federal Regulations, Part 174. Interested persons were given until November 20, 1958, to submit views or comments concerning the proposal.

After consideration of all relevant matters presented, minor modifications in the text of the Standards for Grades of Frozen Haddock Fillets have been made in the interest of clarity. As so modified the standards set forth below, constituting a new Part 174, Title 50, are adopted pursuant to the authority contained in Title II, section 205, of the Agricultural Marketing Act of 1946, as amended (7 U. S. C. 1624) and shall become effective March 1, 1959.

[1] Compliance with the provisions of these standards shall not excuse failure to comply with the provisions of the Federal Food, Drug, and Cosmetic Act.

No. 246——2

Dated: December 12, 1958.

ROSS LEFFLER,
*Acting Secretary of the Interior.*


PRODUCT DESCRIPTION AND GRADES

Sec.
174.1 Product description.
174.2 Grades of frozen haddock fillets.

WEIGHTS AND DIMENSIONS

174.6 Recommended weights and dimensions.

FACTORS OF QUALITY

174.11 Ascertaining the grade.
174.12 Evaluation of the unscored factor of flavor and odor.
174.13 Ascertaining the rating for the factors which are scored; appearance, size, defects, and character.
174.14 Appearance.
174.15 Size.
174.16 Defects.
174.17 Character.

DEFINITIONS AND METHODS OF ANALYSIS

174.21 Definitions and methods of analysis.

LOT CERTIFICATION TOLERANCES

174.25 Tolerances for certification of officially drawn samples.

SCORE SHEET

174.31 Score sheet for frozen haddock fillets.


AUTHORITY: §§ 174.1 to 174.31 issued under sec. 205, 60 Stat. 1090, as amended, sec. 6, 70 Stat. 1122; 7 U. S. C. 1624, 16 U. S. C. 742e. Interpret or apply Bur. Budg. Order Mar. 22, 1958, 23 F. R. 2304.

PRODUCT DESCRIPTION AND GRADES

§ 174.1 *Product description.* The product described in this part consists of clean, whole, wholesome fillets or primarily large pieces of clean, whole, wholesome fillets, cut away from either side of haddock, Melanogrammus aeglefinus; the fillets may be either skinless or with skin on. They are packaged and frozen in accordance with good commercial practice and are maintained at temperatures necessary for the preservation of the product. (This part does not provide for the grading of pieces of fish flesh cut away from previously frozen fish blocks, slabs, or similar products.)

§ 174.2 *Grades of frozen haddock fillets.* (a) "U. S. Grade A" is the quality of frozen haddock fillets that possess a good flavor and odor; and for those factors which are rated in accordance with the scoring system outlined in this part have a total score of 85 to 100 points.

(b) "U. S. Grade B" is the quality of frozen haddock fillets that possess at least a reasonably good flavor and odor; and for those factors which are rated in accordance with the scoring system outlined in this part have a total score of not less than 70 points: *Provided,* That no factor receives maximum point score deduction.

(c) "Substandard" is the quality of frozen haddock fillets that fail to meet the requirements of U. S. Grade B.

WEIGHTS AND DIMENSIONS

§ 174.6 *Recommended weights and dimensions.* (a) The recommendations as to net weights and dimensions of packaged frozen haddock fillets are not incorporated in the grades of the finished product since net weights and dimensions, as such, are not factors of quality for the purpose of these grades.

(b) It is recommended that the net weights of the packaged frozen haddock fillets be not less than 12 ounces and not over 10 pounds.

FACTORS OF QUALITY

§ 174.11 *Ascertaining the grade.* The grade of frozen haddock fillets is ascertained by observing the product in the frozen and thawed states and after representative sample units have been cooked in a suitable manner. The following factors are evaluated in ascertaining the grade of the product: Flavor, odor, appearance, size, defects, and character.

(a) These factors are rated in the following manner:

(1) *Flavor and odor.* These factors are rated by organoleptic examination. Score points are not assessed (see § 174.12).

(2) *Appearance, size, defects, and character.* These factors are rated by score points expressed numerically on the scale of 100.

(b) The four factors and the maximum number of points that may be given each are as follows:

| Factors: | *Points* |
|---|---|
| Appearance | 25 |
| Size | 20 |
| Defects | 40 |
| Character | 15 |
| Total score | 100 |

§ 174.12 *Evaluation of the unscored factor of flavor and odor*—(a) *Good flavor and odor.* "Good flavor and odor" (essential requirement for a Grade A product) means that the fish flesh has good flavor and odor characteristic of haddock (Melanogrammus aeglefinus); and is free from staleness, and off-flavors and off-odors of any kind.

(b) *Reasonably good flavor and odor.* "Reasonably good flavor and odor" (minimum requirement of a Grade B product) means that the fish flesh may be somewhat lacking in good flavor and odor; and is free from objectionable off-flavors and off-odors of any kind.

§ 174.13 *Ascertaining the rating for the factors which are scored; appearance, size, defects, and character.* The essential variations within each factor which is scored are so described that the value may be ascertained for each factor and expressed numerically. Point deductions are allotted for each degree or amount of variation within each factor. The value for each factor is the maximum points allotted for the factor less the sum of the deduction-points within the factor.

§ 174.14 *Appearance.* (a) General: The factor of appearance refers to the color of the fish flesh, and to the degree of surface dehydration of the product.

(b) For the purpose of rating the factor of appearance the schedule of deduction-points in Tables I and II apply. Haddock fillets which receive 25 deduction-points for this factor shall not be graded above Substandard regardless of

HeinOnline -- 23 Fed. Reg. 9759 1958

# CUMULATIVE POCKET SUPPLEMENT

# TO THE . . . CODE OF FEDERAL REGULATIONS

## Title 25—Indians

AS OF JANUARY 1 1959

For changes on and after January 1, 1959, see the daily issues of the Federal Register

partment

*Cite this Pocket Supplement* 1958 SUPP.

*thus:* 25 CFR, 1958 SUPP., 15.25

# SUBCHAPTER O—RIGHTS-OF-WAY—ROADS

## Part 163—Establishment of Roadless and Wild Areas on Indian Reservations

Sec.
163.1 Roadless areas. [Revised]

§ 163.1 *Roadless areas.* A roadless area for the purpose of this part is one which contains no provision for the passage of motorized transportation and which is at least 100,000 acres in forested country or at least 500,000 acres in nonforested country. The following are established as roadless areas on Indian reservations:

| Name of area | Reservation | Approximate acreage |
|---|---|---|
| Rainbow Bridge | Navajo | [illegible] |
| Black Mesa | Navajo | [illegible] |
| Grand Canyon | Hualapai | [illegible] |
| Painted Desert | Navajo | [illegible] |
| Black River | San Carlos and Ft. Apache | [illegible] |
| [illegible] | [illegible] | [illegible] |
| [illegible] | Colville | [illegible] |
| [illegible] | Ft. [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] |

The boundaries of these areas are described in the appendix to this part.[1]

[illegible]

# SUBCHAPTERS P-Q—LANDS; SUBSURFACE ESTATES AND RESOURCES

# SUBCHAPTER P—MINING

## Part 171—Leasing of Tribal Lands for Mining

HOW TO ACQUIRE LEASES

Sec.
171.2 Leases to be made by tribes. [Revised]

RENTS AND ROYALTIES

171.26 Assignments and overriding royalties. [Amended]
171.3 Sale of oil and gas leases. [Amended]

HOW TO ACQUIRE LEASES

§ 171.2 *Leases to be made by tribes.* Indian tribes, bands or groups may, with the approval of the Secretary of the Interior or his authorized representative, lease their land for mining purposes. No oil and gas lease shall be approved unless it has first been offered at an advertised sale in accordance with § 171.3. Leases for minerals other than oil and gas shall be advertised for bids as prescribed in § 171.3 unless the Commissioner grants to the Indian owners written permission to negotiate for a lease. Negotiated leases, accompanied by proper bond and other supporting papers, shall be filed with the Superintendent of the appropriate Indian Agency within 30 days after such permission shall have been granted by the Commissioner to negotiate the lease. The appropriate Area Director is authorized in proper cases to grant a reasonable extension of this period prior to its expiration. The right is reserved to the Secretary of the Interior to direct that negotiated leases be rejected and that they be advertised for bids. All leases shall be approved by the Secretary of the Interior or his duly authorized representative.

[23 F. R. 9393, Dec. 4, 1958]

§ 171.3 *Sale of oil and gas leases.* (a) At such times and in such manner as he may deem appropriate, after being authorized by the tribal council or other authorized representative of the tribe, the superintendent shall publish notices at least thirty days prior to the sale, unless a shorter period is authorized by the Commissioner of Indian Affairs, that oil and gas leases on specific tracts, each of which shall be in a reasonably compact body, will be offered to the highest re-

[1] The appendix to this part appears at 3 F. R. 705, 711, Mar. 22, 1938.

sponsible bidder for a bonus consideration, in addition to stipulated rentals and royalties. Each bid must be accompanied by a cashier's check, certified check, or postal money order, payable to the payee designated in the invitation to bid, in an amount not less than 25 percent of the bonus bid. Within 30 days after notification of being the successful bidder, said bidder must remit the balance of the bonus, the first year's rental, and his share of the advertising costs, and shall file with the superintendent the lease in completed form. The superintendent may, for good and sufficient reasons, extend the time for the completion and submission of the lease form, but no extension shall be granted for remitting the balance of moneys due. If the successful bidder fails to pay the full consideration within said period, or fails to file the completed lease within said period or extension thereof, or if the lease is disapproved through no fault of the lessor or the Department of the Interior, 25 percent of the bonus bid will be forfeited for the use and benefit of the Indian lessor.

[Paragraph (a) amended, 23 F. R. 7068, Sept. 12, 1958]

* * * * *

RENTS AND ROYALTIES

§ 171.26 *Assignments and overriding royalties.* * * *

(d) Agreements creating overriding royalties or payments out of production on oil and gas leases shall not be considered as interests in the leases as such term is used in this section. Agreements creating overriding royalties or payments out of production are hereby authorized and the approval of the Department of the Interior or any agency thereof shall not be required with respect thereto, but such agreements shall be subject to the condition that nothing in any such agreement shall be construed as modifying any of the obligations of the lessee, including, but not limited to, obligations for diligent development and operation, protection against drainage, compliance with oil and gas operating regulations (30 CFR Part 221), and the requirement for departmental approval before abandonment of any well. All such obligations are to remain in full force and effect, the same as if free of any such royalties or payments. The existence of agreements creating overriding royalties or payments out of production, whether or not actually paid, shall not be considered as justification for the approval of abandonment of any well. Nothing in this paragraph revokes the requirement for approval of assignments and other instruments which is required in this section, but any overriding royalties or payments out of production created by the terms of such assignments or instruments shall be subject to the condition stated above. Agreements creating overriding royalties or payments out of production need not be filed with the Superintendent unless incorporated in assignments or instruments required to be filed pursuant to this section.

Codification: In § 171.26 the headnote was amended to read as set forth above, and paragraph (d) was added, 23 F. R. 9758, Dec. 18, 1958.

## Part 172—Leasing of Allotted Lands for Mining

Sec.
172.22 Assignments and overriding royalties. [Amended]

§ 172.22 *Assignments and overriding royalties.* * * *

(d) An agreement creating overriding royalties or payments out of production on oil and gas leases under this part shall be subject to the provisions of § 171.26 (d) of this subchapter, or as hereafter amended.

Codification: In § 172.22, the headnote was amended to read as set forth above, and paragraph (d) was added, 23 F. R. 9758, Dec. 18, 1958.

## Part 173—Leasing of Lands in Crow Indian Reservation, Montana, for Mining

Sec.
173.21 Assignments and overriding royalties. [Amended]

§ 173.21 *Assignments and overriding royalties.* * * *

(d) An agreement creating overriding royalties or payments out of production on oil and gas leases under this part shall be subject to the provisions of § 171.26 (d) of this subchapter, or as hereafter amended.

Codification: In § 173.21, the headnote was amended to read as set forth above, and paragraph (d) was added, 23 F. R. 9758, Dec. 18, 1958.

## Part 174—Leasing of Restricted Lands of Members of Five Civilized Tribes, Oklahoma, for Mining

OPERATIONS


Sec.
174.38 Assignments and [illegible] [Added]


§ 174.38 *Assignments* [illegible] *royalties.* [illegible]

(b) An agreement creating overriding royalties or payments out of production on oil and gas leases under this part shall be subject to the provisions of § 171.26 (d) of this subchapter, or as hereafter amended.

[illegible] § 174.38 the heading was [illegible] set forth above, the exist- [illegible] designated paragraph (a), and [illegible] (b) was added, 23 F. R. 9758, [illegible] 8

# SUBCHAPTER Q—OIL AND GAS

## Part 183—Leasing of Osage Reservation Lands for Oil and Gas Mining

OIL MINING LEASES


Sec.
183.4 Drilling obligations. [Revised]
183.16 Surrender of lease. [Revised]

HOW TO ACQUIRE LEASES OF TRIBAL LANDS

183.42 Rental period after consent of Superintendent to begin operations on homesteads. [Superseded]
183.43 Lessee's process agents. [Revised]

ASSIGNMENTS

183.46 Approval of lease instruments. [Amended]


OIL MINING LEASES

§ 183.4 *Drilling obligations.* (a) Lessee shall drill at least one well to the Mississippi Lime, unless oil or gas is found in paying quantities at a lesser depth, on the land covered by his lease, within 12 months from the date of approval of the lease, or the lease may be held for the full five-year primary term without drilling, upon payment to the Superintendent for the lessor of rental at the rate of one dollar per acre per annum, payable annually in advance, beginning one year after the date of approval of the lease. This lease shall terminate as to both parties unless such advance rental shall be received at the Osage Agency or shall have been mailed as indicated by postmark, on or before the due date: *Provided*, That the time within which a well shall be drilled shall not begin to run on any restricted homestead selection until the consent of the Superintendent to drilling on such homestead shall have been given, nor shall advance rental become due until the next anniversary date of the lease following the date of such consent: *Provided further*, That the Superintendent in his discretion may direct the drilling of any undrilled lease, if in his opinion the interests of the Osage Tribe warrant: *Provided further*, That whenever the Commissioner of Indian Affairs shall consider the marketing facilities inadequate to take care of the production he may direct the suspension of drilling operations on this lease. The completion of a well to the Mississippi Lime, or production of oil or gas in paying quantities from a lesser depth than the Mississippi Lime, for such time as such production shall continue, after the lease has entered a rental status, shall relieve the lessee from any further payment of rentals for the balance of the primary term of the lease for which rental has not been paid. Should such production cease, rental shall commence on the next anniversary date of the lease. Rental shall be paid on the basis of a full year, and no refund will be made of advance rental paid in compliance with the regulations in this part.

(b) Prior to the expiration of a term of a lease, the Osage Tribal Council may, with the approval of the Superintendent, and a finding by him that such action is in the best interest of the Osage Tribe, grant an extension of the term of the lease for a period of not to exceed six months for the purpose of enabling the lessee to drill a well to the Mississippi

time unless oil or gas is found in paying quantities at a lesser depth.

[23 F. R. 7133, Sept. 16, 1958]

§ 183.16 *Surrender of lease.* The oil lessee may at any time, by paying to the Superintendent the sum of one dollar, surrender all or any quarter-section or fractional part of quarter-section where the lease does not cover the full quarter-section, and have the lease cancelled as to the lands surrendered; and be relieved from all further obligations and liabilities thereunder, as to the part surrendered: *Provided*, That if this lease has been recorded, the lessee shall execute a release and record the same in the proper office. Such surrender shall not entitle the lessee to a refund of the unused portion of rental paid in lieu of development, nor shall it relieve the lessee and his sureties of any obligation incurred prior to such surrender.

[23 F. R. 7134, Sept. 16, 1958]

HOW TO ACQUIRE LEASES OF TRIBAL LANDS

§ 183.42 *Rental period after consent of Superintendent to begin operations on homesteads.* [Superseded by § 183.4, 23 F. R. 7134, Sept. 16, 1958]

§ 183.43 *Lessee's process agents.* (a) Before actual drilling or development operations are commenced on leased lands, the lessee or assignee shall appoint a local or resident representative within the State of Oklahoma, on whom the Superintendent or other authorized representative of the Department may serve notice, or otherwise communicate with in securing compliance with the regulations in this part, and shall notify the Superintendent of the name and post office address of the representative so appointed.

(b) Where several parties own a lease jointly, only one representative or agent need be designated, whose duties shall be to act for all parties concerned. Designation of such representative should be made by the party in charge of operations.

(c) In the event of the incapacity or absence from the State of such designated local or resident representative, the lessee shall appoint some person to serve in his stead, and in the absence of such representative or of notice of the appointment of a substitute any employee of the lessee upon the leased premises, or the contractor or other person in charge of drilling or related operations thereon, shall be considered the representative of the lessee for the purpose of service of orders or notices as herein provided and service upon any such employee, contractor, or other person shall be deemed service upon the lessee.

[23 F. R. 7134, Sept. 16, 1958]

ASSIGNMENTS

§ 183.46 *Approval of lease instruments.* * * *

(d) *Overriding royalties.* Agreements creating overriding royalties or payments out of production shall not be considered as interests in the leases as such term is used in paragraph (c) of this section. Agreements creating overriding royalties or payments out of production are hereby authorized and the approval of the Department of the Interior or any agency thereof shall not be required with respect thereto, but such agreements shall be subject to the condition that nothing in any such agreement shall be construed as modifying any of the obligations of the lessee, including, but not limited to, obligations for diligent development and operation, protection against drainage, compliance with oil and gas operating regulations in this part, and the requirement for departmental approval before abandonment of any well. All such obligations are to remain in full force and effect, the same as if free of any such royalties or payments. The existence of agreements creating overriding royalties or payments out of production, whether or not actually paid, shall not be considered as justification for the approval of abandonment of any well. Nothing in this paragraph revokes the requirement for approval of assignments and other instruments which is required in this section, but any overriding royalties or payments out of production created by the terms of such assignments or instruments shall be subject to the condition stated above. Agreements creating overriding royalties or payments out of production need not be filed with the Superintendent unless incorporated in assignments or instruments required to be filed pursuant to paragraph (c) of this section.

[Paragraph (d) added, 23 F. R. 9758, Dec. 18, 1958]

## Part 184—Leasing of Certain Lands in Wind River Indian Reservation, Wyoming, for Oil and Gas Mining

OPERATIONS

Sec.
184.26 Assignments and overriding royalties. [Amended]

§ 184.26 *Assignments and overriding royalties.* * * *

(b) An agreement creating overriding royalties or payments out of production under this part shall be subject to the provisions of § 171.26 (d) of this chapter, or as hereafter amended.

CODIFICATION: In § 184.26, the headnote was amended to read as set forth above, the existing text was designated paragraph (a), and paragraph (b) was added, 23 F. R. 9759, Dec. 18, 1958.

# SUBCHAPTERS R–U—WATER AND POWER RESOURCES

# SUBCHAPTER T—OPERATION AND MAINTENANCE

## Part 221—Operation and Maintenance Charges

COLORADO RIVER INDIAN IRRIGATION PROJECT, ARIZONA

Sec.
221.6 Charges. [Revised]
221.7 Excess water charges. [Revised]
221.7a Charges for stock water. [Revoked]
221.8 Time of payments. [Revised]
221.8a Advance payment may be waived [Revoked]
221.8a Water users responsible for water after delivery. [Redesignated]
221.8b Water users responsible for water after delivery. [Redesignated]

CROW INDIAN IRRIGATION PROJECT, MONTANA

221.12 Charges. [Revised]
221.13 Payment. [Revised]
221.13a Big Horn Irrigation District; charges. [Revised]
221.13b Lower Little Horn and Lodge Grass Irrigation District; charges. [Revised]
221.13c Upper Little Horn Irrigation District; charges. [Revised]

FLATHEAD INDIAN IRRIGATION PROJECT, MONTANA

221.16 Charges, Jocko Division. [Revised]
221.17 Charges, Mission Valley and Camas Divisions. [Revised]

FLATHEAD IRRIGATION DISTRICT, FLATHEAD INDIAN RESERVATION, MONTANA

221.24 Charges. [Revised]

MISSION IRRIGATION DISTRICT, FLATHEAD INDIAN IRRIGATION PROJECT, MONTANA

221.26 Charges. [Revised]

JOCKO VALLEY IRRIGATION DISTRICT, FLATHEAD INDIAN IRRIGATION PROJECT, MONTANA

221.28 Charges. [Revised]

KLAMATH INDIAN IRRIGATION PROJECT

Sec.
221.48a Areas assessable. [Revised]

WIND RIVER IRRIGATION PROJECT, WYOMING

221.95 Charges. [Revised]

BLACKFEET INDIAN IRRIGATION PROJECT MONTANA [REVISED]

221.130 Basic assessment.
221.131 Excess water assessment.
221.132 Payment.

COLORADO RIVER INDIAN IRRIGATION PROJECT, ARIZONA

§ 221.6 *Charges.* Pursuant to the provisions of the acts of Congress approved August 1, 1914, and March 7, 1928 (38 Stat. 583, 45 Stat. 210; 25 U. S. C. 385–387), the annual basic charge against the land to which water can be delivered under the Colorado River Indian Irrigation Project in Arizona, for the operation and maintenance of that project, is hereby fixed at $6 per irrigable acre, whether water is used or not. Payment of this charge will entitle the water user to from six to eight acre-feet of water per acre on certain sandy areas as described in a schedule on file at the Colorado River Indian Agency and available for inspection by interested parties, and to five acre-feet of water per irrigable acre on all other lands. With the approval of the Superintendent excess water may be allowed on certain alkali tracts at no additional charge for the purpose of reclaiming lands by the usual methods, such as flooding, leaching, etc. The foregoing charges and allotments of

# List of Sections Affected

All sections of Title 25 of the Code of Federal Regulations which were affected by documents published in the FEDERAL REGISTER during 1958 are enumerated in the following list. The list includes amendatory documents codified in full in this Pocket Supplement. It also includes documents which were revoked, superseded, or otherwise terminated during 1958.

## 1958


| TITLE 25 | 23 F. R. Page |
|---|---|
| Chapter I: | |
| Part 1: | |
| *Proposed rules* | 5439 |
| Part 15: | |
| 15.25 | 942 |
| Part 33: | |
| 33.4 | 7106 |
| Part 45 | 4739 |
| Part 47: | |
| *Proposed rules* | 6775 |
| Part 73 | 1948 |
| *Proposed rules* | 1076 |
| 73.32 | 2026 |
| 73.35 | 2027 |
| Part 91: | |
| 91.20 | 10123 |
| Part 104 | 7942 |
| *Proposed rules* | 2610 |
| 104.10 | 942 |
| Part 121: | |
| *Proposed rules* | 1699, 7896 |
| 121.51–121.57 | 6494 |
| 121.61 | 6495 |
| Part 130 | 1921 |
| Part 131: | |
| 131.3 | 87 |
| 131.8 | 87 |
| 131.9 | 87 |
| Part 132: | |
| *Proposed rules* | 4456 |
| Part 141: | |
| *Proposed rules* | 9188 |
| Part 163: | |
| *Proposed rules* | 3601, 7181 |
| 163.1 | 6495 |
| Part 171: | |
| *Proposed rules* | 3132, 3862, 5260, 8732 |
| 171.2 | 9393 |
| 171.3 | 7068 |

| TITLE 25—Continued | 23 F. R. Page |
|---|---|
| Chapter I—Continued | |
| Part 171—Continued | |
| 171.26 | 9758 |
| Part 172: | |
| *Proposed rules* | 3132, 7045, 8732 |
| 172.22 | 9758 |
| Part 173: | |
| *Proposed rules* | 3132, 8732 |
| 173.21 | 9758 |
| Part 174: | |
| *Proposed rules* | 3132, 8732 |
| 174.38 | 9758 |
| Part 183: | |
| *Proposed rules* | 3132, 5093 |
| 183.4 | 7133 |
| 183.16 | 7134 |
| 183.42–183.43 | 7134 |
| 183.46 | 9758 |
| Part 184: | |
| *Proposed rules* | 3132, 8732 |
| 184.26 | 9759 |
| Part 217: | |
| *Proposed rules* | 9782 |
| Part 221: | |
| *Proposed rules* | 843, 1173, 2611, 3719, 4102, 9191 |
| 221.6–221.8a | 1255 |
| 221.8b | 1256 |
| 221.12–221.13c | 613 |
| 221.16–221.17 | 4002 |
| 221.24 | 5432 |
| 221.26 | 5432 |
| 221.28 | 5432 |
| 221.48a | 8055 |
| 221.95 | 1807 |
| 221.130–221.133 | 2402 |
| Part 233: | |
| *Proposed rules* | 7897 |
| 233.51 | 9207 |
| 233.53 | 9207 |
| Appendix | 112 |