Pages 5845–5896

THE NATIONAL ARCHIVES OF THE UNITED STATES 1934 LITTERA SCRIPTA MANET

# FEDERAL REGISTER

VOLUME 27 NUMBER 120

Washington, Thursday, June 21, 1962

# Contents


## THE PRESIDENT

### Executive Order

Executive Orders and Proclamations; preparation, presentation, filing, and publication 5847

## EXECUTIVE AGENCIES

### Agricultural Marketing Service

RULES AND REGULATIONS:
Bartlett pears, plums, and Elberta peaches grown in California; grades and sizes 5860

### Agricultural Research Service

NOTICES:
Identification of carcasses of certain humanely slaughtered livestock 5880
RULES AND REGULATIONS:
Overtime services relating to imports and exports; commuted travel time allowances 5849
Tuberculosis in cattle; modified accredited areas 5861

### Agricultural Stabilization and Conservation Service

PROPOSED RULE MAKING:
Milk in Northeastern Wisconsin marketing area; recommended decision and opportunity to file written exceptions on proposed amendments to tentative agreement and order 5874
RULES AND REGULATIONS:
Tobacco; burley, flue-cured, fire-cured, dark air-cured, and Virginia sun-cured; marketing quotas, 1962–63 5849
Wheat marketing quotas, 1961 and subsequent crop years; excess acreage utilization date 5860

### Agriculture Department

*See also* Agricultural Marketing Service; Agricultural Research Service; Agricultural Stabilization and Conservation Service.
NOTICES:
Emergency loans:
Designation of areas:
Arkansas 5883
Kansas 5883
South Dakota 5883
Extension of period; Texas 5883

### Atomic Energy Commission

NOTICES:
Purdue University; extension of completion date 5884
Walter Reed Army Institute of Research; order of extension of completion date 5884

### Civil Aeronautics Board

NOTICES:
Air Freight Forwarders Association; order of tentative approval 5884
West Coast Air Services, Ltd.; Transborder Canadian; cancellation of hearing and notice of prehearing conference 5886

### Federal Aviation Agency

PROPOSED RULE MAKING:
Federal airways, associated control areas, and reporting points; revocations (2 documents) 5876
RULES AND REGULATIONS:
Airworthiness directive; Hughes Model 269A helicopters 5861
Control area extension and Federal airway; alteration 5862
Control zones; alteration and designation 5863
Federal airway, associated control areas and reporting points, revocation; and alteration of control area extension 5861
Federal airway and reporting point; alteration 5862
Jet advisory areas; alteration 5863

### Federal Communications Commission

RULES AND REGULATIONS:
Frequency allocations and aviation services; miscellaneous amendments 5867
Uniform system of accounts for Classes A and B telephone companies; miscellaneous amendments 5868

### Federal Maritime Commission

NOTICES:
Matson Navigation Co. et al.; filing of freight tariff 5886
Sea-Land Service, Inc., et al.; agreements filed for approval 5886

### Federal Power Commission

NOTICES:
*Hearings, etc.:*
Atlantic Seaboard Corp 5890
Austral Oil Co. and Oil Participations, Inc 5890
Caulkins Oil Co. et al 5889
Florida Gas Transmission Co 5892
Hunt, H. L., et al 5890
Monterey Gas Transmission Co. et al 5887

### Federal Trade Commission

RULES AND REGULATIONS:
Prohibited trade practices:
Kusin, Louis M 5863
Ramia, Joseph J., and United Forwarding Service 5864

### Food and Drug Administration

PROPOSED RULE MAKING:
Food additives; filing of petitions (3 documents) 5875, 5876

### Health, Education, and Welfare Department

*See* Food and Drug Administration.

### Housing and Home Finance Agency

NOTICES:
Acting Regional Administrator, Region I, New York; designation 5879


(*Continued on next page*)



HeinOnline -- 27 Fed. Reg. 5845 1962

# Proposed Rule Making

## DEPARTMENT OF THE INTERIOR

### Bureau of Indian Affairs

### [25 CFR Part 183]

### LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING

### Notice of Proposed Rule Making

*Basis and purpose.* Notice is hereby given that pursuant to authority vested in the Secretary of the Interior by section 3 of the Act of June 28, 1906 (34 Stat. 539-543), it is proposed to amend Part 183 as set forth below. The purpose of these amendments is to make minor changes and to clarify some of the language of Part 183.

It is the policy of the Department of the Interior whenever practicable, to afford the public an opportunity to participate in the rule making process. Accordingly, interested persons may submit such written data, views, or arguments as they may desire to the Commissioner of Indian Affairs, Washington 25, D.C., within thirty days of the date of publication of this notice in the FEDERAL REGISTER.

1. Paragraphs (a) and (b) of § 183.2 are amended to read as follows:

**§ 183.2 Royalty payments.**

(a) *Royalty on oil produced by primary or gas injection methods.* The lessee shall pay or cause to be paid to the Superintendent, for the lessor as a royalty, the sum of 16⅔ percent of the gross proceeds from sales after deducting the oil used by the lessee for development and operation purposes on the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs, shall elect to take the royalty in oil; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal: *Provided,* That when the quantity of oil taken from all the producing wells on any quarter-section according to the public survey, or fractional quarter-section if the land covered by the lease does not include the full quarter-section, during any calendar month is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 percent.

(b) *Royalty on oil produced by secondary recovery processes other than gas injection.* When the estimated reserves of oil recoverable by primary and/or gas injection methods from a specified formation or formations have been depleted or partially depleted, the lessee and the Tribal Council may agree upon a new royalty rate to be approved by the Superintendent, the sum to be not less than 12½ percent of the gross proceeds from sales of oil produced by secondary recovery processes, other than gas injection, after deducting the oil used by the lessee for development and operation purposes on the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs, shall elect to take the royalty in oil; payment to be made at the time of sale or removal of the oil, except where payments are made on division orders and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal.

2. Paragraph (a) of § 183.4 is amended to read as follows:

**§ 183.4 Drilling obligations.**

(a) Lessee shall drill at least one well to the Mississippi Lime unless oil or gas is found in paying quantities at a lesser depth, on the land covered by his lease, within 12 months from the date of approval of the lease, or the lease may be held for the full five-year primary term without drilling, upon payment to the Superintendent for the lessor of rental at the rate of one dollar per acre per annum, payable annually in advance, beginning one year after the date of approval of the lease. This lease shall terminate as to both parties unless such advance rental shall be received at the Osage Agency or shall have been mailed as indicated by postmark, on or before the due date: *Provided,* That the time within which a well shall be drilled shall not begin to run on any restricted homestead selection until the consent of the Superintendent to drilling on such homestead shall have been given, nor shall advance rental become due until the next anniversary date of the lease following the date of such consent: *Provided further,* That the Superintendent in his discretion may order the drilling of any lease, if in his opinion the interests of the Osage Tribe warrant: *Provided further,* That whenever the Commissioner of Indian Affairs shall consider the marketing facilities inadequate to take care of the production he may direct suspension of drilling operations on this lease. The completion of a well to the Mississippi Lime, or production of oil or gas in paying quantities from a lesser depth than the Mississippi Lime, for such time as production shall continue, after the lease has entered a rental status, shall relieve the lessee from any further payment of rentals for the balance of the primary term of the lease for which rental has not been paid. Should such production cease, rental shall commence on the next anniversary date of the lease. Rental shall be paid on the basis of a full year, and no refund will be made of advance rental paid in compliance with the regulations in this part.

3. Paragraph (a) of § 183.5 is amended to read as follows:

**§ 183.5 Use of surface lands; settlement of damages to lands and crops.**

(a) Lessee shall have the right to use so much of the surface of the land within the Osage Reservation as may be reasonable for operations, including the right to lay and maintain pipelines, telephone and telegraph lines, pull rods and other appliances necessary for the operation of the wells, also the right of ingress and egress, and the right-of-way to any point of operations. Lessee may use water from streams and natural water courses for lease operations as set out in § 183.57. Before commencing operations for the drilling of any well the lessee shall pay to the surface owner the sum of $200 for each well located on culitvated land (tilled or cultivated within the immediately preceding three years, and including hay-meadow land), $150 for open pasture land, and $100 for such location on brush or wooded lands, and other lands not suitable for cultivation. Upon payment of such location site money, lessee shall be entitled to possession. Location sites shall be held to the minimum area essential for operations, and in no event shall exceed one and one-half acres in area. Lessee shall also pay tank site fees at the rate of $20 per tank of not exceeding 1,000 barrels capacity: *Provided, however,* That no tank site fee shall be paid for a tank temporarily set on a well location site for testing purposes during the completion of the well. Tank sites shall be held to the minimum area essential to efficient operations, and in no event shall exceed an area of 50 feet square per tank. The sum to be paid for an oil tank site of larger capacity and occupying a greater area shall be agreed upon between the surface owner and the lessee and on failure to agree, the same shall be fixed by arbitration.

4. Paragraph (a) of § 183.24 is amended to read as follows:

**§ 183.24 Royalty on casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from gas, drip gasoline, or other natural condensate.**

(a) A royalty of 16⅔ percent of the gross proceeds of sales shall be paid on the value of one-third (or the lessee's portion if greater than one-third) of all casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from the gas produced from the leasehold. The value of the remainder is an allowance for the cost of manufacture, and no royalty thereon is required. The royalty shall be computed on the sale price received by the manufacturers of such products, or such higher price the lessee may receive, the same to be reported under oath and remitted to the Superintendent not later than the 25th of the succeeding month for all such products sold during the



HeinOnline -- 27 Fed. Reg. 5871 1962

previous month. If the manufacturer of any product extracted from casing-head gas produced from an Osage leasehold should sell his product at a price below that obtained by other manufacturers selling such product in the open market during a particular month, the Superintendent shall notify said manufacturer of such discrepancy and require settlement for royalty upon the average price obtained by manufacturers selling such product in the open market during the same period. The place of sale of liquid hydrocarbon extracted from gas, for royalty purposes, shall be at the plant where manufactured.

5. The caption of § 183.39 and paragraph (b) thereof are amended to read as follows:

**§ 183.39 Sale of oil leases and gas leases.**

* * * * *

(b) The Superintendent, with the consent of the Osage Tribal Council, may at such times and in such manner as shall be deemed appropriate, publish and distribute notices that oil leases and/or gas leases on specific tracts of unleased tribal lands, each of which shall be a compact body, will be offered for sale to the highest responsible bidder: *Provided*, That not less than 25,000 acres of the unleased portion of the Osage mineral reserve shall be offered for lease during any one year. Successful bidders must deposit with the Superintendent on day of sale, a check, or bank draft on a solvent bank in an amount equal to 25 percent of the bonus as a guaranty of good faith. The balance of the bonus, together with a $10 filing fee for each lease, shall be paid, and the lease in completed form with necessary accompanying papers shall be filed with the Superintendent within 20 days after the lease is forwarded by the Superintendent, to the lessee for execution, unless such period has been extended by the Superintendent for good and sufficient reason. If the successful bidder fails to complete the lease or to pay the full consideration within 20 days or an authorized extension thereof, or if the lease is disapproved through no fault of the lessor or the Department of the Interior, the amount deposited as a guaranty of good faith shall be forfeited for the use and benefit of the lessor. Any and all bids shall be subject to acceptance by the Osage Tribal Council. The Superintendent may disapprove a lease made on an accepted bid, upon evidence satisfactory to him of collusion, fraud or other irregularity in connection with the sale of the lease. At a public auction sale the Superintendent may require any bidder to submit satisfactory evidence of good faith, that he has the cash in hand or at his command, and to furnish whenever called upon by the Superintendent during the progress of the sale, authenticated statement of a solvent bank to the effect the bidder has the means to purchase the lease.

6. Section 183.40 is amended to read as follows:

**§ 183.40 Corporation and corporate information.**

(a) If a successful bidder for a lease is a corporation, it shall file a statement showing:

(1) The state of incorporation and that the corporation is authorized to do business in the state where the land to be leased is situate;

(2) That it has power to hold and operate mining leases;

(3) That the officer executing the lease is authorized to act on behalf of the corporation in such matters.

(b) Whenever deemed advisable in any case the Area Director or Superintendent may require a corporation to file any additional information necessary to carry out the purposes and intent of the regulations in this part and such information shall be furnished within a reasonable time.

7. Section 183.45 is amended to read as follows:

**§ 183.45 Reports and time of royalty payments.**

Royalties on all oil and gas, including casing-head gas or on gasoline manufactured therefrom, produced in any month, shall be paid on or before the 25th of the month next succeeding by either purchaser or lessee. Failure to so remit will subject the lessee to fines as hereinafter indicated, and also subject division order to cancellation. Lessees shall also furnish monthly reports covering all operations whether there has been production or not, indicating therein the total amount of oil, gas, or gasoline sold and not merely their working interest, and also dates of discovery and beginning of utilization of gas from gas wells. The lessee may include in one statement all leases upon which dry holes have been drilled or the wells have ceased to produce.

8. Paragraphs (b) and (c) of § 183.46 are amended to read as follows:

**§ 183.46 Approval of lease instruments.**

* * * * *

(b) *Utilization of oil leases.* As a consideration for further development by a secondary recovery process, two or more oil leases may be unitized and merged in a single blanket lease with the approval of the Superintendent. The instrument of unitization (blanket lease) shall include all the requirements and provisions of sections numbered 1, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19 and 20 of Osage oil lease Form B: *Provided*, That the preamble of Form B and the provisions of section numbered 2 in respect to royalty rates; section numbered 3 in respect to payment of rental; section numbered 4 in respect to payment of well site and tank location fees; and section numbered 14 in respect to the surrender of the lease may be modified and/or supplemented by the parties, with the approval of the Superintendent, to the extent deemed appropriate for the equitable and efficient conduct of unitized operations, and not otherwise in conflict with the regulations in this part. Lessee(s) shall before commencing secondary recovery operations, and on or before December 31st of each year thereafter, submit to the Superintendent an acceptable plan of development and operation for the unit area for the ensuing year. Upon a finding by him that such action would be in the best interest of the Osage Tribe, the Superintendent may also approve an agreement between the lessor and the lessee(s) rescinding a unit (blanket lease) and restoring to their original status the Form B leases theretofore merged in the unit lease: *Provided*, That if oil is being produced in paying quantities on a particular quarter-section tract on the date of approval of such agreement, the lessee shall be entitled to hold such tract under terms of the original Form B lease so long as oil is produced on said tract in paying quantities.

(c) *Assignments.* Approved leases or any interest therein may be assigned with the approval of the Superintendent, and not otherwise. Assignments, when approved, shall be subject to the terms and conditions of the original leases, and the regulations under which such leases were approved. In order for an assignment to receive favorable consideration, the lessee shall assign either his whole interest in a legal subdivision or an undivided interest in the whole lease. If a lease is divided by the assignment of an entire interest in any part of it, each part shall be considered a separate lease under all the terms and conditions of the original lease. The assignee shall furnish with his assignment a satisfactory bond as provided in § 183.20(c). Any attempt to assign an approved lease or any interest therein without the consent and approval of the Superintendent shall be absolutely void and shall subject the original lease to cancellation in the discretion of the Superintendent.

9. Section 183.49 is amended to read as follows:

**§ 183.49 Commencement of operations.**

No drilling or development operations shall be permitted upon any tract of land until a lease covering such tract shall have been approved by the Superintendent or such operations specifically authorized by him: *Provided*, That the Superintendent may grant authority to any party, under such rules (consistent with the regulations in this part) that he deems proper, to conduct geophysical and geological exploration work in any portion, or all of the Osage Reservation.

10. Paragraph (b) of § 183.51 is amended to read as follows:

**§ 183.51 Well location fees.**

* * * * *

(b) Where the surface owner is a restricted Indian, adult or minor, the well location fee shall be paid to the Superintendent of the Osage Agency for such Indian. All other surface owners, whether Indians or non-Indians shall be paid or tendered such fees direct, and where such surface owners are not resi-

HeinOnline -- 27 Fed. Reg. 5872 1962

dents of Osage County nor have a representative located therein, such payments shall be made or tendered by check, postage prepaid, to last known address of said surface owner at least 5 days before commencing drilling operations on any well: *Provided*, That should the lessee be unable to reach the owner of the surface of the land for the purpose of tendering the location fee, or if owner of the surface of the land upon being tendered the location fee by the lessee, shall refuse to accept the same, the lessee may tender the location fee to the Superintendent of the Osage Agency, and if the lessee and the Superintendent shall agree upon the amount of the location fee, the lessee shall deposit such amount with the Superintendent for payment to the owner of the surface of the land upon demand, and the Superintendent shall thereupon advise the owner of the surface of the land by mail at his last known address, that the location fee is being held for payment to him upon his written request.

(Sec. 3, 34 Stat. 543)

11. Section 183.62 is changed to read as follows:

**§ 183.62 Permission to start operations.**

Written permission must be secured from the Superintendent before operations are started on the leased premises. Lessee shall submit application for such permission, on forms to be furnished by the Superintendent.

12. Section 183.73 is changed to read as follows:

**§ 183.73 Determining cost of well.**

The term "cost price of a well" as applied where one lessee takes over a well drilled by another, shall include all reasonable, usual, necessary and proper expenditures including the following expenditures made by the lessee drilling the well.

(a) All location, or other surface damages occasioned by the drilling of such well.

(b) All expenses of laying, taking up, repairing, operating and maintaining gas and water lines where such lines including amount paid for water privilege or constructing dam, are used for the exclusive purpose of drilling the particular well.

(c) Customary charge for furnishing water where purchased shall be the price prevailing in the particular locality: *Provided*, Where the parties cannot agree upon the charge made under this paragraph such charge shall be determined by the Superintendent.

(d) Amounts expended in spudding or drilling a water well: *Provided*, That where any or all of the facilities referred to in this paragraph and in paragraphs (b) and (c) of this section are not employed exclusively in connection with the drilling of the well to be taken over, or are also used in connection with the drilling or operation of other wells by the lessee drilling the well to be taken over by the other lessee, then a fair proportion of the charges covered by this paragraph and paragraphs (b) and (c) of this section shall be assessed against each well, including the well to be taken over, and in the event of a disagreement between the parties as to the charges assessed against the well that is to be taken over, such charge shall be fixed by the Superintendent.

(e) Customary charge for drilling and reaming, except where reaming is done for the sole benefit of party drilling well. If price charged for drilling is above the average drilling price in the field, the price to be paid shall be determined by the Superintendent. *Provided*, That where the well to be taken over is drilled below the stratum in which the lessee taking over the well is interested, that is, the gas stratum in the case of a well taken over by a gas lessee, and the oil stratum in a well taken over by the oil lessee, then the lessee doing such further drilling shall sustain the cost of drilling and reaming where such drilling and reaming are done below such stratum.

(f) All expenses of mudding, except where mudding is done for the sole benefit of the lessee drilling the well.

(g) Settlement for casing or other pipe left in the well to be made at the prevailing market price for the character and kind of casing when placed in the well.

(h) All expenses of placing and removing all casing or other pipe used in drilling said well.

(i) A reasonable charge to cover supervision and overhead expenses: *Provided*, Where the parties cannot agree upon the charge made under this paragraph, such charge shall be determined by the Superintendent.

(j) Any additional charges which cannot be mutually agreed upon shall be submitted to and determined by the Superintendent. An approximate list of expenses mentioned in this section shall be presented to proposed purchasing lessee within 10 days after the completion of the well.

13. Section 183.81 is amended to read as follows:

**§ 183.81 Abandonment of wells.**

Lessee shall not abandon any well for the purpose of drilling deeper for oil or gas unless the producing stratum is properly protected and shall not abandon any well producing oil or gas except with the approval of the Superintendent or where it can be demonstrated that the further operation of such well is commercially unprofitable. When any well is plugged and abandoned lessee shall, within ninety (90) days, clean up the premises around such well to the satisfaction of the Superintendent or his authorized representative: *Provided*, That the ninety (90) day period may be extended a reasonable time in the discretion of the Superintendent.

14. Section 183.88 is amended to read as follows:

**§ 183.88 Division orders.**

(a) The lessee may make arrangements with the purchasers of oil for the payment of the royalty, but such arrangements, if made, shall not relieve the lessee from responsibility for the payment of the royalty, should such purchaser fail, neglect, or refuse to pay the royalty when it becomes due. No oil shall be run to any purchaser or delivered to the pipeline or other carrier for shipment, or otherwise conveyed or removed from the leased premises, until a division order is executed, filed, and approved by the Superintendent, showing that the lessee has a regularly approved lease in effect, and the conditions under which the oil may be run: (*Provided*, That the Superintendent may grant temporary permission to run oil from a lease pending the execution, filing, and approval by him of a division order.) lessees shall be required to pay for all oil or gas used off the leased premises for operating purposes; affidavit shall be made as to the production used for such purposes and royalty paid in the usual manner. The lessee or his representative shall be present when oil is taken from the leased premises under any division order and will be responsible for the correct measurement thereof and shall report all oil so run.

(b) The lessee shall also authorize the pipeline company or the purchaser of oil to furnish the Superintendent with a monthly statement, not later than the 20th day of the following calendar month, of the gross barrels run as a common-carrier shipment or purchased from his lease or leases.

15. Paragraph (b) of § 183.93 is amended to read as follows:

**§ 183.93 Forms.**

* * * * *

(b) All sums received from sale of forms and fines shall be placed in Tribal Funds.

16. Section 183.94 is amended to read as follows:

**§ 183.94 Amount of fee.**

A fee of $10 will be charged for each lease, each sublease, each drilling contract affecting oil and gas mining leases, and each assignment of lease, such amount to be paid by the lessee, sublessee or assignee upon notice of approval of the contract, as provided by the act of February 14, 1920.

JOHN A. CARVER, Jr.,
*Assistant Secretary of the Interior.*

JUNE 15, 1962.

[F.R. Doc. 62-6047; Filed, June 20, 1962; 8:47 a.m.]

## Bureau of Land Management

## [ 43 CFR Parts 115, 259 ]

## REVESTED OREGON AND CALIFORNIA RAILROAD AND RECONVEYED COOS BAY WAGON ROAD GRANT LANDS IN OREGON

### Disposal of Timber and Mineral Resources

*Basis and purpose*. Notice is hereby given that pursuant to the authority vested in the Secretary of the Interior by the Act of August 28, 1937 (50 Stat. 874) and the Act of July 31, 1947 (61 Stat. 681) as amended, it is proposed to amend 43 CFR 115.22 and 259.9 as set