Pages 9495–9548

FEDERAL REGISTER

VOLUME 27 NUMBER 187

Washington, Wednesday, September 26, 1962

# Contents


## THE PRESIDENT

### Proclamation

National Safety Council Fiftieth Anniversary Year — 9497

## EXECUTIVE AGENCIES

### Agricultural Marketing Service

NOTICES:
Fresh cranberries; notice of purchase program DMP 181a — 9523
PROPOSED RULE MAKING:
Filberts grown in Oregon and Washington; free and restricted percentages, 1962–63 fiscal year — 9520
Tobacco inspection; standards — 9517
RULES AND REGULATIONS:
Shipments limitations; Irish potatoes grown in:
Colorado — 9509
Modoc and Siskiyou Counties, California, and all counties in Oregon except Malheur County — 9508

### Agricultural Research Service

NOTICES:
Handling of anti-hog-cholera serum and hog-cholera virus; decision and determination re special inventory dates for 1963 — 9523
PROPOSED RULE MAKING:
Scabies in sheep; addition of Oklahoma to list of eradication areas — 9521

### Agriculture Department

*See also* Agricultural Marketing Service; Agricultural Research Service.
NOTICES:
Missouri and New Mexico; designation of areas for emergency loans — 9524

### Atomic Energy Commission

NOTICES:
Pennsylvania State University; notice of issuance of facility license amendment — 9524

### Civil Aeronautics Board

NOTICES:
Alaska Air Forwarding Corp. et al.; joint application for approval of control and interlocking relationships; order of tentative approval — 9525
International Air Transport Association; agreement relating to specific commodity rates — 9525

### Comptroller of the Currency

NOTICES:
Brookline Savings and Trust Co. and First National Bank at Derry; notice of report on competitive factors involved in merger application — 9522

### Federal Aviation Agency

RULES AND REGULATIONS:
Alteration of positive control area, continental control area, federal airways, and alteration and revocation of restricted areas — 9510
Control zones; alterations (3 documents) — 9511
Federal airway; alteration — 9509
Federal airway, associated control areas and reporting point; revocation — 9510
Transition area; alteration — 9511

### Federal Maritime Commission

NOTICES:
A. P. Moller-Maersk Line joint service et al.; notice of agreements filed for approval — 9526

### Federal Power Commission

NOTICES:
*Hearings, etc.:*
Connecticut Light and Power Co — 9526
Texaco, Inc — 9526
Weva Oil Corp — 9527
RULES AND REGULATIONS:
Practice, procedures, and organization; miscellaneous amendments — 9499
Rate schedules and tariffs; filings by pipeline companies; changes in a tariff, executed service agreement or part thereof — 9500

### Fish and Wildlife Service

RULES AND REGULATIONS:
Certain lands within and adjacent to Sabine National Wildlife Refuge, Louisiana; area closed to hunting — 9516

### Food and Drug Administration

PROPOSED RULE MAKING:
Methyl salicylate; oil of wintergreen; establishment of tolerances for residues — 9521

### Health, Education, and Welfare Department

*See* Food and Drug Administration.

### Indian Affairs Bureau

RULES AND REGULATIONS:
Leasing of Osage Reservation lands for oil and gas mining; modification of certain existing regulations — 9512

### Interior Department

*See* Fish and Wildlife Service; Indian Affairs Bureau; Land Management Bureau; National Park Service.

### Internal Revenue Service

NOTICES:
Relief from excess profits tax because of inadequate excess profits credit; allowance during fiscal year ended June 30, 1962 — 9522

### International Development Agency

NOTICES:
Various officials; amendment of delegation of authority — 9524


(Continued on next page)



HeinOnline -- 27 Fed. Reg. 9495 1962

ERAL REGISTER (27 F.R. 5406) stating that the Federal Aviation Agency proposed to alter the Vichy, Mo., transition area.

No adverse comments were received regarding the proposed amendment.

Interested persons have been afforded an opportunity to participate in the making of the rule herein adopted, and due consideration has been given to all relevant matter presented.

The substance of the proposed amendment having been published, therefore, pursuant to the authority delegated to me by the Administrator (25 F.R. 12582) and for the reasons stated in the notice, § 601.10849 (14 CFR 601.10849) is amended to read:

**§ 601.10849 Vichy, Mo., transition area.**

That airspace extending upward from 700 feet above the surface within a 5-mile radius of the Rolla National Airport (latitude 38°07'40" N., longitude 91°46'-10" W., Vichy, Mo.; within 2 miles either side of the Vichy VORTAC 067° radial extending from the 5-mile radius area to 8 miles NE of the VORTAC; and the airspace extending upward from 1,200 feet above the surface within 10 miles SE and 7 miles NW of the Vichy VORTAC 239° and 059° radials extending from 20 miles SW to 9 miles NE of the VORTAC.

This amendment shall become effective 0001 e.s.t., December 13, 1962.

(Sec. 307(a), 72 Stat. 749; 49 U.S.C. 1348)

Issued in Washington, D.C., on September 19, 1962.

CLIFFORD P. BURTON,
*Chief, Airspace Utilization Division.*

[F.R. Doc. 62-9571; Filed, Sept. 25, 1962; 8:45 a.m.]

# Title 25—INDIANS

## Chapter I—Bureau of Indian Affairs, Department of the Interior

### SUBCHAPTER Q—OIL AND GAS

## PART 183—LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING

### Modification of Certain Existing Regulations Pertaining to Oil and Gas Mining on the Osage Indian Reservation, Oklahoma

On pages 5871, 5872, and 5873 of the FEDERAL REGISTER of June 21, 1962, there was published a notice and text of proposed amendments to Part 183 of Title 25, Code of Federal Regulations. The purpose of the amendments is to make minor modifications and to clarify some of the language of certain regulations contained in Part 183.

Interested persons were given 30 days within which to submit written comments, suggestions or objections with respect to the proposed amendments. No comments, suggestions or objections have been received, and the proposed amendments are hereby adopted without change, except for the correction of two typographical errors, and are set forth below. In the heading of paragraph (b) of § 183.46, "Utilization" is corrected to read "Unitization" and in line 22 of paragraph (a) of § 183.88, "lessees" is corrected to read "Lessees". These amendments shall become effective at the beginning of the 30th calendar day following the date of this publication in the FEDERAL REGISTER.

(Act of June 28, 1906 (34 Stat. 539-543.))

STEWART L. UDALL,
*Secretary of the Interior.*

SEPTEMBER 18, 1962.

1. Paragraphs (a) and (b) of § 183.2 are amended to read as follows:

**§ 183.2 Royalty payments.**

(a) *Royalty on oil produced by primary or gas injection methods.* The lessee shall pay or cause to be paid to the Superintendent, for the lessor as a royalty, the sum of 16⅔ percent of the gross proceeds from sales after deducting the oil used by the lessee for development and operation purposes on the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs, shall elect to take the royalty in oil; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal: *Provided,* That when the quantity of oil taken from all the producing wells on any quarter-section according to the public survey, or fractional quarter-section if the land covered by the lease does not include the full quarter-section, during any calendar month is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 percent.

(b) *Royalty on oil produced by secondary recovery processes other than gas injection.* When the estimated reserves of oil recoverable by primary and/or gas injection methods from a specified formation or formations have been depleted or partially depleted, the lessee and the Tribal Council may agree upon a new royalty rate to be approved by the Superintendent, the sum to be not less than 12½ percent of the gross proceeds from sales of oil produced by secondary recovery processes, other than gas injection, after deducting the oil used by the lessee for development and operation purposes on the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs, shall elect to take the royalty in oil; payment to be made at the time of sale or removal of the oil, except where payments are made on division orders and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal.

2. Paragraph (a) of § 183.4 is amended to read as follows:

**§ 183.4 Drilling obligations.**

(a) Lessee shall drill at least one well to the Mississippi Lime unless oil or gas is found in paying quantities at a lesser depth, on the land covered by his lease, within 12 months from the date of approval of the lease, or the lease may be held for the full five-year primary term without drilling, upon payment to the Superintendent for the lessor of rental at the rate of one dollar per acre per annum, payable annually in advance, beginning one year after the date of approval of the lease. This lease shall terminate as to both parties unless such advance rental shall be received at the Osage Agency or shall have been mailed as indicated by postmark, on or before the due date: *Provided,* That the time within which a well shall be drilled shall not begin to run on any restricted homestead selection until the consent of the Superintendent to drilling on such homestead shall have been given, nor shall advance rental become due until the next anniversary date of the lease following the date of such consent: *Provided further,* That the Superintendent in his discretion may order the drilling of any lease, if in his opinion the interests of the Osage Tribe warrant: *Provided further,* That whenever the Commissioner of Indian Affairs shall consider the marketing facilities inadequate to take care of the production he may direct suspension of drilling operations on this lease. The completion of a well to the Mississippi Lime, or production of oil or gas in paying quantities from a lesser depth than the Mississippi Lime, for such time as production shall continue, after the lease has entered a rental status, shall relieve the lessee from any further payment of rentals for the balance of the primary term of the lease for which rental has not been paid. Should such production cease, rental shall commence on the next anniversary date of the lease. Rental shall be paid on the basis of a full year, and no refund will be made of advance rental paid in compliance with the regulations in this part.

3. Paragraph (a) of § 183.5 is amended to read as follows:

**§ 183.5 Use of surface lands; settlement of damages to lands and crops.**

(a) Lessee shall have the right to use so much of the surface of the land within the Osage Reservation as may be reasonable for operations, including the right to lay and maintain pipelines, telephone and telegraph lines, pull rods and other appliances necessary for the operation of the wells, also the right of ingress and egress, and the right-of-way to any point of operations. Lessee may use water from streams and natural water courses for lease operations as set out in § 183.57. Before commencing operations for the drilling of any well the lessee shall pay to the surface owner the sum of $200 for each well located on culitvated land (tilled or cultivated within the immediately preceding three years, and including hay-meadow land), $150 for open pasture land, and $100 for such location on brush or wooded lands, and other lands not suitable for cultivation. Upon payment of such location site money, lessee shall be entitled to possession. Location sites shall be held to the minimum area essential for operations, and in

no event shall exceed one and one-half acres in area. Lessee shall also pay tank site fees at the rate of $20 per tank of not exceeding 1,000 barrels capacity: *Provided, however,* That no tank site fee shall be paid for a tank temporarily set on a well location site for testing purposes during the completion of the well. Tank sites shall be held to the minimum area essential to efficient operations, and in no event shall exceed an area of 50 feet square per tank. The sum to be paid for an oil tank site of larger capacity and occupying a greater area shall be agreed upon between the surface owner and the lessee and on failure to agree, the same shall be fixed by arbitration.

4. Paragraph (a) of § 183.24 is amended to read as follows:

**§ 183.24 Royalty on casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from gas, drip gasoline, or other natural condensate.**

(a) A royalty of 16⅔ percent of the gross proceeds of sales shall be paid on the value of one-third (or the lessee's portion if greater than one-third) of all casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from the gas produced from the leasehold. The value of the remainder is an allowance for the cost of manufacture, and no royalty thereon is required. The royalty shall be computed on the sale price received by the manufacturers of such products, or such higher price the lessee may receive, the same to be reported under oath and remitted to the Superintendent not later than the 25th of the succeeding month for all such products sold during the previous month. If the manufacturer of any product extracted from casing-head gas produced from an Osage leasehold should sell his product at a price below that obtained by other manufacturers selling such product in the open market during a particular month, the Superintendent shall notify said manufacturer of such discrepancy and require settlement for royalty upon the average price obtained by manufacturers selling such product in the open market during the same period. The place of sale of liquid hydrocarbon extracted from gas, for royalty purposes, shall be at the plant where manufactured.

5. The caption of § 183.39 and paragraph (b) thereof are amended to read as follows:

**§ 183.39 Sale of oil leases and gas leases.**

* * * * *

(b) The Superintendent, with the consent of the Osage Tribal Council, may at such times and in such manner as shall be deemed appropriate, publish and distribute notices that oil leases and/or gas leases on specific tracts of unleased tribal lands, each of which shall be a compact body, will be offered for sale to the highest responsible bidder: *Provided,* That not less than 25,000 acres of the unleased portion of the Osage mineral reserve shall be offered for lease during any one year. Successful bidders must deposit with the Superintendent on day of sale, a check, or bank draft on a solvent bank in an amount equal to 25 percent of the bonus as a guaranty of good faith. The balance of the bonus, together with a $10 filing fee for each lease, shall be paid, and the lease in completed form with necessary accompanying papers shall be filed with the Superintendent within 20 days after the lease is forwarded by the Superintendent, to the lessee for execution, unless such period has been extended by the Superintendent for good and sufficient reason. If the successful bidder fails to complete the lease or to pay the full consideration within 20 days or an authorized extension thereof, or if the lease is disapproved through no fault of the lessor or the Department of the Interior, the amount deposited as a guaranty of good faith shall be forfeited for the use and benefit of the lessor. Any and all bids shall be subject to acceptance by the Osage Tribal Council. The Superintendent may disapprove a lease made on an accepted bid, upon evidence satisfactory to him of collusion, fraud or other irregularity in connection with the sale of the lease. At a public auction sale the Superintendent may require any bidder to submit satisfactory evidence of good faith, that he has the cash in hand or at his command, and to furnish whenever called upon by the Superintendent during the progress of the sale, authenticated statement of a solvent bank to the effect the bidder has the means to purchase the lease.

6. Section 183.40 is amended to read as follows:

**§ 183.40 Corporation and corporate information.**

(a) If a successful bidder for a lease is a corporation, it shall file a statement showing:

(1) The state of incorporation and that the corporation is authorized to do business in the state where the land to be leased is situate;

(2) That it has power to hold and operate mining leases;

(3) That the officer executing the lease is authorized to act on behalf of the corporation in such matters.

(b) Whenever deemed advisable in any case the Area Director or Superintendent may require a corporation to file any additional information necessary to carry out the purposes and intent of the regulations in this part and such information shall be furnished within a reasonable time.

7. Section 183.45 is amended to read as follows:

**§ 183.45 Reports and time of royalty payments.**

Royalties on all oil and gas, including casing-head gas or on gasoline manufactured therefrom, produced in any month, shall be paid on or before the 25th of the month next succeeding by either purchaser or lessee. Failure to so remit will subject the lessee to fines as hereinafter indicated, and also subject division order to cancellation. Lessees shall also furnish monthly reports covering all operations whether there has been production or not, indicating therein the total amount of oil, gas, or gasoline sold and not merely their working interest, and also dates of discovery and beginning of utilization of gas from gas wells. The lessee may include in one statement all leases upon which dry holes have been drilled or the wells have ceased to produce.

8. Paragraphs (b) and (c) of § 183.46 are amended to read as follows:

**§ 183.46 Approval of lease instruments.**

* * * * *

(b) *Unitization of oil leases.* As a consideration for further development by a secondary recovery process, two or more oil leases may be unitized and merged in a single blanket lease with the approval of the Superintendent. The instrument of unitization (blanket lease) shall include all the requirements and provisions of sections numbered 1, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19 and 20 of Osage oil lease Form B: *Provided,* That the preamble of Form B and the provisions of section numbered 2 in respect to royalty rates; section numbered 3 in respect to payment of rental; section numbered 4 in respect to payment of well site and tank location fees; and section numbered 14 in respect to the surrender of the lease may be modified and/or supplemented by the parties, with the approval of the Superintendent, to the extent deemed appropriate for the equitable and efficient conduct of unitized operations, and not otherwise in conflict with the regulations in this part. Lessee(s) shall before commencing secondary recovery operations, and on or before December 31st of each year thereafter, submit to the Superintendent an acceptable plan of development and operation for the unit area for the ensuing year. Upon a finding by him that such action would be in the best interest of the Osage Tribe, the Superintendent may also approve an agreement between the lessor and the lessee(s) rescinding a unit (blanket lease) and restoring to their original status the Form B leases theretofore merged in the unit lease: *Provided,* That if oil is being produced in paying quantities on a particular quarter-section tract on the date of approval of such agreement, the lessee shall be entitled to hold such tract under terms of the original Form B lease so long as oil is produced on said tract in paying quantities.

(c) *Assignments.* Approved leases or any interest therein may be assigned with the approval of the Superintendent, and not otherwise. Assignments, when approved, shall be subject to the terms and conditions of the original leases, and the regulations under which such leases were approved. In order for an assignment to receive favorable consideration, the lessee shall assign either his whole interest in a legal subdivision or an undivided interest in the whole lease. If a lease is divided by the assignment of an entire interest in any part of it, each part shall be considered a separate lease under all the terms and conditions of the original lease. The assignee shall furnish with his assignment a satisfactory bond as provided in § 183.20(c). Any attempt to assign an approved

HeinOnline -- 27 Fed. Reg. 9513 1962

lease or any interest therein without the consent and approval of the Superintendent shall be absolutely void and shall subject the original lease to cancellation in the discretion of the Superintendent.

9. Section 183.49 is amended to read as follows:

§ 183.49 Commencement of operations.

No drilling or development operations shall be permitted upon any tract of land until a lease covering such tract shall have been approved by the Superintendent or such operations specifically authorized by him: *Provided*, That the Superintendent may grant authority to any party, under such rules (consistent with the regulations in this part) that he deems proper, to conduct geophysical and geological exploration work in any portion, or all of the Osage Reservation.

10. Paragraph (b) of § 183.51 is amended to read as follows:

§ 183.51 Well location fees.

* * * * *

(b) Where the surface owner is a restricted Indian, adult or minor, the well location fee shall be paid to the Superintendent of the Osage Agency for such Indian. All other surface owners, whether Indians or non-Indians shall be paid or tendered such fees direct, and where such surface owners are not residents of Osage County nor have a representative located therein, such payments shall be made or tendered by check, postage prepaid, to last known address of said surface owner at least 5 days before commencing drilling operations on any well: *Provided*, That should the lessee be unable to reach the owner of the surface of the land for the purpose of tendering the location fee, or if owner of the surface of the land upon being tendered the location fee by the lessee, shall refuse to accept the same, the lessee may tender the location fee to the Superintendent of the Osage Agency, and if the lessee and the Superintendent shall agree upon the amount of the location fee, the lessee shall deposit such amount with the Superintendent for payment to the owner of the surface of the land upon demand, and the Superintendent shall thereupon advise the owner of the surface of the land by mail at his last known address, that the location fee is being held for payment to him upon his written request.

(Sec. 3, 34 Stat. 543)

11. Section 183.62 is changed to read as follows:

§ 183.62 Permission to start operations.

Written permission must be secured from the Superintendent before operations are started on the leased premises. Lessee shall submit application for such permission, on forms to be furnished by the Superintendent.

12. Section 183.73 is changed to read as follows:

§ 183.73 Determining cost of well.

The term "cost price of a well" as applied where one lessee takes over a well drilled by another, shall include all reasonable, usual, necessary and proper expenditures including the following expenditures made by the lessee drilling the well.

(a) All location, or other surface damages occasioned by the drilling of such well.

(b) All expenses of laying, taking up, repairing, operating and maintaining gas and water lines where such lines including amount paid for water privilege or constructing dam, are used for the exclusive purpose of drilling the particular well.

(c) Customary charge for furnishing water where purchased shall be the price prevailing in the particular locality: *Provided*, Where the parties cannot agree upon the charge made under this paragraph such charge shall be determined by the Superintendent.

(d) Amounts expended in spudding or drilling a water well: *Provided*, That where any or all of the facilities referred to in this paragraph and in paragraphs (b) and (c) of this section are not employed exclusively in connection with the drilling of the well to be taken over, or are also used in connection with the drilling or operation of other wells by the lessee drilling the well to be taken over by the other lessee, then a fair proportion of the charges covered by this paragraph and paragraphs (b) and (c) of this section shall be assessed against each well, including the well to be taken over, and in the event of a disagreement between the parties as to the charges assessed against the well that is to be taken over, such charge shall be fixed by the Superintendent.

(e) Customary charge for drilling and reaming, except where reaming is done for the sole benefit of party drilling well. If price charged for drilling is above the average drilling price in the field, the price to be paid shall be determined by the Superintendent. *Provided*, That where the well to be taken over is drilled below the stratum in which the lessee taking over the well is interested, that is, the gas stratum in the case of a well taken over by a gas lessee, and the oil stratum in a well taken over by the oil lessee, then the lessee doing such further drilling shall sustain the cost of drilling and reaming where such drilling and reaming are done below such stratum.

(f) All expenses of mudding, except where mudding is done for the sole benefit of the lessee drilling the well.

(g) Settlement for casing or other pipe left in the well to be made at the prevailing market price for the character and kind of casing when placed in the well.

(h) All expenses of placing and removing all casing or other pipe used in drilling said well.

(i) A reasonable charge to cover supervision and overhead expenses: *Provided*, Where the parties cannot agree upon the charge made under this paragraph, such charge shall be determined by the Superintendent.

(j) Any additional charges which cannot be mutually agreed upon shall be submitted to and determined by the Superintendent. An approximate list of expenses mentioned in this section shall be presented to proposed purchasing lessee within 10 days after the completion of the well.

13. Section 183.81 is amended to read as follows:

§ 183.81 Abandonment of wells.

Lessee shall not abandon any well for the purpose of drilling deeper for oil or gas unless the producing stratum is properly protected and shall not abandon any well producing oil or gas except with the approval of the Superintendent or where it can be demonstrated that the further operation of such well is commercially unprofitable. When any well is plugged and abandoned lessee shall, within ninety (90) days, clean up the premises around such well to the satisfaction of the Superintendent or his authorized representative: *Provided*, That the ninety (90) day period may be extended a reasonable time in the discretion of the Superintendent.

14. Section 183.88 is amended to read as follows:

§ 183.88 Division orders.

(a) The lessee may make arrangements with the purchasers of oil for the payment of the royalty, but such arrangements, if made, shall not relieve the lessee from responsibility for the payment of the royalty, should such purchaser fail, neglect, or refuse to pay the royalty when it becomes due. No oil shall be run to any purchaser or delivered to the pipeline or other carrier for shipment, or otherwise conveyed or removed from the leased premises, until a division order is executed, filed, and approved by the Superintendent, showing that the lessee has a regularly approved lease in effect, and the conditions under which the oil may be run: (*Provided*, That the Superintendent may grant temporary permission to run oil from a lease pending the execution, filing, and approval by him of a division order.) Lessees shall be required to pay for all oil or gas used off the leased premises for operating purposes; affidavit shall be made as to the production used for such purposes and royalty paid in the usual manner. The lessee or his representative shall be present when oil is taken from the leased premises under any division order and will be responsible for the correct measurement thereof and shall report all oil so run.

(b) The lessee shall also authorize the pipeline company or the purchaser of oil to furnish the Superintendent with a monthly statement, not later than the 20th day of the following calendar month, of the gross barrels run as a common-carrier shipment or purchased from his lease or leases.

15. Paragraph (b) of § 183.93 is amended to read as follows:

§ 183.93 Forms.

* * * * *

(b) All sums received from sale of forms and fines shall be placed in Tribal Funds.

16. Section 183.94 is amended to read as follows:

HeinOnline -- 27 Fed. Reg. 9514 1962

**§ 183.94 Amount of fee.**

A fee of $10 will be charged for each lease, each sublease, each drilling contract affecting oil and gas mining leases, and each assignment of lease, such amount to be paid by the lessee, sublessee or assignee upon notice of approval of the contract, as provided by the act of February 14, 1920.

[F.R. Doc. 62-9581; Filed, Sept. 25, 1962; 8:47 a.m.]

# Title 36—PARKS, FORESTS, AND MEMORIALS

## Chapter I—National Park Service, Department of the Interior

## PART 7—SPECIAL REGULATIONS RELATING TO PARKS AND MONUMENTS

### Grand Teton National Park, Wyoming; Stock Grazing

On pages 7792 and 7793 of the FEDERAL REGISTER of August 7, 1962, there was published a notice and text of a proposed amendment to § 7.22 of Title 36, Code of Federal Regulations. The purpose of the amendment is to clarify existing regulations in regard to grazing privileges appurtenant to base lands and to add the terms and conditions of grazing permits to the regulations.

Interested persons were given 30 days within which to submit written comments, suggestions, or objections with respect to the proposed amendment. No comments, suggestions, or objections have been received, and the proposed amendment is hereby adopted without change and is set forth below. This amendment shall become effective at the beginning of the 30th calendar day following the date of this publication in the FEDERAL REGISTER.

(60 Stat. 238; 5 U.S.C. 1003; 39 Stat. 535; 16 U.S.C. 3)

H. L. BILL,
*Superintendent.*

Paragraph (c) of § 7.22 is amended in its entirety to read as follows:

**§ 7.22 Grand Teton National Park.**

* * * * *

(c) *Stock grazing.* (1) Privileges for the grazing of domestic livestock based on authorized use of certain areas at the time of approval of the Act of September 14, 1950 (64 Stat. 849, Public Law 787), shall continue in effect or shall be renewed from time to time, except for failure to comply with such terms and conditions as may be prescribed by the Superintendent in these regulations and after reasonable notice of default and subject to the following provisions of tenure:

(i) Grazing privileges appurtenant to privately owned lands located within the park shall not be withdrawn until title to the lands to which such privileges are appurtenant shall have vested in the United States except for failure to comply with the regulations applicable thereto after reasonable notice of default.

(ii) Grazing privileges appurtenant to privately owned lands located outside the park shall not be withdrawn for a period of twenty-five years after September 14, 1950, and thereafter shall continue during the lifetime of the original permittee and his heirs if they were members of his immediate family as described herein, except for failure to comply with the regulations applicable thereto after reasonable notice of default.

(iii) Members of the immediate family are those persons who are related to and directly dependent upon a person or persons, living on or conducting grazing operations from lands, as of September 14, 1950, which the National Park Service recognized as base lands appurtenant to grazing privileges in the park. Such interpretation excludes mature children who, as of that date, were established in their own households and were not directly dependent upon the base lands and appurtenant grazing recognized by the National Park Service.

(iv) If title to base lands lying outside the park is conveyed, or such base lands are leased to someone other than a member of the immediate family of the permittee as of September 14, 1950, the grazing preference shall be recognized only for a period of twenty-five years from September 14, 1950.

(v) If title to a portion or part of the base land either outside or inside the park is conveyed or such base lands are leased, the new owner or lessee will take with the land so acquired or leased, such proportion of the entire grazing privileges as the grazing capacity in animal unit months of the tract conveyed or leased bears to the original area to which a grazing privilege was appurtenant and recognized. Conveyance or lease of all such base lands will automatically convey all grazing privileges appurtenant thereto.

(vi) Grazing privileges which are appurtenant to base lands located either inside or outside the park shall not be conveyed separately therefrom.

(2) Where no reasonable ingress or egress is available to permittees or nonpermittees who must cross park lands to reach grazing allotments or non-Federal lands within the exterior boundary of the park or adjacent thereto, the Superintendent will grant, upon request, a temporary nonfee annual permit to herd stock on a designated driveway which shall specify the time to be consumed in each single drive.

(3) Grazing preferences are based on actual use during the period March 15, 1938 through September 14, 1950 and no increase in the number of animals or animal unit months will be allowed on Federal lands in the park.

(4) (i) A permittee whose grazing privilege is appurtenant to privately owned lands within the park will be granted total non-use or reduced benefits for one or more years without nullifying his pirvilege in subsequent years.

(ii) A permittee whose privilege is appurtenant to base lands outside the park may be granted total nonuse on a year to year basis not to exceed three consecutive years. Total nonuse beyond this time may be granted if necessitated for reasons clearly outside the control of the permittee. Total unauthorized nonuse beyond three consecutive years will result in the termination and loss of all grazing privileges.

(iii) Whenever partial or total non-use is desired, an application must be made in writing to the Superintendent.

(5) Grazing fees shall be the same as those approved for the Teton National Forest and will be adjusted accordingly.

(6) Permittees or nonpermittees who have stock on Federal lands within the park at any time or place, when or where herding or grazing is unauthorized may be assessed fifty cents per day per animal as damages.

(7) The Superintendent may accept a written relinquishment or waiver of any privileges; however, no such relinquishment or waiver will be effective without the written consent of the owner or owners of the base lands.

(8) Permits: Terms and conditions: The issuance and continued effectiveness of all permits will be subject, in addition to mandatory provisions required by Executive Order or law, to the following terms and conditions:

(i) The permittee and his employees shall use all possible care in preventing forest and range fires, and shall assist in the extinguishing of forest and range fires on, or within, the vicinity of the land described in the permit, as well as in the preservation of good order within the boundaries of the park.

(ii) The Superintendent may require the permittee before driving livestock to or from the grazing allotment to gather his livestock at a designated time and place for the purpose of counting the same.

(iii) Stock will be allowed to graze only on the allotment designated in the permit.

(iv) The permittee shall file with the Superintendent a copy of his stock brand or other mark.

(v) The permittee shall, upon notice from the Superintendent that the allotment designated in the permit is not ready to be grazed at the beginning of the designated grazing season, place no livestock on the allotment for such a period as may be determined by the Superintendent as necessary to avoid damage to the range. All, or a portion of the livestock shall be removed from the area before the expiration of the designated grazing season if the Superintendent determines further grazing would be detrimental to the range. The number of stock and the grazing period may be adjusted by the Superintendent at any time when such action is deemed necessary for the protection of the range.

(vi) No permit shall be issued or renewed until payment of all fees and other amounts due the National Park Service has been made. Fees for permits are due the National Park Service and must be paid at least 15 days in advance of the grazing period. No permit shall be effective to authorize grazing

UNIVERSITY OF DENVER COLLEGE OF LAW LIBRARY

# CUMULATIVE POCKET SUPPLEMENT

# TO THE . . . CODE OF FEDERAL REGULATIONS

Title 25—Indians

AS OF JANUARY 1 1963

For changes on and after January 1, 1963, see the daily issues of the Federal Register

*Cite this Pocket Supplement* CFR

*thus:* 25 CFR 1.2

CHAPTER I—

CHAPTER II—

CHAPTER III

…rior, submit therewith …onds or notes in the …rescribed as security for of the terms, conditions, of the lease: *Provided* …lessee may file in lieu of …ease bonds, one bond in … by the Secretary of the … all leases to which he …e a party. The right is …ved to the Secretary of …equire an increase of the … bond above the sum …articular case where he …ary to require such in-

…10, 1961]

**…ension of operations and … on leases for minerals …l and gas.**

… of § 172.15a of this sub-…plicable to leases under

…. 26, 1959]

**… minerals and deep-lying …e minerals.**

…provided in § 176.6(b), …w Indian lands, for min-…her than lead and zinc …nd zinc and associated … the horizon of the rock …as the Reed Springs For-…e made pursuant to the …rt 172 of this subchapter.

…r. 4, 1961]



## SUBCHAPTER Q—OIL AND GAS

## Part 183—Leasing of Osage Reservation Lands for Oil and Gas Mining

OIL MINING LEASES

Sec.
183.2 Royalty payments. [Amended]
183.4 Drilling obligations. [Revised]
183.5 Use of surface lands; settlement of damages to lands and crops. [Amended]
183.16 Surrender of lease. [Revised]

UTILIZATION OF CASING-HEAD GAS WHEN USED FOR THE MANUFACTURE OF GASOLINE

183.24 Royalty on casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from gas, drip gasoline, or other natural condensate. [Amended]

HOW TO ACQUIRE LEASES OF TRIBAL LANDS

183.39 Sale of oil leases and gas leases. [Amended]
183.40 Corporation and corporate information. [Revised]
183.42 Rental period after consent of Superintendent to begin operations on homesteads. [Superseded]
183.43 Lessee's process agents. [Revised]
183.45 Reports and time of royalty payments. [Revised]

ASSIGNMENTS

183.46 Approval of lease instruments. [Amended]

OPERATIONS

183.49 Commencement of operations. [Revised]
183.51 Well location fees. [Amended]

REQUIREMENTS OF LESSEES

Sec.
183.62 Permission to start operations. [Revised]
183.73 Determining cost of well. [Revised]
183.81 Abandonment of wells. [Revised]
183.86 Division orders. [Revised]

FORMS

183.93 Forms. [Amended]

APPROVAL FEE

183.94 Amount of fee. [Revised]

OIL MINING LEASES

**§ 183.2 Royalty payments.**

(a) *Royalty on oil produced by primary or gas injection methods.* The lessee shall pay or cause to be paid to the Superintendent, for the lessor as a royalty, the sum of 16⅔ percent of the gross proceeds from sales after deducting the oil used by the lessee for development and operation purposes on the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs, shall elect to take the royalty in oil; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal: *Provided*, That when the quantity of oil taken from all the producing wells on any quarter-section according to the public survey, or fractional quarter-section if the land covered by the lease does not include the full quarter-section, during any calendar month is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 percent.

(b) *Royalty on oil produced by secondary recovery processes other than gas injection.* When the estimated reserves of oil recoverable by primary and/or gas injection methods from a specified formation or formations have been depleted or partially depleted, the lessee and the Tribal Council may agree upon a new royalty rate to be approved by the Superintendent, the sum to be not less than 12½ percent of the gross proceeds from sales of oil produced by secondary recovery processes, other than gas injection, after deducting the oil used by the lessee for development and operation purposes on the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs, shall elect to take the royalty in oil; payment to be made at the time of sale or removal of the oil, except where payments are made on division orders and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal.

[Paragraphs (a) and (b) were amended, 27 F.R. 9512, Sept. 26, 1962]

* * * *

## § 183.4 Drilling obligations.

(a) Lessee shall drill at least one well to the Mississippi Lime unless oil or gas is found in paying quantities at a lesser depth, on the land covered by his lease, within 12 months from the date of approval of the lease, or the lease may be held for the full five-year primary term without drilling, upon payment to the Superintendent for the lessor of rental at the rate of one dollar per acre per annum, payable annually in advance, beginning one year after the date of approval of the lease. This lease shall terminate as to both parties unless such advance rental shall be received at the Osage Agency or shall have been mailed as indicated by postmark, on or before the due date: *Provided,* That the time within which a well shall be drilled shall not begin to run on any restricted homestead selection until the consent of the Superintendent to drilling on such homestead shall have been given, nor shall advance rental become due until the next anniversary date of the lease following the date of such consent: *Provided further,* That the Superintendent in his discretion may order the drilling of any lease, if in his opinion the interests of the Osage Tribe warrant: *Provided further,* That whenever the Commissioner of Indian Affairs shall consider the marketing facilities inadequate to take care of the production he may direct suspension of drilling operations on this lease. The completion of a well to the Mississippi Lime, or production of oil or gas in paying quantities from a lesser depth than the Mississippi Lime, for such time as production shall continue, after the lease has entered a rental status, shall relieve the lessee from any further payment of rentals for the balance of the primary term of the lease for which rental has not been paid. Should such production cease, rental shall commence on the next anniversary date of the lease. Rental shall be paid on the basis of a full year, and no refund will be made of advance rental paid in compliance with the regulations in this part.

(b) Prior to the expiration of a term of a lease, the Osage Tribal Council may, with the approval of the Superintendent, and a finding by him that such action is in the best interest of the Osage Tribe, grant an extension of the term of the lease for a period of not to exceed six months for the purpose of enabling the lessee to drill a well to the Mississippi Lime unless oil or gas is found in paying quantities at a lesser depth.

Codification: § 183.4 was revised at 23 F.R. 7133, Sept. 16, 1958. Subsequently, Paragraph (a) was amended, 27 F.R. 9512, Sept. 26, 1962

## § 183.5 Use of surface lands: settlement of damages to lands and crops.

(a) Lessee shall have the right to use so much of the surface of the land within the Osage Reservation as may be reasonable for operations, including the right to lay and maintain pipelines, telephone and telegraph lines, pull rods and other appliances necessary for the operation of the wells, also the right of ingress and egress, and the right-of-way to any point of operations. Lessee may use water from streams and natural water courses for lease operations as set out in § 183.57. Before commencing operations for the drilling of any well the lessee shall pay to the surface owner the sum of $200

§ 183.16

for each w
(tilled or c
iately prec
ing hay-m
pasture lar
on brush
lands not s
payment o
lessee shall
cation sites
area essen
no event sh
acres in are
site fees at
not exceed
*Provided, h*
shall be pai
on a well l
poses during
Tank sites s
area essent
and in no e
50 feet squa
paid for an
ity and occu
agreed upon
and the less
the same sh

[Paragraph (
9512, Sept.

*

§ 183.16 S
lessee may at
Superintende
surrender all
fractional par
the lease does
section, and h
to the lands,
lieved from a
liabilities ther
rendered: *Pro*
has been reco
ecute a releas
the proper offi
not entitle the
unused portio
of developmen
lessee and his
incurred prior
[23 F. R. 7134, Se

dent in his dis-
drilling of any
he interests of
*Provided fur-*
Commissioner
nsider the mar-
te to take care
direct suspen-
s on this lease.
to the Missis-
of oil or gas in
a lesser depth
, for such time
inue, after the
al status, shall
y further pay-
balance of the
ase for which
. Should such
l shall com-
ersary date of
be paid on the
no refund will
al paid in com-
ns in this part.
tion of a term
al Council may,
Superintendent,
at such action
ne Osage Tribe,
ne term of the
t to exceed six
of enabling the
the Mississippi
ound in paying
th.

4 was revised
16, 1958.
(a) was
Sept. 26, 1962

ands: settlement
and crops.

the right to use
the land within
may be reason-
uding the right
lines, telephone
rods and other
r the operation
nt of ingress and
way to any point
may use water
al water courses
t out in § 183.57.
erations for the
lessee shall pay
he sum of $200

for each well located on cultivated land (tilled or cultivated within the immediately preceding three years, and including hay-meadow land), $150 for open pasture land, and $100 for such location on brush or wooded lands, and other lands not suitable for cultivation. Upon payment of such location site money, lessee shall be entitled to possession. Location sites shall be held to the minimum area essential for operations, and in no event shall exceed one and one-half acres in area. Lessee shall also pay tank site fees at the rate of $20 per tank of not exceeding 1,000 barrels capacity: *Provided, however,* That no tank site fee shall be paid for a tank temporarily set on a well location site for testing purposes during the completion of the well. Tank sites shall be held to the minimum area essential to efficient operations, and in no event shall exceed an area of 50 feet square per tank. The sum to be paid for an oil tank site of larger capacity and occupying a greater area shall be agreed upon between the surface owner and the lessee and on failure to agree, the same shall be fixed by arbitration.

[Paragraph (a) was amended, 27 F.R. 9512, Sept. 26, 1962]

* * * * *

§ 183.16 *Surrender of lease.* The oil lessee may at any time, by paying to the Superintendent the sum of one dollar, surrender all or any quarter-section or fractional part of quarter-section where the lease does not cover the full quarter-section, and have the lease cancelled as to the lands, surrendered; and be relieved from all further obligations and liabilities thereunder, as to the part surrendered: *Provided,* That if this lease has been recorded, the lessee shall execute a release and record the same in the proper office. Such surrender shall not entitle the lessee to a refund of the unused portion of rental paid in lieu of development, nor shall it relieve the lessee and his sureties of any obligation incurred prior to such surrender.

[23 F. R. 7134, Sept. 16, 1958]

UTILIZATION OF CASING-HEAD GAS WHEN USED FOR THE MANUFACTURE OF GASOLINE

**§ 183.24 Royalty on casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from gas, drip gasoline, or other natural condensate.**

(a) A royalty of 16⅔ percent of the gross proceeds of sales shall be paid on the value of one-third (or the lessee's portion if greater than one-third) of all casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from the gas produced from the leasehold. The value of the remainder is an allowance for the cost of manufacture, and no royalty thereon is required. The royalty shall be computed on the sale price received by the manufacturers of such products, or such higher price the lessee may receive, the same to be reported under oath and remitted to the Superintendent not later than the 25th of the succeeding month for all such products sold during the previous month. If the manufacturer of any product extracted from casing-head gas produced from an Osage leasehold should sell his product at a price below that obtained by other manufacturers selling such product in the open market during a particular month, the Superintendent shall notify said manufacturer of such discrepancy and require settlement for royalty upon the average price obtained by manufacturers selling such product in the open market during the same period. The place of sale of liquid hydrocarbon extracted from gas, for royalty purposes, shall be at the plant where manufactured.

[Paragraph (a) amended, 27 F.R. 9513, Sept. 26, 1962]

* * * * *

HOW TO ACQUIRE LEASES OF TRIBAL LANDS

**§ 183.39 Sale of oil leases and gas leases.**

* * * * *

(b) The Superintendent, with the consent of the Osage Tribal Council, may at such times and in such manner

as shall be deemed appropriate, publish and distribute notices that oil leases and/or gas leases on specific tracts of unleased tribal lands, each of which shall be a compact body, will be offered for sale to the highest responsible bidder: *Provided*, That not less than 25,000 acres of the unleased portion of the Osage mineral reserve shall be offered for lease during any one year. Successful bidders must deposit with the Superintendent on day of sale, a check, or bank draft on a solvent bank in an amount equal to 25 percent of the bonus as a guaranty of good faith. The balance of the bonus, together with a $10 filing fee for each lease, shall be paid, and the lease in completed form with necessary accompanying papers shall be filed with the Superintendent within 20 days after the lease is forwarded by the Superintendent, to the lessee for execution, unless such period has been extended by the Superintendent for good and sufficient reason. If the successful bidder fails to complete the lease or to pay the full consideration within 20 days or an authorized extension thereof, or if the lease is disapproved through no fault of the lessor or the Department of the Interior, the amount deposited as a guaranty of good faith shall be forfeited for the use and benefit of the lessor. Any and all bids shall be subject to acceptance by the Osage Tribal Council. The Superintendent may disapprove a lease made on an accepted bid, upon evidence satisfactory to him of collusion, fraud or other irregularity in connection with the sale of the lease. At a public auction sale the Superintendent may require any bidder to submit satisfactory evidence of good faith, that he has the cash in hand or at his command, and to furnish whenever called upon by the Superintendent during the progress of the sale, authenticated statement of a solvent bank to the effect the bidder has the means to purchase the lease.

* * * * *

Modification: In § 183.3[illegible] the section heading and paragraph [illegible] were amended. 27 F.R. 9513, Sept. 26, 1952.

**§ 183.40 Corporation and corporate information.**

(a) If a successful bidder for a lease is a corporation, it shall file a statement showing:

(1) The state of incorporation and that the corporation is authorized to do business in the state where the land to be leased is situate;

(2) That it has power to hold and operate mining leases;

(3) That the officer executing the lease is authorized to act on behalf of the corporation in such matters.

(b) Whenever deemed advisable in any case the Area Director or Superintendent may require a corporation to file any additional information necessary to carry out the purposes and intent of the regulations in this part and such information shall be furnished within a reasonable time.

[27 F.R. 951[illegible], Sept. 26, 1962]

§ 183.42 *Rental period after consent of Superintendent to begin operations on homesteads.* [Superseded by § 183.4, 23 F. R. 7134, Sept. 16, 1958]

§ 183.43 *Lessee's process agents.* (a) Before actual drilling or development operations are commenced on leased lands, the lessee or assignee shall appoint a local or resident representative within the State of Oklahoma, on whom the Superintendent or other authorized representative of the Department may serve notice, or otherwise communicate with in securing compliance with the regulations in this part, and shall notify the Superintendent of the name and post office address of the representative so appointed.

(b) Where several parties own a lease jointly, only one representative or agent need be designated, whose duties shall be to act for all parties concerned. Designation of such representative should be made by the party in charge of operations.

(c) In the event of the incapacity or absence from the State of such designated local or resident representative, the lessee shall appoint some person to serve in his stead, and in the absence of such representative or of notice of the appointment of a substitute any employee of the lessee upon the leased premises, or the contractor or other person in charge of drilling or related operations thereon, shall be considered the representative of the lessee for the purpose of service of orders or notices as herein provided and service upon any such employee, contractor, or other person shall be deemed service upon the lessee.

[23 F. R. 7134, Sept. 16, 1958]



§ 183.
§ 183.4
pa
Roya
casing-
tured tl
shall b
the m
purcha
will sub
after in
order to
furnish
operati
duction
total ar
and no
and also
of utiliz
lessee n
leases u
drilled
produce
[27 F.R

§ 183.46
*
(b) U
sideratio
secondar
oil lease
in a sin
proval o
strument
shall inc
provision
7, 8, 9, 1C
20 of Os
That the
provision
spect to
3 in respe
numbere
site and
numbere
of the l
suppleme
approval
extent de
table and
operation
flict with
Lessee(s)
ondary re
before De
after, sub
acceptabl

§ 183.43

:e the land to

to hold and

:xecuting the
on behalf of
natters.
advisable in
:or or Super-
:orporation to
tion necessary
and intent of
t and such in-
:hed within a

1962]

*after consent*
*operations on*
by § 183.4, 23

*s agents.* (a)
development
ed on leased
: shall appoint
ntative within
on whom the
uthorized rep-
ent may serve
nunicate with
:h the regula-
all notify the
ime and post
resentative so

es own a lease
ative or agent
e duties shall
es concerned.
representative
y in charge of

incapacity or
f such desig-
epresentative,
me person to
the absence
f notice of the
ute any em-
n the leased
or other per-
or related op-
considered the
e for the pur-
or notices as
ice upon any
or other per-
ice upon the



### § 183.45 Reports and time of royalty payments.

Royalties on all oil and gas, including casing-head gas or on gasoline manufactured therefrom, produced in any month, shall be paid on or before the 25th of the month next succeeding by either purchaser or lessee. Failure to so remit will subject the lessee to fines as hereinafter indicated, and also subject division order to cancellation. Lessees shall also furnish monthly reports covering all operations whether there has been production or not, indicating therein the total amount of oil, gas, or gasoline sold and not merely their working interest, and also dates of discovery and beginning of utilization of gas from gas wells. The lessee may include in one statement all leases upon which dry holes have been drilled or the wells have ceased to produce.

[27 F.R. 9513, Sept. 26, 1962]

ASSIGNMENTS

### § 183.46 Approval of lease instruments.

* * * * *

(b) *Unitization of oil leases.* As a consideration for further development by a secondary recovery process, two or more oil leases may be unitized and merged in a single blanket lease with the approval of the Superintendent. The instrument of unitization (blanket lease) shall include all the requirements and provisions of sections numbered 1, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19 and 20 of Osage oil lease Form B: *Provided,* That the preamble of Form B and the provisions of section numbered 2 in respect to royalty rates; section numbered 3 in respect to payment of rental; section numbered 4 in respect to payment of well site and tank location fees; and section numbered 14 in respect to the surrender of the lease may be modified and/or supplemented by the parties, with the approval of the Superintendent, to the extent deemed appropriate for the equitable and efficient conduct of unitized operations, and not otherwise in conflict with the regulations in this part. Lessee(s) shall before commencing secondary recovery operations, and on or before December 31st of each year thereafter, submit to the Superintendent an acceptable plan of development and operation for the unit area for the ensuing year. Upon a finding by him that such action would be in the best interest of the Osage Tribe, the Superintendent may also approve an agreement between the lessor and the lessee(s) rescinding a unit (blanket lease) and restoring to their original status the Form B leases theretofore merged in the unit lease: *Provided,* That if oil is being produced in paying quantities on a particular quarter-section tract on the date of approval of such agreement, the lessee shall be entitled to hold such tract under terms of the original Form B lease so long as oil is produced on said tract in paying quantities.

(c) *Assignments.* Approved leases or any interest therein may be assigned with the approval of the Superintendent, and not otherwise. Assignments, when approved, shall be subject to the terms and conditions of the original leases, and the regulations under which such leases were approved. In order for an assignment to receive favorable consideration, the lessee shall assign either his whole interest in a legal subdivision or an undivided interest in the whole lease. If a lease is divided by the assignment of an entire interest in any part of it, each part shall be considered a separate lease under all the terms and conditions of the original lease. The assignee shall furnish with his assignment a satisfactory bond as provided in § 183.20(c). Any attempt to assign an approved lease or any interest therein without the consent and approval of the Superintendent shall be absolutely void and shall subject the original lease to cancellation in the discretion of the Superintendent.

[Paragraphs (b) and (c) amended, 27 F.R. 9513, Sept. 26, 1962]

(d) *Overriding royalties.* Agreements creating overriding royalties or payments out of production shall not be considered as interests in the leases as such term is used in paragraph (c) of this section. Agreements creating overriding royalties or payments out of production are hereby authorized and the approval of the Department of the Interior or any agency thereof shall not be required with respect thereto, but such agreements shall be subject to the condition that nothing in any such agreement shall be construed

as modifying any of the obligations of the lessee, including, but not limited to, obligations for diligent development and operation, protection against drainage, compliance with oil and gas operating regulations in this part, and the requirement for departmental approval before abandonment of any well. All such obligations are to remain in full force and effect, the same as if free of any such royalties or payments. The existence of agreements creating overriding royalties or payments out of production, whether or not actually paid, shall not be considered as justification for the approval of abandonment of any well. Nothing in this paragraph revokes the requirement for approval of assignments and other instruments which is required in this section, but any overriding royalties or payments out of production created by the terms of such assignments or instruments shall be subject to the condition stated above. Agreements creating overriding royalties or payments out of production need not be filed with the Superintendent unless incorporated in assignments or instruments required to be filed pursuant to paragraph (c) of this section.

[Paragraph (d) added, 23 F. R. 9758, Dec. 18, 1958]

OPERATIONS

### § 183.49 Commencement of operations.

No drilling or development operations shall be permitted upon any tract of land until a lease covering such tract shall have been approved by the Superintendent or such operations specifically authorized by him: *Provided*, That the Superintendent may grant authority to any party, under such rules (consistent with the regulations in this part) that he deems proper, to conduct geophysical and geological exploration work in any portion, or all of the Osage Reservation.

[27 F.R. 9514, Sept. 26, 1962]

### § 183.51 Well location fees.

* * * * *

(b) Where the surface owner is a restricted Indian, adult or minor, the well location fee shall be paid to the Superintendent of the Osage Agency for such Indian. All other surface owners, whether Indians or non-Indians shall be paid or tendered such fees direct, and where such surface owners are not residents of Osage County nor have a representative located therein, such payments shall be made or tendered by check, postage prepaid, to last known address of said surface owner at least 5 days before commencing drilling operations on any well: *Provided*, That should the lessee be unable to reach the owner of the surface of the land for the purpose of tendering the location fee, or if owner of the surface of the land upon being tendered the location fee by the lessee, shall refuse to accept the same, the lessee may tender the location fee to the Superintendent of the Osage Agency, and if the lessee and the Superintendent shall agree upon the amount of the location fee, the lessee shall deposit such amount with the Superintendent for payment to the owner of the surface of the land upon demand, and the Superintendent shall thereupon advise the owner of the surface of the land by mail at his last known address, that the location fee is being held for payment to him upon his written request.

[Paragraph (b) amended, 27 F.R. 9514, Sept. 26, 1962]

REQUIREMENTS OF LESSEES

### § 183.62 Permission to start operations.

Written permission must be secured from the Superintendent before operations are started on the leased premises. Lessee shall submit application for such permission, on forms to be furnished by the Superintendent.

[27 F.R. 9514, Sept. 26, 1962]

### § 183.73 Determining cost of well.

The term "cost price of a well" as applied where one lessee takes over a well drilled by another, shall include all reasonable, usual, necessary and proper expenditures including the following expenditures made by the lessee drilling the well.

(a) All location, or other surface damages occasioned by the drilling of such well.

§ 183.8
(b) A
repairin
gas and
cluding
or const
clusive
well.
(c) C
water w
prevailin
*Provided*
upon th
graph s
by the S
(d) A
drilling
where a
to in thi
(b) and
ployed
the drill
or are al
drilling
the lesse
over by t
portion
paragrap
of this s
each well
over, and
between
assessed
taken ov
by the S
(e) Cu
reaming,
for the so
If price c
average c
price to b
the Supe
where the
below the
taking ove
the gas st
taken over
stratum in
lessee, the
ther drilli
drilling an
and ream
stratum.
(f) All
where mud
fit of the l
(g) Settl
pipe left in
prevailing r
ter and kin
the well.

ıcy for such
ıce owners,
ndians shall
's direct, and
are not resi-
have a rep-
ı, such pay-
tendered by
last known
ner at least
drilling op-
ovided, That
to reach the
land for the
location fee,
of the land
location fee
to accept the
r the location
of the Osage
nd the Super-
n the amount
ssee shall de-
Superintend-
owner of the
demand, and
thereupon ad-
ıce of the land
address, that
held for pay-
ritten request.
27 F.R. 9514,

SSEES

**tart operations.**

ıst be secured
before opera-
eased premises.
cation for such
be furnished by

, 1962]

**ost of well.**

f a "well" as ap-
ıkes over a well
include all rea-
ry and proper
the following
ıe lessee drilling

other surface
the drilling of



(b) All expenses of laying, taking up, repairing, operating and maintaining gas and water lines where such lines including amount paid for water privilege or constructing dam, are used for the exclusive purpose of drilling the particular well.

(c) Customary charge for furnishing water where purchased shall be the price prevailing in the particular locality: *Provided*, Where the parties cannot agree upon the charge made under this paragraph such charge shall be determined by the Superintendent.

(d) Amounts expended in spudding or drilling a water well: *Provided*, That where any or all of the facilities referred to in this paragraph and in paragraphs (b) and (c) of this section are not employed exclusively in connection with the drilling of the well to be taken over, or are also used in connection with the drilling or operation of other wells by the lessee drilling the well to be taken over by the other lessee, then a fair proportion of the charges covered by this paragraph and paragraphs (b) and (c) of this section shall be assessed against each well, including the well to be taken over, and in the event of a disagreement between the parties as to the charges assessed against the well that is to be taken over, such charge shall be fixed by the Superintendent.

(e) Customary charge for drilling and reaming, except where reaming is done for the sole benefit of party drilling well If price charged for drilling is above the average drilling price in the field, the price to be paid shall be determined by the Superintendent. *Provided*, That where the well to be taken over is drilled below the stratum in which the lessee taking over the well is interested, that is, the gas stratum in the case of a well taken over by a gas lessee, and the oil stratum in a well taken over by the oil lessee, then the lessee doing such further drilling shall sustain the cost of drilling and reaming where such drilling and reaming are done below such stratum.

(f) All expenses of mudding, except where mudding is done for the sole benefit of the lessee drilling the well.

(g) Settlement for casing or other pipe left in the well to be made at the prevailing market price for the character and kind of casing when placed in the well.

(h) All expenses of placing and removing all casing or other pipe used in drilling said well.

(i) A reasonable charge to cover supervision and overhead expenses: *Provided*, Where the parties cannot agree upon the charge made under this paragraph, such charge shall be determined by the Superintendent.

(j) Any additional charges which cannot be mutually agreed upon shall be submitted to and determined by the Superintendent. An approximate list of expenses mentioned in this section shall be presented to proposed purchasing lessee within 10 days after the completion of the well.

[27 F.R. 9514, Sept. 26, 1962]

### § 183.81 Abandonment of wells.

Lessee shall not abandon any well for the purpose of drilling deeper for oil or gas unless the producing stratum is properly protected and shall not abandon any well producing oil or gas except with the approval of the Superintendent or where it can be demonstrated that the further operation of such well is commercially unprofitable. When any well is plugged and abandoned lessee shall, within ninety (90) days, clean up the premises around such well to the satisfaction of the Superintendent or his authorized representative: *Provided*, That the ninety (90) day period may be extended a reasonable time in the discretion of the Superintendent.

[27 F.R. 9514, Sept. 26, 1962]

### § 183.88 Division orders.

(a) The lessee may make arrangements with the purchasers of oil for the payment of the royalty, but such arrangements, if made, shall not relieve the lessee from responsibility for the payment of the royalty, should such purchaser fail, neglect, or refuse to pay the royalty when it becomes due. No oil shall be run to any purchaser or delivered to the pipeline or other carrier for shipment, or otherwise conveyed or removed from the leased premises, until a division order is executed, filed, and approved by the Superintendent, showing that the lessee has a regularly approved

lease in effect, and the conditions under which the oil may be run: (*Provided*, That the Superintendent may grant temporary permission to run oil from a lease pending the execution, filing, and approval by him of a division order.) Lessees shall be required to pay for all oil or gas used off the leased premises for operating purposes; affidavit shall be made as to the production used for such purposes and royalty paid in the usual manner. The lessee or his representative shall be present when oil is taken from the leased premises under any division order and will be responsible for the correct measurement thereof and shall report all oil so run.

(b) The lessee shall also authorize the pipeline company or the purchaser of oil to furnish the Superintendent with a monthly statement, not later than the 20th day of the following calendar month, of the gross barrels run as a common-carrier shipment or purchased from his lease or leases.

[27 F.R. 9514, Sept. 26, 1962]

**§ 183.93 Forms.**

* * * * *

(b) All sums received from sale of forms and fines shall be placed in Tribal Funds.

[Paragraph (b) amended, 27 F.R. 9514, Sept. 26, 1962]

APPROVAL FEE

**§ 183.94 Amount of fee.**

A fee of $10 will be charged for each lease, each sublease, each drilling contract affecting oil and gas mining leases, and each assignment of lease, such amount to be paid by the lessee, sublessee or assignee upon notice of approval of the contract, as provided by the act of February 14, 1920.

[27 F.R. 9515, Sept. 26, 1962]

§ 184.4

PART 1
IN W
TION
GAS

Sec.
184.4 S
184.5 T
184.26 A
184.29 F
184.30 F
H

§ 184.4

(a) At
as he ma
authorize
of the S
or its a
superinte
least thir
a shorter
retary of
represent
specific t
a reasona
fered to
for a bo
to stipula
bid must
check, ce
order, pay
the invita
less than
Within 3
being the
must remi
first year'
advertisin
superinten
form. Th
and suffici
for compl
lease form
granted f
monies du
to pay the
period, or f
within said
or if the le
fault of th
the Interio
will be forf
of the Shos
[Section h
amended, 25

| | 24 F.R. Page |
|---|---|
| ued | |
| | 9512 |
| | 9146 |
| | 394, 1215, 6054 |
| | 3881, |
| .5, | 4519, 8333, 9206 |
| )3, | 4215, 4519, 6954 |
| i8, | 3881, 3993, 4215 |
| i1, | 3993, 6954, 8333 |
| | 8333 |
| | 4215, 8333 |
| | 3881 |
| 76, | 977, 1346, 1721, |
| 3, | 7901, 8380, 9785 |
| | 1466 |
| | 9785 |

)

| | 25 F.R. Page |
|---|---|
| | 3124 |
| | 9107 |
| | 2516 |
| | 2516 |
| | 1830 |
| | 3711 |
| | 1689 |
| | 1689 |
| | 1689 |
| | 1689 |
| | 1689 |
| | 1689 |
| | 1689 |
| | 4865 |
| | 7784 |
| | 7204 |
| | 1831 |
| | 7185 |
| | 9470 |
| | 7979 |
| | 7979 |
| | 7979 |
| | 7979 |
| | 9003 |
| | 12408 |
| | 9837 |
| | 9837 |
| | 7185 |
| | 7185 |
| | 2364 |
| | 6051 |
| | 6051 |
| | 6051 |
| | 6621 |
| | 4504 |
| | [2664], [3711] |
| | 6621 |
| | 2731 |
| | 2731 |

# Title 25

## 25 CFR—Continued

| | 25 F.R. Page |
|---|---|
| 243 | 7620 |
| Appendix | 13688 |
| *Proposed rules:* | |
| 52 | 12518 |
| 88 | 3079 |
| 89 | 4750 |
| 120 | 12187 |
| 124 | 6981 |
| 131 | 6332 |
| 163 | 6362 |
| 176 | 12299 |
| 184 | 2803 |
| 221 | 388, 976, 4431, 4751, 4994, 13787, 13980 |
| 232 | 13981 |
| 252 | 13239 |

## 1961

## 25 CFR

| | 26 F.R. Page |
|---|---|
| Appendix | 12569 |
| 11.9 | 4361 |
| 11.9CA | 4361 |
| 17.14 | 10930 |
| 31.7 | 10637 |
| 50 | 9582 |
| 91.6 | 7093 |
| 91.16 | 7093 |
| 120.1 | 9042 |
| 124.9 | 3150 |
| 131 | 10966 |
| 141.7 | 10232 |
| 141.12 | 10232 |
| 141.19 | 10232 |
| 171.6 | 164 |
| 174.15 | 164 |
| 175.4 | 164 |
| 176 13 | 164 |
| 176.25 | 1910 |
| 221.6—221.7 | 1758 |
| 221.13a—221.13c | 6713 |
| 221.16—221.17 | 3304 |
| 221.24 | 8594 |
| 221.26 | 8594 |
| 221.28 | 8594 |
| 221.30 | 1954 |
| 221.86 | 1185 |
| 232.21 | 2642 |
| 233.21 | 8450 |
| 252.27a | 4361 |
| 253 | 4065 |
| *Proposed rules:* | |
| 17 | 8641 |
| 31 | 6305 |
| 34 | 6476, 10640 |
| 73 | 12708 |

## 25 CFR—Continued

*Proposed rule*—Continued

| | 26 F.R. Page |
|---|---|
| 131 | 7828 |
| 141 | 7778 |
| 194 | 10808 |
| 221 | 13, 757, 1996, 5398, 6032, 10516, 10808, 11296, 11734 |
| 233 | 6085 |

## 1962

## 25 CFR

| | 27 F.R. Page |
|---|---|
| 34.3 | 510 |
| 34.8 | 1888 |
| 71.1 | 11548 |
| 72.1 | 11548 |
| 72.3—72.4 | 11549 |
| 72.9 | 11549 |
| 72.13—72.19 | 11549 |
| 72.21 | 11549 |
| 73.21 | 2458 |
| 73.32—73.33 | 2458 |
| 73.35 | 2458 |
| 73.40—73.43 | 2458 |
| 73.44 | 2459 |
| 73.49 | 2459 |
| 110 | 10321 |
| 141.1 | 12929 |
| 141.6 | 12929 |
| 141.8 | 12929 |
| 141.14—141.15 | 12929 |
| 142 | 12929 |
| 143 | 12929 |
| 183.2 | 9512 |
| 183.4 | 9512 |
| 183.5 | 9512 |
| 183.24 | 9513 |
| 183.39 | 9513 |
| 183.40 | 9513 |
| 183.45 | 9513 |
| 183.46 | 9513 |
| 183.49 | 9514 |
| 183.51 | 9514 |
| 183.62 | 9514 |
| 183.73 | 9514 |
| 183.81 | 9514 |
| 183.88 | 9514 |
| 183.93 | 9514 |
| 183.94 | 9515 |
| 194.23 | 741 |
| 197 | 8868 |
| 221.6—221.7 | 400 |
| 221.8 | 2091 |
| 221.12 | 694 |
| 221.17 | 742 |
| 221.32 | 5094 |
| 221.33 | 5094 |
| 221.34—221.35 | 5094 |

## 25 CFR—Continued


| | 27 F.R. Page |
|---|---|
| 221.36 | 5094 |
| 221.130 | 1359 |
| 221.131 | 1359 |
| 254.2 | 12399 |
| *Proposed rules:* | |
| 141 | 9065 |
| 142 | 9148 |
| 143 | 9065 |
| 183 | 5871 |
| 197 | 4885 |
| 221 | 107, 237, 2643, 4629 |
| 252 | 11266 |




U.S. GOVERNMENT PRINTING OFFICE : 1963 O—67138