PL 88-632, October 6, 1964, **78 Stat. 1008**

UNITED STATES STATUTES AT LARGE
88TH CONGRESS - 2ND SESSION
Convening January 7, 1964

An Act

To extend the Osage mineral reservation for an Indefinite period.

October 6, 1964

78 Stat. 1008

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ante, p. 435.

SEC. 3. (a) Title V of the Government Employees Salary Reform Act of 1964 (Public Law 88–426), is amended by adding a new section, to read as follows:

Federal Government and D.C. employees. Retroactive salary increase.

"SEC. 503. (a) Notwithstanding section 3679 of the Revised Statutes, as amended (31 U.S.C. 665), the rates of compensation of officers and employees of the Federal Government and of the municipal government of the District of Columbia whose rates of compensation are fixed by administrative action pursuant to law and are not otherwise increased by this Act are hereby authorized to be increased, effective on or after the effective date prescribed by section 501(a), by amounts not to exceed the increases provided by this Act for corresponding rates of compensation in the appropriate schedule, scale, or level of pay.

"(b) Nothing contained in this section shall be deemed to authorize any increase in the rates of compensation of officers and employees whose rates of compensation are fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates or practices.

"(c) Nothing contained in this section shall affect the authority contained in any law pursuant to which rates of compensation may be fixed by administrative action."

Ante, p. 428.

(b) Section 508 of title 28, United States Code, as amended by section 306(a)(1) of the Federal Executive Salary Act of 1964, is amended by striking out "subsection (f)" and inserting in lieu thereof "subsections (f) and (g)".

(c) Section 306(a)(2) of the Federal Executive Salary Act of 1964 is amended by striking out "section 303(f)" and inserting in lieu thereof "section 303 (f) and (g)."

Ante, p. 430.

(d) The third sentence of section 2 of the Act of May 29, 1959, as amended by section 306(h) of the Federal Executive Salary Act of 1964, is amended by striking out "subsection (f)" and inserting in lieu thereof "subsections (f) and (g)".

Ante, p. 432.

(e) Section 308 of the Federal Executive Salary Act of 1964 is amended by inserting after "Federal Reserve Act (12 U.S.C. 248),", in the second sentence, the following: "in section 121 of title 2 of the Panama Canal Zone Code (76A Stat. 15),".

Effective dates.

SEC. 4. The foregoing provisions of this Act shall take effect upon the first day of the first month which begins not later than the sixtieth day after the date of its enactment, except that section 3 of this Act shall take effect as of the first day of the first pay period which began on or after July 1, 1964.

Approved October 6, 1964.

Public Law 88-632

October 6, 1964 [H. R. 10204]

AN ACT

To extend the Osage mineral reservation for an indefinite period.

Osage Indians. Mineral estate.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That section 3 of the Act of June 24, 1938 (52 Stat. 1034), which extends the mineral estate reserved to the Osage Tribe by the Act of June 28, 1906 (34 Stat. 539), until April 8, 1983, unless otherwise provided by Act of Congress, is hereby amended by striking the word "unless" and substituting therefor "and thereafter until".

Approved October 6, 1964.

H CONGRESS
Session } HOUSE OF REPRESENTATIVES { R.
No.

# EXTENDING THE OSAGE MINERAL RESERVATION FOR AN INDEFINITE PERIOD

AUGUST 13, 1964.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. MARSH, from the Committee on Interior and Insular Affairs, submitted the following

## REPORT

[To accompany H.R. 10204]

The Committee on Interior and Insular Affairs, to whom was referred the bill (H.R. 10204) to extend the Osage mineral reservation for an indefinite period, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass.

The amendment is as follows:

Strike out all after the enacting clause and insert the following:

That section 3 of the Act of June 24, 1938 (52 Stat. 1034), which extends the mineral estate reserved to the Osage Tribe by the Act of June 28, 1906 (34 Stat. 539), until April 8, 1983, unless otherwise provided by Act of Congress, is hereby amended by striking the word "unless" and substituting therefor "and thereafter until".

### PURPOSE

The purpose of H.R. 10204, as amended, is to extend for an indefinite period the mineral estate that was temporarily reserved to the Osage Tribe of Oklahoma when the tribal lands were allotted to individual members under the act of June 28, 1906. The original mineral reservation, which was for a 25-year period, has been extended from time to time. Under present law it will expire on April 8, 1983, unless terminated before that time by act of Congress.

H.R. 10204 was introduced by Representative Edmondson.

### NEED

The Osage mineral reservation has yielded well over $400 million in rents and royalties during the past 60 years and is expected to continue in production for another century or more. There has been great advantage, both to the Osages and to lessees, in having only one

les[illegible] her then a multitude of lessors, of this valuable resource to deal[illegible] In fact, it is doubtful whether full development of the oil and gas deposits could have been accomplished otherwise. In addition, if the mineral reservation were allowed to expire during the production period there would be serious questions of ownership of the subsurface rights.

The same advantages that have accrued in the past from having the mineral reservation centered in the tribe rather than in individual allottees will be present in the future. Enactment of H.R. 10204 will permit further development and production of the tribal oil and gas resources to go forward in an efficient manner and will insure beneficial results to all members of the tribe.

COST

H.R. 10204 will entail no expenditure of Federal funds.

AMENDMENT

An amendment makes clear that the mineral estate reservation will extend beyond April 8, 1983, unless Congress provides otherwise.

DEPARTMENTAL REPORT

The report of the Secretary of the Interior, dated June 17, 1964, is set forth below:

U.S. DEPARTMENT OF THE INTERIOR,
OFFICE OF THE SECRETARY,
*Washington, D.C., June 17, 1964.*

Hon. WAYNE N. ASPINALL,
*Chairman, Committee on Interior and Insular Affairs, House of Representatives, Washington, D.C.*

DEAR MR. ASPINALL: This responds to your request for a report on H.R. 10204, a bill to extend the Osage mineral reservation for an indefinite period.

We recommend that the bill be enacted.

The purpose of the bill is to extend for an indefinite period the mineral estate that was reserved to the Osage Tribe when the tribal lands were allotted.

The Osage Allotment Act of June 28, 1906 (34 Stat. 539) provided for a division among the members of the Osage Tribe of all tribal lands, except as therein provided, so that each member would receive his proportionate part. The act reserved to the Osage Tribe all minerals covered by the lands allotted to the members of the tribe. The reservation was for a period of 25 years unless otherwise provided by Congress. At the end of the 25-year period, the act provided that the tribe's mineral reservation would terminate, and that the trust restrictions on both tribal and individual property would also terminate. The mineral reservation would terminate 25 years after April 8, 1906 (see sec. 3), and the trust restrictions would terminate 25 years after January 1, 1907 (see sec. 5).

Both of these dates have been extended. The act of March 3, 1921 (41 Stat. 1249), extended the tribal mineral estate to April 7, 1946. The act of March 2, 1920 (45 Stat. 1478), extended the triba[illegible] [illegible]ral estate to April 8, 1958, and the trust restrictions to January 1[illegible] [illegible]9. The act of June 24, 1938 (52 Stat. 1034), extended the tribal mineral estate to April 8, 1983, and the trust restrictions to January 1, 1984. These dates were qualified by the words "unless otherwise provided by act of Congress."

The bill under consideration would extend the tribal mineral estate indefinitely by deleting the reference to the April 8, 1983, date, which would make the reservation extend "until otherwise provided by act of Congress."

The bill would not change the date for the termination of trust restrictions, which would continue to be January 1, 1984.

The authority of Congress to extend the tribal mineral reservation was challenged and decided in *Adams* v. *Osage Tribe of Indians*, 59 F. 2d 653 (CA 10, 1932). The litigation was started immediately after the original 25-year period, which expired in 1931, and the court held that Congress had retained the power to extend the tribal mineral reservation without infringing any rights of the plaintiffs.

By a report dated November 18, 1963, the Osage Tribal Council submitted exhibits prepared by the engineering staff of the Osage agency and by an engineering consultant employed by the tribal council disclosing that the Osage Mineral Reservation comprises an area of 1,460,077.63 acres, which has produced a grand total of $437,258,298.13 in bonus, rental, and royalty payments from 1901 to close of the fiscal year 1963, and produced over $10 million for each of the fiscal years 1962 and 1963. The exhibits also show that the estimated presently developed proven oil reserves of the Osage Mineral Reservation are 500 million barrels, which reserves include both primary and presently developed secondary recovery operations, and that the present proven developed reserves will have a productive life extending far beyond April 8, 1983, and that it is reasonable to expect that the gross annual production will be at least 1 million barrels in the year 2050. This estimate does not take into account the undiscovered oil remaining on the reservation, and the presently undeveloped but proven secondary recovery reserves.

If the tribal mineral reservation is allowed to expire before the salable mineral resources have been extracted from the land, there are two unresolved issues under the present law which should be resolved by Congress pursuant to its reserved power to "provide otherwise by act of Congress." The two issues are:

1. Upon termination of the tribal mineral reservation do the minerals go to the original allottees or their heirs, or do they go to the persons who at that time own the surface of the lands overlying the minerals? The two groups are different.

2. Do the minerals in each tract of land go to the allottee or surface owner of that particular tract, or do the minerals in all tracts go to all allottees or surface owners as tenants-in-common?

Although the *Adams* case, supra, contains language which could be used as the basis for an argument to answer these questions, neither question was decided.

The bill under consideration would avoid these questions by continuing the tribal mineral reservation indefinitely. This action would permit the development and production of the minerals in a practical and feasible manner, with a high degree of efficiency in the [illegible]ht of

existing technology, and assure continued conservation of a natural resource for the benefit of all members of the tribe by:

1. Continuing the present economical procedure for leasing—one lessor instead of many, preventing an heirship problem in leasing.

2. Making it possible to plan for long-term development and production whereby the tribe may obtain the best possible returns from undeveloped land for all tribal members.

The bill would not change the January 1, 1984, date for terminating the Federal trust. That date is 20 years in the future, and the subject is a separable one that deserves separate consideration.

This bill will not increase or extend the cost to the Government because the Osage Tribe has for many years paid the total cost of the management of the mineral estate.

The Bureau of the Budget has advised that there is no objection to the presentation of this report from the standpoint of the administration's program.

Sincerely yours,

D. Otis Beasley,
*Assistant Secretary of the Interior.*

## COMMITTEE RECOMMENDATION

The Committee on Interior and Insular Affairs recommends enactment of H.R. 10204, as amended.

## CHANGES IN EXISTING LAW

In compliance with clause 3 of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italics, existing law in which no change is proposed is shown in roman):

### Act of June 24, 1938 (52 Stat. 1034)

Sec. 3. That section 1 of the Act of Congress of March 2, 1929 (45 Stat. L. 1478), relating to the Osage Indians of Oklahoma, be, and the same is hereby, amended to read as follows:

"That all that part of the Act of June 28, 1906 (34 Stat. L. 539), entitled 'An Act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes', which reserves to the Osage Tribe the oil, gas, coal, or other minerals, covered by the lands for the selection and division of which provision is made in that Act is hereby amended so that the oil, gas, coal, or other minerals, covered by said lands are reserved to the Osage Tribe, until the 8th day of April 1983, **[unless]** *and thereafter until* otherwise provided by Act of Congress, and all royalties and bonuses arising therefrom shall belong to the Osage Tribe of Indians, and shall be disbursed to members of the Osage Tribe or their heirs or assigns as now provided by law, after reserving such amounts as are now or may hereafter be authorized by Congress for specific purposes. * * *"

Calendar No. 1464

88TH CONGRESS 2d Session } SENATE { REPORT No. 1525

# EXTENDING THE OSAGE MINERAL RESERVATION FOR AN INDEFINITE PERIOD

SEPTEMBER 3 (legislative day, SEPTEMBER 1), 1964.—Ordered to be printed
Filed under authority of the order of the Senate of September 3 (legislative day, September 1), 1964

Mr. CHURCH, from the Committee on Interior and Insular Affairs, submitted the following

## REPORT

[To accompany H.R. 10204]

The Committee on Interior and Insular Affairs, to whom was referred the bill (H.R. 10204) to extend the Osage mineral reservation for an indefinite period, having considered the same, report favorably thereon without amendment and recommend that the bill do pass.

### PURPOSE

The purpose of H.R. 10204 is to extend for an indefinite period the mineral estate that was temporarily reserved to the Osage Tribe of Oklahoma when the tribal lands were allotted to individual members under the act of June 28, 1906. The original mineral reservation, which was for a 25-year period, has been extended from time to time. Under present law it will expire on April 8, 1983, unless terminated before that time by act of Congress.

A companion bill, S. 2581, introduced by Senators Monroney and Edmondson, was also considered.

### NEED

The Osage mineral reservation has yielded well over $400 million in rents and royalties during the past 60 years and is expected to continue in production for another century or more. There has been great advantage, both to the Osages and to lessees, in having only one lessor, rather than a multitude of lessors, of this valuable resource to deal with. In fact, it is doubtful whether full development of the oil and gas deposits could have been accomplished otherwise. In addition, if the mineral reservation were allowed to expire during the

production [illegible]d there would be serious questions of ownership of the subsurfa[illegible]ts.

The same [illegible]tages that have accrued in the past from having the mineral rese[illegible]ation centered in the tribe rather than in individual allottees will be present in the future. Enactment of H.R. 10204 will permit further development and production of the tribal oil and gas resources to go forward in an efficient manner and will insure beneficial results to all members of the tribe.

COST

H.R. 10204 will entail no expenditure of Federal funds.

DEPARTMENTAL REPORT

The report of the Secretary of the Interior, dated June 17, 1964, is set forth below:

U.S. DEPARTMENT OF THE INTERIOR,
OFFICE OF THE SECRETARY,
*Washington, D.C., June 17, 1964.*

Hon. WAYNE N. ASPINALL,
*Chairman, Committee on Interior and Insular Affairs,*
*House of Representatives, Washington, D.C.*

DEAR MR. ASPINALL: This responds to your request for a report on H.R. 10204, a bill to extend the Osage mineral reservation for an indefinite period.

We recommend that the bill be enacted.

The purpose of the bill is to extend for an indefinite period the mineral estate that was reserved to the Osage Tribe when the tribal lands were allotted.

The Osage Allotment Act of June 28, 1906 (34 Stat. 539) provided for a division among the members of the Osage Tribe of all tribal lands, except as therein provided, so that each member would receive his proportionate part. The act reserved to the Osage Tribe all minerals covered by the lands allotted to the members of the tribe. The reservation was for a period of 25 years unless otherwise provided by Congress. At the end of the 25-year period, the act provided that the tribe's mineral reservation would terminate, and that the trust restrictions on both tribal and individual property would also terminate. The mineral reservation would terminate 25 years after April 8, 1906 (see sec. 3), and the trust restrictions would terminate 25 years after January 1, 1907 (see sec. 5).

Both of these dates have been extended. The act of March 3, 1921 (41 Stat. 1249), extended the tribal mineral estate to April 7, 1946. The act of March 2, 1929 (45 Stat. 1478), extended the tribal mineral estate to April 8, 1958, and the trust restrictions to January 1, 1959. The act of June 24, 1938 (52 Stat. 1034), extended the tribal mineral estate to April 8, 1983, and the trust restrictions to January 1, 1984. These dates were qualified by the words "unless otherwise provided by act of Congress."

The bill under consideration would extend the tribal mineral estate indefinitely by deleting the reference to the April 8, 1983, date, which would make the reservation extend "until otherwise provided by act of Congress."

[illegible]e bill would not change the date for the termination of tr[illegible] [illegible]ions, which would continue to be January 1, 1984.

[illegible]uthority of Congress to extend the tribal mineral reservation was challenged and decided in *Adams* v. *Osage Tribe of Indians*, 59 F. 2d 653 (CA 10, 1932). The litigation was started immediately after the original 25-year period, which expired in 1931, and the court held that Congress had retained the power to extend the tribal mineral reservation without infringing any rights of the plaintiffs.

By a report dated November 18, 1963, the Osage Tribal Council submitted exhibits prepared by the engineering staff of the Osage agency and by an engineering consultant employed by the tribal council disclosing that the Osage Mineral Reservation comprises an area of 1,469,077.63 acres, which has produced a grand total of $437,258,298.13 in bonus, rental, and royalty payments from 1901 to close of the fiscal year 1963, and produced over $10 million for each of the fiscal years 1962 and 1963. The exhibits also show that the estimated presently developed proven oil reserves of the Osage Mineral Reservation are 500 million barrels, which reserves include both primary and presently developed secondary recovery operations, and that the present proven developed reserves will have a productive life extending far beyond April 8, 1983, and that it is reasonable to expect that the gross annual production will be at least 1 million barrels in the year 2050. This estimate does not take into account the undiscovered oil remaining on the reservation, and the presently undeveloped but proven secondary recovery reserves.

If the tribal mineral reservation is allowed to expire before the salable mineral resources have been extracted from the land, there are two unresolved issues under the present law which should be resolved by Congress pursuant to its reserved power to "provide otherwise by act of Congress." The two issues are:

1. Upon termination of the tribal mineral reservation do the minerals go to the original allottees or their heirs, or do they go to the persons who at that time own the surface of the lands overlying the minerals? The two groups are different.

2. Do the minerals in each tract of land go to the allottee or surface owner of that particular tract, or do the minerals in all tracts go to all allottees or surface owners as tenants-in-common?

Although the *Adams* case, supra, contains language which could be used as the basis for an argument to answer these questions, neither question was decided.

The bill under consideration would avoid these questions by continuing the tribal mineral reservation indefinitely. This action would permit the development and production of the minerals in a practical and feasible manner, with a high degree of efficiency in the light of existing technology, and assure continued conservation of a natural resource for the benefit of all members of the tribe by:

1. Continuing the present economical procedure for leasing—one lessor instead of many, preventing an heirship problem in leasing.

2. Making it possible to plan for long-term development and production whereby the tribe may obtain the best possible returns from undeveloped land for all tribal members.

The bill would not change the January 1, 1984, date for terminating the Federal trust. That date is 20 years in the future, and the subject is [illegible]parable one that deserves separate consideration.

This bi[ll will] not increase or extend the cost to the Government because the [Osag]e Tribe has for many years paid the total cost of the management of the mineral estate.

The Bureau of the Budget has advised that there is no objection to the presentation of this report from the standpoint of the administration's program.

Sincerely yours,

D. OTIS BEASLEY,
*Assistant Secretary of the Interior.*

CHANGES IN EXISTING LAW

In compliance with subsection (4) of rule XXIX of the Standing Rules of the Senate, changes in existing law made by the bill (H.R. 10204) as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets; new matter is printed in italic; existing law in which no change is proposed is shown in roman).

ACT OF JUNE 24, 1938 (52 STAT. 1034)

SEC. 3. That section 1 of the Act of Congress of March 2, 1929 (45 Stat. L. 1478), relating to the Osage Indians of Oklahoma, be, and the same is hereby, amended to read as follows:

"That all that part of the Act of June 28, 1906 (34 Stat. L. 539), entitled 'An Act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes', which reserves to the Osage Tribe the oil, gas, coal, or other minerals, covered by the lands for the selection and division of which provision is made in that Act is hereby amended so that the oil, gas, coal, or other minerals, covered by said lands are reserved to the Osage Tribe, until the 8th day of April 1983, [unless] *and thereafter until* otherwise provided by Act of Congress, and all royalties and bonuses arising therefrom shall belong to the Osage Tribe of Indians, and shall be disbursed to members of the Osage Tribe or their heirs or assigns as now provided by law, after reserving such amounts as are now or may hereafter be authorized by Congress for specific purposes. * * *"

Calendar No. 140[?]

88TH CONGRESS 2d Session } SENATE { REPORT No. 1526

# BREAKS INTERSTATE PARK COMPACT, VIRGINIA AND KENTUCKY

SEPTEMBER 3 (legislative day, SEPTEMBER 1), 1964.—Ordered to be printed
Filed under authority of the order of the Senate of September 3 (legislative day, September 1), 1964

Mr. ANDERSON, from the Committee on Interior and Insular Affairs, submitted the following

## REPORT

[To accompany H.R. 11162]

The Committee on Interior and Insular Affairs, to whom was referred the bill (H.R. 11162) granting the consent of Congress to an amendment to the Breaks Interstate Park compact between the Commonwealths of Virginia and Kentucky, having considered the same, report favorably thereon without amendment and recommend that the bill do pass.

Committee action in ordering the bill reported favorably was unanimous, and the measure has the support of the Senators from Virginia and Kentucky.

PURPOSE

The purpose of H.R. 11162 is to give the consent of the Congress to a proposed amendment to a 1954 compact between the Commonwealths of Virginia and Kentucky which would authorize the States to grant the power of eminent domain within the States to the park commission established by the compact.

Article III of the Breaks Interstate Park compact, to which the consent of Congress was given by the act of July 27, 1954 (68 Stat. 571), provides that each of the two States concerned "will exercise the right of eminent domain to acquire property located within each Commonwealth required by [the Breaks Interstate Park] Commission to effectuate the purpose of this compact." After experience in operating under this provision, the two States have decided that procedure would be simplified if the power of eminent domain were given directly to the Commission and have so provided by appropriate acts of their legislatures. Enactment of H.R. 11162 is needed to permit this decision to become effective, since article I, section 10, clause 3 of the

35-010