# FEDERAL REGISTER

VOLUME 32 • NUMBER 115

Thursday, June 15, 1967 • Washington, D.C.

Pages 8571–8652

Agencies in this issue—

Agricultural Stabilization and Conservation Service
Atomic Energy Commission
Civil Aeronautics Board
Civil Service Commission
Coast Guard
Commodity Credit Corporation
Consumer and Marketing Service
Defense Department
Delaware River Basin Commission
Federal Aviation Agency
Federal Deposit Insurance Corporation
Federal Maritime Commission
Federal Power Commission
Federal Trade Commission
Food and Drug Administration
Housing and Urban Development Department
Indian Affairs Bureau
Interagency Textile Administrative Committee
International Commerce Bureau
Interstate Commerce Commission
Land Management Bureau
Navy Department
Packers and Stockyards Administration
Securities and Exchange Commission
Small Business Administration
Treasury Department

Detailed list of Contents appears inside.



HeinOnline -- 32 Fed. Reg. 8571 1967

amended by deleting from paragraph (e) the item "Ferrous gluconate."

(Sec. 706 (b) (1), (c) (2), (d), 74 Stat. 399, 402; 21 U.S.C. 376 (b) (1), (c) (2), (d))

Dated: June 8, 1967.

J. K. KIRK,
*Associate Commissioner for Compliance.*

[F.R. Doc. 67-6731; Filed, June 14, 1967; 8:48 a.m.]

SUBCHAPTER B—FOOD AND FOOD PRODUCTS

## PART 121—FOOD ADDITIVES

### Subpart C—Food Additives Permitted in Feed and Drinking Water of Animals or for the Treatment of Food-Producing Animals

### Subpart D—Food Additives Permitted in Food for Human Consumption

THIABENDAZOLE

1. The Commissioner of Food and Drugs, having evaluated the data submitted in a petition (FAP 3D0956) filed Merck Sharp & Dohme Research Laboratories, Division of Merck & Co., Inc., Rahway, N.J. 07065, and other relevant material, has concluded that the food additive regulations should be amended to provide for the safe use of thiabendazole in swine feed as indicated below. Therefore, pursuant to the provisions of the Federal Food, Drug, and Cosmetic Act (sec. 409(c)(1), 72 Stat. 1786; 21 U.S.C. 348(c)(1)) and under the authority delegated to the Commissioner by the Secretary of Health, Education, and Welfare (21 CFR 2.120), § 121.260(c) is amended by adding to table 2 a new item 5, as follows:

§ 121.260 Thiabendazole.

* * * * *

(c) * * *

TABLE 2—THIABENDAZOLE IN FEED

| Principal ingredient | Amount | Combined with— | Amount | Limitations | Indications for use |
|---|---|---|---|---|---|
| * * * | * * * | * * * | * * * | * * * | * * * |
| 5. Thiabendazole. | 45.4–303 gm. per ton (0.005–0.1%). | ---------- | ---------- | For swine: Administer continuously feed containing 0.05–0.1% thiabendazole per ton for 2 weeks followed by feed containing 0.005–0.02% thiabendazole per ton for 8–14 weeks; do not treat animals within 30 days of slaughter. | Aid in the prevention of infestations of large roundworms (genus *Ascaris*). |

* * * * * * *

2. Based upon an evaluation of the data before him and proceeding under the authority of the act (sec. 409(c) (4), 72 Stat. 1786; 21 U.S.C. 348(c) (4)), delegated as cited above, the Commissioner has concluded that a zero tolerance is required to assure that edible tissues of swine treated with thiabendazole in accordance with § 121.260 are safe for human consumption. Accordingly, § 121.1153 is revised to read as follows:

§ 121.1153 Thiabendazole.

A tolerance of zero is established for residues of thiabendazole in the edible tissues of cattle, goats, sheep, and swine and in milk from cattle and goats.

Any person who will be adversely affected by the foregoing order may at any time within 30 days from the date of its publication in the FEDERAL REGISTER file with the Hearing Clerk, Department of Health, Education, and Welfare, Room 5440, 330 Independence Avenue SW., Washington, D.C. 20201, written objections thereto, preferably in quintuplicate. Objections shall show wherein the person filing will be adversely affected by the order and specify with particularity the provisions of the order deemed objectionable and the grounds for the objections. If a hearing is requested, the objections must state the issues for the hearing. A hearing will be granted if the objections are supported by grounds legally sufficient to justify the relief sought. Objections may be accompanied by a memorandum or brief in support thereof.

*Effective date.* This order shall become effective on the date of its publication in the FEDERAL REGISTER.

(Sec. 409(c) (1), (4), 72 Stat. 1786; 21 U.S.C. 348(c) (1), (4))

Dated: June 6, 1967.

J. K. KIRK,
*Associate Commissioner for Compliance.*

[F.R. Doc. 67-6674; Filed, June 14, 1967; 8:46 a.m.]

# Title 25—INDIANS

## Chapter I—Bureau of Indian Affairs, Department of the Interior

SUBCHAPTER Q—OIL AND GAS

## PART 183—LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING

### Miscellaneous Amendments

On page 12794 of the FEDERAL REGISTER of September 30, 1966, there was published a notice of intention to revise § 183.81 and to revoke §§ 183.82, 183.83, and 183.84 of Title 25, Code of Federal Regulations.

The purpose of the revision and revocation is to provide more fully and definitely for the conditions under which oil and gas wells may be shutdown, abandoned, and plugged and for payment of a fee of $15 when applying for permission to plug a well.

Interested persons were given 30 days from the date of publication of the notice in the FEDERAL REGISTER within which to submit their views, data, and arguments concerning the proposed revision and revocation to the Commissioner of Indian Affairs. Written objections were received regarding the provisions prohibiting a shutdown, abandonment, or other discontinuance of operations without the approval of the Superintendent. The objections are based on the conclusion that these points are covered by existing regulations. None of the regulations cited, however, deal fully and definitely with the subject.

To facilitate the administration and supervision over the many well changes on secondary recovery projects, an amendment has been added to the first paragraph of § 183.81 as proposed by which the Superintendent may authorize that these well changes be included in a monthly report.

Objections were also raised on the proposed requirement for the payment of a $15 fee by lessees upon application of authority to plug a well. However, it is believed these objections do not have sufficient basis to warrant any change.

Accordingly, the proposed amendments to 25 CFR Part 183 are hereby adopted, subject to the following changes:

In § 183.81, as proposed, the word "therefore" is deleted from the second sentence of the first paragraph; and a provision is added at the end of the first paragraph under which the Superintendent may authorize that well changes on secondary recovery projects be included in a monthly report.

These amendments will become effective 30 days following the date of publication in the FEDERAL REGISTER.

STEWART L. UDALL,
*Secretary of the Interior.*

JUNE 8, 1967.

1. Section 183.81 is revised to read as follows:

§ 183.81 Shutdown, abandonment, and plugging of wells.

No productive well shall be abandoned until its lack of capacity for further profitable production of oil or gas has been demonstrated to the satisfaction of the Superintendent. Lessee therefore shall not shut down, abandon, or otherwise discontinue the operation or use of any well without the written approval of the Superintendent or his designated representative. All applications for such approval shall be submitted to the Superintendent on forms furnished by him. Lessees operating secondary recovery units may obtain permission from the Superintendent to submit a monthly well status report rather than obtain individual authorizations for changing the status of producing, injection, disposal, or other wells connected with the operation of the unit.

(a) Application for authority to shut down or discontinue use or operation of a well shall set forth justification therefor and probable duration, the means by which the well bore is to be protected,



HeinOnline -- 32 Fed. Reg. 8587 1967

Case 1:99-cv-00550-ECH Document 309-44 Filed 06/30/2008 Page 3 of 30



and the contemplated eventual disposition of the well. The method of conditioning such well shall be subject to the approval of the Inspector.

(b) Wells to be permanently abandoned shall be promptly plugged as prescribed by the Inspector. Applications to plug shall set forth reasons for plugging; a detailed statement of the proposed work including kind, location, and length of plugs (by depth), plans for mudding and cementing, testing, parting and removing casing; and any other pertinent information: *Provided*, The Superintendent, or his designated representative, may give oral permission and instructions pending receipt of a written application to plug a newly drilled hole. Lessee shall remit a fee of $15 with each written application for authority to plug a well, such fee to be refunded if permission is not granted.

(c) Lessee shall plug and fill all dry or abandoned wells in a manner to confine the fluid in each formation bearing fresh water, oil, gas, and other minerals, and to protect it against invasion of fluids from other sources. Mud-laden fluid, cement, and other plugs shall be used to fill the hole from bottom to top: *Provided*, If a satisfactory agreement is reached between Lessee and the surface owner, subject to approval of the Superintendent, Lessee may condition the well for use as a fresh water well and shall so indicate on the plugging record. The manner in which plugging materials shall be introduced and the type of materials so used shall be subject to the approval of the Inspector. Within 10 days after plugging, Lessee shall file with the Superintendent a complete report of the plugging of each well. When any well is plugged and abandoned Lessee shall, within 90 days, clean up the premises around such well to the satisfaction of the Superintendent or his authorized representative: *Provided*, That the 90-day period may be extended a reasonable time in the discretion of the Superintendent.

(d) In event Lessee shall fail to plug properly any dry or abandoned well in accordance with the regulations in this part, the Superintendent may, after 5 days' notice to the parties in interest, plug such well at the expense of Lessee or his surety plus an additional 25 percent to cover administrative costs.

### §§ 183.82–183.84 [Revoked]

2. Sections 183.82, 183.83, and 183.84 are superseded by the amendment in item 1 above, and are revoked.

3. Section 183.91(a)(10) is revised to read as follows:

### § 183.91 Amount of penalties.

* * * * *

(a) * * *

(10) For failure to file plugging reports as required by § 183.81 and for failure to file reports, and remit royalties required by § 183.45, $5 a day for the first violation and $10 a day for each violation thereafter.

* * * * *

[F.R. Doc. 67-6691; Filed, June 14, 1967; 8:45 a.m.]

# Title 32—NATIONAL DEFENSE

## Chapter I—Office of the Secretary of Defense

### SUBCHAPTER M—MISCELLANEOUS

## PART 267—ENGINEERING DATA FILES

The Director of Defense Research and Engineering and the Assistant Secretary of Defense (Installations and Logistics) approved the following on April 13, 1967:

Sec.
267.1 Purpose and objectives.
267.2 Applicability and scope.
267.3 Definitions.
267.4 Concept.
267.5 Responsibilities.
267.6 Effective date and implementation.

AUTHORITY: The provisions of this Part 267 issued under 5 U.S.C. 301.

### § 267.1 Purpose and objectives.

This part supplements DoD Directive 4120.3, "Defense Standardization Program," dated April 23, 1965, by assigning responsibilities to Department of Defense components for developing and applying uniform management and distribution techniques to DoD engineering data which will:

(a) Assure their availability to scientists, engineers, and other personnel engaged in research, development, test, evaluation, procurement, production, supply, and maintenance functions.

(b) Assure the rapid distribution of high quality, reliable data both within the DoD and to eligible industry groups subject to considerations of security; limited rights of the Federal Government; reimbursement costs, where appropriate; and DoD policies governing public release (see DoD Directive 5100.36, "DoD Technical Information," dated Dec. 31, 1962).

(c) Establish a broader engineering data base.

(d) Enlarge the opportunities for achieving improved design, standardization, competitive procurement, and item entry control objectives set forth in DoD Directive 4120.3, "Defense Standardization Program," dated April 23, 1965, and DoD Instruction 4120.8, "Use of Standardization Documents Issued by Industry Groups," dated August 9, 1960 (25 F.R. 8606), and encourage the reuse of previous design solutions.

(e) Facilitate and encourage the development, promotion, and use by industry groups of improved engineering data systems and techniques.

(f) Provide a basis for the development and use of improved engineering data retrieval systems throughout the defense community.

(g) Establish the users' confidence in the technical validity and integrity of DoD-controlled engineering data to insure its reuse in furtherance of DoD objectives.

### § 267.2 Applicability and scope.

The provisions of this part apply to all DoD components engaged in research, development, test, and evaluation (RDT&E), procurement, production, and supply activities involving the following types of engineering data.

(a) *Formally approved engineering data.* All engineering documentation subjected to formal development and review by one or more DoD components (see DoD Directive 4120.3, "Defense Standardization Program," dated Apr. 23, 1965, and DoD Instruction 4120.8, "Use of Standardization Documents Issued by Industry Groups," dated Aug. 9, 1960 (25 F.R. 8606)). Typical examples are:

(1) Standards: (i) Federal and Military standards.

(ii) DoD-approved industry standards.

(2) Specifications: (i) Federal and Military specifications.

(ii) DoD-approved industry specifications.

(3) Military handbooks.

(4) Qualified products lists.

(b) *Additional engineering data.* Other engineering documentation not now subject to formal standardization development and review processes may be included upon establishment of the necessary procedures and controls (see § 267.5(a)). Examples of such documentation are:

(1) Engineering drawings.
(2) Design data sheets.
(3) Other contractor-prepared documents.

### § 267.3 Definitions.

(a) *Engineering data.* (1) That portion of technical data contained in documents prepared by a design activity to disclose and describe configuration, design form and fit, performance, operation, reliability, maintainability, quality control, or other engineering features of items, materials, methods, practices, procedures, processes, and services.

(2) The principal documentation of engineering data occurs in standards, specifications, engineering drawings, associated lists (lists of material, parts lists, data lists, and index lists), item data sheets, performance parameters, test procedures or reports, engineering configuration changes, and other documents providing design data or design disclosure.

(b) *Data management.* The function of determining and validating data requirements, planning for the timely and economical acquisition of data, and insuring the adequacy and availability of acquired data for their intended use.

(c) *Data retrieval systems.* Manual or mechanized methods for the recovery of selected data from a collection of like data for the purpose of obtaining specific information. Retrieval includes all the procedures used to identify, search, find, and remove specific information or data stored. It excludes both the creation and the use of the data.

### § 267.4 Concept.

For maximum applicability, engineering data used by scientists, engineers, and other personnel engaged in research, development, test, evaluation, procurement, production, supply, and maintenance functions must be accurate, current, and properly organized.



HeinOnline -- 32 Fed. Reg. 8588 1967

SUPERSEDED

UNIVERSITY OF COLORADO
MAY 2 1968
LAW LIBRARY

# CODE OF FEDERAL REGULATIONS

## TITLE 25

Revised as of January 1, 1968

CONTAINING A CODIFICATION OF DOCUMENTS OF GENERAL APPLICABILITY AND FUTURE EFFECT AS OF JANUARY 1, 1968

*With Ancillaries*

Published by the Office of the Federal Register, National Archives and Records Service
General Services Administration, as a Special Edition of the Federal Register
Pursuant to Section 11 of the Federal Register Act as Amended

*Cite this Code* CFR

*thus:* 25 CFR 1.2

CHAPTER I—Bure

CHAPTER II—Ind

CHAPTER III—Inc

CROSS REFERENCE
on reservations:

Bureau of Land M
43 CFR Part 22

NOTE: Other r
Chapter IV, Title
Chapter I, Title 4
Code of Federal R

lling into the mine when
in actual use, and such
:, or covering shall be
ood condition during the
g lease.
s where hoisting is done
or fenced on three sides
side equipped with a gate
ept closed when access to
; necessary.
. drill holes shall be se-
o the surface unless used
r other mining purposes,
they shall be cased or
ated from caving or be-
d to persons or animals.
sing shall extend 4 feet
: of the hole.

**:ration between superin-
l district mining supervi-**

ict mining supervisor of
office, Geological Survey,
ugh his assistants, shall
ees for the superintend-
reports, drill logs, maps,
d all other information
ing operations required
ons to be submitted by
l maintain a file thereof
endent.
of the Geological Survey
ing to lead and zinc
w Indian lands shall be
lable for inspection and
zed employees of the
n Affairs, and the em-
ological Survey assigned
; to Indian lands shall
orized employees of the
n Affairs such informa-
ical advice as may be
ppropriate to the most
tion in the conduct of
ed to the two bureaus.
r facilities and service
d for the benefit of the
oyees of the Geological
ureau of Indian Affairs.
s of any kind will be
gical Survey representa-
an, but such representa-
: full authority to issue
ers to operators relative
nd operations: i. e., the
ill operations, including
ency, health and sanita-
ition of material or eco-
ch orders to be prepared



with the advice of the local representative of the Bureau of Indian Affairs.

CROSS REFERENCE: For regulations of the Geological Survey, see 30 CFR Chapter II.

### § 176.23a Suspension of operations and production on leases for minerals other than oil and gas.

The provisions of § 172.15a of this subchapter are applicable to leases under this part.

[24 F.R. 9611, Nov. 26, 1959]

### § 176.24 Books and accounts.

(a) The lessee shall maintain books in which shall be kept a correct account of all ore and rock mined on the tract, of all ore put through the mill, of all lead and zinc concentrates produced, and of all ore and concentrates sold and to whom sold, the weight, assay value, moisture content, base price, dates penalties, and price received, and the percentage of lead and zinc recovered. A correct statement of the same for each month shall be furnished the office of the district mining supervisor pursuant to § 176.23 not later than 15 days after the first of each month for the preceding month, together with a certificate from the smelter showing the unit price paid for the mineral purchased and the amount of ore and concentrates purchased during the month from said land.

(b) An audit of the lessee's accounts and books shall be made semiannually, or at such other times as may be directed by the Secretary of the Interior, by certified public accountants, approved by the Secretary, and at the expense of the lessee. The lessee shall furnish free of cost a copy of such semiannual or other audit, through the office of the district mining supervisor pursuant to § 176.23, within 30 days after the completion of each auditing.

### § 176.25 Other minerals and deep-lying lead and zinc minerals.

Except as provided in § 176.6(b), leases on Quapaw Indian lands for mining minerals other than lead and zinc and for lead and zinc and associated minerals below the horizon of the rock stratum known as the Reed Springs Formation, shall be made pursuant to the provisions of Part 172 of this subchapter.

[26 F.R. 1910, Mar. 4, 1961]

# SUBCHAPTER Q—OIL AND GAS

## PART 183—LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING


Sec.
183.1 Definitions.

OIL MINING LEASES

183.2 Royalty payments.
183.3 Government reserves right to purchase oil.
183.4 Drilling obligations.
183.5 Use of surface lands; settlement of damages to lands and crops.
183.6 Prohibition of waste; intoxicating liquors not permitted; books and accounts.
183.7 Improvements on the land.
183.8 Lands may be leased separately for gas.
183.9 Gas wells to be turned over to gas lessee.
183.10 Oil wells to be turned over to oil lessee.
183.11 Wells producing both oil and gas.
183.12 Drilling through gas sand.
183.13 Deepening wells.
183.14 Casing-head gas.
183.15 Gas for operating purposes.
183.16 Surrender of lease.
183.17 Form of payment.

Sec.
183.18 Leases subject to current regulations.
183.19 Penalty for violation of lease terms.
183.20 Bonds.
183.21 Provisions of forms made a part of regulations.

GAS MINING LEASES

183.22 Certain provisions of oil mining lease identical with gas mining lease.
183.23 Contracts for the sale of gas for industrial purposes.

UTILIZATION OF CASING-HEAD GAS WHEN USED FOR THE MANUFACTURE OF GASOLINE

183.24 Royalty on casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from gas, drip gasoline, or other natural condensate.
183.25 Casing-head gas contracts and division orders.
183.26 Effective date of casing-head gas contracts.
183.27 Casing-head gas contracts subject to regulations of Interior Department.
183.28 Royalty on casing-head gasoline manufactured from casing-head gas by oil lessees.
183.29 Determining gasoline content of casing-head gas for royalty purposes.

Sec.
183.30 Measurement of gas.
183.31 Reports of sales of casing-head gas.
183.32 Oil lessees may be allowed to manufacture casing-head gasoline from casing-head gas.
183.33 Lessees not relieved by division orders from paying royalties if purchaser fails to pay.
183.34 Residue gas to be delivered to gas lessee.
183.35 Casing-head gas sold to plants outside of Osage County.
183.36 Burners for oil or gas used for operating purposes.
183.37 Measurement of gas used by oil or gas lessees.

ACREAGE

183.38 Limitation.

HOW TO ACQUIRE LEASES OF TRIBAL LANDS

183.39 Sale of oil leases and gas leases.
183.40 Corporation and corporate information.
183.41 How to acquire permission to begin operations on homestead allotments.
183.43 Lessee's process agents.
183.44 Lessees subject to superintendent's orders; books and records open to inspection.
183.45 Reports and time of royalty payments.

ASSIGNMENTS

183.46 Approval of lease instruments.
183.47 Filing of assignments and drilling contracts.
183.48 Notices.

OPERATIONS

183.49 Commencement of operations.
183.50 Settlement of damages claimed by persons other than lessee or owner of lands.
183.51 Well location fees.
183.52 Information to be given surface owners before commencement of drilling.
183.53 Procedure for settlement of damages claimed.
183.54 Slush pits; fine for failure to provide.
183.55 Notice to lessees in damage cases.
183.56 Lessees or tenants may represent surface owners.
183.57 Lessee's use of water.
183.58 Settlement of damage claims to surface lands covered by Federal farm loan.

POWERS AND DUTIES OF INSPECTORS

183.59 Duties of inspectors.
183.60 Limit percentage of well flow.
183.60a Unit operating area.
183.61 Judge whether orders complied with.

REQUIREMENTS OF LESSEES

183.62 Permission to start operations.
183.63 Drilling records.

Sec.
183.64 Plats showing location of wells.
183.65 Rigs to be marked.
183.66 Line drilling.
183.67 Notice prior to removal of casing.
183.68 Two slush pits required.
183.69 Water control.
183.70 Productive formations to be protected.
183.71 Control devices.
183.72 Waste of gas to be prevented.
183.73 Determining cost of well.
183.74 Oil and gas to be separated.
183.75 Use of gas for lifting oil.
183.76 Prevent wastage of oil and gas.
183.77 Approval of inspector for use of gas for operations.
183.78 Flambeau lights.
183.79 Most approved methods to be followed in drilling and producing operations.
183.80 Superintendent to be notified of intended operations.
183.81 Shutdown, abandonment, and plugging of wells.
183.82–183.84 [Reserved]
183.85 Disposal of B. S. and salt water.
183.86 Accidents to be reported.
183.87 Tankage for crude oil.
183.88 Division orders.
183.89 Use of timber from leased lands.
183.90 Gas wells drilled by oil lessees and vice versa.

PENALTIES FOR VIOLATION OF REGULATIONS

183.91 Amount of penalties.

EFFECTIVE DATE OF REGULATIONS

183.92 Regulations to be effective from date of approval.

FORMS

183.93 Forms.

APPROVAL FEE

183.94 Amount of fee.

HEARINGS AND APPEALS

183.95 Hearing and appeals.

AUTHORITY: The provisions of this Part 183 issued under sec. 3, 34 Stat. 543. Interpret or apply secs. 1, 2, 45 Stat. 1478, 1479, unless otherwise noted.

SOURCE: The provisions of this Part 183 appear at 22 F.R. 10612, Dec. 24, 1957, unless otherwise noted.

## § 183.1 Definitions.

The following words or terms when used in the lease and regulations in this part shall have the meaning shown in this section:

(a) *Superintendent.* The Superintendent of the Osage Agency, Pawhuska, Oklahoma, in charge of the Osage Agency and Reservation, or any other person who may be in charge of such



agency and reser
his duty to enfor
regulations in thi
(b) *Inspector.*
as Inspector of o
may be designat
the Interior or tl
dian Affairs to su
tions on Osage la
of the Superinte
(c) *Oil lessee.*
corporation to wl
is made under t
part.
(d) *Gas lessee*
corporation to wl
under the regula

OIL M

§ 183.2 Royalty

(a) *Royalty o*
*mary or gas in*
lessee shall pay
the Superintende
a royalty, the sur
gross proceeds fr
the oil used by th
and operation pu
less the Osage T
approval of the C
Affairs, shall elec
oil; payment sha
of sale or removal
payments are m
and settlement
actual selling pri
the highest post
Mid-Continent o
sale or removal:
the quantity of
producing wells
according to the
tional quarter-se
ered by the leas
full quarter-secti
month is sufficie
dred or more ba
the royalty on suc
(b) *Royalty o*
*ondary recovery p*
*injection.* When
of oil recoverable
injection method
mation or format
or partially deple
Tribal Council m
royalty rate to be
intendent, the su
12½ percent of tl
sales of oil prod
covery processes,
tion, after deduct

; showing location of wells.
to be marked.
drilling.
;e prior to removal of casing.
slush pits required.
:r control.
uctive formations to be pro-
:ted.
rol devices.
;e of gas to be prevented.
rmining cost of well.
nd gas to be separated.
of gas for lifting oil.
ent wastage of oil and gas.
oval of inspector for use of gas
operations.
ibeau lights.
approved methods to be fol-
wed in drilling and producing
erations.
rintendent to be notified of in-
nded operations.
down, abandonment, and plug-
ng of wells.
[Reserved]
osal of B. S. and salt water.
dents to be reported.
tage for crude oil.
sion orders.
of timber from leased lands.
wells drilled by oil lessees and
e versa.

FOR VIOLATION OF REGULATIONS

unt of penalties.

TIVE DATE OF REGULATIONS

ulations to be effective from date
approval.

FORMS

as.

APPROVAL FEE

unt of fee.

HEARINGS AND APPEALS

ring and appeals.

r: The provisions of this Part
under sec. 3, 34 Stat. 543. Inter-
ly secs. 1, 2, 45 Stat. 1478, 1479,
wise noted.

The provisions of this Part 183
F.R. 10612, Dec. 24, 1957, unless
oted.

**efinitions.**

owing words or terms when
e lease and regulations in this
have the meaning shown in
n:

*erintendent.* The Superin-
the Osage Agency, Pawhuska,
, in charge of the Osage
nd Reservation, or any other
o may be in charge of such



agency and reservation, and it shall be his duty to enforce compliance with the regulations in this part.

(b) *Inspector.* Any person appointed as Inspector of oil and gas wells, or who may be designated by the Secretary of the Interior or the Commissioner of Indian Affairs to supervise oil or gas operations on Osage lands under the direction of the Superintendent.

(c) *Oil lessee.* Any person, firm, or corporation to whom an oil mining lease is made under the regulations in this part.

(d) *Gas lessee.* Any person, firm, or corporation to whom a gas lease is made under the regulations in this part.

OIL MINING LEASES

### § 183.2 Royalty payments.

(a) *Royalty on oil produced by primary or gas injection methods.* The lessee shall pay or cause to be paid to the Superintendent, for the lessor as a royalty, the sum of 16⅔ percent of the gross proceeds from sales after deducting the oil used by the lessee for development and operation purposes on the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs, shall elect to take the royalty in oil; payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal: *Provided,* That when the quantity of oil taken from all the producing wells on any quarter-section according to the public survey, or fractional quarter-section if the land covered by the lease does not include the full quarter-section, during any calendar month is sufficient to average one hundred or more barrels per well per day, the royalty on such oil shall be 20 percent.

(b) *Royalty on oil produced by secondary recovery processes other than gas injection.* When the estimated reserves of oil recoverable by primary and/or gas injection methods from a specified formation or formations have been depleted or partially depleted, the lessee and the Tribal Council may agree upon a new royalty rate to be approved by the Superintendent, the sum to be not less than 12½ percent of the gross proceeds from sales of oil produced by secondary recovery processes, other than gas injection, after deducting the oil used by the lessee for development and operation purposes on the lease, unless the Osage Tribal Council, with the approval of the Commissioner of Indian Affairs, shall elect to take the royalty in oil; payment to be made at the time of sale or removal of the oil, except where payments are made on division orders and settlement shall be based on the actual selling price, but at not less than the highest posted market price in the Mid-Continent oil field on the day of sale or removal.

(c) *Royalty in kind.* Should the lessor, with the approval of the Commissioner of Indian Affairs, elect to take the royalty in oil, the lessee shall furnish free storage for the royalty oil for not exceeding 30 days.

[22 F.R. 10612, Dec. 24, 1957, as amended at 27 F.R. 9512, Sept. 26, 1962]

### § 183.3 Government reserves right to purchase oil.

Any of the executive departments of the United States Government shall have the option to purchase at the highest posted market price on the day of sale all or any part of the oil produced under any lease. The Commissioner of Indian Affairs may impose restrictions as to time or times for drilling of wells and as to the production from any well or wells when in his judgment or the judgment of his representative, such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe of Indians, and in taking action, the Commissioner may take into consideration, among other things, Federal laws, State laws, or regulations by competent Federal or State authorities or lawful agreements among operators regulating either drilling or production, or both.

### § 183.4 Drilling obligations.

(a) Lessee shall drill at least one well to the Mississippi Lime unless oil or gas is found in paying quantities at a lesser depth, on the land covered by his lease, within 12 months from the date of approval of the lease, or the lease may be held for the full five-year primary term without drilling, upon payment to the Superintendent for the lessor of rental at the rate of one dollar per acre per annum, payable annually in advance, beginning one year after the date of approval of the lease. This lease shall terminate as to both parties unless such

advance rental shall be received at the Osage Agency or shall have been mailed as indicated by postmark, on or before the due date: *Provided*, That the time within which a well shall be drilled shall not begin to run on any restricted homestead selection until the consent of the Superintendent to drilling on such homestead shall have been given, nor shall advance rental become due until the next anniversary date of the lease following the date of such consent: *Provided further*, That the Superintendent in his discretion may order the drilling of any lease, if in his opinion the interests of the Osage Tribe warrant: *Provided further*, That whenever the Commissioner of Indian Affairs shall consider the marketing facilities inadequate to take care of the production he may direct suspension of drilling operations on this lease. The completion of a well to the Mississippi Lime, or production of oil or gas in paying quantities from a lesser depth than the Mississippi Lime, for such time as production shall continue, after the lease has entered a rental status, shall relieve the lessee from any further payment of rentals for the balance of the primary term of the lease for which rental has not been paid. Should such production cease, rental shall commence on the next anniversary date of the lease. Rental shall be paid on the basis of a full year, and no refund will be made of advance rental paid in compliance with the regulations in this part.

(b) Prior to the expiration of a term of a lease, the Osage Tribal Council may, with the approval of the Superintendent, and a finding by him that such action is in the best interest of the Osage Tribe, grant an extension of the term of the lease for a period of not to exceed six months for the purpose of enabling the lessee to drill a well to the Mississippi Lime unless oil or gas is found in paying quantities at a lesser depth.

[23 F.R. 7133, Sept. 16, 1958, as amended at 27 F.R. 9512, Sept. 26, 1962]

### § 183.5 Use of surface lands; settlement of damages to lands and crops.

(a) Lessee shall have the right to use so much of the surface of the land within the Osage Reservation as may be reasonable for operations, including the right to lay and maintain pipelines, telephone and telegraph lines, pull rods and other appliances necessary for the operation of the wells, also the right of ingress and egress, and the right-of-way to any point of operations. Lessee may use water from streams and natural water courses for lease operations as set out in § 183.57. Before commencing operations for the drilling of any well the lessee shall pay to the surface owner the sum of $200 for each well located on cultivated land (tilled or cultivated within the immediately preceding three years, and including hay-meadow land), $150 for open pasture land, and $100 for such location on brush or wooded lands, and other lands not suitable for cultivation. Upon payment of such location site money, lessee shall be entitled to possession. Location sites shall be held to the minimum area essential for operations, and in no event shall exceed one and one-half acres in area. Lessee shall also pay tank site fees at the rate of $20 per tank of not exceeding 1,000 barrels capacity: *Provided, however*, That no tank site fee shall be paid for a tank temporarily set on a well location site for testing purposes during the completion of the well. Tank sites shall be held to the minimum area essential to efficient operations, and in no event shall exceed an area of 50 feet square per tank. The sum to be paid for an oil tank site of larger capacity and occupying a greater area shall be agreed upon between the surface owner and the lessee and on failure to agree, the same shall be fixed by arbitration.

(b) All claims for damages for use of the surface other than that included in the location and tank sites, all claims for damages to growing crops or improvements on the lands and all other claims for damages to the surface owners or their lessees arising from operations of the oil or gas lessees shall be settled by arbitration whenever the parties are unable to agree concerning the same. But nothing contained in this section shall be construed to deny to either party to the controversy the right to appeal to the courts in the event he is dissatisfied with the award to or against him.

(c) All agreements (or authenticated copies thereof) providing for the settlement of damages shall be filed in the Osage Agency, if the surface owner is a restricted Indian, and all such amounts which may be due and payable to any such Indian shall be paid to the superintendent and by him immediately remitted to the Indian entitled thereto All sums due as royalty or damages shall



be a lien on all eq
on leased premise
[23 F.R. 10612, Dec
27 F.R. 9512, Sept. 2

CROSS REFERENCE
tions pertaining t
161 of this chapte

§ 183.6 Prohibi
ing liquors n
accounts.

The lessee shal
a workmanlike m
and suffer none
the land, not pe
maintained on t
control, nor a
liquors to be int
sold, or given aw
such premises;
account of all o
disbursements, f
of such when a
regulations or b
sentative of the S

§ 183.7 Improv

All buildings a
ments, including
wells drilled 3 ye
expiration of th
part of said land
erty of the surf
of the lease,
boiler houses, p
drilling outfits,
chinery, and th
nonpaying wells
drilled less tha
producing oil o
lease remain t
lessee: *Provided*,
not be removed
be purchased f
owner of the oil
may be mutuall
failure to agree
by arbitration.

§ 183.8 Lands
for gas.

The lessee sha
understanding
thereby may be
party who shall
to all gas except

§ 183.9 Gas we
gas lessee.

If the oil
gas well he shall
the well any of t

ıe right-of-way to any point s. Lessee may use water ; and natural water courses :ations as set out in § 183.57. ıencing operations for the ıy well the lessee shall pay ce owner the sum of $200 located on cultivated land :tivated within the immed-ing three years, and includ-dow land), $150 for open and $100 for such location wooded lands, and other table for cultivation. Upon such location site money, ; entitled to possession. Lo-shall be held to the mini-ssential for operations, and ıall exceed one and one-half . Lessee shall also pay tank he rate of $20 per tank of ıg 1,000 barrels capacity: vever, That no tank site fee for a tank temporarily set :ation site for testing pur-the completion of the well. all be held to the minimum ıl to efficient operations, ent shall exceed an area of e per tank. The sum to be il tank site of larger capac-ying a greater area shall be between the surface owner e and on failure to agree, ıll be fixed by arbitration. ims for damages for use of ther than that included in ınd tank sites, all claims for growing crops or improve-lands and all other claims to the surface owners or arising from operations of s lessees shall be settled by henever the parties are un-concerning the same. But ıined in this section shall be deny to either party to the :he right to appeal to the event he is dissatisfied with or against him. eements (or authenticated f) providing for the settle-ıages shall be filed in the y, if the surface owner is a dian, and all such amounts e due and payable to any shall be paid to the super-d by him immediately re-ıe Indian entitled thereto as royalty or damages shall



be a lien on all equipment and unsold oil on leased premises.

[22 F.R. 10612, Dec. 24, 1957, as amended at 27 F.R. 9512, Sept. 26, 1962]

CROSS REFERENCES: For additional regulations pertaining to rights-of-way, see Part 161 of this chapter.

**§ 183.6 Prohibition of waste; intoxicating liquors not permitted; books and accounts.**

The lessee shall carry on operations in a workmanlike manner, commit no waste and suffer none to be committed upon the land, not permit any nuisance to be maintained on the premises under his control, nor allow any intoxicating liquors to be introduced, brought upon, sold, or given away for any purposes on such premises; also keep an accurate account of all operations, receipts, and disbursements, furnishing sworn reports of such when and as required by the regulations or by an authorized representative of the Secretary of the Interior.

**§ 183.7 Improvements on the land.**

All buildings and permanent improvements, including casings of all producing wells drilled 3 years or more prior to the expiration of the lease, shall remain a part of said land and become the property of the surface owner at expiration of the lease, excepting tools, tanks, boiler houses, pipelines, pumping and drilling outfits, derricks, engines, machinery, and the casings of all dry or nonpaying wells. The casings of wells drilled less than 3 years prior to and producing oil on the expiration of the lease remain the property of the oil lessee: *Provided*, That such casings shall not be removed from the wells but shall be purchased from the lessee by the owner of the oil rights at such price as may be mutually agreed upon, and on failure to agree the price shall be fixed by arbitration.

**§ 183.8 Lands may be leased separately for gas.**

The lessee shall accept a lease with the understanding that the lands covered thereby may be leased to some other party who shall have the exclusive right to all gas except as otherwise provided.

**§ 183.9 Gas wells to be turned over to gas lessee.**

If the oil lessee shall drill a gas well he shall, without removing from the well any of the casing or other equipment, immediately shut the well in and notify the gas lessee and the superintendent. In the event the gas lessee does not within 30 days after receiving notice elect to take over such well and reimburse the oil lessee the cost of drilling the same, including all damages paid, in addition to the cost in place of casing, tubing, and other equipment, the oil lessee shall immediately confine the gas to the original stratum, and the disposition of such well shall be subject to the approval of the superintendent.

**§ 183.10 Oil wells to be turned over to oil lessee.**

If the gas lessee shall drill an oil well upon the leased lands, he shall immediately, without removing from the well any of the casing or other equipment, notify the oil lessee and the superintendent. In the event the oil lessee does not within 30 days after receipt of notice elect to take over such well he shall immediately so notify the gas lessee, and the disposition of such well shall be subject to the approval of the superintendent. Should the oil lessee elect to take over the well, he shall pay the gas lessee the cost of drilling the same, including all damages paid in addition to the cost in place of casing and other equipment.

**§ 183.11 Wells producing both oil and gas.**

If the oil lessee shall drill a well which produces both oil and gas in commercial quantities from the same sand he shall immediately notify the gas lessee and together they shall arrange for the separation and utilization of the oil and gas, and the cost pertaining to said well.

**§ 183.12 Drilling through gas sand.**

Whenever oil and gas are found in separate sands, and the oil lessee desires to drill through the gas sand for the oil, he may do so provided the method of protecting the gas sand shall be approved by the inspector.

**§ 183.13 Deepening wells.**

If at any time any oil or gas well becomes unprofitable and the oil or gas lessee desires to deepen the same, such action as may be mutually agreed upon may be taken not in conflict with the regulations. Upon failure to agree the disposition of such well shall be subject to the approval of the superintendent.

**§ 183.14 Casing-head gas.**

All casing-head gas shall belong to the oil lessee and when used for the manufacture of gasoline shall be metered and be subject to a royalty of 16⅔ percent based on the market value of the gasoline contents, and all such gas not utilized by the oil lessee on his leased premises or for operating other adjoining leases within the Osage Reservation, shall belong to the gas lessee, subject to the prescribed royalty of 16⅔ percent.

**§ 183.15 Gas for operating purposes.**

The gas lessee shall furnish the oil lessee sufficient gas for drilling and operating purposes at a rate to be agreed upon, or on failure to agree the rate shall be fixed by arbitration: *Provided*, That the oil lessee shall make necessary connections between the well and the meter whenever possible.

**§ 183.16 Surrender of lease.**

The oil lessee may at any time, by paying to the Superintendent the sum of one dollar, surrender all or any quarter-section or fractional part of quarter-section where the lease does not cover the full quarter-section, and have the lease cancelled as to the lands, surrendered; and be relieved from all further obligations and liabilities thereunder, as to the part surrendered: *Provided*, That if this lease has been recorded, the lessee shall execute a release and record the same in the proper office. Such surrender shall not entitle the lessee to a refund of the unused portion of rental paid in lieu of development, nor shall it relieve the lessee and his sureties of any obligation incurred prior to such surrender.

[23 F.R. 7134, Sept. 16, 1958]

**§ 183.17 Form of payment.**

All amounts due and payable under a lease shall be paid to the Superintendent by check or bank draft on a solvent bank.

**§ 183.18 Leases subject to current regulations.**

Leases shall be subject to current regulations prescribed by the Secretary of the Interior, relative to such leases, all of which are made a part of such leases: *Provided*, That no regulations made after the approval of any lease shall operate to affect the term of lease, rate of royalty, rental or acreage, unless agreed to by both parties.

**§ 183.19 Penalty for violation of lease terms.**

Violation of any of the terms or conditions of any lease or of the regulations in this part shall subject the lease to cancellation by the Superintendent, or the lessee to a fine of not exceeding $500 per day for each and every day the terms of the lease or of the regulations are violated, or the orders of the Superintendent in reference thereto are not complied with, or to both such fine and cancellation in the discretion of the Superintendent: *Provided*, That prior to cancellation of a lease or the imposition of a fine as provided for in this section, the lessee shall be entitled to notice and hearing with respect to the terms of the lease or of the regulations violated, which hearing shall be held by the Superintendent.

**§ 183.20 Bonds.**

(a) Lessees shall furnish with each oil lease and each gas lease, to be filed at the time the lease is presented, a bond upon Form D, with a surety company duly authorized to execute bonds. Such bonds shall be in the sum of $1,000 for each quarter-section or fractional quarter-section unit covered by the lease: *Provided, however*, That the lessee may file one bond, Form G, covering all leases to which he or they are or may become parties instead of a separate bond in each case, such bond to be in the penal sum of $15,000.

(b) In lieu of the bonds required under paragraph (a) of this section; a lessee may furnish a bond (Form 5–156) in the sum of $75,000 for full nation-wide coverage with an acceptable company authorized to act as sole surety to cover all oil and gas leases without geographic or acreage limitation to which the lessee is or may become a party.

(c) The right is specifically reserved to increase the amount of bonds prescribed in paragraph (a) of this section in any particular case when the Superintendent deems it proper to do so. The nationwide bond may be increased at any time in the discretion of the Secretary of the Interior.

(d) Form H should be used in the preparation of a bond covering a lease acquired through assignment where the assignee does not have a collective bond, or the surety does not execute its consent to remain bound under the original bond given to secure the faithful per-

formance of t
the lease.

§ 183.21 Pr
part of re

The provis
ment, and su
as Forms A,
hereby made
this part, and
adhere strictl

GA

§ 183.22 Ce
ing lease
lease.

The terms
leases in effe
entire acreag
vary somewh
quirements, b
of surface, pa
sons of well l
lessee are pra
of oil lessee.
part will gove
leases in the
applicable.

§ 183.23 Co
for indus

(a) All co
for industrial
ments showi
and schedules
tracts with d
filed with the
be subject to
missioner of I
his opinion, t
Tribe or the
(b) In the
preference sh
domestic co
otherwise in t
for the indus
tain a clause
is shown to th
missioner tha
mestic consum
the Commissi
terminate upo
notice from t
the Commissi
immediately t
of gas to indu
is of the opini
for domestic
nished to ind
sumers shall
meter rates:

**Penalty for violation of lease**

of any of the terms or of any lease or of the regula- s part shall subject the lease tion by the Superintendent, e to a fine of not exceeding y for each and every day the e lease or of the regulations l, or the orders of the Super- in reference thereto are not ith, or to both such fine and n in the discretion of the Su- nt: *Provided*, That prior to n of a lease or the imposition provided for in this section, hall be entitled to notice and h respect to the terms of the f the regulations violated, ring shall be held by the dent.

**Bonds.**

es shall furnish with each d each gas lease, to be filed the lease is presented, a bond D, with a surety company ized to execute bonds. Such be in the sum of $1,000 for r-section or fractional quar- unit covered by the lease: owever, That the lessee may d, Form G, covering all leases e or they are or may become ead of a separate bond in each bond to be in the penal sum.

eu of the bonds required un- aph (a) of this section; a les- rnish a bond (Form 5–156) in $75,000 for full nation-wide ith an acceptable company to act as sole surety to cover gas leases without geographic limita[illegible] n to which the lessee econ[illegible] arty. righ[illegible] [illegible]cifically reserved [illegible] [illegible]nt of bonds pre- [illegible] (a) of this section [illegible] se when the Superin- en[illegible] it proper to do so. The bond may be increased at any discretion of the Secretary of r.

n H should be used in the n of a bond covering a lease rough assignment where the es not have a collective bond, ety does not execute its con- ain bound under the original n to secure the faithful per-formance of the terms and conditions of the lease.

**§ 183.21 Provisions of forms made a part of regulations.**

The provisions of the lease, assignment, and supporting papers, designated as Forms A, B, D, E, F, G, and H are hereby made a part of the regulations in this part, and lessees will be required to adhere strictly to the conditions thereof.

GAS MINING LEASES

**§ 183.22 Certain provisions of oil mining lease identical with gas mining lease.**

The terms of the several gas mining leases in effect, covering practically the entire acreage of the Osage Reservation, vary somewhat as to development requirements, but provisions relative to use of surface, payment of damages by reasons of well locations, etc., and duties of lessee are practicaly identical with that of oil lessee. The regulations in this part will govern operations under all gas leases in the Osage Reservation so far as applicable.

**§ 183.23 Contracts for the sale of gas for industrial purposes.**

(a) All contracts for the sale of gas for industrial purposes and sworn statements showing the terms, conditions, and schedules of prices contained in contracts with domestic consumers shall be filed with the Superintendent, and shall be subject to the approval of the Commissioner of Indian Affairs whenever, in his opinion, the interests of the Osage Tribe or the public require such action.

(b) In the sale and disposition of gas, preference shall at all times be given to domestic consumers, unless provided otherwise in the lease, and all contracts for the industrial use of gas shall contain a clause to the effect that when it is shown to the satisfaction of the Commissioner that such gas is needed for domestic consumers within an area fixed by the Commissioner, such contract shall terminate upon the expiration of 30 days' notice from the Commissioner, and that the Commissioner shall have authority immediately to suspend the furnishing of gas to industrial consumers when he is of the opinion that such gas is needed for domestic consumers. All gas furnished to industrial and domestic consumers shall be metered and sold at meter rates: *Provided*, That gas furnished to an oil lessee may be sold as provided in the gas lessee's contract.

(c) All contracts with domestic consumers shall be subject to the inspection of the Superintendent.

UTILIZATION OF CASING-HEAD GAS WHEN USED FOR THE MANUFACTURE OF GASOLINE

**§ 183.24 Royalty on casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from gas, drip gasoline, or other natural condensate.**

(a) A royalty of 16⅔ percent of the gross proceeds of sales shall be paid on the value of one-third (or the lessee's portion if greater than one-third) of all casing-head or natural gasoline, butane, propane, or other liquid hydrocarbon substances extracted from the gas produced from the leasehold. The value of the remainder is an allowance for the cost of manufacture, and no royalty thereon is required. The royalty shall be computed on the sale price received by the manufacturers of such products, or such higher price the lessee may receive, the same to be reported under oath and remitted to the Superintendent not later than the 25th of the succeeding month for all such products sold during the previous month. If the manufacturer of any product extracted from casing-head gas produced from an Osage leasehold should sell his product at a price below that obtained by other manufacturers selling such product in the open market during a particular month, the Superintendent shall notify said manufacturer of such discrepancy and require settlement for royalty upon the average price obtained by manufacturers selling such product in the open market during the same period. The place of sale of liquid hydrocarbon extracted from gas, for royalty purposes, shall be at the plant where manufactured.

(b) The royalty on all drip gasoline, or other natural condensate recovered from gas produced from the leased lands without resort to manufacturing process shall be 16⅔ percent of the gross proceeds from sales, except that such substance, if processed in a casing-head gasoline plant shall be treated for royalty purposes as though it were gasoline.

[22 F.R. 10612, Dec. 24, 1957, as amended at 27 F.R. 9513, Sept. 26, 1962]

**§ 183.25 Casing-head gas contracts and division orders.**

Contracts and division orders shall be entered into between a lessee and any other person or corporation for the sale of casing-head gas, which shall provide for a minimum royalty interest for the lessor of 16⅔ percent of 33⅓ percent of the value of the gasoline extracted, unless it is sold on a higher basis, in which event it shall be computed on such basis.

**§ 183.26 Effective date of casing-head gas contracts.**

Contracts for the sale of casing-head gas entered into between lessees and others shall be filed with the superintendent within 30 days after date of execution, and shall be effective only from date of approval by the superintendent.

**§ 183.27 Casing-head gas contracts subject to regulations of Interior Department.**

All contracts for the sale of casing-head gas shall be made subject to the rules and regulations of the Department now existing or hereafter to be promulgated, and shall provide that § 183.24 in regard to the basis of determining the royalty, may be revised by the Secretary of the Interior upon notice to all parties concerned, and an opportunity being given them to be heard: *Provided*, That such revision shall not apply to contracts approved under the regulations in this part prior to any such revision or change which will in any way alter the terms of the contract, rate of royalty, method of computing royalty, or basis of such computation, without the written consent of the parties thereto filed with the superintendent. Contracts hereafter executed shall also provide that they may be cancelled by the superintendent for violation of the terms thereof or the regulations, after 30 days' notice to the parties concerned and an opportunity to be heard has been afforded them, subject to appeal to the Secretary of the Interior within 30 days from notice of decision of the superintendent.

**§ 183.28 Royalty on casing-head gasoline manufactured from casing-head gas by oil lessees.**

When oil lessees manufacture casing-head gasoline from casing-head gas produced from their own leases, payment for the royalty interest of the lessor shall be at the rate of 16⅔ percent (or the royalty specified in the lease) to be computed on 33⅓ percent of the gasoline extracted as provided in § 183.24, and which shall be subject to change as provided in § 183.27.

**§ 183.29 Determining gasoline content of casing-head gas for royalty purposes.**

The gasoline content of all casing-head gas per 1,000 cubic feet for royalty purposes shall be determined by dividing the total amount of gasoline extracted, marketed, or utilized during any month, after deducting all naphtha or other products used for blending purposes, by the amount of casing-head gas used in such plant, as shown by meters. In cases where one gasoline plant purchases casing-head gas from more than one oil lessee and it is impossible to determine from the plant operations the gasoline content of casing-head gas from any particular lease, they may use any physical field test desired to determine the productivity for the purpose of prorating the 33⅓ percent of the value of all gasoline extracted from the different leases, but in all cases the minimum royalty shall be 16⅔ percent of 33⅓ percent of the gross amount of gasoline extracted whether paid by the oil lessee or by the operator of the gasoline plant when a division order has been executed and approved by the superintendent.

**§ 183.30 Measurement of gas.**

Gas of all kinds (except gas used for purposes of production on the leasehold or unavoidably lost) is subject to royalty, and all gas shall be measured by meter (preferably of the orifice-meter type) unless otherwise agreed to by the Superintendent. All gas meters must be approved by the Superintendent and installed at the expense of the lessee at such places as may be agreed to by the Superintendent. For computing the volume of all gas produced, sold, or subject to royalty, the standard of pressure shall be 10 ounces above an atmospheric pressure of 14.4 pounds to the square inch, regardless of the atmospheric pressure at the point of measurement, and the standard of temperature shall be 60° F. All measurements of gas shall be adjusted by computation to these standards, regardless of the pressure and temperature at which the gas was actually measured, unless otherwise authorized in writing by the Superintendent.

**§ 183.31 Report gas.**

Sworn statem the superintende ers or persons in plants to whom showing: (a) vol purchased from total amount of any plant and is purchased fr lessee method productivity of t chased from th the price at wh blended gasolin sale, (d) the am The statements than the 25th c shall cover the p the same time of royalty intere by the oil lesse where division cuted and appro ent. The books chaser shall be order of the sup test the accurac referred to ab whether the ro protected.

**§ 183.32 Oil le manufactur from casing**

Oil lessees sh the superintend oline from casin their approved l of the casing-h mined as pres sworn stateme § 183.31, accom the royalty int the superintend 25th day of eac gas utilized fo casing-head gas ing month, the on the basis inc

**§ 183.33 Lesse orders from chaser fails**

When divisior executed and a of the royalty relieve the lesse payment shoul neglect, or ref when it become

ate of 16⅔ percent (or the
ified in the lease) to be com-
3⅓ percent of the gasoline
s provided in § 183.24, and
be subject to change as pro-
33.27.

**)etermining gasoline content
ng-head gas for royalty pur-**

line content of all casing-
r 1,000 cubic feet for royalty
all be determined by divid-
al amount of gasoline ex-
arketed, or utilized during
after deducting all naphtha
oducts used for blending pur-
e amount of casing-head gas
n plant, as shown by meters.
iere one gasoline plant pur-
ig-head gas from more than
e and it is impossible to de-
m the plant operations the
itent of casing-head gas from
lar lease, they may use any
ld test desired to determine
ivity for the purpose of pro-
33⅓ percent of the value of
extracted from the different
in all cases the minimum
l be 16⅔ percent of 33⅓ per-
gross amount of gasoline ex-
ether paid by the oil lessee
perator of the gasoline plant
sion order has been executed
ed by the superintendent.

**Measurement of gas.**

ll kinds (except gas used for
production on the leasehold
bly lost) is subject to royalty,
shall be measured by meter
of the orifice-meter type)
rwise agreed to by the Super-
All gas meters must be ap-
the Superintendent and in-
the expense of the lessee at
as may be agreed to by the
dent. For computing the
ll gas produced, sold, or sub-
lty, the standard of pressure
ounces above an atmospheric
f 14.4 pounds to the square
rdless of the atmospheric
t the point of measurement,
ndard of temperature shall be
l measurements of gas shall
d by computation to these
regardless of the pressure
rature at which the gas was
easured, unless otherwise au-
writing by the Superintend-

**§ 183.31 Reports of sales of casing-head gas.**

Sworn statements shall be made to the superintendent by lessees, and owners or persons in charge of the gasoline plants to whom casing-head gas is sold, showing: (a) volume of casing-head gas purchased from each lessee, (b) the total amount of gasoline extracted in any plant and where casing-head gas is purchased from more than one oil lessee method used to determine the productivity of the casing-head gas purchased from the different lessees, (c) the price at which the merchantable or blended gasoline is sold and dates of sale, (d) the amount paid to each lessee. The statements shall be made not later than the 25th day of each month and shall cover the preceding month, and at the same time payment shall be made of royalty interest to the superintendent by the oil lessee, or by the purchaser where division orders, have been executed and approved by the superintendent. The books of both lessee and purchaser shall be open to inspection on order of the superintendent so far as to test the accuracy of the sworn statements referred to above, and to determine whether the royalty interests are fully protected.

**§ 183.32 Oil lessees may be allowed to manufacture casing-head gasoline from casing-head gas.**

Oil lessees shall secure the consent of the superintendent to manufacture gasoline from casing-head gas produced on their approved leases. The productivity of the casing-head gas shall be determined as prescribed in § 183.29, and sworn statements, as indicated in § 183.31, accompanied by remittance of the royalty interest shall be mailed to the superintendent not later than the 25th day of each month for casing-head gas utilized for the manufacture of casing-head gasoline during the preceding month, the computation to be made on the basis indicated in § 183.24.

**§ 183.33 Lessees not relieved by division orders from paying royalties if purchaser fails to pay.**

When division orders or contracts are executed and approved for the payment of the royalty interest, same shall not relieve the lessees from responsibility for payment should the purchaser fail, neglect, or refuse to pay the royalty when it becomes due.

**§ 183.34 Residue gas to be delivered to gas lessee.**

The residue or dry gas remaining after extracting the gasoline, not used for development purposes on the leases where it was produced or adjoining leases owned by the same lessee in Osage County, shall be delivered to the gas lessee as provided in § 183.72, and all contracts for the sale of casing-head gas shall contain a provision to such effect.

**§ 183.35 Casing-head gas sold to plants outside of Osage County.**

Where any casing-head gas is sold to gasoline plants located outside of Osage County, tests shall be made under Government supervision to determine the gasoline content, and when deemed advisable tests shall be made of all casing-head gas used in any such plant in order to determine whether the physical field test of gas from Osage County shows as large a gasoline content as is extracted in actual plant operations, and after such test have been made the superintendent shall determine the productivity of the gas from Osage County.

**§ 183.36 Burners for oil or gas used for operating purposes.**

Where nonroyalty oil or gas is used for operating purposes by lessee, the superintendent may require to be installed and used an efficient burner of a type to be approved by him.

**§ 183.37 Measurement of gas used by oil or gas lessees.**

All gas utilized by oil or gas lessees shall be metered with the exception of casing-head gas coming from wells so located in the opinion of the oil and gas inspector that it would be impracticable to gather and utilize same for royalty purposes, and as provided in § 183.72. Gas not metered but utilized for lease operations shall be estimated as to quantity and report thereof made monthly on forms which will be furnished by the Superintendent upon application, such report to be prepared so as to reach the superintendent's office not later than the 25th day of the succeeding months for which the report is made.

ACREAGE

**§ 183.38 Limitation.**

There is no limitation to the number of acres any lessee may acquire, by lease or assignment, for oil mining purposes on the Osage Indian Reservation.

## HOW TO ACQUIRE LEASES OF TRIBAL LANDS

### § 183.39 Sale of oil leases and gas leases.

(a) Written application for tracts to be offered for lease may be filed with the Superintendent.

(b) The Superintendent, with the consent of the Osage Tribal Council, may at such times and in such manner as shall be deemed appropriate, publish and distribute notices that oil leases and/or gas leases on specific tracts of unleased tribal lands, each of which shall be a compact body, will be offered for sale to the highest responsible bidder: *Provided*, That not less than 25,000 acres of the unleased portion of the Osage mineral reserve shall be offered for lease during any one year. Successful bidders must deposit with the Superintendent on day of sale, a check, or bank draft on a solvent bank in an amount equal to 25 percent of the bonus as a guaranty of good faith. The balance of the bonus, together with a $10 filing fee for each lease, shall be paid, and the lease in completed form with necessary accompanying papers shall be filed with the Superintendent within 20 days after the lease is forwarded by the Superintendent, to the lessee for execution, unless such period has been extended by the Superintendent for good and sufficient reason. If the successful bidder fails to complete the lease or to pay the full consideration within 20 days or an authorized extension thereof, or if the lease is disapproved through no fault of the lessor or the Department of the Interior, the amount deposited as a guaranty of good faith shall be forfeited for the use and benefit of the lessor. Any and all bids shall be subject to acceptance by the Osage Tribal Council. The Superintendent may disapprove a lease made on an accepted bid, upon evidence satisfactory to him of collusion, fraud or other irregularity in connection with the sale of the lease. At a public auction sale the Superintendent may require any bidder to submit satisfactory evidence of good faith, that he has the cash in hand or at his command, and to furnish whenever called upon by the Superintendent during the progress of the sale, authenticated statement of a solvent bank to the effect the bidder has the means to purchase the lease.

(c) No lease, assignment thereof, or interest therein will be approved to any employee or employees of the Government, and no such employee shall be permitted to acquire any interest in leases covering Osage Tribal lands, by ownership of stock in corporations having leases or in any other manner.

[22 F.R. 10612, Dec. 24, 1957, as amended at 27 F.R. 9513, Sept. 26, 1962]

### § 183.40 Corporation and corporate information.

(a) If a successful bidder for a lease is a corporation, it shall file a statement showing:

(1) The state of incorporation and that the corporation is authorized to do business in the state where the land to be leased is situate;

(2) That it has power to hold and operate mining leases;

(3) That the officer executing the lease is authorized to act on behalf of the corporation in such matters.

(b) Whenever deemed advisable in any case the Area Director or Superintendent may require a corporation to file any additional information necessary to carry out the purposes and intent of the regulations in this part and such information shall be furnished within a reasonable time.

[27 F.R. 9513, Sept. 26, 1962]

### § 183.41 How to acquire permission to begin operations on homestead allotments.

(a) Lessees may conduct operations within or upon homestead selections with the written consent of the Superintendent and not otherwise.

(b) If the allottee is unwilling to permit operations on his homestead, the Superintendent will direct the Inspector to make an examination of the premises with the allottee and the lessee, or his representative, and should the Inspector be of the opinion that the interests of the Osage Tribe require that the particular tract to be developed he will endeavor to have the parties agree upon the terms under which operations on the homestead may be conducted.

(c) In the event the allottee and the lessee canot, with the assistance of the Inspector, agree on the matter, the allottee shall be permitted to go before the Osage Tribal Council, and the Council, after hearing the allottee, the lessee, and the Inspector, shall make such recommendation as it deems proper. Guardians, legal or natural, may represent their Indian wards, and where no one is authorized or where no person is deemed by the Superintendent to be a proper



party to speak for a
unsound mind or of
ing, the Principal C
Tribe shall represent
(d) Where the all
pear before the Cou
son or by representa
by the Superintende
fails to act in the ma
after being referred
tendent may autho
proceed with operat
with the provisions c
regulations in this p
by appropriate resol
mend that a lessee l
conduct drilling ope
stead selection, the S
submit the questi
Director.

§ 183.43 Lessee's p

(a) Before actual
ment operations a
leased lands, the less
appoint a local or res
within the State of
the Superintendent
representative of th
serve notice, or oth
with in securing com
ulations in this part,
Superintendent of
office address of th
appointed.
(b) Where severa
jointly, only one rep
need be designated,
be to act for all
Designation of s
should be made by th
operations.
(c) In the event
absence from the S
nated local or resi
the lessee shall app
serve in his stead,
of such representati
appointment of a
ployee of the less
premises, or the con
son in charge of dr
erations thereon, sh
representative of th
pose of service of
herein provided an
such employee, cont
son shall be deeme
lessee.
[23 F.R. 7134, Sept. 1

to acquire any interest in ering Osage Tribal lands, by of stock in corporations hav- or in any other manner.

312, Dec. 24, 1957, as amended at , Sept. 26, 1962]

**Corporation and corporate in- ition.**

, successful bidder for a lease ation, it shall file a statement

state of incorporation and orporation is authorized to do n the state where the land to is situate;

t it has power to hold and ining leases;

t the officer executing the ithorized to act on behalf of ation in such matters.

enever deemed advisable in the Area Director or Super- may require a corporation to ditional information necessary ut the purposes and intent of tions in this part and such in- shall be furnished within a time.

3, Sept. 26, 1962]

**How to acquire permission to operations on homestead allot-**

sees may conduct operations ipon homestead selections with n consent of the Superintend- ot otherwise.

he allottee is unwilling to per- tions on his homestead, the ident will direct the Inspector n examination of the premises allottee and the lessee, or his tive, and should the Inspector pinion that the interests of the be require that the particular developed he will endeavor to parties agree upon the terms ich operations on the home- be conducted.

the event the allottee and the ot, with the assistance of the agree on the matter, the al- ll be permitted to go before the bal Council, and the Council, ing the allottee, the lessee, and ctor, shall make such recom- n as it deems proper. Guard- l or natural, may represent an wards, and where no one is l or where no person is deemed uperintendent to be a proper



party to speak for a minor or person of unsound mind or of feeble understanding, the Principal Chief of the Osage Tribe shall represent him.

(d) Where the allottee does not appear before the Council, either in person or by representative, when notified by the Superintendent, or the Council fails to act in the matter within 10 days after being referred to it, the Superintendent may authorize the lessee to proceed with operations in conformity with the provisions of his lease and the regulations in this part. If the Council by appropriate resolution should recommend that a lessee be not permitted to conduct drilling operations on a homestead selection, the Superintendent shall submit the question to the Area Director.

**§ 183.43 Lessee's process agents.**

(a) Before actual drilling or development operations are commenced on leased lands, the lessee or assignee shall appoint a local or resident representative within the State of Oklahoma, on whom the Superintendent or other authorized representative of the Department may serve notice, or otherwise communicate with in securing compliance with the regulations in this part, and shall notify the Superintendent of the name and post office address of the representative so appointed.

(b) Where several parties own a lease jointly, only one representative or agent need be designated, whose duties shall be to act for all parties concerned. Designation of such representative should be made by the party in charge of operations.

(c) In the event of the incapacity or absence from the State of such designated local or resident representative, the lessee shall appoint some person to serve in his stead, and in the absence of such representative or of notice of the appointment of a substitute any employee of the lessee upon the leased premises, or the contractor or other person in charge of drilling or related operations thereon, shall be considered the representative of the lessee for the purpose of service of orders or notices as herein provided and service upon any such employee, contractor, or other person shall be deemed service upon the lessee.

[23 F.R. 7134, Sept. 16, 1958]

**§ 183.44 Lessees subject to superintendent's orders; books and records open to inspection.**

Lessee shall comply with all orders on instructions issued by the superintendent or inspector within the time specified, and shall allow the lessor and his agents, or any authorized representative of the Secretary of the Interior, to enter, from time to time, upon and into all parts of the leased premises for the purpose of inspection; and shall further agree to keep a full and correct account of all operations, receipts, and disbursements and make reports thereof, as herein required, and their books and records, showing manner of operations and persons interested, shall be open at all times for the examination of any authorized representative of the superintendent or of the Secretary of the Interior.

**§ 183.45 Reports and time of royalty payments.**

Royalties on all oil and gas, including casing-head gas or on gasoline manufactured therefrom, produced in any month, shall be paid on or before the 25th of the month next succeeding by either purchaser or lessee. Failure to so remit will subject the lessee to fines as hereinafter indicated, and also subject division order to cancellation. Lessees shall also furnish monthly reports covering all operations whether there has been production or not, indicating therein the total amount of oil, gas, or gasoline sold and not merely their working interest, and also dates of discovery and beginning of utilization of gas from gas wells. The lessee may include in one statement all leases upon which dry holes have been drilled or the wells have ceased to produce.

[27 F.R. 9513, Sept. 26, 1962]

ASSIGNMENTS

**§ 183.46 Approval of lease instruments.**

(a) *Oil and gas leases.* The Superintendent may approve the schedule of bids accepted by the Osage Tribal Council following a sale of oil leases and gas leases conducted in conformity with the provisions of § 183.39. The Superintendent may also approve oil leases and gas leases made by the Osage Tribal Council in conformity with the regulations in this part, bonds and other instruments required for leases or assign-

ments thereof, and the acceptance of the voluntary surrender of leases.

(b) *Unitization of oil leases.* As a consideration for further development by a secondary recovery process, two or more oil leases may be unitized and merged in a single blanket lease with the approval of the Superintendent. The instrument of unitization (blanket lease) shall include all the requirements and provisions of sections numbered 1, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19 and 20 of Osage oil lease Form B: *Provided*, That the preamble of Form B and the provisions of section numbered 2 in respect to royalty rates; section numbered 3 in respect to payment of rental; section numbered 4 in respect to payment of well site and tank location fees; and section numbered 14 in respect to the surrender of the lease may be modified and/or supplemented by the parties, with the approval of the Superintendent, to the extent deemed appropriate for the equitable and efficient conduct of unitized operations, and not otherwise in conflict with the regulations in this part. Lessee(s) shall before commencing secondary recovery operations, and on or before December 31st of each year thereafter, submit to the Superintendent an acceptable plan of development and operation for the unit area for the ensuing year. Upon a finding by him that such action would be in the best interest of the Osage Tribe, the Superintendent may also approve an agreement between the lessor and the lessee(s) rescinding a unit (blanket lease) and restoring to their original status the Form B leases theretofore merged in the unit lease: *Provided*, That if oil is being produced in paying quantities on a particular quarter-section tract on the date of approval of such agreement, the lessee shall be entitled to hold such tract under terms of the original Form B lease so long as oil is produced on said tract in paying quantities.

(c) *Assignments.* Approved leases or any interest therein may be assigned with the approval of the Superintendent, and not otherwise. Assignments, when approved, shall be subject to the terms and conditions of the original leases, and the regulations under which such leases were approved. In order for an assignment to receive favorable consideration, the lessee shall assign either his whole interest in a legal subdivision or an undivided interest in the whole lease. If a lease is divided by the assignment of an entire interest in any part of it, each part shall be considered a separable lease under all the terms and conditions of the original lease. The assignee shall furnish with his assignment a satisfactory bond as provided in § 183.20(c). Any attempt to assign an approved lease or any interest therein without the consent and approval of the Superintendent shall be absolutely void and shall subject the original lease to cancellation in the discretion of the Superintendent.

(d) *Overriding royalties.* Agreements creating overriding royalties or payments out of production shall not be considered as interests in the leases as such term is used in paragraph (c) of this section. Agreements creating overriding royalties or payments out of production are hereby authorized and the approval of the Department of the Interior or any agency thereof shall not be required with respect thereto, but such agreements shall be subject to the condition that nothing in any such agreement shall be construed as modifying any of the obligations of the lessee, including, but not limited to, obligations for diligent development and operation, protection against drainage, compliance with oil and gas operating regulations in this part, and the requirement for departmental approval before abandonment of any well. All such obligations are to remain in full force and effect, the same as if free of any such royalties or payments. The existence of agreements creating overriding royalties or payments out of production, whether or not actually paid, shall not be considered as justification for the approval of abandonment of any well. Nothing in this paragraph revokes the requirement for approval of assignments and other instruments which is required in this section, but any overriding royalties or payments out of production created by the terms of such assignments or instruments shall be subject to the condition stated above. Agreements creating overriding royalties or payments out of production need not be filed with the Superintendent unless incorporated in assignments or instruments required to be filed pursuant to paragraph (c) of this section.

[22 F.R. 10612, Dec. 24, 1957, as amended at 23 F.R. 9758, Dec. 18, 1958; 27 F.R. 9513, Sept. 26, 1962]

§ 183.47 Filing o
ing contracts.

(a) Assignment
interest therein b
otherwise shall be
intendent within
of such assignme
cept instances
papers cannot be
time, in which e
notice shall be fi
stipulated and
Superintendent
tional.

(b) In case of
lessees for drilling
provide that in c
a well on the lea
quent assignment
lease will be made
of the Departme
is hereby autho
drilling contracts
such approval do
the Department
signments that r
mitted and that
authorizes the dr
ter into possessio
purpose of develo

§ 183.48 Notice

Wherever notic
regulations in thi
specifically stated
notice has been m
place of address
shall begin to run
suing after the m
of delivery of per
the party is outs
homa, the superin
cretion, increase

O

§ 183.49 Comm

No drilling or
shall be permitte
until a lease co
have been appr
tendent or such
authorized by hi
Superintendent
any party, unde
with the regulat
he deems proper,
and geological e
portion, or all of
[27 F.R. 9514, Sept

livided by the assignment of
iterest in any part of it, each
e considered a separable lease
the terms and conditions of
l lease. The assignee shall
h his assignment a satisfac-
as provided in § 183.20(c).
ot to assign an approved lease
rest therein without the con-
pproval of the Superintendent
olutely void and shall subject
l lease to cancellation in the
f the Superintendent.
*riding royalties.* Agreements
erriding royalties or payments
uction shall not be considered
in the leases as such term is
ragraph (c) of this section.
creating overriding royalties
s out of production are hereby
and the approval of the De-
f the Interior or any agency
ll not be required with respect
t such agreements shall be
he condition that nothing in
greement shall be construed
g any of the obligations of the
ding, but not limited to, obli-
diligent development and op-
rotection against drainage,
with oil and gas operating
in this part, and the require-
epartmental approval before
nt of any well. All such obli-
to remain in full force and
same as if free of any such
payments. The existence of
creating overriding royalties
s out of production, whether
ually paid, shall not be con-
justification for the approval
ment of any well. Nothing
agraph revokes the require-
approval of assignments and
uments which is required in
, but any overriding royalties
ts out of production created
ns of such assignments or in-
shall be subject to the condi-
above. Agreements creating
royalties or payments out of
need not be filed with the
dent unless incorporated in
s or instruments required to
suant to paragraph (c) of this

12, Dec. 24, 1957, as amended at
8, Dec. 18, 1958; 27 F.R. 9513,
62]

### § 183.47 Filing of assignments and drilling contracts.

(a) Assignments of any lease or any interest therein by drilling contract or otherwise shall be filed with the Superintendent within 30 days from the date of such assignment by the assignor, except instances where the necessary papers cannot be executed within such time, in which event, however, formal notice shall be filed within the 30 days stipulated and where necessary the Superintendent may grant 15 days additional.

(b) In case of contracts made by oil lessees for drilling wells, which contracts provide that in consideration of drilling a well on the leased premises a subsequent assignment of an interest in such lease will be made subject to the approval of the Department, the Superintendent is hereby authorized to approve such drilling contracts with a stipulation that such approval does not in any way bind the Department to approve formal assignments that may thereafter be submitted and that such approval merely authorizes the drilling contractor to enter into possession of the lease for the purpose of development work.

### § 183.48 Notices.

Wherever notice is provided for in the regulations in this part, unless otherwise specifically stated, it shall be sufficient if notice has been mailed to the last known place of address of the party, and time shall begin to run from the day next ensuing after the mailing or from the date of delivery of personal notice; but where the party is outside the State of Oklahoma, the superintendent may, in his discretion, increase the time allowed.

## Operations

### § 183.49 Commencement of operations.

No drilling or development operations shall be permitted upon any tract of land until a lease covering such tract shall have been approved by the Superintendent or such operations specifically authorized by him: *Provided*, That the Superintendent may grant authority to any party, under such rules (consistent with the regulations in this part) that he deems proper, to conduct geophysical and geological exploration work in any portion, or all of the Osage Reservation.
[27 F.R. 9514, Sept. 26, 1962]

### § 183.50 Settlement of damages claimed by persons other than lessee or owner of lands.

(a) Approved oil and gas leases provide in part:

> During operations the lessee shall pay all damages for the use of the surface, other than that included in the location and tank site, all damages to any growing crops, or any improvements on the lands and all other damages as may be occasioned by reason of operations. Such damages shall be apportioned among the parties interested in the surface, whether as owner, lessee, or otherwise, as the parties may mutually agree or as their interests may appear. If the parties are unable to agree concerning damages, the same shall be determined by arbitration, but nothing herein contained shall be construed to deny to the surface owner or lessee the right to appeal to the courts without the consent of the Secretary of the Interior, in the event he is dissatisfied with the amount of damages awarded him.

(b) Any person, other than a lessee or an allottee or the heirs of a deceased allottee, claiming an interest in any leased tract, or in damages thereto, must furnish to the superintendent a statement in writing showing his interest, and failure to furnish such statement shall constitute a waiver of notice and estop said person from claiming any part of such damages after the same shall have been disbursed.

### § 183.51 Well location fees.

(a) Before commencing operations on lands embraced in any approved oil or gas mining lease the mineral lessee shall pay, tender or deposit the proper well location fee as provided in the lease and the regulations in this part, after which such lessee shall be entitled to enter upon the lands covered by the lease for mining purposes. Before commencing operations on any subsequent well on such quarter-section the mining lessee shall pay, tender or deposit the proper location fee therefor.

(b) Where the surface owner is a restricted Indian, adult or minor, the well location fee shall be paid to the Superintendent of the Osage Agency for such Indian. All other surface owners, whether Indians or non-Indians shall be paid or tendered such fees direct, and where such surface owners are not residents of Osage County nor have a representative located therein, such pay-



86-046—68——18

ments shall be made or tendered by check, postage prepaid, to last known address of said surface owner at least 5 days before commencing drilling operations on any well: *Provided*, That should the lessee be unable to reach the owner of the surface of the land for the purpose of tendering the location fee, or if owner of the surface of the land upon being tendered the location fee, by the lessee, shall refuse to accept the same, the lessee may tender the location fee to the Superintendent of the Osage Agency, and if the lessee and the Superintendent shall agree upon the amount of the location fee, the lessee shall deposit such amount with the Superintendent for payment to the owner of the surface of the land upon demand, and the Superintendent shall thereupon advise the owner of the surface of the land by mail at his last known address, that the location fee is being held for payment to him upon his written request.

[22 F.R. 10612, Dec. 24, 1957, as amended at 27 F.R. 9514, Sept. 26, 1962]

### § 183.52 Information to be given surface owners before commencement of drilling.

Prior to beginning operations of any kind or moving any rig material, pipe or other drilling equipment on lands embraced in any approved oil or gas lease, the mineral lessee shall meet with the surface owner of such tract if a resident of Osage County, Oklahoma, and at such meeting the mining lessee shall comply with the following requirements:

(a) Indicate the location of the first well to be drilled by him on said quarter-section.

(b) Indicate the location of any additional wells which he at the time may contemplate drilling.

(c) Impart to said surface owner the name and address of his foreman or superintendent upon whom the surface owner shall serve any claim for damages which he may sustain by reason of the development and operation of said lands by the mineral lessee, and in the event such foreman or superintendent shall leave the employ of the mineral lessee or be removed to another district then the mineral lessee shall notify the surface owner of the name and address of his successor, to the end that any claim for damages sustained by the surface owner may be promptly served upon the mineral lessee.

(d) Advise the surface owner that should he or his tenant or lessee sustain damages by reason of the development and operation of said land by the mining lessee and in the event the parties are unable to agree upon the mining lessee's liability therefor and upon the amount of damages resulting therefrom, the mining lessee shall submit the matter to arbitration as provided in the regulations in this part: *Provided*, That within 10 days from the date of such meeting the mining lessee shall file with the superintendent of the Osage Agency a written report of such meeting showing the date thereof and the name of the surface owner taking part therein. Failure to so notify the superintendent shall subject the mineral lessee to a fine of $5 per day for each day's delay within the discretion of the superintendent: *Provided further*, That where the surface owner is a restricted Indian the mineral lessee in the manner provided above shall meet with the superintendent of the Osage Agency. Where the surface owner is not a restricted Indian and not a resident of Osage County, Oklahoma, then the superintendent of Osage Agency shall be so advised whereupon the mineral lessee shall have the right to proceed with operations: *Provided, however*, That in the event the superintendent should so arrange with the surface owner or his tenant, the mineral lessee or his representative within 5 days after receipt of notice from the superintendent shall meet with the surface owner or his tenant on the leased premises and arrange for procedure as indicated in this paragraph.

### § 183.53 Procedure for settlement of damages claimed.

Where the surface owner or his lessee suffers damages on account of the operations of any oil or gas lessee, procedure for recovery shall be as follows:

(a) The party or parties aggrieved shall within 10 days after the discovery of any such damages, or within such extended time as the superintendent of the Osage Indian Agency may grant, serve the oil or gas lessee, or the foreman or superintendent named by him under § 183.52, with written notice setting forth the nature of alleged damages, the date when the same were sustained, as



nearly as poss
names of the p
the same, if obt
of damages res
not intended by
the time withi
brought in the
90-day period
the act of Marc
but it is intende
examination of
all parties inter
best possible e
due to the natu
property dama
obliterated and
passage of tim
board of arbitra
of failure of t
claim by arbitr
(b) In cases
ages are not a
time of such n
or his represent
from receipt of
cable adjustme
party or par
claimant is a
should a settlen
settlement agre
Osage Agency
upon when app
ent shall be pa
of the Osage A
said restricted
(c) Should t
the claim with
then within 10
the interested
arbitrator who
appointment s
arbitrator; an
arbitrators sha
third arbitrat
shall immediat
interest of such
interest cannot
trator within 5
notice, the con
vided by the a
be considered
with and eith
right to resort
jurisdiction.
(d) As soon
appointed the
hear the evide
parties, examin
provements, or
have been inju
from the date

aptly served upon the min-

: the surface owner that his tenant or lessee sustain reason of the development n of said land by the mining ı the event the parties are :ee upon the mining lessee's efor and upon the amount resulting therefrom, the : shall submit the matter to ; provided in the regulations *Provided*, That within 10 .e date of such meeting the ; shall file with the super- the Osage Agency a written h meeting showing the date the name of the surface : part therein. Failure to superintendent shall sub- ral lessee to a fine of $5 per day's delay within the dis- e superintendent: *Provided* t where the surface owner l Indian the mineral lessee r provided above shall meet )erintendent of the Osage ere the surface owner is not ndian and not a resident of y, Oklahoma, then the su- of Osage Agency shall be so 'eupon the mineral lessee e right to proceed with op- *vided, however*, That in the )erintendent should so ar- ie surface owner or his ten- ral lessee or his representa- days after receipt of notice :rintendent shall meet with ›wner or his tenant on the ›es and arrange for proce- ated in this paragraph.

**ocedure for settlement of claimed.**

surface owner or his lessee :es on account of the opera- oil or gas lessee, procedure ;hall be as follows:

›arty or parties aggrieved 10 days after the discovery amages, or within such ex- ıs the superintendent of the ı Agency may grant, serve ; lessee, or the foreman or ıt named by him under h written notice setting ure of alleged damages, the ıe same were sustained, as nearly as possible, together with the names of the party or parties causing the same, if obtainable, and the amount of damages resulting therefrom. It is not intended by this requirement to limit the time within which action may be brought in the courts to less than the 90-day period allowed by section 2 of the act of March 2, 1929 (45 Stat. 1479), but it is intended to provide for an early examination of the property damaged by all parties interested to the end that the best possible evidence, much of which due to the nature of the damages or the property damaged, will be gradually obliterated and completely lost with the passage of time, be preserved for the board of arbitration or the court in event of failure of the parties to settle the claim by arbitration.

(b) In cases where such alleged damages are not amicably adjusted at the time of such notice, the oil or gas lessee or his representative shall within 20 days from receipt of such notice seek an amicable adjustment of the claim with the party or parties aggrieved. If the claimant is a restricted Indian, and should a settlement result, a copy of such settlement agreement shall be filed in the Osage Agency and the damages agreed upon when approved by the superintendent shall be paid to the superintendent of the Osage Agency, for the benefit of said restricted Indian.

(c) Should the parties fail to adjust the claim within the 20 days specified, then within 10 days thereafter each of the interested parties shall appoint an arbitrator who immediately upon their appointment shall agree upon a third arbitrator; and in the event the two arbitrators shall fail to agree upon a third arbitrator within 10 days, they shall immediately notify the parties in interest of such fact that if said parties in interest cannot agree upon a third arbitrator within 5 days after receipt of such notice, the condition precedent as provided by the act of March 2, 1929, shall be considered as having been complied with and either party shall have the right to resort to a court of competent jurisdiction.

(d) As soon as the third arbitrator is appointed the arbitrators shall meet, hear the evidence and arguments of the parties, examine the lands, crops, improvements, or other property alleged to have been injured, and within 10 days from the date of the final submission of the controversy they shall render their award. The arbitrators shall be disinterested persons and the fees and expenses of the third arbitrator shall be borne equally by the claimant and the mining lessee; the mining lessee to pay the fees and expenses of the arbitrator appointed by him and the claimant to pay the fee and expenses of the arbitrator appointed by him.

(e) When an act of an oil or gas lessee or any of his employees results in injury to both the surface owner and his lessee, the parties aggrieved shall join in the appointment of an arbitrator, and where the injury complained of is chargeable to one or more oil or gas lessees, such lessees shall join in the appointment of an arbitrator.

(f) Any two of the arbitrators may make an award, which shall be in writing, and forthwith shall be served upon the parties in interest. Each party shall have 90 days from the date of such service in which to file an action in a court of competent jurisdiction to enlarge, modify or set aside said award. If no such action is filed within said time, and if the award be against the oil or gas lessee, he shall pay the same together with interest at the rate of 6 percent per annum from date of award, within 10 days after the expiration of said period for appeal, and in case of his failure to do so, in the discretion of the superintendent, shall be subject to a penalty of $10 per day for each day thereafter that he remains in default.

## § 183.54 Slush pits; fine for failure to provide.

On receipt of complaint from any surface owner or his lessee, the superintendent of Osage Agency after investigation and where action is deemed advisable, shall require any oil or gas lessee within 10 days from receipt of such notice, to enclose slush pits, earthen tanks or reservoirs for salt water or B. S. with a substantial four-wire fence and shall maintain same during the time such pits or reservoirs are in use, and this requirement shall apply to slush pits, earthen tanks or reservoirs now in use, as well as to those which may be constructed in the future provided this requirement shall not apply where the mineral lessee owns the surface of the land covered by his lease or has an agricultural or grazing lease covering the same. Failure to comply with the requirements of this section will subject

the lessee to a fine of $5 for each day's delay.

**§ 183.55 Notice to lessees in damage cases.**

Surface owners shall notify their lessees or tenants of the regulations in this part and of the procedure necessary in all cases of alleged damages.

**§ 183.56 Lessees or tenants may represent surface owners.**

Where surface lessees or tenants represent the surface owner they shall be so authorized in writing.

**§ 183.57 Lessee's use of water.**

Oil and gas lessees may with the approval of the superintendent use water from streams and natural water courses to the extent that same does not diminish the supply below the requirements of the surface owner from whose land the water is taken. When such water supply is located off the lease upon which the water is to be used, the oil or gas lessee may lay necessary lines across intervening lands to obtain such water. Any damage resulting from laying such water lines shall be settled by arbitration as provided in § 183.53.

**§ 183.58 Settlement of damage claims to surface lands covered by Federal farm loan.**

Hereafter in all cases where the owners of surface title to lands within the Osage Indian reservation in Oklahoma have obtained Federal farm loans from any lending agency under the supervision of the Farm Credit Administration and have agreed in writing that any and all damages accruing to them from mineral operations under the act of March 2, 1929 (45 Stat. 1478), or amendment thereof, shall be remitted to the mortgagee through the superintendent of the Osage Indian Agency, Pawhuska, Oklahoma, to be credited on the loan; the mineral lessee of any such lands shall make payment of all such damages, including well location fees, in accordance with said agreement. It shall be the duty of each mineral lessee, before making payment of any well location fee or other damage caused by mineral operations to ascertain the facts with respect to the existence or nonexistence of any such Federal farm loan and agreement. The remittances provided for in this section may be made in cash, or by certified check or other suitable form of exchange.

CROSS REFERENCE: For regulations of lending agencies under supervision of the Farm Credit Administration, see 6 CFR Chapter I.

POWERS AND DUTIES OF INSPECTORS

**§ 183.59 Duties of inspectors.**

It shall be the duty of the inspector—

(a) To visit from time to time leased lands where oil and gas mining operations are being conducted, and to inspect and supervise such operations with a view to preventing waste of oil and gas, damage to oil, gas, or water bearing formations, or injury to property or life, in accordance with the provisions of the regulations in this part.

(b) To make reports to the Superintendent as to the general conditions of the leases, property, and the manner in which operations are being conducted and his orders complied with.

(c) To consult and advise with the Superintendent as to the conditions of the leased lands, and to submit information and recommendations from time to time for safeguarding and protecting the property of the lessor and securing compliance with the provisions of the regulations in this part.

(d) To give such orders or notices as may be necessary to secure compliance with the regulations and to issue all necessary instructions or orders to lessees to stop or modify such methods or practices as he may consider contrary to the provisions of such regulations.

(e) To modify or prohibit the use or continuance of any operation or method which, in his opinion, is causing or is likely to cause any surface or underground waste of oil or gas, or injury to any oil, gas, water, coal, or other mineral formation, or which is dangerous to life or property, or in violation of the provisions of the regulations in this part.

(f) To prescribe, subject to the approval of the Superintendent, the manner and form in which all records or reports called for by the regulations in this part shall be made by the lessee.

(g) To prohibit the drilling of any well into any producing sand when in his opinion and with the approval of the Superintendent the marketing facilities are inadequate, or insufficient provision has been made for controlling the flow of oil or gas reasonably to be expected therefrom until such time as suitable provision can be made.

(h) To prescrib
ods of drilling
measures or othe
(i) To determi
what conditions
be drilled deeper,
ditions a produci
be abandoned.
(j) To require t
to detect waste of
ence of water in
or approve the r
such tests.
(k) To require
isting subsequent
a well which is
cause, damage to
bearing formatio
or other mineral
dangerous to lif
rected as he ma
(l) To approv
separators used t
or water coming

**§ 183.60 Limit**

The inspector
centage of the op
well which may
opinion, such acti
erly protect the
tion.

**§ 183.60a Unit**

That for the
waste and to pern
gas in such man
greatest ultimate
source of commo
pool), a cooperat
operating area sh
oil inspector and
All lands lying w
shall be subject
ments and regu
to development a
inspector shall
time. All residue
such defined area
lessee after extr
other liquid proc
essary for opera
where provided i
part) must be in
horizon from w
withdrawn for th
the recovery of
sent of the oil ins
ing shall less th
such residue gas
The oil inspecto
injection of less

ertified check or other suit-
exchange.

ENCE: For regulations of lend-
ınder supervision of the Farm
stration, see 6 CFR Chapter I.

D DUTIES OF INSPECTORS

ıties of inspectors.

the duty of the inspector—
ıt from time to time leased
oil and gas mining opera-
g conducted, and to inspect
e such operations with a
nting waste of oil and gas,
, gas, or water bearing for-
ıjury to property or life, in
vith the provisions of the
ı this part.
ke reports to the Superin-
) the general conditions of
operty, and the manner in
:ions are being conducted
's complied with.
ısult and advise with the
nt as to the conditions of
ıds, and to submit informa-
mmendations from time to
;uarding and protecting the
ıe lessor and securing com-
he provisions of the regula-
part.
e such orders or notices as
ssary to secure compliance
;ulations and to issue all
ıstructions or orders to
p or modify such methods
s he may consider contrary
ons of such regulations.
dify or prohibit the use or
of any operation or method
; opinion, is causing or is
ıse any surface or under-
: of oil or gas, or injury to
/ater, coal, or other mineral
' which is dangerous to life
or in violation of the pro-
: regulations in this part.
scribe, subject to the ap-
Superintendent, the man-
in which all records or re-
or by the regulations in this
made by the lessee.
ıibit the drilling of any well
ducing sand when in his
with the approval of the
nt the marketing facilities
te, or insufficient provision
de for controlling the flow
reasonably to be expected
ntil such time as suitable
be made.



(h) To prescribe or approve the methods of drilling wells through coal measures or other mineral deposits.

(i) To determine when and under what conditions a producing well may be drilled deeper, and under what conditions a producing well, or sand, may be abandoned.

(j) To require that tests shall be made to detect waste of oil or gas or the presence of water in a well and to prescribe or approve the methods of conducting such tests.

(k) To require that any condition existing subsequent to the completion of a well which is causing, or is likely to cause, damage to an oil, gas, or water bearing formation, or to coal measures or other mineral deposits, or which is dangerous to life or property, be corrected as he may prescribe or approve.

(l) To approve the type or size of separators used to separate the oil, gas, or water coming from a well.

**§ 183.60 Limit percentage of well flow.**

The inspector may limit the percentage of the open-flow capacity of any well which may be utilized when, in his opinion, such action is necessary to properly protect the gas-producing formation.

**§ 183.60a Unit operating area.**

That for the purpose of preventing waste and to permit production of oil and gas in such manner as to promote the greatest ultimate recovery of oil from a source of common supply (single field or pool), a cooperative development or unit operating area shall be established by the oil inspector and delineated on a map. All lands lying within such defined area shall be subject to such specific requirements and regulations with reference to development and production as the oil inspector shall prescribe from time to time. All residue gas having its origin in such defined area and returned to the oil lessee after extraction of gasoline and other liquid products (except that necessary for operating purposes as elsewhere provided in the regulations in this part) must be injected into the sand or horizon from which it was originally withdrawn for the purpose of increasing the recovery of oil. Only with the consent of the oil inspector first had in writing shall less than the full volume of such residue gas available be so injected. The oil inspector shall consent to the injection of less than said full volume only after a study of the area and a determination of the amount of gas necessary to be injected to effect the maximum ultimate recovery of oil and gas as required by the act of March 2, 1929, (45 Stat. 1478). The foregoing is the reissuance of regulations approved, effectuated and given publication as of March 26, 1938.

**§ 183.61 Judge whether orders complied with.**

The inspector shall be the sole judge of whether his orders have been fully complied with and carried out.

REQUIREMENTS OF LESSEES

**§ 183.62 Permission to start operations.**

Written permission must be secured from the Superintendent before operations are started on the leased premises. Lessee shall submit application for such permission, on forms to be furnished by the Superintendent.

[27 F.R. 9514, Sept. 26, 1962]

**§ 183.63 Drilling records.**

Lessee shall keep upon the leased premises accurate records of the drilling, redrilling, or deepening of all wells showing all the formations drilled through and casing used during the drilling of such wells, and upon the completion of such wells, copies of such records shall be transmitted to the superintendent by the lessee within 10 days after the first completion of any well, and of any further drilling thereafter, and a failure to so furnish report within the time prescribed shall be considered a violation of the regulations. The lessee or any employee on the leased premises shall immediately furnish such information to the inspector upon his request. In connection therewith, it will be held that such completion report is to be filed within 10 days after any well is shot, or is producing natural, or being pumped, and if not then finally completed with tubing, etc., a subsequent report to be filed thereafter.

**§ 183.64 Plats showing location of wells.**

Lessee shall furnish as required, a plat, in manner and form as prescribed by the Superintendent, showing all wells, active or abandoned, on the leased lands, and other related information. Blank plats will be furnished upon application.

**§ 183.65 Rigs to be marked.**

Lessee shall clearly and permanently mark all rigs or wells in a conspicuous

place with the name of the lessee and the number or designation of the well, and shall take all necessary precautions for the preservation of these markings.

**§ 183.66 Line drilling.**

Lessee shall not drill within 300 feet of boundary line of leased lands, except with the consent of the superintendent. Lessee shall not locate any well or tank within 200 feet of any public highway or any building used as a dwelling, granary, barn, or established watering place, except with the written permission of the superintendent.

**§ 183.67 Notice prior to removal of casing.**

Lessee shall obtain permission from the Superintendent before removing any casing from any well.

**§ 183.68 Two slush pits required.**

Lessee shall provide two properly prepared slush pits, into one of which he must deposit sand pumpings and other materials extracted from the well during the process of drilling, but such material as is suitable for the mudding of a well shall be run into the other pit. The construction of such pits shall be subject to the approval of the inspector. Sand pumpings and such material shall not be allowed to run over the surface of the land.

**§ 183.69 Water control.**

Lessee shall effectually shut out and exclude all water from any oil or gas bearing stratum and take all proper precautions and measures to prevent the contamination or pollution of any freshwater supply encountered in any well drilled for oil or gas.

**§ 183.70 Productive formations to be protected.**

Lessee shall protect to the satisfaction of the inspector each productive oil or gas bearing formation drilled through for the purpose of producing oil or gas from a lower formation.

**§ 183.71 Control devices.**

In drilling operations in "wildcat" territory, or in a gas or oil field where high pressures are known to exist, the lessee shall have on such leased premises an approved gate valve or other approved controlling device in proper condition for use until the well is completed.

**§ 183.72 Waste of gas to be prevented.**

When natural gas is encountered in commercial quantities in any well, the oil or gas lessee shall confine such gas to its natural stratum until such time as the same can be produced and utilized without waste, it being understood that a commercial quantity of gas produced by a well is any unrestricted flow of natural gas of 2,000,000 cubic feet or more per 24 hours: *Provided*, That if in the opinion of the superintendent, gas of a lesser quantity shall be of commercial value, the superintendent shall have authority to require the conservation of said gas: *Provided further*, That under § 183.11 a well producing oil in paying quantities and gas from the same shall be held to when and so long as it produces gas with an open flow capacity of 2,000,000 cubic feet or more per day of 24 hours, and gas produced from any such well of less than 2,000,000 cubic feet per day may be considered and termed gas in commercial quantities in the discretion of the superintendent, except when gas from such well contains gasoline in commercial quantities, in which event, it shall be termed "casing-head gas" but only when, and only while actually used for the manufacture of gasoline, as provided for under § 183.14. Any casing-head gas coming direct from the wells and not utilized by the oil lessee as above provided for, or for operations as provided for in § 183.14 shall be delivered to the gas lessee at a central point on the oil lessee's gathering or carrying lines, at the same schedule of prices as fixed for delivery of residue gas at gasoline plants into the line or lines provided by the gas lessee; also all gas after extraction of gasoline, and not used for operations under the terms of § 183.14, shall be delivered to gas lessee at points where the gasoline is extracted at as high a pressure as the efficient operation of such plant will permit, and where same is delivered at a pressure not above 50 pounds the oil lessee shall receive 1 cent per 1,000 cubic feet and an additional one-half cent increase for each additional 50 pounds pressure, not exceeding 3 cents per 1,000 cubic feet. Settlement for same to be made on or before the 20th day of each month for all gas delivered during the preceding month and to be computed on the usual basis of 10 ounces above atmospheric pressure, provided that royalty on such gas shall be computed the same as though it were gas pro-

duced and utilized
der the terms of
wells proper: *And*
the rights confer
optional and in
lessees be obligate
oil lessee, or pay
not utilized, for
scribed; and if t
accept such gas
after tender the
then such gas ma
of by the oil lesse
of royalty as fixe
by the gas lessee.
tion wells where
market for and d
for any purpose,
permitted to util
to adjoining less
poses until such
lessee is in a pos
such gas. Water
into any well wh
will operate to ki
flow of gas therei

**§ 183.73 Determ**

The term "cost
plied where one
drilled by anothe
sonable, usual,
expenditures inc
expenditures mad
the well.

(a) All locati
damages occasio
such well.

(b) All expens
repairing, operat
gas and water lin
cluding amount
or constructing d
clusive purpose of
well.

(c) Customary
water where purc
prevailing in th
*Provided*, Where t
upon the charge
graph such char
by the Superinten

(d) Amounts e
drilling a water
where any or all c
to in this paragra
(b) and (c) of th
ployed exclusivel
the drilling of the
or are also used
drilling or operat
the lessee drilling

**ste of gas to be prevented.**

ral gas is encountered in ıantities in any well, the oil hall confine such gas to its ım until such time as the roduced and utilized with- being understood that a ıantity of gas produced by nrestricted flow of natural )0 cubic feet or more per *vided,* That if in the opin- ɛrintendent, gas of a lesser be of commercial value, ıdent shall have authority conservation of said gas: *ıer,* That under § 183.11 a ; oil in paying quantities the same shall be held to ıng as it produces gas with :apacity of 2,000,000 cubic ɛr day of 24 hours, and gas any such well of less than feet per day may be con- ɛrmed gas in commercial ıe discretion of the super- ept when gas from such gasoline in commercial which event, it shall be -head gas" but only when, actually used for the man- asoline, as provided for :. Any casing-head gas from the wells and not : oil lessee as above pro- or operations as provided shall be delivered to the . central point on the oil ing or carrying lines, at lule of prices as fixed for due gas at gasoline plants or lines provided by the ɔ all gas after extraction d not used for operations ıs of § 183.14, shall be de- essee at points where the racted at as high a pres- ficient operation of such ıit, and where same is de- ssure not above 50 pounds all receive 1 cent per 1,000 l an additional one-half for each additional 50 'e, not exceeding 3 cents ic feet. Settlement for de on or before the 20th onth for all gas delivered ɛceding month and to be ıe usual basis of 10 ounces ıeric pressure, provided ı sı ch gas shall be com- as though it were gas pro-

duced and utilized by the gas lessees under the terms of their leases from their wells proper: *And provided further,* That the rights conferred in this section are optional and in no event shall the gas lessees be obligated to utilize, or pay the oil lessee, or pay royalty to the tribe, if not utilized, for any such gas as is described; and if the gas lessee does not accept such gas and utilize the same after tender thereof by the oil lessee, then such gas may be otherwise disposed of by the oil lessee upon the same basis of royalty as fixed in case of utilization by the gas lessee. In case of combination wells where the gas lessee has no market for and does not utilize such gas for any purpose, the oil lessee shall be permitted to utilize and sell the same to adjoining lessees for operating purposes until such time only as the gas lessee is in a position to and does utilize such gas. Water shall not be introduced into any well where such introduction will operate to kill or restrict the open flow of gas therein.

**§ 183.73 Determining cost of well.**

The term "cost price of a well" as applied where one lessee takes over a well drilled by another, shall include all reasonable, usual, necessary and proper expenditures including the following expenditures made by the lessee drilling the well.

(a) All location, or other surface damages occasioned by the drilling of such well.

(b) All expenses of laying, taking up, repairing, operating and maintaining gas and water lines where such lines including amount paid for water privilege or constructing dam, are used for the exclusive purpose of drilling the particular well.

(c) Customary charge for furnishing water where purchased shall be the price prevailing in the particular locality: *Provided,* Where the parties cannot agree upon the charge made under this paragraph such charge shall be determined by the Superintendent.

(d) Amounts expended in spudding or drilling a water well: *Provided,* That where any or all of the facilities referred to in this paragraph and in paragraphs (b) and (c) of this section are not employed exclusively in connection with the drilling of the well to be taken over, or are also used in connection with the drilling or operation of other wells by the lessee drilling the well to be taken over by the other lessee, then a fair proportion of the charges covered by this paragraph and paragraphs (b) and (c) of this section shall be assessed against each well, including the well to be taken over, and in the event of a disagreement between the parties as to the charges assessed against the well that is to be taken over, such charge shall be fixed by the Superintendent.

(e) Customary charge for drilling and reaming, except where reaming is done for the sole benefit of party drilling well. If price charged for drilling is above the average drilling price in the field, the price to be paid shall be determined by the Superintendent. *Provided,* That where the well to be taken over is drilled below the stratum in which the lessee taking over the well is interested, that is, the gas stratum in the case of a well taken over by a gas lessee, and the oil stratum in a well taken over by the oil lessee, then the lessee doing such further drilling shall sustain the cost of drilling and reaming where such drilling and reaming are done below such stratum.

(f) All expenses of mudding, except where mudding is done for the sole benefit of the lessee drilling the well.

(g) Settlement for casing or other pipe left in the well to be made at the prevailing market price for the character and kind of casing when placed in the well.

(h) All expenses of placing and removing all casing or other pipe used in drilling said well.

(i) A reasonable charge to cover supervision and overhead expenses: *Provided,* Where the parties cannot agree upon the charge made under this paragraph, such charge shall be determined by the Superintendent.

(j) Any additional charges which cannot be mutually agreed upon shall be submitted to and determined by the Superintendent. An approximate list of expenses mentioned in this section shall be presented to proposed purchasing lessee within 10 days after the completion of the well.

[27 F.R. 9514, Sept. 26, 1962]

**§ 183.74 Oil and gas to be separated.**

Lessee shall separate the oil from the gas when both are produced in commercial quantities from the same formation, or under such conditions as might result in waste of oil or gas in commercial quantities.

**§ 183.75 Use of gas for lifting oil.**

Lessee shall not use natural gas from a distinct or separate stratum for the purpose of flowing or lifting the oil.

**§ 183.76 Prevent wastage of oil and gas.**

Lessee shall prevent oil or gas, or both, from escaping from any well into the open air, and not permit any oil or gas well to go wild or to burn wastefully.

**§ 183.77 Approval of inspector for use of gas for operations.**

Lessee shall not use natural gas in place of steam to operate engines or pumps under direct pressure, except with the special permission of the inspector.

**§ 183.78 Flambeau lights.**

Lessee shall not use natural gas in flambeau lights, save as authorized or approved by the inspector.

**§ 183.79 Most approved methods to be followed in drilling and producing operations.**

Lessee shall use every possible precaution, in accordance with the most approved methods, to stop and prevent the waste of oil and gas, or both, in all drilling and producing operations and from connecting lines, and he shall not wastefully utilize oil or gas.

**§ 183.80 Superintendent to be notified of intended operations.**

Lessee shall notify the superintendent a reasonable time in advance of starting work of intention to redrill, deepen, plug, or abandon a well; and whenever the superintendent or inspector has given notice that extra precautions are necessary in the plugging of wells in a particular territory lessee shall give at least 3 days' advance notice of such intended plugging.

**§ 183.81 Shutdown, abandonment, and plugging of wells.**

No productive well shall be abandoned until its lack of capacity for further profitable production of oil or gas has been demonstrated to the satisfaction of the Superintendent. Lessee therefore shall not shut down, abandon, or otherwise discontinue the operation or use of any well without the written approval of the Superintendent or his designated representative. All applications for such approval shall be submitted to the Superintendent on forms furnished by him. Lessees operating secondary recovery units may obtain permission from the Superintendent to submit a monthly well status report rather than obtain individual authorizations for changing the status of producing, injection, disposal, or other wells connected with the operation of the unit.

(a) Application for authority to shut down or discontinue use or operation of a well shall set forth justification therefor and probable duration, the means by which the well bore is to be protected, and the contemplated eventual disposition of the well. The method of conditioning such well shall be subject to the approval of the Inspector.

(b) Wells to be permanently abandoned shall be promptly plugged as prescribed by the Inspector. Applications to plug shall set forth reasons for plugging; a detailed statement of the proposed work including kind, location, and length of plugs (by depth), plans for mudding and cementing, testing, parting and removing casing; and any other pertinent information: *Provided*, The Superintendent, or his designated representative, may give oral permission and instructions pending receipt of a written application to plug a newly drilled hole. Lessee shall remit a fee of $15 with each written application for authority to plug a well, such fee to be refunded if permission is not granted.

(c) Lessee shall plug and fill all dry or abandoned wells in a manner to confine the fluid in each formation bearing fresh water, oil, gas, and other minerals, and to protect it against invasion of fluids from other sources. Mud-laden fluid, cement, and other plugs shall be used to fill the hole from bottom to top: *Provided*, If a satisfactory agreement is reached between Lessee and the surface owner, subject to approval of the Superintendent, Lessee may condition the well for use as a fresh water well and shall so indicate on the plugging record. The manner in which plugging materials shall be introduced and the type of materials so used shall be subject to the approval of the Inspector. Within 10 days after plugging, Lessee shall file with the Superintendent a complete report of the plugging of each well. When any well is plugged and abandoned Lessee shall, within 90 days, clean up the premises around such well to the satisfaction of the Superintendent or his authorized representative: *Provided*, That the 90-day period may be extended a reasonable



time in the discretio
tendent.
(d) In event Lessee
properly any dry or
accordance with the
part, the Superinten
days' notice to the
plug such well at the e
his surety plus an ad
to cover administrativ
[32 F.R. 8587, June 15,

§§ 183.82–183.84 [

**§ 183.85 Disposal of**

(a) All B.S. and
tanks or well shall
proper receptacles t
same without permit
the surface of the lan
and ravines and wh
or sump-holes are u
be located in any d
must be located in pl
structed that water
flow into them and v
destroy the dams, an
B.S. is not run thr
process, same shall
quantities be burned
week and at more
when possible.
(b) Where it is im
B.S., or where it is
salt water in such
damage the surface
adjoining property,
water, the lessee sha
intendent, who shall
each instance as to
such B.S. or salt wa
tions shall be issue
copy thereof shall
livered to the oil or ga

**§ 183.86 Accidents**

Lessee shall make
report to the superin
dents or fires occu
premises.

**§ 183.87 Tankage**

Lessee shall provi
of suitable shape fo
ment, into which all
oil shall be run from
furnish the superint
curate tank tables a
and when requested.

**§ 183.88 Division**

(a) The lessee n
ments with the pur

in permission from the
to submit a monthly well
ither than obtain indi-
itions for changing the
:ing, injection, disposal,
onnected with the oper-

on for authority to shut
inue use or operation of
forth justification there-
: duration, the means by
bore is to be protected,
plated eventual disposi-
The method of condi-
l shall be subject to the
Inspector.
be permanently aban-
: promptly plugged as
he Inspector. Applica-
all set forth reasons for
ailed statement of the
ncluding kind, location,
plugs (by depth), plans
nd cementing, testing,
noving casing; and any
information: *Provided*,
dent, or his designated
nay give oral permission
s pending receipt of a
tion to plug a newly
ssee shall remit a fee of
written application for
g a well, such fee to be
nission is not granted.
all plug and fill all dry or
; in a manner to confine
formation bearing fresh
and other minerals, and
ainst invasion of fluids
rces. Mud-laden fluid,
er plugs shall be used to
m bottom to top: *Pro-*
tisfactory agreement is
1 Lessee and the surface
o approval of the Super-
e may condition the well
sh water well and shall
he plugging record. The
1 plugging materials shall
nd the type of materials
: subject to the approval
r. Within 10 days after
: shall file with the Super-
plete report of the plug-
vell. When any well is
abandoned Lessee shall,
, clean up the premises
ell to the satisfaction of
ident or his authorized
*Provided*, That the 90-
be extended a reasonable
time in the discretion of the Superintendent.

(d) In event Lessee shall fail to plug properly any dry or abandoned well in accordance with the regulations in this part, the Superintendent may, after 5 days' notice to the parties in interest, plug such well at the expense of Lessee or his surety plus an additional 25 percent to cover administrative costs.

[32 F.R. 8587, June 15, 1967]

### §§ 183.82–183.84 [Reserved]

### § 183.85 Disposal of B.S. and salt water.

(a) All B.S. and salt water from tanks or well shall be drawn off into proper receptacles to hold and retain same without permitting it to run over the surface of the land or into the creeks and ravines and where earthern tanks or sump-holes are used, they shall not be located in any draw or ravine, but must be located in places and be so constructed that water from rains will not flow into them and wash out the B.S. or destroy the dams, and in cases where the B.S. is not run through some treating process, same shall when in sufficient quantities be burned at least once every week and at more frequent intervals when possible.

(b) Where it is impossible to burn the B.S., or where it is necessary to pump salt water in such quantities as would damage the surface of the leased land or adjoining property, or pollute any fresh water, the lessee shall notify the superintendent, who shall give instructions in each instance as to the disposition of such B.S. or salt water. Such instructions shall be issued in writing and a copy thereof shall be immediately delivered to the oil or gas lessee.

### § 183.86 Accidents to be reported.

Lessee shall make a full and complete report to the superintendent of all accidents or fires occurring on the leased premises.

### § 183.87 Tankage for crude oil.

Lessee shall provide approved tankage of suitable shape for accurate measurement, into which all production of crude oil shall be run from the wells, and shall furnish the superintendent copies of accurate tank tables and all run tickets, as and when requested.

### § 183.88 Division orders.

(a) The lessee may make arrangements with the purchasers of oil for the payment of the royalty, but such arrangements, if made, shall not relieve the lessee from responsibility for the payment of the royalty, should such purchaser fail, neglect, or refuse to pay the royalty when it becomes due. No oil shall be run to any purchaser or delivered to the pipeline or other carrier for shipment, or otherwise conveyed or removed from the leased premises, until a division order is executed, filed, and approved by the Superintendent, showing that the lessee has a regularly approved lease in effect, and the conditions under which the oil may be run: (*Provided*, That the Superintendent may grant temporary permission to run oil from a lease pending the execution, filing, and approval by him of a division order.) Lessees shall be required to pay for all oil or gas used off the leased premises for operating purposes; affidavit shall be made as to the production used for such purposes and royalty paid in the usual manner. The lessee or his representative shall be present when oil is taken from the leased premises under any division order and will be responsible for the correct measurement thereof and shall report all oil so run.

(b) The lessee shall also authorize the pipeline company or the purchaser of oil to furnish the Superintendent with a monthly statement, not later than the 20th day of the following calendar month, of the gross barrels run as a common-carrier shipment or purchased from his lease or leases.

[27 F.R. 9514, Sept. 26, 1962]

### § 183.89 Use of timber from leased lands.

Lessee will not be permitted to use any timber from Osage lands except under written agreement with the owner.

### § 183.90 Gas wells drilled by oil lessees and vice versa.

When an oil lessee in drilling a well encounters gas in excess of one million cubic feet per 24 hours, or the gas lessee in drilling a well encounters oil, he shall immediately suspend drilling, and notify the oil or gas lessee, as the case may be, and the superintendent, in order that such lessee and the inspector may be present while the sand is being drilled through, such further drilling, however, shall not be resumed until authorized by the inspector, except as otherwise permitted in advance in writing by the inspector.

PENALTIES FOR VIOLATION OF REGULATIONS

**§ 183.91 Amount of penalties.**

Fines may be imposed by the Superintendent without right of appeal for violations of certain sections of the regulations in this part, as follows:

(a) Fines for noncompliance with terms of lease or regulations.

(1) For failure to file preliminary report required by § 183.62, $5 a day for the first violation and $10 a day for each violation thereafter.

(2) For failure to file a completion report, as required by § 183.63, $5 a day for the first violation and $10 a day for each violation thereafter.

(3) For failure to mark rigs or wells, as required by § 183.65, $50 for each well.

(4) For failure to construct slush pits, as required by § 183.68, $10 for each day after drilling is commenced on any well.

(5) For failure to comply with § 183.71, regarding gate valve and other approved controlling devices, $100.

(6) For failure to comply with § 183.77, in regard to using gas in place of steam to operate engines or pumps, $10 per day for the first violation and $20 a day for each violation thereafter.

(7) For failure to comply with § 183.78, which prohibits the burning of gas in flambeau lights, $50 per day.

(8) For failure to notify Superintendent and secure authority before redrilling, deepening, plugging or abandoning any well, $200, as required by §§ 183.80 and 183.90.

(9) For failure to construct sump-holes, or burning holes, to properly care for and dispose of B. S. and salt water as provided in § 183.85, $10 a day for the first violation, and in event of the failure properly to construct or repair sump-holes, or burning holes, within 5 days after notification by Superintendent or his authorized representative, $25 to $50 a day.

(10) For failure to file plugging reports as required by § 183.81 and for failure to file reports, and remit royalties required by § 183.45, $5 a day for the first violation and $10 a day for each violation thereafter.

(b) All moneys received from fines collected under this section shall be deposited as provided in § 183.93.

[22 F.R. 10612, Dec. 24, 1957, as amended by 32 F.R. 8588, June 15, 1967]

EFFECTIVE DATE OF REGULATIONS

**§ 183.92 Regulations to be effective from date of approval.**

The regulations in this part shall become effective and in full force from and after the date of approval, and shall be subject to change or alteration at any time by the Secretary of the Interior: *Provided*, That no regulations made after the approval of any lease shall operate to affect the term of lease, rate of royalty, rental, or acreage, unless agreed to by both parties to the lease.

FORMS

**§ 183.93 Forms.**

(a) Leases, and other papers must be upon forms prescribed by the Secretary of the Interior, and the Superintendent will furnish prospective lessees with such forms for preparation of original leases without charge, but shall make a charge of 50 cents per set for forms used in preparing assignments.

Form A—Gas mining lease.
Form B—Oil mining lease.
Form D—Bond.
Form E—Authority of officers to execute papers.
Form F—Assignment.
Form G—Collective bond.
Form H—Assignment bond.

(b) All sums received from sale of forms and fines shall be placed in Tribal Funds.

[22 F.R. 10612, Dec. 24, 1957, as amended at 27 F.R. 9514, Sept. 26, 1962]

APPROVAL FEE

**§ 183.94 Amount of fee.**

A fee of $10 will be charged for each lease, each sublease, each drilling contract affecting oil and gas mining leases, and each assignment of lease, such amount to be paid by the lessee, sublessee or assignee upon notice of approval of the contract, as provided by the act of February 14, 1920.

[27 F.R. 9515, Sept. 26, 1962]

HEARINGS AND APPEALS

**§ 183.95 Hearing and appeals.**

(a) Any person, firm, or corporation aggrieved by any decision or order issued by or under authority of the Superintendent pursuant to the regulations in this part, may file with the Superintendent at anytime an application for modification or revocation of such decision or order. The Superintendent shall give notice of the time and place and conduct a hearing upon the application

within ten days after
If the applicant is not
decision of the Super
peal may be taken
forth except as provi
(b) of this section.

(b) An appeal to
of Indian Affairs ma
any decision or order
authority of the Supe
decisions or orders iss
ity of §§ 183.54, 183.
filing such appeal witl
ent within 30 days a
decision or order. Th
corporate or be acco
written showing and
facts and law as the a
adequate to justify r
cation of the order.
facts must be made
Superintendent shall
peal and accompanyi
full report and
through official chan
missioner of Indian A

(c) An appeal fro
the Commissioner of I
be taken to the Secret
within 30 days after s
missioner's decision.
be accompanied by su
and argument on the
appellant may deem
reversal or modificati
Any statement of fact
the Commissioner mu
oath.

(d) Compliance wi
order issued by or und
Superintendent shall
by reason of an appeal
unless such suspensio
writing by the Comm
Affairs, and then onl
tion that such suspe
detrimental to the le
mission and acceptanc
adequate to indemnif
loss or damage.

## PART 184—LEASIN LANDS IN WIND RESERVATION, V OIL AND GAS MIN

Sec.
184.1 Definitions.

HOW TO ACQU

184.2 Applications for
184.3 Leases to citizens except Govern

TIVE DATE OF REGULATIONS

**Regulations to be effective date of approval.**

ılations in this part shall be- tive and in full force from and late of approval, and shall be change or alteration at any ıe Secretary of the Interior: That no regulations made after al of any lease shall operate to term of lease, rate of royalty, acreage, unless agreed to by :s to the lease.

FORMS

**Forms.**

ıes, and other papers must be s prescribed by the Secretary ırior, and the Superintendent ı prospective lessees with such preparation of original leases arge, but shall make a charge s per set for forms used in assignments.

Gas mining lease.
Oil mining lease.
Bond.
Authority of officers to execute

Assignment.
Collective bond.
Assignment bond.

sums received from sale of fines shall be placed in Tribal

12, Dec. 24, 1957, as amended at , Sept. 26, 1962]

APPROVAL FEE

**Amount of fee.**

$10 will be charged for each sublease, each drilling con- ing oil and gas mining leases, assignment of lease, such be paid by the lessee, sub- ıssignee upon notice of ap- ıe contract, as provided by the ıary 14, 1920.
, Sept. 26, 1962]

EARINGS AND APPEALS

**Hearing and appeals.**

person, firm, or corporation ıy any decision or order issued er authority of the Super- ›ursuant to the regulations in ıay file with the Superintend- ıytime an application for n or revocation of such deci- ·r. The Superintendent shall of the time and place and hearing upon the application



within ten days after its receipt by him. If the applicant is not satisfied with the decision of the Superintendent, an appeal may be taken as hereinafter set forth except as provided in paragraph (b) of this section.

(b) An appeal to the Commissioner of Indian Affairs may be taken from any decision or order issued by or under authority of the Superintendent except decisions or orders issued under authority of §§ 183.54, 183.59, and 183.91, by filing such appeal with the Superintendent within 30 days after service of the decision or order. The appeal shall incorporate or be accompanied by such written showing and argument on the facts and law as the appellant may deem adequate to justify reversal or modification of the order. All statements of facts must be made under oath. The Superintendent shall transmit the appeal and accompanying papers with a full report and recommendations, through official channels, to the Commissioner of Indian Affairs.

(c) An appeal from any decision of the Commissioner of Indian Affairs may be taken to the Secretary of the Interior within 30 days after service of the Commissioner's decision. The appeal shall be accompanied by such written showing and argument on the facts and law as appellant may deem adequate to justify reversal or modification of the decision. Any statement of facts not submitted to the Commissioner must be made under oath.

(d) Compliance with any decision or order issued by or under authority of the Superintendent shall not be suspended by reason of an appeal having been taken unless such suspension is authorized in writing by the Commissioner of Indian Affairs, and then only on a determination that such suspension will not be detrimental to the lessor or upon submission and acceptance of a bond deemed adequate to indemnify the lessor from loss or damage.

## PART 184—LEASING OF CERTAIN LANDS IN WIND RIVER INDIAN RESERVATION, WYOMING, FOR OIL AND GAS MINING


Sec.
184.1 Definitions.

HOW TO ACQUIRE LEASES

184.2 Applications for leases.
184.3 Leases to citizens of the United States except Government employees.
184.4 Sale of oil and gas leases.
184.5 Terms of leases, procedure for renewal and execution.
184.6 Corporations and corporate information.
184.7 Additional information from applicant.
184.8 Bonds.
184.9 Acreage limitation; leases on noncontiguous tracts.
184.10 Minerals other than oil and gas.
184.11 Bureau of Land Management to be furnished copy of lease.
184.12 Mineral reserves in nonmineral entries.
184.13 Vested rights to be respected.
184.14 Government reserves right to purchase oil and gas.

RENTS AND ROYALTIES

184.15 Manner of payment.
184.16 Crediting advance annual payments.
184.17 Rates of rents and royalties.
184.18 Free use of gas by lessor.
184.19 Division orders.

OPERATIONS

184.20 Permission to start operations.
184.21 Restrictions on operations.
184.22 Diligence and prevention of waste.
184.23 Wells.
184.24 Penalties.
184.25 Inspection of premises, books and accounts.
184.26 Assignments and overriding royalties.
184.27 Stipulations.
184.28 Cancellations.
184.29 Fees.
184.30 Forms.


AUTHORITY: The provisions of this Part 184 issued under sec. 1, 39 Stat. 519, unless otherwise noted.

SOURCE: The provisions of this Part 184 appear at 22 F.R. 10622, Dec. 24, 1957, unless otherwise noted.

### § 184.1 Definitions.

(a) The term "superintendent" in this part refers to the superintendent or other officers of the Bureau of Indian Affairs or of the Government who may have jurisdiction over the Shoshone or Wind River Reservation.

(b) The term "supervisor" in this part refers to a representative of the Secretary of the Interior, under direction of the Director of the United States Geological Survey, authorized and empowered to supervise and direct operations under oil and gas mining leases, to furnish scientific and technical information and ad-

## 25 CFR—Continued

29 F.R. Page

Chapter I—Continued

233.52
Revised ---------- 7092
233.53
Revised ---------- 7092
233.54
Added ---------- 7093

# 1965

## 25 CFR

30 F.R. Page

Chapter I:

1.4
Added ---------- 7520
41
Added ---------- 7745
42
Revised ---------- 7746
88.6
(e) revised---------- 5742
120
Revised ---------- 11676
131.18
Revised ---------- 14156
163.1
Revised ---------- 9813
163.3
Revised ---------- 9814
221.16
Revised ---------- 7101
221.17
Revised ---------- 7101
221.24
Revised ---------- 8160
221.26
Revised ---------- 8160
221.28
Revised ---------- 8160
221.32
Revised ---------- 536
221.78
(e) added---------- 10044
242
Revised ---------- 10099
251.9
Revised ---------- 8267
251.10
Deleted ---------- 8267
251.11
Revised ---------- 8267

# 1966

## 25 CFR

31 F.R. Page

Chapter I

41.3
Revised ---------- 7744
Revised ---------- 16565
41.5
Revised ---------- 7744

## 25 CFR—Continued

31 F.R. Page

Chapter I—Continued

42.3
Revised ---------- 7745
42.4
Revised ---------- 7745
221.16
Revised ---------- 7283
221.17
Revised ---------- 7283
221.24
Revised ---------- 7283
221.26
Revised ---------- 7283
221.28
Revised ---------- 7283
221.32
Revised ---------- 14876
221.63
Revised ---------- 10742

Chapter III

500
Added ---------- 5445

# 1967

## 25 CFR

32 F.R. Page

Chapter I

41.3
(g)(3) and (h)(2) revised---------- 5621
(b) revised---------- 10058
(d)(2) revised---------- 12790
(i) added---------- 15471
(j) added---------- 16099
52.5
Revised ---------- 11778
52.6
Revised ---------- 11778
52.8
(b) amended---------- 11778
52.10a
Added ---------- 11778
52.11
Revised ---------- 11778
52.12
Amended ---------- 11778
52.13
Amended ---------- 11778
52.15
Revised ---------- 11778
52.17
Revised ---------- 11778
53
Added ---------- 11779
73.30
Added ---------- 10253
73.38
Revised ---------- 10253
73.40
Revised ---------- 10253

25 C
Chapte
73.41
Revi
73.42
Rev
73.43
Rev
73.44
Add
73.47
Rev
73.51
Del
131.8
(a)
183.81
Rev
183.8
Re
o
183.8
Re
c
183.8
Re
(

| d | 31 F.R. Page |
|---|---|
| ---------- | 7745 |
| ---------- | 7745 |
| ---------- | 7283 |
| ---------- | 7283 |
| ---------- | 7283 |
| ---------- | 7283 |
| ---------- | 7283 |
| ---------- | 14876 |
| ---------- | 10742 |
| ---------- | 5445 |

| | 32 F.R. Page |
|---|---|
| vised----- | 5621 |
| --------- | 10058 |
| --------- | 12790 |
| --------- | 15471 |
| --------- | 16099 |
| --------- | 11778 |
| --------- | 11778 |
| --------- | 11778 |
| --------- | 11778 |
| --------- | 11778 |
| --------- | 11778 |
| --------- | 11778 |
| --------- | 11778 |
| --------- | 11778 |
| --------- | 11779 |
| --------- | 10253 |
| --------- | 10253 |
| --------- | 10253 |



## 25 CFR—Continued

| | 32 F.R. Page |
|---|---|
| **Chapter I—Continued** | |
| 73.41 | |
| Revised | 10254 |
| 73.42 | |
| Revised | 10254 |
| 73.43 | |
| Revised | 10254 |
| 73.44 | |
| Added | 10254 |
| 73.47 | |
| Revised | 10254 |
| 73.51 | |
| Deleted | 10254 |
| 131.8 | |
| (a) revised | 663 |
| 183.81 | |
| Revised | 8587 |
| 183.82 | |
| Revoked; superseded by revision of 183.81 | 8588 |
| 183.83 | |
| Revoked; superseded by revision of 183.81 | 8588 |
| 183.84 | |
| Revoked; superseded by revision of 183.81 | 8588 |

## 25 CFR—Continued

| | 32 F.R. Page |
|---|---|
| **Chapter I—Continued** | |
| 183.91 | |
| (a)(10) revised | 8588 |
| 221.16 | |
| Revised | 5621 |
| 221.17 | |
| Revised | 5621 |
| 221.24 | |
| Revised | 7771 |
| 221.26 | |
| Revised | 7771 |
| 221.28 | |
| Revised | 7771 |
| 221.86 | |
| Revised | 664 |
| 221.95 | |
| Revised | 4282 |
| 243 | |
| Deleted | 16213 |
| 255 | |
| Added | 3945 |
| 256 | |
| Added | 10434 |
| **Chapter III** | |
| 500 | |
| Revised | 20855 |