10

95TH CONGRESS 2d Session } HOUSE OF REPRESENTATIVES { REPORT No. 95-1459

# AMENDING CERTAIN LAWS RELATING TO THE OSAGE TRIBE OF OKLAHOMA, AND FOR OTHER PURPOSES

AUGUST 9, 1978.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. UDALL, from the Committee on Interior and Insular Affairs, submitted the following

## REPORT

[To accompany H.R. 11894]

[Including the cost estimate of the Congressional Budget Office]

The Committee on Interior and Insular Affairs, to whom was referred the bill (H.R. 11894) to amend certain laws relating to the Osage Tribe of Oklahoma, and for other purposes, having considered the same, report favorably thereon with amendments and recommend that the bill as amended do pass.

The amendments are as follows:

Page 3, following line 5, insert a new subsection as follows:

> (c) The fourth paragraph of section 3 of the Act of June 24, 1938 (52 Stat. 1034, 1036) is amended by striking the phrase 'January 1, 1984' and inserting, in lieu thereof, the phrase 'January 1, 1984 and thereafter until otherwise provided by Congress'.

Page 4, beginning on line 3, strike out all of Section 4 and renumber the succeeding sections accordingly.

Page 9, line 10, strike out "section 8" and insert in lieu thereof "section 7".

Page 10, line 4, following the word "person" insert the word "not".

Page 11, line 10, strike out "section 9(b)" and insert in lieu thereof "section 8(b)".

Page 11, line 17, following the word "highest" insert the word "legitimate".

Page 11, line 24, strike out "section 8" and insert in lieu thereof "section 7".

### PURPOSE

The purpose of H.R. 11894, introduced by Mr. Risenhoover, is to amend and supplement various laws relating to the Osage Indians of Oklahoma.

29-006—78——1

NH43-58

## Background

The Osage Indians were traditionally and aboriginally located in southern Illinois and Indiana. When first contacted by white explorers, the Osage were located in Missouri and northern Arkansas. Through a series of treaties with the United States, beginning in 1808 and ending in 1870, the Osage gradually ceded these lands and were removed westward.

By the act of July 15, 1870, a reservation was created for the Osage in northeastern Oklahoma. The reservation contained 1,470,934 acres and is now conterminous with Osage county, Okla.

In 1887, Congress passed the General Allotment Act of February 8, 1887 (24 Stat. 388) which provided that the various Indian reservations would be allotted, in individual tracts, to the members of the tribe and any remaining lands would be declared surplus and sold to white settlers. The Osage strongly resisted the allotment of their reservation and the 1887 act was made inapplicable to them.

However, in 1906, Congress passed the Osage Allotment Act of June 28, 1906 (34 Stat. 539) over strong protests from the Osage.

This act provided for the allotment of 480 acres to each member of the tribe and, after making certain reservations for schools, dwellings, cemeteries, Government buildings, et cetera, the remaining lands were to be divided equally among the members. The Secretary of the Interior was authorized to issue certificates of competency to adult Indians, authorizing them to convey their lands, except that 160 acres of homestead lands were to remain inalienable and nontaxable for 25 years or during the life of the allottee. Oil, gas, coal, and other minerals were to be reserved for the tribe for 25 years, were to be subject to lease by the tribal council, with the approval of the Secretary, and royalties were to be paid to the tribe. Minerals then were to become the property of the individual allottees. Allotted lands were to be subject to lease for farming and grazing purposes, with approval by the Secretary.

Funds of the Osage Tribe were to be held in trust for 25 years and then distributed to the individual members except that (1) moneys received from sale of land in Kansas and any moneys found due on claims against the United States were to be placed to the credit of the individual members of the tribe, were to draw interest as provided by law, and the interest was to be paid quarterly to members or to parents or guardians in the case of minors, and (2) royalties from mineral leases and moneys received from sale of town lots or from grazing lands were to be placed in the Treasury to the credit of the individual members of the tribe and distributed at the same time as interest on trust funds. Provision was made for election of the tribal officers and council.

The 1906 act constitutes the basic Federal law regulating the property and affairs, including tribal government, of the Osage Indians, and the descent and distribution of interests in individual trust lands and property and in tribal property. This act has been amended and supplemented by several subsequent statutes, particularly with respect to extending the life of the Osage Tribal Council, and in extending the tribal mineral reservation, and the trust status of the individual allotments.

## Explanation

As reported by the committee, H.R. 11894 further amends or supplements the 1906 act and subsequent acts in several respects.

Section 9 of the 1960 act, as amended, establishes the Osage Tribal Council and provides that such council shall continue in full force and effect until January 1, 1984. As of April 22, 1977, the Osage Tribe consisted of 9,205 persons of Osage blood who are carried on the Agency census records. Of these 9,205 individuals, an estimated 7,022 have no interest in the tribal mineral estate (known as a headright interest) and, under departmental regulations, have no vote in tribal elections and no right to hold elective office, in the Osage Tribal Council. Osage headright interests may be passed by inheritance from one Osage to another. The inheritance process has resulted in some persons accumulating several headrights' interests; others acquiring only a fractional interest; and still others of substantial Osage blood not acquiring any headright interest all at. In the last few years, a group of persons of Osage blood have filed suit against the Department of the Interior alleging that the tribal council has statutory authority only for management of the Osage mineral estate and not for general government of the Osage tribe. Section 1 of H.R. 11894 would extend for the existence of the tribal council indefinitely and provides for filling of the various offices in the event of a common disaster. The committee does not intend by enactment of this section to affect in any way the question involved in the lawsuit noted above (*Logan et al.* v. *Andrus et al.*, Civ. No. 77–165–C, N.D. Oklahoma).

Existing law with respect to the Osage provides that the mineral estate underlying the Osage reservation shall be reserved to the tribe until April 8, 1983 or until otherwise provided by Congress; that the property of the individual Osage shall continue to be held in trust until January 1, 1984, unless otherwise provided by Congress; and that the homestead allotment of individual Osage shall be exempt from taxation until January 1, 1984.

Section 2 of H.R. 11894, as amended, provides that the mineral estate shall be reserved to the Osage tribe in perpetuity; that the trust period on Osage property shall be continued until January 1, 1984, and thereafter until otherwise provided by Congress; and that the homestead tax exemption shall continue until January 1, 1984, and thereafter until otherwise provided by Congress.

Under existing Osage law, the Secretary of the Interior is required to issue a certificate of competency to an Osage Indian of less than one-half degree of Indian blood upon the attainment of age 21. The effect of the issuance of such certificate is to remove the trust status of the property held by the Indian without his consent. Section 3 of H.R. 11894 repeals the 1948 act requiring the issuance of such certificates; authorizes an Osage Indian having a certificate of competency to apply to the Secretary for the revocation of such certificate; and would eliminate various blood degree distinctions in other laws relating to descent and distribution and tax exemptions. No other tribe of Indians is governed by Federal law making blood distinctions between members with respect to property ownership and this section would eliminate this differentiation for the Osage.

The act of June 24, 1938 (52 Stat. 1034) provided that leases of Osage lands for gas purposes would contain provision for conservation of gas through maximum recovery. Since the passage of that act, a number of States have recognized the need for unitization of working and royalty interests to provide for the greatest ultimate recovery of oil and gas. The need for conservation has been construed by the courts

as sufficient to permit the States to enforce unitization of leasehold interests from common sources of supply. Section 4 of the bill as reported, would authorize the Secretary of the Interior to publish and enforce appropriate regulations for conservation of oil and gas production from the Osage reservation through unitization.

Under existing law (section 8 of the act of April 18, 1912, 37 Stat. 86, 88), an adult member of the Osage tribe can dispose of his trust property by the execution of a will in accordance with the laws of the State of Oklahoma. Such a will is admitted to probate in the State courts, provided it has been approved before or after the death of the testator. Section 5(a) of the bill amends that law to make clear that Osages 18 years and older may dispose of such property by will and to streamline the probate proceeding before the Department of the Interior and the Oklahoma district courts to eliminate protracted litigation on such probates.

Section 3 of the act of April 18, 1912 (37 Stat. 86) establishes the legal procedure for the probate of deceased and orphaned minors, insane or other incompetent allottees of the Osage Tribe. Probate of such estates is provided for in the county courts of Oklahoma. Section 5(b) of the bill amends that law to change the words "county court" to "district court"; to specifically state that the laws of the State of Oklahoma are applicable to all Osage Indians whether they are allotted or unallotted; and to provide that inheritance of a Osage headright or mineral interest is subject to the provisions of section 7 of this bill.

Section 7 of the act of February 27, 1925, (45 Stat. 1008), as amended, restricts the inheritance of interests in the trust estate of an Osage Indian of one-half or more Indian blood of the Osage tribe to heirs of Indian blood. Section 5(c) amends this law to permit parents and legally adopted children of non-Indian blood to inherit from Osage Indians and to prevent spouses of non-Indian blood from inheriting from Osage Indians, regardless of their quantum of Indian blood.

Section 5(d) of the bill provides that, notwithstanding the provisions of subsection (a), (b), and (c), dispositions of Osage headright interests shall be subject to the provisions of section 7 of this bill.

Under current laws, an Osage Indian can only dispose of his headright or mineral interest by testamentary instrument which is approved subsequent to his death by the Secretary of the Interior. This procedure has resulted in many contests of an administrative nature followed by contests in probate courts of the State of Oklahoma, and many disputes of heirship have arisen in intestate situations. The tribe requested authority to permit members of the Osage tribe to execute testamentary instruments in the nature of a trust which would provide the settlor with an opportunity prior to his death to firmly establish the disposition that would be made of his property. Section 6 provides this authority.

Section 7 of the bill is intended to provide a means of keeping the Osage headright or mineral interest in Osage Indian ownership. There is no similar provision in existing law with regard to the Osages. This section would prohibit a person of non-Osage Indian blood from receiving more than a life estate in a Osage headright interest owned by an Osage Indian, whether such interest is recieved by will, inter vivos trust, or Oklahoma law of intestate succession. Upon the death of such non-Osage recipient, the Osage headright would vest in the remaindermen of Osage Indian blood, or if the deceased Osage died intestate, the Osage headright would vest in his heirs of Osage Indian

blood pursuant to the Oklahoma law of intestate succession. If there be no such remaindermen of Osage Indian blood or heirs of Osage Indian blood, such Osage headright would vest in the Osage tribe and the tribe would be required to pay the estate of such non-Osage recipient the market value of such headright interest.

The act of April 12, 1924 (43 Stat. 94), authorizes the sale of Osage headright or mineral interests by individuals who are not of Indian blood, but prohibits the sale of Osage headright or mineral interests by any person of Indian blood, except in certain cases where Federal supervision of tribal groups has been terminated. Section 8(a) of the bill would permit the purchase, by the Osage Tribe of headright or mineral interests inherited by or devised to non-Indians and would help to resolve the problems created by fractionation of interests in such headrights.

Section 8(b) would authorize the Osage Tribe to use tribal mineral income for the purpose of purchasing head-right or mineral interests as provided in section 7 and 8(a) of the bill.

Section 9 of the bill would authorize the administrative transfer of a deceased Osage Indian's headright and other assets for which the Secretary has a trust responsibility to the heirs or legatees of the decedent in those cases where the assets are so small (less than an aggregate of $10,000 per decedent) that it is uneconomical to employ an attorney to probate or administer such interests. The provisions of the section would apply in those cases where (1) no court of competent jurisdiction has undertaken the probate of the deceased's estate, and (2) a request for administrative determination has been made to the Secretary by one or more of the heirs or legatees.

## Section By Section Analysis

### SECTION 1

Section 1 further amends section 9 of the act of June 28, 1906 (34 Stat. 539, 535), relating to the establishment of the Osage Tribal Council, by providing for a method of selecting council members in the event of a common disaster and by extending the life of the council until otherwise provided by Congress.

### SECTION 2

Subsection (a) amends the act of June 24, 1938 (52 Stat. 1034, 1035) by providing that the mineral estate reserved to the Osage tribe by the 1906 act for a term of years will vest in the tribe in perpetuity.

Subsection (b) amends the 1938 act by providing that the trust status of allotted Osage lands will be extended until otherwise provided by act of Congress.

Subsection (c) amends the 1938 act by extending the tax exemption on Osage Indian homestead allotments until otherwise determined by Congress.

### SECTION 3

Subsection (a) repeals a 1948 act providing for mandatory issuance of certificates of competency to Osages of less than one-half degree of Osage blood.

Subsection (b) provides that any Osage Indian who has received a certificate of competency under certain acts of Congress may petition to have such certificate revoked by the Secretary of the Interior, but that such revocation will not affect valid existing rights or reimpose any restriction against alienation of land.

Subsection (c) amends a 1925, 1929, and 1938 act of Congress relating to Osage Indians by eliminating language which distinguishes between Osage Indians of one-half or less and one-half or more degree of Osage Indian blood.

SECTION 4

Section 4 provides for the unitization of oil leases on the Osage reservation for purposes of maximizing oil and gas production.

SECTION 5

Subsection (a) reduces from 21 to 18 years the age at which an Osage Indian may dispose of, by will, his estate for sale by a non Indian.

Subsection (b) provides for the hypothecation of Osage tribal income to acquire Osage headright interest.

SECTION 9

Section 9 authorizes the Secretary of the Interior to administratively determine heirs or legatees of Osage estates having assets under the jurisdiction of the Department of the Interior which do not exceed an aggregate value of $10,000.

COMMITTEE AMENDMENTS

Aside from technical and conforming amendments, the committee adopted two substantive amendments to the bill as introduced.

A new subsection (c) was added to section 2. The homestead allotments of Osage Indians not having certificates of competency are exempt from taxation until January 1, 1984. The new subsection would continue that exemption until Congress positively determines otherwise.

All of section 4 of the bill, as introduced, was stricken. The so-called headright council of the Osage Tribe, the life of which is extended by section 1 of the bill was created by the 1906 act specifically to administer the subsurface estate of the tribe. In recent years, the council has begun to administer other funds, particularly Federal funds made available to Indian tribes, for all under jurisdiction of the Department of the Interior. In addition, it makes certain changes in connection with departmental hearings on Osage wills which would be beneficial to Osage estates.

Subsection (b) merely clarifies the wording of section 3 of the act of April 18, 1912 (37 Stat. 86).

Subsection (c) amends a 1925 act of Congress to permit Indian spouses, non-Indian parents, and adopted non-Indian children to inherit from Indians regardless of the decedents degree of Osage Indian blood.

Subsection (d) provides that, notwithstanding the provisions of subsection (a), (d), and (c), disposition of Osage headright interests are subject to the provisions of section 7 of the bill.

SECTION 6

Subsection (a) permits an Osage Indian of 18 years of age or over to establish an inter vivos trust of his assets under the jurisdiction of the Department of the Interior.

Subsection (b) maintains the existing restriction against alienation on such assets and tax exemptions.

SECTION 7

Section 7 prohibits a person not of Osage blood from receiving more than a life estate in an Osage headright interest owned by an Osage Indian.

SECTION 8

Subsection (a) grants the Osage Tribe the preferential right to purchase an Osage headright interest being offered Osage Indians. The power of the council to do so has been called into question by litigation filed by Osage Indians who are not headright holders and, therefore, not entitled to participate in the election of the council. The litigation is entitled *Logan et al.* v. *Andrus et al.*, Civ. No. 77–165C. N.D. Okla. In addition, the whole governmental structure of the Osage Indians is currently in conflict and the Bureau of Indian Affairs is conducting a poll of all Osage Indians to determine the wishes of the people on that subject. Striking section 4 of the introduced bill has the effect of maintaining the status quo as far as the litigation is concerned. It is the intent of the committee that this bill not affect, in any way, the questions being litigated in the *Logan* case.

COST AND BUDGET ACT COMPLIANCE

The bill represents no cost to the Federal Government directly, but the committee estimates that it could result in a net revenue loss of approximately $350,000 annually. The cost estimate prepared by the Congressional Budget Office follow):

CONGRESSIONAL BUDGET OFFICE,
U.S. CONGRESS,
*Washington, D.C., July 11, 1978.*

Hon. MORRIS K. UDALL,
*Chairman, Committee on Interior and Insular Affairs, U.S. House of Representatives, Longworth House Office Building, Washington, D.C.*

DEAR MR. CHAIRMAN: Pursuant to section 403 of the Congressional Budget Act of 1974, the Congressional Budget Office has reviewed H.R. 11894, a bill to amend certain laws relating to the Osage Tribe of Oklahoma and for other purposes, as ordered reported by the House Committee on Interior and Insular Affairs, May 31, 1978.

The bill includes a provision that would allow members of the Osage Tribe to gain tax-exempt status for income derived from headright and mineral interests. This exemption would result in an income tax revenue loss of approximately $350,000 annually if all eligible members of the tribe apply. Revenue losses from estate and inheritance tax exemptions cannot be estimated on the basis of available information, but are not expected to be substantial. No other significant costs to the Government are expected to result from enactment of this bill.

Should the committee so desire, we would be pleased to provide further details on this estimate.

Sincerely,

ROBERT A. LEVINE,
(For Alice M. Rivlin, Director).

INFLATIONARY IMPACT STATEMENT

The committee concluded that enactment of the bill will have no inflationary impact.

OVERSIGHT STATEMENT

Other than normal oversight responsibilities exercised in connection with these legislative operations, no specific oversight activities were undertaken by the committee and no recommendations were submitted to the committee pursuant to rule X, clause 2(b)2.

COMMITTEE RECOMMENDATION

The Committee on Interior and Insular Affairs, by a voice vote, recommends the bill, as amended, be enacted.

DEPARTMENT REPORT

The report of the Department of the Interior, dated April 19, 1978, follows:

U.S. DEPARTMENT OF THE INTERIOR,
OFFICE OF THE SECRETARY,
*Washington, D.C., April 19, 1978.*

Hon. MORRIS K. UDALL,
*Chairman, Committee on Interior and Insular Affairs, House of Representatives, Washington, D.C.*

DEAR MR. CHAIRMAN: This responds to your request for the views of this Department on H.R. 4384 and H.R. 11894, each of which is entitled to amend the laws relating to the Osage Tribe in Oklahoma.

We recommend enactment of H.R. 4384 and H.R. 11894, if amended as suggested below.

H.R. 11894, SECTION 1

Section 1 of H.R. 11894 would establish an organization for the Osage tribal government.

As of April 22, 1977, the Osage Tribe consisted of 9,205 persons of Osage blood who are carried on the Agency census records. Of these 9,205 individuals, an estimated 7,022 have no headright in the Osage mineral estate, and under Departmental regulations (25 CFR 73.21), have no vote in tribal elections and no right to hold an elective office of the Osage Tribal Council.

Osage headright interests may be passed by inheritance from one Osage to another. The inheritance process has resulted in some persons accumulating several headright interests, others acquiring only a fractional interest, and still other persons of substantial Osage blood not acquiring any headright interest at all.

In the last few years, the Osage Nation Organization, a group comprised of persons who are one-fourth degree or more Osage Indian and

certain other Osage Indians, filed suit against the Department of the Interior alleging that the Osage Tribal Council has statutory authority only for management of the Osage mineral estate and not for general government of the Osage Tribe.

A poll of all members of the Osage Tribe is to be conducted by the Bureau of Indian Affairs to determine the desire of the Osage people with regard to their form of government. Results of the poll should be known in approximately 6 months. We therefore recommend striking out this section of H.R. 11894 and deferring consideration of the organization of the Osage tribal government until that time.

H.R. 11894, SECTION 2

Section 2 of H.R. 11894 would permanently extend the Osage mineral estate and the rights of present owners to that estate. We support the extension of the estate and the rights of present owners.

The act of June 28, 1906 (34 Stat. 539) provided for the division of Osage lands in severalty, allowed the members of the tribe to select three parcels of land (one of which was to be designated as their "homestead"), and provided that Osage "homestead" lands would remain "inalienable" and "nontaxable" for a period of 25 years.

Successive acts of Congress have extended this Federal supervision over Osage land, moneys, and other properties until January 1, 1984. The purpose of subsection (b) of this section is to extend beyond January 1, 1984, the Federal trust responsibility for the Osage Tribe of Indians of Oklahoma. Such a termination of Federal responsibility is not in accord with current Federal Indian policy and is not required in the case of other tribes.

H.R. 11894, SECTION 3

Subsection (a) would repeal the act of February 5, 1948 (62 Stat. 18; 25 U.S.C. 331 nt.) which now provides for the issuance of a certificate of competency to certain members of the Osage Tribe of Oklahoma and the removal of all restrictions against alienation from all properties except headright interests.

Subsection (b) would allow any Osage having a certificate of competency issued under the act of February 5, 1948 (62 Stat. 18; 25 U.S.C. 331 nt.) or certain earlier statutes to make application to the Secretary to revoke such certificate of competency and would require the Secretary to revoke such certificate, but such revocation would not affect the legality of any transactions previously made by reason of the issuance of any such certificate of competency. Restrictions against alienation of lands previously removed would not be reimposed.

Subsection (c) would amend sections 3 and 4 of the act of February 25, 1925 (43 Stat. 1008; 25 U.S.C. 331 nt.) and two other statutes by striking all references to one-half degree or more Indian blood.

Representatives of the Osage Tribe believe there should be no distinction between Osage Indians of more than one-half degree and those of less than one-half degree Indian blood. Their reasoning is that Osage Indians of less than one-half degree of Indian blood are in need of the same protection as those who possess more than one-half degree. Federal law makes no such distinction with regard to any other tribe.

H.R. 11894, SECTION 4

This section is intended to expand or confirm the authority of the Osage Tribal Council. However, to clarify the provisions of the bill, we suggest amending subsections (a) and (c) of the bill by striking references to "Osage Tribal Council" and inserting in lieu thereof the "governing body of the Osage Tribe recognized by the Secretary of the Interior." The authority of the current "Osage Tribal Council" to act as more than the representative of the headright owners has been challenged.

Subsection (a) of this bill would permit the spending of any funds accruing to the Osage Tribe, other than from the Osage mineral estate or from judgments under the Indian Claims Commission Act (60 Stat. 1049), for those programs beneficial to the tribe as determined (under the above amendment) by the governing body of the Osage Tribe recognized by the Secretary of the Interior and subject to his approval.

Subsection (b) would require that in the future, any funds accruing to the Osage Tribe as a result of judgments or settlements for damage to or a taking of the tribal mineral estate shall be paid to the Secretary of the Interior for disbursement in the manner provided by section 4 of the act of June 28, 1906 (34 Stat. 539), as amended, for the disbursement of royalties and bonuses received from the leasing of minerals owned by the Osage Tribe.

Although we do not anticipate any pre-1906 claims, we believe that the exclusive interest of the headright owners should only extend to the period during which the tribe's mineral estate was subject to such interests. Therefore, we recommend amending subsection 4(b) by inserting ", which damage or taking occurred subsequent to June 28, 1906," between the words "estate" and "shall."

Subsection (c) would permit the spending of any unclaimed individual shares of Osage tribal funds restored to the Osage Tribe in accordance with the act of September 22, 1961 (75 Stat. 584; 25 U.S.C. 164, 165), for the use and benefit of the Osage tribe and its members as determined (under the above amendment) by the governing body of the Osage Tribe recognized by the Secretary and subject to his approval.

H.R. 11894, SECTION 5

This section would authorize the Secretary of the Interior, in order to conserve natural resources and to provide for the greatest recovery of oil and gas underlying the Osage mineral estate to establish rules and regulations under which oil and gas leases producing from a common source of supply may be unitized.

The section would amend section 3 of the act of June 24, 1938 (52 Stat. 1034, 1035) which cites the need for "conservation of the natural gas for its economic use, to the end that the highest percentage of ultimate recovery of both oil and gas may be secured: . . ." This provision has been construed by the courts as sufficient to permit States to enforce unitization of leasehold interests from common sources of supply. The Osage Tribe would like the Secretary to publish and enforce regulations relating to unitization.