# AMENDING CERTAIN LAWS RELATING TO THE OSAGE TRIBE OF OKLAHOMA, AND FOR OTHER PURPOSES

AUGUST 25 (legislative day, AUGUST 16), 1978.—Ordered to be printed

Mr. BARTLETT, from the Select Committee on Indian Affairs, submitted the following

## REPORT

[To accompany S. 1081]

The Select Committee on Indian Affairs, to which was referred the bill (S. 1081) to amend and supplement various laws relating to the Osage Indians of Oklahoma, and for other purposes, having considered the same, reports favorably thereon with an amendment and recommends that the bill as amended do pass.

### AMENDMENT

The amendment is as follows:

Strike all after the enacting clause and insert in lieu thereof:

That section 9 of the Act of June 28, 1906 (34 Stat. 539, 545), as amended, is further amended to read as follows:

"SEC. 9. There shall be a quadrennial election of the officers of the Osage Tribe as follows: A principal chief, an assistant principal chief, and eight members of the Osage Tribal Council shall be elected, to succeed the officers elected in the year 1974, at a general election to be held in the town of Pawhuska, Oklahoma, on the first Monday in June 1982, and on the first Monday in June of each fourth year thereafter, in a manner to be prescribed by the Secretary of the Interior, and said officers shall be elected for a period of four years commencing on the first day of July following the election. In case of a vacancy in the office of principal chief or other officer by death, resignation, or otherwise, the vacancy shall be filled in a manner to be prescribed by the Osage Tribal Council. In the event of a common disaster and a quorum of five of the Osage Tribal Council does not survive, the Secretary shall appoint a principal chief and/or the number of councilmen necessary to complete a total of eight, to serve until the next quadrennial election. The Secretary is hereby authorized to remove from the council any member or members for good cause, to be by him determined, after the party involved has had due notice and opportunity to appear and defend himself. The tribal government so constituted shall continue in full force and effect until January 1, 1984, and thereafter until otherwise provided by Act of Congress."

SEC. 2. (a) [illegible] first paragraph of section 3 of the Act of June 24, 1938 (52 Stat. 1034, 1035) [illegible] nded, extending the mineral estate reserved to the Osage Tribe by the Act [illegible] 26, 1906 (34 Stat. 539), is further amended by striking the phrase "until t[illegible] [illegible]hth day of April 1983, and thereafter until otherwise provided by Act of Congress" and substituting, in lieu thereof, the phrase "in perpetuity".

(b) The second paragraph of section 3 of the Act of June 24, 1938 (52 Stat. 1034, 1035), as amended, is amended by striking the phrase "unless otherwise provided by Act of Congress" and inserting, in lieu thereof, the phrase "and thereafter until otherwise provided by Congress".

(c) The fourth paragraph of section 3 of the Act of June 24, 1938 (52 Stat. 1034, 1036) is amended by striking the phrase "January 1, 1984" and inserting, in lieu thereof, the phrase "January 1, 1984 and thereafter until otherwise provided by Congress".

SEC. 3. (a) The Act of February 5, 1948 (62 Stat. 18) is hereby repealed.

(b) Any Osage Indian having received a certificate of competency under paragraph 7 of section 2 of the Act of June 28, 1906 (34 Stat. 539, 542); section 3 of the Act of March 2, 1929 (45 Stat. 1487, 1480); or the Act of February 5, 1948 (62 Stat. 18), may make application to the Secretary of the Interior to revoke such certificate and the Secretary shall revoke such certificate: *Provided*, That revocation of any certificate shall not affect the legality of any transactions heretofore made by reason of the issuance of any such certificate. Restrictions against alienation of lands heretofore removed are not reimposed.

(c) Sections 3 and 4 of the Act of February 27, 1925 (43 Stat. 1008, 1010–11); and section 4 of the Act of March 2, 1929 (45 Stat. 1478, 1480); and sections 1 and 3 of the Act of June 24, 1938 (52 Stat. 1034) are hereby amended by striking, wherever they occur, the phrases "of one-half or more Indian blood", "of more than one-half Indian blood", "of one-half or more Osage blood", and "or who is one-half or more Osage Indian blood".

SEC. 4. In order to conserve natural resources and provide for the greatest ultimate recovery of oil and gas underlying the Osage mineral estate, the Secretary of the Interior is authorized to establish rules and regulations under which oil and gas leases producing from a common source of supply may be unitized.

SEC. 5. (a) Section 8 of the Act of April 18, 1912 (37 Stat. 86, 88), is hereby amended to read as follows: "Any person of Osage Indian blood, eighteen years of age or older, may dispose of his Osage headright or mineral interest and the remainder of his estate (real, person, and mixed, including trust funds) from which restrictions against alienation have not been removed by will executed in accordance with the laws of the State of Oklahoma: *Provided*, That the will of any Osage Indian shall not be admitted to probate or have any validity unless approved after the death of the testator by the Secretary of the Interior. The Secretary shall conduct a hearing as to the validity of such will at the Osage Indian Agency in Pawhuska, Oklahoma. Notice of such hearing shall be given by publication at least ten days before the hearing in a newspaper of general circulation in Osage County, Oklahoma, and by mailing notice of such hearing to the last known address of all known heirs, legatees, and devisees. The cost of publication shall be borne by the estate. The rules of evidence of the State of Oklahoma shall govern the admissibility of evidence at such hearing. All evidence relative to the validity of the will of an Osage Indian shall be submitted to the Secretary within one hundred and twenty days after the date of the petition for approval of such will is filed with the Secretary, unless for good cause shown the Secretary extends the time: *Provided*, That such time shall not be extended beyond six months from the date of the first hearing. For purposes of determining the validity of any will, the Secretary is hereby granted the same subpena power as is vested in the courts. All costs of obtaining witnesses and evidence before the Secretary shall be borne by the party producing such witnesses or evidence, subject to such costs being taxed to the estate in the event that the District Court of the State of Oklahoma having jurisdiction should determine such costs beneficial to the whole estate. Notwithstanding any appeal from the decision of the Secretary, approval of such will by the Secretary shall entitle it to be admitted to probate without further evidence as to its validity or, upon disapproval thereof, the heirs may immediately petition for letters of administration in the district court. No appeal from the order of the Secretary approving or disapproving any will shall stay the issuance of letters testamentary or of administration: *Provided*, That such letters shall not confer power to sell any restricted assets by virtue of any provision in such will, pay or satisfy legacies, or distribute property of the decedent to the heirs or beneficiaries until the final determination of the appeal, [illegible] other action taken by the district court pending said appeal shall be v[illegible] [illegible]ing. No court except a Federal court shall have jurisdiction to hea[illegible] con[illegible] f a probate of a will that has been approved by the Secretary. Su[illegible] appe[illegible] shall be on the record made before the Secretary and his decisions shall be binding and shall not be reversed unless the same is against the clear weight of the evidence or erroneous in law.".

(b) Section 3 of the Act of April 18, 1912 (37 Stat. 86),), is hereby amended to read as follows: "That the property of deceased and of orphan minor, insane, or other incompetent Osage Indians, such incompetency being determined by the laws of the State of Oklahoma which are hereby extended for such purpose to all Osage Indians, shall, in probate matters, be subject to the District Court of Oklahoma having jurisdiction. A copy of all papers filed in the district court shall be served on the Superintendent of the Osage Agency at the time of filing, and said Superintendent is authorized, whenever the protection of the interest of the Osage Indian requires, to appear in the district court. The Superintendent of the Osage Agency or the Secretary of the Interior, whenever he deems the same necessary, may investigate the conduct of executors, administrators, guardians, or other persons having charge of the estate of any minor, incompetent, or deceased Osage Indian. Whenever he shall be of the opinion that the estate is in any manner being dissipated, wasted, or permitted to deteriorate in value by reason of the negligence, carelessness, or incompetency of the executor, administrator, guardian, or other person in charge of the estate, the Superintendent of the Osage Agency or the Secretary is authorized, and it shall be his duty, to report said matter to the district court, take the necessary steps to have such case fully investigated, and prosecute any remedy, either civil or criminal, as the exigencies of the case may require. The costs and expenses of any civil proceedings shall be a charge upon the estate of the Osage Indian or upon the executor, administrator, guardian, or other person in charge of the estate of the Osage Indian and his surety, as the district court shall determine. Every bond of the executor, administrator, guardian or other person in charge of the estate of any Osage Indian shall be subject to the provisions of this section shall contain therein a reference hereto: *Provided*, That no guardian shall be appointed for a minor whose parents are living unless the estate of said minor is being wasted or misused by such parents: *Provided further*, That no land shall be sold or alienated under the provisions of this section without approval of the Secretary.".

(c) Section 7 of the Act of February 27, 1925 (43 Stat. 1008, 1011), as amended, is hereby further amended to read as follows: "Hereafter none but heirs of Indian blood and children legally adopted by a court of competent jurisdiction and parents, Indian or non-Indian, shall inherit from Osage Indians any right, title, or interest to any restricted land, moneys, or Osage headright or mineral interest.".

(d) Notwithstanding the provisions of subsections (a), (b), and (c) of this section, disposition of any Osage headright or mineral interest shall be subject to the provisions of section 7 of this Act.

SEC. 6. (a) With the approval of the Secretary of the Interior, any person of Osage Indian blood, eighteen years of age or older, may establish an inter vivos trust covering his headright or mineral interest except as provided in section 8 hereof; surplus funds; invested surplus funds; segregated trust funds; and alloted or inherited land, naming the Secretary of the Interior as trustee. An Osage Indian having a certificate of competency may designate a banking or trust institution as trustee. Said trust shall be revocable and shall make provision for the payment of funeral expenses, expenses of last illness, debts, and an allowance to members of the family dependent on the settlor.

(b) Property placed in trust as provided by this section shall be subject to the same restrictions against alienation that presently apply to lands and property of members of the Osage Tribe, and the execution of such instrument shall not in any way affect the tax-exempt status of said property.

SEC. 7. After passage of this Act, a person not of Osage Indian blood, except a child legally adopted by an Osage Indian in any court of competent jurisdiction and the lineal descendants of such adopted child, subject to the stipulation that such adopted child or his lineal descendants cannot alienate his Osage headright or mineral interest and the devolution thereof is limited to intestacy, will, or inter vivos trust the same as if he were of Osage Indian blood, is prohibited from receiving more than a life estate in an Osage headright interest owned by an Osage Indian; such adopted child or his lineal descendants, whether such interest is received by will, inter vivos trust, or Oklahoma law of intestate succession.

Upon th[illegible] of such recipient, the Osage headright or mineral interest shall vest in th[illegible] [illegible]dermen thereof who are of Osage Indian blood, adopted children, and/or line[illegible] [illegible]ndants of such adopted children designated by the will or inter vivos t[illegible] the deceased Osage Indian, his adopted child, or the lineal descendants of such adopted child. If such instrument does not designate remaindermen thereof who are of Osage Indian blood, adopted children, and/or lineal descendants of such adopted children, or if the deceased died intestate, the Osage headright or mineral interest shall vest in his heirs pursuant to the Oklahoma law of intestate succession, subject to the above limitations. On the death of the non-Osage beneficiary or heir, except in the case of adopted children or lineal descendants of such adopted children, such Osage headright or mineral interest shall vest in the Osage Tribe and the Tribe shall pay the estate of the non-Osage beneficiary or heir the market value of such Osage headright or mineral interest. Payments under this section shall be made from Osage tribal mineral funds authorized to be expended by section 8(b) hereof.

SEC. 8. (a) Any individual right to share in the Osage mineral estate (commonly referred to as "headright") owned by a person not of Indian blood may not, without the approval of the Secretary of the Interior, be sold, assigned, or transferred. Sale of any such interest shall be subject to the right of the Osage Tribe to purchase it within forty-five days at the highest legitimate price offered the owner thereof.

(b) Prior to the time and tribal mineral income is segregated for distribution to individual headright owners, the Secretary of the Interior, at the request of the Osage Tribal Council, may direct the use of any such income for the purchase of Osage headright interests offered for sale to the Osage Tribe pursuant to this section or vested in the Osage Tribe pursuant to section 7 of this Act.

SEC. 9. Under such regulations as the Secretary of the Interior may prescribe, the heirs and legatees of any deceased owner of an Osage headright or mineral interest, real estate on which restrictions against alienation have not been removed, and funds on deposit at the Osage Agency may be determined by the Secretary is such aggregate interests do not exceed $10,000: *Provided*, That no court of competent jurisdiction has undertaken the probate of the deceased's estate and a request for such administrative determination has been made to the Secretary by one or more of the heirs or legatees.

SEC. 10. An Osage Indian or his estate is exempt from the payment of all estate, inheritance, and income taxes on any Osage headright or mineral interest and the income derived therefrom.

## PURPOSE

The purpose of S. 1081, as introduced by Senator Bartlett, for himself and Senator Bellmon, is to amend and supplement various laws relating to the Osage Indians of Oklahoma.

## BACKGROUND

The Osage Indians were traditionally and aboriginally located in southern Illinois and Indiana. When first contacted by white explorers, the Osage were located in Missouri and northern Arkansas. Through a series of treaties with the United States, beginning 1808 and ending in 1870, the Osage gradually ceded these lands and were removed westward.

By the act of July 17, 1870, a reservation was created for the Osage in northeastern Oklahoma. The reservation contained 1,470,934 acres and is now conterminous with Osage County, Okla.

In 1887, Congress passed the General Allotment Act of February 8, 1887 (24 Stat. 388) which provided that the various Indian reservations would be allotted, in individual tracts, to the members of the tribe and any remaining lands would be declared surplus and sold to [illegible]settlers. The Osage strongly resisted the allotment of th[illegible] [illegible]tion and the 1887 act was made inapplicable to them.

[illegible]er, in 1906, Congress passed the Osage Allotment Act of June [illegible] 1906 (34 Stat. 539) over strong protests from the Osage.

This act provided for the allotment of 480 acres to each member of the tribe and, after making certain reservations for schools, dwellings, cemeteries, Government buildings, et cetera, the remaining lands were to be divided equally among the members. The Secretary of the Interior was authorized to issue certificates of competency to adult Indians, authorizing them to convey their lands, except that 160 acres of homestead lands were to remain inalienable and nontaxable for 25 years or during the life of the allottee. Oil, gas, coal, and other minerals were to be reserved for the tribe for 25 years, were to be subject to lease by the tribal council, with the approval of the Secretary, and royalties were to be paid to the tribe. Minerals then were to become the property of the individual allottees. Allotted lands were to be subject to lease for farming and grazing purposes, with approval by the Secretary.

Funds of the Osage Tribe were to be held in trust for 25 years and then distributed to the individual members except that (1) moneys received from sale of land in Kansas and any moneys found due on claims against the United States were to be placed to the credit of the individual members of the tribe, were to draw interest as provided by law, and the interest was to be paid quarterly to members or to parents or guardians in the case of minors, and (2) royalties from mineral leases moneys received from sale of town lots or from grazing lands were to be placed in the Treasury to the credit of the individual members of the tribe and distributed at the same time as interest on trust funds. Provision was made for election of the tribal officers and council.

The 1906 act constitutes the basic Federal law regulating the property and affairs, including tribal government, of the Osage Indians, and the descent and disbribution of interests in individual trust lands and property and in tribal property. This act has been amended and supplemented by several subsequent statutes, particularly with respect to extending the life of the Osage Tribal Council, and in extending the tribal mineral reservation, and the trust status of the individual allotments.

## LEGISLATIVE HISTORY

S. 1081 and S. 1087 were introduced by Senator Bartlett, for himself and Senator Bellmon. No hearings were held on the legislation.

A companion bill, H.R. 11894, was introduced on April 5, 1978 by Representative Risenhoover. A hearing was held before the House Interior Subcommittee on Indian Affairs and Public Lands on April 20, 1978. The House Committee on Interior and Insular Affairs reported H.R. 11894 on August 9, 1978.

## COMMITTEE RECOMMENDATION AND TABULATION OF VOTES

The Senate Select Committee on Indian Affairs, in open business session on March 9, 1978, with a quorum present unanimously recommended that the text of S. 1082-S. 1087 and S. 1089 be added to that of S. 1081, and that the Senate pass S. 1081, as amended.

## COMMITTEE AMENDMENTS

The com[illegible] adopted an amendment in the nature of a subsitute which incorpo[illegible]es the text of S. 1081-S. 1087 and S. 1089. Sections 1 through 9 of the substitute are identical to the companion measure in the House, H.R. 11984. The committee consolidated the bills in this fashion in order to expedite resolution of differences between the House and Senate versions of the legislation.

Section 10 of the substitute is identical to S. 1089. This section exempts an Osage Indian or his estate from payment of all estate, inheritance, and income taxes on any Osage headright or mineral interest and the income derived therefrom. This section does not appear in the House companion measure, H.R. 11894, but is identical to H.R. 4384, which was introduced by Mr. Risenhoover on March 2, 1977 and referred to the Ways and Means Committee.

## EXPLANATION

The provisions of the substitute amendment are as follows:

Section 9 of the 1906 act, as amend, establishes the Osage Tribal Council and provides that such council shall continue in full force and effect until January 1, 1984. As of April 22, 1977, the Osage Tribe consisted of 9,205 persons of Osage blood who are carried on the Agency census records. Of these 9,205 individuals, an estimated 7,022 have no interest in the tribal mineral estate (known as a headright interest) and, under departmental regulations, have no vote in tribal election and no right to hold elective office, in the Osage Tribal Council. Osage headright interests may be passed by inheritance from one Osage to another. The inheritance process has resulted in some persons accumulating several headright's interests; others acquiring only a fractional interest; and still others of substantial Osage blood not acquiring any headright interest at all. In the last few years, a group of persons of Osage blood have filed suit against the Department of the Interior alleging that the tribal council has statutory authority only for managment of the Osage mineral estate and not for general government of the Osage tribe. Section 1 of the substitute would extend the existence of the tribal council indefinitely and provides for filling of the various offices in the event of a common disaster. The committee does not intend by enactment of this section to affect in any way the question involved in the lawsuit noted above (*Logan et al.* v. *Andrus et al.* (Civ No. 77-165-C), N. D. Oklahoma). This section is similar to S. 1081.

Existing law with respect to the Osage provides that the mineral estate underlying the Osage reservation shall be reserved to the tribe until April 8, 1983 or until otherwise provided by Congress; that the property of the individual Osage shall continue to be held in trust until January 1, 1984, unless otherwise provided by Congress; and that the homestead allotment of individual Osage shall be exempt from taxation until January 1, 1984.

Section 2 of the substitute provides that the mineral estate shall be reserved to the Osage Tribe in perpetuity; that the trust period on Osage property shall be continued until January 1, 1984, and [illegible]after until otherwise provided by Congress; and that the ho[illegible] [illegible]ax exemption shall continue until January 1, 1984, and the[illegible] a[illegible] [illegible]ntil otherwise provided by Congress. Section 2 of the substitut[illegible] amendment incorporates the provisions of S. 1082 and S. 1083.

Under existing Osage law, the Secretary of the Interior is required to issue a certificate of competency to an Osage Indian of less that one-half degree of Indian blood upon the attainment of age 21. The effect of the issuance of such certificate is to remove the trust status of the property held by the Indian without his consent. Section 3 of the amendment repeals the 1948 act requiring the issuance of such certificates; authorizes an Osage Indian having a certificate of competency to apply to the Secretary for the revocation of such certificate; and would eliminate various blood degree distinctions in other laws relating to descent and distribution and tax exemptions. No other tribe of Indians is governed by Federal law making blood distinctions between members with respect to property ownership and this section would eliminate this differentiation for the Osage. Section 3 of the proposed amendment is similar to S. 1086.

The act of June 24, 1938 (52 Stat. 1034) provided that leases of Osage lands for gas purposes would contain provisions for conservation of gas through maximum recovery. Since the passage of that act, a number of States have recognized the need for unitization of working and royalty interests to provide for the greatest ultimate recovery of oil and gas. The need for conservation has been construed by the courts as sufficient to permit the States to enforce unitization of leasehold interests from common sources of supply. Section 4 of the proposed amendment would authorize the Secretary of the Interior to publish and enforce appropriate regulations for conservation of oil and gas production from the Osage reservation through unitization. Section 4 of the amendment is similar to S. 1087.

Under existing law (section 8 of the act of April 18, 1912, 37 Stat. 86, 88), an adult member of the Osage Tribe can dispose of his trust property by the execution of a will in accordance with the laws of the State of Oklahoma. Such a will is admitted to probate in the State courts, provided it has been approved before or after the death of the testator. Section 5 (a) of the proposed amendment amends that law to make clear that Osages 18 years and older may dispose of such property by will and to streamline the probate proceeding before the Department of the Interior and the Oklahoma district courts to eliminate protracted litigation on such probates. Section 5 (a) is similar to section 1 of 1085.

Section 3 of the act of April 18, 1912 (37 Stat. 86) establishes the legal procedure for the probate of deceased and orphaned minors, insane or other incompetent allottees of the Osage Tribe. Probate of such estates is provided for in the county courts of Oklahoma. Section 5(b) of the amendment amends that law to change the words "county court" to "district court"; to specifically state that the laws of the State of Oklahoma are applicable to all Osage Indians whether they are allotted or unallotted; and to provide that inheritance of a Osage headright or mineral interest is subject to the provisions of section 7 of the proposed amendment. Section 5(b) of the amendment is similar to section 3 of S. 1085.

Section 7 ... of February 27, 1925, (45 Stat. 1008), restricts the inheritance ... interests in the trust estate of an Osage Indian of one-half or more ... blood of the Osage Tribe to heirs of Indian blood. Section 5(c) amends this law to permit parents and legally adopted children of non-Indian blood to inherit from Osage Indians and to prevent spouses of non-Indian blood from inheriting from Osage Indians, regardless of their quantum of Indian blood. Section 5(c) of the amendment is similar to section 6 of S. 1085.

Section 5(d) of the amendment provides that, notwithstanding the provisions of subsection (a), (b), and (c) dispositions of Osage headright interests shall be subject to the provisions of section 7 of the amendment. Section 5(d) of the amendment is similar to section 6 of S. 1085.

Under current laws, an Osage Indian can only dispose of his headright or mineral interest by testamentary instrument which is approved subsequent to his death by the Secretary of the Interior. This procedure has resulted in many contests of an administrative nature followed by contests in probate courts of the State of Oklahoma, and many disputes of heirship have arisen in intestate situations. The tribe requested authority to permit members of the Osage Tribe to execute testamentary instruments in the nature of a trust which would provide the settlor with an opportunity prior to his death to firmly establish the disposition that would be made of his property. Section 6 provides this authority. Section 6 of the amendment is similar to section 2 of S. 1085.

Section 7 of the amendment is intended to provide a means of keeping the Osage headright or mineral interest in Osage Indian ownership. There is no similar provision in existing law with regard to the Osages. This section would prohibit a person of non-Osage Indian blood from receiving more than a life estate in a Osage headright interest owned by an Osage Indian, whether such interest is received by will, inter vivos trust, or Oklahoma law of intestate succession. Upon the death of such non-Osage recipient, the Osage headright would vest in the remaindermen of Osage Indian blood, or if the deceased Osage died intestate, the Osage headright would vest in his heirs of Osage Indian blood pursuant to the Oklahoma law of intestate succession. If there be no such remaindermen of Osage Indian blood or heirs of Osage Indian blood, such Osage headright would vest in the Osage tribe and the tribe would be required to pay the estate of such non-Osage recipient the market value of such headright interest. Section 7 of the amendment is similar to section 4 of S. 1085.

The act of April 12, 1924 (43 Stat. 94) authorizes the sale of Osage headright or mineral interests by individuals who are not of Indian blood, but prohibits the sale of Osage headright or mineral interests by any person of Indian blood, except in certain cases where Federal supervision of tribal groups has been terminated. Section 8(a) of the bill would permit the purchase, by the Osage Tribe of headright or mineral interests inherited by or devised to non-Indians and would help to resolve the problems created by fractionation of interests in such headrights. Section 8(a) of the amendment is similar to section 5 of S. 1085.

Section 8(b) would authorize the Osage Tribe to use tribal mineral income for the purpose of purchasing headright or mineral interests as provided in section 7 and 8(a) of the amendment. Section 8(b) is similar to section 5 of S. 1085.

Section 9 of the amendment would authorize the administrative transfer of a deceased Osage Indian's headright and other assets for which the Secretary has a trust responsibility to the heirs of legatees of the decedent in those cases where the assets are so small (less than an aggregate of $10,000 per decedent) that it is uneconomical to employ an attorney to probate or administer such interests. The provisions of the section would apply in those cases where (1) no court of competent jurisdiction has undertaken the probate of the deceased's estate, and (2) a request for administrative determination has been made to the Secretary by one or more of the heirs or legatees. Section 9 of the substitute amendment is similar to S. 1084.

Under current law (the act of June 24, 1938 (52 Stat. 1034, 1036)) the Federal Government exempts such interest owed by the estate of an Osage Indian of one-half or more Osage Indian blood, who did not have a certificate of competency, but taxes such interest if owned by the estate of an Osage Indian who had a certificate of competency. The State of Oklahoma assesses estate and inheritance taxes on an Osage headright interest owned by the estate of an Osage Indian, regardless of whether such person had received a certificate of competency. Both Federal and State governments exempt Osage Indians who do not possess certificates of competency from payment of income taxes on their Osage headright income; however, both governments levy income taxes on Osage headright income received by Osage Indians possessing certificates of competency. No tax exemption is provided under current law (and none is proposed) with respect to Osage headrights or income where headrights have passed into non-Indian, non-Osage ownership.

Section 10 of the substitute amendment would exempt an Osage Indian or his estate from payment of all estate, inheritance, and income taxes on any Osage headright or mineral interest and the income derived therefrom. Section 10 of the proposed substitute amendment is similar to S. 1089.

## SECTION BY SECTION ANALYSIS

### SECTION 1

Section 1 futher amends section 9 of the act of June 28, 1906 (34 Stat. 539, 535), relating to the establishment of the Osage Tribal Council, by providing for a method of selecting council members in the event of a common disaster and by extending the life of the council until otherwise provided by Congress.

### SECTION 2

Subsection (a) amends the act of June 24, 1938 (52 Stat. 1034, 1035) by providing that the mineral estate reserved to the Osage Tribe by the 1906 act for a term of years will vest in the tribe in perpetuity.

Subsection amends the 1938 act by providing that the trust status of allo Osage lands will be extended until otherwise provided by act of Congress.

Subsection (c) amends the 1938 act by extending the tax exemption on Osage Indian homestead allotments until otherwise determined by Congress.

SECTION 3

Subsection (a) repeals a 1948 act providing for mandatory issuance of certificates of competency to Osages of less than one-half degree of Osage blood.

Subsection (b) provides that any Osage Indian who has received a certificate of competency under certain acts of Congress may petition to have such certificate revoked by the Secretary of the Interior but that such revocation will not affect valid existing rights or reimpose any restriction against alienation of land.

Subsection (c) amends a 1925, 1929, and 1938 act of Congress relating to Osage Indians by eliminating language which distinguishes between Osage Indians of one-half or less and one-half or more degree of Osage Indian blood.

SECTION 4

Section 4 provides for the unitization of oil leases on the Osage Reservation for purposes of maximizing oil and gas production.

SECTION 5

Subsection (a) reduces from 21 to 18 years the age at which an Osage Indian may dispose of, by will, his estate for sale by a non-Indian.

Subsection (b) provides for the hypothecation of Osage tribal income to acquire Osage headright interest.

SECTION 6

Subsection (a) permits an Osage Indian of 18 years of age or over to establish an inter vivos trust of his assets under the jurisdiction of the Department of the Interior.

Subsection (b) maintains the existing restriction against alienation of such assets and tax exemptions.

SECTION 7

Section 7 prohibits a person not of Osage blood from receiving more than a life estate in an Osage headright interest owned by an Osage Indian.

SECTION 8

Subsection (a) grants the Osage Tribe the preferential right to purchase an Osage headright interest being offered Osage Indians. The power of the council to do so has been called into question by litigation filed by Osage Indians, who are not headright holders and, therefore, not entitled to participate in the election of the council. The litigation is entitled *Logan et al.* v. *Andrus et al.* (Civ. No. 77-165C.



N Kla.). In addition, the whole governmental structure of the Osage Indians is currently in conflict and the Bureau of Indian Affairs is conducting a poll of all Osage Indians to determine the wishes of the people on that subject. It is the intent of the committee that this bill not affect, in any way, the questions being litigated in the *Logan* case.

SECTION 9

Section 9 authorizes the Secretary of the Interior to administratively determine heirs or legatees of Osage estates having assets under the jurisdiction of the Department of the Interior which do not exceed an aggregate value of $10,000.

SECTION 10.

Section 10 of the substitute is identical to S. 1089. This section exempts an Osage Indian or his estate from payment of all estate, inheritance, and income taxes on any Osage headright or mineral interest and the income derived therefrom.

COST ESTIMATE—CONGRESSIONAL BUDGET OFFICE

CONGRESSIONAL BUDGET OFFICE,
U.S. CONGRESS,
*Washington, D.C., August 24, 1978.*

Hon. JAMES ABOUREZK,
*Chairman, Select Committee on Indian Affairs,*
*U.S. Senate,*
*5331 Dirksen Senate Office Building,*
*Washington, D.C.*

DEAR MR. CHAIRMAN: Pursuant to section 403 of the Congressional Budget Act of 1974, the Congressional Budget Office has reviewed S. 1081, a bill to amend the laws relating to the Osage Tribe in Oklahoma, as ordered reported by the Senate Select Committee on Indian Affairs, August 23, 1978.

The bill includes a provision which will exempt Osage Indians from the payment of all estate, inheritance and income taxes on income derived from Osage headright or mineral interests. This exemption will result in a loss of approximately $350,000 in income tax revenues in fiscal year 1979, with slight increases in the loss in succeeding years. This estimate is based on current and projected incomes of members of the Osage Tribe derived from headright and mineral interests not currently exempt from taxation (approximately 2,000 members of the tribe). Revenue losses from the estate and inheritance tax exemptions cannot be estimated on the basis of available information, but are not expected to be substantial. No other significant costs are expected to result from enactment of this bill.

Should the committee so desire, we would be pleased to provide further details on this estimate.

Sincerely,

ROBERT A. LEVINE
(For Alice M. Rivlin, Director).

## Executive Communications

The commi[illegible] [illegible]lid not receive any executive communications on S. 1081–S. 1087 and S. 1089 as introduced, nor any on the substitute amendment. The report of the Department of the Interior on the House companion measure, H.R. 11894 and H.R. 4384, as introduced is as follows:

## Department Report

The report of the Department of the Interior, dated April 19, 1978, follows:

U.S. Department of the Interior,
Office of the Secretary,
*Washington, D.C., April 19, 1978.*

Hon. Morris K. Udall,
*Chairman, Committee on Interior and Insular Affairs,*
*House of Representatives, Washington, D.C.*

Dear Mr. Chairman: This responds to your request for the views of this Department on H.R. 4384 and H.R. 11894, each of which is entitled to amend the laws relating to the Osage Tribe in Oklahoma.

We recommend enactment of H.R. 4384 and H.R. 11894, if amended as suggested below.

### H.R. 11894, Section 1

Section 1 of H.R. 11894 would establish an organization for the Osage tribal government.

As of April 22, 1977, the Osage Tribe consisted of 9,205 persons of Osage blood who are carried on the Agency census records. Of these 9,205 individuals, an estimated 7,022 have no headright in the Osage mineral estate, and under Departmental regulations (25 CFR 73.21), have no vote in tribal elections and no right to hold an elective office of the Osage Tribal Council.

Osage headright interests may be passed by inheritance from one Osage to another. The inheritance process has resulted in some persons accumulating several headright interests, others acquiring only a fractional interest, and still other persons of substantial Osage blood not acquiring any headright interest at all.

In the last few years, the Osage Nation Organization, a group comprised of persons who are one-fourth degree or more Osage Indian and certain other Osage Indians, filed suit against the Department of the Interior alleging that the Osage Tribal Council has statutory authority only for management of the Osage mineral estate and not for general government of the Osage Tribe.

A poll of all members of the Osage Tribe is to be conducted by the Bureau of Indian Affairs to determine the desire of the Osage people with regard to their form of government. Results of the poll should be known in approximately 6 months. We therefore recommend striking out this section of H.R. 11894 and deferring consideration of the organization of the Osage tribal government until that time.

### H.R. 11894, Section 2

Se[illegible] 2 of H.R. 11894 would permanently extend the Osage mineral estate and the rights of present owners to that estate. We support the extension of the estate and the rights of present owners.

The act of June 28, 1906 (34 Stat. 539) provided for the division of Osage lands in severalty, allowed the members of the tribe to select three parcels of land (one of which was to be designated as their "homestead"), and provided that Osage "homestead" lands would remain "inalienable" and "nontaxable" for a period of 25 years.

Successive acts of Congress have extended this Federal supervision over Osage land, moneys, and other properties until January 1, 1984. The purpose of subsection (b) of this section is to extend beyond January 1, 1984, the Federal trust responsibility for the Osage Tribe of Indians of Oklahoma. Such a termination of Federal responsibility is not in accord with current Federal Indian policy and is not required in the case of other tribes.

### H.R. 11894, Section 3

Subsection (a) would repeal the act of February 5, 1948 (62 Stat. 18; 25 U.S.C. 331 nt.) which now provides for the issuance of a certificate of competency to certain members of the Osage Tribe of Oklahoma and the removal of all restrictions against alienation from all properties except headright interests.

Subsection (b) would allow any Osage having a certificate of competency issued under the act of February 5, 1948 (62 Stat. 18; 25 U.S.C. 331 nt.) or certain earlier statutes to make application to the Secretary to revoke such certificate of competency and would require the Secretary to revoke such certificate, but such revocation would not affect the legality of any transactions previously made by reason of the issuance of any such certificate of competency. Restrictions against alienation of lands previously removed would not be reimposed.

Subsection (c) would amend sections 3 and 4 of the act of February 25, 1925 (43 Stat. 1008; 25 U.S.C. 331 nt.) and two other statutes by striking all references to one-half degree or more Indian blood.

Representatives of the Osage Tribe believe there should be no distinction between Osage Indians of more than one-half degree and those of less than one-half degree Indian blood. Their reasoning is that Osage Indians of less than one-half degree of Indian blood are in need of the same protection as those who possess more than one-half degree. Federal law makes no such distinction with regard to any other tribe.

### H.R. 11894, Section 4

This section is intended to expand or confirm the authority of the Osage Tribal Council. However, to clarify the provisions of the bill, we suggest amending subsections (a) and (c) of the bill by striking references to "Osage Tribal Council" and inserting in lieu thereof the "governing body of the Osage Tribe recognized by the Secretary of the Interior." The authority of the current "Osage Tribal Council" to act as more than the representative of the headright owners has been challenged.

Subsection (a) of this bill would permit the spending of any funds accruing to the Osage Tribe, other than from the Osage mineral estate or from judgments under the Indian Claims Commission Act (60 Stat. 1049), for those programs beneficial to the tribe as determined (under the above amendment) by the governing body of the Osage Tribe recognized by the Secretary of the Interior and subject to his approval.

Subsection (b) would require that in the future, any funds accruing to the Osage Tribe as a result of judgments or settlements for damage to or a taking of the tribal mineral estate shall be paid to the Secretary of the Interior for disbursement in the manner provided by section 4 of the act of June 28, 1906 (34 Stat. 539), as amended, for the disbursement of royalties and bonuses received from the leasing of minerals owned by the Osage Tribe.

Although we do not anticipate any pre-1906 claims, we believe that the exclusive interest of the headright owners should only extend to the period during which the tribe's mineral estate was subject to such interests. Therefore, we recommend amending subsection 4(b) by inserting ", which damage or taking occurred subsequent to June 28, 1906," between the words "estate" and "shall."

Subsection (c) would permit the spending of any unclaimed individual shares of Osage tribal funds restored to the Osage Tribe in accordance with the act of September 22, 1961 (75 Stat. 584; 25 U.S.C. 164, 165), for the use and benefit of the Osage tribe and its members as determined (under the above amendment) by the governing body of the Osage Tribe recognized by the Secretary and subject to his approval.

H.R. 11894, SECTION 5

This section would authorize the Secretary of the Interior, in order to conserve natural resources and to provide for the greatest recovery of oil and gas underlying the Osage mineral estate to establish rules and regulations under which oil and gas leases producing from a common source of supply may be unitized.

The section would amend section 3 of the act of June 24, 1938 (52 Stat. 1034, 1035) which cites the need for "conservation of the natural gas for its economic use, to the end that the highest percentage of ultimate recovery of both oil and gas may be secured: . . .". This provision has been construed by the courts as sufficient to permit States to enforce unitization of leasehold interests from common sources of supply. The Osage Tribe would like the Secretary to publish and enforce regulations relating to unitization.

H.R. 11894, SECTION 6

This section would benefit Osage Indians by permitting adult members to make a will and by streamlining probate proceedings before this Department and the district courts of the State of Oklahoma, thus eliminating protracted litigation.

Under current law, an Osage can dispose of his headright or mineral interest only by testamentary instrument which is approved subsequent to his death by the Secretary. This procedure has resulted in many contests of an administrative nature, followed by contests in the courts of the State of Oklahoma and many disputes of heirship have arisen in intestate situations. The present Osage Tribal Council believes it would be in the best interest of the Osage Tribe if an Osage were permitted to execute a testamentary instrument in the nature of a trust which would permit the settler, prior to his death, to firmly establish the disposition that will be made of his property.

Subsection (a) would amend section 8 of the act of April 18, 1912 (37 Stat. 86, 88) to allow any Osage Indian, 18 years or older, to dispose of his Osage headright and the remainder of his estate from which restrictions by the United States against alienation have not been removed, by the terms of a will executed in accordance with Oklahoma laws. The section further requires that the will of any Osage Indian not be admitted to probate or have any validity unless approved after the death of the testator by the Secretary of the Interior.

The Secretary would be required to conduct a hearing as to the validity of the will at the Osage Indian Agency in Pawhuska, Okla. Rules of evidence of the State of Oklahoma would govern the admissibility of evidence at such hearing. All evidence relative to the validity of the will of an Osage Indian would be submitted to the Secretary within four months after the date the petition for approval of such will is filed with the Secretary. For purposes of determining the validity of any will the Secretary would be given the same subpoena power as is vested in the courts.

The Secretary's approval of a will would entitle such will to be admitted to probate without further evidence as to its validity. Upon the Secretary's disapproval of the will, the heirs may immediately petition for letters of administration in the district court. The issuance of letters testamentary or of administration would not confer the power to sell any restricted assets by virtue of any provision in such will, to pay or satisfy legacies, nor to distribute property of the decedent until the final determination of the appeal, but all other actions taken by the district court pending said appeal would be valid and binding. Only Federal courts would have jurisdiction to hear a contest of a probate of a will that has been approved by the Secretary.

Subsection (b) would amend section 3 of the act of April 18, 1912 (37 Stat. 86) to establish a procedure for disposing of the properties of deceased and of orphan, minor, insane, or other incompetent Osage Indians, such incompetency being determined by the laws of the State of Oklahoma.

Subsection (c) would amend section 7 of the act of February 27, 1925 (43 Stat. 1008, 10011), as amended (25 U.S.C. 331 nt.) to prohibit any person other than heirs of Indian blood and children legally adopted by a court of competent jurisdiction and parents, regardless of their Indian blood, from inheriting from Osage Indians any right, title, or interest to any restricted land, moneys, or Osage headright except as provided by section 4 of this bill.

H.R. 11894, SECTION 7

Subsection (a) of this section would allow any adult Osage Indian, with the approval of the Secretary, to establish an inter vivos trust covering his headright or mineral interest, surplus funds, invested

surplus fun[illegible] egated trust funds, and allotted or inherited land, naming the Se[illegible] y of the Interior as trustee.

Subsection (b) would require that property placed in trust be subject to the same restrictions against alienation that presently apply to lands and property of members of the Osage Tribe, and that the execution of such instrument not in any way affect the tax-exempt status of said property.

H.R. 11894, SECTION 8

This section is intended to provide a means of keeping the Osage headright or mineral interest in Osage Indian ownership. There is no similar provision in existing law with regard to the Osages.

This section would prohibit a person of non-Osage Indian blood from receiving more than a life estate in an Osage headright interest owned by an Osage Indian, whether such interest is received by will, inter vivos trust, or Oklahoma law of interstate succession. Upon the death of such non-Osage recipient, the Osage headright would vest in the remaindermen of Osage Indian blood designated by the deceased Osage Indian's will or inter vivos trust. If such will or inter vivos trust does not designate remaindermen of Osage Indian blood or if the deceased Osage died intestate, the Osage headright would be vested in his heirs of Osage Indian blood pursuant to the Oklahoma law of intestate succession. If there be no such remaindermen of Osage Indian blood nor heir of Osage Indian blood, such Osage headright would vest in the Osage Tribe, and the tribe would be required to pay the estate of such non-Osage recipient the market value of such Osage headright interest.

H.R. 11894, SECTION 9

Subsection (a) of this section would permit the sale, assignment, or transfer of any individual right to share in the Osage mineral estate owned by a person not of Indian blood, with the approval of the Secretary and not otherwise. The sale of any such interest would be subject to the right of the Osage Tribe to purchase it within 45 days at the highest price offered the owner.

Subsection (b) would permit the Secretary, at the request of the governing body of the Osage Tribe, and prior to the time the tribal mineral income is segregated for distribution to the individual headright owners, to direct the use of any such income for the purchase of Osage headright interests offered for sale to the Osage Tribe pursuant to this section or vested in the Osage Tribe pursuant to section 8.

H.R. 11894, SECTION 10

The purpose of this section is to authorize the administrative transfer of a deceased Osage Indian's headright and other assets for which the Secretary has a trust responsibility to the heirs or legatees of the decedent in those cases where assets are so small (less than an aggregate of $10,000 per decedent) that it is uneconomical to employ an attorney to probate or administer such interests. The provisions of the bill would apply in cases where (1) no court of competent jurisdiction has undertaken the probate of the deceased's estate, and (2) a request for [illegible] administrative determination has been made to the Secretary by one [illegible] ore of the heirs or legatees.

There is no current provision of law to accomplish the purpose of this section.

H.R. 4384

H.R. 4384 would exempt an Osage Indian or his estate from payment of all estate, inheritance, and income taxes on any Osage headright or mineral interest and the income derived therefrom.

Under current law (the act of June 24, 1938 (52 Stat. 1034, 1036)) the Federal Government exempts such interest owed by the estate of an Osage Indian of one-half or more Osage Indian blood, who did not have a certificate of competency, but taxes such interest if owned by the estate of an Osage Indian who had a certificate of competency. The State of Oklahoma assesses estate and inheritance taxes on an Osage headright interest owned by the estate of an Osage Indian, regardless of whether such person had received a certificate of competency. Both Federal and State governments exempt Osage Indians who do not possess certificates of competency from payment of income taxes on their Osage headright income; however, both governments levy income taxes on Osage headright income received by Osage Indians possessing certificates of competency. No tax exemption is provided under current law (and none is proposed) with respect to Osage headrights or income where headrights have passed into non-Indian, non-Osage ownership.

The Office of Management and Budget has advised that there is no objection to the presentation of this report from the standpoint of the administration's program.

Sincerely,

JAMES A. JOSEPH,
*Acting Secretary.*

CHANGES IN EXISTING LAW

ACT OF JUNE 27, 1906 (34 STAT. 539), AS AMENDED (45 STAT. 1478, 1481, AND 71 STAT. 471)

* * * * * * *

[SEC. 9. That there shall be a quadrennial election of officers of the Osage Tribe as follows: A principal chief, an assistant principal chief, and eight members of the Osage tribal council, to succeed the officers elected in the year 1928, said officers to be elected at a general election to be held in the town of Pawhuska, Oklahoma, on the first Monday in June, 1930, and on the first Monday in June each four years thereafter, in the manner to be prescribed by the Commissioner of Indian Affairs, and said officers shall be elected for a period of four years commencing on the 1st day of July following said elections, and in case of vacancy in the office of principal chief or other such officer by death, resignation, or otherwise, the vacancies of the Osage tribal council shall be filled in a manner to be prescribed by the Osage tribal council, and the Secretary of the Interior is hereby authorized to remove from the council any member or members thereof for good cause, to be by him determined, after the party involved has had due notice and oppor-

tunity to a[illegible] and defend himself, and said tribal government so constituted s[illegible] [illegible]ntinue in full force and effect to January 1, 1984.]

*Sec. 9. There [illegible]ll be a quadrennial election of the officers of the Osage Tribe as follows: A principal chief, an assistant principal chief, and eight members of the Osage Tribal Council shall be elected to succeed the officers elected in the year 1974 at a general election to be held in the town of Pawhuska, Oklahoma, on the first Monday in June 1978, and on the first Monday in June of each fourth year thereafter, in a manner to be prescribed by the Secretary of the Interior, and said officers shall be elected for a period of four years commencing on the first day of July following the election. In case of a vacancy in the office of principal chief or other officer by death, resignation, or otherwise, the vacancy shall be filled in a manner to be prescribed by the Osage Tribal Council. In the event of a common disaster and a quorum of five of the Osage Tribal Council does not survive, the Secretary shall appoint a principal chief and/or the number of councilmen, necessary to complete a total of eight, to serve until the next quadrennial election. The Secretary is hereby authorized to remove from the council any member or members for good cause, to be by him determined, after the party involved has had due notice and opportunity to appear and defend himself. The tribal government so constituted shall continue in full force and effect until January 1, 1984, and thereafter until otherwise provided by Act of Congress.*

ACT OF APRIL 18, 1912 (37 STAT. 86)

* * * * * * *

[SEC. 3. That the property of deceased and of orphan minor, insane, or other incompetent allottees of the Osage Tribe, such incompetency being determined by the laws of the State of Oklahoma, which are hereby extended for such purpose to the allottees of said tribe, shall, in probate matters, be subject to the jurisdiction of the county courts of the State of Oklahoma, but a copy of all papers filed in the county court shall be served on the superintendent of the Osage Agency at the time of filing, and said superintendent is authorized, whenever the interests of the allottee require, to appear in the county court for the protection of the interests of the allottee. The superintendent of the Osage Agency or the Secretary of the Interior, whenever he deems the same necessary, may investigate the conduct of executors, administrators, and guardians or other persons having in charge the estate of any deceased allottee or of minors or persons incompetent under the laws of Oklahoma, and whenever he shall be of opinion that the estate is in any manner being dissipated or wasted or is being permitted to deteriorate in value by reason of the negligence, carelessness, or incompetency of the guardian or other person in charge of the estate, the superintendent of the Osage Agency or the Secretary of the Interior or his representative shall have power, and it shall be his duty, to report said matter to the county court and take the necessary steps to have such case fully investigated, and also to prosecute any remedy, either civil or criminal, as the exigencies of the case and the preservation and protection of the interests of the allottee or his estate may require, the costs and expenses of the civil proceedings to be a charge upon the estate of the allottee or upon the executor, administrator, guardian, or other person in charge of the estate of the[illegible] [illegible]e and his surety, as the county court shall determine. Every [illegible]l of the executor, administrator, guardian, or other person in charge of the estate of any Osage allottee shall be subject to the provisions of this section and shall contain therein a reference hereto: *Provided*, That no guardian shall be appointed for a minor whose parents are living, unless the estate of said minor is being wasted or misused by such parents: *Provided further*, That no land shall be sold or alienated under the provisions of this section without the approval of the Secretary of the Interior.]

*SEC. 3. That the property of deceased and of orphan minor, insane, or other incompetent Osage Indians, such incompetency being determined by the laws of the State of Oklahoma which are hereby extended for such purpose to all Osage Indians, shall, in probate matters, be subject to the District Court of Oklahoma having jurisdiction. A copy of all papers filed in the district court shall be served on the Superindentent of the Osage Agency at the time of filing, and said Superintendent is authorized, whenever the protection of the interest of the Osage Indian requires, to appear in the district court. The Superintendent of the Osage Agency or the Secretary of the Interior, whenever he deems the same necessary, may investigate the conduct of executors, administrators, guardians, or other persons having charge of the estate of any minor, incompetent, or deceased Osage Indian. Whenever he shall be of the opinion that the estate is in any manner being dissipated, wasted, or permitted to deteriorate in value by reason of the negligence, carelessness, or incompetency of the executor, administrator, guardian, or other person in charge of the estate, the Superindentent of the Osage Agency or the Secretary is authorized, and it shall be his duty, to report said matter to the district court, take the necessary steps to have such case fully investigated, and prosecute any remedy, either civil or criminal, as the exigencies of the case may require. The costs and expenses of any civil proceedings shall be a charge upon the estate of the Osage Indian or upon the executor, administrator, guardian, or other person in charge of the estate of the Osage Indian and his surety, as the district court shall determine. Every bond of the executor, administrator, guardian, or other person in charge of the estate of any Osage Indian shall be subject to the provisions of this section and shall contain therein a reference hereto: Provided, That no guardian shall be appointed for a minor whose parents are living unless the estate of said minor is being wasted or misused by such parents: Provided further, That no land shall be sold or alienated under the provisions of this section without approval of the Secretary.".*

[SEC. 8. That any adult member of the Osage Tribe of Indians not mentally incompetent may dispose of any or all of his estate, real, personal, or mixed, including trust funds, from which restrictions as to alienation have not been removed, by will, in accordance with the laws of the State of Oklahoma: *Provided*, That no such will be admitted to probate or have any validity unless approved before or after the death of the testator by the Secretary of the Interior.]

*SEC. 8. Any person of Osage Indian blood, eighteen years of age or older, may dispose of his Osage headright or mineral interest and the remainder of his estate (real, person, and mixed, including trust funds) from which restrictions against alienation have not been removed by will executed in accordance with the laws of the State of Oklahoma: Provided, That the will of any Osage Indian shall not be admitted to probate or have*

*any validity ... pproved after the death of the testator by the Secretary of the Interior ... Secretary shall conduct a hearing as to the validity of such will at the ... ge Indian Agency in Pawhuska, Oklahoma. Notice of such hearing shall be given by publication at least ten days before the hearing in a newspaper of general circulation in Osage County, Oklahoma, and by mailing notice of such hearing to the last known address of all known heirs, legatees, and devisees. The cost of publication shall be borne by the estate. The rules of evidence of the State of Oklahoma shall govern the admissibility of evidence at such hearing. All evidence relative to the validity of the will of an Osage Indian shall be submitted to the Secretary within one hundred and twenty days after the date of the petition for approval of such will is filed with the Secretary, unless for good cause shown the Secretary extends the time: Provided, That such time shall not be extended beyond six months from the date of the first hearing. For purposes of determining the validity of any will, the Secretary is hereby granted the same subpena power as is vested in the courts. All costs of obtaining witnesses and evidence before the Secretary shall be borne by the party producing such witnesses or evidence, subject to such costs being taxed to the estate in the event that the District Court of the State of Oklahoma having jurisdiction should determine such costs beneficial to the whole estate. Notwithstanding any appeal from the decision of the Secretary approval of such will by the Secretary shall entitle it to be admitted to probate without further evidence as to its validity or, upon disapproval thereof, the heirs may immediately petition for letters of administration in the district court. No appeal from the order of the Secretary approving or disapproving any will shall stay the issuance of letters testamentary or of administration: Provided, That such letters shall not confer power to sell any restricted assets by virtue of any provision in such will, pay or satisfy legacies, or distribute property of the decedent to the heirs or beneficiaries until the final determination of the appeal, but all other action taken by the district court pending said appeal shall be valid and binding. No court except a Federal court shall have jurisdiction to hear a contest of a probate of a will that has been approved by the Secretary. Such appeals shall be on the record made before the Secretary and his decisions shall be binding and shall not be reversed unless the same is against the clear weight of the evidence or erroneous in law.*

ACT OF FEBRUARY 27, 1925 (43 STAT. 1008), AS AMENDED (64 STAT. 572)

* * * * * * *

SEC. 3. Lands devised to members of the Osage Tribe [of one-half or more Indian blood or] who do not have certificates of competency, under wills approved by the Secretary of the Interior, and lands inherited by such Indians, shall be inalienable unless such lands be conveyed with the approval of the Secretary of the Interior. Property of Osage Indians not having certificates of competency purchased as hereinbefore set forth shall not be subject to the lien of any debt, claim, or judgment except taxes, or be subject to alienation, without approval of the Secretary of the Interior.

SEC. 4. Whenever the Secretary of the Interior shall find that any member of the Osage Tribe [of more than one-half Indian blood] to whom has been granted a certificate of competency, is squandering ... using his or her funds, he may revoke such certificate of co... p... after notice and hearing in accordance with such rules and reg...ons as he may prescribe, and thereafter the income of such member shall be subject to supervision and investment as herein provided for members not having certificates of competency to the same extent as if a certificate of competency had never been granted: *Provided*, That all just indebtedness of such member existing at the time his certificate of competency is revoked shall be paid by the Secretary of the Interior, or his authorized representative, out of the income of such member, in addition to the quarterly income hereinbefore provided for: *And provided further*, That such revocation or cancellation of any certificate of competency shall not affect the legality of any transactions theretofore made by reason of the issuance of any certificate of competency.

* * * * * * *

[SEC. 7. Hereafter none but heirs of Indian blood shall inherit from those who are of one-half or more Indian blood of the Osage Tribe of Indians any right, title, or interest to any restricted lands, moneys, or mineral interests of the Osage Tribe: *Provided*, That (except in cases where a person claiming as such heir is a party to judicial proceedings pending on the date of the enactment of this proviso in which the claimant has filed a formal pleading alleging Indian blood) no claim of heirship shall be recognized unless the claimant shall establish that he is a citizen of the United States and is enrolled on a membership, census, or other roll prepared under the direction of the Secretary of the Interior, or has a lineal Indian ancestor so enrolled. *Provided, further*, That this section shall not apply to spouses under marriages existing on February 27, 1925.]

SEC. 7. *Hereafter none but heirs of Indian blood and children legally adopted by a court of competent jurisdiction and parents, Indian or non-Indian, shall inherit from Osage Indians any right, title, or interest to any restricted land, moneys, or Osages headright or mineral interest.*

ACT OF MARCH 2, 1929 (45 STAT. 1478, 1480)

* * * * * * *

SEC. 4. That section 2 of the Act of Congress approved February 27, 1925 (Forty-third Statutes at Large, page 1011), being an Act to amend the Act of Congress of March 3, 1921 (Forty-first Statutes at Large, page 1249), be, and the same is hereby, amended to read as follows:

"Upon the death of an Osage Indian [of one-half or more Indian blood] who does not have a certificate of competency, his or her moneys and funds and other property accrued and accruing to his or her credit and which have heretofore been subject to supervision as provided by law may be paid to the administrator or executor of the estate of such deceased Indian or direct to his heirs or devisees, or may be retained by the Secretary of the Interior in the discretion of the Secretary of the Interior, under regulations to be promulgated by him: *Provided*, That the Secretary of the Interior shall pay to administrators and executors of the estates of such deceased Osage Indians a sufficient amount of money out of such estates to pay all law-

ful indebt[illegible] and costs and expenses of administration when approved by [illegible] nd, out of the shares belonging to heirs or devisees, above referre[illegible] he shall pay the costs and expenses of such heirs or devisees, including attorney fees, when approved by him, in the determination of heirs or contest of wills. Upon the death of any Osage Indian of less than one-half of Osage Indian blood or upon the death of an Osage Indian who has a certificate of competency, his moneys and funds and other property accrued and accruing to his credit shall be paid and delivered to the administrator or executor of his estate to be administered upon according to the laws of the State of Oklahoma: *Provided*, That upon the settlement of such estate any funds or property subject to the control or supervision of the Secretary of the Interior on the date of the approval of this Act, which have been inherited by or devised to any adult or minor heir or devisee [of one-half or more Osage Indian blood] who does not have a certificate of competency, and which have been paid or delivered by the Secretary of the Interior to the administrator or executor shall be paid or delivered be such administrator or executor to the Secretary of the Interior for the benefit of such Indian and shall be subject to the supervision of the Secretary as provided by law."

ACT OF JUNE 24, 1938 (52 STAT. 1034), AS AMENDED

* * * * * * *

That hereafter the Secretary of the Interior shall cause to be paid to each adult member of the Osage Tribe of Indians not having a certificate of competency his or her pro rata share, either as a member of the tribe or heir or devisee of a deceased member, of the interest on trust funds, the bonus received from the sale of oil or gas leases, and the royalties therefrom received during each fiscal quarter, not to exceed $1,000 per quarter; and if such adult member has a legal guardian, his current income not to exceed $1,000 per quarter may be paid to such legal guardian in the discretion of the Secretary of the Interior: *Provided*, That when an adult restricted Indian has surplus funds in excess of $10,000 there shall be paid such Indian sufficient funds from his accumulated surplus in addition to his current income to aggregate $1,000 quarterly; but in the event of any adult restricted Indian has surplus funds of less than $10,000, such Indian shall receive quarterly only his current income not to exceed $1,000 per quarter; *Provided further*, That the Secretary of the Interior is hereby authorized to and may in his discretion pay out of any money heretofore accrued or hereafter accruing to the credit of any person of Osage Indian blood who does not have a certificate of competency [or who is one-half or more Osage Indian blood], all of said person's taxes of every kind and character, for which such person is now or hereafter may be liable, before paying to or for such person any funds as required by law: *And provided further*, That upon application and consent of any restricted Osage Indian the Secretary of the Interior may cause payment to be made of additional funds from the accumulated surplus to the credit of any Osage Indian under such rules and regulations as he may prescribe. Rentals due such adult members from their l[illegible]d their minor children's lands and all income from such adults inv[illegible]nts, including interest on deposits to their credit, shall be paid [illegible]hem in addition to the current allowances above provided.

Whenever minor members of the Osage Tribe of Indians have funds or property subject to the control or supervision of the Secretary of the Interior, the said Secretary may in his discretion pay or cause to be paid to the parents, legal guardian, or any person, school, or institution having actual custody of such minors, such amounts out of the income or funds of the said minors as he deems necessary, and when such a minor is eighteen years of age or over, the Secretary of the Interior may in his discretion cause disbursement of funds for support and maintenance or other specific purposes to be made direct to such minor.

* * * * * * *

SEC. 3. That section 1 of the Act of Congress of March 2, 1929 (45 Stat. L. 1478), relating to the Osage Indians of Oklahoma, be, and the same is hereby, amended to read as follows:

"That all that part of the Act of June 28, 1906 (34 Stat. L. 539), entitled 'An Act for the division of the lands and funds of the Osage Indians in Oklahoma, and for other purposes', which reserves to the Osage Tribe the oil, gas, coal, or other minerals, covered by the lands for the selection and division of which provision is made in that Act, is hereby amended so that the oil, gas, coal, or other minerals, covered by said lands are reserved to the Osage Tribe, [until the 8th day of April 1983, and thereafter until otherwise provided by Act of Congress] *in perpetuity*, and all royalties and bonuses arising therefrom shall belong to the Osage Tribe of Indians, and shall be disbursed to members of the Osage Tribe or their heirs or assigns as now provided by law, after reserving such amounts as are now or may hereafter be authorized by Congress for specific purposes.

"The lands, moneys, and other properties now or hereafter held in trust or under the supervision of the United States for the Osage Tribe of Indians, the members thereof, or their heirs and assigns, shall continue subject to such trusts and supervision until January 1, 1984, [unless otherwise provided by Act of Congress.] *and thereafter until other provided by Congress*.

"The Secretary of the Interior and the Osage Tribal Council are hereby authorized and directed to offer for lease for oil, gas, and other mining purposes any unleased portion of said land in such quantities and at such times as may be deemed for the best interest of the Osage Tribe of Indians: *Provided*, That not less than twenty-five thousand acres shall be offered for lease for oil- and gas-mining purposes during any one year: *Provided further*, That as to all lands hereafter leased, the regulations governing same and the leases issued thereon shall contain appropriate provisions for the conservation of the natural gas for its economic use, to the end that the highest percentage of ultimate recovery of both oil and gas may be secured: *Provided, however*, That nothing herein contained shall be construed as affecting any valid existing lease for oil or gas or other minerals, but all such leases shall continue as long as gas, oil, or other minerals are found in paying quantities.

"Hom[illegible] allotments of Osage Indians not having a certificate of competen[illegible] [illegible]all remain exempt from taxation while the title remains in the original allottee [of one-half or more of Osage Indian blood] and in his unallotted heirs or devisees [of one-half or more of Osage Indian blood] until [January 1, 1984] *January 1, 1984 and thereafter until otherwise provided by Congress: Provided*, That the tax-exempt land of any such Indian allottee, heir, or devisee shall not at any time exceed one hundred and sixty acres."

ACT OF FEBRUARY 5, 1948 (62 STAT. 18)

[That the Secretary of the Interior shall issue a certificate of competency to each member of the Osage Tribe of less than one-half Indian blood heretofore or hereafter attaining the age of twenty-one; and shall thereupon pay and deliver to such member, or to his legal guardian if such member has been declared incompetent by a court of competent jurisdiction, all money, property, and funds theretofore accrued or hereafter accruing to the individual credit of such member; and all payments to the legal guardian of such member may be expended without the approval of the superintendent of the Osage Agency: *Provided*, That all restrictions against alienation of the property of every kind and character, except headright shares or interests in the Osage tribal mineral estate, of members of the Osage Tribe who now have, or may hereafter receive, a certificate of competency, are hereby removed.]

Calendar No. 10[illegible]

| | | |
|---|---|---|
| CONGRESS<br>*[illegible]d Session* | SENATE | REPO[illegible]<br>No. 95-1158 |

# AMENDING THE ACT OF DECEMBER 22, 1974 (88 STAT. 1712) RELATING TO THE NAVAJO AND HOPI INDIAN RELOCATION COMMISSION

AUGUST 25 (legislative day, AUGUST 16), 1978.—Ordered to be printed

Mr. DECONCINI (for Mr. ABOUREZK), from the Select Committee on Indian Affairs, submitted the following

## REPORT

[To accompany H.R. 11092]

The Select Committee on Indian Affairs, to which was referred the bill (H.R. 11092) to increase the authorization of appropriations under the act of December 22, 1974 (88 Stat. 1712), having considered the same, reports favorably thereon with an amendment, and an amendment to the title, and recommends that the bill as amended do pass.

The amendments are as follows:

Strike all after the enacting clause and insert the following:

That this Act may be cited as the "Navajo and Hopi Indian Relocation Commission Amendments of 1978".

SEC. 2. Section 12(b) of the Act of December 22, 1974 (88 Stat. 1712, 1716) is amended by inserting before the period at the end of the sentence the following:

": *Provided*, That effective March 1, 1979, no person who is serving in an elected Federal, State, or local public office shall be eligible to serve or continue to serve as a member of the Commission".

SEC. 3. The first sentence of Section 12(e) of the Act of December 22, 1974 (88 Stat. 1712, 1717) is amended by inserting before the period at the end thereof the following:

": *Provided*, That effective October 1, 1978, no such member shall be paid more than $28,000 during any fiscal year".

SEC. 4. Section 13(c)(5) of the Act of December 22, 1974 (88 Stat. 1712, 1718) is amended by striking out "thirty" and inserting in lieu thereof "one hundred and twenty".

SEC. 5. (a) Section 25(a)(5) of the Act of December 22, 1974 (88 Stat. 1712, 1723) is amended by striking out "$500,000" and inserting in lieu thereof "$1,000,000".

(b) The Navajo and Hopi Indian Relocation Commission is authorized, subject to the approval of the Committees on Appropriations of the House of Representatives and the Senate, to utilize not to exceed $400,000 of the appropriations otherwise available to them for the fiscal year ending September 30, 1978, for the administration and operation of the Commission under the Act of December 22, 1974 (88 Stat. 1712).