3-23-99
Vol. 64 No. 55
Pages 13881-14096

federal register

Tuesday
March 23, 1999

## PART 162—LEASING AND PERMITTING

23. The authority for part 162 continues to read as follows:

**Authority:** 5 U.S.C. 301, R.S. 463 and 465; 25 U.S.C. 2 and 9. Interpret or apply Sec. 3, 26 Stat. 795, Sec. 1, 28 Stat. 305, secs. 1, 2, 31 Stat. 229, 246, secs. 7, 12, 34 Stat. 545, 34 Stat. 1015, 1034, 35 Stat. 70, 95, 97, Sec. 4, 36 Stat. 856, Sec. 1, 39 Stat. 128, 41 Stat. 415, as amended, 751, 1232, Sec. 17, 43 Stat. 636, 641, 44 Stat. 658, as amended, 894, 1365, as amended, 47 Stat. 1417, Sec. 17, 48 Stat. 984, 988, 49 Stat. 115, 1135, Sec. 55, 49 Stat. 781, Sec. 3, 49 Stat. 1967, 54 Stat. 745, 1057, 60 Stat. 308, secs. 1, 2, 6, 64 Stat. 470, 69 Stat. 539, 540, 72 Stat. 968; 25 U.S.C. 380, 393, 393a, 394, 395, 397, 402, 402a, 403, 403a, 403b, 403c, 413, 415, 415a, 415b, 415c, 415d, 477, 635.

### § 162.13 [Amended]

24. In § 162.13(a), "Except as provided in part 174 of this chapter, any lease covering" is revised to read "Any lease covering."

## PART 226—LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING

25. The authority for part 226 continues to read as follows:

**Authority:** Sec. 3, 34 Stat. 543; secs. 1, 2, 45 Stat. 1478; sec. 2(a), 92 Stat. 1660.

### § 226.21 [Amended]

26. In § 226.21, the second sentence of paragraph (f) is revised to read as follows:

### § 226.21 Procedure for settlement of damages claimed.

* * * * *

(f) * * * The decision shall be in writing and shall be served forthwith upon the parties in interest.* * *

* * * * *

### § 226.25 [Amended]

27. In § 226.25, paragraph (b) is revised to read as follows:

### § 226.25 Gas well drilled by oil lessees and vice versa.

* * * * *

(b) Oil well to be turned over to oil lessee. If the gas lessee drills an oil well, he/she must immediately, without removing from the well any of the casing or other equipment, notify the oil lessee and the superintendent.

(1) If the oil lessee does not, within 45 days after receipt of notice and cost of drilling, elect to take over the well, he/she must immediately notify the gas lessee. From that point, the superintendent must approve the disposition of the well, and any gas produced from it.

(2) If the oil lessee chooses to take over the well, he/she must pay to the gas lessee:

(i) The cost of drilling the well, including all damages paid; and

(ii) The cost in place of casing and other equipment.

(3) If the oil lessee and the gas lessee cannot agree on the cost of the well, the superintendent will apportion the cost between the oil and gas lessees. If the lessees do not accept the apportionment, the oil or gas lessee who drilled the well must plug the well.

* * * * *

## PART 256—HOUSING IMPROVEMENT PROGRAM

28. The authority for part 256 continues to read as follows:

**Authority:** 42 Stat. 208. (25 U.S.C. 13).

### § 256.2 [Amended]

29. In § 256.2, the definition of "Service housing office is removed," the definition of "Servicing housing office" is added, and the definition of "Standard Housing" is revised to read as follows:

### § 256.2 Definitions.

* * * * *

*Servicing housing office* means the tribal housing office or bureau housing assistance office administering the Housing Improvement Program in the service area in which the applicant resides.

*Standard Housing* means a dwelling that is decent, safe, and sanitary.

(1) Except as provided in paragraph (2) of this definition, standard housing must meet each of the following conditions:

(i) General construction must conform to applicable tribal, county, State, or national codes and to appropriate building standards for the region;

(ii) The heating system must have the capacity to maintain a minimum temperature of 70 degrees in the dwelling during the coldest weather in the area;

(iii) The heating system must be safe to operate and maintain and deliver a uniform heat distribution;

(iv) The plumbing system must include a properly installed system of piping and fixtures;

(v) The electrical system must include wiring and equipment properly installed to safely supply electrical energy for lighting and appliance operation;

(vi) Occupants per dwelling must not exceed these limits:

(A) Two bedroom dwelling: Up to four persons;

(B) Three-bedroom dwelling: Up to seven persons;

(C) Four-bedroom dwelling: Adequate for all but the very largest families;

(vii) The first bedroom must have at least 120 sq. ft. of floor space and additional bedrooms have at least 100 sq. ft. of floor space each;

(viii) The house site must provide economical access to utilities and must be easy to enter and leave; and

(ix) Aesthetics and access to school bus routes must be considered.

(2) The following exceptions apply to the standards in paragraph (1) of this definition:

(i) If access to a particular utility is not available and there is no prospect of access becoming available, then the standard relating to that utility does not apply; and

(ii) In regions of severe climate, the size of the house may be reduced to meet the region's applicable building standards.

* * * * *

30. In § 256.6, paragraph (e) is revised to read as follows:

### § 256.6 Am I eligible for the Housing Improvement Program?

* * * * *

(e) You meet the ownership requirements for the assistance needed, as defined in § 256.8, § 256.9, or § 256.10;

* * * * *

## PART 273—EDUCATION CONTRACTS UNDER JOHNSON-O'MALLEY ACT

31. The authority for part 273 continues to read as follows:

**Authority:** Secs. 201–203, Pub. L. 93–638, 88 Stat. 2203, 2213–2214 (25 U.S.C. 455–457), unless otherwise noted.

### § 273.1 [Amended]

32. In § 273.1(c), the words "part 271" are revised to read "part 900."

## PART 275—STAFFING

33. The authority for part 275 continues to read as follows:

**Authority:** Sec. 502, Pub. L. 91–648, 84 Stat. 1909, 1925 (42 U.S.C. 4762); Sec. 105, Pub. L. 93–638, 88 Stat. 2203, 2208–2210 (25 U.S.C. 450i); 26 U.S.C. 48.

### § 275.3 [Amended]

34. In § 275.3(b), the words "part 271" are revised to read "part 900."

## PART 276—UNIFORM ADMINISTRATIVE REQUIREMENTS FOR GRANTS

35. The authority for part 276 continues to read as follows:

HeinOnline -- 64 Fed. Reg. 13896 1999

# federal register

April 8, 1974—Pages 12721-12848

MONDAY, APRIL 8, 1974

WASHINGTON, D.C.

Volume 39 ■ Number 68

Pages 12721–12848

PART I

## HIGHLIGHTS OF THIS ISSUE

This listing does not affect the legal status of any document published in this issue. Detailed table of contents appears inside.

LEAD-BASED PAINT—HEW requests information; hearing 5-20-74 ........ 12774

MEDICARE—HEW proposes limitation on liability; comments 5-8-74 ........ 12763

SUPPLEMENTAL SECURITY INCOME—HEW rules on verification of age; effective 4-8-74 ........ 12731

COMMUNITY FACILITIES—USDA rules on loans; effective 4-8-74 ........ 12728

NET WEIGHT LABELING—USDA extends comment period; comments by 5-31-74 ........ 12763

ENVIRONMENTAL IMPACT STATEMENTS—DoD rules on policy, preparation, and coordination; effective 4-15-74 ........ 12737

BIOMEDICAL RADIO TELEMETERING—FCC permits use of Band 38-41 MHz; effective 5-14-74 ........ 12748

PRIME TIME ACCESS RULE—FCC extends filing period for oppositions to petitions for reconsideration; oppositions by 4-3-74 and replies by 4-10-74 ........ 12748

ST. LAWRENCE SEAWAY—DoT prescribes penalties for rule violators; effective 4-1-74 ........ 12746

(Continued inside)

### PART II:

NONFERROUS METALS MANUFACTURING POINT SOURCE CATEGORY—

EPA rules on effluent limitations guidelines; effective 6-7-74 ........ 12822

EPA proposal on effluent limitations guidelines; comments by 5-8-74 ........ 12829

### PART III:

FERTILIZER MANUFACTURING POINT SOURCE CATEGORY—

EPA rules on effluent guidelines and standards; effective 6-7-74 ........ 12832

EPA proposal on effluent limitations guidelines; comments by 5-8-74 ........ 12842

### PART IV:

PROPANE—FEO proposal on allocation; comments by 4-15-74 ........ 12845

No. 68—Pt. I——1

# Proposed Rules

This section of the FEDERAL REGISTER contains notices to the public of the proposed issuance of rules and regulations. The purpose of these notices is to give interested persons an opportunity to participate in the rulemaking prior to the adoption of the final rules.

## DEPARTMENT OF THE INTERIOR

Bureau of Indian Affairs

[25 CFR Part 183]

### LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING

Leasing Procedures and Operations

APRIL 1, 1974.

This notice is published in exercise of authority delegated by the Secretary of the Interior to the Commissioner of Indian Affairs by 230 DM 2 (32 FR 13938).

Notice is hereby given that it is proposed to completely revise Part 183 of Subchapter Q, Chapter I, Title 25 of the Code of Federal Regulations. This revision is proposed pursuant to the authority contained in section 3 of the Act of June 28, 1906 (34 Stat. 539, 543). The purpose of the complete revision is to improve the management of the Osage oil and gas mineral estate.

It is the policy of the Department of the Interior, whenever practicable, to afford the public an opportunity to participate in the rulemaking process. Accordingly, interested persons may submit written comments, suggestions, or objections with respect to the proposed revision to the Commissioner of Indian Affairs, Bureau of Indian Affairs, Washington, D.C. 20245, on or before May 8, 1974.

It is proposed to revise Part 183, Subchapter Q, Chapter I, Title 25 of the Code of Federal Regulations to read as follows:

### PART 183—LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING


Sec.
183.1 Definitions.

LEASING PROCEDURE, RENTAL AND ROYALTY

183.2 Sale of leases.
183.3 Surrender of lease.
183.4 Form of payment.
183.5 Leases subject to current regulations.
183.6 Bonds.
183.7 Provisions of forms made a part of the regulations.
183.8 Corporation and corporate information.
183.9 Rental and drilling obligations.
183.10 Term of lease.
183.11 Royalty payments.
183.12 Government reserves right to purchase oil.
183.13 Time of royalty payments and reports.
183.14 Contracts and division orders.
183.15 Unit leases, assignments and related instruments.

OPERATIONS

183.16 Commencement of operations.
183.17 How to acquire permission to begin operations on a restricted homestead allotment.
183.18 Information to be given surface owners prior to commencement of drilling operations.
183.19 Use of surface of land.
183.20 Settlement of damages claimed.
183.21 Procedure for settlement of damage claimed.
183.22 Prohibition of pollution.
183.23 Easements for wells off leased premises.
183.24 Lessee's use of water.
183.25 Gas well drilled by oil lessees and vice versa.
183.26 Determining cost of well.
183.27 Gas for operating purposes and tribal use.

CESSATION OF OPERATORS

183.28 Shutdown, abandonment and plugging of wells.
183.29 Disposition of casings and other improvements.

REQUIREMENTS OF LESSEES

183.30 Lessees subject to Superintendent's orders; books and records open to inspection.
183.31 Lessee's process agents.
183.32 Well records and reports.
183.33 Line drilling.
183.34 Wells and tank batteries to be marked.
183.35 Formations to be protected.
183.36 Control devices.
183.37 Waste of oil and gas.
183.38 Measuring and storing oil.
183.39 Measurement of gas.
183.40 Use of gas for lifting oil.
183.41 Accidents to be reported.

PENALTIES

183.42 Penalty for violation of lease terms.
183.43 Penalties for violation of certain operating regulations.

APPEALS AND NOTICES

183.44 Hearings and appeals.
183.45 Notices.

EFFECT OF REGULATIONS

183.46 Effect of regulations on leases.


AUTHORITY: Sec. 3, 34 Stat. 543. Interpret or apply secs. 1, 2, 45 Stat. 1478, 1479, unless otherwise noted.

#### § 183.1 Definitions.

As used in this Part 183, terms shall have the meanings set forth in this section.

(a) "Secretary" means the Secretary of the Interior or his authorized representative acting under delegated authority.

(b) "Osage Tribal Council" means the duly elected governing body of the Osage Nation or Tribe of Indians of Oklahoma vested with authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(c) "Superintendent" means the Superintendent of the Osage Agency, Pawhuska, Oklahoma, or his authorized representative acting under delegated authority.

(d) "Oil lessee" means any person, firm, or corporation to whom an oil mining lease is made under the regulations in this part.

(e) "Gas lessee" means any person, firm, or corporation to whom a gas mining lease is made under the regulations in this part.

(f) "Oil and gas lessee" means any person, firm, or corporation to whom an oil and gas mining lease is made under the regulations in this part.

(g) "Primary term" means the basic period of time for which a lease is issued during which the lease contract may be kept in force by payment of rentals.

(h) "Major purchaser" means any one of the minimum number of purchasers taking 80 percent of the oil in the Kansas-Oklahoma area.

(i) "Casinghead gas" means gas produced from an oil well as a consequence of oil production from the same formation.

(j) "Natural gas" means any fluid, either combustible or noncombustible, recovered at the surface in the gaseous phase and/or hydrocarbons recovered at the surface as liquids which are the result of condensation caused by reduction of pressure and temperature of hydrocarbons originally existing in a reservoir in the gaseous phase.

LEASING PROCEDURE, RENTAL AND ROYALTY

#### § 183.2 Sale of leases.

(a) Written application, together with any nomination fee, for tracts to be offered for lease may be filed with the Superintendent.

(b) The Superintendent, with the consent of the Osage Tribal Council, shall publish notices for the sale of oil leases, gas leases, and oil and gas leases to the highest responsible bidder on specific tracts of the unleased Osage Mineral Estate. The Superintendent may require any bidder to submit satisfactory evidence of his good faith and ability to comply with all provisions of the notice of sale. Successful bidders must deposit with the Superintendent on day of sale a check or cash in an amount not less than 25 percent of the cash bonus offered as a guaranty of good faith. Any and all bids shall be subject to the acceptance of the Osage Tribal Council and approval of the Superintendent. Within 20 days after notification of being the successful bidder, said bidder must submit to the Superintendent the balance of the cash bonus, a $10 filing fee, and the lease in completed form. The Superintendent may extend the time for



HeinOnline -- 39 Fed. Reg. 12755 1974

the completion and submission of the lease form, but no extension shall be granted for remitting the balance of moneys due. If the bidder fails to pay the full cash consideration within said period or fails to file the completed lease within said period or extension thereof, or if the lease is rejected through no fault of the Osage Tribal Council or the Superintendent, 25 percent of the cash bonus bid will be forfeited for the use and benefits of the Osage Tribe.

The Superintendent may reject a lease made on an accepted bid, upon evidence satisfactory to him of collusion, fraud, or other irregularity in connection with the notice of sale. The Superintendent may approve oil leases, gas leases, and oil and gas leases made by the Osage Tribal Council in conformity with the notice of sale, regulations in this part, bonds, and other instruments required.

(c) Each oil and/or gas lease and activities and installations associated therewith subject to these regulations shall be assessed and evaluated for its environmental impact prior to its approval by the Superintendent.

(d) Lessee shall accept a lease with the understanding that a mineral not covered by his lease may be leased separately.

(e) No lease, assignment thereof, or interest therein will be approved to any employee or employees of the Government and no such employee shall be permitted to acquire any interest in leases covering the Osage Mineral Estate by ownership of stock in corporations having leases or in any other manner.

### § 183.3 Surrender of lease.

Lessee may, with the approval of the Superintendent and payment of a one dollar filing fee, surrender all or any portion of any lease, have the lease cancelled as to the portion surrendered and be relieved from all subsequent obligations and liabilities. If the lease, or portion being surrendered, is owned in undivided interests by more than one party, then all parties shall join in the application for cancellation: *Provided*, That if this lease has been recorded, Lessee shall execute a release and record the same in the proper office. Such surrender shall not entitle Lessee to a refund of the unused portion of rental paid in lieu of development, nor shall it relieve Lessee and his sureties of any obligation and liability incurred prior to such surrender: *Provided further*, That when there is a partial surrender of any lease and the acreage to be retained is less than 160 acres or there is a surrender of a separate horizon, such surrender shall become effective only with the consent of the Osage Tribal Council and approval of the Superintendent.

### § 183.4 Form of payment.

Sums due under a lease contract and/or the regulations in this part shall be paid by cash or check made payable to the Bureau of Indian Affairs and delivered to the Osage Agency, Pawhuska, Oklahoma 74056. Such sums shall be a prior lien on all equipment and unsold oil on the leased premises.

### § 183.5 Leases subject to current regulations.

Leases issued pursuant to this part shall be subject to the current regulations of the Secretary, all of which are made a part of such leases: *Provided*, That no amendment or change of such regulations made after the approval of any lease shall operate to affect the term of the lease, rate of royalty, rental, or acreage unless agreed to by both parties and approved by the Superintendent.

### § 183.6 Bonds.

Lessees shall furnish with each lease a corporate surety bond acceptable to the Superintendent as follows:

(a) A bond on Form D shall be filed with each lease submitted for approval. Such bond shall be in the penal sum of not less than $1,000 for each quarter section or fractional quarter section covered by said lease: *Provided, however*, That one bond in the penal sum of not less than $15,000 may be filed on Form G covering all leases on the Osage Mineral Estate not in excess of 10,240 acres to which Lessee is or may become a party.

(b) In lieu of the bonds required under paragraph (a) of this section, a bond in the penal sum of $75,000 may be filed on Form 5-5438 for full nationwide coverage of all leases, without geographic or acreage limitation, to which the Lessee is or may become a party.

(c) A bond on Form H shall be filed in the penal sum of not less than $1,000 covering a lease acquired through assignment where the assignee does not have a collective bond, or the corporate surety does not execute its consent to remain bound under the original bond given to secure the faithful performance of the terms and conditions of the lease.

(d) The right is specifically reserved to increase the amount of bonds prescribed in paragraphs (a) and (c) of this section in any particular case when the Superintendent deems it proper. The nationwide bond may be increased at any time in the discretion of the Secretary.

### § 183.7 Provisions of forms made a part of the regulations.

Leases, assignments, and supporting instruments shall be in the form prescribed by the Secretary, and such forms are hereby made a part of the regulations.

### § 183.8 Corporation and corporate information.

(a) If the applicant for a lease is a corporation, it shall file evidence of authority of its officers to execute papers; and with its first application it shall also file a certified copy of its Articles of Incorporation and, if foreign to the State of Oklahoma, evidence showing compliance with the corporation laws thereof.

(b) Whenever deemed advisable the Superintendent may require a corporation to file any additional information necessary to carry out the purpose and intent of the regulations in this part, and such information shall be furnished within a reasonable time.

### § 183.9 Rental and drilling obligations.

(a) Oil leases, gas leases, and oil and gas leases. Unless Lessee shall complete and place on production a well producing and selling oil and/or gas in paying quantities on the land embraced within the lease within 12 months from the date of approval of the lease, or as otherwise provided in the lease terms, or 12 months from the date the Superintendent consents to drilling on any restricted homestead selection, the lease shall terminate unless rental at the rate of not less than $1 per acre for an oil or gas lease, or not less than $1.50 per acre for an oil and gas lease, shall be paid before the end of the first year of the lease. The lease may also be held for the remainder of its primary term without drilling upon payment of the specified rental annually in advance, commencing with the second lease year. The lease shall terminate as of the due date of the rental unless such rental shall be received by the Superintendent, or shall have been mailed as indicated by postmark on or before said date. The completion of a well producing in paying quantities shall, for so long as such production continues, relieve Lessee from any further payment of rental, except that should such production cease during the primary term the lease may be continued only during the remaining primary term of the lease by payment of advance rental which shall commence on the next anniversary date of the lease. Rental shall be paid on the basis of a full year and no refund will be made of advance rental paid in compliance with the regulations in this part: *Provided*, That the Superintendent in his discretion may order further development of any leased acreage or separate horizon if, in his opinion, a prudent operator would conduct further development. If Lessee refuses to comply, the refusal will be considered a violation of the lease terms and said lease shall be subject to cancellation as to the acreage or horizon, the further development of which was ordered: *Provided further*, That the Superintendent may impose restrictions as to time of drilling and rate of production from any well or wells when, in his judgment, such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe. The Superintendent may consider, among other things, Federal and Oklahoma laws regulating either drilling or production.

(b) The Superintendent may, with the consent of and under terms approved by the Osage Tribal Council, grant an extension of the primary term of a lease for a period not to exceed six months on which the actual drilling of a well shall have commenced within the term thereof or for the purpose of enabling Lessee to obtain a market for his oil and/or gas production.

### § 183.10 Term of lease.

Leases issued hereunder shall be for a 5-year primary term and so long there-



HeinOnline -- 39 Fed. Reg. 12756 1974

after as the minerals specified are produced in paying quantities unless a different primary term is established by the Osage Tribal Council, approved by the Superintendent, and so stated in the notice of sale of such lease or leases.

§ 183.11 Royalty payments.

(a) *Royalty on oil.* (1) Royalty rate. Lessee shall pay or cause to be paid to the Superintendent, as royalty, the sum of 16⅔ percent of the gross proceeds from sales after deducting the oil used by Lessee for development and operation purposes on the lease: *Provided*, That when the quantity of oil taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calendar month is sufficient to average one hundred or more barrels per active producing well per day the royalty on such oil shall be 20 percent. The Osage Tribal Council may, upon presentation of justifiable economic evidence by Lessee, agree to a revised royalty rate, subject to approval by the Superintendent, applicable to additional oil produced from a lease or leases by secondary recovery methods, which rate shall not be less than 12½ percent of the gross proceeds from sale of oil produced by secondary recovery processes, other than gas injection, after deducting the oil used by Lessee for development and operating purposes on the lease or leases.

(2) Unless the Osage Tribal Council, with the approval of the Secretary, shall elect to take the royalty in kind, payment shall be made at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, or the highest posted or offered price by a major purchaser in the Kansas-Oklahoma area whichever is higher on the day of sale or removal. Where different prices are paid simultaneously for oil from a lease and the highest such price exceeds the higher of the aforementioned prices, then that price shall be the basis of royalty on all oil from said lease.

(3) Royalty in kind. Should Lessor, with the approval of the Secretary, elect to take the royalty in kind, Lessee shall furnish free storage for royalty oil for a period not to exceed 60 days from date of production after notice of such election.

(b) *Royalty on gas*—(1) *Oil lease.* All casinghead gas shall belong to the oil lessee subject to any rights under existing gas leases. All casinghead gas removed from the lease from which it is produced shall be metered unless otherwise approved by the Superintendent and subject to a royalty of 16⅔ percent of the market value of the gas and all products extracted therefrom, less a reasonable allowance for manufacture or processing. If oil lessee supplies casinghead gas produced from one lease for operation and/or development of other leases, either his or others, a royalty of 16⅔ percent shall be paid on the value of all casinghead gas so used. All casinghead gas not utilized by the oil lessee may, with the approval of the Superintendent, be utilized by the gas lessee, subject to the prescribed royalty of 16⅔ percent.

(2) *Gas lease.* Lessee shall pay a royalty of 16⅔ percent of the value of all natural gas and products extracted therefrom produced and sold from his lease. Natural gas used in the reasonable and prudent operation and development of said lease shall be exempted from royalty payment.

(3) *Oil and gas lease.* Lessee shall pay royalty as provided in (1) and (2) above.

(4) *Value of gas.* For royalty purposes, the value of all gas is fixed at 24 cents per thousand cubic feet unless it is sold at a higher rate, in which event the value shall be the sale price.

(c) *Minimum royalty.* In no event shall the royalty paid from producing leases during any year be less than an amount equal to the annual rental specified for the lease. Any underpayment of minimum royalty shall be due and payable within 45 days following the end of the lease year. After the primary term, Lessee shall submit with his payment evidence that the lease is producing in paying quantities. The Superintendent is authorized to determine whether the lease is actually producing in paying quantities or has terminated for lack of such production. Payment for any underpayment not made within the time specified shall be subject to a late charge at the rate of not less than 1½ percent per month for each month or fraction thereof until paid.

§ 183.12 Government reserves right to purchase oil.

Any of the executive departments of the United States Government shall have the option to purchase all or any part of the oil produced from any lease at not less than the highest posted price as defined in § 183.11.

§ 183.13 Time of royalty payments and reports.

(a) Royalty payments due may be paid by either purchaser or Lessee. Unless otherwise provided by the Osage Tribal Council and approved by the Superintendent, all payments shall be due by the 25th day of each month and shall cover the preceding month. Failure to make such payments shall subject Lessee or purchaser, whoever is responsible for royalty payment, to a late charge at the rate of not less than 1½ percent for each month or fraction thereof until paid.

(b) Lessee shall furnish certified monthly reports by the 25th of each following month covering all operations, whether there has been production or not, indicating therein the total amount of oil, natural gas, casinghead gas, and other products subject to royalty payment.

(c) Failure to remit payments or reports shall subject Lessee to further penalties as provided in §§ 183.42 and 183.43 and shall subject the division order to cancellation.

§ 183.14 Contracts and division orders.

(a) Lessee may enter into division orders or contracts with the purchasers of oil, gas, or derivatives therefrom which will provide for the purchaser to make payment of royalty in accordance with his lease: *Provided*, That such division orders or contracts shall not relieve Lessee from responsibility for the payment of the royalty should the purchaser fail to pay. No production shall be removed from the leased premises until a division order and/or contract and its terms are approved by the Superintendent: *Provided further*, That the Superintendent may grant temporary permission to run oil or gas from a lease pending the approval of a division order or contract. Lessee shall file a certified monthly report and pay royalty on the value of all oil and gas used off the premises for development and operating purposes. Lessee shall be responsible for the correct measurement and reporting of all oil taken from the leased premises.

(b) Lessee shall require the purchaser of oil and/or gas from his lease or leases to furnish the Superintendent with a monthly statement of the gross barrels and/or gross Mcf sold not later than the 15th day of each month which shall cover the preceding month.

§ 183.15 Unit leases, assignments and related instruments.

(a) *Unitization of leases.* The Osage Tribal Council and Lessee or Lessees, may, with the approval of the Superintendent, unitize or merge, two or more oil or oil and gas leases into a unit or cooperative operating plan to promote the greatest ultimate recovery of oil and gas from a common source of supply or portion thereof embracing the lands covered by such lease or leases. The cooperative or unit agreement shall be subject to the regulations in this part and applicable laws governing the leasing of the Osage Mineral Estate. Any agreement between the parties in interest to terminate a unit or cooperative agreement as to all or any portion of the lands included shall be submitted to the Superintendent for his approval. Upon approval the leases included thereunder shall be restored to their original terms: *Provided*, That for the purpose of preventing waste and to promote the greatest ultimate recovery of oil and gas from a common source of supply or portion thereof, all oil leases, oil and gas leases, and gas leases issued heretofore and hereafter under the provisions of the regulations in this part shall be subject to any unit development plan affecting the leased lands that may be required by the Superintendent with the consent of the Osage Tribal Council, and which plan shall adequately protect the rights of all parties in interest including the Osage Mineral Estate.

(b) *Assignments.* Approved leases or any interest therein may be assigned or transferred only with the approval of the Superintendent. The assignee must be qualified to hold such lease under existing rules and regulations and shall furnish a satisfactory bond conditioned for the faithful performance of the covenants and conditions thereof. Lessee



HeinOnline -- 39 Fed. Reg. 12757 1974

must assign either his entire interest in a lease or legal subdivision thereof, or an undivided interest in the whole lease: *Provided*, That when an assignment covers only a portion of a lease or covers interests in separate horizons such assignment shall be subject to both the consent of the Osage Tribal Council and approval of the Superintendent. If a lease is divided by the assignment of an entire interest in any part, each part shall be considered a separate lease and the assignee shall be bound to comply with all the terms and conditions of the original lease. A fully executed copy of the assignment shall be filed with the Superintendent within 30 days after the date of execution by all parties. If requested within the 30-day period, the Superintendent may grant an extension of 15 days. A filing fee of $10 shall accompany each assignment.

(c) *Overriding royalty.* Agreements creating overriding royalties or payments out of production shall not be considered as an interest in a lease as such term is used in paragraph (b) of this section. Agreements creating overriding royalties or payments out of production are hereby authorized and the approval of the Department of the Interior or any agency thereof shall not be required with respect thereto, but such agreements shall be subject to the condition that nothing in any such agreement shall be construed as modifying any of the obligations of Lessee under his lease and the regulations in this part. All such obligations are to remain in full force and effect, the same as if free of any such royalties or payments. The existence of agreements creating overriding royalties or payments out of production, whether or not actually paid, shall not be considered in justifying the shutdown or abandonment of any well. Agreements creating overriding royalties or payments out of production need not be filed with the Superintendent unless incorporated in assignments or instruments required to be filed pursuant to paragraph (b) of this section. An agreement creating overriding royalties or payment out of production shall be suspended when the working interest income per active producing well is equal to or less than the operational cost of the well, as determined by the Superintendent.

(d) *Drilling contracts.* The Superintendent is authorized to approve drilling contracts with a stipulation that such approval does not in any way bind the Department to approve subsequent assignments that may be provided for in said contracts. Approval merely authorizes entry on the lease for the purpose of development work.

OPERATIONS

§ 183.16 Commencement of operations.

(a) No operations shall be permitted upon any tract of land until a lease covering such tract shall have been approved by the Superintendent: *Provided*, That the Superintendent may grant authority to any party under such rules, consistent with the regulations in this part that he deems proper, to conduct geophysical and geological exploration work.

(b) Lessee shall submit applications on forms to be furnished by the Superintendent and secure his approval before:

(1) Well drilling, treating, or workover operations are started on the leased premises.

(2) Removing casing from any well.

(c) Lessee shall notify the Superintendent a reasonable time in advance of starting work, of intention to drill, redrill, deepen, plug, or abandon a well.

§ 183.17 How to acquire permission to begin operations on a restricted homestead allotment.

(a) Lessee may conduct operations within or upon a restricted homestead selection only with the written consent of the Superintendent.

(b) If the allottee is unwilling to permit operations on his homestead, the Superintendent will cause an examination of the premises to be made with the allottee and Lessee or his representative. Upon finding that the interests of the Osage Tribe require that the tract be developed, the Superintendent will endeavor to have the parties agree upon the terms under which operations on the homestead may be conducted.

(c) In the event the allottee and Lessee cannot reach an agreement, the matter shall be presented by all parties before the Osage Tribal Council, and the Council shall make its recommendations. Such recommendations shall be considered as final and binding upon the allottee and Lessee. A guardian may represent the allottee. Where no one is authorized or where no person is deemed by the Superintendent to be a proper party to speak for a person of unsound mind or feeble understanding, the Principal Chief of the Osage Tribe shall represent him.

(d) If the allottee or his representative does not appear before the Osage Tribal Council when notified by the Superintendent, or if the Council fails to act within 10 days after the matter is referred to it, the Superintendent may authorize Lessee to proceed with operations in conformity with the provisions of his lease and the regulations in this part.

§ 183.18 Information to be given surface owners prior to commencement of drilling operations.

Except for the surveying and staking of a well, no operations of any kind shall commence until Lessee or his representative shall meet with the surface owner or his representative, if a resident of and present in Osage County, Oklahoma. At such meeting Lessee shall comply with the following requirements:

(a) Indicate the location of the well or wells to be drilled.

(b) Arrange for route of ingress and egress. Upon failure to agree on route of ingress and egress, said route shall be set by the Superintendent.

(c) Impart to said surface owners the name and address of the party or representative upon whom the surface owner shall serve any claim for damages which he may sustain from mineral development or operations, and as to the procedure for settlement thereof as provided in § 183.21.

(d) Where the drilling is to be on restricted land, Lessee in the manner provided above shall meet with the Superintendent.

(e) Where the surface owner or his representative is not a resident of or is not physically present in Osage County, then the Superintendent shall be so advised whereupon the Superintendent may authorize Lessee to proceed with operations: *Provided*, That in the event the Superintendent should so arrange with the surface owner or his tenant, Lessee or his representative within 5 days after receipt of notice from the Superintendent shall meet with the surface owner or his tenant on the leased premises and arrange for the procedure to follow as indicated in this section.

§ 183.19 Use of surface of land.

(a) Lessee or his authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not limited to the right to lay and maintain pipelines, electric lines, pull rods, other appliances necessary for operations and marketing; the right-of-way for ingress and egress to any point of operation; and the right to use water for release operations as set out in § 183.24. Lessee shall conduct his operations in a workmanlike manner, commit no waste and allow none to be committed upon the land, nor permit any nuisance to be maintained on the premises under his control.

(b) Before commencing a drilling operation, Lessee shall pay or tender to the surface owner commencement money in the amount of $25 per seismic shot hole and commencement money in the amount of $300 for each well, after which Lessee shall be entitled to immediate possession of the drilling site. A drilling site shall be held to the minimum area essential for operations and shall not exceed one and one-half acres in area unless authorized by the Superintendent. Commencement money shall be a credit toward the settlement of the total damages. Acceptance of commencement money by the surface owner does not in any way affect his right to compensation for damages as described in § 183.20, occasioned by the drilling and completion of the well for which it was paid. Since actual damage to the surface from operations cannot necessarily be ascertained prior to the completion of a well as a serviceable well or dry hole, a damage settlement covering the drilling operation need not be made until after completion of drilling operations.

(c) Where the surface is restricted land, commencement money shall be paid to the Superintendent for the landowner. All other surface owners shall be paid or tendered such commencement money direct. Where such surface owners are not residents of Osage County nor have a representative located therein,



HeinOnline -- 39 Fed. Reg. 12758 1974

such payment shall be made or tendered to the last known address of the surface owner at least 5 days before commencing drilling operations on any well: *Provided,* That should Lessee be unable to reach the owner of the surface of the land for the purpose of tendering the commencement money or if the owner of the surface of the land shall refuse to accept the same, Lessee shall deposit such amount with the Superintendent by check payable to the Bureau of Indian Affairs. The Superintendent shall thereupon advise the owner of the surface of the land by mail at his last known address that the commencement money is being held for payment to him upon his written request.

(d) Lessee shall also pay fees for tank sites not exceeding 50 feet square at the rate of $40 per tank or other vessel: *Provided,* That no payment shall be due for a tank temporarily set on a well location site for drilling, completing, or testing. The sum to be paid for a tank occupying more than 50 feet square shall be agreed upon between the surface owner and Lessee or, on failure to agree, the same shall be fixed by arbitration as provided by § 183.21.

§ 183.20 Settlement of damages claimed.

(a) Lessee or geophysical permittee shall pay for all damages to growing crops, any improvements on the lands, and all other surface damages as may be occasioned by operations. Commencement money shall be a credit toward the settlement of the total damages occasioned by the drilling and completion of the well for which it was paid. Such damages shall be paid to the owner of the surface and by him apportioned among the parties interested in the surface, whether as owner, surface lessee, or otherwise, as the parties may mutually agree or as their interests may appear. If Lessee and surface owner are unable to agree concerning damages, the same shall be determined by arbitration. Nothing herein contained shall be construed to deny any party the right to file an action in a court of competent jurisdiction if he is dissatisfied with the amount of the award.

(b) Surface owners shall notify their lessees or tenants of the regulations in this part and of the necessary procedure to follow in all cases of alleged damages. If so authorized in writing, surface lessees or tenants may represent the surface owners.

(c) In the settlement of damages on restricted land all sums due and payable shall be paid to the Superintendent for credit to the account of the Indian entitled thereto.

(d) Any person, other than a surface lessee or an allottee or the heirs of a deceased allottee, claiming an interest in any leased tract or in damages thereto, must furnish to the Superintendent a statement in writing showing said claimed interest. Failure to furnish such statement shall constitute a waiver of notice and estop said person from claiming any part of such damages after the same shall have been disbursed.

§ 183.21 Procedure for settlement of damages claimed.

Where the surface owner or his lessee suffers damage due to the operation of any oil or gas lessee, the procedure for recovery shall be as follows:

(a) The party or parties aggrieved shall, as soon as possible after the discovery of any damages, serve written notice to Lessee or his representative as provided by § 183.18. Written notice shall contain the nature and location of the alleged damages, the date of occurrence, the names of the party or parties causing said damages, and the amount of damages. It is not intended by this requirement to limit the time within which action may be brought in the courts to less than the 90-day period allowed by section 2 of the Act of March 2, 1929 (45 Stat. 1478, 1479).

(b) If the alleged damages are not adjusted at the time of such notice, Lessee or his representative shall try to adjust the claim with the party or parties aggrieved within 20 days from receipt of the notice. If the claimant is the owner of restricted property and a settlement results, a copy of the settlement agreement shall be filed with the Superintendent. If the settlement agreement is approved by the Superintendent, payment shall be made to the Superintendent for the benefit of said claimant.

(c) If the parties fail to adjust the claim within the 20 days specified, then within 10 days thereafter each of the interested parties shall appoint an arbitrator who immediately upon their appointment shall agree upon a third arbitrator. If the two arbitrators shall fail to agree upon a third arbitrator within 10 days, they shall immediately notify the parties in interest. If said parties cannot agree upon a third arbitrator within 5 days after receipt of such notice, the Superintendent shall appoint the third arbitrator.

(d) As soon as the third arbitrator is appointed, the arbitrators shall meet; hear the evidence and arguments of the parties; and examine the lands, crops, improvements, or other property alleged to have been injured. Within 10 days they shall render their decision as to the amount of the damage due. The arbitrators shall be disinterested persons. The fees and expenses of the third arbitrator shall be borne equally by the claimant and Lessee. Each Lessee and claimant shall pay the fee and expenses for the arbitrator appointed by him.

(e) When an act of an oil or gas lessee or any of his employees results in injury to both the surface owner and his lessee, the parties aggrieved shall join in the appointment of an arbitrator. Where the injury complained of is chargeable to one or more oil or gas lessees, such lessees shall join in the appointment of an arbitrator.

(f) Any two of the arbitrators may make a decision as to the amount of damage due. The decision shall be in writing and forthwith shall be served upon the parties in interest. Each party shall have 90 days from the date the decision is served in which to file an action in a court of competent jurisdiction. If no such action is filed within said time and the award is against Lessee, he shall pay the same together with interest at the rate of 6 percent per annum from date of award, within 10 days after the expiration of said period for filing an action. If he fails to do so, in the discretion of the Superintendent, the Lessee shall be subject to a penalty of $10 per day for each day thereafter that he remains in default.

(g) Lessee shall file with the Superintendent a report on each settlement agreement, setting out the nature and location of the damage, date, and amount of the settlement, and any other pertinent information.

§ 183.22 Prohibition of pollution.

(a) All operators, contractors, drillers, service companies, pipe pulling and salvaging contractors, or other persons, shall at all times conduct their operations and drill, equip, operate, produce, plug and abandon all wells drilled for oil or gas, service wells or exploratory wells (including seismic, core and stratigraphic holes) in a manner that will prevent pollution and the migration of oil, gas, salt water or other substance from one stratum into another, including any fresh water bearing formation.

(b) Pits for drilling mud or deleterious substance used in the drilling, completion, recompletion, or workover of any well shall be constructed and maintained so as to prevent pollution of surface and subsurface fresh water. These pits shall be enclosed with a fence of at least four strands of barbed wire, or an approved substitute, stretched taut to adequately braced corner posts, unless the surface owner, user, or the Superintendent gives consent to the contrary. As soon as possible after completion of operations, pits shall be emptied and leveled unless otherwise requested by surface owner or user.

(c) Drilling pits shall be adequate to contain mud and other material extracted from wells and shall have adequate storage to maintain a supply of mud for use in emergencies.

(d) No earthen pit, except those used in the drilling, completion, recompletion or workover of a well, shall be constructed, enlarged, reconstructed or used without approval of the Superintendent. Unlined earthen pits shall not be used for the continued storage of salt water or other deleterious substances.

(e) B.S., salt water and other deleterious substances shall be contained in proper receptacles and not permitted to escape. Where existing lease facilities are inadequate for proper disposal of such substances, Lessee shall notify the Superintendent, who shall give instructions as to their disposal.

§ 183.23 Easements for wells off leased premises.

The Superintendent, with the consent of the Osage Tribal Council, may grant easements for wells off the leased premises to be used for waste or salt water disposal, water injection, water supply, or other necessary services. Rental pay-



HeinOnline -- 39 Fed. Reg. 12759 1974

able to the Osage Tribe for such easements shall be an amount agreed to by Grantee and the Osage Tribal Council, subject to the approval of the Superintendent. Grantee shall be responsible for all damages resulting from the use of such wells and settlement therefor shall be made as provided in § 183.21.

### § 183.24 Lessee's use of water.

Lessee or his contractor may, with the approval of the Superintendent, use water from streams and natural water courses to the extent that same does not diminish the supply below the requirements of the surface owner from whose land the water is taken. Similarly, Lessee or his contractor may use water from reservoirs formed by the impoundment of water from such streams and natural water courses, provided such use does not exceed the quantity to which they originally would have been entitled had the reservoirs not been constructed. Lessee or his contractor may install necessary lines and other equipment within the Osage Mineral Estate to obtain such water. Any damage resulting from such installation shall be settled as provided in § 183.21.

### § 183.25 Gas well drilled by oil lessees and vice versa.

When an oil lessee in drilling a well encounters a formation or zone having indications of possible gas production, or the gas lessee in drilling a well encounters a formation or zone having indication of possible oil production, he shall immediately notify the other lessee and the Superintendent. Lessee drilling the well shall obtain all information which a prudent operator would normally obtain to evaluate the productive capability of such formation or zone.

(a) *Gas well to be turned over to gas lessee.* If the oil lessee drills a gas well, he shall, without removing from the well any of the casing or other equipment, immediately shut the well in and notify the gas lessee and the Superintendent. If the gas lessee does not, within 15 days after receiving notice, elect to take over such well and reimburse the oil lessee the cost of drilling the same, including all damages paid and the cost in-place of casing, tubing, and other equipment, the oil lessee shall immediately confine the gas to the original stratum. The disposition of such well and the production therefrom shall then be subject to the approval of the Superintendent.

(b) *Oil well to be turned over to oil lessee.* If the gas lessee drills an oil well, he shall immediately, without removing from the well any of the casing or other equipment, notify the oil lessee and the Superintendent. If the oil lessee does not, within 15 days after receipt of notice, elect to take over the well, he shall immediately notify the gas lessee, and the disposition of such well and the production therefrom shall be subject to the approval of the Superintendent. Should the oil lessee elect to take over the well, he shall pay the gas lessee the cost of drilling the same, including all damages paid and cost in-place of casing and other equipment.

(c) *Lands not leased.* If the gas lessee shall drill an oil well upon lands not leased for oil purposes or the oil lessee shall drill a gas well on lands not leased for gas purposes, the Superintendent may, until such time as said lands are leased, permit the lessee who drilled the well to operate and market the production therefrom. Where said lands are leased, the lessee who drilled and completed the well shall be reimbursed by the oil or gas lessee, as the case may be, the cost of drilling said well, including all damages paid and the cost in-place of casing and other equipment. If the lessee does not elect to take over said well, as provided above, the disposition of such well and the production therefrom shall then be subject to the approval of the Superintendent.

### § 183.26 Determining cost of well.

The term "cost of drilling" as applied where one lessee takes over a well drilled by another, shall include all reasonable, usual, necessary, and proper expenditures. A list of expenses mentioned in this section shall be presented to proposed purchasing lessee within 10 days after the completion of the well. In the event of a disagreement between the parties as to the charges assessed against the well that is to be taken over, such charges shall be determined by the Superintendent.

### § 183.27 Gas for operating purposes and tribal use.

(a) *Gas to be furnished oil lessee.* Lessee of a producing gas lease shall furnish the oil lessee sufficient gas for operating purposes at a rate to be agreed upon, or on failure to agree the rate shall be determined by the Superintendent: *Provided,* That the oil lessee shall, at his own expense and risk, furnish and install the necessary connections to the gas lessee's well or pipeline. All such connections shall be reported in writing to the Superintendent.

(b) *Use of gas by Osage Tribe.* (1) Gas from any well or wells shall be furnished any Tribal-owned building or enterprise at a rate not to exceed the price less royalty being received or offered by a gas purchaser: *Provided,* That such requirement shall be subject to the determination by the Superintendent that gas in sufficient quantities is available above that needed for lease operation and that no waste would result. In the absence of a gas purchaser the rate to be paid by the Osage Tribe shall be determined by the Superintendent based on prices being paid by purchasers in the Osage Mineral Estate. The Osage Tribe is to furnish all necessary material and labor for such connection with Lessee's gas system. The use of such gas shall be at the risk of the Osage Tribe at all times.

(2) Any member of the Osage Tribe residing in Osage County and outside a corporate city is entitled to the use at his own expense of not to exceed 400,000 cubic feet of gas per calendar year for his principal residence at a rate not to exceed the amount paid by a gas purchaser plus 10 percent: *Provided,* That such requirement shall be subject to the determination by the Superintendent that gas in sufficient quantities is available above that needed for lease operation and that no waste would result. In the absence of a gas purchaser the amount to be paid by the Tribal member shall be determined by the Superintendent. Gas to Tribal members is not royalty free. The Tribal member is to furnish all necessary material and labor for such connection to Lessee's gas system, and shall maintain his own lines. The use of such gas shall be at the risk of the Tribal member at all times.

(3) Gas furnished by Lessee under paragraphs (b) (1) and (2) of this section may be terminated only with the approval of the Superintendent. Written application for termination must be made to the Superintendent showing justification.

CESSATION OF OPERATIONS

### § 183.28 Shutdown, abandonment, and plugging of wells.

No productive well shall be abandoned until its lack for further profitable production of oil and/or gas has been demonstrated to the satisfaction of the Superintendent. Lessee shall not shut down, abandon, or otherwise discontinue the operation or use of any well without the written approval of the Superintendent. All applications for such approval shall be submitted to the Superintendent on forms furnished by him.

(a) Application for authority to shut down or discontinue use or operation of a well shall set forth justification therefor and probable duration, the means by which the well bore is to be protected, and the contemplated eventual disposition of the well. The method of conditioning such well shall be subject to the approval of the Superintendent.

(b) Prior to permanent abandonment of any well, the oil lessee or the gas lessee, as the case may be, shall offer the well to the other for his recompletion or use under such terms as may be mutually agreed upon but not in conflict with the regulations. Failure of the Lessee receiving the offer to reply within 10 days after receipt thereof shall be deemed as rejection of the offer. If, after indicating acceptance, the two parties cannot agree on the terms of the offer within 30 days, the disposition of such well shall be determined by the Superintendent.

### § 183.29 Disposition of casings and other improvements.

(a) Upon termination of lease. Permanent improvements, unless otherwise provided by written agreement with the surface owner and filed with the Superintendent, shall remain a part of said land and become the property of the surface owner upon termination of the lease, other than by cancellation, excepting personal property which may include tools, tanks, pipelines, pumping and drilling equipment, derricks, engines,



HeinOnline -- 39 Fed. Reg. 12760 1974

machinery, and the casings of all wells: *Provided*, That when any lease terminates all such personal property shall be removed within 90 days or such reasonable extension of time as may be granted by the Superintendent. Otherwise, the ownership of all casings shall revert to Lessor and all other personal property and permanent improvements to the surface owner. Nothing herein shall be construed to relieve Lessee of responsibility for removing any such personal property or permanent improvements from the premises if so required by the Superintendent and restoring the premises as near as practicable to its original state.

(b) Upon cancellation of lease. When there has been a cancellation for cause, Lessor shall be entitled and authorized to take immediate possession of the lease premises and all permanent improvements and all other equipment necessary for the operation of the lease.

(c) Wells to be abandoned shall be promptly plugged as prescribed by the Superintendent. Applications to plug shall include a statement affirming compliance with § 183.28(b) above and shall set forth reasons for plugging, a detailed statement of the proposed work including kind, location, and length of plugs (by depth), plans for mudding and cementing, testing, parting and removing casing, and any other pertinent information: *Provided*, That the Superintendent may give oral permission and instructions pending receipt of a written application to plug a newly drilled hole. Lessee shall remit a fee of $15 with each written application for authority to plug a well. This fee will be refunded if permission is not granted.

(d) Lessee shall plug and fill all dry or abandoned wells in a manner to confine the fluid in each formation bearing fresh water, oil, gas, salt water, and other minerals, and to protect it against invasion of fluids from other sources. Mud-laden fluid, cement, and other plugs shall be used to fill the hole from bottom to top: *Provided*, That if a satisfactory agreement is reached between Lessee and the surface owner, subject to the approval of the Superintendent, Lessee may condition the well for use as a fresh water well and shall so indicate on the plugging record. The manner in which plugging material shall be introduced and the type of material so used shall be subject to the approval of the Superintendent. Within 10 days after plugging, Lessee shall file with the Superintendent a complete report of the plugging of each well. When any well is plugged and abandoned, Lessee shall, within 90 days, clean up the premises around such well to the satisfaction of the Superintendent.

REQUIREMENTS OF LESSEES

**§ 183.30 Lessees subject to Superintendent's orders; books and records open to inspection.**

Lessee shall comply with all orders or instructions issued by the Superintendent. The Superintendent or his representative may enter upon the leased premises for the purpose of inspection. Lessee shall keep a full and correct account of all operations, receipts, and disbursements and make reports thereof, as required. Lessee's books and records shall be available to the Superintendent for inspection.

**§ 183.31 Lessee's process agents.**

(a) Before actual drilling or development operations are commenced on leased lands, Lessee or Assignee, if not a resident of the State of Oklahoma, shall appoint a local or resident representative within the State of Oklahoma on whom the Superintendent may serve notice or otherwise communicate in securing compliance with the regulations in this part, and shall notify the Superintendent of the name and post office address of the representative appointed.

(b) Where several parties own a lease jointly, one representative or agent shall be designated whose duties shall be to act for all parties concerned. Designation of such representative should be made by the party in charge of operations.

(c) In the event of the incapacity or absence from the State of Oklahoma of such designated local or resident representative, Lessee shall appoint a substitute to serve in his stead. In the absence of such representative or appointed substitute, any employee of Lessee upon the leased premises or person in charge of drilling or related operations thereon shall be considered the representative of Lessee for the purpose of service of orders or notices as herein provided.

**§ 183.32 Well records and reports.**

(a) Lessee shall keep accurate and complete records of the drilling, redrilling, deepening, repairing, treating, plugging, or abandonment of all wells. These records shall show all the formations penetrated, the content and character of oil, gas, or water in each formation, and the kind, weight, size, landed depth and cement record of casing used in drilling each well; the record of drill-stem and other bottom hole pressure or fluid sample surveys, temperature surveys, directional surveys, and the like; the materials and procedure used in the treating or plugging of wells or in preparing them for temporary abandonment; and any other information obtained in the course of well operation.

(b) Lessee shall take such samples and make such tests and surveys as may be required by the Superintendent to determine conditions in the well or producing reservoir and to obtain information concerning formations drilled, and shall furnish reports thereof as required by the Superintendent.

(c) Within 10 days after completion of operations on any well, Lessee shall transmit to the Superintendent the applicable information on forms furnished by the Superintendent; a copy of electrical, mechanical or radioactive log, or other types of survey of the well bore; and core analysis obtained from the well. Lessee shall also submit other reports and records of operations as may be required and in the manner and form prescribed by the Superintendent.

(d) Lessee shall measure production of oil, gas, and water from individual wells at reasonably frequent intervals to the satisfaction of the Superintendent.

(e) Upon request and in the manner and form prescribed by the Superintendent, Lessee shall furnish a plat showing the location, designation, and status of all wells on the leased lands, together with such other pertinent information as the Superintendent may require.

**§ 183.33 Line drilling.**

Lessee shall not drill within 300 feet of boundary line of leased lands, nor locate any well or tank within 200 feet of any public highway, any established watering place, or any building used as a dwelling, granary, or barn, except with the written permission of the Superintendent.

**§ 183.34 Wells and tank batteries to be marked.**

Lessee shall clearly and permanently mark all wells and tank batteries in a conspicuous place with number, legal description and operator, as applicable, and shall take all necessary precautions to preserve these markings.

**§ 183.35 Formations to be protected.**

Lessee shall, to the satisfaction of the Superintendent, take all proper precautions and measures to prevent damage or pollution of oil, gas, fresh water, or other mineral bearing formations.

**§ 183.36 Control devices.**

In drilling operations in "wildcat" territory, or in fields where high pressures, lost circulation, or other conditions which could result in blowouts are believed to exist, Lessee shall have on such leased premises an approved gate valve or other controlling device installed and in proper working condition for use until the well is completed.

**§ 183.37 Waste of oil and gas.**

Lessee shall conduct all operations in a manner that will prevent waste of oil and gas and shall not wastefully utilize oil or gas. The Superintendent shall have the authority to impose such requirements as he deems necessary to prevent waste of oil and gas and to promote the greatest ultimate recovery of oil and gas. Waste as applied herein includes, but is not limited to, the inefficient, excessive or improper use or dissipation of reservoir energy which would reasonably reduce or diminish the quantity of oil or gas that might ultimately be produced, or the unnecessary or excessive surface loss or destruction, without beneficial use, of oil and/or gas.

**§ 183.38 Measuring and storing oil.**

All production run from the lease shall be measured according to methods and devices approved by the Superintendent. Facilities suitable for containing and measuring accurately all crude oil produced from the wells shall be provided by Lessee and shall be located on the leasehold unless otherwise approved by the Superintendent. Lessee shall furnish to the Superintendent a copy of 100-per-



HeinOnline -- 39 Fed. Reg. 12761 1974

cent capacity tank table for each tank. Meters and installations for measuring oil must be approved, and tests of their accuracy shall be made when directed by the Superintendent.

§ 183.39 Measurement of gas.

All gas, required to be measured, shall be measured by meter (preferably of the orifice meter type) unless otherwise agreed to by the Superintendent. All gas meters must be approved by the Superintendent and installed at the expense of Lessee or purchaser at such places as may be agreed to by the Superintendent. For computing the volume of all gas produced, sold or subject to royalty, the standard of pressure shall be 14.65 pounds to the square inch, and the standard of temperature shall be 60° F. All measurements of gas shall be adjusted by computation to these standards, regardless of the pressure and temperature at which the gas was actually measured, unless otherwise authorized in writing by the Superintendent.

§ 183.40 Use of gas for lifting oil.

Lessee shall not use natural gas from a distinct or separate stratum for the purpose of flowing or lifting the oil, except where said Lessee has an approved right to both the oil and the gas, and then only with the approval of the Superintendent of such use and of the manner of its use.

§ 183.41 Accidents to be reported.

Lessee shall make a complete report to the Superintendent of all accidents, fires, or acts of theft and vandalism occurring on the leased premises.

PENALTIES

§ 183.42 Penalty for violation of lease terms.

Violation of any of the terms or conditions of any lease or of the regulations in this part shall subject the lease to cancellation by the Superintendent, or Lessee to a fine of not more than $500 pe rday for each day of such violation or noncompliance with the orders of the Superintendent, or to both such fine and cancellation: *Provided*, That prior to the determination that a fine or cancellation of a lease will be imposed as provided for in this section, Lessee shall receive a 30-day notice with respect to the terms of the lease or of the regulations violated and, if he so requests, may receive a hearing before the Superintendent. Payment of penalties not received within 10 days after notice of final decision is given shall be subject to late charges at the rate of not less than 1½ percent per month for each month or fraction thereof until paid.

§ 183.43 Penalties for violation of certain operating regulations.

In lieu of the penalties provided under § 183.42, penalties may be imposed by the Superintendent for violation of certain sections of the regulations of this part as follows:

(a) For failure to obtain permission to start operations required by § 183.16(b), $10 per day until permission is obtained.

(b) For failure to file records required by § 183.32, $10 per day until compliance is met.

(c) For failure to mark wells and tank batteries as required by § 183.34, $50 for each well and tank battery.

(d) For failure to construct and maintain pits as required by § 183.22, $10 for each day after operations are commenced on any well until compliance is met.

(e) For failure to comply with § 183.36 regarding valve or other approved controlling device, $100.

(f) For failure to notify Superintendent before drilling, redrilling, deepening, plugging, or abandoning any well, as required by §§ 183.16(c) and 183.25, $200.

(g) For failure to properly care for and dispose of B.S. and salt water as provided in § 183.22, $100 per day and in the event of failure to comply within 5 days after notification by the Superintendent, $500 per day until compliance is met.

(h) For failure to file plugging reports as required by § 183.29 and for failure to file reports as required by § 183.13, $10 per day for each violation until compliance is met.

(i) For failure to perform or start an operation within 5 days after ordered by the Superintendent in writing under authority provided in this part, if said operation is thereafter performed by or through the Superintendent, the actual cost of performance thereof, plus 25 percent.

APPEALS AND NOTICES

§ 183.44 Hearings and appeals.

Any person, firm, or corporation aggrieved by any decision or order issued by or under authority of the Superintendent, pursuant to the regulations in this part, may file with the Superintendent at any time an application for modification or revocation of such decision or order. The Superintendent shall give notice of the time and place and conduct a hearing upon the application within 10 days after its receipt by him. If the applicant is not satisfied with the decision of the Superintendent, an appeal may be taken as provided in 25 CFR Part 2.

§ 183.45 Notices.

Whenever notice is provided for in the regulations in this part, the Superintendent may in his discretion increase the time allowed.

EFFECT OF REGULATIONS

§ 183.46 Effect of regulations on leases.

No regulation which becomes effective after the approval of any lease shall operate to affect the term of the lease, rate of royalty, rental, or acreage, unless agreed to by both parties to the lease.

LAFOLLETTE BUTLER,
*Acting Deputy Commissioner of Indian Affairs.*

[FR Doc.74-7929 Filed 4-5-74;8:45 am]

# DEPARTMENT OF AGRICULTURE

## Agricultural Marketing Service

[ 7 CFR Part 908 ]

## HANDLING OF VALENCIA ORANGES GROWN IN ARIZONA AND DESIGNATED PART OF CALIFORNIA

### Size Limitations

This proposal would extend current size limitations for the period May 4, 1974, through January 15, 1975, applicable to the handling of Valencia oranges grown in Arizona and designated part of California. Shipments of California-Arizona Valencia oranges are currently regulated through May 3, 1974, pursuant to Valencia Orange Regulation 458. The proposed extension of the period of Valencia Orange Regulation 458 is designed to continue in effect the current size requirement for such fruit consistent with the objective of the act of promoting orderly marketing, maintaining grower returns, and protecting the interest of consumers.

Notice is hereby given that the Department is considering a proposed amendment of the size regulation for Valencia oranges grown in Arizona and designated part of California, pursuant to the applicable provisions of the marketing agreement, as amended, and Order No. 908, as amended (7 CFR Part 908) regulating the handling of Valencia oranges grown in Arizona and designated part of California. This regulatory program is effective under the Agricultural Marketing Agreement Act of 1937, as amended (7 U.S.C. 601-674). The proposed amendment was recommended by the Valencia Orange Administrative Committee, established under said amended marketing agreement and order as the agency to administer the terms and provisions thereof.

The proposal is as follows:

Amend paragraph (a) of the Valencia Orange Regulation 458 (39 FR 11979) to read as follows:

§ 908.758 Valencia Orange Regulation 458.

*Order.* (a) During the period May 4, 1974, through January 15, 1975, * * *.

All persons who desire to submit written data, views, or arguments for consideration in connection with the proposed regulation shall file same, in quadruplicate, with the Hearing Clerk, United States Department of Agriculture, Room 112, Administration Building, Washington, D.C. 20250, not later than April 17, 1974. All written submissions made pursuant to this notice will be made available for public inspection at the office of the Hearing Clerk during regular business hours (7 CFR 1.27(b)).

Dated: April 3, 1974.

CHARLES R. BRADER,
*Deputy Director, Fruit and Vegetable Division, Agricultural Marketing Service.*

[FR Doc.74-7998 Filed 4-5-74;8:45 am]



HeinOnline -- 39 Fed. Reg. 12762 1974

code of federal regulations

# Indians

# 25

**Revised as of April 1, 1999**

**CONTAINING**
**A CODIFICATION OF DOCUMENTS**
**OF GENERAL APPLICABILITY**
**AND FUTURE EFFECT**

**AS OF APRIL 1, 1999**

*With Ancillaries*

Published by
the Office of the Federal Register
National Archives and Records
Administration

as a Special Edition of
the Federal Register

# PART 226—LEASING OF OSAGE RESERVATION LANDS FOR OIL AND GAS MINING

Sec.
226.1 Definitions.

LEASING PROCEDURE, RENTAL AND ROYALTY

226.2 Sale of leases.
226.3 Surrender of lease.
226.4 Form of payment.
226.5 Leases subject to current regulations.
226.6 Bonds.
226.7 Provisions of forms made a part of the regulations.
226.8 Corporation and corporate information.
226.9 Rental and drilling obligations.
226.10 Term of lease.
226.11 Royalty payments.
226.12 Government reserves right to purchase oil.
226.13 Time of royalty payments and reports.
226.14 Contracts and division orders.
226.15 Unit leases, assignments and related instruments.

OPERATIONS

226.16 Commencement of operations.
226.17 How to acquire permission to begin operations on a restricted homestead allotment.
226.18 Information to be given surface owners prior to commencement of drilling operations.
226.19 Use of surface of land.
226.20 Settlement of damages claimed.
226.21 Procedure for settlement of damages claimed.
226.22 Prohibition of pollution.
226.23 Easements for wells off leased premises.
226.24 Lessee's use of water.
226.25 Gas well drilled by oil lessees and vice versa.
226.26 Determining cost of well.
226.27 Gas for operating purposes and tribal use.

CESSATION OF OPERATIONS

226.28 Shutdown, abandonment, and plugging of wells.
226.29 Disposition of casings and other improvements.

REQUIREMENTS OF LESSEES

226.30 Lessees subject to Superintendent's orders; books and records open to inspection.
226.31 Lessee's process agents.
226.32 Well records and reports.
226.33 Line drilling.
226.34 Wells and tank batteries to be marked.
226.35 Formations to be protected.
226.36 Control devices.
226.37 Waste of oil and gas.
226.38 Measuring and storing oil.
226.39 Measurement of gas.
226.40 Use of gas for lifting oil.
226.41 Accidents to be reported.

PENALTIES

226.42 Penalty for violation of lease terms.
226.43 Penalties for violation of certain operating regulations.

APPEALS AND NOTICES

226.44 Appeals.
226.45 Notices.
226.46 Information collection.

AUTHORITY: Sec. 3, 34 Stat. 543; secs. 1, 2, 45 Stat. 1478; sec. 3, 52 Stat. 1034, 1035; sec. 2(a), 92 Stat. 1660.

SOURCE: 39 FR 22254, June 21, 1974, unless otherwise noted. Redesignated at 47 FR 13327, Mar. 30, 1982.

## §226.1 Definitions.

As used in this part 226, terms shall have the meanings set forth in this section.

(a) *Secretary* means the Secretary of the Interior or his authorized representative acting under delegated authority.

(b) *Osage Tribal Council* means the duly elected governing body of the Osage Nation or Tribe of Indians of Oklahoma vested with authority to lease or take other actions on oil and gas mining pertaining to the Osage Mineral Estate.

(c) *Superintendent* means the Superintendent of the Osage Agency, Pawhuska, Oklahoma, or his authorized representative acting under delegated authority.

(d) *Oil lessee* means any person, firm, or corporation to whom an oil mining lease is made under the regulations in this part.

(e) *Gas lessee* means any person, firm, or corporation to whom a gas mining lease is made under the regulations in this part.

(f) *Oil and gas lessee* means any person, firm, or corporation to whom an oil and gas mining lease is made under the regulations in this part.

(g) *Primary term* means the basic period of time for which a lease is issued during which the lease contract may be kept in force by payment of rentals.

(h) *Major purchaser* means any one of the minimum number of purchasers taking 95 percent of the oil in Osage County, Oklahoma. Any oil purchased by a purchaser from itself, its subsidiaries, partnerships, associations, or other corporations in which it has a financial or management interest shall be excluded from the determination of a major purchaser.

(i) *Casinghead gas* means gas produced from an oil well as a consequence of oil production from the same formation.

(j) *Natural gas* means any fluid, either combustible or noncombustible, recovered at the surface in the gaseous phase and/or hydrocarbons recovered at the surface as liquids which are the result of condensation caused by reduction of pressure and temperature of hydrocarbons originally existing in a reservoir in the gaseous phase.

(k) *Authorized representative* of an oil lessee, gas lessee, or oil and gas lessee means any person, group, or groups of persons, partnership, association, company, corporation, organization or agent employed by or contracted with a lessee or any subcontractor to conduct oil and gas operations or provide facilities to market oil and gas.

(l) *Oil well* means any well which produces one (1) barrel or more of crude petroleum oil for each 15,000 standard cubic feet of natural gas.

(m) *Gas well* means any well which:

(1) Produces natural gas not associated with crude petroleum oil at the time of production or

(2) Produces more than 15,000 standard cubic feet of natural gas to each barrel of crude petroleum oil from the same producing formation.

[39 FR 22254, June 21, 1974, as amended at 41 FR 50648, Nov. 17, 1976; 43 FR 8135, Feb. 28, 1978. Redesignated at 47 FR 13327, Mar. 30, 1982, as amended at 55 FR 33114, Aug. 14, 1990]

LEASING PROCEDURE, RENTAL AND ROYALTY

### § 226.2 Sale of leases.

(a) Written application, together with any nomination fee, for tracts to be offered for lease shall be filed with the Superintendent.

(b) The Superintendent, with the consent of the Osage Tribal Council, shall publish notices for the sale of oil leases, gas leases, and oil and gas leases to the highest responsible bidder on specific tracts of the unleased Osage Mineral Estate. The Superintendent may require any bidder to submit satisfactory evidence of his good faith and ability to comply with all provisions of the notice of sale. Successful bidders must deposit with the Superintendent on day of sale a check or cash in an amount not less than 25 percent of the cash bonus offered as a guaranty of good faith. Any and all bids shall be subject to the acceptance of the Osage Tribal Council and approval of the Superintendent. Within 20 days after notification of being the successful bidder, and said bidder must submit to the Superintendent the balance of the cash bonus, a $10 filing fee, and the lease in completed form. The Superintendent may extend the time for the completion and submission of the lease form, but no extension shall be granted for remitting the balance of moneys due. If the bidder fails to pay the full cash consideration within said period or fails to file the completed lease within said period or extention thereof, or if the lease is rejected through no fault of the Osage Tribal Council or the Superintendent, 25 percent of the cash bonus bid will be forfeited for the use and benefits of the Osage Tribe. The Superintendent may reject a lease made on an accepted bid, upon evidence satisfactory to him of collusion, fraud, or other irregularity in connection with the notice of sale. The Superintendent may approve oil leases, gas leases, and oil and gas leases made by the Osage Tribal Council in conformity with the notice of sale, regulations in this part, bonds, and other instruments required.

(c) Each oil and/or gas lease and activities and installations associated therewith subject to these regulations shall be assessed and evaluated for its environmental impact prior to its approval by the Superintendent.

(d) Lessee shall accept a lease with the understanding that a mineral not covered by his lease may be leased separately.

(e) No lease, assignment thereof, or interest therein will be approved to any employee or employees of the Government and no such employee shall be

permitted to acquire any interest in leases covering the Osage Mineral Estate by ownership of stock in corporations having leases or in any other manner.

(f) The Osage Tribal Council may utilize the following procedures among others, in entering into a mining lease. A contract may be entered into through competitive bidding as outlined in §226.2(b), negotiation, or a combination of both. The Osage Tribal Council may also request the Superintendent to undertake the preparation, advertisement and negotiation. The Superintendent may approve any such contract made by the Osage Tribal Council.

[39 FR 22254, June 21, 1974, as amended at 43 FR 8135, Feb. 28, 1978. Redesignated at 47 FR 13327, Mar. 30, 1982]

**§226.3 Surrender of lease.**

Lessee may, with the approval of the Superintendent and payment of a $10 filing fee, surrender all or any portion of any lease, have the lease cancelled as to the portion surrendered and be relieved from all subsequent obligations and liabilities. If the lease, or portion being surrendered, is owned in undivided interests by more than one party, then all parties shall join in the application for cancellation: *Provided*, That if this lease has been recorded, Lessee shall execute a release and record the same in the proper office. Such surrender shall not entitle Lessee to a refund of the unused portion of rental paid in lieu of development, nor shall it relieve Lessee and his sureties of any obligation and liability incurred prior to such surrender: *Provided further*, That when there is a partial surrender of any lease and the acreage to be retained is less than 160 acres or there is a surrender of a separate horizon, such surrender shall become effective only with the consent of the Osage Tribal Council and approval of the Superintendent.

[43 FR 8135, Feb. 28, 1978. Redesignated at 47 FR 13327, Mar. 30, 1982]

**§226.4 Form of payment.**

Sums due under a lease contract and/or the regulations in this part shall be paid by cash or check made payable to the Bureau of Indian Affairs and delivered to the Osage Agency, Pawhuska, Oklahoma 74056. Such sums shall be a prior lien on all equipment and unsold oil on the leased premises.

**§226.5 Leases subject to current regulations.**

Leases issued pursuant to this part shall be subject to the current regulations of the Secretary, all of which are made a part of such leases: *Provided*, That no amendment or change of such regulations made after the approval of any lease shall operate to affect the term of the lease, rate of royalty, rental, or acreage unless agreed to by both parties and approved by the Superintendent.

**§226.6 Bonds.**

Lessees shall furnish with each lease a corporate surety bond acceptable to the Superintendent as follows:

(a) A bond on Form D shall be filed with each lease submitted for approval. Such bond shall be in an amount of not less than $5,000 for each quarter section or fractional quarter section covered by said lease: *Provided, however*, That one bond in the penal sum or not less than $50,000 may be filed on Form G covering all oil, gas and combination oil and gas leases not in excess of 10,240 acres to which Lessee is or may become a party.

(b) In lieu of the bonds required under paragraph (a) of this section, a bond in the penal sum of $150,000 may be filed on Form 5-5438 for full nationwide coverage of all leases, without geographic or acreage limitation, to which the Lessee is or may become a party.

(c) A bond on Form H shall be filed in an amount of not less than $5,000 covering a lease acquired through assignment where the assignee does not have a collective bond on form G or nationwide bond, or the corporate surety does not execute its consent to remain bound under the original bond given to secure the faithful performance of the terms and conditions of the lease.

(d) The right is specifically reserved to increase the amount of bonds prescribed in paragraphs (a) and (c) of this section in any particular case when the Superintendent deems it proper. The

nationwide bond may be increased at any time in the discretion of the Secretary.

[39 FR 22254, June 21, 1974, as amended at 43 FR 8135, Feb. 28, 1978; 43 FR 11815, Mar. 22, 1978. Redesignated at 47 FR 13327, Mar. 30, 1982, as amended at 55 FR 33114, Aug. 14, 1990]

### § 226.7 Provisions of forms made a part of the regulations.

Leases, assignments, and supporting instruments shall be in the form prescribed by the Secretary, and such forms are hereby made a part of the regulations.

### § 226.8 Corporation and corporate information.

(a) If the applicant for a lease is a corporation, it shall file evidence of authority of its officers to execute papers; and with its first application it shall also file a certified copy of its Articles of Incorporation and, if foreign to the State of Oklahoma, evidence showing compliance with the corporation laws thereof.

(b) Whenever deemed advisable the Superintendent may require a corporation to file any additional information necessary to carry out the purpose and intent of the regulations in this part, and such information shall be furnished within a reasonable time.

### § 226.9 Rental and drilling obligations.

(a) Oil leases, gas leases, and combination oil and gas leases. Unless Lessee shall complete and place on production a well producing and selling oil and/or gas in paying quantities on the land embraced within the lease within 12 months from the date of approval of the lease, or as otherwise provided in the lease terms, or 12 months from the date the Superintendent consents to drilling on any restricted homestead selection, the lease shall terminate unless rental at the rate of not less than $1 per acre for an oil or gas lease, or not less than $2.00 per acre for a combination oil and gas lease, shall be paid before the end of the first year of the lease. The lease may also be held for the remainder of its primary term without drilling upon payment of the specified rental annually in advance, commencing with the second lease year. The lease shall terminate as of the due date of the rental unless such rental shall be received by the Superintendent, or shall have been mailed as indicated by postmark on or before said date. The completion of a well producing in paying quantities shall, for so long as such production continues, relieve Lessee from any further payment of rental, except that should such production cease during the primary term the lease may be continued only during the remaining primary term of the lease by payment of advance rental which shall commence on the next anniversary date of the lease. Rental shall be paid on the basis of a full year and no refund will be made of advance rental paid in compliance with the regulations in this part: *Provided*, That the Superintendent in his discretion may order further development of any leased acreage or separate horizon if, in his opinion, a prudent operator would conduct further development. If Lessee refuses to comply, the refusal will be considered a violation of the lease terms and said lease shall be subject to cancellation as to the acreage or horizon the further development of which was ordered: *Provided further*, That the Superintendent may impose restrictions as to time of drilling and rate of production from any well or wells when in his judgment, such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Osage Tribe. The superintendent may consider, among other things, Federal and Oklahoma laws regulating either drilling or production. If a lessee holds both an oil lease and a gas lease covering the same acreage, such lessee is subject to the provisions of this section as to both the oil lease and the gas lease.

(b) The Superintendent may, with the consent of and under terms approved by the Osage Tribal Council, grant an extension of the primary term of a lease on which the actual drilling of a well shall have commenced within the term thereof or for the purpose of enabling Lessee to obtain a market for his oil and/or gas production.

[43 FR 8135, Feb. 28, 1978. Redesignated at 47 FR 13327, Mar. 30, 1982]

**§226.10 Term of lease.**

Leases issued hereunder shall be for a primary term as established by the Osage Tribal Council, approved by the Superintendent, and so stated in the notice of sale of such leases and so long thereafter as the minerals specified are produced in paying quantities.

[43 FR 8136, Feb. 28, 1978. Redesignated at 47 FR 13327, Mar. 30, 1982]

**§226.11 Royalty payments.**

(a) *Royalty on oil*—(1) *Royalty rate.* Lessee shall pay or cause to be paid to the Superintendent, as royalty, the sum of not less than 16⅔ percent of the gross proceeds from sales after deducting the oil used by Lessee for development and operation purposes on the lease: *Provided*, That when the quantity of oil taken from all the producing wells on any quarter-section or fraction thereof, according to the public survey, during any calendar month is sufficient to average one hundred or more barrels per active producing well per day the royalty on such oil shall be not less than 20 percent. The Osage Tribal Council may, upon presentation of justifiable economic evidence by Lessee, agree to a revised royalty rate subject to approval by the Superintendent, applicable to additional oil produced from a lease or leases by enhanced recovery methods, which rate shall not be less than 12½ percent of the gross proceeds from sale of oil produced by enhanced recovery processes, other than gas injection, after deducting the oil used by Lessee for development and operating purposes on the lease or leases.

(2) Unless the Osage Tribal Council, with approval of the Secretary, shall elect to take the royalty in kind, payment is owing at the time of sale or removal of the oil, except where payments are made on division orders, and settlement shall be based on the actual selling price, but at not less than the highest posted price by a major purchaser (as defined in §226.1(h)) in Osage County, Oklahoma, who purchases production from Osage oil leases.

(3) *Royalty in kind.* Should Lessor, with approval of the Secretary, elect to take the royalty in kind, Lessee shall furnish free storage for royalty oil for a period not to exceed 60 days from date of production after notice of such election.

(b) *Royalty on gas*—(1) *Oil lease.* All casinghead gas shall belong to the oil Lessee subject to any rights under existing gas leases. All casinghead gas removed from the lease from which it is produced shall be metered unless otherwise approved by the Superintendent and be subject to a royalty of not less than 16⅔ percent of the market value of the gas and all products extracted therefrom, less a reasonable allowance for manufacture or processing. If an oil Lessee supplies casinghead gas produced from one lease for operation and/or development of other leases, either his/hers or others, a royalty of not less than 16⅔ percent shall be paid on the market value of all casinghead gas so used. All casinghead gas not utilized by the oil Lessee may, with the approval of the Superintendent, be utilized or sold by the gas Lessee, subject to the prescribed royalty of not less than 16⅔ percent of the market value.

(2) *Gas lease.* Lessee shall pay a royalty of not less than 16⅔ percent of the market value value of all natural gas and products extracted therefrom produced and sold from his lease. Natural gas used in the reasonable and prudent operation and development of said lease shall be exempted from royalty payment.

(3) *Combination oil and gas lease.* Lessee shall pay royalty as provided in paragraphs (b)(1) and (2) of this section.

(c) *Minimum royalty.* In no event shall the royalty paid from producing leases during any year be less than an amount equal to the annual rental specified for the lease. Any underpayment of minimum royalty shall be due and payable within 45 days following the end of the lease year. After the primary term, Lessee shall submit with his payment evidence that the lease is producing in paying quantities. The Superintendent is authorized to determine whether the lease is actually producing in paying quantities or has terminated for lack of such production. Payment for any underpayment not made within the time specified shall be subject to a late charge at the rate of not less than 1½

percent per month for each month or fraction thereof until paid.

[39 FR 22254, June 21, 1974, as amended at 43 FR 8136, Feb. 28, 1978; 43 FR 11815 Mar. 22, 1978. Redesignated at 47 FR 13327, Mar. 30, 1982, as amended at 55 FR 33114, Aug. 14, 1990; 59 FR 22104, Apr. 28, 1994]

### § 226.12 Government reserves right to purchase oil.

Any of the executive departments of the U.S. Government shall have the option to purchase all or any part of the oil produced from any lease at not less than the highest posted price as defined in § 226.11.

### § 226.13 Time of royalty payments and reports.

(a) Royalty payments due may be paid by either purchaser or Lessee. Unless otherwise provided by the Osage Tribal Council and approved by the Superintendent, all payments shall be due by the 25th day of each month and shall cover the sales of the preceding month. Failure to make such payments shall subject Lessee or purchaser, whoever is responsible for royalty payment, to a late charge at the rate of not less than 1½ percent for each month or fraction thereof until paid. The Osage Tribal Council, subject to the approval of the Superintendent, may waive the late charges.

(b) Lessee shall furnish certified monthly reports by the 25th of each following month covering all operations, whether there has been production or not, indicating therein the total amount of oil, natural gas, casinghead gas, and other products subject to royalty payment.

(c) Failure to remit payments or reports shall subject Lessee to further penalties as provided in §§ 226.42 and 226.43 and shall subject the division order to cancellation.

[39 FR 22254, June 21, 1974. Redesignated at 47 FR 13327, Mar. 30, 1982, as amended at 55 FR 33114, Aug. 14, 1990]

### § 226.14 Contracts and division orders.

(a) Lessee may enter into division orders or contracts with the purchasers of oil, gas, or derivatives therefrom which will provide for the purchaser to make payment of royalty in accordance with his lease: *Provided*, That such division orders or contracts shall not relieve Lessee from responsibility for the payment of the royalty should the purchaser fail to pay. No production shall be removed from the leased premises until a division order and/or contract and its terms are approved by the Superintendent: *Provided further*, That the Superintendent may grant temporary permission to run oil or gas from a lease pending the approval of a division order or contract. Lessee shall file a certified monthly report and pay royalty on the value of all oil and gas used off the premises for development and operating purposes. Lessee shall be responsible for the correct measurement and reporting of all oil and/or gas taken from the leased premises.

(b) Lessee shall require the purchaser of oil and/or gas from his/her lease or leases to furnish the Superintendent, no later than the 25th day of each month, a statement reporting the gross barrels of oil and/or gross Mcf of gas sold during the preceding month. The Superintendent may authorize an extension of time, not to exceed 10 days, for furnishing this statement.

[39 FR 22254, June 21, 1974. Redesignated at 47 FR 13327, Mar. 30, 1982, as amended at 55 FR 33114, Aug. 14, 1990]

### § 226.15 Unit leases, assignments and related instruments.

(a) *Unitization of leases.* The Osage Tribal Council and Lessee or Lessees, may, with the approval of the Superintendent, unitize or merge, two or more oil or oil and gas leases into a unit or cooperative operating plan to promote the greatest ultimate recovery of oil and gas from a common source of supply or portion thereof embracing the lands covered by such lease or leases. The cooperative or unit agreement shall be subject to the regulations in this part and applicable laws governing the leasing of the Osage Mineral Estate. Any agreement between the parties in interest to terminate a unit or cooperative agreement as to all or any portion of the lands included shall be submitted to the Superintendent for his approval. Upon approval the leases included thereunder shall be restored to their original terms: *Provided*, That for the purpose of preventing waste and to promote the

greatest ultimate recovery of oil and gas from a common source of supply or portion thereof, all oil leases, oil and gas leases, and gas leases issued heretofore and hereafter under the provisions of the regulations in this part shall be subject to any unit development plan affecting the leased lands that may be required by the Superintendent with the consent of the Osage Tribal Council, and which plan shall adequately protect the rights of all parties in interest including the Osage Mineral Estate.

(b) *Assignments.* Approved leases or any interest therein may be assigned or transferred only with the approval of the Superintendent. The assignee must be qualified to hold such lease under existing rules and regulations and shall furnish a satisfactory bond conditioned for the faithful performance of the covenants and conditions thereof. Lessee must assign either his entire interest in a lease or legal subdivision thereof, or an undivided interest in the whole lease: *Provided,* That when an assignment covers only a portion of a lease or covers interests in separate horizons such assignment shall be subject to both the consent of the Osage Tribal Council and approval of the Superintendent. If a lease is divided by the assignment of an entire interest in any part, each part shall be considered a separate lease and the assignee shall be bound to comply with all the terms and conditions of the original lease. A fully executed copy of the assignment shall be filed with the Superintendent within 30 days after the date of execution by all parties. If requested within the 30-day period, the Superintendent may grant an extension of 15 days. A filing fee of $10 shall accompany each assignment.

(c) *Overriding royalty.* Agreements creating overriding royalties or payments out of production shall not be considered as an interest in a lease as such term is used in paragraph (b) of this section. Agreements creating overriding royalties or payments out of production are hereby authorized and the approval of the Department of the Interior or any agency thereof shall not be required with respect thereto, but such agreements shall be subject to the condition that nothing in any such agreement shall be construed as modifying any of the obligations of Lessee under his lease and the regulations in this part. All such obligations are to remain in full force and effect, the same as if free of any such royalties or payments. The existence of agreements creating overriding royalties or payments out of production, whether or not acutally paid, shall not be considered in justifying the shutdown or abandonment of any well. Agreements creating overriding royalties or payments out of production need not be filed with the Superintendent unless incorporated in assignments or instruments required to be filed pursuant to paragraph (b) of this section. An agreement creating overriding royalties or payment out of production shall be suspended when the working interest income per active producing well is equal to or less than the operational cost of the well, as determined by the Superintendent.

(d) *Drilling contracts.* The Superintendent is authorized to approve drilling contracts with a stipulation that such approval does not in any way bind the Department to approve subsequent assignments that may be provided for in said contracts. Approval merely authorizes entry on the lease for the purpose of development work.

(e) *Combining leases.* The lessee owning both an oil lease and gas lease covering the same acreage is authorized to convert such leases to a combination oil and gas lease.

[39 FR 22254, June 21, 1974. Redesignated at 47 FR 13327, Mar. 30, 1982, as amended at 55 FR 33115, Aug. 14, 1990]

OPERATIONS

**§226.16 Commencement of operations.**

(a) No operations shall be permitted upon any tract of land until a lease covering such tract shall have been approved by the Superintendent: *Provided,* That the Superintendent may grant authority to any party under such rules, consistent with the regulations in this part that he deems proper, to conduct geophysical and geological exploration work.

(b) Lessee shall submit applications on forms to be furnished by the Superintendent and secure his approval before:

(1) Well drilling, treating, or workover operations are started on the leased premises.

(2) Removing casing from any well.

(c) Lessee shall notify the Superintendent a reasonable time in advance of starting work, of intention to drill, redrill, deepen, plug, or abandon a well.

**§ 226.17 How to acquire permission to begin operations on a restricted homestead allotment.**

(a) Lessee may conduct operations within or upon a restricted homestead selection only with the written consent of the Superintendent.

(b) If the allottee is unwilling to permit operations on his homestead, the Superintendent will cause an examination of the premises to be made with the allottee and lessee or his representative. Upon finding that the interests of the Osage Tribe require that the tract be developed, the Superintendent will endeavor to have the parties agree upon the terms under which operations on the homestead may be conducted.

(c) In the event the allottee and lessee cannot reach an agreement, the matter shall be presented by all parties before the Osage Tribal Council, and the Council shall make its recommendations. Such recommendations shall be considered as final and binding upon the allottee and lessee. A guardian may represent the allottee. Where no one is authorized or where no person is deemed by the Superintendent to be a proper party to speak for a person of unsound mind or feeble understanding, the Principal Chief of the Osage Tribe shall represent him.

(d) If the allottee or his representative does not appear before the Osage Tribal Council when notified by the Superintendent, or if the Council fails to act within 10 days after the matter is referred to it, the Superintendent may authorize lessee to proceed with operations in conformity with the provisions of his lease and the regulations in this part.

**§ 226.18 Information to be given surface owners prior to commencement of drilling operations.**

Except for the surveying and staking of a well, no operations of any kind shall commence until the lessee or his/her authorized representative shall meet with the surface owner or his/her representative, if a resident of and present in Osage County, Oklahoma. Unless waived by the Superintendent or otherwise agreed to between the lessee and surface owner, such meeting shall be held at least 10 days prior to the commencement or any operations, except for the surveying and staking of the well. At such meeting lessee or his/her authorized representative shall comply with the following requirements:

(a) Indicate the location of the well or wells to be drilled.

(b) Arrange for route of ingress and egress. Upon failure to agree on route ingress and egress, said route shall be set by the Superintendent.

(c) Impart to said surface owners the name and address of the party or representative upon whom the surface owner shall serve any claim for damages which he may sustain from mineral development or operations, and as to the procedure for settlement thereof as provided in § 226.21

(d) Where the drilling is to be on restricted land, lessee or his authorized representative in the manner provided above shall meet with the Superintendent.

(e) When the surface owner or his/her representative is not a resident of, or is not physically present in, Osage County, Oklahoma, or cannot be contacted at the last known address, the Superintendent may authorize lessee to proceed with operations.

[39 FR 22254, June 21, 1974, as amended at 41 FR 50648, Nov. 17, 1976; 43 FR 8136, Feb. 28, 1978. Redesignated at 47 FR 13327, Mar. 30, 1982, as amended at 55 FR 33115, Aug. 14, 1990]

**§ 226.19 Use of surface of land.**

(a) Lessee or his/her authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. This includes but is not

limited to the right to lay and maintain pipelines, electric lines, pull rods, other appliances necessary for operations and marketing, and the right-of-way for ingress and egress to any point of operations. If Lessee and surface owner are unable to agree as to the routing of pipelines, electric lines, etc., said routing shall be set by the Superintendent. The right to use water for lease operations is established by §226.24. Lessee shall conduct his/her operations in a workmanlike manner, commit no waste and allow none to be committed upon the land, nor permit any unavoidable nuisance to be maintained on the premises under his/her control.

(b) Before commencing a drilling operation, Lessee shall pay or tender to the surface owner commencement money in the amount of $25 per seismic shot hole and commencement money in the amount of $300 for each well, after which Lessee shall be entitled to immediate possession of the drilling site. Commencement money will not be required for the redrilling of a well which was originally drilled under the currently lease. A drilling site shall be held to the minimum area essential for operations and shall not exceed one and one-half acres in area unless authorized by the Superintendent. Commencement money shall be a credit toward the settlement of the total damages. Acceptance of commencement money by the surface owner does not affect his/her right to compensation for damages as described in §226.20, occasioned by the drilling and completion of the well for which it was paid. Since actual damage to the surface from operations cannot necessarily be ascertained prior to the completion of a well as a serviceable well or dry hole, a damage settlement covering the drilling operation need not be made until after completion of drilling operations.

(c) Where the surface is restricted land, commencement money shall be paid to the Superintendent for the landowner. All other surface owners shall be paid or tendered such commencement money direct. Where such surface owners are not residents of Osage County nor have a representative located therein, such payment shall be made or tendered to the last known address of the surface owner at least 5 days before commencing drilling operation on any well: *Provided*, That should lessee be unable to reach the owner of the surface of the land for the purpose of tendering the commencement money or if the owner of the surface of the land shall refuse to accept the same, lessee shall deposit such amount with the Superintendent by check payable to the Bureau of Indian Affairs. The superintendent shall thereupon advise the owner of the surface of the land by mail at his last known address that the commencement money is being held for payment to him upon his written request.

(d) Lessee shall also pay fees for tank sites not exceeding 50 feet square at the rate of $100 per tank site or other vessel: *Provided*, That no payment shall be due for a tank temporarily set on a well location site for drilling, completing, or testing. The sum to be paid for a tank occupying more than 50 feet square shall be agreed upon between the surface owner and lessee or, on failure to agree, the same shall be determined by arbitration as provided by §226.21.

[39 FR 22254, June 22, 1974, as amended at 43 FR 8136, Feb. 28, 1978; 43 FR 11815, Mar. 22, 1978. Redesignated at 47 FR 13327, Mar. 30, 1982, as amended at 55 FR 33115, Aug. 14, 1990]

**§226.20 Settlement of damages claimed.**

(a) Lessee or his authorized representative or geophysical permittee shall pay for all damages to growing crops, any improvements on the lands, and all other surface damages as may be occasioned by operations. Commencement money shall be a credit toward the settlement of the total damages occasioned by the drilling and completion of the well for which it was paid. Such damages shall be paid to the owner of the surface and by him apportioned among the parties interested in the surface, whether as owner, surface lessee, or otherwise, as the parties may mutually agree or as their interests may appear. If lessee or his authorized representative and surface owner are unable to agree concerning damages, the same shall be determined by arbitration. Nothing herein contained shall

be construed to deny any party the right to file an action in a court of competent jurisdiction if he is dissatisfied with the amount of the award.

(b) Surface owners shall notify their lessees or tenants of the regulations in this part and of the necessary procedure to follow in all cases of alleged damages. If so authorized in writing, surface lessees or tenants may represent the surface owners.

(c) In settlement of damages on restricted land all sums due and payable shall be paid to the Superintendent for credit to the account of the Indian entitled thereto. The Superintendent will make the apportionment between the Indian landowner or owners and surface Lessee of record.

(d) Any person claiming an interest in any leased tract or in damages thereto, must furnish to the Superintendent a statement in writing showing said claimed interest. Failure to furnish such statement shall constitute a waiver of notice and estop said person from claiming any part of such damages after the same shall have been disbursed.

[39 FR 22254, June 21, 1974, as amended at 41 FR 50649, Nov. 17, 1976; 43 FR 8137, Feb. 28, 1978. Redesignated at 47 FR 13327, Mar. 30, 1982]

**§ 226.21 Procedure for settlement of damages claimed.**

Where the surface owner or his lessee suffers damage due to the oil and gas operations and/or marketing of oil or gas by lessee or his authorized representative, the procedure for recovery shall be as follows:

(a) The party or parties aggrieved shall, as soon as possible after the discovery of any damages, serve written notice to Lessee or his authorized representative as provided by § 226.18. Written notice shall contain the nature and location of the alleged damages, the date of occurrence, the names of the party or parties causing said damages, and the amount of damages. It is not intended by this requirement to limit the time within which action may be brought in the courts to less than the 90-day period allowed by section 2 of the Act of March 2, 1929 (45 Stat. 1478, 1479).

(b) If the alleged damages are not adjusted at the time of such notice, Lessee or his authorized representative shall try to adjust the claim with the party or parties aggrieved within 20 days from receipt of the notice. If the claimant is the owner of restricted property and a settlement results, a copy of the settlement agreement shall be filed with the Superintendent. If the settlement agreement is approved by the Superintendent, payment shall be made to the Superintendent for the benefit of said claimant.

(c) If the parties fail to adjust the claim within the 20 days specified, then within 10 days thereafter each of the interested parties shall appoint an arbitrator who immediately upon their appointment shall agree upon a third arbitrator. If the two arbitrators shall fail to agree upon a third arbitrator within 10 days, they shall immediately notify the parties in interest. If said parties cannot agree upon a third arbitrator within 5 days after receipt of such notice, the Superintendent shall appoint the third arbitrator.

(d) As soon as the third arbitrator is appointed, the arbitrators shall meet; hear the evidence and arguments of the parties; and examine the lands, crops, improvements, or other property alleged to have been injured. Within 10 days they shall render their decision as to the amount of the damage due. The arbitrators shall be disinterested persons. The fees and expenses of the third arbitrator shall be borne equally by the claimant and Lessee or his authorized representative. Each Lessee or his authorized representative and claimant shall pay the fee and expenses for the arbitrator appointed by him.

(e) When an act of an oil or gas lessee or his authorized representative results in injury to both the surface owner and his lessee, the parties aggrieved shall join in the appointment of an arbitrator. Where the injury complained of is chargeable to one or more oil or gas Lessee, or his authorized representative, such lessee or said representative shall join in the appointment of an arbitrator.

(f) Any two of the arbitrators may make a decision as to the amount of damage due. The decision shall be in writing and shall be served forthwith

upon the parties in interest. Each party shall have 90 days from the date the decision is served in which to file an action in a court of competent jurisdiction. If no such action is filed within said time and the award is against Lessee or his/her authorized representative, he/she shall pay the same, together with interest at an annual rate established for the Internal Revenue Service from date of award, within 10 days after the expiration of said period for filing an action.

(g) Lessee or his authorized representative shall file with the Superintendent a report on each settlement agreement, setting out the nature and location of the damage, date, and amount of the settlement, and any other pertinent information.

[39 FR 22254, June 21, 1974, as amended at 41 FR 50649, Nov. 17, 1976. Redesignated at 47 FR 13327, Mar. 30, 1982, as amended at 55 FR 33115, Aug. 14, 1990; 64 FR 13896, Mar. 23, 1999]

### §226.22 Prohibition of pollution.

(a) All operators, contractors, drillers, service companies, pipe pulling and salvaging contractors, or other persons, shall at all times conduct their operations and drill, equip, operate, produce, plug and abandon all wells drilled for oil or gas, service wells or exploratory wells (including seismic, core and stratigraphic holes) in a manner that will prevent pollution and the migration of oil, gas, salt water or other substance from one stratum into another, including any fresh water bearing formation.

(b) Pits for drilling mud or deleterious substance used in the drilling, completion, recompletion, or workover of any well shall be constructed and maintained to prevent pollution of surface and subsurface fresh water. These pits shall be enclosed with a fence of at least four strands of barbed wire, or an approved substitute, stretched taut to adequately braced corner posts, unless the surface owner, user, or the Superintendent gives consent to the contrary. Immediately after completion of operations, pits shall be emptied and leveled unless otherwise requested by surface owner or user.

(c) Drilling pits shall be adequate to contain mud and other material extracted from wells and shall have adequate storage to maintain a supply of mud for use in emergencies.

(d) No earthen pit, except those used in the drilling, completion, recompletion or workover of a well, shall be constructed, enlarged, reconstructed or used without approval of the Superintendent. Unlined earthen pits shall not be used for the continued storage of salt water or other deleterious substances.

(e) Deleterious fluids other than fresh water drilling fluids used in drilling or workover operations, which are displaced or produced in well completion or stimulation procedures, including but not limited to fracturing, acidizing, swabbing, and drill stem tests, shall be collected into a pit lined with plastic of at least 30 mil or a metal tank and maintained separately from above-mentioned drilling fluids to allow for separate disposal.

[39 FR 22254, June 21, 1974. Redesignated at 47 FR 13327, Mar. 30, 1982, as amended at 55 FR 33115, Aug. 14, 1990]

### §226.23 Easements for wells off leased premises.

The Superintendent, with the consent of the Osage Tribal Council, may grant commercial and noncommercial easements for wells off the leased premises to be used for purposes associated with oil and gas production. Rental payable to the Osage Tribe for such easements shall be an amount agreed to by Grantee and the Osage Tribal Council subject to the approval of the Superintendent. Grantee shall be responsible for all damages resulting from the use of such wells and settlement therefor shall be made as provided in §226.21.

[39 FR 22254, June 21, 1974. Redesignated at 47 FR 13327, Mar. 30, 1982, as amended at 55 FR 33115, Aug. 14, 1990]

### §226.24 Lessee's use of water.

Lessee or his contractor may, with the approval of the Superintendent, use water from streams and natural water courses to the extent that same does not diminish the supply below the requirements of the surface owner from whose land the water is taken. Similarly, Lessee or his contractor may use water from reservoirs formed by the impoundment of water from such

streams and natural water courses, provided such use does not exceed the quantity to which they originally would have been entitled had the reservoirs not been constructed. Lessee or his contractor may install necessary lines and other equipment within the Osage Mineral Estate to obtain such water. Any damage resulting from such installation shall be settled as provided in § 226.21.

### § 226.25 Gas well drilled by oil lessees and vice versa.

Prior to drilling, the oil or gas lessee shall notify the other lessees of his/her intent to drill. When an oil lessee in drilling a well encounters a formation or zone having indications of possible gas production, or the gas lessee in drilling a well encounters a formation or zone having indication of possible oil production, he/she shall immediately notify the other lessee and the Superintendent. Lessee drilling the well shall obtain all information which a prudent operator utilizes to evaluate the productive capability of such formation or zone.

(a) *Gas well to be turned over to gas lessee.* If the oil lessee drills a gas well, he/she shall, without removing from the well any of the casing or other equipment, immediately shut the well in and notify the gas lessee and the Superintendent. If the gas lessee does not, within 45 days after receiving notice and cost of drilling, elect to take over such well and reimburse the oil lessee the cost of drilling, including all damages paid and the cost in-place of casing, tubing, and other equipment, the oil lessee shall immediately confine the gas to the original stratum. The disposition of such well and the production therefrom shall then be subject to the approval of the Superintendent. In the event the oil lessee and gas lessee cannot agree on the cost of the well, such cost shall be apportioned between the oil and gas lessee by the Superintendent. If such apportionment is not accepted, the well shall be plugged by the oil and gas lessee who drilled the well.

(b) Oil well to be turned over to oil lessee. If the gas lessee drills an oil well, he/she must immediately, without removing from the well any of the casing or other equipment, notify the oil lessee and the superintendent.

(1) If the oil lessee does not, within 45 days after receipt of notice and cost of drilling, elect to take over the well, he/she must immediately notify the gas lessee. From that point, the superintendent must approve the disposition of the well, and any gas produced from it.

(2) If the oil lessee chooses to take over the well, he/she must pay to the gas lessee:

(i) The cost of drilling the well, including all damages paid; and

(ii) The cost in place of casing and other equipment.

(3) If the oil lessee and the gas lessee cannot agree on the cost of the well, the superintendent will apportion the cost between the oil and gas lessees. If the lessees do not accept the apportionment, the oil or gas lessee who drilled the well must plug the well.

(c) *Lands not leased.* If the gas lessee shall drill an oil well upon lands not leased for oil purposes or vice versa, the Superintendent may, until such time as said lands are leased, permit the lessee who drilled the well to operate and market the production therefrom. When said lands are leased, the lessee who drilled and completed the well shall be reimbursed by the oil or gas lessee, for the cost of drilling said well, including all damages paid and the cost in-place of casing, tubing, and other equipment. If the lessee does not elect to take over said well as provided above, the disposition of such well and the production therefrom shall be determined by the Superintendent. In the event the oil lessee and gas lessee cannot agree on the cost of the well, such cost shall be apportioned between the oil and gas lessee by the Superintendent. If such apportionment is not accepted, the well shall be plugged by the oil and gas lessee who drilled the well.

[39 FR 22254, June 21, 1974. Redesignated at 47 FR 13327, Mar. 30, 1982, as amended at 55 FR 33115, Aug. 14, 1990; 64 FR 13896, Mar. 23, 1999]

### § 226.26 Determining cost of well.

The term "cost of drilling" as applied where one lessee takes over a well drilled by another, shall include all

Case 1:99-cv-00550-ECH Document 309-52 Filed 06/30/2008 Page 26 of 31



reasonable, usual, necessary, and proper expenditures. A list of expenses mentioned in this section shall be presented to proposed purchasing lessee within 10 days after the completion of the well. In the event of a disagreement between the parties as to the charges assessed against the well that is to be taken over, such charges shall be determined by the Superintendent.

**§226.27 Gas for operating purposes and tribal use.**

(a) *Gas to be furnished oil lessee.* Lessee of a producing gas lease shall furnish the oil lessee sufficient gas for operating purposes at a rate to be agreed upon, or on failure to agree the rate shall be determined by the Superintendent: *Provided*, That the oil lessee shall at his own expense and risk, furnish and install the necessary connections to the gas lessee's well or pipeline. All such connections shall be reported in writing to the Superintendent.

(b) *Use of gas by Osage Tribe.* (1) Gas from any well or wells shall be furnished any Tribal-owned building or enterprise at a rate not to exceed the price less royalty being received or offered by a gas purchaser: *Provided*, That such requirement shall be subject to the determination by the Superintendent that gas in sufficient quantities is available above that needed for lease operation and that no waste would result. In the absence of a gas purchaser the rate to be paid by the Osage Tribe shall be determined by the Superintendent based on prices being paid by purchasers in the Osage Mineral Estate. The Osage Tribe is to furnish all necessary material and labor for such connection with Lessee's gas system. The use of such gas shall be at the risk of the Osage Tribe at all times.

(2) Any member of the Osage Tribe residing in Osage County and outside a corporate city is entitled to the use at his own expense of not to exceed 400,000 cubic feet of gas per calendar year for his principal residence at a rate not to exceed the amount paid by a gas purchaser plus 10 percent: *Provided*, That such requirement shall be subject to the determination by the Superintendent that gas in sufficient quantities is available above that needed for lease operation and that no waste would result. In the absence of a gas purchaser the amount to be paid by the Tribal member shall be determined by the Superintendent. Gas to Tribal members is not royalty free. The Tribal member is to furnish all necessary material and labor for such connection to Lessee's gas system, and shall maintain his own lines. The use of such gas shall be at the risk of the Tribal member at all times.

(3) Gas furnished by Lessee under paragraphs (b) (1) and (2) of this section may be terminated only with the approval of the Superintendent. Written application for termination must be made to the Superintendent showing justification.

CESSATION OF OPERATIONS

**§226.28 Shutdown, abandonment, and plugging of wells.**

No productive well shall be abandoned until its lack for further profitable production of oil and/or gas has been demonstrated to the satisfaction of the Superintendent. Lessee shall not shut down, abandon, or otherwise discontinue the operation or use of any well for any purpose without the written approval of the Superintendent. All applications for such approval shall be submitted to the Superintendent on forms furnished by him/her.

(a) Application for authority to permanently shut down or discontinue use or operation of a well shall set forth justification, probable duration the means by which the well bore is to be protected, and the contemplated eventual disposition of the well. The method of conditioning such well shall be subject to the approval of the Superintendent.

(b) Prior to permanent abandonment of any well, the oil lessee or the gas lessee, as the case may be, shall offer the well to the other for his recompletion or use under such terms as may be mutually agreed upon but not in conflict with the regulations. Failure of the Lessee receiving the offer to reply within 10 days after receipt thereof shall be deemed as rejection of the offer. If, after indicating acceptance, the two parties cannot agree on the terms of the offer within 30 days, the

disposition of such well shall be determined by the Superintendent.

(c) The Superintendent is authorized to shut in a lease when the lessee fails to comply with the terms of the lease, the regulations, and/or orders of the Superintendent.

[39 FR 22254, June 21, 1974. Redesignated at 47 FR 13327, Mar. 30, 1982, as amended at 55 FR 33115, Aug. 14, 1990]

### § 226.29 Disposition of casings and other improvements.

(a) Upon termination of lease, permanent improvements, unless otherwise provided by written agreement with the surface owner and filed with the Superintendent, shall remain a part of said land and become the property of the surface owner upon termination of the lease, other than by cancellation. Exceptions include personal property not limited to tools, tanks, pipelines, pumping and drilling equipment, derricks, engines, machinery, tubing, and the casings of all wells: Provided, That when any lease terminates, all such personal property shall be removed the word "terminates"; and in the last sentence of the paragraph, within 90 days or such reasonable extension of time as may be granted by the Superintendent. Otherwise, the ownership of all casings shall revert to Lessor and all other personal property and permanent improvements to the surface owner. Nothing herein shall be construed to relieve lessee of responsibility for removing any such personal property or permanent improvements from the premises if required by the Superintendent and restoring the premises as nearly as practicable to the original state.

(b) Upon cancellation of lease. When there has been a cancellation for cause, Lessor shall be entitled and authorized to take immediate possession of the lease premises and all permanent improvements and all other equipment necessary for the operation of the lease.

(c) Wells to be abandoned shall be promptly plugged as prescribed by the Superintendent. Applications to plug shall include a statement affirming compliance with § 226.28(b) and shall set forth reasons for plugging, a detailed statement of the proposed work including kind, location, and length of plugs (by depth), plans for mudding and cementing, testing, parting and removing casing, and any other pertinent information: *Provided*, That the Superintendent may give oral permission and instructions pending receipt of a written application to plug a newly drilled hole. Lessee shall remit a fee of $15 with each written application for authority to plug a well. This fee will be refunded if permission is not granted.

(d) Lessee shall plug and fill all dry or abandoned wells in a manner to confine the fluid in each formation bearing fresh water, oil, gas, salt water, and other minerals, and to protect it against invasion of fluids from other sources. Mud-laden fluid, cement, and other plugs shall be used to fill the hole from bottom to top: *Provided*, That if a satisfactory agreement is reached between Lessee and the surface owner, subject to the approval of the Superintendent, Lessee may condition the well for use as a fresh water well and shall so indicate on the plugging record. The manner in which plugging material shall be introduced and the type of material so used shall be subject to the approval of the Superintendent. Within 10 days after plugging, Lessee shall file with the Superintendent a complete report of the plugging of each well. When any well is plugged and abandoned, Lessee shall, within 90 days, clean up the premises around such well to the satisfaction of the Superintendent.

[39 FR 22254, June 21, 1974. Redesignated at 47 FR 13327, Mar. 30, 1982, as amended at 55 FR 33115, Aug. 14, 1990]

## Requirements of Lessees

### § 226.30 Lessees subject to Superintendent's orders; books and records open to inspection.

Lessee shall comply with all orders or instructions issued by the Superintendent. The Superintendent or his representative may enter upon the leased premises for the purpose of inspection. Lessee shall keep a full and correct account of all operations, receipts, and disbursements and make reports thereof, as required. Lessee's books and records shall be available to the Superintendent for inspection.

### §226.31 Lessee's process agents.

(a) Before actual drilling or development operations are commenced on leased lands, Lessee or Assignee, if not a resident of the State of Oklahoma, shall appoint a local or resident representative within the State of Oklahoma on whom the Superintendent may serve notice or otherwise communicate in securing compliance with the regulations in this part, and shall notify the Superintendent of the name and post office address of the representative appointed.

(b) Where several parties own a lease jointly, one representative or agent shall be designated whose duties shall be to act for all parties concerned. Designation of such representative should be made by the party in charge of operations.

(c) In the event of the incapacity or absence from the State of Oklahoma of such designated local or resident representative, Lessee shall appoint a substitute to serve in his stead. In the absence of such representative or appointed substitute, any employee of Lessee upon the leased premises or person in charge of drilling or related operations thereon shall be considered the representative of Lessee for the purpose of service of orders or notices as herein provided.

### §226.32 Well records and reports.

(a) Lessee shall keep accurate and complete records of the drilling, redrilling, deepening, repairing, treating, plugging, or abandonment of all wells. These records shall show all the formations penetrated, the content and character of oil, gas, or water in each formation, and the kind, weight, size, landed depth and cement record of casing used in drilling each well; the record of drill-stem and other bottom hole pressure or fluid sample surveys, temperature surveys, directional surveys, and the like; the materials and procedure used in the treating or plugging of wells or in preparing them for temporary abandonment; and any other information obtained in the course of well operation.

(b) Lessee shall take such samples and make such tests and surveys as may be required by the Superintendent to determine conditions in the well or producing reservoir and to obtain information concerning formations drilled, and shall furnish reports thereof as required by the Superintendent.

(c) Within 10 days after completion of operations on any well, Lessee shall transmit to the Superintendent the applicable information on forms furnished by the Superintendent; a copy of electrical, mechanical or radioactive log, or other types of survey of the well bore; and core analysis obtained from the well. Lessee shall also submit other reports and records of operations as may be required and in the manner and form prescribed by the Superintendent.

(d) Lessee shall measure production of oil, gas, and water from individual wells at reasonably frequent intervals to the satisfaction of the Superintendent.

(e) Upon request and in the manner and form prescribed by the Superintendent, Lessee shall furnish a plat showing the location, designation, and status of all wells on the leased lands, together with such other pertinent information as the Superintendent may require.

### §226.33 Line drilling.

Lessee shall not drill within 300 feet of boundary line of leased lands, nor locate any well or tank within 200 feet of any public highway, any established watering place, or any building used as a dwelling, granary, or barn, except with the written permission of the Superintendent. Failure to obtain advance written permission from the Superintendent shall subject lessee to cancellation of his/her lease and/or plugging of the well.

[39 FR 22254, June 21, 1974. Redesignated at 47 FR 13327, Mar. 30, 1982, as amended at 55 FR 33116, Aug. 14, 1990]

### §226.34 Wells and tank batteries to be marked.

Lessee shall clearly and permanently mark all wells and tank batteries in a conspicuous place with number, legal description, operator, and telephone number, and shall take all necessary precautions to preserve these markings.

[55 FR 33116, Aug. 14, 1990]

**§ 226.35 Formations to be protected.**

Lessee shall, to the satisfaction of the Superintendent, take all proper precautions and measures to prevent damage or pollution of oil, gas, fresh water, or other mineral bearing formations.

**§ 226.36 Control devices.**

In drilling operations in fields where high pressures, lost circulation, or other conditions exist which could result in blowouts, lessee shall install an approved gate valve or other controlling device which is in proper working condition for use until the well is completed. At all times preventative measures must be taken in all well operations to maintain proper control of subsurface strata.

[55 FR 33116, Aug. 14, 1990]

**§ 226.37 Waste of oil and gas.**

Lessee shall conduct all operations in a manner that will prevent waste of oil and gas and shall not wastefully utilize oil or gas. The Superintendent shall have the authority to impose such requirements as he deems necessary to prevent waste of oil and gas and to promote the greatest ultimate recovery of oil and gas. Waste as applied herein includes, but is not limited to, the inefficient excessive or improper use or dissipation of reservoir energy which would reasonably reduce or diminish the quantity of oil or gas that might ultimately be produced, or the unnecessary or excessive surface loss or destruction, without beneficial use, of oil and/or gas.

**§ 226.38 Measuring and storing oil.**

All production run from the lease shall be measured according to methods and devices approved by the Superintendent. Facilities suitable for containing and measuring accurately all crude oil produced from the wells shall be provided by Lessee and shall be located on the leasehold unless otherwise approved by the Superintendent. Lessee shall furnish to the Superintendent a copy of 100-percent capacity tank table for each tank. Meters and installations for measuring oil must be approved, and tests of their accuracy shall be made when directed by the Superintendent.

**§ 226.39 Measurement of gas.**

All gas, required to be measured, shall be measured by meter (preferably of the orifice meter type) unless otherwise agreed to by the Superintendent. All gas meters must be approved by the Superintendent and installed at the expense of Lessee or purchaser at such places as may be agreed to by the Superintendent. For computing the volume of all gas produced, sold or subject to royalty, the standard of pressure shall be 14.65 pounds to the square inch, and the standard of temperature shall be 60 degrees F. All measurements of gas shall be adjusted by computation to these standards, regardless of the pressure and temperature at which the gas was acutally measured, unless otherwise authorized in writing by the Superintendent.

**§ 226.40 Use of gas for lifting oil.**

Lessee shall not use natural gas from a distinct or separate stratum for the purpose of flowing or lifting the oil, except where said Lessee has an approved right to both the oil and the gas, and then only with the approval of the Superintendent of such use and of the manner of its use.

**§ 226.41 Accidents to be reported.**

Lessee shall make a complete report to the Superintendent of all accidents, fires, or acts of theft and vandalism occurring on the leased premises.

PENALTIES

**§ 226.42 Penalty for violation of lease terms.**

Violation of any of the terms or conditions of any lease or of the regulations in this part shall subject the lease to cancellation by the Superintendent, or Lessee to a fine of not more than $500 per day for each day of such violation or noncompliance with the orders of the Superintendent, or to both such fine and cancellation. Fines not received within 10 days after notice of the decision shall be subject to late charges at the rate of not less than 1½ percent per month for each month or fraction thereof until paid. The Osage

Tribal Council, subject to the approval of the Superintendent, may waive the late charge.

[39 FR 22254, June 21, 1974. Redesignated at 47 FR 13327, Mar. 30, 1982, as amended at 55 FR 33116, Aug. 14, 1990]

**§ 226.43 Penalties for violation of certain operating regulations.**

In lieu of the penalties provided under § 226.42, penalties may be imposed by the Superintendent for violation of certain sections of the regulations of this part as follows:

(a) For failure to obtain permission to start operations required by § 226.16(b), $50 per day until permission is obtained.

(b) For failure to file records required by § 226.32, $50 per day until compliance is met.

(c) For failure to mark wells and tank batteries as required by § 226.34, $50 for each well and tank battery.

(d) For failure to construct and maintain pits as required by § 226.22, $50 for each day after operations are commenced on any well until compliance is met.

(e) For failure to comply with § 226.36 regarding valve or other approved controlling device, $100.

(f) For failure to notify Superintendent before drilling, redrilling, deepening, plugging, or abandoning any well, as required by §§ 226.16(c) and 226.25, $200.

(g) For failure to properly care for and dispose of deleterious fluids as provided in § 226.22, $500 per day until compliance is met.

(h) For failure to file plugging reports as required by § 226.29 and for failure to file reports as required by § 226.13, $50 per day for each violation until compliance is met.

(i) For failure to perform or start an operation within 5 days after ordered by the Superintendent in writing under authority provided in this part, if said operation is thereafter performed by or through the Superintendent, the actual cost of performance thereof, plus 25 percent.

(j) Lessee or his/her authorized representative is hereby notified that criminal procedures are provided by 18 U.S.C. 1001 for knowingly filing fraudulent reports and information.

[39 FR 22254, June 21, 1974. Redesignated at 47 FR 13327, Mar. 30, 1982, as amended at 55 FR 33116, Aug. 14, 1990]

APPEALS AND NOTICES

**§ 226.44 Appeals.**

Any person, firm or corporation aggrieved by any decision or order issued by or under the authority of the Superintendent, by virtue of the regulations in this part, may appeal pursuant to 25 CFR part 2.

[55 FR 33116, Aug. 14, 1990]

**§ 226.45 Notices.**

Notices and orders issued by the Superintendent to the representative and/or operator shall be binding on the lessee. The Superintendent may in his/her discretion increase the time allowed in his/her orders and notices.

[55 FR 33116, Aug. 14, 1990]

**§ 226.46 Information collection.**

The Office of Management and Budget has determined that the information collection requirements contained in this part need not be submitted for clearance pursuant to 44 U.S.C. 3501 *et seq.*

[55 FR 33116, Aug. 14, 1990]

## PART 227—LEASING OF CERTAIN LANDS IN WIND RIVER INDIAN RESERVATION, WYOMING, FOR OIL AND GAS MINING

Sec.
227.1 Definitions.

HOW TO ACQUIRE LEASES

227.2 Applications for leases.
227.3 Leases to citizens of the United States except Government employees.
227.4 Sale of oil and gas leases.
227.5 Terms of leases, procedure for renewal and execution.
227.6 Corporations and corporate information.
227.7 Additional information from applicant.
227.8 Bonds.
227.9 Acreage limitation: Leases on noncontiguous tracts.
227.10 Minerals other than oil and gas.

## 1999

(Regulations published from January 1, 1999, through April 1, 1999)

## 25 CFR

64 FR Page

Chapter I

31.4 Amended....13895
39.22 (b) amended....13895
39.31 (b) amended....13895
39.53 (b) amended....13895
39.54 (b) amended....13895
111.1 Amended....13895
112 Note amended....13895
115.9 Amended....13895
140.25 Amended....13895
151 Note amended....13895
151.15 (a) amended....13895

## 25 CFR—Continued

64 FR Page

Chapter I—Continued

152 Note amended....13895
160.1 Amended....13895
162.13 (a) amended....13896
226.21 (f) amended....13896
226.25 (b) revised....13896
256.2 Amended....13896
256.6 (e) revised....13896
273.1 (c) amended....13896
275.3 (b) amended....13896
276.11 (b) introductory text, (1) and (c) introductory text amended....13897

Chapter III

542 Added....596
Technical correcti- a....4966