# In The United States Court of Federal Claims

| | | |
|---|---|---|
| THE OSAGE TRIBE OF INDIANS OF OKLAHOMA, | ) | |
| *Plaintiff,* | ) | Electronically Filed August 11, 2008 |
| v. | ) | No. 99-550L (into which has been consolidated No. 00-169L) |
| THE UNITED STATES OF AMERICA, | ) | Judge Emily C. Hewitt |
| *Defendant.* | ) | |

**AMENDED MOTION FOR LEAVE TO INTERVENE AND BRIEF IN SUPPORT**

Kenneth E. Crump Jr.
CRUMP LAW FIRM
400 South Boston Avenue, Suite 1100
Tulsa, Oklahoma 74103
Telephone (918) 585-3444
Facsimile (918) 585-3450
ATTORNEY for PROPOSED INTERVENORS
CHRIS HADLOCK, JODELL HEATH,
LINDA HESKETT, CORA JEAN JECH,
ANNA KAY PRICE, GEORGE TALLCHIEF,
AND JULIE WILSON

# TABLE OF CONTENTS

I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........ 1

II. ORDER REQUESTED ........ 3

III. STANDARDS OF INTERVENTION ........ 4

A. Shared Interest in Subject of Action ........ 4

B. Proposed Intervenors Ability to Protect their Interests ........ 6

C. Adequacy of Representation ........ 6

D. Timeliness ........ 10

IV. PROPOSED INTERVENORS ARE AN IDENTIFIABLE GROUP UNDER 28 U.S.C. §1505 AND REQUEST LEAVE TO INTERVENE AS SUCH ........ 11

# TABLE OF AUTHORITIES

## FEDERAL CASES


*Chippewa Cree Tribe of the Rocky Boy's Reeservation v. United States*, 92-cv-00675, filed September 27, 2006, dkt. 264 ........ 11, 12

*Cobell v. Kempthorne*, Civil Action No. 96-1285, dkt. 3542, filed June 18, 2008 ........ 8

*NAACP v. New York*, 413 U.S. 345, 365, 93 S. Ct. 2591, 37 L.Ed.2d 648 (1973) ........ 10

*Osage Nation v. United States*, 57 Fed. Cl. 392, 393, 395 (2003) ........ 2, 3, 5, 12

*Osage Nation v. United States* (*Osage II*,) 72 Fed. Cl. 629, 631 (2006) ........ 1, 3, 12

*Sumitomo Metal Indus., Ltd. V. Babcock & Wilcox Co.*, 69 C.C.P.A. 75, 669 F .2d 703, 707 (C.C.P.A. 1982) ........ 10

*Trbovich v. United Mine Workers of America,* 404 U.S. 525 at 538 (1972) ........ 6

*United Keetoowah Band of Cherokee Indians of Okla. v. U.S.* 480 F.3d 1318 (2007) ........ 4

*Wolfchild v. United States*, 77 Fed. Cl. 511, 531 (2006) (citing *Bogert's Trusts and Trustees* §970) ........ 5, 12


## CONSTITUTIONS AND STATUTES


Osage Nation Constitution, adopted on March 11, 2006 ........ 1, 8, 9, 10
- Art. III, §1 ........ 1
- Art. XV, §33 ........ 9

34 Stat. 539 ........ 1, 2, 4, 5, 13

118 Stat. 2609 (2004) ........ 7, 8, 9, 10

28 U.S.C. § 1491 ........ 6

28 U.S.C. §1505 ........ 6, 11, 12

## OTHER AUTHORITY

Fed. R. Civ. P. 24 (a)(2) ..... 4

RCFC 24 ..... 1, 4

RCFC 24(a) ..... 6, 11

RCFC 24(b) ..... 10, 11

## MISCELLANEOUS

ONCA-08-25, the "Osage Nation Claims Distribution Act" ..... 8

Transcript of House Resources Committee Field Hearing
on H.R. 2912 (March 15, 2004) ..... 8

**AMENDED MOTION FOR LEAVE TO INTERVENE**
**AND BRIEF IN SUPPORT**

The proposed Intervenors, CHRIS HADLOCK, JODELL HEATH, LINDA HESKETT, CORA JEAN JECH, ANNA KAY PRICE, GEORGE TALLCHIEF, AND JULIE WILSON ("Proposed Intervenors"), submit the following Amended Motion for Leave to Intervene, pursuant to RCFC 24. They are lineal descendants of the original allottees under the 1906 Osage Allotment Act (1906 Act) and headright owners.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

1. The Proposed Intervenors are members of the Osage Tribe of Indians of Oklahoma (the Tribe), also known as the Osage Nation as it has been referred to in the (Osage Nation Constitution, adopted on March 11, 2006). (OSAGE NATION CONST. art. III, § 1, Exhibit A attached and Affidavit of Linda Heskett, Exhibit B attached). These members are lineal descendants of original allottees under the 1906 Act. They own headrights, or pro-rata shares in the Osage mineral estate, which confer upon them rights to receive quarterly distributions of funds derived from the Osage mineral income and interest on funds held in the Osage tribal trust fund, of which the government is the trustee. They will be beneficiaries of certain damages that have been and may be awarded pursuant to any future judgment of this Court in these cases. *See Osage Nation v. United States* (*Osage II*,) 72 Fed. Cl. 629, 631 (2006).

2. The damages sought in this case, some of which have already been determined, were incurred because of the United States' breach of its fiduciary duties with regard to management of and payment of royalty income derived from Osage oil and gas leases. Those duties were established by the Osage Allotment Act of 1906 ch. 3527, 34 Stat. 539

(the 1906 Act), in which a trust fund was created whereby "all funds belonging to the Osage tribe, and all moneys due, and all moneys that may become due, or may hereafter be found to be due the said Osage tribe of Indians, shall be held in trust by the United States." 34 Stat. 539, 544 §4.

3. The income from those sources is supposed to be allocated, in part, to the Tribe for Osage Tribal operations and a portion paid for the Oklahoma gross receipts tax, then to the headright owners pro-rata, according to each of their respective headright shares. (The Tribe's portion is not known to the headright owners.) According to 34 Stat. 539, 544 §4, the income shall be placed in the Treasury of the United States to the credit of the members of the Tribe and be distributed to the individual members of the Tribe according to the roll, in the manner and at the same time that payments are made of interest on other moneys held in trust for the members of the Tribe. *See Osage Nation v. United States*, 57 Fed. Cl. 392, 393 (2003).

4. The funds in question are deposited first in the tribal trust fund account where they remain for approximately one calendar quarter before being distributed to the headright owners. Id. at 395.

5. The government has a fiduciary duty to the tribal trust fund account. Id.

6. The determination of what amount is owed to each headright owner takes place while the funds are under the control of the government in the tribal trust fund. Id.

7. The tribal trust fund is then responsible for the ultimate distribution to the Tribe and the individual headright owners, as determined by the government while the funds are in the tribal trust fund. Id.

8. Here, mismanagement is alleged to have occurred while the funds were under the government's control in the tribal trust fund. Id.
9. Both the Tribe and the headright owners have an interest in and a claim to the funds when those funds are within the tribal trust account. Id.
10. Partial judgment has been granted in this case awarding damages of $1,876,878.30.
11. The Court has divided the claims in these cases into two Tranches.
12. In Tranche One, four (4) leases and five (5) time periods were examined to verify that the royalty paid was the amount contractually owed. (January 1976, May, 1979, November 1980, February 1986 and July 1989; East Hardy Unit, the North Burbank Unit, the North Avant Unit, and the Osage Hominy Unit). See *Osage II,* 72 Fed. Cl. at 631. n.2.
13. The damages were determined by methodologies agreed to by the parties and approved by the Court. In Tranche One, the Court found that the United States failed to "Collect Royalties Based on Highest Offered Prices"; failed to "Collect Full Royalties During Price Controls"; failed to "Promptly Deposit Funds Because of Unreasonable Failure to Certify a Federal Depository"; failed to "Maintain Appropriate Cash Balances"; and failed to "Obtain Investment Yields in Accordance with Law." *Osage II*, 72 Fed. Cl. at 631.
14. The remaining claims left to be tried are all other claims not covered by Tranche One. See Order of April 15, 2005 at 1. The parties agreed, and the court ordered that alleged breaches by the government of any fiduciary duty regarding the treatment of Osage trusts that have been segregated for disbursement should be set for trial in Tranche Two. Id. Footnote 3.

## II. ORDER REQUESTED

The Proposed Intervenors are interested in a share of damages already awarded and claims remaining to be tried because they will be beneficiaries of certain damages that may be

awarded on them. For those reasons and reasons set forth hereinafter, Proposed Intervenors request that they be permitted to intervene as additional Plaintiffs in these matters for the purpose of protecting the interests of headright owners who are also Indian descendants of original allottees and the interests of any original allottee, headright owners in the Osage mineral estate, mineral income and interest or investment income derived from it while it was under the government's control in the tribal trust fund.

## III. STANDARDS FOR INTERVENTION

Under RCFC 24, the Court must grant intervention if four requirements are met: (1) the movant "claims an interest relating to the property or transaction that is the subject of the action", (2) the movant "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest", (3) the "existing parties" may not "adequately represent that interest", and (4) the motion to intervene is "timely". Fed. R. Civ. P. 24 (a)(2); See *United Keetoowah Band of Cherokee Indians of Okla. v. U.S.* 480 F.3d 1318 (2007).

### A. SHARED INTEREST IN SUBJECT OF ACTION

The Osage Allotment Act of 1906 (the 1906 Act) 34 Stat. 539 provided that:

> ...the royalty received from oil, gas, coal and other mineral leases...shall be placed in the treasury of the United States to the credit of the members of the Osage Tribe of Indians as other moneys of said tribe are to be deposited under the provisions of this Act, and the same shall be distributed to the individual members of said Osage Tribe according to the roll provided for herein, in the manner and at the same time that payments are made of interest on other moneys held in trust for the Osages by the United States...

Therefore, the Proposed Intervenors have an interest in Osage tribal trust funds of which the United States is trustee and has a duty to properly manage. Specifically, they have an interest in income derived from the Osage mineral estate, which is deposited into the tribal trust fund,

managed by the U.S., credited to individual headright owners and paid on a basis of a pro-rata division among them. The determination of what amount is owed to each headright owner is performed by the U.S. while the funds are in the tribal trust fund. *Osage Nation v. United States*, 57 Fed. Cl. 392, 395 (2003)

The Tribe is the trust beneficiary and also holds a small portion of outstanding headrights. Id. at 395. The remaining approximately 98.75% headrights are owned by others, including Proposed Intervenors and other Shareholders. Id. at 394. Therefore, the Tribe and the headright owners both have an interest in and a claim to the funds when those funds are within the tribal trust account established by the 1906 Act. The U.S. Department of the Treasury disburses Osage tribal trust funds, including trust funds derived from the Osage mineral estate, to the Osage Tribe and to headright owners in the Osage mineral estate on a quarterly basis. Id. at 395. **The Tribe has no further interest in or claim to the funds once they are distributed to the headright owners.** Id. at 395. As the Court has previously noted, "the alleged mismanagement of the mineral royalties is described as taking place when the funds were within the tribal trust fund" under the control of the United States. Id. at 395.

The Tribe has alleged that the United States has a duty to audit, reconcile and provide an accounting for Osage tribal trust funds. (See Third Amended Complaint of Tribe filed herein, dkt at 185-7, paragraph 22). The United States' accounting for the monies received, maintained in and paid out of the tribal trust fund is necessary for a determination of damage allocation with regard to the claims already tried and those to be tried in this case. "Intervention in an accounting proceeding should be permitted to any one whose financial interests may be affected thereby." *Wolfchild v. United States*, 72 Fed. Cl. 511, 531 (2006) (citing *Bogert's Trusts and Trustees* §970).

Proposed Intervenors' financial interests may be affected by the determination of damage amounts and how they are to be allocated in these cases. Therefore, they should be allowed to intervene. Proposed Intervenors, like the Tribe, allege that the U.S. mismanaged trust funds of the Osage by (1) failing to collect royalty payments and related late fees due the Tribe under the Tranche One and Tranche Two leases, and (2) failing to invest the income it did collect in the manner required by law. They also seek to recover monetary damages under 28 U.S.C. § 1491, and 28 U.S.C. §1505, for the U.S.'s alleged breaches of duty.

Presumably, both the Tribe and the headright owners have a common interest in obtaining the maximum damage award for the breaches alleged. However, their interests may diverge when it comes to the issue of determining to whom those damages should be allocated.

## B. PROPOSED INTERVENORS ABILITY TO PROTECT THEIR INTERESTS

The Proposed Intervenors are so situated that the disposition of this action may, as a practical matter, impair or impede their ability to protect their interests unless they are permitted to intervene. The reasons why are set forth hereinafter and arise in the context of a discussion of whether the Tribe adequately represents the interests of all headright owners.

## C. ADEQUACY OF REPRESENTATION

The requirement of RCFC 24 (a) is satisfied "if the applicant shows that representation of his interest **may be** "inadequate." *See Trbovich v. United Mine Workers of America,* 404 U.S. 528 at 538 (1972) (emphasis added). While it is not certain that representation of the Proposed Intervenors and other Shareholders by the Tribe is inadequate, evidence suggests it is reasonable to conclude it may be inadequate.

The Court has previously found that the Proposed Intervenors' interests are materially adverse to those of the Tribe. (See Opinion and Order filed herein March 31, 2008, dkt. 296, pg.

18). The Tribe itself has stated "the proposed intervenors are in important respects at odds with the Osage Nation's position in this litigation." (See Tribe Osage Nation's Reply Brief In Support of Its Motion to Disqualify Bradley D. Brickell As Counsel for the Proposed Intervenors, filed herein December 21, 2007, dkt. 287, pg. 11).

Although the Tribe does not appear to dispute the legal pronouncement that the headright owners are beneficiaries of Osage mineral royalties, after small portions are retained/distributed for tribal operations and the Oklahoma gross receipts tax, its statements raise questions about whether the current tribal government has an interest in broadening the membership in the tribe in such a way as to dilute the long-standing right of the headright owners, established by the 1906 Allottment Act, to receive their designated share of Osage mineral income.

In that regard, Chief Jim Gray, speaking in support of the 2004 Sovereignty Act, has testified that "Osage membership for purposes of voting and eligibility for elected tribal office is limited to Osages with headrights." (See Opinion and Order filed herein March 31, 2008, dkt. 296, pg. 7). He further stated the mandate was "not Osage" because "it is not of our making. It does not reflect Osage values. It is an imposition." Id. So, despite any assurances the Tribe may provide that it recognizes a duty to protect the interests of the headright owners to receive mineral income, it may have other interests that conflict with that purported duty. Chief Gray has also stated:

> **Today the question of who the Osage Indians are – at least as a legal matter – is murky and fraught with uncertainty. In 1906, Congress said that only those who the Secretary of the Interior determines are Osage will be Osage for purposes of receiving land allotments and a "headright," the right to receive a pro rata distribution of income from the Osage mineral estate. Yet, the federal courts and the BIA have interpreted the Secretary's identification of Osages as Osage membership for all purposes. Even further, Osage membership for purposes of voting and eligibility for elective tribal office is limited to Osages with headrights. These interpretations effectively disenfranchise thousands of Osages. The Osage Tribe is**

> **concerned about the political rights of Osages who cannot participate in Osage government in any formal way. This is wrong. And despite the efforts of the Osage Tribal Council to remedy this problem through its own power on at least four occasions since 1980, today the problem continues. The good news is that the courts and the BIA have made clear that Congress holds the authority to clarify the powers of the Tribe, so we know where our remedy lies. We know that we are in the right forum today. And we know that the time has come for the Osage Tribe to take its rightful place.**
>
> **[W]e have an unjust government. It unfairly excludes Osages who do not happen to have a headright.**

Transcript of House Resources Committee Field Hearing on H.R. 2912 (March 15, 2004).

The Osage Nation Congress had a bill presented to it, ONCA-08-25, the "Osage Nation Claims Distribution Act", that would have clearly acknowledged the Tribe's intent to protect the Osage Indian Mineral Trust estate for the headright owners and assured them that the Tribe was protecting their interests. (See Exhibit C attached). But this bill was not signed by the Principal Chief and did not become law.

Proposed Intervenors' interests are different from the interests of the Tribe. The Tribe established an expanded electorate under the 2004 Sovereignty Act Pub. L. No 108-431, 118 Stat. 2609 (2004) and the 2006 Constitution of the Osage Nation:

> "[T]he term "legal membership"...means the persons eligible for allotments of Osage Reservation lands and a pro rata share of the Osage mineral estate...not membership in the Osage Tribe for all purposes. Congress hereby reaffirms the inherent sovereign right of the Osage Tribe to determine its own membership, provided that the rights **of any person** to Osage Mineral estate shares are not diminished thereby."

2004 Sovereignty Act Pub. L. No. 108-431, 118 Stat. 2609 (2004) (emphasis added).

The Tribe has stated in its Motion to Intervene in *Cobell v. Kempthorne*, Civil Action No. 96-1285, dkt. 3542, filed June 18, 2008, "And the Osage Nation has a constitutional duty to defend these tribal assets on behalf of the Osage headright owners entitled to **future distribution of mineral income**." [emphasis added] Despite that, the Tribe's new Constitution states:

> "The Mineral Estate of the Osage Reservation is reserved to the Osage Nation. The government of the Osage Nation shall have the perpetual obligation to ensure the preservation of the Osage Mineral Estate. The government shall further ensure that the rights of **members** of the Osage Nation to income derived from that Mineral Estate are protected."

Art. XV, §4 Osage Nation's Constitution.

Congress and the Tribe, knowing the mineral estate shares, since 1906, have been held by the headright owners, could have referred to the "headright owners" in the 2004 Act and the 2006 Constitution as those entitled to mineral income. Instead, they chose to use the broader terms "any person" and "members". This raises the question as to whether there may be a motivation on their part to somehow, ultimately dilute the property rights of headright owners. Even though their political/legislative activities appear to focus on changes to tribal governance, it is imaginable, in light of the Tribe's statements regarding its concern for a larger constituency, attempts might be made to dilute property rights of headright owners that have existed since 1906.

Furthermore, despite its acknowledged duties, the Tribe's Third Amended Complaint herein does not make any direct claims on behalf of the headright owners, nor does it discuss any damage allocation to them. The headright owners have not been advised of the Tribe's decisions or actions in the consolidated cases, nor have they had an opportunity to offer input regarding them. (See Affidavit of Linda Heskett, Chairwoman of the Osage Shareholders organization, attached as Exhibit B). For all these reasons, it appears that the headright owners representation by the Tribe may be inadequate because of the diverging interests between them and the Tribe. Allowing them to intervene should resolve the question and alleviate that concern.

### D. TIMELINESS

Both interventions as of right and permissive intervention rely on timely application, *NAACP v. New York,* 413 U.S. 345, 365, 93 S. Ct. 2591, 37 L.Ed.2d 648 (1973). In reviewing the timeliness of a motion to intervene, the Court must balance the following factors: (1) the length of time during which the would-be intervenor actually knew or reasonably should have known of his right to intervene in the case before he applied to intervene; (2) whether the prejudice to the rights of the existing parties by allowing intervention outweighs the prejudice to the would-be intervenor by denying intervention; (3) existence of unusual circumstances militating either for or against a determination that the application is timely. *Sumitomo Metal Indus., Ltd. v. Babcock & Wilcox Co.*, 69 C.C.P.A. 75, 669 F .2d 703, 707 (C.C.P.A. 1982) (footnoted citations omitted).

Proposed Intervenors began their efforts to intervene on October 15, 2007. Those efforts were delayed by the disqualification of their previous counsel and the process that led to it. At the time of their original Motion to Intervene, the 2006 Constitution of the Osage Nation and the succeeding analysis of it and its potential impact had raised questions for the Shareholders and those similarly situated as to whether their interests will be protected. Before the 2004 Sovereignty Act and the 2006 Osage Constitution one could not be a member of the Tribe or stand for election without being a "headright" owner. The 2004 Sovereignty Act changed the ability of the Tribe (now called Nation) to expand voting and membership under an innate right to self-government. Though these two consolidated cases began in 1999 and 2000, the change that triggered a call for the Proposed Intervenors to act under RCFC 24(b) happened after the Court and parties examined and opined on the 2004 Sovereignty Act and the 2006 Osage Constitution. Under the circumstances, the Proposed Intervenors Motion is timely.

Proposed Intervenors have a right to intervene pursuant to RCFC 24 (a) because of their interest in the Osage mineral estate and mineral income. Alternatively, they should be permitted to intervene pursuant to RCFC 24 (b) because their claims and the main action have questions of law or fact in common.

Permitting the intervention of the Proposed Intervenors in this case will not cause a delay in adjudication of it. Proposed Intervenors recognize they are bound by unappealable orders and judgments already entered in the cases and do not seek to disrupt the present status of the case. Rather, they seek to participate in the efficient completion of discovery, preparation of the case for trial and resolution of pending claims asserted by the Tribe and those to be asserted by Proposed Intervenors as a group. The positions of the present parties will not be prejudiced by the Proposed Intervenors involvement.

## IV. PROPOSED INTERVENORS ARE AN IDENTIFIABLE GROUP UNDER 28. U.S.C. §1505 AND REQUEST LEAVE TO INTERVENE AS SUCH.

Proposed Intervenors request an opportunity to participate in the prosecution of the claims in this matter to conclusion, not only on their behalf, but on behalf of all other Indian headright owners who are original allottees or descendants of original allottees. Since that group can be identified through the records of the United States and the Tribe, there appears to be no need for a class action. Any order or judgment of this Court will be binding upon and enure to the benefit of all individuals similarly situated to the Proposed Intervenors, not just to those who may be named as parties if allowed to intervene in this action. *Chippewa Cree Tribe of the Rocky Boy's Reservation v. United States*, 92-cv-00675, filed September 27, 2006, dkt. 264, pg. 26.

The Proposed Intervenors, personal owners of headright interests, are an "identifiable group" under the Indian Tucker Act 28 U.S.C. §1505. *See Chippewa Cree Tribe of the Rocky*

*Boy's Reservation v. United States*, 92-cv-00675, filed September 27, 2006, dkt. 264, pg. 25. "The Court of Claims shall have jurisdiction of any claim against the United States accruing after August 13, 1946, in favor of any tribe, band, or **other identifiable group** of American Indians ...." 28 U.S.C. §1505 (emphasis added).

Authorities requiring notice and joinder as a condition precedent for benefiting from any possible award are not applicable to a proceeding by an identifiable group. *Cf. Wolfchild,* 62 Fed.Cl. at 554-55. Regarding any judgment for or claims of plaintiffs, counsel for plaintiffs and the U.S. can be required to identify the membership of the group of potential beneficiaries of damage awards (the headright owners). The procedures to be followed in doing so can be the same as those established by this Court in *Chippewa Cree Tribe v. United States*, 69 Fed.Cl. at 673 where it directed the parties to agree on and propose for court approval such forms and methods of notice to the group as would serve reasonably to publicize the pendency of the action and the opportunity to participate on such terms as will secure the just, speedy, and inexpensive determination of it. Id. at 674.

Here the Proposed Intervenors have accrued and accruing claims. They wish to have a post-judgment accounting regarding damages assessed for Tranche One claims. The parties agreed and the court ordered that alleged breaches by the government of any fiduciary duty with regard to the treatment of Osage trusts that have been segregated for disbursement be set for trial in Tranche Two. See *Osage II*, 72 Fed. Cl. 629 fn 3. The tribe loses its beneficial interest in tribal trust funds once they are segregated for disbursement to the headright owners. See *Osage Nation v. United States*, 57 Fed. Cl. at 395. So the headright owners should be represented in the cases to ensure their input into the protection of their independent interests.

**WHEREFORE,** for these reasons and the authorities cited herein, the Proposed Intervenors respectfully request that the Court grant their Amended Motion for Leave to Intervene and to Amend the Complaint and allow them to participate as Plaintiffs in this litigation to protect their interests, the interest of any original allottees under the 1906 Act with headrights and other descendants of the original allottees under the 1906 Act with headright interests in the Osage mineral estate, mineral income and investment income derived from it while it was under the government's control in the tribal trust fund. A proposed Amended Complaint is attached as Exhibit D.

/s/ Kenneth E. Crump, Jr.
CRUMP LAW FIRM
400 South Boston Avenue, Suite 1100
Tulsa, Oklahoma 74103
Telephone (918) 585-3444
Facsimile (918) 585-3450
ATTORNEY for PROPOSED INTERVENORS CHRIS HADLOCK, JODELL HEATH, LINDA HESKETT, CORA JEAN JECH, ANNA KAY PRICE, GEORGE TALLCHIEF, AND JULIE WILSON