# In the United States Court of Federal Claims

No. 99-550 L
(into which has been consolidated No. 00-169 L)
(E-Filed:  December 19, 2008)

_____ )
                                         )
                                         )   RCFC 24(a); RCFC 24(b);
THE OSAGE TRIBE OF INDIANS               )   Intervention of Right;
OF OKLAHOMA,                             )   Permissive Intervention; 28
                                         )   U.S.C. § 1505
                                         )
               Plaintiff,                )
          v.                             )
                                         )
THE UNITED STATES OF AMERICA,            )
                                         )
               Defendant.                )
                                         )
_____ )

Kenneth E. Crump, Jr., Tulsa, OK, for proposed intervenor.

Wilson K. Pipestem, Washington, DC, for plaintiff.

Maureen E. Rudolph, with whom were Ronald J. Tenpas, Assistant Attorney General,
Brian M. Collins, and Romney S. Philpott, Environment & Natural Resources Division,
United States Department of Justice, Washington, DC, for defendant.  Elisabeth Brandon,
Ericka Thompson, and Holly Clement, Office of the Solicitor, United States Department
of the Interior, Washington, DC, of counsel.  Teresa E. Dawson, and Thomas Kearns,
Office of the Chief Counsel, Financial Management Service, United States Department of
the Treasury, Washington, DC, of counsel.

## OPINION AND ORDER

HEWITT, Judge

     Before the court is an Amended Motion for Leave to Intervene and Brief in
Support (Motion or Mot.), filed by seven members of plaintiff Osage Tribe (Proposed
Intervenors).  The responsive briefing consists of Plaintiff Osage Nation's Opposition to
Amended Motion to Intervene (plaintiff's Response or Pl.'s Resp.), Defendant's Brief in

Response to Proposed Intervenors' Amended Motion to Intervene (defendant's Response or Def.'s Resp.), and Proposed Intervenors' Reply to Responses of the Osage Tribe of Indians of Oklahoma and the United States of America to Amended Motion to Intervene and Brief in Support (Reply).

I.    Background[1]

    A.    Procedural Setting

    Plaintiff Osage Tribe of Indians of Oklahoma (Osage Nation or Osage Tribe) filed suit in this court alleging that the United States violated its duty as trustee of the Osage mineral estate by failing to collect all moneys due from Osage oil leases and to deposit and invest those moneys as required by statute and according to the fiduciary duty owed to the Osage Tribe.  See Complaint, dkt. no. 1, filed Aug. 2, 1999.  Plaintiff's action survived defendant's motion to dismiss, and plaintiff was found to have standing to bring suit against defendant.  Osage Tribe of Indians of Okla. v. United States (Osage I), 57 Fed. Cl. 392, 395, 398 (2003).[2]  Defendant was subsequently found to owe fiduciary duties as trustee to plaintiff as trust beneficiary.  Osage Tribe of Indians of Okla. v. United States (Osage II), 68 Fed. Cl. 322, 330-31 (2005).  Plaintiff's claims were divided into two tranches with the first tranche (Tranche One) encompassing certain trust fund mismanagement claims within the parameters described by the United States Court of Appeals for the Federal Circuit (Federal Circuit) in Shoshone Indian Tribe of the Wind River Reservation v. United States, 364 F.3d 1339, 1350-51 (Fed. Cir. 2004).  Id. at 323.  The second tranche (Tranche Two) encompasses all other claims.  Id. at n.1.

    On September 21, 2006, this court issued an opinion finding liability in some of plaintiff's Tranche One claims.  Osage Tribe of Indians of Okla. v. United States (Osage III), 72 Fed. Cl. 629, 671 (2006).  On February 15, 2007 this court issued an opinion

_____

    [1] The facts presented are only those relevant to the court's decision on the motion to intervene brought by the seven individuals presently before the court (Proposed Intervenors) in their Amended Motion for Leave to Intervene and Brief in Support (Motion or Mot.).  For additional background information, see Osage Tribe of Indians of Okla. v. United States (Osage II), 68 Fed. Cl. 322, 323-24 (2005).

    [2] The numbering used in this opinion to refer to prior decisions issued in this case departs from the conventions used in those decisions.  See, e.g., Osage Tribe of Indians of Okla. v. United States (Osage III), 72 Fed. Cl. 629, 632 (2006).  This opinion refers to the earliest-filed opinion in this case as "Osage I," and short titles for subsequent decisions are adjusted accordingly.

regarding the calculation of damages for the government's liability regarding plaintiff's Tranche One claims discussed in <u>Osage III</u>.  <u>Osage Tribe of Indians of Okla. v. United States</u> (<u>Osage IV</u>), 75 Fed. Cl. 462 (2007).  Plaintiff filed a motion for partial summary judgment on December 2, 2008, dkt. no. 338, and defendant is currently briefing its response.

B.     Identity of the Movants

On October 15, 2007, eight individuals who identified themselves as "personal owners of allotted shares or 'headrights' of the Osage Tribe of Indians of Oklahoma" (Original Intervenors) filed a motion to intervene in this action.  <u>Osage Tribe of Indians of Okla. v. United States</u> (<u>Osage V</u>), 81 Fed. Cl. 340, 340 (2008).  Plaintiff responded to the motion to intervene by filing a motion to disqualify counsel for the Original Intervenors.  <u>Id.</u>  On March 31, 2008, this court issued an opinion disqualifying Original Intervenors' original counsel.  <u>Id.</u>  On August 11, 2008, Proposed Intervenors[3] filed the Motion now before the court.  Proposed Intervenors' Motion is now decided on the merits pursuant to the requirements of Rule 24 of the Rules of the United States Court of Federal Claims (RCFC).[4]

II.     Legal Standards

Intervention is governed by RCFC 24.  Intervention may be allowed either as a matter of right under Rule 24(a) or permissively under Rule 24(b).  RCFC 24(a),(b).  Although "the requirements for intervention are to be construed in favor of intervention,"

---

[3] Proposed Intervenors are seven of the eight individuals who brought a motion to intervene in this action on October 15, 2007 (Original Intervenors).

[4] Proposed Intervenors use the term "joinder" synonymously with "intervention" for the first time in their Reply to Responses of the Osage Tribe of Indians of Oklahoma and the United States of America to Amended Motion to Intervene and Brief in Support (Reply).  Reply 3, 8.  However, Proposed Intervenors do not base their arguments in either Rule 19 or Rule 20 of the Rules of the Court of Federal Claims (RCFC) which govern joinder.  <u>See</u> Mot. <u>passim</u>; Reply <u>passim</u>.  In fact, Proposed Intervenors make no reference to either RCFC 19 or RCFC 20 in their briefing.  <u>Id.</u>  Because Proposed Intervenors' Motion was brought as a motion to intervene under RCFC 24, defendant's and plaintiff's responsive briefing were accordingly argued as oppositions to Proposed Intervenors' Motion under RCFC 24.  <u>See</u> Plaintiff Osage Nation's Opposition to Amended Motion to Intervene (plaintiff's Response or Pl.'s Resp.) <u>passim</u>; Defendant's Brief in Response to Proposed Intervenors' Amended Motion to Intervene (defendant's Response or Def.'s Resp.) <u>passim</u>.  For the foregoing reasons, the court treats Proposed Intervenors' Motion as a motion for intervention under RCFC 24.

Am. Mar. Transp., Inc. v. United States (American Maritime), 870 F.2d 1559, 1561 (Fed. Cir. 1989), courts routinely deny motions to intervene, see, e.g., id. at 1563 (affirming denial of motion to intervene because applicant "had not claimed an interest recognized under Rule 24(a)").

> The rule governing intervention of right states:
>
> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

RCFC 24(a)(2).  While it is true that "[i]f the movant satisfies the elements of RCFC 24(a), the court is without discretion, and the movant 'shall be permitted to intervene,'" Fifth Third Bank v. United States, 52 Fed. Cl. 202, 203 (2002) (quoting RCFC 24(a)), courts are nevertheless "entitled to the full range of reasonable discretion in determining whether the[] requirements [for intervention of right] have been met," Rios v. Enter. Ass'n Steamfitters Local Union No. 638, 520 F.2d 352, 355 (2d Cir. 1975); see also 6 James Wm. Moore, Moore's Federal Practice § 24.03[5][a], at 24-53 (3d ed. 2004) ("Despite the label 'intervention of right,' courts exercise some discretion in weighing a motion to intervene under Rule 24(a)(2).").

> The rule governing permissive intervention states:
>
> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . .  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

RCFC 24(b).  The rule specifically vests the court with discretion in deciding whether to allow permissive intervention.  See RCFC 24(b).  Trial courts possess "broad discretion in determining whether to grant permissive intervention."  6 James Wm. Moore, Moore's Federal Practice § 24.10[1], at 24-57 (3d ed. 2004) (citing, inter alia, Rosenshein v. Kleban, 918 F. Supp. 98, 106 (S.D.N.Y. 1996)).

III.   Discussion

For the reasons discussed below, Proposed Intervenors do not qualify as an "identifiable group" pursuant to 28 U.S.C. § 1505.  Accordingly, the court considers Proposed Intervenors' Motion as a motion to intervene on behalf of themselves as individual headright owners.  In addition, Proposed Intervenors do not meet the requirements either for intervention of right pursuant to RCFC 24(a), or for permissive intervention pursuant to RCFC 24(b).

     A.     Whether Proposed Intervenors Are An "Identifiable Group" Pursuant to 28 U.S.C. § 1505

Proposed Intervenors seek to intervene in this case "not only on their own behalf, but on behalf of all other Indian headright owners who are original allottees or descendants of original allottees."  Mot. 11.  Proposed Intervenors argue that they are entitled to intervene in a representative capacity, contending that Indian original allottees and their descendants qualify as an "identifiable group" pursuant to 28 U.S.C. § 1505. <u>Id.</u> Plaintiff argues that the group that Proposed Intervenors seek to represent does not constitute an "identifiable group" of American Indians under the statute because the individuals within that group are members of the Osage Nation, and are therefore already represented by plaintiff.[5]  Pl.'s Resp. 4-5.  The court agrees with plaintiff.  The group that Proposed Intervenors seek to represent is not an "identifiable group" under 28 U.S.C. § 1505.  Prior cases in which jurisdiction was exercised over "identifiable groups" are readily distinguishable from this case.

This court's jurisdictional statute pertaining to Indian cases, 28 U.S.C. § 1505, authorizes this court to hear claims brought by "any tribe, band, or other identifiable group of American Indians."  28 U.S.C. § 1505 (2006).

> The United States Court of Federal Claims shall have jurisdiction of any claim against the United States accruing after August 13, 1946, in <u>favor of any tribe, band, or other identifiable group of American Indians</u> residing within the territorial limits of the United States or Alaska whenever such claim is one arising under the Constitution, laws

_____

[5] Defendant argues that the group that Proposed Intervenors seek to represent does not constitute an "identifiable group" of American Indians under the statute because the group never "existed as a distinct, self-governing community of American Indians, [n]or [was] even dealt with as a distinct group by the United States government."  Def.'s Resp. 19.  While defendant's view is consistent with the result reached in this opinion, the court does not find it necessary to address – still less to adopt – defendant's definition of an "identifiable group" in order to decide this issue.

or treaties of the United States, or Executive orders of the President,
or is one which otherwise would be cognizable in the Court of Federal
Claims if the claimant were not an Indian tribe, band or group.

Id. (emphasis added).

        Proposed Intervenors cite two cases to support their contention that they qualify as an "identifiable group" pursuant to 28 U.S.C. § 1505.  Mot. 11-12 (citing Chippewa Cree Tribe of the Rocky Boy's Reservation v. United States (Chippewa Cree), 69 Fed. Cl. 639 (2006), and Wolfchild v. United States (Wolfchild), 62 Fed. Cl. 521 (2004)).  However, both cases to which Proposed Intervenors cite are materially different from the facts of this case.  In both cases, the claimant groups were unable to sue as a tribe and therefore sought status as an "identifiable group" under the statute in order to ensure that their interests were represented.  In Chippewa Cree, the Pembina Band of Chippewa Indians was organized as a band of Indians at the time that their claim arose, but had subsequently ceased to exist as an organized tribe.  Chippewa Cree, 69 Fed. Cl. at 672.  Recognizing the Pembina descendants as "representatives of all the members or descendants of members of said band," the court granted the claimants status as an "identifiable group" in the absence of formal organization as a tribe.  Id. at 673-74; see also Snoqualmie Tribe of Indians v. United States (Snoqualmie), 372 F.2d 951, 956-57 (Ct. Cl. 1967) (finding that the Skykomish tribe qualified as an "identifiable group" able to bring a representative claim on its own behalf where the Skykomish tribe was a separate and identifiable group at the time of negotiations in the Treaty of Point Elliot in 1855, and subsequently went out of existence as a tribe).  The "group of nonmember Pembina lineal descendants," Chippewa Cree, 69 Fed. Cl. at 669, which qualified for status as an "identifiable group" in Chippewa Cree were not represented by any of the other sub-groups of plaintiffs in that case, see id. (describing the different sub-groups represented by the named individual plaintiffs in that case).  Similarly, in Wolfchild, the court found that lineal descendants of the loyal Mdewakanton qualified as an "identifiable group of American Indians" under 28 U.S.C. § 1505, stating that "[although] the lineal descendants are unable to sue as a tribe because they necessarily had to sever their tribal relations . . . they were and still remain an identifiable group of American Indians."  Wolfchild, 62 Fed. Cl. at 540.  In Wolfchild, as in Chippewa Cree, the claimants' interests were not represented by any other tribe involved in the litigation.  See Wolfchild, 62 Fed. Cl. at 538 (discussing the relationship between the interests of the plaintiff-lineal descendants and the interests of the amici-tribal organizations, and stating that "the benefits some plaintiffs receive as members of one of the [tribal] communities may be substantially less than, or different from, those which they would receive as a lineal descendant"); see also Snoqualmie, 372 F.2d at 956-57 (finding that because the Skykomish were not a subgroup of the Snoqualmie tribe and

did not merge into the Snoqualmie tribe, the claims brought by the Snoqualmie tribe did not represent the interests of the Skykomish).

The group that Proposed Intervenors seek to represent is materially different from the claimants in both Chippewa Cree and Wolfchild.  First, unlike the claimants in Chippewa Cree and Wolfchild, Proposed Intervenors do not lack formal organization as a tribe but are members of plaintiff-tribe, the Osage Nation. Osage V, 81 Fed. Cl. at 345-46 (finding that headright holders possess "legal membership" in the Osage Nation as a matter of federal law); Pl.'s Resp. 5.  Second, in this case, unlike in Chippewa Cree and Wolfchild, the organization of which Proposed Intervenors are members, the Osage Nation, is a party to this litigation.  See Osage II, 68 Fed. Cl. 322 at 323-24 (describing the parties and claims at issue in this case).  The Osage Nation represents Proposed Intervenors' interests as its constituents.  See Transcript of Oral Argument, Feb. 5, 2008 (Tr.), 46:13-14 (while discussing the operations of tribal government, plaintiff's counsel states, "[T]he Osage Minerals Council is the predecessor or successor-in-interest to the Osage Tribal Council.  The Osage Minerals council is elected exclusively by Osage headright holders."); Osage Const. (2006) art. XV, § 4 ("The government [of the Osage Nation] shall further ensure that the rights of members of the Osage Nation to income derived from that Mineral Estate are protected.").  The facts of this case are readily distinguishable from the facts in cases in which claimants qualified as an "identifiable group" under 28 U.S.C. § 1505.  Proposed Intervenors are simply not an "identifiable group" pursuant to 28 U.S.C. § 1505, but are, rather, members of a tribe.  Accordingly, the court does not consider Proposed Intervenor's Motion as a motion to intervene in a representative capacity, but instead considers it as a motion to intervene on behalf of themselves as individual headright owners.

B.      Intervention of Right

To succeed on a motion to intervene of right under RCFC 24(a), applicants "must show that:  (1) they have an interest relating to the property or transaction that is the subject of the action; (2) without intervention the disposition of the action may, as a practical matter, impair or impede the applicants' ability to protect that interest; and (3) their interest is inadequately represented by the existing parties." Freeman v. United States (Freeman), 50 Fed. Cl. 305, 308-09 (2001).  In addition, the application to intervene must be "timely."  RCFC 24(a).  An applicant must demonstrate the existence of each factor.  Freeman, 50 Fed. Cl. at 308 (stating that intervention of right must be granted "[i]f the applicants satisfy each element" of the applicable provision of Rule 24(a)).  If an applicant fails to demonstrate any one of these factors, the application to intervene of right is denied.  Because Proposed Intervenors have failed to meet the

requirements of Rule 24(a), their claim is insufficient to support intervention of right. See id. at 309.

1.    Proposed Intervenors' Interest

RCFC 24(a) requires that an intervenor of right establish "an interest relating to the property or transaction that is the subject of the action." Id. at 308. "[T]here is no authoritative definition of precisely what kinds of interest satisfy the requirements of the rule." 6 James Wm. Moore, Moore's Federal Practice § 24.03[2][a] 24-28 (3d ed. 2004). Therefore, the court applies the principles set forth by the Federal Circuit, and those principles set forth in the cases upon which the Federal Circuit has relied, to the factual circumstances of this case.

In order to intervene of right, the interest of applicants in the property or transaction must be """ of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.""" American Maritime, 870 F.2d at 1561 (citations omitted). "The interest thus may not be either indirect or contingent." Id. (citations omitted). "The interest must also be a 'legally protect[a]ble interest.'" Id. (citation omitted). A legally protectable interest is "'one which the substantive law recognizes as belonging to or being owned by the applicant.'" Id. at 1562 (citation omitted). Proposed Intervenors argue that they have an interest in the subject of the action based on their "interest in income derived from the Osage mineral estate." Mot. 4. Plaintiff argues that Proposed Intervenors "[h]ave no [d]irect, [l]egally [p]rotected [i]nterest in the [m]ineral [e]state or [t]ribal [t]rust [a]ccount," Pl.'s Resp. 2, because Proposed Intervenors "repeatedly confuse[] tribal ownership of the mineral estate and the tribal trust account with the individual right to receive a quarterly distribution from the tribal trust account," id. at 3.

The court now examines whether Proposed Intervenors' interest is direct and immediate, and, if it is, whether it is a legally protectable interest as required by RCFC 24(a).

Proposed Intervenors have an interest in their pro rata share of the proceeds of the mineral estate. Mot. 4-5 (stating that Proposed Intervenors "have an interest in income derived from the Osage mineral estate, which is . . . paid on a basis of a pro-rata division among [individual headright owners]"). It seems clear that Proposed Intervenors' interest is such that they will either gain or lose by the direct legal operation and effect of a judgment in this case because damages awarded to the Tribe are ultimately to be paid to the credit of headright holders pursuant to statute. See Act of June 28, 1906, ch. 3572, § 4, 34 Stat. 539, 544 (1906) ("An Act for the Division of Lands and Funds of the Osage

Indians in Oklahoma Territory, and for Other Purposes") (1906 Act); see also Act of Dec. 3, 2004, Pub. L. No. 108-431, § 1(b)(1), 118 Stat. 2609 (2004) ("An Act to Reaffirm the Inherent Sovereign Rights of the Osage Tribe to Determine Its Membership and Form of Government") (2004 Act) (clarifying the 1906 Act and stating that "the rights of any person to Osage mineral estate shares are not [to be] diminished").  The amount that each headright holder ultimately receives is directly proportional to the amount of damages awarded, if any, in the course of this litigation.  See Transcript of Oral Argument, Apr. 3, 2003 (Tr.), 118:18-119:5 (discussing that the mineral income is ultimately allocated to each headright holder); Def.'s Resp. 3-5 (discussing the distribution of income from the mineral estate to headright holders).  This case is distinguishable from previous cases in which the applicant's interest was found to be indirect or contingent.  In American Maritime, the applicant's interest was in preventing increased competition that could occur as a result of the court's decision.  American Maritime, 870 F.2d at 1561-62.  The court observed that the specter of increased competition would only result if "every one of a chain of other possible, but not certain, events were to take place."  Id. at 1561.  In that case, there was "no consequence to [potential intervenor] flow[ing] immediately from a Claims Court ruling."  Id.; Cf. also Karuk Tribe of Ca. v. United States (Karuk Tribe), 27 Fed. Cl. 429, 431 (1993) (denying motion to intervene brought by individuals whose interest was based on a fear that Congress would amend the settlement act at issue in the litigation if liability was found, and describing the interest as "contingent on other events," and therefore indirect).  In this case, however, Proposed Intervenors' interest in their pro rata share of the proceeds of the mineral estate is analogous to the interest of the applicant for intervention in Rosebud Coal Sales Co. v. Andrus (Rosebud), 644 F.2d 849 (10th Cir. 1981) whose interest was viewed by the American Maritime court as direct. See American Maritime, 870 F.2d at 1561 (describing Rosebud as finding that "although would-be intervenor [in Rosebud] did not have [a] 'legally protectable' interest, its interest was direct").  In Rosebud, "the royalty rate of [would-be intervenor's] contract [wa]s determined by reference to the royalty rate payable by [plaintiff] to the [defendant] under [plaintiff's] federal coal lease."  Rosebud, 644 F.2d at 850.  The applicant's interest in Rosebud was characterized as direct "since the royalty rate for coal to be paid by would-be intervenor necessarily would be determined by [the] outcome of the case between the plaintiff, another coal company, and the Department of the Interior." American Maritime, 870 F.2d at 1561 (analyzing the finding made in Rosebud).  In much the same way that the would-be intervenor's profit was necessarily tied to the outcome of the litigation in Rosebud, the amount of recovery that ultimately flows down to each headright holder is necessarily and directly dependent upon the ultimate amount of the judgment, if any, awarded in this litigation.  Proposed Intervenors' interest in their pro rata share of the proceeds of the mineral estate is """of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment."""  Id. (citations omitted).

In addition to having a direct and immediate interest in the subject of the action, an applicant must have an interest that is "legally protectable" in order to support intervention of right.  Id.  In order to be legally protectable, the applicant must demonstrate "more than merely an economic interest."  Id. at 1562.  In American Maritime, the Federal Circuit relied upon New Orleans Pub. Serv., Inc. v. United Gas Pipeline Co. (New Orleans) to define a legally protectable interest as "'one which the substantive law recognizes as belonging to or being owned by the applicant.'"  Id. at 1562 (quoting New Orleans, 732 F.2d 452, 464 (5th Cir. 1984)).  In a portion not cited by the Federal Circuit in American Maritime, but particularly relevant to the circumstances of this case, the court in New Orleans further explained that an applicant's legally protectable interest, "one which the substantive law recognizes as belonging to or being owned by the applicant," New Orleans, 732 F.2d at 464, is further defined as requiring "that the claim the applicant seeks intervention in order to assert be a claim as to which the applicant is the real party in interest," id.  While Proposed Intervenors' interest in the subject of the action is direct and immediate, Proposed Intervenors do not have a legally protectable interest because, first, Proposed Intervenors do not meet the real party in interest requirement enunciated in New Orleans; and, second, cases with factual circumstances closely analogous to the circumstances in this case do not support a finding that Proposed Intervenors have a legally protectable interest.

Proposed Intervenors are not the real parties in interest in this litigation, and therefore do not have a legally protectable interest as defined in New Orleans.  See id.  In New Orleans, city officials were denied intervention in a suit over the validity of a contract brought by an electric utility company against its supplier.  Id. at 455.  The city sought to intervene in the contract action by adopting the complaint brought by the electric utility company.  Id. at 461.  Holding that the city did not have any substantive rights in an action on a contract to which the city was not a party, the 5th Circuit stated that "the claim the applicant seeks intervention to assert [must] be a claim as to which the applicant is the real party in interest."  Id. at 464.  In this case, the court has previously ruled that the "headright holders are not in fact 'the real parties in interest' because the Tribe, not the headright holders, is the direct trust beneficiary."  Osage I, 57 Fed. Cl. at 395; Osage V, 81 Fed. Cl. at 349.  In another decision issued earlier in this litigation, this court has stated that "the Osage [tribe] [is] the owner[] of the minerals [at issue in this case, No. 99-550 L]."  Osage V, 81 Fed. Cl. at 349 (citing Osage I, 57 Fed. Cl. at 392).  This court has determined that the Osage Tribe is the real party in interest in this litigation and that the Osage Tribe owns the minerals which are the subject of this action.  Id.  Therefore, Proposed Intervenors do not have an interest "'which the substantive law recognizes as belonging to or being owned by [them].'"  American Maritime, 870 F.2d at 1562 (quoting New Orleans, 732 F.2d at 464).  Here, as in New Orleans, Proposed

10

Intervenors are simply "adopting the complaint" brought by the plaintiff in the action.[6]
See Mot. 6 ("Proposed Intervenors, like the Tribe, allege that the [United States]
mismanaged trust funds of the Osage by (1) failing to collect royalty payments and related
late fees due the Tribe under the Tranche One and Tranche Two leases, and (2) failing to
invest the income it did collect in the manner required by law."). Accordingly, Proposed
Intervenors can be analogized to the applicant-intervenor in New Orleans whose
intervention was denied when it attempted to assert a right not belonging to the intervenor
itself. New Orleans, 732 F.2d at 466 ("[I]ntervention is improper where the intervenor
does not itself possess the only substantive legal right it seeks to assert in the action.").
Moreover, the fact that the ultimate distribution of any funds awarded to the Osage Tribe
will be placed to the credit of the headright holders does not in itself create a legal right
enforceable in this action. See New Orleans, 732 F.2d at 464 (""'The 'real party in
interest' is the party who, by substantive law, possesses the right sought to be enforced,
and not necessarily the person who will ultimately benefit from the recovery.'"") (quoting
United States v. 936.71 Acres of Land, 418 F.2d 551, 556 (5th Cir. 1969)); see also
Meridian Homes Corp. v. Nicholas W. Prassas & Co., 89 F.R.D. 552, 554 (N.D. Ill. 1981)
(denying intervention to parties who had a right to a portion of a joint venturer's profits in
a dispute between joint venturers, and stating that despite their right to proceeds from the
litigation, the would-be intervenors' "lack of status as joint venturers is fatal to their
asserted right to intervene" because, as a result, they failed to meet several of the
requirements to support intervention, including the interest requirement).

    In addition, the facts of this case are analogous to cases in which no legally
protectable interest has been found to be held by applicants seeking intervention in
disputes over contracts to which the applicants are not a party. In Rosebud, a coal
company sought to intervene in a dispute between another coal company, Rosebud, and
the Department of the Interior over the provisions of the coal land lease agreement
entered into between Rosebud and the Department of the Interior. Rosebud, 644 F.2d at
849-50. The applicant for intervention did not have a legally protectable interest because

---

[6] To the extent that Proposed Intervenors argue that they are entitled to damages as a
result of defendant's breach of fiduciary duties owed directly to them, rather than entitlement to
damages as the ultimate payees of any judgment rendered in this case, their argument is
precluded by the law of the case. Osage Tribe of Indians of Okla. v. United States (Osage I), 57
Fed. Cl. 392, 395 (2003) ("headright holders are not in fact 'the real parties in interest' because
the Tribe, not the headright holders, is the direct trust beneficiary."); Osage Tribe of Indians of
Okla. v. United States (Osage V), 81 Fed. Cl. 340, 349 (2008) ("the Osage [tribe] [a]re the
owners of the minerals in the 'instant proceeding.'"). Accordingly, the court finds that Proposed
Intervenors hold no legally protectable interest in the subject of this action. See Part III.B.1
passim.

it was not a party to the lease at issue.  Id. at 850-51; see also Wetlands Water Dist. v. United States, 700 F.2d 561, 563 (9th Cir. 1983) (stating that while applicants for intervention "do indeed have an interest in [the subject of the action,] . . . . this interest is not a legally protectable interest that can support . . . intervention as a party in a suit involving rights under contracts to which it is not a party."); American Maritime, 870 F.2d at 1562 ("The interest of an applicant non-party having no privity claim in a contract, the terms of which are disputed by the parties to it, also has not been recognized as legally protectable, even when the outcome of the contract action is almost certain to have a significant and immediate economic impact on the applicant.").  Similarly, in this case, Proposed Intervenors are not a party to the trust relationship which exists between defendant and plaintiff.  Section four of the 1906 Act created a trust fund whereby "all funds belonging to the Osage tribe, and all moneys due, and all moneys that may become due, or may hereafter be found to be due the said Osage tribe of Indians, shall be held in trust by the United States."  1906 Act, ch. 3572, § 4, 34 Stat. 539, 544 (emphasis added).  In its prior opinions issued during the course of this litigation, this court has found that the 1906 Act created a trust relationship between plaintiff-Osage Tribe and defendant.  See, e.g., Osage II, 68 Fed. Cl. at 330 ("The plain language of the Act of 1906 establishes a specific duty [on the part of defendant] to hold in trust all moneys due, now and in the future, to the Osage Tribe.").  Moreover, the court has specifically found that the trust relationship exists exclusively between the Tribe and defendant.  Osage I, 57 Fed. Cl. at 394-95 (addressing defendant's argument that headright holders are the proper beneficiaries and finding that "the Tribe . . . is the direct trust beneficiary").  In this case, as in the contract cases, Proposed Intervenors do not have a legally protectable interest in a dispute concerning a trust relationship to which they are not a party.

For the foregoing reasons, even though Proposed Intervenors have a direct interest in the subject of the action, that interest is not legally protectable and thus does not meet the interest requirement of RCFC 24(a).  Although a finding that Proposed Intervenors do not meet the interest requirement of RCFC 24(a) is a bar to granting intervention of right, see Freeman, 50 Fed. Cl. at 309, the court nonetheless examines the other factors in the intervention of right analysis.

2.      Proposed Intervenors' Ability to Protect Their Interest

Proposed Intervenors must also demonstrate that "without intervention the disposition of the action may, as a practical matter, impair or impede the applicants' ability to protect th[eir] interest."  Freeman, 50 Fed. Cl. at 309.  Proposed Intervenors argue that if they are not allowed to intervene, their ability to protect their interest will be impaired or impeded because they will be without a remedy for "the problem of an inequitable damage determination or allocation."  Reply 9.  Proposed Intervenors argue

that intervention is their "best hope of protecting their legal rights," id. at 7, because the outcome of this case "may create a res judicata defense for the government if Proposed Intervenors were disadvantaged and later attempted to otherwise enforce their rights," id. Proposed Intervenors' impairment of interest arguments are unpersuasive, first, because Proposed Intervenors fail to provide a reason why an inequitable damage determination will result if intervention is denied; second, because Proposed Intervenors fail to demonstrate that there will be an absence of relief elsewhere if the hypothetical scenario in which they suffer impairment due to inequitable allocation actually arises; and third, because Proposed Intervenors' res judicata concerns are misplaced.

Proposed Intervenors' impairment of interest argument based upon their concern over a potential "inequitable damage determination" is unpersuasive because Proposed Intervenors do not provide, and the court is unaware of, any reason why an "inequitable damage determination" will result if Proposed Intervenors are not allowed to participate. As discussed below in Part III.B.3, the court is not persuaded that plaintiff does not adequately represent Proposed Intervenors in this litigation. See infra Part III.B.3. Both plaintiff and Proposed Intervenors share an interest in maximizing the damages awarded for the breach of trust duties alleged in this action. Mot. 6 ("[B]oth the tribe and the headright owners have a common interest in obtaining the maximum damage award for the breaches alleged."). There is no reason for the court to believe that plaintiff would not zealously carry forward its present claims, or any appellate proceedings it deems appropriate. Proposed Intervenors' concerns are analogous to those of applicant-intervenors in Am. Renovation & Constr. Co. v. United States (American Renovation), who argued that their interest would be impaired because "plaintiff could settle the case for an improperly low amount or fail to settle at a reasonable amount which would result in the diminution of the value of [applicant-intervenor's] interest [in the contract at issue]." American Renovation, 65 Fed. Cl. 254, 263-64 (2005). Here, as in American Renovation, "The court does not find this 'impairment of interest' particularly persuasive because it would be illogical for Plaintiff not to actively seek the best outcome for its stake in the case."[7] Id. at 264.

---

[7] The court notes that in Am. Renovation & Constr. Co. v. United States (American Renovation), the court ultimately found that intervenors satisfied the impairment of interest requirement. American Renovation, 65 Fed. Cl. 254, 264 (2005). In American Renovation, however, the court found that intervention was proper because "entering this case is Intervenor-Applicant's best (and probably last) chance to enforce its legal rights in connection with [the underlying contract]." Id. In this case, however, this action is neither the best nor the last chance for Proposed Intervenors to enforce their legal rights to their pro rata share in income from the mineral estate at issue in this case. To the contrary, any potential enforcement of their individual

(continued...)

As to Proposed Intervenors' concerns over potential inequitable allocations to individual headright holders, defendant argues that Proposed Intervenors "will have other opportunities to ensure their interests are represented in an allocation of any damages." Def.'s Resp. 16.  The court agrees.  The court notes at the outset that any problems with the ultimate distribution of damages awarded are speculative, at best.  Here, as in Hage v. United States (Hage), "the singular direct result of a judgment in favor of plaintiff would be a monetary award from the government."  Hage, 35 Fed. Cl. 737, 740-41 (1996) (analogizing the potential "award [of] a large judgment to plaintiffs" in Hage to the circumstances in Karuk Tribe and discussing the similarity between the two cases). While it is possible to speculate that Proposed Intervenors may be impaired in some way by having to dispute the allocations they ultimately receive, "the court cannot assume that [a] . . . judgment necessarily will cause the effects which the group[] predict[s]."  Id. at 741.  In addition, any possible consequences that may arise as a result of this court's rulings are contingent upon actions and events involving intra-tribal determinations that lie outside the scope of this court's authority.  Importantly, in the event that Proposed Intervenors find any future damages allocation inequitable, they have alternative venues to deal with inequitable allocation.  Proposed Intervenors themselves acknowledge that "there are avenues to assure payment of any judgment [rendered by this court] provided by the Indian Tribal Judgment Funds Use or Distribution Act."  Reply 4.  Numerous courts have found intervention to be inappropriate "where relief is available elsewhere." Cheyenne-Arapaho Tribes of Indians of Oklahoma v. United States (Cheyenne-Arapaho), 1 Cl. Ct. 293, 296 n.4 (1983); see also id. at 296 (finding the prejudice to the potential intervenors to be "slight, if indeed, existent" where they "made no showing that other future avenues of relief . . . are totally unavailable"); TRW Envtl. Safety Sys., Inc. v. United States, 16 Cl. Ct. 516, 519 (1989) (stating that the potential intervenor "would not appear to be substantially prejudiced by a denial of its motion, for [the applicant] retains its right to bring a separate action"); Ackley v. United States, 12 Cl. Ct. 306, 309 (1987) (finding that the applicants' rights would not be prejudiced because they had filed a separate action and their pursuit of that claim would not be inhibited by denying intervention).  This court can only determine whether plaintiff is entitled to compensation; it cannot determine whether the Tribe must pay headright holders any particular portion of any judgment the court may grant in this case.  Proposed Intervenors can protect their interest by contesting in another forum any inequitable allocations that occur subsequent to the judgment in this case.  Here, as in Cheyenne-Arapaho, Proposed Intervenors "may still have recourse to an appropriate court to compel distribution in accordance with applicable law."  Cheyenne-Arapaho, 1 Cl. Ct. at 296 n.4 (citation omitted).  "While the movants may face the prospect of being excluded from the distribution of judgment

---

[7](...continued)
rights is more appropriately vindicated through other avenues, as discussed in this Part III.B.2.

funds, they have made no showing that other future avenues of relief, either in Congress, or against the Tribe or others are totally unavailable." Id. at 296.  For these reasons, denying intervention in this case does not operate to preclude Proposed Intervenors from seeking relief elsewhere in order to protect their interests in their pro rata share of income derived from the mineral estate.

Proposed Intervenors also argue impairment of interest based on their contention that the outcome of this case "may create a res judicata defense for the government if Proposed Intervenors were disadvantaged and later attempted to otherwise enforce their rights."  Reply 7.  However, Proposed Intervenors' res judicata argument is unavailing when analyzed in light of the law of the case.  This court has previously found that the Tribe is the real party in interest in this litigation and that the Tribe owns the minerals which are the subject of this action. Osage I, 57 Fed. Cl. at 395 ("headright holders are not in fact 'the real parties in interest' because the Tribe, not the headright holders, is the direct trust beneficiary."); Osage V, 81 Fed. Cl. at 349 ("the Osage [tribe] [is] the owner[] of the minerals").  Accordingly, in Part III.B.1 of this opinion, the court found that Proposed Intervenors hold no legally protectable interest in the subject of this action. See supra Part III.B.1.  Therefore, any attempt by Proposed Intervenors to "enforce their rights," Reply 7, after a final judgment is rendered in this litigation will be limited to an enforcement of their individual interests with regard to allocations of a monetary judgment, and not as to the general damages determination.  This case is limited to a determination of whether defendant breached its fiduciary duties to plaintiff and whether plaintiff is entitled to compensation.  The doctrine of stare decisis does not operate to preclude Proposed Intervenors from protecting their individual rights to a pro rata share in damages awarded to the Osage Tribe.  Proposed Intervenors' res judicata argument is misplaced.

For the foregoing reasons, Proposed Intervenors have not demonstrated that "without intervention the disposition of the action may, as a practical matter, impair or impede the applicants' ability to protect th[eir] interest." Freeman, 50 Fed. Cl. at 309.

3.      Adequacy of Representation by Existing Parties

In order to be granted intervention of right, applicants must demonstrate that "their interest is inadequately represented by the existing parties." Freeman, 50 Fed. Cl. at 308-09.  Proposed Intervenors contend that plaintiff Osage Nation does not adequately represent their interests because "[the Tribe's] statements raise questions about whether the current tribal government has an interest in . . . dilut[ing] the long-standing right of the headright owners . . . to receive their designated share of Osage mineral income." Mot. 7.  Plaintiff argues that Proposed Intervenors have asserted "only an imaginary

threat to their headright interests." Pl.'s Resp. 6. The court agrees with plaintiff. Proposed Intervenors have not proven that plaintiff Osage Nation inadequately represents their interests, first, because Proposed Intervenors have merely stated a fear based on speculation which is insufficient to show that the Osage Nation is not adequately representing their interests; and second, because the court finds that the relationship between the Osage Nation and Proposed Intervenors, themselves members of the Osage Nation, may properly be analogized to the relationship between the United States and its citizens, where the government is presumed adequately to represent an applicant-intervenor's interests.

Proposed Intervenors rest their argument of inadequate representation on their speculation as to plaintiff's interest in "dilut[ing]" Proposed Intervenors' rights to proceeds from the mineral estate.[8] Mot. 7. As an initial matter, Proposed Intervenors appear to acknowledge the weakness of their own argument when they concede in their Reply that "[t]he Osage Nation has . . . acknowledged the headright owners' interest in the trust assets and royalties in accordance with the federal law establishing those rights." Reply 3. Nevertheless, Proposed Intervenors question plaintiff's motives based on the fact that plaintiff did not use the particular term "headright owners" in the Osage Constitution or in plaintiff's third amended complaint filed in this action. Mot. 9. Proposed Intervenors' allegation that plaintiff may be motivated to dilute the rights of headright owners, based entirely on plaintiff's word choice in two documents, is unpersuasive to show inadequate representation. The court's conclusion is supported by official statements of plaintiff, including in the Osage Constitution, that reaffirm a commitment to preserve the rights of headright owners. See, e.g., Osage Const. (2006) art. XV, § 4 ("The government [of the Osage Nation] shall further ensure that the rights of members of the Osage Nation to income derived from that Mineral Estate are protected); Pl.'s Resp. Exhibit (Ex.) A (Osage Nation Congress Resolution No. ONCR 08-24) (declaring that "any proceeds [from this litigation] . . . should be distributed, after payment of all appropriate litigation expenses, to Osage headright holders in accordance with their headright interests" and further declaring that no payment "be delayed by any act or failure to act of the Osage Nation").

_____

[8] Proposed Intervenors also argue inadequate representation due to the fact that Congress does not refer specifically to "headright owners" in a 2004 Act reaffirming certain rights of the Osage Tribe. Mot. 9; see Act of Dec. 3, 2004, Pub. L. No. 108-431, § 1(b)(1), 118 Stat. 2609 (2004) ("An Act to Reaffirm the Inherent Sovereign Rights of the Osage Tribe to Determine Its Membership and Form of Government") (2004 Act). The court finds this argument as to Congressional intent irrelevant to the merits of this motion. The disposition of this motion turns on Proposed Intervenors' failure to identify either a legally protectable interest or any reason to question the adequacy of representation by plaintiff Tribe.

Further, Proposed Intervenors acknowledge candidly that "both the Tribe and the headright owners have a common interest in obtaining the maximum damage award for the breaches alleged." Mot. 6.  Nevertheless, Proposed Intervenors argue inadequate representation based on the speculation that  "their interests <u>may</u> diverge when it comes to the issue of determining to whom those damages should be allocated."  <u>Id.</u> (emphasis added).  Speculation about events that might occur subsequent to this litigation do not demonstrate inadequate representation.  Moreover, to the extent that the Tribe itself is a headright owner, it holds an interest identical to that of Proposed Intervenors.  Def.'s Resp. Ex. A (Declaration of Charles Hurlburt) ¶ 4 ("Current owners of headright interests include . . . the Osage Tribe itself."); Mot. 5 ("The Tribe is the trust beneficiary and also holds a small portion of outstanding headrights.").  The court finds no indication that plaintiff is not vigorously carrying forward its claims.

In addition, the court views the relationship between the Osage Nation and Proposed Intervenors to be analogous to the relationship between the United States and its citizens, where the government is presumed adequately to represent an applicant-intervenor's interests.  <u>Freeman</u>, 50 Fed. Cl. at 310 (stating that the government is presumed to represent an applicant's interest).  In this case, Proposed Intervenors are members of plaintiff Osage Nation.  <u>Osage V</u>, 81 Fed. Cl. at 345-46 (finding that headright holders possess "legal membership" in the Osage Nation as a matter of federal law).  The United States Constitution recognizes Indian tribes as sovereign governments.  <u>See</u> U.S. Const. art. I, § 8, cl. 3.  Article I, § 8, of the Constitution gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."  U.S. Const. art. I, § 8, cl. 3.  The Supreme Court of the United States has stated that "Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory."  <u>United States v. Mazurie</u>, 419 U.S. 544, 557 (1975) (citing <u>Worcester v. Georgia</u>, 31 U.S. 515, 557 (1832)).  The court presumes that plaintiff Osage Tribe, with sovereignty over its members analogous to the sovereignty of the United States over its citizens, is competent to litigate claims on behalf of and in the interest of its members and therefore adequately to represent Proposed Intervenors' interests.  Proposed Intervenors have neither rebutted that presumption, nor even cast any shadow of doubt concerning the diligence with which the Osage Nation is representing or will represent their interests.

Proposed Intervenors claim inadequate representation based on the fact that they "have not been advised of the Tribe's decisions or actions in the . . . case[], nor have they had an opportunity to offer input regarding them."  Mot. 9; <u>see also</u> Reply 4 (stating that "Proposed Intervenors seek involvement . . . regarding the determination of damages" and have "no input into what litigation expenses may be appropriately incurred and paid out of the damages they might otherwise be entitled to receive").  However, Proposed

Intervenors do not provide, and the court is unaware of, any support for the contention that these facts are sufficient to establish inadequate representation. To the extent that Proposed Intervenors are dissatisfied with their elected leadership, that is a problem that should be addressed through an internal tribal mechanism.

When applicants seek to intervene as a party on the side of the United States, "the applicants may rebut the presumption of adequate representation through a showing of collusion, adversity of interest, or nonfeasance." Freeman, 50 Fed. Cl. at 310. Proposed Intervenors do not urge that there is "collusion" or "nonfeasance." Mot. passim. However, Proposed Intervenors point to this court's opinion in Osage V to show that an adversity of interest exists between themselves and plaintiff Tribe. Mot. 6. Proposed Intervenors confuse the court's finding of "material adversity" between the Osage Tribe and the Osage Tribe's former counsel, then appearing as counsel for Original Intervenors in Osage V, 81 Fed. Cl. at 351, with the requirement of "adversity of interest" in the intervention context. In Osage V, this court found that counsel for Original Intervenors argued for positions adverse to his former client, plaintiff Osage Tribe. Osage V, 81 Fed. Cl. at 348-51. That finding was made by the court as part of its analysis leading to its decision to disqualify counsel for Original Intervenors. Id. at 351-53. The litigation positions taken by counsel for Original Intervenors were adverse to the positions taken by plaintiff. Osage V, 81 Fed. Cl. at 348-51 (discussing Original Intervenors' position that they were the ultimate beneficiaries in the case, whereas the Osage Tribe advocated the position that the Tribe itself owned the beneficial interest in the mineral estate).

In their Motion, Proposed Intervenors advocate that intervention is proper in this case while plaintiff Osage Nation responds in opposition. See Mot. passim; Pl.'s Resp. passim. Adverse positions on the propriety of intervention, however, should not be permitted to blur the fact that both plaintiff and Proposed Intervenors share an interest in maximizing any compensation that this court may award. Mot. 6 ("[B]oth the tribe and the headright owners have a common interest in obtaining the maximum damage award for the breaches alleged."). Because the litigation goal of both plaintiff and Proposed Intervenors is the same, Proposed Intervenors have not demonstrated that there is an "adversity of interest" between themselves and the Osage Nation. Proposed Intervenors' reliance on Osage V to establish adversity of interest is misplaced.

4.    Timeliness

Under both Rule 24(a) and Rule 24(b), the application to intervene must be "timely." RCFC 24(a), (b). The court determines timeliness from "all the circumstances" and exercises "sound discretion" in making its determination. NAACP v. New York, 413 U.S. 345, 366 (1973); see also Te-Moak Bands of W. Shoshone Indians v. United States,

18 Cl. Ct. 82, 86 (1989) ("It is within the discretion of the court to decide which delays render motions untimely."); Cheyenne-Arapaho, 1 Cl. Ct. at 294 ("The question of timeliness is largely committed to the discretion of the trial court.").  The court should examine three factors when determining whether a motion to intervene is timely:

> "(1) the length of time during which the would-be intervenor[s] actually knew or reasonably should have known of [their] right[s] . . . ;
> (2) whether the prejudice to the rights of existing parties by allowing intervention outweighs the prejudice to the would-be intervenor[s] by denying intervention;
> (3) existence of unusual circumstances militating either for or against a determination that the application is timely."

John R. Sand & Gravel Co. v. United States (J.R. Sand), 59 Fed. Cl. 645, 649 (2004) (quoting Belton Indus., Inc. v. United States (Belton Indus.), 6 F.3d 756, 762 (Fed. Cir. 1993)), aff'd, 143 Fed. Appx. 317 (Fed. Cir. 2005) (table).

As to factor (1), because the court finds that Proposed Intervenors do not have, nor have they previously held, a legally protectable interest in this litigation, factor (1) is irrelevant.  See supra Part III.B.1.  More specifically, because factor (1) speaks of a would-be intervenor's "right," and Proposed Intervenors do not have a right to bring the underlying claims in this litigation, Proposed Intervenors do not, a fortiori, satisfy factor (1).

As to factor (3), Proposed Intervenors argue that special circumstances exist in this case because permitting intervention "avoids the complications of a class action certification."  Reply 8.  Because Proposed Intervenors neither qualify as an identifiable group pursuant to 28 U.S.C. § 1505, see supra Part III.A, nor have legally protectable rights as individuals, see supra Part III.B.1, the court finds this argument moot.  Accordingly, Proposed Intervenors do not satisfy factor (3).

Even if Proposed Intervenors were viewed as having satisfied factors (1) and (3), the court views intervention as prejudicial to the parties under factor (2) when the court "weigh[s] the prejudice to the parties if intervention is allowed against the prejudice to the potential intervenor[s] if intervention is not allowed."  J.R. Sand, 59 Fed. Cl. at 651 (citing Belton Indus., 6 F.3d at 762).  This prong measures only the prejudice caused by a potential intervenor's delay and not that caused by the intervention itself.  Utah Ass'n of Counties v. Clinton (Utah Association), 255 F.3d 1246, 1251 (10th Cir. 2001).  Proposed Intervenors cast their argument on this prong in terms of a nineteen month delay – the period of time between the ratification of the Osage Constitution in 2006 and the date of

filing of Original Intervenors' motion to intervene, October 15, 2007.  Mot. 10. However, because the court finds unpersuasive Proposed Intervenors' argument that the 2006 Osage Constitution exhibits plaintiff's motive to dilute the Proposed Intervenors' interests, see supra Part III.B.3, prejudice to the parties should be examined in light of the eight-year delay between the time plaintiff originally brought this suit in 1999 and the time at which Original Intervenors applied for intervention.  An eight-year delay weighs against Proposed Intervenors.  See e.g., Cheyenne-Arapaho, 1 Cl. Ct. at 296 (finding six-year delay in applying for intervention a significant factor in denying intervention as untimely).  In Utah Association, the court found that the parties were not prejudiced because the case was "far from ready for final disposition; no scheduling order ha[d] been issued, no trial date set, and no cut-off date for motions set."  Utah Association, 255 F.3d at 1250-51.  In contrast, here there has already been a trial held and findings of fact and conclusions of law made concerning defendant's liability for some of plaintiff's Tranche One claims.  Osage III, 72 Fed. Cl. at 631, 671.  Several scheduling orders have been entered in this case since its inception, the most recent of which addressed the parties' discovery and motion practice as to plaintiff's remaining claims.  Order of Aug. 21, 2008, dkt. no. 319.  In the differing circumstances of Freeman, this court found that "any prejudice to the existing parties would be minimal since there are no pending dispositive motions."  Freeman, 50 Fed. Cl. at 308.  In the present case, the court had already issued a scheduling order as to plaintiff's motion for partial summary judgment at the time Proposed Intervenors' Motion was fully briefed.  Order of Aug. 21, 2008, dkt. no. 319. At the time of this decision, briefing on plaintiff's motion for partial summary judgment is pending.  Plaintiff Osage Nation's Motion for Summary Judgment, Dec. 2, 2008, dkt. no. 338.

Proposed Intervenors argue that they will suffer prejudice if they are not allowed to intervene because their ability to protect their interest will be impeded by a judgment or settlement.  Reply 9.  However, because Proposed Intervenors have not demonstrated the absence of alternative venues in which relief may be sought, the prejudice they may suffer is minimal at best and intervention is inappropriate.  See supra Part III.B.2.  For the foregoing reasons, Proposed Intervenors' Motion is untimely.

C.     Permissive Intervention

The court has broad discretion in deciding whether to allow permissive intervention.  6 James Wm. Moore, Moore's Federal Practice § 24.10[1], at 24-57 (3d ed. 2004) ("The [trial] court possesses broad discretion in determining whether to grant permissive intervention and will rarely be reversed on appeal.").  In assessing whether a potential intervenor should be granted permissive intervention, the court must decide that a would-be intervenor's application is timely and that there is a "common question of law

or fact" between the applicant's claim or defense and the main action.  RCFC 24(b).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  <u>Id.</u>  Because the court has already decided that Proposed Intervenors' Motion does not meet the timeliness requirement, <u>see</u> <u>supra</u> Part III.B.4, permissive intervention is inappropriate.  However, even if Proposed Intervenors' Motion were viewed as timely, Proposed Intervenors fall short of meeting the standard for permissive intervention.

Proposed Intervenors state that they "should be permitted to intervene pursuant to RCFC 24(b) because their claims and the main action have questions of law or fact in common."  Mot. 11.  To the extent that Proposed Intervenors' claims adopt the complaint filed by plaintiff Osage Nation, <u>see</u> <u>supra</u> Part III.B.1, the court has previously ruled that the Tribe, not the headright holders, is the real party in interest and therefore has standing to bring the claims against the government presently at issue in this litigation.  Osage I, 57 Fed. Cl. at 395.  In addition, the court has already found that plaintiff adequately represents Proposed Intervenors in this litigation.  <u>See</u> <u>supra</u> Part III.B.3.  The court must also "consider whether an intervenor would burden or prolong the proceedings by filing a counterclaim or motions on extraneous issues."  <u>Freeman</u>, 50 Fed. Cl. at 310; <u>see also</u> 6 James Wm. Moore, <u>Moore's Federal Practice</u> § 24.10[1], at 24-57 (3d ed. 2004) ("[C]onsiderations of trial convenience dominate the question of whether to allow permissive intervention.").  While Proposed Intervenors state that they "do not seek to disrupt the present status of the case," Mot. 11, and that "[p]ermitting . . . intervention . . . in this case will not cause a delay in adjudication of it," <u>id.</u>,  it would be unrealistic to conclude that granting intervention would not affect this litigation.  In the present case, both Proposed Intervenors and plaintiff are attempting to prove that defendant has breached its fiduciary duties owed to the Osage Tribe and accordingly maximize any judgment awarded.

> The duplicative nature of the evidence will not shed any additional light on this issue.  The ultimate objectives of the [parties] are the same . . . . Allowing the [intervenor-]applicants to intervene in this case would threaten expedient disposition of this action.

<u>Freeman</u>, 50 Fed. Cl. at 311.  Here, as in <u>Hage</u>, "intervention would not serve the interests of judicial economy because the applicants merely argue issues raised by the primary parties."  <u>Hage</u>, 35 Fed. Cl. at 742.

Furthermore, to the extent that Proposed Intervenors seek intervention now in order later to adjudicate any potential future complaints over allocations of damages that they may regard as inequitable, this case can be analogized to cases in which permissive

intervention has been denied on the basis that the would-be intervenors do not have a claim against the United States. In situations where a plaintiff has sued the United States and an applicant seeks to intervene as a defendant, courts have found permissive intervention to be inappropriate because the applicant does not have a claim against the United States. See, e.g., Hage, 35 Fed. Cl. at 742 (denying permissive intervention because the applicants "do not have a claim against the United States"); Karuk Tribe, 27 Fed. Cl. at 432 (denying permissive intervention because "the applicant-intervenors do not have a claim or defense against the United States" and the "court entertains suits against the government"). These rulings stem from the nature of this court's jurisdiction. Under the Tucker Act this court has

> jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2006).[9] First, the court cannot claim jurisdiction over hypothetical claims that Proposed Intervenors may have in the future because they do not presently exist.[10] As the Supreme Court has stated, in a discussion of the case or

---

[9] While these cases discuss the lack of a claim against the United States as a basis for denying permissive intervention, given the contours of the jurisdiction of this court, their reasoning applies with equal force to intervention of right under RCFC 24(a).

[10] The court notes that throughout their briefing, Proposed Intervenors routinely misstate this court's finding in Osage I. Proposed Intervenors' Motion cites Osage I for the proposition that "[t]he Tribe has no further interest in or claim to the funds once they are distributed to the headright owners." Mot. 5 (emphasis omitted) (citing Osage I, 57 Fed. Cl. at 395). Proposed Intervenors go on to state, "The tribe loses its beneficial interest in tribal trust funds once they are segregated for disbursement to the headright owners." Id. at 12. In their Reply, Proposed Intervenors similarly refer to "the [c]ourt's statement in [Osage I] that the headright owners have an interest in the funds upon segregation." Reply 6. Contrary to Proposed Intervenors' mischaracterizations, in Osage I, the court stated, "Although the Tribe may have no further interest or claim to the funds once they are distributed to the headright owners, the court finds that the Tribe does have both an interest in and a claim to the funds when those funds are within the tribal trust account that was established by the 1906 Act." Osage I, 57 Fed. Cl. at 395 (emphasis added). The court did not address the issue of segregation in any way. Id. Moreover, the court did not render a finding as to if or when plaintiff Osage Nation loses any portion of its beneficial interest in the mineral estate. Id. Moreover, to the extent that plaintiff is itself a

(continued...)

controversy requirement needed in order invoke the jurisdiction of the federal courts, "Abstract injury is not enough. The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983) (citations omitted).  Second, Proposed Intervenors do not qualify as an "identifiable group" so as to bring them under this court's jurisdiction pursuant to 28 U.S.C. § 1505.  See supra Part III.A.  Third, Proposed Intervenors have not demonstrated that this court would have jurisdiction over claims brought by individual Osage headright holders against the United States under either 28 U.S.C. § 1491(a)(1), see Mot. passim; Reply passim, or 28 U.S.C. § 1505, id.; see also Pl.'s Resp. 2, 4 (discussing that the Tribe is the proper party to invoke this court's Indian Tucker Act jurisdiction with respect to the trust issues this case addresses).[11]  In these circumstances, the court finds permissive intervention inappropriate.

IV.     Conclusion

        For the foregoing reasons, Proposed Intervenors' Motion is DENIED.

        IT IS SO ORDERED.

---

        [10](...continued)
headright holder, it presumably holds the exact same interest in its pro-rata share of the mineral estate after distribution of the funds as do Proposed Intervenors.  Def.'s Resp. Ex. A (Declaration of Charles Hurlburt) ¶ 4 ("Current owners of headright interests include . . . the Osage Tribe itself.");  Mot. 5 ("The Tribe is the trust beneficiary and also holds a small portion of outstanding headrights.");  see also supra Part III.B.3.  The court agrees with defendant that to the extent that any "claims regarding alleged misconduct by the United States following distribution of the funds, or segregation for distribution of the funds," Def.'s Resp. 7, become a part of this litigation, "the [c]ourt [has not] issued definitive rulings outlining the scope of any such claims . . . [nor has the court] decided whether the Tribe is the proper party to be bringing such claims," id.

        [11] For the foregoing jurisdictional reasons, the court agrees with Proposed Intervenors that defendant's "attempt to categorize the issues of the case into pre-distribution and post-distribution claims," Reply 11; see also Def.'s Resp. passim, is artificial and unnecessary for the purposes of deciding Proposed Intervenors' Motion.  Id.  Proposed Intervenors do not meet the requirements for intervention in this case, either permissively under RCFC 24(b) or as of right under RCFC 24(a), as to any of their claims, whenever they may arise.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge