# In the United States Court of Federal Claims

No. 99-550 L
(into which has been consolidated No. 00-169 L)
(E-Filed: December 9, 2010)

| | | |
|---|---|---|
| _____ | ) | |
| THE OSAGE TRIBE OF INDIANS | ) | Judicial Notice; Dictionary |
| OF OKLAHOMA, | ) | Definitions of Statistical Terms; |
| | ) | Prior Trial Testimony in Same |
| Plaintiff, | ) | Matter; Deposition Testimony. |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Wilson K. Pipestem, Washington, DC, for plaintiff.

Joseph H. Kim, with whom were Ignacia S. Moreno, Assistant Attorney General, Romney S. Philpott and Brian M. Collins, Environment & Natural Resources Division, U.S. Department of Justice, Washington, DC, for defendant.

ORDER

Before the court are Plaintiff Osage Nation's Opening Post-Trial Brief Regarding the Tranche One Testimony of Charles Hurlburt, Docket Number (Dkt. No.) 589, filed on October 4, 2010; Defendant's Opening Brief Regarding Judicial Notice (Def.'s Br.), Dkt. No. 590, filed on October 4, 2010; Defendant's Responsive Brief Regarding Judicial Notice, Dkt. No. 592, filed on October 12, 2010; and Plaintiff Osage Nation's Response Brief Regarding the Tranche One Testimony of Charles Hurlburt, Dkt. No. 593, filed on October 12, 2010.

I.      Background

The court, by its order of September 21, 2010 (September 21 Order), Dkt. No. 585, gave notice to the parties that it planned to take judicial notice of certain adjudicative facts and offered the parties an opportunity to be heard on the propriety of its doing so. September 21 Order at 3 (directing any party that objected to the court's use of judicial notice to file a Motion Requesting an Opportunity to be Heard). Specifically, the

court notified the parties that it intended to use several definitions of basic statistical terms drawn from statistical dictionaries:

> (1) The court has consulted B.S. Everitt, <u>The Cambridge Dictionary of Statistics</u> (2d ed. 2002) to define the term "outlier" and to determine the meaning of the [phrase] "Extreme Studentized Deviate Test."
>
> (2) The court has consulted Graham Upton & Ian Cook, <u>A Dictionary of Statistics</u> (2d ed. rev. 2008) to define the term "outlier" and to determine the meaning of the "Grubb's Test" or "Grubbs' Rule."
>
> (3) The court has consulted Yadolah Dodge, <u>The Oxford Dictionary of Statistical Terms</u> (2003) to determine the meaning of the "Grubb's Test" or "Grubbs' Rule" and the "Extreme Studentized Deviate Test."

September 21 Order at 2. The court also notified the parties that it intended to take judicial notice of certain testimony given by one of defendant's expert witnesses, Mr. Charles Hurlburt, in an earlier proceeding in the case:

> (4) The court notices the following Tranche One trial testimony of Mr. Charles Hurlburt:
>
> Defendant's Counsel: To the best of your recollection when did companies start offering bonuses?
>
> Mr. Hurlburt: [The Osage Agency] began seeing a great deal of competition in . . . about 1988, '89, '90 . . . . After the calamitous price fall in '86 and '87 prices kind of edged back up slowly. We saw companies that would provide extra service. We saw companies that just wanted to just pay extra for the oil.

September 21 Order at 2-3 (quoting 2006 Trial Transcript 1056:24-1057:9).

Pursuant to the court's September 21 Order, defendant requested an opportunity to be heard "out of an abundance of caution, and because the Sept. 21 Order does not reveal the reasons for judicial notice . . . ." Defendant's Motion Requesting an Opportunity to be Heard (defendant's Motion or Def.'s Mot.), Dkt. No 586, at 1. Defendant noted that defendant had "only been able to obtain a newer edition of the first of the three referenced dictionaries, an older edition of the second referenced dictionary, and the third referenced dictionary." <u>Id.</u> at 2 n.1. In defendant's Motion, which focused on the court's use of the dictionary definitions, defendant requested "further detail regarding the [c]ourt's intended use of judicial notice, and further proceedings in light of the same." <u>Id.</u> at 4.

In response to defendant's Motion, the court, by its order of September 29, 2010 (September 29 Order), Dkt. No. 587, set out a briefing schedule on the issue of judicial notice and provided the parties with the following "further detail," which included the definitions the court intended to use:

> (1)  The court has consulted B.S. Everitt, The Cambridge Dictionary of Statistics (2d ed. 2002) (Cambridge Dictionary) and Graham Upton & Ian Cook, A Dictionary of Statistics (2d ed. rev. 2008) to define the term "outlier."  The Cambridge Dictionary, at 274, defines an outlier as "[a]n observation that appears to deviate markedly from the other members of the sample in which it occurs."  A Dictionary of Statistics, at 286, defines an outlier as "[a]n observation that is very different to other observations in a set of data."  The court consults these sources better to understand the parties' dispute regarding Mr. [Ronnie] Martin's "outlier analysis."  See Plaintiff Osage Nation's Post-Trial Brief, Dkt. No. 571, at 6-7; Defendant's Opening Post-Trial Brief for Trial Beginning June 30, 2010, Dkt. No. 569, at 15; Defendant's Responsive Post-Trial Brief for Trial Beginning June 30, 2010, Dkt. No. 573, at 10-11.
>
> (2)  At trial, Mr. [Daniel] Reineke testified that "[i]f one is to exclude the data[,] . . . a mean and a standard deviation calculation is necessary."  Tr. 368:18-21.  When prompted by the court for the basis of his opinion, Mr. Reineke responded:  "Accept[ed] statistical practices, where you use . . . the Grooms method or the EDS method or any of those methods that actually determine how to exclude data from a data set."  Tr. 368:23-369:1.  The court consults the following sources as a means of understanding the terms used in the foregoing testimony of Mr. Reineke.
>
> With respect to Mr. Reineke's reference to the "Grooms method," the court understands Mr. Reineke to be referring to the Grubbs' Test.  Compare Tr. 320:9-11 (Mr. Reineke) (referring to "the Grubb's method") with June 30, 2010 EDR 6:40:08-6:40:10 (referring to a method that, in the recording, sounds like "Groom's method").  The court consults A Dictionary of Statistics and Yadolah Dodge, The Oxford Dictionary of Statistical Terms (2003) (Oxford Dictionary) for the meaning of the Grubb's Test.  A Dictionary of Statistics, at 287, defines the Grubb's Test as a statistical method used to identify outliers when the data falls within a normal distribution.  The Oxford Dictionary, at 175, defines the "Grubbs' rule" as "[a] criterion for the rejection of outlying large observations."
>
> With respect to Mr. Reineke's reference to the "EDS method," the court understands Mr. Reineke to be referring to the ESD (Extreme Studentized or Standardized Deviate) Test.  The court consults the Cambridge Dictionary, at 232, for the meaning of the ESD test:  a method

3

> of "detecting multiple outliers in a sample." The court also consults the Oxford Dictionary, at 143, for the ESD equation.

September 29 Order at 1-2. Noting that "[d]efendant's Motion does not specifically reference the court's judicial notice of Mr. Hurlburt's 2006 testimony," the court directed that briefing was to address the question of "whether the court may or may not rely on the Hurlburt testimony for the truth of the matters asserted." Id. at 2.

By an additional order filed September 30, 2010 (September 30 Order), Dkt. No. 588, the court "[i]n further response to [d]efendant's Motion" advised the parties that:

> The court has consulted Graham Upton & Ian Cook, A Dictionary of Statistics 286 (2d ed. rev. 2008) for the proposition that "[v]arious indicators are used to identify outliers. One is that an observation has a value that is more than 2.5 standard deviations from the mean." A Dictionary of Statistics defines standard deviation as "[t]he square root of the variance," id. at 370, which is defined as "[a] measure of the variability of a set of data," id. at 401.

September 30 Order at 1.

II. Discussion

Defendant argues that "although this [c]ourt may take judicial notice of dictionary definitions or prior trial testimony under Rule 201 of the Federal Rules of Evidence, because both trial and post-trial briefing have closed, there remains a potential issue of prejudice to defendant. Or, as Weinstein's phrased it, 'considerations of fairness or due process.'" Def.'s Br. 1 (quoting Weinstein's Federal Evidence (Weinstein's Federal Evidence) § 201.32[1] (Joseph M. McLaughlin ed., 2d ed. 2010)). Having given due consideration to the arguments set out in defendant's briefing, the court concludes that taking judicial notice of the matters it indicated to the parties is consistent with Rule 201 of the Federal Rules of Evidence (Rule 201) and satisfies considerations of fairness and due process.

    A. Testimony in Prior Proceedings in Same Matter

As the court stated in its September 21 Order, the court has the authority under Rule 201 to take judicial notice of an adjudicative fact that is "not subject to reasonable dispute" such that it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." September 21 Order at 1 (quoting Fed. R. Evid. 201(b)).

"It is settled, of course, that the courts, trial and appellate, take notice of their own respective records in the present litigation, both as to matters occurring in the immediate trial, and in previous trials and hearings." McCormick on Evidence § 330 (Kenneth S.

4

Broun, ed. 6th ed. 2006). Further, courts often take judicial notice of prior filings and proceedings in previous litigation before the court between the same parties. See, e.g., Shuttlesworth v. City of Birmingham, 394 U.S. 147, 157 (1969) ("[W]e may properly take judicial notice of the record in that litigation between the same parties who are now before us."); Biomedical Patent Mgmt. Corp. v. California, 505 F.3d 1328, 1331 n.1 (Fed. Cir. 2007) (finding that the district court did not abuse its discretion by taking judicial notice of court filings from prior litigation between the parties); United States v. Author Servs., Inc., 804 F.2d 1520, 1523 (9th Cir. 1986) ("It is well established that a court may take judicial notice of its own records."); Green v. Warden, U.S. Penitentiary, 699 F.2d 364, 369 (7th Cir. 1983). Defendant does not argue otherwise.[1]

In its September 21 Order, the court informed the parties that it intended to take judicial notice of an exchange between Mr. Hurlburt and defendant's counsel at an earlier proceeding in this litigation. See September 21 Order at 2-3. The proceedings in this litigation have been divided for clarity. The exchange took place during a 2006 trial before this court on the issues of liability and damages with respect to certain months at issue. The court takes judicial notice of Mr. Hurlburt's testimony to give context to testimony given by defendant's expert witness during the June 30, 2010 trial.

In addition to being well-established judicial practice for the court to take notice of prior proceedings in a closely related matter between the same parties, Mr. Hurlburt's testimony, being from an earlier proceeding in the same action as the current matter, may more properly be considered part of the record currently before the court. As defendant acknowledges, "[I]t is not even clear that concepts of judicial notice apply to such prior Tranche One testimony." Def.'s Br. 2. Although the court may not have been required to take judicial notice of Mr. Hurlburt's testimony in order to consider it in the current proceedings, for purposes of efficiency and judicial economy, the court provided the parties notice that it intended to take judicial notice of Mr. Hurlburt's testimony and an opportunity to be heard.

      B.     Dictionary Definitions of Statistical Terms

Pursuant to Rule 201, the court consulted dictionaries for the definition of several statistical terms used by expert witnesses and discussed by the parties in briefing without full definition. See, e.g., September 29 Order at 1 (consulting dictionaries for a definition of the word "outlier"); id. at 2 ("The court consults the Cambridge Dictionary, at 232, for the meaning of the ESD test: a method of 'detecting multiple outliers in a sample'") (citation omitted). The dictionaries also helped the court to determine what an expert witnesses has said when the recording of testimony was unclear or when the expert

---

[1] Defendant acknowledges that "the [c]ourt may rely on the identified 'Hurlburt testimony for the truth of the matters asserted' if this simply means accepting his testimony as true. Defendant certainly does not contend otherwise." Defendant's Opening Brief Regarding Judicial Notice (Def.'s Br.), Docket Number (Dkt. No.) 590, at 2.

5

witnesses may have been misquoted in the transcripts of testimony.  See, e.g., id. at 2 (concluding that when Mr. Reineke referred to what sounded like the "Groom's method," he was referring to the "Grubbs' rule," which one dictionary defines as "[a] criterion for the rejection of outlying large observations.").

Taking judicial notice of dictionaries and encyclopedias for definitions of terms used by parties and witnesses is a well-established practice that predates the Federal Rules of Evidence.  See, e.g., Werk v. Parker, 249 U.S. 130, 132-33 (1919) (holding that the Circuit Court of Appeals "was justified in taking judicial notice of facts that appeared so abundantly from standard works accessible in every considerable library" including "the British Encyclopedia . . . [and] the Standard Dictionary of 1894"); B.V.D. Licensing Corp. v. Body Action Design, Inc., 846 F.2d 727, 728 (Fed. Cir. 1988) (stating that courts may consult dictionaries and encyclopedias when taking judicial notice of facts).  Courts often take judicial notice of definitions in more specialized reference books when the terminology used belongs to a particular profession or academic discipline.  For instance, to determine the definition of accounting terms and the nature of certain accounting practices, the United States Court of Appeals for the Federal Circuit has taken judicial notice of explanations in accounting texts.  See, e.g., Urbanek v. United States, 731 F.2d 870, 873 n.3 (Fed. Cir. 1984); Marquardt Co. v. United States, 822 F.2d 1573, 1578 (Fed. Cir. 1987).  Judicial notice of a well-established scientific or mathematic theories may at times be appropriate.  See, e.g., Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 593 n.11 (1993) ("Indeed, theories that are so firmly established as to have attained the status of scientific law, such as the laws of thermodynamics, properly are subject to judicial notice . . . .").  Certain basic terms such as "outlier" are sufficiently well-established and elementary to scholars of statistics that defendant's expert witness did not stop to define them.  To take judicial notice of the definition of such terms used by the parties and their witnesses is consistent with both longstanding judicial practice and with the requirements of the Federal Rules of Evidence.

C.      Considerations of Fairness or Due Process

Defendant acknowledges that "this [c]ourt may take judicial notice of dictionary definitions or prior trial testimony under Rule 201 of the Federal Rules of Evidence,"[2] but argues that "considerations of fairness or due process" require the court to disclose additional information about its use of judicial notice.  Def.'s Br. 1 (quoting Weinstein's Federal Evidence § 201.32[1]).  In the court's view, neither general considerations of fairness or due process nor the specific concerns defendant raises require the court to provide additional information.

Rule 201 directs that a party "is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed."

---

[2] Examining the definition the court plans to use, defendant also concludes that "the referenced definitions of 'outlier' fully support Mr. Martin's use of the term  . . . ." Def.'s Br. 3.

6

Fed. R. Evid. 201(e).  However, "[O]nly a rare case insists that a judge must notify the parties before taking judicial notice of a fact on his own motion, and some authorities suggest that such a requirement is needless."  McCormick on Evidence § 333.  "In the absence of prior notification, the request may be made after judicial notice has been taken."  Fed. R. Evid. 201(e).  It is out of an abundance of caution that the court alerted the parties to its intention to take judicial notice, a practice that in this context is fairly uncontroversial.  In its briefing, defendant identified several fairness-related concerns.  The court concludes that each has been adequately addressed.

      Defendant argues that the court has failed to reveal the "tenor" of the matter noticed.  Def.'s Br. 2.  However, it is the role of the parties, not the court, to characterize the "tenor of the matter noticed."  The court has indicated the dictionaries it intends to consult and the definitions it intends to use.[3]  See September 29 Order at 1-2; September 30 Order at 1.  The court has advised the parties of the prior testimony of which it intends to take notice.  See September 29 Order at 2.  Defendant has the information required to gauge the tenor of the matter of which the court intends to take notice.  Rule 201 requires the court to provide the parties notice and an opportunity to be heard if they find the tenor of the matter noticed objectionable.  See Fed. R. Evid. 201(e).  The court has provided the parties with notice, as well as two rounds of briefing in which to be heard.

      Similarly, defendant contends that the court has not sufficiently identified the adjudicative facts to be noticed.  Def.'s Br. 2.  The court has specifically indicated the definitions and prior testimony of which it intends to take notice.  Adjudicative facts are "those to which the law is applied in the process of adjudication.  They are the facts that normally go to the jury in a jury case.  They relate to the parties, their activities, their properties, their businesses."  Fed. R. Evid. 201 advisory committee's note (quoting Kenneth Davis, Administrative Law Treatise, 353 (1958)).  The court has indicated the adjudicative facts of which it intends to take notice:  the definitions and prior testimony.  Defendant cites no authority for its contention that the court must parse these adjudicative facts further into the "specific 'matters'" that are to be noticed or explain the conclusions it plans to draw.[4]  See Def.'s Br. 2.  Some courts have stated a concern that when judicial

---

[3]In light of defendant's objection that defendant had not been able to secure the correct editions of the statistical dictionaries the court intends to use, the court reproduced the relevant language in its orders.  Order of September 29, 2010, Dkt. No. 587, at 1-2; Order of September 30, 2010, Dkt. No. 588, at 1.

[4]Defendant similarly argues that the court is required to disclose "what use may be made of this judicial notice," or whether the court will use the judicially noticed facts to "evaluate the credibility of one or more trial witnesses" or to help determine if a particular statistical test should be applied to certain data.  Defendant's Motion Requesting an Opportunity to be Heard (Def.'s Mot.), Dkt. No. 586, at 2, 4.  Defendant cites no authority, however, to support these arguments, which would require the court to disclose not only the adjudicative facts being noticed, but the conclusions the court plans to draw from them.  See Def.'s Mot. 2, 4.

7

notice is taken of complex and lengthy materials such as court documents, from which "any number of distinct facts might be drawn," that the parties be alerted to what particular adjudicative facts are being noticed.  See, e.g., Colonial Leasing Co. of New England v. Logistics Control Grp. Int'l (Colonial Leasing), 762 F.2d 454, 459 (5th Cir. 1985).  The court has addressed this potential source of concern by indicating the precise testimony and the definitions of which it intends to take notice.

Defendant argues that the court has failed to provide justification for its use of judicial notice.  Defendant cites a quotation in the court's September 21 Order from a case in which the United States Court of Appeals for the Sixth Circuit (Sixth Circuit) stated that before taking judicial notice, a court should "identify the fact it is noticing, and its justification for doing so." Def.'s Mot. 1 (quoting September 21 Order at 2 (quoting United States v. Mentz, 840 F.2d 315, 322 (6th Cir. 1988))) (emphasis omitted).  The citation defendant refers to, which appears in a parenthetical, was merely illustrative of the procedure courts in another circuit follow when taking judicial notice.  The textual sentence preceding the citation was more narrow: "The court may take judicial notice sua sponte but should give the parties notice and an opportunity to be heard." September 21 Order at 1.  The court is not bound by the precedent of the Sixth Circuit, and defendant cites no binding authority for the proposition that the court is required to justify its taking of judicial notice.  Nonetheless, for the sake of judicial economy, the court explained its justifications in its September 29 Order.  In particular, the court advised the parties that it had consulted the definition of the word "outlier" "to better understand the parties' dispute regarding Mr. Martin's 'outlier analysis,'"  September 29 Order at 1, and that it had consulted the definitions of the terms "Grubbs Test" and "ESD Test" "as a means of understanding the terms used in the foregoing testimony of Mr. Reineke," which appeared ambiguous from the trial transcript and electronic digital recording.  Id. at 2.

Defendant contends that judicial notice would be problematic if the court uses it to "fill in some gap in [p]laintiff's case without first giving [d]efendant adequate notice and an opportunity to respond with its own evidence." Def.'s Br. 2 (citing Weinstein's Federal Evidence § 201.32[1] n.2.1 and Colonial Leasing, 762 F.2d at 461).  The plaintiff in Colonial Leasing alleged that the defendant was attempting to make a fraudulent conveyance to avoid paying a judgment entered against it in another state. 762 F.2d at 456-57.  The plaintiff had failed at trial to introduce any evidence that the judgment existed, or to provide any other evidence that it was a creditor, an element of its prima facie case.  Id. at 457, 460.  After the close of evidence, the trial court had taken judicial notice of the judgment, which "effectively preserved Colonial's prima facie case retroactively." Id. at 460.  The United States Court of Appeals for the Fifth Circuit (Fifth Circuit), remanding for a new trial on the issue of creditor status, noted that the defendant was deprived by the court's actions of an opportunity to argue that the judgment was entered fraudulently or with the collusion of the creditor.  Id. at 460-61.  Because the defendant believed, correctly, that the plaintiff had failed to introduce any evidence of its creditor status, it had rested at trial without making any such rebuttal. Id. at 460.

8

Although the court is not bound by the precedent of the Fifth Circuit, it does not use the adjudicative facts being noticed to satisfy an unsupported element of either party's case.

Considerations of fairness or due process, as well as the specific concerns defendant raised, do not prohibit the court from taking judicial notice of the indicated judicial facts.

III.   Additional Judicial Notice

Out of an abundance of caution, the court now advises the parties that it intends to take judicial notice of the following additional facts:

(1)   July 14, 2009 Deposition of Mr. Ronnie Martin.  The court takes notice of Mr. Martin's deposition testimony to lend factual support to the fact that Mr. Martin and Mr. Reineke each developed gravity adjustment scales for each month for each of the major purchasers in connection with their creation of the Joint Database.  Plaintiff Osage Nation's Reply Brief in Support of its Amended Motion for Summary Judgment on all Oil-Royalty Under-Collection Claims for July 1974 to December 2000 and All Deposit-Lag, Excessive-Cash-Balance, and Investment-Yield Claims for Accounts 7386 and 7886 for United States Fiscal Years 1973 to 1992, Dkt. No. 428, Ex. 17 (July 14, 2009 Dep. of Ronnie Martin), Tr. 18:13-19:13.

(2)   Plaintiff's Exhibit (PX) 086-0001 (August 16, 1982 letter from the Comptroller General of the United States to the United States Secretary of the Interior) (previously admitted during Osage II trial, see 2006 Tr. 922:25 (court) (admitting PX086-0001 into evidence)).  The court plans to take judicial notice of the statement by the Comptroller General of the United States that its review had discovered serious design and operating problems in the Indian Affairs accounting system.  PX 086-0001.  The court takes notice of this adjudicative fact to lend support the proposition that the Bureau of Indian Affairs accounting system was severely flawed during, at least, the period preceding the Comptroller General's statement.

If either party wishes to have an opportunity to be heard on the propriety of the court's taking of judicial notice of these adjudicative facts or on the tenor of the matter noticed, that party shall file an Opening Brief on the subject on or before Wednesday, December 15, 2010 at 5:00 p.m. Eastern Standard Time (EST).  If either party files an Opening Brief, the other party shall file any Responsive Brief on or before Wednesday, December 22, 2010 at 5:00 p.m. EST.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge